UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CIN-Q AUTOMOBILES, INC., a
Florida corporation, individually
and as the representative of a class
of similarly-situated persons,

        Plaintiff,

v.

BUCCANEERS LIMITED PARTNERSHIP
and JOHN DOES 1-10,

        Defendants.
_____/

Case No. 8:13-cv-1592-EAK-AEP

## DEFENDANT BUCCANEERS LIMITED PARTNERSHIP'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant, Buccaneers Limited Partnership, through its undersigned attorneys and pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully moves this Court for the entry of an Order dismissing with prejudice the First Amended Class Action Complaint (Dkt. 7), filed by Plaintiff, Cin-Q Automobiles, Inc., on the grounds set forth below in the incorporated memorandum of law.

### MEMORANDUM OF LAW

Plaintiff's claims are founded in vicarious liability, but it is clear from the face of the complaint that there are no grounds to hold Buccaneers Limited Partnership ("BLP") liable for the allegedly unlawful act of FaxQom, a third-party. BLP specifically limited FaxQom's authority to act, the alleged unlawful act by FaxQom was beyond the scope of that authority,

and there exist no reasons to hold BLP liable for unauthorized acts of FaxQom. Accordingly, this Court should dismiss Plaintiff's First Amended Class Action Complaint ("Amended Complaint") with prejudice.

## I.

On June 25, 2013, Plaintiff, Cin-Q Automobiles, Inc. ("Cin-Q"), filed the two-count Amended Complaint alleging: 1) a violation of the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227; and 2) conversion. (Dkt. 7). Both counts arise from one allegedly unlawful act—that Cin-Q received an unsolicited and unlawful facsimile.

Cin-Q alleges that on or about August 19, 2009, it received a purportedly unsolicited facsimile ("the Fax") offering for sale tickets to a Tampa Bay Buccaneers home football game. (*Id.* at ¶ 13). Cin-Q claims that the Fax violated the Junk Fax Prevention Act of 2005 and impermissibly converted its office supplies, including toner and paper. (*Id.* at ¶¶ 36, 44). However, Cin-Q concedes that the Fax was not sent by BLP, but a third-party broadcast fax service known as FaxQom. (*Id.* at ¶ 15). As alleged in the Amended Complaint, "FaxQom had a contract with Defendants to provide such broadcast fax services on behalf of Defendants, and such services included offering for sale Tampa Bay Buccaneers' home game tickets." *Id.* Moreover, Cin-Q admits that the source of the Fax was identified as FaxQom, and FaxQom was the entity to contact to be removed from the database. (*Id.* at ¶ 17).

On July 11, 2011, Cin-Q, through its attorney Michael Addison, brought before this Court a two-count complaint ("FaxQom Complaint") against Michael Wayne Clement, doing business as FaxQom.com, in which Cin-Q also alleged: 1) a violation of 47 U.S.C. § 227; and 2) conversion. (Complaint, *Cin-Q Auto., Inc. v. Clement*, 8:11-cv-1502-JSM-AEP (M.D.

Fla. filed July 7, 2011) (attached as Ex. A)).[1] The related claims in the FaxQom Complaint were based on the same August 19, 2009 Fax that forms the basis of the present matter. (*Compare* Dkt. 7, ¶¶ 13-17 *and* FaxQom Complaint ¶¶ 35-39). In the FaxQom action, the Court entered a final judgment in favor of Cin-Q in the amount of $500. (Ex. "B").[2]

## II.

A court may grant a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) where the plaintiff's complaint, factually accepted as correct, evidences that no set of facts exist which would entitle it to relief. *Brown v. Crawford Cnty., Ga.*, 960 F.2d 1002, 1010 (11th Cir. 1992). While motions to dismiss are generally limited to the pleadings, the Court may consider incorporated documents that are central to the plaintiff's claim and undisputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). "Our prior decisions also make clear that a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed in

---

[1] Defendant respectfully requests the Court take judicial notice of the FaxQom Complaint without converting this motion to dismiss into one for summary judgment, as the FaxQom Complaint is public record, capable of accurate and ready determination, and not reasonably questioned. *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994); *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010); *Haddad v. Dudek*, 784 F. Supp. 2d 1308, 1324 (M.D. Fla. 2011). To be clear, BLP does not seek the Court to take notice of the truth of any factual allegations contained in the FaxQom Complaint, only that Cin-Q previously *filed* a complaint in a separate action before this Court based on the same allegedly unlawful Fax. Similarly, BLP requests that the Court take judicial notice of the final judgment in the FaxQom action, a copy of which is attached as Exhibit "B." However, if the Court determines that it is appropriate to convert this motion to dismiss into a motion for summary judgment under Federal Rule of Civil Procedure 12(d), Defendants argue that summary judgment is appropriate for the reasons set forth in this motion.

