UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CIN-Q AUTOMOBILES, INC. and
MEDICAL & CHIROPRACTIC CLINIC,
INC., Florida corporations, individually and
as the representative of a class of
similarly-situated persons,

     Plaintiffs,

v.                        Case No. 8:13-cv-1592-17AEP

BUCCANEERS LIMITED PARTNERSHIP
and JOHN DOES 1-10,

     Defendants.                  /

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs, CIN-Q AUTOMOBILES, INC. and MEDICAL & CHIROPRACTIC CLINIC,

INC. ("Plaintiffs"), brings this action on behalf of themselves and all others similarly situated,

through their attorneys, and except as to those allegations pertaining to Plaintiffs or their

attorneys, which allegations are based upon personal knowledge, allege the following upon

information and belief against Defendants, BUCCANEERS LIMITED PARTNERSHIP and

JOHN DOES 1-10 ("Defendants").

## PRELIMINARY STATEMENT

1.     This case challenges Defendants' practice of sending unsolicited facsimiles.

2.     The federal Telephone Consumer Protection Act of 1991, as amended by the Junk

Fax Prevention Act of 2005, 47 USC § 227 ("JFPA" or the "Act"), and the regulations

promulgated under the Act, prohibits a person or entity from faxing or having an agent fax

advertisements without the recipient's prior express invitation or permission. The JFPA provides



a private right of action and provides statutory damages of $500 per violation.  Upon information and belief, Defendants have sent facsimile transmissions of unsolicited advertisements to Plaintiffs and the Class in violation of the JFPA, including, but not limited to, the facsimile transmission of an unsolicited advertisements on July 15, 2009 and August 19, 2009 ("the Faxes"), true and correct copy of which are attached hereto as **Exhibits A and B,** and made a part hereof.  The Faxes promote the services and goods of Defendants.  Plaintiffs are informed and believe, and upon such information and belief avers, that Defendants have sent, and continue to send, unsolicited advertisements via facsimile transmission in violation of the JFPA.

3.      Unsolicited faxes damage their recipients.  A junk fax recipient loses the use of its fax machine, paper, and ink toner.  An unsolicited fax wastes the recipient's valuable time that would have been spent on something else.  A junk fax interrupts the recipient's privacy.  Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

4.      On behalf of themselves and all others similarly situated, Plaintiffs bring this case as a class action asserting claims against Defendants under the JFPA and common law conversion.

5.      Plaintiffs are informed and believe, and upon such information and belief avers, that this action is based upon a common nucleus of operative fact because the facsimile transmissions at issue were and are being done in the same or similar manner.  This action is based on the same legal theory, namely liability under the JFPA.  This action seeks relief expressly authorized by the JFPA: (i) injunctive relief enjoining Defendants, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with

them, from sending unsolicited advertisements in violation of the JFPA; and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the JFPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

7.     Venue is proper in this District because Defendants committed a statutory tort within this district and a significant portion of the events took place here.

## PARTIES

8.     Plaintiff, CIN-Q AUTOMOBILES, INC., is a Florida corporation with its main office and principal place of business located Alachua County, Florida.

9.     Plaintiff, MEDICAL & CHIROPRACTIC CLINIC, INC., is a Florida corporation with its principal place of business in Hillsborough County, Florida.

10.    On information and belief, Defendant, BUCCANEERS LIMITED PARTNERSHIP ("BUCCANEERS"), is a Delaware corporation with its principal place of business in Tampa, Florida.

11.    John Does 1-10 will be identified through Discovery but are currently unknown.

## FACTUAL ALLEGATIONS

12.    Defendants own and operate a professional football team in Tampa, Florida, which plays some of its scheduled games each season at Raymond James Stadium in Tampa, Florida.

13.    The Buccaneers' 2009 professional football season commenced on August 27, 2009, with a home preseason game against the Miami Dolphins at Raymond James Stadium.

