UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CIN-Q AUTOMOBILES, INC., and
MEDICAL & CHIROPRACTIC CLINIC, INC,
Florida corporations, individually and as
the representative of a class of similarly situated
persons,

        Plaintiffs,

v.                                 Case No:  8:13-cv-01592-AEP

BUCCANEERS LIMITED PARTNERSHIP
and JOHN DOES 1-10,

        Defendants.

_____/

## **ORDER & MEMORANDUM**

This cause is before the Court on the Defendant's Motion for Final Summary Judgment ("Def.'s Mot.), ECF Nos. 129, 130-37, 142, 155, 158, 160, and Plaintiffs' response in opposition thereto ("Pls.' Resp."), ECF Nos. 144, 159, as well as Plaintiffs' Motion and Memorandum of Law in Support of Summary Judgment ("Pls.' Mot."), ECF Nos. 138, 145, 156-57, 159, and Defendant's response in opposition thereto ("Def.'s Resp."), ECF No. 143. For the reasons that follow, Defendant's motion (ECF No. 129) is DENIED, and Plaintiffs' motion (ECF No. 138) is DENIED.

## I.    Background

This action arises from a complaint filed by Plaintiffs Cin-Q Automobiles, Inc. ("Cin-Q") and Medical & Chiropractic Clinic, Inc. ("MCC") (collectively, "Plaintiffs").  Am. Compl., ECF No. 70.  Plaintiffs, individually and as the representative of similarly-situated persons, seek to recover for purported unsolicited facsimiles transmitted by Defendant Buccaneers

Limited Partnership ("BLP").  Am. Compl. 1, ECF No. 70.  Plaintiffs assert their private right of action pursuant to the Junk Fax Prevention Act of 2005, 47 U.S.C. § 277 ("JFPA"), and also seek to recover through common law conversion claims.  Am. Compl. 9, 14, ECF No. 70.

On January 3, 2014, this Court granted BLP's motion to bifurcate liability and class certification issues, determining that the appropriate standard of liability should be addressed prior to any consideration of class certification.  Order 4, ECF No. 68.  The parties subsequently filed the instant cross-motions for summary judgment, as well as notices of supplemental authority detailing their respective positions on the recent Eleventh Circuit Court of Appeals opinion relating to this matter, which the Court construes as amendments to the parties' motions for summary judgment.

## II.    Facts

In January 2009, Matthew Kaiser ("Kaiser"), an employee of BLP tasked with new business development, contacted a Steven Simms ("Simms"), Executive Vice President of Marketing with FaxQom—a purported entity claiming to be in the business of facsimile marketing.  Def.'s Mot. 4, App. at 4-9, ECF No. 130.  Kaiser, having discussed legal concerns with Simms as well as FaxQom's vast library of "opt-in" numbers, executed a fax indemnity agreement and engaged FaxQom to send a series of facsimiles advertising Tampa Bay Buccaneers tickets.  Def.'s Mot. 5, Clement Dep. at 184-186, Mar. 10, 2013, ECF No. 132-1; Def.'s Mot. 6, App. at 34, ECF No. 130.

Several months later, in July 2009, BLP directed FaxQom to fax such advertisements to numbers comprising a series of area codes in and around the greater Tampa Bay area.  Pls.' Mot. 4, Ex. C at 12, 138-4.  One of the faxes, sent to area code 813 on July 15, 2009, was received by MCC.  Pls.' Mot. 4, Ex. D at 20, ECF No. 138-5.  Following this first wave of

faxes, BLP received multiple complaints from Tampa Bay area residents, reacting internally by requesting that FaxQom remove the individuals' fax numbers from future lists.  Pls.' Mot. 5, Ex. C at 22-26, ECF No. 138-4.

Subsequently, on August 13, 2009, BLP directed FaxQom to send a second wave of faxes to the same series of area codes.  Pls.' Mot. 6, Ex. C at 31, ECF No. 138-4.  Cin-Q alleges it received one of the fax transmissions on August 19, 2009.  Pls.' Mot. 6, Ex. E at 267-68, ECF No. 138-6.  As with the initial round of faxes, objections followed the August 2009 fax transmissions.  One such notice came from attorney Phyllis J. Towzey, who warned BLP that it was violating the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227(b)(1)(C), and offered to settle for $1,000—later debating BLP over the meaning and purpose of "sender" liability under the statute.  Pls.' Mot. 7, Ex. F, ECF No. 138-7.  Another, more formal complaint came from Cin-Q, who filed a class-action lawsuit against BLP on August 28, 2009.  Pls.' Mot. 7, Ex. H, 138-9, ECF No. 138-9.

