## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| CIN-Q AUTOMOBILES, INC. and MEDICAL & CHIROPRACTIC CLINIC, INC., individually and as representatives of a class of similarly-situated persons, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 8:13-CV-01592-AEP |
| v. | ) ) | |
| BUCCANEERS LIMITED PARTNERSHIP and JOHN DOES 1-10, | ) ) ) | |
| Defendants. | ) ) | |
| ——————————————————— | ) | |
| TECHNOLOGY TRAINING ASSOCIATES, INC., and LARRY E. SCHWANKE, D.C. d/b/a BACK TO BASICS FAMILY CHIROPRACTIC, individually and as representatives of a class of similarly-situated persons, | ) ) ) ) ) ) | Civil Action No.: 8:16-CV-01622-MSS-AEP |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| BUCCANEERS LIMITED PARTNERSHIP, | ) ) | |
| Defendants. | ) | |

## MOTION TO TRANSFER
## RELATED CASE UNDER LOCAL RULE 1.04(B), TO
## CONSOLIDATE CASES AND APPOINT INTERIM CLASS COUNSEL

Plaintiffs Cin-Q Automobiles, Inc. and Medical & Chiropractic Clinic, Inc. ("Cin-Q

Plaintiffs"), through their counsel, and pursuant to Rule 1.04(b) of the Local Rules for the Middle

District of Florida, hereby respectfully moves this Court to enter an order transferring the later-

filed action, *Technology Training Associates, Inc. and Larry E. Schwanke, D.C., d/b/a Bank To

Basics Family Chiropractic v. Buccaneers Limited Partnership*, Case No. 8:16-CV-01622-MSS-

AEP, to the Honorable Anthony E. Porcelli as a related case, and further, pursuant to Federal Rule of Civil Procedure 42(a)(2), consolidating that action with the previously-filed action pending before this Court, *Cin-Q Automobiles, Inc. and Medical & Chiropractic Clinic, Inc. v. Buccaneers Limited Partnership*, Case No. 8:13-CV-01592-AEP (collectively the "Actions"). Consolidation of the two Actions is appropriate under the Federal Rules of Civil Procedure, as detailed below. Additionally, and consistent therewith, the Cin-Q Plaintiffs request that the Court enter an Order appointing the undersigned counsel as Interim Co-Lead Counsel to lead the consolidated class action, so that the combined cases can be prosecuted in an orderly and effective manner. In support hereof, Cin-Q Plaintiffs state as follows:

## Background

1.      **The First-Filed *Cin-Q Action*.**

On June 18, 2013, Cin-Q Automobiles, Inc. filed an action against the Buccaneers Limited Partnership ("BLP") in the Middle District of Florida, Civil Action No. 8:13-CV-01592-AEP (the "*Cin-Q Action*"). The Cin-Q Action alleged that BLP sent unsolicited advertisements by facsimile in violation of the Telephone Consumer Protection Act of 1991 ("TCPA") and its implementing regulations, including the FCC regulations requiring "opt-out notice" on all fax advertisements. (Cin-Q Action, Doc. 1). The *Cin-Q Action* was assigned to, and is pending before Magistrate Judge Porcelli for any and all proceedings and to enter final judgment, by consent of the parties; as such, effectively, Magistrate Judge Porcelli is thus discharging the role of a district judge for purposes of the *Cin-Q Action*. [*See* Order, Cin Q Action Doc. 28].

Over the following nearly three years, the parties and the Court have invested massive resources into litigation in the *Cin-Q Action*. The parties have conducted over a dozen depositions

in Florida, Philadelphia, Colorado, Texas, and Canada.[1] The parties have hired expert witnesses and disclosed their reports and rebuttal reports. The Court has been called upon to decide numerous disputes in overseeing discovery. (*E.g.*, Order, *Cin-Q Action* Doc. 121 (Apr. 8, 2014) (ruling on five discovery motions)).

The Court in the *Cin-Q Action* has also ruled on several substantive motions. On July 16, 2013, BLP filed its motion to dismiss, arguing Cin-Q failed to adequately allege BLP was "vicariously liable" for the fax campaigns. (*Cin-Q Action* Doc. 17). On October 23, 2013, the Court denied the motion to dismiss, holding Cin-Q adequately alleged BLP is the "sender" because it "authorized FaxQom to send the facsimile advertisements on its behalf" and its "goods or services were advertised in the facsimile at issue." (*Cin-Q Action* Doc. 41 at 4, 5–6).

