IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

| | | |
|---|---|---|
| CIN-Q AUTOMOBILES, INC., et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 8:13-cv-01592 AEP |
| v. | ) | |
| | ) | Mag. Judge Anthony E. Porcelli |
| BUCCANEERS LIMITED | ) | |
| PARTNERSHIP, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION TO INTERVENE AND MEMORANDUM OF LAW OF TECHNOLOGY TRAINING ASSOCIATES, INC., LARRY F. SCHWANKE, D.C., d/b/a BACK TO BASICS FAMILY CHIROPRACTIC, BAREWOOD OUTLET, INC., THOMAS SAVINO d/b/a WEBRX PHARMACY PALACE AND RXPALACE.COM, and MERYMAN ENVIRONMENTAL, INC.**

Intervening plaintiffs Technology Training Associates, Inc. and Larry F. Schwanke, D.C. d/b/a Back to Basics Family Chiropractic (collectively "TTA"), joined by Barewood Outlet, Inc., Thomas Savino d/b/a WebRX Pharmacy Palace and RxPalace.com, and Meryman Environmental, Inc. (all collectively, "Intervenors"), on behalf of themselves and all others similarly situated, respectfully move the Court for an order granting them leave to intervene as a matter of right pursuant to Fed. R. Civ. P. 24 (a) (2), or by permission pursuant to Fed. R. Civ. P. 24 (b) (1). Intervenors submit the following memorandum of legal authorities in support of their motion:

I.     **Introduction.**

Intervenors are members of the putative class(es) in this case with claims against defendant Buccaneers Limited Partnership ("BLP") under the Telephone

Consumer Protection Act, 47 U.S.C. § 227. Pursuant to Fed. R. Civ. P. 24 (c), Intervenors have attached as <u>Exhibit 1</u> the Intervenor Class Action Complaint setting forth the basis for their claims. This case arises from the transmissions of over 343,000 facsimiles advertising BLP's goods or services in 2009 and 2010. Each of the Intervenors was sent the advertisements at issue (TTA - 3; Schwanke - 2; Barewood - 3; Savino - 4; Meryman - 2).

Intervenors seek to intervene by permission under Rule 24 (b) (1) or as of right under Rule 24 (a) (2).

Cin-Q and TTA filed separate lawsuits against BLP asserting the same junk fax claims on behalf of the same classes. *Technology Training Associates, Inc. v. Buccaneers Ltd. P'ship,* No. 8:16-CV-01622-T-AEP (M.D. Fla.) (Porcelli, M.J., presiding) ("*TTA*"). Resolution of Cin-Q's claims will necessarily involve the same factual and legal issues posed by TTA's and the other Intervenors' claims. Accordingly, Intervenors have satisfied the standards for permissive intervention under Rule 24 (b) (1).

Intervenors also satisfy the intervention "as of right" standard under Rule 24 (a) (2) because their interests are not adequately represented in the action. For three years, Anderson + Wanca ("Wanca") has attempted to prevent the approval of a fair, reasonable, and adequate class settlement, including by bankrolling a civil lawsuit by one of the Cin-Q plaintiffs that unsuccessfully sought to enjoin TTA's chosen counsel from representing TTA. *Medical & Chiropractic Clinic, Inc. v. Oppenheim,* Case No. 8:16-cv-01477-CEH-TBM, 2016 U.S. Dist. LEXIS 144722

(M.D. Fla. Oct. 19, 2016) (denying preliminary injunction). Apart from the direct interference with *TTA*, Cin-Q's counsel have demonstrated their inadequacy by holding the class(es) hostage to Wanca's quest for record attorney fees through a reversionary, claims-made settlement.

The Court should permit Intervenors to intervene to provide alternative class representation. Intervention will not disrupt or delay these proceedings because the case has been stayed for three years since the *TTA* action was filed. Furthermore, expert discovery has not been completed, there is ample time and opportunity to take discovery from BLP, and, even if Cin-Q stood on its opening class certification brief, BLP could file a timely responsive memorandum.

Intervenors are separately filing a motion requesting a global settlement conference including this matter, and TTA is filing a similar motion in *TTA*.

