# EXHIBIT 2A1

**ANDERSON + WANCA**

ATTORNEYS AT LAW

3701 ALGONQUIN ROAD, SUITE 760, ROLLING MEADOWS, IL 60008
TEL: (847) 368-1500 * FAX: (847) 368-1501
EMAIL: BUSLIT@ANDERSONWANCA.COM

August 25, 2015

Via Electronic Mail

Hon. Wayne R. Anderson (Ret.)
JAMS
71 S. Wacker Drive, Suite 3090
Chicago, IL 60606

> Re: **PLAINTIFFS' PRE-MEDIATION POSITION STATEMENT**
> Cin-Q Automobiles, et al. v. Buccaneers Limited Partnership
> Reference No. 1340012173
> Date of Mediation: August 31, 2015

Dear Judge Andersen:

This action involves a total of 633,483 advertising facsimiles sent on behalf of Defendant between July 14, 2009 and June 9, 2010. *See* Biggerstaff Report, attached as Exhibit A. 357,888 of these were successfully sent. *Id.* "Sent" is all that is required by the statute. *See Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252-53 (11th Cir. 2014), *citing A Fast Sign Co. v. Am. Home Servs., Inc.*, 734 S.E.2d 31, 33 (Ga. 2012). *See also Critchfield Physical Therapy v. Taranto Group, Inc.*, 263 P.3d 767, 778-79 (Kan. 2011).

As we are sure that you know, the Telephone Consumer Protection Act ("TCPA") imposes statutory liquidated damages of $500 per fax and that figure is increased to $1,500 per fax if the court finds that defendant's violations were committed "willfully or knowingly." 47 U.S.C. § 227 (b) (3). A plaintiff need not prove that the defendant had knowledge of the TCPA's provisions in order to establish that the defendant willfully or knowingly violated the TCPA. *See Sengenberger v. Credit Control Services, Inc.*, 2010 WL 1791270, at *6 (N.D. Ill. May 5, 2010) (Zagel, J.) (trebling the statutory damages to $1,500 per violation because defendants "intentionally made the contested phone calls to Plaintiff"). Thus, the liability is at least $173,944,000.00 and could be as much as $950,224,500.00.

## DISCUSSION

### I. HISTORY OF DEFENDANT'S FAXING PROGRAM

The financial crisis that struck the United States began in earnest in the fall of 2009. Its effect on the American economy was felt in all sectors, and the impact on the business of professional football began to be noticed in the Tampa Bay area as well. It became apparent that a significant number of season ticket holders for the Tampa Bay Buccaneers were going to be

 CinQ+MC000002

Hon. Wayne R. Andersen (Ret.)
Page 2
August 25, 2015

reluctant to renew their season tickets for 2009 because of the costs associated with that renewal. In order to find new people to occupy the seats that would be vacated as a result of the non-renewal of the season tickets, in early 2009, Buccaneers Director of New Business Development, Matthew Kaiser, pitched an idea to his superiors to "generate some ticket sales" by sending advertisements to fax numbers in and around Tampa Bay. (*See* Kaiser Dep. Tr., attached as Exhibit B, at p. 68.) Kaiser had access to the team's "existing contacts," but needed to drum up "new business" by targeting new potential customers because the former customers for the football game tickets were no longer interested. (*Id.*) Kaiser was then authorized by Defendant to hire a fax broadcaster to execute the advertising campaign. (BLP Resp. First Req. Admissions, Group Exhibit C, at No. 117.)

Kaiser knew prior to hiring FaxQom there was a federal statute called the TCPA that imposed "liability associated with the unsolicited sending of faxes." (Kaiser Dep., Ex. B, at 72, 121.) Armed with that knowledge, Kaiser conducted internet research on fax broadcasters and settled on a company called FaxQom. (*Id.* at 66.)

Kaiser thought consumers could "opt-in" under the TCPA if they "[a]greed to receive faxes" from the fax broadcaster. (*Id.* at 72, 84.) So he testified that he wanted to send advertisements for the purchase of single game tickets to the Buccaneers games to people who "had agreed to receive from FaxQom." (*Id.* at 97.) On June 24, 2009, Kaiser informed FaxQom in an email that "[a]fter reading some literature" about the TCPA, he was "concerned" and asked, "[c]an you please tell me if 100% of the numbers you gather have opted in, to receive your faxes?" (*See* E-Mail Bates No. BLP000011, attached as Exhibit D.) Kaiser asked if FaxQom would "indemnify us from any complaints or potential financial recourse as it relates to the fines imposed for spam mail?" (*Id.*) FaxQom stated it had millions of fax numbers, that "100% of our data is 'opt-in,'" and that it was "no problem" to indemnify BLP. (*See* BLP000013, attached as Exhibit E.) Kaiser "trusted" FaxQom. (Kaiser Dep., Ex. B, at 96.) Kaiser does not remember if FaxQom explained how it supposedly obtained permission from millions of people who must have indicated in writing to FaxQom that they wished to receive any facsimile advertisement that FaxQom was hired to send out on behalf of any person or firm—not just an advertisement for tickets to the Buccaneers football games. (*Id.* at 91.)

On June 26, 2009, Kaiser sent FaxQom a draft advertisement created by BLP, listing "group ticket" prices. (*See* BLP000022, attached as Exhibit F.) On July 9, 2009, BLP and FaxQom executed a "Fax Indemnity Agreement" along with the Fax Broadcast Order Form submitted by Defendant (*See* BLP000067-69, attached as Exhibit G.) Kaiser proceeded to place orders for thousands of fax advertisements. (Kaiser Dep., Ex. B, at 107–08.) Kaiser did not feel it was "necessary" to do anything else to verify the legality of the fax campaign. (*Id.* at 131.) Kaiser never asked FaxQom for a list of the fax numbers or contact information for any of the intended recipients to verify they had "opted in" and specifically agreed to voluntarily accept and print out advertisements for anyone at any time, with the only control being that the advertiser had paid FaxQom to send the advertisement. (*Id.* at 132.) BLP directed FaxQom to send advertisements for Buccaneers tickets to fax numbers in selected area codes on the following schedule: area code 727 – July 14, 2009; area code 813 – July 15, 2009; area codes 352 and 941 – July 16, 2009. (Ex. G.) BLP paid FaxQom $15,336.80 by a check that had to be sent by

Hon. Wayne R. Andersen (Ret.)
Page 3
August 25, 2015

overnight delivery to an address in Conroe, Texas for these first three broadcasts. (*See* BLP000038, attached as Exhibit H.) Had Kaiser checked the address specified for the overnight delivery in Google, he would have learned that it was a private mailbox service—not the business address for FaxQom.

On July 13, 2009, BLP sent FaxQom the final version of its first fax advertisement as an email attachment. (*See* BLP000040–42, attached as Exhibit I.) The proposed fax advertisement was two pages in length, including a cover page stating, "attached is the information on group seating." (*Id.*)

On July 15, 2009, BLP received a phone call from 813 area code resident Mike Paschke, complaining that he "received numerous faxes," that he had filed "law suits" against marketing companies before, that he was "going to contact [the] State Attorney office," and that he "would like a call back with the name of the marketing company [BLP] used." (*See* BLP000053, attached as Exhibit J.) Ben Milsom, BLP's Director of Sales, asked Kaiser, "[a]ny response to this?" (*Id.*)

Kaiser forwarded Milsom's email to Ed Glazer, the chairman and one of the owners of BLP (Kaiser Dep., Ex. B at 22), asking, "[w]ould you like me to call this guy back and give him the information?" (Ex. J at BLP000052). Glazer told Kaiser, "email me our signed indemnification" and do not "worry about" calling Paschke. (*Id.*) Kaiser told Milsom for future complaints about unsolicited faxes, "just tell them that the opt out info is located" on page two. (*Id.*) Kaiser told Glazer that Paschke's fax number would not be "on our next go around," and that "[a]ll is well." (*See* BLP000058, attached as Exhibit K.)

On July 22, 2009, Nick Coblio, an 813 area code resident, called BLP to complain about the unsolicited Buccaneers fax and a text advertisement received on his cell phone. (*See* BLP00677, attached as Exhibit L.) Milsom spoke to Coblio and reported to Kaiser that he threatened to "file a complaint with the FCC." (*Id.*) Kaiser responded, "just add both his fax and mobile to the list, so I can send this to the companies if we decide to go for round 2 (which we will likely do)." (*Id.*) Kaiser also referred to a "hospital" that "received all the faxes" and asked Milsom to add the Hospital's number to the "remove" list as well. (*Id.*)

Kaiser brushed off the complaints about the fax and text campaigns, stating, "[i]f these people didn't sign up for every free offer they see, then their names probably wouldn't end up in 2 separately complied [sic] marketing databases of 'opted-in' recipients. I wish there was a nice way to explain that to them." (*Id.*) In BLP's view, it was the consumers' own fault they were receiving the faxes, not BLP's. (*Id.*)

On August 13, 2009, BLP directed FaxQom to send an advertisement for "individual game tickets" to area codes on the following schedule: area code 727 – August 17, 2009; area code 813 – August 18, 2009; area code 352 – August 19, 2009; area code 941 – August 20, 2009. (*See* BLP000087, attached as Exhibit M.)

 CinQ+MC000004

Hon. Wayne R. Andersen (Ret.)
Page 4
August 25, 2015

On August 20, 2009, attorney Phyllis J. Towzey sent a letter to BLP's registered agent complaining about the fax advertisements she received at her office on July 14, 2009, and August 17, 2009. (*See* Towzey Aff., attached as Exhibit N, at ¶¶ 1, 5, 6.) Towzey had no business relationship with BLP and did not give BLP permission to send fax advertisements. (*Id.* ¶¶ 7, 8.) Towzey warned BLP the TCPA prohibits fax advertisements without "prior express invitation or permission" and imposes $500 damages per violation, which can be increased to $1,500 for "willfully or knowingly" violating the statute, setting forth verbatim portions of the statute. (*Id.* ¶ 11; *id.*, Ex. A.) Towzey offered to settle for $1,000. (*Id.*, Ex. A at 1, 2.) Towzey warned she planned to sue BLP in this Court. (*Id.*)

Shortly thereafter, Towzey received a phone call from Manny Alvare, BLP's General Counsel, who stated he received the August 20 letter. (Towzey Aff., Ex. N, at ¶ 15; Alvare Dep., attached as Exhibit O, at 44.) Alvare told Towzey the faxes had been sent by FaxQom and that FaxQom was liable for any damages because it "sent" the fax, not BLP. (Towzey Aff., N, at ¶¶ 16, 17; Alvare Dep., Ex. O, at 44–46.)

On August 28, 2009, Craig Cinque filed a class-action lawsuit against BLP under the TCPA in Florida state court. (Exhibit P.) Cinque served the Complaint on BLP's registered agent September 7, 2009. (*Id.*) BLP hired outside counsel to defend the case. Counsel appeared in the case October 5, 2009, and filed a Motion to Dismiss.

On September 16, 2009, Towzey wrote a second letter to Alvare, stating it was irrelevant whether a "vendor actually sent the fax," since "the fax was clearly sent on behalf of the Tampa Bay Buccaneers, and expressly solicits the purchase of tickets for Bucs games." (Towzey Aff., Ex. N, at Ex. C thereto.) Alvare called Towzey again, asking her not to file a lawsuit and assuring her he would make sure she did not receive any more unsolicited faxes from BLP and "see what he could do" to make FaxQom pay her damages. (Towzey Aff. at ¶ 22.) Towzey has not received any compensation to date. (*Id.* at ¶ 23.)

On May 18, 2010, BLP directed FaxQom to send a third round of faxes to area code 813 – May 24, 2014; area code 727 – May 25, 2014; and area codes 352 and 941 – May 26, 2014. (*See* BLP000107, attached as Exhibit Q). With this request, Kaiser added handwritten language stating FaxQom will "indemnify and hold harmless Tampa Bay Buccaneers and any of its affiliates, agents, or employees harmless from any claims, complaints, or FCC violations as a result of this campaign and hereby confirms that all numbers have been collected lawfully and with cause." (*Id.*)

On June 3, 2010, the Florida Attorney General sent BLP a letter stating it received complaints that BLP had sent unsolicited fax advertisements and that it is "unlawful to transmit an unsolicited facsimile" under Florida law and "47 U.S. C. § 227(b)(1)(C) and the Junk Fax Protection Act of 2005 set forth a similar prohibition under federal law." (*See* BLP00758, attached as Exhibit R.) The Attorney General concluded that, "[b]ased upon the information received by this office, your company is in violation of either the state or federal laws (or both)," that violations "carry civil penalties of $500.00 per transmission," and that BLP was advised to

Hon. Wayne R. Andersen (Ret.)
Page 5
August 25, 2015

stop immediately. (*Id.*) Nonetheless, BLP sent three more transmissions, on June 7, 8, and 9, 2010. (Biggerstaff Report, Ex. A, Ex. 3 thereto.)

## II.   TOTAL FAXES BY DATE AND DEFENDANT'S KNOWLEDGE OF WRONGDOING

In sum, the following is a relevant time line of the faxing and events increasing BLP's knowledge of the wrongfulness of the campaign:

- July 14, 2009: 81,765 (26,044 successful)
- July 15, 2009: 78,595 (46,064 successful)
- July 16, 2009: 129,245 (45,180 successful)

  *** Paschke and Coblio complaints ***

- August 17, 2009: 34,202 (20,032 successful)
- August 18, 2009: 52,373 (37,718 successful)
- August 19, 2009: 37,185 (26,936 successful)
- August 20, 2009: 32,425 (23,159 successful)

  *** First lawsuit filed and served (and Defendant appeared); Towzey correspondence with Alvare ***

- May 24, 2010: 36,685 (31,879 successful)
- May 25, 2010: 47,516 (10,796 successful)
- May 26, 2010: 24,447 (21,665 successful)
- May 27, 2010: 21,400 (18,629 successful)
- May 28, 2010: 11,764 (10,039 successful)
- June 1, 2010: 9,670 (8,356 successful)

  *** Florida Attorney General Cease and Desist Letter ***

- June 7, 2010: 17,647 (15,095 successful)
- June 8, 2010: 6,800 (5,878 successful)
- June 9, 2010: 11,764 (10,014 successful)

*See* Biggerstaff Report at Exs. 3 and 6 thereto.

## III.   THE FAXES LACKED COMPLIANT OPT OUT NOTICE

Various fax templates were used in the 16 broadcasts detailed above. (Biggerstaff Report at Exs. 2 and 5b.) Many of the faxes had no opt out notice at all. Others stated: "To immediately and permanently remove your fax number from our opt-in compiled database, please call 888-703-9205. Removaltech@FaxQom.com." The remainder stated: "If your office has decided to

Hon. Wayne R. Andersen (Ret.)
Page 6
August 25, 2015

opt-out of further faxes please call 866-247-0920. Thank you." (*Id.*) As discussed below, none of these opt out notices are valid under the TCPA and accompanying regulations.

## IV. LEGAL AND FACTUAL ISSUES

Large awards are common in TCPA blast faxing cases like this one. *See, e.g., A Fast Sign Co., Inc. v. Am. Home Servs.*, Case No. 2003-CV-77276, 2010 WL 4496651 (Ga. Super. Sept. 15, 2010) (summary judgment entered in amount of $459,000,000.00, calculated at $1,500 per fax for 306,000 faxes), *aff'd by* 734 S.E.2d 31 (Ga. 2012); *Ira Holtzman, C.P.A v. Turza*, 728 F.3d 682 (7th Cir. 2013) (affirming award of $4,215,000, calculated at $500 per fax for 8,430 faxes); *G.M. Sign, Inc. v. Group C Communications, Inc.*, Case No. 1:08-cv-04521 (N.D. Ill. Jan. 10, 2011) (Darrah, J.) (summary judgment for $18,966,000, representing $500 per fax for 37,932 faxes); *National Union Fire Ins. Co. of Pittsburgh v. ESI Ergonomics Solutions, LLC*, 342 F. Supp. 2d 853 (D. Ariz. 2004) (summary judgment entered in amount of $40,446,580.00, representing $500.00 per fax plus statutory interest); *Hooters of Augusta, Inc. v. American Global Ins. Co.*, 272 F. Supp. 2d 1365 (S.D. Ga. 2003), *aff'd*, 157 Fed. Appx. 201 (11th Cir. 2005) (insurer owed duty to indemnify $11,889,000.00 judgment, representing $1,500.00 per fax).

