# EXHIBIT 2B

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | 'wra1991@aol.com' |
| **CC:** | Lally, Kathleen (CH) |
| **BCC:** | Mester, Mark (CH); '056866_0001 _Tampa Bay Buccaneers_ TCPA Class Litigation_ Email _056866_0001_' |
| **Sent:** | 9/17/2015 6:36:16 PM |
| **Subject:** | Cin-Q v. Buccaneers -- Settlement Counteroffer |

Dear Judge Andersen – I trust and hope you are well and that your road trip was a success. We have, in turn, updated our client on the August 31, 2015 mediation session and on the offer made by class counsel at the end of that session. After running a couple of issues to ground, the Buccaneers are prepared to make the following offer:

1. A class settlement incorporating a claim-in structure akin to the last proposal made by class counsel on August 31, 2015, with the following modifications.

    a. The amount to be paid to class members who claim-in would be $300 per unique fax number. (As you will recall, that is a significant move from the last proposal we made on August 31, 2015, when we offered $200 per unique fax number.)

    b. The parties reach agreement on a reasonable notice plan to be funded by the Buccaneers.

    c. The parties agree on reasonable and adequate anti-fraud measures to guard against fraudulent claims.

    d. As before, the Buccaneers are also willing to consider offering to class members who claim-in the <u>option</u> of non-cash equivalents in lieu of the $300 cash payment (<u>e.g.</u>, Buccaneer tickets, parking passes, vendor coupons, etc.). I want to emphasize, however, that these non-cash alternatives would be offered as an <u>option</u> to class members and would obviously have a face value greater than $300, but all class members who claim-in would have the <u>option</u> of choosing <u>either</u> cash payments <u>or</u> the non-cash alternatives. I emphasize that because I understand that prior settlement offers made by the Buccaneers prior to our involvement were limited to non-cash consideration and were poorly received by class counsel on the theory that they would be deemed "coupon" settlements. By offering the <u>option</u> of cash or non-cash consideration, however, I believe we would avoid any suggestion that this would be a coupon settlement, and at the same time, we would obviously increase the benefit conferred to the class.

2. In terms of fees, we would be prepared to work towards agreement on a fee with class counsel, and we would obviously prefer that approach, though it would require class counsel to disclose their lodestar to us. Alternatively, we would also be willing to recommend to the Buccaneers that they agree to allow the Court to determine the appropriate fee to be paid to class counsel, with both sides able to address that issue before the Court. Under this second option, however, I think we would still want to know what the lodestar of class counsel is, and I assume class counsel would be willing to provide us with that number.

I think it would be helpful if you would present this offer to class counsel. Since the mediation, Brian Wanca and his team have reverted to a fairly aggressive approach to the litigation and have been trying to increase the pressure on the Buccaneers through various forms of discovery, all in a fairly obvious effort to force the issues with us. I don't know that this approach is the most productive, but I am confident we will be better served if you could continue to act as an intermediary.

I also am of the view that a second, in-person mediation session would be beneficial, and my sincere hope and belief is that we should be able to reach agreement at that second session. As you no doubt recall, we didn't make as much progress as we could have on August 31, 2015, in substantial part because the positions originally taken by Wanca were so extreme. By the end of the day, however, and with Wanca's final offer (<u>i.e.</u>, $500 per class member), we finally made meaningful progress, and I believe a deal can be reached if we simply continue on the current path.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **Sent:** | 9/21/2015 8:53:30 AM |
| **Subject:** | RE: Cin-Q v. Buccaneers -- Settlement Counteroffer |

Approximately 130,000.

---

**From:** Wayne Andersen
**Sent:** Monday, September 21, 2015 6:47:52 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Cin-Q v. Buccaneers -- Settlement Counteroffer

How many unique fax numbers are there?  Plaintiff needs to know.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 20, 2015, at 6:36 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Thanks very much.   Appreciate it.

---

**From:** Wayne Andersen
**Sent:** Sunday, September 20, 2015 3:52:51 PM
**To:** Mester, Mark (CH)
**Subject:** Re: Cin-Q v. Buccaneers -- Settlement Counteroffer

I've asked to speak with the other side Tuesday.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

 BLPMediation0000374

On Sep 17, 2015, at 6:36 PM, <<u>MARK.MESTER@lw.com</u>> <<u>MARK.MESTER@lw.com</u>> wrote:

Dear Judge Andersen – I trust and hope you are well and that your road trip was a success.  We have, in turn, updated our client on the August 31, 2015 mediation session and on the offer made by class counsel at the end of that session.  After running a couple of issues to ground, the Buccaneers are prepared to make the following offer:

1.      A class settlement incorporating a claim-in structure akin to the last proposal made by class counsel on August 31, 2015, with the following modifications.

   a.      The amount to be paid to class members who claim-in would be $300 per unique fax number.  (As you will recall, that is a significant move from the last proposal we made on August 31, 2015, when we offered $200 per unique fax number.)

   b.      The parties reach agreement on a reasonable notice plan to be funded by the Buccaneers.

   c.      The parties agree on reasonable and adequate anti-fraud measures to guard against fraudulent claims.

   d.      As before, the Buccaneers are also willing to consider offering to class members who claim-in the <u>option</u> of non-cash equivalents in lieu of the $300 cash payment (<u>e.g.</u>, Buccaneer tickets, parking passes, vendor coupons, etc.).  I want to emphasize, however, that these non-cash alternatives would be offered as an <u>option</u> to class members and would obviously have a face value greater than $300, but all class members who claim-in would have the <u>option</u> of choosing <u>either</u> cash payments <u>or</u> the non-cash alternatives.  I emphasize that because I understand that prior settlement offers made by the Buccaneers prior to our involvement were limited to non-cash consideration and were poorly received by class counsel on the theory that they would be deemed "coupon" settlements.  By offering the <u>option</u> of cash or non-cash consideration, however, I believe we would avoid any suggestion that this would be a coupon settlement, and at the same time, we would obviously increase the benefit conferred to the class.

2.      In terms of fees, we would be prepared to work towards agreement on a fee with class counsel, and we would obviously prefer that approach, though it would require class counsel to disclose their lodestar to us.  Alternatively, we would also be willing to recommend to the Buccaneers that they agree to allow the Court to determine the appropriate fee to be paid to class counsel, with both sides able to address that issue before the Court.  Under this second option, however, I think we would still want to know what the lodestar of class counsel is, and I assume class counsel would be willing to provide us with that number.

I think it would be helpful if you would present this offer to class counsel.  Since the mediation, Brian Wanca and his team have reverted to a fairly aggressive approach to the litigation and have been trying to increase the pressure on the Buccaneers through various forms of discovery, all in a fairly obvious effort to force the issues with us.  I don't know that this approach is the most productive, but I am confident we will be better served if you could continue to act as an intermediary.

I also am of the view that a second, in-person mediation session would be beneficial, and my sincere hope and belief is that we should be able to reach agreement at that second session.  As you no doubt recall, we didn't make as much progress as we could have on August 31, 2015, in substantial part because the positions originally taken by Wanca were so extreme.  By the end of the day, however, and with Wanca's final offer (<u>i.e.</u>, $500 per class member), we finally made meaningful progress, and I believe a deal can be reached if we simply continue on the current path.

Last but not least, I wonder if it wouldn't be useful for you to copy Joe on any email you send to Wanca's team on our offer.  I continue to believe Joe is a voice of reason on the other side.

Please let us know if you need anything else in order to convey our offer to class counsel.

Best regards.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen; David Oppenheim |
| **Sent:** | 10/25/2015 5:32:20 PM |
| **Subject:** | RE: Bucs settlement term sheet theirs |

Judge - As you probably recall, Brian estimated the likely claim-in rate at 5% during our initial mediation session in August. In our view, that is a fairly reasonable estimate, though we think the actual claim-in rate will likely be lower and more in the range of 1% to 2%, given the nature of the claims, the fact that so much time has passed since the faxes were allegedly sent and the Bucaneers' position in the community.

Best regards.

---

**From:** Wayne Andersen
**Sent:** Friday, October 23, 2015 12:12:21 PM
**To:** David Oppenheim
**Cc:** Mester, Mark (CH)
**Subject:** Re: Bucs settlement term sheet theirs

Mark,

It would be helpful to know your projected claims rate.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Oct 23, 2015, at 3:06 PM, David Oppenheim <doppenheim@andersonwanca.com> wrote:

This is meant to be Defendant's last offer placed into our structure, not where we are. We want to confirm that this is where you are and if so, will respond with revised numbers. If not, we need to discuss.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **Sent:** | 9/21/2015 9:44:15 AM |
| **Subject:** | RE: Cin-Q v. Buccaneers -- Settlement Counteroffer |

And needless to say, they should not construe this counter-offer as an attempt by us to whittle them down on their fees.   The Bucs understand they are going to have to pay their lodestar with a reasonable multiplier.

---

**From:** Wayne Andersen
**Sent:** Monday, September 21, 2015 6:54:11 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Cin-Q v. Buccaneers -- Settlement Counteroffer

Thanks.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 21, 2015, at 8:53 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Approximately 130,000.

---

**From:** Wayne Andersen
**Sent:** Monday, September 21, 2015 6:47:52 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Cin-Q v. Buccaneers -- Settlement Counteroffer

How many unique fax numbers are there?  Plaintiff needs to know.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

On Sep 20, 2015, at 6:36 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Thanks very much.   Appreciate it.

---

**From:** Wayne Andersen
**Sent:** Sunday, September 20, 2015 3:52:51 PM
**To:** Mester, Mark (CH)
**Subject:** Re: Cin-Q v. Buccaneers -- Settlement Counteroffer

I've asked to speak with the other side Tuesday.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 17, 2015, at 6:36 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Dear Judge Andersen – I trust and hope you are well and that your road trip was a success.  We have, in turn, updated our client on the August 31, 2015 mediation session and on the offer made by class counsel at the end of that session.  After running a couple of issues to ground, the Buccaneers are prepared to make the following offer:

1.       A class settlement incorporating a claim-in structure akin to the last proposal made by class counsel on August 31, 2015, with the following modifications.

   a.       The amount to be paid to class members who claim-in would be $300 per unique fax number. (As you will recall, that is a significant move from the last proposal we made on August 31, 2015, when we offered $200 per unique fax number.)

   b.       The parties reach agreement on a reasonable notice plan to be funded by the Buccaneers.

   c.       The parties agree on reasonable and adequate anti-fraud measures to guard against fraudulent claims.

   d.       As before, the Buccaneers are also willing to consider offering to class members who claim-in the option of non-cash equivalents in lieu of the $300 cash payment (e.g., Buccaneer tickets, parking passes, vendor coupons, etc.).  I want to emphasize, however, that these non-cash alternatives would be offered as an option to class members and would obviously have a face value greater than $300, but all class members who claim-in would have the option of choosing either cash payments or the non-cash alternatives.  I emphasize that because I understand that prior settlement offers made by the Buccaneers prior to our involvement were limited to non-cash consideration and were poorly received by class counsel on the theory that they would be deemed "coupon" settlements.  By offering the option of cash or non-cash consideration, however, I believe we would avoid any suggestion that this would be a coupon settlement, and at the same time, we would obviously increase the benefit conferred to the class.

2.    In terms of fees, we would be prepared to work towards agreement on a fee with class counsel, and we would obviously prefer that approach, though it would require class counsel to disclose their lodestar to us. Alternatively, we would also be willing to recommend to the Buccaneers that they agree to allow the Court to determine the appropriate fee to be paid to class counsel, with both sides able to address that issue before the Court. Under this second option, however, I think we would still want to know what the lodestar of class counsel is, and I assume class counsel would be willing to provide us with that number.

I think it would be helpful if you would present this offer to class counsel. Since the mediation, Brian Wanca and his team have reverted to a fairly aggressive approach to the litigation and have been trying to increase the pressure on the Buccaneers through various forms of discovery, all in a fairly obvious effort to force the issues with us. I don't know that this approach is the most productive, but I am confident we will be better served if you could continue to act as an intermediary.

I also am of the view that a second, in-person mediation session would be beneficial, and my sincere hope and belief is that we should be able to reach agreement at that second session. As you no doubt recall, we didn't make as much progress as we could have on August 31, 2015, in substantial part because the positions originally taken by Wanca were so extreme. By the end of the day, however, and with Wanca's final offer (i.e., $500 per class member), we finally made meaningful progress, and I believe a deal can be reached if we simply continue on the current path.

Last but not least, I wonder if it wouldn't be useful for you to copy Joe on any email you send to Wanca's team on our offer. I continue to believe Joe is a voice of reason on the other side.

Please let us know if you need anything else in order to convey our offer to class counsel.

Best regards,

**Mark S. Mester**

**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7623
Fax: +1.312.993.9767
Email: mark.mester@lw.com
http://www.lw.com

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **Sent:** | 9/21/2015 9:48:10 AM |
| **Subject:** | Re: Cin-Q v. Buccaneers -- Settlement Counteroffer |

The trick here is to keep up,a dialogue with them until they agree to accept the huge, reasonable amount they'll end up with.  I'll keep you posted.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 21, 2015, at 9:44 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

And needless to say, they should not construe this counter-offer as an attempt by us to whittle them down on their fees.   The Bucs understand they are going to have to pay their lodestar with a reasonable multiplier.

---

**From:** Wayne Andersen
**Sent:** Monday, September 21, 2015 6:54:11 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Cin-Q v. Buccaneers -- Settlement Counteroffer

Thanks.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 21, 2015, at 8:53 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Approximately 130,000.

---

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**From:** Wayne Andersen
**Sent:** Monday, September 21, 2015 6:47:52 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Cin-Q v. Buccaneers -- Settlement Counteroffer

How many unique fax numbers are there?  Plaintiff needs to know.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 20, 2015, at 6:36 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Thanks very much.   Appreciate it.

---

**From:** Wayne Andersen
**Sent:** Sunday, September 20, 2015 3:52:51 PM
**To:** Mester, Mark (CH)
**Subject:** Re: Cin-Q v. Buccaneers -- Settlement Counteroffer

I've asked to speak with the other side Tuesday.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 17, 2015, at 6:36 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Dear Judge Andersen – I trust and hope you are well and that your road trip was a success.  We have, in turn, updated our client on the August 31, 2015 mediation session and on the offer made by class counsel at the end of that session.  After running a couple of issues to ground, the Buccaneers are prepared to make the following offer:

1.      A class settlement incorporating a claim-in structure akin to the last proposal made by class counsel on August 31, 2015, with the following modifications.

        a.      The amount to be paid to class members who claim-in would be $300 per unique fax number.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

(As you will recall, that is a significant move from the last proposal we made on August 31, 2015, when we offered $200 per unique fax number.)

b.      The parties reach agreement on a reasonable notice plan to be funded by the Buccaneers.

c.      The parties agree on reasonable and adequate anti-fraud measures to guard against fraudulent claims.

d.      As before, the Buccaneers are also willing to consider offering to class members who claim-in the <u>option</u> of non-cash equivalents in lieu of the $300 cash payment (<u>e.g.</u>, Buccaneer tickets, parking passes, vendor coupons, etc.).  I want to emphasize, however, that these non-cash alternatives would be offered as an <u>option</u> to class members and would obviously have a face value greater than $300, but all class members who claim-in would have the <u>option</u> of choosing <u>either</u> cash payments <u>or</u> the non-cash alternatives.  I emphasize that because I understand that prior settlement offers made by the Buccaneers prior to our involvement were limited to non-cash consideration and were poorly received by class counsel on the theory that they would be deemed "coupon" settlements.  By offering the <u>option</u> of cash or non-cash consideration, however, I believe we would avoid any suggestion that this would be a coupon settlement, and at the same time, we would obviously increase the benefit conferred to the class.

2.      In terms of fees, we would be prepared to work towards agreement on a fee with class counsel, and we would obviously prefer that approach, though it would require class counsel to disclose their lodestar to us.  Alternatively, we would also be willing to recommend to the Buccaneers that they agree to allow the Court to determine the appropriate fee to be paid to class counsel, with both sides able to address that issue before the Court.  Under this second option, however, I think we would still want to know what the lodestar of class counsel is, and I assume class counsel would be willing to provide us with that number.

I think it would be helpful if you would present this offer to class counsel.  Since the mediation, Brian Wanca and his team have reverted to a fairly aggressive approach to the litigation and have been trying to increase the pressure on the Buccaneers through various forms of discovery, all in a fairly obvious effort to force the issues with us.  I don't know that this approach is the most productive, but I am confident we will be better served if you could continue to act as an intermediary.

I also am of the view that a second, in-person mediation session would be beneficial, and my sincere hope and belief is that we should be able to reach agreement at that second session.  As you no doubt recall, we didn't make as much progress as we could have on August 31, 2015, in substantial part because the positions originally taken by Wanca were so extreme.  By the end of the day, however, and with Wanca's final offer (<u>i.e.</u>, $500 per class member), we finally made meaningful progress, and I believe a deal can be reached if we simply continue on the current path.

Last but not least, I wonder if it wouldn't be useful for you to copy Joe on any email you send to Wanca's team on our offer.  I continue to believe Joe is a voice of reason on the other side.

Please let us know if you need anything else in order to convey our offer to class counsel.

Best regards.

**Mark S. Mester**

**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7623
Fax: +1.312.993.9767
Email: <u>mark.mester@lw.com</u>
<u>http://www.lw.com</u>

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                                                                    BLPMediation0000385

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **Sent:** | 9/21/2015 1:16:23 PM |
| **Subject:** | Re: Cin-Q v. Buccaneers -- Settlement Counteroffer |

Plaintiff notes that the $300 x 130,000 translates to $39 million which I assume you don't want to pay in full. Do want to propose a cap or fixed fund?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 21, 2015, at 10:01 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

That is exactly right.   I think you and I figured that out on August 31, but for reasons that elude me, they seem to be slow learners when it comes to that particular issue.

---

**From:** Wayne Andersen
**Sent:** Monday, September 21, 2015 7:48:10 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Cin-Q v. Buccaneers -- Settlement Counteroffer

The trick here is to keep up a dialogue with them until they agree to accept the huge, reasonable amount they'll end up with.  I'll keep you posted.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 21, 2015, at 9:44 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

And needless to say, they should not construe this counter-offer as an attempt by us to whittle them down on their fees.   The Bucs understand they are going to have to pay their lodestar with a reasonable multiplier.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**From:** Wayne Andersen
**Sent:** Monday, September 21, 2015 6:54:11 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Cin-Q v. Buccaneers -- Settlement Counteroffer

Thanks.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 21, 2015, at 8:53 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Approximately 130,000.

**From:** Wayne Andersen
**Sent:** Monday, September 21, 2015 6:47:52 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Cin-Q v. Buccaneers -- Settlement Counteroffer

How many unique fax numbers are there?  Plaintiff needs to know.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 20, 2015, at 6:36 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Thanks very much.   Appreciate it.

**From:** Wayne Andersen
**Sent:** Sunday, September 20, 2015 3:52:51 PM
**To:** Mester, Mark (CH)

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Subject:** Re: Cin-Q v. Buccaneers -- Settlement Counteroffer

I've asked to speak with the other side Tuesday.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 17, 2015, at 6:36 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Dear Judge Andersen – I trust and hope you are well and that your road trip was a success.  We have, in turn, updated our client on the August 31, 2015 mediation session and on the offer made by class counsel at the end of that session.  After running a couple of issues to ground, the Buccaneers are prepared to make the following offer:

1.       A class settlement incorporating a claim-in structure akin to the last proposal made by class counsel on August 31, 2015, with the following modifications.

    a.       The amount to be paid to class members who claim-in would be $300 per unique fax number. (As you will recall, that is a significant move from the last proposal we made on August 31, 2015, when we offered $200 per unique fax number.)

    b.       The parties reach agreement on a reasonable notice plan to be funded by the Buccaneers.

    c.       The parties agree on reasonable and adequate anti-fraud measures to guard against fraudulent claims.

    d.       As before, the Buccaneers are also willing to consider offering to class members who claim-in the option of non-cash equivalents in lieu of the $300 cash payment (e.g., Buccaneer tickets, parking passes, vendor coupons, etc.).  I want to emphasize, however, that these non-cash alternatives would be offered as an option to class members and would obviously have a face value greater than $300, but all class members who claim-in would have the option of choosing either cash payments or the non-cash alternatives.  I emphasize that because I understand that prior settlement offers made by the Buccaneers prior to our involvement were limited to non-cash consideration and were poorly received by class counsel on the theory that they would be deemed "coupon" settlements.  By offering the option of cash or non-cash consideration, however, I believe we would avoid any suggestion that this would be a coupon settlement, and at the same time, we would obviously increase the benefit conferred to the class.

2.       In terms of fees, we would be prepared to work towards agreement on a fee with class counsel, and we would obviously prefer that approach, though it would require class counsel to disclose their lodestar to us.  Alternatively, we would also be willing to recommend to the Buccaneers that they agree to allow the Court to determine the appropriate fee to be paid to class counsel, with both sides able to address that issue before the Court.  Under this second option, however, I think we would still want to know what the lodestar of class counsel is, and I assume class counsel would be willing to provide us with that number.

I think it would be helpful if you would present this offer to class counsel.  Since the mediation, Brian Wanca and his team have reverted to a fairly aggressive approach to the litigation and have been trying to increase the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

pressure on the Buccaneers through various forms of discovery, all in a fairly obvious effort to force the issues with us.  I don't know that this approach is the most productive, but I am confident we will be better served if you could continue to act as an intermediary.

I also am of the view that a second, in-person mediation session would be beneficial, and my sincere hope and belief is that we should be able to reach agreement at that second session.  As you no doubt recall, we didn't make as much progress as we could have on August 31, 2015, in substantial part because the positions originally taken by Wanca were so extreme.  By the end of the day, however, and with Wanca's final offer (i.e., $500 per class member), we finally made meaningful progress, and I believe a deal can be reached if we simply continue on the current path.

Last but not least, I wonder if it wouldn't be useful for you to copy Joe on any email you send to Wanca's team on our offer.  I continue to believe Joe is a voice of reason on the other side.

Please let us know if you need anything else in order to convey our offer to class counsel.

Best regards.

**Mark S. Mester**

**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7623
Fax: +1.312.993.9767
Email: mark.mester@lw.com
http://www.lw.com

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **Sent:** | 9/21/2015 2:03:52 PM |
| **Subject:** | RE: Cin-Q v. Buccaneers -- Settlement Counteroffer |

Consistent with our understanding of their last offer at the end of our first mediation session on August 31st, our proposal contemplated a straight claim-in structure with no caps or other limits.   In other words, the Bucs would pay all claim members who claim-in $300 per unique number without further limitation, subject only to the agreed-upon fraud protections.   My strong sense is that we won't get 100% claim-in from the class (indeed I think the anticipated claim-in percentage Brian floated on August 31 was 5%, which strikes me as reasonable if not a bit high), but the Bucs are prepared to pay all legitimate claims that are made.

I remain of the view that a common fund isn't going to work here given what I anticipate their fee demand is going to be and what the Bucs are going to be willing to pay all-in.   I know, however, that Brian has used caps with claim-in structures, and that is certainly something we would also consider.  But in terms of the offer we just made, we were not envisioning any type of caps or fixed fund -- just an agreed-upon amount to be paid to all persons who claim-in.

