# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | | |
|---|---|---|
| CIN-Q AUTOMOBILES, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 8:13-cv-01592-AEP |
| | ) | |
| BUCCANEERS LIMITED | ) | Magistrate Judge Anthony E. Porcelli |
| PARTNERSHIP and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE OF BLP TO
## MOTION FOR A SETTLEMENT CONFERENCE

Defendant Buccaneers Limited Partnership ("BLP") responds as follows to the

November 15, 2019 motion of Intervenors Technology Training Associates, Inc. ("TTA"),

Larry F. Schwanke, D.C. d/b/a Back to Basics Family Chiropractic ("Schwanke"), Barewood

Outlet, Inc., Thomas Savino d/b/a WebRX Pharmacy Palace and RxPalace.com and

Meryman Environmental, Inc. (collectively, "Intervenors") requesting a settlement

conference:

## DISCUSSION

BLP does not oppose the request of Intervenors for a settlement conference before the

Court.  To the contrary, BLP continues to believe that settlement of this and the related cases

very much remains in the best interest of the members of the class, and BLP has, of course,

previously agreed to a settlement that is more generous than the vast majority of settlements

in comparable cases and that we respectfully submit continues to more than meet the

standards for approval under Fed. R. Civ. P. 23(e).  Indeed, settlement is far preferable from

the perspective of the class to all other alternatives, as it would ensure class members have an

opportunity to obtain meaningful relief on a relatively expedited basis without <u>any</u> of the uncertainty or prospective delay that would otherwise result from contested motion practice over the issue of class certification and any trial, not to mention the inevitable appeals.

As courts throughout this circuit have routinely recognized, however, a bird in the hand is almost always preferable to a prospective flock in the bush. <u>See</u>, <u>e.g.</u>, <u>Dorado v. Bank of Am.</u>, 2017 U.S. Dist. LEXIS 219407, at *12 (S.D. Fla. 2017) (approving settlement and noting that "where unnecessary additional costs and delay are likely to be incurred absent a settlement, 'it [is] proper to take the bird in the hand instead of a prospective flock in the bush'") (quoting <u>In re Domestic Air Transp. Antitrust Litig.</u>, 148 F.R.D. 297, 326 (N.D. Ga. 1993)) (alteration in original); <u>Borcea v. Carnival Corp.</u>, 238 F.R.D. 664, 674 (S.D. Fla. 2006) ("The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise" to "the mere possibility of relief in the future, after protracted and extensive litigation. In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'") (quoting <u>In re Shell Oil Refinery</u>, 155 F.R.D. 552, 560 (E.D. La. 1993)) (alteration in original). That is certainly true here, where the litigation has been pending for over six years and where a settlement was already reached that is on par with or substantially exceeds comparable settlements in other class actions brought under the Telephone Consumer Protection Act ("TCPA"). <u>See</u> Order (Dkt. 56), <u>Technology Training Associates, et al. v. BLP</u>, Case No. 8:16-cv-01622-AEP ("<u>TTA</u>"), at 34.

While a good deal of time, energy and judicial resources have been expended of late addressing (directly or indirectly) what has been the focal point of this litigation for some

time, namely the fees to be paid to counsel seeking to represent the class, the actual interests

of class members should, of course, remain paramount at all times.  See Fed R. Civ. P. 23(g)

advisory committee's note to 2003 amendment ("[T]he primary responsibility of class

counsel . . . is to represent the best interests of the class."); see also, e.g., Keim v. ADF

MidAtlantic, 328 F.R.D. 668, 691 (S.D. Fla. 2018) ("The compelling obligation of class

counsel in class action litigation is to the group which makes up the class.  Counsel must be

aware of and motivated by that which is in the maximum best interests of the class

considered as a unit.") (quoting Parker v. Anderson, 667 F.2d 1204, 1210-11 (5th Cir.

1982)).  As the Eleventh Circuit has made clear, however, there is a "strong judicial policy

favoring settlement" of class actions, and absent class members have a clear interest in

receiving, as soon as is feasible, the benefits of a settlement that is fair, reasonable and

adequate.  See, e.g., Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984)

(affirmance of class settlement informed "by realization that compromise is the essence of

settlement"); Burrow v. Forjas Taurus, 2019 WL 4247284, at *9 (S.D. Fla. 2019) (applying

Bennett factors in granting approval of settlement and noting "the Settlement offers a

reasonable amount of relief available to the Settlement Class, and it does so now—thereby

avoiding the risks, costs, and delay inherent in continuing to litigate the Action . . .")

(emphasis supplied).

