## UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | | |
|---|---|---|
| **CIN-Q AUTOMOBILES, INC., <u>et al.</u>,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 8:13-cv-01592-AEP** |
| | ) | |
| **BUCCANEERS LIMITED** | ) | **Magistrate Judge Anthony E. Porcelli** |
| **PARTNERSHIP and JOHN DOES 1-10,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MOTION TO COMPEL AND INCORPORATED MEMORANDUM
## OF LAW OF DEFENDANT BUCCANEERS LIMITED PARTNERSHIP

Date:  December 5, 2019

Joseph H. Varner, III (Bar No. 394904)
HOLLAND & KNIGHT LLP
100 North Tampa Street, Suite 4100
Tampa, Florida 33602-3644
Telephone:  (813) 227-8500
Facsimile:  (813) 229-0134
Email:   joe.varner@hklaw.com

Mark S. Mester (admitted *pro hac vice*)
Kathleen P. Lally (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  mark.mester@lw.com
          kathleen.lally@lw.com

Counsel for Defendant Buccaneers Limited Partnership

**TABLE OF CONTENTS**

                                                                                                    **Page**

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND .................................................................................3

        A.      The Adequacy Of Plaintiffs And Their Counsel Is Very Much In
                Dispute ......................................................................................................3

        B.      The M&C Case Further Indicates The Inadequacy Of M&C And The
                Wanca Firm...............................................................................................5

                1.      The Wanca Firm Was And Is Fully Funding The M&C Case,
                        Raising Both Ethical And Adequacy Concerns ..................................5

        C.      The Record In M&C Also Contains Considerable Evidence Of The
                Motivations Of M&C And Plaintiffs' Counsel During Settlement
                Negotiations In This Case ..........................................................................7

        D.      BLP Requests Access To The Record In M&C...................................9

III.    CERTIFICATION OF CONFERRAL .....................................................................9

IV.     ARGUMENT ..........................................................................................................10

        A.      The Scope Of Discovery Is Broad ...................................................10

        B.      The Record From M&C Is Highly Relevant And Should Be Made
                Available ..................................................................................................11

                1.      Evidence Of Ethical Violations By Plaintiffs' Counsel Is
                        Relevant To Their Ability To Adequately Represent The
                        Proposed Class ..................................................................................12

                2.      Evidence Of Conduct During The Cin-Q Settlement
                        Negotiations Is Likewise Relevant To The Adequacy Of
                        Plaintiffs And Their Counsel To Represent Intervenors And
                        The Rest Of The Proposed Class ........................................................15

        C.      No Legitimate Obstacles Exist To Providing BLP With Access To The
                Record In M&C .......................................................................................18

V.      CONCLUSION.......................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

A Aventura Chiropractic Care Ctr. v. BB Franchising,
   2015 WL 11051056 (S.D. Fla. 2015) ....................................................... 13

Adkins v. Christie,
   488 F.3d 1324 (11th Cir. 2007) .............................................................. 17

Alhassid v. Bank of Am.,
   307 F.R.D. 684 (S.D. Fla. 2015) ............................................................ 15

Anglin v. Maxim Healthcare Servs.,
   2009 WL 928305 (M.D. Fla. 2009) ........................................................ 11

Bodner v. Oreck Direct,
   2007 WL 1223777 (N.D. Cal. 2007) ....................................................... 14

Gober v. City of Leesburg,
   197 F.R.D. 519 (M.D. Fla. 2000) ........................................................... 18

Hall v. Midland Group,
   2000 WL 1725238 (E.D. Pa. 2000) ........................................................ 12

In re Am. Express Anti-Steering Rules Antitrust Litig.,
   2015 WL 4645240 (E.D.N.Y. 2015) ....................................................... 14

In re Cirrus Logic Sec.,
   155 F.R.D. 654 (N.D. Cal. 1994) ........................................................... 13

In re Disposable Contact Lens Antitrust,
   2015 WL 10818781 (M.D. Fla. 2015) ..................................................... 15

Kaplan v. Pomerantz,
   132 F.R.D. 504 (N.D. Ill. 1990) .......................................................... 6, 12

Kornberg v. Carnival Cruise Lines,
   1985 WL 69 (S.D. Fla. 1985) ........................................................... 12, 14

M&C v. Oppenheim,
   2018 WL 3707836 (M.D. Fla. 2018) ......................................................... 4

Mackay v. Creative Hairdressers,
   2018 WL 7457849 (M.D. Fla. 2018) ....................................................... 19

**Page(s)**

Michelle v. Arctic Zero,
  2013 WL 791145 (S.D. Cal. 2013) ........................................................... 14, 15

Mills v. Foremost Ins.,
  269 F.R.D. 663 (M.D. Fla. 2010) ................................................................... 15

Oppenheimer Fund v. Sanders,
  437 U.S. 340 (1978) ....................................................................................... 11

Palm Beach Golf Ctr.-Boca v. Sarris,
  981 F. Supp. 2d 1239 (S.D. Fla. 2013) ......................................................... 14

Physicians Healthsource v. Allscripts Health Sols.,
  254 F. Supp. 3d 1007 (N.D. Ill. 2017) ........................................................... 13

Promotional Mktg. Insights v. Affiliated Computer Servs.,
  2012 WL 3292888 (D. Minn. 2012) ............................................................... 20

Reliable Money Order v. McKnight Sales,
  704 F.3d 489 (7th Cir. 2013) .................................................................... 13, 14

Savanna Group v. Trynex,
  2013 WL 66181 (N.D. Ill. 2013) .................................................................... 14

Technology Training Assocs. v. Buccaneers Limited P'Ship,
  874 F.3d 692 (11th Cir. 2017) ......................................................... 11, 12, 14

Unlimited Res. v. Deployed Res.,
  2009 WL 212188 (M.D. Fla. 2009) ................................................................ 11

Viveros v. VPP,
  2013 WL 3733388 (W.D. Wis. 2013) ....................................................... 12, 14

Walter v. Palisades Collection,
  2010 WL 308978 (E.D. Pa. 2010) ........................................................... 12, 14

## OTHER AUTHORITIES

U.S. Courts of Appeals Federal Court Management Statistics (Sept. 30, 2019),
  available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na
  _appsumary0930.2019.pdf ................................................................................ 4

**Page(s)**

**RULES**

Fed. R. Civ. P. 23 ................................................................................................ 6, 12, 15

Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment........................................ 15

Fed. R. Civ. P. 26 .................................................................................................... 10

Ill. R. Prof'l Conduct R. 1.8 ......................................................................................... 6

