IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

CIN-Q AUTOMOBILES, INC., et al.,          )
                                          )
            Plaintiffs,                   )   No. 8:13-cv-1592-17 AEP
                                          )
      v.                                  )
                                          )   Mag. Judge Anthony E. Porcelli
BUCCANEERS LIMITED PARTNERSHIP,           )
                                          )
            Defendant.                    )

**INTERVENORS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO INTERVENE**

Technology Training Associates, Inc., Larry F. Schwanke, D.C., d/b/a Back to Basics Family Chiropractic (collectively "TTA Intervenors"), Barewood Outlet, Inc., Thomas Savino d/b/a WebRX Pharmacy Palace and RxPalace.com, and Meryman Environmental, Inc. (collectively "New Intervenors") (collectively with TTA Intervenors ("Intervenors"), on behalf of themselves and all others similarly situated, file this reply memorandum in support of their motion to intervene either as a matter of right or by permission of the Court (ECF 258).

## I.    The intervention motion was timely.

Cin-Q Plaintiffs argue Intervenors' motion is untimely under both Rule 24(a)(2) and 24(b)(1). ECF 266 at 5-10, 14-15. As the Cin-Q Plaintiffs acknowledge, the timeliness of intervention is determined based on "a four-factor test":

> (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is

denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. [ECF 266 at 5 (citing *Campbell v. Hall-Mark Electronics Corp.,* 808 F.2d 775, 777 (11th Cir. 1987)).]

In the Rule 24 context, "'timeliness' is not a word of exactitude or of precisely measurable dimensions." *Walker v. Jim Dandy Co.,* 747 F.2d 1360, 1366 (11th Cir. 1984) (quoting *McDonald v. E.J. Lavino Co.,* 430 F.2d 1065, 1074 (5th Cir. 1970)). As a result, timeliness is "largely committed to the discretion of the district court." *Campbell,* 808 F.2d at 777. In assessing timeliness, the "court cannot impute knowledge that a person's interests are at stake from mere knowledge that an action is pending, 'without appreciation of the potential adverse effect an adjudication of that action might have on one's interests....'" *Id.* (quoting *United States v. Jefferson Co.,* 720 F.2d 1511, 1516 (11th Cir. 1983)). "The crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Smith v. Marsh,* 194 F.3d 1045, 1052 (9th Cir. 1999). Thus, a proposed consent decree or settlement that could adversely impact the intervenors' rights can make an intervention timely, even though the intervenors had prior knowledge of the lawsuit. *Id.; accord Howard v. McLucas,* 782 F.2d 956, 959-60 (11th Cir. 1986) (although employee intervenors had knowledge of pending class action, it was only when a proposed consent decree was announced that intervenors had knowledge of potential adverse impact); *see also Florida ex rel. Butterworth v. Jones Chems., Inc.,* 148 F.R.D.

282, 286 (M.D. Fla. 1993) (quoting *Stallworth v. Monsanto Co.,* 558 F.2d 257, 263 (5th Cir. 1977) ("Timeliness is to be determined from all the circumstances").[1]

> **A.    Intervenors sought to intervene promptly after learning intervention was necessary to protect their interests, so their motion was timely filed.**
>
> > **1.    The New Intervenors sought to intervene promptly after learning of this case, so their motion was timely filed.**

The motion to intervene is timely under well-established Eleventh Circuit case law. First, Cin-Q offers no evidence that the New Intervenors had any knowledge of this case before they intervened. No class has been certified and no notice has been sent, so there is no basis to infer they had knowledge or notice. For this reason alone, and governed by the case law in the preceding paragraph, Cin-Q's timeliness argument fails with respect to the New Intervenors.

Instead, Cin-Q argues that a lawyer's knowledge of a pending case can be imputed to his client, but the cases Cin-Q cites involved imputation of a lawyer's knowledge *while* representing the client. ECF 266 (citing *United states ex real. Burr v. Blue Cross & Blue Shield of Fla., Inc.*, 153 F.R.D. 172, 175 (M.D. Fla. 1994), and *FMC Corp. v. Keizer Equipment Co.*, 433 F.2d 654 (6th Cir. 1970)). The New Intervenors did not engage the Bock Law Firm until shortly before they moved to

---

[1]    The Cin-Q Plaintiffs take issue with the Intervenors' quotation from a dissenting opinion by Justice Brennan in *NAACP v. New York*, 413 U.S. 345, 374 (1973) (Brennan, J., dissenting). However, the quoted language is an accurate description of the relevant law, and is in fact consistent with the well-settled timeliness rule discussed by the Eleventh Circuit in *Jefferson Co.* and *Howard,* and reiterated earlier this year in *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC,* 918 F.3d 1161, 1171 (11th Cir. Mar. 18, 2019) ("Mere knowledge that an action is pending, without appreciation of the potential adverse effect an adjudication of that action may have on one's interests, does not preclude intervention.").

intervene. The cases the Cin-Q Plaintiffs cite do not show that a lawyer's knowledge of past events can be imputed to a new client to make that client's motion for intervention untimely, and it would be manifestly unjust to do so. By this reasoning a putative intervenor's motion would be untimely if she chose one lawyer but timely if she chose another. Such a result would be unsound, and should not govern the New Intervenors' motion.

