# EXHIBIT 6

1
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
2
**TAMPA DIVISION**

3

**NOVEMBER 19, 2019**
4
**TAMPA, FLORIDA**
**12:33 - 1:09 p.m.**
5

6
CIN-Q AUTOMOBILES, INC.,          CASE NO. 8:13-cv-01592-T-AEP

7
                         Plaintiff,
8

9
STEIN, D.D.S., M.S.D.,            CASE NO. 8:13-cv-02136-T-AEP
P.A., ET AL.,
10
                         Plaintiff,
11

12
TECHNOLOGY TRAINING               CASE NO. 8:16-cv-01622-T-AEP
ASSOCIATES, INC., ET AL.,
13
                         Plaintiff,
14
         vs.
15

16
BUCCANEERS LIMITED PARTNERSHIP,
ET AL.,
17
                         Defendant.
18
_____/

19

20
**TRANSCRIPT OF STATUS HEARING**
BEFORE THE HONORABLE ANTHONY E. PORCELLI
21
UNITED STATES MAGISTRATE JUDGE

22

23

24
Proceedings transcribed via courtroom digital audio
recording by transcriptionist using computer-aided
25
transcription.

```
 1   APPEARANCES:

 2

 3   For the Plaintiff:        ROSS MICHAEL GOOD, ESQ.
                               Anderson & Wanca
 4                             3701 Algonquin Road, Suite 760
                               Rolling Meadows, Illinois 60008
 5                             847/368-1500

 6                             MICHAEL C. ADDISON, ESQ.
                               Addison Law Office, P.A.
 7                             1304 Alicia Avenue
                               Tampa, Florida 33604
 8                             813/223-2000

 9   For the Defendant:        MARK S. MESTER, ESQ.
                               KATHLEEN P. LALLY, ESQ.
10                             Latham & Watkins, LLP
                               330 North Wabash Avenue, Suite 2800
11                             Chicago, Illinois 60611
                               312/876-7700
12
                               JOSEPH H. VARNER III, ESQ.
13                             Holland & Knight, LLP - Tampa
                               100 North Tampa Street, Suite 4100
14                             Tampa, Florida 33602
                               813/227-8500
15

16   For the Moving            JONATHAN B. PIPER, ESQ.
     Intervenors:              PHILLIP A. BOCK, ESQ.
17                             Bock, Hatch, Lewis & Oppenheim, LLC
                               134 North La Salle St., Suite 1000
18                             Chicago, Illinois 60602
                               312/658-5500
19

20   Court Reporter:           Howard W. Jones, RPR, FCRR
                               801 N. Florida Avenue, Suite 15A
21                             Tampa, Florida 33602
                               813/301-5024
22

23                  * * * * * * * * * *

24

25
```

**P R O C E E D I N G S**

| | |
|---|---|
| 1 | |
| 2 | (Court called to order.) |
| 3 | THE COURT:  Good afternoon.  All right.  Let's |
| 4 | call the first case. |
| 5 | THE DEPUTY CLERK:  Case No. 8:13-cv-1592, Cin-Q |
| 6 | Automobiles, Inc., vs. Buccaneers Limited Partnership, |
| 7 | et al. |
| 8 | THE COURT:  All right.  Let me have counsel state |
| 9 | your appearance for the record, please. |
| 10 | MR. GOOD:  Good morning, Your Honor.  Ross Good |
| 11 | and Michael Addison on behalf of the Cin-Q plaintiffs. |
| 12 | We're joined today by the owner of Medical & Chiropractic |
| 13 | Clinic, Greg Williams. |
| 14 | THE COURT:  Good morning. |
| 15 | MR. MESTER:  Good afternoon, Your Honor, Mark |
| 16 | Mester and Kate Lally for BLP. |
| 17 | THE COURT:  Good morning. |
| 18 | MR. VARNER:  And, Your Honor, Joe Varner, also for |
| 19 | BLP. |
| 20 | THE COURT:  Thank you.  Good morning. |
| 21 | MR. PIPER:  Good morning, Your Honor.  I'm |
| 22 | Jonathan Piper and I'm here for the moving intervenors. |
| 23 | THE COURT:  Thank you, Mr. Piper. |
| 24 | MR. BOCK:  Phillip Bock, Your Honor. |
| 25 | THE COURT:  All right.  Thank you, Mr. Bock. |

1          Good morning, everyone.

2          All right.  I'll also note for the record I have

3     scheduled for status conferences in the other two cases.  We

4     called this case first.  Even though it has the most

5     pressing matters in the case, but all three cases are

6     related and I'll ask the courtroom deputy just for the

7     record to note those cases and call those cases as well,

8     please.

9          THE DEPUTY CLERK:  Case Nos. 8:16-cv-1622-AEP,

10    Technology Training Associates, Inc., et al., vs. Buccaneers

11    Limited Partnership.  Case No. 8:13-cv-2136-AEP, Stein,

12    D.D.S., M.S.D., P.A., et al., vs. Buccaneers Limited

13    Partnership.

14         THE COURT:  All right.  Let me have the parties

15    identify themselves for those matters as well for the

16    record, please.

17         MR. GOOD:  Your Honor, Ross Good and Michael

18    Addison on behalf of the Stein plaintiffs.

19         THE COURT:  Thank you.

20         MR. MESTER:  Mark Mester and Kate Lally for BLP.

21         THE COURT:  Thank you.

22         MR. VARNER:  Joe Varner for BLP.

23         MR. PIPER:  And Jonathan Piper and Phillip A. Bock

24    for Technology and Schwanke in the TTA case.

25         THE COURT:  All right.  Thank you.

1          All right.  Let's focus on this Cin-Q matter and

2    what's been filed and I will note has also been filed in the

3    TTA case as well, the request for settlement conference.  I

4    will note there has been a response filed by the Buccaneers,

5    but not one filed by plaintiffs.

6          So what is the position as to that?

7          MR. GOOD:  Your Honor, Ross Good for the

8    plaintiffs.  We do not believe a settlement conference is

9    appropriate at this time.  It is our understanding that BLP

10   and TTA have a settlement agreement which has previously

11   been presented to the Court as part of their motion for

12   class certification, which was -- preliminary approval of

13   which was vacated by this Court.  We do not believe it would

14   be appropriate for us to attend a mediation until this Court

15   has the opportunity to rule on class certification or to

16   appoint interim lead counsel and interim class

17   representatives for this matter.  After such a ruling we

18   would be happy to go to a mediation with the Buccaneers to

19   try and effectuate a settlement.

20          All of that being said, we're prepared for trial.

21   We want to get a class certified, go to trial, and win this

22   case on the merits.  If it settles, you know, that's

23   something that the Court will address, but this case does

24   not have to settle, this case can go to trial.  And as we

25   have been working on this case for many years now, we are

```
 1   prepared for that.
 2            THE COURT:  What's your position as to the request
 3   for intervention?
 4            MR. GOOD:  We oppose intervention.  They've been
 5   aware of this case for many years, going back not to just
 6   2016, but as they acknowledged in testimony upon questioning
 7   from Your Honor in 2016, they were aware of this case for
 8   years earlier.  Their time has passed and they chose not to
 9   intervene in 2016.  They should not be allowed to intervene
10   now.
11            We think that the Cin-Q plaintiffs and the Stein
12   plaintiffs are more than adequate to represent the class
13   given everything they have been through.  We believe
14   class -- or we believe that Cin-Q plaintiffs' counsel is
15   adequate to represent the class in this matter.
16            THE COURT:  All right.  So I take it you'll be
17   filing a written response to the request for intervention?
18            MR. GOOD:  We would like to ask that Your Honor
19   rule on our motion for class certification from 2016 before
20   addressing intervention.  To the extent Your Honor wishes to
21   brief intervention first, then, yes, we do intend to
22   respond.
23            THE COURT:  What's the distinction?  Didn't I
24   learn my lesson already about that before?
25            MR. GOOD:  I wasn't going to parse it in those
```

1  words, Your Honor.

2          THE COURT:  So what is the distinction?  What am I

3  missing, then?  Should I not allow the intervention first?

4          MR. GOOD:  We don't think you should allow the

5  intervention, because they could have timely done it three

6  years ago.  The Eleventh Circuit's decision still has effect

7  here.  And they're trying to use the same settlement that

8  Your Honor previously vacated.

9          THE COURT:  Well, that's the substance of what

10 they may argue, but the simple matter of allowing them to

11 intervene to present their argument, what's the position why

12 I should just not allow them to intervene?

13         MR. GOOD:  For the same reason that Your Honor

14 denied Cin-Q plaintiffs initially to intervene, Your Honor

15 didn't believe that there was any adversity between the

16 parties and the Eleventh Circuit respectfully disagreed with

17 Your Honor.

18         THE COURT:  Well, that's what I'm saying.

19         MR. GOOD:  But here there is no --

20         THE COURT:  So you're trying to tell me now that I

21 should not apply that logic by the Eleventh Circuit.  Is

22 that what you're saying?

23         MR. GOOD:  Yes, that is what I'm saying, because

24 unlike TTA, we are not subject to any special defenses.  We

25 did not sit on these -- this litigation for many years until

1   such time that we could try to undercut the people who had

2   been working on it for many years.  And TTA and the other

3   Buc Hatch (ph) clients will be treated appropriately as

4   class representatives -- as class members rather.  The class

5   representatives, putative class representatives, the Stein

6   plaintiffs and the Cin-Q plaintiffs, can adequately

7   represent their interest and that is the question before

8   this Honorable Court, along with the amount of time that

9   they have waited to intervene.

10          Again, their knowledge, according to their own

11   testimony upon questioning from Your Honor, goes back not

12   just to 2016, but to years earlier, many years earlier.

13   They chose not to because we were adequately representing

14   the class.  We still are.  And the Cin-Q plaintiffs and the

15   Stein plaintiffs have not been found to be inadequate and,

16   therefore, I think this should be entered and continued

17   until such time that Your Honor rules on class

18   certification.

19          THE COURT:  Mr. Mester, let me hear --

20          All right.  Thank you, Mr. Good.

21          MR. GOOD:  Thank you.

22          THE COURT:  I'll start in the same sequence.

23   Given defendant's position as stated by Mr. Good regarding

24   the settlement conference, what's your position regarding

25   that first?

1          MR. MESTER:  Your Honor, we think it makes a lot

2    of sense to have a settlement conference.  I must say,

3    having done this for about 30 years, I've never been in a

4    position before where counsel for a class would refuse an

5    offer to go to a settlement conference and to act in the

6    best interest of the class.  And this simply, Your Honor, is

7    the umpteenth example of what we believe is a clear

8    indication by counsel for plaintiffs in Cin-Q putting their

9    own interest above the interest of the class.  The class has

10   a clear interest in getting a resolution and getting it

11   sooner rather than later without the contingencies of

12   continued litigation.

13          Counsel is correct, we have a settlement.  We're

14   prepared, though, to go to a settlement conference without

15   preconditions as we've said in our paper that we submitted

16   yesterday.  We think the existing settlement is more than a

17   fair reasonable amount.  We think, if anything, it's too

18   generous.  But we're prepared to go to a settlement

19   conference.

20          But in any event, Your Honor, what is abundantly

21   clear is that the TTA plaintiffs and the new additional

22   plaintiffs that have been added in the motion for leave to

23   intervene believe that they are being prejudiced and I

24   think, Your Honor -- with due respect, I think the Eleventh

25   Circuit's ruling plainly applies here in the same way it

1   applied before and they should be allowed to intervene,

2   first and foremost.  That motion clearly should take

3   precedence because of the potential for prejudice.  The

4   Cin-Q counsel should not be able to hijack the class and

5   dictate the course that this case takes until Your Honor has

6   had an opportunity and a full opportunity to decide the

7   fundamental question, which Mr. Good, in fairness, alluded

8   to, which is appointment of counsel.

9         Rule 23(g) contemplates that procedure.  It sets

10  an orderly process by which Your Honor can decide who can

11  best represent the interest of this class and there's more

12  than ample evidence that it's not existing counsel for

13  Cin-Q.  But that process should be followed unless we can

14  have a settlement conference and try to resolve it, which we

15  hope we can, but one or the other, certainly not rushing

16  forward and pretending as if all that's not there and on the

17  record.

