## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| CIN-Q AUTOMOBILES, INC. and MEDICAL & CHIROPRACTIC CLINIC, INC., individually and on behalf of a class, | ) ) ) ) | |
| Plaintiffs, | ) ) | No.: 8:13-CV-01592-AEP |
| v. | ) ) | |
| BUCCANEERS LIMITED PARTNERSHIP, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) ) | |
| TECHNOLOGY TRAINING ASSOCS., INC. *et al.*, | ) ) ) | |
| Intervenors. | ) | |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE TO THE CLASS

Plaintiffs, Cin-Q Automobiles, Inc. and Medical & Chiropractic Clinic, Inc., (together "Plaintiffs"), on behalf of themselves and a proposed settlement class of similarly-situated persons (identified herein as the "Settlement Class"), respectfully request, pursuant to Fed. R. Civ. P. 23(e), that the Court enter an order (1) preliminarily approving the parties' proposed class-action Settlement Agreement (the "Agreement") attached as Exhibit 1, certifying the Settlement Class, appointing Plaintiffs as class representatives and their attorneys as class counsel; (2) approving the form of Class Notice attached as Exhibit B to the Agreement and its dissemination to the Settlement Class by U.S. mail and website, and agreeing to

decide, pursuant to the parties' agreement, whether additional notice should be sent by facsimile and/or publication; and (3) setting dates for opt-outs, objections, and a fairness hearing.

As discussed in the attached Memorandum, the Agreement is the result of hard-fought negotiations over many months with the assistance of Magistrate Judge Amanda Sansone, and it provides substantial relief to members of the Settlement Class. The Agreement provides, *inter alia*, for a Settlement Fund of up to $19.75 million; payments of $350 to $615 to Settlement Class members who submit Claims (to be reduced *pro rata* if and only if the Settlement Fund, after payment of fees and incentive awards, and notice and administration costs, is insufficient to fully pay the valid submitted Claims); Defendant's agreement to entry of an injunction ordering it not to send any further unsolicited facsimile advertisements; and potential awards of attorneys' fees, expenses, and incentive awards to the named Plaintiffs.

The parties agreed that notice is to be sent by U.S. mail to those class members for whom mailing addresses can be determined and by a settlement website. The parties further agreed that the Court will decide, in its discretion, whether additional notice should be given by facsimile and/or by newspaper publication, with Plaintiffs in favor of both forms of additional notice and with Defendant opposed to either form of additional notice. The Settlement Agreement provides for a release of claims as set forth therein.

A proposed Preliminary Approval Order is attached as <u>Exhibit 2</u> and will be submitted to the Court electronically as directed.

<u>MEMORANDUM OF LAW</u>

**I.      Background of the litigation and settlement discussions.**

This case arises out of faxed advertisements for Tampa Bay Buccaneers tickets allegedly sent by or on behalf of defendant Buccaneers Team LLC, formerly Buccaneers Limited Partnership ("BTL" or "Defendant") in 2009 and 2010. The case has a long procedural history, beginning in 2009 with Cin-Q Automobiles' first state-court action against Defendant, and the filing in 2013 of this federal action, *Cin-Q Auto. Inc. v. Buccaneers Ltd. P'Ship*, No. 13-cv-1592 (M.D. Fla.) (the "*Cin-Q* Action").

The essential facts surrounding the fax advertising in 2009–2010 that gave rise to this case are recited in Plaintiffs' Motion for Summary Judgment (*Cin-Q* Doc. 138), Plaintiffs' Motion for Class Certification (*Cin-Q* Doc. 207), and the Court's ruling denying both parties summary judgment in *Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship*, No. 8:13-CV-01592-AEP, 2014 WL 7224943 (M.D. Fla. Dec. 17, 2014). In short, from July 2009 through June 2010, a "fax broadcaster" hired by Defendant called FaxQom, arranged for the sending of 343,011 faxes advertising tickets to Tampa Bay Buccaneers games. (*Cin-Q* Doc. 207 at 3–10).

