# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| CIN-Q AUTOMOBILES, INC., <u>et al.</u>, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| BUCCANEERS LIMITED ) | Case No. 8:13-cv-01592-AEP |
| PARTNERSHIP and JOHN DOES 1- ) | |
| 10, ) | Magistrate Judge Anthony E. Porcelli |
| ) | |
| Defendants, ) | |
| ──────────────────────── ) | |
| ) | |
| TECHNOLOGY TRAINING ) | |
| ASSOCIATES, INC., <u>et al.</u>, ) | |
| ) | |
| Intervenors. ) | |
| ) | |

### DECLARATION OF KEN SPONSLER IN SUPPORT OF BUCCANEERS TEAM LLC'S SUBMISSION REGARDING THE <u>RELIABILITY OF THE BIGGERSTAFF REPORT DATA[1]</u>

I, Ken Sponsler, declare and state as follows:

## I.     INTRODUCTION

1.     My name is Ken Sponsler.  I am the Senior Vice President at PossibleNOW Services, Inc. d/b/a CompliancePoint Litigation Support Services ("CPLSS"), located in Duluth, Georgia.

---

[1] Expert Report of Robert Biggerstaff dated March 20, 2014.

2.     I have extensive experience with regard to facsimile ("fax") transmission technology and its application with respect to the rules and requirements under the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), 47 USC § 227 (hereafter "TCPA").  I have previously served as a party-appointed expert witness in dozens of TCPA matters.  I have also been appointed by federal courts to serve as a TCPA compliance monitor.

3.     This Declaration lists my current findings and conclusions in this matter.  I reserve the right to provide additional information in this matter.  I also reserve the right to supplement this Declaration as new information becomes available.

## II.     ASSIGNMENT

4.     CPLSS and I were asked by counsel for Defendant Buccaneers Team LLC f/k/a Buccaneer Limited Partnership ("BTL") in the above-captioned matter to conduct an analysis of whether the list compiled in the March 20, 2014 Expert Report of Robert Biggerstaff ("Biggerstaff Report") can serve to accurately or reliably identify whether, and to what extent, approximately 343,000 faxes were allegedly sent to approximately 131,000 fax numbers in July 2009, August 2009, and/or May-June 2010.

---

## III.  SUMMARY OF CONCLUSIONS

### A.    Opinion One:

5.      The Biggerstaff Report does not reliably show whether or not the faxes purportedly sent by either of the third-party fax companies (Rocket Messaging and 127 High Street) were actually sent, and by extension what fraction (if any) of the putative class members actually received a fax.

### B.    Opinion Two:

6.      The list of phone numbers compiled in the Biggerstaff Report cannot be used to accurately or reliably indicate that faxes were successfully sent to or received by those numbers in July 2009, August 2009, and/or May-June 2010.  A significant percentage of the fax numbers included within the settlement class likely used an Online, Internet, or cloud-based fax service (which I will refer to as an "Online Fax Service" in this Declaration) to receive the faxes in question.  Faxes sent by Online Fax Services are not subject to the TCPA.  This is particularly problematic because it is not reliably possible to identify specific fax numbers that were associated with an Online Fax Service 12-13 years ago as well as who actually received the .JPG or .GIF attachment of the fax image in an email sent to the customer of the Online Fax Service.

---

Declaration of Ken Sponsler
*Cin-Q Automobiles, Inc. et al. v. Buccaneers Limited Partnership*
Case No. 8:13-cv-01592-AEP

Page 3 of 46

7.      None of the data underlying Mr. Biggerstaff's conclusion contains the confirmation necessary to indicate a successful fax transmission.  For the faxes allegedly sent by Rocket Messaging, Mr. Biggerstaff relies on a status code of "0", but he fails to provide any evidence how he arrived at the conclusion that "STATUS "0""[2] indicates a successful error-free fax transmission.  For the faxes allegedly sent by 127 High Street, Mr. Biggerstaff relies merely on a list of numbers to which the faxes were allegedly ordered to be sent and a number of "exception files" purportedly indicating the numbers to which faxes were *not* sent.  This is not sufficient to determine that faxes *were sent* to the numbers not on an "exceptions files."

8.      There are also other indicators that some faxes potentially were not delivered to fax machines.  For example, Mr. Biggerstaff concluded that 250 faxes were "successfully transmitted" because they had a status code of "0," even though the files also show that the number of pages sent was "0" and the baud rate (i.e., a measure of communication with the receiving fax machine) was "0".  This information means no pages were sent, no baud rate was recorded but the status of "0" was present in that row so Mr. Biggerstaff incorrectly counted these 250 records

---

[2] Expert Report of Robert Biggerstaff dated March 20, 2014, paragraph 16.

Declaration of Ken Sponsler
*Cin-Q Automobiles, Inc. et al. v. Buccaneers Limited Partnership*
Case No. 8:13-cv-01592-AEP

as successful.".  When these 250 faxes are removed from Mr. Biggerstaff's list, at least 45 numbers on Mr. Biggerstaff's list could not have received *any* fax transmissions, and several other numbers did not receive as many faxes as Mr. Biggerstaff claims.  This shows that that Mr. Biggerstaff's reliance on status code "0" to indicate a successful transmission is not unreliable, and Mr. Biggerstaff does not even attempt to explain this anomaly.

9.     Additionally, Mr. Biggerstaff's analysis of the 127 High Street data is also flawed because there is at least one instance of a number supplied by BTL that is present on an exception report but is not present on the list of numbers to be sent faxes.  The number in question is (866) 613-5112, and it was a "test" number.  Neither of the methods used by Mr. Biggerstaff to compile his list, however, definitively provide confirmation of fax transmissions.

10.     A number of the phone numbers on Mr. Biggerstaff's list have always been wireless numbers during the relevant time period in this matter, which greatly decreases the likelihood that a fax was received, as Mr. Biggerstaff claims.  In 2009/2010, wireless fax machines were a rare phenomenon.  Moreover, reception quality was very important for this approach, and static or loss of quality made it more likely that faxes attempted to be received using this approach would fail.  Given that a number of lines on Mr. Biggerstaff's list have been wireless since 2009/2010,

it is highly unlikely that these numbers received a fax.  And any effort to show that they did would require independently testing whether the sending fax machine's fax detail records were correctly capturing successful transmissions.  That, however, is not possible in this case.  This further calls into question Mr. Biggerstaff's methodology and his reliance on the Rocket Messaging and 127 High Street data to conclude that faxes were successfully sent to the numbers on his list.  Mr. Biggerstaff's failure to analyze the foregoing anomalies calls into question the robustness of his methodology.

11.   In addition, 21,931 (or 16.74 percent) of the numbers on Mr. Biggerstaff's list were on either the National Do Not Call Registry ("National DNC Registry" or "NDNCR") or the Florida Do Not Call List ("FDNCL") as of August 1, 2010.  These lists are not intended to include business telephone numbers or numbers connected to fax numbers, and they ordinarily do not include fax numbers as opposed to phone numbers.  In fact, the FTC publishes an "FAQ" paper relevant to the National DNC Registry.  In relevant part, the document addresses fax numbers on the Registry as follows: "Q: *Can I register my business phone number or a fax number?  A: The Registry is for personal phone numbers.  Business phone numbers*

*and fax lines are not covered*."[3]  Our analysis indicates that up to 16.74 percent of the numbers on Mr. Biggerstaff's list likely were being used as voice numbers rather than fax numbers at the time Mr. Biggerstaff claims the numbers were allegedly sent successful faxes.

12.     At my request, Jennifer Smith, CPLSS's Director, Regulatory and Technical Consulting / Expert Witness, analyzed the telephone numbers at issue to see how many numbers were on the NDNCR, assigned to cellphone (wireless) numbers, on the FDNCL, and on the NDNCR or the FDNCL as of August 1, 2010, as of February 10, 2022, how many on the actual date of the fax with at least one record, and finally how many as of the date of the fax (all records).  Please *see* Table 1 below for the results.

---

[3] *See* https://www.consumer.ftc.gov/articles/national-do-not-call-registry-faqs - accessed February 13, 2022.

---

Declaration of Ken Sponsler
*Cin-Q Automobiles, Inc. et al. v. Buccaneers Limited Partnership*
Case No. 8:13-cv-01592-AEP

|  | As of 8/1/2010 | As of 2/10/2022 | As of date of fax (At least 1 record for phone) | As of date of fax (All records for phone) |
|---|---|---|---|---|
| On NDNCR | 21,883 | 25,319 | 21,444 | 21,069 |
| Wireless | 38 | 450 | 37 | 36 |
| On FL State DNC | 21,839 | 25,860 | 21,381 | 21,022 |
| On NDNCR or FL State DNC | 21,931 | 25,864 | 21,497 | 21,111 |

*Table 1*

### C.    Opinion Three:

13.    The likelihood that the businesses that were the intended recipients of the faxes in 2009/2010 still have the same fax number as they did in in July 2009, August 2009, and/or May-June 2010 and are not using an Online Fax Service is highly unlikely.  As I will demonstrate in this Declaration, identifying recipients of allegedly successful fax transmissions, who were not using an Online Fax Service going back to 2009/2010, is not reliably possible.  Identifying businesses, personnel within the business, fax numbers and the identity of the entity or person who received a fax nearly 12-13 years ago is an impossible task due to the churn of businesses, fax numbers and fax technology as well as persons who may have received the fax in question.  The faxes were largely addressed to "Human Resources" or "HR." Those persons, however, would have been a small minority of any organization, and

many small businesses would have no HR department at all.  These facts increase the difficulty in identifying who the actual recipients were so many years ago.

### D.    Opinion Four:

14.    It is impossible to determine which recipients received a fax through an Online Fax Service (as opposed to a telephone facsimile machine) by reviewing fax transmission logs, any other records produced in this case, or any other means other than detailed individual inquiries with respect to each putative class member, one by one.  Furthermore, it was impossible in 2009/2010 to reliably identify the names and addresses of businesses or individuals that allegedly received the faxes at issue in this case through objective means.  The business churn[4] and other churn during the last approximately twelve (12) to thirteen (13) years has made a nearly impossible task insurmountable.

## IV.  QUALIFICATIONS

15.    I have over 22 years of operational experience in business-to-business and business-to-consumer telephone and fax compliance matters.  I have personally

---

[4] The churn rate, also known as the rate of attrition or customer churn, is the rate at which customers stop doing business with an entity.
https://www.investopedia.com/terms/c/churnrate.asp – accessed February 9, 2022.

conducted dozens of onsite compliance assessments, gap analyses,[5] and risk-assessment studies, assessed numerous contact center operations in connection with clients contracting for such services, and analyzed multiple fax campaigns. My company has also performed fax-specific data analyses and historical subscriber/user research.

16.    While I am not a software engineer, I have also led numerous software development projects. From approximately January of 2001 through 2010, I maintained active certification as a Project Management Professional ("PMP") with the Project Management Institute. During those years, I led teams of software engineers, database administrators (DBAs), product developers, and web and graphics designers to develop several large and complex software projects. I led complex projects for ChoicePoint, Shaw Industries, and PossibleNOW. I also worked directly with software engineers and DBAs to develop the Manual Touch Mode dialing system for Five9 and well as projects to develop manual dialing systems for several other dialer solution companies. I successfully executed these projects through my direct management of highly skilled team members, while

---

[5] The identification of gaps between the requirements according to the law and the actual practices of a company.

simultaneously managing budgets, timelines, milestones, and client communications. This work has led to my understanding of the software development process including project initiation, planning, execution, monitoring and controlling, and closing. My work included the development of functional design documents, maintaining version control, understanding development, quality assurance, and production environments, developing test cases, and modifying the project plan as required.

