## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| CIN-Q AUTOMOBILES, INC. and MEDICAL & CHIROPRACTIC CLINIC, INC., individually and on behalf of a class, | ) ) ) ) | |
| Plaintiffs, | ) ) | No.: 8:13-CV-01592-AEP |
| v. | ) ) | |
| BUCCANEERS LIMITED PARTNERSHIP, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) ) | |
| TECHNOLOGY TRAINING ASSOCS., INC. *et al.*, | ) ) ) | |
| Intervenors. | ) ) | |

## PLAINTIFFS' MOTION FOR AWARD OF
## ATTORNEY FEES & EXPENSES AND INCENTIVE AWARDS

Pursuant to the Court's Order granting preliminary approval of the class-action settlement (Doc. 343), Plaintiffs and representatives of the Settlement Class, Cin-Q Automobiles, Inc. and Medical & Chiropractic Clinic, Inc., hereby file this motion for attorney fees and expenses and (conditionally) incentive awards to the named Plaintiffs. As argued below, the Court should award attorney fees of 25% of the $19.75 million Settlement Fund ($4,937,500), along with Class Counsels' out-of-pocket expenses of $250,000, and order the administrator to withhold $20,000 from the Settlement Fund to be paid as incentive awards to the Class Representatives in the event that the Eleventh Circuit's decision in *Johnson v. NPAS Sol., LLC*, 975 F.3d

1244, 1255-61 (11th Cir. 2020) ("*NPAS*"), is vacated or otherwise reversed prior to final approval of the Settlement in this case.

## MEMORANDUM OF LAW

### Background of the litigation and Settlement

This case arises out of faxed advertisements for Tampa Bay Buccaneers tickets allegedly sent by or on behalf of defendant Buccaneers Team LLC, formerly Buccaneers Limited Partnership ("BTL" or "Defendant") in 2009 and 2010. The case has a long procedural history, beginning in August 2009, when class counsel Michael Addison filed suit on behalf of Cin-Q Automobiles in the first state-court action against BTL, and later filing in 2013 this federal action, *Cin-Q Auto. Inc. v. Buccaneers Ltd. P'Ship*, No. 13-cv-1592 (M.D. Fla.) (the "*Cin-Q* Action").

The essential facts surrounding the fax advertising in 2009–2010 that gave rise to this case are recited in Plaintiffs' Motion for Summary Judgment (Doc. 138), Plaintiffs' Motion for Class Certification (Doc. 207), and the Court's ruling denying both parties summary judgment in *Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship*, No. 8:13-CV-01592-AEP, 2014 WL 7224943 (M.D. Fla. Dec. 17, 2014). In short, from July 2009 through June 2010, a "fax broadcaster" hired by BTL called FaxQom, arranged for the sending of 343,011 faxes advertising tickets to Tampa Bay Buccaneers games. (Doc. 207 at 3–10).

On August 28, 2009, Addison filed the first *Cin-Q* Action against BTL in Florida state court. (*Id.*) On or about June 15, 2013, the law firm of Anderson + Wanca joined forces with Addison, filing the *Cin-Q* Action in this District following

2

the Supreme Court's ruling that federal district courts share concurrent jurisdiction with state courts over TCPA actions. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012). Addison and Anderson + Wanca later filed a Second Amended Complaint ("SAC"), adding Medical & Chiropractic, Inc. as a Plaintiff on January 3, 2014. (Doc. 70).

Also in 2013, attorney Joseph Siprut filed suit against BTL on behalf of his clients in *Jeffrey M Stein, D.D.S, P.A. v. Buccaneers Ltd. P'Ship*, No. 8:02-cv-2136-T-AEP (the "*Stein* Action"); and *Accounting to You, Inc. v. Buccaneers Ltd. P'Ship*, No. 8:13-cv-02929-EAK-MAP. BTL attempted to "pick off" those claims by making a Rule 68 offer of judgment offering full statutory damages, arguing that the offer "mooted" the plaintiffs' claims and required dismissal. The district court agreed and dismissed the case. *See Jeffrey M. Stein, D.D.S., M.S.D., P.A. v. Buccaneers Ltd. P'ship*, No. 8:13-CV-2136-T-23AEP, 2013 WL 7045328, at *4 (M.D. Fla. Oct. 24, 2013) (Merryday, J.). On appeal to the Eleventh Circuit, Siprut argued the case and prevailed, with the Eleventh Circuit issuing its opinion on December 1, 2014, reversing the district court's dismissal on the basis that a defendant's offer of judgment does not "moot" a plaintiff's individual claim, and even if it did, the offer would not moot the plaintiff's class claims. *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 704 (11th Cir. 2014).

