# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | | |
|---|---|---|
| CIN-Q AUTOMOBILES, INC. and | ) | |
| MEDICAL & CHIROPRACTIC CLINIC, | ) | |
| INC., individually and on behalf of a class, | ) | |
| | ) | |
| Plaintiffs, | ) | No.: 8:13-CV-01592-AEP |
| | ) | |
| v. | ) | |
| | ) | |
| BUCCANEERS LIMITED PARTNERSHIP, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| TECHNOLOGY TRAINING ASSOCS., INC. | ) | |
| *et al.*, | ) | |
| | ) | |
| Intervenors. | ) | |

## PLAINTIFFS' MOTION REGARDING CLAIMS PROCESS

Plaintiffs, Cin-Q Automobiles, Inc. and Medical & Chiropractic Clinic, Inc., on behalf of themselves and the Settlement Class, seek the Court's guidance regarding disputed claims procedures, as contemplated by the Settlement Agreement, Section VIII.E.

### Precise Relief Requested

First, Plaintiffs seek an order from the Court clarifying that the Settlement preliminarily approved by the Court does not limit claimants to recovering for only five faxes per claim form, even if the claimant received BTL's faxes at more than one valid fax number, as BTL has asserted. The Settlement Agreement states that class members "who submit a Valid Claim shall be eligible to receive" the relevant

amounts, meaning payments are per each "Valid Claim." (Doc. 324-1, Settlement Agreement, Section IV.B). A "Valid Claim" attaches to each fax number, and the claim form the parties negotiated merely invites claimants to submit multiple claims on one form. (*Id.*) There is no reason why a class member who had two fax numbers in 2009–2010 and received BTL's faxes at each number should not be able to recover by filing two "Valid Claims," one for each fax number, using a single claim form, rather than filing two separate claim forms.

Second, Plaintiffs seek an order directing Epiq to send a defect notice/request for additional information to claimants in the five agreed-upon categories:

1.      Claims containing non-matching fax numbers (*i.e.*, any claim containing a fax number not matching a number on the Biggerstaff list);

2.      Multi-Claimed Fax Number (*i.e.*, any claim featuring a fax number also listed on another claim form);

3.      Missing Signature;

4.      Potential Government Entity; and

5.      Claims submitted by entities not registered until after the class period (*i.e.*, July 2009 to June 2010).

Third, Plaintiffs seek an order rejecting BTL's proposed additional "defect" categories, which would result in every person who filed a claim in this Settlement receiving a defect notice, based on their being identified (or not being identified) in one of the reverse lookups conducted by Epiq for purposes of disseminating the Mailed Notice.

**<u>Basis of Request</u>**

The Settlement Agreement provides that "[o]nce approved by the Court, the Settlement Administrator will be an agent of the Court and will be subject to the Court's supervision and direction as circumstances may require." Settlement Agreement § VII.C. The Agreement provides that "In the event that there are any developments in the effectuation and administration of this Agreement that are not dealt with by the terms of this Agreement, then such matters shall be dealt with as agreed upon by the Parties, and failing agreement, as shall be ordered by the Court." Settlement Agreement § XV.P. The Agreement provides that "only if the dispute cannot be resolved informally by the Parties, shall the dispute be presented to and resolved by the Court." Settlement Agreement § VIII.D.

Although the parties have agreed upon several categories for "defect" notices/requests for additional information to claimants, several other issues cannot be resolved informally by the parties, and Plaintiffs therefore bring them to the Court's attention.

**<u>MEMORANDUM</u>**

**I.    The Court should reject the proposed five-fax-per-claim-form limit.**

The parties have a dispute over how to implement the five-tiered payment structure in the Settlement Agreement. Plaintiffs maintain that these payments are "up to" five faxes *per fax number*, given that many class members had more than one fax number during the class period. BTL maintains that the five-tiered payment

3

structure is a "cap" or "limit" that provides no claimant may recover for more than five faxes, regardless of how many faxes they received.

This issue was briefed at the preliminary approval stage in Intervenors' Response to Motion for Preliminary Approval and in Plaintiffs' Reply in Support of Preliminary Approval. Intervenors argued the Cin-Q Settlement is "substantially the same" as the TTA Settlement. (Doc. 325 at 2). Plaintiffs responded that the Cin-Q Settlement is substantially better than the TTA Settlement because claimants would be paid "up to $615 *per fax number*" in the Cin-Q Settlement, compared to $565 per fax number in the TTA Settlement. (Doc. 329 at 4 (emphasis added)).

