**EXHIBIT A**

1

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

2

**TAMPA DIVISION**

3

CIN-Q AUTOMOBILES, INC. and

4

MEDICAL & CHIROPRACTIC CLINIC,
INC., individually and

5

on behalf of a class,

6

                    Plaintiff,

7

     vs.                        CASE NO. 8:13-cv-1592 AEP
                                January 20, 2022

8

                                Tampa, Florida
                                2:00 - 3:37 p.m.

9

BUCCANEERS LIMITED PARTNERSHIP,

10

                    Defendant.

11

_____/

12

13

14

15

**TRANSCRIPT OF MOTION HEARING**
        (Via Zoom Videoconference)

16

BEFORE THE HONORABLE ANTHONY E. PORCELLI
        UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

Proceedings transcribed via courtroom digital audio

25

recording by transcriptionist using computer-aided
transcription.

1   **A P P E A R A N C E S:**

2   For the Plaintiff:        MICHAEL C. ADDISON, ESQ.
                              Addison Law Office, P.A.
3                             1304 Alicia Avenue
                              Tampa, Florida 33604
4                             813/223-2000

5                             GLENN L. HARA, ESQ.
                              ROSS MICHAEL GOOD, ESQ.
6                             Anderson & Wanca
                              3701 Algonquin Road, Suite 500
7                             Rolling Meadows, Illinois 60008
                              847/368-1500
8
    For the Defendant:        ROBERT C. COLLINS III, ESQ.
9                             MARK S. MESTER, ESQ.
                              Latham & Watkins LLP
10                            330 N. Wabash Ave., Suite 2800
                              Chicago, Illinois 60611
11                            312/876-7700

12                            JOSEPH H. VARNER III, ESQ.
                              Holland & Knight, LLP - Tampa
13                            100 N Tampa Street, Suite 4100
                              Tampa, Florida 33602
14
    For the Intervenor:       JONATHAN B. PIPER, ESQ.
15                            Bock Law Firm, LLC
                              134 N. LaSalle Street, Suite 1000
16                            Chicago, Illinois 60602
                              312/658-5500
17
                              PHILLIP A. BOCK, ESQ.
18                            Bock Law Firm, LLC
                              d/b/a Bock Hatch & Oppenheim, LLC
19                            820 West 41st Street, Suite #35
                              Miami Beach, Florida 33140
20                            305/239-8726

21  Court Reporter:           Howard W. Jones, RPR, CMR, FCRR
                              801 N. Florida Avenue, Suite 15A
22                            Tampa, Florida 33602
                              813/301-5024

23

24                      * * * * * * * * * *

25

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

3

```
 1                      I N D E X

 2                                                    PAGE

 3      ARGUMENT BY MR. ADDISON:                       7

 4      ARGUMENT BY MR. MESTER:                         9

 5      ARGUMENT BY MR. ADDISON:                       10

 6      ARGUMENT BY MR. MESTER:                        11

 7      ARGUMENT BY MR. ADDISON:                       13

 8      ARGUMENT BY MR. MESTER:                        14

 9      ARGUMENT BY MR. ADDISON:                       16

10      ARGUMENT BY MR. GOOD:                          16

11      ARGUMENT BY MR. ADDISON:                       19

12      ARGUMENT BY MR. GOOD:                          21

13      ARGUMENT BY MR. MESTER:                        22

14      ARGUMENT BY MR. BOCK:                          26

15      ARGUMENT BY MR. ADDISON:                       41

16      ARGUMENT BY MR. BOCK:                          41

17      ARGUMENT BY MR. MESTER:                        43

18      ARGUMENT BY MR. BOCK:                          44

19      ARGUMENT BY MR. ADDISON:                       51

20      ARGUMENT BY MR. MESTER:                        54

21      ARGUMENT BY MR. BOCK:                          56

22      ARGUMENT BY MR. MESTER:                        61

23      ARGUMENT BY MR. BOCK:                          63

24      ARGUMENT BY MR. MESTER:                        64

25      (Continued)
```

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**INDEX** (Cont'd)

|                                          | **PAGE** |
|------------------------------------------|----------|
| ARGUMENT BY MR. ADDISON:                 | 65       |
| ARGUMENT BY MR. GOOD:                     | 65       |
| ARGUMENT BY MR. MESTER:                   | 68       |
| ARGUMENT BY MR. PIPER:                    | 71       |
| ARGUMENT BY MR. MESTER:                   | 72       |
| CERTIFICATE OF COURT REPORTER             | 76       |

* * * * * * * * * *

**E X H I B I T S**

*(NONE RECEIVED IN EVIDENCE)*

* * * * * * * * * *

# P R O C E E D I N G S

1
2           (Court called to order)
3           THE COURT:  Good afternoon.  Call the case,
4    please.
5           THE DEPUTY CLERK:  Certainly.  Good afternoon,
6    again.  It's Cin-Q Automobiles vs. Buccaneers Limited
7    Partnership, Case 8:13-cv-1592-AEP.
8           THE COURT:  Okay.  Thank you.
9           Good afternoon, everyone.  Let me have counsel
10   state your appearance for the record starting with the
11   plaintiff.
12          MR. ADDISON:  Michael Addison, interim class
13   counsel for the Cin-Q plaintiffs group.
14          THE COURT:  Thank you, Mr. Addison.
15          MR. HARA:  Glenn Hara for the plaintiffs.
16          THE COURT:  Thank you, Mr. Hara.
17          MR. GOOD:  Ross Good for the plaintiff.
18          THE COURT:  All right.  Thank you, Mr. Good.
19          All right.  For the defendant.
20          MR. MESTER:  Good afternoon, Your Honor.  Mark
21   Mester for BTL.
22          THE COURT:  Thank you, Mr. Mester.
23          MR. COLLINS:  Robert Collins for BTL as well.
24          THE COURT:  All right.  Thank you, Mr. Collins.
25          MR. VARNER:  And also Joe Varner for BTL, Your

```
 1   Honor.
 2            THE COURT:  Thank you, Mr. Varner.
 3            All right.  And for intervenor.
 4            MR. BOCK:  Phillip Bock for intervenors, Your
 5   Honor.
 6            MR. PIPER:  And Jonathan Piper.
 7            THE COURT:  All right.  Thank you, Mr. Piper.
 8   Thank you, Mr. Bock.
 9            MR. PIPER:  Thank you.
10            THE COURT:  All right.  Thank you all for your
11   time this afternoon.  As I'm sure you anticipated, I
12   scheduled this matter based upon Document No. 324 and the
13   relevant documents in the record regarding the plaintiff and
14   defendant's joint motion for the Court to enter preliminary
15   approval of class settlement.  Intervenors have filed
16   documents addressing issues as to that preliminary approval.
17   I've reviewed the matter and will tell you-all where I'm at.
18            I have a draft order that I am intending to enter
19   based upon some matters that we cover today adopting the
20   preliminary approval of the class -- in the class
21   settlement.  There are a couple of matters that stand out to
22   me that we need to address before I go forward in entering
23   the order.  So I'll take them up and then if any other
24   matters need to be addressed, you can let me know.
25            But what I want to first start off with is there
```

 1   is a conflict in the documents as they are filed that I have

 2   some concern about how they should be attended to.

 3          The class definition identifies any class member

 4   that received or sent a fax in 2009 or 2010.  That broadly

 5   leaves open those dates.  If you look at your settlement,

 6   though, and so for my purposes, Document 324, Exhibit 1,

 7   both at page 13 of the exhibit and then your attachment to

 8   the form, which are Exhibits A and C of that -- of Document

 9   No. 1 -- or Exhibit No. 1, you are limiting the date range

10   rather than the class definition of 2009 or 2010.  The

11   settlement seems to reference that if it's settled that for

12   anyone that received faxes during the period of July 14th,

13   2009, through June 9th, 2010.  So that seems to be an

14   inherent conflict with the definition of the class itself.

15   So I am curious as to your opinion about that and what needs

16   be done to resolve it.

17          So let me start off, Mr. Addison, with you.

18          MR. ADDISON:  Those are the only faxes that were

19   sent by the Buccaneers with respect to the series of last

20   faxes advertising game tickets.  So they started in the

21   middle of July 2009, they went into the middle of August

22   2009, and then weren't again faxed until May and June of

23   2010.  So we have a number of months in between that time

24   period, but no faxes were sent.

25          THE COURT:  Mr. Mester.

8

1              MR. MESTER:  Thank you, Your Honor.  I think I

2    can -- I can try to explain it.  If there's anything we know

3    in the case, it's when the faxes were sent.  So I think

4    that's clear.  But the class is defined, as Your Honor

5    pointed out, somewhat more broadly.  It's not more broadly

6    in the sense we're adding other years, but there's that gap.

7    And that's, Your Honor, I think simply for the fact that we

8    want to make sure the class relief is broad enough to

9    encompass all the faxes that were sent in this general time

10   period.

11              We know when they were sent, but what we don't

12   want to have is some collateral attack down the road where

13   someone comes in and says, well, I didn't get a fax on

14   either of these two dates, but I got a fax in the middle of

15   these two dates and, therefore, I'd like to pursue a claim

16   against the Buccaneers.

17              I think the clear intent of the parties is to

18   resolve this once and for all for faxes that were sent in

19   this general time period.  But again, I'm -- if we know

20   anything, we know -- and that's the basis for the claims

21   being as specific as it is, we know specifically when these

22   faxes were sent.

23              THE COURT:  The concern I have, though, is that it

24   creates some ambiguity for anyone that received this notice.

25   In particular, what I'm referring to is Document No. 324,

1   Exhibit 1, page 49, which is the notice of class action

2   settlement with attached claim form.  The proposed notice

3   reads:  To all persons who received or were successfully

4   sent in 2009 or 2010 one or more facsimile advertisements

5   relating to tickets for the Tampa Bay Buccaneer game.  And

6   then a parenthetical, the settlement class.

7         Then under paragraph A, it reads:  The parties

8   have agreed to settle all claims, about 3,430 -- excuse me,

9   343,122 advertising faxes allegedly sent by or on behalf of

10  BTL from July 14th, 2009, to June 9th, 2010.

11        So I'm worried that may create some confusion to

12  anyone who will receive them.  So maybe I'm just -- have a

13  heightened scrutiny of it, but is there any concern by the

14  parties at all having that discrepancy in the notice?

15        MR. MESTER:  I think, Your Honor, this is one of

16  the issues that we spent a fair amount of time with Judge

17  Sansone on, that the claims weren't in the notices.  I think

18  the idea is we're actually trying to help class members so

19  they can honestly answer questions that are posed on the

20  class form if we provide them with specific dates.  I think

21  it -- if we went back a step and said tell us when you think

22  you received faxes in this broader period, I doubt we'd get

23  very many accurate answers and then we'd probably have

24  fights about, you know, whether it was a valid claim or not.

25        So that's what we were trying to accomplish.  If

```
 1    we failed in that regard, I'm sure we'd be willing to,

 2    certainly, Your Honor, consider a way to clarify.  But I

 3    don't -- I'm not sure given the distinction between on the

 4    one hand the breadth of the release and on the other hand

 5    the specific information we have, and I don't think there's

 6    much dispute between the parties on that, as to when the

 7    class -- when the notice or the faxes went out that we -- we

 8    have to sort of harmonize those two.

 9              THE COURT:  Mr. Addison?

10              MR. ADDISON:  On behalf of the plaintiffs, we

11    don't think there's gonna be any problem.  I agree with

12    Mr. Mester that we know when the faxes were sent and there

13    aren't going to be anybody coming in and making a claim of

14    getting a fax in April or March of 2010, because there

15    weren't any sent.

16              THE COURT:  All right.  The next question I have

17    is the parties have left it to my discretion as to other

18    avenues of notice.  I've contemplated it and I've decided I

19    am going to require the additional forms of notification, to

20    include facsimile as well as publications.  For purposes of

21    publication, it will be for purposes of two weeks, and it

22    will be outlined in the order.  But given that I've decided,

23    although I think there is a bit of irony in it, but I've

24    decided that given that we have the fax numbers, that may be

25    the most appropriate way to send out notice, I am going to
```

1   require that notice to go forward.  That then changes, in my

2   view, substantially what has been proposed, and that is the

3   concern I have about how to go forward before entering an

4   order.

5            One of the things that's highlighted in your

6   settlement agreement is that prior to the preliminary

7   hearing -- excuse me, the hearing on the preliminary

8   approval is you were going to identify a claims

9   administrator for the Court's approval.

10           So let me start with that.  Has that occurred yet?

11           MR. ADDISON:  Yes, Your Honor.

12           MR. MESTER:  Yes.

13           THE COURT:  All right.  So you're in the position

14   where, then, you are going to file something with the Court

15   for purposes of approval?

16           MR. ADDISON:  Yes, we will do that, Your Honor.

17           MR. MESTER:  Yes.

18           THE COURT:  All right.  Then the next question is

19   the sequencing of events.  If I am going to require

20   facsimile notice, what do the parties prefer?  Should that

21   occur first prior to the mailing or something else, is

22   something else contemplated?

23           MR. MESTER:  Your Honor, if I may be heard.

24           THE COURT:  Yes, you may.

25           MR. MESTER:  Mark Mester.  I think what we have in

 1  mind and we did discuss with Mr. Addison, certainly with

 2  Judge Sansone, was we have -- we will be proposing a joint

 3  proposal from the parties in terms of the settlement

 4  administrators, affirm very capable, acceptable to both

 5  sides and used by both sides.

 6          But we did contemplate a sequenced process.  I

 7  don't think at this point -- with due respect to Your Honor,

 8  I don't think at this point anyone can really know whether

 9  or not those other forms of notice would or would not be

10  required until we know whether or not the reverse lookup

11  that's contemplated, the applications.  We contemplated,

12  Your Honor, that once we know how -- what the results are of

13  the reverse lookup, then the parties would confer and decide

14  whether we as parties think it's necessary to have

15  additional notice.  And if we don't agree, then we would

16  address to Your Honor our concerns about the fax notice in

17  particular, because I think we didn't do that in advance,

18  because we don't know we're ever gonna get there, we didn't

19  want to put it on paper in front of Your Honor.

20          But I think, first and foremost, what we need to

21  do is have the notice administrator proposed to Your Honor,

22  appointed by Your Honor, and then go through the reverse

23  lookup process so we know where we end up.  I don't want to

24  prejudge that.  Certainly plaintiff's counsel -- plaintiff's

25  expert, Mr. Biggerstaff, has suggested that reverse lookup

1  would be exceedingly efficacious and, if it is, then I don't

2  know that we need anything more than that.  But we can't

3  know that until we know what the results are of the reverse

4  lookup and that, obviously, has not occurred.

5          THE COURT:  All right.  Mr. Addison.

6          MR. ADDISON:  We, obviously, are interested in

7  getting notice to as many absent class members as possible.

8  It occurred to us that the easiest way to do that was fax

9  notice, because we have a database of all the fax numbers.

10  However, that wasn't agreeable to the Buccaneers and, hence,

11  our settlement agreement kind of waited in attempt to do

12  direct mail notice and then put in your lap the question of

13  whether or not fax notice to the people we couldn't locate

14  would be appropriate or notice by publication would be the

15  appropriate methodology to try to get anybody out there that

16  theoretically has a claim.

17          But the direct mail notice was to go first and

18  that's the consequence of the reverse lookup process.  But

19  it occurred to us that given the facts that this -- the fact

20  that this database that was used was a business database,

21  the likelihood is that those businesses still have the same

22  fax number.  But anyway, if they don't, then the person who

23  receives the fax won't be able to legitimately make a claim.

24          But the reverse lookup was thought to be first and

25  if that ends up identifying 50 percent of the potential

1    class members, that means 50 percent would then be receiving

2    some other notice, and we would agree with you that fax

3    notice would be the appropriate technique.

4        THE COURT:  So then what I missed in that is that

5    there is then a sequence of events and one that's supposed

6    to occur within the schedule, because that's what I'm

7    concerned about, is how is that to occur on a timely basis.

8        MR. MESTER:  Well, Your Honor, I think the reverse

9    lookup could be done fairly quickly.  We can certainly

10   submit to Your Honor on an expedited basis our -- we had

11   very sincere concerns about fax notice when Mr. Addison

12   suggested it.  It's that simple.

13       If you look at the Biggerstaff report, even he

14   suggests that phone numbers turn over at a rate of

15   5.5 percent per year.  So we've had a 60 to 70 percent

16   turnover from the beginning of this class period in 2009.

17   And the idea that we're just gonna start sending out faxes

18   to those numbers and not worry about where they end up is of

19   grave concern to us because of the potential for fraud.

20       Even if I think Mr. Addison is right, and I don't

21   think he is, that most of those numbers are still connected

22   to fax machines, if that fax ends up in the hands -- we send

23   a fax notice out to someone and it ends up in the hands of

24   someone else, the potential for a fraudulent claim is,

25   obviously, much greater than it otherwise would be.  And

1    that was an issue that was discussed at length with --

2              THE COURT:  And, now, I want to honor what is

3    contemplated by the settlement, obviously.  So that's what

4    I'm trying to understand, though, is what are you

5    contemplating to occur.  What I am putting you on notice of

6    is that I'm in agreement that who we cannot identify we're

7    going to send out facsimiles.  But what are you

8    contemplating to occur then, the potential we'll have an

9    objection -- an additional objection to that or how much

10   time it's going to take place for that process?

11             MR. MESTER:  Your Honor, I'd want to ask Effect

12   (ph) how long it will take to do the reverse lookup, but

13   once we have that result, then we confer with Mr. Addison

14   expeditiously and either make a joint proposal to Your Honor

15   or then we submit our respective views on what should

16   happen.  But I don't -- I don't think any of this needs to

17   take -- to take very long at all, I don't think it will

18   materially slow things down.

19             But, you know, what the appropriate threshold

20   should be in terms of efficaciousness we may view that -- I

21   don't think anyone expects us to reach 100 percent of the

22   class.  But we just don't know what the result is the

23   reverse lookup yet.  And we need to propose to Your Honor

24   the class administrator, the notice administrator, and then

25   get that -- get that work done.  And once it's done, we can

1    get back to Your Honor very quickly.

2              MR. GOOD:  Your Honor, may I --

3              THE COURT:  And what about the publication, any

4    concerns about that?

5              MR. MESTER:  Again, Your Honor, I think, you know,

6    looking back at the relevant case law, *Malanie* (ph) is the

7    seminal case, Supreme Court decision.  If we can do First

8    Class U.S. notice, U.S. Mail notice, and it's efficacious,

9    it's the best notice practical under the circumstances and

10   that's probably it.  Certainly, Your Honor, we have less

11   concerns about the publication notice than we do about the

12   fax notice.  There is, to be sure, a potential for fraud

13   with publication as well, but at least it doesn't come

14   across a fax machine as what looks like an invitation to

15   make a claim that may be fraudulent.  So the publication

16   notice is less of a concern.  But again, we don't know at

17   this point whether we'll need that either.

18             THE COURT:  All right.  Mr. Addison, was that you?

19   Did you want to say something?

20             MR. ADDISON:  No, it was Mr. Good.

21             THE COURT:  Oh, Mr. Good.  Thank you.

22             Go ahead, Mr. Good.

23             MR. GOOD:  Your Honor, I'll be brief.  And Your

24   Honor is -- in any preliminary approval order, Your Honor

25   would set a deadline for claims to be submitted.  Whether

1    that claimant received the claim form and the class notice

2    via fax, direct mail, publication, Your Honor will set the

3    deadline for the claims to be submitted and I just wanted to

4    point out to the Court that because Your Honor will be

5    submitting that claims deadline, it might be in the best

6    interest of the Court, judicial economy, for the notice plan

7    to include, you know, who were going to be submitted, which,

8    as Mr. Mester pointed out, is going to be Effect as the

9    class administrator, the deadlines, our respective positions

10   and everything else.

11        Also, I wanted to point out Mr. Biggerstaff never

12   said that the turnover rate of phone numbers which were

13   previously fax numbers would then subsequently be fax

14   numbers every single year.  That is absolutely not what

15   Mr. Biggerstaff said in this case or has never said in any

16   case.

17        I'd be happy to go into further detail about fax

18   numbers and how fax number recycling works if Your Honor has

19   any questions about that.

20        THE COURT:  No.  But you're right.  I mean, and

21   that's what I'm going to get to in the end, is that I think

22   we need to go through each of these deadlines that will need

23   to be identified.  But one thing I wanted to make sure is,

24   as allowable by the form that is proposed, that any form

25   submitted by a class member, or proposed member, may be

1  submitted by mail or facsimile and that those will be

2  accepted in those forms, or even electronically.  Is that

3  what is agreed upon by the parties?

4          MR. GOOD:  Yes, Your Honor.

5          THE COURT:  All right.  So going back, then,

6  looking at the agreement and what's contemplated is that

7  within ten days of the entry of the Court's preliminary

8  approval Effect will then start the process.  I mean, they

9  will be provided the numbers to start the process.

10         Given, then, what you've outlined, I have some

11  concerns about the deadline.  As I've stated, I'm going to

12  schedule the fairness hearing for July 6th of 2022.  What

13  I'm lacking, based upon some of my uncertainty, are other

14  deadlines that need to be considered.  That's the deadline

15  for submitting the claim, the deadline for opting out, the

16  deadline for objections, the responses to the objections,

17  the deadline for Effect to submit documentation to the

18  parties regarding compliance with the notice and the

19  results.  So those are deadlines I think that we need to

20  discuss and the many that you may need to contemplate

21  further and then provide it to the Court.

22         One other deadline that there's conflict within

23  the agreement itself, and maybe I am misreading something in

24  the agreement, is the date as to when the motion for

25  attorneys' fees should be filed.  When I look at the

1  agreement itself, it seems to be in conflict.  At one part

2  of the motion itself, specifically it reads:  To be filed

3  the same day of approval.  And that is at page 14 and 15 of

4  the motion -- or, excuse me, of the agreement.

5          On page 25 it reads that the motion is to be filed

6  at least 14 days prior to the opt-out and objection period.

7  And there is at least one common thing, that the motion

8  itself must be placed on the website.

9          So when is that motion to be filed?

10          MR. ADDISON:  I think it should be filed at least

11  in advance as the settlement agreement contemplated so that

12  people can decide whether they want to object or opt out

13  with respect to, among other things, the attorneys' fees

14  being sought.  So if we wait until the date of approval,

15  it's -- that's too late.  It should be 30 days before so

16  that the website can contain that motion and the specifics

17  of it and then class members can decide if that's material

18  to them.

19          THE COURT:  Well, to be clear -- let me pull that

20  page up.

21          This is page 14 of the settlement agreement

22  itself.  And what it reads is -- one moment.

23          Okay.  The bottom of page 14, it reads:  On the

24  same day the motion for preliminary approval is approved

25  class counsel will file a motion for attorneys' fees.

1          I'm not sure what that was contemplating, because

2     I'm not sure even practically how that could occur.  What

3     it's suggesting is on the day I enter an order approving the

4     preliminary approval, the motion for fees are to be filed.

5     So I just want to make sure that's what was discussed in the

6     settlement and intended or is it, as is outlined in the same

7     settlement agreement on page 25, paragraph R, where it's

8     indicating what the Court shall direct and it reads:  Shall

9     direct that class counsel file their applications for the

10    attorneys' fees award and plaintiff/defense's award at least

11    14 days prior to the opt-out and objection date.

12          So, Mr. Addison, that seems to accomplish what you

13    just suggested.

14          MR. ADDISON:  Right.

15          THE COURT:  It would give the opportunity -- at

16    least 14 days, the opportunity for it to be placed on the

17    website, as well as notice -- but my concern about that is

18    if it's only 14 days prior to the opt-out, you're gonna have

19    some members who are going to be maybe opting in prior to

20    you posting the fee -- the fee application.

21          So just help me better understand what we're

22    trying to accomplish and then when is it that we want the

23    motion to be filed.

24          MR. ADDISON:  I'm gonna as Ross Good to address

25    that, Your Honor, because he's --

1          THE COURT:  All right.  Mr. Good?

2          MR. GOOD:  Yes, Your Honor.  We think 14 days is

3    sufficient.  The class notice itself put the class members

4    on notice.  Again, class members are not opting into the

5    class, they are either opting out or objecting.  They will

6    have the opportunity to see the motion on the website or

7    they could, you know, set up a Pacer account and look this

8    up on Pacer, if they were to so desire, and they will have

9    the opportunity to see it and to review it in deciding

10   whether to opt out or object.  And they can also file a

11   claim form and then submit an objection in addition to

12   submitting a claim form.

13          I've also seen situations, although I'm not sure

14   it's ever occurred based on a motion for attorneys' fees,

15   where they could submit a claim form and then subsequently

16   choose to opt out.  If they were to do that, although I'm

17   sure the class administrator would not enjoy that process,

18   their opt-out would be honored.  So as long as they have

19   sufficient time to review the material, we can do that.

20          Additionally, Your Honor, if you don't think that

21   14 days is enough time, we'd be happy to do it 21 days after

22   preliminary approval is granted and put it up on the website

23   as soon as we got the ECF filing header on the top so that

24   people can see that it's a legitimate document and that,

25   again, the file header is on the top when it's placed on the

1    settlement administrator's website.

2         THE COURT:  Mr. Mester, you want to be heard as to

3    that issue?

4         MR. MESTER:  Your Honor, Mr. Good just put his

5    finger on the one concern that I have, which is 14 days

6    (inaudible).  I don't know of any Eleventh Circuit

7    authority, but I know of Ninth and Seven Circuit authority

8    says we need to be sure we give objectors enough time to

9    look at the fee petition and incorporate in their

10   objections.  I think what Mr. Good suggests would be proper

11   in terms of time.

12        MR. ADDISON:  We have no objection to that, Your

13   Honor.  If you want to make it 21 days after preliminary

14   approval, there will be no objection from plaintiff.

15        THE COURT:  All right.  That will be noted for the

16   record and that's what I will do.

