# EXHIBIT 3

Cin-Q Automobiles, Inc., et al. v. BTL
Case No. 8:13-cv-01592-AEP (M.D. Fla.)

| | |
|---|---|
| **From:** | Glenn Hara <ghara@andersonwanca.com> |
| **Sent:** | Thursday, June 1, 2023 7:37 PM |
| **To:** | Collins, Robert (CH) |
| **Cc:** | ross@loftusandeisenberg.com; m@mcalaw.net; mca2175@hotmail.com; Mester, Mark (CH); Slater, Gabe (CH) |
| **Subject:** | RE: Cin-Q v. BTL – Meet & Confer on Requests for Information / Defect Notices |

Robbie and Mark,

We write in response to your email of May 30, 2023, regarding the status of the parties' meet-and-confer efforts on Epiq's defect notices/requests for additional information.

## I. Points of Agreement.

You are correct that Plaintiffs agree Epiq should follow up with a defect notice or request for more information (which Epiq has previously called a "Notice of Incomplete Claim") in the following categories:

1. Claims containing non-matching fax numbers (*i.e.*, any claim containing a fax number <u>not</u> matching a number on the Biggerstaff list);
2. Multi-Claimed Fax Number (*i.e.*, any claim featuring a fax number also listed on another claim form);
3. Missing Signature;
4. Potential Government Entity; and
5. Claims submitted by entities not registered until after the class period (*i.e.*, July 2009 to June 2010).

We note that Plaintiffs have been in agreement on points 1-4 since our response to Epiq's first email raising "defect" issues on April 26, 2023, and in agreement on point 5 since our meet-and-confer with BTL on May 16, 2023.

## II. Points of Disagreement

### A. The claimed "five-fax" limit.

Although not mentioned in your May 30 email, we wanted to make sure it is clear that we intend to raise with Judge Porcelli the claimed "five-fax-per-claimant' limit that Epiq has stated it intends to implement, at BTL's urging. If you recall, Epiq at first agreed with Plaintiffs that there is no such limit and that claimants who file otherwise valid claims on more than one fax number will be paid according to the number of faxes received at that number on the Biggerstaff List. (email from O. Castillejos, Feb. 23, 2023). BTL then convinced Epiq to change its mind to interpret the Agreement as meaning no claimant may recover more than $615, regardless of how many fax numbers they claim on. (Castillejos email, Feb. 28, 2023). More recently, the Intervenors asked Epiq about this issue, and Epiq reiterated the view that claimants are limited to five faxes. (Castillejos email Apr. 26, 2023).

1

We would note that this issue was briefed at the preliminary approval stage in Intervenors' Response to Motion for Preliminary Approval and in Plaintiffs' Reply in Support of Preliminary Approval. Intervenors argued the Cin-Q Settlement is "substantially the same" as the TTA Settlement. (Doc. 325 at 2). Plaintiffs responded that the Cin-Q Settlement is substantially better than the TTA Settlement because claimants would be paid "up to $615 *per fax number*" in the Cin-Q Settlement, compared to $565 per fax number in the TTA Settlement. (Doc. 329 at 4 (emphasis added)).

Intervenors argued it was unclear whether claimants with more than one fax number would be paid for each fax number under the Cin-Q Settlement. (Doc. 325 at 6–7). Plaintiffs responded that Intervenors were mistaken because the submission of each fax number is a "claim," and the claim form the parties negotiated allows claimants to make multiple "claims" in a single form, stating, "List all numbers at which you or your company received faxes between July 14, 2009, and June 9, 2010," and "Attach a separate sheet if necessary," and stating that "The Settlement Administrator will verify that the fax number(s) you provide appear(s) in the existing records related to the case before approving your claim." (Doc. 329 at 7). Plaintiffs argued that the notice "plainly tells claiming class members they will be paid for each fax number." (*Id.*) As far as we can see, BTL was silent on the issue until February 2023. It does not appear to us that BTL or anyone else raised the issue at the preliminary approval hearing.

  B. **The points of disagreement in BTL's May 30, 2023 email.**

We believe BTL has correctly identified these points of disagreement as issues the court should decide:

  1. **Claimants Identified By Epiq Using The TransUnion And LexisNexis Reverse Lookups**

Plaintiffs agree with Epiq that "defecting records identified by LexisNexis or TransUnion" would be inappropriate. The fact that a claimant was identified in a reverse lookup in not indicia of fraud or anything else. We are at an impasse on this issue, and BTL should raise it with the Court if it insists this is a valid reason for a defect letter.

  2. **Claimants Not Identified By <u>Either</u> Reverse Lookup; Claimants Providing Addresses From Outside The State Of Florida**; **Claimants Providing Three Or More Fax Numbers**

As we've discussed, there is nothing indicative of fraud in these scenarios. We agree with Epiq that, if the claim form is (1) timely, (2) signed under penalty of perjury, and (3) provides a matching fax number, then the claim should be paid. (email of S. Amin-Giwner, May 15, 2023). If BTL has evidence any particular claim is actually fraudulent, it should bring that evidence to the Administrator.

  III. **BTL's "New Questions" Raised in 5-30-23 Email**

    1. Do Plaintiffs agree to send requests for additional information to claimants identified by the reverse lookups if the reverse lookups identified <u>multiple</u> matches for the claimed fax number?

No, Plaintiffs do not agree. As we've discussed, there is no reason to assume there is anything fraudulent regarding such claimants. If there are multiple <u>claims</u> on a particular fax number, the parties have already agreed that this falls under the "multi-claimed fax number" scenario and should receive request(s) for additional information.

2. Do Plaintiffs agree to send requests for additional information to claimants <u>not</u> identified in the TransUnion or LexisNexis reverse lookup if the claimant provided a fax number for which the reverse lookups identified contrary matches?

No, Plaintiffs do not agree. As we've discussed, there is nothing indicative of fraud in this scenario, and we agree with Epiq that, if the claim form is (1) timely, (2) signed under penalty of perjury, and (3) provides a matching fax number, then the claim should be paid. (email of S. Amin-Giwner, May 15, 2023). If BTL has evidence any particular claim is actually fraudulent, it should bring that evidence to the Administrator. We note that under BTL's proposal—where defect notices are sent to claimants identified in a reverse lookup, as well as claimants not identified in a reverse lookup—*every person who filed a claim in this settlement would receive a defect notice.*

    **IV.**    **Epiq's proposal re: OFS and prisoner claimants.**

Finally, as to "whether Plaintiffs have any position as to the measures Epiq proposed to identify claims submitted by potential fax service providers and claims submitted by potential prisoners," in Ms. Amin-Giwner's email of May 24, 2023, Plaintiffs do not oppose the measures Epiq explained.

Regards,
Glenn L. Hara
Anderson + Wanca
3701 Algonquin Rd., Suite 500
Rolling Meadows, IL 60008
(847) 368-1500