# EXHIBIT 5

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CIN-Q AUTOMOBILES, INC., et al., | ) ) |
| Plaintiffs, | ) |
| v. | ) ) |
| BUCCANEERS LIMITED PARTNERSHIP and JOHN DOES 1-10, | ) ) ) ) |
| Defendants, | ) ) |
| TECHNOLOGY TRAINING ASSOCIATES, INC., et al., | ) ) ) ) |
| Intervenors. | ) |

Case No. 8:13-cv-01592-AEP

Magistrate Judge
Anthony E. Porcelli

## DECLARATION OF GABRIEL W. SLATER

I, Gabriel W. Slater, declare and state as follows:

1. I am an attorney admitted to practice law in the State of Illinois. I am an associate with the law firm of Latham & Watkins LLP, counsel for Defendant Buccaneers Team LLC f/k/a Buccaneers Limited Partnership ("BTL"). This declaration is based upon my first-hand knowledge. If called upon to do so, I could and would testify competently thereto.

### A. Review Of Claims Data

2. In connection with this litigation, the Settlement Administrator, Epiq Class Actions & Claims Solutions, Inc. ("Epiq"), provided BTL, Plaintiffs and Intervenors with an Excel spreadsheet titled "Cin-Q Auto Inc v. BTL2023-04-03_v2.xls."

3.  The spreadsheet contains a comprehensive list of the information provided by claimants on Claim Forms submitted in this case. Specifically, for each claim, the spreadsheet lists: (i) the claimant's individual or entity name; (ii) the address provided by the claimant; (iii) each fax number provided by the claimant; (iv) whether each fax number provided by the claimant matches a number on the Biggerstaff list; (v) whether each Claim Form is signed; (vi) whether the claimant is an individual or a business entity; and (vii) whether the claimant received Mailed Notice as a result of the reverse lookup process. All of the subsequent information contained in this declaration concerning the claims data is derived from the contents of the spreadsheet provided by Epiq.

4.  In total, the spreadsheet provided by Epiq lists 3,016 claims.

5.  Across those 3,016 claims, the claimants collectively provided 20,363 individual fax numbers on the Claim Forms they submitted.

6.  Of these 20,363 fax numbers, a total of 16,853 did _not_ match the Biggerstaff list and were thus presumptively invalid. Thus, approximately 83% of all claimed fax numbers did _not_ match the Biggerstaff list.

7.  The provision of fax numbers _not_ matching the Biggerstaff list was _not_ isolated to a limited set of claims. In total, 2,738 claims included at least one fax number that did _not_ match the Biggerstaff list, accounting for 91% of all claims.

8.  Indeed, Plaintiff Cin-Q submitted two fax numbers that did _not_ match the Biggerstaff list (i.e., 135-237-5027 and 352-258-9006).

9.  Plaintiff M&C also submitted one fax number that did _not_ match the Biggerstaff list (i.e., 813-220-6677).

10. Intervenors Technology Training Associates, Inc., Larry F. Schwanke, D.C., Thomas Savino d/b/a WebRX Pharmacy Palace and RxPalace.com and Meryman Environmental, Inc. also all submitted claims containing at least one fax number that did not match the Biggerstaff list. The remaining Intervenor, Barewood Outlet, Inc., submitted two fax numbers that both did not match the Biggerstaff list (i.e., 727-791-9345 and 813-244-1177).

11. A further 761 Claim Forms (accounting for 25% of all claims), did not include any fax number found on the Biggerstaff list.

12. Because the spreadsheet from Epiq lists each fax number provided by each claimant, I was able to count the number of Claim Forms providing a fax number that was also provided in a different Claim Form (i.e., duplicate claims). In total, 890 Claim Forms provided a fax number that was also provided in one or more additional Claim Forms. This accounts for approximately 30% of all Claim Forms.

13. Of particular note, a total of 199 Claim Forms provided the fax number claimed by Plaintiff Cin-Q, but were submitted by claimants other than Cin-Q. A further 16 Claim Forms provided the fax number claimed by Plaintiff M&C, but were submitted by claimants other than M&C.

14. Because the spreadsheet from Epiq lists the address provided by each claimant, I was able to count the number of claims submitted by claimants that provided an address outside the State of Florida. In total, I identified 713 claims submitted by individuals or entities outside the State of Florida, accounting for approximately 24% of all claims. Of those 713 claimants, 595 identified as

3

businesses (or 83%), whereas only 118 such Claim Forms identified as individuals (or 17%).

15. A total of 110 fax numbers were submitted by a law firm representing itself on the Claim Form as "outside counsel" for Walmart.

16. A total of 2,307 claimants received Mailed Notice through the reverse lookup process, accounting for 76% of all claimants. Meanwhile, the remaining 709 claimants were not identified through either reverse lookup, accounting for 24% of all claimants.

17. A total of 781 fax numbers were provided by a single entity, Astro Companies, LLC ("Astro"). Based on the information on its website, Astro appears to be an online fax service provider. See Astro Companies, Smart Mail Faxing Services, https://astrocompanies.com/carrier-services (accessed June 16, 2023) (explaining that Astro offers a service "which accepts faxes and then converts them into the convenient Adobe PDF format and delivers them to the subscriber by email").

### B. The Meet And Confer Process

18. I participated in three meet and confer conferences with Class Counsel on May 16, 2023, May 18, 2023 and May 23, 2023. Present during each meet and confer was Glenn Hara as well as Ross Good on behalf of Plaintiffs and Robert C. Collins III and myself on behalf of BTL.

19. During the May 16, 2023 and May 18, 2023 meet and confer conferences, Class Counsel explained that the persons and entities identified in the reverse lookup process were not "class members," but were instead merely a notice population consisting of potential class members. Class Counsel further stated that

the purpose of the reverse lookup was not to ascertain the identities of members of the Settlement Class but, instead, was simply to identify persons to whom Mailed Notice should be sent.

20. During the May 18, 2023 meet and confer, Mr. Hara also stated that BTL needed to be mindful to <u>not</u> challenge too many Claim Forms. Mr. Hara explained that if BTL successfully sought requests for additional information and/or defect notices from too many claimants, it could drive the ultimate claims rate down. If the claims rate was driven down too low, Mr. Hara suggested that this could reduce the chance of final approval of the Settlement Agreement.

21. At no point during the meet and confer process did Class Counsel explain why it was a problem to simply seek additional information from claimants. Instead, Class Counsel took the position that unless there was some affirmative, direct evidence of fraud (such as a fax number claimed on other Claim Forms), every claim should be paid that was signed, timely and provided a fax number matching the Biggerstaff list.

22. At the conclusion of the meet and confer process, I prepared two emails summarizing what was discussed, namely (1) an email sent by Robert C. Collins III and dated May 30, 2023 (attached to BTL's Motion to Compel Compliance with Section VIII of the Settlement Agreement as Exhibit 6) and (2) an email sent by Robert C. Collins III on June 15, 2023 (attached to BTL's Motion to Compel Compliance with Section VIII of the Settlement Agreement as Exhibit 7). Those emails were and are to the best of my knowledge and recollection true and correct summaries of our discussions with Class Counsel during the meet and confer process.

5

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on June 16, 2023 in Chicago, Illinois.

*/s/ Gabriel W. Slater*
Gabriel W. Slater
