# EXHIBIT 17

Cin-Q Automobiles, Inc., et al. v. BTL
Case No. 8:13-cv-01592-AEP (M.D. Fla.)

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CIN-Q AUTOMOBILES, INC., et al., <br>       Plaintiffs, <br> v. <br> BUCCANEERS LIMITED PARTNERSHIP and JOHN DOES 1-10, <br>       Defendants, <br><br> TECHNOLOGY TRAINING ASSOCIATES, INC., et al., <br>       Intervenors. | Case No. 8:13-cv-01592-AEP <br><br> Magistrate Judge <br> Anthony E. Porcelli |

**DECLARATION OF KEN SPONSLER**

I, Ken Sponsler, declare and state as follows:

**I.  INTRODUCTION**

1. My name is Ken Sponsler. I am the Senior Vice President at PossibleNOW Services, Inc. d/b/a CompliancePoint Litigation Support Services ("CPLSS"), located in Duluth, Georgia.

2. This declaration lists my current findings and conclusions in this matter. I reserve the right to provide additional information in this matter. I also reserve the right to supplement this declaration as new information becomes available.

**II.  ASSIGNMENT**

3. CPLSS and I were asked by counsel for Defendant Buccaneers Team LLC f/k/a Buccaneers Limited Partnership ("BTL") in the above-captioned matter

to conduct an analysis of claims submitted to Epiq Class Action & Claim Solutions, Inc. ("Epiq") and to cross reference the fax numbers listed in those claims with the results of the reverse lookups previously conducted by TransUnion and LexisNexis.

### III. QUALIFICATIONS

4. I have extensive experience regarding facsimile ("fax") transmission technology and its application with respect to the rules and requirements under the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), 47 USC § 227 (hereafter "TCPA"). I have previously served as a party-appointed expert witness in dozens of TCPA matters. I have also been appointed by federal courts to serve as a TCPA compliance monitor.

5. My experience includes dozens of consulting and testifying witness engagements in matters relating to the inability to reliably identify historical recipients of faxes, particularly in a case such as this where the faxes at issue were allegedly sent in 2009 and or 2010 (nearly 13 years ago).

6. My qualifications were previously described in Paragraphs 15-25 of the February 18, 2022 Declaration of Ken Sponsler in Support of BTL's Submission Regarding the Reliability of the Biggerstaff Report Data ("February 18, 2022 Sponsler Declaration"), and I incorporate them into this Declaration.

7. This declaration assumes the Court is familiar with the facsimiles at issue in this case and incorporates the background information regarding the alleged fax marketing campaign described in Paragraphs 26-31 of the February 18, 2022 Sponsler Declaration.

8. This declaration also assumes the Court is familiar with the inherent limitations in utilizing fax notice to accurately or reliably provide notice to all or part

of a settlement class, described in Paragraphs 24-38 of the May 31, 2022 Declaration of Ken Sponsler in Support of BTL's Motion for Extension of Time ("May 31, 2022 Sponsler Declaration").

9. This declaration also assumes the Court is familiar with both the first and second reverse lookups conducted in this case, completed by TransUnion and LexisNexis respectively, as described in the August 5, 2022 Declaration of Ken Sponsler ("August 5, 2022 Sponsler Declaration").

## IV. ANALYSIS AND OPINIONS

### A. Opinion One: Review Of The Claimed Fax Numbers Shows That There Are 1,124 Claimed Fax Numbers For Which The Reverse Lookups Identified More Than One Match

10. As discussed more fully in the August 5, 2022 Sponsler Declaration, Epiq ordered two reverse lookups in connection with the above-captioned litigation. The first was conducted by TransUnion, and the second was conducted by LexisNexis. I understand that notice was subsequently provided in the above-captioned litigation to potential class members, with notice mailed to (1) all matches identified in the TransUnion reverse lookup and (2) only the single matches identified in the LexisNexis reverse lookup.

11. I now understand that the claims process in the above-captioned litigation is complete, with the claims deadline passing on February 6, 2023.

12. Our team conducted an analysis comparing (1) the fax numbers listed on the claim forms submitted to Epiq, with (2) the results of the first and second reverse lookups conducted by TransUnion and LexisNexis respectively.

3

13.     As a part of this analysis, we reviewed the claims spreadsheet prepared by Epiq dated April 3, 2023, which we understand was the final such spreadsheet produced by Epiq providing the full extent of the claims data.

14.     We then cross-referenced this with the May 9, 2022 TransUnion reverse lookup results and the July 18, 2022 LexisNexis reverse lookup results. During this cross reference, we identified any fax numbers for which the reverse lookups returned more than one name and address (i.e., matches).

15.     In total, we identified 1,124 claimed fax numbers for which the reverse lookups identified multiple matches. A chart listing the results of this review is included in this report as Exhibit A.

16.     We understand that a total of 2,980 unique fax numbers matching the Biggerstaff list were claimed in this litigation. The reverse lookups thus identified multiple matches for 37.7% of the total number of claimed fax numbers matching the Biggerstaff list.

17.     Of these 1,124 fax numbers, the reverse lookups identified <u>three or more</u> matches for 710 of the claimed fax numbers, accounting for a total of 23.8% of the total number of claimed fax numbers matching the Biggerstaff list. And the reverse lookups identified <u>four or more</u> matches for 486 of the claimed fax numbers, accounting for 16.3% of the total claimed fax numbers matching the Biggerstaff list.

18.     There were also claims listing fax numbers that returned as many as 10, 12, 13 and even 14 matches between the two reverse lookups.

## V.     CONCLUSIONS

19.     As explained more fully in the August 5, 2022 Sponsler Declaration, the second reverse lookup compounded the issues of the first by increasing the

number of multiple matches and increasing the risk of fraudulent claims. See August 5, 2022 Sponsler Declaration at ¶ 17.

20. Comparison of the claims data and the results of the two reverse lookups confirmed these predictions. In total, 1,124 claimed fax numbers for which the reverse lookups identified multiple matches, accounting for 23.8% of the total number of claimed fax numbers matching the Biggerstaff list.

21. As explained in previous declarations, I generally do not rely on third-party reverse lookup databases like TransUnion and LexisNexis to accurately identify individuals at a specific point in the past.

22. Because reverse lookups cannot accurately identify the names and current addresses of settlement class members who held the lines at issue back in 2009 and 2010, there is no way to determine whether the claimant in fact held the claimed fax number in 2009 and 2010 without additional verification. Based on the claims data and the results of the reverse lookup, absent independent verification (if feasible), it is impossible to determine whether (1) the claimant in fact held the line in 2009 and 2010, (2) another match identified in the reverse lookups held the line in 2009 and 2010 or (3) another person and/or entity not identified by the reverse lookups was the true holder of the line in 2009 and 2010.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on June 15, 2023 in Beverly Hills, Florida.

_____
Ken Sponsler

5

## Exhibit A

## Summary of Claims Data and Reverse Lookup Results Comparison

| Total Number of Matches Between the TransUnion and LexisNexis Reverse Lookups | Count of Claimed Fax Numbers |
|---|---|
| 2 | 414 |
| 3 | 224 |
| 4 | 189 |
| 5 | 123 |
| 6 | 80 |
| 7 | 56 |
| 8 | 21 |
| 9 | 7 |
| 10 | 6 |
| 11 | 2 |
| 12 | 1 |
| 13 | - |
| 14 | 1 |