# EXHIBIT 19

Cin-Q Automobiles, Inc., et al. v. BTL
Case No. 8:13-cv-01592-AEP (M.D. Fla.)

Business & Practice
May 23, 2023, 4:30 AM

# NFL Buccaneers' Fax Spat Incites 'Never-Ending' Legal Fees Feud

By Alex Ebert

Deep Dive

- Fight for millions in attorney fees creates 'never-ending saga'
- Stolen laptop, dueling meditations, and alleged pay-off ploy

A law firm accused by a federal court of a "Machiavellian plan" to undercut a competitor's settlement with the Tampa Bay Buccaneers is crashing the party again—objecting to a settlement similar to one the firm tried to ink with the team years ago.

The objection last month is the latest twist in a 13-year class action drama that has played out across state and federal courts. It's been a legal soap opera with allegations of espionage and tactical blunders—and a laptop full of law firm documents that went missing.

Claimants are still waiting after a decade to collect their chunk of the nearly $20 million proposed settlement with the football franchise. Class action law firms are battling over which lawyers will get a cut of the roughly $5 million in fees.

"My cost in stress and time in this never-ending saga in the eight or nine years that my wife went through this has been quite an emotional toll," said Gregory Williams, a chiropractor who took over as a class representative in one of the cases after his wife—the former representative—died from breast cancer.

The Williams family chiropractic business, like other businesses, joined a suit after receiving unwanted faxed ticket advertisements from the Buccaneers. Williams estimates he's spent more than 100 hours in depositions and court hearings without seeing any payment.

"I just know this has gone on a ridiculous amount of time," he said.

**'Get Back At the Man'**

Litigators usually take cases to make money. Tampa attorney Michael Addison started filing Telephone Consumer Protection Act suits because he was mad. The act allows fax machine owners to sue over unwanted messages that waste paper and ink.

"It was more for the fun of it because all you could get was $500, and you couldn't even get your attorneys fees, but I got tired of getting faxes from people using up my paper and my ink," said 75-year-old Addison, who is now mostly retired. "I was trying to get back at the man."

In 2009 he received a pair of unwanted faxes from the Bucs advertising tickets. A separate attorney referred him to an auto repair shop owner more than 100 miles away in Gainesville, Florida, who had received the same faxes.

Addison knew there was a potential horde of illegal faxes. So he filed a lawsuit in state court.

The auto repair shop, Cin-Q Automobiles Inc., and Williams's business, Medical and Chiropractic Clinic Inc., would become two of the lead plaintiffs in the disputes Addison helped steer.

The Buccaneers responded to the suit that the faxes were run through a company that claimed it had consent from fax number owners to receive the ads.

Addison said, "How many people do you think would sign up for a list to be faxed various and sundry ads from people you don't know of? Nobody wanted this."

The team's lawyer, Mark Mester, a partner in Latham & Waktins' Chicago office, declined to comment because of ongoing litigation.

In a ruling illuminating the murkiness of the fax marketing industry at the center of the spam messages, US Magistrate Judge Anthony E. Porcelli said it wasn't clear that the Bucs could be held liable in the case due to a "complicated web of conflicting facts."

**A Costly Mistake**

Addison unwittingly kicked off years of squabbling and backbiting when he sought the help of two law firms to aid in his initial lawsuit—The Bock Law Firm and Anderson + Wanca.

While Phillip Bock declined his invitation to partner, Addison said, Brian Wanca joined on.

Addison and Wanca's firm refiled the case in federal court. Motions in the new case went into the mid-2010s. The court sent the matter through multiple rounds of mediation.

Addison realized, however, that he had made a mistake.

"We published a list of the fax numbers that messages were sent to," he said. "We should have kept that under seal."

The publishing of the numbers made the case vulnerable to poaching. Bock's firm, which had previously declined Addison's invitation to join the case, now filed its own case. Bock was now going after the same pot of Buccaneers' gold.

On two occasions, mediators inadvertantly tipped off Addison that Bock's team was scheduling mediation with the Bucs.

Around that same time one of the Anderson + Wanca attorneys who had been working on the matter jumped ship to join Bock.

The attorney, David Oppenheim, had copied his computer hard drive—including briefs, pleadings, and a year's worth of email—to a laptop before his planned departure. Before Oppenheim was to turn over the hard drive for examination by the Anderson + Wanca firm, he reported it stolen from his unlocked car while it was parked in his driveway.

Anderson + Wanca then sued Oppenheim, alleging he had stolen firm secrets. Oppenheim said he didn't use his prior firm's information to compete on the Bucs case, and he won in Illinois state court.

**'Machiavellian Plan'**

Months after Oppenheim made the jump to Bock, Addison said he received a call from the Buccaneers' attorney. The team's lawyer canceled a planned mediation session because the franchise had reached a deal with Bock's team.

Addison's team challenged the Bock team's settlement in federal court.

The Eleventh Circuit Court of Appeals ruled that Addison's team could intervene in Bock's case after emails showed, in the court's words, a "'Machiavellian' plan to undercut the movants' negotiating position."

The court said Bock's team undercut the Wanca and Addison team in a move to "deliberately underbid the movants in an effort to collect attorney's fees while doing a fraction of the work that the movants' counsel did."

That dispute spurred more litigation between the firms. A separate Eleventh Circuit ruling said Oppenheim didn't owe a duty to Williams as a representative of the class—the duty was owed to the class overall—and Bock's team couldn't be kept out of the overall litigation against the Bucs.

Bock's class action case eventually closed. A federal court ruled that case was filed after the statute of limitations had passed, opening the window for Addison's team, which struck a similar, roughly $20 million deal with the Bucs.

Bock declined to comment. However, in court records his firm argued that they needed to step into the litigation to save the class from unreasonable expectations, which bogged down negotiations and could have led to the class getting nothing if the Bucs weren't found liable at trial.

**Tables Turned**

Now the tables have turned. Addison's team, which now also includes Loftus & Eisenberg Ltd., is facing a Bock team objection to the settlement.

Bock argues the deal is too favorable to the Buccaneers because class members wouldn't be notified of their claims via fax—a step the district court judge wouldn't allow.

They also argue a requirement that class recipients sign under penalty of perjury that they received a fax will limit claims—greatly reducing the amount of money the Bucs will end up paying.

Addison said the heart of matter is an attorney fee fight.

"Bock needs to make a case to the judge, 'I did something good for the class, and I'm entitled to be paid money,'" Addison said. "Otherwise, he's just an intervenor who is along for the ride."

Williams looks back at the messy string of lawsuits with a mix of frustration and pride.

He claims that at one point his wife was offered $30,000 from Bock's firm to walk away from the case—a move that could have hurt the Addison team. He said he was given the same offer after she died—something that would have gone a long way to help pay down the $50,000 in medical debt the family took on for her cancer treatment.

He turned down the offers to preserve the class action and give thousands of other class members a crack at claiming $625.

Now, due to an appellate court ruling, it's possible Willams won't receive any "incentive payment" for his time helping with the case.

"It would have been a windfall," Williams said of the Bock offers. "But at what cost? At whose cost?"

A fairness hearing on the settlement is set for December in Cin-Q Automobiles, Inc. v. Buccaneers Limited Partnership et al., M.D. Fla., No. 8:13-cv-01592.

To contact the reporter on this story: Alex Ebert in Madison, Wisconsin at aebert@bloombergindustry.com

To contact the editor responsible for this story: Andrew Childers at achilders@bloomberglaw.com

© 2023 Bloomberg Industry Group, Inc.   All Rights Reserved