[2] It is unclear why Plaintiff or its counsel failed to mention the FaxQom Complaint or the final judgment that resulted. However, if Plaintiff has collected on the FaxQom judgment then this action is improperly seeking double recovery and the present matter must be dismissed. *See, e.g., Lineas Aereas Constrarricenses, S.A. v. HTP, Ltd.*, 674 So. 2d 780, 781 (Fla. 3d DCA 1996); *Mercer v. Honda Motor Co., Ltd.*, 551 F. Supp. 233, 234-35 (M.D. Fla. 1982).

3

*Horsley.*" *Id.* As addressed, the Court may also consider appropriate judicially noticed facts in ruling on a motion to dismiss. *See supra* n.1.

Beyond the four-corners of the complaint in the present matter, the Court should consider the agreement between BLP and FaxQom. (Ex. C).[3] The agreement is central to Cin-Q's claim because the relationship between BLP and FaxQom determines whether BLP is liable for FaxQom's actions. Also, Cin-Q introduces the agreement and alleges its contents in the Amended Complaint. (Dkt. 7, ¶ 15). Cin-Q cannot rationally dispute the authenticity of the agreement, as it is the agreement Cin-Q submitted as Exhibit J to the FaxQom Complaint and relied on to reach a favorable final judgment in the FaxQom action.

Similarly, the Court should consider an email from a representative of BLP to FaxQom dated June 24, 2009. (Ex. D).[4] While the email is not explicitly referenced in the Amended Complaint, it meets the *Horsley* centrality requirement. The email is crucial in defining the relationship between BLP and FaxQom, and it is that relationship that determines BLP's liability. The authenticity of the email is uncontested since Cin-Q attached the email as Exhibit F of the FaxQom Complaint, thus Cin-Q cannot in good faith challenge its authenticity.[5]

---

[3] The agreement is attached to the FaxQom Complaint as Exhibit J and is found at pages 53 through 55 of the attached Exhibit A. However, for the Court's convenience, Defendants have also attached the agreement as Exhibit C.

[4] The email is attached to the FaxQom Complaint as Exhibit F and is found at page 44 of the attached Exhibit A. However, for the Court's convenience, Defendants have also attached the email as Exhibit D.

[5] Moreover, Plaintiff is not unfairly prejudiced by the Court considering the email without converting this motion to one for summary judgment. Plaintiff explicitly referenced the email in paragraph 18 of the related FaxQom Complaint in its attempt to establish the same unlawful act and harm as in the present case. Plaintiff's choice not to include that allegation in the Amended Complaint does not alter its relevance to Plaintiff's claims and as Plaintiff, itself, submitted the email to the court, it cannot claim to be hindered by its consideration now.

## III.

Cin-Q has failed to set forth any set of facts which would entitle it to its requested relief because there are no grounds for holding BLP liable for the allegedly unlawful actions of FaxQom—the Fax sent by FaxQom was beyond its scope of authority. It is often inappropriate for the Court to determine the exact relationship of parties during the preliminary stages of litigation. However, the Court does not have to determine the exact relationship of BLP and FaxQom, because whatever their relationship, it was clearly not of the type that warrants holding BLP liable for conduct beyond FaxQom's scope of authority.

It is axiomatic that a party in not responsible for all acts of a third-party, simply because the third-party has been paid to perform a task.

> Florida follows the general rule that the employer of an independent contractor is not liable for the contractor's negligence because the employer has no control over the manner in which the work is done, but it also recognizes exceptions to the general rule which may generally be divided into three categories: 1) negligence in selecting, instructing, or supervising the contractor; 2) non-delegable duties arising out of some relation toward the public or the particular plaintiff; and 3) work which is specially, peculiarly, or "inherently" dangerous.

*McCall v. Ala. Bruno's, Inc.*, 647 So. 2d 175 (Fla. 1st DCA 1994). There is nothing "inherently" dangerous about sending an advertisement via facsimile, nor has a Florida court ruled such action involves a non-delegable duty. *But see Applestein v. Fairfield Resorts*, 2009 WL 5604429, at *7-8 (Md. Ct. Spec. App. 2009) (rejecting argument that Telephone Consumer Protection Act creates non-delegable duty); *Zhu v. DISH Network, LLC*, 808 F. Supp. 2d 815, 819 (E.D. Va. 2011) (citing *Applestein* with approval). Further, Cin-Q does not allege that BLP was negligent in selecting or instructing FaxQom to assist in BLP's efforts to sell football tickets. (*See generally* Dkt. 7). In fact, in both the agreement between

BLP and FaxQom and the email from BLP to FaxQom, BLP instructs FaxQom to only send facsimiles to those permitted by law. (Ex. C; Ex. D). Thus, even if FaxQom is considered an independent contractor of BLP, BLP would not be liable for the allegedly unlawful Fax.