14.     On or about July 15, 2009, Defendants transmitted by telephone facsimile machine an unsolicited fax to Plaintiff, MEDICAL & CHIROPRACTIC CLINIC, INC., for the purpose of offering for sale group game tickets to the Tampa Bay Buccaneers' home football games starting with the September 13, 2009, game against Dallas.  A copy of the facsimile is attached hereto as **Exhibit A**.

15.     On or about August 19, 2009, Defendants transmitted by telephone facsimile machine an unsolicited fax to Plaintiff, CIN-Q AUTOMOBILES, INC., for the purpose of offering for sale individual game tickets to the Tampa Bay Buccaneers' home football games starting with the August 27, 2009, game against the Dolphins.  A copy of the facsimile is attached hereto as **Exhibit B**.

16.     Defendants created or made Exhibits A and B which Defendants knew or should have known are goods or products which Defendants intended to and did in fact distribute to Plaintiff and the other members of the class.

17.     Exhibits A and B were sent at Defendants' request and on Defendants' behalf by a broadcast fax service known as FaxQom for the purpose of assisting and facilitating Defendants' efforts to sell tickets for the Tampa Bay Buccaneers' football games to be played at its home stadium.  FaxQom had a contract with Defendants to provide such broadcast fax services on behalf of Defendants, and such services included offering for sale Tampa Bay Buccaneers' home game tickets.

18.     The faxes prompted the recipients to order game tickets by using the Tampa Bay Buccaneers' website of "Buccaneers.com" or calling a toll free number for Ticketmaster (Ex. A) or the Buccaneers (Ex. B).

19.     The faxes identified the source as FaxQom and indicated that the recipient could request removal of its fax number from the database used to send the fax by contacting Removaltech@FaxQom.com.  A printout of portions of the webpage for FaxQom advertises the furnishing of Worldwide IP Fax Broadcast Services and that FaxQom will provide broadcast services for its customers.  A true copy of the portions of the webpage is attached as **Exhibit C.**

20.     Exhibits A and B are part of Defendants' work or operations to market Defendants' goods or services which were performed by Defendants and on behalf of Defendants.  Therefore, Exhibits A and B constitute material furnished in connection with Defendants' work or operations.

21.     Plaintiffs had not invited or given permission to Defendants to send the faxes.

22.     On information and belief, Defendants faxed the same and similar unsolicited facsimiles to Plaintiffs and more than 100,000 other recipients without first receiving the recipients' express permission or invitation.

23.     There is no reasonable means for Plaintiffs (or any other class member) to avoid receiving unauthorized faxes.  Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

24.     Defendants' facsimiles did not display a proper opt-out notice as required by 47 C.F.R. § 64.1200.

## CLASS ALLEGATIONS

25.     In accordance with F. R. Civ. P. 23(b)(1), (b)(2) and (b)(3), Plaintiffs brings this class action pursuant to the JFPA, on behalf of the following class of persons:

> All persons from July 1, 2009, to present who were sent facsimile advertisements offering group tickets or individual game tickets for the Tampa Bay Buccaneers games and which did not display the opt out language required by 47 C.F.R. 64.1200.

5

Excluded from the Class are the Defendants, their employees, agents and members of the Judiciary.  Plaintiffs reserve the right to amend the class definition upon completion of class certification discovery.

26.     Class Size (F. R. Civ. P. 23(a)(1)):  Plaintiffs are informed and believes, and upon such information and belief avers, that the number of persons and entities of the Plaintiff Class is numerous and joinder of all members is impracticable.  Plaintiffs are informed and believe, and upon such information and belief avers, that the number of class members is at least forty (40).

27.     Commonality (F. R. Civ. P. 23 (a) (2)):  Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

a)      Whether the Defendants sent unsolicited fax advertisements;

b)      Whether the Defendants' faxes advertised the commercial availability of property, goods, or services;

c)      The manner and method the Defendants used to compile or obtain the list of fax numbers to which they sent Exhibit A and other unsolicited faxed advertisements;

d)      Whether the Defendants faxed advertisements without first obtaining the recipient's prior permission or invitation;

e)      Whether the Defendants sent the faxed advertisements knowingly;

f)      Whether the Defendants violated the provisions of 47 U.S.C. § 227 and the regulations promulgated thereunder;

g)      Whether the faxes contain an "opt-out notice" that complies with the requirements of § (b)(1)(C)(iii) of the Act, and the regulations promulgated thereunder, and the effect of the failure to comply with such requirements;

h)      Whether the Defendants should be enjoined from faxing advertisements in the future;

i)      Whether the Plaintiffs and the other members of the class are entitled to statutory damages; and

j)      Whether the Court should award treble damages.