On October 2, 2009, BLP sent a letter to FaxQom demanding indemnification and legal defense.  Pls.' Mot. 8, Ex. C at 36, ECF No. 138-4.  Several months later, on May 18, 2010, BLP directed FaxQom to send a third wave of faxes, this time containing indemnification language.  Pls.' Mot. 8, Ex. C at 38, ECF No. 138-4.  MCC once again received a facsimile transmission during this cycle.  Pls.' Mot. 9, Ex. J, ECF No. 138-11.  Following the third transmission sequence, BLP received a letter from the Florida Attorney General advising the company to immediately stop the facsimile transmissions.  Pls.' Mot 9, Ex. C at 48, ECF No. 138-4.  BLP ordered FaxQom to stop transmitting faxes on June 9, 2010, and several days later notified FaxQom that no future faxes would be sent pending the result of legal research on the matter.  Pls.' Mot. 10, Ex. C at 53-54, ECF No. 138-4.

Subsequent deposition testimony appears to have unveiled a complicated web of conflicting facts underlying the relationships set forth in the above-mentioned sequence of events.  For example, testimony points to an individual named Michael Clement ("Clement") as having operated under the alias of Simms, a fiction created by Clement to "keep his name out of it."  Def.'s Mot. 11, Michael Wayne Clement Dep. at 68-80, Mar. 10, 2014, ECF No. 132.  Further, it appears that FaxQom is not a legal entity, and, unbeknownst to BLP, may not have sent any facsimile transmissions itself, Def.'s Mot. 11, Clement Dep. at 79, ECF No. 132, instead delegating the task to third-party databases and transmitters, who, in turn, delegated tasks to other third parties.  Def.'s Mot. 12, Clement Dep. at 254-55, ECF No. 132-1; Def.'s Mot. 13, Jonathan Nelson Dep. at 19, Jan. 16, 2014, ECF No. 134.  It is unclear precisely how far removed BLP was from the party that ultimately undertook physically pressing the send button in every transmission, but BLP generally appears to have been two to three degrees of connection removed from the transmissions.  Def.'s Mot. 13, Nelson Dep. at 19, 35, ECF No. 134; Def.'s Mot. 13, Brian Sheekey Dep. at 42, Dec. 26, 2013, ECF No. 136.

### III.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a); *see also Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008).  In considering a summary judgment motion, the Court must remember that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Thus, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id*.; *see also Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1280

4

(11th Cir. 2004) ("All reasonable doubts about the facts should be resolved in favor of the non-movant." (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999))). Moreover, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

"The party moving for summary judgment 'bears the initial responsibility of informing the district court of the basis for its motion.'" *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314–15 (11th Cir. 2011) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The ultimate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. Additionally, summary judgment is particularly appropriate where the parties present only questions of law on an issue and no disputed facts. *See Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011).

If, after having reviewed the record through the prism of Federal Rule of Civil Procedure 56, "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment ought be granted. *Jackson*, 372 F.3d at 1280 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal quotation marks omitted).

## IV.  Analysis

### i.  BLP's Status as "the sender"

The TCPA, in relevant part, makes it unlawful for any person to use a fax machine, computer or other device to send an unsolicited advertisement to a fax machine if the sender or recipient is in the United States. 47 U.S.C. § 227(b)(1)(C); *e.g.*, *Palm Beach Golf Ctr.-Boca,*

*Inc. v. Sarris*, 981 F. Supp. 2d 1239, 1247 (S.D. Fla. 2013) *rev'd and remanded on other grounds*, 771 F.3d 1274 (11th Cir. 2014); *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013), *reh'g denied* (Sept. 24, 2013), *cert. denied sub nom. Turza v. Holtzman*, 134 S. Ct. 1318 (2014).  The statute provides a private right of action for injunctive relief and for damages equal to the actual monetary loss or $500 for each violation.  47 U.S.C. § 227(b)(3).

BLP asserts summary judgment is warranted in its favor because, as a matter of law, Plaintiffs are unable to establish that BLP used a facsimile machine to send the advertisements at issue.  Def.'s Mot. 13, ECF No. 129.  According to BLP, a violation of the TCPA requires that a "sender" be an entity actually using a facsimile machine to send facsimiles.  Def.'s Mot. 13-14, ECF No. 129.  BLP also contends that, absent direct participation, an agency relationship is required to establish BLP's liability under the statute—something BLP further argues is absent in the instant action.  Def.'s Mot. 13-24, ECF No. 129.  Conversely, Plaintiffs move for summary judgment asserting that BLP is ultimately liable under the TCPA for the mere fact that its goods or services are advertised in the faxes at issue and, additionally, because the facsimiles at issue were sent on behalf of BLP.  Pls.' Mot 1, 12, ECF No. 138.  Plaintiffs also contend that BLP is directly and vicariously liable under the principles of common law agency and tort.  Pls.' Mot. 16, ECF No. 138.

Subsequent to the parties' summary judgment submissions in this case, the Eleventh Circuit Court of Appeals addressed the issue of TCPA liability in *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris* ("*Sarris*"), 771 F.3d 1274 (11th Cir. 2014).  In *Sarris*, the Eleventh Circuit overturned a district court ruling that a plaintiff could only prevail under the TCPA against a delegating defendant on a theory of vicarious liability.  *Id.* at 1290.  The district court had relied on *In re DISH Network, LLC*, 28 FCC Rcd. 6574 (2012) (declaratory ruling) ("DISH Network"), in

holding that an unsolicited fax transmission constituted a violation of the TCPA only by the person physically transmitting the fax itself. *Id.* at 1283. The Eleventh Circuit, instead, rejected *DISH Network* as controlling on this particular issue and, furthermore, expressly rejected the contention that the "sender" of the fax must be the person who physically transmitted it, *id.* at 1284-1285 ("Accordingly, because DISH Network did not address the TCPA's junk-fax-ban provision, the District Court's reliance on it . . . was misplaced."), a premise upon which BLP builds its motion for summary judgment.