On October 11, 2013, Cin-Q filed a motion for leave to file a Second Amended Complaint adding Medical & Chiropractic Clinic, Inc., as a Plaintiff. (*Cin-Q Action* Doc. 37). BLP vigorously opposed the motion (*Cin-Q Action* Doc. 43), which the Court nevertheless granted on January 3, 2014. (*Cin-Q Action* Doc. 68 at 2). The Cin-Q Plaintiffs filed the Second Amended Complaint the same day. (*Cin-Q Action* Doc. 70).

On May 27, 2014, the parties in the *Cin-Q Action* filed cross-motions for summary judgment on BLP's "vicarious liability" defense. (*Cin-Q Action* Docs. 129, 138). Over the next several months, the parties filed response briefs (*Cin-Q Action* Docs. 143 & 144), and numerous citations of supplemental authority as proceedings unfolded in the Eleventh Circuit in *Palm Beach*

---

[1]     To date, the following have been deposed: (i) in Florida – Karolyn Sheekey (2/17/14), Brian Sheekey (12/26/13), Craig Cinque (2/14/14), Michele Zakrewski (2/12/14), Ben Milson (5/2/14), Manuel Alvare (5/29/14), Brian Ford (5/29/14), and Gregory Williams (10/13/15); (ii) in Philadelphia – Ian Jenkins (6/8/15), David Canfield (12/10/15), and Stephen K. Schurer (2/18/14 no show); (iii) in Canada – Jonathon Nelson (1/16/14), and Stefani Pelowich (3/9/15); in Colorado – Darren Morgan (3/24/14), and Jason Layton (3/24/14); (iv) California – Matt Kaiser (3/25/14); and (v) in Texas – Michael Clement (3/10/14).

*Golf Ctr.-Boca, Inc. v. Sarris*, 771 F.3d 1274 (11th Cir. 2014), including the FCC's submission of an amicus brief on whether "vicarious liability" applies to the TCPA's fax-advertising rules, and the Eleventh Circuit's decision ultimately agreeing with the FCC that the "sender" is directly liable (*Cin-Q Action* Docs. 146, 147, 148), as well as other Eleventh Circuit and district court decisions (*Cin-Q Action* Docs. 155–60).

On December 17, 2014, the Court in the *Cin-Q Action* ruled on the parties' cross-motions for summary judgment, denying both motions in a 22-page Order & Memorandum. *Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship*, 2014 WL 7224943 (M.D. Fla. Dec. 17, 2014). The Cin-Q Plaintiffs subsequently moved to reconsider or certify questions for interlocutory review (*Cin-Q Action* Doc. 170), and BLP moved to bifurcate and proceed to trial on the Cin-Q Plaintiffs' individual claims before deciding class certification (*Cin-Q Action* Doc. 169). On May 5, 2015, following oral argument, the Court denied the motions for reconsideration, for interlocutory appeal, and for bifurcation and individual trial. *Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship*, 2015 WL 2092810 (M.D. Fla. May 5, 2015).

On March 25, 2016, the Cin-Q Plaintiffs filed their motion for class certification. (*Cin-Q Action* Doc. 207). BLP's response to that motion is due to be filed on June 20, 2016.

As it stands today, the docket sheet in the *Cin-Q Action* spans 235 entries.

## 2.    The Dismissed, Competing State Court Action.

On May 6, 2016, Technology Training Associates, Inc. ("TTA") filed a "copycat" action against BLP in Florida State Court, styled *Technology Training Assocs., Inc. v. Buccaneers Ltd. P'Ship*, No. 16-CA-004333, Circuit Court of the 13th Judicial Circuit in Hillsborough County, Florida (the "State Court Action"), purporting to assert substantively identical allegations and claims to the first-filed *Cin-Q Action*, on behalf of the same class as the *Cin-Q Action*, against the

same defendant, and involving the same fax advertisements. Cin-Q Plaintiffs moved in this Court

to enjoin BLP from proceeding in the competing case (*Cin-Q Action* Doc. 223), and also moved

to intervene in, dismiss or stay the State Court Action. Prior to the presentment of the Motions to

the State court, TTA voluntarily dismissed the State Court Action.