## II.    Background.

### A.    Wanca's demand for excessive attorney fees deprives the class members of reasonable relief.

From August 2015 through April 2016, Judge Wayne R. Andersen (Ret.) of JAMS attempted to mediate a settlement between Cin-Q and BLP. The process failed because Wanca demanded a $92 million claims made, reversionary, virtual settlement fund to support a $23 million attorney's fee award. *See TTA*, ECF No. 141-15 at pp. 9-11 of 39 (unredacted mem.) (filed Feb. 1, 2019), and Ex. 2A, CQ0441, 0496.

Wanca and BLP agreed the likely claims rate would be no more than 5%. CQ0441 ("Brian [Wanca of Anderson + Wanca ("A+W")] estimated the likely claims

rate at 5% during our initial mediation session in August"); CQ0443 ("If the nominal claims rate is 5% (your estimate) then this should be about half that because the faxes are so long ago or so Mark [Mester] believes"); CQ0496 (A+W email calculating actual cost to BLP at 5% claims rate); BLP0437 (predicting claims rate between 1% and 5%). Because the settlement funds would be reversionary, BLP would not pay and would keep all unclaimed monies. Thus, the proposed nominal fund of $92 million was in reality an express demand by Wanca for $23 million in attorney fees (25% of the nominal fund) knowing that, at a 5% claims rate, BLP would pay less than $9 million to class members. *See TTA*, ECF No. 141-15 at pp. 9-11 of 39 (unredacted mem.) (filed Feb. 1, 2019), and Ex. 2A, CQ0441, 0496.

Although Wanca acknowledged total compensation paid to the class would total less than $9 million, his insistence that BLP should agree to a nominal fund of $92 million and thus $23 million in attorney fees rendered agreement impossible. Ex. 2B, BLP0697; Ex. 2A., CQ0500. Judge Andersen said, "I'm afraid Brian [Wanca] vie[w]s this case as his retirement ticket." BLP0517. Non-claiming class members would get no money, but Wanca used their anticipated non-participation to leverage more fees for himself in exchange for releasing their claims. Wanca made this point clear, "Under this proposal, your client will pay $32,010,000 at 5% claims rate." Ex. 2A., CQ0496. That was approximately $9 million to cover expected claims by the class and $23 million in attorney's fees. *Id.*

4

On March 11, 2016, BLP proposed a reversionary settlement fund of $16 million, with $300 per claiming class member, and 25% of the fund (or $4 million) in attorney's fees. Ex. 2A, CQ0473-475. Wanca rejected the offer, and made the aforementioned final demand for a $92 million reversionary fund, from which $23 million (25%) would be paid as attorney's fees. Ex. 2A, CQ0482-483; CQ0496-498. BLP requested a settlement conference with the Court, and waiver of the mediation privilege. ECF 215, p. 2 (suggesting Cin-Q were seeking to "benefit [themselves] or their attorneys at the expense of absent class members"); ECF 231, p. 17 n. 12 ("repeated assertions of the mediation privilege here are working to the benefit of no one other than the Wanca firm and if anything are working against the interests of the members of the proposed class"). Wanca opposed BLP's requests (ECF 219) and insisted that Judge Andersen issue notice of an impasse in negotiations. Ex. 2A, CQ 0519.

### B.   TTA files suit to seek a fair, reasonable, and adequate settlement for the class.

By May 2, 2016, TTA's counsel identified several potential named plaintiffs who had received the BLP faxes at issue, and undertook to decide whether to proceed with a class action against BLP. Ex. 2 (Declaration of Daniel J. Cohen), ¶ 6. They considered whether the *Cin-Q* case tolled the applicable statute of limitations for absent class members to file a new class action. *Id.*, ¶ 7. They concluded tolling would apply if TTA intervened in *Cin-Q* (or if TTA filed in state court), or TTA could file a new federal action if the limitations defense were waived as part of a settlement. They understood the issue from the outset, considered the options, and

concluded the issue was not an obstacle if BLP was interested in reaching a fair and reasonable class settlement. As attorney Bock explained in previous testimony, having co-counseled with Wanca for more than a decade, he knew how Wanca negotiated, expected the settlement impasse in the *Cin-Q* case was due to Wanca's insistence on excessive attorney's fees, and he reasonably believed BLP might be interested in negotiating a fair class settlement with counsel who would not put their own interests ahead of the class. *TTA,* ECF 63, Oct. 20, 2016 Tr., pp. 12-15, 41.