The TCPA is a strict liability statute. *See Alea London Limited v. American Home Services, Inc.*, 638 F.3d 768, 776 (11th Cir. 2011); *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir.2008); *A Fast Sign Co., Inc. v. American Home Servs., Inc.*, 734 S.E.2d 31, 32 (Ga. 2012); *Erie Ins. Exchange v. Lake City Indus. Prods., Inc.*, 2012 WL 1758706, *3 (Mich. App. May 17, 2012); *Breslow v. Wells Fargo Bank, N.A.*, 857 F.Supp.2d 1316, 1318 (S.D. Fla. 2012); *Harris v. World Fin. Network Nat. Bank*, 867 F.Supp.2d 888, 892 (E.D. Mich. 2012); *Park University Enterprises, Inc. v. American Cas. Co. of Reading, PA*, 314 F.Supp.2d 1094, 1103 (D. Kan. 2004), *aff'd*, 442 F.2d 1239 (10th Cir. 2006). A party can be found liable under the TCPA for sending an unauthorized fax, even if that party believed, reasonably and in good faith, that the recipient wanted and had authorized receipt of the fax. *Park Univ.*, 314 F.Supp.2d at 1103.

As the Court discussed in its recent order on summary judgment, the question of whether BLP is liable for the faxes sent at its request is governed by the Eleventh Circuit's decision in *Sarris*. The Court held that the question of whether BLP is liable for the faxes promoting Buccaneers tickets is governed by a "totality test" based on "the degree of input and control over the content of the fax(es), the actual content of the fax(es), contractual or expressly stated limitations and scope of control between the parties, privity of the parties involved, approval of the final draft of the fax(es) and its transmission(s), method and structure of payment, overall awareness of the circumstances (including access to and control over facsimile lists and transmission information), and the existence of measures taken to ensure compliance and/or to cure non-compliance with the TCPA." *Cin-Q Auto., Inc. v. Buccaneers Ltd. Partnership*, 2014 WL 7224943 at *7-9. (M.D. Fla. Dec. 17, 2014.)

The Court discussed the evidence and ultimately concluded that "evidence in the record could also support the proposition that BLP ratified what it knew to be offending conduct—

 CinQ+MC000007

Hon. Wayne R. Andersen (Ret.)
Page 7
August 25, 2015

deciding to turn a blind eye and accept the collateral damage created by its agent's actions, all while hiding behind a promise of indemnity. Ample evidence before the Court suggests this may be the case, but it is not so undeniable as to compel this court to grant summary judgment." *Id.* at *9. The Court relied on the fact that the *Sarris* court ultimately decided that the question of whether the defendant in that case was a sender was a question of fact and on cases standing for a Court's discretion to deny summary judgment even where the facts are not in dispute. *Id.*

Plaintiffs have filed a motion for reconsideration of the denial of its motion for summary judgment. If that motion is unsuccessful, plaintiffs believes that a jury will ultimately conclude that faxes promoting Buccaneers tickets, ordered and paid for by the Buccaneers' Director of New Business Development, were sent by or on behalf of the BLP. That the broadcaster made assurances to BLP and agreed to indemnify it is a matter between BLP and the broadcaster.

Beyond the question of BLP's responsibility for the faxes, there do not appear to be any other viable defenses. Significantly, BLP's faxes either contained no opt-out notice at all, or else purported notices that do not satisfy the requirements of the TCPA and of 47 C.F.R. § 64.1200 in order to be effective. Two defenses commonly raised in TCPA cases, both in opposition to class certification and on the merits, are the potential that plaintiff or class members either (1) has a prior business relationship with the defendant; or (2) consented to receive faxes. Neither defense, however, is viable when the fax sent fails to contain an opt-out notice that complies with the statute and the regulations. *See, e.g., Turza*, 728 F.3d at 684 ("Because Top of Mind omitted opt-out notices, it does not matter which recipients consented or had an established business relation with Turza."); *Walburg*, 715 F.3d at 685 ("the regulation as written requires the senders of fax advertisements to employ the above-described opt-out language even if the sender received prior express permission to send the fax."); *C-Mart*, 2014 WL 457580; *Med Waste*, 2013 WL 3463489.

The statute is clear that a valid "established business relationship" defense requires three things: (1) the sender has an "established business relationship" with the recipient; (2) the sender obtained the recipient's fax number either through a voluntary communication between the two or through a public source on which the recipient voluntarily made the number available; and (3) the fax has an opt-out notice meeting the requirements of the statute. Thus, without a compliant opt-out notice, there can be no established business relationship defense.

Likewise, with respect to a consent defense, the FCC has been clear that opt-out notice requirements apply even to "facsimile advertisements to consumers from whom [the sender] obtained permission." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Protection Act of 2005*, 2006 WL 1151584 at *25972. The federal Hobbs Act requires courts to enforce this regulation in the context of private TCPA litigation. *See Nack*, 715 F.3d at 685-86, *citing CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443 (7th Cir. 2010) and *City of Peoria v. Gen. Elec. Cablevision Corp. (GECCO)*, 690 F.2d 116, 120 (7th Cir.1982). *See A Aventura Chiropractic Center, Inc. v. Med Waste Management LLC*, 2013 WL 3463489 at *3-4 (S.D. Fla. July 3, 2013); *C-Mart, Inc. v. Metropolitan Life Ins. Co.*, 299 F.R.D. 679, 688-89 (S.D. Fla. 2014); *Brodsky v. HumanaDental Ins. Co.*, 2014 WL 2780089 at *9-10 (N.D. Ill. Sept. 29, 2014); *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, 2013 WL 5348377, *7

Hon. Wayne R. Andersen (Ret.)
Page 8
August 25, 2015

(N.D. Ill. Sept. 24, 2013); *In re Sandusky Wellness Center, LLC*, 570 Fed.Appx. 437, 437 (6th Cir. 2014); *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, 2014 WL 7366255, *3 (Dec. 24, 2014); *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 2014 WL 7109630, *12 (W.D. Mich. Dec. 12, 2014).

Specifically, 47 C.F.R. § 64.1200(a)(4)(iv) requires every fax to have an opt out notice that:

(1) Is clear and conspicuous and on the first page of the advertisement;

(2) States that the recipient may make a request to the sender not to send any future unsolicited advertisements and that failure to comply within 30 days is unlawful;

(3) Sets forth the requirements for a request under 47 U.S.C. § 227(b)(2)(E)[1];

(4) Includes a domestic contact telephone and facsimile number for the recipient, and a cost-free mechanism for a recipient to transmit a request; and

(5) Permits the recipient to make such a request at any time on any day of the week.

47 C.F.R. § 64.1200(a)(3)(iii).[2] Here, the notices fail to comply with requirements 2 and 3 on their face. In addition, the notices fail to comply with Requirement 4 because they do not include a fax number to which to send opt out requests.

Notably, the FCC just issued a new order confirming both that consented-to faxes must contain a compliant opt out notice and that a notice must comply with *all* requirements; "substantial compliance" is not enough. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 61 Communications Reg. (P&F)

---

[1] 47 U.S.C. § 227(b)(2)(E) states that a request not to send future unsolicited advertisements will be binding only if: (1) identifies the telephone number or numbers of the telephone facsimile machine to which the request relates; (2) the request is made to the telephone or facsimile number of the sender; and (3) the person making the request has not "subsequent to such request" provided express invitation or permission to the sender.

[2] 47 C.F.R. § 64.1200(a)(3)(iv) provides "A facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice that complies with the requirements in paragraph (a)(3)(iii) of this section."

671 at ¶¶ 16-21, 33, 2014 WL 5493425 (Oct. 30, 2014).[3] There is no evidence of actual consent with any recipient here. And even if there was, the deficiencies in the opt out notice defeat the potential defense. Thus, neither established business relationship nor consent is available to BLP as a defense.

Further, "Class certification is normal in litigation under [the TCPA], because the main questions, such as whether a given fax is an advertisement, are common to all recipients." *Turza,* 728 F.3d at 684, *citing Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446 (7th Cir. 2005). Indeed, the United States Supreme Court recently acknowledged that the bulk of TCPA litigation in the federal courts are class actions. *See Mims v. Arrow Financial Services, LLC,* 132 S.Ct. 740, 753 (2012). None of the issues that cause problems for class certification (individualized consent/established business relationship issues, lack of records of fax broadcasts) are present here.

Numerous federal courts have certified unsolicited fax classes. *See Turza; Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.,* 757 F.3d 540 (6th Cir. 2014); *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.,* 747 F.3d 489, 492 (7th Cir. 2014); *C-Mart, Inc. v. Metropolitan Life Ins. Co.,* 2014 WL 457580 (S.D. Fla. Feb. 4, 2014); *A Aventura Chiropractic Center, Inc. v. Med Waste Management LLC,* 2013 WL 3463489 (S.D. Fla. July 3, 2013); *Vandervort v. Balboa Capital Corp.,* 287 F.R.D. 554 (C.D. Cal. 2012); *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.,* Case No. 11-cv-1074, 2012 WL 262556 (N.D. Ohio Jan. 30, 2012); *Silbaugh v. Viking Magazine Services,* No. 1:11 CV 1299, 2012 WL 76889, *1, 5- 6 (N.D. Ohio Jan. 10, 2012); *Sparkle Hill, Inc. v. Interstate Mat Corp.,* Case No. 11-10271, 2012 WL 6589258 (D. Mass. Dec. 18, 2012); *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.,* No. 10-10620, 2010 WL 5439737 (E.D. Mich. Dec. 27, 2010); *CE Design, Ltd. v. Cy's Crabhouse North, Inc.,* 259 F.R.D. 135 (N.D. Ill. 2009), *app. denied* (7th Cir. September 9, 2009); *Hinman v. M and M Rental Center, Inc.,* 545 F. Supp. 2d 802 (N.D. Ill. 2008) (Bucklo, J.), *app. denied* (08-8012) (7th Cir. Jun 13, 2008); *Kavu, Inc. v. Omnipak Corp.,* No. 06 C 109, 2007 WL 201093 (W.D. Wash. Jan. 23, 2007).

---

[3] The FCC Order does provide a process by which a company can seek a "retroactive waiver" of the rule. However, the first federal court to consider such a "waiver" concluded that it would not affect private litigation, but rather would only impact a possible enforcement action by the FCC itself. *See Stryker,* 2014 WL 7109630 at * 14 ("the waiver issue does not impact the Court's decision, for three reasons. First, as noted above, this Court's ruling rests not merely on the FCC's regulation, but on the statutory term itself. Second, the Court finds that nothing in the waiver—even assuming the FCC ultimately grants it—invalidates the regulation itself. The regulation remains in effect just as it was originally promulgated. Third, the FCC cannot use an administrative waiver to eliminate statutory liability in a private cause of action; at most, the FCC can choose not to exercise its own enforcement power"), *citing Turza,* 728 F.3d at 688. *See also Doctor Diabetic,* 2014 WL 7366255 at *5. Here, of course, Defendant has neither received an FCC waiver nor established consent with anyone. *Id.*

Hon. Wayne R. Andersen (Ret.)
Page 10
August 25, 2015

The majority of state courts have held likewise, including the Supreme Court of Kansas, *Critchfield*, 263 P.3d 767, and the appellate courts of Illinois, North Carolina, Louisiana, Georgia, Oklahoma, California, Indiana, and Arizona. *See JT's Frames, Inc. v. Sunhill NIC Co., Inc.*, 2012 IL App (2d) 110676-U (Ill. App. 2012) (affirming class certification of TCPA claim); *Jemiola v. XYZ Corp.*, 802 N.E.2d 745, 749 (Ohio C.P. 2003) (same); *Display Funding Group, Inc. v. Graphic House Sports Promotions, Inc.*, 992 So.2d 510 (La. App. 2007) (same); *Display South, Inc. v. Express Computer Supply, Inc.*, 961 So.2d 451 (La. App. 2007) (same); *Hypertouch, Inc. v. Superior Court ex rel. Perry Johnson, Inc.*, 27 Cal. Rptr. 3d (Cal. App. 2005) (same); *American Home Servs., Inc. v. A Fast Sign Co., Inc.*, 651 S.E.2d 119 (Ga. App. 2004) (same); *Core Funding Group, LLC v. Young*, 792 N.E.2d 547 (Ind. App. 2003) (same); *Hooter's of Augusta, Inc. v. Nicholson*, 537 S.E.2d 468 (Ga. App. 2000) (same); *Blitz v. Agean, Inc.*, 677 S.E.2d 1 (N.C. App. 2009) (reversing denial of class certification); *Lampkin v. GGH, Inc.*, 146 P.3d 847 (Okla. App. 2006) (same); *Kaufman v. ACS Sys., Inc.*, 2 Cal. Rptr. 3d 296 (Cal. App. 2003) (same); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 50 P.3d 844 (Ariz. App. 2002) (same).  This list does not include the countless trial courts that have certified such classes.

Assuming that the class is certified and Plaintiffs ultimately prevail on the question of whether BLP is liable for the faxes under *Sarris* and the authority upon which it relies, the liability faced by BLP is massive. The base damages of $500 per fax for each of the 628,259 faxes is $314,124,500.00. And it is likely given the series of events discussed above that some if not all of the faxes subject BLP to treble damages.

The Eleventh Circuit has held that "the intent for treble damages [under the TCPA] does not require any malicious or wanton conduct, but rather is satisfied by merely 'knowing' conduct." *Alea London*, 638 F.3d at 776. Mr. Kaiser knew about the requirements of the TCPA at the time the first faxes were sent. As the various howls from the recipients built to a cacophony culminating in the first lawsuit and the cease and desist letter, any claim that the faxes were sent in ignorance of the fact that they violated the statute become much less believable (assuming it was believable at all). As noted above, there were four groups of fax broadcasts: (1) the three July 2009 broadcasts (289,605 total); (2) the four August 2009 broadcasts after the first two recipient complaints (156,185 total); (3) the May 24-June 1, 2010 broadcasts after the first lawsuit and the Towzey correspondence (151,482 total); and (4) the June 7-9, 2010 broadcasts after the Attorney General cease and desist letter (36,211 total).

If all of the faxes are assessed at $1,500 per, the liability is $800,224,500.00. If all of the faxes sent after the initial complaints are assessed at $1,500 with those sent before at $500, the liability is $670,619,500.00. If only those faxes sent after BLP was sued are assessed at $1,500, the liability is $504,434,500.00. And if only those faxes sent after the attorney general letter are assessed at $1,500, the liability is still $350,335,500.

## V.   SETTLEMENT PROPOSAL

In the interest of settlement, Plaintiffs are willing to resolve all claims under the attached terms. (*See* Term Sheet, attached as Exhibit S) In broad strokes, BLP will agree to provide a

Hon. Wayne R. Andersen (Ret.)
Page 11
August 25, 2015

$99,000,000.00 virtual fund. Out of that fund, BLP will pay: (1) $500 per fax to class members who submit claims; (2) if total claims are less than 20% of the fund ($19,800,000.00), the difference between that sum and actual total claims to charity as *cy pres*; (3) an incentive award of $15,000.00 to each class representative; (4) attorney's fees in the amount of 25% of the fund ($24,750,000.00); (5) out of pocket litigation expenses; and (6) the cost of administering the settlement. BLP would then retain the balance of the virtual fund. If claims are below the *cy pres* floor, BLP would pay approximately $45 million.

Respectfully submitted,

CIN-Q AUTOMOBILES, INC. and MEDICAL
& CHIROPRACTIC CLINIC, INC.