---

**From:** Wayne Andersen
**Sent:** Monday, September 21, 2015 11:16:23 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Cin-Q v. Buccaneers -- Settlement Counteroffer

Plaintiff notes that the $300 x 130,000 translates to $39 million which I assume you don't want to pay in full. Do want to propose a cap or fixed fund?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 21, 2015, at 10:01 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

That is exactly right.   I think you and I figured that out on August 31, but for reasons that elude me, they seem to be slow learners when it comes to that particular issue.

---

**From:** Wayne Andersen
**Sent:** Monday, September 21, 2015 7:48:10 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Cin-Q v. Buccaneers -- Settlement Counteroffer

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

The trick here is to keep up,a dialogue with them until they agree to accept the huge, reasonable amount they'll end up with.  I'll keep you posted.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 21, 2015, at 9:44 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

And needless to say, they should not construe this counter-offer as an attempt by us to whittle them down on their fees.   The Bucs understand they are going to have to pay their lodestar with a reasonable multiplier.

---

**From:** Wayne Andersen
**Sent:** Monday, September 21, 2015 6:54:11 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Cin-Q v. Buccaneers -- Settlement Counteroffer

Thanks.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 21, 2015, at 8:53 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Approximately 130,000.

---

**From:** Wayne Andersen
**Sent:** Monday, September 21, 2015 6:47:52 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Cin-Q v. Buccaneers -- Settlement Counteroffer

How many unique fax numbers are there?  Plaintiff needs to know.

 BLPMediation0000397

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 20, 2015, at 6:36 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Thanks very much.   Appreciate it.

---

**From:** Wayne Andersen
**Sent:** Sunday, September 20, 2015 3:52:51 PM
**To:** Mester, Mark (CH)
**Subject:** Re: Cin-Q v. Buccaneers -- Settlement Counteroffer

I've asked to speak with the other side Tuesday.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Sep 17, 2015, at 6:36 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Dear Judge Andersen – I trust and hope you are well and that your road trip was a success.  We have, in turn, updated our client on the August 31, 2015 mediation session and on the offer made by class counsel at the end of that session.  After running a couple of issues to ground, the Buccaneers are prepared to make the following offer:

1.      A class settlement incorporating a claim-in structure akin to the last proposal made by class counsel on August 31, 2015, with the following modifications.

   a.      The amount to be paid to class members who claim-in would be $300 per unique fax number. (As you will recall, that is a significant move from the last proposal we made on August 31, 2015, when we offered $200 per unique fax number.)

   b.      The parties reach agreement on a reasonable notice plan to be funded by the Buccaneers.

   c.      The parties agree on reasonable and adequate anti-fraud measures to guard against fraudulent claims.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

d.      As before, the Buccaneers are also willing to consider offering to class members who claim-in the option of non-cash equivalents in lieu of the $300 cash payment (e.g., Buccaneer tickets, parking passes, vendor coupons, etc.).  I want to emphasize, however, that these non-cash alternatives would be offered as an option to class members and would obviously have a face value greater than $300, but all class members who claim-in would have the option of choosing either cash payments or the non-cash alternatives.  I emphasize that because I understand that prior settlement offers made by the Buccaneers prior to our involvement were limited to non-cash consideration and were poorly received by class counsel on the theory that they would be deemed "coupon" settlements.  By offering the option of cash or non-cash consideration, however, I believe we would avoid any suggestion that this would be a coupon settlement, and at the same time, we would obviously increase the benefit conferred to the class.

2.      In terms of fees, we would be prepared to work towards agreement on a fee with class counsel, and we would obviously prefer that approach, though it would require class counsel to disclose their lodestar to us.  Alternatively, we would also be willing to recommend to the Buccaneers that they agree to allow the Court to determine the appropriate fee to be paid to class counsel, with both sides able to address that issue before the Court.  Under this second option, however, I think we would still want to know what the lodestar of class counsel is, and I assume class counsel would be willing to provide us with that number.

I think it would be helpful if you would present this offer to class counsel.  Since the mediation, Brian Wanca and his team have reverted to a fairly aggressive approach to the litigation and have been trying to increase the pressure on the Buccaneers through various forms of discovery, all in a fairly obvious effort to force the issues with us.  I don't know that this approach is the most productive, but I am confident we will be better served if you could continue to act as an intermediary.

I also am of the view that a second, in-person mediation session would be beneficial, and my sincere hope and belief is that we should be able to reach agreement at that second session.  As you no doubt recall, we didn't make as much progress as we could have on August 31, 2015, in substantial part because the positions originally taken by Wanca were so extreme.  By the end of the day, however, and with Wanca's final offer (i.e., $500 per class member), we finally made meaningful progress, and I believe a deal can be reached if we simply continue on the current path.

Last but not least, I wonder if it wouldn't be useful for you to copy Joe on any email you send to Wanca's team on our offer.  I continue to believe Joe is a voice of reason on the other side.

Please let us know if you need anything else in order to convey our offer to class counsel.

Best regards.

**Mark S. Mester**

**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7623
Fax: +1.312.993.9767
Email: mark.mester@lw.com
http://www.lw.com

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you

are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

| | |
|---|---|
| **From:** | David Oppenheim <doppenheim@andersonwanca.com> |
| **To:** | Wayne Andersen; Mester, Mark (CH) |
| **CC:** | Brian Wanca; Michael Addison (M@mcalaw.net); Ross Good |
| **Sent:** | 10/5/2015 12:05:34 PM |
| **Subject:** | Bucs settlement term sheet theirs |
| **Attachments:** | Bucs settlement term sheet theirs.docx |

CONFIDENTIAL SETTLEMENT COMMUNICATION

Judge Andersen passed on the Bucs latest counter. I apologize that I am just now getting back to this but I was out last week. Plugging your numbers into our term sheet yields the attached. Is this what you propose? If not, what is different? It makes sense to us to make sure we are comparing apples to apples and work out structural issues so that we can move forward. Please let us know. I am available to discuss if you want. Thanks.

David M. Oppenheim
Attorney at Law
Anderson + Wanca
3701 Algonquin Rd., Suite 500
Rolling Meadows, IL 60008
p-(847) 368-1500
f-((847) 368-1501

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

BLPMediation0000410

**Cin-Q Autos, Inc. v. Buccaneers Limited Partnership, Case No. 13-cv-1592**
**Principal Terms of Class Settlement**

1.   The parties will seek court approval of the following settlement to resolve all claims regarding the unsolicited facsimile advertisements successfully sent to 131,011 persons by or on behalf of Defendant from July 14, 2009 to June 9, 2010 (the "Class Period").

2.   Defendant will make available a total of $39,303,300.00 (the "Settlement Fund") to pay class member claims, to pay a *cy pres* award if necessary, to pay an incentive payment to each of the class representatives, and to pay attorney's fees and expenses to Class Counsel. Defendant need not segregate funds or otherwise create special accounts to hold the Settlement Fund.  Defendant will not relinquish control of any money until payments are due.  As described below, if the class member claims total less than an agreed percentage of the Settlement Fund, then that difference will be awarded to charity as a *cy pres* award. Otherwise, Defendant will keep all unclaimed funds.

3.   The Settlement Class will be defined as:  "All persons from July 14, 2009 to June 9, 2010 who were sent facsimile advertisements offering group tickets or individual game tickets for the Tampa Bay Buccaneers games and which did not display the opt-out language required by 47 C.F.R. §64.1200."

4.   The Settlement Fund will be distributed on a "claims-made" basis as follows:

   (a)   <u>Payments to claiming class members</u>.  Defendant agrees to pay timely claims submitted by members of the Settlement Class.  A settlement notice and claim form will be sent to the class members by facsimile.  The pro rata share of the Settlement Fund before subtracting the payments in Paragraphs (b) and (c) below is $300.00.

   (b)   <u>Incentive award to the class representative</u>.  Defendant agrees to pay and will not oppose or appeal a request for an incentive award of $15,000.00 from the Settlement Fund to each of the named plaintiffs for serving as the Class Representatives.

   (c)   <u>Fees and expenses to Class Counsel</u>.  Defendant agrees to pay and will not oppose a request by Class Counsel (Brian J. Wanca of Anderson + Wanca and Michael C. Addison of Addison & Howard, PA) for attorney's fees in an amount equal to 30% of the Settlement Fund ($11,790,990.00), plus reasonable out-of-pocket expenses from the Settlement Fund.

   (d)   <u>Reversion to Defendant</u>.  After making all required payments pursuant to this Paragraph 4, Defendant shall keep all unclaimed money in the Settlement Fund.

5.   Defendant will agree to a permanent injunction enjoining violations of the TCPA with language to be agreed upon.

6.   The Settlement Class will broadly release Defendant from claims arising out of or relating to Defendant's advertising faxes during the Class Period (*see* class definition above).  The

Term Sheet – page 1

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                                                                 BLPMediation0000411

Settlement Class will not release claims regarding advertising faxes sent after the Class Period.

7.      In addition to the Settlement Fund, Defendant shall pay the cost to retain a third party claims administrator who will issue the class notice by facsimile and publication, receive the claim forms, assist class members in completing and submitting forms, and provide a list of accepted and rejected claims to counsel for the parties.  The decision of the claims administrator regarding whether a claim is valid is final and binding on the parties.  Upon request, the third party claims administrator will provide copies of all claim forms to counsel for the parties.

8.      This term sheet constitutes a binding agreement if accepted.  The parties will submit a formal written settlement agreement and other papers necessary to obtain the Court's preliminary and final approval of this settlement.  Within 14 days after this term sheet is signed, Plaintiff's counsel will draft and provide such documents for Defendant' review, revisions, and approval.  The parties anticipate seeking preliminary approval from the Court within 28 days of signing this term sheet.

**BUCCANEERS LIMITED PARTNERSHIP**

By: _____

Its: _____

Dated: _____

**PLAINTIFF AND THE SETTLEMENT CLASS**

By: _____
           Michael C. Addison
           Brian J. Wanca
           Their Attorneys

Dated: _____

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**PROOF OF CLAIM – Cin-Q Autos, Inc. v. Buccaneers Limited Partnership, Case No. 13-cv-1592**

*You Must Complete All **THREE** Steps to Claim a Share of the Settlement Fund:*

1.   **You Must Provide Your Contact Information.**

   Name: _____

   Company: _____

   Address: _____

   City/State/Zip Code: _____

   Fax Number(s): _____
                         [List all numbers.  You may attach a separate sheet.]

2.   **You Must Verify Ownership of the Fax Number(s) Listed in #1 above:**

   (a)   "The fax number(s) identified above or attached to this Proof of Claim was/were mine or my company's from July 14, 2009 to June 9, 2010."

   _____
   (Sign your name here)

   ***OR***

   (b)   The fax number(s) identified in No. 1 above or attached to this Proof of Claim was **not**/were **not** mine or my company's throughout the period from July 14, 2009 to June 9, 2010.  Explain when you obtained the fax number(s) identified in No. 1 above or attached to this Proof of Claim:

   _____
   _____
   _____

   _____
   (Sign your name here)

3.   **You Must Return this Claim Form by [90 days]_____, 2015:**

   a.   Fax this Claim Form to:  <u>&lt;fax number for claims &gt;</u>

   ***OR***

   b.   Mail this Claim Form to:  [CLAIMS ADMINISTRATOR]

   ***OR***

   c.   Submit this claim form electronically at **[website]**

Term Sheet – page 3

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **Sent:** | 10/7/2015 5:38:28 PM |
| **Subject:** | RE: (No Subject) |

Judge – Thanks. We did finally get their offer late Monday and are in the process of reviewing it with our client and their other advisors. In that regard, we are hoping to have a conference call with the Bucs' management on Friday.

In terms of the offer itself, I think there is a ray of hope in that they appear to have agreed to the $300 per class member we had proposed in our last offer. That is progress and would suggest to me at least that we now have agreement in terms of what amount would be fair, reasonable and adequate for the class. That is definitely progress and a foundation on which we should be able to build a final agreement.

Where the offer obviously leaves much to be desired, however, is in their continuing effort to characterize what is in essence an uncapped claim-in structure as a common fund (in spite of the safety valves of reversion and cy pres and the fact the Buccaneers would not have to actually fund the common fund but, instead, would pay claims as they are made). Obviously, they are doing this to justify a fee demand of nearly $12 million that is exorbitant by any standard and honestly will likely be a non-starter for the Buccaneers if we are to take it as a serious demand, which I don't. I continue to believe, however, that the best approach would be for them to actually tell us what their lodestar is so that we can then discuss a reasonable multiplier and won't have to resort to contortions over common funds that aren't really common funds. The Buccaneers understand and accept that Brian and David and their team have no doubt billed a lot of hours to this matter and incurred significant costs. (The Buccaneers themselves have spent roughly $800,000 in fees and costs since the matters began.) And the Buccaneers also realize that they will have to agree to a reasonable multiplier if this matter is to settle. So I don't think we really need to go through the mental gymnastics suggested by their last offer, unless, of course, $11 million in fees is really their bottom line, which I know it isn't.

Best regards.

---

**From:** Wayne Andersen
**Sent:** Wednesday, October 07, 2015 3:22:28 PM
**To:** Mester, Mark (CH)
**Subject:** Re:

Mark,

I just got off the phone with Dave. He says he sent you a proposed form of settlement in the hope that, if you can agree on some version of that, a subsequent agreement on the money will get it done. He doesn't want to get hung up on terms and get a deal upset after we agree on the money. If we push them on a specific dollar amount right now, I think it would be an all in number of $30 million or more. At amount might not be helpful.

What do you think?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com


On Oct 1, 2015, at 10:56 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - Any update on Wanca? My client is starting to wonder if he really wants to settle.

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **Sent:** | 10/7/2015 5:22:28 PM |
| **Subject:** | Re: |

Mark,

I just got off the phone with Dave. He says he sent you a proposed form of settlement in the hope that, if you can agree on some version of that, a subsequent agreement on the money will get it done. He doesn't want to get hung up on terms and get a deal upset after we agree on the money. If we push them on a specific dollar amount right now, I think it would be an all in number of $30 million or more. At amount might not be helpful.

What do you think?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com


On Oct 1, 2015, at 10:56 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - Any update on Wanca? My client is starting to wonder if he really wants to settle.

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| From: | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| To: | Wayne Andersen |
| Sent: | 10/23/2015 2:28:12 PM |
| Subject: | RE: Bucs settlement term sheet theirs |

Before I answer, can I ask why?

---

**From:** Wayne Andersen
**Sent:** Friday, October 23, 2015 12:12:21 PM
**To:** David Oppenheim
**Cc:** Mester, Mark (CH)
**Subject:** Re: Bucs settlement term sheet theirs

Mark,

It would be helpful to know your projected claims rate.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Oct 23, 2015, at 3:06 PM, David Oppenheim <doppenheim@andersonwanca.com> wrote:

This is meant to be Defendant's last offer placed into our structure, not where we are. We want to confirm that this is where you are and if so, will respond with revised numbers. If not, we need to discuss.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **Sent:** | 10/23/2015 8:56:46 AM |
| **Subject:** | Cin-Q v. Buccaneers |

Judge Andersen - I trust and hope you are well. I wanted to get back to you on the most recent proposal from Plaintiffs' counsel. I have had an opportunity to discuss that proposal with our client, and we had one question. More specifically, we wanted to know what percentage Plaintiffs' counsel were proposing in Paragraph 2 of their proposal for amounts that must go toward a cy pres award versus the amount that reverts to the Buccaneers. We understand Plaintiffs' counsel are proposing that if the total amount claimed by class members "is less than an agreed percentage," then that difference will be awarded cy pres and that "Defendant will keep" the balance of unclaimed funds. But Plaintiffs' counsel didn't specify what the percentage would be, and we obviously need that number in order to fully evaluate their proposal.

While I don't think the Buccaneers will be adopting the structure proposed by Plaintiffs' counsel (likely not a surprise), we do need to know what the percentage is that Plaintiffs' counsel are proposing so that we can better understand their offer and be in a better position to respond to it.

Best regards.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | David Oppenheim <doppenheim@andersonwanca.com> |
| **To:** | wra1991@aol.com; Mester, Mark (CH) |
| **Sent:** | 10/23/2015 2:06:15 PM |
| **Subject:** | Bucs settlement term sheet theirs |
| **Attachments:** | Bucs settlement term sheet theirs.docx |

This is meant to be Defendant's last offer placed into our structure, not where we are. We want to confirm that this is where you are and if so, will respond with revised numbers. If not, we need to discuss.

BLPMediation0000426

**Cin-Q Autos, Inc. v. Buccaneers Limited Partnership, Case No. 13-cv-1592**
**Principal Terms of Class Settlement**

1.     The parties will seek court approval of the following settlement to resolve all claims regarding the unsolicited facsimile advertisements successfully sent to 131,011 persons by or on behalf of Defendant from July 14, 2009 to June 9, 2010 (the "Class Period").

2.     Defendant will make available a total of $39,303,300.00 (the "Settlement Fund") to pay class member claims, to pay an incentive payment to each of the class representatives, and to pay attorney's fees and expenses to Class Counsel. Defendant need not segregate funds or otherwise create special accounts to hold the Settlement Fund. Defendant will not relinquish control of any money until payments are due. As described below, if the class member claims total less than an agreed percentage of the Settlement Fund. Otherwise, Defendant will keep all unclaimed funds.

3.     The Settlement Class will be defined as: "All persons from July 14, 2009 to June 9, 2010 who were sent facsimile advertisements offering group tickets or individual game tickets for the Tampa Bay Buccaneers games and which did not display the opt-out language required by 47 C.F.R. §64.1200."

4.     The Settlement Fund will be distributed on a "claims-made" basis as follows:

    (a)    <u>Payments to claiming class members</u>. Defendant agrees to pay timely claims submitted by members of the Settlement Class. A settlement notice and claim form will be sent to the class members by facsimile. The pro rata share of the Settlement Fund before subtracting the payments in Paragraphs (b) and (c) below is $300.00.

    (b)    <u>Incentive award to the class representative</u>. Defendant agrees to pay and will not oppose or appeal a request for an incentive award of $15,000.00 from the Settlement Fund to each of the named plaintiffs for serving as the Class Representatives.

    (c)    <u>Fees and expenses to Class Counsel</u>. Defendant agrees to pay and will not oppose a request by Class Counsel (Brian J. Wanca of Anderson + Wanca and Michael C. Addison of Addison & Howard, PA) for attorney's fees in an amount equal to 30% of the Settlement Fund ($11,790,990.00), plus reasonable out-of-pocket expenses from the Settlement Fund.

    (d)    <u>Reversion to Defendant</u>. After making all required payments pursuant to this Paragraph 4, Defendant shall keep all unclaimed money in the Settlement Fund.

5.     Defendant will agree to a permanent injunction enjoining violations of the TCPA with language to be agreed upon.

6.     The Settlement Class will broadly release Defendant from claims arising out of or relating to Defendant's advertising faxes during the Class Period (*see* class definition above). The Settlement Class will not release claims regarding advertising faxes sent after the Class Period.

<p align="center">Term Sheet – page 1</p>

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

7.  In addition to the Settlement Fund, Defendant shall pay the cost to retain a third party claims administrator who will issue the class notice by facsimile and publication, receive the claim forms, assist class members in completing and submitting forms, and provide a list of accepted and rejected claims to counsel for the parties.  The decision of the claims administrator regarding whether a claim is valid is final and binding on the parties.  Upon request, the third party claims administrator will provide copies of all claim forms to counsel for the parties.

8.  This term sheet constitutes a binding agreement if accepted.  The parties will submit a formal written settlement agreement and other papers necessary to obtain the Court's preliminary and final approval of this settlement.  Within 14 days after this term sheet is signed, Plaintiff's counsel will draft and provide such documents for Defendant' review, revisions, and approval.  The parties anticipate seeking preliminary approval from the Court within 28 days of signing this term sheet.

**BUCCANEERS LIMITED PARTNERSHIP**

By: _____

Its: _____

Dated: _____

**PLAINTIFF AND THE SETTLEMENT CLASS**

By: _____
       Michael C. Addison
       Brian J. Wanca
       Their Attorneys


Dated: _____

Term Sheet – page 2

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

BLPMediation0000428

**PROOF OF CLAIM – Cin-Q Autos, Inc. v. Buccaneers Limited Partnership, Case No. 13-cv-1592**

*You Must Complete All **THREE** Steps to Claim a Share of the Settlement Fund:*

1.   **You Must Provide Your Contact Information.**

   Name: _____

   Company: _____

   Address: _____

   City/State/Zip Code: _____

   Fax Number(s): _____
   [List all numbers.  You may attach a separate sheet.]

2.   **You Must Verify Ownership of the Fax Number(s) Listed in #1 above:**

   (a)   "The fax number(s) identified above or attached to this Proof of Claim was/were mine or my company's from July 14, 2009 to June 9, 2010."

   _____
   (Sign your name here)

   ***OR***

   (b)   The fax number(s) identified in No. 1 above or attached to this Proof of Claim was **not**/were **not** mine or my company's throughout the period from July 14, 2009 to June 9, 2010.  Explain when you obtained the fax number(s) identified in No. 1 above or attached to this Proof of Claim:

   _____
   _____
   _____

   _____
   (Sign your name here)

3.   **You Must Return this Claim Form by [90 days]_____, 2015:**

   a.   Fax this Claim Form to:  <fax number for claims >

   ***OR***

   b.   Mail this Claim Form to:  [CLAIMS ADMINISTRATOR]

   ***OR***

   c.   Submit this claim form electronically at **[website]**

Term Sheet – page 3

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
BLPMediation0000429

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | David Oppenheim |
| **CC:** | Mester, Mark (CH) |
| **Sent:** | 10/23/2015 2:12:21 PM |
| **Subject:** | Re: Bucs settlement term sheet theirs |

Mark,

It would be helpful to know your projected claims rate.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com


On Oct 23, 2015, at 3:06 PM, David Oppenheim <doppenheim@andersonwanca.com> wrote:

This is meant to be Defendant's last offer placed into our structure, not where we are. We want to confirm that this is where you are and if so, will respond with revised numbers. If not, we need to discuss.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **Sent:** | 10/23/2015 3:14:39 PM |
| **Subject:** | Re: Bucs settlement term sheet theirs |

Dave said it would be helpful, I suppose because it gives him as to what you are willing to spend. My experience with him is that, once he knows the size of the pot, he's pretty good at figuring out how to split it in a way that works for everyone, including the court. Anyhow, he asked me to ask, so I did.

I saw Posner at 219 yesterday and was tempted to talk about Pearson, but changed my mind.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Oct 23, 2015, at 3:28 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Before I answer, can I ask why?

---

**From:** Wayne Andersen
**Sent:** Friday, October 23, 2015 12:12:21 PM
**To:** David Oppenheim
**Cc:** Mester, Mark (CH)
**Subject:** Re: Bucs settlement term sheet theirs

Mark,

It would be helpful to know your projected claims rate.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Oct 23, 2015, at 3:06 PM, David Oppenheim <doppenheim@andersonwanca.com> wrote:

BLPMediation0000431

This is meant to be Defendant's last offer placed into our structure, not where we are. We want to confirm that this is where you are and if so, will respond with revised numbers. If not, we need to discuss.