　　It is especially important, however, for the interests of absent class members to be

safeguarded in circumstances such as this, where substantial evidence exists suggesting that

plaintiffs' counsel have put their own interests ahead of the interests of the class.[1]  See, e.g.,

Water & Sewer Auth. v. 3M Co., 737 Fed. Appx. 457, 464 (11th Cir. 2018) ("'[C]lass actions

are rife with potential conflicts of interest between class counsel and class members . . . [and

district courts must ensure] that class counsel are behaving as honest fiduciaries for the class

as a whole.'") (citations omitted); Demint v. NationsBank, 1998 U.S. Dist. LEXIS 22602, at

*1-2 (M.D. Fla. 1998) ("The inherent conflict arising between class counsel and the class

when counsel seek fees from a common fund is constrained and minimized, if at all, most

often by vigilant 'judicial oversight' on behalf of the class.").

    In this case, the record is clear that Plaintiffs' counsel have adamantly insisted on a

settlement structure that would result in a fee for them of between $20 million and $30

million, even though Plaintiffs' counsel themselves estimated the class would receive less

than $10 million (and likely much less), all in an effort "to set a record" for fees in a TCPA

class action by eclipsing the settlement in Capital One (a settlement for a class of 17.5

---

[1] In its September 30, 2019 Order, the Court concluded (no doubt correctly) that the
adequacy of Plaintiffs' counsel in Cin-Q did not need to be decided in order to address the
motion to strike the class allegations in TTA filed by counsel for Plaintiffs in this case,
namely Cin-Q Automobiles, Inc. and Medical & Chiropractic Clinic, Inc. ("Plaintiffs").  See
Order (TTA Dkt. 169) at 37-38 ("Furthermore, the Court need not address the adequacy of
Cin-Q Plaintiffs or their Counsel nor the viability of a class action in the Cin-Q Action, as
neither issue affects the outcome here.").  And because the focus of the briefing on Plaintiffs'
motion to strike in TTA was not the adequacy of Plaintiffs' counsel in this case, BLP was
necessarily limited in how much attention could be paid to that issue.  See BLP Opp'n to
Mot. to Decertify (TTA Dkt. 148) at 18-19.  The evidence of inadequacy of Plaintiffs'
counsel, however, is substantial, and the evidence that was presented in the last round of
briefing (which itself is only a fraction of the total body of such evidence) was largely
unrebutted by the Wanca firm.  See id. at 3-7 (outlining evidence of the inadequacy of
Plaintiffs' counsel).  But see, e.g., Intervenors' Reply (TTA Dkt. 154-8) at passim
(confirming that the refusal of Plaintiffs' counsel to consider any "virtual fund" below $92
million and their attempts to increase the fund size were inextricably tied to their own fees).

million persons and entities).[2]  See BLP Opp'n to Mot. to Decertify (TTA Dkt. 148) at 3-7

and Exs. A, C thereto.  Lawyers pursuing exorbitant fees, however, obviously should not be

allowed to sidetrack, scuttle or delay a settlement that is in the best interests of the class, and

it is for this reason (among others) that courts have what has been recognized as something

akin to a fiduciary duty toward absent class members.  See, e.g., Fed. R. Civ. P. 23(h)

advisory committee's note to 2003 amendment ("Active judicial involvement in measuring

fee awards is singularly important to the proper operation of the class action process . . . .  In

many instances, the court may need to proceed with care in assessing the value conferred on

class members."); Mahoney v. TT of Pine Ridge, 2017 U.S. Dist. LEXIS 217470, at *12

(S.D. Fla. 2017) (approving settlement and noting "[t]he Court's role in reviewing a

settlement agreement is 'akin to the high duty of care that the law requires of fiduciaries'")

(citation omitted).

     For its part, BLP continues to firmly believe that the Settlement reached in TTA was

more than generous to the members of the class, and that Settlement remains fair, reasonable

---

[2] As noted in earlier submissions, these sorts of settlement structures and outcomes are precisely what has led to criticism of the Wanca firm by an Illinois appellate court reviewing a settlement in a similar TCPA class action.  See First Mercury Ins. Co. v. Nationwide Sec. Servs., 54 N.E.3d 323, 336 (Ill. App. Ct. 2016) ("We observe at the outset that the attorneys' calculation of damages in TCPA class actions is disingenuous . . . .  Class attorneys, however, all too often aim to solidify a fund via the settlement negotiations in order to satisfy their hefty fee petition rather than their fiduciary obligations towards safeguarding class members' interests.").  The Eleventh Circuit has expressed similar concerns, noting "the judicial system and the legal profession are disparaged" by excessive fees in class actions. See, e.g., Piambino v. Bailey, 757 F.2d 1112, 1144 (11th Cir. 1985); see also generally Creative Montessori v. Ashford Gear, 662 F.3d 913, 915-18 (7th Cir. 2011) (describing courts taking the role of clients in monitoring class counsel and noting incentives for class counsel not to "prosecute the case in the interest of the class, of which they are the fiduciaries, . . . [but rather] just in their interest as lawyers who if successful will obtain a share of any judgment or settlement as compensation for their efforts").