R. Regulating Fla. Bar 4-1.8 ......................................................................................... 6

Defendant Buccaneers Limited Partnership ("BLP"), through its counsel, respectfully moves this Court for an order compelling Plaintiff Medical & Chiropractic Clinic, Inc. ("M&C") to provide on an expedited basis access to the record (including deposition transcripts and written discovery) in Medical & Chiropractic Clinic, Inc. v. Oppenheim, et al., No. 8:16-cv-01477-CEH (M.D. Fla.) ("M&C"), wherein M&C is also a plaintiff.  In support of this motion, BLP states as follows:

## I.    INTRODUCTION

The adequacy of Plaintiffs M&C and Cin-Q Automobiles, Inc. ("Cin-Q") (collectively, "Plaintiffs") and their counsel is now front and center in this case.  Intervenors Technology Training Associates, Inc., Larry F. Schwanke, D.C. d/b/a Back to Basics Family Chiropractic, Barewood Outlet, Inc., Thomas Savino d/b/a WebRX Pharmacy Palace and RxPalace.com and Meryman Environmental, Inc. ("Intervenors") have moved to intervene, challenging the adequacy of Plaintiffs and their counsel to represent the interests of Intervenors as well as the rest of the class.  BLP and Plaintiffs are, in turn, scheduled to respond to that motion on December 6, 2019, and given the ruling of the Eleventh Circuit in Technology Training Assocs., Inc., et al. v. BLP, No. 17-11710 (11th Cir.) (the "TTA Appeal"), we respectfully submit it is clear that Intervenors should be allowed to intervene in this action.

Once intervention has occurred, a motion for appointment of interim class counsel under Fed. R. Civ. P. 23(g) will inevitably be filed by Plaintiffs' counsel and/or Intervenors' counsel, at which point the adequacy of Plaintiffs' counsel will again be front and center and the Court will finally have an opportunity to decide which counsel can and will act in the best

interests of the class.  It is important for the Court, however, to have access to a <u>complete</u> record on adequacy for purposes of the pending motion to intervene as well as the forthcoming motion for appointment of interim class counsel, and ensuring that record is available to the Court is the purpose of this motion.

In spite of what is now before the Court, M&C and its counsel have refused to consent to BLP having access to evidence relevant to the issue of adequacy.  In June of 2016, M&C filed suit against David Oppenheim and Intervenors' counsel at the Bock, Hatch, Lewis, & Oppenheim, LLC law firm ("Bock Hatch"), all in an effort to derail any settlement and prevent Bock Hatch from serving as class counsel in <u>Technology Training Assocs., Inc.,</u> <u>et al. v. BLP</u>, No. 8:16-cv-01622-AEP (M.D. Fla.) ("<u>TTA</u>").  <u>M&C</u>, however, was apparently <u>fully</u> funded by the Wanca firm, such that the Wanca firm may have violated applicable ethics rules, an issue that is presently before the Eleventh Circuit.

Moreover, while Judge Honeywell ultimately granted full summary judgment in favor of Mr. Oppenheim and Bock Hatch in <u>M&C</u>, she did so only after an extensive record was developed in <u>M&C</u> of written and oral evidence, including (in particular) a substantial body of evidence pertaining to the conduct of Plaintiffs' counsel during settlement negotiations in this case.  While M&C, the Wanca firm and Bock Hatch all have access to the record in <u>M&C</u>, BLP does not.

The public filings in <u>M&C</u>, however, indicate that the record in <u>M&C</u> is replete with relevant evidence relating to the funding by the Wanca firm of the <u>M&C</u> action, demands for excessive attorneys' fees by Plaintiffs' counsel in this case, self-dealing and repeated refusals to act in the best interests of Intervenors and the rest of the class.  Because this evidence

speaks directly to whether M&C and Plaintiffs' counsel are adequate to represent Intervenors and the proposed class here, the Court should compel M&C to provide BLP on an expedited basis with access to the record in M&C, so that the issue of adequacy can be promptly decided by the Court.

## II.      FACTUAL BACKGROUND

The factual background pertinent to this motion is set forth below.  See disc. infra at 3-9.

### A.   The Adequacy Of Plaintiffs And Their Counsel Is Very Much In Dispute

The record in this case already establishes that Plaintiffs and their counsel have not acted in the best interests of the class and have instead insisted on settlement structures that would work to the disadvantage of the class, while ensuring an exorbitant fee to Plaintiffs' counsel.  See CinQ+MC000458 (TTA Dkt. 148-2 at 72) (insisting on "fund of about $92M, where [BLP] could expect to pay about $32M," of which $23 million would be attorneys' fees);[1] CinQ+MC000451 (TTA Dkt. 148-2 at 60) (refusing to disclose lodestar of Plaintiffs' counsel); CinQ+MC000482 (TTA Dkt. 148-2 at 90) (refusing to negotiate further unless BLP "put[s] up Capital One money" exceeding $75 million); BLPMediation0000758 (TTA Dkt. 148-2 at 105) (objecting to settlement conference); BLPMediation0000778 (TTA Dkt. 148-2 at 107) (opposing Judge Andersen's request to communicate with the Court regarding the

---

[1] The documents cited in this memorandum as "CinQ+MC____" and "BLPMediation____" are Bates numbered and were previously submitted as exhibits to the Declaration of Kathleen P. Lally filed in support of BLP's opposition to the motion to decertify filed by Plaintiffs in TTA.  See BLP's Opp'n to Mot. to Decertify (TTA Dkt. 148); Lally Decl. (TTA Dkt. 148-2).  Although Ms. Lally's declaration and the exhibits thereto were originally filed under seal (see TTA Dkt. 139), the submission was later unsealed and publicly-filed after Plaintiffs and Intervenors expressed a preference for the public filing of all submissions.  See BLP's Supp. Submission Regarding Sealing of Confidential Documents (TTA Dkt. 149); Feb. 26, 2019 Hr'g Tr. (TTA Dkt. 157); Order (TTA Dkt. 153).

mediation impasse).  Plaintiffs' counsel have likewise made concerted efforts to derail a class settlement that the Court preliminarily found in <u>TTA</u> to be fair, reasonable and adequate and to be "on par with or greatly exceed[ing] prior TCPA settlements" in terms of the benefits conferred to the class.  <u>See</u> Order (<u>TTA</u> Dkt. 56) at 34.  As a result, Intervenors have moved to intervene in this case, taking the position that "their interests are not adequately represented" by Plaintiffs and their counsel.  <u>See</u> Mot. to Intervene (Dkt. 258) at 2.  That motion is now pending before the Court.  <u>See</u> Nov. 19, 2019 Hr'g Tr., Ex. 1 hereto, at 29:24-30:10 (ordering responses filed by December 6, 2019 and reply filed by December 13, 2019).