> ### 2.    The TTA Intervenors sought to intervene promptly after the Court ruled they could not proceed with their class claims in *TTA*, so their motion was timely filed.

The motion is also timely with respect to the TTA Intervenors because it was filed soon after the Court ruled in the *TTA* action that the TTA Intervenors could not pursue their proposed class settlement in that action; thus, they would need to intervene in this action to do so. *Technology Training Assocs., Inc. v. Buccaneers Limited* Partnership, No. 8:16-cv-1622-T-AEP (M.D. Fla. Sept. 30, 2019) ("*TTA*"), ECF No. 169, p. 37. In fact, the Court stayed this action on June 27, 2016, to allow consideration of the proposed settlement in the *TTA* action. ECF 242. Cin-Q Plaintiffs did not appeal the stay, but intervened in the *TTA* action instead. There would have been no utility to moving to intervene in this stayed action before the Court's resolution of whether the proposed class settlement could go forward in the *TTA* action and lifted the stay in this case.

The timeliness requirement is relaxed where, as here, the intervenors are putative class members who seek to intervene as of right. "Members of a class should have a right to intervene if their interests are not adequately represented by existing parties." *Standard Fire Ins. Co. v. Knowles,* 568 U.S. 588, 594 (2013); *see also* Fed. R.

4

Civ. P. 24 advisory committee's note to 1966 amendment (members of a putative class "'should, as a general rule, be allowed to intervene in the action,' unless the current parties adequately represent them."). "Where, as here, intervention as a matter of right is sought, courts have been more liberal in exercising their discretion over the timeliness requirement." *United States v. Int'l Business Machines Corp.,* 62 F. Supp. 530, 541 (S.D.N.Y. 1974) (citing *McDonald v. E. J. Lavino Co.,* 430 F.2d 1065, 1073 (5th Cir. 1970)).

In the class action context, a critical factor is whether intervention is sought before class certification has been ruled on or adequacy of the existing class representative and their counsel has been decided. *See Dyer v. Publix Super Mkts, Inc.,* No. 8:98-cv-2507-T-25B, 2000 U.S. Dist. LEXIS 7981 at *4 (M.D. Fla. Apr. 13, 2000) (intervention untimely *after* class certification denied). Indeed, a sister District Court has held that in the class action context a motion to intervene is timely if it is brought "with reasonable promptness once it became apparent that the class representatives may have difficulty satisfying the requirements of Rule 23." *Fla. Pediatric Soc'y v. Sec'y of the Fla. Agency for Health Care Admin.,* No. 05-23037-CIV-JORDAN/MCALILEY, 2008 U.S. Dist. LEXIS 110692 at *14-15 (S.D. Fla. Jul. 30, 2008) (motion filed "on same day the Court allowed six individuals to withdraw as potential class representatives, and four months after the defendants first challenged the sufficiency of class representation); *cf. Munoz v. PHH Corp.,* No. 1:08-cv-0759-AWI-BAM, 2013 U.S. Dist. LEXIS 106004 (E.D. Cal. July 29, 2013) (intervention timely where class certification had not been decided).

Tellingly, the cases the Cin-Q Plaintiffs cite in opposition all involved attempts to intervene on the eve of an action's resolution. ECF 266, pp. 7-10 (citing *Campbell v. Hall-Mark Electronic Corp.*, 808 F.2d 775 (11th Cir. 1987) (after class settlement proposed); *FMC Corp. v. Keizer Equipment Co.*, 433 F.2d 654 (6th Cir. 1970) (during trial); *Lindblom v. Santander Consumer USA, Inc.*, No. 1:15-cv-00990-BAM, 2018 U.S. Dist. LEXIS 109384 (E.D. Cal. June 29, 2019) (after denial of class certification); *In re Sonus Network, Inc. Sec. Litig*, 229 F.R.D. 339 (D. Mass. 2005) (after class certification and after an express deadline for intervention by absent class members); *United States ex rel. Burr v. Blue Cross & Blue Shield*, 153 F.R.D. 172 (M.D. Fla. 1994) (after class settlement proposed). In contrast, this case has been stayed since 2016, class certification has not been briefed or resolved, and final resolution is years away. ECF 242.