18        MR. GOOD:  Your Honor, may I briefly respond?

19        THE COURT:  You may.

20        MR. GOOD:  Your Honor, after we filed our motion

21  for class certification in 2016, Your Honor instructed the

22  Cin-Q plaintiffs and BLP to attend a mediation.  I don't

23  know if Your Honor recalls that.  The Cin-Q plaintiffs

24  attended that mediation in good faith.  The Buccaneers did

25  not.  Counsel from Buccaneers statements about what is and

1    is not adequate for Cin-Q should be taken with the largest

2    possible grain of salt given it is in his clients' interest

3    to settle for less.

4          This settlement is an abomination, frankly, and we

5    would never settle on those terms.  Going to a settlement

6    conference at this point with them already having a

7    settlement would be a reverse auction.  We cannot

8    participate in a reverse auction.  Doing so would be

9    unethical.

10         Moreover --

11         THE COURT:  The premises you're assuming is that

12   the settlement is the starting point of what the settlement

13   was previously.  Why would that be?

14         MR. GOOD:  Because the settlement's plain language

15   says the two of them are going to seek to effectuate the

16   terms of the settlement unless they void it out and they

17   have chosen not to.  I am taking the plain language of that

18   settlement agreement on its face.  That is my basis for that

19   statement.

20         Moreover, Cin-Q plaintiffs moved to intervene

21   immediately upon becoming aware of the TTA action.  The TTA

22   plaintiffs and their counsel waited admittedly, they've

23   admitted, for literally years before trying to intervene in

24   ours.  We believe that should have some impact on the ruling

25   of this Court.

```
 1              THE COURT:  In other words, their procedural
 2   decision to file a new case rather than intervene should be
 3   held against them?
 4              MR. GOOD:  Not just that, but that's part of it.
 5   What's more important is when they were asked about this by
 6   Your Honor at the conflict of interest hearing in 2016, they
 7   acknowledged they had known about the case for years prior
 8   to 2016 and chose not to intervene and we think that's more
 9   significant.
10              THE COURT:  But the distinction, though, is what
11   would be the basis for the intervention.  They can't just
12   intervene to intervene.  The argument, their reasoning for
13   intervention, is that you, as counsel or collectively
14   counsel, are inadequate counsel to go forward.
15              MR. GOOD:  I believe much more directly they're
16   saying that we should settle this case and we shouldn't go
17   forward with this case and we respectfully disagree.  We
18   think we should go forward with this case.  We think class
19   certification should be ruled on and --
20              THE COURT:  I recognize you disagree and that's
21   the substance of it, but we're talking about just the matter
22   of allowing them to intervene to make that argument.
23              MR. GOOD:  We can adequately represent the
24   interest of the class, they cannot.  And that's why we
25   believe that Your Honor should deny their motion to
```

1    intervene.

2        THE COURT:  Well, that's a different request,

3    whether I allow them to intervene to represent the class.  I

4    think they're looking to intervene to take the position that

5    current proposed counsel cannot represent the class.  That

6    doesn't necessarily mean that (inaudible) stand in place as

7    class counsel.

8        MR. GOOD:  To borrow an argument from them, then

9    they should object at such time as there's a settlement with

10    the Buccaneers or at the end of the case.  But they --

11        THE COURT:  This goes back to my question.  Didn't

12    I learn my lesson the first time that way?  That's what I

13    was going to do with you and we went round and round about

14    that and then the Eleventh Circuit has sent it back saying

15    that needs to happen first.

16        MR. GOOD:  That was because of the Machiavellian

17    scheme by the Buccaneers' counsel -- or, I apologize, not by

18    the Buccaneers' counsel, by TTA's counsel, the Eleventh

19    Circuit latched on upon that and upon the fact that the

20    statute of limitations had expired and procedural defect

21    that is not of effect to the Stein plaintiffs and the Cin-Q

22    plaintiffs.  I do not believe you would be going against the

23    Eleventh Circuit court by applying the standard that was

24    applied to us to TTA.

25        Our position is we can represent the interest of

```
 1    the class.  Their clients are members of the class and we

 2    are best representing their interest, because our clients do

 3    not have the procedural defects of their clients.  Their

 4    clients have a settlement with the Buccaneers already, which

 5    this Court has previously vacated.

 6              THE COURT:  All right.  So obviously, you want to

 7    file a written response and I'll take it up on the merits,

 8    but I think one of the things you're going to have to

 9    squarely address, though, is, is the Eleventh Circuit's

10    decision confined only to, as you indicated, some procedural

11    defects or, as they are asserting in their motion, should I

12    consider other matters as to the adequacy of class counsel

13    in other matters?

14              MR. GOOD:  And we believe you should address the

15    adequacy of class counsel first in regards to plaintiffs'

16    motion for class certification, Docket 207, filed

17    March 20 --

18              THE COURT:  Let me get to that too.  Are you going

19    to just simply -- are you requesting that I renew that

20    motion and make it ripe for a response or did you want to

21    file a new class certification --

22              MR. GOOD:  First, we would argue that there should

23    be no response.  They blew the deadline that Your Honor set

24    for them by three-and-a-half years.

25              THE COURT:  That's not going to happen.
```

```
 1              MR. GOOD:  I kind of thought that.  So we would
 2   like to renew it and we would like time to renew it.  We
 3   would ask that we have until December 6th and that we get 40
 4   pages with which to renew that motion.
 5              And we would also ask, in conformity with Your
 6   Honor's previous briefing order from March of 2016, that we
 7   be allowed a reply brief.
 8              THE COURT:  Mr. Mester, how much are you
 9   requesting, pages?  Is that sufficient, 40 pages for a
10   response?
11              MR. MESTER:  It may be, Your Honor, but first and
12   foremost, I think Mr. Good is again putting the cart before
13   the horse.  We have a motion for leave to intervene.  We
14   have a credible argument made by the intervenors and echoed
15   by us of inadequacy of counsel and the question should be
16   who should be controlling the interest of the class, who
17   should be controlling the case.  And for Mr. Good to rush to
18   class certification with all that that entails is not in the
19   best interest of the class and I can explain why, there's a
20   number of reasons, not the least of which --
21              THE COURT:  Well, let's go ahead and forecast all
22   that argument, because regardless of whether I hold it on
23   the class certification motion or if intervention is allowed
24   and that then becomes the forefront of the argument
25   regarding the adequacy of class counsel, in the end I
```

1   understand and appreciate the arguments regarding Mr. Good

2   and his co-counsel regarding whether they are putting their

3   interest ahead of that of the class based upon the requested

4   fees that is now of record and in this record, but in the

5   alternative, which I have forecasted previously at hearings,

6   as I see it, and I think my ruling, although not expressly

7   is unclear, the Eleventh Circuit has made it clear given the

8   procedural defects, I am not sure we're going to overcome

9   those hurdles that Mr. Bock and Mr. Piper will be able to

10  represent the class.  And so where would that leave us,

11  then, at that point?

12        MR. MESTER:  Well, Your Honor, I think first and

13  foremost, if -- and I don't in any way, shape, or form mean

14  to be presumptuous, I think that's all the more reason to

15  have a settlement conference, get everyone together and try

16  to work it out.  But if that's not in the cards and if

17  Mr. Good is not willing to participate, then I think we have

18  to have the 23(g) process play out and we have to decide

19  who, if any, of the existing counsel should represent the

20  class.  And ultimately, Your Honor, if you decide that none

21  of them can, you certainly have within your power the

22  authority to appoint counsel for the class and I'd

23  certainly --

24        THE COURT:  So forecasting the intervention

25  through, if I allowed the intervention, then the

1   intervention just simply will be an attack upon the motion

2   for class certification, which would include the adequacy of

3   class representation.

4        MR. MESTER:  But in a unique sense, Your Honor.

5   It would only be on the issue of adequacy vis-a-vis existing

6   counsel for Cin-Q.  If you, for instance, were to appoint

7   someone else, without, again, prejudging who it is or what

8   their issues are, but if you appointed someone else, it may

9   well be the case there would be no adequacy argument or

10  issue to be had vis-a-vis class certification, which is, by

11  the way, Your Honor, without being presumptuous, one of the

12  many reasons why I don't think it's necessarily in the best

13  interest of the class for Mr. Good and his co-counsel to

14  rush forward to address the class certification issue.  We

15  should address adequacy first, Your Honor, who should be

16  representing this class and then decide what should happen

17  given who that is.  And that's the -- that's the issue.

18  That's the issue that has to be resolved first.

19        THE COURT:  I understand.

20        MR. GOOD:  Your Honor, may I briefly respond?

21        THE COURT:  You may.

22        MR. GOOD:  Your Honor, Mr. Mester keeps talking

23  about the best interest of the class.  It is important to

24  note he represents the defendant, he does not represent the

25  class.  He is not putative class counsel and he's not asking

1    to be putative class counsel.  Everything he is saying is in

2    the interest of his client.

3         He keeps talking about trying to rush forward with

4    class certification.  I have never heard any person talk

5    about three-and-a-half years of waiting as rushing forward

6    with class certification.  This case has been pending for

7    over six years before this Honorable Court, there has been

8    nothing rushed in this case.  The opposite is true, it has

9    gone on in my opinion far too long.

10        Additionally, attorney's fees will be determined

11   by this Court, it will not be determined by any party, any

12   counsel, or any settlement agreement or any judgment, for

13   that matter.  This Court will determine attorney's fees.

14   The defendants and the TTA plaintiffs continue to try and

15   obfuscate this very simple truth that is true throughout all

16   the federal courts in the entire country.  Your Honor will

17   determine attorney's fees, not a party or a party's counsel.

18        These attacks on my credibility, the credibility

19   of my firm, the credibility of Mr. Addison, it is not

20   welcome, because it is not founded upon anything at all, it

21   is mere sophistry.  And Your Honor has now seen all of the

22   mediation correspondence, Your Honor has seen all of the

23   settlement offers, Your Honor is very familiar with class

24   action law, including that Your Honor will determine

25   attorney's fees.  We asked to have a finding of adequacy as

1    part of our motion for class certification, which again, was

2    filed three-and-a-half years ago.  Mr. Mester keeps calling

3    this rushed, as he has delayed this case for literally

4    years.

5            THE COURT:  All right.  Here's what we're going to

6    do.  Mr. Good, I appreciate your position, but I am going to

7    order you-all to a settlement --

8            Mr. Piper, you want to be heard?

9            MR. PIPER:  Well, having heard the first part of

10   your sentence, I guess I'll --

11           THE COURT:  All right.  I'm going to order you a

12   settlement conference.  I will provide you with the

13   opportunity -- Judge Sansone is going to conduct the

14   conference for the parties to meet.  I want to make it very

15   clear it is the Court's expectation that that will be a

16   good-faith effort by all parties and that there will be no

17   starting ground based upon any prior settlement discussions.

18   Rather, given the unique complexities of the procedural

19   history of this matter, all parties should go in with an

20   open mind on a creative aspective way to approach

21   settlement.

22           Having said that, it is within the discretion of

23   the parties whether they deem it necessary and appropriate

24   to settle the case.  Along that line, I am going to allow

25   and direct no later than December 6th the -- well, let me

1  rephrase that.

2       I want you to respond first for the intervention.

3  So when are you anticipating to respond to the motion for

4  intervention?

5       MR. GOOD:  Your Honor, I would like December 6th

6  for a response date, because November 28th is Thanksgiving

7  and the 29th is the day after Thanksgiving, so we'd like the

8  whole week after that, which would put us at December 6th.

9       THE COURT:  All right.  I'm going to rule on the

10 intervention first and I want to see your written response

11 and then, if appropriate, at that point I will give you a

12 schedule by which you can brief your motion for class

13 certification at that time.

14      MR. GOOD:  Your Honor, I appreciate it and I have

15 no issue with that part.  Regarding a settlement conference,

16 I don't believe I can go in good faith.  It's a reverse

17 auction.  You've sent us to a reverse auction.  I can't

18 think of another way to say it.  They have a settlement

19 agreement that they are a party to.  I understand Your

20 Honor's instruction that they not go in with that settlement

21 agreement that very clearly says they have to try and

22 effectuate it, but we're going into a reverse auction.  We

23 can't participate in a reverse auction.