On August 28, 2009, Cin-Q filed a class-action TCPA action against BTL in Florida state court. (*Id.*) On or about June 15, 2013, Cin-Q filed this action in the United States District Court for the Middle District of Florida, and Plaintiffs filed a Second Amended Complaint ("SAC"), adding Medical & Chiropractic, Inc. as a Plaintiff on January 3, 2014.

On December 17, 2014, this Court denied both parties summary judgment. (Order, Doc. 167). The Court found there were genuine issues of material fact regarding the issue of whether BTL was liable as the "sender" of the faxes, ruling that a jury must decide the question. (*Id.*)

On March 25, 2016, Plaintiffs filed their initial Motion for Class Certification. (Doc. 207). Thereafter, this case was stayed during the pendency of a proposed settlement in *Technology Training Associates, Inc., et al. v. Buccaneers Ltd. P'ship*, Case No. 8:16-cv-01622-MSS-AEP (M.D. Fla. 2016) (the "*TTA* Action"). *See Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 697 (11th Cir. 2017) (reversing denial of Plaintiffs' motion to intervene in the *TTA* Action); *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, No. 8:16-CV-1622-T-AEP, 2019 WL 4751799, at *18 (M.D. Fla. Sept. 30, 2019) (granting Plaintiffs' motion to vacate preliminary approval and decertify the *TTA* settlement class).

On January 17, 2020, this Court ordered the parties to hold a settlement conference with Magistrate Judge Sansone and appointed Michael C. Addison as Interim Lead Counsel. (Doc. 284). The COVID-19 pandemic delayed the conference until September 22, 2020, when it was held via teleconference, and subsequent negotiations continued through Judge Sansone. (Doc. 312).

On or about June 9, 2021, the parties reached an agreement in principle that would resolve the claims in this litigation on a class-wide basis. Defendant continues to deny all material allegations of the SAC and denies liability.

During the pendency of this action, the Consumer & Governmental Affairs Bureau ("Bureau") of the Federal Communications Commission ("FCC"), the agency with authority to "implement" the TCPA, 47 U.S.C. § 227(b)(2), issued two relevant declaratory rulings. First, on December 9, 2019, the Bureau issued *In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling*, CG Docket Nos. 02-278, 05-338, Declaratory Ruling, 2019 WL 6712128 (CGAB Dec. 9, 2019) ("Amerifactors Bureau Order"), stating that a fax is not sent "to a telephone facsimile machine," as required for TCPA liability under 47 U.S.C. § 227(b)(1)(C), when it is received by the end-user using an "online fax service."

In *Daisy, Inc. v. Mobile Mini, Inc.*, 489 F. Supp. 3d 1287, 1296 (M.D. Fla. 2020), a judge in this District held that, following the Amerifactors Bureau Order, a plaintiff who received an unsolicited fax ad using an "online fax service" had no Article III standing and dismissed the case. *But see Ambassador Animal Hosp., Ltd. v. Hill's Pet Nutrition, Inc.*, No. 20 C 3326, 2021 WL 3043422, at *1 (N.D. Ill. Feb. 17, 2021) (denying motion to dismiss, holding the Amerifactors Bureau Order "flies in the face of years of precedent, established by the FCC . . . that the TCPA covers faxes sent to computers in addition to traditional fax machines").

In *Career Counseling, Inc. v. Amerifactors Fin. Grp., LLC*, No. 3:16-CV-03013-JMC, 2021 WL 3022677, at *12 (D.S.C. July 16, 2021), the district court denied class certification based on the Amerifactors Bureau Order, finding that users of "online fax services" could not be part of the class and that a "stand-alone" fax

machine class was not "ascertainable." *But see True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-CV-02219-HSG, 2020 WL 7664484, at *8 (N.D. Cal. Dec. 24, 2020) (holding Amerifactors Bureau Order did not foreclose class certification and certifying separate "online fax services" class and "stand-alone fax machine" class); *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, No. 2:16-CV-41-JLB-MRM, 2021 WL 719655, at *4 (M.D. Fla. Feb. 24, 2021) (vacating magistrate judge's report recommending denial of class certification, holding issue of whether users of "online fax services" have a claim is "a merits contention that is common to the class" properly decided "at trial or in a ruling on a summary-judgment motion" and "should not be resolved in deciding whether to certify a proposed class").