17.    Later in my career as GM and SVP of CompliancePoint, I oversaw dozens of compliance consulting engagements related to fax and telephone dialing. I have routinely evaluated and opined upon matters related to faxing, including third-party fax service providers. Due to this consultative work, I am familiar with the TCPA's fax-related regulations, as well as modern day faxing technology.

### A.    CompliancePoint

18.    I founded CompliancePoint's consulting practice, which, among other things, provides historical call data compliance analysis, wireless identification services, call data audits, and compliance monitoring for corporate clients. CompliancePoint can do this because it has access to the historical data resources of its parent company, PossibleNOW.

19.     In my position at CompliancePoint, I served as a court-appointed monitor in the *United States of America v. DISH Network*, No. 3:09-cv-03070 (C.D. Ill.) TCPA case.

20.     Prior to taking on my role at CompliancePoint, I served in a critical role at PossibleNOW, CompliancePoint's parent company.  PossibleNOW is an industry leader in telemarketing and telephone communications compliance services.  It not only performs compliance suppression and analysis services for companies engaged in telephone communications, it is also the federal government's contractor responsible for purging numbers from the NDNCR if it finds that they have been disconnected and reassigned to a new name and a new address.

21.     PossibleNOW is a provider of, *inter alia*, mobile, as well as residential and business, telephone auditing and identity services, and other solutions for Do Not Call ("DNC") Compliance.  In my role at PossibleNOW, I wrote the functional specifications for PossibleNOW's "DNCSolution," which, *inter alia*, provides a suppression platform to scrub for wireless numbers and numbers registered on the NDNCR, state DNC lists, and entity-specific DNC lists while accounting for numbers associated with federal and/or state established business relationship ("EBR") (inquiry or transaction EBR) exemptions as well as consent.

---

22.     Finally, as a member and previous Vice Chairman of the Executive Committee of the National Board of Directors for the Professional Association of Customer Engagement ("PACE"), formerly the American Teleservices Association, I interact with hundreds of corporate compliance professionals and companies/providers involved in consumer contact operations.

23.     Previously, I underwent specialized training at the U.S. Army Command Sergeant Major Course (graduated with Honors) and the Advanced Non-Commissioned Officers' Course (Distinguished Graduate).  I served primarily in Airborne Infantry and Mechanized Infantry units.  After 27 years' service, I retired from the U.S. Military after achieving the highest enlisted rank of U.S. Army, Command Sergeants Major, of the 3rd Infantry Division, a 23,400-man elite combat team.  My awards and decorations include the Legion of Merit, Expert Infantry Badge, Master Parachutist Badge, Pathfinder Badge, Canadian and German Parachutist Badges, and the French Commando Badge (#10 Berlin).

24.     I have qualified as an expert and provided trial testimony in the matters *United States of America v. DISH Network*, No. 3:09-cv-03070 (C.D. Ill.) and *ADT Security Services Inc. v. Security One International*, No. 11-cv-05149 (N.D. Cal.). My relevant experience is attached hereto as Exhibit 1.

---

Declaration of Ken Sponsler
*Cin-Q Automobiles, Inc. et al. v. Buccaneers Limited Partnership*
Case No. 8:13-cv-01592-AEP

Page 13 of 46

25.     The materials I reviewed and relied upon are referenced throughout this Declaration and listed in the attached Exhibit 2.  My experience has also informed my opinions.

## V.     ANALYSIS AND CONCLUSIONS

A.     <u>**Opinion One**</u>**:  The Biggerstaff Report does not show reliably whether or not the faxes purportedly sent by either Rocket Messaging or 127 High Street were actually sent, and what fraction, if any, of the putative class members actually received a fax**.

### (1)     The Facsimiles At Issue In This Case

26.     It is my understanding that BTL began exploring a potential fax marketing campaign in 2009 and, after searching for companies with expertise to ensure compliance with all rules and regulations, chose a company called FaxQom. After receiving assurances that all numbers in FaxQom's database were opt-in numbers for which a consent to receive faxes existed,[6] BTL placed three different fax advertising orders in 2009 and 2010.

---

[6] *See* Appendix to Defendant's Motion for Final Summary Judgment, Document 130, filed 05/27/14, page 8: "100% of our data is compiled "opt-in" …. That's how this company has survived 18 years strong.  I have no problem indemnifying  you in a broadcast relationship."; page 12 "Fax Indemnity Agreement," and page 74: "Our compiling center uses a 12-15 second script in compiling fax numbers when calling companies and receiving the fax numbers verbally from company owners / employees.  This is the legal procedure we use in receiving them."

27.    It is also my understanding that during the course of discovery in this case, it came to light that FaxQom did not send any of the faxes at issue and instead contracted with a clandestine web of third parties of which BTL had no knowledge. Specifically, for at least some faxes sent in 2009, FaxQom contracted with a company known as USA Datalink,[7] which itself contracted with an affiliate known as DMI Marketing to provide a list of fax numbers and a company believed to be 127 High Street to send the faxes.  However, 127 High Street could not confirm that it actually sent any faxes, it did not retain any records from that time period, and the company no longer exists.[8], [9], [10]

28.    For the faxes sent in 2010 and some of the faxes sent in 2009, FaxQom clandestinely contracted with another third party, Rocket Messaging, to send the faxes.  For its part, Rocket Messaging claims to be only a fax broadcaster and not to have compiled a list or database of fax numbers.[11]

---

[7] *See* Appendix to Defendant's Motion for Final Summary Judgment, Document 130, filed 05/27/14, Page 21 of 80 PageID 2443.

[8] *See* Deposition of Michael Wayne Clement a/k/a Steve Simms, at 309:1-:310:2; 310:18-312:18.

[9] *See* Deposition of Nelson at 37:2-15.

[10] *See* Deposition of Pelowich at 80:7-81:3. 103:21-104:21, 105:2-108:7.

[11] *See* Deposition transcript of Ian E. Jenkins at 38:12-14.

29.    Mr. Biggerstaff claims that records he analyzed from FaxQom, 127 High Street, and Rocket Messaging show a total of 343,122 successful, error-free fax transmissions to 131,011 unique fax numbers.  *See* Biggerstaff Report at ¶ 23. Mr. Biggerstaff's report, however, does not address the issue of business churn, faxes sent to wireless numbers or numbers on the Florida and National DNC Registry.

30.    For the numbers to which 127 High Street allegedly sent faxes, Mr. Biggerstaff did not even have basic fax detail records to confirm transmission of the faxes.  *See* Biggerstaff Report at ¶ 19.  Mr. Biggerstaff relied upon emails purporting to contain a list of *target* fax numbers in conjunction with a number of "exception reports," purporting to indicate individual faxes that failed to transmit.  *Id.* at ¶¶ 19-21.  Mr. Biggerstaff removed the numbers associated with the failed transmissions and assumed, without any other confirmation, that the remainder of the numbers were successfully sent a fax.  *Id.* at ¶ 22, Exhibit 6.

31.    Mr. Biggerstaff claims that each of the numbers on his list was a "unique fax number" that received "successful error-free fax transmission." Supplemental Report at ¶ 1.  He also claims that "every device of which [he is] aware that can receive a T.30 fax transmission, has the capacity to use a regular telephone line for the receipt of a T.30 fax transmission and to print the contents of the T.30

Declaration of Ken Sponsler
*Cin-Q Automobiles, Inc. et al. v. Buccaneers Limited Partnership*
Case No. 8:13-cv-01592-AEP

Page 16 of 46

fax transmission." Biggerstaff Report at ¶ 49. He also claims that a "record of a successful transmission by a facsimile transmission system capable of sending standard T.30 fax transmissions, reflects the successful completion of all necessary phases of the T.30 fax transmission." *Id.* at ¶ 50. The 127 High Street file only contains a list of telephone numbers and an exception log. The source for the exceptions (failed or not attempted faxes) information was a series of emails. Analyzing the fax detail record is crucial because without it faxes can be logged as successful receipts yet contain other information that conflicts with any conclusion of "successful" faxes. In this case, the Rocket Messaging logs lack data relating to the duration or the time it took to complete the five phases of the transmission (*see* Exhibit 3). In contrast, a more representative fax log is attached hereto as Exhibit 4, which shows the kind of information that would typically be present and allow one to more reliably conclude that a fax was successfully sent. (See Exhibit 4). A typical successful fax using today's modern protocols is 30 to 60 seconds per page. Logs indicating that a successful transmission occurred even though the duration was less than 30 seconds may be erroneous and should be further analyzed before concluding the transmission was successful. In the case of the 127 High Street, no fax detail records exist, yet Mr. Biggerstaff assumes that the spreadsheet of fax numbers and emails depicting alleged exceptions show successful transmissions without any

Declaration of Ken Sponsler
*Cin-Q Automobiles, Inc. et al. v. Buccaneers Limited Partnership*
Case No. 8:13-cv-01592-AEP

Page 17 of 46

corroborating evidence or system testing. These assumptions are subject to numerous unexplained anomalies, as discussed elsewhere in this Declaration.

### (2) Mr. Biggerstaff's Rocket Messaging Analysis Does Not Contain Positive Confirmation of Transmission

32. Mr. Biggerstaff relies on the basic summary fax logs provided by Rocket Messaging to determine a number of "successful, error-free transmission" based on those logs. *See* Biggerstaff Report at ¶¶ 15-16. In particular, he notes that "successful error-free fax transmissions [are] indicated by STATUS '0' in the logs[.]" *Id.* at ¶ 16. He provides, however, no citation or documentation indicating what "Status '0'" means.

33. As noted by BTL's previous expert, David Canfield, in his expert report, a status value of "0" could have up to ten different meanings, only one of which is a successful transmission. *See* Expert Report of David Canfield at ¶ 25. Without more information, such as documentation, data dictionaries, or substantial testing of the Rocket Messaging system, it is impossible to conclude that each "Status '0'" indicates a successful, error-free transmission, as Mr. Biggerstaff concludes. In fact, we have discovered that there are 250 records Mr. Biggerstaff included as successful fax transmissions that have "Pages" (pages sent) = 0 and Baud Rate (transmission speed) = 0. This means no pages were sent and no baud rate was

Declaration of Ken Sponsler
*Cin-Q Automobiles, Inc. et al. v. Buccaneers Limited Partnership*
Case No. 8:13-cv-01592-AEP

Page 18 of 46

recorded, but because the status of "0" was present, Mr. Biggerstaff incorrectly counted these 250 records as successful (*see* Exhibit 5).  Again, this shows the inconsistency of his process and the data he relied upon.  He did not explain why he included these records.  If no pages were sent, and the baud rate was zero, then these are highly questionable.  When these 250 records are excluded, 45 unique phone numbers on Mr. Biggerstaff's list did not receive any faxes.

34.     Furthermore, the wireless numbers identified above (*see* Paragraph 12) were potentially unable to successfully receive faxes, and Mr. Biggerstaff offers no analysis to show that they could have or did receive faxes, as would be required to conclude that faxes were successfully sent those numbers (*see* Paragraph 10 above).