Over the following years, Plaintiffs and Class Counsel (and the Court) invested a massive amount of time and resources into this litigation. The parties conducted over a dozen depositions in California, Florida, Pennsylvania, Colorado,

Texas, and Canada.[1] The parties hired expert witnesses, with Plaintiffs' expert,

Robert Biggerstaff, disclosing an Expert Report and Rebuttal Expert Report. Class

Counsel also advanced well over the agreed-upon $250,000 in expenses in this

matter, including $20,000 to Biggerstaff and over $110,000 to attorneys that Class

Counsel were required to hire in other jurisdictions, primarily Canada, in order to

obtain discovery regarding the faxes FaxQom sent in July 2009. (Ex. A, Declaration

of Ross M. Good ("Good Decl.") ¶¶ 4, 5). The Court was called upon to decide

numerous disputes in overseeing discovery. (*E.g.*, Order, Doc. 121 (Apr. 8, 2014)

(ruling on five discovery motions)).

Class Counsel also invested great time and effort into motion practice. On July

16, 2013, BLP filed its motion to dismiss, arguing Plaintiff failed to adequately

allege BLP was "vicariously liable" for the fax campaigns. (Doc. 17). On October

23, 2013, the Court denied the motion to dismiss, holding Plaintiff adequately

alleged BLP is the "sender" under 47 C.F.R. § 64.1200(f)(11) because it "authorized

FaxQom to send the facsimile advertisements on its behalf" and its "goods or

services were advertised in the facsimile at issue." (Doc. 41 at 4, 5–6).

---

[1] The following persons were deposed: (i) in Florida – Karolyn Sheekey (2/17/14),
Brian Sheekey (12/26/13), Craig Cinque (2/14/14), Michele Zakrewski (2/12/14),
Ben Milson (5/2/14), Manuel Alvare (5/29/14), Brian Ford (5/29/14), and Gregory
Williams (10/13/15); (ii) in Pennsylvania – Ian Jenkins (6/8/15), David Canfield
(12/10/15), and Stephen K. Schurer (2/18/14 no show); (iii) in Canada – Jonathon
Nelson (1/16/14), and Stefani Pelowich (3/9/15); in Colorado – Darren Morgan
(3/24/14), and Jason Layton (3/24/14); (iv) California – Matt Kaiser (3/25/14);
and (v) in Texas – Michael Clement (3/10/14).

On October 11, 2013, Plaintiff filed a motion for leave to file a Second Amended Complaint adding Medical & Chiropractic Clinic, Inc., as a named Plaintiff. (Doc. 37). BLP vigorously opposed the motion (Doc. 43), which the Court granted on January 3, 2014, holding "no reason exists to deny Plaintiff leave to file a second amended complaint adding M&C as a plaintiff." (Doc. 68 at 2). Plaintiffs filed the SAC the same day. (Doc. 70).

On May 27, 2014, the parties filed cross-motions for summary judgment on BLP's "vicarious liability" defense. (Docs. 129, 138). Over the next several months, the parties filed response briefs (Docs. 143 & 144), and numerous citations of supplemental authority as proceedings unfolded in the Eleventh Circuit in *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 771 F.3d 1274 (11th Cir. 2014), including the FCC's submission of an amicus brief (Docs. 146, 147, 148), as well as other Eleventh Circuit and district court decisions (Docs. 155–60).

On December 17, 2014, the Court denied both parties' cross-motions for summary judgment in a 22-page Order & Memorandum. *Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship*, 2014 WL 7224943 (M.D. Fla. Dec. 17, 2014). Plaintiff subsequently moved to reconsider or certify questions for interlocutory review (Doc. 170), and BLP moved to bifurcate and proceed to trial on Plaintiff's individual claims before deciding class certification (Doc. 169). On May 5, 2015, following oral argument, the Court denied the motions for reconsideration, for interlocutory appeal, and for bifurcation and individual trial. *Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship*, 2015 WL 2092810 (M.D. Fla. May 5, 2015).