Intervenors argued it was unclear whether claimants with more than one fax number would be paid for each fax number under the Cin-Q Settlement. (Doc. 325 at 6–7). Plaintiffs responded that Intervenors were mistaken because the submission of each fax number is a "claim," and the claim form the parties negotiated invites claimants to make multiple "claims" in a single form, stating, "List all numbers at which you or your company received faxes between July 14, 2009, and June 9, 2010," and "Attach a separate sheet if necessary," and stating that "The Settlement Administrator will verify that the fax number(s) you provide appear(s) in the existing records related to the case before approving your claim." (Doc. 329 at 7). Plaintiffs argued that the notice and claim form "plainly tells claiming class members they will be paid for each fax number." (*Id.*)

BTL did not seek to file anything in response to the briefing on this issue. It does not appear that BTL or anyone else raised the issue at the preliminary approval

hearing on January 20, 2022. (*See* Ex. A, Hr'g Tr., Jan. 20, 2022, at 1–75). BTL was silent on the issue until February 2023, when it came up during email correspondence with the Settlement Administrator, Epiq, regarding settlement administration.

Plaintiffs' stated their position that the provision in Section IV.B of the Settlement Agreement that class members "who submit a Valid Claim shall be eligible to receive" the relevant amounts is per "Valid Claim." (Ex. B, email from G. Hara, Feb. 22, 2023). Plaintiffs argued that a "Valid Claim" attaches to each fax number, and the claim form the parties negotiated merely allows claimants with more than one fax number to submit multiple claims on one claim form, rather than multiple claim forms. (*Id.*) Plaintiffs argued that the five-fax-scale of payments was not an arbitrary number; it was negotiated because the most faxes received at any individual fax number on the Biggerstaff List was five faxes. The five-tiered structure thus ensures that every fax at issue would result in some compensation. (*Id.*) Plaintiffs argued the five-fax scale was never intended as a "cap" on payments due on each "Valid Claim." (*Id.*)

Epiq at first agreed with Plaintiffs that there is no five-fax limit and that claimants who file otherwise valid claims on more than one fax number will be paid according to the number of faxes received at that number on the Biggerstaff List. (Ex. B, email from O. Castillejos, Feb. 23, 2023 ("We will report on the number of fax numbers claimed by each class member as well as the number of facsimiles (pages) associated with each fax number per the Biggerstaff List. We will be more careful

with the use of 'fax' and 'facsimile' when discussing claims. Apologies for any confusion.")). However, BTL's counsel then convinced Epiq to change its position to interpret the Agreement as meaning no claimant may recover more than $615, regardless of how many valid fax numbers they claim on. (Ex. B, Castillejos email, Feb. 28, 2023 (agreeing with BTL that "Class Members who submit valid Claims are eligible for payments of $350 to $615," regardless of the number of faxes they received)). More recently, Intervenors' Counsel asked Epiq about this issue, and Epiq reiterated the view that claimants are limited to five faxes. (Ex. C, Castillejos email Apr. 26, 2023).

This issue has the greatest impact on, but is by no means limited to, claimants who submitted claims for more than five faxes. For example, the claimant listed at Tracking Number 1411 in Epiq's Claims Detail Report of April 3, 2023, submitted two valid fax numbers. (*See* Ex. D, Claims Detail Report, Tracking No. 1411, to be filed under seal). The first number received three faxes; the second number received four faxes. (*Id.*) Under Plaintiffs' reading of the Agreement, this claimant would be paid as follows:

| First Fax Number | Second Fax Number | |
|---|---|---|
| Fax 1: $350 | Fax 1: $350 | |
| Fax 2: $125 | Fax 2: $125 | |
| Fax 3: $90 | Fax 3: $90 | |
| | Fax 4: $25 | |

| | | |
|---|---|---|
| Total: $565 | Total: $590 | **Total: $1,155** |

Under BTL's proposal, the same claimant would be paid as follows:

| First Fax Number | Second Fax Number | |
|---|---|---|
| Fax 1: $350 | Fax 1: $25 | |
| Fax 2: $125 | Fax 2: $25 | |
| Fax 3: $90 | Fax 3: $0 | |
| | Fax 4: $0 | |
| Total: $565 | Total: $50 | **Total: $615** |

That is a $540 difference for this particular claim on seven faxes. But this issue is not limited to claimants who received more than five faxes; it impacts all claimants who submitted claims for multiple valid fax numbers, even if they received five or fewer faxes. For example, the claimant at Tracking Number 95522 submitted a claim for two valid fax numbers. (Ex. D, Claims Detail Report, Tracking No. 95522). The first fax number received one fax; the second number received three faxes. (*Id.*)

Under Plaintiffs' reading of the Agreement, treating each fax number as representing a separate "Valid Claim," this claimant would be paid as follows:

| First Fax Number | Second Fax Number | |
|---|---|---|
| Fax 1: $350 | Fax 1: $350 | |
| | Fax 2: $125 | |
| | Fax 3: $90 | |

| | | |
|---|---|---|
| Total: $350 | Total: $565 | **Total: $915** |

Under BTL's proposed reading of the Agreement, this same claimant would be paid as follows:

| **First Fax Number** | **Second Fax Number** | |
|---|---|---|
| Fax 1: $350 | Fax 1: $125 | |
| | Fax 2: $90 | |
| | Fax 3: $25 | |
| | | |
| Total: $350 | Total: $240 | **Total: $590** |