17        All right.  So let me come back, then, ultimately,

18   as stated then, given the clarification of the discrepancy

19   with the dates and the class definition, I'm comfortable in

20   going forward with that.  I understand the parties' position

21   as to the discretion after the parties have had the

22   opportunity to identify class members and provide notice

23   through mail.  If those members cannot be identified, then

24   it will be brought before the Court contemplating additional

25   notice, to include the facsimile and publication.

1          What I'd like from you, then, is the following:

2    Provide me, then, what you are contemplating for purposes of

3    time period.  And I recognize some of this may be fluid, but

4    there are certain fast and -- excuse me, hard deadlines that

5    we need to comply with.  So I'd like you to provide me your

6    time period if you're going to contemplate after Effect is

7    completed the process in doing the identification for

8    purposes of mailing, when you will contemplate proposing to

9    the Court whether additional publication or notice should

10   occur.  And then, even in that recommend a date of the

11   hearing that you would like and I will accommodate that date

12   the best I can.

13          Additionally, I'd like --

14          MR. MESTER:  That fine --

15          THE COURT:  Go ahead.  I'm sorry.

16          MR. MESTER:  No, that's fine, Your Honor.  I was

17   just that was all right.

18          THE COURT:  All right.  Additionally, I'd like you

19   to submit for me the deadline for submitting claims based

20   upon what we are contemplating today, the deadline for

21   opting out, the deadline for an objection, the deadline for

22   the response to the objection.

23          Lastly, I'd like you-all to have the deadline for

24   the settlement administrator to submit the documentation to

25   you-all, as well as support regarding compliance with the

1    notice program.

2          As stated, we're going to -- this could all now be

3    identified given that I've told you I'm going to schedule

4    the fairness hearing for July 6th.

5          UNIDENTIFIED SPEAKER:  Your Honor, may I ask a

6    point of clarification?

7          THE COURT:  Yes.

8          UNIDENTIFIED SPEAKER:  And you may have already

9    said this, but is one of the deadlines a deadline to

10   disseminate class notice?

11         THE COURT:  I may have already identified that.

12   One moment.

13         UNIDENTIFIED SPEAKER:  Okay.

14         THE COURT:  Well, abiding by what is in the

15   settlement, unless you want something different, but what's

16   contemplated by the settlement is the -- within 30 days of

17   the preliminary approval the (inaudible) class will be

18   established.  And then not later than 50 days the mailing

19   will occur.

20         So that's not a hard deadline that needs to be

21   established unless you were contemplating something else

22   (inaudible).

23         UNIDENTIFIED SPEAKER:  I was not, except as it

24   relates to the facts of the publication portion.

25         MR. MESTER:  Your Honor, if I may --

1            THE COURT:  Right.  What I'm asking you for now is

2    based upon that, once Effect completes that, given what I

3    understand from the parties, there may a disagreement as to

4    whether further notice should occur.  And I am asking

5    you-all based upon whenever Effect completes this

6    determination as to the mailing, you then provide me a

7    schedule of when you will be able to present your arguments

8    to the Court, as well as a hearing date for us to resolve

9    that.  And then, from that I'll be able to order what the

10   time period is.

11           So, for example, if I do order facsimiles to

12   occur, then I could direct, based upon that, how much time

13   Effect will have to comply with that as well.  But I'm not

14   contemplating that today other than I'd like to have within

15   preliminary approval a time period when this needs to be

16   resolved so we can have -- move it along and have some

17   definition with it.

18           UNIDENTIFIED SPEAKER:  Understood.  Thank you for

19   the clarification.

20           THE COURT:  I think I neglected this, and if I

21   did, I apologize, but there is one other deadline I'd like

22   you to provide.  And if I've said it already, I apologize,

23   but the notice of appearance of any attorneys seeking to

24   appear at the fairness hearing.

25           All right.  Those are the key dates for me that I

1    would like to include and need to be included (inaudible)

2    the settlement agreement.  I recognize there are other

3    deadlines that are contemplated by the settlement agreement

4    between the parties.  All I am going to do with those

5    dates -- or those time periods is just adopt them by

6    reference of the settlement agreement.  There's no need for

7    me to specify them within the order.

8           Okay.  That's everything that I had a question

9    about, so I'll start with each of you, if you want to put

10   anything else in the record or make any further argument for

11   my consideration.

12          Mr. Addison?

13          MR. ADDISON:  No, Your Honor.

14          THE COURT:  Mr. Good?

15          MR. GOOD:  No, Your Honor.

16          THE COURT:  Mr. Mester?

17          MR. MESTER:  No, Your Honor.

18          THE COURT:  All right.  Mr. Bock?

19          MR. BOCK:  Thank you, Your Honor.  I'd like to add

20   on the fax notice, you'll remember that in the TTA

21   settlement you had said you would not authorize fax notice.

22   And one of the things the parties didn't address in their

23   briefs for today is that Rule 2000 -- Rule 23 was amended in

24   2018 and one of the amendments was to add electronic means

25   after mail.  And so it says:  The notice may be by one or

1    more of the following:  United States Mail, comma,

2    electronic means, comma, or other appropriate means.

3              So the addition of that electronic means after you

4    said in TTA you wouldn't authorize fax notice I think

5    should -- maybe that's the reason you have reconsidered

6    that, because I've heard you say today that you're planning

7    to approve fax notice.

8              THE COURT:  All right.

9              MR. BOCK:  And the notice publication, I'm not

10   sure what the resolution on that was.  Our settlement

11   proposed publication on the internet that was recommended by

12   the claims administrator, KCC, was going to be 8.9 million

13   impressions on Google and Facebook in order to have an

14   effective publication notice and reach, is what they said as

15   the experts.  I don't know why Effect isn't proposing that.

16   I heard Mr. Mester mention only some kind of newspaper

17   notice for those people who still get those.  But --

18             THE COURT:  Well, maybe I'm confused about

19   something, which are at least what you're suggesting.  There

20   is going to be a website publication and then that will

21   occur within 30 days of the preliminary approval.  What's

22   outstanding and which is why I'm requiring at least some

23   more definitive time period is that upon Effect completing

24   any mailing based upon the information discovered with the

25   reverse on these fax numbers, the parties then will

1  contemplate whether additional notice should occur by form

2  or facsimile or newspaper publication.  What I've indicated

3  is -- I'm not ruling on that, but I would find it

4  appropriate based upon not to opposing it.  That's what's

5  been contemplated by the settlement agreement.  So I will

6  hear the parties whether it's necessary or not to honor the

7  agreement between the parties.

8        So I've not ruled whether a publication will occur

9  or not as far as newspaper publication.

10       MR. BOCK:  Okay.  Sorry if I misunderstood that or

11 that I did.

12       During our work with KCC, KCC did a reverse lookup

13 and they only had a 42 percent match.  So then I don't know

14 what Effect is going to do, maybe theirs is less.  So that

15 would mean the notice would be mailed to a really small

16 percentage of people.  I guess you're going to decide later

17 that a giant percentage of people deserve some other kind of

18 notice since they didn't get any.

19       But the last -- the most important thing that we

20 noticed about the settlement was that the claim form

21 requires an extraordinary memory to make a claim.  The class

22 is defined to be people who received faxes or were

23 successfully sent faxes.  The notice program is going to use

24 the Biggerstaff list of who he says received the faxes, who

25 they were successfully sent.  But only the class members who

1  remember it and will swear under penalties of perjury that

2  they remember it can make a claim.  And that's not fair.

3          I'm not aware of any court that has approved a

4  settlement of a fax case involving transmission records

5  where the claim form required an affirmation of memory of

6  receiving faxes.  And I know that my firm and Mr. Wanca's

7  firm has argued against those, such a requirement.  Every

8  defendant wants that requirement in a fax case because they

9  know people don't remember.  The last resort, the worst-case

10 scenario.  In *Palm Beach vs. Sarris* the Eleventh Circuit

11 said receipt of the fax isn't necessary.  That was a case

12 that my firm and Mr. Wanca's firm handled jointly to some

13 extent and Palm Beach, the main plaintiff, didn't have the

14 fax and didn't remember receiving the fax.  And the court

15 talks about the solicitation letter that Mr. Wanca's firm

16 had sent and in that it said, you don't need to remember

17 receiving these things.  And then the judge denied class

18 cert -- I can't remember the District Court ruling, Your

19 Honor, I'm sorry, but the appellate court said the class

20 certification was appropriate with a class representative

21 who didn't have the fax they received and didn't even

22 remember if they did because of these Biggerstaff supported

23 transmission records.  So for some reason we're ignoring

24 that.

25          Now, also, in cases where they don't have

<table>
<tr><td>1</td><td>transmission logs, Mr. Wanca's office has proposed that they</td></tr>
</table>

1    transmission logs, Mr. Wanca's office has proposed that they

2    could use an affidavit at the end of the case where people

3    say they remember receiving faxes, they'll use that to show

4    who was in the class and courts have rejected that.  And the

5    Sixth Circuit in *Tandusky vs. AFP* expressly said no way,

6    we're not relying on people's memories to justify the class

7    action.  But here they're trying to use it to justify the

8    relief.  And it's like everybody except the class members

9    knows who we're talking about, whoever had this fax number

10   on these dates, because that's when the transmission logs

11   show a fax was received.  And so we want to know who has

12   that -- who has that, whose claim is that?  That's what our

13   claim form sought to do, was get the people to identify

14   themselves.  We start with fax numbers, we don't know whose

15   they were in 2009 or '10.  We do this thing, we send the

16   notice as best as we can, and then people have to say that

17   was me, that was my business, that was the University of

18   Florida or whatever it is, right?  Amaco gas station.  They

19   know that that was their fax number of 2009 or '10, they can

20   look it up, they probably remember it, they've probably got

21   the same one as Mr. Addison said.  Right.  But how are they

22   gonna -- who, who is going to remember receiving a fax?

23   Who's gonna certify to that?  This many years later it

24   doesn't -- it's not fair on its face.

25              And the 2018 amendments to Rule 23 expressly

1   require the parties, primarily the plaintiff, to justify the

2   settlement to you on preliminary approval and they don't

3   even mention -- they don't even mention the requirements

4   that were added to Rule 23, so they don't try to satisfy the

5   either.

6          The Court -- the parties must provide the Court

7   with information sufficient to enable it to determine

8   whether to give notice of the proposal to the class.  That's

9   (e)(1)(A).

10          In order for Your Honor to decide that notice

11   should be sent, you have to decide that you will be likely

12   able to approve the settlement under Rule 23(e)(2).  So

13   they're supposed to make a 23(e)(2) showing to Your Honor so

14   that you know and you can say I'm probably going to approve

15   this.  And in doing that, they would have to tell you that

16   they never settle cases like this, they don't use claim

17   forms like this, and that they expect the claims rate to be

18   miniscule.  Why some people who did get the faxes don't

19   remember it can't get anything.

20          People who are willing to say they did, Mr. Mester

21   says he's afraid of fraud, okay, well, somebody just says,

22   yeah, I got it, I remember that fax.  I've had cases where

23   people did that, Your Honor.  In fact, Mr. Good has been

24   involved in them, where people in prison say, oh, yeah, that

25   was my fax number, you know.  Some people are willing to lie

1  under oath for money and some people aren't.  And honest

2  people who did get these faxes have no claim for recovery in

3  this case.  But all their claims will be released and maybe

4  they'll get notice, maybe they won't.  Maybe they'll get a

5  newspaper, do you remember getting these faxes?  I don't

6  know.  Bob, who used to run the fax department, died it's

7  been so long.

8          Okay.  So the parties are supposed to justify, but

9  they don't even mention it to you.  They should explain why

10 they've agreed to a claim form that requires people to say

11 they remember receiving faxes and say it under penalty of

12 perjury.  And we would suggest instead that you require the

13 parties to make the revisions we proposed in 30 -- 332-4,

14 which is a provision to take out that memory requirement and

15 tell people you don't need to remember it.

16         We're settling the case on a claims-made basis,

17 right, is what's happening.  And the idea is that unclaimed

18 money will go back to the Buccaneers.  It's not possible

19 to -- all of these people aren't being offered the money,

20 because everybody knows they all won't claim.  In this

21 particular settlement, unique settlement, only one I know

22 of, the claim form is gonna require people to remember the

23 faxes in order to get money.  So there's gonna be a

24 miniscule claims rate.

25         The (inaudible) notes that we cited in our reply

1    brief say that the showing may include details of the

2    complicated claims process and the anticipated rate of

3    claims by class members.  They haven't told you what that

4    is.  I don't now -- I didn't have the base in front of me,

5    but if the claims are going to be due after final approval,

6    Your Honor wouldn't even know the claims rate.

7            And here is something that should be considered --

8    and, you know, sometimes the claims rate, courts -- in my

9    experience courts consider the claims rate, but they're

10   willing to have a claims rate of 20 percent, 15 percent,

11   something like that, because not everybody wants the money,

12   not everybody wants to fill it out, whatever.  That's

13   everybody -- that's everybody's prerogative.  But looking at

14   this settlement, Your Honor can't reasonable expect

15   10 percent.  How many -- and so the parties should explain

16   it for a particular plaintiff.  Why roll over?  Why -- what

17   he says he brings to this case, right, is these transmission

18   logs.  That's why this is a case.  But that's not enough,

19   that's not why it's being settled.

20           And they say, oh, there's this new *AmeriFactors*

21   decision, right, that came out?  And it's an issue that's

22   been percolating a long time.  A long time.  It's in

23   Mr. Biggerstaff's expert report in 2016.  He has this

24   opinion that every fax machine -- every machine people who

25   were receiving a fax was capable of printing it to paper or

1    whatever.  That's this *AmeriFactors* issue that's percolating

2    along slowly like the Solicited Fax rule, like the

3    Buccaneers, should the Buccaneers be liable for faxes sent

4    by somebody who lied to them and told them they had

5    permission, these kinds of things.  These issues were all

6    known in this case in 2016 and my firm and Mr. Wanca's firm

7    were litigating some of them together.  I argued the

8    Solicited Fax rule in the Eighth Circuit twice.  And one of

9    the judges said, wait, so you're saying if I call a pizza

10   place and say please fax me my menu and they don't put an

11   opt-out notice, that's $500?  And I said, yeah.  So not

12   surprisingly that regulation was stricken and that was the

13   entire basis for the class cert argument in this case.

14          One second, Your Honor.

15          THE COURT:  Take your time.

16          MR. BOCK:  I had a quote from a Court I wanted to

17   mention.  It was *St. Louis Heart vs. Vein Centers*, the

18   District of Missouri opinion, 2017, West Law 2861878.  And

19   the plaintiff who was represented by my firm and Mr. Wanca's

20   firm had argued that the Court could certify the class even

21   though we didn't have transmission logs and that we would

22   have some kind of proof at the end.  And the Court denied

23   that and said:  Whether someone can actually remember

24   receiving a specific junk fax sent many years earlier raises

25   credibility issues that's determined by a trier of fact

1  after testimony subject to cross-examination.

2       And sure, the Buccaneers here are willing to --

3  they're, you know, waiving that, they're waiving the right

4  to cross-examine somebody who says that, but that's because

5  they know people aren't gonna say it and they're willing to

6  pay a certain number of people who will -- you know, some

7  people will remember them, most people won't.  And then

8  there will be some people who got them, but don't remember

9  it, and they get nothing.  And there will be some people who

10  are willing to say they do remember them, but they don't.

11  Or maybe they even -- weren't even there at the time.  How

12  would they know?  The manager of the whatever department,

13  how does she know today that they got faxed back then, but

14  she's gonna sign this thing.  And Your Honor's being asked

15  to approve that as an adequate settlement.

16       So I'm -- I don't know any court that's approved a

17  settlement like this.  I don't now that Mr. Wanca's ever

18  even proposed one.  I have not proposed a settlement with

19  transmission logs where the people have to still say they

20  remember getting the fax and then we use the transmission

21  logs to figure out how much money they get and we use them

22  to come up with a notice plan.  But I can tell you that it's

23  not -- it's not a fair -- you know, this proposed order they

24  want you to sign says that you find it is a good one.  They

25  put in -- here's words that -- and I know Your Honor doesn't

1    just sign orders people put in front of you, you've not --

2    maybe you've drafted from whole cloth, but proposed orders

3    ask the Court to sign this, the agreement, quote, does not

4    delineate an unjustifiably burdensome claims process.

5         And it also makes reference to the terms of

6    settlement in similar cases, but nobody has said there's any

7    case like this and I'm saying that there isn't.  And if

8    Mr. Wanca's office has been settling cases with this claim

9    form and transmission logs, that would be an interesting

10   ting for him to tell the Court and then let you know how

11   many claims have been submitted.  Because what's the point

12   in going through this process if you know that the claims

13   process is deficient, people aren't going to submit claims

14   and somebody's to object to it, right?

15        Now, here's the interesting thing, in order to

16   object, if you want to object that this settlement is not

17   adequate because you got the notice, but you don't remember

18   receiving the faxes, Your Honor's order would disqualify

19   that person from objecting.  The only people who can object

20   are people who would submit, quote, a signed declaration

21   stating that he is a member of the settlement class and in

22   2009 and/or 2010 received one or more fax advertisements

23   sent by or on behalf of BTL.  That's Document 324-2 at

24   page 32.

25        So people who would want to object that that's not

1    fair, you're telling them they can't, you can only object if

2    you do remember ever receiving the faxes and you're willing

3    to sign your name to it.  They might as well sign the claim

4    form and lie or just forget about the whole thing.

5           So I think Your Honor should, you know, on behalf

6    of intervenors, we request that you require the parties to

7    change the claim form.  The Buccaneers have proposed a claim

8    form like this to us and we said no.  And we've been accused

9    of we weren't adequately representing the class because of

10   the statute of limitations.  We said no.

11          And in the record is this letter from Mr. Cohen,

12   Attorney Cohen, where he said do this by the end of the day

13   on June 16, 2016, something like that, June 16 I think, or

14   we're gonna -- that's it, we're canceling the negotiations,

15   we're gonna advise Mr. Wanca that we're out and that's it.

16   We don't want anybody claiming there was a reverse auction.

17   And one of the issues the claim form.  And this is all in

18   the record, but they were proposing a claim form that

19   required people to say they remembered receiving them and we

20   said no.  And they relented and then we settled with a claim

21   form that didn't require that.  So why don't they agree to

22   at least a claim form we have in the -- that they agreed to

23   before?

24          Now, the Buccaneers, I understand they don't want

25   to approve -- they want a -- they don't want a fair claim

1    form, frankly, their job is to not pay the class.  You know,

2    that's what they're arguing for.  Mr. Mester doesn't want

3    the Buccaneers to pay any money, he thinks they shouldn't

4    have to.  But they're gonna do this, they're gonna pay the

5    people who are willing to say they remember receiving faxes

6    in 2009 or 2010.  That's not -- that's not a fair resolution

7    of this controversy.

8           But the plaintiffs, you'll remember Cin-Q, they've

9    been running around for years talking about how great this

10   case is and how our settlement, as recently as a couple of

11   years ago before -- when we moved to have a settlement

12   conference, they were arguing it was an abomination.  Now

13   they have the same basic terms with a little bit of tweaking

14   for people who are willing to say they remember receiving

15   faxes, but nothing for the people who don't remember them,

16   which is what ours offered.  And it's got more in attorneys'

17   fees.

18          Well, if the Court will tell Mr. Wanca that he can

19   have a claim form that every defendant wants that says only

20   the people who promised they remember receiving these things

21   to get money and the rest -- and the fees are based on that

22   amount offered supposedly, the opportunity that they're

23   offering these people.  As long as the fees are a third of

24   the amount offered and everybody knows the claims rate is

25   going to be 5 percent, well, that's the standard for every

1    settlement going forward.  Maybe the Eleventh Circuit will

2    write an opinion saying that's a good way to settle these

3    things.  Of course, people to promise that they remember

4    receiving these things in the past in order to get any money

5    and that's -- we're gonna resolve all their claims.  The

6    release would release the claims of everybody regardless of

7    what they remember and only the people who can remember can

8    either submit a claim or object.

9            And now, fortunately, Mark, the intervenors, he

10   still has his paper documents, so I know that he remembers

11   receiving it, because he gave it to me.  And that's

12   Dr. Schwanky (ph), but I don't know -- I don't now about

13   other people.  One of the things that they -- Wanca's office

14   has used to justify the change between 2019-20 and the

15   settlement they agreed to, you know, they could have -- we

16   couldn't be involved in the settlement conference because

17   Mr. Good said they had an expert who said there was gonna be

18   a reverse auction or something.  So we proposed that Your

19   Honor could appoint Mr. Addison to be lead counsel for

20   purposes of settlement so that we could all participate in

21   that and I think Your Honor thought that we were all going

22   to participate in it, because it was our motion and you

23   granted it and it was because we proposed that and everybody

24   else eventually agreed that Mr. Addison would be lead

25   counsel.

1          Now, we weren't involved.  We were -- we talked to

2    Judge Sansone when she asked us to and did provide her

3    information about this reverse lookup thing that we had done

4    with three different -- you know, after KCC had a low rate,

5    we followed up with two other vendors.  We gave them that

6    because they were -- you know, that was something the

7    parties were interest in as to the fax notice.  But

8    otherwise, this settlement was negotiated -- although it's

9    based on what we did, we were not in the room at the time

10   and nobody asked us our thoughts on it.  And so we saw it in

11   the record as -- where they asked you to approve it.

12          I lost my train of thought, I'm sorry.

13          THE COURT:  All right.  Well, let me break it up

14   there and ask Mr. Addison first to respond to the issue.

15   And for the record, what we're talking about is the claims

16   form that's at Docket No. 324-1, then at Document No. -- the

17   proposed claim for by intervenor at Docket No. 332-3.  And

18   what's at issue is what's identified at step two, the

19   proposed claims form that reads:  Verify ownership of the

20   fax numbers listed above and receipt of a fax or faxes as

21   proposed by intervenor.  And the claim form that reads:

22   Verify ownership of the fax numbers listed above, period.

23          Then it lists below that the proposed claim form

24   between July 14th of 2009 and June 9th of 2010, I or my

25   company subscribed to the fax numbers identified above or

attached to this group of claim and faxes were received at

such number of numbers, including faxes from Tampa Bay

Buccaneers.

          The proposed form by intervenor reads:  Between

July 14, 2009, and July 9, 2010, I or my company subscribed

to the fax numbers identified above or attached to proof of

this claim, period.

          All right.  Mr. Addison, what's your response as

to the need to have the certification of receipt?

          MR. ADDISON:  Your Honor, we have the claim form

basically say that the person filing the claim form had the

fax number and that the fax number worked and they received

faxes during that time period.  They don't have to

necessarily say they received the Buccaneers' fax, they just

have to say that they were receiving faxes in the regular

course of business at that number during that time period.

          THE COURT:  But that's not what is proposed for

the Court's consideration based upon the agreement.

          MR. ADDISON:  They have to -- in two different

places, the second place where they're making certification

is that they have that fax number and they did receive

faxes, including faxes from the Buccaneers.  That just means

they were getting faxes in the regular course of business,

they don't necessarily have to remember that they saw a

Buccaneers fax during that time period.

 1              MR. HARA:  Your Honor, if I may, these -- the

 2  claim form expressly tells class members, quote, you do not

 3  need to state on the claim form how many faxes were received

 4  from BTL in 2009 and 2010.  They will be paid according to

 5  the electronic records obtained in this case.  So no one's

 6  asking them to swear to receiving a particular fax on a

 7  particular day.  Mr. Bock is just wrong about that.

 8              MR. ADDISON:  The settlement did require --

 9              THE COURT:  One moment.  Can you cite specifically

10  in the record what you're referring to in the claims form?

11              MR. ADDISON:  Yeah, that's Docket 324-1.  It's a

12  page ID 9434.

13              MR. HARA:  I believe he's referring to

14  paragraph C, Your Honor.

15              MR. ADDISON:  Yes, paragraph C, what is the

16  proposed settlement.

17              MR. HARA:  The notice, not the claim form itself?

18  You're talking about the notice?

19              MR. ADDISON:  Of the notice, yes.

20              THE COURT:  All right.  Which reads for the

21  record:  You do not need to state on the claim form how many

22  faxes you received from BTL in 2009 to 2010.  You will be

23  paid according to the electronic record obtained in this

24  case.  In the event the settlement fund is exhausted, these

25  amounts are subject to reduction.

1          Is that what you're referring to?

2          MR. ADDISON:  Correct.  That's the notice.  And

3    then the claim form itself says underneath the identifying

4    information, name, address, et cetera:  The settlement

5    administrator will verify that the fax number or numbers you

6    provide appear in the existing records related to the case

7    before approving the claim.

8          So they're being told that you're gonna be paid

9    based on what the records reflect.  They're not being asked

10   to say that they received a particular fax on a particular

11   day or even how many faxes they received.  The TTA

12   settlement did require claimants to do that.  But this one

13   does not.  And it is better in that regard, not worse, as

14   Mr. Bock would have the Court believe.

15         I would also like to point out that the

16   intervenors did not oppose preliminary approval.  They state

17   in the response to our motion that intervenors agree that

18   the Court should grant preliminary approval to the

19   settlement so that notice can be sent to the class so the

20   class can evaluate whether they like it or not.  So I don't

21   know what we're doing here.  There's been no opposition

22   filed to the motion for preliminary approval.

23         THE COURT:  All right.  Mr. Mester.

24         MR. MESTER:  Thank you, Your Honor.  I would just

25   reiterate this claim for was the result of extensive

 1   discussions with Judge Sansone.  It's not precisely what we

 2   would like, we would have liked it to be much more specific,

 3   but it certainly does take into account, as Your Honor aptly

 4   put it towards your history in the case and the fact that we

 5   certainly do not subscribe to the notion that those logs and

 6   the denervation of them and the authenticity of them are,

 7   you know, a fait accompli or that they're certainly as

 8   definitive as perhaps Mr. Bock thinks they are.  You'll

 9   probably remember, Your Honor, that where they came from and

10   what they represent is very much a disputed issue.  So this

11   is, to be sure, a compromise, this claim form, as is the

12   entity of the settlement agreement.