Additionally, even if FaxQom was considered BLP's agent, BLP would not be liable for the Fax. Under general principles of agency, "[a]n agent is authorized to do, and to do only, what it is reasonable for him to infer that the principal desires him to do in the light of the principal's manifestations and the facts as he knows or should know them at the time he acts . . ." *Ramos-Barrientos v. Bland*, 661 F.3d 587, 600 (11th Cir. 2011) (alteration in original) (quotation omitted). A principle is not vicariously liable to a third party for the harm caused by an agent's conduct beyond the scope of authority, except if the agent is an employee acting in the interest of the employer, or the agent acts with apparent authority in dealing with a third party purportedly on behalf of the principle. *See, e.g.,* Restatement (Third) of Agency § 7.03 (2006); *Moecker v. Honeywell Int'l, Inc.*, 144 F. Supp. 2d 1291, 1312 (M.D. Fla. 2001). "Apparent authority is present only when a third party's belief is traceable to manifestations of the principal. The fact that one party performs a service that facilitates the other's business does not constitute such a manifestation." Restatement (Third) of Agency § 3.03 cmt. b. The Plaintiff's allegations of the Amended Complaint and accompanying documents clearly evidence that FaxQom was not an employee of BLP.[6] It is also without question that FaxQom did not have apparent authority—there are no allegations

---

[6] Cin-Q does not allege an employee-employer relationship but alleges that the Fax was "sent at Defendants' request and on Defendants' behalf by a broadcast fax service know as FaxQom . . ." (Dkt. 7, ¶ 15). Further, Cin-Q admits that the relationship between FaxQom and BLP was contractual. (*Id.*). That agreement—as referenced in paragraph 15 of the Amended Complaint and attached as Exhibit J of the FaxQom Complaint—is indicative of a services agreement and does not establish an employer-employee relationship. (Ex. C).

that BLP made any manifestations to Cin-Q or that FaxQom did more than simply perform a service that facilitated BLP's business.

Since FaxQom was neither an employee nor acting with apparent authority, Cin-Q cannot state a cause of action against BLP—even if FaxQom is considered BLP's agent—because FaxQom's actions were beyond its authority. BLP only granted FaxQom limited authority to send facsimiles to businesses that had opted into FaxQom's database. The limited scope of FaxQom's authority was clearly established by the June 24, 2009 email and confirmed by the terms of the parties' agreement. The email seeks confirmation that all of the potential recipients of the faxes had opted in to FaxQom's database. (Ex. D). BLP seeks assurances that FaxQom will limit its actions by requesting indemnity in case FaxQom's actions lead to complaints from recipients. (*Id.*). While FaxQom's confirmation of this email is not included with the exhibit, FaxQom's understanding of this limited scope of authority is confirmed by the agreement. The second page of FaxQom and BLP's agreement contains the indemnification agreement referenced in the June 24, 2009 email. (Ex. C at 2). Moreover, the third page of the agreement states that FaxQom confirms that the recipients of the facsimiles were chosen "according to the best industry practices as outlined by the Direct Marketing Association (DMA)," and FaxQom agreed to "abide by all laws associated with facimile (sic) marketing." (*Id.* at 3). Thus, the agreement confirmed BLP only authorized FaxQom to send advertisements to those facsimile numbers that had opted in to FaxQom's database. Accordingly, if FaxQom sent any faxes to entities that had not opted into the

database—including the Fax sent to Cin-Q—FaxQom was acting beyond its scope of authority and BLP cannot be held liable.[7]

## IV.

In conclusion, Cin-Q cannot establish any set of facts to hold BLP liable for FaxQom's allegedly unlawful actions. This Court does not have to determine FaxQom's relationship with BLP, because, while BLP denies the existence of either an agency or independent contractor relationship with FaxQom, BLP is not liable to FaxQom even if either such relationship existed. The allegations in the Amended Complaint—and the documents incorporated by reference and properly considered on this motion to dismiss—establish that Cin-Q cannot establish that it is entitled to relief and dismissal is appropriate. Further, because no cause of action could be stated under these facts, amendment would be futile and dismissal with prejudice is appropriate.[8]

For the foregoing reasons, Defendant, Buccaneers Limited Partnership, respectfully requests this Court enter an order dismissing the First Amended Class Action Complaint, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6) and for such other relief as the Court deems just and proper.

---

[7] Any argument by Cin-Q that BLP may have ratified FaxQom's actions and expanded the scope of authority, is quickly rebutted by the party's inclusion of the indemnity agreement in their agreement—and the lack of allegations in the Amended Complaint suggesting BLP ratified FaxQom's actions.

[8] Defendant finds it noteworthy that the dismissal of Plaintiff's claims in the present matter does not leave Plaintiff without remedy. Plaintiff has already received a final judgment against FaxQom for an award of the statutory maximum in damages. (Ex. B).

Respectfully submitted,

/s/ Mark J. Criser
Mark J. Criser
FBN: 141496; mcriser@hwhlaw.com
Matthew F. Hall
FBN: 92430; mhall@hwhlaw.com
Hill, Ward and Henderson, P.A.
101 East Kennedy Blvd., Suite 3700
Tampa, Florida 33602
Telephone: (813) 221-3900
Facsimile: (813) 221-2900
*Attorneys for Buccaneers Limited Partnership*

## CERTIFICATE OF SERVICE – CM/ECF

I hereby certify that on this 16th day of July, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Michael C. Addison (m@mcalaw.net) and Ryan M. Kelly (rkelly@andersonwanca.com).

/s/ Mark J. Criser
Attorney