28.     Typicality (F. R. Civ. P. 23 (a) (3)):   The Plaintiffs' claims are typical of the claims of all class members. The Plaintiffs received faxes sent by or on behalf of the Defendants advertising Defendants' goods and services during the Class Period. The Plaintiffs are making the same claims and seeking the same relief for themselves and all class members based upon the same federal statute. The Defendants have acted the same or in a similar manner with respect to the Plaintiffs and all the class members.

29.     Fair and Adequate Representation (F. R. Civ. P. 23 (a) (4)):   The Plaintiffs will fairly and adequately represent and protect the interests of the class. It is interested in this matter, has no conflicts and has retained experienced class counsel to represent the class.

30.     Need for Consistent Standards and Practical Effect of Adjudication (F. R. Civ. P. 23 (b) (1)):   Class certification is appropriate because the prosecution of individual actions by class members would: (a) create the risk of inconsistent adjudications that could establish incompatible standards of conduct for the Defendants, and/or (b) as a practical matter, adjudication of the Plaintiffs' claims will be dispositive of the interests of class members who are not parties.

31.     Common Conduct (F. R. Civ. P. 23 (b) (2)):   Class certification is also appropriate because the Defendants have acted and refused to act in the same or similar manner

with respect to all class members thereby making injunctive and declaratory relief appropriate. The Plaintiffs demand such relief as authorized by 47 U.S.C. §227.

32. <u>Predominance and Superiority (F. R. Civ. P. 23 (b) (3))</u>: Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

a) Proof of the claims of the Plaintiffs will also prove the claims of the class without the need for separate or individualized proceedings;

b) Evidence regarding defenses or any exceptions to liability that the Defendants may assert and prove will come from the Defendants' records and will not require individualized or separate inquiries or proceedings;

c) The Defendants have acted and are continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

d) The amount likely to be recovered by individual class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

e) This case is inherently manageable as a class action in that:

(i) The Defendants identified persons or entities to receive the fax transmissions and it is believed that the Defendants' computer and business records will enable the Plaintiffs to readily identify class members and establish liability and damages;

(ii)    Liability and damages can be established for the Plaintiffs and the class with the same common proofs;

(iii)    Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

(iv)    A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense;

(v)    A class action will contribute to uniformity of decisions concerning the Defendants' practices; and

(vi)    As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

## COUNT I

**Claim for Relief for Violation of the JFPA, 47 U.S.C. § 227 *et seq.***

33.    Plaintiffs and the Plaintiff Class reassert and incorporate herein by reference the averments set for in paragraphs 1 through 32 above.

34.    The JFPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement ..." 47 U.S.C. § 227(b)(1)(C).

35.    The JFPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227 (a) (5).

36.    **Opt-Out Notice Requirements.**  The JFPA strengthened the prohibitions against the sending of unsolicited advertisements by requiring, in §(b)(1)(C)(iii) of the Act, that senders

of faxed advertisements place a clear and conspicuous notice on the first page of the transmission that contains the following among other things (hereinafter collectively the "Opt-Out Notice Requirements"):

1.      a statement that the recipient is legally entitled to opt-out of receiving future faxed advertisements – knowing that he or she has the legal right to request an opt-out gives impetus for recipients to make such a request, if desired;

2.      a statement that the sender must honor a recipient's opt-out request within 30 days and the sender's failure to do so is unlawful – thereby encouraging recipients to opt-out, if they did not want future faxes, by advising them that their opt-out requests will have legal "teeth";