Undeterred, BLP, through its supplemental authority, submits the *Sarris* decision as dispositive of BLP's motion. Def.'s Notice Suppl. Authority, ECF No. 160. BLP argues that *Sarris* requires a contract between the defendant and the entity that sent the facsimile and authorization. Def.'s Notice Suppl. Authority, ECF No. 160. This position, however, misconstrues *Sarris* and ignores the FCC regulation governing this claim.[1] *See Sarris*, 771 F.3d at 1284 n. 7 (noting *that In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*, 21 F.C.C. Rcd. 3787, 3822 (2006), accords with the pre-2006 construction).

*Sarris* held that "a person whose services are advertised in an unsolicited fax transmission, and on whose behalf the fax is transmitted, may be held liable directly under the TCPA's ban on the sending of junk faxes." 771 F.3d at 1284. The Court's holding is ultimately premised on an approval, per *Chevron's* deference standard,[2] of a 1995 FCC Memorandum Opinion and Order. *Sarris*, 771 F.3d at 1286-87 ("Having found the term "to send" undefined by the TCPA and that the term is ambiguous, our inquiry turns on the question of whether the FCC's

---

[1] In *Sarris*, the cause of action was governed by a 1995 FCC Memorandum Opinion and Order, as the action accrued in 2005—preceding the 2006 regulation. *Sarris*, 771 F.3d at 1284 n. 7.

[2] *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

interpretation of who qualifies as the 'sender' of an unsolicited fax advertisement, as used in the statute, is permissible. We find that it is.") (citing *Quinchia v. U.S. Att'y Gen.*, 552 F.3d 1255, 1258 (11th Cir.2008) (alterations in original) (quoting *Chevron*, 467 U.S. at 842–43)).

It is clear from the FCC's 1995 decision, as well as its 2006 TCPA Order, that, notwithstanding any attenuated contractual privity of the parties, "the FCC has placed liability at the *source of the offending behavior* that Congress intended to curtail." *See Sarris*, 771 F.3d at 1287 (citing *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. at 12407) (emphasis added); *In the Matter of Rules & Regulations*, 21 F.C.C. Rcd. at 3822.    Therefore, "[t]he entity or entities on whose behalf facsimiles are transmitted are ultimately liable." *Sarris*, 771 F.3d at 1285.  This standard does not serve to insulate a delegating source from liability, nor does it, as BLP contends, necessitate a finding of liability through a formal agency relationship.  *Id.*  As noted by the Eleventh Circuit, vicarious liability under the federal common law principles of agency "does not necessarily speak to the liability of a seller, who, through a third party, send[s], to a telephone facsimile machine, an unsolicited advertisement." *See id.* (internal quotations omitted).  BLP's motion in this regard therefore fails as matter of law.  *See id.*

Plaintiffs, in turn, argue that the decision in *Sarris*, as well as the FCC's codification of the "on whose behalf" standard approved in the case, compel judgment under the TCPA against BLP.[3]  Pls.' 1-2, ECF No. 159.  This position similarly fails to accurately reflect *Sarris* and the FCC's 2006 Final Rule promulgation.

---

[3] Insofar as Plaintiffs appear to move for summary judgment both on behalf of the class representatives as well as the entire class, the record does not support such a motion at this procedural juncture in the case.  The record before the Court lacks any indication of which telephone numbers the facsimiles at issue were sent to, absent a handful of individuals who filed complaints against and/or contacted BLP.  *See, e.g.*, Pls.' Mot, Ex. B at 119, 143, 150 ECF

Plaintiffs first argue that BLP is the sender under both parts of the regulatory definition, that is, BLP is the sender even if the faxes were not sent on its behalf.  Pls.' Mot 12, ECF No. 138. Plaintiffs rely on 47 C.F.R. §  64.1200(f)(10) (2008), which reads:

> The term sender for purposes of paragraph (a)(4) of this section means the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement.

*Accord In the Matter of Rules & Regulations*, 21 F.C.C. Rcd. 3787, 3822 (f)(8) (2006*); In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*, 23 F.C.C. Rcd. 15059, 15069 n. 20 (2008).  According to Plaintiffs, a "sender" can, therefore, be either the person or entity "on whose behalf" the fax is sent or the person or entity whose "goods or services are advertised."  In other words, both are sufficient conditions to be a "sender" under the TCPA.  Pls.' Mot. 13, ECF No. 138.