### 3.     The Competing, *Later-Filed Action*.

On the evening of June 16, 2016, Cin-Q Plaintiffs received notice that BLP had reached a

settlement with a competing "class representative" and its counsel. The notice stated:

> Pursuant to the directive given by Judge Porcelli at the May 25, 2016 status hearing
> in *Cin-Q, et al. v. Buccaneers Limited Partnership*, Case No. 8:13-cv-01592 (M.D.
> Fla.), please be advised that a settlement has now been reached of claims relating
> to faxes allegedly sent by the Buccaneers Limited Partnership (the Buccaneers") in
> 2009 and 2010. That settlement and its terms are reflected in a written settlement
> agreement, which we understand will be filed no earlier than three (3) days from
> the date of this notice in the United States District Court for the Middle District of
> Florida, along with a request for preliminary approval.

A review of the Court's ECF docket reports on the next day, June 17, 2016, did not reveal any case

that had been filed on behalf of Technology Training, or any other purported class representative,

against BLP on or before June 16, 2016.

Thereafter, on June 20, 2016, Technology Training Associates, Inc. and Larry E.

Schwanke, D.C. d/b/a Bank To Basics Family Chiropractic filed a new action against BLP in the

Middle District of Florida, Civil Action No. 8:16-CV-01622-MSS-AEP (the "*Later-Filed*

*Action*"). The *Later-Filed Action* purports to assert substantively identical allegations and similar

claims to the first-filed *Cin-Q Action*, on behalf of the same class as the *Cin-Q Action*, against the

same defendant, and involving the same fax advertisements. In particular, just as in the *Cin-Q*

*Action*, the *Later-Filed Action* alleges that BLP sent unsolicited advertisements by facsimile in

violation of the TCPA and its implementing regulations, including the FCC regulations requiring

"opt-out notice" on all fax advertisements. (*Later-Filed Action*, Doc. 1).

## <u>Argument</u>

I.   **THE *LATER-FILED ACTION* SHOULD BE TRANSFERRED TO MAGISTRATE JUDGE PORCELLI PURSUANT TO LOCAL RULE 1.04(B).**

The *Later-Filed Action* is perhaps the quintessential case for transfer for relatedness. Local Rule 1.04(b) sets forth the procedure for the transfer of related cases before two or more Judges within the Middle District of Florida:

> (b)   **TRANSFER OF RELATED CASES BEFORE TWO OR MORE JUDGES.** If cases assigned to different judges are related because of either a common question of fact or any other prospective duplication in the prosecution or resolution of the cases, a party may move to transfer any related case to the judge assigned to the first-filed among the related cases. The moving party shall file a notice of filing the motion to transfer, including a copy of the motion to transfer, in each related case. The proposed transferor judge shall dispose of the motion to transfer but shall grant the motion only with the consent of the transferee judge. If the transferee judge determines that the same magistrate judge should preside in some or all respects in some or all of the related cases, the Clerk shall assign the magistrate judge assigned to the first-filed among the affected cases to preside in that respect in those cases.

The two cases are not only related, the *Later-Filed Action* is in fact a copycat of the long-pending *Cin-Q Action*. To wit, the two cases are similar, if not identical, in the following ways:

(a)   the cases have the same defendant;

(b)   the cases contain and are based upon substantively identical allegations;

(c)   the cases aver substantively comparable claims;

(d)   the claims in each of the cases are asserted on behalf of essentially the same class;

(e)   the claims in each of the cases are based upon and involve the same fax advertisements;

(f)   the cases will involve the same witnesses;

(g)   the cases will involve the same evidentiary proofs; and

(h)    the cases will require disposition of substantially the same issues of law.

Further, also as described above, Magistrate Judge Porcelli has presided over several years of active litigation in the *Cin-Q Action*, and has already ruled on numerous procedural and substantive motions in that case. Because Magistrate Judge Porcelli is familiar with the parties, claims, and procedural background of these issues, judicial economy dictates that the *Later-Filed Action* should be transferred to Magistrate Judge Porcelli.

Likewise, transfer of the *Later-Filed Action* to Magistrate Judge Porcelli is consistent with the "first to file" rule, which states that "where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005).

The *Cin-Q Action* was filed three years prior to the June 20, 2016, filing of the *Later-Filed Action*,[2] and is thus "first-filed." Competing lawsuits involving the same parties and the same issues before different Judges waste judicial resources and can lead to conflicting results. *In re Checking Account Overdraft Litig.*, 859 F. Supp. 2d 1313, 1324 (S.D. Fla. 2012). As such, in "the absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982).