On May 6, 2016, TTA filed suit in state court against BLP. That same day, TTA's counsel contacted BLP's counsel, notified them of the filing, and inquired whether BLP might be interested in exploring the possibility of class-wide settlement. Ex. 2, ¶¶ 8-9. The parties later scheduled mediation with Judge Andersen, but it was scuttled when his assistant inadvertently notified attorney Addison about it, and Cin-Q objected and filed a motion to enjoin. This Court denied that injunction request. ECF 233.

Ultimately, a TTA/BLP mediation was scheduled for May 19, 2016, with professional mediator Peter Grilli in Tampa, Florida. Ex. 2, ¶ 14. There were no substantive discussions before that mediation, but TTA's counsel advised BLP's counsel that TTA's counsel would need to review all discovery in the *Cin-Q* case in advance of the mediation, and BLP's counsel made those materials available. *Id.* ¶ 10. A large team of TTA's attorneys reviewed those materials before the mediation. *Id.* ¶ 12.

During that mediation session, the parties agreed on a basic settlement structure; a claims-made, reversionary settlement fund with a tiered approach to claimant relief based on the number of faxes each unique fax number was sent. Ex. 2, ¶ 18; Ex. 2C, TTA0022-0023. Mr. Grilli's notes indicate that by the end of the day, TTA's demand was a $24 million settlement fund, with payments of $500 for the first fax, $100 for the second and third, and $20 thereafter, to each unique fax number. *Id.* BLP had offered $300 for the first fax, $100 for the second, $50 for the third, and $20 thereafter, to each unique fax number. *Id.* The amounts of attorney's fees and incentive awards would not be discussed until after class relief was agreed. *Id.* The parties did not reach a settlement in the first mediation session

Mr. Grilli held a second mediation session on June 1, 2016, with no substantive settlement discussion between first and second. Ex. 2, ¶ 19. Class notice was a major focus of the TTA/BLP settlement negotiations, particularly during the second day of mediation and thereafter. Ex. 2, ¶ 21. The parties agreed on a notice plan that would include direct mail notice and also include internet and local newspaper publication. BLP agreed to pay all costs of class notice and claims administration, so those costs would not reduce the fund available to claimants. *Id.*

By the end of that session, the parties reached agreement on the basic terms of settlement and later presented the settlement to the Court. Ex. 2, ¶ 22; Ex. 2C, TTA0041. They agreed to a $19.5 million settlement fund, of which up to 25% ($4.875 million) would be paid as attorney's fees, all subject to court approval. Claiming class members would be paid $350 for the first, $100 for the second, $75

for the third, and $20 each for the fourth and fifth faxes sent to each of their various fax numbers. Ex. 2, ¶ 22, TTA0041. Most numbers show 2 to 3 faxes, so most class members would be able to claim $450 to $525 for each of their fax numbers. Ex. 2D. The $19.5 million fund would cover a 23% claims rate. Ex. 2, ¶ 31.

On June 20, 2016, TTA filed suit in this Court and, on June 22, 2016, filed its motion for preliminary approval of the proposed class settlement which the Court granted in April 2017. Cin-Q moved to intervene. The Court denied that motion, but the Court of Appeals reversed. *Technology Training Assocs. v. Buccaneers Ltd. P'ship,* 874 F.3d 692 (11th Cir. 2017).

On remand, this Court ultimately granted Cin-Q's motion to vacate preliminary approval. *TTA,* ECF 169 (September 30, 2019). The Court did not change its previously stated view that the settlement appeared fair, reasonable, and adequate (*TTA*, ECF 56, p. 34), warranting notice to the absent class members, but concluded that because TTA filed a separate lawsuit rather than intervening in this case, TTA was exposed to a potential statute of limitations defense that needed to be waived by BLP in order to proceed with the new lawsuit. The Court suggested that intervention in this case was the "proper means" to present the proposed settlement and assert TTA's and the class's interests. *TTA,* ECF 169 at p. 37 of 38.

Pursuant to the TTA settlement agreement, the parties had the option to terminate that agreement upon the failure of preliminary approval. *TTA,* ECF 18-1 at 30-31. Neither BLP nor TTA exercised that option.