By:

David M. Oppenheim
One of their Attorneys

DMO/tn
Enclosures
cc: Record Counsel

    CinQ+MC000012

**Cin-Q Automobiles, Inc., et al. v. Buccaneers Limited Partnership, Case No. 13-cv-1592**
**Principal Terms of Class Settlement**

1. The parties will seek court approval of the following settlement to resolve all claims regarding the 357,888 unsolicited facsimile advertisements successfully sent by or on behalf of Defendant from July 14, 2009 to June 9, 2010 (the "Class Period").

2. Defendant will make available a total of $99,000,000.00 (the "Settlement Fund") to pay class member claims, to pay a *cy pres* award if necessary, to pay an incentive payment to each of the class representatives, and to pay attorney's fees and expenses to Class Counsel. Defendant need not segregate funds or otherwise create special accounts to hold the Settlement Fund. Defendant will not relinquish control of any money until payments are due. As described below, if the class member claims total less than an agreed percentage of the Settlement Fund, then that difference will be awarded to charity as a *cy pres* award. Otherwise, Defendant will keep all unclaimed funds.

3. The Settlement Class will be defined as: "All persons from July 14, 2009 to June 9, 2010 who were sent facsimile advertisements offering group tickets or individual game tickets for the Tampa Bay Buccaneers games and which did not display the opt-out language required by 47 C.F.R. §64.1200."

4. The Settlement Fund will be distributed on a "claims-made" basis as follows:

   (a) <u>Payments to claiming class members</u>. Defendant agrees to pay timely claims submitted by members of the Settlement Class. A settlement notice and claim form will be sent to the class members by facsimile. The per-fax, pro rata share of the Settlement Fund before subtracting the payments in Paragraphs (b) and (c) below is $500.00.

   (b) <u>Incentive award to the class representative</u>. Defendant agrees to pay and will not oppose or appeal a request for an incentive award of $15,000.00 from the Settlement Fund to the named plaintiffs for serving as the Class Representatives.

   (c) <u>Fees and expenses to Class Counsel</u>. Defendant agrees to pay and will not oppose a request by Class Counsel (Brian J. Wanca of Anderson + Wanca and Michael C. Addison of Addison & Howard, PA) for attorney's fees in an amount equal to 25% of the Settlement Fund ($24,750,000.00), plus reasonable out-of-pocket expenses from the Settlement Fund.

   (d) <u>*Cy pres* award from a percentage of unclaimed funds</u>. If the payments to Claimants total less than 20% of the Settlement Fund ($19,800,000.00), then that difference (between the total payments to Claimants and 20% of the Settlement Fund) shall be paid as a *cy pres* award to charities recommended by Class Counsel and approved by the Court.

   (e) <u>Reversion to Defendant</u>. After making all required payments pursuant to this Paragraph 4, Defendant shall keep all unclaimed money in the Settlement Fund.

CinQ+MC000276

**Date : 9/20/2015 5:50:05 PM**
**From : "Wayne Andersen"**
**To : "Michael Addison" , "David Oppenheim"**
**Subject : Con-q v Tampa Bay Bucs**

Gentlemen,

I have a new offer from the defendant which ups its proposal from $200 to $300 per unique fax number in cash, or at claimants' option, $300 worth of Bucs tickets, parking passes or vendors coupons.  May we discuss this Tuesday?  I'd copy Brian on this email but don't have his email address.

Please advise.  Thanks.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844  mobile

JAMS Chicago
312.655.9191  Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL

CinQ+MC000396

**Date : 9/20/2015 8:47:44 PM**
**From : "Wayne Andersen"**
**To : "David Oppenheim"**
**Cc : "Michael Addison" , "Brian Wanca"**
**Subject : Re: Con-q v Tampa Bay Bucs**

I can't remember but I'm guessing that they just formally offered 200 and perhaps insisted on an in kind portion. Mark thinks it's worth meeting again and he's in this to settle it. Let's talk, maybe Tuesday or Wednesday. How many fax machines were used?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844  mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com


> On Sep 20, 2015, at 8:42 PM, David Oppenheim <doppenheim@andersonwanca.com> wrote:
>
> I think that's where they were when we broke up on 8/31, no?
>
> -----Original Message-----
> From: Wayne Andersen [mailto:wra1991@aol.com]
> Sent: Sunday, September 20, 2015 5:50 PM
> To: Michael Addison; David Oppenheim
> Subject: Con-q v Tampa Bay Bucs
>
> Gentlemen,
>
> I have a new offer from the defendant which ups its proposal from $200 to $300 per unique fax number in cash, or at claimants' option, $300 worth of Bucs tickets, parking passes or vendors coupons. May we discuss this Tuesday? I'd copy Brian on this email but don't have his email address.
>
> Please advise. Thanks.
>
> Judge Wayne Andersen (ret.)
> Mediator & Arbitrator
> 847.650.6844  mobile
>
> JAMS Chicago
> 312.655.9191   Brooke Buczkowski
> Bbuczkowski@jamsadr.com
>
>
>

CONFIDENTIAL

CinQ+MC000398

**Date : 9/20/2015 9:47:53 PM**
**From : "Brian Wanca"**
**To : "Wayne Andersen" , "David Oppenheim"**
**Cc : "Michael Addison"**
**Subject : RE: Con-q v Tampa Bay Bucs**

This is nothing more than the offer they made at end of our day. So we waited close to 3 weeks for nothing .they started the mediation at $200 per fax number and ended with an ambiguous $300 offer which I assumed was $300 per fax number. Judge please ask them how many unique numbers they believe they are offering. Let's see if we agree on something so we can evaluate the fund amount they are offering.

Sent from my T-Mobile 4G LTE Device

-------- Original message --------
From: Wayne Andersen <wra1991@aol.com>
Date:09/20/2015 8:47 PM (GMT-06:00)
To: David Oppenheim <doppenheim@andersonwanca.com>
Cc: Michael Addison <m@mcalaw.net>, Brian Wanca <bwanca@andersonwanca.com>
Subject: Re: Con-q v Tampa Bay Bucs

I can't remember but I'm guessing that they just formally offered 200 and perhaps insisted on an in kind portion. Mark thinks it's worth meeting again and he's in this to settle it. Let's talk, maybe Tuesday or Wednesday. How many fax machines were used?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844  mobile

JAMS Chicago
312.655.9191  Brooke Buczkowski
Bbuczkowski@jamsadr.com


> On Sep 20, 2015, at 8:42 PM, David Oppenheim <doppenheim@andersonwanca.com> wrote:
>
> I think that's where they were when we broke up on 8/31, no?
>
> -----Original Message-----
> From: Wayne Andersen [mailto:wra1991@aol.com]
> Sent: Sunday, September 20, 2015 5:50 PM
> To: Michael Addison; David Oppenheim
> Subject: Con-q v Tampa Bay Bucs
>
> Gentlemen,
>
> I have a new offer from the defendant which ups its proposal from $200 to $300 per unique fax number in cash, or at claimants' option, $300 worth of Bucs tickets, parking passes or vendors coupons. May we discuss this Tuesday? I'd copy Brian on this email but don't have his email address.
>
> Please advise.  Thanks.
>
> Judge Wayne Andersen (ret.)
> Mediator & Arbitrator
> 847.650.6844  mobile
>
> JAMS Chicago
> 312.655.9191  Brooke Buczkowski
> Bbuczkowski@jamsadr.com
>
>
>

CONFIDENTIAL   CinQ+MC000399

Date : 9/21/2015 8:56:08 AM
From : "Wayne Andersen"
To : "Brian Wanca"
Cc : "David Oppenheim" , "Michael Addison"
Subject : Re: Con-q v Tampa Bay Bucs

There are about 130,000 unique fax numbers.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com


On Sep 20, 2015, at 9:47 PM, Brian Wanca <bwanca@andersonwanca.com> wrote:

This is nothing more than the offer they made at end of our day. So we waited close to 3 weeks for nothing .they started the mediation at $200 per fax number and ended with an ambiguous $300 offer which I assumed was $300 per fax number. Judge please ask them how many unique numbers they believe they are offering. Let's see if we agree on something so we can evaluate the fund amount they are offering.

Sent from my T-Mobile 4G LTE Device

-------- Original message --------
From: Wayne Andersen <wra1991@aol.com>
Date:09/20/2015 8:47 PM (GMT-06:00)
To: David Oppenheim <doppenheim@andersonwanca.com>
Cc: Michael Addison <m@mcalaw.net>, Brian Wanca <bwanca@andersonwanca.com>
Subject: Re: Con-q v Tampa Bay Bucs

I can't remember but I'm guessing that they just formally offered 200 and perhaps insisted on an in kind portion. Mark thinks it's worth meeting again and he's in this to settle it. Let's talk, maybe Tuesday or Wednesday.  How many fax machines were used?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com


> On Sep 20, 2015, at 8:42 PM, David Oppenheim <doppenheim@andersonwanca.com> wrote:
>
> I think that's where they were when we broke up on 8/31, no?
>
> -----Original Message-----
> From: Wayne Andersen [mailto:wra1991@aol.com]
> Sent: Sunday, September 20, 2015 5:50 PM
> To: Michael Addison; David Oppenheim
> Subject: Con-q v Tampa Bay Bucs
>
> Gentlemen,
>
> I have a new offer from the defendant which ups its proposal from $200 to $300 per unique fax number in cash, or at claimants' option, $300 worth of Bucs tickets, parking passes or vendors coupons. May we discuss this Tuesday?  I'd copy Brian on this email but don't have his email address.
>
> Please advise.  Thanks.
>
> Judge Wayne Andersen (ret.)
> Mediator & Arbitrator
> 847.650.6844   mobile
>

CONFIDENTIAL            CinQ+MC000401

**Date : 9/21/2015 11:46:03 AM**
**From : "David Oppenheim"**
**To : "Wayne Andersen" , "Brian Wanca"**
**Cc : "Michael Addison"**
**Subject : RE: Con-q v Tampa Bay Bucs**

So, they are proposing a fund of 131,011 x $300=$39,303,300?

With respect to another session, we think at least one of the Glazers needs to be there for it to work.

**From:** Wayne Andersen [mailto:wra1991@aol.com]
**Sent:** Monday, September 21, 2015 8:56 AM
**To:** Brian Wanca
**Cc:** David Oppenheim; Michael Addison
**Subject:** Re: Con-q v Tampa Bay Bucs

There are about 130,000 unique fax numbers.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 20, 2015, at 9:47 PM, Brian Wanca <bwanca@andersonwanca.com> wrote:

> This is nothing more than the offer they made at end of our day. So we waited close to 3 weeks for nothing .they started the
> mediation at $200 per fax number and ended with an ambiguous $300 offer which I assumed was $300 per fax number. Judge
> please ask them how many unique numbers they believe they are offering. Let's see if we agree on something so we can evaluate the
> fund amount they are offering.

Sent from my T-Mobile 4G LTE Device

-------- Original message --------
From: Wayne Andersen <wra1991@aol.com>
Date:09/20/2015 8:47 PM (GMT-06:00)
To: David Oppenheim <doppenheim@andersonwanca.com>
Cc: Michael Addison <m@mcalaw.net>, Brian Wanca <bwanca@andersonwanca.com>
Subject: Re: Con-q v Tampa Bay Bucs

I can't remember but I'm guessing that they just formally offered 200 and perhaps insisted on an in kind portion. Mark thinks it's worth meeting again
and he's in this to settle it.  Let's talk, maybe Tuesday or Wednesday.  How many fax machines were used?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

> On Sep 20, 2015, at 8:42 PM, David Oppenheim <doppenheim@andersonwanca.com> wrote:
>
> I think that's where they were when we broke up on 8/31, no?
>
> -----Original Message-----
> From: Wayne Andersen [mailto:wra1991@aol.com]
> Sent: Sunday, September 20, 2015 5:50 PM
> To: Michael Addison; David Oppenheim
> Subject: Con-q v Tampa Bay Bucs
>
> Gentlemen,

                    CinQ+MC000403

**Date : 9/21/2015 12:43:05 PM**
**From : "Wayne Andersen"**
**To : "Brian Wanca"**
**Cc : "David Oppenheim" , "Michael Addison"**
**Subject : Re: Con-q v Tampa Bay Bucs**

I think he told us he would go that high but didn't formally offer it. Anyhow, I'll bounce the $39 million off them now and let's see what they say. Mester is being responsive.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 21, 2015, at 12:13 PM, Brian Wanca <bwanca@andersonwanca.com> wrote:

> I thought they offered $15m.
>
> **Brian J. Wanca**
> **ANDERSON+WANCA**
> **3701 Algonquin Road, Suite 500**
> **Rolling Meadows, IL 60008**
> **Ph: 847-368-1500**
> **Fax: 847-368-1501**
>
> **From:** Wayne Andersen [mailto:wra1991@aol.com]
> **Sent:** Monday, September 21, 2015 12:13 PM
> **To:** David Oppenheim
> **Cc:** Brian Wanca; Michael Addison
> **Subject:** Re: Con-q v Tampa Bay Bucs
>
> My guess is that they are maintaining the claims made approach but that they'll guarantee payment of more than $10 million, which they offered last time, correct?
>
> I agree re Galzers.
>
> I'll ask re fund size and let you know their response, ok?
>
>
> Judge Wayne Andersen (ret.)
> Mediator & Arbitrator
> 847.650.6844   mobile
>
> JAMS Chicago
> 312.655.9191   Brooke Buczkowski
> Bbuczkowski@jamsadr.com
>
>
> On Sep 21, 2015, at 11:46 AM, David Oppenheim <doppenheim@andersonwanca.com> wrote:
>
>> So, they are proposing a fund of 131,011 x $300=$39,303,300?
>>
>> With respect to another session, we think at least one of the Glazers needs to be there for it to work.
>>
>> **From:** Wayne Andersen [mailto:wra1991@aol.com]

CONFIDENTIAL                    CinQ+MC000409

**Sent:** Monday, September 21, 2015 8:56 AM
**To:** Brian Wanca
**Cc:** David Oppenheim; Michael Addison
**Subject:** Re: Con-q v Tampa Bay Bucs

There are about 130,000 unique fax numbers.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 20, 2015, at 9:47 PM, Brian Wanca <bwanca@andersonwanca.com> wrote:

> This is nothing more than the offer they made at end of our day. So we waited close to 3 weeks for
> nothing .they started the mediation at $200 per fax number and ended with an ambiguous $300 offer which
> I assumed was $300 per fax number. Judge please ask them how many unique numbers they believe they
> are offering. Let's see if we agree on something so we can evaluate the fund amount they are offering.

Sent fram my T-Mobile 4G LTE Device

-------- Original message --------
From: Wayne Andersen <wra1991@aol.com>
Date:09/20/2015 8:47 PM (GMT-06:00)
To: David Oppenheim <doppenheim@andersonwanca.com>
Cc: Michael Addison <m@mcalaw.net>, Brian Wanca <bwanca@andersonwanca.com>
Subject: Re: Con-q v Tampa Bay Bucs

I can't remember but I'm guessing that they just formally offered 200 and perhaps insisted on an in kind portion. Mark
thinks it's worth meeting again and he's in this to settle it. Let's talk, maybe Tuesday or Wednesday. How many fax
machines were used?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

> On Sep 20, 2015, at 8:42 PM, David Oppenheim <doppenheim@andersonwanca.com> wrote:
>
> I think that's where they were when we broke up on 8/31, no?
>
> -----Original Message-----
> From: Wayne Andersen [mailto:wra1991@aol.com]
> Sent: Sunday, September 20, 2015 5:50 PM
> To: Michael Addison; David Oppenheim
> Subject: Con-q v Tampa Bay Bucs
>
> Gentlemen,
>
> I have a new offer from the defendant which ups its proposal from $200 to $300 per unique fax number in cash, or at
> claimants' option, $300 worth of Bucs tickets, parking passes or vendors coupons. May we discuss this Tuesday? I'd
> copy Brian on this email but don't have his email address.
>
> Please advise. Thanks.
>
> Judge Wayne Andersen (ret.)
> Mediator & Arbitrator
> 847.650.6844   mobile
>
> JAMS Chicago

CONFIDENTIAL

CinQ+MC000410

> 312.655.9191   Brooke Buczkowski
> Bbuczkowski@jamsadr.com
>
>
>

CONFIDENTIAL

CinQ+MC000411

**Date : 9/27/2015 8:31:15 PM**
**From : "David Oppenheim"**
**To : "Wayne Andersen"**
**Cc : "Brian Wanca" , "Michael Addison"**
**Subject : Re: Con-q v Tampa Bay Bucs**

We can discuss when I see you tomorrow.