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

BLPMediation0000432

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **CC:** | doppenheim@andersonwanca.com |
| **Sent:** | 10/25/2015 6:45:25 PM |
| **Subject:** | Re: Bucs settlement term sheet theirs |

Thanks.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Oct 25, 2015, at 5:32 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - As you probably recall, Brian estimated the likely claim-in rate at 5% during our initial mediation session in August. In our view, that is a fairly reasonable estimate, though we think the actual claim-in rate will likely be lower and more in the range of 1% to 2%, given the nature of the claims, the fact that so much time has passed since the faxes were allegedly sent and the Bucaneers' position in the community.

Best regards.

---

**From:** Wayne Andersen
**Sent:** Friday, October 23, 2015 12:12:21 PM
**To:** David Oppenheim
**Cc:** Mester, Mark (CH)
**Subject:** Re: Bucs settlement term sheet theirs

Mark,

It would be helpful to know your projected claims rate.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
|---|---|
| **To:** | Wayne Andersen |
| **Sent:** | 10/28/2015 10:36:55 PM |
| **Subject:** | RE: Bucs |

Judge - We are honestly a little confused. We understood the offer that was made by Dave and his team a few weeks ago as an offer, and we were encouraged by the fact that it appeared there was agreement on what would be fair, reasonable and adequate for the class. We think there still is agreement on that. The initial email from Dave last Friday, however, seemed to suggest that earlier offer really wasn't an offer, which seemed odd and we don't fully understand the reason or purpose of the later modification Dave made Friday to the earlier offer.

The bottom line is I think it would now be appropriate and productive for us to talk about fees, and a starting point for that is their lodestar, which we have been asking for since August. I don't think the Buccaneers are going to agree to a phantom common fund that seems designed to do little more than support an e aggregated fee demand/award, but I do believe they will agree to a reasonable lodestar amount and multiplier or perhaps to just letting the Court set the few.

Am in San Diego for the final approval hearing in Schiff, but should have good email access and obviously willing to discuss further.

Best regards.

---

**From:** Wayne Andersen
**Sent:** Wednesday, October 28, 2015 5:36:36 PM
**To:** Mester, Mark (CH)
**Subject:** Bucs

Mark,

I talked to Dave tonight. He wonders if your client agrees with the structure he sent you. He believes that we can negotiate the money better if we've figured out the structure first. What do you think?

W

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **Sent:** | 10/28/2015 7:36:36 PM |
| **Subject:** | Bucs |

Mark,

I talked to Dave tonight. He wonders if your client agrees with the structure he sent you. He believes that we can negotiate the money better if we've figured out the structure first. What do you think?

W

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **CC:** | Lally, Kathleen (CH) |
| **Sent:** | 11/6/2015 5:28:53 PM |
| **Subject:** | Cin-q v. Bucs -- Status |

Dear Judge Andersen:

I wanted to resend the email below, as I wasn't sure you received it.  I sent it from my iPhone (hence the typos) when I landed in San Diego and have been having trouble with that device.

We were wondering, however, if you have heard anything more from Dave and his team.  Since there now seems to be agreement on what class members who claim-in should receive in terms of compensation, it really does seem to us like we should start discussing fees, as that seems to be the primary settlement term on which agreement has not been reached.

Both sides are starting to gear up now for expert discovery, so I do think it would be in everyone's interest to reach agreement on settlement sooner rather than later, and as before, we are certainly more than willing to have a second full-day session with you.  Indeed, I tend to think that might well be the best way to finalize a deal.  But would be most interested in your thoughts and impressions.

Best regards.

**Mark S. Mester**

**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7623
Fax: +1.312.993.9767
Email: mark.mester@lw.com
http://www.lw.com

---

**From:** Mester, Mark (CH)
**Sent:** Wednesday, October 28, 2015 10:37 PM
**To:** Wayne Andersen
**Subject:** RE: Bucs

Judge - We are honestly a little confused.    We understood the offer that was made by Dave and his team a few weeks ago as an offer, and we were encouraged by the fact that it appeared there was agreement on what would be fair, reasonable and adequate for the class.    We think there still is agreement on that.    The initial email from Dave last Friday, however, seemed to suggest that earlier offer really wasn't an offer, which seemed odd and we don't fully understand the reason or purpose of the later modification Dave made Friday to the earlier offer.

The bottom line is I think it would now be appropriate and productive for us to talk about fees, and a starting point for that is their lodestar, which we have been asking for since August.    I don't think the Buccaneers are going to agree to a phantom common fund that seems designed to do little more than support an e aggregated fee demand/award, but I do believe they will agree to a reasonable lodestar amount and multiplier or perhaps to just letting the Court set the few.

Am in San Diego for the final approval hearing in Schiff, but should have good email access and obviously willing to discuss further.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Best regards.

---

**From:** Wayne Andersen
**Sent:** Wednesday, October 28, 2015 5:36:36 PM
**To:** Mester, Mark (CH)
**Subject:** Bucs

Mark,

I talked to Dave tonight. He wonders if your client agrees with the structure he sent you.  He believes that we can negotiate the money better if we've figured out the structure first. What do you think?

W

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844   mobile

JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| From: | Wayne Andersen <wra1991@aol.com> |
|---|---|
| To: | Mester, Mark (CH) |
| CC: | David Oppenheim |
| Sent: | 11/12/2015 10:07:08 AM |
| Subject: | Fwd: Bucs settlement term sheet theirs |
| Attachments: | Bucs settlement term sheet theirs.docx |

Mark,

Please forgive my delays in responding. I've been happily entangled in arbitration hearings which were subject to rigid time deadlines, so my energies were diverted.

I've talked with Dave about the term sheet he sent to you on Oct 5 which is attached hereto. While he plugged numbers into it, he meant those as illustrative, not as numbers he agrees to. His thought was to agree to a structure, such as the one in the term sheet, and then commence the debate over exactly how much should get paid. I believe they will insist on a common fund, but the possible point of convergence is uncertain. I have my own ideas.

In any event, if you agree with the structure in the proposed term sheet, we can begin the money battle. If you advocate changes, Dave's suggestion is that we work them out now before moving to the financial tug of war. While he's amenable to getting together, as am I, he thinks we can perhaps work this out by phone and email.

I've copied Dave on this, so he can chime in with any thoughts or corrections in my understanding.

Wayne

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

Begin forwarded message:

**From:** David Oppenheim <doppenheim@andersonwanca.com>
**Date:** October 5, 2015 at 12:05:34 PM CDT
**To:** Wayne Andersen <wra1991@aol.com>, "mark.mester@lw.com" <mark.mester@lw.com>
**Cc:** Brian Wanca <bwanca@andersonwanca.com>, "Michael Addison (M@mcalaw.net)" <M@mcalaw.net>, Ross Good <rgood@andersonwanca.com>
**Subject: Bucs settlement term sheet theirs**

CONFIDENTIAL SETTLEMENT COMMUNICATION
Judge Andersen passed on the Bucs latest counter. I apologize that I am just now getting back to this but I was out last week. Plugging your numbers into our term sheet yields the attached. Is this what you propose? If not, what is different? It makes sense to us to make sure we are comparing apples to apples and work out structural

issues so that we can move forward. Please let us know. I am available to discuss if you want. Thanks.

David M. Oppenheim
Attorney at Law
Anderson + Wanca
3701 Algonquin Rd., Suite 500
Rolling Meadows, IL 60008
p-(847) 368-1500
f-((847) 368-1501

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

BLPMediation0000445

**Cin-Q Autos, Inc. v. Buccaneers Limited Partnership, Case No. 13-cv-1592**
**Principal Terms of Class Settlement**

1.      The parties will seek court approval of the following settlement to resolve all claims regarding the unsolicited facsimile advertisements successfully sent to 131,011 persons by or on behalf of Defendant from July 14, 2009 to June 9, 2010 (the "Class Period").

2.      Defendant will make available a total of $39,303,300.00 (the "Settlement Fund") to pay class member claims, to pay a *cy pres* award if necessary, to pay an incentive payment to each of the class representatives, and to pay attorney's fees and expenses to Class Counsel. Defendant need not segregate funds or otherwise create special accounts to hold the Settlement Fund. Defendant will not relinquish control of any money until payments are due. As described below, if the class member claims total less than an agreed percentage of the Settlement Fund, then that difference will be awarded to charity as a *cy pres* award. Otherwise, Defendant will keep all unclaimed funds.

3.      The Settlement Class will be defined as: "All persons from July 14, 2009 to June 9, 2010 who were sent facsimile advertisements offering group tickets or individual game tickets for the Tampa Bay Buccaneers games and which did not display the opt-out language required by 47 C.F.R. §64.1200."

4.      The Settlement Fund will be distributed on a "claims-made" basis as follows:

   (a)      <u>Payments to claiming class members</u>. Defendant agrees to pay timely claims submitted by members of the Settlement Class. A settlement notice and claim form will be sent to the class members by facsimile. The pro rata share of the Settlement Fund before subtracting the payments in Paragraphs (b) and (c) below is $300.00.

   (b)      <u>Incentive award to the class representative</u>. Defendant agrees to pay and will not oppose or appeal a request for an incentive award of $15,000.00 from the Settlement Fund to each of the named plaintiffs for serving as the Class Representatives.

   (c)      <u>Fees and expenses to Class Counsel</u>. Defendant agrees to pay and will not oppose a request by Class Counsel (Brian J. Wanca of Anderson + Wanca and Michael C. Addison of Addison & Howard, PA) for attorney's fees in an amount equal to 30% of the Settlement Fund ($11,790,990.00), plus reasonable out-of-pocket expenses from the Settlement Fund.

   (d)      <u>Reversion to Defendant</u>. After making all required payments pursuant to this Paragraph 4, Defendant shall keep all unclaimed money in the Settlement Fund.

5.      Defendant will agree to a permanent injunction enjoining violations of the TCPA with language to be agreed upon.

6.      The Settlement Class will broadly release Defendant from claims arising out of or relating to Defendant's advertising faxes during the Class Period (*see* class definition above). The

Term Sheet – page 1

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                                                             BLPMediation0000446

Settlement Class will not release claims regarding advertising faxes sent after the Class Period.

7. In addition to the Settlement Fund, Defendant shall pay the cost to retain a third party claims administrator who will issue the class notice by facsimile and publication, receive the claim forms, assist class members in completing and submitting forms, and provide a list of accepted and rejected claims to counsel for the parties. The decision of the claims administrator regarding whether a claim is valid is final and binding on the parties. Upon request, the third party claims administrator will provide copies of all claim forms to counsel for the parties.

8. This term sheet constitutes a binding agreement if accepted. The parties will submit a formal written settlement agreement and other papers necessary to obtain the Court's preliminary and final approval of this settlement. Within 14 days after this term sheet is signed, Plaintiff's counsel will draft and provide such documents for Defendant' review, revisions, and approval. The parties anticipate seeking preliminary approval from the Court within 28 days of signing this term sheet.

**BUCCANEERS LIMITED PARTNERSHIP**

By: _____

Its: _____

Dated: _____

**PLAINTIFF AND THE SETTLEMENT CLASS**

By: _____
      Michael C. Addison
      Brian J. Wanca
      Their Attorneys

Dated: _____

Term Sheet – page 2

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

BLPMediation0000447

**PROOF OF CLAIM – Cin-Q Autos, Inc. v. Buccaneers Limited Partnership, Case No. 13-cv-1592**

*You Must Complete All **THREE** Steps to Claim a Share of the Settlement Fund:*

1.   **You Must Provide Your Contact Information.**

Name: _____

Company: _____

Address: _____

City/State/Zip Code: _____

Fax Number(s): _____
              [List all numbers.  You may attach a separate sheet.]

2.   **You Must Verify Ownership of the Fax Number(s) Listed in #1 above:**

(a)   "The fax number(s) identified above or attached to this Proof of Claim was/were mine or my company's from July 14, 2009 to June 9, 2010."

_____
(Sign your name here)

   ***OR***

(b)   The fax number(s) identified in No. 1 above or attached to this Proof of Claim was **not**/were **not** mine or my company's throughout the period from July 14, 2009 to June 9, 2010.  Explain when you obtained the fax number(s) identified in No. 1 above or attached to this Proof of Claim:

_____
_____
_____

_____
(Sign your name here)

3.   **You Must Return this Claim Form by [90 days]_____, 2015:**

a.   Fax this Claim Form to:  <u>&lt;fax number for claims &gt;</u>

   ***OR***

b.   Mail this Claim Form to:  [CLAIMS ADMINISTRATOR]

   ***OR***

c.   Submit this claim form electronically at **[website]**

Term Sheet – page 3

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                                       BLPMediation0000448

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | David Oppenheim; Mester, Mark (CH); Lally, Kathleen (CH) |
| **Sent:** | 12/7/2015 5:39:30 PM |
| **Subject:** | Bucs |

Counsellors,

I'm sending this email to both sides to try to make sure we are on the same track. Here is what I believe the plaintiff is willing to consider:

Plaintiff would agree to settle based on the creation of a common fund from which claimants would be paid $500 on a claims made basis, costs would be paid, plaintiff's attorneys could request without opposition fees equal to 25% of the fund and, after those payments were made, the balance would revert to the defendant. Plaintiff's assumption is that Camden 1 Condo v. Dunkle, 946 F.2nd 768, is the appropriate legal guide in the Circuit.

If defendant accepts this structure, plaintiff suggests that the defendant put a dollar amount on the size of the common fund it would be willing to create.

Mark, I'd be happy to discuss this tonight or tomorrow if you'd like.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

| From: | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
|---|---|
| To: | Wayne Andersen; Lally, Kathleen (CH) |
| Sent: | 12/7/2015 6:09:51 PM |
| Subject: | RE: Comments on Bucs |

Judge - I am flying East after the final approval hearing today in St. Louis. We will have to review this new offer and discuss it with out client. It looks, however, like an entirely different structure than what we had been discussing in the last several offers. I understand the need to do this sort of thing before it is proper to discuss fees, but we are properly discussing fees now (or at least were) so I don't fully understand.

Do you think they would settle for a 15 million common fund with reversion? I might be able to sell that with some tweaks, but I am afraid the Glazers' heads are going to spin when I mention a common fund, as we thought we had moved past that.

---

**From:** Wayne Andersen
**Sent:** Monday, December 07, 2015 4:02:18 PM
**To:** Mester, Mark (CH); Lally, Kathleen (CH)
**Subject:** Comments on Bucs

Mark and Kate,

My recollection of our mediation is that Wanca was demanding a common fund without reference to a reverter of about $30 million. Presumably the reverter to which they are now agreeing substantially reduces the actual payout. I don't think you had made an 8 digit offer, but I felt you'd go to $15 million if necessary to settle. I believe Dave viewed your recent proposal as the equivalent of making a common fund $8.4 million offer but with a reverter, an amount he believes is too low in light of the reverter.

I'm free to talk tonight or tomorrow if you'd like. We have Dave's attention, so I believe he'll respond almost instantly to any proposal.

Wayne

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **CC:** | Lally, Kathleen (CH) |
| **Sent:** | 12/7/2015 6:17:38 PM |
| **Subject:** | Re: Comments on Bucs |

I'll reflect on all of this. The plus is that Dave is engaged and will move quickly. What do you estimate claims rate will be and total payout for claims? Let's talk tomorrow.

A $15 million fund would yield a $3.75 million fee. Can they spurn that? Hmmm. Let's see where we can get them.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com


On Dec 7, 2015, at 6:09 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - I am flying East after the final approval hearing today in St. Louis. We will have to review this new offer and discuss it with out client. It looks, however, like an entirely different structure than what we had been discussing in the last several offers. I understand the need to do this sort of thing before it is proper to discuss fees, but we are properly discussing fees now (or at least were) so I don't fully understand.

Do you think they would settle for a 15 million common fund with reversion? I might be able to sell that with some tweaks, but I am afraid the Glazers' heads are going to spin when I mention a common fund, as we thought we had moved past that.

---

**From:** Wayne Andersen
**Sent:** Monday, December 07, 2015 4:02:18 PM
**To:** Mester, Mark (CH); Lally, Kathleen (CH)
**Subject:** Comments on Bucs

Mark and Kate,

My recollection of our mediation is that Wanca was demanding a common fund without reference to a reverter of about $30 million. Presumably the reverter to which they are now agreeing substantially reduces the actual payout. I don't think you had made an 8 digit offer, but I felt you'd go to $15 million if necessary to settle. I believe Dave viewed your recent proposal as the equivalent of making a common fund $8.4 million offer but with a reverter, an amount he believes is too low in light of the reverter.

I'm free to talk tonight or tomorrow if you'd like. We have Dave's attention, so I believe he'll respond almost instantly to any proposal.

Wayne

Judge Wayne Andersen (ret.)

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **CC:** | Lally, Kathleen (CH) |
| **Sent:** | 12/7/2015 6:28:14 PM |
| **Subject:** | RE: Comments on Bucs |

Claim rate is hard to estimate. Will depend a lot on what means of notice is used and I can tell you the Glazers (and we) have an understandably strong philosophical objection to notice by fax. The number Brian through out at the mediation, however, was five percent, and that may be reasonable.

I understand even less why they jumped to 500 per class member. I just stood in front of Judge Richard Webber and heard him praise a per claimant payout of 96 dollars per person in a case you had a bit to do with. 500 is way, way above market.

---

**From:** Wayne Andersen
**Sent:** Monday, December 07, 2015 4:17:38 PM
**To:** Mester, Mark (CH)
**Cc:** Lally, Kathleen (CH)
**Subject:** Re: Comments on Bucs

I'll reflect on all of this. The plus is that Dave is engaged and will move quickly. What do you estimate claims rate will be and total payout for claims? Let's talk tomorrow.

A $15 million fund would yield a $3.75 million fee. Can they spurn that? Hmmm. Let's see where we can get them.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Dec 7, 2015, at 6:09 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - I am flying East after the final approval hearing today in St. Louis. We will have to review this new offer and discuss it with out client. It looks, however, like an entirely different structure than what we had been discussing in the last several offers. I understand the need to do this sort of thing before it is proper to discuss fees, but we are properly discussing fees now (or at least were) so I don't fully understand.

Do you think they would settle for a 15 million common fund with reversion? I might be able to sell that with some tweaks, but I am afraid the Glazers' heads are going to spin when I mention a common fund, as we thought we had moved past that.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**From:** Wayne Andersen
**Sent:** Monday, December 07, 2015 4:02:18 PM
**To:** Mester, Mark (CH); Lally, Kathleen (CH)
**Subject:** Comments on Bucs

Mark and Kate,

My recollection of our mediation is that Wanca was demanding a common fund without reference to a reverter of about $30 million. Presumably the reverter to which they are now agreeing substantially reduces the actual payout. I don't think you had made an 8 digit offer, but I felt you'd go to $15 million if necessary to settle. I believe Dave viewed your recent proposal as the equivalent of making a common fund $8.4 million offer but with a reverter, an amount he believes is too low in light of the reverter.

I'm free to talk tonight or tomorrow if you'd like. We have Dave's attention, so I believe he'll respond almost instantly to any proposal.

Wayne

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| From: | Wayne Andersen <wra1991@aol.com> |
|---|---|
| To: | Mester, Mark (CH) |
| CC: | Lally, Kathleen (CH) |
| Sent: | 12/7/2015 6:34:48 PM |
| Subject: | Re: Comments on Bucs |

They say 500 to strike a bargaining position

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Dec 7, 2015, at 6:28 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Claim rate is hard to estimate. Will depend a lot on what means of notice is used and I can tell you the Glazers (and we) have an understandably strong philosophical objection to notice by fax. The number Brian through out at the mediation, however, was five percent, and that may be reasonable.

I understand even less why they jumped to 500 per class member. I just stood in front of Judge Richard Webber and heard him praise a per claimant payout of 96 dollars per person in a case you had a bit to do with. 500 is way, way above market.

---

**From:** Wayne Andersen
**Sent:** Monday, December 07, 2015 4:17:38 PM
**To:** Mester, Mark (CH)
**Cc:** Lally, Kathleen (CH)
**Subject:** Re: Comments on Bucs

I'll reflect on all of this. The plus is that Dave is engaged and will move quickly. What do you estimate claims rate will be and total payout for claims? Let's talk tomorrow.

A $15 million fund would yield a $3.75 million fee. Can they spurn that? Hmmm. Let's see where we can get them.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

On Dec 7, 2015, at 6:09 PM, <<u>MARK.MESTER@lw.com</u>> <<u>MARK.MESTER@lw.com</u>> wrote:

Judge - I am flying East after the final approval hearing today in St. Louis. We will have to review this new offer and discuss it with out client. It looks, however, like an entirely different structure than what we had been discussing in the last several offers. I understand the need to do this sort of thing before it is proper to discuss fees, but we are properly discussing fees now (or at least were) so I don't fully understand.

Do you think they would settle for a 15 million common fund with reversion? I might be able to sell that with some tweaks, but I am afraid the Glazers' heads are going to spin when I mention a common fund, as we thought we had moved past that.

---

**From:** Wayne Andersen
**Sent:** Monday, December 07, 2015 4:02:18 PM
**To:** Mester, Mark (CH); Lally, Kathleen (CH)
**Subject:** Comments on Bucs

Mark and Kate,

My recollection of our mediation is that Wanca was demanding a common fund without reference to a reverter of about $30 million. Presumably the reverter to which they are now agreeing substantially reduces the actual payout. I don't think you had made an 8 digit offer, but I felt you'd go to $15 million if necessary to settle. I believe Dave viewed your recent proposal as the equivalent of making a common fund $8.4 million offer but with a reverter, an amount he believes is too low in light of the reverter.

I'm free to talk tonight or tomorrow if you'd like. We have Dave's attention, so I believe he'll respond almost instantly to any proposal.

Wayne

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
<u>Bbuczkowski@jamsadr.com</u>

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **Sent:** | 12/17/2015 5:40:59 AM |
| **Subject:** | RE: Bucs |

Exactly. A common fund with reversion that requires claim in. All a fairly transparent effort to get a larger fee than he ever could using his lodestar, which he, of course, won't disclose to us. Clearly wouldn't work in the Seventh Circuit, and opens us up to objectors who want to make law in the Eleventh Circuit. The interests of the class were long since ignored by them.

---

**From:** Wayne Andersen
**Sent:** Wednesday, December 16, 2015 7:17:26 PM
**To:** Mester, Mark (CH)
**Subject:** Re: Bucs

What is special about his format? Is he looking for a virtual fund with a claims made payment?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com


On Dec 16, 2015, at 9:03 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Thanks. We will have to discuss with our client but will do everything we can. If they ultimately refuse another mediation session though (which seems silly), I don't know that we will have any choice but to ask the Court for a settlement conference, and I'm not sure that ends up well for them.