and adequate.[3]  See Order (TTA Dkt. 169) (vacating preliminary approval order due to a lack

of adequacy on the part of TTA and Schwanke but making no finding that the Settlement is

not fair, reasonable and adequate).  In fact, the finding of the Court in its March 31, 2017

Order that the terms of the Settlement in TTA were on par with or greatly exceeded the terms

of other comparable TCPA settlements remains as true today as it was when the Court first

issued its opinion.  See Order (TTA Dkt. 56) at 34 ("[T]he Settlement is either on par with or

greatly exceeds prior TCPA settlements, both in the total amount in the Settlement Fund and

in the amount awarded to each class member[.]").[4]

---

[3] Unless otherwise defined, capitalized terms have the meaning ascribed to them in the
Settlement Agreement And Release, which is Exhibit 1 to the Motion for Preliminary
Approval filed in TTA by TTA and Schwanke on June 22, 2016.  See Settlement Agt. (TTA
Dkt. 18-1).

[4] As is evident, this is not a typical TCPA class action in a number of respects, and for
purposes of assessing whether the Settlement is fair, reasonable and adequate, this case
presents far greater risk to the class if the case proceeds than would most TCPA cases.
Whereas liability in typical TCPA cases is fairly cut and dried, such that summary judgment
would often be appropriate on liability, this Court has already determined that BLP's liability
should be decided by the trier of fact, given the "tortured path of lies and deceit" created by
FaxQom and the fact "a rational trier of fact" could "conclude that the violative faxes were
not sent on behalf of BLP but, rather, FaxQom or Datalink--the true sources of the offending
behavior."  See Order & Mem. (Cin-Q Dkt. 167) at 15-16; see also, e.g., Gonzalez v. TCR,
2019 WL 2249941, at *4 (S.D. Fla. 2019) (in approving settlement, noting the "substantial
risk to Plaintiff and the class members if they proceeded to trial").  Accordingly, the case for
settling this litigation is especially compelling from the perspective of the interests of the
class.  See Thorpe v. Walter Inv. Mgmt. Corp., 2016 WL 10518902, at *3 (S.D. Fla. 2016)
(primary factor in assessing a settlement is plaintiffs' likelihood of success at trial).  In turn, a
reasonable discount to address the risk the class in this case would face at trial on liability
alone is 50 percent, which when applied to the TCPA would make a settlement of $250 per
fax (i.e., statutory damages of $500 per occurrence ÷ 2 = $250 ) more than fair, reasonable
and adequate, only highlighting just how generous the Settlement is, particularly since further
discounts would be fully appropriate to address prospective delay as well as other factors.
See generally Reynolds v. Beneficial Nat'l Bank, 288 F.3d 277, 284-85 (7th Cir. 2002)
(addressing net expected value of continued litigation to the class to assess adequacy);
Figueroa v. Sharper Image, 517 F. Supp. 2d 1292, 1326-27 (S.D. Fla. 2007) (assessing net
expected value of continued litigation in applying Bennett factors and citing Reynolds); In re

(continued…)

It is equally true that the terms of the Settlement are substantially <u>more</u> generous than the terms of many other TCPA settlements that received the enthusiastic support of Plaintiffs' counsel in other cases.  <u>See</u> BLP Opp'n to Mot. to Intervene (<u>TTA</u> Dkt. 39) at 13-14 n.13, Ex. 3 (collecting cases involving fax settlements sponsored by the Wanca firm with less favorable terms than the Settlement).  Moreover, intervening events since the terms of the Settlement were reached have only served to make it more generous to the class and to make it more clear that the Settlement itself readily satisfies the requirements of Fed. R. Civ. P. 23(e)(2).[5]

## <u>CONCLUSION</u>

BLP respectfully submits that a settlement conference in this matter before the Court would be beneficial.

Date:  November 18, 2019

Respectfully submitted,

<u>/s/ Mark S. Mester</u>
One of the attorneys for Defendant
Buccaneers Limited Partnership

Joseph H. Varner, III (Bar No. 394904)
HOLLAND & KNIGHT LLP
100 North Tampa Street, Suite 4100
Tampa, Florida 33602-3644
Telephone:  (813) 227-8500
Facsimile:  (813) 229-0134
Email:   joe.varner@hklaw.com

Mark S. Mester (admitted *pro hac vice*)
Kathleen P. Lally (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  mark.mester@lw.com
         kathleen.lally@lw.com

---

BellSouth Corp. ERISA Litig., 2006 WL 8431178, at *6 (N.D. Ga. 2006) (appropriate to discount for value to the class of a settlement now versus resolution through litigation in the distant future).

[5] These intervening developments can and would be addressed at length by BLP in the context of any settlement conference.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 18, 2019, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system.

/s/  Mark S. Mester
One of the attorneys for Defendant
Buccaneers Limited Partnership

Mark S. Mester (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  mark.mester@lw.com