Intervenors argue in their motion that "Cin-Q's counsel have demonstrated their inadequacy by holding the class(es) hostage to Wanca's quest for record attorney fees through a reversionary, claims-made settlement."  <u>See</u> Mot. to Intervene (Dkt. 258) at 3. Intervenors further state that Plaintiffs' counsel have "attempted to prevent the approval of a fair, reasonable, and adequate class settlement, including by bankrolling . . . one of the Cin-Q plaintiffs [<u>i.e.</u>, M&C] that unsuccessfully sought to enjoin TTA's chosen counsel from representing TTA."[2]  <u>See</u> <u>id.</u> at 2.  And the Court has indicated that the issue of adequacy and the question of who is best suited to represent the class should be decided as soon as possible and preferably before the interests of absent class members are further prejudiced by actions

---

[2] As the Court is aware, Judge Honeywell granted full summary judgment on August 3, 2018 to Mr. Oppenheim and Intervenors' counsel on each of the claims brought by M&C and the Wanca firm, concluding M&C could not establish <u>any</u> element of its several claims.  <u>See</u> M&C v. Oppenheim, 2018 WL 3707836, at *8-15 (M.D. Fla. 2018).  M&C then appealed that decision on September 4, 2018, and oral argument was held before the Eleventh Circuit on August 20, 2019.  <u>See</u> Oral Argument Recording, <u>M&C v. Oppenheim</u>, No. 18-13714 (11th Cir., Aug. 20, 2019), available at http://www.ca11.uscourts.gov/oral-argument-recordings?title=18-13714& field_oar_case_name_value=&field_oral_argument_date_value%5Bvalue%5D%5Byear%5D=&field_oral_argu ment_date_value%5Bvalue%5D%5Bmonth%5D=.  A decision by the Eleventh Circuit is expected soon.  <u>See</u> U.S. Courts of Appeals Federal Court Management Statistics (Sept. 30, 2019), available at https://www. uscourts.gov/sites/default/files/data_tables/fcms_na_appsummary0930.2019.pdf (average time for disposition of appeals in the Eleventh Circuit is 7.7 months).

taken in the interim unilaterally by Plaintiffs' counsel.  <u>See</u> Nov. 19, 2019 Hr'g Tr., Ex. 1 hereto, at 30:15-18; <u>id.</u> at 33:11-14 (indicating intention to "expedite the rulings on this case" vis-à-vis the pending motion to intervene and the selection of class counsel).

### B.   The <u>M&C</u> Case Further Indicates The Inadequacy Of M&C And The Wanca Firm

On June 1, 2016, M&C initiated <u>M&C</u> against Bock Hatch and Mr. Oppenheim.  <u>See</u> Compl. (<u>M&C</u> Dkt. 2).  M&C sought to enjoin Intervenors' counsel from representing any party in connection with the subject matter of this action or engaging in any settlement negotiations with BLP.[3]  <u>See</u> <u>id.</u> at 16.

The public filings in <u>M&C</u>, however, reflect the fact that the record in that litigation is highly relevant to the adequacy of M&C and its counsel in this case for at least two independent reasons: (1) the Wanca firm apparently fully funded <u>M&C</u> on behalf of its client M&C, raising questions about violations of legal ethics and adequacy of representation; and (2) the parties in <u>M&C</u> took extensive discovery regarding the settlement negotiations in this case, which directly relate to whether M&C and its counsel have been proceeding in the best interests of Intervenors and the proposed class.  <u>See</u> disc. <u>infra</u> at 10-18.

### 1.   The Wanca Firm Was And Is Fully Funding The <u>M&C</u> Case, Raising Both Ethical And Adequacy Concerns

In briefing before the Eleventh Circuit, the appellees in <u>M&C</u> cite evidence to support their argument that "Wanca instigated the filing of [<u>M&C</u>], agreeing to pay M&C's attorney

---

[3] Yet another suit was initiated by the Wanca firm against Mr. Oppenheim and perhaps Bock Hatch, <u>viz</u>. <u>Wanca v. Oppenheim</u>, No. 2017CH08373 (Circuit Court of Cook County, Illinois), Ex. 2 hereto.  Materials on the docket of that case do not appear to be publicly available, and accordingly, BLP knows less about the case itself.  But Mr. Good raised the case in his November 25, 2019 letter, and BLP has requested the record from that case as well.  <u>See</u> Nov. 25, 2019 Corresp. fr. R. Good to M. Mester, Ex. 3 hereto; Nov. 30, 2019 Corresp. fr. M. Mester to R. Good, Ex. 4 hereto.

fees and expenses without recourse" and that "[b]ut for Wanca's funding, M&C could not and would not have filed" the action.  See, e.g., Appellees' Br., M&C v. Oppenheim, No. 18-13714 (11th Cir., Mar. 22, 2019), at 27.[4]  Mr. Wanca, in turn, apparently testified in M&C that he is "financing" M&C's pursuit of litigation against Intervenors' counsel in order to prevent any settlement between TTA and BLP.[5]  See id. at 28; see also id. at 28-30.

This evidence standing alone raises serious ethical questions as well as further doubts as to the adequacy of the Wanca firm to represent Intervenors and the rest of the class.[6]  See disc. infra at 12-15. The entirety of the record, however, is not available to BLP or this Court, and thus, BLP cannot fully assess, inter alia, the degree to which the funding by the Wanca firm of M&C further undermines the ability of M&C and the Wanca firm to adequately represent the proposed class here.  See, e.g., Docket Entry, M&C v. Oppenheim, No. 18-

---

[4] A motion to disqualify M&C's counsel in M&C was denied by Magistrate Judge Tuite after Judge Honeywell had granted summary judgment to Bock Hatch and Oppenheim.  See Order (M&C Dkt. 223).  In briefing on that motion, M&C apparently took the position that the Wanca firm had a "unified interest" with M&C and that in fact, the Wanca firm was "M&C's co-client."  See id. at 9.  The question of whether the Wanca firm violated applicable ethical rules in funding M&C, however, was ultimately not reached, as Magistrate Judge Tuite concluded Bock Hatch lacked standing to bring the motion and had waited too long in doing so.  See id. at 20 ("In this case, the Court need not decide if Foley has engaged in the alleged rule violations . . .").