**B.    The Cin-Q Plaintiffs will not be prejudiced by intervention.**

The Cin-Q Plaintiffs contend that they will be prejudiced if intervention is granted because intervention will supposedly delay resolution of their class certification motion.[2] ECF 266 at 8. However, the Cin-Q Plaintiffs have stated that they intend to file a new motion for class certification and the Court has indicated that it will proceed with briefing on class certification (at least as to adequacy) as

---

[2]    The Cin-Q Plaintiffs raise a specter that additional discovery would be required if intervention is allowed. ECF 266 at 17. Intervenors do not seek discovery. The only contemplated discovery is the deposition of Plaintiffs' expert by BLP and of BLP's anticipated rebuttal expert, all of which presumably will be necessary in any event.

soon as the intervention motion is decided. ECF 266-3, p. 31 (Tr. 12-6-19, p. 30).[3]

The Cin-Q Plaintiffs also complain this case was delayed by the TTA Intervenors' filing of the *TTA* action, but the Cin-Q Plaintiffs themselves caused these delays by their scorched earth campaign to prevent the class from being given a chance even to consider the merits of the 2016 class settlement proposed in the *TTA* action. Had the Cin-Q Plaintiffs been willing to allow that settlement to be considered by the entire class on its merits, rather than opposing its presentation to the class on procedural grounds, the process would have taken no more than several months rather than three and a half years.

### C.   Intervenors will be prejudiced if intervention is not allowed.

While there is no material prejudice to the Cin-Q Plaintiffs if intervention is allowed, even if there were, it would have to be weighed against the substantial prejudice to the Intervenors if their motion is denied. *Jim Dandy Co.,* 747 F.2d at 1366. The Cin-Q Plaintiffs argue Intervenors have no right to pursue a separate class action because the statute of limitations has run. ECF 266 (citing *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018)). They then conclude that because Intervenors can still pursue individual actions there is no prejudice to them if they are excluded from this putative class action. ECF 266, p. 9. The Cin-Q Plaintiffs' argument is directly contrary to the Eleventh Circuit's decision in their favor in

---

[3]   The Cin-Q Plaintiffs' zeal to roll the dice on class certification and trial, when BLP has already agreed to a settlement that can provide all class members with an opportunity to claim substantial relief now, casts doubt on whether their preferred course of conduct is in the best interest of the class.

*Technology Training Assocs. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 696 (11th Cir. 2017) ("*TTA*"). As *TTA* recognized, if absent class members' Rule 23 protections allowing them to pursue their own case, request exclusion, or object to a proposed class settlement precluded them from intervening, they could never intervene:

> But under that logic class members could never intervene in a class action because they would always have recourse to Rule 23 procedural protections and would therefore always fail to satisfy the third prong. Such a conclusion cannot be squared with the Supreme Court's recognition that "[m]embers of a class have a right to intervene if their interests are not adequately represented by existing parties." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594 (2013) (quoting 5 Alba Conte & Herbert Newberg, Newberg on Class Actions § 16:7, at 154 (4th ed. 2002)). And the district court's conclusion conflicts with the advisory committee note to the 1966 amendment to Rule 24 (the last substantive amendment to Rule 24(a)(2)), which explained that a class member "should, as a general rule, be entitled to intervene in the action," unless the current parties adequately represent him. Fed. R. Civ. P. 24 advisory committee's note to the 1966 amend. [*Id.* at 696.]

In other words, the Cin-Q Plaintiffs' argument is directly contrary to the argument they successfully made on their appeal from this Court's order denying their motion to intervene in *TTA.* As *TTA* held, if Intervenors are not allowed to intervene in this action, their personal interest in their claims against Defendants ("BLP") will be prejudiced, regardless of whether they have any interest in being class representatives. The Cin-Q Plaintiffs also assert that the New Intervenors "have no 'waiver' from BLP" concerning the statute of limitations. ECF 266, p. 9. This is wrong because this Court has repeatedly interpreted BLP's statute of limitations waiver as a class-wide waiver. *TTA,* ECF 169 at 27 ("Here, BLP unequivocally waived the state of limitations defense as to TTA Plaintiff and all other class members"); ECF 56 at 19 ("BLP waives any argument that Plaintiffs' claims and the claims of any class

members are barred based on statute of limitations"). But, in any event, this is irrelevant, because if the New Intervenors are allowed to intervene in this action, which was filed on June 18, 2013, BLP will have no statute of limitations defense against the New Intervenors in this action. This is simply another reason Intervenors would be prejudiced if their motion is denied.