24      I would ask that Your Honor appoint interim lead

25 counsel and then instruct them to attend the settlement

1   conference so that there is no reverse auction.  Simply,

2   Your Honor, we can't do it.  And I say this with all due

3   respect to this Honorable Court and I understand the awesome

4   power of this Honorable Court.  We can't do it.  I don't

5   know -- I'm trying to think of a better way to say it, but,

6   Your Honor, we've talked to ethics counsel about this before

7   this hearing.  We cannot go to a reverse auction.

8          THE COURT:  Well, again, you're assuming that's

9   going to be the situation, but other than that, what's your

10  ethical concern?

11         MR. GOOD:  Our ethical concern is there is a

12  competing class counsel who has no leverage who wants to

13  settle the case out from under us in a Machiavellian scheme.

14  That is our concern.

15         THE COURT:  Mr. Mester?

16         MR. MESTER:  Judge, at the end of the day, a

17  settlement has to be fair, reasonable, and adequate.  We

18  have a settlement right now that I sincerely believe is more

19  than fair and reasonable and adequate.  But having said

20  that, as I indicated to Your Honor, we're prepared to go to

21  a settlement conference.  I'm not saying to Your Honor and I

22  would not say to anyone that we would argue that a

23  settlement that we ultimately reach with everyone should be

24  less than that, because I do believe that existing

25  settlement is more than it needs to be.  But we will go in

```
 1    good faith without precondition.
 2           The fact that Mr. Good thinks he can't go is
 3    remarkable to me and I don't even know what it means to say
 4    that it would be reverse auction.  We all go in and we all
 5    argue, just like we typically would in any mediation or
 6    settlement conference, what would be fair, reasonable, and
 7    adequate under these circumstances.  We either settle it and
 8    reach agreement or we don't, but it seems to me it makes a
 9    lot of sense to try.
10           MR. GOOD:  Well, we get to yes or no, Your Honor.
11    TTA already has a settlement agreement and has absolutely no
12    leverage over the Buccaneers, they could accept anything.
13    We can't go against them, we would just be underbidding each
14    other for Mark Mester's agreement.  We can't go without an
15    interim lead counsel, Your Honor.  We simply cannot do it.
16    I want to find a way to follow Your Honor's instructions,
17    but I do not understand how we can go in good faith to a
18    settlement conference where we're competing against another
19    plaintiffs' counsel trying to represent the exact same class
20    that in fact they're using our case to get them the -- I
21    don't want to say tolling, but they're using our case to
22    have the claim to be able to represent.  It's simply a
23    reverse auction, Your Honor.  Very, very simply, it is a
24    reverse auction that we cannot ethically participate in.  We
25    are being accused of all sorts of ethical misbehavior --
```

```
 1              THE COURT:  Walking that through, that is a
 2   complicated aspect about what -- in the end how would that
 3   process work without an interim class counsel to make the
 4   final decision?
 5              MR. MESTER:  It would be the first on me, Your
 6   Honor.  It's less than ideal or optimal.  Having said that,
 7   I think the only way that we walk out of there with an
 8   agreement is if all three of the parties, so to speak,
 9   agree, or the sets of parties.  If they don't, then --
10              THE COURT:  But is it then a dispute then for
11   purposes of a settlement discussion between yourself and
12   whoever would be the interim class?  And then the remaining
13   dispute appears to be, one, whether the proposed intervenors
14   now in this litigation are going to contest that settlement
15   for other purposes and then, two, the fees issue, which is
16   an independent issue, independent of you.
17              MR. MESTER:  That's exactly right, Your Honor.
18   But that would all have to get resolved.  And if it didn't,
19   we would have to report back to Your Honor that we weren't
20   successful.  And I don't -- Your Honor, to be perfectly
21   direct with you, I'm not suggesting it would be easy, but it
22   seems to me that it's worth it to avoid an expenditure of
23   time, money, and effort and to potentially compromise the
24   interest of the class in a variety of different ways.
25   That's why I believe it was suggested by intervenor's
```

```
 1    counsel and that's why we submitted our paper saying we
 2    think it makes sense.
 3              THE COURT:  Mr. Good, from that perspective, what
 4    is your view on that, that you are directed first to see if
 5    you could come to a settlement on the class with the
 6    Buccaneers first and then engage in discussions with
 7    Mr. Piper and Mr. Bock to see if your dispute can be settled
 8    and whether they would accept the -- after the first step is
 9    reached, if possible, a settlement that is reached with the
10    Buccaneers?
11              MR. GOOD:  And I want to make sure I'm
12    understanding your question.  You're suggesting the first
13    step would be a mediation between only Cin-Q and Stein
14    plaintiffs and the Buccaneers and then if we were to reach a
15    settlement, then there would be a second step that would
16    involve the TTA plaintiffs?
17              THE COURT:  That's what I was contemplating.
18              Mr. Mester?
19              MR. GOOD:  That would not be reverse auction in
20    our opinion, Your Honor.
21              MR. MESTER:  That's not what I had in mind.  What
22    I had in mind is --
23              THE COURT:  What do you think --
24              MR. MESTER:  A three-way mediation, Your Honor.
25              MR. GOOD:  No.  I'm sorry to be so blunt, but we
```

1    cannot ethically do this.  We cannot participate in a

2    reverse auction.

3           MR. MESTER:  But when all parties agree, I don't

4    understand what that means.

5           MR. GOOD:  They already have a settlement

6    agreement.

7           MR. MESTER:  I also don't know what that means.

8           THE COURT:  I guess, I mean, in the end, it seems

9    to me whether you're all three in the same building at the

10   same time as the mediation is going forward and the

11   mediator's trying to work through the process, ultimately

12   you would dictate for purposes of the class what would be

13   acceptable and that may be unacceptable to opposing counsel.

14   But I don't understand the concept of a reverse auction as

15   you're claiming.

16          MR. GOOD:  Your Honor, TTA and the Buccaneers

17   believe the Buccaneers' settlement is adequate and fair and

18   reasonable.  Mark Mester has said here today that it is more

19   than adequate, fair, and reasonable and he thinks it should

20   actually settle for less.  By that logic, we don't agree.

21   We have stated to this Honorable Court we do not believe

22   that that settlement is fair and reasonable and they do.

23          THE COURT:  And I don't want to get into the

24   settlement discussions, but let's be blunt about it, if that

25   is what the intent is, I recognize there's not going to be

1    any settlement.  You're not going to walk into any

2    settlement discussions if that's what's on the table.

3    You've made that clear, you're not willing to accept that.

4    So why not at least approach the process to see if there are

5    other terms that can be negotiated?

6         MR. GOOD:  Because they're just going to adopt

7    some of the terms and come back to you, just the two of

8    them.  We will never agree to participate in something where

9    we're competing against somebody to represent the exact same

10   class.  That is the crux of a reverse auction.  If we were

11   to do the first step, which I thought was your question to

12   me, where it was just the two parties, and then if the two

13   parties reach something, then they try to work something out

14   with the TTA plaintiffs' counsel, we would be open to

15   considering that and then we could bring that to your court

16   for the second step.  But we cannot go to a situation where

17   we are trying to underbid each other.  We will not try to

18   underbid TTA.  We have a valid claim against the Buccaneers,

19   we have been pursuing it for many, many years, and we intend

20   to go to trial if we can't settle.  I can't say that for

21   TTA.

22        THE COURT:  All right.  Mr. Mester, you want to

23   make one more comment.  What's that?

24        MR. MESTER:  Your Honor, I don't candidly

25   understand the concern.  I've seen this done before, it's

```
1   not atypical in large class actions to have different groups

2   of plaintiffs counsel.  They don't always get along.  I've

3   seen cases in that circumstance.  I've seem them not so.

4   Again, I'm not suggesting it would be easy, I think it would

5   be possible.  But I must say, Your Honor, that if Mr. Good,

6   if the signal he's sending, and it seems to be, that he's

7   going to walk into that settlement and demand a fee of 20 to

8   $30 million, well, that's what you've demanded for the last

9   three years, so I -- if I'm, you know --

10           MR. GOOD:  That is false, Your Honor.  I'm sorry

11   to interrupt him.

12           THE COURT:  All right.  Well, why am I going to

13   send them to mediation if it's clear and abundant right here

14   by the representation of the parties you're not going to get

15   anywhere?  And so what is the benefit of it?  I could waste

16   your-all's time and send you to Judge Sansone, but if you're

17   not willing to go in with an open mind on both sides, then

18   why do it, why not just go forward and let me decide the

19   merits and what is being represented?

20           All right.  Mr. Piper.

21           MR. PIPER:  Well, Your Honor, our firm and

22   Mr. Good's firm have jointly settled enumerable class

23   actions where we have agreed on getting the best relief

24   possible for the class.  The only thing that's an obstacle

25   for Mr. Good here, once again, is not to get the best relief
```

1    for the class, it's to maximize the attorney's fees.  And

2    that's, once again, proving why we think we need to be in

3    this case, to make sure that they don't hold the class

4    hostage.

5            I actually think -- we've worked together with

6    them to get great settlements for classes.  I think we can

7    do that in this case.  I think the only roadblock, we'll get

8    to the point where they want to set a record for attorney's

9    fees at the expense of the class.

10           MR. GOOD:  Your Honor would determine --

11           MR. PIPER:  I'm not done, Mr. Good.

12           MR. GOOD:  Okay.

13           MR. PIPER:  So we want to be part of the case to

14   argue --

15           THE COURT:  How is it that Mr. Good is supposed to

16   go in now and take one hand where you say I think we can

17   work together, but then you make the -- what is an

18   accusation on the record, but nonetheless, go in and make

19   the accusation again that they're not willing to settle

20   because they're seeking a record deal?  It seems to me if I

21   was in Mr. Good's position I would feel certainly no

22   excitement to join in arms with you to see if we can come to

23   a resolution.

24           MR. PIPER:  Well, I'll sit down with him right

25   after this to talk about what demand we want to make for the

1   class.  And let's get a demand that's the best relief

2   possible for the class and then we can deal with the issue

3   of attorney's fees.

4           MR. GOOD:  May I respond?

5           THE COURT:  All right.  No need to respond.

6           MR. GOOD:  Thank you.

7           THE COURT:  What is necessary for me to resolve

8   fundamentally is, one, I'm not going to send you to

9   mediation at this point.  It's abundantly clear to me I need

10  to first resolve the intervention.  And then we're going to

11  tee up the intervention at that point and then we'll resolve

12  the class issue, because regardless, if I sent you to

13  mediation at this point, I see it in no likely event being

14  fruitful.  Certainly, if the parties want to attempt on

15  their own, they may do so, but I'm not going to direct it.

16          We're going to go ahead and take up this issue

17  regarding the intervention and whether it's appropriate or

18  not.  Clearly, the class adequately -- class counsel is

19  going to be an issue that's going to be addressed.  And to

20  be very blunt, I'm sure there may be other defenses to

21  certification, but I see the adequacy of class counsel being

22  probably the largest issue that's remaining in the matter

23  before we can get this case going again.

24          So I'll direct you file your response by

25  December 6th and if the Buccaneers want to also file any

1  memorandum as to the request for intervention, they may do

2  so by that same date.  And then it's my intent to get a

3  ruling out very quickly, sometime right after the New Year.

4          MR. MESTER:  Could we have seven days to file a

5  reply after the 6th?

6          THE COURT:  You may move for it if you -- how

7  much -- all right.  I'll give you the reply.  How much time

8  are you going to need after it's filed to file the reply?

9          MR. MESTER:  Seven days I think would be adequate.

10         THE COURT:  All right.

11         MR. GOOD:  Your Honor just for clarity, after you

12  rule on intervention, that is when theoretically you would

13  set a briefing schedule for class certification?

14         THE COURT:  I will note for you, Mr. Good, that if

15  I deem it necessary and appropriate, I may then put the

16  issue of not just the class certification, but adequacy of

17  counsel, if I need to forecast that first, I will do so and

18  address that matter first.  I'll decide that based upon what

19  I see in the request for the -- response to the

20  intervention.

21         MR. GOOD:  And if I may just inquire, would that

22  be in some form of like interim class counsel determination?