Second, on September 21, 2020, the Bureau issued *In re Akin Gump Strauss Hauer & Feld LLP Pet. for Expedited Clarification or Declaratory Ruling*, 2020 WL 5747205 (CGAB Sept. 21, 2020) ("Akin Gump Bureau Order"). Both Cin-Q Automobiles and Defendant filed comments on the petition that led to the Akin Gump Bureau Order. The Akin Gump Bureau Order stated that "a fax broadcaster is solely liable for TCPA violations when it engages in deception or fraud against the advertiser (including when a fax broadcaster violates its contract with the advertiser in a manner that is deceptive or fraudulent)," although it also ruled that "to the extent the advertiser is on notice of TCPA violations by its fax broadcaster and fails to take action to stop such behavior, it cannot claim that it remains deceived by the fax broadcaster's action and may be liable for such violations." (Akin Gump Bureau Order ¶¶ 3, 9). To Class Counsels' knowledge, only one court

has yet applied the Akin Gump Bureau Order. *See Crescent City Surgical Ctr. Operating Co., LLC v. Next Bio-Rsch. Servs., LLC*, No. CV 20-2369, 2021 WL 1985166 (E.D. La. May 17, 2021) (denying motion to dismiss at the pleading stage).

In light of all the facts and the potentially applicable authorities, including the Amerifactors Bureau Order and the Akin Gump Bureau Order, Plaintiffs and Class Counsel concluded that the Settlement is fair, reasonable, adequate and in the best interest of the Settlement Class. The Settlement provides substantial benefits to the Settlement Class and resolves all issues that were or could have been raised in this action without prolonged litigation and the risks and uncertainties inherent in litigation. Despite maintaining its denial of liability, and without admitting or conceding any wrongdoing, Defendant consented to the Settlement solely to avoid the expense, inconvenience, and inherent risks of litigation as well as continued disruption of its business operations. Based upon their review and analysis, Plaintiffs and Defendant agreed to and executed the Agreement.

## II.    Summary of the settlement.

If approved by the Court after notice to the Settlement Class, the parties' settlement agreement would resolve this action and the controversy about Defendant's fax advertisements sent at any time in 2009 or 2010 (the "Class Period"). The key terms of the Agreement are as follows:

a.    <u>Certification of a Settlement Class</u>. Solely for the purpose of implementing the Settlement, the parties have stipulated to certification of a Rule

23(b)(3) "Settlement Class" defined as, "All persons who received or were successfully sent in 2009 or 2010 one or more facsimile advertisements relating to tickets for Tampa Bay Buccaneers games." Specifically excluded from the Settlement Class are BTL and its respective parents, subsidiaries, divisions, affiliates, associated entities, business units, predecessors in interest, successors, successors in interest and representatives and each of their respective immediate family members; Class Counsel; and the judges who have presided over this litigation and any related cases.

      b.    <u>Class Representatives and Class Counsel</u>. The parties have agreed that Plaintiffs are the Class Representatives and that Plaintiffs' attorneys (Michael C. Addison and the law firm of Addison Law Office, P.A., Ross M. Good, Glenn L. Hara, and Brian J. Wanca and the law firm of Anderson + Wanca) are Class Counsel for the Settlement Class.

      c.    <u>Settlement Fund</u>. Defendant has agreed to make available up to $19,750,000.00 (the "Settlement Fund") to pay valid class member claims ("Awards"), to pay incentive awards to Plaintiffs, and to pay Class Counsel attorneys' fees and reasonable out-of-pocket litigation expenses, as approved by the Court, and to pay Notice and Administration Costs.

      d.    <u>Monetary Relief to the Members of the Settlement Class</u>. Settlement Class Members who received one or more unsolicited fax advertisements sent by or on behalf of Defendant and who submit a valid claim are eligible to receive Awards up to:

      (i)    $350 for the first such facsimile;

      (ii)    $125 for the second such facsimile;

      (iii)   $90 for the third such facsimile;

      (iv)   $25 for the fourth such facsimile; and

      (v)    $25 for the fifth such facsimile.