### (3)   Mr. Biggerstaff's Analysis Of The 127 High Street Numbers Is Flawed

35.     Mr. Biggerstaff determined that the faxes allegedly sent by 127 High Street were successful, error-free transmissions based on the presence of a list of fax numbers and a series of emails containing "exception reports."  *See* Biggerstaff Report at ¶ 19.  These exception reports purport to show fax transmissions that were not completed.  *Id.*  Mr. Biggerstaff then subtracts the numbers on the exception reports from the list of numbers and concludes that the rest of the faxes on the list were successfully sent.  *Id.* at 22, Exhibit 6.  Unlike with Rocket Messaging,

Declaration of Ken Sponsler
*Cin-Q Automobiles, Inc. et al. v. Buccaneers Limited Partnership*
Case No. 8:13-cv-01592-AEP

Page 19 of 46

however, for 127 High Street, Mr. Biggerstaff does <u>not</u> have fax detail records that contain a page count or an error code, which Mr. Biggerstaff uses to determine that a fax was successfully transmitted for the faxes allegedly sent by Rocket Messaging (which is itself not a reliable method to definitively determine the faxes were sent for the reasons discussed *supra* at ¶ 7).[12]  But the absence of an exception report is not proof that a fax was successfully sent or received, and without fax detail records, there is no page count and no evidence that a fax was ever received, even under Mr. Biggerstaff's flawed methodology that he used for the Rocket Messaging faxes.

36.    Mr. Biggerstaff's analysis to determine that faxes without exception reports on fax lists were successfully sent is flawed for another reason.  BTL supplied FaxQom with five "test" fax numbers, instructing FaxQom to send faxes to those numbers with every fax broadcast.[13]  While it is clear from an examination of the Rocket Messaging fax detail records and 127 High Street exception reports that this did not always occur, one of the "test" numbers appears on an exception report for a job for which it was *not* included on the list of numbers intended to be sent faxes. This anomaly is not explained at all in any of Mr. Biggerstaff's reports, nor does Mr.

---

[12] Plaintiffs' Brief Regarding Reliability of Fax Numbers identified in Biggerstaff report, page 7, Argument, I., first sentence; page 8 Document 339, filed 02/08/22.

[13] Expert Report of David E. Canfield dated November 16, 2015, ¶ 41.

Declaration of Ken Sponsler
*Cin-Q Automobiles, Inc. et al. v. Buccaneers Limited Partnership*
Case No. 8:13-cv-01592-AEP

Page 20 of 46

Biggerstaff explain how his exception report methodology can still be reliable given this evidence. The presence of an exception report for a number that was not even included in the fax list for that specific day's fax campaign clearly raises questions about the accuracy and reliability of the list of fax numbers, the exception report, or both. This is yet another reason why the lack of positive confirmation of transmission for the 127 High Street faxes raises questions over whether these faxes were even sent.

37. Mr. Biggerstaff's analysis of the number of faxes allegedly successfully sent to BTL's "test" fax numbers also changed without explanation from his initial report to his second report.[14] The numbers supplied by BTL to monitor the progress of the fax campaign were: (1) (813) 872-0046; (2) (813) 554-1351; (3) (310) 275-8995; (4) (866) 613-5112; and (5) (813) 387-6310. In his initial report, Mr. Biggerstaff concluded that these five numbers received a total of 17 successful, error-free transmissions. *See* Biggerstaff Report Exhibit 7 at 1, 198, 200, 246, 282. But in his Second Expert Report, Mr. Biggerstaff calculated that these numbers received a total of 21 successful, error-free transmissions. *See* Second Report of

---

[14] Second Expert Report of Robert Biggerstaff dated December 22, 2015.

Robert Biggerstaff Exhibit 2.  Mr. Biggerstaff made no mention of this change and did not attempt to explain or revise his methodology.

38.     Furthermore, there are 23 instances in the 127 High Street records of numbers not having ten digits.  These instances, however, are not included in the exception reports, further calling into question whether the exception reports contain all the exceptions.  Without any affirmative indication of transmission, these records cannot reliably indicate the numbers to which a fax was successfully sent.

### (4)     A Significant Portion Of The Fax Numbers Are On The National Do Not Call Registry

39.     Analysis of the NDNCR revealed that a significant number of the numbers at issue were at the time either on the NDNCR or the FDNCL.  A total of 21,883 numbers at issue were on the NDNCR as of 8/1/2010 and 21,931 numbers at issue were either on the FDNCL or the NDNCR as of 8/1/2010.  In my experience, it is extremely unlikely that a fax number would be on either the NDNCR or the FDNCL List.  Indeed, the Federal Trade Commission ("FTC") states on its website that "[t]he [*National Do Not Call*] *Registry* is for personal phone numbers.  Business phone *numbers and faxes are not covered*."[15]  The fact that almost 20 percent of the

---

[15] https://www.consumer.ftc.gov/articles/national-do-not-call-registry-faqs – accessed February 8, 2022.

---

Declaration of Ken Sponsler
*Cin-Q Automobiles, Inc. et al. v. Buccaneers Limited Partnership*
Case No. 8:13-cv-01592-AEP

Page 22 of 46

numbers at issue are on the National Do Not Call Registry indicates that these numbers were not actually fax numbers at the time the faxes were allegedly sent. Additional analysis of the NDNCR and FDNC indicates that 21,931 numbers (16.74 percent) (*see* Paragraph 12) were present on the lists at the time the faxes at issue were allegedly sent, further undermining Mr. Biggerstaff's conclusion that these numbers were capable of receiving and did receive faxes in 2009-10.  That Mr. Biggerstaff did not even analyze this issue additionally shows that his methodology contains numerous errors and he did not verify his results to ensure they were accurate.

**B.   Opinion Two:   A significant percentage of the fax numbers included within the settlement class likely used an Online, Internet, or cloud-based fax service (which I will refer to as an "Online Fax Service" in this report) to receive the faxes in question in 2009/2010.**

40.     Based on my training, experience and research; the adoption of Online Fax Services; the substantial advantages and widespread use of Online Fax Services described in this section of my Declaration; and in light of the research discussed below regarding the adoption of Online Fax Services, I conclude that a significant percentage of the proposed class in this case likely used an Online Fax Service.  In 2010, Online Fax Services were already quite common, as shown in a review and

comparison dated October 29, 2010.[16]  Especially, since the faxes relevant to this action that I have been able to review are almost exclusively addressed to "Human Resources,"[17] a department that is more likely to have an Online Fax Service for privacy and security.  It is not reliably possible, however, to identify which of the fax numbers alleged to have received faxes are or were associated with an Online Fax Service.  Except for businesses that have "forwarded" their analog fax line to a telephone number provided by an Online Fax Service, Online Fax Service providers are the "subscribers" to fax numbers provided by carriers or wholesalers.  In my experience, in fax cases where plaintiffs have subpoenaed carriers in an attempt to identify subscribers who provide Online Fax Services, the results have been dismal.  Many of the large carriers have responded to these subpoenas indicating they have no means to identify any association between subscribers and Online Fax Services.  The fact that this case goes back to 2009-2010 drastically increases the likelihood that carriers will not even have 13-year old subscriber records at all.   Any fax

---

[16] https://www.faxcompare.com/fax-news/faxcompare-com-posts-updated-reviews-for-24-top-internet-fax-services/ - accessed February 16, 2022.

[17] *See* for example, Biggerstaff Report, Exhibit 2: RMI00221, RMI00224, RMI00235, RMI00238, RMI00241, RMI00248, RMI00255, RMI00262, RMI00265, RMI00276, RMI00283, RMI00290; Exhibit 5b; Exhibit 8b.

received through an Online Fax Service would not be subject to the TCPA restrictions, *see* Paragraph 6.

**C.**   **Opinion Three**:  **The chances that the businesses that were the intended recipients of the faxes in 2009 and 2010 still have the same fax number as they did in 2009 and 2010 and would be able to receive fax notice now are very low.**

41.   Named Plaintiff Medical & Chiropractic Clinic, Inc. ("M&C") is a perfect example of this.  Ross Good of Anderson + Wanca (Plaintiffs' counsel) emailed previous counsel Cole, Scott & Kissane, P.A. on April 29, 2014 confirming that "[] Medical & Chiropractic Clinic does not have either the original of the fax attached to Plaintiff's [sic] Complaint nor the original fax machine that received that fax."[18]  It is unknown as to whether M&C is now using an Online Fax Service.  If M&C "ported" its old fax number to an Online Fax Service, (which may be true for many others in this case), the Online Fax Service provider would now be the subscriber of the fax number instead of the former subscriber.  In fact, it is also probable that many fax lines from 2009-2010 are now assigned to Online Fax Service providers, other subscribers as voice lines or have been ported to mobile telephone usage.

---

[18] *See* Appendix to Defendant's Motion for Final Summary Judgment, Document 130, filed 05/27/14, Page 80 of 80 PageID 2502.

---

Declaration of Ken Sponsler
*Cin-Q Automobiles, Inc. et al. v. Buccaneers Limited Partnership*
Case No. 8:13-cv-01592-AEP

Page 25 of 46

### a. Landline and fax number churn

42.    In 2004, more than 90 percent of U.S. adults lived in households that had an operational landline phone (including landlines connected to fax machines)—now it's less than 40 percent.[19]



43.    Already, 20 states have permitted AT&T to end landline phone service. In addition, AT&T stopped accepting requests to install DSL internet service, which is based on landline phone lines, in late 2020.[20]

---

[19] Landline Phones Are a Dying Breed, by Felix Richter, Mar 17, 2021. https://www.statista.com/chart/2072/landline-phones-in-the-united-states/ - accessed January 28, 2022.

[20] Landline phones are fading away: Here are two alternatives to stay connected, by Dennis Peng, July 23, 2021.  https://www.ooma.com/business/are-copper-phone-lines-going-away/ - accessed January 28, 2022.

44.   As a result of the foregoing, ~ 6.5 years after the submission of Mr. Biggerstaff's reports, his list of wireline carriers and their market share is outdated. Mr. Biggerstaff's point was that the carriers with larger market share would still have records from 2009-2010 and that only the smaller carriers would like NOT have subscriber records.   My experience with the actual carrier subpoena process in several fax cases reveals that regardless of whether carriers have records going back that far or not, they cannot associate an alleged fax number with any type of fax device or service, including online fax services.   Any analog phone line can be plugged into a fax machine and carriers are unaware of which analog line (if any) are attached to a fax machine.

45.   <u>Porting a landline fax number to an Online Fax Service</u>:   Since the porting of old fax numbers can take a significant amount of time (two-three weeks), Online Fax Services require users to **keep their existing fax subscriptions** until the porting process is over.   This means that regardless of whether number porting can be requested during the initial signup or only once the new account is created, newcomers will always receive a new fax number that can be used temporarily while

the service transfers the number over.[21]

46.    In  2018,  a government  survey found  that almost  55  percent  of households use  cellphones  exclusively,  up  from less  than  10  percent in  2005. Another 36 percent have both a mobile phone and a working landline.  Just over five percent of those surveyed said they relied entirely on a landline, compared with over a third of households in 2005.  The remaining three percent said they didn't have a phone.



**Mobile leaps over landlines**

The share of U.S. households that exclusively have cellphones has soared over the past decade to more than half, according to government surveys. At the same time, the percentage that have only a landline has plummeted to a little over 5 percent. Most of the rest have both.