In July 2015, Addison, Anderson + Wanca, and Siprut jointly agreed that in the event of a settlement in any of their pending actions against BTL, "16% of the fees awarded by the Court shall be paid jointly to Siprut PC and James M. Thomas Law Firm;[2] 28% of the fees to Addison & Howard, P.A. and the remaining 56% of the fees to Anderson + Wanca." (Ex. B, Declaration of Michael C. Addison ("Addison Decl.") ¶ 6).

On March 25, 2016, Plaintiffs filed their initial Motion for Class Certification. (Doc. 207). Thereafter, this case was stayed during the pendency of a proposed settlement in *Technology Training Associates, Inc., et al. v. Buccaneers Ltd. P'ship*, Case No. 8:16-cv-01622-MSS-AEP (M.D. Fla. 2016) (the "*TTA* Action"). Class Counsel vigorously opposed the proposed settlement in the *TTA* Action, eventually prevailing in the Eleventh Circuit on its motion to intervene to oppose the settlement, *see Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 697 (11th Cir. 2017), and ultimately convincing this Court to vacate preliminary approval and decertify the *TTA* settlement class in light of the Eleventh Circuit's rulings, *see Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, No. 8:16-CV-1622-T-AEP, 2019 WL 4751799, at *18 (M.D. Fla. Sept. 30, 2019).

On January 17, 2020, this Court ordered the parties to hold a settlement conference with Magistrate Judge Sansone and appointed Addison as Interim Lead

---

[2] It appears that Mr. Thomas is no longer licensed to practice law in the State of Florida. *See* https://www.floridabar.org/directories/find-mbr/profile/?num=648590. Thus, Plaintiffs cannot and do not ask the Court to award attorney fees to Mr. Thomas in this Motion.

Counsel. (Doc. 284). On or about June 9, 2021, the parties reached an agreement in principle that would resolve the claims in this litigation on a class-wide basis.

On August 27, 2021, Plaintiffs filed their Motion for Preliminary Approval of the class-action settlement, which provides a $19.75 million Settlement Fund from which class members may file claims, and provides that BTL will not oppose an "Attorneys' Fee Award in an amount not to exceed in total 25% of the Settlement Fund, plus reasonable out-of-pocket expenses incurred not to exceed $250,000, to be paid from the Settlement Fund." (Doc. 324-1, Settlement Agreement & Release § VI.A). On March 29, 2022, the Court granted preliminary approval and set deadlines for class notice, this Motion for Attorney Fees, and the final approval hearing on November 9, 2022. (Doc. 343, Preliminary Approval Order at 77–84).

<u>Argument</u>

I.  **The Court should award 25% of the Settlement Fund as attorney fees, plus Class Counsels' expenses of $250,000.**

A.  **The agreed-upon 25% fee is a reasonable percentage of the fund established for the benefit of the class.**

In the Eleventh Circuit, where attorneys create a common fund for the class, they are entitled to a reasonable percentage of the fund as a fee, as opposed to a "lodestar" amount based on the hours worked times an hourly rate. In *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("*Camden I*"), the Eleventh Circuit held as follows:

> We believe that the percentage of the fund approach is the better
> reasoned in a common fund case. Henceforth in this circuit, attorneys'

fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.

*See also Poertner v. Gillette Co.*, 618 F. App'x 624, 628 (11th Cir. 2015)

(unpublished). The *Camden I* court explained that it was adopting the Third Circuit

Task Force Report from a study of common-fund fee awards finding that the

percentage method accomplished the goals of providing:

> fair and reasonable compensation for attorneys in those matters in which fee awards are provided by federal statute or by the fund-in-court doctrine; to discourage abuses and delays in the fee-setting process; to encourage early settlement or determination of cases; to provide predictability; to carry out the purposes underlying court-awarded compensation; to simplify the process by reducing the burdens it currently imposes on the courts and on litigants; and to arrive at fee awards that are fair and equitable to the parties and that take into account the economic realities of the practice of law.

*Camden I*, 946 F.2d at 773 (internal citations omitted).