That is a $325 difference, on a claim for fewer than five faxes. In addition, there are some companies that filed claims on behalf of multiple locations. Wal-Mart, for example, filed a claim for 110 different valid matching fax numbers, each number receiving 1–5 of the faxes at issue. (*See* Ex. D, Claims Detail Report at Sheet Four "WALMART"). Under Plaintiffs' interpretation (and Epiq's initial determination), Wal-Mart would be paid between $350 and $615 *per fax number*. Under BTL's interpretation, Wal-Mart would receive $615 *total*.

The Settlement Agreement is governed by Florida law (Doc. 324-1, Settlement Agreement § XV.I), which provides that contracts like the Settlement Agreement are to be "construed according to their plain meaning" and in a manner "that is reasonable, practical, sensible, and just." *Travelers Indem. Co. v. Garcia*, 497 F. Supp.

3d 1218, 1222 (M.D. Fla. 2020) (citing *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005); *State Farm Mut. Auto. Ins. Co. v. Mashburn*, 15 So. 3d 701, 704 (Fla. Dist. Ct. App. 2009)). Here, the plain meaning of the Settlement Agreement that claimants "who submit a Valid Claim shall be eligible to receive" payments according to the five-tiered payment structure is that each valid fax number submitted on the claim form is a separate "Valid Claim." (Doc. 324-1, Settlement Agreement, Section IV.B).

Even if the Court finds the Settlement Agreement ambiguous, Florida law states that "[i]f one interpretation, viewed with the other provisions of the contract and its general object and scope, would lead to an absurd conclusion, that interpretation must be abandoned and one more consistent with reason and probability adopted." *Travelers Indem. v. Garcia*, 497 F. Supp. 3d at 1222 (quoting *Travelers v. Milgen Dev., Inc.*, 297 So. 2d at 847). Applying an artificial five-fax-per-claim-form limit here would run contrary to the general object and scope of the agreement and lead to a result where a person is penalized for taking up the invitation on the claim form to list all fax numbers, rather than filing a separate claim form for each fax number.

In the alternative, if the Court finds that the settlement operates as BTL contends, Plaintiffs submit that claimants who submitted claims for more than one valid fax number should be notified of this issue and given a second opportunity to opt out of the class. *See, e.g.*, *In re Processed Egg Prod. Antitrust Litig.*, 130 F. Supp. 3d 945, 956 (E.D. Pa. 2015) (exercising court's equitable powers to extend opt-out

period where plaintiff's failure to timely opt out was result of excusable neglect,
holding plaintiff's counsel's mistaken understanding that it was not necessary for
plaintiff to opt out "while ultimately wrong, was not unreasonable and was certainly
not part of a 'sinister, well-conceived plan to frustrate the opponent'") (quoting
*Kimberg v. Univ. of Scranton*, 411 Fed. Appx. 473, 478 (3d Cir. 2010); *cf. Grilli v. Metro.
Life Ins. Co.*, 78 F.3d 1533, 1538 (11th Cir. 1996) (affirming denial of class member
request to opt out of class settlement after deadline where class member "made a
tactical decision not to opt out in time" and failed to show excusable neglect).

## II.   The Court should approve the agreed-upon categories of defect notices/requests for additional information.

Plaintiffs and BTL agree Epiq should follow up with a defect notice or request
for more information (which Epiq has previously called a "Notice of Incomplete
Claim") in the following categories:

First, the parties agree defect notices should be sent to claimants who filed
claims containing non-matching fax numbers (*i.e.*, any claim containing a fax
number not matching a number on the Biggerstaff list).

Second, the parties agree requests for additional information must be sent to
claimants on a "Multi-Claimed Fax Number" (*i.e.*, any claim featuring a fax number
also listed on another claim form).

Third, the parties agree that if a claim is "Missing Signature," Epiq should
follow up with the claimant to cure the defect.

Fourth, the parties agree that where the claimant is a "Potential Government Entity," Epiq should request additional information. The class covers "persons," which includes business entities but does not include government entities.

Fifth, the parties agree it is appropriate for Epiq to seek further information with respect to claims submitted by business entities not registered until after the class period (*i.e.*, July 2009 to June 2010).

### III.   The Court should reject BTL's proposal to "defect" all claimants in this case based on being identified (or not identified) in the reverse lookups.