13          But I also do agree with Mr. Addison, because we

14   spent a lot of time on it, up to where the verification

15   occurs is designed to simply require the class member to

16   verify they had an operative fax machine at that time and

17   received faxes, including faxes from the Buccaneers, but

18   without regard to a specific date.  We had preferred to have

19   a specific date, but the compromise was as reflected here in

20   the claim form.

21          THE COURT:  All right.  Mr. Bock, anything else?

22   You want to respond?

23          MR. BOCK:  Yes.  So it sounds like the parties

24   don't oppose my proposed revisions to the claim form,

25   because Mr. Addison says, and Mr. Mester seems to read these

1    words to require only that you say that you had a fax number

2    and your machine was working back then.  Ignore the words

3    where it says, verify ownership of the fax numbers listed

4    above that and receipt of a fax or faxes.  You can delete

5    that, because the next sentence will talk about whether they

6    were -- whether their machine was working, right?  I or my

7    company subscribed to the number attached to this claim

8    form.

9           Now, you could leave in, and faxes were received,

10   but you should take out, including faxes from the Tampa Bay

11   Buccaneers, because when they say that they're not -- I

12   don't know why somebody would -- I don't know that Your

13   Honor would accept somebody's explanation that the reason

14   why they signed this under penalty of perjury is their

15   machine was working, not because they got faxes from the

16   Buccaneers, even though that's what it says.  You see what I

17   mean?  Why does it say that if it's not trying to require

18   people to verify receipt of a fax or faxes and to verify

19   faxes from the Tampa Bay Buccaneers?

20          How many -- you know, great, the parties are

21   willing to use the Biggerstaff thing for everything, the

22   notice, how do you resolve -- how much money do people get,

23   but not to -- for the basis qualification to make a claim.

24   Nobody has said to Your Honor why it's fair in this case to

25   require somebody to say they remember receiving faxes from

1    the Buccaneers, because it's not.  And I haven't -- and

2    Mr. Addison hasn't said he disagrees with me, he says I'm

3    reading these words wrong.  And Mr. Hara talked about their

4    notice --

5            THE COURT:  Mr. Bock, let me interrupt you, then.

6            MR. BOCK:  -- (inaudible) small amount of money

7    will be --

8            THE COURT:  Stop.  Let me interrupt you if I can.

9    What's the difference when you're indicating the Court

10   should not rely upon the memory of a claimant?  What's the

11   difference of someone remembering whether their fax was

12   working or not compared to who they received faxes from?

13           MR. BOCK:  Yeah, and so it's a different -- it's a

14   lesser standard, right?  And even less than that is just was

15   that your fax number at the time.  That's what we proposed.

16   You don't have to propose what kind of machine you had or

17   whether it was working or which faxes you received, you

18   don't need to have copies of them.  Defendants would like

19   that too, if you -- you had to have kept them, right?  But

20   verifying ownership of a fax number, I'm -- if somebody told

21   me that was -- that was their phone -- that's their phone

22   number, look, we're gonna send the notice to people on

23   purpose, right?  For defendants with a fax number, we're

24   gonna send it to the reverse lookup fax number, right?  And

25   it gets to the mailing address that somebody has already

1    told us the fax was there.  And what they're gonna do is

2    they're gonna confirm, yes, that was them.  Yes, we were

3    using that number or that was our number at that time.

4    People remember that.

5          And Your Honor can -- I think can recognize that

6    if somebody says they remember their phone number from ten

7    years ago, well, they're probably not lying.  But if they

8    remember something that happened on that day that's not so

9    remarkable, a piece of junk mail that showed up with other

10   junk mail that was screened by some guy who screens the

11   junk, right?  But now the CEO is remembering that they

12   received a piece of junk mail.  You know, he can remember

13   that because it's the Buccaneers, maybe he's a Bucs fan,

14   whatever, right?  Most people don't.  Most people can't.

15   And it's not fair to require them -- and here the parties

16   are saying, oh, we're not requiring that, because the notice

17   explains that how much money you get is based on these

18   records, but not whether you get any, not whether you

19   qualify.  And Your Honor's -- the proposed order says even

20   to object to this you have to say that you remember

21   receiving them.  That's an express requirement, right?  Now

22   I'm reading those words right, even if I'm misreading the

23   claim form.

24         But I have involved in, I don't know, a hundred of

25   these settlement, so I'm -- and I, frankly, drafted the

1    claim forms throughout the years, right?  I know what these

2    say, so I know what's going on.  And Mr. Wanca's office

3    knows what's going on, because they don't use a claim form

4    like this one has transmission records.  They refused to.

5    Courts have told them they can't.  And Mr. Mester knows what

6    he's doing, because he's putting it in there on purpose.  He

7    agreed with me that, you know, here, make these changes,

8    because it doesn't really change what's going on.  Great,

9    change it, then.  But send it out without those changes and

10   the claims rate will be low.

11          And you should be suspicious of the people, you

12   know, at the time.  Twenty-five percent of the people in the

13   Tampa Bay area remember receiving a fax in 2009?  That's a

14   good memory.  But you know it won't be even that high and

15   it's gonna be a lot less and you're gonna be told that the

16   fees should be this and that because the money that was made

17   available and it was due process and fraud protections and

18   everything else.  It's really just kind of -- kind of a

19   farce.  You know, if Wanca's office is saying, look, we

20   agreed to it because they were -- they insisted.  We just

21   couldn't get it done, we had to roll over.  But they're not

22   even saying that, they're not even justifying it that way.

23          Mr. Addison started out by saying we did require a

24   claim form, blah, blah, blah, about the future ownership of

25   the number, but then he kind of peeled off like that's what

1    this does.  That's not what this does, this isn't at all

2    like that.  This is the one that --

3              THE COURT:  Let me interrupt you again if I can.

4    I want to make sure I understand the purpose of the

5    argument, then.

6              Are you, then, objecting to the preliminary

7    approval?

8              MR. BOCK:  Well, yeah.  I mean, we're a party.  We

9    were supposed to be part of the settlement.  Your Honor must

10   have thought we were going to be.  They --

11             THE COURT:  My question is, then, because if

12   you're asking me to set aside the claim form that was

13   contemplated by the parties' agreement, so then that would

14   be to reject the settlement.  So --

15             MR. BOCK:  Well, if you look at -- if you look at

16   it like that.  Your Honor can also say, look, people, I'm

17   not doing this, I'm not gonna be the first guy putting his

18   name on one of these things -- this kind of a thing.  You

19   know right now the claims rate is gonna be low if people

20   read these things and answer them truthfully.

21             So Rule 23 requires them to explain this to Your

22   Honor in order to get preliminary approval and they haven't

23   done any of that.  They didn't even cite the rule.  And the

24   order makes you find to the contrary without setting up the

25   issues so that you can decide.  Maybe Your Honor would hear

1  Mr. Hara say, I expect a 3 percent claims rate, but, blah,

2  blah, blah, this is why it's justified.  Your Honor might

3  say, okay, well, I agree, 3 percent claims rate, that's

4  find, I'm not gonna be -- I'm not gonna think that's

5  suspect.  But if Your Honor has any thought that there could

6  be a 10 or 15 or 30 percent or anything like that claims

7  rate, I really -- I really don't think so.  And if I did

8  think so, I would have agreed to this kind of claim form the

9  other hundreds of times defendants always want people to say

10  this.  But I don't.  Neither does Mr. Wanca's office.

11        So, you know, they use *AmeriFactors* as a

12  justification, right?  It's in -- and, yes, I do object to

13  the settlement as proposed.  And what we said is it should

14  just be revised, Your Honor should require a revision.  That

15  happens all the time.  I've shown up for preliminary

16  approval and we're notice one way or on a card or whatever

17  and the judge is like, I want you to do this.  And the

18  implication is, or I'm not approving this and you can just

19  get back to it, right?  And so then everybody goes and talks

20  and we come back and the judge is -- that's when the judge

21  is really fulfilling his role as a fiduciary of the class.

22        I'm trying to do it a little bit, because I'm

23  here.  Usually there's nobody at preliminary approval who's

24  gonna tell Your Honor anything about like the expected

25  claims rate with a claim form like that, but that's why

51

1    we're here.

2         Now, the reason they used to justify this

3    settlement is this *AmeriFactors* thing, right, that comes out

4    that talks about what kind of fax machine are people

5    receiving faxes on.  That's the justification.  But their

6    claim form doesn't require that.  The claim form doesn't

7    say, in 2010, were you using this kind of fax machine, but

8    we don't know if we got Buccaneers faxes, because we all

9    know they're not gonna remember that.  It doesn't care what

10   kind of machine they received it on, but that's the entire

11   justification for changing from the settlement is an

12   abomination to it's awesome.  And we don't need (inaudible),

13   so --

14        THE COURT:  All right.  Mr. Addison, I'll come

15   back to you because that's how I'm construing his argument

16   now is an objection to the settlement and the preliminary

17   approval based upon the additional language in the form.  So

18   why should I go forward with the form as contemplated?

19        MR. ADDISON:  Well, Your Honor, first of all, he

20   didn't object to the settlement, as pointed out, his

21   response asked that the settlement be approved, but he

22   wanted you to revise the settlement agreement unilaterally

23   with respect to the point that he raised concerning their

24   participation on behalf of the TTA plaintiffs.  But if he's

25   making an objection now to approving -- preliminarily

1    approving the settlement, that's something different than

2    what's in the pleading that he filed as representing the

3    intervenors.

4            With respect to the need to say that you actually

5    received a fax from the Buccaneers in 2009 or 2010, our

6    claim form doesn't require that.  And the notice to the

7    class explains how compensation would be allocated to people

8    who had the fax number during that time period and all

9    they're required to say is that they were customarily

10   receiving faxes during that time period.  So I think

11   Mr. Bock is off on a tangent here.

12           And the *AmeriFactors* case that he mentions, that

13   was cited by the Buccaneers because the claim they were

14   making was that the faxes were sent by them by hiring a

15   third party who lied to them about whether or not the

16   class's participants opted in affirmatively to receive any

17   fax that he wanted to send to them.  So they hired him and

18   they paid him to send the faxes and they say he lied about

19   that.

20           Well, first of all, nobody would believe that

21   there is a class of people that have opted in to receive any

22   fax that somebody wanted to send them.  And secondly, they

23   knew that what they were doing was wrong, because I sued

24   them in August of 2009 after the faxes were sent in July and

25   August of 2009 and they went ahead and sent faxes out again

53

1    in May and June of 2010.  So even if he lied to them going

2    forward in July and August of 2009, they certainly knew

3    better by 2010 and the *AmeriFactors* decision wouldn't

4    necessarily befall what happened in 2010.

5         But *AmeriFactors* seems to say that there's some

6    excuse and the Buccaneers also sought from the FCC a ruling

7    with respect to whether or not somebody could lie to them

8    and, therefore, excuse their conduct in sending faxes to

9    people who don't want to receive them and the FCC made that

10   determination that if they are lied to that they get a pass

11   and they don't have liability unless they know better.  And

12   of course, our position was they knew better.  So that

13   decision was kind of a wash as far as we're concerned.  But

14   it certainly was raised by the Buccaneers as a defense to

15   this entire case.  And that's one of the things that got

16   settled in this (inaudible).

17        So I think Mr. Bock is making much more of the

18   claim form that we've negotiated over and agreed with Judge

19   Sansone about in order to get this settlement and our view

20   is it's an appropriate claim form and the notice is

21   certainly going to inform the class members as to how this

22   process will work.

23        THE COURT:  Really, as I see it, and he's made

24   multiple arguments, but his primary focus is on -- and by

25   primary, the crux of his objection, although in essence he

1   is still objecting to any inclusion of receipt of a fax.

2   But the one argument that he's made repeatedly is the

3   language that reads, including faxes from the Tampa Bay

4   Buccaneers.

5           If what we're looking to verify is just simply

6   that the claimant subscribes to the particular fax number

7   and that they are certifying that the fax machine was

8   operating and was receiving faxes at the relevant time

9   period, what is the need for the additional burden given the

10  information available on the record for someone to certify

11  based upon recall that they received facsimiles from the

12  Tampa Bay Buccaneers?

13          UNIDENTIFIED SPEAKER:  Your Honor, may I be heard.

14          THE COURT:  You bet.

15          MR. MESTER:  That was an issue that we spent a

16  great deal of time on.  The concern is this and it

17  ironically enough relates to that second declaratory ruling

18  that Mr. Addison referred to and the fact that we had a

19  world class broadcaster here.  The derivation of those laws

20  and legitimacy of those laws was very much an open issue and

21  we have a sincere concern that none of these faxes or a

22  substantial portion of these faxes were never sent, and that

23  instead, what the fax broadcaster did, which you'll recall

24  was somebody living in a basement in Texas, unbeknownst to

25  us, was compiled a list of fax numbers which was readily

1  available and then said, okay, here's what I sent out to and

2  please pay me the $20,000.  So we needed some indicia, some

3  indication that someone who's making a claim for a fairly

4  substantial amount of money actually did get a fax from the

5  Buccaneers, because we're not at all sure that that

6  occurred.

7         And that's not just some, you know, theoretical

8  possibility.  As you probably also recall, Your Honor, there

9  were numbers that were supplied by the Buccaneers to which

10  faxes were supposed to be sent as a test of the proposition

11  to make sure that the fax was -- the fax list was used

12  properly.  And those weren't received by the Buccaneers.

13         So we have lots of reasons to believe --

14         THE COURT:  Say that one more time, Mr. Mester.

15  You broke up on me there.

16         MR. MESTER:  I apologize, Your Honor.

17         THE COURT:  No, I think it's my computer.  I

18  apologize.

19         MR. MESTER:  There were numbers supplied by the

20  Buccaneers to the fax broadcaster that were a test to make

21  sure that the fax broadcast was being sent out properly and

22  those numbers never received faxes.  So there's a clear

23  indication that things weren't going as they suggest on the

24  logs that they're relying upon.  And that's the reason why

25  we need some indication for someone claiming for hundreds of

1    dollars that they received a fax from the Buccaneers.

2            But again, we wanted something much more specific

3    saying I received a fax on a certain date and the compromise

4    we reached with Judge Sansone was what's requested here.

5    But again, this was taking into account the particular

6    nature of this case, which is no doubt unusual.  But to

7    suggest that those logs are somehow definitive is really

8    not -- is not accurate.

9            THE COURT:  Mr. Bock, anything else you want to

10   put on the record.

11           MR. BOCK:  Yes, Your Honor.  So our response brief

12   mentioned this claim form issue, because nobody else had

13   mentioned it, right?  I noticed it.  And their motion for a

14   preliminary rule doesn't say that anybody has to say they

15   remember receiving them, it says that they don't.  Okay?  It

16   says that they have to just say that they may have received

17   them.  That's what their motion says.  I looked through the

18   documents and looked through the claim form, because in a

19   claims-made settlement, the claim form is the big thing,

20   right?  Mr. Mester knows that he's gonna pay based on how

21   many of those are sent back in.

22           Now, our brief said, hey, there's this issue, and

23   then their reply didn't -- just kind of ignored it.  Okay?

24   So I took it upon myself to understand that is what they're

25   doing here.  And they're not telling you.  And I think

```
 1   there's -- you know, frankly, I think you're getting --
 2   you're not getting frank conversation about this claim form.
 3   When people see those words and they say, no, that's not
 4   what it's doing, you know.  The verified ownership of the
 5   fax number and that the machine was working is different
 6   than receipt of a fax or faxes, you know.  It sounds like
 7   you have to receive a number of these faxes from the
 8   Buccaneers.  It's about faxes.  Why aren't people being told
 9   you don't need to remember this?  Because we put that in our
10   notices and we try to get it on our claim forms and these
11   are things you fight with defendants about, is how --
12   Mr. Mester says there's some compromise going on.  You need
13   this claim form to have the penalties of perjury, because
14   they're not sure about how good the records are.
15           The reason there's a claims process is they're
16   not -- they don't know about the records.  It's the
17   claims-made settlement.  Only the people who identify
18   themselves as in the class somehow are gonna get any money.
19   Okay?
20           THE COURT:  Well, that's the whole issue; is it
21   not?  How they identify them.  So what Mr. Mester is
22   suggesting is that you cannot just simply rely upon the
23   records themselves, which I think the record is overwhelming
24   with that issue, whether you can rely upon the records
25   themselves given that there was a rogue sender.  So if you
```

1    cannot rely on the records themselves, then what is the

2    indicia of reliability in the claims form that should be

3    relied upon as to whether someone actually was an

4    appropriate class member?

5              MR. BOCK:  Yeah.  Well, they are relying on the

6    numbers to decide how much you get.  So if you're willing to

7    say you remember a fax in 2009 -- maybe when you weren't

8    even working there, who knows -- then they're gonna pay you

9    for five or whatever.  They're gonna use the records.

10   They're not ignoring the records, they're using the records

11   for the notice and they're using the records for resolving

12   how much money people get and --

13             THE COURT:  But that might be the threshold of

14   what they're indicating, that some -- even though there

15   being some records that indicate a particular number

16   received a fax, there's evidence in the record that suggests

17   that is not true.  But then once the claimant asserts, yes,

18   I've received faxes and I recall receiving faxes from the

19   Buccaneers, then what was contemplated by the settlement is

20   then the records would provide for how many faxes that would

21   have been received.

22             MR. BOCK:  I'm not aware of any issue that there

23   was false positives, that those records show that somebody

24   got four faxes and they didn't.  That's not what we're

25   talking -- I haven't heard that, so --

1            I did hear Mr. Addison say that the settlement --

2     that this claim form was negotiated.  But Your Honor can see

3     in the records that this claim form is worse than the one we

4     rejected.  So where did they start?  They might have started

5     at you have to have copies of the faxes.  Well, why wouldn't

6     that be reasonable?  Why would Mr. Mester be willing to

7     listen to people's memory?  Why not require them to have

8     copies?  If it's so important to you, you've surely kept

9     copies of these faxes, right?  Because that would be under

10    the same -- it's just another step in the logic of requiring

11    people to remember receiving and then we'll pay them.  But

12    why not remember that they have it, why would we believe

13    their memory?

14            And what about the people who don't remember, why

15    don't they get money?  They still got the fax.  You know,

16    people got the fax, they just don't remember it.

17            THE COURT:  Well, how do we know that?

18            MR. BOCK:  Because there's the Biggerstaff

19    transmission log.  And why isn't -- why aren't the

20    Buccaneers paying 100 cents on the dollar?  Because of these

21    various compromises.  One of the compromises was the

22    claims-made process where they're gonna get the money back

23    that isn't claimed, right?  And then if you make the claims

24    process unfair and arduous, nobody's -- people aren't gonna

25    be able to do it.  You know, maybe I'll be wrong, maybe --

1    maybe lots of people in the Tampa Bay area will say they

2    did, but I don't see evidence that this claim form was

3    negotiated.  It's not mentioned, right?  I'm the only one

4    who mentioned this in my brief.  Nobody's explained to you

5    why they have agreed to this.  They've either said that it's

6    not fair or it's explained if somebody reads a six-page

7    notice, then they'll understand that when they're

8    certifying, including faxes from the Tampa Bay Buccaneers,

9    that's not really what it means --

10         THE COURT:  That's right.  I agree with you.  I've

11   heard multiple times by everyone that they spent a long time

12   with Judge Sansone in negotiating this very form.  Are you

13   asking to articulate the iterations of their --

14         MR. BOCK:  Yeah.  Yeah.  Yeah, they paid sticker

15   price, Your Honor, don't tell me you negotiated the price of

16   a car and you paid the sticker price.  Where does the guy

17   start?  Where do the Buccaneers start and where do they --

18   what did they negotiate?  How much would the Bucs agree to

19   cross those words off and we'll reduce the attorneys' fees

20   by a couple million bucks?  Will they agree to that?  Is

21   that the negotiation that happened?  The fees should be

22   2,000,000 higher and we'll put that on there?

23         If some court says that this claim form is

24   appropriate when there's transmission, logs but the

25   defendant says maybe they're not good enough?  They say that

1   in every case.

2          If you do a West Law search of Mr. Biggerstaff,

3   you're gonna find courts talking about can we rely on his

4   opinion about this very thing.  It's an issue the jury will

5   decide or Judge Easterbrook said in case *Holzman v. Tursland*

6   (ph), he said, nobody needs to remember receiving these

7   faxes, because the record show that they were received.

8   This is the same kind of thing, somebody just testifies

9   about how good the machine was working when they were

10  sending faxes and then that was -- that good enough.

11         But there's plenty --

12         THE COURT:  All right.  One moment.

13         MR. BOCK:  -- of compromise here.

14         THE COURT:  One moment.

15         MR. BOCK:  There's plenty of compromise.

16         THE COURT:  Mr. Mester, why don't you address the

17  transmission logs then and your argument.

18         MR. MESTER:  Your Honor, I'd be happy to.  It's an

19  extensive record, though.  There's ample evidence that the

20  derivation of the laws is very much an open issue.  This is

21  not a typical fax case.  Mr. Bock is correct, in a typical

22  fax case there isn't much dispute about the laws.  But here

23  there's great dispute.  Your Honor will recall we don't even

24  know who sent the fax, the rogue fax broadcast with which

25  the Buccaneers contracted was not the entity, as it turned

1   out, that sent the fax.  That rogue fax broadcaster contract

2   with other entities who had destroyed or lost or misplaced

3   the evidence.  And these logs were generated through a

4   variety of means.  It's not remotely typical and there's

5   very, very ample evidence to suggest that these logs are

6   riddled with errors, if not in some instances, completely

7   fabricated, again, just to justify getting a fee.  Because

8   the Buccaneers paid based upon the log, how many numbers are

9   on the log and they paid based upon that.

10          And so it would be an easy matter for someone who

11  is intent on fraud, I think there's little doubt that this

12  fax broadcaster was, to simply get a list of fax numbers in

13  the Tampa area and say, yeah, sure, I sent faxes to all

14  these numbers.  But again, the Buccaneers put numbers on the

15  list of fax machines that they own and the faxes were not

16  received.  So we have good reason to believe that a

17  substantial number, if not all, of various broadcasts were

18  not actually transmitted.  And this is the compromise to

19  address that.

20          Mr. Bock is right, I'd prefer to have every class

21  member have to show a fax, but that was not accepted through

22  the compromise process.  And it was an extensive process, we

23  negotiated this at length.  And this is not at all where we

24  started.  No one paid sticker price, I can assure Your

25  Honor.

```
 1              MR. BOCK:  Class members.  But, Your Honor, this
 2    is a -- nothing about this data has changed in the years
 3    between our settlement and this one.  (Inaudible) law or
 4    nothing with Biggerstaff or anything else.  And Mr. Mester
 5    and his client agreed to the claim form we had that didn't
 6    have this requirement with all those same things.  They
 7    didn't find out more things -- I haven't heard today anyway
 8    that they found out more things about these records.
 9              The idea that they submitted some numbers that
10    didn't get faxes just tells me that whatever numbers they
11    were submitting the guy didn't use those, they bought a list
12    somewhere and faxed it all.  Why would they get -- what
13    numbers did they get from the Buccaneers?  Well, they didn't
14    care and they didn't use them.  That doesn't prove that the
15    people who did get them didn't get them because somebody
16    like the owner's friend didn't get it when his number was
17    scribbled on a -- on a note to the fax -- Mr. Clemens (ph),
18    whatever his name is.
19              There were negotiations, but -- the negotiation,
20    frankly, was then that we caved on the claim form in this
21    case and we didn't.  So if, Your Honor, you know, if it
22    turns out that that matters, that's something you'll think
23    about I guess, is does the claim form affect the claims
24    rate.  Because we said we're canceling, we're out, we're
25    telling Wanca that we're not even negotiating anymore if you
```

1   don't give in on that claim form.  Now, they didn't say

2   that, obviously.  So --

3           MR. MESTER:  Your Honor?

4           THE COURT:  Go ahead, Mr. Mester.

5           MR. BOCK:  -- they got a higher fee and --

6           THE COURT:  One moment, Mr. Bock.

7           MR. BOCK:  -- (inaudible) and a little more money.

8           THE COURT:  One moment.

9           MR. BOCK:  Thank you, Your Honor.  I appreciate

10  you're calling on me.

11          MR. MESTER:  Your Honor, I'll be very brief.  Two

12  points.

13          First of all, we did learn some new things.  As

14  Your Honor will recall, the expert that was retained by our

15  predecessor counsel, Mr. Canfield, had health issues, and so

16  we retained a new expert to analyze the data and we learned

17  a great deal more, all of which indicates that this is even

18  less reliable than we originally thought it was.  That's the

19  first point.

20          The second point, Your Honor, is the case has

21  materially changed and I think we've conflated the two

22  declaratory rulings, but they're both significant.

23  *AmeriFactors* addresses one issue and, in our view, makes it

24  much less likely that a contested class would be certified,

25  which would obviously impact the value of the case.  The

1    second declaratory ruling was the one that's referred to in

2    the preliminary approval papers, the *Akin Dump* declaratory

3    ruling.  That directly addresses the question of fax

4    broad -- rogue fax broadcasters and what should be done.

5           So I think the suggestion by Mr. Bock that we're

6    settling the same case today that we tried to settle with

7    them several years ago is just not borne out by the facts.

8    This is a different case based upon intervening case law and

9    based upon, moreover, information that we learned through a

10   new expert, who is quite a bit more capable than the

11   original expert.

12          THE COURT:  All right.  Mr. Hara or Mr. Good, if

13   you want to add anything on the issue, you may.

14          MR. HARA:  I'll let Mr. Good weigh in if he has

15   anything.

16          MR. GOOD:  Unless Your Honor has any questions, I

17   have nothing to add.

18          THE COURT:  So, Mr. Good, what I would like to

19   hear, though, is what was contemplated in the negotiations

20   to get to the point to include faxes from the Tampa Bay

21   Buccaneers.

22          MR. GOOD:  Thank you, Your Honor.  I would like to

23   address that.

24          Mr. Addison, would you like to address that?

25          MR. ADDISON:  Yes.  I was participating in the

1   mediation with Judge Sansone and we never had a fact-to-face

2   meeting because we did this in light of the COVID-19

3   protocol.  And we had many, many, many telephone

4   conversations, I with Judge Sansone, who then would confer

5   with Mr. Mester and Mr. Collins, and then come back to me

6   and we would basically go back and forth with Judge Sansone.