3.      a statement advising the recipient that he or she may opt-out with respect to all of his or her facsimile telephone numbers and not just the ones that receive a faxed advertisement from the sender – thereby instructing a recipient on how to make a valid opt-out request for all of his or her fax machines;

The requirement of (1) above is incorporated from § (b)(D)(ii) of the Act.    The requirement of (2) above is incorporated from § (b)(D)(ii) of the Act and the rules and regulations of the Federal Communications Commission (the "FCC") in ¶31 of its 2006 Report and Order (*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act, Junk Prevention Act of 2005,* 21 F.C.C.R. 3787, 2006 WL 901720, which rules and regulations took effect on August 1, 2006).    The requirements of (3) above are contained in § (b)(2)(E) of the Act and incorporated into the Opt-Out Notice Requirements via § (b)(2)(D)(ii). Compliance with the Opt-Out Notice Requirements is neither difficult nor costly.   The Opt-Out Notice Requirements are important consumer protections bestowed by Congress upon the

owners of fax machines giving them the right, and means, to stop unwanted faxed advertisements.

37.   **2006 FCC Report and Order.** The JFPA, in § (b)(2) of the Act, directed the FCC to implement regulations regarding the JFPA, including the JFPA's Opt-Out Notice Requirements and the FCC did so in its 2006 Report and Order, which in addition provides among other things:

A.     The definition of, and the requirements for, an established business relationship for purposes of the first of the three prongs of an exemption to liability under § (b)(1)(C)(i) of the Act and provides that the lack of an "established business relationship" precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶8-12 and 17-20);

B.     The required means by which a recipient's facsimile telephone number must be obtained for purposes of the second of the three prongs of the exemption under § (b)(1)(C)(ii) of the Act and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶13-16);

C.     The things that must be done in order to comply with the Opt-Out Notice Requirements for the purposes of the third of the three prongs of the exemption under § (b)(1)(C)(iii) of the Act and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶24-34);

D.     The failure of a sender to comply with the Opt-Out Notice Requirements precludes the sender from claiming that a recipient gave "prior express permission or

invitation" to receive the sender's fax (*See* Report and Order ¶48);

As a result thereof, a sender of a faxed advertisement who fails to comply with the Opt-Out Notice Requirements has, by definition, transmitted an unsolicited advertisement under the JFPA. This is because such a sender can neither claim that the recipients of the faxed advertisement gave "prior express permission or invitation" to receive the fax nor can the sender claim the exemption from liability contained in § (b)(C)(1) of the Act.

38.     **The Faxes.** Defendants sent the July 15, 2009 and August 19, 2009 Faxes via facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone facsimile machines of Plaintiffs and members of the Plaintiff Class. The Faxes constituted an advertisement under the Act. Defendants failed to comply with the Opt-Out Requirements in connection with the Faxes. The Faxes were transmitted to persons or entities without their prior express permission or invitation and/or Defendants are precluded from asserting any prior express permission or invitation because of the failure to comply with the Opt-Out Notice Requirements. By virtue thereof, Defendants violated the JFPA and the regulations promulgated thereunder by sending the Faxes via facsimile transmission to Plaintiffs and members of the Class.

39.     **Defendants' Other Violations.** Plaintiffs are informed and believes, and upon such information and belief avers, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendants have sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the Plaintiff Class faxes that constitute advertisements under the JFPA that were transmitted to persons or entities without their prior express permission or invitation (and/or that Defendants are precluded from asserting any prior express permission or invitation because of

the failure to comply with the Opt-Out Notice Requirements in connection with such transmissions). By virtue thereof, Defendants violated the JFPA and the regulations promulgated thereunder. Plaintiffs are informed and believe, and upon such information and belief avers, that Defendants are continuing to send unsolicited advertisements via facsimile transmission in violation of the JFPA and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

40.     The TCPA/JFPA provides a private right of action to bring this action on behalf of Plaintiffs and the Plaintiff Class to redress Defendants' violations of the Act, and provides for statutory damages.   47 U.S.C. § 227(b)(3). The Act also provides that injunctive relief is appropriate. *Id.*

41.     The JFPA is a strict liability statute, so the Defendants are liable to the Plaintiffs and the other class members even if their actions were only negligent.