This interpretation fails for several reasons.  First, the FCC's 2006 Order[4] clarifies itself by noting the following:

> We take this opportunity to emphasize that under the Commission's interpretation of the facsimile advertising rules, *the sender is* the person or entity *on whose behalf the advertisement is sent*.  *In* most *instances, this will be the entity whose product or service is advertised or promoted in the message*.  As discussed above, the sender is liable for violations of the facsimile advertising rules, including failure to honor opt-out requests.  Accordingly, we adopt a definition of sender for purposes of the facsimile advertising rules.

---

No. 138-3 (depicting several generic Broadcast Confirmation pages); Pls.' Mot, Ex. B, BLP's Resp. Requests Admis., ECF No. 138-3 (denying requests 27, 48, 62, 65, 105-110).

[4] The Code of Federal Regulations governing this claim was effective November 14, 2008 to July 10, 2012—the time period in which Plaintiffs' claims began to accrue.  *See* 47 C.F.R. §  64.1200 (2008).  The relevant language of the subsection is identical to the 2006 language approved to amend Part 64 of the Code of Federal Regulations.  *See In the Matter of Rules & Regulations*, 21 F.C.C. Rcd. 3787, 3822, App. A at (f)(8) (2006).

*In the Matter of Rules & Regulations*, 21 F.C.C. Rcd. at 3808 (emphasis added).  The statement above implies that a necessary condition to being a "sender" is that the facsimile is sent on their behalf, and that, in at least some instances, an entity whose product or service is advertised or promoted will not be a sender.  This speaks to a much more reasonable interpretation, to wit: a sender is the person or entity on whose behalf a facsimile is sent [containing] (1) an unsolicited advertisement or (2) goods or services advertised or promoted in the unsolicited advertisement.

Such an interpretation is also supported by *Sarris*, which notes that the FCC's pre-2006 construction accords with the 2006 decision detailed above in *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*.  *See Sarris*,  771 F.3d at 1284 n. 7 (discussing *In re Rules & Regulations*, 10 FCC Rcd. at 12407).  A 2006 version of the regulation that purports to add an alternative method to establish sendership, one completely independent of the "on whose behalf" standard endorsed in *Sarris*, would not appear to "accord" with its predecessor.  *See Sarris*, 771 F.3d at 1284 n. 7, 1285 ("Thus, in 1995 the FCC stated that the TCPA provided for direct liability for an entity on whose behalf goods or services were promoted by unsolicited fax advertisement.").

Finally, Plaintiffs' interpretation leads to absurd results which cannot possibly follow from a permissible construction of the TCPA or from an agency's reasonable interpretation of its regulations.[5]  *See Chevron*, 467 U.S. at 842–43; *Blessitt v. Ret. Plan For Employees of Dixie Engine Co.*, 848 F.2d 1164, 1168 (11th Cir. 1988).  To conclude that an individual or entity is *per se* a "sender" under the TCPA merely because their "goods or services" appear as advertised

---

[5] The Court recognizes the courts of appeals' exclusive jurisdiction over claims to enjoin, suspend, or invalidate a final order of the FCC and raises this point merely as one of analytical construction and interpretation.  *See Self v. Bellsouth Mobility, Inc*., 700 F.3d 453, 461 (11th Cir. 2012).  Here, the Court need not and does not intend to collaterally review the correctness or validity of the FCC decisions at issue.

in the faxes at issue, Pls.' Mot. 12-13, ECF No. 138, would give rise to, what the parties have labeled, sabotage liability.  By way of illustration, it would allow a rabid Tampa Bay Buccaneers fan—with a rhino helmet, red face paint, and an undying devotion to the organization—to trigger *per se* liability for the organization under the TCPA by gratuitously, and without directive from or notice to the organization, promoting season ticket sales via fax. The same could be true of a random individual in Boston, mind brewing with *scienter*, who works to implicate the New York Yankees by advertising their season tickets.[6]  Universal liability for complete inaction was not contemplated by Congress in passing the TCPA and does not appear to have been contemplated by the FCC in crafting and interpreting its regulations. As detailed in *Sarris*, Congressional intent sought to limit two injuries by enacting the provision: (1) the "shift[ing of] some of the costs of advertising from the sender to the recipient," and (2) the "occup[ation of] the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax."  H.R.REP. NO. 102–317, at 10 (1991); 771 F.3d at 1281.  Once again, "the FCC has placed liability at the source of the offending behavior that Congress intended to curtail."  *See Sarris*, 771 F.3d at 1287.

It is for this reason that the statute does not call for *per se* liability, but rather "[t]he TCPA is *essentially* a strict liability statute …"  *See Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) (emphasis added).  Accordingly, Plaintiffs cannot dispense with the burden of proving that the faxes at issue were sent on behalf of BLP.  BLP is not merely

---

[6] The Court declines to, as Plaintiffs proposed in oral argument, ignore the illogic created by such an interpretation simply because the facts of this case don't necessarily match a sabotage scenario.  Doing so would, in essence, require the Court to blindly interpret and apply an agency regulation within the vacuum of this case—a restriction not applied to judicial reasoning in our system.

a *per se* sender because their advertising is included in the faxes at issue—an action or inaction that sets the causal chain in motion must, in some way, be attributable to BLP. *See Sarris*, 771 F.3d at 1284 ("We agree, and hold that a person whose services are advertised in an unsolicited fax transmission, *and on whose behalf* the fax is transmitted, may be held liable directly under the TCPA's ban on the sending of junk faxes." (emphasis added)).