---

[2]    In fact, the genesis of this litigation goes back even further, to 2009. Cin-Q filed its first action against BLP, raising the same core issues, in the Circuit Court of the 13th Judicial Circuit in Hillsborough County, Florida, in August, 2009. That case was voluntarily dismissed and refiled in this Court, as the *Cin-Q Action*, after the United States Supreme Court held that the TCPA presents a federal cause of action. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. ---, 132 S. Ct. 740 (2012). The *Cin-Q Action* has been pending in this Court since June, 2013.

Courts applying this rule generally agree "that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999) (*Id.*) (quotations omitted); *see e.g., Bodywell Nutrition, LLC v. Fortress Systems, LLC*, 846 F.Supp.2d 1317, 1321, 1326 (S.D. Fla. 2012); *see also Perkins v. Am. Nat. Ins. Co.*, 446 F.Supp.2d 1350, 1353 (M.D. Ga. 2006) ("[U]nder the 'first-filed rule,' the court where the subsequently filed action has been filed should defer to the court where the first action was filed to allow that court to decide whether it should exercise jurisdiction over both cases in a consolidated action."); *Street v. Smith*, 456 F.Supp.2d 761, 768 (S.D. Miss. 2006); *Kate Aspen, Inc. v. Fashioncraft–Excello, Inc.*, 370 F.Supp.2d 1333, 1338 (N.D. Ga. 2005) ("[T]he first-filed rule generally requires the first court to decide whether the first-filed rule should apply, or whether a narrow exception to the rule that only applies in 'compelling circumstances,' favors transfer of the first-filed case to the second court for consolidation.").

"The 'first-to-file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court decides whether the second suit filed must be dismissed, stayed or transferred and consolidated." *In re Checking Overdraft*, 859 F. Supp.2d at 1325 (citation omitted). In applying the first-filed rule, the court in *In re Checking Overdraft* stated:

> This Court concludes that it cannot sit idly by and allow *Thomas* to proceed. Allowing *Thomas* to move forward would create a dangerous precedent. It would effectively encourage other defendants in MDL 2036 to follow the *Thomas* parties' lead, by cooperating with counsel who file substantially similar cases outside of MDL 2036 against banks that are already defending cases in MDL 2036, with the intent of settling those cases outside MDL 2036 and thereby undermining the ongoing litigation against such bank(s) in MDL 2036. In the Court's view, the actions of the *Thomas* parties, in particular BancorpSouth which has long been subject to this Court's jurisdiction, exhibit a direct attempt to undermine this Court's

authority granted by the JPML. Thus, an injunction shall also issue under the "first-to-file rule."

*Id.*

The federal policy in favor of the first-filed rule is even stronger in a class action because competing class actions are a disservice to putative class members. The primary reason for this is that competing class actions can create a "reverse auction" opportunity for the defendant. A reverse auction is:

> [A] practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant .... The ineffectual lawyers are happy to sell out a class they anyway can't do much for in exchange for generous attorneys' fees, and the defendants are happy to pay generous attorneys' fees since all they care about is the bottom line-the sum of the settlement and the attorneys' fees-and not the allocation of money between the two categories of expense.

*Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1306-07 (S.D. Fla. 2007) (citing *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002)). Although BLP strongly claims the sudden conjuring and immediate putative settlement of the *Later-Filed Action* is not the product of a reverse auction, the circumstances presented certainly, at a minimum, raise that specter.

In *Haydu*, 675 F.2d at 1174, the Eleventh Circuit stated: "In absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case ...." There are no such compelling circumstances presented here. Consequently, under Local Rule 1.04(b), and consistent with the "first filed" rule, the *Later-Filed Action* should be transferred to the Honorable Anthony E. Porcelli.

Wherefore, for each of the foregoing reasons, the Cin-Q Plaintiffs respectfully request that the Court enter an Order transferring the *Later-Filed Action* to the Honorable Anthony E. Porcelli, pursuant to Local Rule 1.04(c), together with such other and further relief as the Court may deem just and proper.

## II.    FOLLOWING TRANSFER, THE ACTIONS SHOULD BE CONSOLIDATED.

The *Cin-Q Action* and the *Later-Filed Action* are ideally suited for consolidation pursuant

to Rule 42 of the Federal Rules of Civil Procedure. Rule 42(a) provides:

>   (a)    If actions before the court involve a common question of
>          law or fact, the court may:
>
>          (1)    join for hearing or trial any or all matters at issue in
>                 the actions;
>
>          (2)    consolidate the actions; or
>
>          (3)    issue any other orders to avoid unnecessary cost or
>                 delay.