## III.   Argument.

### A.   The Court should permit Intervenors to intervene under Rule 24 (b) (1).

Under Rule 24 (b) (1), the Court may permit intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24. The Court has broad discretion to grant or deny permissive intervention, or to condition intervention upon certain particulars. *Southern v. Plumb Tools, Div. of O'Ames Corp.,* 696 F.2d 1321, 1322 (11th Cir. 1983).

> Determining whether an individual should be permitted to intervene is a two-stage process. First, the district court must decide whether "the applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24 (b)(2). If this threshold requirement is met, then the district court must exercise its discretion in deciding whether intervention should be allowed. 7A C. Wright & A. Miller, Federal Practice & Procedure § 1911, at 541-42 (1972).

*Stallworth v. Monsanto Co.,* 558 F.2d 259, 269 (5th Cir. 1977).

Here, the Intervenors' claims arise from the same conduct and set of circumstances as Cin-Q's claims, so the claims obviously share common issues of law and fact. *See* ECF 207 at pp. 20-21 (Cin-Q class cert motion filed March 25, 2016, acknowledging "four common questions" shared by all putative class members).

Intervenors' motion is also timely. "The timeliness of a motion to intervene is determined, not by reference to the date on which the suit began or the date on which the would-be intervenors learned that it was pending, but rather by reference to the date when the movants learned that intervention was needed to protect their interests." *NAACP v. New York,* 413 U.S. 345, 374 (1973). "Timeliness is to be

determined from all the circumstances," and is determined by the district court's sound discretion. *Florida ex rel. Butterworth v. Jones Chems., Inc.,* 148 F.R.D. 282, 286 (M.D. Fla. 1993), *quoting Stallworth v. Monsanto Co.,* 558 F.2d 257, 263 (5th Cir. 1977).

Here, TTA learned that intervention was necessary upon receipt of the Court's September 30, 2019 order. In April 2016, TTA had sought representation by BHLO after being introduced through an unrelated mailing. At about that time, BHLO became aware of information suggesting that Cin-Q's counsel was not adequately representing the putative Cin-Q class and was holding up class settlement only to maximize attorney fees. TTA filed suit in Florida state court and ultimately reached a class settlement with BLP. TTA re-filed the case in this Court. At that point, the Court stayed all proceedings in this case and, in April 2017, the Court held, on a preliminary basis, that TTA's proposed class settlement was fair, reasonable and adequate. Subsequently, on September 30, 2019, the Court vacated preliminary approval, holding among other things that Intervenors should have filed the settlement by intervening in this case. The remaining Intervenors became aware of the pending litigation and rulings thereafter. Thus, all of the Intervenors are promptly and timely filing this intervention.

"In exercising its discretion under Rule 24 (b), the District Court must consider whether permissive intervention would unduly jeopardize or delay the determination of the original suit." *United States v. Allegheny-Ludlum Industries, Inc.,* 517 F.2d 826, 841 (5th Cir. 1975). Permissive intervention would not

jeopardize or delay the determination of this case. The case was stayed while the *TTA* case played out. Cin-Q's motion for class certification, ECF 207, is pending. Cin-Q may elect to file an amended brief in support, and presumably BLP still intends to depose Cin-Q's expert witness. Either way, there will be time for any other necessary discovery. Among other reasons, the availability of alternative class representatives would facilitate ruling on class certification.

### B. The Court should permit Intervenors to intervene as of right under Rule 24 (a) (2).

"Members of a class should have a right to intervene if their interests are not adequately represented by existing parties." *TTA,* 874 F.3d at 696, *quoting Standard Fire Ins. Co. v. Knowles,* 568 U.S. 588, 594 (2013). *See also* Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment (members of a putative class "'should, as a general rule, be allowed to intervene in the action,' unless the current parties adequately represent them."). Parties seeking to intervene under Rule 24 (a) (2) must show that:

> (1) [their] application to intervene is timely; (2) [they have] an interest relating to the property or transaction which is the subject of the action; (3) [they are] so situated that disposition of the action, as a practical matter, may impede or impair [their] ability to protect that interest; and (4) [their] interest is represented inadequately by the existing parties to the suit.