Sent from my iPhone

On Sep 27, 2015, at 5:54 PM, Wayne Andersen <wra1991@aol.com> wrote:

> Gentlemen,
>
> Mark has contacted me to see what your response is to his last proposal.  I told him I'd get back to him tomorrow afternoon.
> Perhaps you can give me guidance.
>
> Judge Wayne Andersen (ret.)
> Mediator & Arbitrator
> 847.650.6844  mobile
>
> JAMS Chicago
> 312.655.9191  Brooke Buczkowski
> Bbuczkowski@jamsadr.com
>
>
>
> On Sep 21, 2015, at 2:54 PM, Wayne Andersen <wra1991@aol.com> wrote:
>
>> His offer is without caps or a guaranteed common fund. It's a simple offer to pay any valid claimant $300. I don't think
>> his client wants to concede a sure 8 digit payout in an email. We probably need to talk but my recollection is the same
>> as Mr Addison's. I'm guessing we will not be able to get them at a common fund above 20. What do you all think?
>> Hon. Wayne Andersen
>> Mediator & Arbitrator
>> 847.650.6844
>>
>> On Sep 21, 2015, at 12:13 PM, Brian Wanca <bwanca@andersonwanca.com> wrote:
>>
>>> I thought they offered $15m.
>>>
>>> **Brian J. Wanca**
>>> **ANDERSON+WANCA**
>>> **3701 Algonquin Road, Suite 500**
>>> **Rolling Meadows, IL 60008**
>>> **Ph: 847-368-1500**
>>> **Fax: 847-368-1501**
>>>
>>> **From:** Wayne Andersen [mailto:wra1991@aol.com]
>>> **Sent:** Monday, September 21, 2015 12:13 PM
>>> **To:** David Oppenheim
>>> **Cc:** Brian Wanca; Michael Addison
>>> **Subject:** Re: Con-q v Tampa Bay Bucs
>>>
>>> My guess is that they are maintaining the claims made approach but that they'll guarantee payment of more
>>> than $10 million, which they offered last time, correct?
>>>
>>> I agree re Galzers.
>>>
>>> I'll ask re fund size and let you know their response, ok?

CONFIDENTIAL                    CinQ+MC000423

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 21, 2015, at 11:46 AM, David Oppenheim <doppenheim@andersonwanca.com> wrote:

So, they are proposing a fund of 131,011 x $300=$39,303,300?

With respect to another session, we think at least one of the Glazers needs to be there for it to work.

**From:** Wayne Andersen [mailto:wra1991@aol.com]
**Sent:** Monday, September 21, 2015 8:56 AM
**To:** Brian Wanca
**Cc:** David Oppenheim; Michael Addison
**Subject:** Re: Con-q v Tampa Bay Bucs

There are about 130,000 unique fax numbers.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 20, 2015, at 9:47 PM, Brian Wanca <bwanca@andersonwanca.com> wrote:

This is nothing more than the offer they made at end of our day. So we waited close to 3 weeks for nothing .they started the mediation at $200 per fax number and ended with an ambiguous $300 offer which I assumed was $300 per fax number. Judge please ask them how many unique numbers they believe they are offering. Let's see if we agree on something so we can evaluate the fund amount they are offering.

Sent from my T-Mobile 4G LTE Device

-------- Original message --------
From: Wayne Andersen <wra1991@aol.com>
Date:09/20/2015 8:47 PM (GMT-06:00)
To: David Oppenheim <doppenheim@andersonwanca.com>
Cc: Michael Addison <m@mcalaw.net>, Brian Wanca <bwanca@andersonwanca.com>
Subject: Re: Con-q v Tampa Bay Bucs

I can't remember but I'm guessing that they just formally offered 200 and perhaps insisted on an in kind portion. Mark thinks it's worth meeting again and he's in this to settle it. Let's talk, maybe Tuesday or Wednesday. How many fax machines were used?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago

CONFIDENTIAL                    CinQ+MC000424

312.655.9191  Brooke Buczkowski
Bbuczkowski@jamsadr.com


> On Sep 20, 2015, at 8:42 PM, David Oppenheim <doppenheim@andersonwanca.com>
wrote:
>
> I think that's where they were when we broke up on 8/31, no?
>
> ----Original Message----
> From: Wayne Andersen [mailto:wra1991@aol.com]
> Sent: Sunday, September 20, 2015 5:50 PM
> To: Michael Addison; David Oppenheim
> Subject: Con-q v Tampa Bay Bucs
>
> Gentlemen,
>
> I have a new offer from the defendant which ups its proposal from $200 to $300 per
unique fax number in cash, or at claimants' option, $300 worth of Bucs tickets, parking
passes or vendors coupons.  May we discuss this Tuesday?  I'd copy Brian on this email
but don't have his email address.
>
> Please advise.  Thanks.
>
> Judge Wayne Andersen (ret.)
> Mediator & Arbitrator
> 847.650.6844   mobile
>
> JAMS Chicago
> 312.655.9191  Brooke Buczkowski
> Bbuczkowski@jamsadr.com
>
>
>

CONFIDENTIAL                CinQ+MC000425

**Date : 10/23/2015 2:06:16 PM**
**From : "David Oppenheim"**
**To : "wra1991@aol.com" , "mark.mester@lw.com"**
**Subject : Bucs settlement term sheet theirs**
**Attachment : Bucs settlement term sheet theirs.docx;**

This is meant to be Defendant's last offer placed into our structure, not where we are.  We want to confirm that this is where you are and if so, will respond with revised numbers.  If not, we need to discuss.

**Cin-Q Autos, Inc. v. Buccaneers Limited Partnership, Case No. 13-cv-1592**
**Principal Terms of Class Settlement**

1.  The parties will seek court approval of the following settlement to resolve all claims regarding the unsolicited facsimile advertisements successfully sent to 131,011 persons by or on behalf of Defendant from July 14, 2009 to June 9, 2010 (the "Class Period").

2.  Defendant will make available a total of $39,303,300.00 (the "Settlement Fund") to pay class member claims, to pay an incentive payment to each of the class representatives, and to pay attorney's fees and expenses to Class Counsel.  Defendant need not segregate funds or otherwise create special accounts to hold the Settlement Fund.  Defendant will not relinquish control of any money until payments are due.  As described below, if the class member claims total less than an agreed percentage of the Settlement Fund.  Otherwise, Defendant will keep all unclaimed funds.

3.  The Settlement Class will be defined as:  "All persons from July 14, 2009 to June 9, 2010 who were sent facsimile advertisements offering group tickets or individual game tickets for the Tampa Bay Buccaneers games and which did not display the opt-out language required by 47 C.F.R. §64.1200."

4.  The Settlement Fund will be distributed on a "claims-made" basis as follows:

    (a)  <u>Payments to claiming class members</u>.  Defendant agrees to pay timely claims submitted by members of the Settlement Class.  A settlement notice and claim form will be sent to the class members by facsimile.  The pro rata share of the Settlement Fund before subtracting the payments in Paragraphs (b) and (c) below is $300.00.

    (b)  <u>Incentive award to the class representative</u>.  Defendant agrees to pay and will not oppose or appeal a request for an incentive award of $15,000.00 from the Settlement Fund to each of the named plaintiffs for serving as the Class Representatives.

    (c)  <u>Fees and expenses to Class Counsel</u>.  Defendant agrees to pay and will not oppose a request by Class Counsel (Brian J. Wanca of Anderson + Wanca and Michael C. Addison of Addison & Howard, PA) for attorney's fees in an amount equal to 30% of the Settlement Fund ($11,790,990.00), plus reasonable out-of-pocket expenses from the Settlement Fund.

    (d)  <u>Reversion to Defendant</u>.  After making all required payments pursuant to this Paragraph 4, Defendant shall keep all unclaimed money in the Settlement Fund.

5.  Defendant will agree to a permanent injunction enjoining violations of the TCPA with language to be agreed upon.

6.  The Settlement Class will broadly release Defendant from claims arising out of or relating to Defendant's advertising faxes during the Class Period (*see* class definition above).  The Settlement Class will not release claims regarding advertising faxes sent after the Class Period.

CinQ+MC000437

7.  In addition to the Settlement Fund, Defendant shall pay the cost to retain a third party claims administrator who will issue the class notice by facsimile and publication, receive the claim forms, assist class members in completing and submitting forms, and provide a list of accepted and rejected claims to counsel for the parties.  The decision of the claims administrator regarding whether a claim is valid is final and binding on the parties.  Upon request, the third party claims administrator will provide copies of all claim forms to counsel for the parties.

8.  This term sheet constitutes a binding agreement if accepted.  The parties will submit a formal written settlement agreement and other papers necessary to obtain the Court's preliminary and final approval of this settlement.  Within 14 days after this term sheet is signed, Plaintiff's counsel will draft and provide such documents for Defendant' review, revisions, and approval.  The parties anticipate seeking preliminary approval from the Court within 28 days of signing this term sheet.

**BUCCANEERS LIMITED PARTNERSHIP**

By: _____

Its: _____

Dated: _____

**PLAINTIFF AND THE SETTLEMENT CLASS**

By: _____
     Michael C. Addison
     Brian J. Wanca
     Their Attorneys

Dated: _____

CinQ+MC000438

**PROOF OF CLAIM – Cin-Q Autos, Inc. v. Buccaneers Limited Partnership, Case No. 13-cv-1592**

*You Must Complete All **THREE** Steps to Claim a Share of the Settlement Fund:*

1.   **You Must Provide Your Contact Information.**

Name: _____

Company: _____

Address: _____

City/State/Zip Code: _____

Fax Number(s): _____

   [List all numbers.  You may attach a separate sheet.]

2.   **You Must Verify Ownership of the Fax Number(s) Listed in #1 above:**

(a)   "The fax number(s) identified above or attached to this Proof of Claim was/were mine or my company's from July 14, 2009 to June 9, 2010."

   _____

   (Sign your name here)

   ***OR***

(b)   The fax number(s) identified in No. 1 above or attached to this Proof of Claim was **not**/were **not** mine or my company's throughout the period from July 14, 2009 to June 9, 2010.  Explain when you obtained the fax number(s) identified in No. 1 above or attached to this Proof of Claim:

   _____
   _____
   _____

   _____

   (Sign your name here)

3.   **You Must Return this Claim Form by [90 days]_____, 2015:**

a.   Fax this Claim Form to:  <u>&lt;fax number for claims &gt;</u>

   ***OR***

b.   Mail this Claim Form to:  [CLAIMS ADMINISTRATOR]

   ***OR***

c.   Submit this claim form electronically at **[website]**

CONFIDENTIAL

CinQ+MC000439

**Date : 10/23/2015 2:12:24 PM**
**From : "Wayne Andersen"**
**To : "David Oppenheim"**
**Cc : "mark.mester@lw.com"**
**Subject : Re: Bucs settlement term sheet theirs**

Mark,

It would be helpful to know your projected claims rate.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844  mobile

JAMS Chicago
312.655.9191  Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Oct 23, 2015, at 3:06 PM, David Oppenheim <doppenheim@andersonwanca.com> wrote:

> This is meant to be Defendant's last offer placed into our structure, not where we are.  We want to confirm that this is where you
> are and if so, will respond with revised numbers.  If not, we need to discuss.
>
> <Bucs settlement term sheet theirs.docx>

CONFIDENTIAL  CinQ+MC000440

Date : 10/25/2015 5:32:24 PM
From : "MARK.MESTER@lw.com"
To : "wra1991@aol.com" , "David Oppenheim"
Subject : RE: Bucs settlement term sheet theirs


Judge - As you probably recall, Brian estimated the likely claim-in rate at 5% during our initial mediation session in August.  In our view, that is a fairly reasonable estimate, though we think the actual claim-in rate will likely be lower and more in the range of 1% to 2%, given the nature of the claims, the fact that so much time has passed since the faxes were allegedly sent and the Buccaneers' position in the community.

Best regards.


_____
From: Wayne Andersen
Sent: Friday, October 23, 2015 12:12:21 PM
To: David Oppenheim
Cc: Mester, Mark (CH)
Subject: Re: Bucs settlement term sheet theirs

Mark,

It would be helpful to know your projected claims rate.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844  mobile

JAMS Chicago
312.655.9191  Brooke Buczkowski
Bbuczkowski@jamsadr.com<mailto:Bbuczkowski@jamsadr.com>


On Oct 23, 2015, at 3:06 PM, David Oppenheim <doppenheim@andersonwanca.com<mailto:doppenheim@andersonwanca.com>> wrote:

This is meant to be Defendant's last offer placed into our structure, not where we are.  We want to confirm that this is where you are and if so, will respond with revised numbers.  If not, we need to discuss.
<Bucs settlement term sheet theirs.docx>
---------------------------------------------------------
This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP
---------------------------------------------------------

**Date : 10/25/2015 9:08:08 PM**
**From : "Wayne Andersen"**
**To : "David Oppenheim"**
**Subject : Claims rate**


If the normal claims rate is 5% (your estimate), then this should be about half that because the faxes are so long ago or so Mark believes.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844  mobile

JAMS Chicago
312.655.9191  Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL                    CinQ+MC000443

**Date : 11/14/2015 8:36:19 AM**
**From : "Wayne Andersen"**
**To : "Mark Mester"**
**Cc : "David Oppenheim"**
**Subject : Fwd: Bucs settlement term sheet theirs**
**Attachment : Bucs settlement term sheet theirs.docx;ATT00001.htm;**

Mark,

Please forgive my delays in responding. I've been happily entangled in arbitration hearings which were subject to rigid time deadlines, so my energies were diverted.

I've talked with Dave about the term sheet he sent to you on Oct 5 which is attached hereto. While he plugged numbers into it, he meant those as illustrative, not as numbers he agrees to. His thought was to agree to a structure, such as the one in the term sheet, and then commence the debate over exactly how much should get paid. I believe they will insist on a common fund, but the possible point of convergence is uncertain. I have my own ideas.

In any event, if you agree with the structure in the proposed term sheet, we can begin the money battle. If you advocate changes, Dave's suggestion is that we work them out now before moving to the financial tug of war. While he's amenable to getting together, as am I, he thinks we can perhaps work this out by phone and email.

I've copied Dave on this, so he can chime in with any thoughts or corrections in my understanding.