---

**From:** Wayne Andersen
**Sent:** Wednesday, December 16, 2015 6:56:17 PM
**To:** Mester, Mark (CH)
**Subject:** Fwd: Bucs

Mark,

Dave sent me this email late today. What shall we do?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

Begin forwarded message:

**From:** David Oppenheim <doppenheim@andersonwanca.com>
**Date:** December 16, 2015 at 5:29:10 PM CST
**To:** Wayne Andersen <wra1991@aol.com>
**Cc:** Brian Wanca <bwanca@andersonwanca.com>
**Subject: Bucs**

After discussing it, we are only interested in another session if they make an offer in writing beforehand under the format that we have proposed. That way we can evaluate whether a deal is possible or whether it would be fruitless. Please call if you want to discuss. Thanks.
David M. Oppenheim
Attorney at Law
Anderson + Wanca
3701 Algonquin Rd., Suite 500
Rolling Meadows, IL 60008
p-(847) 368-1500
f-((847) 368-1501

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **Sent:** | 12/17/2015 10:05:56 AM |
| **Subject:** | Re: Bucs |

I'm afraid that Brian vies this case as his retirement ticket. We should talk, perhaps tomorrow?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Dec 17, 2015, at 5:40 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Exactly. A common fund with reversion that requires claim in. All a fairly transparent effort to get a larger fee than he ever could using his lodestar, which he, of course, won't disclose to us. Clearly wouldn't work in the Seventh Circuit, and opens us up to objectors who want to make law in the Eleventh Circuit. The interests of the class were long since ignored by them.

---

**From:** Wayne Andersen
**Sent:** Wednesday, December 16, 2015 7:17:26 PM
**To:** Mester, Mark (CH)
**Subject:** Re: Bucs

What is special about his format? Is he looking for a virtual fund with a claims made payment?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Dec 16, 2015, at 9:03 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Thanks. We will have to discuss with our client but will do everything we can. If they ultimately refuse another mediation session though (which seems silly), I don't know that we will have any choice but to ask the Court for a settlement conference, and I'm not sure that ends up well for them.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **Sent:** | 1/15/2016 2:44:38 PM |
| **Subject:** | RE: Bucs |

Judge - I will obviously have to discuss this with our client, but I am pretty certain they are going to want to have nothing more to do with negotiating with David, Brian or their team. I don't know any other way to view this than reversionary and in bad faith. Indeed, the $92 million figure is very close to exactly where Wanca started out at the mediation in August. (Recall that in August, their opening demand was a "virtual fund" of $99 million.). We have literally spent the last six months negotiating with them, during which time they proposed a common fund of $39 million and at various times indicated a willingness to entertain a straight claim-in structure with payments of $300 per claimant, and we now find ourselves almost completely full circle. I honestly think it is time to involve the Court and to begin doing the things we have been holding off doing in the hopes we could reach an amicable resolution. I don't reach that conclusion easily or quickly, but I sincerely don't see any other way of looking at the situation at this point.

---

**From:** Wayne Andersen
**Sent:** Friday, January 15, 2016 12:20:50 PM
**To:** Mester, Mark (CH)
**Subject:** Fwd: Bucs

His response to this was "yes". While we might be able to figure out apparent misunderstandings during the course of all of this, I sent him this email after talking to him and wanting to make sure I didn't misunderstand his proposal. While I can understand your being troubled on several levels with this, rather than just fight in court, I suggest you make an offer (in whatever form you choose) and let's see what he does. My guess is that he is aiming at half this demand hoping you'd payout somewhere between 15-20 million. I agree that the fee/claim ratio is top heavy but, if you are right that the court will base it on lodestar, you might never pay anywhere near the cap or his expectation.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

Begin forwarded message:

**From:** Wayne Andersen <wra1991@aol.com>
**Date:** January 15, 2016 at 12:14:36 PM EST
**To:** David Oppenheim <doppenheim@andersonwanca.com>
**Subject: Bucs**

Ok. Here's your proposal:

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

You propose a settlement at $500 per claimant on a claims made basis. Assuming 350,000 faxes, that creates a potential fund of $175,000,000 which you agree to cap at $92 million, so we will call the potential fund a "virtual" fund. Assuming a 5% claim rate, defendant will pay about $8.75 in claims. Assuming the court awards a fee of 25% of the virtual fund, you get a fee of $23 million, thus the estimate payout by defendant of $32 million. Correct?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**From:** Wayne Andersen <wra1991@aol.com>
**To:** Mester, Mark (CH)
**Sent:** 1/15/2016 12:29:00 PM
**Subject:** Cin-Q v. Bucs -- Plaintiffs Settlement Demand

Mark,

I talked with Dave, just home from a trek to Saskatoon for a settlement condense, and I now have his official proposal which I emailed to him and followed up to confirm that it's his position. I. Going to treat this as an opening demand and not be distracted by any of the past confusion.

He assumes a class of 350,000 faxes and proposes that they be paid $500 per fax on a claims made basis. Without a cap this could lead to a potential exposure of $175,000,000, but he agrees to a cap of $92 million, what we can denominate a "virtual fund" from which he hopes he's awarded a 25% fee and from which he estimates claims paid will be about $8.75 at a 5% claims rate--hence his request that your client payout $32 million. He completely disputes the notion that 11th Circuit law would limit him to a lodestar based fee calculation, but acknowledges the risk is in him. He says his plugging in the $300 per claim amount was for illustrative purposes rather than an agreement to accept this amount (though I bet he will.)

If this structure is acceptable to you, then I suggest a proposal addressing each variable. The good news is that, if you split the difference between 2.5 and 32, one spots hope. I can talk later today or Saturday or next week.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **Sent:** | 1/15/2016 1:10:28 PM |
| **Subject:** | RE: Bucs |

Judge - It would be appropriate to treat his as an opening demand, since it is almost verbatim of what they first proposed in August. It is also grossly regressive and in my view in bad faith (a term I don't throw around often).

If they believe the class is apt to be paid $8.75 million paying them the full amount each class member would be entitled to under the statute (I.e., $500), then an appropriate fee would be one quarter or one third of that amount, which would net them roughly $2.1875 in fees. What makes no sense at all, however, is to then create an artificial amount ($32 million) and pretend that that is the amount that should be used for purposes of calculating his/their fee. If we were to do that and the claims at $500 per claimant amounted to $8.75 million (which is afterall their estimate), what would we do with the balance of the $32 million virtual fund after paying the $8.75 to claimants, the $8 million to Wanca (I.e., 25% of the $32 million virtual fund) and notice and administration. Unless David thinks that notice and administration are going to cost $16 million (which would obviously be absurd), then there is going to be a lot of money left over, and while David might say that money should go to cy pres, it is as likely as not that he gets no credit for whatever goes to cy pres. It also makes not sense at all to saddle the Bucs with a settlement that likely requires them to pay roughly half of this settlement proceeds to cy pres simply to justify a fee for David and Wanca.

Otherwise, I don't understand what a "virtual fund" is. If that just means a nominal amount the Bucs will commit to pay but allows for full reversion, then we are back to a straight claim-in structure with a lot of silly bells and whistles that most judges and certainly most objectors and appellate court judges will see right through.

The truth is if their fee demand is $8 million, as it would now appear to be, we are not nearly as far apart as they seem to think we are. We clearly don't have to go through these sort of machinations to get to a number I think they will accept. Our first offer on fees was $2.1, and as I said at the time, that was just our opening offer. I understand they now don't want to do a straight claim-in structure, and I understood their request for a common fund demand as their effort to get away from structures that will put their lodestar in play. Ironically, the Bucs are now fully willing to do that, and yet David seems to want to go back to square one, which makes no sense at all.

---

**From:** Wayne Andersen
**Sent:** Friday, January 15, 2016 10:29:00 AM
**To:** Mester, Mark (CH)
**Subject:** Bucs

Mark,

I talked with Dave, just home from a trek to Saskatoon for a settlement condense, and I now have his official proposal which I emailed to him and followed up to confirm that it's his position. I. Going to treat this as an opening demand and not be distracted by any of the past confusion.

He assumes a class of 350,000 faxes and proposes that they be paid $500 per fax on a claims made basis. Without a cap this could lead to a potential exposure of $175,000,000, but he agrees to a cap of $92 million, what we can denominate a "virtual fund" from which he hopes he's awarded a 25% fee and from which he estimates claims paid will be about $8.75 at a 5% claims rate--hence his request that your client payout $32 million. He completely disputes the notion that 11th Circuit law would limit him to a lodestar based fee calculation, but acknowledges the risk is in him. He says his plugging in the $300 per claim amount was for illustrative purposes rather than an agreement to accept this amount (though I bet he will.)

If this structure is acceptable to you, then I suggest a proposal addressing each variable. The good news is that, if you split the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

difference between 2.5 and 32, one spots hope. I can talk later today or Saturday or next week.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **Sent:** | 1/15/2016 1:55:32 PM |
| **Subject:** | RE: Bucs |

Judge - I talked to Kate, and she pointed out that we may be confused on what they are proposing. If they are proposing that they receive in fees and costs 25% of the guaranteed payout amount (i.e., the $32 million), then I am fairly confident we can reach agreement on a settlement, though I don't think we need to be going through all these structural machinations.

On the other hand, if their current demand is 25% of the $92 million, then that is completely reversionary, and it makes no sense at all in light of their interim offer in October of a $39 common fund (from which their fee would have been $9.75 million). It is also ridiculous and leads me to believe that if that is where they actually are, then we have no choice but to raise this with the Court, which is apt to get ugly quickly (mainly for them).

Do you have a clear sense of which it is? 25% of $92 million or 25% of $32 million?

Best regards.

---

**From:** Mester, Mark (CH)
**Sent:** Friday, January 15, 2016 11:10:28 AM
**To:** Wayne Andersen
**Subject:** RE: Bucs

Judge - It would be appropriate to treat his as an opening demand, since it is almost verbatim of what they first proposed in August. It is also grossly regressive and in my view in bad faith (a term I don't throw around often).

If they believe the class is apt to be paid $8.75 million paying them the full amount each class member would be entitled to under the statute (I.e., $500), then an appropriate fee would be one quarter or one third of that amount, which would net them roughly $2.1875 in fees. What makes no sense at all, however, is to then create an artificial amount ($32 million) and pretend that that is the amount that should be used for purposes of calculating his/their fee. If we were to do that and the claims at $500 per claimant amounted to $8.75 million (which is afterall their estimate), what would we do with the balance of the $32 million virtual fund after paying the $8.75 to claimants, the $8 million to Wanca (I.e., 25% of the $32 million virtual fund) and notice and administration. Unless David thinks that notice and administration are going to cost $16 million (which would obviously be absurd), then there is going to be a lot of money left over, and while David might say that money should go to cy pres, it is as likely as not that he gets no credit for whatever goes to cy pres. It also makes not sense at all to saddle the Bucs with a settlement that likely requires them to pay roughly half of this settlement proceeds to cy pres simply to justify a fee for David and Wanca.

Otherwise, I don't understand what a "virtual fund" is. If that just means a nominal amount the Bucs will commit to pay but allows for full reversion, then we are back to a straight claim-in structure with a lot of silly bells and whistles that most judges and certainly most objectors and appellate court judges will see right through.

The truth is if their fee demand is $8 million, as it would now appear to be, we are not nearly as far apart as they seem to think we are. We clearly don't have to go through these sort of machinations to get to a number I think they will accept. Our first offer on fees was $2.1, and as I said at the time, that was just our opening offer. I understand they now don't want to do a straight claim-in structure, and I understood their request for a common

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

fund demand as their effort to get away from structures that will put their lodestar in play. Ironically, the Bucs are now fully willing to do that, and yet David seems to want to go back to square one, which makes no sense at all.

---

**From:** Wayne Andersen
**Sent:** Friday, January 15, 2016 10:29:00 AM
**To:** Mester, Mark (CH)
**Subject:** Bucs

Mark,

I talked with Dave, just home from a trek to Saskatoon for a settlement condense, and I now have his official proposal which I emailed to him and followed up to confirm that it's his position. I. Going to treat this as an opening demand and not be distracted by any of the past confusion.

He assumes a class of 350,000 faxes and proposes that they be paid $500 per fax on a claims made basis. Without a cap this could lead to a potential exposure of $175,000,000, but he agrees to a cap of $92 million, what we can denominate a "virtual fund" from which he hopes he's awarded a 25% fee and from which he estimates claims paid will be about $8.75 at a 5% claims rate--hence his request that your client payout $32 million. He completely disputes the notion that 11th Circuit law would limit him to a lodestar based fee calculation, but acknowledges the risk is in him. He says his plugging in the $300 per claim amount was for illustrative purposes rather than an agreement to accept this amount (though I bet he will.)

If this structure is acceptable to you, then I suggest a proposal addressing each variable. The good news is that, if you split the difference between 2.5 and 32, one spots hope. I can talk later today or Saturday or next week.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **Sent:** | 1/15/2016 2:09:11 PM |
| **Subject:** | Re: Bucs |

25% of the 92 is what they believe the court would award. Obviously I have my doubts. I'll send you the email I sent Dave to clarify.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Jan 15, 2016, at 2:55 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - I talked to Kate, and she pointed out that we may be confused on what they are proposing. If they are proposing that they receive in fees and costs 25% of the guaranteed payout amount (i.e., the $32 million), then I am fairly confident we can reach agreement on a settlement, though I don't think we need to be going through all these structural machinations.

On the other hand, if their current demand is 25% of the $92 million, then that is completely reversionary, and it makes no sense at all in light of their interim offer in October of a $39 common fund (from which their fee would have been $9.75 million). It is also ridiculous and leads me to believe that if that is where they actually are, then we have no choice but to raise this with the Court, which is apt to get ugly quickly (mainly for them).

Do you have a clear sense of which it is? 25% of $92 million or 25% of $32 million?

Best regards.

---

**From:** Mester, Mark (CH)
**Sent:** Friday, January 15, 2016 11:10:28 AM
**To:** Wayne Andersen
**Subject:** RE: Bucs

Judge - It would be appropriate to treat his as an opening demand, since it is almost verbatim of what they first proposed in August. It is also grossly regressive and in my view in bad faith (a term I don't throw around often).

If they believe the class is apt to be paid $8.75 million paying them the full amount each class member would be entitled to under the statute (I.e., $500), then an appropriate fee would be one quarter or one third of that amount, which would net them roughly $2.1875 in fees. What makes no sense at all, however, is to then create an artificial amount ($32 million) and pretend that that is the amount that should be used for purposes of calculating his/their fee. If we were to do that and the claims at $500 per claimant amounted to $8.75 million (which is

BLPMediation0000558

afterall their estimate), what would we do with the balance of the $32 million virtual fund after paying the $8.75 to claimants, the $8 million to Wanca (I.e., 25% of the $32 million virtual fund) and notice and administration. Unless David thinks that notice and administration are going to cost $16 million (which would obviously be absurd), then there is going to be a lot of money left over, and while David might say that money should go to cy pres, it is as likely as not that he gets no credit for whatever goes to cy pres. It also makes not sense at all to saddle the Bucs with a settlement that likely requires them to pay roughly half of this settlement proceeds to cy pres simply to justify a fee for David and Wanca.

Otherwise, I don't understand what a "virtual fund" is. If that just means a nominal amount the Bucs will commit to pay but allows for full reversion, then we are back to a straight claim-in structure with a lot of silly bells and whistles that most judges and certainly most objectors and appellate court judges will see right through.

The truth is if their fee demand is $8 million, as it would now appear to be, we are not nearly as far apart as they seem to think we are. We clearly don't have to go through these sort of machinations to get to a number I think they will accept. Our first offer on fees was $2.1, and as I said at the time, that was just our opening offer. I understand they now don't want to do a straight claim-in structure, and I understood their request for a common fund demand as their effort to get away from structures that will put their lodestar in play. Ironically, the Bucs are now fully willing to do that, and yet David seems to want to go back to square one, which makes no sense at all.

---

**From:** Wayne Andersen
**Sent:** Friday, January 15, 2016 10:29:00 AM
**To:** Mester, Mark (CH)
**Subject:** Bucs

Mark,

I talked with Dave, just home from a trek to Saskatoon for a settlement condense, and I now have his official proposal which I emailed to him and followed up to confirm that it's his position. I. Going to treat this as an opening demand and not be distracted by any of the past confusion.

He assumes a class of 350,000 faxes and proposes that they be paid $500 per fax on a claims made basis. Without a cap this could lead to a potential exposure of $175,000,000, but he agrees to a cap of $92 million, what we can denominate a "virtual fund" from which he hopes he's awarded a 25% fee and from which he estimates claims paid will be about $8.75 at a 5% claims rate--hence his request that your client payout $32 million. He completely disputes the notion that 11th Circuit law would limit him to a lodestar based fee calculation, but acknowledges the risk is in him. He says his plugging in the $300 per claim amount was for illustrative purposes rather than an agreement to accept this amount (though I bet he will.)

If this structure is acceptable to you, then I suggest a proposal addressing each variable. The good news is that, if you split the difference between 2.5 and 32, one spots hope. I can talk later today or Saturday or next week.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **Sent:** | 1/15/2016 2:20:50 PM |
| **Subject:** | Fwd: Bucs |

His response to this was "yes". While we might be able to figure out apparent misunderstandings during the course of all of this, I sent him this email after talking to him and wanting to make sure I didn't misunderstand his proposal. While I can understand your being troubled on several levels with this, rather than just fight in court, I suggest you make an offer (in whatever form you choose) and let's see what he does. My guess is that he is aiming at half this demand hoping you'd payout somewhere between 15-20 million. I agree that the fee/claim ratio is top heavy but, if you are right that the court will base it on lodestar, you might never pay anywhere near the cap or his expectation.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

Begin forwarded message:

**From:** Wayne Andersen <wra1991@aol.com>
**Date:** January 15, 2016 at 12:14:36 PM EST
**To:** David Oppenheim <doppenheim@andersonwanca.com>
**Subject: Bucs**

Ok. Here's your proposal:

You propose a settlement at $500 per claimant on a claims made basis. Assuming 350,000 faxes, that creates a potential fund of $175,000,000 which you agree to cap at $92 million, so we will call the potential fund a "virtual" fund. Assuming a 5% claim rate, defendant will pay about $8.75 in claims. Assuming the court awards a fee of 25% of the virtual fund, you get a fee of $23 million, thus the estimate payout by defendant of $32 million. Correct?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **Sent:** | 1/15/2016 3:02:28 PM |
| **Subject:** | Re: Bucs |

I can't disagree. I've never been so confused regarding the nature of demands as I have I. This case. Maybe it's me. My conversation with David was a "let's go back to square one" suggestion by me so that I could understand what he was demanding. You at now at the point where your client has agreed to spend real money to close this out. I see no upside in not making him an offer with which you are comfortable and let's see what he responds. I believe I can get a quick response. Maybe he'll walk away--fine then we've done our best. Usually he ultimately lowers his demand substantially and adjusts to the possible. I can't believe there is a way to split $10+ million and not work this out. You are paying. You get to choose the structure you prefer.

How about $200 per claim with a $10 million cap on claims and fees etc? That is, a $10 million common fund. At 5% claims rate at works out to $3.5 in claims. Plenty for fees. We tell Dave your client and his accountants can't tolerate an exposure to a $92 million fund. He needs certainty. I tell him you reject the virtual fund idea because the exposure, even if on paper, is just too great.

What do you think?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Jan 15, 2016, at 3:44 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - I will obviously have to discuss this with our client, but I am pretty certain they are going to want to have nothing more to do with negotiating with David, Brian or their team. I don't know any other way to view this than reversionary and in bad faith. Indeed, the $92 million figure is very close to exactly where Wanca started out at the mediation in August. (Recall that in August, their opening demand was a "virtual fund" of $99 million.). We have literally spent the last six months negotiating with them, during which time they proposed a common fund of $39 million and at various times indicated a willingness to entertain a straight claim-in structure with payments of $300 per claimant, and we now find ourselves almost completely full circle. I honestly think it is time to involve the Court and to begin doing the things we have been holding off doing in the hopes we could reach an amicable resolution. I don't reach that conclusion easily or quickly, but I sincerely don't see any other way of looking at the situation at this point.

---

**From:** Wayne Andersen
**Sent:** Friday, January 15, 2016 12:20:50 PM
**To:** Mester, Mark (CH)
**Subject:** Fwd: Bucs

BLPMediation0000562

His response to this was "yes". While we might be able to figure out apparent misunderstandings during the course of all of this, I sent him this email after talking to him and wanting to make sure I didn't misunderstand his proposal. While I can understand your being troubled on several levels with this, rather than just fight in court, I suggest you make an offer (in whatever form you choose) and let's see what he does. My guess is that he is aiming at half this demand hoping you'd payout somewhere between 15-20 million. I agree that the fee/claim ratio is top heavy but, if you are right that the court will base it on lodestar, you might never pay anywhere near the cap or his expectation.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com


Begin forwarded message:

**From:** Wayne Andersen <wra1991@aol.com>
**Date:** January 15, 2016 at 12:14:36 PM EST
**To:** David Oppenheim <doppenheim@andersonwanca.com>
**Subject: Bucs**

Ok. Here's your proposal:

You propose a settlement at $500 per claimant on a claims made basis. Assuming 350,000 faxes, that creates a potential fund of $175,000,000 which you agree to cap at $92 million, so we will call the potential fund a "virtual" fund. Assuming a 5% claim rate, defendant will pay about $8.75 in claims. Assuming the court awards a fee of 25% of the virtual fund, you get a fee of $23 million, thus the estimate payout by defendant of $32 million. Correct?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **CC:** | Wayne Andersen |
| **Sent:** | 1/26/2016 8:38:14 PM |
| **Subject:** | RE: Buccaneers |

Thanks. If they wake up, this is the easiest, simplest and most pain free way to get a big payout. On the other hand, if we have to go to the Court, I don't think it ends well, especially with Joe sitting in the wings.

---

**From:** Wayne Andersen
**Sent:** Tuesday, January 26, 2016 6:30:47 PM
**To:** Mester, Mark (CH)
**Cc:** Wayne Andersen
**Subject:** Re: Buccaneers

Thanks. I'll call them tomorrow to see what's possible. Maybe I'll catch them at a more favorable moment. I was pretty discouraged when we last talked. We shall see.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Jan 26, 2016, at 6:50 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - I have had my call with the Buccaneers GC (who you met) and the Glazer family lawyer (good guy and very smart, Harvard Law graduate) and have a call scheduled with the Glazer's on Thursday. As you would expect, there is a fair amount of frustration on our side, as we clearly view the most recent demand of $92 million as regressive in the extreme.

We are, however, having a hard time reading the tea leaves, and since Wanca and his team seem so bad at sending signals, I wanted to touch base with you before I have the call with the Glazer's on Thursday. Based on prior discussions and my most recent discussion with the family lawyer, I think I could ultimately get the Glazer's to a common fund of $20 million with reversion, with payments of $300 per unique number for persons and entities who claim-in and the 25% for fees and costs that Wanca has already proposed, provided we could agree on a notice plan and other details, which I am sure we could. That number though is pretty much at the limit, and I am not posturing, as I don't think there is much chance at all I could get them above that figure, and even if I could, it would only be a bit.

The question is is that a range that Wanca is prepared to accept. It is obviously very rich for a TCPA settlement of a case this size, and I think it is better than what he could legitimately expect to recover. Nevertheless, I don't want to pull the plug on mediation prematurely if there is a chance that we are misinterpreting their signals and they are actually willing to accept a more reasonable fee than what was proposed in connection with the $92

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

million demand.