[5] How it can possibly be appropriate or in the best interests of the class for one set of lawyers seeking to represent a class to file suit against a second set of lawyers and to seek to enjoin that second set of lawyers from representing the class is but one of several issues that will need to be addressed in the context of Rule 23(g).  See Fed. R. Civ. P. 23(g)(1)(B) ("In appointing class counsel, the court may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.") (emphasis supplied).  It is even less clear, however, how it can be appropriate or in the best interests of the class for the first set of lawyers to affirmatively take steps to prevent the Court presiding over two competing cases brought on behalf of that class to preside over or have access to the record in the case brought by the first set of lawyers against the second set, and the fact that Plaintiffs and their counsel have concealed and seek to continue to conceal that record is worthy of note.  See Kaplan v. Pomerantz, 132 F.R.D. 504, 511 (N.D. Ill. 1990) (finding counsel inadequate because they "should have made defendants aware of the true facts" and "their comments during the depositions reveal an intent to keep the truth hidden . . .").

[6] Among other things, Rule 4-1.8(e) of the Florida Rules of Professional Conduct specifies that a lawyer is prohibited from providing financial assistance to a client in connection with pending or contemplated litigation (with exceptions not relevant here), and Rule 1.8(e) of the Illinois Rules of Professional Conduct contains a similar prohibition.  See R. Regulating Fla. Bar 4-1.8(e); Ill. R. Prof'l Conduct R. 1.8(e).

13714 (11th Cir., Jan. 22, 2019) (referencing "Sealed Envelope"); Certificate of Readiness of Record on Appeal (M&C Dkt. 239) at 1 (referencing "1 Sealed Volume of Pleadings").

### C.  The Record In M&C Also Contains Considerable Evidence Of The Motivations Of M&C And Plaintiffs' Counsel During Settlement Negotiations In This Case

In initiating M&C, M&C put directly at issue the conduct of M&C and Plaintiffs' counsel during settlement negotiations before Judge Andersen in this case.  See, e.g., Compl. (M&C Dkt. 2) at ¶¶ 17-40 (setting forth allegations relating to settlement negotiations in Cin-Q).  The parties in M&C then apparently developed an extensive record relating to the conduct of Plaintiffs' counsel and M&C in settlement negotiations in this case.  See disc. supra at 5.

The summary judgment briefing outlines a clear dispute among the parties in M&C regarding the conduct during and after settlement negotiations in this case.  See, e.g., M&C's Mot. for Partial Summ. J. (M&C Dkt. 142) at 2, 5-8; M&C's Opp'n to Defs.' Mot. for Summ. J. (M&C Dkt. 149) at 4, 7, 11-12.  In its summary judgment papers in M&C, for example, M&C cited deposition transcripts and documentary evidence in support of its assertion that it "expended a significant amount of time and resources attending mediations and depositions in the Cin-Q Action," that "Oppenheim shared confidential and mediation privileged information with Bock Hatch in a series of emails" and that "Oppenheim disclosed to Bock Hatch that the Cin-Q Action Plaintiffs were seeking a settlement above $75 million." See, e.g., M&C's Statement of Undisputed Material Facts (M&C Dkt. 141) at ¶¶ 8, 31, 32; see also id. at ¶¶ 9-18, 30, 33.

In their redacted opposition brief on summary judgment, the defendants in M&C similarly refer to documents, deposition transcripts and other evidence relating to the

settlement negotiations in this case and M&C's strategy in seeking settlement.  See, e.g.,
Defs.' Mot. for Summ. J. (M&C Dkt. 144) at 4-6, 8, 21.  M&C also "produced certain
documents that the parties identified as containing mediation privilege" and that the Court
ruled could not be clawed back.  See M&C's Opp'n to Defs.' Mot. for Summ. J. (M&C Dkt.
149) at 7; Order (M&C Dkt. 161) at 4 (holding that "allowing Plaintiff to claw back these
documents is fundamentally unfair in the circumstances presented"), affirmed in part and
overruled in part by, Order (M&C Dkt. 220).  While this evidence is clearly relevant to
whether Plaintiffs and their counsel acted in the best interests of the class during settlement
negotiations in this case or whether (as would appear to be the case) Plaintiffs' counsel
instead focused on seeking exorbitant attorneys' fees and "setting a record" for TCPA class
actions, BLP does not have access to the complete record in M&C.  See, e.g., Certificate of
Readiness of Record on Appeal (M&C Dkt. 239) (noting portion of record under seal); see
also Sealed Documents (M&C Dkt. 158); Sealed Documents (M&C Dkt. 159); Sealed
Document (M&C Dkt. 164).

     The parties in M&C similarly set forth their disputed versions of events surrounding
the Cin-Q settlement negotiations in their briefing before the Eleventh Circuit, following
Judge Honeywell's granting of summary judgment to Bock Hatch and Mr. Oppenheim and
her denial of summary judgment to M&C.  See, e.g., Appellant's Br., M&C v. Oppenheim,
No. 18-13714 (11th Cir., Jan. 16, 2019), at 4-8; Appellees' Br., M&C v. Oppenheim, No. 18-
13714 (11th Cir., Mar. 22, 2019), at 11-22, 35-36.  An issue discussed in the appellate
briefing, for example, is whether counsel in this case "demanded excessive attorney fees"
during settlement negotiations in Cin-Q.  See, e.g., Appellees' Br., M&C v. Oppenheim, No.

18-13714 (11th Cir., Mar. 22, 2019), at 12; <u>see also id.</u> at 13.  The entire appellate record, however, is not publicly available, and accordingly, BLP cannot access this evidence nor is it presently available to this Court.[7]  <u>See</u> Docket Entry, <u>M&C v. Oppenheim</u>, No. 18-13714 (11th Cir., Jan. 22, 2019) (referencing "Sealed Envelope"); <u>see also</u> Certificate of Readiness of Record on Appeal (<u>M&C</u> Dkt. 239) at 1.

### D.   BLP Requests Access To The Record In <u>M&C</u>

Shortly after the November 19, 2019 hearing before the Court, BLP requested access to the record in <u>M&C</u>, including deposition transcripts and other materials not available in the public record.  <u>See</u> Nov. 23, 2019 Corresp. fr. M. Mester to R. Good & J. Piper, Ex. 5 hereto.  In keeping with the process utilized in <u>TTA</u>, however, and mindful of the Court's desire to expedite consideration of the pending motion to intervene and appointment of interim class counsel, BLP requested access as soon as possible.  <u>See id.</u>  Plaintiffs and their counsel nonetheless objected to BLP's request and refused to provide access, necessitating the filing of this motion.  <u>See</u> Nov. 25, 2019 Corresp. fr. R. Good to M. Mester, Ex. 3 hereto; Nov. 30, 2019 Corresp. fr. M. Mester to R. Good, Ex. 4 hereto.