### D.    Under the unusual circumstances of this case, intervention is especially appropriate to ensure the class is properly represented.

Finally, the Cin-Q Plaintiffs argue their filing of this case in 2013 and their work on it prior to the 2016 stay is an "unusual circumstance" justifying denial of intervention. ECF 266 at 10. In essence, the Cin-Q Plaintiffs argue this is their class action and they have the right to pursue it as they please regardless of the absent class members' interests, all because they filed it first and the statute of limitations has now run precluding any competing class actions against BLP. ECF 266, pp. 9-10 (citing *China Agritech,* 138 S. Ct. at 1804). The Cin-Q's Plaintiffs' argument is untenable in light of the Eleventh Circuit's decision in *TTA*. The absent class members, including Intervenors, should not be condemned to having the fate of their claims determined by the Cin-Q Plaintiffs' counsel. This is in fact an "unusual circumstance" that supports intervention in this case.

## II.    Intervenors have sufficiently demonstrated the Rule 24 inadequacy of Cin-Q Plaintiffs and their counsel to support intervention.

Under Rule 24, Intervenors have a "minimal burden" to show "the mere existence of colorable adequacy issues," *i.e.,* that the Cin-Q Plaintiffs' ability to represent Intervenors' interests "'may be' inadequate." *Ruderman v. Wash. Nat'l Ins. Co.,* 263 F.R.D. 670, 677 (S.D. Fla. 2010), citing *Chiles v. Thornburgh*, 865 F.2d 1197,

1215 (11th Cir. 1989) (intervention "should be allowed ... unless it is clear that [the existing party] will provide adequate representation") (quoting 7C C. Wright, A Miller, & M. Kane, *Fed. Practice and Procedure* § 1909, at 319 (2d ed. 1986)). The Intervenors' burden is merely to come forward with "some evidence" of inadequacy. *Tech. Training,* 874 F.3d at 697 (quoting *Clark v. Putnam County,* 168 F.3d 458, 461 (11th Cir. 1999)).

Ignoring this minimal burden, the Cin-Q Plaintiffs focus on their handling of settlement negotiations to try to show their strategy was superior to the TTA Intervenors' strategy that resulted in the proposed class settlement in *TTA*. ECF 266, pp. 12-14. Regardless of which strategy might be superior, the desire to pursue one is adverse to the desire to pursue the other. Consequently, as *TTA* concluded, this makes the interests of those advocating for one settlement approach adverse to those pursuing the other. 874 F.3d at 697-698; *see also Chiles*, 865 F.2d at 1215 ("The fact that the interests are similar does not mean that approaches to litigation will be the same."). Thus, the Cin-Q Plaintiffs are no more adequate to represent Intervenors in this action than the TTA Intervenors were to represent the Cin-Q Plaintiffs in *TTA*. *Id.* Furthermore, the question for the class is which approach is actually better, but denying intervention simply prevents the class from ever being allowed to consider that question on the merits. Reasonable class members could prefer to take hundreds of dollars today to the risk of getting nothing by denial of class certification or defeat on the merits in a quest to take a bit more money someday in the future.

Furthermore, the Cin-Q Plaintiffs also ignore the many other ways in which

they are acting contrary to the interests of the Intervenors, such as bankrolling a meritless lawsuit against Intervenors' counsel as an end run around the *TTA* settlement approval process. Even in their new brief, the Cin-Q Plaintiffs seek to strip the New Intervenors of their right to bring class claims, arguing that they (and by implication the right of every other class member that might seek class representative status) have no ability to serve as class representatives here. *E.g.*, ECF 266 at 15-17.

In addition, the Court has recognized that there is a colorable issue as to the Cin-Q Plaintiffs' adequacy under Rule 23. ECF 266-3 (Nov. 19, 2019 Hearing) ("[Court:] I see the adequacy of class counsel being probably the largest issue that's remaining in the matter before we can get this case going again"). The Court should not attempt to resolve the adequacy issue on this intervention motion. It can be addressed and resolved properly only if intervention is allowed. *See Ibid.* Intervenors have a right to be heard on that issue and should be allowed to intervene.

In any event, the Cin-Q Plaintiffs' description of their conduct is misleading at best. First, they do not actually deny that they were holding out for a larger reversionary settlement fund that would support much larger fees. Instead, they argue: (1) they never agreed to $300 per fax and always demanded the statutory maximum of $500; (2) no one can ever know what the claims rate will be; and (3) their refusal to accept anything less than a reversionary fund large enough to support an award of fees in excess of $20 million was consistent with *Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 770 (11th Cir. 1991). None of these points holds water.