23         THE COURT:  Yes.

24         MR. GOOD:  Okay.  I have nothing further, Your

25  Honor.

1          THE COURT:  All right.  Before I move on, just to

2   find out where we're at with the other cases, then -- what

3   your positions are in the other cases, anything else in the

4   Cin-Q matter, Mr. Mester?

5          MR. MESTER:  No, Your Honor.  Thank you.

6          THE COURT:  All right.  Then, Mr. Piper, what is

7   your position -- it's my intent just to leave the case open,

8   as it is right now, but what is your position then?  After

9   the intervention is resolved as to the TTA case, what's your

10  position?

11         MR. PIPER:  Well, it would depend how that's

12  resolved, but we're happy to stay the case in the interim.

13         THE COURT:  All right.  I'm going to leave it open

14  for now.  We're going to wait for the resolution of the

15  intervention case and then what I will likely do is make a

16  determination after -- excuse me, after the intervention

17  motion, then make a determination as to what should happen

18  with that case.

19         You want to be heard as to that matter?

20         MR. MESTER:  No objection to that, Your Honor.

21         THE COURT:  Mr. Piper?

22         MR. PIPER:  Well, I would foreshadow that we did

23  not file an interrogatory appeal from your order in TTA, but

24  we do want to preserve the right to appeal that ruling at

25  the end of the cases if necessary.  So we'd either like to

1  have the case sit there stayed or be consolidated so that we

2  preserve those rights.

3          MR. GOOD:  Your Honor, for Cin-Q plaintiffs, we

4  oppose consolidation.

5          THE COURT:  All right.  As to the Stein case,

6  Mr. Good?

7          MR. GOOD:  We're fine having it stayed, Your

8  Honor, until --

9          THE COURT:  Why are we not just consolidating that

10 case?

11         MR. GOOD:  We can consolidate.  I was going to

12 suggest consolidating it at the class certification briefing

13 stage, but we're happy to consolidate it now so there is

14 some finality to Your Honor's next intervention

15 determination.

16         THE COURT:  Mr. Mester, what's your position as to

17 that?

18         MR. MESTER:  We have no objection, Your Honor.

19         THE COURT:  All right.  Well, then I will do an

20 order, just go ahead and consolidate it at this time.

21         MR. PIPER:  Thank you, Your Honor.

22         THE COURT:  All right.  Anything else we should

23 take up at this time, Mr. Good?

24         MR. GOOD:  Nothing for Cin-Q and Stein plaintiffs,

25 Your Honor.

```
1              THE COURT:  All right.  Mr. Mester?

2              MR. MESTER:  No, Your Honor.

3              THE COURT:  All right.  Mr. Piper, anything else?

4              MR. PIPER:  No, Your Honor.

5              THE COURT:  All right.  I will make it clear it is

6  my intent -- Mr. Good has reminded me all too often and I'm

7  more than intimately familiar, I have certainly failed the

8  parties in this regard and it's not my intent to let this

9  languish anymore.  This case is a priority for me and so as

10 the pleadings will come in, I will be sure to respond to

11 them regardless of the remaining docket.  So I will be

12 making the pleadings a priority so we can expedite the

13 rulings in the case and get this resolution as to whatever

14 issues may come on an expedited basis.

15             All right.  Anything else from anyone?

16             MR. GOOD:  Nothing for Cin-Q and Stein plaintiffs,

17 Your Honor.

18             MR. MESTER:  Nothing for BLP, Your Honor.

19             MR. PIPER:  Nothing for TTA and the intervenors.

20             THE COURT:  All right.  Thank you all for your

21 time.  We'll be in recess.

22                  (Proceedings concluded.)

23

24

25
```

34

```
 1   UNITED STATES DISTRICT COURT      )
                                       )
 2   MIDDLE DISTRICT OF FLORIDA        )

 3
                     REPORTER TRANSCRIPT CERTIFICATE
 4

 5        I, Howard W. Jones, Official Court Reporter for
     the United States District Court, Middle District of
 6   Florida, certify, pursuant to Section 753, Title 28, United
     States Code, that the foregoing is a true and correct
 7   transcription of the stenographic notes taken by the
     undersigned in the above-entitled matter (Pages 1 through 33
 8   inclusive) and that the transcript page format is in
     conformance with the regulations of the Judicial Conference
 9   of the United States of America.

10
                           /s       Howard W. Jones
11
                           _____
12                         Howard W. Jones, RPR, FCRR
                           Official Court Reporter
13                         United States District Court
                           Middle District of Florida
14                         Tampa Division
                           Date:  11/21/19
15

16

17

18

19

20

21

22

23

24

25
```

MR. BOCK: **[1]** 3/24
MR. GOOD: **[47]**
MR. MESTER: **[21]** 3/15 4/20 9/1
15/11 16/12 17/4 21/16 23/5 23/17
24/21 24/24 25/3 25/7 26/24 30/4
30/9 31/5 31/20 32/18 33/2 33/18
MR. PIPER: **[12]** 3/21 4/23 19/9
27/21 28/11 28/13 28/24 31/11 31/22
32/21 33/4 33/19
MR. VARNER: **[2]** 3/18 4/22
THE COURT: **[69]**
THE DEPUTY CLERK: **[2]** 3/5
4/9

**$**
**$30 [1]** 27/8

**/**
**/s [1]** 34/10

**1**
**100 [1]** 2/13
**1000 [1]** 2/17
**11/21/19 [1]** 34/14
**12:33 [1]** 1/4
**1304 [1]** 2/6
**134 [1]** 2/17
**1500 [1]** 2/4
**1592 [1]** 3/5
**15A [1]** 2/20
**19 [2]** 1/3 34/14
**1:09 [1]** 1/4

**2**
**20 [2]** 14/17 27/7
**2000 [1]** 2/7
**2016 [9]** 6/6 6/7 6/9 6/19 8/12 10/21
12/6 12/8 15/6
**2019 [1]** 1/3
**207 [1]** 14/16
**23 [2]** 10/9 16/18
**28 [1]** 34/6
**2800 [1]** 2/10
**28th [1]** 20/6
**29th [1]** 20/7

**3**
**30 [1]** 9/3
**312/658-5500 [1]** 2/18
**312/876-7700 [1]** 2/11
**33 [1]** 34/7
**330 [1]** 2/10
**33602 [2]** 2/14 2/21
**33604 [1]** 2/7
**3701 [1]** 2/3

**4**
**40 [2]** 15/3 15/9
**4100 [1]** 2/13

**5**
**5024 [1]** 2/21
**5500 [1]** 2/18

**6**
**60008 [1]** 2/4
**60602 [1]** 2/18
**60611 [1]** 2/11
**6th [6]** 15/3 19/25 20/5 20/8 29/25
30/5

**7**
**753 [1]** 34/6
**760 [1]** 2/3
**7700 [1]** 2/11

**8**
**801 [1]** 2/20
**813/223-2000 [1]** 2/7
**813/227-8500 [1]** 2/14
**813/301-5024 [1]** 2/21
**847/368-1500 [1]** 2/4
**8500 [1]** 2/14
**8:13-cv-01592-T-AEP [1]** 1/6
**8:13-cv-02136-T-AEP [1]** 1/9
**8:13-cv-1592 [1]** 3/5
**8:13-cv-2136-AEP [1]** 4/11
**8:16-cv-01622-T-AEP [1]** 1/12
**8:16-cv-1622-AEP [1]** 4/9

**A**
**able [3]** 10/4 16/9 22/22
**abomination [1]** 11/4
**about [14]** 6/24 9/3 10/25 12/5 12/7
12/21 13/13 17/23 18/3 18/5 21/6
23/2 25/24 28/25
**above [2]** 9/9 34/7
**above-entitled [1]** 34/7
**absolutely [1]** 22/11
**abundant [1]** 27/13
**abundantly [2]** 9/20 29/9
**accept [3]** 22/12 24/8 26/3
**acceptable [1]** 25/13
**according [1]** 8/10
**accusation [2]** 28/18 28/19
**accused [1]** 22/25
**acknowledged [2]** 6/6 12/7
**act [1]** 9/5
**action [2]** 11/21 18/24
**actions [2]** 27/1 27/23
**actually [2]** 25/20 28/5
**added [1]** 9/22
**ADDISON [5]** 2/5 2/6 3/11 4/18
18/19
**additional [1]** 9/21
**Additionally [1]** 18/10
**address [6]** 5/23 14/9 14/14 17/14
17/15 30/18
**addressed [1]** 29/19
**addressing [1]** 6/20

**adequacy [10]** 14/12 14/15 15/25
17/21 17/3 17/9 17/15 18/23 29/21
30/16
**adequate [9]** 6/12 6/15 11/1 21/17
21/19 22/7 25/17 25/19 30/9
**adequately [4]** 8/6 8/13 12/23 29/18
**admitted [1]** 11/23
**admittedly [1]** 11/22
**adopt [1]** 26/6
**adversity [1]** 7/15
**AEP [5]** 1/6 1/9 1/12 4/9 4/11
**after [13]** 5/17 10/20 20/7 20/8 24/8
28/25 30/3 30/5 30/8 30/11 31/8
31/16 31/16
**afternoon [2]** 3/3 3/15
**again [10]** 8/10 15/12 17/7 19/1 21/8
27/4 27/25 28/2 28/19 29/23
**against [6]** 12/3 13/22 22/13 22/18
26/9 26/18
**ago [2]** 7/6 19/2
**agree [4]** 23/9 25/3 25/20 26/8
**agreed [1]** 27/23
**agreement [10]** 5/10 11/18 18/12
20/19 20/21 22/8 22/11 22/14 23/8
25/6
**ahead [4]** 15/21 16/3 29/16 32/20
**aided [1]** 1/24
**al [6]** 1/9 1/12 1/16 3/7 4/10 4/12
**Algonquin [1]** 2/3
**Alicia [1]** 2/6
**all [53]**
**all's [1]** 27/16
**allow [5]** 7/3 7/4 7/12 13/3 19/24
**allowed [5]** 6/9 10/1 15/7 15/23
16/25
**allowing [2]** 7/10 12/22
**alluded [1]** 10/7
**along [3]** 8/8 19/24 27/2
**already [5]** 6/24 11/6 14/4 22/11
25/5
**also [6]** 3/18 4/2 5/2 15/5 25/7 29/25
**alternative [1]** 16/5
**although [1]** 16/6
**always [1]** 27/2
**am [6]** 7/2 11/7 16/8 19/6 19/24
27/12
**America [1]** 34/9
**amount [2]** 8/8 9/17
**ample [1]** 10/12
**Anderson [1]** 2/3
**another [2]** 20/18 22/18
**ANTHONY [1]** 1/20
**anticipating [1]** 20/3
**any [15]** 7/15 7/24 9/20 16/13 16/19
18/4 18/11 18/11 18/12 18/12 19/17
22/5 26/1 26/1 29/25
**anymore [1]** 33/9
**anyone [2]** 21/22 33/15
**anything [7]** 9/17 18/20 22/12 31/3
32/22 33/3 33/15

**A**

anywhere [1] 27/15
apologize [1] 13/17
appeal [2] 31/23 31/24
appearance [1] 3/9
APPEARANCES [1] 1/25
appears [1] 23/13
applied [2] 10/1 13/24
applies [1] 9/25
apply [1] 7/21
applying [1] 13/23
appoint [4] 5/16 16/22 17/6 20/24
appointed [1] 17/8
appointment [1] 10/8
appreciate [3] 16/1 19/6 20/14
approach [2] 19/20 26/4
appropriate [6] 5/9 5/14 19/23
20/11 29/17 30/15
appropriately [1] 8/3
approval [1] 5/12
are [26] 4/5 5/25 6/12 7/24 8/14 9/23
11/15 12/14 14/1 14/2 14/11 14/18
14/19 15/8 16/2 17/8 20/3 20/19
22/25 23/14 24/4 26/4 26/17 30/8
31/3 32/9
argue [5] 7/10 14/22 21/22 22/5
28/14
argument [8] 7/11 12/12 12/22 13/8
15/14 15/22 15/24 17/9
arguments [1] 16/1
arms [1] 28/22
as [35]
ask [5] 4/6 6/18 15/3 15/5 20/24
asked [2] 12/5 18/25
asking [1] 17/25
aspect [1] 23/2
aspective [1] 19/20
asserting [1] 14/11
ASSOCIATES [2] 1/12 4/10
assuming [2] 11/11 21/8
attack [1] 17/1
attacks [1] 18/18
attempt [1] 29/14
attend [3] 5/14 10/22 20/25
attended [1] 10/24
attorney's [7] 18/10 18/13 18/17
18/25 28/1 28/8 29/3
atypical [1] 27/1
auction [15] 11/7 11/8 20/17 20/17
20/22 20/23 21/1 21/7 22/4 22/23
22/24 24/19 25/2 25/14 26/10
audio [1] 1/24
authority [1] 16/22
AUTOMOBILES [2] 1/6 3/6
Avenue [3] 2/6 2/10 2/20
avoid [1] 23/22
aware [3] 6/5 6/7 11/21
awesome [1] 21/3