If the aggregate claimed Awards exceed the amount available to pay the Awards, after accounting for the payment of incentive awards, the payment of attorneys' fees and expenses, and the payment of Notice and Administration costs, the Awards to the Settlement Class Members who submitted valid claims will be reduced on a *pro rata* basis.

    e.   <u>Class Notice</u>. The parties have agreed to notify the Settlement Class about the settlement by sending the Mailed Notice by U.S. mail to all Settlement Class Members for whom mailing addresses can be determined. The notice includes instructions about opting out, objecting, or submitting a claim form to the Settlement administrator by mail. In addition, the parties have agreed to cause to be created a settlement website that will provide information and relevant documents related to the Settlement, including the Settlement Agreement, the Class Notice, the Claim Form, and Plaintiffs' Motion for Attorneys' Fee Award and Incentive Awards.

    f.   <u>Claims</u>.

      (i)   <u>Claim Form</u>. The Claim Form is a simple form for submitting claims for cash Awards and is attached to the Settlement Agreement as Exhibit A. The Claim Form submitted by each class member must be signed under penalty of perjury. A claiming class member must identify the fax

number or numbers on which they may have received faxes from Defendant, as well their contact information.

       (ii)    <u>Settlement Administrator</u>. Defendant shall retain and pay from the Settlement Fund, a third-party settlement administrator, to be agreed upon by the parties and approved by the Court, who will issue the class notice, maintain the settlement website, receive the claim forms, assist class members in completing and submitting forms, and issue settlement checks. Any claim that is not substantially in compliance with the instructions on the Claim Form or the terms of the Settlement Agreement or is postmarked later than the Claim Deadline shall be rejected. The decision of the settlement administrator regarding whether a claim is valid is final and binding on the parties, subject to the right of the parties and/or any absent class member to appeal any such determination by the administrator and subject to the provisions of Section VIII(E) of the Agreement. In such event, the parties agree to negotiate in good faith a resolution of any dispute regarding a decision by the claims administrator, and only if the dispute cannot be resolved informally by the parties, shall the dispute be presented to and resolved by the Court.

       g.    <u>Release</u>. In consideration of the relief provided by the Settlement, the Settlement Class will release all claims that were brought or could have been brought, as defined in the Agreement, in this action against Defendant and the other released parties about the subject advertisements sent by fax during the Class Period.

h. <u>Attorneys' Fees and Costs and Class Representative Award</u>. On the same day the Court grants Preliminary Approval, Class Counsel will file a Motion for Attorneys' Fee Award and Incentive Award with the Court seeking an award of attorneys' fees in an amount not to exceed in total 25% of the Settlement Fund ($4,937,500.00), plus reasonable out-of-pocket expenses incurred not to exceed $250,000 to be paid from the Settlement Fund. Class Counsel will also ask the Court to approve an award of $10,000 for Cin-Q Automobiles, Inc. and $10,000 for Medical & Chiropractic, Inc. for serving as the class representatives. In accordance with *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. Sept. 17, 2020), the Motion for Attorneys' Fees and Incentive Award will be available on the settlement website for class members to review.

## III.   The Court should preliminarily certify the Settlement Class.

For purposes of settlement only, Plaintiffs seek preliminary certification of the following class: "All persons who received or were successfully sent in 2009 or 2010 one or more facsimile advertisements relating to tickets for Tampa Bay Buccaneers games."