Chart: The Conversation, BY-CC-ND • Source: The Center for Disease Control • Get the data

---

[21] https://online-fax-services.bestreviews.net/faq/how-do-i-transfer-my-fax-number-to-an-online-fax-service/ - accessed January 26, 2022.

---

47.     Even Mr. Biggerstaff cites to churn in his October 30, 2015 report ¶¶ 7-12, in which he stated that in the five to six years since the alleged sending of the faxes (2009 to 2010) to the date of his report, 28 percent of the phone numbers would have turned over (for an annual churn rate of 5.3 percent, which means, even using his numbers, by now it would be 56 percent or even much higher.   But Mr. Biggerstaff's churn numbers do not account for the business churn I discuss in the paragraph below, and the continued migration from old technology fax machines to much more efficient, secure, feature rich and cost effective Online Fax Services. Furthermore, due to many companies having records retention policies of only seven – ten years, these companies would no longer have subscriber information for the churned entities.

### b.     *Business Churn*
#### i.   Churn of entities in Florida

48.     The faxes in question were likely directed to businesses in the state of Florida.  A lot of businesses, especially small businesses, that were operational in 2009/2010 have since gone out of business, merged with other business, were purchased, and so on.  In other words: many simply do not exist anymore.  Many national as well as Florida state disasters have impacted the small business world and the health of businesses.

49.   <u>The impact of the Covid-19 pandemic</u>:  In 2020 alone, it was reported that approximately **40 percent** of respondents to a COVID Impact Survey reported **closing their business** for some period of time as a result of COVID-19.  More than 45 percent of Florida's small businesses were extremely concerned with their own ability to continue business due to the economic and fiscal conditions brought about by the COVID-19 pandemic.  (Emphasis added.)[22]

50.   64 percent of firms nationally experienced financial and challenges in 2019.  Firms in Florida experienced MORE challenges than small businesses nationally (73 percent).[23]

51.   Statewide, Florida ranked fourth nationally in total closures with 8,600.  Of that figure, 5,300 were permanent.[24]

52.   Natural disasters, such as hurricanes, also led to Florida businesses going out of business.  Hurricane Michael on October 10, 2018, had a devastating

---

[22] http://www.floridasbdc.org/Reports/Publications/COVID Impact Survey_October.pdf – accessed February 16, 2022.

[23] https://floridasbdc.org/Reports/2020-State-of-Small-Business/State_of_Small_Business_Florida_2020_FINAL_web.pdf – accessed February 9, 2022.

[24] https://www.sun-sentinel.com/coronavirus/fl-ne-coronavirus-florida-business-failures-reemployment-20200726-bditvghk3fhbdpt3aqoa33bazy-story.html – accessed February 9, 2022.

Declaration of Ken Sponsler
*Cin-Q Automobiles, Inc. et al. v. Buccaneers Limited Partnership*
Case No. 8:13-cv-01592-AEP

Page 30 of 46

impact and led to significant business losses and unemployment, which is just one example during the twelve-to-thirteen-year time period since the faxes at issue were allegedly sent.[25]

## ii. Business Churn – Nationwide



Source: U.S. Census Bureau, BDS; authors' calculations

For the first time on record, business deaths now outpace business. (Chart by Brookings Institute)

53.     According to data from the Bureau of Labor Statistics, as reported by Fundera, approximately 20 percent of small businesses fail within the first year.  By the end of the second year, 30 percent of businesses will have failed.  By the end of

---

[25] *See* page 13, https://floridasbdc.org/Reports/2020-State-of-Small-Business/State_of_Small_Business_Florida_2020_FINAL_web.pdf – accessed February 16, 2022.

the fifth year, about half will have failed.  And by the end of ten years, only 30 percent of businesses will remain — **a 70 percent failure rate**.  (Emphasis added.) Major outlier events can significantly change the failure rate for businesses, for example the Covid-19 pandemic has created harsh economic conditions for many industries.  Failure rates were exceptionally high for 2020.[26]

> **D.**   **Opinion Four:  It is not possible to determine which recipients received a fax through an Online Fax Service (as opposed to conventional / paper fax machines) by reviewing fax transmission logs, any other records produced in this case, or any other means other than detailed individual inquiries with respect to each putative class member, one by one.  Furthermore, the names and addresses of businesses or individuals who allegedly received the faxes at issue in this case cannot reliably be identified through objective means.**

54.    The TCPA provides, among other things, that "[i]t shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement" unless certain conditions apply.[27]

---

[26] https://www.entrepreneur.com/article/361350 – accessed January 27, 2022.

[27] 47 U.S.C. § 227(b)(1)(C).

Declaration of Ken Sponsler
*Cin-Q Automobiles, Inc. et al. v. Buccaneers Limited Partnership*
Case No. 8:13-cv-01592-AEP

Page 32 of 46

55.     A "telephone facsimile machine" is defined in the statute as "equipment which has the capacity (A) to transcribe text or images, both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper.[28]

56.     On July 13, 2017, AmeriFactors filed a Petition for Expedited Declaratory Ruling with the FCC seeking a clarification that the TCPA does not apply to fax transmissions that the recipient receives through Online Fax Services. On December 9, 2019, the FCC issued a Declaratory Ruling on AmeriFactors' Petition ("AmeriFactors Ruling") holding, in pertinent part, that Online Fax Services are not within the scope of the TCPA.  *In re AmeriFactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling*, CG Docket Nos. 02-278, 05-338, Declaratory Ruling, 2019 WL 6712128 (Dec. 9, 2019).  The FCC Ruling determined that faxes received via an Online Fax Service as electronic messages are effectively email and therefore **are not faxes received on a "telephone facsimile machine**."[29]

---

[28] 47 U.S.C. § 227(a)(3).

[29] https://docs.fcc.gov/public/attachments/DA-19-1247A1.pdf – accessed February 14, 2022.

57.     On September 4, 2020, the Consumer and Governmental Affairs Bureau of the FCC issued a Declaratory Ruling in *In the Matter of Joseph T. Ryerson & Son, Inc. Petition for Declaratory Ruling*, again confirming that modern faxing technologies are not within the scope of the TCPA,[30] and finding **"Ryerson's technology is similar to the technology" it had addressed in** *AmeriFactors*, and "an online service cannot itself print a fax and thus is plainly not 'equipment which has the capacity . . . to transcribe text or images (or both) from electronic signal received over a regular telephone line onto paper' and thus does not meet the statutory definition of a 'telephone facsimile machine,'" thus granting the Ryerson request.  (Emphasis added.)

58.     As the FCC acknowledged with its recent rulings, modern faxing technology operates in a much different manner from the technology in 1991, when the TCPA was enacted, and today's technology is also much different than the

---

[30] Excerpt:  Commenter Biggerstaff argues that all faxes are sent digitally, and can be received or sent using a computer, but the message in question should be considered a fax and not an email because "[*w*]*hen someone uploads a list of 10-digit telephone numbers and a fax image to a fax broadcaster's web site, they are undoubtedly sending faxes as a result of their actions even though they used a web browser to start the process*."  (Biggerstaff Comments at 3.)  https://docs.fcc.gov/public/attachments/DA-20-1038A1.pdf – accessed February 4, 2022.

technology that existed in 2003, when the FCC analyzed fax technologies.[31]  There are many variations of equipment, software and capabilities.[32]  Companies use cloud-based fax services that host all of the equipment and software and require no phone-system integration.  There also are hybrid services that still utilize onsite servers but that do away with phone-system integration.  There are online services marketed to consumers and small businesses that require only an Internet connection.  Users can even send and receive faxes using their smartphones (a

---

[31] *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14133 (2003), CG Docket No. 02-278, released July 3, 2003, ("2003 Report and Order").  In relevant part, ¶ 200 of the 2003 Report and Order states: "*We conclude that faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes.  However, we clarify that **the prohibition does not extend to facsimile messages sent as email over the Internet.**  The record confirms that a conventional stand-alone telephone facsimile machine is just one device used for this purpose; that developing technologies permit one to send and receive facsimile messages in a myriad of ways.  Today, a modem attached to a personal computer allows one to transmit and receive electronic documents as faxes.  'Fax servers' enable multiple desktops to send and receive faxes from the same or shared telephony lines.*"  *See also n.736* ("*Commenters also note that some commercial facsimile services transmit faxes to the recipients as email attachments.  **We emphasize that any rules the Commission adopts with respect to unsolicited facsimile advertisements would not extend to facsimile messages transmitted as email over the Internet.**"*) (emphasis added) (citing 47 U.S.C. § 227(a)(2).

[32] Order Decertifying Class, dated 10/15/2021, *True Health Chiropractic Inc., et al, v. McKesson Corporation, et al.*, No. 3:13-cv-002219 (N.D. Cal.).

---

Declaration of Ken Sponsler
*Cin-Q Automobiles, Inc. et al. v. Buccaneers Limited Partnership*
Case No. 8:13-cv-01592-AEP

Page 35 of 46

technology that did not exist in 2003).  In short, the online faxing industry, the technology it utilizes, and the customer experience continue to evolve.

59.     An online fax is a web-based or Internet fax service.  It functions like a webmail (Gmail, Hotmail) service for faxes and allows users to both send and receive faxes.  The system can integrate with email and other software systems. Internet-based faxing is the latest evolution of fax.  The term "online fax" is often used interchangeably with "Internet fax" and a number of other terms.  Online fax refers to a hosted system, while Internet fax refers to any system of faxing where faxes travel (at least partially) over the Internet.

60.     Voice over Internet Protocol ("VoIP"), is a methodology and group of technologies for the delivery of voice communications and multimedia sessions over Internet Protocol ("IP") networks such as the Internet, also supports fax. Additionally, Online Fax Services can use VOIP protocols as well.

61.     There are numerous variations of Online Fax Services.  Where an Online Fax Service receives a fax from a conventional fax machine, it typically

Declaration of Ken Sponsler
*Cin-Q Automobiles, Inc. et al. v. Buccaneers Limited Partnership*
Case No. 8:13-cv-01592-AEP

Page 36 of 46

converts the transmission into a digital file (typically PDF[33] or TIFF[34] files), allowing images of faxes to be received and sent via email or accessed via an online portal maintained by the service provider.

62.    I have personally spoken with representatives from major Online Fax Service providers to ask if their online fax technology is capable of printing the incoming fax that is normally converted to a PDF or TIFF file and emailed to the end user or viewed on an online portal. None of the Online Fax Service providers I spoke to have online fax technology that is capable of printing the faxes, including eFax, MetroFax, SRFax, Biscom 123, and RingCentral Fax. In addition, I know of no Online Fax Service that offers a service relating to printed faxes. To my knowledge, the Online Fax Service providers universally convert the facsimile into an image file and email it to the appropriate client of the service or make it available via their web portal. For Online Fax Service providers to print out their customers' faxes and then possibly deliver them to their customers via Federal Express or the

---

[33] PDF stands for Portable Document Format, a file format that provides an electronic image of text or text and graphics that looks like a printed document and can be viewed, printed, and electronically transmitted. Definitions from Oxford Languages.

[34] TIFF or TIF stands for Tagged Image File Format, which is used in storing images. http://www.differencebetween.net/technology/protocols-formats/difference-between-tif-and-tiff/ - accessed February 4, 2022.