The agreed-upon 25% fee award Class Counsel seek here is well within the

range of fee awards in common-fund settlements in this Circuit, including numerous

TCPA settlements and, indeed, is the standard "benchmark" award. *See Camden I*,

946 F.2d at 774–75 (noting that fee awards in common-fund settlements range from

20% to as much as 50% of the total benefits, with most awards falling between 20%

and 30%); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2011)

("25% is generally recognized as a reasonable fee award in common fund cases");

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999) ("The

majority of common fund fee awards fall between 20% to 30% of the fund."); *In re*

*Home Depot Inc.*, 931 F.3d 1065, 1076 (11th Cir. 2019) ("In this Circuit, courts

typically award between 20–30%, known as the benchmark range."); *Wilson v. EverBank*, No. 14-CIV-22264-BLOOM/VALLE, 2016 WL 457011, at *18 (S.D. Fla. Feb. 3, 2016) ("[F]ederal district courts across the country have, in the class action settlement context, routinely awarded class counsel fees in excess of the 25 percent 'benchmark,' even in so called 'mega-fund' cases.") (quotation omitted); *Swaney v. Regions Bank*, No. 2:13-CV-00544-RDP, 2020 WL 3064945 (N.D. Ala. June 9, 2020) ("'[T]he majority of common fund fee awards fall between 20% to 30% of the fund,' with 25% of the fund being viewed as a 'benchmark percentage fee award.'"); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1201 (S.D. Fla. 2006) ("[I]n determining [fee] . . . awards, the 'bench mark' percentage is 25%, 'which may be adjusted up or down based on the circumstances of each case.'") (quotation omitted); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) ("[A]ttorneys' fees should be a reasonable percentage of a common fund created for the benefit of the class[ ] and set a 25% recovery as an appropriate 'benchmark.'") (quotation omitted); *Walco Invs., Inc. v. Thenen*, 975 F. Supp. 1468, 1470 (S.D. Fla. 1997) (noting that "25% of the common fund is a 'benchmark'").

Here, because Plaintiffs do not seek an attorney fee over the 25% benchmark, the so-called *Johnson* factors do not apply. *See Faught*, 668 F.3d at 1242 ("Where the requested fee exceeds 25%, the court is instructed to apply the twelve *Johnson* factors.") (citing *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)); *Muransky v. Godiva*

*Chocolatier, Inc.*, 922 F.3d 1175, 1195 (11th Cir. 2019), *reversed on other grounds*, 979 F.3d 917 (11th Cir. 2020) ("To evaluate whether the [25%] benchmark should be enhanced, district courts can apply the twelve factors from [*Johnson*].").

However, even if the Court were to apply the *Johnson* factors here, they further demonstrate the reasonableness of the fee request. The "*Johnson* factors" are (1) the time and labor required;[3] (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) the time limitations imposed; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772.

The first, fourth, and seventh *Johnson* factors—the time and labor, preclusion of other employment, and time limitations imposed—are interrelated inquires and each support the reasonableness of the request. This case has been pending since 2009 (and since 2013 in federal court), and Class Counsel devoted an enormous amount of time and effort to reach this result for the Settlement Class. Class Counsel defeated BTL's motion to dismiss, motion for summary judgment, and motion to proceed to trial individually before class certification, conducted extensive discovery,

---

[3] The Eleventh Circuit made clear in *Camden I* that the percentage of the fund is the exclusive method for awarding fees in common-fund class actions and the "lodestar approach should not be imposed through the back door via a 'cross-check.'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362.

and ultimately negotiated the current settlement.

Anderson + Wanca devoted 4,318.05 hours of attorney and paralegal time in the *Cin-Q* Action alone, along with 875.10 hours in related litigation (5,193.15 total hours), in order to reach this result for the class. (Good Decl. ¶¶ 3, 6–9). Along with Addison's 995 hours of attorney and paralegal time, Class Counsel devoted 6,188.15 hours to litigating against BTL over the past nearly 13 years. (Addison Decl. ¶¶ 3, 9). The 25% award is justified under the first, fourth, and seventh *Johnson* factors. *See Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) (noting the expenditure of time necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work, and this factor should raise the amount of the award); *see also Stalcup v. Schlage Lock Co.*, 505 F. Supp.2d 704, 708 (D. Colo. 2007) (noting that "the *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium").

The second, sixth, and tenth *Johnson* factors—the novelty and difficulty of the questions, whether the fee is contingent, and the "undesirability" of the case—are also interrelated and support the requested cost and fee award. This case is novel on several levels. For example, it presented a question of first impression regarding "sender" liability under the TCPA. *See Cin-Q Autos.*, 2015 WL 2092810, at *3 ("There is no doubt that the interpretive issue at hand involves a controlling question of law to which there is substantial ground for difference of opinion.").