BTL has insisted that Epiq send "defect" notices seeking unspecified "additional information" both to (1) claimants who were identified by Epiq in the TransUnion or LexisNexis reverse lookups for purposes of sending Mailed Notice; and (2) claimants who were *not* identified in either reverse lookup. (Ex. E, email from R. Collins, May 30, 2023). In other words, BTL proposes that *every* claimant in this settlement be sent a notice that their claim is "defective" and/or requires submission of additional "proof" in order to recover. In essence, BTL is trying for at a second bite at the apple on the same issues it raised in BTL's Motion to Address for Purposes of the Notice Program the Limitations of Reverse Lookups Under the Circumstances of this Case in August 2022. (Doc. 381).

In that motion, BTL asked the Court to impose a new requirement, not contained in the Settlement Agreement, that claimants must "provide proof either of receipt of a fax sent on behalf of BTL <u>or</u> proof of ownership in 2009 or 2010 of one of the telephone lines on the Biggerstaff list" in order to file a claim. (*Id.* at 21). As the

11

Court recognized at the evidentiary hearing on that motion, the claim form the parties negotiated requires the claimant to both (1) provide a matching fax number; and (2) swear to receiving faxes at that number during the class period under penalty of perjury. (Ex. F, Hr'g Tr., Aug. 31, 2022, at 138:14–16).[1] As the Court noted, when a claimant makes that statement in the claim form, "that in and of itself is putting forth evidence of a claim under the penalty of perjury." (*Id.*) In addition, the Court noted that if BTL has any evidence a particular claim is fraudulent, "you have the opportunity at that point . . . to challenge" the claim under Section VIII.E of the Settlement Agreement. (*Id.* at 138:17–20).

Epiq has the same understanding. It has made clear that it does not believe that "defecting records identified by LexisNexis or TransUnion" would be appropriate, and that Epiq will "rely on a claimant's certification under penalty of perjury which is present on this Claim Form." (Ex. G, email from O. Castellejos, Apr. 21, 2023). Epiq has stated that, in the absence of evidence of fraud, it will pay claims where the claimant "(i) completed a Claim Form, providing all of the information required by the Settlement Agreement and the Claim Form; (ii) signed the Claim Form under penalty of perjury; and (iii) returned the completed and signed Claim Form to the Settlement Administrator on or before the Claim Deadline.  (ECF No. 324-1 at Section VIII. ¶B)." (Ex. H, email of S. Amin-Giwner, May 15, 2023).

---

[1] The claim form requires the claimant to swear under penalty of perjury that during the relevant time period "I or my company subscribed to the fax number(s) identified above . . . and faxes were received at such number or numbers, including faxes from the Tampa Bay Buccaneers." (Doc. 324-1, PageID 9432).

Epiq has stated that "[i]t is not within Epiq's purview to determine additional factors for determining validity," as BTL has requested. (*Id.*)

This is the streamlined claims process that BTL agreed to, and it is what this Court ordered in granting preliminary approval. *See* Doc. 343, Prelim. Approval Order at 39 ("Epiq will reject any claim that does not substantially comply with the instructions on the Claim Form or the terms of the Agreement or is postmarked later than the Claim Deadline."). If BTL has evidence any particular claim is in fact fraudulent, it should bring that evidence to the Administrator's attention.

## Conclusion

For the foregoing reasons, the Court should enter an order (1) ruling that there is no "five-fax limit" on payment of Valid Claims, which will be paid per each valid fax number submitted by a claimant; (2) approving the agreed-upon categories for "defect" letters/requests for additional information; and (3) rejecting BTL's proposed "defect" categories based on whether a claimant was identified (or was not identified) in one of the reverse lookups used to generate the mailing list for purposes of Mailed Notice.

## Local Rule 3.01(g) Certification

Undersigned counsel states that he conferred with counsel for Defendant on the issues raised in this motion on multiple occasions by email including on February 22–24, 2023 and April 21–27, 2023; and by telephone on May 16, 2023, May 18, 2023, and June 16, 2023, and aside from the agreed-upon "defect"

categories described in Section II, above, the parties do not agree on the resolution of this Motion.

Respectfully submitted,

/s/ Glenn L. Hara
Glenn L. Hara (admitted *pro hac vice*)
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Telephone: (847) 368-1500
Facsimile: (847) 368-1501
ghara@andersonwanca.com

Michael C. Addison (Fla. Bar. No. 0145579)
ADDISON LAW OFFICE, P.A.
1304 Alicia Avenue
Tampa, Florida 33604
Telephone: (813) 223-2000
Facsimile: (813) 228-6000
m@mcalaw.net

Ross M. Good (Fla. Bar. No. 116405)
LOFTUS & EISENBERG, LTD.
161 N. Clark, Suite 1600
Chicago, Illinois 60601
T: (786) 539-3952
ross@loftusandeisenberg.com

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 16, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

s/Glenn L. Hara