7   And we did the drafting process and the claim form was part

8   of that drafting process.  And the claim form that we came

9   up is a result of those negotiations back and forth.

10          I'm not able to say how much weight Mr. Mester put

11  on any one issue or any one theory or any one word in the

12  claim form, but I am able to say the claim form was the

13  result of all of those discussions and negotiations with the

14  intermediary being Judge Sansone as the mediator.  So I

15  don't think the process should be criticized.  And we're not

16  supposed to be discussing what happened in the mediation,

17  that's supposed to be privileged.  So I'm not sure what else

18  to say except that we think it's a fair settlement and an

19  appropriate claim form and notice is specific and people

20  will be able to judge for themselves whether they want to

21  make a claim.

22          MR. GOOD:  And, Your Honor, if I might add to

23  that, I'd like to contract what we are proposing versus what

24  you had approved in the TTA settlement that was never

25  disseminated in direct contradiction to Your Honor's order

1    in the TTA settlement.  Your Honor ordered class notice to

2    be disseminated.  In fact, it was never disseminated.  To my

3    knowledge, Your Honor has never asked why it was not

4    disseminated.  Today might be an interesting time for Your

5    Honor to ask why it was never disseminated.

6              In that class notice, Your Honor had approved a

7    requirement for claimants to state the number of faxes they

8    received under penalty of perjury.  For example, if somebody

9    claims they received one fax when the fax transmission log

10   said they received a different quantity of faxes, that

11   statement would be made under penalty of perjury under the

12   TTA proposed settlement and claim forms that Your Honor

13   ordered disseminated in the TTA settlement.  It was never

14   disseminated.  And we never got to know what the total

15   quantity of claimants would have been in the TTA settlement,

16   because nobody followed Your Honor's order.

17             I think it's worth asking the question, why wasn't

18   that notice ever sent out?  Your Honor has the opportunity

19   right now to ask that question and get that answer.

20             THE COURT:  I take it by your request you know the

21   answer, Mr. Good.

22             MR. GOOD:  I have a very, very, very good educated

23   guess, Your Honor, but, no, I don't know the answer.

24             THE COURT:  So what is the relevancy of it today?

25             MR. GOOD:  Because the claims rate would have been

```
 1    zero.

 2            MR. MESTER:  Your Honor, Mr. Hara and Mr. Good

 3    have both said what the claims were requested in TTA.  It's

 4    Document 18-1.  It doesn't -- it doesn't have the

 5    requirements that they've identified.

 6            And you know, Your Honor, why the notice wasn't

 7    sent, because you had a couple of status conferences to find

 8    out.  And in the last one before the Eleventh Circuit rule,

 9    you heard that we were arguing that we should do more

10    reverse lookups, that their initial hits weren't high

11    enough.  We didn't want to only send notice by mail and only

12    to 42 percent of the people.  Let's get the number up.  We

13    argued this with the defendant, it's in the record, Your

14    Honor heard it.  I don't think there's a transcript, but the

15    reason notice didn't go out is because the parties hadn't

16    reached agreement on who they were sending notice to.  We

17    were still saying do a fax notice and you said no at that

18    point.

19            So, yeah, I apologize that we didn't comply with

20    Your Honor's order, but I believe you knew it at the time

21    and the reason we didn't comply would have been reasons that

22    you would have accepted, that the plaintiff's counsel was

23    arguing with the defendant about how effective the notice

24    program was gonna be, how wide the scope of the internet

25    notice would be.
```

1          We had already negotiated a claim form before we

2    came to court.  And I do remember what is negotiated about a

3    claim form in a claims-made settlement, because that's a big

4    component of the claims-made settlement.  That's why when I

5    sent a term sheet to the defendant and when Mr. Wanca's

6    office sends a term sheet to defendants using the one I

7    drafted, frankly, it attaches the claim form.  Two-page term

8    sheet with an attached claim form.  Why is the claim form

9    attached?  Because afterwards, after you agree to the other

10   principal terms, then you find out the defendant is holding

11   out for a claims form that requires this kind of thing.

12          So you put that up in the front and you hold on,

13   you never give up on that.  And if you've made tweaks to the

14   claim form, you've made sure they're justified and we make

15   the Judge to decide.  You know, I'm surprised Mr. Wanca's

16   office isn't -- didn't table this issue with the other two,

17   with the fax and the publication.

18          Why didn't they ask Your Honor to decide the claim

19   form and then you could have heard their arguments about why

20   they would never agree to such a thing and Mr. Mester could

21   have given the good argument he's given today about why he

22   insisted on it, which, you know, he doesn't want to pay

23   anything, so he insists on this really tight profit, but

24   their claims form here they just caved on it.  They don't

25   remember why and they're not arguing to you that they did.

1    Then they said that I caved on it.  You know what's

2    interesting about that is I'm pretty sure -- I have to look

3    through the extensive record, I'm pretty sure they objected

4    to our claim form making the same argument about the words

5    that they're making today.  And you can read the words and

6    see that they're wrong, Document 18-1.

7              But the fact that they knew to argue that our

8    claim form was bad because it required the people to

9    remember something tells you that when they went into

10   mediation in this case they knew that was an issue.  It was

11   an issue they raised.  So how did they resolve it?  They

12   changed, what did the class get?  The class got the

13   treatment of you're not in the room, nobody's watching out

14   for you.  They got a settlement for people who say they

15   remember the faxes a little bit and it's better for them

16   because they get more attorneys' fees and otherwise the

17   settlement's worse in every way and an abomination, you

18   know, if you use Mr. Good's words.

19             THE COURT:  Mr. Bock, outside of this issue, any

20   other issues you want to raise?

21             MR. BOCK:  I think I did have one thing, Your

22   Honor.

23             No.  Thank you, Your Honor, for letting me say a

24   few words today.

25             THE COURT:  Mr. Piper, did you want to put

1    anything on the record?

2          MR. PIPER:  Well, I'll just make one observation,

3    which is that if someone is not in the Biggerstaff record,

4    they will not get notice and will not be paid a claim.  So

5    if Mr. Mester is so insistent that all that matters is

6    whether they remember getting a fax, then that should be all

7    they have to certify and anybody can come in and say I

8    remember getting these faxes.  But he would never do that,

9    because he knows he used the record and there is no evidence

10   of anybody in the record that did not get a fax.  And in

11   fact, several people have come forward with here's my fax

12   and, lo and behold, they are in the record.

13         THE COURT:  So, Mr. Piper, you're raising

14   something I think that Mr. Mester has stated on the record

15   that is entire contradiction to that.  So what am I missing

16   then?  Because that's how I appreciated the record, is given

17   the rogue broadcaster, there is evidence in this record that

18   indicates not all transmissions actually occurred.  You're

19   stating definite to the contrary, then?

20         MR. PIPER:  No, he -- what he's claiming as the

21   basis is there may have been numbers that (inaudible) were

22   going to get, faxes that weren't sent out.  But there is no

23   evidence that the records have false positives.  There's no

24   evidence that Biggerstaff says this phone number got three

25   faxes, but there's conclusive evidence that that did not

1    happen.  So there are no false positives.  There may be

2    people that should have been sent faxes that aren't in the

3    record, but there are no false positives in the record.

4              THE COURT:  All right.  Mr. Mester, you want to

5    address that point?

6              MR. MESTER:  Your Honor, that's not correct.

7    There are numbers on the list to which faxes were allegedly

8    sent that were not sent, because the lists were what were

9    used based upon the billing to the Buccaneers and the

10   Buccaneers didn't get back -- I don't -- it's a voluminous

11   record to be fair to Mr. Piper, but I don't believe that's

12   correct.  There are, as he described them -- if he's

13   correct, we don't know how many, we just know of the ones we

14   know.  But there's enough to know that there's reasons to

15   believe that it could be much more considerable in term of

16   the actual numbers than we might know.  But we just don't

17   know.

18             THE COURT:  All right.  Mr. Piper, anything else?

19             MR. PIPER:  Well, if -- they would have to show

20   that there's actually that much as Mr. Mester asserted and I

21   don't believe that's accurate.

22             THE COURT:  All right.  Mr. Addison, before I

23   conclude, do you have anything else you want to put on the

24   record?

25             MR. ADDISON:  No, sir.

```
 1                    THE COURT:  Mr. Good?

 2                    MR. GOOD:  No, Your Honor.

 3                    THE COURT:  All right.  Mr. Varner, do you have

 4       anything you want to add.

 5                    MR. VARNER:  No, sir, Mr. Mester has it covered.

 6                    THE COURT:  All right.  Mr. Collins?

 7                    MR. COLLINS:  I agree with that, Your Honor.

 8       Thank you.

 9                    THE COURT:  All right.  Mr. Bock, anything else?

10                    MR. BOCK:  No, Your Honor.  Thank you for the

11       opportunity.

12                    THE COURT:  All right.  Mr. Mester, anything else?

13                    MR. MESTER:  No, Your Honor.

14                    THE COURT:  All right.  I appreciate your-all's

15       time, I know that it's been arduous for you all.

16                    Mr. Bock, I've seriously contemplated your

17       argument, I also have thoroughly reviewed your pleadings and

18       appreciate your position.  I'm going to go forward and give

19       an order.  My order will detail my findings as to why I find

20       additional purposes of preliminary approval and it's

21       appropriate to go forward at this time.

22                    In essence, I want to emphasize the point of

23       preliminary.  This is the settlement as contemplated by the

24       parties.  I find that the settlement was done at a -- on a

25       good-faith basis, given all the issues, not as the record
```

1    clearly demonstrates a linear case, that is one that can be

2    easily resolved.  So I am confident that there was thorough

3    discretion about the settlement form and compromises by both

4    sides.

5              Given what was even further stated on the record

6    today, it is abundantly clear to me that the parties made

7    serious considerations and concessions in contemplating the

8    settlement form and thoroughly addressed the issues.

9              I am satisfied -- and if I'm wrong, Mr. Piper, at

10   least to your last contention, if you disagree with this,

11   then I would like to be enlightened on the record, that

12   there has been revealed on this record real concern about

13   the broadcaster.  I don't think anyone disputes it was a

14   rogue broadcaster, which unfortunately involved to

15   reminiscent to all of us where I may have made a mistake in

16   this case early on by putting the issue and try and define

17   what is meant by a sender.  It was one of the various first

18   stages in this case for that very reason, given that we had

19   a rogue broadcaster that was identified in this case.

20             The essence of that calls into question, then, the

21   reliability of just the records themselves, which is why I

22   appreciate that there was a compromise given to at least

23   have some verification as to whether faxes were received by

24   the Bucs.  I am fully aware, and Mr. Bock is a hundred

25   percent accurate in his argument when he highlights this

1   point, it gives some concern as to whether that will chill

2   the results of those that make claims.  That's well within

3   my purview to consider on the final settlement if it is

4   clear that there is really de minimus numbers demonstrating

5   that there was participation in the class, that's something

6   I can reconsider.

7           But given what is before me now, I am going to be

8   entering an order adopting the preliminary approving the

9   class.

10          So I would like for you-all, as I suggested

11  earlier, to contemplate and provide me the dates at issue.

12  There's no time period, I'll leave it to your time period.

13  The sooner you get it to me, I will tell you within a very

14  short order.  I will then be able to put out the preliminary

15  approval.  So you should be prepared to begin the process as

16  soon as you've provided those dates to me.

17          As well as you'll need to provide your stipulation

18  and request to approve Effect as the claims administrator.

19          All right.  I thank you-all for your time.  We'll

20  be adjourned.

21                  (Proceedings concluded.)