42.     The Defendants knew or should have known that (a) the Plaintiffs and the other class members had not given express invitation or permission for the Defendants or anybody else to fax advertisements about the Defendants' goods or services; (b) Defendants transmitted an advertisement; and (c) the Faxes did not contain the required Opt-Out Notice.

43.     The Defendants' actions caused damages to the Plaintiffs and the other class members. Receiving the Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of the Defendants' faxes. Moreover, the Defendants' fax used the Plaintiffs' fax machine. The Defendants' fax cost the Plaintiffs time, as the Plaintiffs and their employees wasted their time receiving, reviewing and routing the Defendants' unauthorized fax. That time otherwise would have been spent on the Plaintiffs' business activities.   The Defendants' fax unlawfully interrupted the Plaintiffs' and other class members' privacy interests

in being left alone.  Finally, the injury and property damage sustained by Plaintiffs and the other class members from the sending of Defendants' advertisements occurred outside of Defendants' premises.

WHEREFORE, Plaintiffs, CIN-Q AUTOMOBILES, INC. and MEDICAL & CHIROPRACTIC CLINIC, INC., individually and on behalf of all others similarly situated, demand judgment in their favor and against Defendants, BUCCANEERS LIMITED PARTNERSHIP and JOHN DOES 1–10, jointly and severally, as follows:

A.      That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint the Plaintiffs as the representatives of the class and appoint the Plaintiffs' counsel as counsel for the class;

B.      That the Court award actual monetary loss from such violations or the sum of $500 for each violation, whichever is greater;

C.      That Court enjoin the Defendants from additional violations; and

D.      That the Court award pre-judgment interest, costs and such further relief as the Court may deem just and proper.

## COUNT II
### Conversion

44.     Plaintiffs incorporate paragraphs 1, 3, and 8 through 23 as though fully set forth herein.

45.     In accordance with Florida Statute §365.1657, Plaintiffs bring Count II for conversion under the common law for the following class of persons:

All persons who on or after four years prior to the filing of this action, were sent telephone facsimile messages on behalf of the Defendants.

14

46.    By sending Plaintiffs and the other class members unsolicited faxes, Defendants improperly and unlawfully converted their fax machines, toner and paper to its own use. Defendants also converted Plaintiffs' employees' time to Defendants' own use.

47.    Immediately prior to the sending of the unsolicited faxes, Plaintiffs and the other class members owned an unqualified and immediate right to possession of their fax machines, paper, toner and employee time.

48.    By sending the unsolicited faxes, Defendants permanently misappropriated the class members' fax machines, toner, paper and employee time to Defendants' own use.  Such misappropriate was wrongful and without authorization.

49.    Defendants knew or should have known that its misappropriation of paper, toner and employee time was wrongful and without authorization.

50.    Plaintiffs and the other class members were deprived of the use of the fax machines, paper, toner and employee time, which could no longer be used for any other purpose. Plaintiffs and each class member thereby suffered damages as a result of their receipt of unsolicited faxes from Defendants.

51.    Each of Defendants' unsolicited faxes effectively stole Plaintiffs' employees' time because multiple persons employed by Plaintiffs were involved in receiving, routing and reviewing Defendants' illegal faxes.   Defendants knew or should have known employees' time is valuable to Plaintiffs.

52.    Defendants' actions caused damages to Plaintiffs and the other members of the class because their receipt of Defendants' unsolicited fax caused them to lose paper and toner as a result.  Defendants' actions prevented Plaintiffs' fax machines from being used for Plaintiffs' business purposes during the time Defendants were using Plaintiffs' fax machines for

Defendants' illegal purpose.  Defendants' actions also cost Plaintiffs employee time, as Plaintiffs' employees used their time receiving, routing and reviewing Defendants' illegal faxes, and that time otherwise would have been spent on Plaintiffs' business activities.