Having concluded that the FCC's construction of the statute, as endorsed by *Sarris*, requires that BLP be the entity on whose behalf a facsimile(s) was sent in order to qualify as a "sender," the question remains whether a material issue of fact exists for trial. Plaintiffs insist that, in light of *Sarris*, BLP may be held liable directly under the TCPA and, additionally, that no issues of material fact exist as to its liability under the Act. Pls.' Notice Suppl. Authority Supp. Summ J., ECF No. 159.

As mentioned above, the *Sarris* opinion makes clear that vicarious liability through common law agency is not required for an entity to be held directly liable under the TCPA. *See* 771 F.3d at 1285-87. By the same stroke, however, *Sarris* also appears to reject the application of *per se*, automatic liability. *See id.* at 1287-88. While intent may not be necessary to establish sendership, liability does not impulsively and invariably run to the beginning of the chain of distribution. *See id*. The opinion, notably, rejects the requirement of vicarious liability through common law agency but goes on to determine—despite a clear connection between defendant, defendant's marketing manager, a third party broadcaster, and plaintiff—that a factual query exists as to "the question of on whose behalf the fax advertisement was sent." *See id.* (remanding the issue for jury determination).

This Court is, therefore, left only to conclude that "on whose behalf" is a standard lying somewhere in the middle—more forgiving than a blanket application of *per se* liability but

somewhat more stringent than vicarious liability through common law agency.  It seems *Sarris* has, in essence, allowed for direct liability through a totality test based loosely on agency principles, aimed at establishing the origin of the offending behavior.  *See id.* at 1287 ("By construing the sender as the party 'on whose behalf facsimiles are transmitted,' the FCC has placed liability at the source of the offending behavior that Congress intended to curtail."). Circumstances to be considered include, but are not limited to, the degree of input and control over the content of the fax(es), the actual content of the fax(es), contractual or expressly stated limitations and scope of control between the parties, privity of the parties involved, approval of the final draft of the fax(es) and its transmission(s), method and structure of payment, overall awareness of the circumstances (including access to and control over facsimile lists and transmission information), and the existence of measures taken to ensure compliance and/or to cure non-compliance with the TCPA.  *See id.* at 1287-88.  These considerations weigh importantly in determining on whose behalf the offending behavior is conducted.  *See id.*

Viewed through this lens, in the instant case, "on whose behalf" is a question for which material issues of fact exist in the record.  In reaching this conclusion, the Court is mindful that it must draw all inferences and facts in a way most favorable to the non-moving party.  *See*, *e.g.*, *Jackson*, 372 F.3d at 1280.  Having done so, sufficient disagreement exists as to the nexus between the offending conduct and BLP, the alleged party on whose behalf the faxes were sent.

The record indicates that BLP maintained continued input and control over the content of the transmitted faxes, which displayed images and messages that were commercially advantageous to BLP.  *See e.g.*, Pls.' Mot, Ex. C at 41, ECF No. 138-4.  The record is, however, far less clear as to the level of control exerted by BLP over FaxQom, much less FaxQom's delegates.  FaxQom provied assurances, memorialized in an agreement between FaxQom and

BLP, that 100% of its numbers were "opt-in," that FaxQom was familiar with the TCPA and industry standards, that FaxQom used "legal techniques" in gathering its fax data, that industry practices outlined by the Direct Marketing Association were routinely followed by FaxQom, and that FaxQom would abide by all laws associated with facsimile marketing. Def.'s Mot. 5-6, App. at 35, ECF No. 130.  Further, BLP claims it was under the impression that Simms from FaxQom was to be the only person authorized to work on BLP's account, and that FaxQom would be the only entity with the limited authority to press the "send" button.  Pls.' Mot., Ex. A at 23, 27, ECF No. 138-2; Def.'s Mot., Clement Dep. at 254-55, ECF No. 132.  This being said, it is unclear whether BLP was able to effectively retain and enforce such control over FaxQom, as Kaiser testified that he does not "have confirmation really that anything went out."[7] Pls.' Mot., Ex. A at 43, 45, ECF No. 138-2.  Additionally, the record reveals that BLP had no access to the fax lists at issue;[8] was unaware of the FaxQom's outsourcing to third parties USA Datalink, 127 Highstreet, and Rocket Messaging (collectively, "delegates");[9] and, drawing

---

[7] BLP's lack of control in this regard is further supported in the record by a series of complaints, to which BLP had to react through FaxQom— at one point requesting "proof" that FaxQom had included opt-out language in its fax.  Pls.' Mot. 9, Ex. C, ECF No. 138-4. Likewise, Clement testified that because BLP did not know he was delegating tasks to third parties, BLP had no way of controlling FaxQom's actions.  Def.'s Mot., Clement Dep. at 245-55, ECF No. 132.