Fed. R. Civ. P. 42(a). In *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492 (11th Cir. 1985), the

Eleventh Circuit stated that Rule 42(a) "is a codification of a trial court's inherent managerial power

'to control the disposition of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants.'" (internal citation omitted) Noting that a "district court's decision under

Rule 42(a) is purely discretionary," the Eleventh Circuit held that in exercising its discretion, the

trial court must determine:

>   whether the specific risks of prejudice and possible confusion are
>   overborne by the risk of inconsistent adjudications of common
>   factual and legal issues, the burden on parties, witnesses and
>   available judicial resources posed by multiple lawsuits, the length of
>   time required to conclude multiple suits as against a single one, and
>   the relative expense to all concerned of the single-trial, multiple-trial
>   alternatives.

*Id.* at 1495. In *Hendrix*, the Eleventh Circuit upheld the district court's consolidation of four

personal injury asbestos actions brought by workers against multiple asbestos manufacturers where

plaintiffs' liability theories in each case were similar, the four cases presented common issues of

law and fact, and all relevant factors governing consolidation were duly considered. *Id.* at 1496.

Similarly, in *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006 (11th Cir. 1977), wherein multiple actions arising out of an airline crash in the Florida Everglades were consolidated, the Eleventh Circuit stated that the "purpose of consolidation is to permit trial convenience and economy in administration." *Id.* at 1014. The Eleventh Circuit went on to state that a trial court may order consolidation of cases despite the opposition of the parties, as the "need for a court to exercise its inherent managerial powers as expressed in Rule 42(a) may take precedence over desires of counsel." *Id.*; *see also Nufix, Inc. v. Minsurg Corp., Inc.*, 2011 WL 589531 (M.D. Fla. Feb. 10, 2011) (consolidating related actions was appropriate to eliminate risk of inconsistent adjudications of common factual and legal issues, to lessen the burden on parties, witnesses and judicial resources, and to eliminate unnecessary repetition and confusion); *Kearney Const. Co., LLC v. Bank of Am., N.A.*, 2010 WL 2243870, at *1 (M.D. Fla. June 3, 2010) (consolidating related actions was appropriate due to the many commonalities between the cases, and consolidation eliminated the "risk of inconsistent adjudications of common factual and legal issues and inconsistent verdicts after separate trials.").

The *Cin-Q Action* and the *Later-Filed Action* are both putative class actions filed against the same Defendant for violation of the same statute – the TCPA. The operative pleadings in these two Actions are premised on the same core allegations, and assert claims on behalf of classes of persons who received unsolicited advertising faxes from BLP.

Pursuant to controlling Eleventh Circuit precedent, it is appropriate for this Court to consolidate the Actions. As described, above, the two cases are similar, if not identical, in that the cases have the same defendant; the cases contain and are based upon substantively identical allegations; the cases aver substantively comparable claims; the claims in each of the cases are asserted on behalf of essentially the same class; the claims in each of the cases are based upon and

involve the same fax advertisements; the cases will involve the same witnesses; the cases will involve substantially the same evidentiary proofs; and the cases will require disposition of substantially the same issues of law.

In addition, consolidating both actions will also promote judicial economy and will alleviate the burden on the parties and witnesses posed by multiple lawsuits. In sum, if the cases are not consolidated, two cases with overlapping classes and theories of liability will move forward on different schedules. Consolidation of these cases will therefore advance judicial economy and avoid unnecessary costs and delays associated with simultaneously litigating two separate, but substantively comparable, cases.

Lastly, consolidating both actions will not cause any prejudice to BLP, and will in fact, make the litigation more streamlined and efficient. In contrast, Cin-Q Plaintiffs will be prejudiced if the Actions are not consolidated based on the risk of inconsistent adjudications and the need for duplicative proceedings.

For the foregoing reasons, the Cin-Q Plaintiffs respectfully request this Court to exercise its discretion and consolidate the *Later-Filed Action* with the *Cin-Q Action*.

## III.   THE LAW FIRMS OF ADDISON & HOWARD, P.A. AND ANDERSON + WANCA SHOULD THEN BE APPOINTED AS INTERIM CO-LEAD COUNSEL FOR THE CLASS.

Along with consolidation, Plaintiffs seek the appointment of Anderson + Wanca and Addison & Howard, P.A. – counsel for Cin-Q Plaintiffs in the *Cin-Q Action* - as Interim Co-Lead Counsel, pursuant to Federal Rule of Civil Procedure 23(g) (the "Proposed Interim Co-Lead Counsel"). Rule 23(g) allows the Court to designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action. *See* Fed. R. Civ. P. 23(g)(3).