*TTA,* 874 F.3d at 695-96, *quoting Stone v. First Union Corp.*, 371 F.3d 1305, 1308-09 (11th Cir. 2004).

As explained above, this motion is timely because Intervenors first learned that they needed to intervene (rather than file a separate lawsuit) when this Court vacated preliminary approval of the *TTA* settlement. *NAACP v. New York,* 413 U.S.

at 374. Moreover, "where, as here, intervention as a matter of right is sought, courts have been more liberal in exercising their discretion over the timeliness requirement." *United States v. Int'l Business Machines Corp.,* 62 F. Supp. 530, 541 (S.D. N.Y. 1974), *citing McDonald v. E. J. Lavino Co.,* 430 F.2d 1065, 1073 (5th Cir. 1970).

With regard to the second and third factors, Intervenors would be bound by a class-wide judgment in this case. *TTA,* 874 F.3d at 696-97. "In the class action context, the second and third prongs of the Rule 24 (a) (2) inquiry are satisfied by the very nature of Rule 23 representative litigation." *In re Cmty. Bank of N. Va.,* 418 F.3d 277, 314 (3d Cir. 2005); *TTA,* 874 F.3d at 297.

Although Intervenors and Cin-Q ostensibly have a common interest in successfully prosecuting the TCPA claims against BLP, inadequacy of class representation "may be shown by proof of collusion between the representative and an opposing party, by the representative having or representing an interest adverse to the intervenor, or by the failure of the representative in the fulfillment of his duty." *Stadin v. Union Electric Co.,* 309 F.2d 912, 919 (8th Cir. 1962); *Olden v. Hagerstown Cash Register, Inc.,* 619 F.2d 271, 275 (3rd Cir. 1980). The requirement of showing inadequacy under Rule 24 (a) "is satisfied if the applicant shows that representation 'may be' inadequate; and the burden of showing that should be treated as minimal." *Trbovich v. UMW,* 505 U.S. 528, 538 n.10 (1982). Intervenors' burden is merely to come forward with "some evidence" of inadequacy. *TTA,* 784 F.3d at 697 (quoting *Clark v. Putnam County,* 168 F.3d 458, 461 (11th Cir. 1999)).

Here, there is ample evidence that Cin-Q's counsel have failed in their duties to the class and to Intervenors. The settlement communications Cin-Q and BLP produced in *TTA* show that by the Spring of 2016, the parties had largely agreed on class relief based on terms that would have generated payments to claiming class members totaling $9 million at the expected 5% claims rate, but Wanca was holding up the settlement by his claim for over $20 million in fees. In other words, Wanca was improperly holding the class hostage to his demand for record setting attorney's fees. Then, when TTA reached a fair, reasonable, and adequate settlement with BLP, Wanca bankrolled a meritless "breach of fiduciary duty" lawsuit by the M&C plaintiff against BHLO and Oppenheim personally in an attempt to prevent this Court's fairness approval process. At a minimum, these facts are sufficient to raise an inference that Wanca "may be inadequate," which is all that Rule 24 (a) requires. *Trbovich,* 505 U.S. at 538 n. 10.

## IV.   Conclusion.

For all these reasons, the Court should grant Intervenors' motion and permit them to intervene in this action. As provided in Rule 73 (b) (1), Intervenors hereby consent to the jurisdiction of Magistrate Judge Anthony E. Porcelli.

Respectfully submitted,

TECHNOLOGY TRAINING ASSOCIATES, INC., LARRY F. SCHWANKE, D.C., d/b/a BACK TO BASICS FAMILY CHIROPRACTIC, BAREWOOD OUTLET, INC., THOMAS SAVINO d/b/a WEBRX PHARMACY PALACE AND RXPALACE.COM, and MERYMAN ENVIRONMENTAL, INC., individually and as

the representative of a class of similarly-situated persons

By:  s/ Phillip A. Bock

Phillip A. Bock
Robert M. Hatch
Tod A. Lewis
Jonathan B. Piper
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL  60602


## CERTIFICATION UNDER LOCAL RULE 3.01(g)

Pursuant to Local Rule 3.01(g) the undersigned moving counsel certifies that attorney Jonathan Piper conferred with opposing counsel and was not able to agree on the resolution of this motion.


By: /s/ Phillip A. Bock

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.


By: s/ Phillip A. Bock