Wayne

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com


Begin forwarded message:

> **From:** David Oppenheim <doppenheim@andersonwanca.com>
> **Date:** October 5, 2015 at 12:05:34 PM CDT
> **To:** Wayne Andersen <wra1991@aol.com>, "mark.mester@lw.com" <mark.mester@lw.com>
> **Cc:** Brian Wanca <bwanca@andersonwanca.com>, "Michael Addison (M@mcalaw.net)" <M@mcalaw.net>, Ross Good <rgood@andersonwanca.com>
> **Subject: Bucs settlement term sheet theirs**
>
> CONFIDENTIAL SETTLEMENT COMMUNICATION
>
> Judge Andersen passed on the Bucs latest counter. I apologize that I am just now getting back to this but I was out last week. Plugging your numbers into our term sheet yields the attached. Is this what you propose? If not, what is different? It makes sense to us to make sure we are comparing apples to apples and work out structural issues so that we can move forward. Please let us know. I am available to discuss if you want. Thanks.
>
> David M. Oppenheim
> Attorney at Law
> Anderson + Wanca
> 3701 Algonquin Rd., Suite 500
> Rolling Meadows, IL 60008
> p-(847) 368-1500
> f-((847) 368-1501

**Date : 12/7/2015 3:50:21 PM**
**From : "Wayne Andersen"**
**To : "David Oppenheim"**
**Subject : Fwd: Cin-Q v. Bucs – Settlement Discussions / Fees**

Let's discuss.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

Begin forwarded message:

> **From:** <MARK.MESTER@lw.com>
> **Date:** December 2, 2015 at 3:30:55 PM CST
> **To:** <wra1991@aol.com>
> **Cc:** <Kathleen.Lally@lw.com>
> **Subject: Cin-Q v. Bucs – Settlement Discussions / Fees**
> **Reply-To:** <MARK.MESTER@lw.com>

Dear Judge Andersen – Thank you again for taking the time to talk to Kate and me on November 18, 2015 regarding the above-captioned matter. We very much appreciate your continuing efforts to help the parties and their counsel reach an amicable resolution of this matter. Since our discussions on November 18th, we have had a chance to discuss this matter with our clients and are now prepared to make an offer.

Like you, we are encouraged by the fact that there is apparently agreement in principle as to what the relief should be for members of the proposed class, and given that agreement, we are of the view (and we understand you share our view) that it would now be appropriate to discuss fees for class counsel.

As you know, we requested back in August the current lodestar figure for class counsel in this case, and we have not yet received that information. Accordingly, we are somewhat hampered in our ability to address fees or make a proposal. Nevertheless, we know what the Buccaneers have spent to date on this case, and I think we have some sense of what the lodestar figure of Plaintiffs' counsel likely is or should be. Accordingly, what we are trying to accomplish with this email is to make an offer that represents a reasonable estimate of the lodestar of class counsel times a reasonable multiplier. Obviously, both of those numbers are negotiable, particularly if we receive information as to what the lodestar of class counsel actually is, and by no means do we mean to suggest in the making of this offer that it is a take it or leave it proposition. To the contrary, it is simply a good faith effort by our clients and us to address the issue of fees, notwithstanding the fact that we do not currently know what the lodestar of class counsel is in this case and likewise do not know what fee arrangement they have with their clients. (That information was requested in discovery but has not yet been provided.)

With that background in mind, the Buccaneers are prepared to offer and agree to a fee to class counsel of $2.1 million subject to a clear-sailing provision. We are also willing to address the issue of costs separately, but since we don't know what costs have been incurred by class counsel, we obviously are not in a position to make a proposal with respect to costs at this time. This offer contemplates a claim-in structure and terms otherwise consistent with the offer we last conveyed to you on September 17, 2015.

If you could convey our offer to class counsel, we would be most appreciative. And if you or they have any questions, we will certainly do our best to answer them as quickly as possible. There is, however, a fair amount of activity scheduled to occur in this case in the next several weeks and month, so we would really like to reach a resolution soon if at all possible, lest both sides spend a lot of time and money that they could otherwise devote to more worthwhile pursuits.

Best regards.

**Mark S. Mester**

**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800

CONFIDENTIAL                    CinQ+MC000449

**Date : 12/7/2015 4:21:22 PM**
**From : "David Oppenheim"**
**To : "Wayne Andersen"**
**Cc : "Brian Wanca"**
**Subject : RE: Cin-Q v. Bucs -- Settlement Discussions / Fees**

There appears to have been a miscommunication somewhere along the line. We have not agreed on a claims-made settlement. We have indicated that we would agree to a common fund settlement under which defendant would be allowed a reversion of unclaimed funds. We have most recently attempted to plug the dribs and drabs of partial offers we had gotten from them to date into that structure seeking confirmation that that was, in fact, what they were contemplating. The below e-mail confirms that it apparently is not.

Let me be clear: we are proposing a common fund settlement. This is the type of settlement recently discussed in *Poertner v. Gillette Co.*, 618 Fed.Appx. 624, 628 (11th Cir. 2015) (discussing *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 770, 774, 775 (11th Cir.1991)). That is the one and only circumstance in which we would consider a claims structure and process.

In such a settlement, the fees are a percentage of the fund. *Id.* Typically 25%. *Id.* That is what was in our proposal and we do not expect to deviate from that given that it is the "benchmark" for the jurisdiction. *Id.*

As such, "lodestar" is entirely irrelevant. An offer of a $2.1 million fee would correspond to a settlement fund of $8.4 million, which is not even in the galaxy of what would be reasonable in this case—and far below what we believed to be their last offer. If they expect any further interest from us on the settlement front, we need to get beyond the shell games and get a meaningful complete, common fund offer to which we can respond.

David M. Oppenheim
Attorney at Law
Anderson + Wanca
3701 Algonquin Rd., Suite 500
Rolling Meadows, IL 60008
p-(847) 368-1500
f-((847) 368-1501

**From:** Wayne Andersen [mailto:wra1991@aol.com]
**Sent:** Monday, December 7, 2015 3:50 PM
**To:** David Oppenheim
**Subject:** Fwd: Cin-Q v. Bucs -- Settlement Discussions / Fees

Let's discuss.

Judge Wayne Andersen (ret.)

Mediator & Arbitrator

847.650.6844   mobile

JAMS Chicago

312.655.9191   Brooke Buczkowski

Bbuczkowski@jamsadr.com

Begin forwarded message:

> **From:** <MARK.MESTER@lw.com>
> **Date:** December 2, 2015 at 3:30:55 PM CST
> **To:** <wra1991@aol.com>
> **Cc:** <Kathleen.Lally@lw.com>
> **Subject:** Cin-Q v. Bucs – Settlement Discussions / Fees
> **Reply-To:** <MARK.MESTER@lw.com>
>
> Dear Judge Andersen – Thank you again for taking the time to talk to Kate and me on November 18, 2015 regarding the above-captioned matter. We very much appreciate your continuing efforts to help the parties and their counsel

reach an amicable resolution of this matter. Since our discussions on November 18th, we have had a chance to discuss this matter with our clients and are now prepared to make an offer.

Like you, we are encouraged by the fact that there is apparently agreement in principle as to what the relief should be for members of the proposed class, and given that agreement, we are of the view (and we understand you share our view) that it would now be appropriate to discuss fees for class counsel.

As you know, we requested back in August the current lodestar figure for class counsel in this case, and we have not yet received that information. Accordingly, we are somewhat hampered in our ability to address fees or make a proposal. Nevertheless, we know what the Buccaneers have spent to date on this case, and I think we have some sense of what the lodestar figure of Plaintiffs' counsel likely is or should be. Accordingly, what we are trying to accomplish with this email is to make an offer that represents a reasonable estimate of the lodestar of class counsel times a reasonable multiplier. Obviously, both of those numbers are negotiable, particularly if we receive information as to what the lodestar of class counsel actually is, and by no means do we mean to suggest in the making of this offer that it is a take it or leave it proposition. To the contrary, it is simply a good faith effort by our clients and us to address the issue of fees, notwithstanding the fact that we do not currently know what the lodestar of class counsel is in this case and likewise do not know what fee arrangement they have with their clients. (That information was requested in discovery but has not yet been provided.)

With that background in mind, the Buccaneers are prepared to offer and agree to a fee to class counsel of $2.1 million subject to a clear-sailing provision. We are also willing to address the issue of costs separately, but since we don't know what costs have been incurred by class counsel, we obviously are not in a position to make a proposal with respect to costs at this time. This offer contemplates a claim-in structure and terms otherwise consistent with the offer we last conveyed to you on September 17, 2015.

If you could convey our offer to class counsel, we would be most appreciative. And if you or they have any questions, we will certainly do our best to answer them as quickly as possible. There is, however, a fair amount of activity scheduled to occur in this case in the next several weeks and month, so we would really like to reach a resolution soon if at all possible, lest both sides spend a lot of time and money that they could otherwise devote to more worthwhile pursuits.

Best regards.

**Mark S. Mester**

**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7623
Fax: +1.312.993.9767
Email: mark.mester@lw.com
http://www.lw.com

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

**Date : 12/7/2015 5:39:35 PM**
**From : "Wayne Andersen"**
**To : "David Oppenheim" , "Mark Mester" , "Kathleen Lally"**
**Subject : Bucs**

Counsellors,

I'm sending this email to both sides to try to make sure we are on the same track.  Here is what I believe the plaintiff is willing to consider.

Plaintiff would agree to settle based on the creation of a common fund from which claimants would be paid $500 on a claims made basis, costs would be paid, plaintiff's attorneys could request without opposition fees equal to 25% of the fund  and, after those payments were made, the balance would revert to the defendant. Plaintiff's assumption is that Camden 1 Condo v. Dunkle, 946 F.2nd 768, is the appropriate legal guide in the Circuit.

If defendant accepts this structure, plaintiff suggests that the defendant put a dollar amount on the size of the common fund it would be willing to create.

Mark, I'd be happy to discuss this tonight or tomorrow if you'd like.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

CinQ+MC000453

**Date : 1/12/2016 8:32:27 AM**
**From : "David Oppenheim"**
**To : "Wayne Andersen"**
**Cc : "Brian Wanca" , "Michael Addison"**
**Subject : Re: Bucs**

We were never at $39M.   That was our (apparently incorrect) version of their prior proposal.  We talked about this.

These numbers are nowhere near of interest.  I'd be looking for a fund of about $92M, where they could expect to pay about $32M, about a third of what they are paying DT Gerald McCoy.

They can do it or not, but once we get a class certified, we're not going to be talking about reversionary structures anymore.

Sent from my iPhone

> On Jan 12, 2016, at 7:41 AM, Wayne Andersen <wra1991@aol.com> wrote:
>
> Dave,
>
> In at OHare awaiting my flight to Miami where we will be for a month. Mark called re Bucs and he's ready to negotiate.  May we talk this afternoon?  His last offer was a $2.1 but that was just fees.  That was a response to your $39 million demand.  If you drop to 29, I think he'll jump to about $10 as a common fund and off we
> Will go.
>
> Hon. Wayne Andersen
> Mediator & Arbitrator
> 847.650.6844

CONFIDENTIAL                           CinQ+MC000458

**Date : 1/15/2016 11:16:05 AM**
**From : "David Oppenheim"**
**To : "Wayne Andersen"**
**Cc : "Brian Wanca" , "Michael Addison (M@mcalaw.net)"**
**Subject : RE: Bues**

Yes.

-----Original Message-----
From: Wayne Andersen [mailto:wra1991@aol.com]
Sent: Friday, January 15, 2016 11:15 AM
To: David Oppenheim
Subject: Bues

Ok. Here's your proposal:

You propose a settlement at $500 per claimant on a claims made basis. Assuming 350,000 faxes, that creates a potential fund of $175,000,000 which you agree to cap at $92 million, so we will call the potential fund a "virtual" fund. Assuming a 5% claim rate, defendant will pay about $8.75 in claims. Assuming the court awards a fee of 25% of the virtual fund, you get a fee of $23 million, thus the estimate payout by defendant of $32 million. Correct?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL                    CinQ+MC000465

**Date : 1/15/2016 11:14:51 AM**
**From : "Wayne Andersen"**
**To : "David Oppenheim"**
**Subject : Bucs**

Ok. Here's your proposal:

You propose a settlement at $500 per claimant on a claims made basis. Assuming 350,000 faxes, that creates a potential fund of $175,000,000 which you agree to cap at $92 million, so we will call the potential fund a "virtual" fund.  Assuming a 5% claim rate, defendant will pay about $8.75 in claims. Assuming the court awards a fee of 25% of the virtual fund, you get a fee of $23 million, thus the estimate payout by defendant of $32 million.  Correct?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

CinQ+MC000464

**Date : 1/15/2016 11:16:05 AM**
**From : "David Oppenheim"**
**To : "Wayne Andersen"**
**Cc : "Brian Wanca" , "Michael Addison (M@mcalaw.net)"**
**Subject : RE: Bucs**

Yes.

——Original Message——
From: Wayne Andersen [mailto:wra1991@aol.com]
Sent: Friday, January 15, 2016 11:15 AM
To: David Oppenheim
Subject: Bucs

Ok. Here's your proposal:

You propose a settlement at $500 per claimant on a claims made basis. Assuming 350,000 faxes, that creates a potential fund of $175,000,000 which you agree to cap at $92 million, so we will call the potential fund a "virtual" fund. Assuming a 5% claim rate, defendant will pay about $8.75 in claims. Assuming the court awards a fee of 25% of the virtual fund, you get a fee of $23 million, thus the estimate payout by defendant of $32 million. Correct?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL                    CinQ+MC000465

**Date : 1/15/2016 11:38:42 AM**
**From : "Wayne Andersen"**
**To : "David Oppenheim"**
**Subject : Re: Bucs**

Thanks.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com


> On Jan 15, 2016, at 12:16 PM, David Oppenheim <doppenheim@andersonwanca.com> wrote:
>
> Yes.
>
> -----Original Message-----
> From: Wayne Andersen [mailto:wra1991@aol.com]
> Sent: Friday, January 15, 2016 11:15 AM
> To: David Oppenheim
> Subject: Bucs
>
> Ok. Here's your proposal:
>
> You propose a settlement at $500 per claimant on a claims made basis. Assuming 350,000 faxes, that creates a potential fund of $175,000,000 which you agree to cap at $92 million, so we will call the potential fund a "virtual" fund. Assuming a 5% claim rate, defendant will pay about $8.75 in claims. Assuming the court awards a fee of 25% of the virtual fund, you get a fee of $23 million, thus the estimate payout by defendant of $32 million. Correct?
>
> Judge Wayne Andersen (ret.)
> Mediator & Arbitrator
> 847.650.6844   mobile
>
> JAMS Chicago
> 312.655.9191   Brooke Buczkowski
> Bbuczkowski@jamsadr.com
>
>
>

CONFIDENTIAL                    CinQ+MC000466

**Date : 1/28/2016 11:03:44 AM**
**From : "Wayne Andersen"**
**To : "David Oppenheim"**
**Cc : "Brian Wanca" , "Michael Addison (M@mcalaw.net)"**
**Subject : Re: Bucs**

Brian and Dave,

I believe that the Bucs may be willing to spend up to $20 million to settle this. Mark will discuss with them this afternoon. Is it worth mediating?

Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844

> On Jan 15, 2016, at 12:16 PM, David Oppenheim <doppenheim@andersonwanca.com> wrote:
>
> Yes.
>
> -----Original Message-----
> From: Wayne Andersen [mailto:wra1991@aol.com]
> Sent: Friday, January 15, 2016 11:15 AM
> To: David Oppenheim
> Subject: Bucs
>
> Ok. Here's your proposal:
>
> You propose a settlement at $500 per claimant on a claims made basis. Assuming 350,000 faxes, that creates a potential fund of $175,000,000 which you agree to cap at $92 million, so we will call the potential fund a "virtual" fund. Assuming a 5% claim rate, defendant will pay about $8.75 in claims. Assuming the court awards a fee of 25% of the virtual fund, you get a fee of $23 million, thus the estimate payout by defendant of $32 million. Correct?
>
> Judge Wayne Andersen (ret.)
> Mediator & Arbitrator
> 847.650.6844  mobile
>
> JAMS Chicago
> 312.655.9191  Brooke Buczkowski
> Bbuczkowski@jamsadr.com
>
>
>

CONFIDENTIAL                    CinQ+MC000467

**Date : 1/28/2016 11:25:45 AM**
**From : "Brian Wanca"**
**To : "Wayne Andersen" , "David Oppenheim"**
**Cc : "Michael Addison (M@mcalaw.net)"**
**Subject : RE: Bucs**

we need them to put their offer in the form of the term sheet we gave them.