If $20 million is not going to be acceptable to them, then I don't think we will have any choice but to bring these issues to the attention of the Court, and that is apt to get ugly for them in a hurry. Our preference obviously would be to continue with the mediation and resolve this case on terms our client can accept, but their $92 million demand didn't exactly give us a lot of confidence.

If you could let me know your thoughts before my call Thursday, I would very much appreciate it.

Best regards.

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

| From: | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
|---|---|
| To: | Wayne R. Andersen |
| Sent: | 1/26/2016 5:50:47 PM |
| Subject: | Buccaneers |

Judge - I have had my call with the Buccaneers GC (who you met) and the Glazer family lawyer (good guy and very smart, Harvard Law graduate) and have a call scheduled with the Glazer's on Thursday. As you would expect, there is a fair amount of frustration on our side, as we clearly view the most recent demand of $92 million as regressive in the extreme.

We are, however, having a hard time reading the tea leaves, and since Wanca and his team seem so bad at sending signals, I wanted to touch base with you before I have the call with the Glazer's on Thursday. Based on prior discussions and my most recent discussion with the family lawyer, I think I could ultimately get the Glazer's to a common fund of $20 million with reversion, with payments of $300 per unique number for persons and entities who claim-in and the 25% for fees and costs that Wanca has already proposed, provided we could agree on a notice plan and other details, which I am sure we could. That number though is pretty much at the limit, and I am not posturing, as I don't think there is much chance at all I could get them above that figure, and even if I could, it would only be a bit.

The question is that a range that Wanca is prepared to accept. It is obviously very rich for a TCPA settlement of a case this size, and I think it is better than what he could legitimately expect to recover. Nevertheless, I don't want to pull the plug on mediation prematurely if there is a chance that we are misinterpreting their signals and they are actually willing to accept a more reasonable fee than what was proposed in connection with the $92 million demand.

If $20 million is not going to be acceptable to them, then I don't think we will have any choice but to bring these issues to the attention of the Court, and that is apt to get ugly for them in a hurry. Our preference obviously would be to continue with the mediation and resolve this case on terms our client can accept, but their $92 million demand didn't exactly give us a lot of confidence.

If you could let me know your thoughts before my call Thursday, I would very much appreciate it.

Best regards.

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **Sent:** | 1/28/2016 12:44:20 PM |
| **Subject:** | RE: (No Subject) |

Thanks. Any sense though what they are really looking for? If it's 24 million in fees, then it's a short conversation with the Glazers and our only option is pretty clear. But if a $20 million common fund could get it done, then we clearly should keep talking.

---

**From:** Wayne Andersen
**Sent:** Thursday, January 28, 2016 10:41:29 AM
**To:** Mester, Mark (CH)
**Subject:** Re:

If you make a written offer following the structure they sent, Brian says he'll respond. He clearly is willing to go claims made which he thinks you prefer. Claims made with a cap seems like the best retort to me.

Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844

On Jan 28, 2016, at 11:35 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - Any word from Wanca? I have my call with the Glazers at 1:30 Central.

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **Sent:** | 1/29/2016 11:52:37 AM |
| **Subject:** | RE: Buccaneers |

I honestly think that will depend on the type of notice we provide, but I want to defer that issue so that we can get some momentum first.

---

**From:** Wayne Andersen
**Sent:** Friday, January 29, 2016 9:37:54 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Buccaneers

If you think the claims rate will exceed 5% lower the claim amount accordingly

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Jan 29, 2016, at 12:05 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

At $500 per claimant, it's more like $55 million.

---

**From:** Wayne Andersen
**Sent:** Friday, January 29, 2016 8:59:46 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Buccaneers

At 500 per claim, what is the rhetorical max. $73 million?

Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844

On Jan 29, 2016, at 11:37 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - What are your thoughts about the following for an offer from us?

Common fund of $16 million, with full reversion, claimants to be paid $200 per unique number and class counsel to receive fee of 25%.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

I obviously don't have authority for this, and if I get authority, we wouldn't have much runway left, as I think the low twenties is as high as the Glazer's could conceivably go, and I am not at all sure they would go that high. But I would like to get an offer out there that motivates Wanca to get back to the table and to get serious, which I don't think he is right now.

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **Sent:** | 1/29/2016 11:05:16 AM |
| **Subject:** | RE: Buccaneers |

At $500 per claimant, it's more like $55 million.

---

**From:** Wayne Andersen
**Sent:** Friday, January 29, 2016 8:59:46 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Buccaneers

At 500 per claim, what is the rhetorical max. $73 million?

Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844

On Jan 29, 2016, at 11:37 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - What are your thoughts about the following for an offer from us?

Common fund of $16 million, with full reversion, claimants to be paid $200 per unique number and class counsel to receive fee of 25%.

I obviously don't have authority for this, and if I get authority, we wouldn't have much runway left, as I think the low twenties is as high as the Glazer's could conceivably go, and I am not at all sure they would go that high. But I would like to get an offer out there that motivates Wanca to get back to the table and to get serious, which I don't think he is right now.

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

BLPMediation0000585

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **Sent:** | 1/29/2016 12:25:20 PM |
| **Subject:** | Re: Buccaneers |

They maintain that you are wrong on the law. Why argue? The risk is theirs. I say that a final agreement says that "plaintiffs' attorneys' fees will be decided by the court". And agree not to fight the court's decision. They think they'll get a percentage even if the settlement has a complete reversion. Whatever claim amount you put in is a start. We'll see what they say.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Jan 29, 2016, at 12:51 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

I think the problem is that is it brings us back to their lodestar, which they are loathe to disclose or use as a basis for setting their fee. Otherwise, we are using their "virtual fund" concept, which has no support in the law that I am aware of. Conversely, they can be confident that they will get 25% of a common fund, which was why I was going in that direction.

My idea of going down to $200 per claimant, however, which is still a solid number relative to many other TCPA class settlements that have been approved is to give the Glazer's something they can look at as progress. While we would be committing to nearly twice the amount in fees we committed to in our last offer in December (I.e., $2.1 million versus $4 million), the Glazer's might take some comfort in the lower amount for claim-in, which would be meaningful with the reversion.

**From:** Wayne Andersen
**Sent:** Friday, January 29, 2016 9:33:20 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Buccaneers

How about sticking with $300 per claimant with a complete reversion and let them petition for fees? Potential fund is $33 million, hence a fee of say $8.25 million and claims paid at 5% rate of $1.65 million. With admin cost that puts you at about $10 million. A hefty start.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago

BLPMediation0000596

312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Jan 29, 2016, at 12:05 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

At $500 per claimant, it's more like $55 million.

---

**From:** Wayne Andersen
**Sent:** Friday, January 29, 2016 8:59:46 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Buccaneers

At 500 per claim, what is the rhetorical max. $73 million?

Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844

On Jan 29, 2016, at 11:37 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - What are your thoughts about the following for an offer from us?

Common fund of $16 million, with full reversion, claimants to be paid $200 per unique number and class counsel to receive fee of 25%.

I obviously don't have authority for this, and if I get authority, we wouldn't have much runway left, as I think the low twenties is as high as the Glazer's could conceivably go, and I am not at all sure they would go that high. But I would like to get an offer out there that motivates Wanca to get back to the table and to get serious, which I don't think he is right now.

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **Sent:** | 1/29/2016 12:29:14 PM |
| **Subject:** | RE: Buccaneers |

I am fairly confident I am not wrong and that we are just buying objections, but more broadly, an $8 million fee is a far cry from what they get under that I can convince the Glazer's to offer, namely a common fund of $16 million where they get 25% of that or $4 million.

If we were going to go down this road, I think we would have to reserve the right to oppose the fee petition, in part because the construct is so artificial and so contrary to the interests of the class.

---

**From:** Wayne Andersen
**Sent:** Friday, January 29, 2016 10:25:20 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Buccaneers

They maintain that you are wrong on the law. Why argue? The risk is theirs. I say that a final agreement says that "plaintiffs' attorneys' fees will be decided by the court". And agree not to fight the court's decision. They think they'll get a percentage even if the settlement has a complete reversion. Whatever claim amount you put in is a start. We'll see what they say.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com


On Jan 29, 2016, at 12:51 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

I think the problem is that is it brings us back to their lodestar, which they are loathe to disclose or use as a basis for setting their fee. Otherwise, we are using their "virtual fund" concept, which has no support in the law that I am aware of. Conversely, they can be confident that they will get 25% of a common fund, which was why I was going in that direction.

My idea of going down to $200 per claimant, however, which is still a solid number relative to many other TCPA class settlements that have been approved is to give the Glazer's something they can look at as progress. While we would be committing to nearly twice the amount in fees we committed to in our last offer in December (I.e., $2.1 million versus $4 million), the Glazer's might take some comfort in the lower amount for claim-in, which would be meaningful with the reversion.

---

**From:** Wayne Andersen
**Sent:** Friday, January 29, 2016 9:33:20 AM

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**To:** Mester, Mark (CH)
**Subject:** Re: Buccaneers

How about sticking with $300 per claimant with a complete reversion and let them petition for fees? Potential fund is $33 million, hence a fee of say $8.25 million and claims paid at 5% rate of $1.65 million. With admin cost that puts you at about $10 million. A hefty start.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Jan 29, 2016, at 12:05 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

At $500 per claimant, it's more like $55 million.

**From:** Wayne Andersen
**Sent:** Friday, January 29, 2016 8:59:46 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Buccaneers

At 500 per claim, what is the rhetorical max. $73 million?

Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844

On Jan 29, 2016, at 11:37 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - What are your thoughts about the following for an offer from us?

Common fund of $16 million, with full reversion, claimants to be paid $200 per unique number and class counsel to receive fee of 25%.

I obviously don't have authority for this, and if I get authority, we wouldn't have much runway left, as I think the low twenties is as high as the Glazer's could conceivably go, and I am not at all sure they would go that high. But I would like to get an offer out there that motivates Wanca to get back to the table and to get serious, which I don't think he is right now.

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
BLPMediation0000600

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **Sent:** | 1/29/2016 12:36:49 PM |
| **Subject:** | Re: Buccaneers |

The case will settle when they get tempted. They are in the stratosphere now, so my vote is follow their form and plug in numbers your client is comfortable with. When the downside of misguessing the claims rate becomes too great, you start putting on caps or tell them you'll only go,with an all in number. Both Brian and Dave haven't blinked about their willingness to keep working this file, so it's best to begin by engaging them on their terms at the outset if we'd like to try to settle sooner rather than later

That said: do what you think is best and what your clients approve. You won't get a fight from me if they spend what we think they'll spend.
Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Jan 29, 2016, at 1:29 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

I am fairly confident I am not wrong and that we are just buying objections, but more broadly, an $8 million fee is a far cry from what they get under that I can convince the Glazer's to offer, namely a common fund of $16 million where they get 25% of that or $4 million.

If we were going to go down this road, I think we would have to reserve the right to oppose the fee petition, in part because the construct is so artificial and so contrary to the interests of the class.

---

**From:** Wayne Andersen
**Sent:** Friday, January 29, 2016 10:25:20 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Buccaneers

They maintain that you are wrong on the law. Why argue? The risk is theirs. I say that a final agreement says that "plaintiffs' attorneys' fees will be decided by the court". And agree not to fight the court's decision. They think they'll get a percentage even if the settlement has a complete reversion. Whatever claim amount you put in is a start. We'll see what they say.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago

312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Jan 29, 2016, at 12:51 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

I think the problem is that is it brings us back to their lodestar, which they are loathe to disclose or use as a basis for setting their fee. Otherwise, we are using their "virtual fund" concept, which has no support in the law that I am aware of. Conversely, they can be confident that they will get 25% of a common fund, which was why I was going in that direction.

My idea of going down to $200 per claimant, however, which is still a solid number relative to many other TCPA class settlements that have been approved is to give the Glazer's something they can look at as progress. While we would be committing to nearly twice the amount in fees we committed to in our last offer in December (I.e., $2.1 million versus $4 million), the Glazer's might take some comfort in the lower amount for claim-in, which would be meaningful with the reversion.

---

**From:** Wayne Andersen
**Sent:** Friday, January 29, 2016 9:33:20 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Buccaneers

How about sticking with $300 per claimant with a complete reversion and let them petition for fees? Potential fund is $33 million, hence a fee of say $8.25 million and claims paid at 5% rate of $1.65 million. With admin cost that puts you at about $10 million. A hefty start.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Jan 29, 2016, at 12:05 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

At $500 per claimant, it's more like $55 million.

---

**From:** Wayne Andersen
**Sent:** Friday, January 29, 2016 8:59:46 AM
**To:** Mester, Mark (CH)
**Subject:** Re: Buccaneers

At 500 per claim, what is the rhetorical max. $73 million?

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844

On Jan 29, 2016, at 11:37 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - What are your thoughts about the following for an offer from us?

Common fund of $16 million, with full reversion, claimants to be paid $200 per unique number and class counsel to receive fee of 25%.

I obviously don't have authority for this, and if I get authority, we wouldn't have much runway left, as I think the low twenties is as high as the Glazer's could conceivably go, and I am not at all sure they would go that high. But I would like to get an offer out there that motivates Wanca to get back to the table and to get serious, which I don't think he is right now.

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | 'Wayne Andersen' |
| **Sent:** | 2/15/2016 12:19:33 PM |
| **Subject:** | Buccaneers Counteroffer REDACTED |

Judge – Sorry we weren't able to talk on Friday. I got caught up on something unexpected v REDACTED I have, however, been talking fairly regularly to the family lawyer for the Glazers, REDACTED

REDACTED

In terms of the Buccaneers, they honestly don't know what to make of the various machinations by Wanca and his team. The Glazers, however, genuinely want to settle, and in the interests of moving the ball forward and getting to a resolution before we have to spend a lot more time and money on the case, I am now authorized to convey the following offer to you.

The offer is as follows: A common fund of $16 million, with class members who claim-in receiving $300 per unique number held, full reversion to the Buccaneers of any remaining monies at the end of the claims process and agreement by the Buccaneers to payment to class counsel of 25% of the common fund. We would then need to agree to the particulars of the claims process and the terms of a written agreement, but I don't foresee any of that being an issue if we reach agreement on the key terms.

This is obviously a major move by the Glazers and Buccaneers, and it is intended as a springboard to a final in-person mediation session, where we finalize a deal. I want to emphasize, however, that the Buccaneers are purposefully making a more generous offer at this juncture than they otherwise might in the hope that we can bring this to final agreement soon. I have a feeling we could go back and forth with David and Brian for months and never get anywhere. With this offer, we are trying to break that log jam. But that doesn't mean we have oodles and oodles of room above this number. We really don't. It is nevertheless very clear to me that this case now can and should settle, and I think by any conceivable standard, this is a very serious offer.

If we cannot settle this case through mediation, however, then we are going to have no choice but to raise the issue with the Court. That is definitely not our preference, but at that point, I don't know we have a choice. We have all agreed for some time at what the class should get and, in particular, the $300 per claimant payout for persons and entities that claim-in, so the last several months have really been all about fees. I know that isn't a surprise, but it strikes me as being a bit more extreme and unusual than is typically the case. In any event, if we can't settle the case through mediation, we feel like we have to apprise the Court of the situation, given the Court's duty to the class and the fact that it will be the Court that will be burdened with deciding issues that are going to be numerous and often thorny.

Needless to say, I would be happy to discuss this offer with you at your convenience, a REDACTED REDACTED

Best regards.

**Mark S. Mester**
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7623
Fax: +1.312.993.9767
Email: mark.mester@lw.com
http://www.lw.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **Sent:** | 2/15/2016 2:32:23 PM |
| **Subject:** | Re: Buccaneers Counteroffer REDACTED |

I'll call them with the offer and an email to avoid future ambiguity. Of course, my fear is that they see this as a 10+ fee.


Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com


On Feb 15, 2016, at 12:19 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge – Sorry we weren't able to talk on Friday. I got caught up on something unexpected with CCC. I have, however, been talking fairly regularly to the family lawyer for the Glazers. REDACTED

In terms of the Buccaneers, they honestly don't know what to make of the various machinations by Wanca and his team. The Glazers, however, genuinely want to settle, and in the interests of moving the ball forward and getting to a resolution before we have to spend a lot more time and money on the case, I am now authorized to convey the following offer to you.

The offer is as follows: A common fund of $16 million, with class members who claim-in receiving $300 per unique number held, full reversion to the Buccaneers of any remaining monies at the end of the claims process and agreement by the Buccaneers to payment to class counsel of 25% of the common fund. We would then need to agree to the particulars of the claims process and the terms of a written agreement, but I don't foresee any of that being an issue if we reach agreement on the key terms.

This is obviously a major move by the Glazers and Buccaneers, and it is intended as a springboard to a final in-person mediation session, where we finalize a deal. I want to emphasize, however, that the Buccaneers are purposefully making a more generous offer at this juncture than they otherwise might in the hope that we can bring this to final agreement soon. I have a feeling we could go back and forth with David and Brian for months and never get anywhere. With this offer, we are trying to break that log jam. But that doesn't mean we have oodles and oodles of room above this number. We really don't. It is nevertheless very clear to me that this case now can and should settle, and I think by any conceivable standard, this is a very serious offer.

If we cannot settle this case through mediation, however, then we are going to have no choice but to raise the issue with the Court. That is definitely not our preference, but at that point, I don't know we have a choice. We have all agreed for some time at what the class should get and, in particular, the $300 per claimant payout for persons and entities that claim-in, so the last several months have really been all about fees. I know that isn't a surprise, but it strikes me as being a bit more extreme and unusual than is typically the case. In any event, if we can't settle the case through mediation, we feel like we have to apprise the Court of the situation, given the Court's duty to the class and the fact that it will be the Court that will be burdened with deciding issues that are

going to be numerous and often thorny.

Needless to say, I would be happy to discuss this offer with you at your convenience, ████ REDACTED ████

████ REDACTED ████

Best regards.

**Mark S. Mester**
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7623
Fax: +1.312.993.9767
Email: mark.mester@lw.com
http://www.lw.com

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **Sent:** | 2/15/2016 3:29:34 PM |
| **Subject:** | RE: Buccaneers Counteroffer REDACTED |

Understood, but they have to be convinced that that is not going to happen, and we will go to the Court and make things very difficult for them before the Buccaneers will move much past this offer. I am not saying it is the end of the line, but it's fairly close.

---

**From:** Wayne Andersen
**Sent:** Monday, February 15, 2016 12:32:23 PM
**To:** Mester, Mark (CH)
**Subject:** Re: Buccaneers Counteroffer  REDACTED

I'll call them with the offer and an email to avoid future ambiguity. Of course, my fear is that they see this as a 10+ fee.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Feb 15, 2016, at 12:19 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge – Sorry we weren't able to talk on Friday. I got caught up on something unexpected with CCC. I have, however, been talking fairly regularly to the family lawyer for the Glazers, a                        REDACTED
                              REDACTED

In terms of the Buccaneers, they honestly don't know what to make of the various machinations by Wanca and his team. The Glazers, however, genuinely want to settle, and in the interests of moving the ball forward and getting to a resolution before we have to spend a lot more time and money on the case, I am now authorized to convey the following offer to you.

The offer is as follows: A common fund of $16 million, with class members who claim-in receiving $300 per unique number held, full reversion to the Buccaneers of any remaining monies at the end of the claims process and agreement by the Buccaneers to payment to class counsel of 25% of the common fund. We would then need to agree to the particulars of the claims process and the terms of a written agreement, but I don't foresee any of that being an issue if we reach agreement on the key terms.

This is obviously a major move by the Glazers and Buccaneers, and it is intended as a springboard to a final in-person mediation session, where we finalize a deal. I want to emphasize, however, that the Buccaneers are purposefully making a more generous offer at this juncture than they otherwise might in the hope that we can bring this to final agreement soon. I have a feeling we could go back and forth with David and Brian for months

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

and never get anywhere. With this offer, we are trying to break that log jam. But that doesn't mean we have oodles and oodles of room above this number. We really don't. It is nevertheless very clear to me that this case now can and should settle, and I think by any conceivable standard, this is a very serious offer.

If we cannot settle this case through mediation, however, then we are going to have no choice but to raise the issue with the Court. That is definitely not our preference, but at that point, I don't know we have a choice. We have all agreed for some time at what the class should get and, in particular, the $300 per claimant payout for persons and entities that claim-in, so the last several months have really been all about fees. I know that isn't a surprise, but it strikes me as being a bit more extreme and unusual than is typically the case. In any event, if we can't settle the case through mediation, we feel like we have to apprise the Court of the situation, given the Court's duty to the class and the fact that it will be the Court that will be burdened with deciding issues that are going to be numerous and often thorny.

Needless to say, I would be happy to discuss this offer with you at your convenience, a [REDACTED]
[REDACTED]

Best regards.

**Mark S. Mester**
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7623
Fax: +1.312.993.9767
Email: mark.mester@lw.com
http://www.lw.com

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **CC:** | Wayne Andersen |
| **Sent:** | 2/16/2016 2:56:31 PM |
| **Subject:** | RE: (No Subject) |

Ok. Thanks very much.

---

**From:** Wayne Andersen
**Sent:** Tuesday, February 16, 2016 12:53:24 PM
**To:** Mester, Mark (CH)
**Cc:** Wayne Andersen
**Subject:** Re:

No word. I emailed them again. I'll call tomorrow.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Feb 16, 2016, at 2:26 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - Any reaction from Wanca's team to the counter? My friends at the Buccaneers asked me to touch base with you.

So you aware of the status of the case, our expert had a medical problem arise that required surgery last week. His predicted recovery time is approximately six weeks, though as we have advised Ryan, it obviously could take longer than that. The Court graciously extended out the schedule, however, so we have a bit of a lull right now, during which it sure would be nice if we could resolve the case. If we can't, both sides are going to spend a huge pile of money on the remaining expert discovery and briefing of the class issue.

Best regards.

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

   BLPMediation0000614

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **Sent:** | 2/16/2016 10:02:08 PM |
| **Subject:** | Re: (No Subject) |

Wanca says that he would like an offer that includes a term sheet, presumably patterned after the one Dave sent months ago, and does not want to respond without one. He also says that the offer you just made would be "well short of what is needed to resolve is case" and suggests that discovery be completed and that you address then class cert motion.


Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com




On Feb 16, 2016, at 2:56 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Ok. Thanks very much.

---

**From:** Wayne Andersen
**Sent:** Tuesday, February 16, 2016 12:53:24 PM
**To:** Mester, Mark (CH)
**Cc:** Wayne Andersen
**Subject:** Re:

No word. I emailed them again. I'll call tomorrow.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com




On Feb 16, 2016, at 2:26 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - Any reaction from Wanca's team to the counter? My friends at the Buccaneers asked me to touch base

BLPMediation0000617

with you.

So you aware of the status of the case, our expert had a medical problem arise that required surgery last week. His predicted recovery time is approximately six weeks, though as we have advised Ryan, it obviously could take longer than that. The Court graciously extended out the schedule, however, so we have a bit of a lull right now, during which it sure would be nice if we could resolve the case. If we can't, both sides are going to spend a huge pile of money on the remaining expert discovery and briefing of the class issue.

Best regards.