### III.   <u>CERTIFICATION OF CONFERRAL</u>

Counsel for BLP have conferred with Plaintiffs' counsel and Intervenors' counsel in a good faith effort to resolve the issues raised by this motion.  <u>See</u> Nov. 23, 2019 Corresp. fr. M. Mester to R. Good & J. Piper, Ex. 5 hereto; Nov. 25, 2019 Corresp. fr. R. Good to M.

---

[7] Had M&C and the Wanca firm consented to Your Honor presiding over <u>M&C</u>, then this Court would obviously be much more familiar with the record in <u>M&C</u> and would be able to view that record in the context of the Court's duties to the class in this case.  <u>See</u> Defs.' Mot. for Transfer of Related Case (<u>M&C</u> Dkt. 16) at 1. But M&C would not consent, and therefore, the record in <u>M&C</u> is largely unavailable at present to this Court as well as BLP.  <u>See</u> Order (<u>M&C</u> Dkt. 21) at 1-2.

Mester, Ex. 3 hereto; Nov. 30, 2019 Corresp. fr. M. Mester to R. Good, Ex. 4 hereto.[8]

Plaintiffs' counsel, however, have refused to provide the requested documents and

information to BLP, although they acknowledge that everything is within the possession,

custody and control of M&C.  See Nov. 25, 2019 Corresp. fr. R. Good to M. Mester, Ex. 3

hereto.[9]

## IV.     ARGUMENT

### A.  The Scope Of Discovery Is Broad

Federal Rule of Civil Procedure 26 provides for discovery of "any nonprivileged

matter that is relevant to any party's claim or defense."  See Fed. R. Civ. P. 26(b)(1).

"Information within this scope of discovery," however, "need not be admissible in evidence

to be discoverable."  See id.  Instead, courts have consistently construed the "relevancy"

standard of Rule 26 "'broadly to encompass any matter that bears on, or that reasonably

could lead to another matter that could bear on any issue that is or may be in the case.'"

---

[8] As noted (see disc. supra at 9), BLP requested the record in M&C from Plaintiffs' counsel and Intervenors' counsel shortly after the November 19, 2019 hearing.  See Nov. 23, 2019 Corresp. fr. M. Mester to R. Good & J. Piper, Ex. 5 hereto.  Had Plaintiffs' counsel not refused to consent to BLP having access to that record, the record presumably could have been made available to BLP before Thanksgiving.  See Nov. 30, 2019 Corresp. fr. M. Mester to R. Good, Ex. 4 hereto, at 1 n.1.  Nevertheless, Plaintiffs' counsel complained of the delay of their own making in their November 25, 2019 response to BLP in which they otherwise objected to BLP having access to the record.  See Nov. 25, 2019 Corresp. fr. R. Good to M. Mester, Ex. 3 hereto.  To minimize delay as much as possible, however, BLP respectfully requests that the parties be required to respond to this motion in seven (7) days (i.e., by December 12, 2019).

[9] During the meet and confer process, Plaintiffs' counsel took the position that they should not be required to produce the record from M&C to BLP, because discovery in Cin-Q on the class issue has closed.  See Nov. 25, 2019 Corresp. fr. R. Good to M. Mester, Ex. 3 hereto, at 1-2.  If M&C or the record in that case had been in existence at the time of the discovery cutoff in this case for purposes of the class issue, then BLP would have clearly requested it.  But inasmuch as the filing of M&C by M&C and the Wanca firm post-dates the close of discovery in Cin-Q by over seven months, BLP can scarcely be faulted for not requesting something that did not exist.  Compare Am. Case Mgmt. Order (Cin-Q Dkt. 190) at 1 ("Class Certification Fact Discovery" cutoff date of October 14, 2015), with Notice of Removal (M&C Dkt. 1) at 1 (complaint filed on June 1, 2016 and removed to the Middle District of Florida on June 8, 2016).

<u>Anglin v. Maxim Healthcare Servs.</u>, 2009 WL 928305, at *2 (M.D. Fla. 2009) (citing <u>Oppenheimer Fund v. Sanders</u>, 437 U.S. 340, 352 (1978)).

The overarching purpose of discovery "is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts." <u>Anglin</u>, 2009 WL 928305, at *2. "When discovery appears relevant on its face, the party resisting the discovery has the burden" of showing why the discovery is not proper. <u>See</u> <u>Unlimited Res. v. Deployed Res.</u>, 2009 WL 212188, at *3 (M.D. Fla. 2009).  As discussed above and below, however, Plaintiffs and their counsel cannot begin to meet that burden. <u>See</u> disc. <u>infra</u> at 18-20.

**B.   The Record From <u>M&C</u> Is Highly Relevant And Should Be Made Available**

The full record in <u>M&C</u> is undeniably relevant to the issues now before the Court (as is the record in the companion case in Cook County, Illinois), and BLP is entitled to access to the record in both cases as is this Court, especially since the issues now before the Court directly impact the interests of absent members of the class and because the <u>M&C</u> case itself obviously consisted of litigation involving the two firms seeking to be appointed as interim class counsel and revolved around the issue of whether either firm was adequate as well as which firm could best represent the interests of the class members. <u>See</u> disc. <u>supra</u> at 5-9. As the Eleventh Circuit recently reiterated in the <u>TTA</u> Appeal, however, the presumption that representation by a plaintiff or counsel is adequate is "weak" in a putative class action. <u>See</u> <u>TTA v. BLP</u>, 874 F.3d 692, 697 (11th Cir. 2017).  That presumption is easily overcome by providing "some evidence" that Plaintiffs and their counsel are not acting in the best interests

of Intervenors and the other members of the class.  <u>See</u> <u>id.</u> (finding the presumption was

rebutted "by pointing to emails" between counsel).

Moreover, Rule 23(g) provides that in appointing interim class counsel, the Court

should "consider any other matter pertinent to counsel's ability to fairly and adequately

represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).  To that end, the Court "may

order potential class counsel to provide information on any subject pertinent to the

appointment." Fed. R. Civ. P. 23(g)(1)(C).  As discussed in detail below, the record in <u>M&C</u>

will provide more than "some evidence" that Plaintiffs and their counsel are not adequate,

and it is plainly "pertinent to [their] appointment." <u>See</u> disc. <u>infra</u> at 12-18.