11

First, while $500 per fax might be better than $300 per fax, class members might very well prefer $300 per fax now, without delay or the risk of further litigation. It is simply impossible to believe that the Cin-Q Plaintiffs genuinely considered getting the class $200 more per fax more important to them than the difference between a claims-made, reversionary common fund nominally valued at $92 million supporting fees of over $20 million and a fund of only $20 million which could still pay all likely claims at $500 per fax but only $5 million in attorney fees. This is particularly obvious given that Cin-Q's counsel has settled countless TCPA fax class actions for much less than $500 per fax. *See TTA*, ECF 141-15 at 29-30 of 39.

Next, the Cin-Q Plaintiffs' assertion that the claims rate is unknowable, while literally correct, is totally disingenuous. Everyone involved in this case and the *TTA* case, including Cin-Q Plaintiffs' counsel, has ample experience settling TCPA fax class actions, and everyone knows the claims rates are routinely less than 10%. *See*, *e.g.*, *TTA* ECF 154-4 (R. Good Declaration, ¶¶ 2-4, Ex. B); *Cin-Q* ECF 258-3 at 31, 37 of 74 (Cin-Q's counsel representing that the claims rate would likely be 5%). Moreover, it is a simple matter of arithmetic that just over $13 million can pay out $500 per fax at a 20% claims rate (131,010 x $500 x 20%), so a reversionary common fund over $20 million would yield no more money actually paid to class members.

Finally, *Camden I* does not condone risking absent class members' ability to collect money in the present in a quest for more attorney fees for class counsel. *Camden I* did not consider claims rates and simply adopted the percentage of the fund as opposed to the lodestar method as the default method for determining fees in class

actions. It does not support the propriety of Cin-Q Plaintiffs' counsel's handling of settlement negotiations in this case.

Regardless of whether the Cin-Q Plaintiffs' approach to settlement is superior to the approach that Intervenors prefer, as *TTA* held, the approaches are adverse, and the Cin-Q Plaintiffs can no more adequately represent Intervenors than Intervenors could adequately represent them in *TTA*. Intervenors have shown inadequacy under Rule 24 and the Court should grant their motion.

## III.   Intervention would not be "futile."

The Cin-Q Plaintiffs mischaracterize Intervenors' purpose as strictly limited to becoming class representatives in place of the Cin-Q Plaintiffs and to advance the proposed class settlement in *TTA* in this case. ECF 266 at 15-17. They then argue intervention would be futile because Intervenors are precluded from doing either. Their argument fails.

First, Intervenors' purpose is not strictly limited to becoming class representatives. They also have personal stakes in this case as absent class members with claims against BLP. As *TTA* held, the Cin-Q Plaintiffs will not adequately protect the Intervenors' interests because the Cin-Q Plaintiff's interests are adverse, as demonstrated by the last three years of litigation. Whether they are class representative or not, only by being allowed to participate in this action can Intervenors provide an alternative voice to the choices that the Cin-Q Plaintiff's might make in pursuit of this action. Protecting Intervenors' personal interests does not require that they become class representatives, but it does require that they be

allowed to intervene.

The Cin-Q Plaintiffs are also wrong in asserting that Intervenors are contractually bound by the *TTA* settlement and only want to intervene to advance it. ECF, p. 16. First, the New Intervenors are plainly not bound by it. ECF 266, p. 16. Second, the question of whether the *TTA* settlement terms were fair, reasonable, adequate and in the best interest of the class has yet to be resolved, so there is no reason why even if Intervenors were bound they would necessarily be inadequate to represent the class under Rule 23. Finally, BLP has represented that it is willing to "go to a settlement conference without preconditions," so the TTA Intervenors are not strictly bound to the terms of the *TTA* settlement in any event. ECF 266-3, p. 10 (Tr. 12-6-19, p. 9). Intervention would not be futile.

## IV.    Conclusion.

WHEREFORE, Intervenors respectfully request that the Court grant their motion and permit them to intervene in this action, either as a matter of right or by permission.

Respectfully submitted,

TECHNOLOGY TRAINING ASSOCIATES, INC., LARRY F. SCHWANKE, D.C., BAREWOOD OUTLET, INC., THOMAS SAVINO, AND MERYMAN ENVIRONMENTAL, INC.

By: s/ Phillip A. Bock

Phillip A. Bock
Robert M. Hatch
Jonathan B. Piper
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

By: s/ Phillip A. Bock