**B**

back [6] 6/5 8/11 13/11 13/14 23/19
26/7
based [3] 16/3 19/17 30/18
basis [3] 11/18 12/11 33/14
be [79]
because [14] 7/5 7/23 8/13 10/3
11/14 13/16 14/2 15/22 18/20 20/6
21/24 26/6 28/20 29/12
becomes [1] 15/24
becoming [1] 11/21
been [14] 5/2 5/2 5/4 5/11 5/25 6/4
6/13 8/2 8/15 9/3 9/22 18/6 18/7
26/19
before [13] 1/20 6/19 6/24 8/7 9/4
10/1 11/23 15/12 18/7 21/6 26/25
29/23 31/1
behalf [2] 3/11 4/18
being [7] 5/20 9/23 17/11 22/25
27/19 29/13 29/21
believe [18] 5/8 5/13 6/13 6/14 7/15
9/7 9/23 11/24 12/15 12/25 13/22
14/14 20/16 21/18 21/24 23/25 25/17
25/21
benefit [1] 27/15
best [9] 9/6 10/11 14/2 15/19 17/12
17/23 27/23 27/25 29/1
better [1] 21/5
between [3] 7/15 23/11 24/13
blew [1] 14/23
BLP [7] 3/16 3/19 4/20 4/22 5/9
10/22 33/18
blunt [3] 24/25 25/24 29/20
BOCK [7] 2/16 2/17 3/24 3/25 4/23
16/9 24/7
borrow [1] 13/8
both [1] 27/17
brief [3] 6/21 15/7 20/12
briefing [3] 15/6 30/13 32/12
briefly [2] 10/18 17/20
bring [1] 26/15
Buc [1] 8/3
BUCCANEERS [17] 1/16 3/6 4/10
4/12 5/4 5/18 10/24 10/25 13/10 14/4
22/12 24/6 24/10 24/14 25/16 26/18
29/25
Buccaneers' [3] 13/17 13/18 25/17
building [1] 25/9

**C**

call [2] 3/4 4/7
called [2] 3/2 4/4
calling [1] 19/2
can [22] 5/24 8/6 10/10 10/10 10/13
10/15 12/13 13/25 15/19 16/21 20/12
20/16 22/17 24/7 26/5 28/6 28/16
28/22 29/2 29/23 32/11 33/12
can't [10] 12/11 20/17 20/23 21/2
21/4 22/2 22/13 22/14 26/20 26/20

candidly [1] 26/24
cannot [9] 11/7 19/24 13/5 21/7
22/15 22/24 25/1 25/16
cards [1] 16/16
cart [1] 15/12
case [47]
cases [8] 4/3 4/5 4/7 4/7 27/3 31/2
31/3 31/25
certainly [6] 10/15 16/21 16/23
28/21 29/14 33/7
CERTIFICATE [1] 34/3
certification [21] 5/12 5/15 6/19
8/18 10/21 12/19 14/16 14/21 15/18
15/23 17/2 17/10 17/14 18/4 18/6
19/1 20/13 29/21 30/13 30/16 32/12
certified [1] 5/21
certify [1] 34/6
Chicago [2] 2/11 2/18
Chiropractic [1] 3/12
chose [3] 6/8 8/13 12/8
chosen [1] 11/17
CIN [23] 1/6 3/5 3/11 5/1 6/11 6/14
7/14 8/6 8/14 9/8 10/4 10/13 10/22
10/23 11/1 11/20 13/21 17/6 24/13
31/4 32/3 32/24 33/16
CIN-Q [23] 1/6 3/5 3/11 5/1 6/11
6/14 7/14 8/6 8/14 9/8 10/4 10/13
10/22 10/23 11/1 11/20 13/21 17/6
24/13 31/4 32/3 32/24 33/16
Circuit [6] 7/16 7/21 13/14 13/19
13/23 16/7
Circuit's [3] 7/6 9/25 14/9
circumstance [1] 27/3
circumstances [1] 22/7
claim [2] 22/22 26/18
claiming [1] 25/15
clarity [1] 30/11
class [80]
classes [1] 28/6
clear [9] 9/7 9/10 9/21 16/7 19/15
26/3 27/13 29/9 33/5
clearly [3] 10/2 20/21 29/18
client [1] 18/2
clients [5] 8/3 14/1 14/2 14/3 14/4
clients' [1] 11/2
Clinic [1] 3/13
co [2] 16/2 17/13
co-counsel [2] 16/2 17/13
Code [1] 34/6
collectively [1] 12/13
come [5] 24/5 26/7 28/22 33/10
33/14
comment [1] 26/23
competing [3] 21/12 22/18 26/9
complexities [1] 19/18
complicated [1] 23/2
compromise [1] 23/23
computer [1] 1/24
computer-aided [1] 1/24
concept [1] 25/14

## C

**concern [4]** 21/10 21/11 21/14 26/25
**concluded [1]** 33/22
**conduct [1]** 19/13
**conference [18]** 5/3 5/8 8/24 9/2 9/5 9/14 9/19 10/14 11/6 16/15 19/12 19/14 20/15 21/1 21/21 22/6 22/18 34/8
**conferences [1]** 4/3
**confined [1]** 14/10
**conflict [1]** 12/6
**conformance [1]** 34/8
**conformity [1]** 15/5
**consider [1]** 14/12
**considering [1]** 26/15
**consolidate [3]** 32/11 32/13 32/20
**consolidated [1]** 32/1
**consolidating [2]** 32/9 32/12
**consolidation [1]** 32/4
**contemplates [1]** 10/9
**contemplating [1]** 24/17
**contest [1]** 23/14
**contingencies [1]** 9/11
**continue [1]** 18/14
**continued [2]** 8/16 9/12
**controlling [2]** 15/16 15/17
**correct [2]** 9/13 34/6
**correspondence [1]** 18/22
**could [7]** 7/5 8/1 22/12 24/5 26/15 27/15 30/4
**counsel [46]**
**country [1]** 18/16
**course [1]** 10/5
**court [23]** 1/1 2/20 3/2 5/11 5/13 5/14 5/23 8/8 11/25 13/23 14/5 18/7 18/11 18/13 21/3 21/4 25/21 26/15 34/1 34/5 34/5 34/12 34/13
**Court's [1]** 19/15
**courtroom [2]** 1/24 4/6
**courts [1]** 18/16
**creative [1]** 19/20
**credibility [3]** 18/18 18/18 18/19
**credible [1]** 15/14
**crux [1]** 26/10
**current [1]** 13/5
**cv [6]** 1/6 1/9 1/12 3/5 4/9 4/11

## D

**D.D.S [2]** 1/9 4/12
**date [3]** 20/6 30/2 34/14
**day [2]** 20/7 21/16
**days [2]** 30/4 30/9
**deadline [1]** 14/23
**deal [2]** 28/20 29/2
**December [5]** 15/3 19/25 20/5 20/8 29/25
**December 6th [1]** 29/25
**decide [7]** 10/6 10/10 16/18 16/20 17/16 27/18 30/18

**decision [4]** 7/6 12/2 14/10 23/4
**deem [2]** 19/23 30/15
**defect [1]** 13/20
**defects [3]** 14/3 14/11 16/8
**defendant [3]** 1/17 2/9 17/24
**defendant's [1]** 8/23
**defendants [1]** 18/14
**defenses [2]** 7/24 29/20
**delayed [1]** 19/3
**demand [3]** 27/7 28/25 29/1
**demanded [1]** 27/8
**denied [1]** 7/14
**deny [1]** 12/25
**depend [1]** 31/11
**deputy [1]** 4/6
**determination [4]** 30/22 31/16 31/17 32/15
**determine [4]** 18/13 18/17 18/24 28/10
**determined [2]** 18/10 18/11
**dictate [2]** 10/5 25/12
**did [4]** 7/25 10/24 14/20 31/22
**didn't [4]** 6/23 7/15 13/11 23/18
**different [3]** 13/2 23/24 27/1
**digital [1]** 1/24
**direct [4]** 19/25 23/21 29/15 29/24
**directed [1]** 24/4
**directly [1]** 12/15
**disagree [2]** 12/17 12/20
**disagreed [1]** 7/16
**discretion [1]** 19/22
**discussion [1]** 23/11
**discussions [4]** 19/17 24/6 25/24 26/2
**dispute [3]** 23/10 23/13 24/7
**distinction [3]** 6/23 7/2 12/10
**DISTRICT [8]** 1/1 1/1 34/1 34/2 34/5 34/5 34/13 34/13
**DIVISION [2]** 1/2 34/14
**do [25]** 5/8 5/13 6/21 13/13 13/22 14/2 19/6 21/2 21/4 21/24 22/15 22/17 24/23 25/1 25/21 25/22 26/11 27/18 28/7 29/15 30/1 30/17 31/15 31/24 32/19
**docket [2]** 14/16 33/11
**does [2]** 5/23 17/24
**doesn't [1]** 13/6
**Doing [1]** 11/8
**don't [19]** 7/4 10/22 16/13 17/12 20/16 21/4 22/3 22/8 22/21 23/9 23/20 25/3 25/7 25/14 25/20 25/23 26/24 27/2 28/3
**done [4]** 7/5 9/3 26/25 28/11
**down [1]** 28/24
**due [2]** 9/24 21/2

## E

**each [2]** 22/13 26/17
**earlier [3]** 6/8 8/12 8/12
**easy [2]** 23/21 27/4

**echoed [1]** 15/14
**effect [2]** 7/6 13/24
**effectuate [3]** 5/19 11/15 20/22
**effort [2]** 19/16 23/23
**either [2]** 22/7 31/25
**Eleventh [9]** 7/6 7/16 7/21 9/24 13/14 13/18 13/23 14/9 16/7
**else [6]** 17/7 17/8 31/3 32/22 33/3 33/15
**end [6]** 13/10 15/25 21/16 23/2 25/8 31/25
**engage [1]** 24/6
**entails [1]** 15/18
**entered [1]** 8/16
**entire [1]** 18/16
**entitled [1]** 34/7
**enumerable [1]** 27/22
**ESQ [7]** 2/2 2/5 2/9 2/9 2/12 2/16 2/16
**et [6]** 1/9 1/12 1/16 3/7 4/10 4/12
**et al [1]** 3/7
**ethical [3]** 21/10 21/11 22/25
**ethically [2]** 22/24 25/1
**ethics [1]** 21/6
**even [2]** 4/4 22/3
**event [2]** 9/20 29/13
**everyone [3]** 4/1 16/15 21/23
**everything [2]** 6/13 18/1
**evidence [1]** 10/12
**exact [2]** 22/19 26/9
**exactly [1]** 23/17
**example [1]** 9/7
**excitement [1]** 28/22
**excuse [1]** 31/16
**existing [5]** 9/16 10/12 16/19 17/5 21/24
**expectation [1]** 19/15
**expedite [1]** 33/12
**expedited [1]** 33/14
**expenditure [1]** 23/22
**expense [1]** 28/9
**expired [1]** 13/20
**explain [1]** 15/19
**expressly [1]** 16/6
**extent [1]** 6/20