The Court should certify the Settlement Class under Rule 23. It is well established that "[a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal quotation marks omitted). Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would

present intractable management problems, see Fed. Rule Civ. P. 23(b)(3)(D), for the proposal is that there be no trial. But other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold. *See* Rule 23(c), (d); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

"Class certification is normal in litigation under § 227, because the main questions, such as whether a given fax is an advertisement, are common to all recipients." *Holtzman v. Turza*, 728 F.3d 682, 685 (7th Cir. 2013). Here, the Settlement Class is focused on a series of fax broadcasts in 2009 and 2010 paid for by Defendant and allegedly sent on Defendant's behalf, advertising Defendant's goods or services. The Settlement Class members can be sent notice through records showing the fax numbers to which the faxes were sent, and those records can also be used to review claims.[1]

The Settlement Class satisfies the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy.

**Numerosity.**   It is beyond dispute that numerosity is satisfied here. The case involves over 343,000 faxes sent to over 131,000 unique fax numbers.

---

[1] Defendant reserves all arguments with respect to these records in the event that the case returns to litigation.

**Commonality.** Commonality is satisfied. **"**This case involves common questions of fact and law, including whether the faxes constitute advertisements, and whether the faxes were sent on behalf of the Defendant. The answer to these questions is 'apt to drive the resolution of the litigation.'" *Palm Beach Golf Ctr.- Boca, Inc., v. Sarris*, 311 F.R.D. 688, 695 (S.D. Fla. 2015) (certifying TCPA litigation class) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

**Typicality.** Typicality is shown "if the claims or defenses of the class and the class representative arises from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.1984). In a TCPA case such as this one, typicality is satisfied because "Plaintiff[s], like each of the class members, w[ere] purportedly sent the same fax and each class member's claim is based on the same legal theory and same set of facts as Plaintiff's claim." *Sarris*, 311 F.R.D. at 696.

**Adequacy.** The adequate representation requirement is "satisfied here because there are no conflicts of interest between the Plaintiff[s] and the Settlement Class, and Plaintiff[s have] retained competent counsel." *Pierre-Val v Buccaneers Ltd. P'ship,* 2015 WL 3776918, at *3 (M.D. Fla. 2015) (preliminarily approving class settlement). Plaintiffs have vigorously prosecuted the action for years, after identifying the cause of action against Defendant in 2009, by engaging in years of hard-fought discovery and motion practice, and by participating in the arm's-length negotiation of the settlement. They have retained proposed class counsel who are highly experienced in TCPA litigation throughout the country, including winning

class judgments, settling TCPA class actions, and briefing and arguing appeals in many Circuits, including the Eleventh Circuit. *See, e.g.*, *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, 2014 WL 7366255, at *6 (S.D. Fla. Dec. 24, 2014) (Anderson + Wanca "is knowledgeable of the applicable law and experienced in litigating TCPA classes"); *A Aventura Chiropractic Ctr., Inc. v. Med Waste Mgmt. LLC*, 2013 WL 3463489, at*4 (S.D. Fla. July 3, 2013); *Etter v. Allstate Ins. Co.*, 323 F.R.D. 308, 312 (N.D. Cal. 2017) (noting Anderson + Wanca's "experienced TCPA litigators"); *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 318 F.R.D. 712, 724 (N.D. Ill. Sept. 27, 2016) (finding "no reason to doubt" Anderson + Wanca's adequacy); *Siding & Insulation Co. v. Combined Ins. Grp., Ltd., Inc.*, 2012 WL 1425093, at *4 (N.D. Ohio Apr. 24, 2012) (finding Anderson + Wanca "sufficiently experienced and qualified to handle class actions").

The Settlement Class also satisfies Rule 23(b)(3)'s requirements of predominance of common issues and superiority of a class action to other means of litigation.

**Predominance.** Because Plaintiffs have alleged that "Defendant[] engaged in a mass [fax advertising] campaign, common questions predominate." *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 296 F.R.D. 299, 314 (D.N.J. 2013) (certifying litigation class). "The facts necessary to establish liability relate to Defendant's common course of conduct and the transmissions of the faxes, and not to issues with individual class members." *Sarris*, 311 F.R.D. at 699 (same).

**Superiority.** "Given the large number of purported members in this suit and the similarity of their claims, disposition by class action is an efficient use of judicial resources. Moreover, the relatively small potential recovery in individual actions ($500 in the absence of a finding of willfulness) and reduced likelihood that plaintiffs will bring suit also weighs in favor of class resolution." *Sarris*, 311 F.R.D. at 699.