United States Postal Service or in any other way than their customers' desired email attachment, would be completely absurd.

63.     In order to receive an image of the fax as an email attachment using an Online Fax Service, the Online Fax Service, using hardware and software, converts the audio frequency tones to a TIFF or PDF image and an email is sent to a designated email address associated with the fax number. The "from" section is the service provider, the "subject" section is the fax sender's fax number and other data, and the fax as it was transmitted is attached to the email. Web interfaces, desktop software, or smartphone apps can be logged into for checking faxes to receive faxes through a webpage, computer, or smartphone.

64.     In the context of an Online Fax Service, the recipient of the fax does not receive the transmission "over a regular telephone line." The service stores the faxes online and either allows the recipient to view the file from a web portal or to receive the file via email attachment. The user of an Online Fax Service does not need to have an analog telephone line dedicated to incoming faxes because there is no transmission over a regular telephone line to a fax machine owned/operated by the ultimate intended recipient. Instead, the transmission in such instances engages the telephone lines that belong to the Online Fax Services.

Declaration of Ken Sponsler
*Cin-Q Automobiles, Inc. et al. v. Buccaneers Limited Partnership*
Case No. 8:13-cv-01592-AEP

Page 38 of 46

65.     The development away from the traditional fax machine has resulted in many businesses in the marketplace offering non-traditional faxing solutions, including, for example, Upland InterFAX, eGoldFax, Vonage, eFax, Mitel, Retarus, RingCentral, Metrofax, and Fax.com.  These businesses use a variety of platforms accessible from a host of devices and generally are marketed as offering faxing solutions that obviate the need for a traditional fax machine.

66.     Many Online Fax Services include access to their "fax portal." Typically, users of the fax services can specify who within the organization should receive a notification email that a fax has been received and/or whom to automatically email the fax as an attachment.  The portal facilitates a user's ability to view/or delete received faxes by clicking on the PDF or TIFF file.  This "opens" the image and presents to the user the actual fax image.  From that point users can delete/email/save/print the image as desired.  These images or files may also be forwarded to others inside or outside the organization further complicating the identity of the person or persons who actually received the file.

67.     According to a recently released paper publishing research from International Data Group ("IDC"), **90 percent of fax users** have already integrated or are evaluating integrating fax with other technologies or applications like email, or Enterprise Resource Planning ("ERP"), Customer Relationship ("CRM") and

Declaration of Ken Sponsler
*Cin-Q Automobiles, Inc. et al. v. Buccaneers Limited Partnership*
Case No. 8:13-cv-01592-AEP

Page 39 of 46

Electronic Health Record ("EHR") systems.  IDC's research predicts that during the next two years, all fax usage will shift to cloud services.[35]  One of the leading Online Fax Services states **more than 11 million small business owners choose its Online Fax Services solutions**.  (Emphasis added.)[36]

68.     Compared with a traditional fax machine, an Online Fax Service does not require maintenance of equipment, ink/toner, paper, or a landline phone line.  It does, however, require a way to access the Internet (such as a computer or smartphone).

69.     Some of the primary selling points for Online Fax Services are that users need not have a dedicated telephone line or machine to receive faxes, will not use paper or toner, and will not tie up their telephone lines.

70.     Setting up an Online Fax Service account is easy to do – most of the technology is straightforward.  In most cases, all that is needed is an Internet connection, email address, and credit card.[37]  If customers are transitioning from a premise-based physical fax machine to an Online Fax Service, they may transfer or

---

[35] https://enterprise.efax.com/blog/the-top-10-reasons-companies-continue-to-fax-in-2017 – accessed February 4, 2022.

[36] https://www.efax.com/lp/greenfax - accessed February 4, 2022.

[37] https://faxauthority.com/online-fax/ - accessed February 4, 2022.

Declaration of Ken Sponsler
*Cin-Q Automobiles, Inc. et al. v. Buccaneers Limited Partnership*
Case No. 8:13-cv-01592-AEP

Page 40 of 46

forward their existing fax number to their Online Fax Service provider or obtain an entirely new fax number.

71.     Online Fax Services are always on – there is no need to keep a computer running to maintain an Internet connection.  When a fax arrives, it is automatically received by the service, no busy signals are caused.  To confirm that Online Fax Services do not incur busy signals when receiving a fax (so as to prevent another sender from sending a fax to the same recipient at the same time), we called one of the major cloud-based web-fax service providers, Mitel, to inquire if, when using Mitel Cloud Services WebFax service, senders would ever receive a busy signal, even when multiple faxes are received simultaneously.  The Mitel agent replied, one would basically never get a busy signal.  I also called eFax, another premier fax provider, and was told by the eFax representative that there are no busy signals at eFax, an eFax subscriber would receive all incoming faxes even if they were to arrive concurrently.  This is also supported by eFax literature, which states "*eFaxing uses* a broadband connection instead of a phone line.  This means a virtual fax number *will effectively never have a busy signal as it can handle numerous faxes*

*simultaneously.*"[38]  "*Online faxing makes busy signals a problem of the past.  Your fax number is always available – even if your computer is turned off.*"[39]  "*Senders never get a busy signal, even if you're on the phone or receiving a fax transmission.*"[40]

72.     There are many Online Fax Services that offer reliable faxing service at cheap prices.  Nearly every Online Fax Service will provide users with a fax phone number when they join as customers.

73.     Thus, Online Fax Services do not impact a business's telephone lines, do not keep a traditional fax machine busy, and do not use paper or toner unless the recipient decides to print the message.  To be clear, the user would have to print the message using a printer connected to his or her computer, just as the user would print any other document.  The Online Fax Service does not offer printing capabilities directly.

---

[38] https://helpdesk.telebroad.com/support/solutions/articles/4000105244-efax-vs-traditional-fax – accessed February 16, 2022.

[39] https://www.fax.plus/blog/receive-fax-online-email-phone-computer/ - accessed February 16, 2022.

[40] https://www.ringcentral.com/office/features/internet-fax-service/overview.html – accessed February 16, 2022.

74.   In addition to the already mentioned advantages over a traditional fax machine, the privacy implications of Online Fax Services are much improved and therefore appealing to companies large and small, especially in the medical space. Confidential information, such as social security numbers, salary/wages, HIPAA, HR-related matters, accounting, medical, legal, and business-proprietary information will not be printed out on a paper fax that will sit on a tray with open access to anyone who happens to view or even take possession of the content.

75.   Reviewing the advantages of all these cloud-based, modern fax technologies negates the need to purchase and maintain a fax machine in a centralized location where employees have to get in line to send outgoing faxes, or stand by when expecting an incoming fax (particularly one that might contain confidential or sensitive information that the user might prefer to shield from another's view), and it is plain to see the reasons for the proliferation of these new technologies.   Other benefits are clearly in line with HIPAA and privacy rule compliance, and no more purchasing fax paper, ink, paying for a dedicated phone line and equipment maintenance or even replacement.

76.   I have served as an expert witness in dozens of fax related cases.   In several of these cases, the operators of the fax sender service have testified that there is no means by which they can determine whether the receiving fax machine is an

Online Fax Service, a stand-alone fax machine or other device such as intranet fax servers, etc.  Barry Clark, the owner and CEO of WestFax, has acknowledged that there is no way to know whether the facsimile was received by a fax service that converts the transmission into an image and sends the image as an email to a recipient associated with the fax number.[41]  In a more recent case, the Northern District of California came to the same conclusion.[42]  Carriers also cannot identify which subscriber lines are linked to an Online Fax Service and which are not.[43]  This is one of the primary challenges associated with the *AmeriFactors* and *Ryerson* FCC Declaratory Rulings.  Since Online Fax Services are no longer subject to the TCPA

---

[41] Deposition of Barry Clark at 34, *Etter v. Allstate Ins. Co., et al.*, No. 3:17-cv-00184-WHA (N.D. Cal.), ECF No. 118-9 ("Clark *Etter* Deposition").

[42] Order Decertifying Class, dated 10/15/2021, *True Health Chiropractic Inc., et al, v. McKesson Corporation, et al.*, No. 3:13-cv-002219 (N.D. Cal.), Page 2: "Telephone carriers who provided service to over 60% of the class members affirmatively say they have no way of knowing if the class member received faxes via a stand-alone fax machine or via an online fax service."

[43] Defendants' Response to Plaintiffs' Offer of Proof, Filed 09/17/21, *True Health Chiropractic Inc., et al, v. McKesson Corporation, et al.*, No. 3:13-cv-002219 (N.D. Cal.), Page 3: "[] phone carriers for about 17% of the class do not have responsive records for the 2009-2010 class period, or did not service the class member phone numbers sought by Plaintiffs.  Thus, for at least 17% of the class, Plaintiffs have no data from which to determine how faxes were received."; Page 4: "Several phone carriers have attested that they cannot determine if their subscribers received faxes on a stand-alone fax machine or via online fax services."

restrictions, plaintiffs must identify which among the alleged faxes were to an Online Fax Service so they can be excluded from the class definition.  Despite repeated attempts at subpoenaing carriers, this has not been successful in any of my experiences.

## VI.   CONCLUSION

77.    For all of the reasons outlined above, it is my opinion that the fax list compiled by Mr. Biggerstaff in his expert reports does not reliably show whether or not the faxes purported to having been sent by either Rocket Messaging or 127 High Street were in fact sent or to show what fraction (if any) of the putative class members actually received a fax.  In addition, Mr. Biggerstaff's report does not identify that certain numbers he claims received faxes were wireless, nor does he explain how these numbers could have received faxes according to his methodology. This evidence further renders his fax list and methodology questionable to determine whether numbers on his list received faxes.  These facts in addition to the number of fax numbers residing on Florida and National DNC Registries call Mr. Biggerstaff's assertions regarding the number of successful faxes seriously into question.

78.    I have also identified issues relating to business and telephone churn since 2009-2010 that will seriously hamper any reliable identity of alleged class

_____
Declaration of Ken Sponsler
*Cin-Q Automobiles, Inc. et al. v. Buccaneers Limited Partnership*
Case No. 8:13-cv-01592-AEP

Page 45 of 46

members.  Additionally, many faxes were likely received by an Online Fax Service

and these faxes cannot be reliably identified.