In addition, the ability to recover fees and expenses in this case has always been contingent on a successful outcome and substantial recovery. The TCPA does

11

not provide for attorney fees to a prevailing plaintiff. *See* 47 U.S.C. § 227(b)(3). The only way to recover a fee is to be part of a large recovery. Class Counsel had to advance in excess of $250,000 in expenses to prosecute this case, and risked receiving nothing in return. This is important because "[a] determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007). Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Checking Acc't Overdraft Litig.*, 830 F. Supp. 2d at 1364 (quoting *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1335 (S.D. Fla. 2001)). Accordingly, some courts have observed that "[a]ttorneys' risk is perhaps the foremost factor in determining an appropriate fee award." *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124, at *14 (S.D. Fla. Jan. 31, 2008) (citing *Pinto*, 513 F. Supp. 2d at 1339).

The novelty and contingent nature of the case demonstrate the undesirability of the case. Few lawyers will take on a lawsuit that consumes significant attorney time, involves uncertain questions, and requires the lawyers to advance large out-of-pocket costs, with no guarantee of payment. Although Class Counsel were able to achieve an excellent result for the class, achieving this outcome was anything but certain when they agreed to take the case, and thus these factors all weigh in favor of approving the mediated fee and expenses amount. *See In re Checking Account Overdraft*

*Litig.*, 830 F. Supp. 2d at 1364 ("'Undesirability' and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight") (citing *Lindy Bros. Builders, Inc. v. Am. Radiator & Stand. Sanitary Corp.* 540 F.2d 102, 112 (3d Cir. 1976)).

The eighth *Johnson* factor looks to the amount involved in the litigation with particular emphasis on the "monetary results achieved" in the case by class counsel. *See Allapattah Servs.*, 454 F. Supp. 2d at 1202. Here, the parties' mediated Agreement contemplates a Settlement Fund of $19,750,000 for the class. Each class member who submits a valid claim will be paid a *pro rata* share of the Settlement Fund in the amount of at least $350 (for one fax) and up to $565 (for five faxes). This is an excellent result for the class. Accordingly, the eighth *Johnson* factor weighs strongly in favor of approving the fee amount.

The fifth and twelfth *Johnson* factors, the customary fee and awards in similar cases supports approval. Many similar TCPA class settlements provide for a greater percentage of the fund than the 25% sought here. *See Medical & Chiropractic Clinic, Inc. v. KMH Cardiology Centres Inc.*, No. 8:16-cv-00644-SDM-JSS (M.D. Fla. Nov. 17, 2017) (awarding 30% of the settlement fund plus costs); *Medical & Chiropractic Clinic, Inc. v. Ancient Nutrition, LLC*, No. 8:16-cv-2342, Doc. 52 (M.D. Fla. July 11, 2017) (awarding 33% of the settlement fund plus costs). By requesting 25% of the Settlement Fund, the present Settlement Agreement is indisputably within the

acceptable range. Accordingly, this factor also favors the agreed-upon attorney fee award proposed here.

The remaining *Johnson* factors – the skill required to perform the legal services and the experience, reputation, and ability of the attorneys – confirm that the costs and fees sought are reasonable. As shown above, Class Counsel worked tirelessly for years to achieve a class settlement that confers substantial monetary benefits to the Settlement Class, despite BTL being represented by experienced top-tier counsel who vigorously defended the case. *See In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1334 ("In assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced."). This outcome was made possible by Class Counsel's extensive experience in litigating dozens of TCPA class actions since 2003. Anderson + Wanca has secured some of largest settlements in the history of the TCPA and has over one-hundred TCPA opinions reported in Westlaw.  The *Johnson* factors confirm that the mediated attorney-fee award is reasonable.

Finally, although some courts consider the "lodestar"—the number of hours worked times the hourly rate—as a "cross-check" on the percentage method, in the Eleventh Circuit, "the lodestar approach should not be imposed through the back door via a 'cross-check.'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362 (citing Alba Conte, Attorney Fee Awards § 2.7, at 91 n. 41 (Eleventh Circuit "repudiated the use of the lodestar method in common-fund cases")). In *Camden I*, the court criticized the inefficiencies of the lodestar approach, 946 F.2d at 773–75, and other courts have found it "creates an incentive to keep litigation going in order

14

to maximize the number of hours included in the court's lodestar calculation." *In re Quantum Health Resources, Inc.*, 962 F. Supp. 1254, 1256 (C.D. Cal. 1997). "Under *Camden I*, courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all." *Montoya v. PNC Bank, N.A.*, No. 14-20474-CIV-GOODMAN, 2016 WL 1529902, at *16 (S.D. Fla. Apr. 13, 2016) (quoting *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1363).