22

23

24

25

```
1    UNITED STATES DISTRICT COURT )
                                  )
2    MIDDLE DISTRICT OF FLORIDA   )

3
                 REPORTER TRANSCRIPT CERTIFICATE
4
          I, Howard W. Jones, Official Court Reporter for the
5    United States District Court, Middle District of Florida,
     certify, pursuant to Section 753, Title 28, United States
6    Code, that the foregoing is a true and correct transcription
     of the stenographic notes taken by the undersigned in the
7    above-entitled matter (Pages 1 through 75 inclusive) and
     that the transcript page format is in conformance with the
8    regulations of the Judicial Conference of the United States
     of America.

9

10                             /s    Howard W. Jones
                                   _____
11                                 Howard W. Jones, RDR, RMR, FCRR
                                   Official Court Reporter
12                                 United States District Court
                                   Middle District of Florida
13                                 Tampa Division
                                   Date:  2-6-2022
14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MR. ADDISON: [22]  5/12 7/18 10/10 11/11 11/16 13/6 16/20 19/10 20/14 20/24 22/12 26/13 41/10 41/19 42/8 42/11 42/15 42/19 43/2 51/19 65/25 72/25

MR. BOCK: [23] 6/4 26/19 27/9 28/10 34/16 44/23 46/6 46/13 49/8 49/15 56/11 58/5 58/22 59/18 60/14 61/13 61/15 63/1 64/5 64/7 64/9 70/21 73/10

MR. COLLINS: [2]  5/23 73/7

MR. GOOD: [12] 5/17 16/2 16/23 18/4 21/2 26/15 65/16 65/22 66/22 67/22 67/25 73/2

MR. HARA: [5] 5/15 42/1 42/13 42/17 65/14

MR. MESTER: [25]  5/20 8/1 9/15 11/12 11/17 11/23

16/5 22/4 23/14 23/16 24/25 26/17 43/24 54/15 55/16 55/19 61/18 64/3 64/11 68/2 72/6 73/13

MR. PIPER: [5] 6/6 6/9 71/2 71/20 72/19

MR. VARNER: [2] 5/25 73/5

THE COURT: [85]

THE DEPUTY CLERK: [1]  5/5 UNIDENTIFIED SPEAKER: [6] 24/5 24/8 24/13 24/23 25/18 54/13

---

**$**

$20,000 [1]  55/2
$500 [1]  34/11

**'**

'10 [2]  30/15 30/19

**/**

/s [1]  76/10

**1**

10 [2]  3/5 50/6
10 percent [1]

100 [3]  2/13 15/21 59/20
1000 [1]  2/15
11 [1]  3/6
13 [2]  3/7 7/7
1304 [1]  2/3
134 [1]  2/15
14 [12]  3/8 19/3 19/6 19/21 19/23 20/11 20/16 20/18 21/2 21/21 22/5 41/5
14th [3]  7/12 9/10 40/24
15 [3]  19/3 33/10 50/6
1500 [1]  2/7
1592 [1]  1/7
15A [1]  2/21
16 [4]  3/9 3/10 37/13 37/13
18-1 [2]  68/4 70/6
19 [2]  3/11 66/2

**2**

2,000,000 [1]  60/22
2-6-2022 [1]  76/13
20 [3]  1/7 33/10 39/14
2000 [2]  2/4 26/23
2009 [22]  7/4 7/10 7/13 7/21 7/22 9/4

## 2

2009... [16]  9/10
14/16 30/15 30/19
36/22 38/6 40/24
41/5 42/4 42/22
48/13 52/5 52/24
52/25 53/2 58/7
2010 [18]  7/4 7/10
7/13 7/23 9/4 9/10
10/14 36/22 38/6
40/24 41/5 42/4
42/22 51/7 52/5
53/1 53/3 53/4
2016 [3]  33/23 34/6
37/13
2017 [1]  34/18
2018 [2]  26/24
30/25
2019-20 [1]  39/14
2022 [3]  1/7 18/12
76/13
21 [3]  3/12 21/21
22/13
22 [1]  3/13
23 [6]  26/23 30/25
31/4 31/12 31/13
49/21
25 [2]  19/5 20/7
26 [1]  3/14
28 [1]  76/5
2800 [1]  2/10
2861878 [1]  34/18

## 3

3,430 [1]  9/8
30 [5]  19/15 24/16
27/21 32/13 50/6
305/239-8726 [1]
2/20
312/658-5500 [1]
2/16
312/876-7700 [1]
2/11
32 [1]  36/24
324 [3]  6/12 7/6
8/25
324-1 [2]  40/16
42/11
324-2 [1]  36/23
330 [1]  2/10
33140 [1]  2/19
332-3 [1]  40/17
332-4 [1]  32/13
33602 [2]  2/13 2/22
33604 [1]  2/3
343,122 [1]  9/9
35 [1]  2/19
3701 [1]  2/6
3:37 [1]  1/8

## 4

41 [2]  3/15 3/16
4100 [1]  2/13
41st [1]  2/19

43 [1]  3/17
44 [1]  3/18
49 [1]  9/1

## 5

5.5 percent [1]
14/15
50 [3]  13/25 14/1
24/18
500 [1]  2/6
5024 [1]  2/22
51 [1]  3/19
54 [1]  3/20
5500 [1]  2/16
56 [1]  3/21

## 6

60 [1]  14/15
60008 [1]  2/7
60602 [1]  2/16
60611 [1]  2/10
61 [1]  3/22
63 [1]  3/23
64 [1]  3/24
65 [2]  4/3 4/4
68 [1]  4/5
6th [2]  18/12 24/4

## 7

70 [1]  14/15
71 [1]  4/6
72 [1]  4/7
75 [1]  76/7

**7**

753 [1]  76/5
76 [1]  4/8
7700 [1]  2/11

**8**

8.9 [1]  27/12
801 [1]  2/21
813/223-2000 [1]  2/4
813/301-5024 [1]  2/22
820 [1]  2/19
847/368-1500 [1]  2/7
8726 [1]  2/20
8:13-cv-1592 [1]  1/7
8:13-cv-1592-AEP [1]  5/7

**9**

9434 [1]  42/12
9th [3]  7/13 9/10 40/24

**A**

abiding [1]  24/14
able [9]  13/23 25/7 25/9 31/12 59/25 66/10 66/12 66/20 75/14
abomination [3]

about [58]  7/2 7/15 9/8 9/24 11/3 12/16 14/7 14/11 14/18 16/3 16/4 16/11 16/11 17/17 17/19 18/11 20/17 26/9 27/18 28/20 29/15 30/9 37/4 38/9 39/12 40/3 40/15 42/7 42/18 45/5 46/3 48/24 50/24 51/4 52/15 52/18 53/19 57/2 57/8 57/11 57/14 57/16 59/14 61/3 61/4 61/9 61/22 63/2 63/8 63/23 68/23 69/2 69/19 69/21 70/2 70/4 74/3 74/12
above [6]  40/20 40/22 40/25 41/6 45/4 76/7
above-entitled [1]  76/7
absent [1]  13/7
absolutely [1]  17/14
abundantly [1]  74/6
accept [1]  45/13

acceptable [1]  30/2
accepted [3]  18/2 62/21 68/22
accommodate [1]  23/11
accompli [1]  44/7
accomplish [3]  9/25 20/12 20/22
according [2]  42/4 42/23
account [3]  21/7 44/3 56/5
accurate [4]  9/23 56/8 72/21 74/25
accused [1]  37/8
across [1]  16/14
action [2]  9/1 30/7
actual [1]  72/16
actually [8]  9/18 34/23 52/4 55/4 58/3 62/18 71/18 72/20
add [6]  26/19 26/24 65/13 65/17 66/22 73/4
added [1]  31/4
adding [1]  8/6
ADDISON [36]  2/2 2/2 3/3 3/5 3/7 3/9 3/11 3/15 3/19 4/3 5/12 5/14 7/17 10/9 12/1 13/5 14/11

**A**

**ADDISON...** [19]
14/20 15/13 16/18
20/12 26/12 30/21
39/19 39/24 40/14
41/8 44/13 44/25
46/2 48/23 51/14
54/18 59/1 65/24
72/22
**addition** [2]  21/11
27/3
**additional** [9]
10/19 12/15 15/9
22/24 23/9 28/1
51/17 54/9 73/20
**Additionally** [3]
21/20 23/13 23/18
**address** [11]  6/22
12/16 20/24 26/22
43/4 46/25 61/16
62/19 65/23 65/24
72/5
**addressed** [2]  6/24
74/8
**addresses** [2]  64/23
65/3
**addressing** [1]  6/16
**adequate** [2]  35/15
36/17
**adequately** [1]  37/9
**adjourned** [1]
75/20

**administrator** [10]
11/9 12/21 15/24
15/24 17/9 21/17
23/24 27/12 43/5
75/18
**administrator's** [1]
22/1
**administrators** [1]
12/4
**adopt** [1]  26/5
**adopting** [2]  6/19
75/8
**advance** [2]  12/17
19/11
**advertisements** [2]
9/4 36/22
**advertising** [2]  7/20
9/9
**advise** [1]  37/15
**AEP** [2]  1/7 5/7
**affect** [1]  63/23
**affidavit** [1]  30/2
**affirm** [1]  12/4
**affirmation** [1]
29/5
**affirmatively** [1]
52/16
**AFP** [1]  30/5
**afraid** [1]  31/21
**after** [11]  21/21
22/13 22/21 23/6
26/25 27/3 33/5

69/9
**afternoon** [5]  5/3
5/5 5/9 5/20 6/11
**afterwards** [1]  69/9
**again** [13]  5/6 7/22
8/19 16/5 16/16
21/4 21/25 49/3
52/25 56/2 56/5
62/7 62/14
**against** [2]  8/16
29/7
**ago** [3]  38/11 47/7
65/7
**agree** [13]  10/11
12/15 14/2 37/21
43/17 44/13 50/3
60/10 60/18 60/20
69/9 69/20 73/7
**agreeable** [1]  13/10
**agreed** [12]  9/8
18/3 32/10 37/22
39/15 39/24 48/7
48/20 50/8 53/18
60/5 63/5
**agreement** [22]
11/6 13/11 15/6
18/6 18/23 18/24
19/1 19/4 19/11
19/21 20/7 26/2
26/3 26/6 28/5 28/7
36/3 41/18 44/12

**A**

agreement... [3] 49/13 51/22 68/16
ahead [4] 16/22 23/15 52/25 64/4
aided [1] 1/24
Akin [1] 65/2
Algonquin [1] 2/6
Alicia [1] 2/3
all [82]
all's [1] 73/14
allegedly [2] 9/9 72/7
allocated [1] 52/7
allowable [1] 17/24
along [2] 25/16 34/2
already [5] 24/8 24/11 25/22 46/25 69/1
also [12] 5/25 17/11 21/10 21/13 29/25 36/5 43/15 44/13 49/16 53/6 55/8 73/17
although [5] 10/23 21/13 21/16 40/8 53/25
always [1] 50/9
am [15] 6/18 7/15 10/19 10/25 11/19 15/5 18/23 25/4

74/2 74/9 74/24 75/7
Amaco [1] 30/18
ambiguity [1] 8/24
amended [1] 26/23
amendments [2] 26/24 30/25
America [1] 76/8
AmeriFactors [8] 33/20 34/1 50/11 51/3 52/12 53/3 53/5 64/23
among [1] 19/13
amount [5] 9/16 38/22 38/24 46/6 55/4
amounts [1] 42/25
ample [2] 61/19 62/5
analyze [1] 64/16
Anderson [1] 2/6
another [1] 59/10
answer [5] 9/19 49/20 67/19 67/21 67/23
answers [1] 9/23
ANTHONY [1] 1/15
anticipated [2] 6/11 33/2
any [34] 6/23 7/3

15/16 16/3 16/24 17/15 17/19 17/24 22/6 25/23 26/10 27/24 28/18 29/3 35/16 36/6 38/3 39/4 47/18 49/23 50/5 52/16 52/21 54/1 57/18 58/22 65/16 66/11 66/11 66/11 70/19
anybody [6] 10/13 13/15 37/16 56/14 71/7 71/10
anymore [1] 63/25
anyone [6] 7/12 8/24 9/12 12/8 15/21 74/13
anything [19] 8/2 8/20 13/2 26/10 31/19 44/21 50/6 50/24 56/9 63/4 65/13 65/15 69/23 71/1 72/18 72/23 73/4 73/9 73/12
anyway [2] 13/22 63/7
apologize [5] 25/21 25/22 55/16 55/18 68/19
appear [2] 25/24 43/6

appearance [2] 5/10 25/23
appellate [1] 29/19
application [1] 20/20
applications [2] 12/11 20/9
appoint [1] 39/19
appointed [1] 12/22
appreciate [4] 64/9 73/14 73/18 74/22
appreciated [1] 71/16
appropriate [13] 10/25 13/14 13/15 14/3 15/19 27/2 28/4 29/20 53/20 58/4 60/24 66/19 73/21
approval [30] 6/15 6/16 6/20 11/8 11/9 11/15 16/24 18/8 19/3 19/14 19/24 20/4 21/22 22/14 24/17 25/15 27/21 31/2 33/5 43/16 43/18 43/22 49/7 49/22 50/16 50/23 51/17 65/2 73/20 75/15
approve [7] 27/7

37/25 40/11 75/18
approved [6] 19/24 29/3 35/16 51/21 66/24 67/6
approving [6] 20/3 43/7 50/18 51/25 52/1 75/8
April [1] 10/14
aptly [1] 44/3
arduous [2] 59/24 73/15
are [62] 6/21 7/1 7/8 7/9 7/18 9/19 11/14 12/12 13/3 13/6 14/21 15/4 15/7 18/13 18/19 20/4 20/19 21/4 21/5 23/2 23/4 23/20 25/25 26/2 26/3 27/19 30/21 31/20 31/25 32/8 33/5 35/2 35/10 36/20 38/5 38/14 38/21 38/23 42/25 44/6 44/8 45/20 47/16 49/6 51/4 53/10 54/7 56/7 56/21 57/11 57/14 57/18 58/5 60/12 62/5 62/8 66/23 71/12 72/1 72/3

area [3] 48/13 60/1 62/13
aren't [9] 10/13 32/1 32/19 35/5 36/13 57/8 59/19 59/24 72/2
argue [1] 70/7
argued [4] 29/7 34/7 34/20 68/13
arguing [5] 38/2 38/12 68/9 68/23 69/25
argument [37] 3/3 3/4 3/5 3/6 3/7 3/8 3/9 3/10 3/11 3/12 3/13 3/14 3/15 3/16 3/17 3/18 3/19 3/20 3/21 3/22 3/23 3/24 4/3 4/4 4/5 4/6 4/7 26/10 34/13 49/5 51/15 54/2 61/17 69/21 70/4 73/17 74/25
arguments [3] 25/7 53/24 69/19
around [1] 38/9
articulate [1] 60/13
as [98]
aside [1] 49/12
ask [7] 15/11 24/5 36/3 40/14 67/5

## A

ask... [2]  67/19 69/18
asked [7]  35/14 40/2 40/10 40/11 43/9 51/21 67/3
asking [6]  25/1 25/4 42/6 49/12 60/13 67/17
asserted [1]  72/20
asserts [1]  58/17
assure [1]  62/24
attached [6]  9/2 41/1 41/6 45/7 69/8 69/9
attaches [1]  69/7
attachment [1]  7/7
attack [1]  8/12
attempt [1]  13/11
attended [1]  7/2
Attorney [1]  37/12
attorneys [1]  25/23
attorneys' [8]  18/25 19/13 19/25 20/10 21/14 38/16 60/19 70/16
auction [2]  37/16 39/18
audio [1]  1/24
August [4]  7/21 52/24 52/25 53/2
authenticity [1]

authority [2]  22/7 22/7
authorize [2]  26/21 27/4
AUTOMOBILES [2]  1/3 5/6
available [3]  48/17 54/10 55/1
Ave [1]  2/10
Avenue [2]  2/3 2/21
avenues [1]  10/18
award [2]  20/10 20/10
aware [3]  29/3 58/22 74/24
awesome [1]  51/12

## B

back [17]  9/21 16/1 16/6 18/5 22/17 32/18 35/13 45/2 50/19 50/20 51/15 56/21 59/22 66/5 66/6 66/9 72/10
bad [1]  70/8
base [1]  33/4
based [23]  6/12 6/19 18/13 21/14 23/19 25/2 25/5 25/12 27/24 28/4 38/21 40/9 41/18 43/9 47/17 51/17

62/9 65/8 65/9 72/9
basement [1]  54/24
basic [1]  38/13
basically [2]  41/11 66/6
basis [8]  8/20 14/7 14/10 32/16 34/13 45/23 71/21 73/25
Bay [10]  9/5 41/2 45/10 45/19 48/13 54/3 54/12 60/1 60/8 65/20
be [148]
Beach [3]  2/19 29/10 29/13
because [67]  10/14 12/17 12/18 13/9 14/6 14/19 17/4 20/1 20/25 27/6 29/8 29/22 30/10 32/20 33/11 35/4 36/11 36/17 37/9 39/11 39/16 39/22 39/23 40/6 44/13 44/25 45/5 45/11 45/15 46/1 47/13 47/16 48/3 48/6 48/8 48/16 48/20 49/11 50/22 51/8 51/15 52/13 52/23 55/5 56/12 56/18

# B

because... [21]  57/9
57/13 59/9 59/18
59/20 61/7 62/7
63/15 63/24 66/2
67/16 67/25 68/7
68/15 69/3 69/9
70/8 70/16 71/9
71/16 72/8
been [18]  11/2 28/5
31/23 32/7 33/22
36/8 36/11 37/8
38/9 43/21 58/21
67/15 67/25 68/21
71/21 72/2 73/15
74/12
befall [1]  53/4
before [12]  1/15
6/22 11/3 19/15
22/24 37/23 38/11
43/7 68/8 69/1
72/22 75/7
begin [1]  75/15
beginning [1]  14/16
behalf [6]  1/5 9/9
10/10 36/23 37/5
51/24
behold [1]  71/12
being [11]  8/21
19/14 32/19 33/19
35/14 43/8 43/9
55/21 57/8 58/15

believe [10]  42/13
43/14 52/20 55/13
59/12 62/16 68/20
72/11 72/15 72/21
below [1]  40/23
best [4]  16/9 17/5
23/12 30/16
bet [1]  54/14
better [6]  20/21
43/13 53/3 53/11
53/12 70/15
between [9]  7/23
10/3 10/6 26/4 28/7
39/14 40/24 41/4
63/3
big [2]  56/19 69/3
Biggerstaff [12]
12/25 14/13 17/11
17/15 28/24 29/22
45/21 59/18 61/2
63/4 71/3 71/24
Biggerstaff's [1]
33/23
billing [1]  72/9
bit [5]  10/23 38/13
50/22 65/10 70/15
blah [6]  48/24
48/24 48/24 50/1
50/2 50/2
Bob [1]  32/6
Bock [28]  2/15 2/17

2/18 2/18 3/11 3/16
3/18 3/21 3/23 6/4
6/8 26/18 42/7
43/14 44/8 44/21
46/5 52/11 53/17
56/9 61/21 62/20
64/6 65/5 70/19
73/9 73/16 74/24
borne [1]  65/7
both [6]  7/7 12/4
12/5 64/22 68/3
74/3
bottom [1]  19/23
bought [1]  63/11
breadth [1]  10/4
break [1]  40/13
brief [6]  16/23 33/1
56/11 56/22 60/4
64/11
briefs [1]  26/23
brings [1]  33/17
broad [2]  8/8 65/4
broadcast [2]  55/21
61/24
broadcaster [9]
54/19 54/23 55/20
62/1 62/12 71/17
74/13 74/14 74/19
broadcasters [1]
65/4
broadcasts [1]
62/17

# B

broader [1]  9/22
broadly [3]  7/4 8/5
8/5
broke [1]  55/15
brought [1]  22/24
BTL [7]  5/21 5/23
5/25 9/10 36/23
42/4 42/22
Buccaneer [1]  9/5
BUCCANEERS
[45]  1/9 5/6 7/19
8/16 13/10 32/18
34/3 34/3 35/2 37/7
37/24 38/3 41/3
41/22 41/25 44/17
45/11 45/16 45/19
46/1 47/13 51/8
52/5 52/13 53/6
53/14 54/4 54/12
55/5 55/9 55/12
55/20 56/1 57/8
58/19 59/20 60/8
60/17 61/25 62/8
62/14 63/13 65/21
72/9 72/10
Buccaneers' [1]
41/14
bucks [1]  60/20
Bucs [3]  47/13
60/18 74/24
burden [1]  54/9

burdensome [1]
36/4
business [4]  13/20
30/17 41/16 41/23
businesses [1]
13/21

# C

call [2]  5/3 34/9
called [1]  5/2
calling [1]  64/10
calls [1]  74/20
came [4]  33/21 44/9
66/8 69/2
can [47]  6/24 8/2
8/2 9/19 12/8 14/9
15/25 16/7 19/12
19/16 19/17 21/10
21/19 21/24 23/12
25/16 29/2 30/16
30/19 31/14 34/23
35/22 36/19 37/1
38/18 39/7 39/7
42/9 43/19 43/20
45/4 46/8 47/5 47/5
47/12 49/3 49/16
49/25 50/18 57/24
59/2 61/3 62/24
70/5 71/7 74/1 75/6
can't [7]  13/2 29/18
31/19 33/14 37/1
47/14 48/5
canceling [2]  37/14

Canfield [1]  64/15
cannot [4]  15/6
22/23 57/22 58/1
capable [3]  12/4
33/25 65/10
car [1]  60/16
card [1]  50/16
care [2]  51/9 63/14
case [44]  1/7 5/3
5/7 8/3 16/6 16/7
17/15 17/16 29/4
29/8 29/9 29/11
30/2 32/3 32/16
33/17 33/18 34/6
34/13 36/7 38/10
42/5 42/24 43/6
44/4 45/24 52/12
53/15 56/6 61/1
61/5 61/21 61/22
63/21 64/20 64/25
65/6 65/8 65/8
70/10 74/1 74/16
74/18 74/19
cases [5]  29/25
31/16 31/22 36/6
36/8
caved [3]  63/20
69/24 70/1
Centers [1]  34/17
cents [1]  59/20
CEO [1]  47/11

# C

cert [2]  29/18 34/13
certain [3]  23/4
35/6 56/3
certainly [12]  5/5
10/2 12/1 12/24
14/9 16/10 44/3
44/5 44/7 53/2
53/14 53/21
CERTIFICATE [2]
4/8 76/3
certification [3]
29/20 41/9 41/20
certified [1]  64/24
certify [5]  30/23
34/20 54/10 71/7
76/5
certifying [2]  54/7
60/8
cetera [1]  43/4
change [4]  37/7
39/14 48/8 48/9
changed [3]  63/2
64/21 70/12
changes [3]  11/1
48/7 48/9
changing [1]  51/11
Chicago [2]  2/10
2/16
chill [1]  75/1
CHIROPRACTIC
[1]  1/4

choose [1]  21/16
CIN [4]  1/3 5/6
5/13 38/8
CIN-Q [4]  1/3 5/6
5/13 38/8
Circuit [7]  22/6
22/7 29/10 30/5
34/8 39/1 68/8
circumstances [1]
16/9
cite [2]  42/9 49/23
cited [2]  32/25
52/13
claim [99]
claimant [4]  17/1
46/10 54/6 58/17
claimants [3]  43/12
67/7 67/15
claimed [1]  59/23
claiming [3]  37/16
55/25 71/20
claims [52]  8/20 9/8
9/17 11/8 16/25
17/3 17/5 23/19
27/12 31/17 32/3
32/16 32/24 33/2
33/3 33/5 33/6 33/8
33/9 33/10 36/4
36/11 36/12 36/13
38/24 39/5 39/6
40/15 40/19 42/10
48/10 49/19 50/1

50/3 50/6 50/25
56/19 57/15 57/17
58/2 59/22 59/23
63/23 67/9 67/25
68/3 69/3 69/4
69/11 69/24 75/2
75/18
claims-made [6]
32/16 56/19 57/17
59/22 69/3 69/4
clarification [3]
22/18 24/6 25/19
clarify [1]  10/2
class [72]  1/5 5/12
6/15 6/20 6/20 7/3
7/3 7/10 7/14 8/4
8/8 9/1 9/6 9/18
9/20 10/7 13/7 14/1
14/16 15/22 15/24
16/8 17/1 17/9
17/25 19/17 19/25
20/9 21/3 21/3 21/4
21/5 21/17 22/19
22/22 24/10 24/17
28/21 28/25 29/17
29/19 29/20 30/4
30/6 30/8 31/8 33/3
34/13 34/20 36/21
37/9 38/1 42/2
43/19 43/20 44/15
50/21 52/7 52/21
53/21 54/19 57/18

C

class... [10] 58/4
62/20 63/1 64/24
67/1 67/6 70/12
70/12 75/5 75/9
class's [1] 52/16
clear [6] 8/4 8/17
19/19 55/22 74/6
75/4
clearly [1] 74/1
Clemens [1] 63/17
client [1] 63/5
CLINIC [1] 1/4
cloth [1] 36/2
CMR [1] 2/21
Code [1] 76/6
Cohen [2] 37/11
37/12
collateral [1] 8/12
COLLINS [5] 2/8
5/23 5/24 66/5 73/6
come [8] 16/13
22/17 35/22 50/20
51/14 66/5 71/7
71/11
comes [2] 8/13 51/3
comfortable [1]
22/19
coming [1] 10/13
comma [2] 27/1
27/2
common [1] 19/7

company [3] 40/25
41/5 45/7
compared [1] 46/12
compensation [1]
52/7
compiled [1] 54/25
completed [1] 23/7
completely [1] 62/6
completes [2] 25/2
25/5
completing [1]
27/23
compliance [2]
18/18 23/25
complicated [1]
33/2
comply [4] 23/5
25/13 68/19 68/21
component [1] 69/4
compromise [9]
44/11 44/19 56/3
57/12 61/13 61/15
62/18 62/22 74/22
compromises [3]
59/21 59/21 74/3
computer [2] 1/24
55/17
computer-aided [1]
1/24
concern [12] 7/2
8/23 9/13 11/3
14/19 16/16 20/17

74/12 75/1
concerned [2] 14/7
53/13
concerning [1]
51/23
concerns [5] 12/16
14/11 16/4 16/11
18/11
concessions [1]
74/7
conclude [1] 72/23
concluded [1]
75/21
conclusive [1]
71/25
conduct [1] 53/8
confer [3] 12/13
15/13 66/4
conference [3]
38/12 39/16 76/8
conferences [1]
68/7
confident [1] 74/2
confirm [1] 47/2
conflated [1] 64/21
conflict [4] 7/1 7/14
18/22 19/1
conformance [1]
76/7
confused [1] 27/18
confusion [1] 9/11

# C

connected [1]  14/21
consequence [1]
 13/18
consider [3]  10/2
 33/9 75/3
considerable [1]
 72/15
consideration [2]
 26/11 41/18
considerations [1]
 74/7
considered [2]
 18/14 33/7
construing [1]
 51/15
Cont'd [1]  4/1
contain [1]  19/16
contemplate [6]
 12/6 18/20 23/6
 23/8 28/1 75/11
contemplated [16]
 10/18 11/22 12/11
 12/11 15/3 18/6
 19/11 24/16 26/3
 28/5 49/13 51/18
 58/19 65/19 73/16
 73/23
contemplating [9]
 15/5 15/8 20/1
 22/24 23/2 23/20
 24/21 25/14 74/7

contention [1]
 74/10
contested [1]  64/24
Continued [1]  3/25
contract [2]  62/1
 66/23
contracted [1]
 61/25
contradiction [2]
 66/25 71/15
contrary [2]  49/24
 71/19
controversy [1]
 38/7
conversation [1]
 57/2
conversations [1]
 66/4
copies [4]  46/18
 59/5 59/8 59/9
correct [6]  43/2
 61/21 72/6 72/12
 72/13 76/6
could [17]  14/9
 20/2 21/7 21/15
 24/2 25/12 30/2
 34/20 39/15 39/19
 39/20 45/9 50/5
 53/7 69/19 69/20
 72/15
couldn't [3]  13/13
 39/16 48/21

counsel [9]  5/9
 12/24 19/25 20/9
 39/19 39/25 64/15
 68/22
couple [4]  6/21
 38/10 60/20 68/7
course [4]  39/3
 41/16 41/23 53/12
court [37]  1/1 2/21
 4/8 5/2 6/14 11/14
 16/7 17/4 17/6
 18/21 20/8 22/24
 23/9 25/8 29/3
 29/14 29/18 29/19
 31/6 31/6 34/16
 34/20 34/22 35/16
 36/3 36/10 38/18
 43/14 43/18 46/9
 60/23 69/2 76/1
 76/4 76/5 76/11
 76/12
Court's [3]  11/9
 18/7 41/18
courtroom [1]  1/24
courts [5]  30/4 33/8
 33/9 48/5 61/3
cover [1]  6/19
covered [1]  73/5
COVID [1]  66/2
COVID-19 [1]  66/2
create [1]  9/11
creates [1]  8/24

# C

credibility [1] 34/25
criticized [1] 66/15
cross [3] 35/1 35/4 60/19
cross-examination [1] 35/1
cross-examine [1] 35/4
crux [1] 53/25