WHEREFORE, Plaintiffs, CIN-Q AUTOMOBILES, INC. and MEDICAL & CHIROPRACTIC CLINIC, INC., individually and on behalf of all others similarly situated, demands judgment in their favor and against Defendants, BUCCANEERS LIMITED PARTNERSHIP and JOHN DOES 1–10, jointly and severally, as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint the Plaintiffs as the representatives of the class and appoint the Plaintiffs' counsel as counsel for the class;

B.    That the Court award appropriate damages

C.    That the Court award costs of suit; and

D.    That the Court award such further relief as the Court may deem just and proper.

Respectfully submitted,

CIN-Q AUTOMOBILES, INC. and MEDICAL & CHIROPRACTIC CLINIC, INC., individually and as the representatives of a class of similarly-situated persons

By:  s/ Michael C. Addison
Michael C. Addison – Florida Bar No. 145579
ADDISON & HOWARD, P.A.
400 N. Tampa St., Suite 1100
Tampa, FL  33602-4714
Tel:  813-223-2000
Fax:  813-223-6000

And

Ryan M. Kelly (Florida Bar No. 90110)
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Rd/, Suite 760
Rolling Meadows, IL  60008
Tel:  (847) 368-1500
Fax: (847) 368-1501

## CERTIFICATE OF SERVICE

I hereby certify that on _____, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to all counsel of record and I hereby certify that the foregoing document was served by U.S. mail on the person listed below.

s/ _____

**Defendant:**

Buccaneers Limited Partnership
c/o David Cohen, as General Counsel
One Buccaneer Place
Tampa, FL   33607

07/15/2009 12:25 PM          Buccaneers          -> 18132373792

# TAMPA BAY BUCCANEERS | FAX COVER

P A C S I M I L E

ONE BUCCANEER PLACE   TAMPA, FL 33807          TEL: (813) 870-2700   BUCCANEERS.COM



DATE: __7/15/09__     # of Pages (including cover): __2__

TO: __Human Resources__

FROM: __Group Seating Department__

SUBJECT: __Buccaneers Group Tickets__

ADDITIONAL COMMENTS:

Attached is the information on group seating. Tickets are available for groups of 20 or more people. When buying group seating, you save up to $16 per ticket versus the individual game ticket cost.  Group seating also gives you access to large blocks of seating that are not available any other way.

Many companies use group seating as a retreat and/or reward to build team unity.

If you have any questions, please don't hesitate to call us at (877) 649-BUCS (2827).

## 2009 SCHEDULE

**DALLAS**
September 13 | 1:00pm

**AT BUFFALO**
September 20 | 4:05pm

**N.Y. GIANTS**
September 27 | 1:00pm

**AT WASHINGTON**
October 4 | 1:00pm

**AT PHILADELPHIA**
October 11 | 1:00pm

**CAROLINA**
October 18 | 1:00pm

**NEW ENGLAND**
October 25 | 1:00pm | LONDON

**GREEN BAY**
November 8 | 1:00pm

**AT MIAMI**
November 15 | 1:00pm

**NEW ORLEANS**
November 22 | 1:00pm

**AT ATLANTA**
November 29 | 1:00pm

**AT CAROLINA**
December 6 | 1:00pm

**N.Y. JETS**
December 13 | 1:00pm

**AT SEATTLE**
December 20 | 4:15pm

**AT NEW ORLEANS**
December 27 | 1:00pm

**ATLANTA**
January 3 | 1:00pm

*ALL TIMES EASTERN / SUBJECT TO CHANGE

# 2002 WORLD CHAMPIONS

EXHIBIT

A

07/15/2009 12:25 PM          Buccaneers          -> 18132373792          2



# GROUP TICKETS ON SALE NOW!
## 877-649-BUCS (2827)

| SECTION | A | B | C | D | E |
|---|---|---|---|---|---|
| **GROUP PER GAME PRICE** | $99.00 | $89.00 | $85.00 | $75.00 | $65.00 |

Group tickets are available in packages of 20 or more and
reflect a discount of up to $16 per ticket