[8] Kaiser stated that he never asked Simms for any of the fax numbers and that he was never provided with any of the fax numbers at issue.  Pls.' Mot., Ex. A at 39, ECF No. 138-2. Similarly, Clement testified: "Yeah, I don't have any—never had any numbers to send to anybody."  Def.'s Mot., Clement Dep. at 106, ECF No. 132.

[9] Kaiser, in response to being asked about his reaction to Michael Clement (i.e. Simms)'s deposition, testified: "Wow. I'm shocked that [] he used an alias. I think I'm shocked that he ended up using other companies to send the faxes out. You know, he only had the authority – limited authority that I gave him to send things, so I was surprised to see [] how far the trail went."  Pls.' Mot. Ex. A at 28, ECF No. 138-2.  Kaiser further stated: "FaxQom was the person sending [sic] the 'Send' button, to my knowledge, and they were the only one who had limited authority to do so. I was only made aware that there were other companies in the past couple of weeks."  Pls.' Mot., Ex. A at 34, ECF No. 138-2.

inferences in favor of BLP, BLP's control over those entities amounted to none.  *See* Def.'s Mot., B. Sheekey Dep. at 94-108, ECF No. 136; Def.'s Mot., Clement Dep. at 245-55, ECF No. 132.

While the record indicates that BLP made repeated attempts to approve and adjust content, as well as direct waves of fax broadcasts to different geographical areas through FoxQom, Pls.' Mot., Ex. C at 31, ECF No. 138-4, the privity of the parties involved in the broadcasts appears to be, as BLP argues, a tortured path of lies and deceit.  *See* Def.'s Mot. 15, ECF No. 129.  A reasonable jury could conclude that BLP relied on reasonable assurances by FoxQom,[10] which to its knowledge was the only entity involved, and took repudiative and curative measures when noncompliance was brought to its attention by members of the putative class.[11]  Such an analysis could lead a rational trier of fact to conclude that the violative faxes were not sent on behalf of BLP but, rather, FaxQom or Datalink—the true sources of the offending behavior.

This notwithstanding, evidence in the record could also support the proposition that BLP ratified what it knew to be offending conduct—deciding to turn a blind eye and accept the

---

[10] FaxQom assured BLP that, in maintaining its opt-in list, its compiling center "uses a 12-15 second script when calling companies and receiving the fax numbers verbally from company owners/employees."  Def.'s Mot., App. at 74, ECF No. 130.  Moreover, BLP's reliance on FaxQom's representation that it possessed a list of 305,489 "opt-in" fax numbers for the area codes at issue is not unreasonable on its face.  *See* Pls.' Mot., Ex. A at 26, ECF No. 138-2.  Kaiser, for example, testified that later emails appeared to show that the list was dynamic in nature—commenting on a May 2009 number of 306,000, which "helps to solidify that it looks like they're continuing to add to this list," further noting that "in six months' time, a thousand extra accounts seemed very reasonable to me, and I remember specifically looking at that.  It seemed like they were continuing their practices of [] opting in."  Pls.' Mot., Ex. A at 36, ECF No. 138-2.

[11] For instance, BLP took internal action to remove certain individuals who had expressed grievances, and reminded FaxQom to exclude such numbers from future waves.  Pls.' Mot., Ex. C at 26, 31, ECF No. 138-4.

collateral damage created by its agent's actions, all while hiding behind a promise of indemnity.[12]  Ample evidence before the Court suggests this may be the case, but it is not so undeniable as to compel this court to grant summary judgment—especially when viewed against the backdrop of *Sarris*.  *See* 771 F.3d at 1287-88.  Ultimately, this Court cannot conclude that the record here—where the source, scope and form of the offending directive is inconclusive—supports removing this matter from the province of the jury when the Eleventh Circuit has unflinchingly defined the matter as engendering "a question of fact to be decided by a jury." [13]  *See id*. (citing *Tolan v. Cotton*, —— U.S. ——, 134 S.Ct. 1861, 1866, (2014)); *see also Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285–86 (11th Cir. 2001) (noting that the Supreme Court has held that "'even in the absence of a factual dispute, a district court has the power to 'deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.''") (quoting *8 Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994) (quoting *Anderson*, 447 U.S. at 255))*; United States v. Certain Real and Personal Prop. Belonging to Hayes*, 943 F.2d 1292, 1297 (11th Cir.1991).

---

[12] Ed Glazer, the chairman and owner of BLP, upon receiving word that complaints had been logged, instructed Kaiser to send him the signed indemnification agreement, noting "I wouldn't worry [about the complaints]."  Pls.' Mot, Ex. C at 23, ECF No. 138-4.  In the same vein, BLP's efforts toward the end of the facsimile campaign (despite a pending lawsuit) appear to be far more focused on mitigating financial risk than overseeing and ensuring FaxQom's compliance with the TCPA—even signing off on a third wave of transmissions in May 2010.  *See generally* Pls.' Mot. 8-9, ECF No. 138 (citing the record for numerous communications by BLP and its counsel demanding indemnification, legal defense, and that indemnification language be inserted into future FaxQom transmissions).