As the Committee Notes to the 2003 amendments to Rule 23 emphasize, designation of interim class counsel prior to certification is appropriate because:

> It will usually be important for an attorney to take action to prepare for the certification decision. The amendment to Rule 23(c)(1) recognizes that some discovery is often necessary for that determination. Settlement may be discussed before certification. It may also be important to make or respond to motions before certification.

*Id.*

The appointment of the Proposed Interim Co-Lead Counsel is particularly necessary where, as here, there are a "number of overlapping, duplicative, or competing suits pending" that could potentially be consolidated. *See Manual for Complex Litigation, Fourth, Federal Judicial Center* § 21.11 (2007) ("Manual"). In such cases, "designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Id.*

Appointing Proposed Interim Co-Lead Counsel to represent Plaintiffs and the class will ensure "efficiency and economy without jeopardizing fairness to the parties" in the litigation. Manual, § 10.221. The Manual summarizes the responsibilities of lead counsel as follows:

> ***Lead counsel.*** Charged with formulating (in consultation with other counsel) and presenting positions on substantive and procedural issues during the litigation. Typically they act for the group — either personally or by coordinating the efforts of others — in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met.

*Id.* The early appointment of Proposed Interim Co-Lead Counsel here will facilitate the efficient prosecution of the claims at issue in this litigation.

Additionally, Federal Rule of Civil Procedure 23(g)(3) provides that the Court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Although Rule 23(g)(3) does not provide a standard for the appointment of interim lead counsel, the court may consider the factors contained in Rule 23(g)(1). *See Miller v. Beazer Homes USA, Inc.*, 2007 WL 3005332, at *2 (N.D. Ga. Oct. 11, 2007). These factors include: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) counsel's ability to commit sufficient resources to representing the class. Fed. R. Civ. P. 23(g)(1)(A); *see Miller*, 2007 WL 3005332, at *2 (appointing interim class counsel "based upon the work counsel have performed in identifying and investigating potential claims in the action as well as their knowledge and experience in this area of law"); *Ingram v. Health Mgmt. Assocs., Inc.*, 2009 WL 1653565, at *1 (M.D. Fla. June 10, 2009) (appointing interim class counsel committee to "allow this case to progress in an efficient manner").

Proposed Interim Co-Lead Counsel meet the requisite standards under Rule 23(g)(3).

### A.   Proposed Interim Co-Lead Counsel Have Demonstrated a Commitment to Investigating and Advancing the Classes' Claims.

Proposed Interim Co-Lead Counsel have already dedicated substantial resources to advancing the classes' claims in the *Cin-Q Action* by extensively investigating and researching the legal bases for liability. In addition, as discussed above, Proposed Interim Co-Lead Counsel has been actively litigating the claims against the same Defendant throughout the pendency of the *Cin-Q Action*, and its predecessor action, including drafting pleadings, completing extensive discovery

14

and engaging is substantial motion practice. Through their efforts, Proposed Interim Co-Lead Counsel have shown a strong commitment to investigating and advancing the claims of the classes and the firms are committed to maintaining this same high level of representation throughout this litigation. Proposed Interim Co-Lead Counsel are demonstrably extremely qualified to represent the interests of the class and serve as Interim Co-Lead Counsel. *See Miller*, 2007 WL 3005332, at * 2 (decision to appoint interim lead counsel "based upon the work counsel have performed in identifying and investigating potential claims in the action as well as their knowledge and experience in this area of law"). As further set forth below, Proposed Interim Co-Lead Counsel have achieved substantial results in similar cases throughout the country.

### B.  Proposed Interim Co-Lead Counsel Have Significant Experience in Handling Class Actions and Complex Litigation, Particularly TCPA Class Actions.

Proposed Interim Co-Lead Counsel are experienced lawyers who are clearly qualified to act as counsel for the class. Proposed Interim Co-Lead Counsel have significant experience leading the prosecution of complex class actions, including claims under the TCPA specifically. They have been appointed as lead or co-lead counsel in many contested class actions and have recovered substantial monies for their clients and the class members. They have been litigating TCPA claims for many years and have obtained judgments and negotiated class-wide settlements in many such cases.