Brian J. Wanca
ANDERSON+WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Ph: 847-368-1500
Fax: 847-368-1501


-----Original Message-----
From: Wayne Andersen [mailto:wra1991@aol.com]
Sent: Thursday, January 28, 2016 11:00 AM
To: David Oppenheim <doppenheim@andersonwanca.com>
Cc: Brian Wanca <bwanca@andersonwanca.com>; Michael Addison (M@mcalaw.net) <M@mcalaw.net>
Subject: Re: Bucs

Brian and Dave,

I believe that the Bucs may be willing to spend up to $20 million to settle this. Mark will discuss with them this afternoon.  Is it worth mediating?

Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844

> On Jan 15, 2016, at 12:16 PM, David Oppenheim <doppenheim@andersonwanca.com> wrote:
>
> Yes.
>
> -----Original Message-----
> From: Wayne Andersen [mailto:wra1991@aol.com]
> Sent: Friday, January 15, 2016 11:15 AM
> To: David Oppenheim
> Subject: Bucs
>
> Ok. Here's your proposal:
>
> You propose a settlement at $500 per claimant on a claims made basis. Assuming 350,000 faxes, that creates a potential fund of $175,000,000 which you agree to cap at $92 million, so we will call the potential fund a "virtual" fund.  Assuming a 5% claim rate, defendant will pay about $8.75 in claims. Assuming the court awards a fee of 25% of the virtual fund, you get a fee of $23 million, thus the estimate payout by defendant of $32 million.  Correct?
>
> Judge Wayne Andersen (ret.)
> Mediator & Arbitrator
> 847.650.6844  mobile
>
> JAMS Chicago
> 312.655.9191  Brooke Buczkowski
> Bbuczkowski@jamsadr.com
>
>
>

CinQ+MC000468

**Date : 2/15/2016 3:00:23 PM**
**From : "Wayne Andersen"**
**To : "Brian Wanca" , "David Oppenheim"**
**Cc : "Wayne Andersen"**
**Subject : Bucs**

Brian and David,

The Bucs offer to settle by the creation of a $16 million dollar common fund with class members who claim in receiving $300 per unique number held, full reversion to the Bucs of unclaimed funds at the end of the claims process and the agreement of the Bucs to payment of 25% of the fund to plaintiffs counsel.  The claims process and wording of the settlement agreement will be determined.

I don't know how much higher they'll go, but I trust this will inspire an enticing counter demand.
Please feel free to call me.

Spend a moment focusing on George Washington today--a great man!

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL                         CinQ+MC000469

**Date : 2/16/2016 3:08:09 PM**
**From : "Brian Wanca"**
**To : "Wayne Andersen" , "David Oppenheim"**
**Cc : "m@mcalaw.net"**
**Subject : RE: Bucs - fre 408 confidential settlement communication**

Judge, we have repeatedly asked for a written term sheet from the def addressing the material terms of an offer. Def has refused to provide such a term sheet so we have nothing to consider. If the offer you forwarded to us was reduced to a term sheet and identified the material terms we want to see addressed, it would be well short of what is needed to resolve this case. Def should complete the discovery and respond to class cert motion. Thank you for your efforts but this is not progressing to a resolution.

Brian J. Wanca
ANDERSON+WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Ph: 847-368-1500
Fax: 847-368-1501


——Original Message——
From: Wayne Andersen [mailto:wra1991@aol.com]
Sent: Tuesday, February 16, 2016 2:53 PM
To: Brian Wanca <bwanca@andersonwanca.com>; David Oppenheim <doppenheim@andersonwanca.com>
Subject: Re: Bucs

Brian and Dave,

Have you had a chance to discuss this? Mark says there is a brief lull due to his expert's surgery and he'd like to try to settle during that lull. Shall we talk? I know he met with his clients so their attention is focused.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com


> On Feb 15, 2016, at 3:00 PM, Wayne Andersen <wra1991@aol.com> wrote:
>
> Brian and David.
>
> The Bucs offer to settle by the creation of a $16 million dollar common fund with class members who claim in receiving $300 per unique number held, full reversion to the Bucs of unclaimed funds at the end of the claims process and the agreement of the Bucs to payment of 25% of the fund to plaintiffs counsel. The claims process and wording of the settlement agreement will be determined.
>
> I don't know how much higher they'll go, but I trust this will inspire an enticing counter demand.
> Please feel free to call me.
>
> Spend a moment focusing on George Washington today--a great man!
>
> Judge Wayne Andersen (ret.)
> Mediator & Arbitrator
> 847.650.6844 mobile
>
> JAMS Chicago
> 312.655.9191 Brooke Buczkowski
> Bbuczkowski@jamsadr.com
>
>
>

CONFIDENTIAL                    CinQ+MC000470

**Date : 3/11/2016 9:00:27 PM**
**From : "Wayne Andersen"**
**To : "Brian Wanca"**
**Subject : Re: Bucs**

Brian,

Come on, $16 million is serious in any league.  And, as a practical matter, we are just starting. The AG warning is certainly worth millions to your clients.  I assume they will propose more, maybe lots more in light of their apparent acceptance of your claims made structure.

What would they actually pay under their proposal?  $4 million in fees + $1.2 million in claims (at 3% claim rate and $300 per claim)+costs of administration?  I have to believe they're willing to spend a multiple of that.

Please give a counter and let's see where they go.

See you Monday.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com


On Mar 11, 2016, at 8:42 PM, Brian Wanca <bwanca@andersonwanca.com> wrote:

> Offering less than 10% of their exposure before trebling is not a serious offer.
>
> Sent from Outlook Mobile
>
>
>
> On Fri, Mar 11, 2016 at 5:37 PM -0800, "Wayne Andersen" <wra1991@aol.com> wrote:
>
> Brian and Dave,
>
> Mark just sent this offer in the term sheet form I believe you've requested. I haven't read it yet.  It's taken this long because Mark's schedule has been especially hectic--a city per day.  His client would really like to resolve the case. Please let me know your response.

CONFIDENTIAL                    CinQ+MC000472

**Date : 3/11/2016 7:37:23 PM**
**From : "Wayne Andersen"**
**To : "David Oppenheim" , "Brian Wanca"**
**Subject : Bucs**
**Attachment : Cin-Q v. Bucs -- Draft Settlement Term Sheet(7544563_7_NY).DOCX;ATT00001.txt;**

Brian and Dave,

Mark just sent this offer in the term sheet form I believe you've requested. I haven't read it yet.  It's taken this long because Mark's schedule has been especially hectic--a city per day.  His client would really like to resolve the case. Please let me know your response.

## Term Sheet For Settlement

## <u>Cin-Q Automobiles, Inc., et al. v. Buccaneers Limited Partnership,</u>
### Case No. 8:13-cv-01592 (M.D. Fla.)

1.   Plaintiffs Cin-Q Automobiles, Inc. and Medical & Chiropractic, Inc. (collectively, "Plaintiffs") and Buccaneers Limited Partnership ("Defendant," and collectively with Plaintiffs, the "Parties") have reached a settlement in principle (subject to the execution and approval of a formal settlement agreement) of the above-captioned case on the terms set forth herein.

2.   The Settlement Class will be defined to address faxes allegedly sent on behalf of the Buccaneers on July 14, 2009 and June 9, 2010 that purportedly did not display the opt-out language required by 47 C.F.R. § 64.1200.  Plaintiffs contend that the Settlement Class consists of approximately 131,000 persons.

3.   Defendant will make available a total of $16,000,000 ("Settlement Fund") to pay (a) claims of members of the Settlement Class, (b) an incentive payment to each of the Plaintiffs, (c) attorneys' fees and expenses to Anderson + Wanca, Addison & Howard, PA and Siprut P.C. (collectively, "Class Counsel") and (d) notice and administration costs. Defendant need not segregate funds or otherwise create special accounts to hold the Settlement Fund.  Defendant will not relinquish control of any money until payments are due.  As described below, if the total amount of claims paid to class members, incentive payments, fees and costs to Class Counsel and notice and administration costs all total less than the amount of the Settlement Fund, any and all remaining monies will revert to Defendant.

4.   The Settlement Fund will be distributed on a "claims-made" basis as follows:

  (a)   <u>Payments to claiming class members</u>.  Defendant agrees to pay timely claims submitted by members of the Settlement Class.  Members of the Settlement Class who submit claims will receive the lesser of (i) $300 each or (ii) in the event that the amounts identified in Paragraph 3 are greater than the Settlement Fund, the pro rata share of members of the Settlement Class in the Settlement Fund after subtracting the payments in Paragraphs (b) through (d).

  (b)   <u>Incentive award to the class representative</u>.  Defendant agrees to pay and will not oppose or appeal a request for an incentive award of $20,000.00 from the Settlement Fund to each of the Plaintiffs for serving as the Class Representatives. The payment of an incentive award does not prohibit Plaintiffs from also filing a claim under the settlement.

  (c)   <u>Fees and expenses to Class Counsel</u>.  Defendant agrees to pay and will not oppose or appeal a request by Class Counsel for attorneys' fees in an amount equal to 25% of the Settlement Fund, plus reasonable out-of-pocket costs, all to be paid out of the Settlement Fund.

Term Sheet – Page 1

(d) <u>Notice and Administration Costs.</u> Costs for notice and administration will be paid from the Settlement Fund. The Parties will agree to a notice/class administrator and work with that administrator to establish a reasonable notice plan. The notice/class administrator will also receive the claim forms, assist class members in completing and submitting forms and provide a list of accepted and rejected claims to counsel for the parties. Upon request, the administrator will provide copies of all claim forms to counsel for the parties.

5. Defendant will agree to a permanent injunction enjoining violations of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, <u>et seq.</u> ("TCPA") with respect to advertising faxes with language to be agreed upon.

6. Plaintiffs and the Settlement Class will broadly release Defendant from claims arising out of or relating to Defendant's advertising faxes during the class period and applicable limitations period. The Settlement Class will not release claims regarding advertising faxes sent after the Class Period.

7. This term sheet is contingent upon the entry of a mutually-agreeable Settlement Agreement as well as preliminary and final approval of the Court.

**BUCCANEERS LIMITED PARTNERSHIP**

By: _____

Its: _____

Dated: _____

**PLAINTIFF AND THE SETTLEMENT CLASS**

By: _____
      Michael C. Addison
      Brian J. Wanca
      Their Attorneys

Dated: _____

**Date : 3/12/2016 9:21:04 AM**
**From : "Brian Wanca"**
**To : "wra1991@aol.com"**
**Cc : "David Oppenheim"**
**Subject : Re: Bucs**

Until they put up Capital One money there's nothing to talk about

Sent from Outlook Mobile

On Sat, Mar 12, 2016 at 7:13 AM -0800, "Wayne Andersen" <wra1991@aol.com> wrote:

Ah. Let's get this going. We know Mark has more authority but has to follow client instructions.  Drop to anything you'd like and let's get going. You've dragged him into your format and his opening offer is not bad. He wasn't going to leap into the eight digits right away.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Mar 11, 2016, at 11:59 PM, Brian Wanca <bwanca@andersonwanca.com> wrote:

> Someone is out of touch.
>
> Sent from Outlook Mobile

> On Fri, Mar 11, 2016 at 8:13 PM -0800, "Wayne Andersen" <wra1991@aol.com> wrote:

> I agree with the $ estimate.  Please counter. Sleep well, gentlemen!

> Hon. Wayne Andersen
> Mediator & Arbitrator
> 847.650.6844

> On Mar 11, 2016, at 9:41 PM, David Oppenheim <doppenheim@andersonwanca.com> wrote:

>> This is actually only about a $6.5 payout, so about 4%.
>>
>> Sent from my iPhone

>> On Mar 11, 2016, at 8:42 PM, Brian Wanca <bwanca@andersonwanca.com> wrote:

>>> Offering less than 10% of their exposure before trebling is not a serious offer.
>>>
>>> Sent from Outlook Mobile

CONFIDENTIAL                    CinQ+MC000482

On Fri, Mar 11, 2016 at 5:37 PM -0800, "Wayne Andersen" <wra1991@aol.com> wrote:

Brian and Dave,

Mark just sent this offer in the term sheet form I believe you've requested. I haven't read it yet. It's taken this long because Mark's schedule has been especially hectic--a city per day.  His client would really like to resolve the case. Please let me know your response.

CONFIDENTIAL

**Date : 3/12/2016 9:30:07 AM**
**From : "Wayne Andersen"**
**To : "Brian Wanca"**
**Cc : "David Oppenheim"**
**Subject : Re: Bucs**

Where did Capitol One end up?

Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844

On Mar 12, 2016, at 9:21 AM, Brian Wanca <bwanca@andersonwanca.com> wrote:

> Until they put up Capital One money there's nothing to talk about
>
> Sent from Outlook Mobile

On Sat, Mar 12, 2016 at 7:13 AM -0800, "Wayne Andersen" <wra1991@aol.com> wrote:

Ah. Let's get this going. We know Mark has more authority but has to follow client instructions.  Drop to anything you'd like and let's get going. You've dragged him into your format and his opening offer is not bad. He wasn't going to leap into the eight digits right away.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Mar 11, 2016, at 11:59 PM, Brian Wanca <bwanca@andersonwanca.com> wrote:

> Someone is out of touch.
>
> Sent from Outlook Mobile

On Fri, Mar 11, 2016 at 8:13 PM -0800, "Wayne Andersen" <wra1991@aol.com> wrote:

I agree with the $ estimate.  Please counter. Sleep well, gentlemen!

Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844

On Mar 11, 2016, at 9:41 PM, David Oppenheim <doppenheim@andersonwanca.com> wrote:

> This is actually only about a $6.5 payout, so about 4%.
>
> Sent from my iPhone

CONFIDENTIAL                    CinQ+MC000484

On Mar 11, 2016, at 8:42 PM, Brian Wanca <bwanca@andersonwanca.com> wrote:

Offering less than 10% of their exposure before trebling is not a serious offer.

Sent from Outlook Mobile

On Fri, Mar 11, 2016 at 5:37 PM -0800, "Wayne Andersen" <wra1991@aol.com> wrote:

Brian and Dave,

Mark just sent this offer in the term sheet form I believe you've requested. I haven't read it yet. It's taken this long because Mark's schedule has been especially hectic--a city per day.  His client would really like to resolve the case. Please let me know your response.

CONFIDENTIAL

CinQ+MC000485

**Date : 3/12/2016 9:46:46 AM**
**From : "Brian Wanca"**
**To : "wra1991@aol.com"**
**Subject : Re: Bucs**


$75m

Sent from Outlook Mobile




On Sat, Mar 12, 2016 at 7:30 AM -0800, "Wayne Andersen" <wra1991@aol.com> wrote:

Where did Capitol One end up?

Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844

On Mar 12, 2016, at 9:21 AM, Brian Wanca <bwanca@andersonwanca.com> wrote:

> Until they put up Capital One money there's nothing to talk about
>
> Sent from Outlook Mobile




On Sat, Mar 12, 2016 at 7:13 AM -0800, "Wayne Andersen" <wra1991@aol.com> wrote:

Ah. Let's get this going. We know Mark has more authority but has to follow client instructions.  Drop to anything you'd like and let's get going. You've dragged him into your format and his opening offer is not bad. He wasn't going to leap into the eight digits right away.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com




On Mar 11, 2016, at 11:59 PM, Brian Wanca <bwanca@andersonwanca.com> wrote:

> Someone is out of touch.
>
> Sent from Outlook Mobile




On Fri, Mar 11, 2016 at 8:13 PM -0800, "Wayne Andersen" <wra1991@aol.com> wrote:

I agree with the $ estimate.  Please counter. Sleep well, gentlemen!


Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844

CONFIDENTIAL

CinQ+MC000486

On Mar 11, 2016, at 9:41 PM, David Oppenheim <doppenheim@andersonwanca.com> wrote:

> This is actually only about a $6.5 payout, so about 4%.
>
> Sent from my iPhone
>
> On Mar 11, 2016, at 8:42 PM, Brian Wanca <bwanca@andersonwanca.com> wrote:
>
>> Offering less than 10% of their exposure before trebling is not a serious offer.
>>
>> Sent from Outlook Mobile
>>
>>
>>
>> On Fri, Mar 11, 2016 at 5:37 PM -0800, "Wayne Andersen" <wra1991@aol.com> wrote:
>>
>> Brian and Dave,
>>
>> Mark just sent this offer in the term sheet form I believe you've requested. I haven't read it yet. It's taken this long because Mark's schedule has been especially hectic--a city per day. His client would really like to resolve the case. Please let me know your response.

CONFIDENTIAL

**Date : 3/12/2016 9:48:21 AM**
**From : "Brian Wanca"**
**To : "David Oppenheim" , "wra1991@aol.com"**
**Subject : Re: Bucs**


And that was all in we are offering a fund with reversion before a class is certified

Sent from Outlook Mobile



On Sat, Mar 12, 2016 at 7:46 AM -0800, "David Oppenheim" <doppenheim@andersonwanca.com> wrote:

Fund of $75M.

Sent from my iPhone

On Mar 12, 2016, at 9:30 AM, Wayne Andersen <wra1991@aol.com> wrote:

> Where did Capitol One end up?
>
> Hon. Wayne Andersen
> Mediator & Arbitrator
> 847.650.6844
>
> On Mar 12, 2016, at 9:21 AM, Brian Wanca <bwanca@andersonwanca.com> wrote:
>
>> Until they put up Capital One money there's nothing to talk about
>>
>> Sent from Outlook Mobile
>>
>>
>>
>> On Sat, Mar 12, 2016 at 7:13 AM -0800, "Wayne Andersen" <wra1991@aol.com> wrote:
>>
>> Ah. Let's get this going. We know Mark has more authority but has to follow client instructions.  Drop to anything you'd like and let's get going. You've dragged him into your format and his opening offer is not bad. He wasn't going to leap into the eight digits right away.
>>
>> Judge Wayne Andersen (ret.)
>> Mediator & Arbitrator
>> 847.650.6844   mobile
>>
>> JAMS Chicago
>> 312.655.9191   Brooke Buczkowski
>> Bbuczkowski@jamsadr.com
>>
>>
>>
>> On Mar 11, 2016, at 11:59 PM, Brian Wanca <bwanca@andersonwanca.com> wrote:
>>
>>> Someone is out of touch.
>>>
>>> Sent from Outlook Mobile
>>>
>>>
>>>
>>> On Fri, Mar 11, 2016 at 8:13 PM -0800, "Wayne Andersen" <wra1991@aol.com> wrote:

CONFIDENTIAL

CinQ+MC000492

**Date : 3/14/2016 9:54:30 AM**
**From : "Brian Wanca"**
**To : "Wayne Andersen"**
**Cc : "David Oppenheim" , "m@mcalaw.net"**
**Subject : RE: Bucs**

There was no reversion on capital one, we are offering reversion thru class cert . once a class is certified reversion is off the table.


**Brian J. Wanca**
**ANDERSON+WANCA**
**3701 Algonquin Road, Suite 500**
**Rolling Meadows, IL 60008**
**Ph: 847-368-1500**
**Fax: 847-368-1501**

**From:** Wayne Andersen [mailto:wra1991@aol.com]
**Sent:** Saturday, March 12, 2016 9:48 AM
**To:** Brian Wanca <bwanca@andersonwanca.com>
**Subject:** Re: Bucs

With reversion correct?

Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844

On Mar 12, 2016, at 9:46 AM, Brian Wanca <bwanca@andersonwanca.com> wrote:

> $75m
>
> Sent from Outlook Mobile


> On Sat, Mar 12, 2016 at 7:30 AM -0800, "Wayne Andersen" <wra1991@aol.com> wrote:
>
> Where did Capitol One end up?
>
> Hon. Wayne Andersen
> Mediator & Arbitrator
> 847.650.6844
>
> On Mar 12, 2016, at 9:21 AM, Brian Wanca <bwanca@andersonwanca.com> wrote:
>
> > Until they put up Capital One money there's nothing to talk about
> >
> > Sent from Outlook Mobile
>
>
> > On Sat, Mar 12, 2016 at 7:13 AM -0800, "Wayne Andersen" <wra1991@aol.com> wrote:
> >
> > Ah. Let's get this going. We know Mark has more authority but has to follow client instructions. Drop to anything you'd like and let's get going. You've dragged him into your format and his opening offer is not bad. He wasn't going to leap into the eight digits right away.
> >
> > Judge Wayne Andersen (ret.)
> > Mediator & Arbitrator
> > 847.650.6844   mobile
> >
> > JAMS Chicago
> > 312.655.9191   Brooke Buczkowski
> > Bbuczkowski@jamsadr.com

CONFIDENTIAL                    CinQ+MC000494

On Mar 11, 2016, at 11:59 PM, Brian Wanca <bwanca@andersonwanca.com> wrote:

Someone is out of touch.

Sent from Outlook Mobile

On Fri, Mar 11, 2016 at 8:13 PM -0800, "Wayne Andersen" <wra1991@aol.com> wrote:

I agree with the $ estimate.  Please counter. Sleep well, gentlemen!

Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844

On Mar 11, 2016, at 9:41 PM, David Oppenheim <doppenheim@andersonwanca.com> wrote:

This is actually only about a $6.5 payout, so about 4%.

Sent from my iPhone

On Mar 11, 2016, at 8:42 PM, Brian Wanca <bwanca@andersonwanca.com> wrote:

Offering less than 10% of their exposure before trebling is not a serious offer.

Sent from Outlook Mobile

On Fri, Mar 11, 2016 at 5:37 PM -0800, "Wayne Andersen" <wra1991@aol.com> wrote:

Brian and Dave,

Mark just sent this offer in the term sheet form I believe you've requested. I haven't read it yet.  It's taken this long because Mark's schedule has been especially hectic--a city per day.  His client would really like to resolve the case. Please let me know your response.

CONFIDENTIAL

CinQ+MC000495

**Date : 3/18/2016 1:32:06 PM**
**From : "David Oppenheim"**
**To : "mark.mester@lw.com"**
**Cc : "Wayne Andersen" , "Brian Wanca" , "Michael Addison (M@mcalaw.net)"**
**Subject : Cin-Q v. Bucs**
**Attachment : Bucs settlement term sheet 031716.docx;**

CONFIDENTIAL SETTLEMENT COMMUNICATION

Attached is a response to your latest settlement proposal, which involved your client paying approximately $6,385,000 at a 5% claim rate ($4 million fees, $380,000 expenses, $40,000 incentive, $1,965,000 in claims) and $8,280,000 at a 10% claim rate.  Under this proposal, your client would pay $32,010,000 at 5% claims and $40,590,000 at 10%.

We note that the Capital One TCPA case settled for $75,455,099.00 with no reversion.  While we are willing to agree to a settlement with a reversionary fund prior to class certification here, there is no reason why the fund should be less than in Capital One, which involved robocalls and thus far more proof issues than does this case.

David M. Oppenheim
Attorney at Law
Anderson + Wanca
3701 Algonquin Rd., Suite 500
Rolling Meadows, IL 60008
p-(847) 368-1500
f-((847) 368-1501

**Cin-Q Autos, Inc. v. Buccaneers Limited Partnership, Case No. 13-cv-1592**
**Principal Terms of Class Settlement**

1.    The parties will seek court approval of the following settlement to resolve all claims regarding the 343,122 unsolicited facsimile advertisements successfully sent by or on behalf of Defendant from July 14, 2009 to June 9, 2010 (the "Class Period").

2.    Defendant will make available a total of $92,000,000.00 (the "Settlement Fund") to pay class member claims, to pay an incentive payment to each of the class representatives, and to pay attorney's fees and expenses to Class Counsel.  Defendant need not segregate funds or otherwise create special accounts to hold the Settlement Fund.  Defendant will not relinquish control of any money until payments are due.  Defendant will keep all unclaimed funds.  If any payments owed are not paid by the date due, Defendant will pay daily interest at Florida's statutory interest rate (4.75% per annum).

3.    The Settlement Class will be defined as:  "All persons from July 14, 2009 to June 9, 2010 who were sent facsimile advertisements offering group tickets or individual game tickets for the Tampa Bay Buccaneers games and which did not display the opt-out language required by 47 C.F.R. §64.1200."

4.    The Settlement Fund will be distributed on a "claims-made" basis as follows:

    (a)    <u>Payments to claiming class members</u>.  Defendant agrees to pay timely claims submitted by members of the Settlement Class.  A settlement notice and claim form will be sent to the class members by facsimile.  The per-fax, pro rata share of the Settlement Fund before subtracting the payments in Paragraphs (a) and (b) above is $500.00.

    (b)    <u>Incentive award to the class representative</u>.  Defendant agrees to pay and will not oppose or appeal a request for an incentive award of $20,000.00 from the Settlement Fund to each of the named plaintiffs for serving as the Class Representatives.

    (c)    <u>Fees and expenses to Class Counsel</u>.  Defendant agrees to pay and will not oppose a request by Class Counsel (Brian J. Wanca of Anderson + Wanca and Michael C. Addison of Addison & Howard, PA) for attorney's fees in an amount equal to 25% of the Settlement Fund ($23,000,000.00), plus reasonable out-of-pocket expenses from the Settlement Fund.

    (d)    <u>Reversion to Defendant</u>.  After making all required payments pursuant to this Paragraph 4, Defendant shall keep all unclaimed money in the Settlement Fund.

5.    Defendant will agree to a permanent injunction enjoining violations of the TCPA with language to be agreed upon.

6.    The Settlement Class will broadly release Defendant from claims arising out of or relating to Defendant's advertising faxes during the Class Period (*see* class definition above).  The

Settlement Class will not release claims regarding advertising faxes sent after the Class Period.

7. In addition to the Settlement Fund, Defendant shall pay the cost to retain a third party claims administrator who will issue the class notice by facsimile and postcard mailing to all class members to whom fax notice failed after three attempts to the extent an address can be ascertained by a reverse lookup process, receive the claim forms, assist class members in completing and submitting forms, and provide a list of accepted and rejected claims to counsel for the parties. The decision of the claims administrator regarding whether a claim is valid is final and binding on the parties. Upon request, the third party claims administrator will provide copies of all claim forms to counsel for the parties.

8. This term sheet constitutes a binding agreement if accepted. The parties will submit a formal written settlement agreement and other papers necessary to obtain the Court's preliminary and final approval of this settlement. Within 14 days after this term sheet is signed, Plaintiff's counsel will draft and provide such documents for Defendant' review, revisions, and approval. The parties anticipate seeking preliminary approval from the Court within 28 days of signing this term sheet.

**BUCCANEERS LIMITED PARTNERSHIP**

By: _____

Its: _____

Dated: _____

**PLAINTIFF AND THE SETTLEMENT CLASS**

By: _____
       Michael C. Addison
       Brian J. Wanca
       Their Attorneys

Dated: _____

CinQ+MC000498

**PROOF OF CLAIM – Cin-Q Autos, Inc. v. Buccaneers Limited Partnership, Case No. 13-cv-1592**

*You Must Complete All **THREE** Steps to Claim a Share of the Settlement Fund:*

1. **You Must Provide Your Contact Information.**

   Name: _____

   Company: _____

   Address: _____

   City/State/Zip Code: _____

   Fax Number(s): _____
   [List all numbers.  You may attach a separate sheet.]

2. **You Must Verify Ownership of the Fax Number(s) Listed in #1 above:**

   (a)   "The fax number(s) identified above or attached to this Proof of Claim was/were mine or my company's from July 14, 2009 to June 9, 2010."

   _____
   (Sign your name here)

   ***OR***

   (b)   The fax number(s) identified in No. 1 above or attached to this Proof of Claim was **not**/were **not** mine or my company's throughout the period from July 14, 2009 to June 9, 2010.  Explain when you obtained the fax number(s) identified in No. 1 above or attached to this Proof of Claim:

   _____
   _____
   _____

   _____
   (Sign your name here)

3. **You Must Return this Claim Form by [90 days]_____, 2016:**

   a.   Fax this Claim Form to:  <fax number for claims >

   ***OR***

   b.   Mail this Claim Form to:  [CLAIMS ADMINISTRATOR]

   ***OR***

   c.   Submit this claim form electronically at **[website]**

**Date : 4/12/2016 1:14:02 PM**
**From : "Wayne Andersen"**
**To : "Brian Wanca"**
**Cc : "Wayne Andersen"**
**Subject : Bucs**

Brian,

Although we haven't talked or even emailed in a while, I've been struggling with Mark Mester who has been struggling with his client who still can't believe the huge financial consequence that has tumbled into its life as a result of the communications.  I did call Dave Sunday to discuss my plan, but, as you know, he told me he was leaving the firm and that he no longer had any standing to negotiate.  Hence this email.  My plan is to fire out proposed brackets on the fee.  My primary goal is to move the defendant into a range more than double its current offer of $4 million.

If you have trouble with the bracket, please email so that we can set up a time to talk.

For that matter, please feel free to call, text or email whenever you'd like.  My cell is 847-650-6844.  Thanks. I'm in mediations all day today and tomorrow but can break free from time to time. Friday I have a relatively unstructured day if you'd like to have a more prolonged discussion. I believe that Mark is at a point where his client will make a real effort to settle this.

Thanks.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191  Brooke Buczkowski
Bbuczkowski@jamsadr.com

**Date : 4/12/2016 2:02:27 PM**
**From : "Brian Wanca"**
**To : "Wayne Andersen"**
**Cc : "m@mcalaw.net" , "Ross Good"**
**Subject : RE: Bucs- Confidential Settlement Communication FRE 408**

I am not interested in brackets., the distance between the parties position is so substantial that it makes no sense for us to discuss anything as everything has been already said. As discussed the claim form structure will not be offered after the class is certified as we will require that checks be sent to every member of the class. The underlying facts of this case support a trebling of a substantial portion of the faxes that were sent with liability exceeding $150 M. so I am at a loss to understand the basis of the offer when we were lead to believe the def was offering $20M all in. which would still be well short of what would be needed. While I have heard repeatedly def really wants to settle this I have seen no movement or an offer based on a true understanding of the liability facing the def. I must only conclude that it is another cry wolf which deserves to be ignored as actions speak louder than words. I don't wish to negotiate fees when the fund has not been agreed on and is not close to being agreed on.

Brian J. Wanca
ANDERSON+WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Ph: 847-368-1500
Fax: 847-368-1501

----Original Message----
From: Wayne Andersen [mailto:wra1991@aol.com]
Sent: Tuesday, April 12, 2016 1:14 PM
To: Brian Wanca <bwanca@andersonwanca.com>
Cc: Wayne Andersen <Wra1991@aol.com>
Subject: Bucs

Brian,

Although we haven't talked or even emailed in a while, I've been struggling with Mark Mester who has been struggling with his client who still can't believe the huge financial consequence that has tumbled into its life as a result of the communications. I did call Dave Sunday to discuss my plan, but, as you know, he told me he was leaving the firm and that he no longer had any standing to negotiate. Hence this email. My plan is to fire out proposed brackets on the fee. My primary goal is to move the defendant into a range more than double its current offer of $4 million.

If you have trouble with the bracket, please email so that we can set up a time to talk.
For that matter, please feel free to call, text or email whenever you'd like. My cell is 847-650-6844. Thanks. I'm in mediations all day today and tomorrow but can break free from time to time. Friday I have a relatively unstructured day if you'd like to have a more prolonged discussion. I believe that Mark is at a point where his client will make a real effort to settle this.

Thanks.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844  mobile

JAMS Chicago
312.655.9191  Brooke Buczkowski
Bbuczkowski@jamsadr.com

**Date : 4/12/2016 1:20:48 PM**
**From : "Wayne Andersen"**
**To : bwanca@andersonwanca.com, "Mark Mester"**
**Subject : Bucs fees**

Gentlemen,

I've done research on a variety of comparable settlements, consulted with colleagues at Jams and reflected (frankly for meaningful time during the past few days), and recommend that we negotiate a legal fee somewhere between $10 million and $20 million dollars.  For both sides there is risk and certain cost to be foreclosed by resolving this in the immediate future.