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **Sent:** | 2/17/2016 3:58:33 AM |
| **Subject:** | RE: (No Subject) |

Judge – Thanks. Not really sure how to interpret his response, but I will definitely convey it to our client and get back to you. We obviously can put together a term sheet, though I am not entirely sure why he thinks we need one. But I really don't understand his comment about finishing discovery and briefing the class motion, as that will cost everyone a lot of time and money. Do you understand him to be saying he won't respond to our counter even if reduce it to a term sheet, at least not until after briefing of the class motion is completed? If so, I understand his request for a term sheet even less.

If nothing else, I would think he would want to avoid briefing of the class motion so as to avoid us putting before the Court (and in to the public record) all the issues we have uncovered with regard to his expert, Robert Biggerstaff, who he uses on all of these cases. Once we make the arguments we make with regard to Biggerstaff, which no one has made before, other lawyers in other cases will be able to see them and use them. If we brief the class motion, we are also going to be compelled to go after Wanca on adequacy, based in part on his checkered history in several cases in the Northern District but also a few other things. I would really prefer to not have to do that, however, and am concerned that once we do, the odds of settlement go way down.

---

**From:** Wayne Andersen
**Sent:** Tuesday, February 16, 2016 8:02:08 PM
**To:** Mester, Mark (CH)
**Subject:** Re: (No Subject)

Wanca says that he would like an offer that includes a term sheet, presumably patterned after the one Dave sent months ago, and does not want to respond without one. He also says that the offer you just made would be "well short of what is needed to resolve is case" and suggests that discovery be completed and that you address then class cert motion.


Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com




On Feb 16, 2016, at 2:56 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Ok. Thanks very much.

---

**From:** Wayne Andersen

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Sent:** Tuesday, February 16, 2016 12:53:24 PM
**To:** Mester, Mark (CH)
**Cc:** Wayne Andersen
**Subject:** Re:

No word. I emailed them again. I'll call tomorrow.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Feb 16, 2016, at 2:26 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - Any reaction from Wanca's team to the counter? My friends at the Buccaneers asked me to touch base with you.

So you aware of the status of the case, our expert had a medical problem arise that required surgery last week. His predicted recovery time is approximately six weeks, though as we have advised Ryan, it obviously could take longer than that. The Court graciously extended out the schedule, however, so we have a bit of a lull right now, during which it sure would be nice if we could resolve the case. If we can't, both sides are going to spend a huge pile of money on the remaining expert discovery and briefing of the class issue.

Best regards.

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

| From: | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
|---|---|
| To: | Wayne Andersen |
| CC: | Lally, Kathleen (CH) |
| Sent: | 3/11/2016 3:01:43 PM |
| Subject: | Cin-Q v. Bucs -- Settlement Term Sheet |
| Attachments: | Cin-Q v. Bucs -- Draft Settlement Term Sheet(7544563_7_NY).DOCX |

Dear Judge Andersen - As promised, please find attached the term sheet requested by opposing counsel. This term sheet memorializes the oral offer I conveyed to you that I understand was previously conveyed to opposing counsel. Please let David know that the principal cause of the delay in getting this to him was my travel schedule, which has been particularly bad of late and for which I apologize.

Our client remains very interested in reaching a resolution of this matter as soon as possible. We, in turn, look forward to hearing back from opposing counsel as soon as possible in the hope we could schedule a second mediation session, at which point we sincerely believe we could reach a final agreement.

Best regards.

**Mark S. Mester**
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7623
Fax: +1.312.993.9767
Email: mark.mester@lw.com
http://www.lw.com

## Term Sheet For Settlement

### Cin-Q Automobiles, Inc., et al. v. Buccaneers Limited Partnership, Case No. 8:13-cv-01592 (M.D. Fla.)

1.  Plaintiffs Cin-Q Automobiles, Inc. and Medical & Chiropractic, Inc. (collectively, "Plaintiffs") and Buccaneers Limited Partnership ("Defendant," and collectively with Plaintiffs, the "Parties") have reached a settlement in principle (subject to the execution and approval of a formal settlement agreement) of the above-captioned case on the terms set forth herein.

2.  The Settlement Class will be defined to address faxes allegedly sent on behalf of the Buccaneers on July 14, 2009 and June 9, 2010 that purportedly did not display the opt-out language required by 47 C.F.R. § 64.1200.  Plaintiffs contend that the Settlement Class consists of approximately 131,000 persons.

3.  Defendant will make available a total of $16,000,000 ("Settlement Fund") to pay (a) claims of members of the Settlement Class, (b) an incentive payment to each of the Plaintiffs, (c) attorneys' fees and expenses to Anderson + Wanca, Addison & Howard, PA and Siprut P.C. (collectively, "Class Counsel") and (d) notice and administration costs. Defendant need not segregate funds or otherwise create special accounts to hold the Settlement Fund.  Defendant will not relinquish control of any money until payments are due.  As described below, if the total amount of claims paid to class members, incentive payments, fees and costs to Class Counsel and notice and administration costs all total less than the amount of the Settlement Fund, any and all remaining monies will revert to Defendant.

4.  The Settlement Fund will be distributed on a "claims-made" basis as follows:

    (a)  <u>Payments to claiming class members</u>.  Defendant agrees to pay timely claims submitted by members of the Settlement Class.  Members of the Settlement Class who submit claims will receive the lesser of (i) $300 each or (ii) in the event that the amounts identified in Paragraph 3 are greater than the Settlement Fund, the pro rata share of members of the Settlement Class in the Settlement Fund after subtracting the payments in Paragraphs (b) through (d).

    (b)  <u>Incentive award to the class representative</u>.  Defendant agrees to pay and will not oppose or appeal a request for an incentive award of $20,000.00 from the Settlement Fund to each of the Plaintiffs for serving as the Class Representatives. The payment of an incentive award does not prohibit Plaintiffs from also filing a claim under the settlement.

    (c)  <u>Fees and expenses to Class Counsel</u>.  Defendant agrees to pay and will not oppose or appeal a request by Class Counsel for attorneys' fees in an amount equal to 25% of the Settlement Fund, plus reasonable out-of-pocket costs, all to be paid out of the Settlement Fund.

|NY\7544563.7  Cin-Q v. Bucs -- Draft Settlement Term Sheet||                    | **DRAFT** DATE  DATE  056866-0001|

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                                         BLPMediation0000624

(d)    <u>Notice and Administration Costs</u>.  Costs for notice and administration will be paid from the Settlement Fund.  The Parties will agree to a notice/class administrator and work with that administrator to establish a reasonable notice plan.  The notice/class administrator will also receive the claim forms, assist class members in completing and submitting forms and provide a list of accepted and rejected claims to counsel for the parties.  Upon request, the administrator will provide copies of all claim forms to counsel for the parties.

5.    Defendant will agree to a permanent injunction enjoining violations of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, <u>et seq</u>. ("TCPA") with respect to advertising faxes with language to be agreed upon.

6.    Plaintiffs and the Settlement Class will broadly release Defendant from claims arising out of or relating to Defendant's advertising faxes during the class period and applicable limitations period.  The Settlement Class will not release claims regarding advertising faxes sent after the Class Period.

7.    This term sheet is contingent upon the entry of a mutually-agreeable Settlement Agreement as well as preliminary and final approval of the Court.

**BUCCANEERS LIMITED PARTNERSHIP**

By: _____

Its: _____

Dated: _____

**PLAINTIFF AND THE SETTLEMENT CLASS**

By: _____
    Michael C. Addison
    Brian J. Wanca
    Their Attorneys

Dated: _____

|NY\7544563.7  Cin-Q v. Bucs -- Draft Settlement Term Sheet||    | **DRAFT** DATE  DATE  056866-0001|

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

BLPMediation0000625

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **CC:** | Lally, Kathleen (CH) |
| **Sent:** | 3/11/2016 8:46:51 PM |
| **Subject:** | Re: Cin-Q v. Bucs -- Settlement Term Sheet |

I forwarded this to Brian and Dave with the statement you've requested. I'll report their response

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Mar 11, 2016, at 3:01 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Dear Judge Andersen - As promised, please find attached the term sheet requested by opposing counsel. This term sheet memorializes the oral offer I conveyed to you that I understand was previously conveyed to opposing counsel. Please let David know that the principal cause of the delay in getting this to him was my travel schedule, which has been particularly bad of late and for which I apologize.
Our client remains very interested in reaching a resolution of this matter as soon as possible. We, in turn, look forward to hearing back from opposing counsel as soon as possible in the hope we could schedule a second mediation session, at which point we sincerely believe we could reach a final agreement.
Best regards.
**Mark S. Mester**
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7623
Fax: +1.312.993.9767
Email: mark.mester@lw.com
http://www.lw.com

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | David Oppenheim <doppenheim@andersonwanca.com> |
| **To:** | Mester, Mark (CH) |
| **CC:** | Wayne Andersen; Brian Wanca; Michael Addison (M@mcalaw.net) |
| **Sent:** | 3/18/2016 11:59:04 AM |
| **Subject:** | Cin-Q v. Bucs |
| **Attachments:** | Bucs settlement term sheet 031716.docx |

CONFIDENTIAL SETTLEMENT COMMUNICATION

Attached is a response to your latest settlement proposal, which involved your client paying approximately $6,385,000 at a 5% claim rate ($4 million fees, $380,000 expenses, $40,000 incentive, $1,965,000 in claims) and $8,280,000 at a 10% claim rate. Under this proposal, your client would pay $32,010,000 at 5% claims and $40,590,000 at 10%.

We note that the Capital One TCPA case settled for $75,455,099.00 with no reversion. While we are willing to agree to a settlement with a reversionary fund prior to class certification here, there is no reason why the fund should be less than in Capital One, which involved robocalls and thus far more proof issues than does this case.

David M. Oppenheim

Attorney at Law

Anderson + Wanca

3701 Algonquin Rd., Suite 500

Rolling Meadows, IL 60008

p-(847) 368-1500

f-((847) 368-1501

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Cin-Q Autos, Inc. v. Buccaneers Limited Partnership, Case No. 13-cv-1592**
**Principal Terms of Class Settlement**

1.  The parties will seek court approval of the following settlement to resolve all claims regarding the 343,122 unsolicited facsimile advertisements successfully sent by or on behalf of Defendant from July 14, 2009 to June 9, 2010 (the "Class Period").

2.  Defendant will make available a total of $92,000,000.00 (the "Settlement Fund") to pay class member claims, to pay an incentive payment to each of the class representatives, and to pay attorney's fees and expenses to Class Counsel. Defendant need not segregate funds or otherwise create special accounts to hold the Settlement Fund. Defendant will not relinquish control of any money until payments are due. Defendant will keep all unclaimed funds. If any payments owed are not paid by the date due, Defendant will pay daily interest at Florida's statutory interest rate (4.75% per annum).

3.  The Settlement Class will be defined as: "All persons from July 14, 2009 to June 9, 2010 who were sent facsimile advertisements offering group tickets or individual game tickets for the Tampa Bay Buccaneers games and which did not display the opt-out language required by 47 C.F.R. §64.1200."

4.  The Settlement Fund will be distributed on a "claims-made" basis as follows:

    (a)  <u>Payments to claiming class members</u>. Defendant agrees to pay timely claims submitted by members of the Settlement Class. A settlement notice and claim form will be sent to the class members by facsimile. The per-fax, pro rata share of the Settlement Fund before subtracting the payments in Paragraphs (a) and (b) above is $500.00.

    (b)  <u>Incentive award to the class representative</u>. Defendant agrees to pay and will not oppose or appeal a request for an incentive award of $20,000.00 from the Settlement Fund to each of the named plaintiffs for serving as the Class Representatives.

    (c)  <u>Fees and expenses to Class Counsel</u>. Defendant agrees to pay and will not oppose a request by Class Counsel (Brian J. Wanca of Anderson + Wanca and Michael C. Addison of Addison & Howard, PA) for attorney's fees in an amount equal to 25% of the Settlement Fund ($23,000,000.00), plus reasonable out-of-pocket expenses from the Settlement Fund.

    (d)  <u>Reversion to Defendant</u>. After making all required payments pursuant to this Paragraph 4, Defendant shall keep all unclaimed money in the Settlement Fund.

5.  Defendant will agree to a permanent injunction enjoining violations of the TCPA with language to be agreed upon.

6.  The Settlement Class will broadly release Defendant from claims arising out of or relating to Defendant's advertising faxes during the Class Period (*see* class definition above). The

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                                   BLPMediation0000628

Settlement Class will not release claims regarding advertising faxes sent after the Class Period.

7.    In addition to the Settlement Fund, Defendant shall pay the cost to retain a third party claims administrator who will issue the class notice by facsimile and postcard mailing to all class members to whom fax notice failed after three attempts to the extent an address can be ascertained by a reverse lookup process, receive the claim forms, assist class members in completing and submitting forms, and provide a list of accepted and rejected claims to counsel for the parties.  The decision of the claims administrator regarding whether a claim is valid is final and binding on the parties.  Upon request, the third party claims administrator will provide copies of all claim forms to counsel for the parties.

8.    This term sheet constitutes a binding agreement if accepted.  The parties will submit a formal written settlement agreement and other papers necessary to obtain the Court's preliminary and final approval of this settlement.  Within 14 days after this term sheet is signed, Plaintiff's counsel will draft and provide such documents for Defendant' review, revisions, and approval.  The parties anticipate seeking preliminary approval from the Court within 28 days of signing this term sheet.

**BUCCANEERS LIMITED PARTNERSHIP**

By: _____

Its: _____

Dated: _____

**PLAINTIFF AND THE SETTLEMENT CLASS**

By: _____
      Michael C. Addison
      Brian J. Wanca
      Their Attorneys

Dated: _____

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER        BLPMediation0000629

**PROOF OF CLAIM – Cin-Q Autos, Inc. v. Buccaneers Limited Partnership, Case No. 13-cv-1592**

*You Must Complete All **THREE** Steps to Claim a Share of the Settlement Fund:*

1.   **You Must Provide Your Contact Information.**

Name: _____

Company: _____

Address: _____

City/State/Zip Code: _____

Fax Number(s): _____
        [List all numbers.  You may attach a separate sheet.]

2.   **You Must Verify Ownership of the Fax Number(s) Listed in #1 above:**

(a)   "The fax number(s) identified above or attached to this Proof of Claim was/were mine or my company's from July 14, 2009 to June 9, 2010."

_____
(Sign your name here)

   ***OR***

(b)   The fax number(s) identified in No. 1 above or attached to this Proof of Claim was **not**/were **not** mine or my company's throughout the period from July 14, 2009 to June 9, 2010.  Explain when you obtained the fax number(s) identified in No. 1 above or attached to this Proof of Claim:

_____
_____
_____

_____
(Sign your name here)

3.   **You Must Return this Claim Form by [90 days]_____, 2016:**

a.   Fax this Claim Form to:  <u>&lt;fax number for claims ></u>

   ***OR***

b.   Mail this Claim Form to:  [CLAIMS ADMINISTRATOR]

   ***OR***

c.   Submit this claim form electronically at **[website]**

Term Sheet – page 3

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                                   BLPMediation0000630

| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **Sent:** | 3/21/2016 7:05:25 AM |
| **Subject:** | RE: Cin-Q v. Bucs |

We definitely should, but I think our client is about at the end of its rope. You will be interested to learn that the Capital One case David is referring to involved a settlement class consisting of over 16 million people, and the common fund in that case was still less than the virtual fund David is now insisting on. The settlement class in this case in contrast would obviously closer to 100,000, so if we want to use that settlement as a template for this one, I think our client would be fine with that, but David's fee would be about $5000.

---

**From:** Wayne Andersen
**Sent:** Monday, March 21, 2016 4:38:35 AM
**To:** Mester, Mark (CH)
**Subject:** Fwd: Cin-Q v. Bucs

FYI. Let's discuss.

Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844

Begin forwarded message:

**From:** David Oppenheim <doppenheim@andersonwanca.com>
**Date:** March 18, 2016 at 11:59:04 AM CDT
**To:** "mark.mester@lw.com" <mark.mester@lw.com>
**Cc:** Wayne Andersen <wra1991@aol.com>, Brian Wanca <bwanca@andersonwanca.com>, "Michael Addison (M@mcalaw.net)" <M@mcalaw.net>
**Subject: Cin-Q v. Bucs**

CONFIDENTIAL SETTLEMENT COMMUNICATION
Attached is a response to your latest settlement proposal, which involved your client paying approximately $6,385,000 at a 5% claim rate ($4 million fees, $380,000 expenses, $40,000 incentive, $1,965,000 in claims) and $8,280,000 at a 10% claim rate. Under this proposal, your client would pay $32,010,000 at 5% claims and $40,590,000 at 10%.
We note that the Capital One TCPA case settled for $75,455,099.00 with no reversion. While we are willing to agree to a settlement with a reversionary fund prior to class certification here, there is no reason why the fund should be less than in Capital One, which involved robocalls and thus far more proof issues than does this case.
David M. Oppenheim
Attorney at Law
Anderson + Wanca
3701 Algonquin Rd., Suite 500
Rolling Meadows, IL 60008
p-(847) 368-1500
f-((847) 368-1501

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne R. Andersen |
| **CC:** | Lally, Kathleen (CH) |
| **Sent:** | 4/9/2016 10:17:17 AM |
| **Subject:** | Buccaneers |

Judge - I hope you are well and your arbitration is going as well as can be expected.

At my request, I had an in-person meeting with the Glazer's on Thursday in Bethesda (the US home of Manchester United -- who knew?) in a last ditch attempt to avoid World War 3 (I.e., the filing of our motion for a settlement conference and other tricks we have up our sleeve).

The meeting was productive, and I believe the Glazer's are again willing to resume mediation efforts, provided that we can come up with a structure that would work. To that end, we discussed with them the option of a high-low format on the issue of fees, which I know you have suggested in the past. That seemed to appeal to them, and they asked that I contact you to get a recommendation from you as to what an appropriate range would be, with the idea being that if we could agree on the range, then we would schedule a second mediation session with you, sit down and get this case resolved.

We would obviously defer to you in terms of a range that would work for both sides. The range that immediately came to Kate and me was $10 million to $20 million, which would represent a very substantial move by the Buccaneers (from $4 million in fees in their last offer to at least $10 million) and would represent only a fairly minor move for Wanca (from twenty three million in his last demand to $20 million). We floated that range at the meeting in Bethesda, and it was not received all that warmly by Joel Glazer. I am not saying I know for sure that he wouldn't accept it if it came with a very strong recommendation from you, but I think he would be a lot more comfortable with a range that had a seven-figure number at the low end (e.g., $8 million to $18 million), which would still represent a doubling of the Buccaneers last offer on fees and would Wanca fairly close to the target number you think he is shooting for (I.e., $15 million).

Kate and I would be most grateful if you could give this some thought and let us know what you think could work. We have a bunch of impending deadlines in this case, and the reality is both sides are going to be spending a lot of time and money in the next 60 days if we can't reach a settlement.

Best regards as always.



CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| From: | Wayne Andersen <wra1991@aol.com> |
|---|---|
| To: | Mester, Mark (CH) |
| CC: | Lally, Kathleen (CH) |
| Sent: | 4/9/2016 11:17:18 AM |
| Subject: | Re: Buccaneers |

Let me mull is over now. We can talk later. These are stunning numbers!

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Apr 9, 2016, at 10:17 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - I hope you are well and your arbitration is going as well as can be expected.

At my request, I had an in-person meeting with the Glazer's on Thursday in Bethesda (the US home of Manchester United -- who knew?) in a last ditch attempt to avoid World War 3 (I.e., the filing of our motion for a settlement conference and other tricks we have up our sleeve).

The meeting was productive, and I believe the Glazer's are again willing to resume mediation efforts, provided that we can come up with a structure that would work. To that end, we discussed with them the option of a high-low format on the issue of fees, which I know you have suggested in the past. That seemed to appeal to them, and they asked that I contact you to get a recommendation from you as to what an appropriate range would be, with the idea being that if we could agree on the range, then we would schedule a second mediation session with you, sit down and get this case resolved.

We would obviously defer to you in terms of a range that would work for both sides. The range that immediately came to Kate and me was $10 million to $20 million, which would represent a very substantial move by the Buccaneers (from $4 million in fees in their last offer to at least $10 million) and would represent only a fairly minor move for Wanca (from twenty three million in his last demand to $20 million). We floated that range at the meeting in Bethesda, and it was not received all that warmly by Joel Glazer. I am not saying I know for sure that he wouldn't accept it if it came with a very strong recommendation from you, but I think he would be a lot more comfortable with a range that had a seven-figure number at the low end (e.g., $8 million to $18 million), which would still represent a doubling of the Buccaneers last offer on fees and would Wanca fairly close to the target number you think he is shooting for (I.e., $15 million).

Kate and I would be most grateful if you could give this some thought and let us know what you think could work. We have a bunch of impending deadlines in this case, and the reality is both sides are going to be spending a lot of time and money in the next 60 days if we can't reach a settlement.

Best regards as always.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

REDACTED

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **CC:** | Lally, Kathleen (CH) |
| **Sent:** | 4/9/2016 11:22:58 AM |
| **Subject:** | RE: Buccaneers |

Thanks very much.

They are indeed stunning, and there is no question the Bucs would be more comfortable at 8 to 18 or better yet 7 to 17 than with 10 to 20. But I think the Glazer's finally realize they are going to need to get in to this range if they are going to settle without involvement of the Court, and while they are prepared to have us file the motion for a settlement conference that we forwarded to you earlier, they also realize that is an unusual motion and that once it's filed, there may be no going back to the table with Wanca (a proposition I am actually less certain of than the Glazer's seem to be).

---

**From:** Wayne Andersen
**Sent:** Saturday, April 09, 2016 9:17:18 AM
**To:** Mester, Mark (CH)
**Cc:** Lally, Kathleen (CH)
**Subject:** Re: Buccaneers

Let me mull is over now. We can talk later. These are stunning numbers!

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Apr 9, 2016, at 10:17 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - I hope you are well and your arbitration is going as well as can be expected.

At my request, I had an in-person meeting with the Glazer's on Thursday in Bethesda (the US home of Manchester United -- who knew?) in a last ditch attempt to avoid World War 3 (I.e., the filing of our motion for a settlement conference and other tricks we have up our sleeve).

The meeting was productive, and I believe the Glazer's are again willing to resume mediation efforts, provided that we can come up with a structure that would work. To that end, we discussed with them the option of a high-low format on the issue of fees, which I know you have suggested in the past. That seemed to appeal to them, and they asked that I contact you to get a recommendation from you as to what an appropriate range would be, with the idea being that if we could agree on the range, then we would schedule a second mediation session with you, sit down and get this case resolved.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

We would obviously defer to you in terms of a range that would work for both sides. The range that immediately came to Kate and me was $10 million to $20 million, which would represent a very substantial move by the Buccaneers (from $4 million in fees in their last offer to at least $10 million) and would represent only a fairly minor move for Wanca (from twenty three million in his last demand to $20 million). We floated that range at the meeting in Bethesda, and it was not received all that warmly by Joel Glazer. I am not saying I know for sure that he wouldn't accept it if it came with a very strong recommendation from you, but I think he would be a lot more comfortable with a range that had a seven-figure number at the low end (e.g., $8 million to $18 million), which would still represent a doubling of the Buccaneers last offer on fees and would Wanca fairly close to the target number you think he is shooting for (I.e., $15 million).