### 1. Evidence Of Ethical Violations By Plaintiffs' Counsel Is Relevant To Their Ability To Adequately Represent The Proposed Class

Evidence of ethical violations by attorneys who are seeking to act as counsel for a

proposed class is unquestionably relevant to evaluating their adequacy.  <u>See</u>, <u>e.g.</u>, <u>Walter v.</u>

<u>Palisades Collection</u>, 2010 WL 308978, at *10 (E.D. Pa. 2010) ("Prior unethical conduct is a

relevant consideration pursuant to certification under Rule 23(a)(4).") (citing <u>Hall v. Midland</u>

<u>Group</u>, 2000 WL 1725238, at *3 (E.D. Pa. 2000); <u>see</u> <u>also</u> <u>Kornberg v. Carnival Cruise</u>

<u>Lines</u>, 1985 WL 69, at *2 (S.D. Fla. 1985) (noting that a "showing of improper ethical

conduct on the part of plaintiffs' counsel" may render representation inadequate but

decertifying class on other grounds).  "[A] proper respect for ethical duties is obviously

important in representing a class because class members have limited ability to control

counsel's decisions." <u>Viveros v. VPP</u>, 2013 WL 3733388, at *11 (W.D. Wis. 2013); <u>see</u>

<u>also</u>, <u>e.g.</u>, <u>Kaplan</u>, 132 F.R.D. at 504 (granting motion to decertify because, among other

reasons, "plaintiff's counsel was at least a silent accomplice in, and at most encouraged,

plaintiff's false testimony"); <u>Reliable Money Order v. McKnight Sales</u>, 704 F.3d 489, 495 (7th Cir. 2013) ("[M]isconduct by class counsel that creates a serious doubt that counsel will represent the class loyally requires denial of class certification.") (citation omitted).

In this case, there is ample reason to review the record in <u>M&C</u> in order to determine the degree to which the Wanca firm breached applicable ethical obligations in that case.  <u>See</u> disc. <u>supra</u> at 5-7.  Indeed, there is already substantial evidence that the Wanca firm fully funded <u>M&C</u> and that M&C -- its client and also a Plaintiff seeking to represent the class in this case -- was propped up by the Wanca firm and otherwise would not have filed <u>M&C</u>, but for the urging of and funding by the Wanca firm.  <u>See</u>, <u>e.g.</u>, Appellees' Br., <u>M&C v. Oppenheim</u>, No. 18-13714 (11th Cir., Mar. 22, 2019), at 27.[10]  The record in <u>M&C</u> would further suggest that the Wanca firm is funding <u>M&C</u> in order to preserve its ability to seek and obtain an exorbitant fee and without <u>any</u> regard for what is actually in the best interests of Intervenors or the rest of the class.  <u>See id.</u> at 28-30.

This evidence, of course, raises serious concerns as to whether the Wanca firm has violated its ethical duties in pursuit of its claims against BLP.  <u>See</u>, <u>e.g.</u>, Defs' Mot. for Summ. J. (<u>M&C</u> Dkt. 144) at 2, 24-25 (alleging maintenance and champerty by the Wanca firm in funding <u>M&C</u>); Order (<u>M&C</u> Dkt. 156) at 7 (noting argument regarding "alleged self-

---

[10] As such, the record from <u>M&C</u> and the willingness of M&C to allow the Wanca firm to direct the <u>M&C</u> case also directly impacts the adequacy of M&C itself to represent Intervenors and the rest of the class.  <u>See</u>, <u>e.g.</u>, <u>A Aventura Chiropractic Care Ctr. v. BB Franchising</u>, 2015 WL 11051056, at *3 (S.D. Fla. 2015) (noting that class representatives must be "capable of controlling or prosecuting the litigation") (citation and quotations omitted); <u>In re Cirrus Logic Sec.</u>, 155 F.R.D. 654, 659 (N.D. Cal. 1994) (finding proposed class representative inadequate when he "appear[ed] to have ceded control to his lawyers").  Moreover, other courts have found irregularities in parties the Wanca firm sought to have serve as representative parties in TCPA class cases.  <u>See</u>, <u>e.g.</u>, <u>A Aventura Chiropractic</u>, 2015 WL 11051056, at *4-5 (finding plaintiff inadequate, because he had ceded all control of the case to his attorneys); <u>Physicians Healthsource v. Allscripts Health Sols.</u>, 254 F. Supp. 3d 1007, 1023-27 (N.D. Ill. 2017) (denying class certification due to plaintiff's "serious credibility problems" and noting that "[a]t worst, perjury has been committed").

dealing" by the Wanca firm and violation by that firm of Rule 4-1.8(e) of the Florida Rules

of Professional Conduct).  And it would provide more than "some evidence" that Plaintiffs'

counsel are not adequate to represent Intervenors or the proposed class here.  See, e.g.,

Walter, 2010 WL 308978, at *10; TTA, 874 F.3d at 697; see also Kornberg, 1985 WL 69, at

*2; In re Am. Express Anti-Steering Rules Antitrust Litig., 2015 WL 4645240, at *20-21

(E.D.N.Y. 2015) (disqualifying co-lead class counsel).[11]  Indeed, such ethical concerns alone

would readily justify denial of class certification were the Wanca firm allowed to proceed

with its motion for class certification before the appointment of interim class counsel, which

is generally disfavored.  See, e.g., Viveros, 2013 WL 3733388, at *11 (denying class

certification in part, because proposed class counsel had previous reprimands for ethical

violations); Bodner v. Oreck Direct, 2007 WL 1223777, at *2-3 (N.D. Cal. 2007) (denying

class certification where "[i]t is clear from the record that plaintiff's counsel, and not

plaintiff, is the driving force behind this action"); see also, e.g., Michelle v. Arctic Zero, 2013

WL 791145, at *2 (S.D. Cal. 2013) (noting that interim class counsel should be selected

before class certification in various situations -- e.g., overlapping or competing class suits

brought by different sets of lawyers -- to "protect the interests of class members").[12]

---

[11] Indeed, several courts (including the Seventh Circuit) have questioned the ethics of the Wanca firm.  See, e.g., Reliable Money Order, 704 F.3d at 491 (questioning the suitability of the Wanca firm as class counsel and their compliance with applicable rules of professional responsibility for conduct which gave the Seventh Circuit "serious pause."); Palm Beach Golf Ctr.-Boca v. Sarris, 981 F. Supp. 2d 1239, 1257 n.22 (S.D. Fla. 2013) (stating that the solicitation letter of the Wanca firm "most likely violated Florida's attorney ethics rules"); Savanna Group v. Trynex, 2013 WL 66181, at *13-14 (N.D. Ill. 2013) (reserving judgment on the suitability of the Wanca firm as class counsel until that firm could prove the propriety of certain actions).

[12] Relying on the Manual for Litigation, the court in Michelle made clear why the appointment of interim class counsel is important for the protection of the interests of the class before decisions are made regarding moving for class certification or negotiating a settlement:

(continued…)

14

Accordingly, the Court should compel M&C to produce the record in <u>M&C</u>, so that BLP and ultimately the Court can fully evaluate whether Plaintiffs' counsel are adequate to represent Intervenors and the rest of the class.  <u>See</u> disc. <u>supra</u> at 5-7, 11-14.