## F

**face [1]** 11/18
**fact [3]** 13/19 22/2 22/20
**failed [1]** 33/7
**fair [7]** 9/17 21/17 21/19 22/6 25/17 25/19 25/22
**fairness [1]** 10/7
**faith [5]** 10/24 19/16 20/16 22/1 22/17
**false [1]** 27/10
**familiar [2]** 18/23 33/7
**far [1]** 18/9
**FCRR [2]** 2/20 34/12
**federal [1]** 18/16

# F

**fee [1]** 27/7
**feel [1]** 28/21
**fees [9]** 16/4 18/10 18/13 18/17
  18/25 23/15 28/1 28/9 29/3
**file [8]** 12/2 14/7 14/21 29/24 29/25
  30/4 30/8 31/23
**filed [8]** 5/2 5/2 5/4 5/5 10/20 14/16
  19/2 30/8
**filing [1]** 6/17
**final [1]** 23/4
**finality [1]** 32/14
**find [2]** 22/16 31/2
**finding [1]** 18/25
**fine [1]** 32/7
**firm [3]** 18/19 27/21 27/22
**first [26]** 3/4 4/4 6/21 7/3 8/25 10/2
  13/12 13/15 14/15 14/22 15/11 16/12
  17/15 17/18 19/9 20/2 20/10 23/5
  24/4 24/6 24/8 24/12 26/11 29/10
  30/17 30/18
**FLORIDA [9]** 1/1 1/4 2/7 2/14 2/20
  2/21 34/2 34/6 34/13
**focus [1]** 5/1
**follow [1]** 22/16
**followed [1]** 10/13
**forecast [2]** 15/21 30/17
**forecasted [1]** 16/5
**forecasting [1]** 16/24
**forefront [1]** 15/24
**foregoing [1]** 34/6
**foremost [3]** 10/2 15/12 16/13
**foreshadow [1]** 31/22
**form [2]** 16/13 30/22
**format [1]** 34/8
**forward [9]** 10/16 12/14 12/17 12/18
  17/14 18/3 18/5 25/10 27/18
**found [1]** 8/15
**founded [1]** 18/20
**frankly [1]** 11/4
**fruitful [1]** 29/14
**full [1]** 10/6
**fundamental [1]** 10/7
**fundamentally [1]** 29/8
**further [1]** 30/24

# G

**generous [1]** 9/18
**get [17]** 5/21 14/18 15/3 16/15 22/10
  22/20 23/18 25/23 27/2 27/14 27/25
  28/6 28/7 29/1 29/23 30/2 33/13
**getting [3]** 9/10 9/10 27/23
**give [2]** 20/11 30/7
**given [6]** 6/13 8/23 11/2 16/7 17/17
  19/18
**go [29]** 5/18 5/21 5/24 9/5 9/14 9/18
  12/14 12/16 12/18 15/21 19/19 20/16
  20/20 21/7 21/20 21/25 22/2 22/4
  22/13 22/14 22/17 26/16 26/20 27/17

**goes [2]** 8/11 15/11
**going [37]**
**gone [1]** 18/9
**good [36]**
**Good's [2]** 27/22 28/21
**good-faith [1]** 19/16
**grain [1]** 11/2
**great [1]** 28/6
**Greg [1]** 3/13
**ground [1]** 19/17
**groups [2]** 27/1
**guess [2]** 19/10 25/8

# H

**had [7]** 8/1 10/6 12/7 13/20 17/10
  24/21 24/22
**half [3]** 14/24 18/5 19/2
**hand [1]** 28/16
**happen [4]** 13/15 14/25 17/16 31/17
**happy [3]** 5/18 31/12 32/13
**has [25]** 4/4 5/2 5/4 5/10 5/15 6/8
  7/6 9/9 10/5 13/14 14/5 16/7 17/18
  18/6 18/7 18/8 18/21 18/22 19/3
  21/12 21/17 22/11 22/11 25/18 33/6
**Hatch [2]** 2/17 8/3
**have [49]**
**having [7]** 9/3 11/6 19/9 19/22 21/19
  23/6 32/7
**he [8]** 17/24 17/24 17/25 18/1 18/3
  19/3 22/2 25/19
**he's [3]** 17/25 27/6 27/6
**hear [1]** 8/19
**heard [4]** 18/4 19/8 19/9 31/19
**hearing [3]** 1/20 12/6 21/7
**hearings [1]** 16/5
**held [1]** 12/3
**here [7]** 3/22 7/7 7/19 9/25 25/18
  27/13 27/25
**Here's [1]** 19/5
**hijack [1]** 10/4
**him [2]** 27/11 28/24
**his [4]** 11/2 16/2 17/13 18/2
**history [1]** 19/19
**hold [2]** 15/22 28/3
**Holland [1]** 2/13
**Honor [78]**
**Honor's [4]** 15/6 20/20 22/16 32/14
**HONORABLE [6]** 1/20 8/8 18/7
  21/3 21/4 25/21
**hope [1]** 10/15
**horse [1]** 15/13
**hostage [1]** 28/4
**how [7]** 15/8 22/17 23/2 28/15 30/6
  30/7 31/11
**Howard [4]** 2/20 34/5 34/10 34/12
**hurdles [1]** 16/9

# I

**I'd [1]** 16/22

**I'll [9]** 4/2 4/6 8/22 14/7 19/10 28/24
  29/24 30/7 30/18
**I'm [20]** 3/21 3/22 7/18 7/23 19/11
  20/9 21/5 21/21 23/21 24/11 24/25
  27/4 27/9 27/10 28/11 29/8 29/15
  29/20 31/13 33/6
**I've [4]** 9/3 26/25 27/2 27/3
**ideal [1]** 23/6
**identify [1]** 4/15
**III [1]** 2/12
**Illinois [3]** 2/4 2/11 2/18
**immediately [1]** 11/21
**impact [1]** 11/24
**important [2]** 12/5 17/23
**inadequacy [1]** 15/15
**inadequate [2]** 8/15 12/14
**inaudible [1]** 13/6
**INC [4]** 1/6 1/12 3/6 4/10
**include [1]** 17/2
**including [1]** 18/24
**inclusive [1]** 34/8
**independent [2]** 23/16 23/16
**indicated [2]** 14/10 21/20
**indication [1]** 9/8
**initially [1]** 7/14
**inquire [1]** 30/21
**instance [1]** 17/6
**instruct [1]** 20/25
**instructed [1]** 10/21
**instruction [1]** 20/20
**instructions [1]** 22/16
**intend [2]** 6/21 26/19
**intent [5]** 25/25 30/2 31/7 33/6 33/8
**interest [18]** 8/7 9/6 9/9 9/9 9/10
  10/11 11/2 12/6 12/24 13/25 14/2
  15/16 15/19 16/3 17/13 17/23 18/2
  23/24
**interim [8]** 5/16 5/16 20/24 22/15
  23/3 23/12 30/22 31/12
**interrogatory [1]** 31/23
**interrupt [1]** 27/11
**intervene [19]** 6/9 6/9 7/11 7/12
  7/14 8/9 9/23 10/1 11/20 11/23 12/2
  12/8 12/12 12/12 12/22 13/1 13/3
  13/4 15/13
**intervenor's [1]** 23/25
**intervenors [5]** 2/16 3/22 15/14
  23/13 33/19
**intervention [26]** 6/3 6/4 6/17 6/20
  6/21 7/3 7/5 12/11 12/13 15/23 16/24
  16/25 17/1 20/2 20/4 20/10 29/10
  29/11 29/17 30/1 30/12 30/20 31/9
  31/13 31/16 32/14
**intimately [1]** 33/7
**involve [1]** 24/16
**is [99]**
**issue [14]** 17/5 17/10 17/14 17/17
  17/18 20/15 23/15 23/16 29/2 29/12
  29/16 29/19 29/22 30/16
**issues [2]** 17/8 33/14

**I**

it [88]

it's [16]  9/17 10/12 17/12 20/16
22/22 23/6 23/22 26/25 27/13 28/1
29/9 29/17 30/2 30/8 31/7 33/8

its [1]  11/18

**J**

Joe [2]  3/18 4/22
join [1]  28/22
joined [1]  3/12
jointly [1]  27/22
JONATHAN [3]  2/16 3/22 4/23
Jones [4]  2/20 34/5 34/10 34/12
JOSEPH [1]  2/12
JUDGE [4]  1/21 19/13 21/16 27/16
judgment [1]  18/12
Judicial [1]  34/8
just [22]  4/6 6/5 7/12 8/12 12/4
12/11 12/21 14/19 17/1 22/5 22/13
26/6 26/7 26/12 27/18 30/11 30/16
30/21 31/1 31/7 32/9 32/20

**K**

Kate [2]  3/16 4/20
KATHLEEN [1]  2/9
keeps [3]  17/22 18/3 19/2
kind [1]  15/1
Knight [1]  2/13
know [6]  5/22 10/23 21/5 22/3 25/7
27/9
knowledge [1]  8/10
known [1]  12/7

**L**

La [1]  2/17
LALLY [3]  2/9 3/16 4/20
language [2]  11/14 11/17
languish [1]  33/9
large [1]  27/1
largest [2]  11/1 29/22
last [1]  27/8
latched [1]  13/19
later [2]  9/11 19/25
Latham [1]  2/10
law [2]  2/6 18/24
lead [3]  5/16 20/24 22/15
learn [2]  6/24 13/12
least [2]  15/20 26/4
leave [5]  9/22 15/13 16/10 31/7
31/13
less [4]  11/3 21/24 23/6 25/20
lesson [2]  6/24 13/12
let [7]  3/8 4/14 8/19 14/18 19/25
27/18 33/8
let's [5]  3/3 5/1 15/21 25/24 29/1
leverage [2]  21/12 22/12
Lewis [1]  2/17
like [8]  6/18 15/2 15/2 20/5 20/7

22/5 30/22 31/25
likely [2]  29/13 31/15
limitations [1]  13/20
LIMITED [4]  1/16 3/6 4/11 4/12
line [1]  19/24
literally [2]  11/23 19/3
litigation [3]  7/25 9/12 23/14
LLC [1]  2/17
LLP [2]  2/10 2/13
logic [2]  7/21 25/20
long [1]  18/9
looking [1]  13/4
lot [2]  9/1 22/9

**M**

M.S.D [2]  1/9 4/12
Machiavellian [2]  13/16 21/13
made [3]  15/14 16/7 26/3
MAGISTRATE [1]  1/21
make [13]  12/22 14/20 19/14 23/3
24/11 26/23 28/3 28/17 28/18 28/25
31/15 31/17 33/5
makes [3]  9/1 22/8 24/2
making [1]  33/12
many [8]  5/25 6/5 7/25 8/2 8/12
17/12 26/19 26/19
March [2]  14/17 15/6
March 20 [1]  14/17
MARK [5]  2/9 3/15 4/20 22/14
25/18
matter [12]  5/1 5/17 6/15 7/10 12/21
18/13 19/19 29/22 30/18 31/4 31/19
34/7
matters [4]  4/5 4/15 14/12 14/13
maximize [1]  28/1
may [16]  7/10 10/18 10/19 15/11
17/8 17/20 17/21 25/13 29/4 29/15
29/20 30/1 30/6 30/15 30/21 33/14
me [19]  3/8 4/14 7/20 8/19 14/18
19/25 22/3 22/8 23/5 23/22 25/9
26/12 27/18 28/20 29/7 29/9 31/16
33/6 33/9
Meadows [1]  2/4
mean [3]  13/6 16/13 25/8
means [3]  22/3 25/4 25/7
mediation [12]  5/14 5/18 10/22
10/24 18/22 22/5 24/13 24/24 25/10
27/13 29/9 29/13
mediator's [1]  25/11
Medical [1]  3/12
meet [1]  19/14
members [2]  8/4 14/1
memorandum [1]  30/1
mere [1]  18/21
merits [3]  5/22 14/7 27/19
MESTER [14]  2/9 3/16 4/20 8/19
15/8 17/22 19/2 21/15 24/18 25/18
26/22 31/4 32/16 33/1
Mester's [1]  22/14
MICHAEL [4]  2/2 2/5 3/11 4/17