Accordingly, the Court should preliminarily certify the proposed Settlement Class, appoint Plaintiffs as the class representatives, and appoint Plaintiffs' counsel as Class Counsel.

## IV.    The Court should grant preliminary approval to the settlement.

"Approval of a class-action settlement is a two-step process. In the first step, the Court determines whether the proposed settlement should be preliminarily approved." *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, *4 (S.D. Fla. May 14, 2007) (citing Manual for Complex Litigation § 21.632 (4th ed. 2004)). "At the preliminary-approval step, the Court is required to 'make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms.'" *Id.* (quoting Manual for Complex Litigation § 21.632). "A proposed settlement should be preliminarily approved if it 'is within the range of possible approval or, in other words, [if] there is "probable cause" to notify the class of the proposed settlement.'" *Id.* (quoting *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994); *Armstrong v. Board of School Directors*, 616 F.2d 305, 312 (7th Cir. 1980)). "In the second step, following appropriate notice to

the class and after hearing from any potential objectors, the Court makes a final decision whether to approve the proposed settlement." *Id.*

A court may approve a class action settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). *See Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. Appx. 429, 434 (11th Cir. 2012). It is well-established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011) (quoting *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982) (The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement"); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1341 (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)).

The factors for consideration are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, length and expense of further litigation; (5) opposition to the settlement; and (6) the stage of the proceedings at the time of settlement. *See Faught v. American Home Shield Corp.*, 668

16

F.3d 1233, 1240 (11th Cir. 2011) (citing *In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1315 (11th Cir. 2009)).

In this case, these factors show that the proposed settlement is within the range of possible approval and, therefore, that the Court (a) should permit the parties to notify the Settlement Class and (b) should schedule a fairness hearing to determine whether to finally approve the settlement. The parties' Agreement resulted from arm's-length negotiations before an experienced mediator, Magistrate Judge Sansone. The parties were represented by experienced counsel with an understanding of the strengths and weaknesses of their respective positions.

This settlement is an excellent outcome and result for the Class. Defendant has agreed to create a settlement fund of up to $19.75 million. Each class member who does not opt-out of the Settlement Class and who submits a timely and valid claim form will be mailed a check in an amount up to $615. The settlement offers each member of the Settlement Class an opportunity to obtain a significant monetary payment, while avoiding the costs and risks associated with further litigation. Without the settlement, the Class might recover substantially less, if anything at all. Defendant has also agreed not to send unsolicited fax advertisements that do not otherwise comply with the TCPA. Defendant has agreed to pay attorneys' fees and incentive awards to Plaintiffs.

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). This case is

no exception. Defendant denies liability but has agreed to settle to avoid the distraction and expense of defending protracted litigation and exposure to higher liability.

There are risks attendant to further litigation, and substantial delay and expense. This Court has already denied both parties' cross-motions for summary judgment, finding that the case would need to be submitted to a trier of fact. *Cin-Q Automobiles, Inc. v. Buccaneers Limited Partnership,* 2014 WL 7224943 (M.D. Fla. 2014). The decision to settle is reasonable in light of the risks of continued litigation for all parties. Those risks include Defendant's contentions that the fax broadcasters included entities unknown to it, and that the broadcasters exceeded their authority or even committed outright fraud. In addition to the risk of loss, continued litigation would delay the class members' receipt of any recovery.

The TCPA gives private citizens a right to sue (i) to enjoin future transmissions, (ii) to recover the greater of actual monetary damages or $500 in damages for each junk fax, or (iii) to obtain an injunction plus damages. If a court finds that the sender willfully or knowingly violated the TCPA, it may increase the award up to three times the amount of damages. Here, each class member who does not opt-out of this proposed settlement and who submits a timely and valid Claim Form will receive a cash payment in an amount up to $615, and Defendant has agreed to pay from the Settlement Fund the attorneys' fees and certain expenses of Class Counsel for conferring that benefit upon each class member. Moreover, Defendant has agreed to not send any unsolicited facsimile advertisements that do

not otherwise comply with the TCPA. Plaintiffs' attorneys believe this settlement is fair, reasonable, and adequate. Plaintiffs' attorneys have litigated TCPA class actions since 2003. They have been appointed class counsel in dozens of such cases, as well as in other types of class actions, and they have successfully negotiated numerous class-wide settlements in TCPA cases.