_____

Ken Sponsler
February 18, 2022

Declaration of Ken Sponsler
*Cin-Q Automobiles, Inc. et al. v. Buccaneers Limited Partnership*
Case No. 8:13-cv-01592-AEP

Page 46 of 46

# EXHIBIT 1

## Exhibit 1 - Ken Sponsler Relevant Experience

To date, I have been retained and disclosed as an expert witness in the following TCPA-related cases:

- *Jamison v. First Credit Services*, 1:12-cv-04415 (N.D. Ill.);

- *Warnick v. DISH*, 1:12-cv-01952 (D. Colo.);

- *Wojcik v. Buffalo Bills*, 8:12-cv-2414 (M.D. Fla.);

- *Lee v. Stonebridge Life Insurance*, 11-cv-0043 (N.D. Cal.);

- *Lopera v. The Receivable Management Services Corp.*, 1:12-cv-09649 (N.D. Ill.);

- *Rodriguez v. Allied Interstate*, 3:13-cv-00388 (S.D. Cal.);

- *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 1:12-cv-00729 (W.D. Mich.);

- *True Health Chiropractic v. McKesson Corp.,* 3:13-cv-002219 (N.D. Cal.);

- *Daisy, Inc. v. Pollo Operations,* 2:14-cv-00564 (M.D. Fla.);

- *Pinchem v. Regal Medical Group,* 2:15-cv-06518 (C.D. Cal.);

- *America's Health & Resource Center and Affiliated Health Group v. Alcon Laboratories, Inc.,* 1:16-cv-04539 (N.D. Ill.);

- *Gorss Motels v. Otis Elevator Co.,* 3:16-cv-017871 (D. Conn.);

- *Etter v. Allstate Insurance, 3:17-cv-00184 (N.D. Cal.);*

- *Scoma Chiropractic v. Mastercard International, Inc*., 2:16-cv-00041 (M.D. Fla.);

- *Gorss Motels v. Sprint Solutions, Inc.,* 3:17-cv-00546 (D. Conn.);

- *Gorss Motels v. AT&T Mobility & AT&T Mobility National Accounts,* 3:17-cv-00403 (D. Conn.)*;*

- *Meda Pharmaceuticals, Inc. v. Odyssey Services, Inc.,* SOM-L-406-14 (Superior Court of Somerset County, New Jersey);
- *Gorss Motels v. Lands' End,* 3:17-cv-00010 (D. Conn.);
- *Raffin v. Medicredit,* 2:15-cv-04912 (C.D. Cal.);
- *Manno v. Healthcare Revenue Recovery Group, LLC,* 11-cv-61357 (S.D. Fla.);
- *Trilegiant Corporation v. Sitel Corporation*, 1:09-cv-06492 (S.D. N.Y.);
- *Horton v. Cavalry Portfolio Services, LLC,* 3:13-cv-00307 (S.D. Cal.);
- *Molnar v. NCO Financial Systems,* 3:13-cv-00131 and 3-13-cv-00685 (S.D. Cal.);
- *Abante Rooter & Plumbing v. Birch Communications,* 1:15-cv-03562 (N.D. Ga.);
- *Dipuglia v. US Coachways,* 1:17-cv-23006 (S.D. Fla.);
- *Toney v. Quality Resources,* 1:13-cv-00042 (N.D. Ill.);
- *Abante Rooter & Plumbing v. Alarm.com,* 4:15-cv-06314 (N.D. Cal.);
- *Paoletti v. Everglades College,* 0:16-cv-61777 (S.D. Fla.);
- *Flores v. Adir International,* 2:15-cv-00076 (C.D. Cal.);
- *Meyer v. Bebe Stores, 4:14-cv-00267 (N.D. Cal.);*
- *CS Wang v. Wells Fargo, 1:16-cv-11223 (N.D. Ill.);*
- *Fitzgerald v. Universal Pictures, 6:16-cv-01193 (M.D. Fla.);*
- *Eisenband v. Starion Energy, 9:17-cv-80195 (S.D. Fla.);*
- *Aparicio v. Jade Holdings Group,* 0:18-cv-60202 (S.D. Fla.);
- *Fabricant v. United Card Solutions,* 2-18-cv-01429 (C.D. Cal.);
- *Powell v. YouFit Health Clubs,* 0:17-cv-62328 (S.D. Fla.);
- *Poirier v. CubaMax Travel,* 1:18-cv-23240 (S.D. Fla.);

- *Warren v. Ross Medical Education Center,* 1-18-cv-00341 (W.D. Mich.);

- *Washington v. Ross Medical Education Center,* 3-18-cv-00139 (N.D. Ind.);

- *Lisa Drayton and Daniel Drayton v. Toyota Motor Credit Corp.,* 3:16-cv-00046 (M.D. Fla.);

- *Lennartson v. Papa Murphy's Holdings,* 3:15-cv-05307 (W.D. Wash.);

- *Burke v. Credit One Bank,* 8:18-cv-00728 (M.D. Fla.);

- *Frank v. South Aiken Fitness,* 1:18-cv-02454 (D.S.C.);

- *Davila-Lynch v. HOSOPO Corporation d/b/a Horizon Solar Power, et al.,* 1:18-cv-10072 (D. Mass.);

- *Williams v. PillPack LLC,* 3:19-cv-05282 (W.D. Wash.);

- *Fischer v. TriVita, Inc.,* 6:19-cv-02333 (M.D. Fla.);

- *Weisbein v. Allergan, Inc.,* 8:20-cv-0080 (C.D. Cal.);

- *Keim v. ADF Midatlantic,* 9:12-cv-80577 (S.D. Fla.);

- *Marcus v. CVS Pharmacy,* 3:15-cv-00259 (D. N.J.);

- *Tomeo v. Citigroup and CitiMortgage,* 1-13-cv-04046 (N.D. Ill.);

- *Tillman v. Ally Financial*, 2:16-cv-00313 (M.D. Fla.);

- *Slovin v. Sunrun,* 4:15-cv-05340 (N.D. Cal.);

- *Gorss Motels v. Brigadoon Fitness,* 1:16-cv-00330 (N.D. Ind.);

- *Larson v. Harman-Management Corp. et al*., 1:16-cv-00219 (E.D. Cal.);

- *Austin and Marrero v. Public Reputation Management Services d/b/a PR.Business,* 9:20-cv-80161 (S.D. Fla.);

- *Hicks v. Houston Baptist University*, 5:17-cv-00629 (E.D. N.C.);

- *Bacon v. All Web Leads, Inc.,* 1:20-cv-00043 (W.D. Tex.);

- *Glasser v. Hilton Grand Vacations Co.,* 8:16-cv-00952 (M.D. Fla.);

- *Bakov v. CWT, 1:15-cv-02980 consolidated with 1:17-cv-00973 (N.D. Ill.);*

- *Knapper v. Cox Communications,* 2:17-cv-00913 (D. Ariz.);

- *Bennett v. GoDaddy.com,* 16-cv-03908 (D. Ariz.);

- *Sliwa v. Bright House Networks,* 2:16-cv-00235 (M.D. Fla.);

- *Hunter, Villa, Mejia v. Time Warner Cable,* 1:15-cv-06445 (S.D.N.Y.);

- *Morgan v. Orlando Health, Inc. et al.,* 6:17-cv-01972 (M.D. Fla.);

- *San Pedro-Salcedo v. The Häagen-Dazs Shoppe Co.,* 5:17-cv-03504 (N.D. Cal.);

- *Grigorian v. FCA US,* 1:18-cv-24364 (S.D. Fla.);

- *Morgan v. Adventist Health System/Sunbelt, Inc.,* 6:18-cv-01342 (M.D. Fla.);

- *Clark v. FDS Bank et al.,* 6:17-cv-00692 (M.D. Fla.);

- *Chinitz v. Intero Real Estate Services,* 5:18-cv-05623 (N.D. Cal.);

- *Jenkins et al. v. National Grid USA Service Company, Inc*., 2:15-cv-001219 (E.D.N.Y.);

- *LaGuardia et al. v. Designer Brands Inc. and DSW Shoe Warehouse, Inc.,* 2:20-cv-02311 (S.D. Ohio);

- *Pascal v. Concentra, Inc.,* 3:19-cv-02559 (N.D. Cal.);

- *Burk v. Direct Energy, L.P.,* 4:19-cv-00663 (S.D. Tex.);

- *Abed et al. v. Mike Bloomberg 2020, Inc.,* 2:20-cv-02231 (C.D. Cal.);

- *Cambridge v. Toyota Financial Services,* 2:20-cv-01345 (D. Nev.);

- *Watson et al. v. Lexus of Manhattan,* 1:20-cv-04572 consolidated with 1:21-cv-01588 (S.D.N.Y.);

- *E&G, Inc. v. Mt. Vernon Mills,* 6:17-cv-00318 (D. S.C.);

- *Kawa Orthodontics LLP v. Laboratory Corporation of America Holdings,* 9:19-cv-80521 (S.D. Fla.);

- *Davis Neurology, P.A. v. DoctorDirectory.com, L.L.C.*, 4:19-cv-00499 (E.D. Ark.);

- *Moore v. Club Exploria, LLC*, 1:19-cv-02504 (N.D. Ill.);

- *St John and Penuela v. Keller Williams Realty, Inc.*, 6:19-cv-01347 (M.D. Fla.);

- *Advanced Rehab and Medical P.C. v. Amedisys Holding, LLC*, 1:17-cv-01149 (W.D. Tenn.);

- *Scoma Chiropractic v. National Spine & Pain Centers*, 2:20-cv-00430 (M.D. Fla.);

- *Career Counseling, Inc. dba Snelling Staffing Services v. AmeriFactors Financial Group, LLC*, 3-16-cv-03013 (D. S.C.); and

- *Spaner v. The Coca-Cola Co.*, 1:19-cv-22210 (S.D. Fla.).

# EXHIBIT 2

### Exhibit 2 - Ken Sponsler Materials Reviewed and Relied Upon

1) Expert Report of Robert Biggerstaff dated March 20, 2014;

2) Supplemental Expert Report of Robert Biggerstaff dated October 30, 2015;

3) Second Expert Report of Robert Biggerstaff dated December 22, 2015;

4) Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Notice of the Class, Document 324, filed 08/27/21;

5) Appendix to Defendant's Motion for Final Summary Judgment, Document 131, filed 05/27/14;

6) 140527 [Doc130] Appendix to Defendant's Motion for Final Summary Judgment (with exhibits);

7) Deposition transcript of Ian E. Jenkins, MKP Rocket Messaging and individually, dated June 8, 2015;

8) Deposition of Barry Clark at 34, *Etter v. Allstate Ins. Co., et al*., No. 3:17-cv-00184-WHA (N.D. Cal.), ECF No. 118-9;

9) Doc487 Order decertifying StandAloneFaxClass 211015, *True Health Chiropractic v. McKesson Corp.*, 3:13-cv-002219 (N.D. Cal.);

10) Doc464 Defendants' Response to Plaintiffs' Offer of Proof, Filed 09/17/21, *True Health Chiropractic v. McKesson Corp.*, 3:13-cv-002219 (N.D. Cal.).

# EXHIBIT 3

**Exhibit 3**

The information conveyed in the transmission consists of both protocol and document content.  Protocol comprises identification, control information, and capabilities.  Document content consists primarily of the document image plus metadata accompanying the image.  The image data representation is the means by which an image of a document is encoded within the fax content.  When the fax has been successfully sent, the sender receives a confirmation: an indication that the fax content was delivered.  This confirmation is an internal signal and is not normally visible to the sender.  Some error messages are visible, however, to allow a page to be re-sent.  (*See* http://www.cisco.com/c/en/us/td/docs/ios/solutions_docs/voip_solutions/Fax_ISD.html – accessed February 18, 2022.