Nevertheless, to the extent the Court deems it relevant, as discussed above, Class Counsel have expended 6,188.15 hours of attorney and professional time in this and related litigation since Addison filed the first case in 2009. (Good Decl. ¶¶ 3, 6–9; Addison Decl. ¶¶ 3, 9). The combined "lodestar" for Addison and Anderson + Wanca in the *Cin-Q* Action alone totals $2,869,508, which climbs to $3,361,706.25, when the related litigation is included. (*Id.*) Thus, even if the Court were to perform a lodestar "cross-check," the requested fee of $4,937,500 of the Settlement Fund would be equivalent to applying a multiplier of only 1.72% of Class Counsels' lodestar in the *Cin-Q* Action, and only 1.47% considering related litigation. Either way, "a multiplier less than two" easily "satisfies the cross check using the lodestar method," even if a cross-check were applied here. *See Pinto*, 513 F. Supp. 2d at 1344 (holding lodestar multipliers "in large and complicated class actions" typically range from 2.26 to 4.5, while "three appears to be the average") (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)).

In sum, the 25% attorney fee sought here is well within the "benchmark" rate in this Circuit, and the Court should award $4,937,500 in attorney fees from the Settlement Fund.

## B. Class Counsel should be reimbursed $250,000 in reasonable out-of-pocket expenses.

The Settlement Agreement provides that Class Counsel will seek their "reasonable out-of-pocket expenses incurred not to exceed $250,000, to be paid from the Settlement Fund." (Doc. 324-1, Settlement Agreement & Release § VI.A). Class Counsel have advanced over $247,000 in expenses in the *Cin-Q* Action, and well in excess of $250,000 including related litigation, and so they should recover the maximum allowed under the agreement.

Class Counsel have advanced the ordinary types of expenses typical in any contingent litigation, including photocopies, travel expenses, costs of deposition transcripts and court reporters, etc. (Good Decl. ¶ 3; Addison Decl. ¶ 5). But this case required addition large expenses unique to the circumstances of this case. First, Class Counsel retained an expert, Robert Biggerstaff, to review the fax-transmission logs and other electronic records in order to prepare an Expert Report and a Rebuttal Expert Report to respond to BTL's expert witness. (Good Decl. ¶ 4). Biggerstaff's expert opinions were necessary for Plaintiffs' Motion for Class Certification (Doc. 207), as well as in response to this Court's request following the preliminary approval hearing that the parties "submit a brief addressing the indicia of reliability or unreliability of the fax numbers identified in the Biggerstaff Report."

16

(Doc. 334, Order at 2; *see also* Doc. 339, Pls.' Br. re: Reliability of Fax Numbers Identified in Biggerstaff Report (relying heavily on Biggerstaff's opinions)). Biggerstaff's expert-witness fees total $20,000. (Good Decl. ¶ 4).

Second, Class Counsel was required to retain counsel licensed to practice in other jurisdictions in order to obtain necessary discovery. Class Counsel was required to obtain counsel in Canada in order to pursue records and deposition testimony relating to the July 2009 faxes transmitted by 127 High Street, which is located in Canada. (Good Decl. ¶ 5). In order to obtain these necessary documents and deposition testimony, Class Counsel paid their Canadian counsel Teplitsky Colson LLP $88,593.42 and Koskie Minsky LLP $23,000. (*Id.*)

In all, Anderson + Wanca advanced $247,247.57 in out-of-pocket expenses in the *Cin-Q* Action alone. (Good Decl. ¶ 3). Anderson + Wanca additionally advanced $4,954.18 in expenses in a separate action to obtain records and deposition testimony from the broadcaster of the August 2009–June 2010 faxes, Rocket Messaging, Inc. (*Id.* ¶ 6); $15,137.88 in a separate action against FaxQom's Michael Clement (*id.* ¶ 8); $7,610.75 in the *TTA* Action (*id.* ¶ 9); and $80.00 in *Cin-Q v. Schurer* (Good Decl. ¶ 7). In addition, Addison advanced costs and expenses of $5,026.44 from July 2009 through August 2020. (Addison Decl. ¶ 5).