curious [1] 7/15
customarily [1] 52/9
cv [2] 1/7 5/7

# D

d/b/a [1] 2/18
data [2] 63/2 64/16
database [3] 13/9 13/20 13/20
date [11] 7/9 18/24 19/14 20/11 23/10 23/11 25/8 44/18 44/19 56/3 76/13
dates [10] 7/5 8/14 8/15 9/20 22/19 25/25 26/5 30/10 75/11 75/16
day [7] 19/3 19/24 20/3 37/12 42/7 43/11 47/8

days [14] 18/7 19/6 19/15 20/11 20/16 20/18 21/2 21/21 21/21 22/5 22/13 24/16 24/18 27/21
de [1] 75/4
deadline [17] 16/25 17/3 17/5 18/11 18/14 18/15 18/16 18/17 18/22 23/19 23/20 23/21 23/21 23/23 24/9 24/20 25/21
deadlines [7] 17/9 17/22 18/14 18/19 23/4 24/9 26/3
deal [2] 54/16 64/17
decide [11] 12/13 19/12 19/17 28/16 31/10 31/11 49/25 58/6 61/5 69/15 69/18
decided [3] 10/18 10/22 10/24
deciding [1] 21/9
decision [4] 16/7 33/21 53/3 53/13
declaration [1] 36/20
declaratory [4] 54/17 64/22 65/1 65/2

defendant [10] 2/8 5/19 29/8 38/19 60/25 68/13 68/23 69/5 69/10
defendant's [1] 6/14
defendants [5] 46/18 46/23 50/9 57/11 69/6
defense [1] 53/14
defense's [1] 20/10
deficient [1] 36/13
define [1] 74/16
defined [2] 8/4 28/22
definite [1] 71/19
definition [5] 7/3 7/10 7/14 22/19 25/17
definitive [3] 27/23 44/8 56/7
delete [1] 45/4
delineate [1] 36/4
demonstrates [1] 74/1
demonstrating [1] 75/4
denervation [1] 44/6
denied [2] 29/17 34/22
department [2]

D

department... [2] 32/6 35/12
derivation [2] 54/19 61/20
described [1] 72/12
deserve [1] 28/17
designed [1] 44/15
desire [1] 21/8
destroyed [1] 62/2
detail [2] 17/17 73/19
details [1] 33/1
determination [2] 25/6 53/10
determine [1] 31/7
determined [1] 34/25
did [37] 12/1 12/6 16/19 25/21 28/11 28/12 29/22 31/18 31/20 31/23 32/2 40/2 40/9 41/21 42/8 43/12 43/16 48/23 50/7 54/23 55/4 59/1 59/4 60/2 60/18 63/13 63/15 64/13 66/2 66/7 69/25 70/11 70/12 70/21 70/25 71/10 71/25
didn't [33] 8/13

28/18 29/13 29/14 29/21 29/21 33/4 34/21 37/21 49/23 51/20 56/23 58/24 63/5 63/7 63/10 63/11 63/13 63/14 63/15 63/16 63/21 64/1 68/11 68/15 68/19 68/21 69/16 69/18 72/10
died [1] 32/6
difference [2] 46/9 46/11
different [8] 24/15 40/4 41/19 46/13 52/1 57/5 65/8 67/10
digital [1] 1/24
direct [7] 13/12 13/17 17/2 20/8 20/9 25/12 66/25
directly [1] 65/3
disagree [1] 74/10
disagreement [1] 25/3
disagrees [1] 46/2
discovered [1] 27/24
discrepancy [2] 9/14 22/18
discretion [3] 10/17

discuss [2] 12/1 18/20
discussed [2] 15/1 20/5
discussing [1] 66/16
discussions [2] 44/1 66/13
dispute [3] 10/6 61/22 61/23
disputed [1] 44/10
disputes [1] 74/13
disqualify [1] 36/18
disseminate [1] 24/10
disseminated [7] 66/25 67/2 67/2 67/4 67/5 67/13 67/14
distinction [1] 10/3
DISTRICT [10] 1/1 1/1 29/18 34/18 76/1 76/2 76/5 76/5 76/12 76/12
DIVISION [2] 1/2 76/13
do [45] 11/16 11/20 12/17 12/21 13/8 13/11 15/12 16/7 16/11 21/16 21/19 21/21 22/16 25/11

# D

do... [31]  26/4
28/14 30/13 30/15
32/5 35/10 37/2
37/12 38/4 42/2
42/21 43/12 44/5
44/13 45/22 45/22
47/1 50/12 50/17
50/22 59/17 59/25
60/17 60/17 61/2
68/9 68/17 69/2
71/8 72/23 73/3
Docket [3]  40/16
40/17 42/11
document [9]  6/12
7/6 7/8 8/25 21/24
36/23 40/16 68/4
70/6
documentation [2]
18/17 23/24
documents [5]  6/13
6/16 7/1 39/10
56/18
does [10]  35/13
36/3 43/13 44/3
45/17 49/1 49/1
50/10 60/16 63/23
doesn't [14]  16/13
30/24 35/25 38/2
48/8 51/6 51/6 51/9
52/6 56/14 63/14
68/4 68/4 69/22

doing [8]  23/7
31/15 43/21 48/6
49/17 52/23 56/25
57/4
dollar [1]  59/20
dollars [1]  56/1
don't [86]
done [9]  7/16 14/9
15/25 15/25 40/3
48/21 49/23 65/4
73/24
doubt [3]  9/22 56/6
62/11
down [2]  8/12
15/18
Dr. [1]  39/12
Dr. Schwanky [1]
39/12
draft [1]  6/18
drafted [3]  36/2
47/25 69/7
drafting [2]  66/7
66/8
due [3]  12/7 33/5
48/17
Dump [1]  65/2
during [7]  7/12
28/12 41/13 41/16
41/25 52/8 52/10

# E

each [2]  17/22 26/9
earlier [2]  34/24

early [1]  74/16
easiest [1]  13/8
easily [1]  74/2
Easterbrook [1]
61/5
easy [1]  62/10
ECF [1]  21/23
economy [1]  17/6
educated [1]  67/22
Effect [12]  15/11
17/8 18/8 18/17
23/6 25/2 25/5
25/13 27/15 27/23
28/14 75/18
effective [2]  27/14
68/23
efficacious [2]  13/1
16/8
efficaciousness [1]
15/20
Eighth [1]  34/8
either [7]  8/14
15/14 16/17 21/5
31/5 39/8 60/5
electronic [5]  26/24
27/2 27/3 42/5
42/23
electronically [1]
18/2
Eleventh [4]  22/6
29/10 39/1 68/8

# E

else [17]  11/21
11/22 14/24 17/10
24/21 26/10 39/24
44/21 48/18 56/9
56/12 63/4 66/17
72/18 72/23 73/9
73/12
emphasize [1]
73/22
enable [1]  31/7
encompass [1]  8/9
end [6]  12/23 14/18
17/21 30/2 34/22
37/12
ends [3]  13/25
14/22 14/23
enjoy [1]  21/17
enlightened [1]
74/11
enough [9]  8/8
21/21 22/8 33/18
54/17 60/25 61/10
68/11 72/14
enter [3]  6/14 6/18
20/3
entering [3]  6/22
11/3 75/8
entire [4]  34/13
51/10 53/15 71/15
entities [1]  62/2
entitled [1]  76/7

entity [2]  44/16
61/25
entry [1]  18/7
errors [1]  62/6
ESQ [8]  2/2 2/5 2/5
2/8 2/9 2/12 2/14
2/17
essence [3]  53/25
73/22 74/20
established [2]
24/18 24/21
et [1]  43/4
evaluate [1]  43/20
even [30]  14/13
14/20 18/2 20/2
23/10 29/21 31/3
31/3 32/9 33/6
34/20 35/11 35/11
35/18 43/11 45/16
46/14 47/19 47/22
48/14 48/22 48/22
49/23 53/1 58/8
58/14 61/23 63/25
64/17 74/5
event [1]  42/24
events [2]  11/19
14/5
eventually [1]
39/24
ever [5]  12/18
21/14 35/17 37/2
67/18

very [20]  15/24
29/7 33/24 33/24
38/19 38/25 61/1
62/20 70/17
everybody [9]  30/8
32/20 33/11 33/12
33/13 38/24 39/6
39/23 50/19
everybody's [1]
33/13
everyone [2]  5/9
60/11
everything [4]
17/10 26/8 45/21
48/18
evidence [11]  4/14
58/16 60/2 61/19
62/3 62/5 71/9
71/17 71/23 71/24
71/25
examination [1]
35/1
examine [1]  35/4
example [2]  25/11
67/8
exceedingly [1]
13/1
except [3]  24/23
30/8 66/18
excuse [6]  9/8 11/7
19/4 23/4 53/6 53/8
exhausted [1]  42/24

# E

exhibit [4]  7/6 7/7 7/9 9/1
Exhibits [1]  7/8
existing [1]  43/6
expect [3]  31/17 33/14 50/1
expected [1]  50/24
expects [1]  15/21
expedited [1]  14/10
expeditiously [1] 15/14
experience [1]  33/9
expert [7]  12/25 33/23 39/17 64/14 64/16 65/10 65/11
experts [1]  27/15
explain [4]  8/2 32/9 33/15 49/21
explained [2]  60/4 60/6
explains [2]  47/17 52/7
explanation [1] 45/13
express [1]  47/21
expressly [3]  30/5 30/25 42/2
extensive [4]  43/25 61/19 62/22 70/3
extent [1]  29/13
extraordinary [1]

# F

fabricated [1]  62/7
face [2]  30/24 66/1
Facebook [1]  27/13
facsimile [6]  9/4 10/20 11/20 18/1 22/25 28/2
facsimiles [3]  15/7 25/11 54/11
fact [10]  8/7 13/19 31/23 34/25 44/4 54/18 66/1 67/2 70/7 71/11
facts [3]  13/19 24/24 65/7
failed [1]  10/1
fair [12]  9/16 29/2 30/24 35/23 37/1 37/25 38/6 45/24 47/15 60/6 66/18 72/11
fairly [2]  14/9 55/3
fairness [3]  18/12 24/4 25/24
fait [1]  44/7
faith [1]  73/25
false [4]  58/23 71/23 72/1 72/3
fan [1]  47/13
far [2]  28/9 53/13
farce [1]  48/19

# F

fax [120]
faxed [3]  7/22 35/13 63/12
faxes [89]
FCC [2]  53/6 53/9
FCRR [2]  2/21 76/11
fee [5]  20/20 20/20 22/9 62/7 64/5
fees [13]  18/25 19/13 19/25 20/4 20/10 21/14 38/17 38/21 38/23 48/16 60/19 60/21 70/16
few [1]  70/24
fiduciary [1]  50/21
fight [1]  57/11
fights [1]  9/24
figure [1]  35/21
file [5]  11/14 19/25 20/9 21/10 21/25
filed [11]  6/15 7/1 18/25 19/2 19/5 19/9 19/10 20/4 20/23 43/22 52/2
filing [2]  21/23 41/11
fill [1]  33/12
final [2]  33/5 75/3
find [10]  28/3 35/24 49/24 50/4 61/3

# F

find... [5]  63/7 68/7 69/10 73/19 73/24
findings [1]  73/19
fine [2]  23/14 23/16
finger [1]  22/5
firm [11]  2/15 2/18 29/6 29/7 29/12 29/12 29/15 34/6 34/6 34/19 34/20
first [13]  6/25 11/21 12/20 13/17 13/24 16/7 40/14 49/17 51/19 52/20 64/13 64/19 74/17
five [2]  48/12 58/9
FLORIDA [11]  1/1 1/8 2/3 2/13 2/19 2/21 2/22 30/18 76/2 76/5 76/12
fluid [1]  23/3
focus [1]  53/24
followed [2]  40/5 67/16
following [2]  23/1 27/1
foregoing [1]  76/6
foremost [1]  12/20
forget [1]  37/4
form [88]
format [1]  76/7
forms [7]  10/19

48/1 57/10 67/12
forth [2]  66/6 66/9
fortunately [1]  39/9
forward [10]  6/22 11/1 11/3 22/20 39/1 51/18 53/2 71/11 73/18 73/21
found [1]  63/8
four [1]  58/24
frank [1]  57/2
frankly [5]  38/1 47/25 57/1 63/20 69/7
fraud [5]  14/19 16/12 31/21 48/17 62/11
fraudulent [2]  14/24 16/15
friend [1]  63/16
front [4]  12/19 33/4 36/1 69/12
fulfilling [1]  50/21
fully [1]  74/24
fund [1]  42/24
further [5]  17/17 18/21 25/4 26/10 74/5
future [1]  48/24

# G

game [2]  7/20 9/5
gap [1]  8/6

gas [1]  30/18
gave [2]  39/11 40/5
general [2]  8/9 8/19
generated [1]  62/3
get [53]  8/13 9/22 12/18 13/15 15/25 15/25 16/1 17/21 27/17 28/18 30/13 31/18 31/19 32/2 32/4 32/4 32/23 35/9 35/21 38/21 39/4 45/22 47/17 47/18 48/21 49/22 50/19 53/10 53/19 55/4 57/10 57/18 58/6 58/12 59/15 59/22 62/12 63/10 63/12 63/13 63/15 63/15 63/16 65/20 67/19 68/12 70/12 70/16 71/4 71/10 71/22 72/10 75/13
gets [1]  46/25
getting [10]  10/14 13/7 32/5 35/20 41/23 57/1 57/2 62/7 71/6 71/8
giant [1]  28/17
give [6]  20/15 22/8 31/8 64/1 69/13 73/18
given [18]  10/3

## G

given... [17] 10/22 10/24 13/19 18/10 22/18 24/3 25/2 54/9 57/25 69/21 69/21 71/16 73/25 74/5 74/18 74/22 75/7

gives [1] 75/1

GLENN [2] 2/5 5/15

go [16] 6/22 11/1 11/3 12/22 13/17 16/22 17/17 17/22 23/15 32/18 51/18 64/4 66/6 68/15 73/18 73/21

goes [1] 50/19

going [43] 10/13 10/19 10/25 11/8 11/14 11/19 15/7 15/10 17/7 17/8 17/21 18/5 18/11 20/19 22/20 23/6 24/2 24/3 26/4 27/12 27/20 28/14 28/16 28/23 30/22 31/14 33/5 36/12 36/13 38/25 39/1 39/21 48/2 48/3 48/8 49/10 53/1 53/21 55/23 57/12

gonna [38] 10/11 12/18 14/17 20/18 20/24 30/22 30/23 32/22 32/23 35/5 35/14 37/14 37/15 38/4 38/4 39/5 39/17 43/8 46/22 46/24 47/1 47/2 48/15 48/15 49/17 49/19 50/4 50/4 50/24 51/9 56/20 57/18 58/8 58/9 59/22 59/24 61/3 68/24

good [37] 2/5 3/10 3/12 4/4 5/3 5/5 5/9 5/17 5/18 5/20 16/20 16/21 16/22 20/24 21/1 22/4 22/10 26/14 31/23 35/24 39/2 39/17 48/14 57/14 60/25 61/9 61/10 62/16 65/12 65/14 65/18 67/21 67/22 68/2 69/21 73/1 73/25

Good's [1] 70/18

good-faith [1] 73/25

Google [1] 27/13

got [19] 8/14 21/23

35/13 36/17 38/16 45/15 51/8 53/15 58/24 59/15 59/16 64/5 67/14 70/12 70/14 71/24

grant [1] 43/18

granted [2] 21/22 39/23

grave [1] 14/19

great [6] 38/9 45/20 48/8 54/16 61/23 64/17

greater [1] 14/25

group [2] 5/13 41/1

guess [3] 28/16 63/23 67/23

guy [4] 47/10 49/17 60/16 63/11

## H

had [35] 14/10 14/15 22/21 26/8 26/21 28/13 29/16 30/9 31/22 34/4 34/16 34/20 39/17 40/3 40/4 41/11 44/16 44/18 45/1 46/16 46/19 48/21 52/8 54/18 56/12 62/2 63/5 64/15 66/1 66/3 66/24 67/6 68/7 69/1

had... [1] 74/18
hadn't [1] 68/15
hand [2] 10/4 10/4
handled [1] 29/12
hands [2] 14/22 14/23
happen [2] 15/16 72/1
happened [4] 47/8 53/4 60/21 66/16
happening [1] 32/17
happens [1] 50/15
happy [3] 17/17 21/21 61/18
HARA [7] 2/5 5/15 5/16 46/3 50/1 65/12 68/2
hard [2] 23/4 24/20
harmonize [1] 10/8
has [32] 11/2 11/10 12/25 13/4 13/16 17/15 17/18 29/3 29/7 30/1 30/11 30/12 31/23 33/23 36/6 36/8 39/10 39/14 45/24 46/25 48/4 50/5 56/14 63/2 64/20 65/14 65/16 67/3 67/18 71/14 73/5 74/12

hasn't [1] 46/12
Hatch [1] 2/18
have [124]
haven't [5] 33/3 46/1 49/22 58/25 63/7
having [1] 9/14
he [38] 14/13 14/21 28/24 33/17 33/17 33/23 36/21 37/12 38/3 38/18 39/9 39/10 39/11 46/2 46/2 47/12 48/6 48/25 51/19 51/21 51/23 52/2 52/12 52/17 52/18 53/1 53/25 61/6 65/14 69/21 69/22 69/23 71/8 71/9 71/9 71/20 72/12 74/25
he's [13] 20/25 31/21 42/13 47/13 48/6 48/6 51/24 53/23 54/2 56/20 69/21 71/20 72/12
header [2] 21/23 21/25
health [1] 64/15
hear [4] 28/6 49/25 59/1 65/19
heard [11] 11/23 22/2 27/6 27/16

63/7 68/9 68/14 69/19
hearing [8] 1/14 11/7 11/7 18/12 23/11 24/4 25/8 25/24
Heart [1] 34/17
heightened [1] 9/13
help [2] 9/18 20/21
hence [1] 13/10
her [1] 40/2
here [16] 30/7 33/7 35/2 43/21 44/19 47/15 48/7 50/23 51/1 52/11 54/19 56/4 56/25 61/13 61/22 69/24
here's [4] 35/25 36/15 55/1 71/11
hey [1] 56/22
high [2] 48/14 68/10
higher [2] 60/22 64/5
highlighted [1] 11/5
highlights [1] 74/25
him [3] 36/10 52/17 52/18
hired [1] 52/17
hiring [1] 52/14

**H**

his [13]  22/4 39/10
49/17 50/21 51/15
51/20 53/24 53/25
61/3 63/5 63/16
63/18 74/25
history [1]  44/4
hits [1]  68/10
hold [1]  69/12
holding [1]  69/10
Holland [1]  2/12
Holzman [1]  61/5
honest [1]  32/1
honestly [1]  9/19
honor [113]
Honor's [6]  35/14
36/18 47/19 66/25
67/16 68/20
HONORABLE [1]
1/15
honored [1]  21/18
how [44]  7/2 11/3
12/12 14/7 15/9
15/12 17/18 20/2
25/12 30/21 33/15
35/11 35/13 35/21
36/10 38/9 38/10
42/3 42/21 43/11
45/20 45/22 45/22
47/17 51/15 52/7
53/21 56/20 57/11
57/14 57/21 58/6

58/12 58/20 59/27
60/18 61/9 62/8
66/10 68/23 68/24
70/11 71/16 72/13
Howard [4]  2/21
76/4 76/10 76/11
However [1]  13/10
hundred [2]  47/24
74/24
hundreds [2]  50/9
55/25

**I**

I'd [14]  8/15 15/11
17/17 23/1 23/5
23/13 23/18 23/23
25/14 25/21 26/19
61/18 62/20 66/23
I'll [10]  6/23 16/23
25/9 26/9 51/14
59/25 64/11 65/14
71/2 75/12
I'm [56]  6/11 6/17
8/19 8/25 9/11 9/12
10/1 10/3 14/6 15/4
15/6 17/21 18/11
18/13 20/1 20/2
20/24 21/13 21/16
22/19 23/15 24/3
25/1 25/13 27/9
27/18 27/22 28/3
29/3 29/19 31/14
35/16 36/7 40/12

46/2  46/20  47/22
47/22 47/25 49/16
49/17 50/4 50/4
50/18 50/22 50/22
51/15 58/22 60/3
66/10 66/17 69/15
70/2 70/3 73/18
74/9
I've [17]  6/17 10/18
10/18 10/22 10/23
18/11 21/13 24/3
25/22 27/6 28/2
28/8 31/22 50/15
58/18 60/10 73/16
ID [1]  42/12
idea [4]  9/18 14/17
32/17 63/9
identification [1]
23/7
identified [9]  17/23
22/23 24/3 24/11
40/18 40/25 41/6
68/5 74/19
identifies [1]  7/3
identify [6]  11/8
15/6 22/22 30/13
57/17 57/21
identifying [2]
13/25 43/3
Ignore [1]  45/2
ignored [1]  56/23
ignoring [2]  29/23

I

ignoring... [1]
  58/10
III [2]  2/8 2/12
Illinois [3]  2/7 2/10
  2/16
impact [1]  64/25
implication [1]
  50/18
important [2]
  28/19 59/8
impressions [1]
  27/13
inaudible [11]  22/6
  24/17 24/22 26/1
  32/25 46/6 51/12
  53/16 63/3 64/7
  71/21
INC [2]  1/3 1/4
include [6]  10/20
  17/7 22/25 26/1
  33/1 65/20
included [1]  26/1
including [6]  41/2
  41/22 44/17 45/10
  54/3 60/8
inclusion [1]  54/1
inclusive [1]  76/7
incorporate [1]
  22/9
INDEX [1]  4/1
indicate [1]  58/15

indicated [1]  28/2
indicates [2]  64/17
  71/18
indicating [3]  20/8
  46/9 58/14
indication [3]  55/3
  55/23 55/25
indicia [2]  55/2
  58/2
individually [1]  1/4
inform [1]  53/21
information [7]
  10/5 27/24 31/7
  40/3 43/4 54/10
  65/9
inherent [1]  7/14
initial [1]  68/10
insisted [2]  48/20
  69/22
insistent [1]  71/5
insists [1]  69/23
instances [1]  62/6
instead [2]  32/12
  54/23
intended [1]  20/6
intending [1]  6/18
intent [2]  8/17
  62/11
interest [2]  17/6
  40/7
interested [1]  13/6
interesting [4]  36/9

interim [1]  5/12
intermediary [1]
  66/14
internet [2]  27/11
  68/24
interrupt [3]  46/5
  46/8 49/3
intervening [1]
  65/8
intervenor [5]  2/14
  6/3 40/17 40/21
  41/4
intervenors [7]  6/4
  6/15 37/6 39/9
  43/16 43/17 52/3
invitation [1]  16/14
involved [5]  31/24
  39/16 40/1 47/24
  74/14
involving [1]  29/4
ironically [1]  54/17
irony [1]  10/23
is [212]
isn't [8]  27/15
  29/11 36/7 49/1
  59/19 59/23 61/22
  69/16
issue [25]  15/1 22/3
  33/21 34/1 40/14
  40/18 44/10 54/15
  54/20 56/12 56/22

# I

issue... [14]  57/20
57/24 58/22 61/4
61/20 64/23 65/13
66/11 69/16 70/10
70/11 70/19 74/16
75/11
issues [10]  6/16
9/16 34/5 34/25
37/17 49/25 64/15
70/20 73/25 74/8
it [169]
it's [64]  5/6 7/11
8/3 8/5 12/14 14/12
15/10 15/25 16/8
16/9 19/15 20/3
20/7 20/18 21/14
21/24 21/25 28/6
30/8 30/24 32/6
32/18 33/19 33/21
33/22 35/22 35/23
38/16 40/8 42/11
44/1 45/17 45/24
46/1 46/13 46/13
47/13 47/15 48/15
48/18 50/2 50/12
51/12 53/20 55/17
57/4 57/8 57/16
59/8 59/10 60/3
60/5 60/6 61/4
61/18 62/4 66/18
67/17 68/3 68/13

73/20
iterations [1]  60/13
its [1]  30/24
itself [9]  7/14 18/23
19/1 19/2 19/8
19/22 21/3 42/17
43/3

# J

January [1]  1/7
job [1]  38/1
Joe [1]  5/25
joint [3]  6/14 12/2
15/14
jointly [1]  29/12
JONATHAN [2]
2/14 6/6
Jones [4]  2/21 76/4
76/10 76/11
JOSEPH [1]  2/12
judge [19]  1/16
9/16 12/2 29/17
40/2 44/1 50/17
50/20 50/20 53/18
56/4 60/12 61/5
66/1 66/4 66/6
66/14 66/20 69/15
judges [1]  34/9
judicial [2]  17/6
76/8
July [10]  7/12 7/21
9/10 18/12 24/4

52/24 53/2
June [7]  7/13 7/22
9/10 37/13 37/13
40/24 53/1
junk [5]  34/24 47/9
47/10 47/11 47/12
jury [1]  61/4
just [38]  9/12 14/17
15/22 17/3 20/5
20/13 20/21 22/4
23/17 26/5 31/21
36/1 37/4 41/14
41/22 42/7 43/24
46/14 48/18 48/20
50/14 50/18 54/5
55/7 56/16 56/23
57/22 59/10 59/16
61/8 62/7 63/10
65/7 69/24 71/2
72/13 72/16 74/21
justification [3]
50/12 51/5 51/11
justified [2]  50/2
69/14
justify [7]  30/6 30/7
31/1 32/8 39/14
51/2 62/7
justifying [1]  48/22

# K

KCC [4]  27/12
28/12 28/12 40/4

# K

kept [2]  46/19 59/8
key [1]  25/25
kind [17]  13/11
 27/16 28/17 34/22
 46/16 48/18 48/18
 48/25 49/18 50/8
 51/4 51/7 51/10
 53/13 56/23 61/8
 69/11
kinds [1]  34/5
knew [6]  52/23
 53/2 53/12 68/20
 70/7 70/10
Knight [1]  2/12
know [97]
knowledge [1]  67/3
known [1]  34/6
knows [8]  30/9
 32/20 38/24 48/3
 48/5 56/20 58/8
 71/9

# L

lacking [1]  18/13
language [2]  51/17
 54/3
lap [1]  13/12
LaSalle [1]  2/15
last [5]  7/19 28/19
 29/9 68/8 74/10
Lastly [1]  23/23

late [1]  19/15
later [3]  24/18
 28/16 30/23
Latham [1]  2/9
law [8]  2/2 2/15
 2/18 16/6 34/18
 61/2 63/3 65/8
laws [4]  54/19
 54/20 61/20 61/22
lead [2]  39/19 39/24
learn [1]  64/13
learned [2]  64/16
 65/9
least [11]  16/13
 19/6 19/7 19/10
 20/10 20/16 27/19
 27/22 37/22 74/10
 74/22
leave [2]  45/9 75/12
leaves [1]  7/5
left [1]  10/17
legitimacy [1]
 54/20
legitimate [1]  21/24
legitimately [1]
 13/23
length [2]  15/1
 62/23
less [7]  16/10 16/16
 28/14 46/14 48/15
 64/18 64/24
lesser [1]  46/14

letter [2]  29/15
 7/17 11/10 19/19
 22/17 36/10 40/13
 46/5 46/8 49/3
 65/14
Let's [1]  68/12
letter [2]  29/15
 37/11
letting [1]  70/23
liability [1]  53/11
liable [1]  34/3
lie [3]  31/25 37/4
 53/7
lied [5]  34/4 52/15
 52/18 53/1 53/10
light [1]  66/2
like [43]  8/15 16/14
 23/1 23/5 23/11
 23/13 23/18 23/23
 25/14 25/21 26/1
 26/19 30/8 31/16
 31/17 33/11 34/2
 34/2 35/17 36/7
 37/8 37/13 43/15
 43/20 44/2 44/23
 46/18 48/4 48/25
 49/2 49/16 50/6
 50/17 50/24 50/25
 57/6 63/16 65/18
 65/22 65/24 66/23
 74/11 75/10
liked [1]  44/2

# L

likelihood [1]  13/21
likely [2]  31/11
 64/24
limitations [1]
 37/10
LIMITED [2]  1/9
 5/6
limiting [1]  7/9
linear [1]  74/1
list [7]  28/24 54/25
 55/11 62/12 62/15
 63/11 72/7
listed [3]  40/20
 40/22 45/3
listen [1]  59/7
lists [2]  40/23 72/8
litigating [1]  34/7
little [5]  38/13
 50/22 62/11 64/7
 70/15
living [1]  54/24
LLC [3]  2/15 2/18
 2/18
LLP [2]  2/9 2/12
lo [1]  71/12
locate [1]  13/13
log [4]  59/19 62/8
 62/9 67/9
logic [1]  59/10
logs [14]  30/1 30/10
 33/18 34/21 35/19

 35/21 36/9 44/5
 55/24 56/7 60/24
 61/17 62/3 62/5
long [8]  15/12
 15/17 21/18 32/7
 33/22 33/22 38/23
 60/11
look [12]  7/5 14/13
 18/25 21/7 22/9
 30/20 46/22 48/19
 49/15 49/15 49/16
 70/2
looked [2]  56/17
 56/18
looking [4]  16/6
 18/6 33/13 54/5
looks [1]  16/14
lookup [13]  12/10
 12/13 12/23 12/25
 13/4 13/18 13/24
 14/9 15/12 15/23
 28/12 40/3 46/24
lookups [1]  68/10
lost [2]  40/12 62/2
lot [2]  44/14 48/15
lots [2]  55/13 60/1
Louis [1]  34/17
low [3]  40/4 48/10
 49/19