### 2009 SEASON

**DALLAS**
September 13 | 1:00pm

**N.Y. GIANTS**
September 27 | 1:00pm

**CAROLINA**
October 18 | 1:00pm

**GREEN BAY**
November 8 | 1:00pm

**NEW ORLEANS**
November 22 | 1:00pm

**N.Y. JETS**
December 13 | 1:00pm

**ATLANTA**
January 3 | 1:00pm



## Call 877-649-BUCS (2827) or visit www.buccaneers.com today for seat locations

To immediately and permanently remove your fax number from our opt-in compiled database, please call 877-272-7614. Removaltech@FaxQom.com

To:13523779774                    Fr:                              11:23 08/19/09 PG 001



# INDIVIDUAL GAME TICKETS ON SALE NOW!

| | | | |
|---|---|---|---|
| MIAMI | August 27 | 8:00pm |
| HOUSTON | September 4 | 7:00pm |
| DALLAS | September 13 | 1:00pm |
| N.Y. GIANTS | September 27 | 1:00pm |
| CAROLINA | October 18 | 1:00pm |
| GREEN BAY | November 8 | 1:00pm |
| NEW ORLEANS | November 22 | 1:00pm |
| N.Y. JETS | December 13 | 1:00pm |
| ATLANTA | January 3 | 1:00pm |

All game dates and times are subject to NFL flexible scheduling.

# TO PURCHASE TICKETS CALL 800-745-3000
# OR VISIT BUCCANEERS.COM

To immediately and permanently remove your fax number from our opt-in compiled database, please call 888-703-9205. Removaltech@FaxQom.com

**EXHIBIT**

B

FaxQom.Com                                                    Page 1 of 2

**FaxQom.Com**

Home

Info

WebFax

Broadcast Reports

Contact



## Welcome to the world of fax communications !



Faxqom can disseminate tens of thousands of faxes in just a few minutes using the largest integrated IP fax broadcast system. Whatever the industry-----Retail----Wholesale----Manufacturing----Banking----Medical----Communications----Travel........you name it , we can handle it ! Faxqom can disseminate information FASTER and more Economcally and Conveniently than any other means.

Get there first ! By improving your communications to large groups........By reducing your cost of distributing information.......By allowing you to control delivery of sensitive imformation........By giving you the capibilties of target marketing by fax / s.i.c codes and geographic areas........By allowing you to bulk fax, or in another words, reaching every single fax number in a geographic area.

**Worldwide IP Fax Broadcast Services**

**FaxQom.Com**

Home

Info

WebFax

Broadcast Reports

Contact

Thank you for visiting FaxQom. FaxQom has a solid reputation and has been providing quality service worldwide for over 18 years. We specialize in Worldwide IP Fax Broadcast Services. Count on FaxQom for your broadcast advertising needs.

## Applications for Faxqom Services

A financial corporation provides clients with daily updates on markets and developments.

A public relations firm distributes 2,000 press releases overnight to announce the launch of a new product.

A trade organization sends announcements to its 5,000 members.

A publisher distributes a weekly newsletter to 10,000 subscribers around the country.

An insurance agent wants to send an insurance update to every fax number in the 713, 815, 904, 212 area codes.

Insurance agents need RED HOT LEADS to generate new business, FaxQom supplies agents with new leads daily.

A mortgage brokers and loan officers broadcast to certain area codes around the country for new business.

Stock brokers use FaxQom daily for distributing stock updates to potential investors around the U.S.

Travel agencies use FaxQom daily to broadcast travel and vacation specials throughout the country.

## Broadcast Rates
Targeted fax broadcasting by city, state, area code...3.0 cents per page
Minumum order $300
Targeted fax broadcasting by SIC code............8 cents per page
Minimum order $400
Submission of own databases..........2.5 cents per page

**Quantity price breaks are available, ask for details.**

## Payment Options
Mastercard, Visa, Wire transfer, Bank draft

**FaxQom** New York, NY
**FaxQom Atlantic** Boston, Ma
**FaxQom Pacific** Seattle, Wa

## Ph 508-500-4806
## Ph 617-674-2147

**sales@faxqom.com**

**Worldwide IP Fax Broadcast Services**