[13] Because the Court declines to grant summary judgment as to whether BLP is the "sender" under the TCPA, it need not determine whether the activity at issue warrants summary judgment for Plaintiffs under the statute's treble damages provision.  *See* 47 U.S.C. § 227(b)(3).

### ii.   Common Law Conversion Claims

Turning finally to the parties' cross-petitions for summary judgment on Plaintiffs' conversion claims:  Under Florida law, "conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion."  *Star Fruit Co. v. Eagle Lake Growers, Inc.*, 33 So.2d 858, 860 (1948) (quoting 53 AM.JUR., at 822) (internal quotation marks omitted).  "Conversion is an 'act of dominion wrongfully asserted over another's property inconsistent with his ownership therein.'" *Warshall v. Price*, 629 So.2d 903, 904 (Fla. 4th DCA 1993) (quoting 12 FLA. JUR.2D Conversion and Replevin § 1 (1979)).

BLP first asserts that the lack of an agency relationship compels a finding that Plaintiffs' conversion claims fail as a matter of law.  Def.'s. Mot. 24, ECF No. 129.  Conversion is an intentional tort, *e.g.*, *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd*., 450 So.2d 1157, 1160-61 n. 6 (Fla. 3d DCA 1984); *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1143 (M.D. Fla. 2007), for which joint liability may be imposed upon a finding of an agency relationship.  *See, e.g.*, *Home Ins. Co. of New York v. Handley*, 162 So. 516, 518 (1935); *Wilson Cypress Co. v. Logan*, 162 So. 489, 493 (1935); *Horizon Leasing, A Div. of Horizon Fin., F.A. v. Leefmans*, 568 So. 2d 73, 75 (Fla. 4th DCA 1990); *see also* 12 FLA. JUR 2D Conversion and Replevin § 29.  The existence of such a relationship is, however, "normally one for the trier of fact to decide."  *Villazon v. Prudential Health Care Plan, Inc*., 843 So.2d 842 (Fla. 2003) (citing *Orlando Executive Park, Inc. v. Robbins*, 433 So.2d 491, 494 (Fla.1983)). The question is, for example, resolved by summary judgment under Florida law in those cases where the evidence is capable of but one determination and there is no evidentiary question for

the jury to resolve.  *Font v. Stanley Steemer Int'l, Inc.*, 849 So. 2d 1214, 1216 (Fla. 5th DCA 2003) (citing *Goldschmidt v. Holman*, 571 So.2d 422 (Fla. 1990)); *Robbins v. Hess*, 659 So.2d 424, 427 (Fla. 1st DCA 1995).

Believing Plaintiffs' evidence and drawing all justifiable inferences in their favor, BLP's motion fails to establish that the determination of whether BLP was an acting principal to FaxQom is so one-sided that it warrants summary judgment.  *See Anderson*, 477 U.S. at 251–52.  A myriad of evidence in the record supports the existence of an agency relationship under various theories.

BLP's authorization of FaxQom to send fax advertisements speaks to actual agency, which under Florida law, requires 1) acknowledgment by the principal that the agent will act for him or her, 2) the agent's acceptance of the undertaking, and 3) control by the principal over the actions of the agent.  *See Goldschmidt*, 571 So.2d at 424 n. 5 (Fla. 1990);  *Font v. Stanley Steemer Int'l, Inc.*, 849 So. 2d 1214, 1216 (Fla. 5th DCA 2003)*; Ilgen v. Henderson Properties, Inc.*, 683 So.2d 513 (Fla. 2d DCA 1996), *rev.denied*, 686 So.2d 578 (Fla. 1996); *Robbins*, 659 So.2d at 427.  It is unclear whether the conduct at issue falls outside the scope of authority granted to FaxQom, *Padgett v. Sch. Bd. of Escambia Cnty.*, 395 So. 2d 584, 586 (Fla. 1st DCA 1981) ("An agent may still have acted within the scope of his authority even though he deviated from his employer's instructions."), but even assuming it does, a reasonable jury could conclude that BLP ratified its agent's conduct after becoming aware of its potential illegality.[14]  *See Banyan Corp. v. Schucklat Realty, Inc.*, 611 So. 2d 1281, 1282 (Fla. 2d DCA 1992) ("A principal may subsequently ratify its agent's act, even if originally unauthorized, and such

---

[14] While it appears FaxQom delegated at least a portion of the fax transmissions, the record does not conclusively establish that FaxQom did not itself send any transmissions in violation of the TCPA, nor does it otherwise establish that its actions were so limited so as to be free from liability.