Anderson + Wanca consists of seven experienced TCPA and class-action litigators. (*See* Anderson + Wanca Firm Resume, attached as Exhibit A). Anderson + Wanca has regularly been appointed class counsel in TCPA actions nationwide, including in this Circuit. *E.g.*, *C-Mart, Inc. v. Metropolitan Life Ins. Co.*, 299 F.R.D. 679, 690 (S.D. Fla. 2015) ("class counsel has sufficient qualifications and experience to handle this class action litigation and has been found adequate in previous TCPA proceedings"); *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*,

2014 WL 7366255, at *6 ("Anderson & Wanca is one of very few firms that specialize in TCPA class actions and so is knowledgeable of the applicable law and experienced in litigating TCPA classes."); *A Aventura chiropractic Center, Inc. v. Med Waste Management, LLC*, 2013 WL 3463489, at *4 (S.D. Fla. July 3, 2013) (appointing Anderson + Wanca as class counsel and noting the significant number of times it has been appointed to do so in similar TCPA cases); *see also Florida First Financial Group, Inc. v. Magnum Painting, Inc.*, Slip. Op. dated October 14, 2010, Case No. 10-00481, Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida (attached as Exhibit B) (granting class certification and appointing Addison & Howard, P.A. and Anderson + Wanca as class counsel); *Sabon, Inc. v. Aqualogic, Inc.*, 2012 WL 6020621, at 3-4 (Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida, Nov. 30, 2012) (attached as Exhibit C) ("The Court concludes that Plaintiff's Counsel are adequate to represent the class. ... Plaintiff's counsel have also demonstrated experience with TCPA claims and class actions. The Court has no doubt as to counsel's loyalty to the class, and concludes that the three law firms representing Plaintiff will fairly and adequately represent the class in this litigation.").

Anderson + Wanca has been appointed in dozens of federal cases outside of this Circuit. *E.g., Am. Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, 2012 WL 3027953, at *7 (W.D. Mich. July 24, 2012) *aff'd*, 757 F.3d 540 (6th Cir. 2014); *Chapman v. Waegner Equities, Inc.*, 2014 WL 540250, *14-15 (N.D. Ill. Feb. 11, 2014); *In re SamMichaels, Inc.*, 2013 WL 1760353, at *1 (6th Cir. Apr. 25, 2013) (rejecting appeal challenging Anderson +Wanca's adequacy); *Siding & Insulation Co. v. Combined Ins. Grp., Ltd., Inc.*, 2012 WL 1425093, at *4 (N.D. Ohio Apr. 24, 2012) (finding A+W "sufficiently experienced and qualified to handle class actions" and "[t]here is no indication Counsel will be unable to commit the necessary resources to properly represent the class"); *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169 (E.D. Pa. 2014); *Savanna Group v. Truan*,

16

2013 WL 626981, *7 (N.D. Ill. Feb. 20, 2013) ("No one disputes the qualifications of plaintiff's counsel under [the Rule 23] metrics."); *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, 2010 WL 5439737, at *5 (E.D. Mich. Dec. 27, 2010) ("Plaintiff's counsel are experienced lawyers who are qualified to act as counsel for the class. Other courts have appointed these lawyers as class counsel in other class actions, in particular other class actions involving TCPA claims."); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, 2014 WL 6750690, *7 (N.D. Ohio Dec. 1, 2014) ("The Court believes that class counsel meets all of the requirements of Rule 23(g)(1) and will adequately represent the class.").

Proposed co-class counsel, Michael Addison, is a Board Certified Civil Trial Lawyer and Board Certified Business Litigation Lawyer and practices exclusively in litigation and appellate practice, with a focus upon complex commercial matters and representation of claimants in consumer class action litigation. (*See* Addison Biography, attached as Exhibit D). Mr. Addison has played a central role in the litigation over BLP's fax campaign since he filed the first such lawsuit in August 2009.

### C.   Proposed Interim Co-Lead Counsel Have Committed and Will Continue to Commit the Resources Necessary to Fully Protect the Interests of the Class.

As demonstrated from the above, Anderson + Wanca is a well-established law firm with the resources and personnel necessary to vigorously pursue a complex case of this magnitude. The firm, along with Addison & Howard, P.A. also has sufficient financial resources to fund this consolidated case through its resolution, and the firm has demonstrated its ability to fund complex class actions on a contingency basis in the numerous prior cases it has successfully litigated. Proposed Interim Co-Lead Counsels' resources are not merely financial, but also include substantial expertise and work-product in similar cases. As such, the resource factor under Rule 23(g)(1)(A) clearly favors the appointment of Proposed Interim Co-Lead Counsel.