Will you agree to negotiate a fee within that range?  Please let me know. Call, text or email if you'd like to discuss this.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL

**Date : 4/12/2016 2:17:26 PM**
**From : "Wayne Andersen"**
**To : "Brian Wanca"**
**Cc : "m@mcalaw.net" , "Ross Good"**
**Subject : Re: Bucs- Confidential Settlement Communication FRE 408**

First, why give them an excuse not to raise the fee ante to $10 million--a hefty amount in absolute terms and more than double won't envelope offered. That said what about brackets with a virtual find of between $40 million and $80 million. Would you agree to that?  At would entail a giant move by them and a relatively small move by you.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844  mobile

JAMS Chicago
312.655.9191  Brooke Buczkowski
Bbuczkowski@jamsadr.com


> On Apr 12, 2016, at 2:02 PM, Brian Wanca <bwanca@andersonwanca.com> wrote:
>
> I am not interested in brackets., the distance between the parties position is so substantial that it makes no sense for us to discuss anything as everything has been already said. As discussed the claim form structure will not be offered after the class is certified as we will require that checks be sent to every member of the class. The underlying facts of this case support a trebling of a substantial portion of the faxes that were sent with liability exceeding $150 M. so I am at a loss to understand the basis of the offer when we were lead to believe the def was offering $20M all in  which would still be well short of what would be needed. While I have heard repeatedly def really wants to settle this I have seen no movement or an offer based on a true understanding of the liability facing the def. I must only conclude that it is another cry wolf which deserves to be ignored as actions speak louder than words. I don't wish to negotiate fees when the fund has not been agreed on and is not close to being agreed on.
>
>
> Brian J. Wanca
> ANDERSON+WANCA
> 3701 Algonquin Road, Suite 500
> Rolling Meadows, IL 60008
> Ph: 847-368-1500
> Fax 847-368-1501
>
>
> -----Original Message-----
> From: Wayne Andersen [mailto:wra1991@aol.com]
> Sent: Tuesday, April 12, 2016 1:14 PM
> To: Brian Wanca <bwanca@andersonwanca.com>
> Cc: Wayne Andersen <Wra1991@aol.com>
> Subject: Bucs
>
> Brian,
>
> Although we haven't talked or even emailed in a while, I've been struggling with Mark Mester who has been struggling with his client who still can't believe the huge financial consequence that has tumbled into its life as a result of the communications.  I did call Dave Sunday to discuss my plan, but, as you know, he told me he was leaving the firm and that he no longer had any standing to negotiate. Hence this email. My plan is to fire out proposed brackets on the fee. My primary goal is to move the defendant into a range more than double its current offer of $4 million.
>
> If you have trouble with the bracket, please email so that we can set up a time to talk.
> For that matter, please feel free to call, text or email whenever you'd like. My cell is 847-650-6844. Thanks. I'm in mediations all day today and tomorrow but can break free from time to time. Friday I have a relatively unstructured day if you'd like to have a more prolonged discussion. I believe that Mark is at a point where his client will make a real effort to settle this.
>
> Thanks.
>
> Judge Wayne Andersen (ret.)
> Mediator & Arbitrator
> 847.650.6844  mobile
>
> JAMS Chicago
> 312.655.9191  Brooke Buczkowski
> Bbuczkowski@jamsadr.com
>
>
>
>

CONFIDENTIAL          CinQ+MC000503

**Date : 4/12/2016 2:23:44 PM**
**From : "Brian Wanca"**
**To : "Wayne Andersen"**
**Cc : "m@mcalaw.net" , "Ross Good"**
**Subject : RE: Bues- Confidential Settlement Communication FRE 408**

We will deal with fees after class wide relief has been agreed on.

Brian J. Wanca
ANDERSON+WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Ph: 847-368-1500
Fax: 847-368-1501

-----Original Message-----
From: Wayne Andersen [mailto:wra1991@aol.com]
Sent: Tuesday, April 12, 2016 2:17 PM
To: Brian Wanca <bwanca@andersonwanca.com>
Cc: m@mcalaw.net; Ross Good <rgood@andersonwanca.com>
Subject: Re: Bues- Confidential Settlement Communication FRE 408

First, why give them an excuse not to raise the fee ante to $10 million--a hefty amount in absolute terms and more than double won't envelope offered. That said what about brackets with a virtual find of between $40 million and $80 million. Would you agree to that?  At would entail a giant move by them and a relatively small move by you.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844  mobile

JAMS Chicago
312.655.9191  Brooke Buczkowski
Bbuczkowski@jamsadr.com


> On Apr 12, 2016, at 2:02 PM, Brian Wanca <bwanca@andersonwanca.com> wrote:
>
> I am not interested in brackets., the distance between the parties position is so substantial that it makes no sense for us to discuss anything as everything has been already said. As discussed the claim form structure will not be offered after the class is certified as we will require that checks be sent to every member of the class. The underlying facts of this case support a trebling of a substantial portion of the faxes that were sent with liability exceeding $150 M. so I am at a loss to understand the basis of the offer when we were lead to believe the def was offering $20M all in  which would still be well short of what would be needed. While I have heard repeatedly def really wants to settle this I have seen no movement or an offer based on a true understanding of the liability facing the def. I must only conclude that it is another cry wolf which deserves to be ignored as actions speak louder than words. I don't wish to negotiate fees when the fund has not been agreed on and is not close to being agreed on.
>
>
> Brian J. Wanca
> ANDERSON+WANCA
> 3701 Algonquin Road, Suite 500
> Rolling Meadows, IL 60008
> Ph: 847-368-1500
> Fax 847-368-1501
>
>
> -----Original Message-----
> From: Wayne Andersen [mailto:wra1991@aol.com]
> Sent: Tuesday, April 12, 2016 1:14 PM
> To: Brian Wanca <bwanca@andersonwanca.com>
> Cc: Wayne Andersen <Wra1991@aol.com>
> Subject: Bues
>
> Brian,
>
> Although we haven't talked or even emailed in a while, I've been struggling with Mark Mester who has been struggling with his client who still can't believe the huge financial consequence that has tumbled into its life as a result of the communications. I did call Dave Sunday to discuss my plan, but, as you know, he told me he was leaving the firm and that he no longer had any standing to negotiate. Hence this email. My plan is to fire out proposed brackets on the fee. My primary goal is to move the defendant into a range more than double its current offer of $4 million.
>
> If you have trouble with the bracket, please email so that we can set up a time to talk.
> For that matter, please feel free to call, text or email whenever you'd like. My cell is 847-650-6844. Thanks. I'm in mediations all day today and tomorrow but can break free from time to time. Friday I have a relatively unstructured day if you'd like to have a more prolonged discussion. I believe that Mark is at a point where his client will make a real effort to settle this.
>
> Thanks.
>
> Judge Wayne Andersen (ret.)

CONFIDENTIAL

CinQ+MC000504

> Mediator & Arbitrator
> 847.650.6844  mobile
>
> JAMS Chicago
> 312.655.9191  Brooke Buczkowski
> Bbuczkowski@jamsadr.com
>
>
>
>

**Date : 4/13/2016 12:01:28 PM**
**From : "Brian Wanca"**
**To : "Wayne Andersen"**
**Cc : "Ross Good" , "m@mcalaw.net"**
**Subject : RE: More Bucs**

thanks


Brian J. Wanca
ANDERSON+WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Ph: 847-368-1500
Fax: 847-368-1501


-----Original Message-----
From: Wayne Andersen [mailto:wra1991@aol.com]
Sent: Wednesday, April 13, 2016 11:59 AM
To: Brian Wanca <bwanca@andersonwanca.com>
Cc: Ross Good <rgood@andersonwanca.com>; m@mcalaw.net
Subject: Re: More Bucs

Ok. I just emailed him.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com



> On Apr 13, 2016, at 11:25 AM, Brian Wanca <bwanca@andersonwanca.com> wrote:
>
> Mester can send us a term sheet with his " new offer."
> Brian J. Wanca
> ANDERSON+WANCA
> 3701 Algonquin Road, Suite 500
> Rolling Meadows, IL 60008
> Ph: 847-368-1500
> Fax 847-368-1501
>
>
> -----Original Message-----
> From: Wayne Andersen [mailto:wra1991@aol.com]
> Sent: Wednesday, April 13, 2016 11:18 AM
> To: Brian Wanca <bwanca@andersonwanca.com>
> Subject: More Bucs
>
> Brian,
>
> May I call you today to discuss this?  I'm in a mediation and not sure when I will get a break, but we shouldn't need to talk long.  I think Mester agreed to your structure in the back and forth with Dave earlier.  We also tentatively agreed upon a $300 per claim amount which would set the virtual fund at about $40 million. This is a hefty increase from any past offer.  Its the form you want and a substantial amount of money.  I'm sure they'll offer that--indeed they move up meaningfully if you give them any encouragement.  May we talk today?
>
> Judge Wayne Andersen (ret.)
> Mediator & Arbitrator
> 847.650.6844   mobile
>
> JAMS Chicago
> 312.655.9191   Brooke Buczkowski
> Bbuczkowski@jamsadr.com
>
>
>
>

CONFIDENTIAL                    CinQ+MC000506

**Date : 4/13/2016 11:18:07 AM**
**From : "Wayne Andersen"**
**To : "Brian Wanca"**
**Subject : More Bucs**

Brian,

May I call you today to discuss this?  I'm in a mediation and not sure when I will get a break, but we shouldn't need to talk long.  I think Mester agreed to your structure in the back and forth with Dave earlier.  We also tentatively agreed upon a $300 per claim amount which would set the virtual fund at about $40 million. This is a hefty increase from any past offer.  Its the form you want and a substantial amount of money.  I'm sure they'll offer that--indeed they move up meaningfully if you give them any encouragement.  May we talk today?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844  mobile

JAMS Chicago
312.655.9191  Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL                    CinQ+MC000507

**Date : 4/13/2016 11:25:35 AM**
**From : "Brian Wanca"**
**To : "Wayne Andersen"**
**Cc : "Ross Good" , "m@mcalaw.net"**
**Subject : RE: More Bucs**

Mester can send us a term sheet with his " new offer."
Brian J. Wanca
ANDERSON+WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Ph: 847-368-1500
Fax: 847-368-1501


-----Original Message-----
From: Wayne Andersen [mailto:wra1991@aol.com]
Sent: Wednesday, April 13, 2016 11:18 AM
To: Brian Wanca <bwanca@andersonwanca.com>
Subject: More Bucs

Brian,

May I call you today to discuss this? I'm in a mediation and not sure when I will get a break, but we shouldn't need to talk long. I think Mester agreed to your structure in the back and forth with Dave earlier. We also tentatively agreed upon a $300 per claim amount which would set the virtual fund at about $40 million. This is a hefty increase from any past offer. Its the form you want and a substantial amount of money. I'm sure they'll offer that--indeed they move up meaningfully if you give them any encouragement. May we talk today?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

CinQ+MC000508

**Date : 4/13/2016 11:58:40 AM**
**From : "Wayne Andersen"**
**To : "Brian Wanca"**
**Cc : "Ross Good" , "m@mcalaw.net"**
**Subject : Re: More Bucs**

Ok. I just emailed him.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844  mobile

JAMS Chicago
312.655.9191  Brooke Buczkowski
Bbuczkowski@jamsadr.com


> On Apr 13, 2016, at 11:25 AM, Brian Wanca <bwanca@andersonwanca.com> wrote:
>
> Mester can send us a term sheet with his " new offer."
> Brian J. Wanca
> ANDERSON+WANCA
> 3701 Algonquin Road, Suite 500
> Rolling Meadows, IL 60008
> Ph: 847-368-1500
> Fax 847-368-1501
>
>
> -----Original Message-----
> From: Wayne Andersen [mailto:wra1991@aol.com]
> Sent: Wednesday, April 13, 2016 11:18 AM
> To: Brian Wanca <bwanca@andersonwanca.com>
> Subject: More Bucs
>
> Brian,
>
> May I call you today to discuss this?  I'm in a mediation and not sure when I will get a break, but we shouldn't need to talk long.  I think Mester agreed to your structure in the back and forth with Dave earlier.  We also tentatively agreed upon a $300 per claim amount which would set the virtual fund at about $40 million. This is a hefty increase from any past offer.  Its the form you want and a substantial amount of money.  I'm sure they'll offer that--indeed they move up meaningfully if you give them any encouragement.  May we talk today?
>
> Judge Wayne Andersen (ret.)
> Mediator & Arbitrator
> 847.650.6844  mobile
>
> JAMS Chicago
> 312.655.9191  Brooke Buczkowski
> Bbuczkowski@jamsadr.com
>
>
>
>

CONFIDENTIAL                    CinQ+MC000509

**Date : 4/13/2016 4:34:45 PM**
**From : "Wayne Andersen"**
**To : "Brian Wanca"**
**Cc : "Ross Good" , "m@mcalaw.net"**
**Subject : Re: More Bucs**

Brian,

I've missed you at the office. You've asked for an offer and I'll ask Mark to make one. He believes he might do better with his clients if we started this with brackets of 40-80, but I'm going to ask him to just make an offer unless you advise me you'd like to go the bracket route.


Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844  mobile

JAMS Chicago
312.655.9191  Brooke Buczkowski
Bbuczkowski@jamsadr.com



> On Apr 13, 2016, at 12:01 PM, Brian Wanca <bwanca@andersonwanca.com> wrote:
>
> thanks
>
>
> Brian J. Wanca
> ANDERSON+WANCA
> 3701 Algonquin Road, Suite 500
> Rolling Meadows, IL 60008
> Ph: 847-368-1500
> Fax: 847-368-1501
>
>
> -----Original Message-----
> From: Wayne Andersen [mailto:wra1991@aol.com]
> Sent: Wednesday, April 13, 2016 11:59 AM
> To: Brian Wanca <bwanca@andersonwanca.com>
> Cc: Ross Good <rgood@andersonwanca.com>; m@mcalaw.net
> Subject: Re: More Bucs
>
> Ok. I just emailed him.
>
> Judge Wayne Andersen (ret.)
> Mediator & Arbitrator
> 847.650.6844  mobile
>
> JAMS Chicago
> 312.655.9191  Brooke Buczkowski
> Bbuczkowski@jamsadr.com
>
>
>
>
>> On Apr 13, 2016, at 11:25 AM, Brian Wanca <bwanca@andersonwanca.com> wrote:
>>
>> Mester can send us a termsheet with his " new offer."
>> Brian J. Wanca
>> ANDERSON+WANCA
>> 3701 Algonquin Road, Suite 500
>> Rolling Meadows, IL 60008
>> Ph: 847-368-1500
>> Fax: 847-368-1501
>>
>>
>> -----Original Message-----
>> From: Wayne Andersen [mailto:wra1991@aol.com]
>> Sent: Wednesday, April 13, 2016 11:18 AM
>> To: Brian Wanca <bwanca@andersonwanca.com>
>> Subject: More Bucs
>>
>> Brian,
>>
>> May I call you today to discuss this? I'm in a mediation and not sure when I will get a break, but we shouldn't need to talk long.  I think Mester agreed to your structure in the back and forth with Dave earlier.  We also tentatively agreed upon a $300 per claim amount which would set the virtual fund at about $40 million. This is a hefty increase from any past offer.  Its the form you want and a substantial amount of money.  I'm sure they'll offer that--indeed they move up meaningfully if you give them any encouragement. May we talk today?

CONFIDENTIAL                CinQ+MC000510

>>
>> Judge Wayne Andersen (ret.)
>> Mediator & Arbitrator
>> 847.650.6844   mobile
>>
>> JAMS Chicago
>> 312.655.9191   Brooke Buczkowski
>> Bbuczkowski@jamsadr.com
>

CONFIDENTIAL

CinQ+MC000511