Kate and I would be most grateful if you could give this some thought and let us know what you think could work. We have a bunch of impending deadlines in this case, and the reality is both sides are going to be spending a lot of time and money in the next 60 days if we can't reach a settlement.

Best regards as always.


REDACTED

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **CC:** | Lally, Kathleen (CH) |
| **Sent:** | 3/23/2016 9:06:31 PM |
| **Subject:** | Re: Cin-Q Automobiles, Inc., et al. v. Buccaneers |

Mark,

Your proposed course of action is fine with me. When I gave your proposal to Dave, his instinct was to not respond because he figured your real offer was around a $6.5 payout which is probably less than where we were eons ago when we met. I implored him to give a counter, hoping you'd nudge up. Hence, his reduced demand, but only slightly reduced. That said (as you would say), I think your assessment is correct and that their target is a fee in excess of $20 million. I don't think they think they'd take less than $15 in fees--a daunting amount given the relatively small class size. Perhaps a request to discuss this with the Judge would bring perspective.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Mar 23, 2016, at 10:59 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Dear Judge Andersen – After reviewing the counteroffer we received from David Oppenheim late Friday and conferring at some length with our client, we have reluctantly come to the conclusion that little or no progress is likely on the settlement front through continued mediation efforts. The fact that David is now proposing (after a number of interim moves) a settlement structure that is virtually identical to what was initially proposed by Plaintiffs' counsel many months ago at our first mediation session on August 31, 2015 leads our client to believe we have not made much progress at all and that David and his colleagues are at this point being regressive and unreasonable. Moreover, David's citation to and apparent reliance on the Capital One TCPA settlement is particularly disheartening, since that case involved over 16 million class members (versus 131,000 here) and yet the total amount of the settlement was actually less than what David is demanding now.

Viewed historically, we have spent the last five months or so in ever more obvious efforts by David and his colleagues to justify a fee that is otherwise far removed from what Plaintiffs' counsel would be awarded if they ever disclosed their lodestar, which, of course, they have steadfastly refused to do. As you know, we reached agreement in October on what an appropriate benefit would be for class members who claim-in ($300 per class member, which ironically enough is more generous than many other TCPA fax settlements that David and his firm have entered into), and the balance of our time has been focused on fees, with little or no apparent consideration or concern from David or his colleagues as to the interests of the class they seek to represent. Accordingly, we are planning to file the attached motion later this week. I did, however, want to apprise you of the motion beforehand, as we indicate in the motion that we are prepared to waive the mediation privilege if David agrees, in which event you would likely get a call from Magistrate Judge Porcelli. Our hope is this motion will get Magistrate Judge Porcelli's attention and cause him to realize it could be helpful for him to get involved at this point, and our sincere hope is that David does waive the mediation privilege so that you can have a constructive discussion with Magistrate Judge Porcelli and we can then reach a settlement agreement that is fair, reasonable and adequate.

I am headed to Atlanta today but should be reachable by email. Kate is likewise traveling to Bloomington but

BLPMediation0000646

should also be reachable. We have not yet told opposing counsel of our intention to file this motion and would respectfully request that you not disclose it to them. We did, however, want you to be aware of the motion and of the possibility of a call from Magistrate Judge Porcelli.

Best regards.

**Mark S. Mester**
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7623
Fax: +1.312.993.9767
Email: mark.mester@lw.com
http://www.lw.com

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **CC:** | Lally, Kathleen (CH) |
| **BCC:** | Mester, Mark (CH); 056866_0001 _Tampa Bay Buccaneers_ TCPA Class Litigation_ Email _056866_0001_ |
| **Sent:** | 3/23/2016 10:59:00 AM |
| **Subject:** | Cin-Q Automobiles, Inc., et al. v. Buccaneers |
| **Attachments:** | Cin-Q v. Bucs -- Bucs Motion for A Settlement Conference(7486413_3_NY) (3).DOCX |

Dear Judge Andersen – After reviewing the counteroffer we received from David Oppenheim late Friday and conferring at some length with our client, we have reluctantly come to the conclusion that little or no progress is likely on the settlement front through continued mediation efforts. The fact that David is now proposing (after a number of interim moves) a settlement structure that is virtually identical to what was initially proposed by Plaintiffs' counsel many months ago at our first mediation session on August 31, 2015 leads our client to believe we have not made much progress at all and that David and his colleagues are at this point being regressive and unreasonable. Moreover, David's citation to and apparent reliance on the Capital One TCPA settlement is particularly disheartening, since that case involved over 16 million class members (versus 131,000 here) and yet the total amount of the settlement was actually less than what David is demanding now.

Viewed historically, we have spent the last five months or so in ever more obvious efforts by David and his colleagues to justify a fee that is otherwise far removed from what Plaintiffs' counsel would be awarded if they ever disclosed their lodestar, which, of course, they have steadfastly refused to do. As you know, we reached agreement in October on what an appropriate benefit would be for class members who claim-in ($300 per class member, which ironically enough is more generous than many other TCPA fax settlements that David and his firm have entered into), and the balance of our time has been focused on fees, with little or no apparent consideration or concern from David or his colleagues as to the interests of the class they seek to represent. Accordingly, we are planning to file the attached motion later this week. I did, however, want to apprise you of the motion beforehand, as we indicate in the motion that we are prepared to waive the mediation privilege if David agrees, in which event you would likely get a call from Magistrate Judge Porcelli. Our hope is this motion will get Magistrate Judge Porcelli's attention and cause him to realize it could be helpful for him to get involved at this point, and our sincere hope is that David does waive the mediation privilege so that you can have a constructive discussion with Magistrate Judge Porcelli and we can then reach a settlement agreement that is fair, reasonable and adequate.

I am headed to Atlanta today but should be reachable by email. Kate is likewise traveling to Bloomington but should also be reachable. We have not yet told opposing counsel of our intention to file this motion and would respectfully request that you not disclose it to them. We did, however, want you to be aware of the motion and of the possibility of a call from Magistrate Judge Porcelli.

Best regards.

**Mark S. Mester**
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7623
Fax: +1.312.993.9767
Email: mark.mester@lw.com
http://www.lw.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen; Lally, Kathleen (CH) |
| **Sent:** | 4/10/2016 11:32:18 AM |
| **Subject:** | RE: Bucs |

Makes complete sense to me.

Thanks very much.

---

**From:** Wayne Andersen
**Sent:** Sunday, April 10, 2016 9:15:35 AM
**To:** Mester, Mark (CH); Lally, Kathleen (CH)
**Subject:** Bucs

I suggest that I begin a conversation with Dave today re brackets. I have a non-case related reason to call him and in that conversation, if I can reach him, put my toe in the water. What do you think?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                                                    BLPMediation0000683

**From:**      Wayne Andersen <wra1991@aol.com>
**To:**        Mester, Mark (CH); Lally, Kathleen (CH)
**Sent:**      4/10/2016 11:15:35 AM
**Subject:**   Bucs


I suggest that I begin a conversation with Dave today re brackets. I have a non-case related reason to call him and in that conversation, if I can reach him, put my toe in the water. What do you think?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **CC:** | Lally, Kathleen (CH) |
| **Sent:** | 4/12/2016 9:26:41 AM |
| **Subject:** | RE: Bucs |

Judge - I was kicking this around with Kate yesterday and this morning, and we wonder whether it wouldn't be better to go to Brian (and the Buccaneers) with a high/low proposal of 10 to 20. That will obviously be a reach for our client, but we tend to think we need our client to adjust its thinking if we are going to settle this case in the context of mediation. And our sense is there is no circumstance in which Brian is going to agree to settle for a number that at least isn't in the low to middle teens. If you propose 10 to 20 to both sides, however, then our client will have to adjust its thinking a bit, and it will be better prepared to pay what it is going to take to settle the case, whereas at a low of 8, our client is going to think it can settle the case for 8 to 9, which I don't think it realistically can unless we scuttle the mediation and take the issue up with the Court.

Conversely, I would hope that Brian would see a move to 10 to 20 as real movement on our part, which it is, and that it would make him willing to have a second mediation session with us and settle the case. At 20, he would only be 3 million off his last demand, so this wouldn't be a really big move by him, though I am certain he will spot the midpoint here as being 15, which may be lower than he would like (based on your recent conversations with David) but is still a reasonable settlement for him (to say the least).

You should, of course, recommend and do whatever you are most comfortable with, but I wanted to give you Kate and my two cents worth. REDACTED

REDACTED

Best regards.

---

**From:** Wayne Andersen
**Sent:** Tuesday, April 12, 2016 6:29:19 AM
**To:** Mester, Mark (CH)
**Subject:** Bucs

I suggest that I call Brian and suggest an 8-17 bracket on fees and see what he says. That will hopefully lead to a candid exchange so we can figure out really where he's headed. Is that ok?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**From:**      Wayne Andersen <wra1991@aol.com>
**To:**        Mester, Mark (CH)
**Sent:**      4/12/2016 8:29:19 AM
**Subject:**   Bucs


I suggest that I call Brian and suggest an 8-17 bracket on fees and see what he says. That will hopefully lead to a candid exchange so we can figure out really where he's headed. Is that ok?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                           BLPMediation0000694

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **CC:** | Lally, Kathleen (CH) |
| **Sent:** | 4/12/2016 10:34:23 AM |
| **Subject:** | Re: Bucs |

I agree with all of this, so I'm inclined to throw out the idea. I'm afraid if I throw it out after a talk with Brian, he'll make the job tougher by demanding higher brackets and may be offended (which would be amazing at several levels) by a direct fee discussion when we know there will be a 25% fee granted. So what if I throw out brackets for a virtual fund of $40-$80 million?
Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Apr 12, 2016, at 9:26 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - I was kicking this around with Kate yesterday and this morning, and we wonder whether it wouldn't be better to go to Brian (and the Buccaneers) with a high/low proposal of 10 to 20. That will obviously be a reach for our client, but we tend to think we need our client to adjust its thinking if we are going to settle this case in the context of mediation. And our sense is there is no circumstance in which Brian is going to agree to settle for a number that at least isn't in the low to middle teens. If you propose 10 to 20 to both sides, however, then our client will have to adjust its thinking a bit, and it will be better prepared to pay what it is going to take to settle the case, whereas at a low of 8, our client is going to think it can settle the case for 8 to 9, which I don't think it realistically can unless we scuttle the mediation and take the issue up with the Court.

Conversely, I would hope that Brian would see a move to 10 to 20 as real movement on our part, which it is, and that it would make him willing to have a second mediation session with us and settle the case. At 20, he would only be 3 million off his last demand, so this wouldn't be a really big move by him, though I am certain he will spot the midpoint here as being 15, which may be lower than he would like (based on your recent conversations with David) but is still a reasonable settlement for him (to say the least).

You should, of course, recommend and do whatever you are most comfortable with, but I wanted to give you Kate and my two cents worth. REDACTED

REDACTED

Best regards.

**From:** Wayne Andersen
**Sent:** Tuesday, April 12, 2016 6:29:19 AM
**To:** Mester, Mark (CH)
**Subject:** Bucs

I suggest that I call Brian and suggest an 8-17 bracket on fees and see what he says. That will hopefully lead to a candid exchange so we can figure out really where he's headed. Is that ok?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| From: | Mester, Mark (CH) <O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
|---|---|
| To: | Wayne Andersen |
| CC: | Lally, Kathleen (CH) |
| Sent: | 4/12/2016 10:44:45 AM |
| Subject: | RE: Bucs |

I think I would actually still throw out the 10 to 20 on fees. If Brian rejects that, then we know exactly where we stand, as the Buccaneers are simply not going to pay more than 20 in fees (and frankly won't pay 20 in fees). I think, however, making the focus of the high-low the size of the common fund versus fees obscures things to a degree, since the focus of our negotiations over the last 6 months has been fees. If Brian says yes to 10 to 20 on fees, then we mediate. If he says no, then we go to the Court. But I don't see how he can be offended by a focus on fees, as that's all we have been talking about for months.

And if Brian tries to push for a higher bracket on fees., I think all you should need to remind him of his the fact his last fee demand was in fact twenty-three million dollars, so agreeing to a high of 20 isn't exactly a giant leap for him.

---

**From:** Wayne Andersen
**Sent:** Tuesday, April 12, 2016 8:34:23 AM
**To:** Mester, Mark (CH)
**Cc:** Lally, Kathleen (CH)
**Subject:** Re: Bucs

I agree with all of this, so I'm inclined to throw out the idea. I'm afraid if I throw it out after a talk with Brian, he'll make the job tougher by demanding higher brackets and may be offended (which would be amazing at several levels) by a direct fee discussion when we know there will be a 25% fee granted. So what if I throw out brackets for a virtual fund of $40-$80 million?
Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com


On Apr 12, 2016, at 9:26 AM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - I was kicking this around with Kate yesterday and this morning, and we wonder whether it wouldn't be better to go to Brian (and the Buccaneers) with a high/low proposal of 10 to 20. That will obviously be a reach for our client, but we tend to think we need our client to adjust its thinking if we are going to settle this case in the context of mediation. And our sense is there is no circumstance in which Brian is going to agree to settle for a number that at least isn't in the low to middle teens. If you propose 10 to 20 to both sides, however, then our client will have to adjust its thinking a bit, and it will be better prepared to pay what it is going to take to settle the case, whereas at a low of 8, our client is going to think it can settle the case for 8 to 9, which I don't think it realistically can unless we scuttle the mediation and take the issue up with the Court.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **Sent:** | 4/12/2016 9:58:10 PM |
| **Subject:** | RE: Bucs fees |

Sure. I will call you at 8:45.

At 300 per claimant, I think we can set the fund at a pretty broad range. At a 5 percent claim in, which is what Brian estimated it at, that is going to set the fund too low to get the fee Brian wants. Which is why I thought it made sense to set a high low for fees. But using 25 percent of the virtual fund as the fee, I guess 10-20 in fees would translate to a high-low for the fund of 40 and 80.

REDACTED

---

**From:** Wayne Andersen
**Sent:** Tuesday, April 12, 2016 6:38:51 PM
**To:** Mester, Mark (CH)
**Subject:** Re: Bucs fees

Sure. I've got mediations the next two days. If you give me a time, I'll try to call. Or text or email when you like to talk. How about 845 central time?
1 Brian has asked that we set fund first. At 300 per claim
What is the virtual fund?

REDACTED

Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844

On Apr 12, 2016, at 8:15 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

On a plane now and landing until late. Could we talk tomorrow morning?

---

**From:** Wayne Andersen
**Sent:** Tuesday, April 12, 2016 6:03:48 PM
**To:** Mester, Mark (CH)
**Subject:** Re: Bucs fees

Please call when you jar able!

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Apr 12, 2016, at 3:49 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Sounds good.

So Brian isn't sure he wants to agree to a $10 million to $20 million high-low? He literally is nuts then. But if that's where he ends up, it will be easy for us.

---

**From:** Wayne Andersen
**Sent:** Tuesday, April 12, 2016 1:47:08 PM
**To:** Mester, Mark (CH)
**Subject:** Re: Bucs fees

I'm debating with Brian so let's talk before you talk to client.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Apr 12, 2016, at 2:50 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - I am trying to schedule a call with the Glazer's for Thursday morning, so I should be able to (hopefully) get back to you on this shortly after that call.

---

**From:** Wayne Andersen
**Sent:** Tuesday, April 12, 2016 11:20:45 AM
**To:** bwanca@andersonwanca.com; Mester, Mark (CH)
**Subject:** Bucs fees

Gentlemen,

I've done research on a variety of comparable settlements, consulted with colleagues at Jams and reflected (frankly for meaningful time during the past few days), and recommend that we negotiate a legal fee somewhere between $10 million and $20 million dollars. For both sides there is risk and certain cost to be foreclosed by resolving this in the immediate future.

Will you agree to negotiate a fee within that range? Please let me know. Call, text or email if you'd like to discuss this.

Judge Wayne Andersen (ret.)

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **CC:** | Lally, Kathleen (CH) |
| **Sent:** | 4/13/2016 7:06:39 PM |
| **Subject:** | RE: Bus offer |

Judge - I will raise this with the Glazer's on our call tomorrow, but it will be a very, very tough sell. You made a very reasonable high-low proposal that required the Glazer's to move a lot more than Brian, but Brian appears to have rejected your proposal out of hand. It's hard to see that as anything other than an indication that Brian isn't even willing to accept a fee of $20 million. And while I know Brian would like to use Capital One as a template, the reality is that was a class of over 16 million, and Brian's reliance on Capital One is only further evidence of how far afield we are.

---

**From:** Wayne Andersen
**Sent:** Wednesday, April 13, 2016 2:39:14 PM
**To:** Mester, Mark (CH)
**Subject:** Bus offer

Mark,

I've called Brian's office and emailed him but we've been unable to talk. I also reviewed much of the chain of emails between us and Dave over the past 6 months.

Brian asked for an offer. I think the simplest is to give him one. We know they are shooting for Capital One ($75) for whatever that's worth but their last demand of about $92 gives one hope that they'd settle for several steps less.

I believe a they'd find an offer of $40 very solid and maybe we'd get a good response.

Wayne

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| **From:** | Wayne Andersen <wra1991@aol.com> |
|---|---|
| **To:** | Mester, Mark (CH) |
| **Sent:** | 4/13/2016 11:57:57 AM |
| **Subject:** | Bucs. |

Brian has asked that you send a term sheet who an offer. If suggested you'd offer the $300 per claim with the virtual fund of $40 million. If your authorized to do it, I'd say just do it. We will learn a lot from his response.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **Sent:** | 4/13/2016 11:59:28 AM |
| **Subject:** | Fwd: More Bucs |

Here's the communication I've had with Wanca

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

Begin forwarded message:

**From:** Brian Wanca <bwanca@andersonwanca.com>
**Date:** April 13, 2016 at 11:25:33 AM CDT
**To:** Wayne Andersen <wra1991@aol.com>
**Cc:** Ross Good <rgood@andersonwanca.com>, "m@mcalaw.net" <m@mcalaw.net>
**Subject: RE: More Bucs**

Mester can send us a term sheet with his " new offer."
Brian J. Wanca
ANDERSON+WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Ph: 847-368-1500
Fax: 847-368-1501

-----Original Message-----
From: Wayne Andersen [mailto:wra1991@aol.com]
Sent: Wednesday, April 13, 2016 11:18 AM
To: Brian Wanca <bwanca@andersonwanca.com>
Subject: More Bucs

Brian,

May I call you today to discuss this? I'm in a mediation and not sure when I will get a break, but we shouldn't need to talk long. I think Mester agreed to your structure in the back and forth with Dave earlier. We also tentatively agreed upon a $300 per claim amount which would set the virtual fund at about $40 million. This is a hefty increase from any past offer. Its the form you want and a substantial amount of money. I'm sure they'll offer that--indeed they move up meaningfully if you give them any encouragement. May we talk today?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **Sent:** | 4/13/2016 4:39:14 PM |
| **Subject:** | Bus offer |

Mark,

I've called Brian's office and emailed him but we've been unable to talk. I also reviewed much of the chain of emails between us and Dave over the past 6 months.

Brian asked for an offer. I think the simplest is to give him one. We know they are shooting for Capital One ($75) for whatever that's worth but their last demand of about $92 gives one hope that they'd settle for several steps less.

I believe a they'd find an offer of $40 very solid and maybe we'd get a good response.

Wayne

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **Sent:** | 4/13/2016 7:40:13 PM |
| **Subject:** | Re: Bus offer |

He just emailed. Says he's not interested in brackets. Says we've talked for 9 months with him getting no formal written offer so he'd like one. I say give him one and let's see what happens. By the way, I predict hell settle for less than 20 in fees.

Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844

On Apr 13, 2016, at 7:22 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Thanks. Appreciate it.

---

**From:** Wayne Andersen
**Sent:** Wednesday, April 13, 2016 5:20:53 PM
**To:** Mester, Mark (CH)
**Subject:** Re: Bus offer

I'll call again in the morning before 9 and let you know if we talk. I've got to get a better handle on him.

Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844

On Apr 13, 2016, at 7:06 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - I will raise this with the Glazer's on our call tomorrow, but it will be a very, very tough sell. You made a very reasonable high-low proposal that required the Glazer's to move a lot more than Brian, but Brian appears to have rejected your proposal out of hand. It's hard to see that as anything other than an indication that Brian isn't even willing to accept a fee of $20 million. And while I know Brian would like to use Capital One as a template, the reality is that was a class of over 16 million, and Brian's reliance on Capital One is only further evidence of how far afield we are.

---

**From:** Wayne Andersen
**Sent:** Wednesday, April 13, 2016 2:39:14 PM
**To:** Mester, Mark (CH)
**Subject:** Bus offer

Mark,

I've called Brian's office and emailed him but we've been unable to talk. I also reviewed much of the chain of emails between us and Dave over the past 6 months.

Brian asked for an offer. I think the simplest is to give him one. We know they are shooting for Capital One ($75) for whatever that's worth but their last demand of about $92 gives one hope that they'd settle for several steps less.

I believe a they'd find an offer of $40 very solid and maybe we'd get a good response.

Wayne

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **CC:** | Lally, Kathleen (CH) |
| **BCC:** | Mester, Mark (CH); 056866_0001 _Tampa Bay Buccaneers_ TCPA Class Litigation_ Email _056866_0001_ |
| **Sent:** | 4/14/2016 12:01:09 PM |
| **Subject:** | RE: Bus offer |
| **Attachments:** | 2016-03-11 M. Mester to Judge Andersen.pdf; 2016-03-11 M. Mester to Judge Andersen1.pdf |

Judge – If Brian really thinks we haven't made a formal written offer, either David and he weren't communicating at all or Brian is just being blissfully ignorant. In fact, we have made <u>several</u> written offers to David and Brian, the most recent one being the one we made on March 11, 2016, a copy of which is attached. In that offer, we proposed a common fund with reversion of $16 million along with a fee of 25% or $4 million. By any standard, I think that is a fair and reasonable offer, and in any other context, that offer would have and should have settled the case.

Best regards.

**Mark S. Mester**
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7623
Fax: +1.312.993.9767
Email: mark.mester@lw.com
http://www.lw.com

**From:** Wayne Andersen [mailto:wra1991@aol.com]
**Sent:** Wednesday, April 13, 2016 7:40 PM
**To:** Mester, Mark (CH)
**Subject:** Re: Bus offer

He just emailed. Says he's not interested in brackets. Says we've talked for 9 months with him getting no formal written offer so he'd like one. I say give him one and let's see what happens. By the way, I predict hell settle for less than 20 in fees.

Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844

On Apr 13, 2016, at 7:22 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Thanks. Appreciate it.

**From:** Wayne Andersen
**Sent:** Wednesday, April 13, 2016 5:20:53 PM
**To:** Mester, Mark (CH)
**Subject:** Re: Bus offer

I'll call again in the morning before 9 and let you know if we talk. I've got to get a better handle on him.

Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844

On Apr 13, 2016, at 7:06 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Judge - I will raise this with the Glazer's on our call tomorrow, but it will be a very, very tough sell. You made a very reasonable high-low proposal that required the Glazer's to move a lot more than Brian, but Brian appears to have rejected your proposal out of hand. It's hard to see that as anything other than an indication that Brian isn't even willing to accept a fee of $20 million. And while I know Brian would like to use Capital One as a template, the reality is that was a class of over 16 million, and Brian's reliance on Capital One is only further evidence of how far afield we are.