> ## 2.  Evidence Of Conduct During The <u>Cin-Q</u> Settlement Negotiations Is Likewise Relevant To The Adequacy Of Plaintiffs And Their Counsel To Represent Intervenors And The Rest Of The Proposed Class

Evidence that M&C or the Wanca firm are not acting in the best interests of Intervenors and the rest of the class is also directly relevant to their adequacy to represent the proposed class.  <u>See</u>, <u>e.g.</u>, Fed. R. Civ. P. 23(a)(4) (requiring that "the representative parties will fairly and adequately protect the interests of the class"); <u>see also</u> Fed. R. Civ. P. 23(g)(1)(B) advisory committee's note to 2003 amendment ("[T]he primary responsibility of class counsel . . . is to represent the best interests of the class.").  "[T]he adequacy requirement is designed to ensure that those absentees' interests are protected even in their absence."  <u>Mills v. Foremost Ins.</u>, 269 F.R.D. 663, 672 (M.D. Fla. 2010); <u>see also</u> <u>Alhassid v. Bank of Am.</u>, 307 F.R.D. 684, 699 (S.D. Fla. 2015).

Under the foregoing standard, the record in <u>M&C</u> is clearly relevant to whether Plaintiffs and their counsel are putting their own interests ahead of those of Intervenors and the proposed class.  <u>See</u> disc. <u>supra</u> at 7-9.  The record in <u>M&C</u> appears to contain deposition testimony, documentary evidence and other materials relating to the approach of Plaintiffs'

---

If a number of lawyers compete for class counsel appointment, "designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement."  Manual of Complex Litigation § 21.11.

<u>Michelle</u>, 2013 WL 791145, at *2; <u>see also</u>, <u>e.g.</u>, <u>In re Disposable Contact Lens Antitrust</u>, 2015 WL 10818781, at *1 (M.D. Fla. 2015) ("Selection of interim lead counsel facilitates 'efficiency and economy without jeopardizing fairness to the parties'") (citation omitted).

counsel to the settlement negotiations in Cin-Q and, in particular, whether the approach of

Plaintiffs' counsel was to prevent a fair, reasonable and adequate settlement for the class and

instead insist on settlement structures that would result in precedent-setting attorneys' fees.

See, e.g., M&C's Statement of Undisputed Material Facts (M&C Dkt. 141) at ¶ 32;

Appellees' Br., M&C v. Oppenheim, No. 18-13714 (11th Cir., Mar. 22, 2019), at 12 (stating

that Plaintiffs' counsel "demanded excessive attorney fees" during settlement negotiations in

Cin-Q).

    While there is already ample evidence in the current record that Plaintiffs' counsel are

not adequately representing Intervenors and the proposed class, the continuing relevance of

the record in M&C was clearly explained to this Court in TTA by an attorney at Bock Hatch

with access to the M&C record:

> Judge, these materials were produced . . . in the M&C action.  They are the
> internal documents of -- primarily the internal documents of the Wanca law
> firm relating to their settlement positions, their reaction, and their plans going
> forward with settlement negotiations.  They essentially fill in the pieces of the
> puzzle between the documents that we're going to be obtaining now that were
> actual settlement communications by and between the parties.  And so it
> essentially ends up being the entire puzzle, what was going on in actual
> communications between the plaintiff and the defendant in the Cin-Q action
> and what was leading up to those communications. It ends up leaving no room
> for either correct or incorrect inferences about the actual mediation
> communications, because it provides the information in between.

Aug. 3, 2018 TTA Hr'g Tr., Ex. 6 hereto, at 16:15-17:5.  Although there is already more than

"some evidence" of the inadequacy of Plaintiffs' counsel, the Court should nonetheless order

production of the record in M&C in order to "fill in the pieces of the puzzle" and paint the

"entire" picture.  See id.

16

Indeed, this Court in <u>TTA</u> previously left open the door for production of the <u>M&C</u> record.  In May of 2018, faced with a motion to intervene by Cin-Q and M&C in <u>TTA</u>, the plaintiffs in <u>TTA</u> (Intervenors here) moved to compel settlement communications in <u>Cin-Q</u> and discovery from <u>M&C</u>.  <u>See</u> Mot. to Compel (<u>TTA</u> Dkt. 109) at 2.  Given the context, this Court ordered production in <u>TTA</u> of the <u>Cin-Q</u> documents but not the <u>M&C</u> documents.  <u>See</u> Aug. 3, 2018 <u>TTA</u> Hr'g Tr., Ex. 6 hereto, at 11:17-12:2, 13:24-14:2, 20:3-13.  The procedural history and the reasoning of this Court in <u>TTA</u> at the time, however, directly support production of the <u>M&C</u> record here and now.  <u>See</u> disc. <u>infra</u> at 17-18.

More specifically, the Court rejected the argument made in <u>TTA</u> by Plaintiffs for only a "limited amount of discovery" relating to the <u>Cin-Q</u> settlement negotiations and instead more broadly ordered production of those documents and communications.  <u>See</u> Aug. 3, 2018 <u>TTA</u> Hr'g Tr., Ex. 6 hereto, at 11:17-12:2, 13:24-14:2.  The Court reasoned as follows:

> I do find [the documents] relevant to the Court's inquiry and it's difficult for me to piecemeal [] determine whether one specific document is relevant or not relevant without knowing what's in the documents themselves and that can be simply based upon what's produced in the discovery.

<u>Id.</u> at 11:17-12:2.  Given the relevance of the <u>M&C</u> record here, the Court should now grant production of the entire <u>M&C</u> record for the same reason rather than attempting to undertake a burdensome effort to oversee only a "piecemeal" production.  <u>See id.</u>; <u>see also</u> <u>Adkins v. Christie</u>, 488 F.3d 1324, 1330 (11th Cir. 2007) (information need not be admissible to be discoverable).

Moreover, while the Court did deny in <u>TTA</u> the motion to compel discovery of the record in <u>M&C</u> by the plaintiffs in <u>TTA</u>, it did so for reasons that are inapplicable here and now.  M&C, the Wanca firm and Bock Hatch already had access to the <u>M&C</u> record.  <u>See</u>

17

Aug. 3, 2018 <u>TTA</u> Hr'g Tr., Ex. 6 hereto, at 16:15-16, 18:18-21.  Only BLP did not have

access, and at the time, BLP did not move to compel the <u>M&C</u> record given that the

adequacy of the Wanca firm was not directly at issue in <u>TTA</u>.  <u>See</u> BLP Submission (<u>TTA</u>

Dkt. 108) at 2 (taking no position on motion to compel record in <u>M&C</u>); Order (<u>TTA</u> Dkt.

169) at 37-38 (noting that the pending motions can be decided without "address[ing] the

adequacy of <u>Cin-Q</u> Plaintiffs or their Counsel nor the viability of a class action in the <u>Cin-Q</u>

<u>Action</u>, as neither issue affects the outcome here").  Given BLP's position and the fact that

the issue of adequacy was not before the Court in <u>TTA</u>, the plaintiffs in <u>TTA</u> likewise chose

to not push for a "preemptive production" of the record in <u>M&C</u>.  <u>See</u> Aug. 3, 2018 <u>TTA</u>

Hr'g Tr., Ex. 6 hereto, at 18:18-19:3.  On that basis, the Court denied the motion in <u>TTA</u>, but

importantly, it stated that it would "consider" production of documents from <u>M&C</u> if they are

needed "to make your arguments before the Court."  <u>See id.</u> at 20:6-8.

  That need now exists.  Unlike in <u>TTA</u>, the adequacy of Plaintiffs and their counsel is

now <u>directly</u> before the Court in this case.  <u>See</u>, <u>e.g.</u>, Nov. 19, 2019 Hr'g Tr., Ex. 1 hereto, at

30:15-18.  And because the record in <u>M&C</u> is relevant to whether Plaintiffs and their counsel

have acted in the best interests of Intervenors and the rest of the class, the Court should

compel production of the entire record in <u>M&C</u>, including all oral and written discovery.  <u>See</u>

disc. <u>supra</u> at 15-18.

### C. No Legitimate Obstacles Exist To Providing BLP With Access To The Record In <u>M&C</u>

  M&C will face essentially no burden in providing BLP with access to the record in

<u>M&C</u>, much less an undue burden justifying denial of this motion.  <u>See</u>, <u>e.g.</u>, <u>Gober v. City</u>

<u>of Leesburg</u>, 197 F.R.D. 519, 521 (M.D. Fla. 2000) (granting motion to compel and noting

that "[t]he party resisting production of information bears the burden of establishing lack of relevancy or undue burden in supplying the requested information").  M&C was obviously a plaintiff and party in M&C and has admitted as recently as November 25, 2019 that the record in M&C is in its possession, custody and/or control.  See Nov. 25, 2019 Corresp. fr. R. Good to M. Mester, Ex. 3 hereto, at 1 (acknowledging that M&C's attorneys in M&C "have the 'full record'" from that lawsuit).  This, of course, makes sense, given that the M&C case remains pending before the Eleventh Circuit.  See M&C v. Oppenheim, No. 18-13714 (11th Cir.).  Thus, beyond a simple file transfer, M&C would face no burden in providing BLP with access to the record in M&C.  See, e.g., Mackay v. Creative Hairdressers, 2018 WL 7457849, at *1-2 (M.D. Fla. 2018) (denying motion for protective order against subpoena seeking discovery materials in related lawsuit, because there was no undue burden and the documents were already in the party's possession).

Moreover, while some of the documents may have been produced as confidential and subject to a confidentiality order, that order certainly does not prevent this Court from directing a party before this Court to provide access to BLP, and BLP has already indicated to Plaintiffs' counsel that it is willing to fully abide by the terms of the existing confidentiality order.  See Agreed Confidentiality and Protective Order (M&C Dkt. 74-1) at ¶ 2.  The confidentiality order makes clear that it "shall not be construed or presented as a judicial determination that any document or material designated Confidential Information by counsel or the parties is entitled to protection . . ."  See id. at ¶ 16.  It also contemplates that documents marked as confidential may need to be produced in other litigation.  See id. at ¶ 12.  And regardless, a document's confidentiality obviously does not immunize it from

19

discovery under Rule 26.  See, e.g., Promotional Mktg. Insights v. Affiliated Computer Servs., 2012 WL 3292888, at *1 (D. Minn. 2012) ("[T]he confidentiality of [the requested] documents is protected not by denying access to them, but by entering a protective order to cover them.").  BLP will, however, treat the M&C record as confidential and is willing to receive it on an Attorneys' Eyes Only basis, as it already represented to M&C, Plaintiffs' counsel and Intervenors' counsel.  See Nov. 23, 2019 Corresp. fr. M. Mester to R. Good & J. Piper, Ex. 5 hereto.

## V.     CONCLUSION

BLP respectfully requests that this Court require Plaintiffs and their counsel to respond to this motion within seven (7) days and that the Court then enter an order compelling Plaintiff M&C to provide BLP on an expedited basis with access to the record in Medical & Chiropractic Clinic, Inc. v. Oppenheim, et al., No. 8:16-cv-01477-CEH (M.D. Fla.), and to direct Plaintiffs' counsel to provide access to the record in Wanca v. Oppenheim, No. 2017CH08373 (Circuit Court of Cook County, Illinois, County Department, Chancery Division), including but not limited to deposition transcripts and other written discovery in both matters.  BLP further requests such other relief as the Court deems appropriate.

Date:  December 5, 2019                    Respectfully submitted,


                                           /s/ Mark S. Mester
                                           One of the attorneys for Defendant
                                           Buccaneers Limited Partnership

Joseph H. Varner, III (Bar No. 394904)
HOLLAND & KNIGHT LLP
100 North Tampa Street, Suite 4100
Tampa, Florida 33602-3644
Telephone:  (813) 227-8500
Facsimile:  (813) 229-0134
Email:   joe.varner@hklaw.com

Mark S. Mester (admitted *pro hac vice*)
Kathleen P. Lally (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:   mark.mester@lw.com
               kathleen.lally@lw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 5, 2019, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system.  I further certify that I mailed the foregoing

document and the notice of electronic filing by first-class mail to the following non-CM/ECF

participants:

> FaxQom, a corporation
> 15596 Highway 105, Apt. 104
> Conroe, Texas 77303
>
> Michael Wayne Clement
> 15596 Highway 105, Apt. 104
> Conroe, Texas 77303
>
> Gregg M. Barbakoff
> c/o Keogh Law, Ltd.
> 55 West Monroe Street, Suite 3390
> Chicago, Illinois 60603

> /s/  Mark S. Mester
> One of the attorneys for Defendant
> Buccaneers Limited Partnership
>
> Mark S. Mester (admitted *pro hac vice*)
> LATHAM & WATKINS LLP
> 330 North Wabash Avenue, Suite 2800
> Chicago, Illinois 60611
> Telephone:  (312) 876-7700
> Facsimile:  (312) 993-9767
> E-mail:  mark.mester@lw.com