MIDDLE [4]  1/1 34/2 34/5 34/13
million [1]  27/8
mind [4]  19/20 24/21 24/22 27/17
misbehavior [1]  22/25
missing [1]  7/3
money [1]  23/23
more [12]  6/12 9/16 10/11 12/5 12/8
12/15 16/14 21/18 21/25 25/18 26/23
33/7
Moreover [2]  11/10 11/20
morning [6]  3/10 3/14 3/17 3/20
3/21 4/1
most [1]  4/4
motion [17]  5/11 6/19 9/22 10/2
10/20 12/25 14/11 14/16 14/20 15/4
15/13 15/23 17/1 19/1 20/3 20/12
31/17
move [2]  30/6 31/1
moved [1]  11/20
moving [2]  2/16 3/22
Mr [37]
Mr. [6]  16/1 16/17 24/7 24/18 27/22
32/6
Mr. Good [3]  16/1 16/17 32/6
Mr. Good's [1]  27/22
Mr. Mester [1]  24/18
Mr. Piper [1]  24/7
much [4]  12/15 15/8 30/7 30/7
must [2]  9/2 27/5
my [12]  6/24 11/18 13/11 13/12 16/6
18/9 18/18 18/19 30/2 31/7 33/6 33/8

**N**

necessarily [2]  13/6 17/12
necessary [4]  19/23 29/7 30/15
31/25
need [5]  28/2 29/5 29/9 30/8 30/17
needs [2]  13/15 21/25
negotiated [1]  26/5
never [4]  9/3 11/5 18/4 26/8
new [4]  9/21 12/2 14/21 30/3
next [1]  32/14
no [24]  1/6 1/9 1/12 3/5 4/11 7/19
14/23 17/9 19/16 19/25 20/15 21/1
21/12 22/10 22/11 24/25 28/21 29/5
29/13 31/5 31/20 32/18 33/2 33/4
none [1]  16/20
nonetheless [1]  28/18
North [3]  2/10 2/13 2/17
Nos [1]  4/9
not [71]
note [6]  4/2 4/7 5/2 5/4 17/24 30/14
notes [1]  34/7
nothing [6]  18/8 30/24 32/24 33/16
33/18 33/19
NOVEMBER [2]  1/3 20/6
now [11]  5/25 6/10 7/20 16/4 18/21
21/18 23/14 28/16 31/8 31/14 32/13
number [1]  15/20

**O**

object [1]  13/9
objection [2]  31/20 32/18
obstacle [1]  27/24
obviously [1]  14/6
offer [1]  9/5
offers [1]  18/23
Office [1]  2/6
Official [2]  34/5 34/12
often [1]  33/6
Okay [2]  28/12 30/24
once [2]  27/25 28/2
one [8]  5/5 10/15 14/8 17/11 23/13
26/23 28/16 29/8
only [6]  14/10 17/5 23/7 24/13 27/24
28/7
open [5]  19/20 26/14 27/17 31/7
31/13
opinion [2]  18/9 24/20
Oppenheim [1]  2/17
opportunity [4]  5/15 10/6 10/6
19/13
oppose [2]  6/4 32/4
opposing [1]  25/13
opposite [1]  18/8
optimal [1]  23/6
order [6]  3/2 15/6 19/7 19/11 31/23
32/20
orderly [1]  10/10
other [14]  4/3 8/2 10/15 12/1 14/12
14/13 21/9 22/14 23/15 26/5 26/17
29/20 31/2 31/3
our [14]  5/9 6/19 9/15 10/20 13/25
14/2 19/1 21/11 21/14 22/20 22/21
24/1 24/20 27/21
ours [1]  11/24
out [8]  11/16 16/16 16/18 21/13 23/7
26/13 30/3 31/2
over [2]  18/7 22/12
overcome [1]  16/8
own [3]  8/10 9/9 29/15
owner [1]  3/12

**P**

P.A [3]  1/9 2/6 4/12
p.m [1]  1/4
page [1]  34/8
pages [4]  15/4 15/9 15/9 34/7
paper [2]  9/15 24/1
parse [1]  6/25
part [6]  5/11 12/4 19/1 19/9 20/15
28/13
participate [6]  11/8 16/17 20/23
22/24 25/1 26/8
parties [14]  4/14 7/16 19/14 19/16
19/19 19/23 23/8 23/9 25/3 26/12
26/13 27/14 29/14 33/8
PARTNERSHIP [4]  1/16 3/6 4/11
4/13

party [3]  18/11 18/17 20/19
party's [1]  18/17
passed [1]  6/8
pending [1]  18/6
people [1]  8/1
perfectly [1]  23/20
person [1]  18/4
perspective [1]  24/3
ph [1]  8/3
PHILLIP [3]  2/16 3/24 4/23
PIPER [11]  2/16 3/22 3/23 4/23
16/9 19/8 24/7 27/20 31/6 31/21 33/3
place [1]  13/6
plain [2]  11/14 11/17
plainly [1]  9/25
Plaintiff [4]  1/7 1/10 1/13 2/2
plaintiffs [27]  3/11 4/18 5/5 5/8 6/11
6/12 7/14 8/6 8/6 8/14 8/15 9/8 9/21
9/22 10/22 10/23 11/20 11/22 13/21
13/22 18/14 24/14 24/16 27/2 32/3
32/24 33/16
plaintiffs' [4]  6/14 14/15 22/19
26/14
play [1]  16/18
pleadings [2]  33/10 33/12
please [3]  3/9 4/8 4/16
point [8]  11/6 11/12 16/11 20/11
28/8 29/9 29/11 29/13
PORCELLI [1]  1/20
position [14]  5/6 6/2 7/11 8/23 8/24
9/4 13/4 13/25 19/6 28/21 31/7 31/8
31/10 32/16
positions [1]  31/3
possible [5]  11/2 24/9 27/5 27/24
29/2
potential [1]  10/3
potentially [1]  23/23
power [2]  16/21 21/4
precedence [1]  10/3
precondition [1]  22/1
preconditions [1]  9/15
prejudging [1]  17/7
prejudice [1]  10/3
prejudiced [1]  9/23
preliminary [1]  5/12
premises [1]  11/11
prepared [5]  5/20 6/1 9/14 9/18
21/20
present [1]  7/11
presented [1]  5/11
preserve [2]  31/24 32/2
pressing [1]  4/5
presumptuous [2]  16/14 17/11
pretending [1]  10/16
previous [1]  15/6
previously [5]  5/10 7/8 11/13 14/5
16/5
prior [2]  12/7 19/17
priority [2]  33/9 33/12
probably [1]  29/22

procedural [6]  12/1 13/20 14/3
14/11 18/8 19/18
procedure [1]  10/9
Proceedings [2]  1/24 33/22
process [6]  10/10 10/13 16/18 23/3
25/11 26/4
proposed [2]  13/5 23/13
provide [1]  19/12
proving [1]  28/2
purposes [3]  23/11 23/15 25/12
pursuant [1]  34/6
pursuing [1]  26/19
put [2]  20/8 30/15
putative [3]  8/5 17/25 18/1
putting [1]  9/8 15/12 16/2

**Q**

question [6]  8/7 10/7 13/11 15/15
24/12 26/11
questioning [2]  6/6 8/11
quickly [1]  30/3

**R**

rather [4]  8/4 9/11 12/2 19/18
reach [4]  21/23 22/8 24/14 26/13
reached [2]  24/9 24/9
reason [2]  7/13 16/14
reasonable [7]  9/17 21/17 21/19
22/6 25/18 25/19 25/22
reasoning [1]  12/12
reasons [2]  15/20 17/12
recalls [1]  10/23
recess [1]  33/21
recognize [2]  12/20 25/25
record [10]  3/9 4/2 4/7 4/16 10/17
16/4 16/4 28/8 28/18 28/20
recording [1]  1/24
refuse [1]  9/4
regard [1]  33/8
regarding [7]  8/23 8/24 15/25 16/1
16/2 20/15 29/17
regardless [3]  15/22 29/12 33/11
regards [1]  14/15
regulations [1]  34/8
related [1]  4/6
relief [3]  27/23 27/25 29/1
remaining [3]  23/12 29/22 33/11
remarkable [1]  22/3
reminded [1]  33/6
renew [4]  14/19 15/2 15/2 15/4
rephrase [1]  20/1
reply [4]  15/7 30/5 30/7 30/8
report [1]  23/19
Reporter [4]  2/20 34/3 34/5 34/12
represent [14]  6/12 6/15 8/7 10/11
12/23 13/3 13/5 13/25 16/10 16/19
17/24 22/19 22/22 26/9
representation [2]  17/3 27/14
representatives [4]  5/17 8/4 8/5 8/5
represented [1]  27/19

**R**

representing [3]  8/13 14/2 17/16
represents [1]  17/24
request [6]  5/3 6/2 6/17 13/2 30/1
 30/19
requested [1]  16/3
requesting [2]  14/19 15/9
resolution [4]  9/10 28/23 31/14
 33/13
resolve [4]  10/14 29/7 29/10 29/11
resolved [4]  17/18 23/18 31/9 31/12
respect [2]  9/24 21/3
respectfully [2]  7/16 12/17
respond [8]  6/22 10/18 17/20 20/2
 20/3 29/4 29/5 33/10
response [10]  5/4 6/17 14/7 14/20
 14/23 15/10 20/6 20/10 29/24 30/19
reverse [15]  11/7 11/8 20/16 20/17
 20/22 20/23 21/1 21/7 22/4 22/23
 22/24 24/19 25/2 25/14 26/10
right [37]
rights [1]  32/2
ripe [1]  14/20
Road [1]  2/3
roadblock [1]  28/7
Rolling [1]  2/4
ROSS [4]  2/2 3/10 4/17 5/7
round [2]  13/13 13/13
RPR [2]  2/20 34/12
rule [5]  5/15 6/19 10/9 20/9 30/12
ruled [1]  12/19
rules [1]  8/17
ruling [6]  5/17 9/25 11/24 16/6 30/3
 31/24
rulings [1]  33/13
rush [3]  15/17 17/14 18/3
rushed [2]  18/8 19/3
rushing [2]  10/15 18/5

**S**

said [6]  5/20 9/15 19/22 21/19 23/6
 25/18
Salle [1]  2/17
salt [1]  11/2
same [9]  7/7 7/13 8/22 9/25 22/19
 25/9 25/10 26/9 30/2
Sansone [2]  19/13 27/16
say [10]  9/2 20/18 21/2 21/5 21/22
 22/3 22/21 26/20 27/5 28/16
saying [8]  7/18 7/22 7/23 12/16
 13/14 18/1 21/21 24/1
says [2]  11/15 20/21
schedule [2]  20/12 30/13
scheduled [1]  4/3
scheme [2]  13/17 21/13
Schwanke [1]  4/24
second [2]  24/15 26/16
Section [1]  34/6
see [9]  16/6 20/10 24/4 24/7 26/4

28/22 29/13 29/21 30/19
seek [1]  11/15
seeking [1]  28/20
seem [1]  27/3
seems [5]  22/8 23/22 25/8 27/6
 28/20
seen [4]  18/21 18/22 26/25 27/3
send [3]  27/13 27/16 29/8
sending [1]  27/6
sense [4]  9/2 17/4 22/9 24/2
sent [3]  13/14 20/17 29/12
sentence [1]  19/10
sequence [1]  8/22
set [3]  14/23 28/8 30/13
sets [2]  10/9 23/9
settle [10]  5/24 11/3 11/5 12/16
 19/24 21/13 22/7 25/20 26/20 28/19
settled [2]  24/7 27/22
settlement [53]
settlement's [1]  11/14
settlements [1]  28/6
settles [1]  5/22
seven [2]  30/4 30/9
shape [1]  16/13
should [33]  6/9 7/3 7/4 7/12 7/21
 8/16 10/1 10/2 10/4 10/13 11/1 11/24
 12/2 12/16 12/18 12/19 12/25 13/9
 14/11 14/14 14/22 15/15 15/16 15/17
 16/19 17/15 17/15 17/16 19/19 21/23
 25/19 31/17 32/22
shouldn't [1]  12/16
sides [1]  27/17
signal [1]  27/6
significant [1]  12/9
simple [2]  7/10 18/15
simply [7]  9/6 14/19 17/1 21/1 22/15
 22/22 22/23
sincerely [1]  21/18
sit [3]  7/25 28/24 32/1
situation [2]  21/9 26/16
six [1]  18/7
so [29]  5/6 6/16 7/2 7/20 11/8 14/6
 15/1 16/10 16/24 20/3 20/7 21/1 23/8
 24/25 26/4 27/3 27/9 27/15 28/13
 29/15 29/24 30/2 30/17 31/25 32/1
 32/13 33/9 33/11 33/12
some [5]  11/24 14/10 26/7 30/22
 32/14
somebody [1]  26/9
someone [2]  17/7 17/8
something [4]  5/23 26/8 26/13 26/13
sometime [1]  30/3
sooner [1]  9/11
sophistry [1]  18/21
sorry [2]  24/25 27/10
sorts [1]  22/25
speak [1]  23/8
special [1]  7/24
squarely [1]  14/9
St [1]  2/17

stage [1]  32/13
stand [1]  15/6
standard [1]  13/23
start [1]  8/22
starting [2]  11/12 19/17
state [1]  3/8
stated [2]  8/23 25/21
statement [1]  11/19
statements [1]  10/25
STATES [7]  1/1 1/21 34/1 34/5 34/6
 34/9 34/13
status [2]  1/20 4/3
statute [1]  13/20
stay [1]  31/12
stayed [2]  32/1 32/7
STEIN [11]  1/9 4/11 4/18 6/11 8/5
 8/15 13/21 24/13 32/5 32/24 33/16
stenographic [1]  34/7
step [5]  24/8 24/13 24/15 26/11
 26/16
still [2]  7/6 8/14
Street [1]  2/13
subject [1]  7/24
submitted [2]  9/15 24/1
substance [2]  7/9 12/21
successful [1]  23/20
such [4]  5/17 8/1 8/17 13/9
sufficient [1]  15/9
suggest [1]  32/12
suggested [1]  23/25
suggesting [3]  23/21 24/12 27/4
Suite [5]  2/3 2/10 2/13 2/17 2/20
supposed [1]  28/15
sure [5]  16/8 24/11 28/3 29/20 33/10

**T**

table [1]  26/2
take [7]  6/16 10/2 13/4 14/7 28/16
 29/16 32/23
taken [2]  11/1 34/7
takes [1]  10/5
taking [1]  11/17
talk [2]  18/4 28/25
talked [1]  21/6
talking [3]  12/21 17/22 18/3
TAMPA [8]  1/2 1/4 2/7 2/13 2/13
 2/14 2/21 34/14
TECHNOLOGY [3]  1/12 4/10 4/24
tee [1]  29/11
tell [1]  7/20
terms [4]  11/5 11/16 26/5 26/7
testimony [2]  6/6 8/11
than [13]  6/12 9/17 9/16 10/12 12/2
 19/25 21/9 21/19 21/24 21/25 23/6
 25/19 33/7
Thank [20]  3/20 3/23 3/25 4/19 4/21
 4/25 8/20 8/21 29/6 31/5 32/21 33/20
Thanksgiving [2]  20/6 20/7
that [167]
that's [30]  5/22 7/9 7/18 10/16 12/4

**T**

that's... **[25]**  12/8 12/20 12/24 13/2 13/12 14/25 16/14 16/16 17/17 17/17 17/18 21/8 23/17 23/25 24/1 24/17 24/21 26/2 27/8 27/24 28/2 29/1 29/19 29/22 31/11

their **[19]**  5/11 6/8 7/11 8/7 8/10 8/10 9/8 11/22 12/1 12/12 12/25 14/1 14/2 14/3 14/3 14/11 16/2 17/8 29/15

them **[18]**  7/10 7/12 11/6 11/15 12/3 12/22 13/3 13/8 14/24 16/21 20/25 22/13 22/20 26/8 27/3 27/13 28/6 33/11

themselves **[1]**  4/15

then **[35]**

theoretically **[1]**  30/12

there **[16]**  5/4 7/15 7/19 10/16 14/22 17/9 18/7 19/16 21/1 21/11 23/7 24/15 26/4 29/20 32/1 32/13

there's **[4]**  10/11 13/9 15/19 25/25

therefore **[1]**  8/16

these **[3]**  7/25 18/18 22/7

they **[39]**

they're **[8]**  7/7 12/15 13/4 22/20 22/21 26/6 28/19 28/20

they've **[2]**  6/4 11/22

thing **[1]**  27/24

things **[1]**  14/8

think **[31]**  6/11 7/4 8/16 9/1 9/16 9/17 9/24 9/24 12/8 12/18 12/18 13/4 14/8 15/12 16/6 16/12 16/14 16/17 17/12 20/18 21/5 23/7 24/2 24/23 27/4 28/2 28/5 28/6 28/7 28/16 30/9

thinks **[2]**  22/2 25/19

this **[62]**

those **[7]**  4/7 4/7 4/15 6/25 11/5 16/9 32/2

though **[4]**  4/4 9/14 12/10 14/9

thought **[2]**  15/1 26/11

three **[9]**  4/5 7/5 14/24 18/5 19/2 23/8 24/24 25/9 27/9

three-way **[1]**  24/24

through **[5]**  6/13 16/25 23/1 25/11 34/7

throughout **[1]**  18/15

time **[16]**  5/9 6/8 8/1 8/8 8/17 13/9 13/12 15/2 20/13 23/23 25/10 27/16 30/7 32/20 32/23 33/21

timely **[1]**  7/5

Title **[1]**  34/6

today **[2]**  3/12 25/18

together **[3]**  16/15 28/5 28/17

tolling **[1]**  22/21

too **[4]**  9/17 14/18 18/9 33/6

TRAINING **[2]**  1/12 4/10

transcribed **[1]**  1/24

transcript **[3]**  1/20 34/3 34/8

transcription **[2]**  1/25 34/7

transcriptionist **[1]**  1/24

treated **[1]**  8/3

trial **[4]**  5/20 5/24 5/24 26/20

true **[3]**  18/8 18/15 34/6

truth **[1]**  18/15

try **[9]**  5/19 8/1 10/14 16/15 18/14 20/21 22/9 26/13 26/17

trying **[8]**  7/7 7/20 11/23 18/3 21/5 22/19 25/11 26/17

TTA **[19]**  4/24 5/3 5/10 7/24 8/2 9/21 11/21 11/21 13/24 18/14 22/11 24/16 25/16 26/14 26/18 26/21 31/9 31/23 33/19

TTA's **[1]**  13/18

two **[6]**  4/3 11/15 23/15 26/7 26/12 26/12

typically **[1]**  22/5

**U**

ultimately **[3]**  16/20 21/23 25/11

umpteenth **[1]**  9/7

unacceptable **[1]**  25/13

unclear **[1]**  16/7

under **[2]**  21/13 22/7

underbid **[2]**  26/17 26/18

underbidding **[1]**  22/13

undercut **[1]**  8/1

undersigned **[1]**  34/7

understand **[8]**  16/1 17/19 20/19 21/3 22/17 25/4 25/14 26/25

understanding **[2]**  5/9 24/12

unethical **[1]**  11/9

unique **[2]**  17/4 19/18

UNITED **[7]**  1/1 1/21 33/22 34/5 34/6 34/9 34/13

unless **[2]**  10/13 11/16

unlike **[1]**  7/24

until **[6]**  5/14 7/25 8/17 10/5 15/3 32/8

up **[4]**  14/7 29/11 29/16 32/23

upon **[10]**  6/6 8/11 11/21 13/19 13/19 16/3 17/1 18/20 19/17 30/18 20/17 21/13

us **[7]**  5/14 13/24 15/15 16/10 20/8 20/17 21/13

use **[1]**  7/7

using **[3]**  1/24 22/20 22/21

**V**

vacated **[3]**  5/13 7/8 14/5

valid **[1]**  26/18

variety **[1]**  23/24

VARNER **[3]**  2/12 3/18 4/22

very **[8]**  18/15 18/23 19/14 20/21 22/23 22/23 29/20 30/3

via **[1]**  1/24

view **[1]**  24/4

vis **[4]**  17/5 17/5 17/10 17/10

void **[1]**  11/16

vs **[4]**  1/14 3/6 4/10 4/12

**W**

Wabash **[1]**  2/10

wait **[1]**  31/14

waited **[2]**  8/9 11/22

waiting **[1]**  18/5

walk **[3]**  23/7 26/1 27/7

Walking **[1]**  23/1

Wanca **[1]**  2/3

want **[19]**  5/21 14/6 14/20 19/8 19/14 20/2 20/10 22/16 22/21 24/11 25/23 26/22 28/8 28/13 28/25 29/14 29/25 31/19 31/24

wants **[1]**  21/12

was **[14]**  5/12 5/13 7/15 11/13 13/13 13/16 13/23 19/1 23/25 24/17 26/11 26/12 28/21 32/11

wasn't **[1]**  6/25

waste **[1]**  27/15

Watkins **[1]**  2/10

way **[10]**  9/25 13/12 16/13 17/11 19/20 20/18 21/5 22/16 23/7 24/24

ways **[1]**  23/24

we **[122]**

we'd **[2]**  20/7 31/25

we'll **[3]**  28/7 29/11 33/21

we're **[18]**  3/12 5/20 9/13 9/18 12/21 16/8 19/5 20/22 21/20 22/18 26/9 29/10 29/16 31/2 31/12 31/14 32/7 32/13

we've **[3]**  9/15 21/6 28/5

week **[1]**  20/8

welcome **[1]**  18/20

well **[20]**  4/7 4/15 5/3 7/9 7/18 13/2 15/21 16/12 17/9 19/9 19/25 21/8 22/10 27/8 27/12 27/21 28/24 31/11 31/22 32/19

went **[1]**  13/13

were **[6]**  6/7 8/13 12/5 17/6 24/14 26/10

weren't **[1]**  23/19

what **[40]**

what's **[11]**  5/2 6/2 6/23 7/11 8/24 12/5 21/9 26/2 26/23 31/9 32/16

whatever **[1]**  33/13

when **[4]**  12/5 20/3 25/3 30/12

where **[10]**  9/4 16/10 22/18 26/8 26/12 26/16 27/23 28/8 28/16 31/2

whether **[8]**  13/3 15/22 16/2 19/23 23/13 24/8 25/9 29/17

which **[18]**  5/10 5/12 5/13 10/7 10/8 10/10 10/14 14/4 15/4 15/20 16/5 17/2 17/10 19/1 20/8 20/12 23/15 26/11

who **[10]**  8/1 10/10 15/16 15/16 16/19 17/7 17/15 17/17 21/12 21/12

whoever **[1]**  23/12

whole **[1]**  20/8

why **[13]**  7/11 11/13 12/24 15/19 17/12 23/25 24/1 26/4 27/12 27/18

**W**

why... **[3]**  27/18 28/2 32/9
**will [26]**  5/2 5/4 5/23 8/3 16/9 17/1
18/10 18/11 18/13 18/16 18/24 19/12
19/15 19/16 20/11 21/25 26/8 26/17
30/14 30/17 31/15 32/19 33/5 33/10
33/10 33/11
**Williams [1]**  3/13
**willing [4]**  16/17 26/3 27/17 28/19
**win [1]**  5/21
**wishes [1]**  6/20
**within [2]**  16/21 19/22
**without [7]**  9/11 9/14 17/7 17/11
22/1 22/14 23/3
**words [2]**  7/1 12/1
**work [5]**  16/16 23/3 25/11 26/13
28/17
**worked [1]**  28/5
**working [2]**  5/25 8/2
**worth [1]**  23/22
**would [51]**
**written [3]**  6/17 14/7 20/10

**Y**

**Year [1]**  30/3
**years [18]**  5/25 6/5 6/8 7/6 7/25 8/2
8/12 8/12 9/3 11/23 12/7 14/24 18/5
18/7 19/2 19/4 26/19 27/9
**yes [4]**  6/21 7/23 22/10 30/23
**yesterday [1]**  9/16
**you [63]**
**you'll [1]**  6/16
**you're [12]**  7/20 7/22 11/11 14/8
21/8 24/12 25/9 25/15 26/1 26/3
27/14 27/16
**you've [3]**  20/17 26/3 27/8
**you-all [1]**  19/7
**your [105]**
**your-all's [1]**  27/16
**yourself [1]**  23/11