Based upon the foregoing, and the judgment of experienced class counsel, Plaintiffs request that the Court preliminarily approve the settlement.

**V.   The Court should approve mail notice to the Settlement Class and decide whether to allow Plaintiffs to send facsimile notice and/or publication notice.**

Under federal law, notice of the settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the manner in which notice is given and the form that notice is to take. 7B Charles Alan Wright et al., Fed. Practice & Procedure § 1797.6 (3d ed. 2005). Rule 23(e)(i)(B) requires that notice of a settlement be provided "in a reasonable manner."

Here, the parties have agreed to a reasonable manner of notice by sending it by U.S. mail to the addresses associated with the fax numbers at issue in the case, to the extent an address is available. The parties also intend to provide notice through the settlement website. The simple claim form will be delivered with the mailed notice, so that members of the Settlement Class can complete a claim form and return it immediately by mail. Settlement Class members can also access and download a Claim Form through the settlement website.

19

The contents of the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c)(3)." Here, the notice satisfies these requirements.

The parties agreed to submit to the Court's decision on whether to send the class members additional notice (1) via facsimile to the telephone numbers to which the faxes at issue in this case were sent ("Fax Notice"); and/or (2) notice by publication via one-quarter page advertisements on two consecutive Sundays in the Tampa Bay Times, the Sarasota Herald Tribune, and the Gainesville Sun ("Publication Notice"). Plaintiffs contend that the more notice the class receives, the better, and that publication notice is commonplace, and that a Fax Notice program is perfectly appropriate. *See Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 971 (7th Cir. 2020) (affirming fax notice program, holding "the fact that counsel is faxing the notice to the same numbers that received the offending fax assures us that the individuals responding to it, and subsequently collecting the judgment, do in fact have standing").

The notice meets the legal standards for appropriate notice and satisfies Rule 23(e). Therefore, the Court should approve the proposed mail notice and authorize

its dissemination to the Class, and order Fax Notice and/or Publication Notice in its discretion.

## VI.    The Court should schedule a final fairness hearing.

Plaintiffs request that the Court schedule a hearing to allow the proponents and any opponents of the settlement to voice their opinions or objections. The Notice informs the Settlement Class about this hearing. Settlement Agreement, Exhibit B. At the fairness hearing, Plaintiffs will request that the Court enter a Final Approval of Agreement and Judgment.

## Conclusion

Plaintiffs respectfully request that the Court enter a Preliminary Approval Order in the form attached as Exhibit B certifying the Settlement Class, appointing Plaintiffs as the class representatives and their attorneys as Class Counsel, granting preliminary approval of the proposed settlement, directing that the members of the Settlement Class be notified about the proposed settlement in the form and manner agreed by the parties (Exhibit B to the Agreement), in addition to notice by facsimile and/or publication, as the Court decides in its discretion, and setting dates for opt-outs, objections, and scheduling a final approval hearing.


Respectfully submitted,

/s/ Michael C. Addison
Michael C. Addison (Fla. Bar. No. 0145579)

ADDISON LAW OFFICE, P.A.
1304 Alicia Avenue
Tampa, Florida 33604
Telephone: (813) 223-2000
Facsimile: (813) 228-6000
m@mcalaw.net

and

Ryan M. Kelly (Fla. Bar No: 90110)
Ross M. Good (Fla. Bar No: 116405)
Glenn L. Hara (admitted *pro hac vice*)
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Telephone: (847) 368-1500
Facsimile: (847) 368-1501
rkelly@andersonwanca.com
rgood@andersonwanca.com
ghara@andersonwanca.com

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 27, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

<u>s/Michael C. Addison        </u>