# EXHIBIT 4

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | TransactionID | UserID | SubmitTime | PostponeTime | CompletionTime | UserID | DestinationFax | ReplyEmail | Remote CSID | Pages Sent | Status | Duration | Subject | Pages Submitted | Units | Cost Per Unit | SenderCSID |
| 2 | 1057592210 | ACME | 6/9/2020 21:11 | 6/10/2020 12:10 | 6/10/2020 19:23 | ACME | 19876543211 | ACME@sample.com | FAX | 1 | 0 | 39 | ACME Campaign Sample | 1 | 1 | 0.11 | ACME |
| 3 | 1057592209 | ACME | 6/9/2020 21:11 | 6/10/2020 12:10 | 6/10/2020 19:38 | ACME | 19876543212 | ACME@sample.com | FAX | 1 | 0 | 36 | ACME Campaign Sample | 1 | 1 | 0.11 | ACME |
| 4 | 1057592208 | ACME | 6/9/2020 21:11 | 6/10/2020 12:10 | 6/10/2020 19:37 | ACME | 19876543213 | ACME@sample.com | FAX | 1 | 0 | 37 | ACME Campaign Sample | 1 | 1 | 0.11 | ACME |
| 5 | 1057592206 | ACME | 6/9/2020 21:11 | 6/10/2020 12:10 | 6/10/2020 19:23 | ACME | 19876543214 | ACME@sample.com | FAX | 1 | 0 | 40 | ACME Campaign Sample | 1 | 1 | 0.11 | ACME |
| 6 | 1057592203 | ACME | 6/9/2020 21:11 | 6/10/2020 12:10 | 6/10/2020 19:23 | ACME | 19876543215 | ACME@sample.com | FAX | 1 | 0 | 37 | ACME Campaign Sample | 1 | 1 | 0.11 | ACME |
| 7 | 1057592202 | ACME | 6/9/2020 21:11 | 6/10/2020 12:10 | 6/10/2020 19:23 | ACME | 19876543216 | ACME@sample.com | FAX | 1 | 0 | 43 | ACME Campaign Sample | 1 | 1 | 0.11 | ACME |
| 8 | 1057592200 | ACME | 6/9/2020 21:11 | 6/10/2020 12:10 | 6/10/2020 19:23 | ACME | 19876543217 | ACME@sample.com | FAX | 1 | 0 | 40 | ACME Campaign Sample | 1 | 1 | 0.11 | ACME |
| 9 | 1057592199 | ACME | 6/9/2020 21:11 | 6/10/2020 12:10 | 6/10/2020 19:43 | ACME | 19876543218 | ACME@sample.com | FAX | 1 | 0 | 46 | ACME Campaign Sample | 1 | 1 | 0.11 | ACME |
| 10 | 1057592198 | ACME | 6/9/2020 21:11 | 6/10/2020 12:10 | 6/10/2020 19:30 | ACME | 19876543219 | ACME@sample.com | FAX | 1 | 0 | 44 | ACME Campaign Sample | 1 | 1 | 0.11 | ACME |
| 11 | 1057592196 | ACME | 6/9/2020 21:11 | 6/10/2020 12:10 | 6/10/2020 19:26 | ACME | 19876543220 | ACME@sample.com | FAX | 1 | 0 | 39 | ACME Campaign Sample | 1 | 1 | 0.11 | ACME |
| 12 | 1057592192 | ACME | 6/9/2020 21:11 | 6/10/2020 12:10 | 6/10/2020 19:38 | ACME | 19876543221 | ACME@sample.com | FAX | 1 | 0 | 61 | ACME Campaign Sample | 1 | 1.1 | 0.11 | ACME |
| 13 | 1057592191 | ACME | 6/9/2020 21:11 | 6/10/2020 12:10 | 6/10/2020 19:37 | ACME | 19876543222 | ACME@sample.com | FAX | 1 | 0 | 41 | ACME Campaign Sample | 1 | 1 | 0.11 | ACME |
| 14 | 1057592190 | ACME | 6/9/2020 21:11 | 6/10/2020 12:10 | 6/10/2020 19:46 | ACME | 19876543223 | ACME@sample.com | FAX | 1 | 0 | 43 | ACME Campaign Sample | 1 | 1 | 0.11 | ACME |
| 15 | 1057592189 | ACME | 6/9/2020 21:11 | 6/10/2020 12:10 | 6/10/2020 19:37 | ACME | 19876543224 | ACME@sample.com | FAX | 1 | 0 | 45 | ACME Campaign Sample | 1 | 1 | 0.11 | ACME |

# EXHIBIT 5

Phone Number

3522919348
3523329360
3525289361
3524299373
3526292071
3524839387
3522379380
3525289373
3526859358
3522279363
3522599346
3527539354
3526869350
3522279355
3523739363
3522439368
3527509367
3526293417
3526289349
3523479369
3526292381
3525429383
3526292567
3526295214
3523839349
3527939352
3526292365
3526298740
3524299353
3522459365
3525289387
3523519339
3527879356
3526290704
3526293643
3528739369
3524299355
3526669347
3528739385
3526292125
3526297464
3526291700
3526296047
3526291739
3526298634

| RecipientId | JobId | StartTime | Phone | Pages | Attempts | BaudRate | CSID | StatusGroup | Status |
|---|---|---|---|---|---|---|---|---|---|
| 112640_8_4334 | 8 | 8/19/2009 9:55 | 13526289813 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4337 | 8 | 8/19/2009 9:55 | 13526290245 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4336 | 8 | 8/19/2009 9:55 | 13526290056 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4340 | 8 | 8/19/2009 9:56 | 13526290389 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4341 | 8 | 8/19/2009 9:56 | 13526290421 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4342 | 8 | 8/19/2009 9:56 | 13526290445 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4343 | 8 | 8/19/2009 9:56 | 13526290456 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4344 | 8 | 8/19/2009 9:56 | 13526290704 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4345 | 8 | 8/19/2009 9:56 | 13526290755 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4346 | 8 | 8/19/2009 9:56 | 13526290795 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4347 | 8 | 8/19/2009 9:56 | 13526290926 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4348 | 8 | 8/19/2009 9:56 | 13526291016 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4349 | 8 | 8/19/2009 9:56 | 13526291263 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4350 | 8 | 8/19/2009 9:56 | 13526291333 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4351 | 8 | 8/19/2009 9:56 | 13526291420 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4352 | 8 | 8/19/2009 9:56 | 13526291512 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4353 | 8 | 8/19/2009 9:56 | 13526291515 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4354 | 8 | 8/19/2009 9:56 | 13526291547 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4355 | 8 | 8/19/2009 9:56 | 13526291613 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4356 | 8 | 8/19/2009 9:56 | 13526291649 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4357 | 8 | 8/19/2009 9:56 | 13526291700 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4358 | 8 | 8/19/2009 9:56 | 13526291739 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4359 | 8 | 8/19/2009 9:56 | 13526291767 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4360 | 8 | 8/19/2009 9:56 | 13526291865 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4361 | 8 | 8/19/2009 9:56 | 13526291919 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4362 | 8 | 8/19/2009 9:56 | 13526291924 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4363 | 8 | 8/19/2009 9:56 | 13526291926 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4364 | 8 | 8/19/2009 9:56 | 13526292018 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4365 | 8 | 8/19/2009 9:56 | 13526292071 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4366 | 8 | 8/19/2009 9:56 | 13526292125 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4367 | 8 | 8/19/2009 9:56 | 13526292140 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4368 | 8 | 8/19/2009 9:56 | 13526292195 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4369 | 8 | 8/19/2009 9:56 | 13526292365 | 0 | 1 | 0 | NULL | 0 | 0 |
| 112640_8_4370 | 8 | 8/19/2009 9:56 | 13526292381 | 0 | 1 | 0 | NULL | 0 | 0 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 112640_8_4371 | 8 | 8/19/2009 9:56 | 13526292530 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4372 | 8 | 8/19/2009 9:56 | 13526292567 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4373 | 8 | 8/19/2009 9:56 | 13526292634 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4374 | 8 | 8/19/2009 9:57 | 13526292666 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4375 | 8 | 8/19/2009 9:57 | 13526292749 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4376 | 8 | 8/19/2009 9:57 | 13526292750 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4377 | 8 | 8/19/2009 9:57 | 13526292869 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4378 | 8 | 8/19/2009 9:57 | 13526292900 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4379 | 8 | 8/19/2009 9:57 | 13526293043 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4380 | 8 | 8/19/2009 9:57 | 13526293070 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4014 | 8 | 8/19/2009 9:57 | 13525968038 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4381 | 8 | 8/19/2009 9:57 | 13526293103 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4382 | 8 | 8/19/2009 9:57 | 13526293167 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4383 | 8 | 8/19/2009 9:57 | 13526293327 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4384 | 8 | 8/19/2009 9:57 | 13526293383 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4385 | 8 | 8/19/2009 9:57 | 13526293390 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4386 | 8 | 8/19/2009 9:57 | 13526293399 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4387 | 8 | 8/19/2009 9:57 | 13526293417 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4388 | 8 | 8/19/2009 9:57 | 13526293464 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4389 | 8 | 8/19/2009 9:57 | 13526293566 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4390 | 8 | 8/19/2009 9:57 | 13526293619 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4391 | 8 | 8/19/2009 9:57 | 13526293643 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4392 | 8 | 8/19/2009 9:57 | 13526293697 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4393 | 8 | 8/19/2009 9:57 | 13526294014 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4394 | 8 | 8/19/2009 9:57 | 13526294038 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4395 | 8 | 8/19/2009 9:57 | 13526294213 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4396 | 8 | 8/19/2009 9:57 | 13526294224 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4397 | 8 | 8/19/2009 9:57 | 13526294318 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4398 | 8 | 8/19/2009 9:57 | 13526294691 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4399 | 8 | 8/19/2009 9:57 | 13526294739 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4400 | 8 | 8/19/2009 9:57 | 13526294780 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4401 | 8 | 8/19/2009 9:57 | 13526294798 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4402 | 8 | 8/19/2009 9:57 | 13526294812 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4403 | 8 | 8/19/2009 9:57 | 13526294980 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4404 | 8 | 8/19/2009 9:57 | 13526295026 | 0 | 1 | 0 NULL | | 0 | 0 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 112640_8_4405 | 8 | 8/19/2009 9:57 | 13526295097 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4406 | 8 | 8/19/2009 9:57 | 13526295214 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4407 | 8 | 8/19/2009 9:57 | 13526295486 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4408 | 8 | 8/19/2009 9:57 | 13526295616 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4409 | 8 | 8/19/2009 9:57 | 13526295664 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4410 | 8 | 8/19/2009 9:57 | 13526296019 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4411 | 8 | 8/19/2009 9:57 | 13526296047 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4412 | 8 | 8/19/2009 9:57 | 13526296336 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4413 | 8 | 8/19/2009 9:57 | 13526296348 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4414 | 8 | 8/19/2009 9:57 | 13526296381 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4415 | 8 | 8/19/2009 9:57 | 13526296398 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4416 | 8 | 8/19/2009 9:57 | 13526296431 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4417 | 8 | 8/19/2009 9:57 | 13526296696 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4418 | 8 | 8/19/2009 9:57 | 13526296738 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4419 | 8 | 8/19/2009 9:57 | 13526296801 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4420 | 8 | 8/19/2009 9:57 | 13526296859 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4421 | 8 | 8/19/2009 9:57 | 13526296946 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4422 | 8 | 8/19/2009 9:57 | 13526297068 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4423 | 8 | 8/19/2009 9:57 | 13526297107 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4424 | 8 | 8/19/2009 9:57 | 13526297166 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4425 | 8 | 8/19/2009 9:57 | 13526297278 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4426 | 8 | 8/19/2009 9:57 | 13526297430 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4427 | 8 | 8/19/2009 9:57 | 13526297464 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4428 | 8 | 8/19/2009 9:57 | 13526297487 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4429 | 8 | 8/19/2009 9:57 | 13526297551 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4430 | 8 | 8/19/2009 9:57 | 13526297651 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4431 | 8 | 8/19/2009 9:57 | 13526297684 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4432 | 8 | 8/19/2009 9:57 | 13526297724 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4433 | 8 | 8/19/2009 9:57 | 13526297745 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4434 | 8 | 8/19/2009 9:57 | 13526297876 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4435 | 8 | 8/19/2009 9:57 | 13526297917 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4436 | 8 | 8/19/2009 9:57 | 13526298010 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4437 | 8 | 8/19/2009 9:57 | 13526298066 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4438 | 8 | 8/19/2009 9:57 | 13526298242 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_8_4439 | 8 | 8/19/2009 9:57 | 13526298391 | 0 | 1 | 0 NULL | 0 | 0 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 112640_8_4440 | 8 | 8/19/2009 9:57 | 13526298414 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4441 | 8 | 8/19/2009 9:57 | 13526298478 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4442 | 8 | 8/19/2009 9:57 | 13526298507 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4443 | 8 | 8/19/2009 9:57 | 13526298634 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4444 | 8 | 8/19/2009 9:57 | 13526298642 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4445 | 8 | 8/19/2009 9:57 | 13526298701 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4446 | 8 | 8/19/2009 9:57 | 13526298740 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4447 | 8 | 8/19/2009 9:57 | 13526298950 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4448 | 8 | 8/19/2009 9:57 | 13526298981 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4449 | 8 | 8/19/2009 9:57 | 13526299094 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4450 | 8 | 8/19/2009 9:57 | 13526299231 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4451 | 8 | 8/19/2009 9:57 | 13526299433 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4452 | 8 | 8/19/2009 9:58 | 13526299561 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4453 | 8 | 8/19/2009 9:58 | 13526370257 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4015 | 8 | 8/19/2009 9:58 | 13525968108 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4017 | 8 | 8/19/2009 9:58 | 13525968505 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4018 | 8 | 8/19/2009 9:58 | 13525968552 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4016 | 8 | 8/19/2009 9:58 | 13525968480 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4454 | 8 | 8/19/2009 9:58 | 13526370373 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4455 | 8 | 8/19/2009 9:58 | 13526371146 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4456 | 8 | 8/19/2009 9:58 | 13526371515 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4457 | 8 | 8/19/2009 9:58 | 13526371921 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4458 | 8 | 8/19/2009 9:58 | 13526372256 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4019 | 8 | 8/19/2009 9:58 | 13525968751 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_8_4339 | 8 | 8/19/2009 10:03 | 13526290308 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_9_28859 | 9 | 8/19/2009 10:02 | 13527549343 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_9_28860 | 9 | 8/19/2009 10:02 | 13523839343 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_9_28861 | 9 | 8/19/2009 10:02 | 13527549344 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_9_28862 | 9 | 8/19/2009 10:02 | 13522459344 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_9_28863 | 9 | 8/19/2009 10:02 | 13523699344 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_9_28864 | 9 | 8/19/2009 10:02 | 13523839344 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_9_28865 | 9 | 8/19/2009 10:02 | 13526839345 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_9_28866 | 9 | 8/19/2009 10:02 | 13522419345 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_9_28867 | 9 | 8/19/2009 10:02 | 13522439345 | 0 | 1 | 0 NULL | | 0 | 0 |
| 112640_9_28868 | 9 | 8/19/2009 10:02 | 13523329345 | 0 | 1 | 0 NULL | | 0 | 0 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 112640_9_28846 | 9 | 8/19/2009 10:02 | 13526289338 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28847 | 9 | 8/19/2009 10:02 | 13526229338 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28848 | 9 | 8/19/2009 10:02 | 13525289338 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28849 | 9 | 8/19/2009 10:02 | 13526209338 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28850 | 9 | 8/19/2009 10:02 | 13526289339 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28851 | 9 | 8/19/2009 10:02 | 13526699339 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28852 | 9 | 8/19/2009 10:02 | 13523519339 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28853 | 9 | 8/19/2009 10:02 | 13526289340 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28854 | 9 | 8/19/2009 10:02 | 13527939341 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28855 | 9 | 8/19/2009 10:02 | 13523519341 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28856 | 9 | 8/19/2009 10:02 | 13526289342 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28857 | 9 | 8/19/2009 10:02 | 13527509342 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28858 | 9 | 8/19/2009 10:02 | 13524029342 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28869 | 9 | 8/19/2009 10:02 | 13522599346 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28871 | 9 | 8/19/2009 10:02 | 13526669347 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28872 | 9 | 8/19/2009 10:02 | 13526849347 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28873 | 9 | 8/19/2009 10:02 | 13527269348 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28874 | 9 | 8/19/2009 10:02 | 13522919348 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28875 | 9 | 8/19/2009 10:02 | 13523319348 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28876 | 9 | 8/19/2009 10:02 | 13526289349 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28877 | 9 | 8/19/2009 10:02 | 13525369349 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28879 | 9 | 8/19/2009 10:02 | 13523839349 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28880 | 9 | 8/19/2009 10:02 | 13526229350 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28881 | 9 | 8/19/2009 10:02 | 13526869350 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28882 | 9 | 8/19/2009 10:02 | 13523579350 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28883 | 9 | 8/19/2009 10:02 | 13522539351 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28884 | 9 | 8/19/2009 10:02 | 13524729351 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28885 | 9 | 8/19/2009 10:02 | 13527939352 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28886 | 9 | 8/19/2009 10:02 | 13523329352 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28887 | 9 | 8/19/2009 10:02 | 13523839352 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28889 | 9 | 8/19/2009 10:02 | 13524729353 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28890 | 9 | 8/19/2009 10:02 | 13524939353 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28891 | 9 | 8/19/2009 10:02 | 13524299353 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28888 | 9 | 8/19/2009 10:03 | 13528619353 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28895 | 9 | 8/19/2009 10:03 | 13522379354 | 0 | 1 | 0 NULL | 0 | 0 |

| 112640_9_28896 | 9 | 8/19/2009 10:03 | 13523389354 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28897 | 9 | 8/19/2009 10:03 | 13526289355 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28898 | 9 | 8/19/2009 10:03 | 13526879355 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28899 | 9 | 8/19/2009 10:03 | 13522279355 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28901 | 9 | 8/19/2009 10:03 | 13523719355 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28902 | 9 | 8/19/2009 10:03 | 13524939355 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28903 | 9 | 8/19/2009 10:03 | 13524299355 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28904 | 9 | 8/19/2009 10:03 | 13527269356 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28905 | 9 | 8/19/2009 10:03 | 13527879356 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28906 | 9 | 8/19/2009 10:03 | 13522539356 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28907 | 9 | 8/19/2009 10:03 | 13523449356 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28893 | 9 | 8/19/2009 10:03 | 13527539354 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28894 | 9 | 8/19/2009 10:03 | 13526699354 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28900 | 9 | 8/19/2009 10:03 | 13523579355 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28908 | 9 | 8/19/2009 10:03 | 13522429357 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28909 | 9 | 8/19/2009 10:03 | 13526859358 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28910 | 9 | 8/19/2009 10:03 | 13522419358 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28911 | 9 | 8/19/2009 10:03 | 13523579358 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28913 | 9 | 8/19/2009 10:03 | 13525679359 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28915 | 9 | 8/19/2009 10:03 | 13523339359 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28921 | 9 | 8/19/2009 10:03 | 13525289361 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28924 | 9 | 8/19/2009 10:03 | 13524019361 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28914 | 9 | 8/19/2009 10:03 | 13527939359 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28916 | 9 | 8/19/2009 10:03 | 13523839359 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28917 | 9 | 8/19/2009 10:03 | 13527269360 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28919 | 9 | 8/19/2009 10:03 | 13523329360 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28920 | 9 | 8/19/2009 10:03 | 13523269360 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28922 | 9 | 8/19/2009 10:03 | 13527959361 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28926 | 9 | 8/19/2009 10:03 | 13525289363 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28923 | 9 | 8/19/2009 10:03 | 13523329361 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28927 | 9 | 8/19/2009 10:03 | 13522279363 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28928 | 9 | 8/19/2009 10:03 | 13523319363 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28929 | 9 | 8/19/2009 10:03 | 13523739363 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28930 | 9 | 8/19/2009 10:03 | 13523269363 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28931 | 9 | 8/19/2009 10:03 | 13522459365 | 0 | 1 | 0 NULL | 0 | 0 |

| 112640_9_28932 | 9 | 8/19/2009 10:03 | 13524739365 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28933 | 9 | 8/19/2009 10:03 | 13526949366 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28934 | 9 | 8/19/2009 10:03 | 13527359366 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28935 | 9 | 8/19/2009 10:03 | 13524019366 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28936 | 9 | 8/19/2009 10:03 | 13527509367 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28937 | 9 | 8/19/2009 10:03 | 13523579367 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28938 | 9 | 8/19/2009 10:03 | 13527979368 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28942 | 9 | 8/19/2009 10:03 | 13526949369 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28950 | 9 | 8/19/2009 10:03 | 13525289373 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28953 | 9 | 8/19/2009 10:03 | 13524299373 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28955 | 9 | 8/19/2009 10:03 | 13524299374 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28956 | 9 | 8/19/2009 10:03 | 13526889375 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28958 | 9 | 8/19/2009 10:03 | 13526699377 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28959 | 9 | 8/19/2009 10:03 | 13524729377 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28960 | 9 | 8/19/2009 10:03 | 13522439378 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28961 | 9 | 8/19/2009 10:03 | 13523329378 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28962 | 9 | 8/19/2009 10:03 | 13522379379 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28963 | 9 | 8/19/2009 10:03 | 13523079379 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28964 | 9 | 8/19/2009 10:03 | 13527549380 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28965 | 9 | 8/19/2009 10:03 | 13522379380 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28966 | 9 | 8/19/2009 10:03 | 13525429383 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28967 | 9 | 8/19/2009 10:03 | 13527359383 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28968 | 9 | 8/19/2009 10:03 | 13528549384 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28969 | 9 | 8/19/2009 10:03 | 13524899384 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28971 | 9 | 8/19/2009 10:03 | 13526289385 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28972 | 9 | 8/19/2009 10:03 | 13527979385 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28973 | 9 | 8/19/2009 10:03 | 13528739385 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28974 | 9 | 8/19/2009 10:03 | 13527879386 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28975 | 9 | 8/19/2009 10:03 | 13525289387 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28976 | 9 | 8/19/2009 10:03 | 13528739387 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28977 | 9 | 8/19/2009 10:03 | 13524839387 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28939 | 9 | 8/19/2009 10:03 | 13522439368 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28941 | 9 | 8/19/2009 10:03 | 13526889369 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28943 | 9 | 8/19/2009 10:03 | 13528739369 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28944 | 9 | 8/19/2009 10:03 | 13523479369 | 0 | 1 | 0 NULL | 0 | 0 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 112640_9_28945 | 9 | 8/19/2009 10:03 | 13527999370 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28947 | 9 | 8/19/2009 10:03 | 13522379371 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28952 | 9 | 8/19/2009 10:03 | 13527959373 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28954 | 9 | 8/19/2009 10:03 | 13522379374 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28946 | 9 | 8/19/2009 10:03 | 13528739370 | 0 | 1 | 0 NULL | 0 | 0 |
| 112640_9_28951 | 9 | 8/19/2009 10:03 | 13527269373 | 0 | 1 | 0 NULL | 0 | 0 |