In sum, the "reasonable out-of-pocket expenses" advanced by Class Counsel in this case (and related cases), easily exceed the $250,000 maximum recoverable under the Settlement Agreement, and the Court should award Class Counsel the full amount.

**II.    The Court should order the Administrator to withhold $20,000 of the Settlement Fund for payment to Plaintiffs as incentive awards, in the event *NPAS* is vacated or reversed.**

On September 17, 2020, the Eleventh Circuit issued a split panel decision in *Johnson v. NPAS Sol., LLC*, 975 F.3d 1244, 1255-61 (11th Cir. 2020) ("*NPAS*"), with the majority holding that incentive awards to class representatives are prohibited in this Circuit. The *NPAS* plaintiffs petitioned for rehearing en banc, and numerous amicus briefs were filed on both sides. A search of PACER on the date of the filing of this brief, April 28, 2022, shows that there has been no activity in *NPAS* since July 15, 2021, when the court granted a motion for leave to withdraw as attorney.

If the Eleventh Circuit grants rehearing en banc in *NPAS*, the panel decision—including its prohibition of incentive awards in class settlements—would be vacated automatically. *See United States v. McIver*, 688 F.2d 726, 729 n.5 (11th Cir. 1982) (opinion "has no precedential value . . . as it was vacated pursuant to granting of rehearing en banc"); *Henderson v. Fort Worth Ind. Sch. Dist.*, 584 F.2d 115, 116 (5th Cir. 1978) ("A petition for rehearing en banc was granted, which effectively vacates the panel opinion as a citable precedent."); *United States v. Rice*, 635 F.2d 409, 410 n.1 (5th Cir. 1981) (panel opinion "vacated as a result of the grant of the petition for rehearing en banc . . . constitutes no precedent."). Prior to *NPAS*, courts in this Circuit regularly awarded incentive awards to class representatives, who assume special litigation burdens and thereby benefit the entire class. *See, e.g.*, *Allapattah Servs.*, 454 F. Supp. 2d at 1218 (collecting cases); *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1196-97 (11th Cir. 2019), en

banc rehearing granted and decision vacated, 939 F.3d 1279 (11th Cir. 2019).

However, *NPAS* is binding at the moment.

Plaintiffs respectfully submit that the appropriateness of incentive awards is currently being reviewed by the Eleventh Circuit, and that *NPAS* may remain the binding law of this Circuit or it may be vacated by the court en banc or reversed on a writ of certiorari to the U.S. Supreme Court. The issue is not ripe at this time, and the Court should not decide the issue until the final approval hearing on November 9, 2022, at which time *NPAS*'s precedential status can be reviewed. In the meantime, Plaintiffs respectfully request that the Court order the Settlement Administrator to withhold $20,000 from the Settlement Fund to be paid $10,000 to Medical & Chiropractic and $10,000 to Cin-Q Automobiles, only in the event that *NPAS* is vacated or reversed prior to the entry of a final judgment in this case.

## Conclusion

For the foregoing reasons, the Court should award attorney fees in the amount of $4,937,500 (25% of the Settlement Fund), plus Class Counsels' expenses of $250,000, and order the Settlement Administrator to withhold $20,000 for payment to the Class Representatives as incentive awards, payable only in the event that *NPAS* is vacated or reversed prior to entry of final judgment.

## Local Rule 3.01(g) Certification

The undersigned certifies that, pursuant to Section VI.A of the Settlement Agreement & Release, Defendant BTL does not oppose this Motion because the

attorney fees sought do not "exceed in total 25% of the Settlement Fund" and the expenses sought do not "exceed $250,000 . . . ." (Doc. 324-1 at 14–15).

Respectfully submitted,

 /s/ Michael C. Addison
Michael C. Addison (Fla. Bar. No. 0145579)

ADDISON LAW OFFICE, P.A.
1304 Alicia Avenue
Tampa, Florida 33604
Telephone: (813) 223-2000
Facsimile: (813) 228-6000
m@mcalaw.net

and

Ryan M. Kelly (Fla. Bar No: 90110)
Ross M. Good (Fla. Bar No: 116405)
Glenn L. Hara (admitted *pro hac vice*)
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Telephone: (847) 368-1500
Facsimile: (847) 368-1501
rkelly@andersonwanca.com
rgood@andersonwanca.com
ghara@andersonwanca.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 28, 2022, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which will send notification of

such filing to all attorneys of record.


s/Michael C. Addison