lying [1]  47/7

# M

machine [14]  16/14
 33/24 33/24 44/16
 45/2 45/6 45/15
 46/16 51/4 51/7
 51/10 54/7 57/5
 61/9
machines [2]  14/22
 62/15
made [15]  32/16
 48/16 53/9 53/23
 54/2 56/19 57/17
 59/22 67/11 69/3
 69/4 69/13 69/14
 74/6 74/15
MAGISTRATE [1]
 1/16
mail [12]  13/12
 13/17 16/8 17/2
 18/1 22/23 26/25
 27/1 47/9 47/10
 47/12 68/11
mailed [1]  28/15
mailing [6]  11/21
 23/8 24/18 25/6
 27/24 46/25
main [1]  29/13
make [22]  8/8
 13/23 15/14 16/15
 17/23 20/5 22/13
 26/10 28/21 29/2
 31/13 32/13 45/23

# M

make... [9] 48/7 49/4 55/11 55/20 59/23 66/21 69/14 71/2 75/2
makes [3] 36/5 49/24 64/23
making [8] 10/13 41/20 51/25 52/14 53/17 55/3 70/4 70/5
Malanie [1] 16/6
manager [1] 35/12
many [18] 9/23 13/7 18/20 30/23 33/15 34/24 36/11 42/3 42/21 43/11 45/20 56/21 58/20 62/8 66/3 66/3 66/3 72/13
March [1] 10/14
MARK [4] 2/9 5/20 11/25 39/9
match [1] 28/13
material [2] 19/17 21/19
materially [2] 15/18 64/21
matter [4] 6/12 6/17 62/10 76/7
matters [5] 6/19 6/21 6/24 63/22

may [26] 7/22 9/11 10/24 11/23 11/24 15/20 16/2 16/15 17/25 18/20 23/3 24/5 24/8 24/11 24/25 25/3 26/25 33/1 42/1 53/1 54/13 56/16 65/13 71/21 72/1 74/15
maybe [19] 9/12 18/23 20/19 27/5 27/18 28/14 32/3 32/4 32/4 35/11 36/2 39/1 47/13 49/25 58/7 59/25 59/25 60/1 60/25
me [42] 5/9 6/22 6/24 7/17 9/8 11/7 11/10 19/4 19/19 20/21 22/17 23/2 23/4 23/5 23/19 25/6 25/25 26/7 30/17 33/4 34/10 39/11 40/13 46/2 46/5 46/8 46/21 48/7 49/3 49/12 55/2 55/15 60/15 63/10 64/10 66/5 70/23 74/6 75/7 75/11 75/13 75/16
Meadows [1] 2/7

mean [9] 18/8 28/15 45/17 49/8
means [8] 14/1 26/24 27/2 27/2 27/3 41/22 60/9 62/4
meant [1] 74/17
mediation [3] 66/1 66/16 70/10
mediator [1] 66/14
MEDICAL [1] 1/4
meeting [1] 66/2
member [7] 7/3 17/25 17/25 36/21 44/15 58/4 62/21
members [15] 9/18 13/7 14/1 19/17 20/19 21/3 21/4 22/22 22/23 28/25 30/8 33/3 42/2 53/21 63/1
memories [1] 30/6
memory [7] 28/21 29/5 32/14 46/10 48/14 59/7 59/13
mention [5] 27/16 31/3 31/3 32/9 34/17
mentioned [4] 56/12 56/13 60/3 60/4

# M

mentions [1] 52/12
menu [1] 34/10
MESTER [42] 2/9
3/4 3/6 3/8 3/13
3/17 3/20 3/22 3/24
4/5 4/7 5/21 5/22
7/25 10/12 11/25
17/8 22/2 26/16
27/16 31/20 38/2
43/23 44/25 48/5
55/14 56/20 57/12
57/21 59/6 61/16
63/4 64/4 66/5
66/10 69/20 71/5
71/14 72/4 72/20
73/5 73/12
methodology [1]
13/15
Miami [1] 2/19
MICHAEL [3] 2/2
2/5 5/12
middle [7] 1/1 7/21
7/21 8/14 76/2 76/5
76/12
might [8] 17/5 37/3
50/2 58/13 59/4
66/22 67/4 72/16
million [2] 27/12
60/20
mind [1] 12/1
minimus [1] 75/4

miniscule [2] 16/3
32/24
misplaced [1] 62/2
misreading [2]
18/23 47/22
missed [1] 14/4
missing [1] 71/15
Missouri [1] 34/18
mistake [1] 74/15
misunderstood [1]
28/10
moment [7] 19/22
24/12 42/9 61/12
61/14 64/6 64/8
money [19] 32/1
32/18 32/19 32/23
33/11 35/21 38/3
38/21 39/4 45/22
46/6 47/17 48/16
55/4 57/18 58/12
59/15 59/22 64/7
months [1] 7/23
more [20] 8/5 8/5
9/4 13/2 27/1 27/23
36/22 38/16 44/2
53/17 55/14 56/2
63/7 63/8 64/7
64/17 65/10 68/9
70/16 72/15
moreover [1] 65/9
most [6] 10/25
14/21 28/19 35/7

motion [20] 1/14
6/14 18/24 19/2
19/4 19/5 19/7 19/9
19/16 19/24 19/25
20/4 20/23 21/6
21/14 39/22 43/17
43/22 56/13 56/17
move [1] 25/16
moved [1] 38/11
MR [143]
Mr. [11] 10/12
17/15 33/23 34/19
36/8 37/15 39/17
43/14 46/2 52/11
57/12
Mr. Addison [1]
46/2
Mr. Biggerstaff [1]
17/15
Mr. Biggerstaff's
[1] 33/23
Mr. Bock [2] 43/14
52/11
Mr. Good [1] 39/17
Mr. Mester [2]
10/12 57/12
Mr. Wanca [1]
37/15
Mr. Wanca's [2]
34/19 36/8
much [21] 10/6

Case 1:13-cv-01592-AEP Document 29/11 Filed 06/16/23 Page 105 of 127 PageID 3026

# M

much... [20] 14/25 15/9 25/12 35/21 44/2 44/10 45/22 47/17 53/17 54/20 56/2 58/6 58/12 60/18 61/20 61/22 64/24 66/10 72/15 72/20

multiple [2] 53/24 60/11

must [3] 19/8 31/6 49/9

my [27] 7/6 10/17 11/1 18/13 20/17 26/11 29/6 29/12 30/17 31/25 33/8 34/6 34/10 34/19 40/12 40/24 41/5 44/24 45/6 49/11 55/17 60/4 67/2 71/11 73/19 73/19 75/3

myself [1] 56/24

# N

name [4] 37/3 43/4 49/18 63/18

nature [1] 56/6

necessarily [3] 41/14 41/24 53/4

necessary [3] 12/14

need [28] 6/22 6/24 12/20 13/2 15/23 16/17 17/22 17/22 18/14 18/19 18/20 22/8 23/5 26/1 26/6 29/16 32/15 41/9 42/3 42/21 46/18 51/12 52/4 54/9 55/25 57/9 57/12 75/17

needed [1] 55/2

needs [5] 7/15 15/16 24/20 25/15 61/6

neglected [1] 25/20

negotiate [1] 60/18

negotiated [8] 40/8 53/18 59/2 60/3 60/15 62/23 69/1 69/2

negotiating [2] 60/12 63/25

negotiation [2] 60/21 63/19

negotiations [5] 37/14 63/19 65/19 66/9 66/13

Neither [1] 50/10

never [15] 17/11 17/15 31/16 54/22 55/22 66/1 66/24

67/13 67/14 69/13 69/20 71/8

new [4] 33/20 64/13 64/16 65/10

newspaper [4] 27/16 28/2 28/9 32/5

next [3] 10/16 11/18 45/5

Ninth [1] 22/7

no [42] 1/7 6/12 7/9 7/24 16/20 17/20 22/12 22/14 23/16 26/6 26/13 26/15 26/17 30/5 32/2 37/8 37/10 37/20 40/16 40/16 40/17 42/5 43/21 55/17 56/6 57/3 62/24 67/23 68/17 70/23 71/9 71/20 71/22 71/23 72/1 72/3 72/25 73/2 73/5 73/10 73/13 75/12

No. [2] 7/9 8/25

No. 1 [1] 7/9

No. 324 [1] 8/25

nobody [8] 36/6 40/10 45/24 50/23 52/20 56/12 61/6 67/16

# N

nobody's [3]  59/24
60/4 70/13
none [2]  4/14 54/21
not [128]
note [1]  63/17
noted [1]  22/15
notes [2]  32/25 76/6
nothing [5]  35/9
38/15 63/2 63/4
65/17
notice [90]
noticed [2]  28/20
56/13
notices [2]  9/17
57/10
notification [1]
10/19
notion [1]  44/5
now [23]  15/2 24/2
25/1 29/25 33/4
35/17 36/15 37/24
38/12 39/9 39/12
40/1 45/9 47/11
47/21 49/19 51/2
51/16 51/25 56/22
64/1 67/19 75/7
number [34]  7/23
13/22 17/18 30/9
30/19 31/25 35/6
41/2 41/12 41/12
41/16 41/21 43/5

45/1 45/7 46/15
46/20 46/22 46/23
46/24 47/3 47/3
47/6 48/25 52/8
54/6 57/5 57/7
58/15 62/17 63/16
67/7 68/12 71/24
numbers [35]  10/24
13/9 14/14 14/18
14/21 17/12 17/13
17/14 17/18 18/9
27/25 30/14 40/20
40/22 40/25 41/2
41/6 43/5 45/3
54/25 55/9 55/19
55/22 58/6 62/8
62/12 62/14 62/14
63/9 63/10 63/13
71/21 72/7 72/16
75/4

# O

oath [1]  32/1
object [12]  19/12
21/10 36/14 36/16
36/16 36/19 36/25
37/1 39/8 47/20
50/12 51/20
objected [1]  70/3
objecting [4]  21/5
36/19 49/6 54/1
objection [12]  15/9
15/9 19/6 20/11

23/21 23/22 51/16
51/25 53/25
objections [3]
18/16 18/16 22/10
objectors [1]  22/8
observation [1]
71/2
obtained [2]  42/5
42/23
obviously [6]  13/4
13/6 14/25 15/3
64/2 64/25
occur [13]  11/21
14/6 14/7 15/5 15/8
20/2 23/10 24/19
25/4 25/12 27/21
28/1 28/8
occurred [7]  11/10
13/4 13/8 13/19
21/14 55/6 71/18
occurs [1]  44/15
off [5]  6/25 7/17
48/25 52/11 60/19
offered [4]  32/19
38/16 38/22 38/24
offering [1]  38/23
office [9]  2/2 30/1
36/8 39/13 48/2
48/19 50/10 69/6
69/16
Official [2]  76/4

**O**

**Official... [1]** 76/11
**oh [4]** 16/21 31/24
33/20 47/16
**okay [12]** 5/8 19/23
24/13 26/8 28/10
31/21 32/8 50/3
55/1 56/15 56/23
57/19
**once [6]** 8/18 12/12
15/13 15/25 25/2
58/17
**one [56]** 9/4 9/15
10/4 11/5 14/5
17/23 18/22 19/1
19/7 19/22 22/5
24/9 24/12 25/21
26/22 26/24 26/25
30/21 32/21 34/8
34/14 35/18 35/24
36/22 37/17 39/13
42/9 43/12 48/4
49/2 49/18 50/16
53/15 54/2 55/14
59/3 59/21 60/3
61/12 61/14 62/24
63/3 64/6 64/8
64/23 65/1 66/11
66/11 66/11 67/9
68/8 69/6 70/21
71/2 74/1 74/17
**one's [1]** 42/5

**ones [1]** 72/13
**only [15]** 7/18
20/18 27/16 28/13
28/25 32/21 36/19
37/1 38/19 39/7
45/1 57/17 60/3
68/11 68/11
**open [3]** 7/5 54/20
61/20
**operating [1]** 54/8
**operative [1]** 44/16
**opinion [5]** 7/15
33/24 34/18 39/2
61/4
**Oppenheim [1]**
2/18
**opportunity [8]**
20/15 20/16 21/6
21/9 22/22 38/22
67/18 73/11
**oppose [2]** 43/16
44/24
**opposing [1]** 28/4
**opposition [1]**
43/21
**opt [8]** 19/6 19/12
20/11 20/18 21/10
21/16 21/18 34/11
**opt-out [5]** 19/6
20/11 20/18 21/18
34/11
**opted [2]** 52/16

**opting [5]** 18/15
20/19 21/4 21/5
23/21
**order [28]** 5/2 6/18
6/23 10/22 11/4
16/24 20/3 25/9
25/11 26/7 27/13
31/10 32/23 35/23
36/15 36/18 39/4
47/19 49/22 49/24
53/19 66/25 67/16
68/20 73/19 73/19
75/8 75/14
**ordered [2]** 67/1
67/13
**orders [2]** 36/1 36/2
**original [1]** 65/11
**originally [1]** 64/18
**other [22]** 6/23 8/6
10/4 10/17 12/9
14/2 18/13 18/22
19/13 25/14 25/21
26/2 27/2 28/17
39/13 40/5 47/9
50/9 62/2 69/9
69/16 70/20
**otherwise [3]** 14/25
40/8 70/16
**our [26]** 12/16
13/11 14/10 15/15
17/9 27/10 28/12

# O

our... [19] 30/12
32/25 38/10 39/22
40/10 43/17 47/3
52/5 53/12 53/19
56/11 56/22 57/9
57/10 63/3 64/14
64/23 70/4 70/7
ours [1] 38/16
out [50] 6/21 8/5
10/7 10/25 13/15
14/17 14/23 15/7
17/4 17/8 17/11
18/15 19/6 19/12
20/11 20/18 21/5
21/10 21/16 21/18
23/21 32/14 33/12
33/21 34/11 35/21
37/15 43/15 45/10
48/9 48/23 51/3
51/20 52/25 55/1
55/21 62/1 63/7
63/8 63/22 63/24
65/7 67/18 68/8
68/15 69/10 69/11
70/13 71/22 75/14
outlined [3] 10/22
18/10 20/6
outside [1] 70/19
outstanding [1]
27/22
over [4] 14/14

overwhelming [1]
57/23
own [1] 62/15
owner's [1] 63/16
ownership [6]
40/19 40/22 45/3
46/20 48/24 57/4

# P

P.A [1] 2/2
p.m [1] 1/8
Pacer [2] 21/7 21/8
page [15] 3/2 4/2
7/7 9/1 19/3 19/5
19/20 19/21 19/23
20/7 36/24 42/12
60/6 69/7 76/7
page 32 [1] 36/24
Pages [1] 76/7
paid [10] 42/4
42/23 43/8 52/18
60/14 60/16 62/8
62/9 62/24 71/4
Palm [2] 29/10
29/13
paper [3] 12/19
33/25 39/10
papers [1] 65/2
paragraph [4] 9/7
20/7 42/14 42/15
paragraph C [1]
42/14

parenthetical [1]
9/6
part [3] 19/1 49/9
66/7
participants [1]
52/16
participate [2]
39/20 39/22
participating [1]
65/25
participation [2]
51/24 75/5
particular [11]
8/25 12/17 32/21
33/16 42/6 42/7
43/10 43/10 54/6
56/5 58/15
parties [31] 8/17
9/7 9/14 10/6 10/17
11/20 12/3 12/13
12/14 18/3 18/18
22/21 25/3 26/4
26/22 27/25 28/6
28/7 31/1 31/6 32/8
32/13 33/15 37/6
40/7 44/23 45/20
47/15 68/15 73/24
74/6
parties' [2] 22/20
49/13
PARTNERSHIP
[2] 1/9 5/7

**party** [2]  49/8
52/15
**pass** [1]  53/10
**past** [1]  39/4
**pay** [9]  35/6 38/1
38/3 38/4 55/2
56/20 58/8 59/11
69/22
**paying** [1]  59/20
**peeled** [1]  48/25
**penalties** [2]  29/1
57/13
**penalty** [4]  32/11
45/14 67/8 67/11
**people** [75]  13/13
19/12 21/24 27/17
28/16 28/17 28/22
29/9 30/2 30/13
30/16 31/18 31/20
31/23 31/24 31/25
32/1 32/2 32/10
32/15 32/19 32/22
33/24 35/5 35/6
35/7 35/7 35/8 35/9
35/19 36/1 36/13
36/19 36/20 36/25
37/19 38/5 38/14
38/15 38/20 38/23
39/3 39/7 39/13
45/18 45/22 46/22
47/4 47/14 47/14

49/19 50/9 51/4
52/7 52/21 53/9
57/3 57/8 57/17
58/12 59/11 59/14
59/16 59/24 60/1
63/15 66/19 68/12
70/8 70/14 71/11
72/2
**people's** [2]  30/6
59/7
**per** [1]  14/15
**percent** [16]  13/25
14/1 14/15 14/15
15/21 28/13 33/10
33/10 33/15 38/25
48/12 50/1 50/3
50/6 68/12 74/25
**percentage** [2]
28/16 28/17
**percolating** [2]
33/22 34/1
**perhaps** [1]  44/8
**period** [22]  7/12
7/24 8/10 8/19 9/22
14/16 19/6 23/3
23/6 25/10 25/15
27/23 40/22 41/7
41/13 41/16 41/25
52/8 52/10 54/9
75/12 75/12
**periods** [1]  26/5

**perjury** [1]  12/17
32/12 45/14 57/13
67/8 67/11
**permission** [1]  34/5
**person** [3]  13/22
36/19 41/11
**persons** [1]  9/3
**petition** [1]  22/9
**ph** [5]  15/12 16/6
39/12 61/6 63/17
**PHILLIP** [2]  2/17
6/4
**phone** [6]  14/14
17/12 46/21 46/21
47/6 71/24
**piece** [2]  47/9 47/12
**PIPER** [9]  2/14 4/6
6/6 6/7 70/25 71/13
72/11 72/18 74/9
**pizza** [1]  34/9
**place** [3]  15/10
34/10 41/20
**placed** [3]  19/8
20/16 21/25
**places** [1]  41/20
**plaintiff** [11]  1/6
2/2 5/11 5/17 6/13
20/10 22/14 29/13
31/1 33/16 34/19
**plaintiff's** [3]  12/24
12/24 68/22
**plaintiff/defense's**
[1]  20/10

**p**

plaintiffs [5]  5/13
5/15 10/10 38/8
51/24
plan [2]  17/6 35/22
planning [1]  27/6
pleading [1]  52/2
pleadings [1]  73/17
please [3]  5/4 34/10
55/2
plenty [2]  61/11
61/15
point [16]  12/7 12/8
16/17 17/4 17/11
24/6 36/11 43/15
51/23 64/19 64/20
65/20 68/18 72/5
73/22 75/1
pointed [3]  8/5 17/8
51/20
points [1]  64/12
PORCELLI [1]
1/15
portion [2]  24/24
54/22
posed [1]  9/19
position [4]  11/13
22/20 53/12 73/18
positions [1]  17/9
positives [4]  58/23
71/23 72/1 72/3
possibility [1]  55/8

possible [2]  13/7
32/18
posting [1]  20/20
potential [5]  13/25
14/19 14/24 15/8
16/12
practical [1]  16/9
practically [1]  20/2
precisely [1]  44/1
predecessor [1]
64/15
prefer [2]  11/20
62/20
preferred [1]  44/18
prejudge [1]  12/24
preliminarily [1]
51/25
preliminary [29]
6/14 6/16 6/20 11/6
11/7 16/24 18/7
19/24 20/4 21/22
22/13 24/17 25/15
27/21 31/2 43/16
43/18 43/22 49/6
49/22 50/15 50/23
51/16 56/14 65/2
73/20 73/23 75/8
75/14
prepared [1]  75/15
prerogative [1]
33/13
present [1]  25/7

pretty [2]  70/13 70/3
previously [1]
17/13
price [4]  60/15
60/15 60/16 62/24
primarily [1]  31/1
primary [2]  53/24
53/25
principal [1]  69/10
printing [1]  33/25
prior [6]  11/6 11/21
19/6 20/11 20/18
20/19
prison [1]  31/24
privileged [1]  66/17
probably [8]  9/23
16/10 30/20 30/20
31/14 44/9 47/7
55/8
problem [1]  10/11
Proceedings [2]
1/24 75/21
process [23]  12/6
12/23 13/18 15/10
18/8 18/9 21/17
23/7 33/2 36/4
36/12 36/13 48/17
53/22 57/15 59/22
59/24 62/22 62/22
66/7 66/8 66/15
75/15
profit [1]  69/23

program [3] 24/1
28/23 68/24
promise [1] 39/3
promised [1] 38/20
proof [2] 34/22
41/6
proper [1] 22/10
properly [2] 55/12
55/21
proposal [3] 12/3
15/14 31/8
propose [2] 15/23
46/16
proposed [27] 9/2
11/2 12/21 17/24
17/25 27/11 30/1
32/13 35/18 35/18
35/23 36/2 37/7
39/18 39/23 40/17
40/19 40/21 40/23
41/4 41/17 42/16
44/24 46/15 47/19
50/13 67/12
proposing [5] 12/2
23/8 27/15 37/18
66/23
proposition [1]
55/10
protections [1]
48/17
protocol [1] 66/3

**P**
prove [1] 63/14
provide [13] 9/20
18/21 22/22 23/2
23/5 25/6 25/22
31/6 40/2 43/6
58/20 75/11 75/17
provided [2] 18/9
75/16
provision [1] 32/14
publication [18]
10/21 13/14 16/3
16/11 16/13 16/15
17/2 22/25 23/9
24/24 27/9 27/11
27/14 27/20 28/2
28/8 28/9 69/17
publications [1]
10/20
pull [1] 19/19
purpose [3] 46/23
48/6 49/4
purposes [8] 7/6
10/20 10/21 11/15
23/2 23/8 39/20
73/20
pursuant [1] 76/5
pursue [1] 8/15
purview [1] 75/3
put [19] 12/19
13/12 21/3 21/22
22/4 26/9 34/10
35/25 36/1 44/4

62/14 66/10 69/12
70/25 72/23 75/14
putting [4] 15/5
48/6 49/17 74/16

**Q**
qualification [1]
45/23
qualify [1] 47/19
quantity [2] 67/10
67/15
question [9] 10/16
11/18 13/12 26/8
49/11 65/3 67/17
67/19 74/20
questions [3] 9/19
17/19 65/16
quickly [2] 14/9
16/1
quite [1] 65/10
quote [4] 34/16
36/3 36/20 42/2

**R**
raise [1] 70/20
raised [3] 51/23
53/14 70/11
raises [1] 34/24
raising [1] 71/13
range [1] 7/9
rate [19] 14/14
17/12 31/17 32/24

# R

rate... [15]  33/2
33/6 33/8 33/9
33/10 38/24 40/4
48/10 49/19 50/1
50/3 50/7 50/25
63/24 67/25
rather [1]  7/10
RDR [1]  76/11
reach [2]  15/21
27/14
reached [2]  56/4
68/16
read [3]  44/25
49/20 70/5
readily [1]  54/25
reading [2]  46/3
47/22
reads [13]  9/3 9/7
19/2 19/5 19/22
19/23 20/8 40/19
40/21 41/4 42/20
54/3 60/6
real [1]  74/12
really [12]  12/8
28/15 48/8 48/18
50/7 50/7 50/21
53/23 56/7 60/9
69/23 75/4
reason [10]  27/5
29/23 45/13 51/2
55/24 57/15 62/16

reasonable [2]
33/14 59/6
reasons [3]  55/13
68/21 72/14
recall [6]  54/11
54/23 55/8 58/18
61/23 64/14
receipt [7]  29/11
40/20 41/9 45/4
45/18 54/1 57/6
receive [6]  9/12
41/21 52/16 52/21
53/9 57/7
received [41]  4/14
7/4 7/12 8/24 9/3
9/22 17/1 28/22
28/24 29/21 30/11
36/22 41/1 41/12
41/14 42/3 42/22
43/10 43/11 44/17
45/9 46/12 46/17
47/12 51/10 52/5
54/11 55/12 55/22
56/1 56/3 56/16
58/16 58/18 58/21
61/7 62/16 67/8
67/9 67/10 74/23
receives [1]  13/23
receiving [29]  14/1
29/6 29/14 29/17
30/3 30/22 32/11

37/2 37/19 38/5
38/14 38/20 39/4
39/11 41/15 42/6
45/25 47/21 48/13
51/5 52/10 54/8
56/15 58/18 59/11
61/6
recently [1]  38/10
recognize [3]  23/3
26/2 47/5
recommend [1]
23/10
recommended [1]
27/11
reconsider [1]  75/6
reconsidered [1]
27/5
record [35]  5/10
6/13 22/16 26/10
37/11 37/18 40/11
40/15 42/10 42/21
42/23 54/10 56/10
57/23 58/16 61/7
61/19 68/13 70/3
71/1 71/3 71/9
71/10 71/12 71/14
71/16 71/17 72/3
72/3 72/11 72/24
73/25 74/5 74/11
74/12
recording [1]  1/24

**R**

**records [23]  29/4** 29/23 42/5 43/6 43/9 47/18 48/4 57/14 57/16 57/23 57/24 58/1 58/9 58/10 58/10 58/11 58/15 58/20 58/23 59/3 63/8 71/23 74/21
**recovery [1]  32/2**
**recycling [1]  17/18**
**reduce [1]  60/19**
**reduction [1]  42/25**
**reference [3]  7/11** 26/6 36/5
**referred [2]  54/18** 65/1
**referring [4]  8/25** 42/10 42/13 43/1
**reflect [1]  43/9**
**reflected [1]  44/19**
**refused [1]  48/4**
**regard [3]  10/1** 43/13 44/18
**regarding [3]  6/13** 18/18 23/25
**regardless [1]  39/6**
**regular [2]  41/15** 41/23
**regulation [1]** 34/12

**regulations [1]  6/8**
**reiterate [1]  43/25**
**reject [1]  49/14**
**rejected [2]  30/4** 59/4
**related [1]  43/6**
**relates [2]  24/24** 54/17
**relating [1]  9/5**
**release [3]  10/4** 39/6 39/6
**released [1]  32/3**
**relented [1]  37/20**
**relevancy [1]  67/24**
**relevant [3]  6/13** 16/6 54/8
**reliability [2]  58/2** 74/21
**reliable [1]  64/18**
**relied [1]  58/3**
**relief [2]  8/8 30/8**
**rely [5]  46/10 57/22** 57/24 58/1 61/3
**relying [3]  30/6** 55/24 58/5
**remarkable [1]** 47/9
**remember [56]** 26/20 29/1 29/2 29/9 29/14 29/16 29/18 29/22 30/3 30/20 30/22 31/19

31/22 32/5 32/10 32/15 32/22 34/23 35/7 35/8 35/10 35/20 36/17 37/2 38/5 38/8 38/14 38/15 38/20 39/3 39/7 39/7 41/24 44/9 45/25 47/4 47/6 47/8 47/12 47/20 48/13 51/9 56/15 57/9 58/7 59/11 59/12 59/14 59/16 61/6 69/2 69/25 70/9 70/15 71/6 71/8
**remembered [1]** 37/19
**remembering [2]** 46/11 47/11
**remembers [1]** 39/10
**reminiscent [1]** 74/15
**remotely [1]  62/4**
**repeatedly [1]  54/2**
**reply [2]  32/25** 56/23
**report [2]  14/13** 33/23
**Reporter [5]  2/21** 4/8 76/3 76/4 76/11
**represent [1]  44/10**

**representative [1]** 29/20

**represented [1]** 34/19

**representing [2]** 37/9 52/2

**request [3]** 37/6 67/20 75/18

**requested [2]** 56/4 68/3

**require [20]** 10/19 11/1 11/19 31/1 32/12 32/22 37/6 37/21 42/8 43/12 44/15 45/1 45/17 45/25 47/15 48/23 50/14 51/6 52/6 59/7

**required [5]** 12/10 29/5 37/19 52/9 70/8

**requirement [6]** 29/7 29/8 32/14 47/21 63/6 67/7

**requirements [2]** 31/3 68/5

**requires [4]** 28/21 32/10 49/21 69/11

**requiring [3]** 27/22 47/16 59/10

**resolution [2]** 27/10

**resolve [6]** 7/16 8/18 25/8 39/5 45/22 70/11

**resolved [2]** 25/16 74/2

**resolving [1]** 58/11

**resort [1]** 29/9

**respect [6]** 7/19 12/7 19/13 51/23 52/4 53/7

**respective [2]** 15/15 17/9

**respond [2]** 40/14 44/22

**response [5]** 23/22 41/8 43/17 51/21 56/11

**responses [1]** 18/16

**rest [1]** 38/21

**result [5]** 15/13 15/22 43/25 66/9 66/13

**results [4]** 12/12 13/3 18/19 75/2

**retained [2]** 64/14 64/16

**revealed [1]** 74/12

**reverse [17]** 12/10 12/13 12/22 12/25 13/3 13/18 13/24 14/8 15/12 15/23

27/25 28/12 37/16 39/18 40/3 46/24 68/10

**review [2]** 21/9 21/19

**reviewed [2]** 6/17 73/17

**revise [1]** 51/22

**revised [1]** 50/14

**revision [1]** 50/14

**revisions [2]** 32/13 44/24

**riddled [1]** 62/6

**right [70]** 5/18 5/19 5/24 6/3 6/7 6/10 10/16 11/13 11/18 13/5 14/20 16/18 17/20 18/5 20/14 21/1 22/15 22/17 23/17 23/18 25/1 25/25 26/18 27/8 30/18 30/21 32/17 33/17 33/21 35/3 36/14 40/13 41/8 42/20 43/23 44/21 45/6 46/14 46/19 46/23 46/24 47/11 47/14 47/21 47/22 48/1 49/19 50/12 50/19 51/3 51/14 56/13 56/20 59/9 59/23 60/3 60/10

**R**

right... [13]  61/12
62/20 65/12 67/19
72/4 72/18 72/22
73/3 73/6 73/9
73/12 73/14 75/19
RMR [1]  76/11
road [2]  2/6 8/12
ROBERT [2]  2/8
5/23
rogue [7]  57/25
61/24 62/1 65/4
71/17 74/14 74/19
role [1]  50/21
roll [2]  33/16 48/21
Rolling [1]  2/7
room [2]  40/9 70/13
ROSS [3]  2/5 5/17
20/24
RPR [1]  2/21
rule [11]  26/23
26/23 30/25 31/4
31/12 34/2 34/8
49/21 49/23 56/14
68/8
ruled [1]  28/8
ruling [6]  28/3
29/18 53/6 54/17
65/1 65/3
rulings [1]  64/22
run [1]  32/6
running [1]  38/9

**S**

said [37]  9/21 17/12
17/15 17/15 24/9
25/22 26/21 27/4
27/14 29/11 29/16
29/19 30/5 30/21
34/9 34/11 34/23
36/6 37/8 37/10
37/12 37/20 39/17
39/17 45/24 46/2
50/13 55/1 56/22
60/5 61/5 61/6
63/24 67/10 68/3
68/17 70/1
same [11]  13/21
19/3 19/24 20/6
30/21 38/13 59/10
61/8 63/6 65/6 70/4
Sansone [11]  9/17
12/2 40/2 44/1
53/19 56/4 60/12
66/1 66/4 66/6
66/14
Sarris [1]  29/10
satisfied [1]  74/9
satisfy [1]  31/4
saw [2]  40/10 41/24
say [54]  16/19 27/6
30/3 30/16 31/14
31/20 31/24 32/10
32/11 33/1 33/20
34/10 35/5 35/10

35/19 37/10 38/5
38/14 41/11 41/14
41/15 43/10 45/1
45/11 45/17 45/25
47/20 48/2 49/16
50/1 50/3 50/9 51/7
52/4 52/9 52/18
53/5 55/14 56/14
56/14 56/16 57/3
58/7 59/1 60/1
60/25 62/13 64/1
66/10 66/12 66/18
70/14 70/23 71/7
saying [9]  34/9 36/7
39/2 47/16 48/19
48/22 48/23 56/3
68/17
says [24]  8/13 22/8
26/25 28/24 31/21
31/21 33/17 35/4
35/24 38/19 43/3
44/25 45/3 45/16
46/2 47/6 47/19
56/15 56/16 56/17
57/12 60/23 60/25
71/24
scenario [1]  29/10
schedule [4]  14/6
18/12 24/3 25/7
scheduled [1]  6/12
Schwanky [1]
39/12

# S

scope [1] 68/24
screened [1] 47/10
screens [1] 47/10
scribbled [1] 63/17
scrutiny [1] 9/13
search [1] 61/2
second [5] 34/14
 41/20 54/17 64/20
 65/1
secondly [1] 52/22
Section [1] 76/5
see [9] 21/6 21/9
 21/24 45/16 53/23
 57/3 59/2 60/2 70/6
seeking [1] 25/23
seems [6] 7/11 7/13
 19/1 20/12 44/25
 53/5
seen [1] 21/13
seminal [1] 16/7
send [11] 10/25
 14/22 15/7 30/15
 46/22 46/24 48/9
 52/17 52/18 52/22
 68/11
sender [2] 57/25
 74/17
sending [4] 14/17
 53/8 61/10 68/16
sends [1] 69/6
sense [1] 8/6

sent [38] 7/4 7/18
 7/24 8/3 8/9 8/11
 8/18 8/22 9/4 9/9
 10/12 10/15 28/23
 28/25 29/16 31/11
 34/3 34/24 36/23
 43/19 52/14 52/24
 52/25 54/22 55/1
 55/10 55/21 56/21
 61/24 62/1 62/13
 67/18 68/7 69/5
 71/22 72/2 72/8
 72/8
sentence [1] 45/5
sequence [1] 14/5
sequenced [1] 12/6
sequencing [1]
 11/19
series [1] 7/19
serious [1] 74/7
seriously [1] 73/16
set [4] 16/25 17/2
 21/7 49/12
setting [1] 49/24
settle [4] 9/8 31/16
 39/2 65/6
settled [4] 7/11
 33/19 37/20 53/16
settlement [82]
settlement's [1]
 70/17
settling [3] 32/16

Seven [1] 22/7
several [2] 65/7
 71/11
shall [2] 20/8 20/8
she [2] 35/13 40/2
she's [1] 35/14
sheet [3] 69/5 69/6
 69/8
short [1] 75/14
should [33] 7/2
 11/20 15/15 15/20
 18/25 19/10 19/15
 23/9 25/4 27/5 28/1
 31/11 32/9 33/7
 33/15 34/3 37/5
 43/18 45/10 46/10
 48/11 48/16 50/13
 50/14 51/18 58/2
 60/21 65/4 66/15
 68/9 71/6 72/2
 75/15
shouldn't [1] 38/3
show [6] 30/3 30/11
 58/23 61/7 62/21
 72/19
showed [1] 47/9
showing [2] 31/13
 33/1
shown [1] 50/15
sides [3] 12/5 12/5
 74/4

# S

sign [6]  35/14 35/24 36/1 36/3 37/3 37/3
signed [2]  36/20 45/14
significant [1]  64/22
similar [1]  36/6
simple [1]  14/12
simply [5]  8/7 44/15 54/5 57/22 62/12
since [1]  28/18
sincere [2]  14/11 54/21
single [1]  17/14
sir [2]  72/25 73/5
situations [1]  21/13
six [1]  60/6
six-page [1]  60/6
Sixth [1]  30/5
slow [1]  15/18
slowly [1]  34/2
small [2]  28/15 46/6
so [121]
solicitation [1]  29/15
Solicited [2]  34/2 34/8
some [39]  6/19 7/2 8/12 8/24 9/11 14/2 18/10 18/13 20/19

23/3 25/16 27/16 27/22 28/17 29/12 29/23 31/18 31/25 32/1 34/7 34/22 35/6 35/8 35/9 47/10 53/5 55/2 55/2 55/7 55/25 57/12 58/14 58/15 60/23 62/6 63/9 64/13 74/23 75/1
somebody [16]  31/21 34/4 35/4 45/12 45/25 46/20 46/25 47/6 52/22 53/7 54/24 58/23 60/6 61/8 63/15 67/8
somebody's [2]  36/14 45/13
somehow [2]  56/7 57/18
someone [11]  8/13 14/23 14/24 34/23 46/11 54/10 55/3 55/25 58/3 62/10 71/3
something [20]  11/14 11/21 11/22 16/19 18/23 24/15 24/21 27/19 33/7 33/11 37/13 39/18 40/6 47/8 52/1 56/2

75/5
sometimes [1]  33/8
somewhat [1]  8/5
somewhere [1]  63/12
soon [2]  21/23 75/16
sooner [1]  75/13
sorry [4]  23/15 28/10 29/19 40/12
sort [1]  10/8
sought [3]  19/14 30/13 53/6
sounds [2]  44/23 57/6
specific [9]  8/21 9/20 10/5 34/24 44/2 44/18 44/19 56/2 66/19
specifically [3]  8/21 19/2 42/9
specifics [1]  19/16
specify [1]  26/7
spent [4]  9/16 44/14 54/15 60/11
St [1]  34/17
stages [1]  74/18
stand [1]  6/21
standard [2]  38/25 46/14
start [11]  6/25 7/17

**S**

start... [9]  11/10 14/17 18/8 18/9 26/9 30/14 59/4 60/17 60/17

started [4]  7/20 48/23 59/4 62/24

starting [1]  5/10

state [5]  5/10 42/3 42/21 43/16 67/7

stated [5]  18/11 22/18 24/2 71/14 74/5

statement [1]  67/11

STATES [8]  1/1 1/16 27/1 76/1 76/5 76/5 76/8 76/12

stating [2]  36/21 71/19

station [1]  30/18

status [1]  68/7

statute [1]  37/10

stenographic [1]  76/6

step [3]  9/21 40/18 59/10

sticker [3]  60/14 60/16 62/24

still [8]  13/21 14/21 27/17 35/19 39/10 54/1 59/15 68/17

stipulation [1]

Stop [1]  46/8

Street [3]  2/13 2/15 2/19

stricken [1]  34/12

subject [2]  35/1 42/25

submit [10]  14/10 15/15 18/17 21/11 21/15 23/19 23/24 36/13 36/20 39/8

submitted [7]  16/25 17/3 17/7 17/25 18/1 36/11 63/9

submitting [5]  17/5 18/15 21/12 23/19 63/11

subscribe [1]  44/5

subscribed [3]  40/25 41/5 45/7

subscribes [1]  54/6

subsequently [2]  17/13 21/15

substantial [3]  54/22 55/4 62/17

substantially [1]  11/2

successfully [3]  9/3 28/23 28/25

such [3]  29/7 41/2 69/20

sued [1]  52/23

sufficient [3]  20/3 21/19 31/7

suggest [4]  32/12 55/23 56/7 62/5

suggested [4]  12/25 14/12 20/13 75/10

suggesting [3]  20/3 27/19 57/22

suggestion [1]  65/5

suggests [3]  14/14 22/10 58/16

Suite [6]  2/6 2/10 2/13 2/15 2/19 2/21

supplied [2]  55/9 55/19

support [1]  23/25

supported [1]  29/22

supposed [7]  14/5 31/13 32/8 49/9 55/10 66/16 66/17

supposedly [1]  38/22

Supreme [1]  16/7

sure [25]  6/11 8/8 10/1 10/3 16/12 17/23 20/1 20/2 20/5 21/13 21/17 22/8 27/10 35/2 44/11 49/4 55/5 55/11 55/21 57/14 62/13 66/17 69/14

**S**

sure... [2] 70/2 70/3
surely [1] 59/8
surprised [1] 69/15
surprisingly [1] 34/12
suspect [1] 50/5
suspicious [1] 48/11
swear [2] 29/1 42/6

**T**

table [1] 69/16
take [10] 6/23 15/10 15/12 15/17 15/17 32/14 34/15 44/3 45/10 67/20
taken [1] 76/6
taking [1] 56/5
talk [1] 45/5
talked [2] 40/1 46/3
talking [6] 30/9 38/9 40/15 42/18 58/25 61/3
talks [3] 29/15 50/19 51/4
TAMPA [19] 1/2 1/8 2/3 2/12 2/13 2/13 2/22 9/5 41/2 45/10 45/19 48/13 54/3 54/12 60/1 60/8 62/13 65/20

Tandusky [1] 30/5
tangent [1] 52/11
technique [1] 14/3
telephone [1] 66/3
tell [10] 6/17 9/21 31/15 32/15 35/22 36/10 38/18 50/24 60/15 75/13
telling [3] 37/1 56/25 63/25
tells [3] 42/2 63/10 70/9
ten [2] 18/7 47/6
term [4] 69/5 69/6 69/7 72/15
terms [6] 12/3 15/20 22/11 36/5 38/13 69/10
test [2] 55/10 55/20
testifies [1] 61/8
testimony [1] 35/1
Texas [1] 54/24
than [13] 7/10 13/2 14/25 16/11 24/18 25/14 46/14 52/1 57/6 59/3 64/18 65/10 72/16
thank [22] 5/8 5/14 5/16 5/18 5/22 5/24 6/2 6/7 6/8 6/9 6/10 8/1 16/21 25/18

65/22 70/23 73/8 73/10 75/19
that [530]
that process [1] 15/10
that's [90]
their [26] 20/9 21/18 22/9 26/22 30/19 32/3 38/1 39/5 45/6 45/14 46/3 46/11 46/21 46/21 47/6 51/5 51/23 53/8 56/13 56/17 56/23 59/13 60/13 68/10 69/19 69/24
theirs [1] 28/14
them [48] 6/23 9/12 9/20 19/18 26/5 26/7 31/24 34/4 34/4 34/7 35/7 35/8 35/10 35/21 37/1 37/19 38/15 40/5 42/6 44/6 44/6 46/18 46/19 47/2 47/15 47/21 48/5 49/20 49/21 52/14 52/15 52/17 52/22 52/24 53/1 53/7 53/9 56/15 56/17 57/21 59/7 59/11

them... [6] 63/14
63/15 63/15 65/7
70/15 72/12
themselves [7]
30/14 57/18 57/23
57/25 58/1 66/20
74/21
then [87]
theoretical [1] 55/7
theoretically [1]
13/16
theory [1] 66/11
there [52] 6/21 6/25
9/13 10/12 10/14
10/23 12/18 13/15
14/5 16/12 19/7
22/14 23/4 25/3
25/21 26/2 27/19
35/8 35/9 35/11
36/7 37/16 39/17
40/14 47/1 48/6
50/5 52/21 55/8
55/15 55/19 57/25
58/8 58/14 58/22
60/22 61/22 63/19
71/9 71/17 71/21
71/22 72/1 72/1
72/3 72/7 72/12
74/2 74/12 74/22
75/4 75/5
there's [33] 8/2 8/6

26/6 32/23 33/20
36/6 43/21 50/23
53/5 55/22 56/22
57/1 57/12 57/15
58/16 59/18 60/24
61/11 61/15 61/19
61/23 62/4 62/11
68/14 71/23 71/25
72/14 72/14 72/20
75/12
therefore [2] 8/15
53/8
these [40] 8/14 8/15
8/21 17/22 27/25
29/17 29/22 30/10
32/2 32/5 32/19
33/17 34/5 34/5
38/20 38/23 39/2
39/4 42/1 42/24
44/25 46/3 47/17
47/25 48/1 48/7
49/18 49/20 54/21
54/22 57/7 57/10
59/9 59/20 61/6
62/3 62/5 62/14
63/8 71/8
they [209]
they'll [4] 30/3 32/4
32/4 60/7
they're [41] 30/7
31/13 33/9 35/3

38/4 38/22 41/20
43/8 43/9 44/7
45/11 47/1 47/2
47/7 48/21 48/22
51/9 52/9 55/24
56/24 56/25 57/14
57/15 58/8 58/9
58/10 58/10 58/11
58/14 59/22 60/7
60/25 64/22 69/14
69/25 70/5 70/6
they've [5] 30/20
32/10 38/8 60/5
68/5
thing [17] 17/23
19/7 28/19 30/15
35/14 36/15 37/4
40/3 45/21 49/18
51/3 56/19 61/4
61/8 69/11 69/20
70/21
things [19] 11/5
15/18 19/13 26/22
29/17 34/5 38/20
39/3 39/4 39/13
49/18 49/20 53/15
55/23 57/11 63/6
63/7 63/8 64/13
think [56] 8/1 8/3
8/7 8/17 9/15 9/17
9/20 9/21 10/5

1

think... [47]  10/11
10/23 11/25 12/7
12/8 12/14 12/17
12/20 14/8 14/20
14/21 15/16 15/17
15/21 16/5 17/21
18/19 19/10 21/2
21/20 22/10 25/20
27/4 37/5 37/13
39/21 47/5 50/4
50/7 50/8 52/10
53/17 55/17 56/25
57/1 57/23 62/11
63/22 64/21 65/5
66/15 66/18 67/17
68/14 70/21 71/14
74/13
thinks [2]  38/3 44/8
third [2]  38/23
52/15
this [136]
thorough [1]  74/2
thoroughly [2]
73/17 74/8
those [35]  7/5 7/18
10/8 12/9 13/21
14/18 14/21 18/1
18/2 18/19 22/23
25/25 26/4 26/5
27/17 27/17 29/7
44/5 47/22 48/9

55/22 56/7 56/21
57/3 58/23 60/19
63/6 63/11 66/9
66/13 75/2 75/16
though [8]  7/6 8/23
15/4 34/21 45/16
58/14 61/19 65/19
thought [6]  13/24
39/21 40/12 49/10
50/5 64/18
thoughts [1]  40/10
three [2]  40/4 71/24
threshold [2]  15/19
58/13
through [12]  7/13
12/22 17/22 22/23
36/12 56/17 56/18
62/3 62/21 65/9
70/3 76/7
throughout [1]
48/1
tickets [2]  7/20 9/5
tight [1]  69/23
time [44]  6/11 7/23
8/9 8/19 9/16 15/10
21/19 21/21 22/8
22/11 23/3 23/6
25/10 25/12 25/15
26/5 27/23 33/22
33/22 34/15 35/11
40/9 41/13 41/16

46/15 47/3 48/12
50/15 52/8 52/10
54/8 54/16 55/14
60/11 67/4 68/20
73/15 73/21 75/12
75/12 75/19
timely [1]  14/7
times [2]  50/9 60/11
ting [1]  36/10
Title [1]  76/5
today [14]  6/19
23/20 25/14 26/23
27/6 35/13 63/7
65/6 67/4 67/24
69/21 70/5 70/24
74/6
together [1]  34/7
told [9]  24/3 33/3
34/4 43/8 46/20
47/1 48/5 48/15
57/8
too [2]  19/15 46/19
took [1]  56/24
top [2]  21/23 21/25
total [1]  67/14
towards [1]  44/4
train [1]  40/12
transcribed [1]
1/24
transcript [4]  1/14
68/14 76/3 76/7

# 122

transcription [2] 1/25 76/6

transcriptionist [1] 1/24

transmission [14] 29/4 29/23 30/1 30/10 33/17 34/21 35/19 35/20 36/9 48/4 59/19 60/24 61/17 67/9

transmissions [1] 71/18

transmitted [1] 62/18

treatment [1] 70/13

tried [1] 65/6

trier [1] 34/25

true [2] 58/17 76/6

truthfully [1] 49/20

try [5] 8/2 13/15 31/4 57/10 74/16

trying [7] 9/18 9/25 15/4 20/22 30/7 45/17 50/22

TTA [10] 26/20 27/4 43/11 51/24 66/24 67/1 67/12 67/13 67/15 68/3

turn [1] 14/14

turned [1] 61/25

turnover [2] 14/16

turns [1] 63/22

Tursland [1] 61/5

tweaking [1] 38/13

tweaks [1] 69/13

Twenty [1] 48/12

Twenty-five [1] 48/12

twice [1] 34/8

two [11] 8/14 8/15 10/8 10/21 40/5 40/18 41/19 64/11 64/21 69/7 69/16

Two-page [1] 69/7

typical [3] 61/21 61/21 62/4

# U

U.S [2] 16/8 16/8

ultimately [1] 22/17

unbeknownst [1] 54/24

uncertainty [1] 18/13

unclaimed [1] 32/17

under [11] 9/7 16/9 29/1 31/12 32/1 32/11 45/14 59/9 67/8 67/11 67/11

underneath [1] 43/3

undersigned [1] 76/6

understand [8] 15/4 20/21 22/20 25/3 37/24 49/4 56/24 60/7

Understood [1] 25/18

unfair [1] 59/24

unfortunately [1] 74/14

unilaterally [1] 51/22

unique [1] 32/21

UNITED [8] 1/1 1/16 27/1 75/21 76/5 76/5 76/8 76/12

University [1] 30/17

unjustifiably [1] 36/4

unless [4] 24/15 24/21 53/11 65/16

until [4] 7/22 12/10 13/3 19/14

unusual [1] 56/6

up [23] 6/23 12/23 13/25 14/18 14/22 14/23 19/20 21/7 21/8 21/22 30/20 35/22 40/5 40/13

## U

up... [9] 44/14 47/9 49/24 50/15 55/15 66/9 68/12 69/12 69/13

upon [25] 6/12 6/19 18/3 18/13 23/20 25/2 25/5 25/12 27/23 27/24 28/4 41/18 46/10 51/17 54/11 55/24 56/24 57/22 57/24 58/3 62/8 62/9 65/8 65/9 72/9

us [12] 9/21 13/8 13/19 14/19 15/21 25/8 37/8 40/2 40/10 47/1 54/25 74/15

use [14] 28/23 30/2 30/3 30/7 31/16 35/20 35/21 45/21 48/3 50/11 58/9 63/11 63/14 70/18

used [8] 12/5 13/20 32/6 39/14 51/2 55/11 71/9 72/9

using [6] 1/24 47/3 51/7 58/10 58/11 69/6

Usually [1] 50/23

## V

valid [1] 9/24

value [1] 64/25

variety [1] 62/4

various [3] 59/21 62/17 74/17

VARNER [4] 2/12 5/25 6/2 73/3

Vein [1] 34/17

vendors [1] 40/5

verification [2] 44/14 74/23

verified [1] 57/4

verify [8] 40/19 40/22 43/5 44/16 45/3 45/18 45/18 54/5

verifying [1] 46/20

versus [1] 66/23

very [18] 9/23 12/4 14/11 15/17 16/1 44/10 54/20 60/12 61/4 61/20 62/5 62/5 64/11 67/22 67/22 67/22 74/18 75/13

via [3] 1/15 1/24 17/2

Videoconference [1] 1/15

view [4] 11/2 15/20 53/19 64/23

views [1] 11/2

voluminous [1] 72/10

vs [5] 1/7 5/6 29/10 30/5 34/17

## W

Wabash [1] 2/10

wait [2] 19/14 34/9

waited [1] 13/11

waiving [2] 35/3 35/3

Wanca [4] 2/6 37/15 38/18 63/25

Wanca's [14] 29/6 29/12 29/15 30/1 34/6 34/19 35/17 36/8 39/13 48/2 48/19 50/10 69/5 69/15

want [40] 6/25 8/8 8/12 12/19 12/23 15/2 15/11 16/19 19/12 20/5 20/22 22/2 22/13 24/15 26/9 30/11 35/24 36/16 36/25 37/16 37/24 37/25 37/25 38/2 44/22 49/4 50/9 50/17 53/9 56/9 65/13 66/20 68/11 69/22 70/20 70/25 72/4 72/23

## W

want... [2]  73/4
73/22
wanted [8]  17/3
17/11 17/23 34/16
51/22 52/17 52/22
56/2
wants [4]  29/8
33/11 33/12 38/19
was [120]
wash [1]  53/13
wasn't [3]  13/10
67/17 68/6
watching [1]  70/13
Watkins [1]  2/9
way [8]  10/2 10/25
13/8 30/5 39/2
48/22 50/16 70/17
we [184]
we'd [4]  9/22 9/23
10/1 21/21
we'll [6]  15/8 16/17
59/11 60/19 60/22
75/19
we're [34]  8/6 9/18
12/18 14/17 15/6
20/21 24/2 29/23
30/6 30/9 32/16
37/14 37/14 37/15
37/15 39/5 40/15
43/21 46/22 46/23
47/16 49/8 50/16

55/5 58/24 63/24
63/24 63/24 63/25
65/5 66/15
we've [4]  14/15
37/8 53/18 64/21
website [7]  19/8
19/16 20/17 21/6
21/22 22/1 27/20
weeks [1]  10/21
weigh [1]  65/14
weight [1]  66/10
well [32]  5/23 8/13
10/20 14/8 16/13
19/19 20/17 23/25
24/14 25/8 25/13
27/18 31/21 37/3
38/18 38/25 40/13
47/7 49/8 49/15
50/3 51/19 52/20
57/20 58/5 59/5
59/17 63/13 71/2
72/19 75/2 75/17
went [5]  7/21 9/21
10/7 52/25 70/9
were [69]  7/18 7/24
8/3 8/9 8/11 8/18
8/22 9/3 9/25 10/12
11/8 17/7 17/12
21/8 21/16 24/21
28/22 28/25 30/15
31/4 33/25 34/5

39/21 40/1 40/6
40/7 40/9 41/1
41/15 41/23 42/3
45/6 45/9 47/2
48/20 49/9 49/10
51/7 52/9 52/13
52/14 52/23 52/24
54/22 55/9 55/9
55/10 55/19 55/20
61/7 61/9 62/3
62/15 62/17 63/11
63/19 68/3 68/9
68/16 68/17 71/21
72/7 72/8 72/8 72/8
74/23
weren't [11]  7/22
9/17 10/15 35/11
37/9 40/1 55/12
55/23 58/7 68/10
71/22
West [3]  2/19 34/18
61/2
what [113]
what's [17]  18/6
24/15 27/21 28/4
32/17 36/11 40/18
40/18 41/8 46/9
46/10 48/2 48/3
48/8 52/2 56/4 70/1
whatever [9]  30/18
33/12 34/1 35/12

**W**

whatever... [5]
47/14 50/16 58/9
63/10 63/18
when [33]  8/3 8/11
8/21 9/21 10/6 10/7
10/12 14/11 18/24
18/25 19/9 20/22
21/25 23/8 25/7
25/15 30/10 38/11
40/2 45/11 46/9
50/20 57/3 58/7
60/7 60/24 61/9
63/16 67/9 69/4
69/5 70/9 74/25
whenever [1]  25/5
where [26]  6/17
8/12 11/14 12/23
14/18 20/7 21/15
29/5 29/25 30/2
31/22 31/24 35/19
37/12 40/11 41/20
44/9 44/14 45/3
59/4 59/22 60/16
60/17 60/17 62/23
74/15
whether [31]  9/24
12/8 12/10 12/14
13/13 16/17 16/25
19/12 21/10 23/9
25/4 28/1 28/6 28/8
31/8 34/23 43/20

46/17 47/18 47/18
52/15 53/7 57/24
58/3 66/20 71/6
74/23 75/1
which [24]  7/8 9/1
17/7 17/12 22/5
27/19 27/22 32/14
38/16 42/20 46/17
54/23 54/25 55/9
56/6 57/23 61/24
64/17 64/25 69/22
71/3 72/7 74/14
74/21
who [55]  9/3 9/12
13/22 15/6 17/7
20/19 27/17 28/22
28/24 28/24 28/25
29/21 30/4 30/9
30/11 30/12 30/22
30/22 31/18 31/20
32/2 32/6 33/24
34/4 34/19 35/4
35/6 35/8 35/9
36/19 36/20 36/25
38/5 38/14 38/15
38/20 39/7 39/17
46/12 47/10 52/8
52/15 53/9 57/17
58/8 59/14 60/4
61/24 62/2 62/10
63/15 65/10 66/4

who's [3]  30/23
50/23 55/3
whoever [1]  30/9
whole [3]  36/2 37/4
57/20
whose [2]  30/12
30/14
why [41]  27/15
27/22 31/18 32/9
33/16 33/16 33/18
33/19 37/21 45/12
45/14 45/17 45/24
50/2 50/25 51/18
55/24 57/8 59/5
59/6 59/7 59/12
59/12 59/14 59/19
59/19 60/5 61/16
63/12 67/3 67/5
67/17 68/6 69/4
69/8 69/18 69/19
69/21 69/25 73/19
74/21
wide [1]  68/24
will [60]  6/17 9/12
10/21 10/22 11/16
12/2 15/12 15/17
17/2 17/4 17/22
18/1 18/8 18/9
19/25 21/5 21/8
22/14 22/15 22/16
22/24 23/8 23/11

## W

will... [37] 24/17 24/19 25/7 25/13 27/20 27/25 28/5 28/8 29/1 31/11 32/3 32/18 35/6 35/7 35/8 35/9 38/18 39/1 42/4 42/22 43/5 45/5 46/7 48/10 53/22 60/1 60/20 61/4 61/23 64/14 66/20 71/4 71/4 73/19 75/1 75/13 75/14

willing [13] 10/1 31/20 31/25 33/10 35/2 35/5 35/10 37/2 38/5 38/14 45/21 58/6 59/6

within [9] 14/6 18/7 18/22 24/16 25/14 26/7 27/21 75/2 75/13

without [3] 44/18 48/9 49/24

won't [5] 13/23 32/4 32/20 35/7 48/14

word [1] 66/11

words [11] 35/25 45/1 45/2 46/3 47/22 57/3 60/19

70/4 70/24

work [3] 15/25 28/12 53/22

worked [1] 41/12

working [8] 45/2 45/6 45/15 46/12 46/17 57/5 58/8 61/9

works [1] 17/18

world [1] 54/19

worried [1] 9/11

worry [1] 14/18

worse [3] 43/13 59/3 70/17

worst [1] 29/9

worst-case [1] 29/9

worth [1] 67/17

would [72] 12/9 12/9 12/13 12/15 13/1 13/14 13/14 14/1 14/2 14/3 14/25 16/25 17/13 20/15 21/17 21/18 22/10 23/11 26/1 26/21 28/3 28/15 28/15 31/15 32/12 34/21 35/12 36/9 36/18 36/20 36/25 39/6 39/24 43/14 43/15 43/24 44/2 44/2 45/12 45/13

50/8 52/7 52/20 58/20 58/20 59/6 59/9 59/12 60/18 62/10 63/12 64/24 64/25 65/18 65/22 65/24 66/4 66/6 67/11 67/15 67/25 68/21 68/22 68/25 69/20 71/8 72/19 74/11 75/10

wouldn't [4] 27/4 33/6 53/3 59/5

write [1] 39/2

wrong [6] 42/7 46/3 52/23 59/25 70/6 74/9

## Y

yeah [12] 31/22 31/24 34/11 42/11 46/13 49/8 58/5 60/14 60/14 60/14 62/13 68/19

year [2] 14/15 17/14

years [9] 8/6 30/23 34/24 38/9 38/11 47/7 48/1 63/2 65/7

yes [17] 11/11 11/12 11/16 11/17 11/24 18/4 21/2 24/7 42/15 42/19

# Y

**yes... [7]** 44/23 47/2
47/2 50/12 56/11
58/17 65/25
**yet [2]** 11/10 15/23
**you [234]**
**you'll [6]** 26/20
38/8 44/8 54/23
63/22 75/17
**you're [25]** 11/13
17/20 20/18 23/6
27/6 27/19 28/16
34/9 37/1 37/2
42/10 42/18 43/1
43/8 46/9 48/15
49/12 57/1 57/2
58/6 61/3 64/10
70/13 71/13 71/18
**you've [7]** 18/10
36/1 36/2 59/8
69/13 69/14 75/16
**you-all [6]** 6/17
23/23 23/25 25/5
75/10 75/19
**your [142]**
**your-all's [1]** 73/14

# Z

**zero [1]** 68/1
**Zoom [1]** 1/15