ratification relates back and supplies original authority."); *Oxford Lake Line v. First Nat. Bank*, 24 So. 480, 483 (1898) (discussing ratification through willful ignorance or an invariable intention to adopt unauthorized act(s)); *Bach v. Florida State Bd. of Dentistry*, 378 So. 2d 34, 37 (Fla. 1st DCA 1979) (same); *Kumar Corp. v. Nopal Lines, Ltd.*, 462 So.2d 1178, 1185 (Fla. 3d DCA 1985), *rev. den.*, 476 So.2d 675 (Fla. 1985); *cf. Empire Gas & Fuel Co. v. Allen*, 294 F. 617, 619 (5th Cir. 1923) ("The rule as to the power of delegation is that a general agent has implied authority to delegate the performance of ministerial acts, not requiring the exercise of judgment and discretion, to a subagent, and that express authority is not essential.").  For instance, BLP was threatened with lawsuits early on in its faxing campaign, but nevertheless continued to direct that more faxes be sent. Pls.' Mot., Ex. C at 22-23, 25-26, 33, ECF No. 138-4.  Internal business records indicate a continued and increasing awareness of potential illegality and liability, while at the same time evidence continued transmission directives from BLP to FaxQom, who appears to, at the very least, have played a major role in orchestrating the transmissions.  Pls.' Mot., Ex. C at 24, 36, 38, 41, ECF No. 138-4.  Ultimately, the evidence presents sufficient disagreement to require submission to a jury.  *See, e.g., Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions, not those of the judge.").

Next, BLP avers that Plaintiffs' conversion claims fail as a matter of law because the alleged conversion was *de minimis*.  Def.'s. Mot. 24, ECF No. 129.  This very interpretation of Florida law, however, was expressly rejected by the Eleventh Circuit in *Sarris*.  771 F.3d at 1288.  As *Sarris* notes, "nothing in Florida law [] requires that the property have monetary value in order to be converted.  *Id.*  "[T]he definition does not require property to have any specific value whatsoever in order to be subject to conversion . . . Although the value of the property

converted may be significant in determining the amount of damages to be awarded, it appears wholly irrelevant in assessing the legitimacy of the initial cause of action." *Id.* (quoting *Warshall v. Price*, 629 So.2d 903, 904 n. 3 (Fla. 4th DCA 1993). Moreover, in the instant case, at least some evidence exists that the fax at issue was printed from Plaintiffs' fax machines, as copies of the faxes are attached to Plaintiffs' complaint. Am. Compl., Exs. A-C, ECF No. 70. Such evidence engenders a question of fact as to the amount of damages warranted, if any, under the cause of action. *See Warshall*, 629 So.2d at 904 n. 3.

Addressing at last Plaintiffs' motion for summary judgment on its conversion claims, Plaintiffs assert that BLP is directly liable under agency and tort law and, further, that BLP is vicariously liable for FaxQom's acts within the scope of its employment and with apparent authority. Pls.' Mot. 16-24, ECF No. 138. Once again, as detailed throughout, questions of material fact exist that could allow a reasonable jury to decide in favor of either party.

All the evidence viewed in light most favorable to BLP does not obviate the need for jury determination because it is ambiguous whether the complicated and shifting relationship between BLP and FaxQom lends itself to a finding that FaxQom's actions are attributable to BLP under Florida agency law. The above-mentioned facts highlighted by Plaintiffs contrast sharply with the proposition—supported by testimony of Keiser and Clement—that BLP was unaware of any systemic illegal activity and was misled by FaxQom. *See supra* notes 6-10, at 13-15. As detailed above, a material question of fact exists as to whether the conduct at issue exceeded the scope of the agent's authority, which, under Florida law, is "limited to what the principal has authorized the agent to do." *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1253 (11th Cir. 2014) (citing *Poe & Assocs., Inc. v. Estate of Vogler*, 559 So.2d 1235, 1236 (Fla. 3d DCA 1990). A reasonable jury could also conclude, upon reviewing email

20

correspondence between Kaiser and Clement, that the repeated assurances and misinformation supplied to BLP undermine a finding of ratification. *See*, *e.g*., Def.'s Mot., App. at 8, 16, 19, 64,72, ECF No. 130. Moreover, the concept of apparent authority does not fit the factual dispute in this case, where Plaintiffs do not appear to have relied and changed positions based on representations made by anyone—whether it be BLP, FaxQom, Datalink, 127 HighStreet, or Rocket Messaging. *See Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995) ("Our law is well settled that an apparent agency exists only if each of three elements are present: (a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation.").

Furthermore, the Court declines to address Plaintiffs' contentions of employee liability and negligent supervision, as they were not pled theories of recovery, Am. Compl., ECF No. 70, and Plaintiffs do not establish their relevance in an analysis for conversion through agency under Florida law. *See Free v. Bland*, 369 U.S. 663, 671 (1962) (suggesting that where there is no direct allegation of a claim in a pleading, that claim cannot be decided on summary judgment); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that claims cannot be raised for the first time at the summary judgment stage); *Harris v. Wal-Mart Stores E., LP*, No. 1:11-cv-03406, 2013 WL 6795973, at *10 (N.D. Ga. Dec. 23, 2013) (same).

## V.    Conclusion

In light of the foregoing, Defendant's motion (ECF No. 129) is DENIED, and Plaintiffs' motion (ECF No. 138) is DENIED.


DONE AND ORDERED in Tampa, Florida, this 17th day of December, 2014.


_____
ANTHONY E. PORCELLI
United States Magistrate Judge


cc: Counsel of Record