Based on the Proposed Interim Co-Lead Counsels' work in this case and other similar matters, as well as the firms' expertise in prosecuting complex class action claims, Proposed Interim Co-Lead Counsel fully understand the substantial investment of time and resources necessary to properly pursue and lead a consolidated action. Proposed Interim Co-Lead Counsel have made - and are fully committed to continuing to make - the necessary investment to bring a consolidated case to successful resolution.

**D.      Proposed Interim Co-Lead Counsel Will Fairly and Adequately Represent the Interests of the Class.**

In addition to the factors under Rule 23(g)(1)(A), Rule 23(g)(4) provides that class counsel "must fairly and adequately represent the interests of the class." Although the Federal Rules of Civil Procedure do not provide specific criteria to assess fairness or adequacy under this subsection, the work already performed in this case by Proposed Interim Co-Lead Counsel provides clear indication of and support for the fact that the firms will fairly and adequately represent the class in this case. Implicit in the numerous court decisions appointing Anderson + Wanca as class counsel is the fact that the firm has an established history of fairly and adequately representing interests of class members in pursuing their claims.

The Proposed Interim Co-Lead Counsel satisfy each of the applicable considerations under Rule 23(g) and, as such, the appointment of Proposed Interim Co-Lead Counsel is appropriate. By appointing Proposed Interim Co-Lead Counsel in the consolidated action, this Court will ensure that the interests of all class members will be well-protected in this litigation and that class members' claims will not be adversely impacted by other actions.

<u>Conclusion</u>

For each of the foregoing reasons, Plaintiffs Cin-Q Automobiles, Inc. and Medical & Chiropractic Clinic, Inc. request that the Court enter an Order:

A.     Granting this Motion To Transfer Related Case Under Local Rule 1.04(B), To Consolidate Cases And Appoint Interim Class Counsel;

B.     Transferring the *Later-Filed Action* (Civil Action No. 8:16-CV-01622-MSS-AEP) to the Honorable Anthony E. Porcelli, pursuant to Local Rule 1.04(c);

C.     Consolidating *Later-Filed Action* (Civil Action No. 8:16-CV-01622-MSS-AEP) with the *Cin-Q Action* (Civil Action No. 8:13-CV-01592-AEP) pursuant to Rule 42(a)(2) of the Federal Rules of Civil Procedure;

D.     Appointing Addison & Howard, P.A. and Anderson + Wanca as Interim Co-Lead Counsel to represent Plaintiffs and the class in the consolidated Actions; and

E.     Granting any such further relief as the Court deems just and appropriate.

Date: June 20, 2016                              Respectfully submitted,

                                   By:     /s/ Ryan M. Kelly
                                           Ryan J. Kelly, Florida Bar No. 90110
                                           Ross M. Good, FL Bar No: 116405
                                           **ANDERSON + WANCA**
                                           3701 Algonquin Rd., Suite 500
                                           Rolling Meadows, IL 60008
                                           Tel: (847) 368-1500
                                           Fax: (847) 368-1501
                                           Email: rkelly@andersonwanca.com
                                                  rgood@andersonwanca.com
                                           And

                                           Michael C. Addison, Florida Bar No. 0145579
                                           **ADDISON & HOWARD, P.A.**
                                           400 N. Tampa St., Suite 1100
                                           Tampa, FL 33602-4714
                                           Tel: (813) 223-2000
                                           Fax: (813) 228-6000
                                           Email: m@mcalaw.net

## CERTIFICATE OF CONFERENCE

Counsel for the Movants has conferred with counsel for the Plaintiff by correspondence in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing Plaintiff's Motion To Transfer Related Case Under Local Rule 1.04(B), To Consolidate Cases And Appoint Interim Class Counsel was filed on June 20, 2016, via the electronic filing system of the Middle District of Florida, which will automatically serve counsel of record in this action.

Additional copies of this motion were served on counsel in the *Later-Filed Action*, via electronic mail:

Phillip A. Bock
*phil@classlawyers.com*
Daniel J. Cohen
*daniel@classlawyers.com*
*danieljaycohen209@gmail.com*
Jonathan B. Piper
*jon@classlawyers.com*

BOCK, HATCH, LEWIS & OPPENHEIM, LLC
134 North LaSalle St., Suite 1000
Chicago, IL 60602
Telephone: 312.658.5500
Facsimile:  312.658.5555


/s/ Ryan M. Kelly