---

**From:** Wayne Andersen
**Sent:** Wednesday, April 13, 2016 2:39:14 PM
**To:** Mester, Mark (CH)
**Subject:** Bus offer

Mark,

I've called Brian's office and emailed him but we've been unable to talk. I also reviewed much of the chain of emails between us and Dave over the past 6 months.

Brian asked for an offer. I think the simplest is to give him one. We know they are shooting for Capital One ($75) for whatever that's worth but their last demand of about $92 gives one hope that they'd settle for several steps less.

I believe a they'd find an offer of $40 very solid and maybe we'd get a good response.

Wayne

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

| | |
|---|---|
| **From:** | Mester, Mark (CH) |
| **Sent:** | Friday, March 11, 2016 3:02 PM |
| **To:** | Wayne Andersen |
| **Cc:** | Lally, Kathleen (CH) |
| **Subject:** | Cin-Q v. Bucs -- Settlement Term Sheet |
| **Attachments:** | Cin-Q v. Bucs -- Draft Settlement Term Sheet(7544563_7_NY).DOCX |

Dear Judge Andersen - As promised, please find attached the term sheet requested by opposing counsel. This term sheet memorializes the oral offer I conveyed to you that I understand was previously conveyed to opposing counsel. Please let David know that the principal cause of the delay in getting this to him was my travel schedule, which has been particularly bad of late and for which I apologize.

Our client remains very interested in reaching a resolution of this matter as soon as possible. We, in turn, look forward to hearing back from opposing counsel as soon as possible in the hope we could schedule a second mediation session, at which point we sincerely believe we could reach a final agreement.

Best regards.

**Mark S. Mester**

**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7623
Fax: +1.312.993.9767
Email: mark.mester@lw.com
http://www.lw.com

1

BLPMediation0000733

**Term Sheet For Settlement**

**Cin-Q Automobiles, Inc., et al. v. Buccaneers Limited Partnership,**
**Case No. 8:13-cv-01592 (M.D. Fla.)**

1.  Plaintiffs Cin-Q Automobiles, Inc. and Medical & Chiropractic, Inc. (collectively, "Plaintiffs") and Buccaneers Limited Partnership ("Defendant," and collectively with Plaintiffs, the "Parties") have reached a settlement in principle (subject to the execution and approval of a formal settlement agreement) of the above-captioned case on the terms set forth herein.

2.  The Settlement Class will be defined to address faxes allegedly sent on behalf of the Buccaneers on July 14, 2009 and June 9, 2010 that purportedly did not display the opt-out language required by 47 C.F.R. § 64.1200.  Plaintiffs contend that the Settlement Class consists of approximately 131,000 persons.

3.  Defendant will make available a total of $16,000,000 ("Settlement Fund") to pay (a) claims of members of the Settlement Class, (b) an incentive payment to each of the Plaintiffs, (c) attorneys' fees and expenses to Anderson + Wanca, Addison & Howard, PA and Siprut P.C. (collectively, "Class Counsel") and (d) notice and administration costs. Defendant need not segregate funds or otherwise create special accounts to hold the Settlement Fund.  Defendant will not relinquish control of any money until payments are due.  As described below, if the total amount of claims paid to class members, incentive payments, fees and costs to Class Counsel and notice and administration costs all total less than the amount of the Settlement Fund, any and all remaining monies will revert to Defendant.

4.  The Settlement Fund will be distributed on a "claims-made" basis as follows:

    (a)  <u>Payments to claiming class members</u>.  Defendant agrees to pay timely claims submitted by members of the Settlement Class.  Members of the Settlement Class who submit claims will receive the lesser of (i) $300 each or (ii) in the event that the amounts identified in Paragraph 3 are greater than the Settlement Fund, the pro rata share of members of the Settlement Class in the Settlement Fund after subtracting the payments in Paragraphs (b) through (d).

    (b)  <u>Incentive award to the class representative</u>.  Defendant agrees to pay and will not oppose or appeal a request for an incentive award of $20,000.00 from the Settlement Fund to each of the Plaintiffs for serving as the Class Representatives. The payment of an incentive award does not prohibit Plaintiffs from also filing a claim under the settlement.

    (c)  <u>Fees and expenses to Class Counsel</u>.  Defendant agrees to pay and will not oppose or appeal a request by Class Counsel for attorneys' fees in an amount equal to 25% of the Settlement Fund, plus reasonable out-of-pocket costs, all to be paid out of the Settlement Fund.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                    BLPMediation0000734

(d)     <u>Notice and Administration Costs</u>. Costs for notice and administration will be paid from the Settlement Fund. The Parties will agree to a notice/class administrator and work with that administrator to establish a reasonable notice plan. The notice/class administrator will also receive the claim forms, assist class members in completing and submitting forms and provide a list of accepted and rejected claims to counsel for the parties. Upon request, the administrator will provide copies of all claim forms to counsel for the parties.

5.     Defendant will agree to a permanent injunction enjoining violations of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, <u>et seq</u>. ("TCPA") with respect to advertising faxes with language to be agreed upon.

6.     Plaintiffs and the Settlement Class will broadly release Defendant from claims arising out of or relating to Defendant's advertising faxes during the class period and applicable limitations period. The Settlement Class will not release claims regarding advertising faxes sent after the Class Period.

7.     This term sheet is contingent upon the entry of a mutually-agreeable Settlement Agreement as well as preliminary and final approval of the Court.

**BUCCANEERS LIMITED PARTNERSHIP**

By: _____

Its: _____

Dated: _____

**PLAINTIFF AND THE SETTLEMENT CLASS**

By: _____
        Michael C. Addison
        Brian J. Wanca
        Their Attorneys

Dated: _____

NY\7544563.7  Cin-Q v. Bucs -- Draft Settlement Term Sheet                    **DRAFT** 04-14-2016  11:55  056866-0001

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                    BLPMediation0000735

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **CC:** | Lally, Kathleen (CH) |
| **Sent:** | 4/14/2016 5:08:01 PM |
| **Subject:** | Re: Bus offer |

David called but I'm on a train and couldn't hear him. He's now out of the firm, so I've got to deal with Brian. In any event, please make another offer that I can discuss with Brian. Thanks.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com


On Apr 14, 2016, at 12:01 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge – If Brian really thinks we haven't made a formal written offer, either David and he weren't communicating at all or Brian is just being blissfully ignorant. In fact, we have made several written offers to David and Brian, the most recent one being the one we made on March 11, 2016, a copy of which is attached. In that offer, we proposed a common fund with reversion of $16 million along with a fee of 25% or $4 million. By any standard, I think that is a fair and reasonable offer, and in any other context, that offer would have and should have settled the case.
Best regards,
**Mark S. Mester**
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7623
Fax: +1.312.993.9767
Email: mark.mester@lw.com
http://www.lw.com
**From:** Wayne Andersen [mailto:wra1991@aol.com]
**Sent:** Wednesday, April 13, 2016 7:40 PM
**To:** Mester, Mark (CH)
**Subject:** Re: Bus offer
He just emailed. Says he's not interested in brackets. Says we've talked for 9 months with him getting no formal written offer so he'd like one. I say give him one and let's see what happens. By the way, I predict hell settle for less than 20 in fees.

Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844


On Apr 13, 2016, at 7:22 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Thanks. Appreciate it.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**From:** Wayne Andersen
**Sent:** Wednesday, April 13, 2016 5:20:53 PM
**To:** Mester, Mark (CH)
**Subject:** Re: Bus offer

I'll call again in the morning before 9 and let you know if we talk. I've got to get a better handle on him.

Hon. Wayne Andersen
Mediator & Arbitrator
847.650.6844

On Apr 13, 2016, at 7:06 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - I will raise this with the Glazer's on our call tomorrow, but it will be a very, very tough sell. You made a very reasonable high-low proposal that required the Glazer's to move a lot more than Brian, but Brian appears to have rejected your proposal out of hand. It's hard to see that as anything other than an indication that Brian isn't even willing to accept a fee of $20 million. And while I know Brian would like to use Capital One as a template, the reality is that was a class of over 16 million, and Brian's reliance on Capital One is only further evidence of how far afield we are.

---

**From:** Wayne Andersen
**Sent:** Wednesday, April 13, 2016 2:39:14 PM
**To:** Mester, Mark (CH)
**Subject:** Bus offer

Mark,

I've called Brian's office and emailed him but we've been unable to talk. I also reviewed much of the chain of emails between us and Dave over the past 6 months.

Brian asked for an offer. I think the simplest is to give him one. We know they are shooting for Capital One ($75) for whatever that's worth but their last demand of about $92 gives one hope that they'd settle for several steps less.

I believe a they'd find an offer of $40 very solid and maybe we'd get a good response.

Wayne

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

---



This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

<2016-03-11 M. Mester to Judge Andersen.pdf>
<2016-03-11 M. Mester to Judge Andersen.pdf>

BLPMediation0000752

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **CC:** | Lally, Kathleen (CH) |
| **Sent:** | 4/18/2016 8:10:18 AM |
| **Subject:** | RE: Bucs |

Judge - Thanks. I think the Glazer's have decided to go ahead and file the motion asking the Court for a settlement conference. We have a hearing before the Court on Wednesday on some expert issues, and they felt the timing would be right. If Brian agrees to waive the mediation privilege, however, as I hope he does, then you may be getting a call, at which point I suspect this case would settle fairly quickly. But as always, we may well be back to you.

Best regards.

---

**From:** Wayne Andersen
**Sent:** Monday, April 18, 2016 5:59:24 AM
**To:** Mester, Mark (CH)
**Cc:** Lally, Kathleen (CH)
**Subject:** Bucs

Mark,

Just so you know, I vote for making an offer. Brian will react swiftly, I'm sure, so we'll know if we can converge at a point the Glaziers can stomach pretty soon.

Please advise. I'm in NYC beginning an 8 day arbitration.

Wayne


Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Wayne Andersen <wra1991@aol.com> |
| **To:** | Mester, Mark (CH) |
| **CC:** | Lally, Kathleen (CH) |
| **Sent:** | 4/18/2016 7:59:24 AM |
| **Subject:** | Bucs |

Mark,

Just so you know, I vote for making an offer. Brian will react swiftly, I'm sure, so we'll know if we can converge at a point the Glaziers can stomach pretty soon.

Please advise. I'm in NYC beginning an 8 day arbitration.

Wayne


Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Ryan Kelly <rkelly@andersonwanca.com> |
| **To:** | Lally, Kathleen (CH); Mester, Mark (CH) |
| **CC:** | Michael Addison (M@mcalaw.net); Brian Wanca; Ross Good |
| **Sent:** | 4/18/2016 2:33:45 PM |
| **Subject:** | Cin-Q v. Buccaneers |

Kate,

Thank you for speaking with me today. Plaintiff objects to having Judge Porcelli to conduct any settlement conference. If you would like to discuss other ways to aid the settlement discussions, please give me a call.

Ryan M. Kelly, Esq.
Anderson + Wanca
3701 Algonquin Rd., Suite 500
Rolling Meadows, IL 60008
(847) 368-1500 ph
(847) 368-1501 fax
rkelly@andersonwanca.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| From: | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
|---|---|
| To: | Wayne Andersen |
| CC: | Lally, Kathleen (CH) |
| Sent: | 4/24/2016 1:25:29 PM |
| Subject: | RE: Bucs impasse. |

Judge - This is encouraging. We had our hearing on Wednesday in-person before Judge Porcelli. The motion up was our motion to replace our expert due to health issues, but as expected, the Court asked about our motion for a settlement conference, which we had filed earlier in the week.

In particular, Judge Porcelli asked what he could do that a mediator couldn't do given the impasse. I, in turn, explained to him that the authority he has under Fed. R. Civ. P. 23(g) over class counsel and his fiduciary duty to the class gives him power that mediators (and even you) don't have, especially since we were at an impasse and were stuck on one last issue. Because Wanca's team had not yet agreed to waive the mediation privilege, I didn't want to say more than that, but Judge Porcelli clearly seemed to understand that I was referring to fees. He said that was what he wanted to know and seemed satisfied with my answer. It also seems like he understands fees are the only remaining issue.

At the hearing, Judge Porcelli asked Ryan Kelly and Michael Addison whether they had anything to add regarding the impasse, and they both declined the opportunity to address the Court. In our discussions with them before the hearing, however, Kate and I both had the sense that they didn't disagree with our characterization of the impasse and that to the extent that anyone on their side does, it is Brian and Brian alone.

I take this request from class counsel to mean that they accepted our invitation to them in our motion to waive the mediation privilege, which we already indicated in our motion we would do. That is definitely progress, and I think it is a constructive step on their part. We obviously have no objection whatsoever to you preparing a report to Judge Porcelli indicating that we have reached an impasse. I think it is important, however, that you also indicate what the impasse is over (I.e., fees), as I think that will increase the odds that Judge Porcelli grants the motion. Needless to say, we also would not have any objection at all to you speaking live with Judge Porcelli, and indeed, I think that might be the best way to move the ball forward as much as possible.

For what it's worth, my impression of Judge Porcelli (who I had not been before in person before Wednesday) is that he is trying very hard in this case but that he doesn't have a lot of class experience. He seems very sharp and diligent, however, so I think once he has a better sense of the authority he has under Fed. R. Civ. P. 23(g), he will pretty quickly put two and two together.

Let us know if you would like to discuss this further. I really am encouraged by this development, as I continue to believe a settlement is in everyone's best interests.

Best regards.

---

**From:** Wayne Andersen
**Sent:** Sunday, April 24, 2016 10:29:55 AM
**To:** Mester, Mark (CH)
**Subject:** Bucs impasse.

Opposing counsel has asked Me to prepare a report to submit to the Court indicating that we've reached an impasse. Thoughts?

Hon. Wayne Andersen

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Mediator & Arbitrator
847.650.6844

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **CC:** | Lally, Kathleen (CH) |
| **Sent:** | 4/25/2016 9:57:33 PM |
| **Subject:** | FW: Impasse communication |

Judge - We certainly don't understand why Brian is afraid of full disclosure, but we do think we should get to see a copy of whatever is provided to him. We also think it is important for Judge Porcelli to understand what the issue is over which there is an impasse. If Brian thinks it is important for the Court to know there is an impasse, then it's only fair that the Court also know what the issue is over which there is an impasse.

Happy to discuss at your convenience.

---

**From:** Brian Wanca
**Sent:** Monday, April 25, 2016 12:46:21 PM
**To:** Mester, Mark (CH); wra1991@aol.com; Ross Good; Lally, Kathleen (CH)
**Cc:** m@mcalaw.net; Ryan Kelly
**Subject:** RE: Impasse communication

We would request only that a report be done. we oppose any contact directly with the presiding judge as that was the point in using an outside neutral.

Brian J. Wanca
ANDERSON+WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Ph: 847-368-1500
Fax: 847-368-1501


-----Original Message-----
From: MARK.MESTER@lw.com [mailto:MARK.MESTER@lw.com]
Sent: Monday, April 25, 2016 2:20 PM
To: wra1991@aol.com; Ross Good ; Brian Wanca ; Kathleen.Lally@lw.com
Subject: RE: Impasse communication

Judge - We would certainly have no objection to you contacting the judge directly, which might be the most efficient way to do it.


From: Wayne Andersen
Sent: Monday, April 25, 2016 12:04:37 PM
To: Ross Good; Brian Wanca; Mester, Mark (CH); Lally, Kathleen (CH)
Subject: Impasse communication

All,

Ross has asked me to prepare a report to the court declaring an impasse. Is there a deadline for submitting the report and to whom shall I submit it? Shall I just email all of you for transmission to the court? Shall I contact the judge directly?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

---------------------------------------------------------------------------
This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP
---------------------------------------------------------------------------

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

BLPMediation0000764

| | |
|---|---|
| **From:** | Mester, Mark (CH) </O=LW/OU=CH/CN=RECIPIENTS/CN=MARK MESTER> |
| **To:** | Wayne Andersen |
| **CC:** | Lally, Kathleen (CH) |
| **Sent:** | 4/26/2016 1:38:54 AM |
| **Subject:** | RE: Impasse communication |

Judge - Brian's current reluctance to discuss fees is a very recent development, clearly arising only after he realized he may be painting himself in to a corner. For the past several months, fees have been the only thing we have been discussing. Indeed, David Oppenheim, who obviously was more candid than Brian, had no problem discussing fees for a number of months. Fees are essentially the only thing we have been discussing since it was tentatively agreed in October that the Buccaneers would pay $300 per claimant.

I actually believe the Buccaneers would agree to pay $500 per claimant, though that amount is obviously the most anyone could recover under the statute, which is a bit unusual for a settlement and far, far more than Wanca typically settles for. The problem, however, is the whole concept of a virtual fund. It isn't tethered to anything other than Brian's fee demand. Indeed, the notion of a virtual fund with full reversion is just proxy for fees under every proposal we have received from Plaintiffs' counsel.

If we used what Brian believes claim-in is likely to be (I.e., 5%), the virtual fund at $500 per claimant would be $2,575,000. Even if we doubled that amount and assumed 10% claim-in, we are still right around $5,000,000 for a fund that would fully pay every member of the class who claimed in. And even if we changed the paradigm from per claimant to per fax, we are still at virtual funds of roughly $7.5 million and $15 million (at 5% and 10% claim-in respectively), which is still less than the last common fund offer the Buccaneers made of $16 million. Brian, of course, immediately rejected that offer, because it would have only paid him $4 million in fees. (Notably, Brian pretended in a fairly recent email, when he was trying to act as if he wouldn't discuss fees, that we had never made any complete offer, completely ignoring our $16 million common fund offer and others.)

Brian also rejected offers where the Buccaneers agreed to pay $300 per claimant without putting any limit or cap on it, using a straight claim-in structure versus a common fund or the hokey virtual fund concept. In fact, he wouldn't even tell us what his lodestar was, which would obviously be how fees would be calculated using a typical claim-in structure. But even if we assume 100% claim in at $500 per claimant, we are still at a virtual fund of $52,500,000, which is only a little more than half of Brian's last virtual fund demand, which I think only proves how far afield he is. A $52,500,00 virtual fund would also yield a fee of $13.125, which is also well within the range of high-low fees you most recently proposed to him and he promptly rejected, no doubt believing that was less than he was "entitled" to.

And that's the real point of our motion. The interests of the class have long since taken a back seat to Brian's fee, which is obviously not how things are supposed to work. At this point, Brian has plainly put his own interests ahead of those of the class.

In terms of timing, I don't believe there is going to a hearing on our motion or at least one hasn't been scheduled. Brian's response to our motion, however, is due early next week I believe, though Kate will check me on that.

Best regards.

---

**From:** Wayne Andersen
**Sent:** Monday, April 25, 2016 8:33:15 PM
**To:** Mester, Mark (CH)
**Cc:** Lally, Kathleen (CH)

**Subject:** Re: Impasse communication

While we conclude that the real issue is attorneys fees, he has declined to discuss fees explicitly until we agree on a claim amount and a "virtual" fund with reversion. At $500 per claim what would the virtual fund be?

Let's talk. When are you do in court on the motion?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

On Apr 25, 2016, at 10:57 PM, <MARK.MESTER@lw.com> <MARK.MESTER@lw.com> wrote:

Judge - We certainly don't understand why Brian is afraid of full disclosure, but we do think we should get to see a copy of whatever is provided to him. We also think it is important for Judge Porcelli to understand what the issue is over which there is an impasse. If Brian thinks it is important for the Court to know there is an impasse, then it's only fair that the Court also know what the issue is over which there is an impasse.

Happy to discuss at your convenience.

---

**From:** Brian Wanca
**Sent:** Monday, April 25, 2016 12:46:21 PM
**To:** Mester, Mark (CH); wra1991@aol.com; Ross Good; Lally, Kathleen (CH)
**Cc:** m@mcalaw.net; Ryan Kelly
**Subject:** RE: Impasse communication

We would request only that a report be done. we oppose any contact directly with the presiding judge as that was the point in using an outside neutral.

Brian J. Wanca
ANDERSON+WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Ph: 847-368-1500
Fax: 847-368-1501

-----Original Message-----
From: MARK.MESTER@lw.com [mailto:MARK.MESTER@lw.com]
Sent: Monday, April 25, 2016 2:20 PM
To: wra1991@aol.com; Ross Good <rgood@andersonwanca.com>; Brian Wanca <bwanca@andersonwanca.com>;
Kathleen.Lally@lw.com
Subject: RE: Impasse communication

Judge - We would certainly have no objection to you contacting the judge directly, which might be the most efficient way to do it.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

From: Wayne Andersen
Sent: Monday, April 25, 2016 12:04:37 PM
To: Ross Good; Brian Wanca; Mester, Mark (CH); Lally, Kathleen (CH)
Subject: Impasse communication

All,

Ross has asked me to prepare a report to the court declaring an impasse. Is there a deadline for submitting the report and to whom shall I submit it? Shall I just email all of you for transmission to the court? Shall I contact the judge directly?

Judge Wayne Andersen (ret.)
Mediator & Arbitrator
847.650.6844 mobile

JAMS Chicago
312.655.9191 Brooke Buczkowski
Bbuczkowski@jamsadr.com

---------------------------------------------------------------------------
This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP
---------------------------------------------------------------------------

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Daniel Cohen <danieljaycohen209@gmail.com> |
| **To:** | Mester, Mark (CH) |
| **CC:** | Daniel Cohen; Phil Bock |
| **Sent:** | 5/7/2016 12:52:14 PM |
| **Subject:** | Following Up On Our Telephone Call Yesterday |
| **Attachments:** | Complaint and Exhibits.pdf; MOTION FOR CLASS CERT.pdf |

Mark,

As discussed yesterday, I work with the Bock & Hatch firm in Chicago. Phil Bock is copied on this email.

Copies of the class action complaint and motion for class certification that we filed yesterday in state court in Tampa, Florida are attached for your convenience.

I would like to touch base with you by phone sometime this afternoon to continue our discussion. Are you available?

Dan

--
Daniel J. Cohen
Law Offices of Daniel J. Cohen
P.O. Box 432040
St. Louis, Missouri 63143
Phone: 314.497.6352
Fax: 314.932.1185
Email: danieljaycohen209@gmail.com

CONFIDENTIALITY NOTICE
You are hereby notified that 1) e-mail communication is not a secure method of communication; 2) any e-mail that is sent to you or by you may be copied and held by various computers it passes through as it goes from me to you or vice versa; 3) persons not participating in our communication may intercept our communication by improperly accessing your computer or my computer or even some computer unconnected to either of us which the e-mail passed through. I am communicating to you via e-mail because you have consented to receive communications via this medium. If you change your mind and want future communications to be sent in a different fashion, please let me know at once.

The information contained in this e-mail transmission is legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this transmission is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this transmission is strictly prohibited. If you have received this transmission in error, please call 314.497.6352.

The information contained in this electronic message may be attorney client privileged, confidential and exempt from disclosure under applicable law and is intended only for the use of the individual (s) to whom this electronic message is addressed. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this electronic communication or any attachment thereto is strictly prohibited.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER