# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | | |
|---|---|---|
| CIN-Q AUTOMOBILES, INC. and<br>MEDICAL & CHIROPRACTIC CLINIC,<br>INC., individually and on behalf of a class, | ) ) ) ) | |
| Plaintiffs, | ) ) | No.: 8:13-CV-01592-AEP |
| v. | ) ) | |
| BUCCANEERS LIMITED PARTNERSHIP, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) ) | |
| TECHNOLOGY TRAINING ASSOCS., INC.<br>*et al.*, | ) ) ) | |
| Intervenors. | ) | |

## PLAINTIFFS' OPPOSITION TO BTL'S MOTION TO COMPEL COMPLIANCE WITH SECTION VIII OF SETTLEMENT AGREEMENT

Plaintiffs, Cin-Q Automobiles, Inc. and Medical & Chiropractic Clinic, Inc., on behalf of themselves and the Settlement Class, state as follows in opposition to the Motion to Compel Compliance with Section VIII of the Settlement Agreement filed by Defendant, Buccaneers Team LLC ("BTL") (Doc. 454 ("Mot.")). As discussed below, BTL's Motion should be denied because (1) it seeks to impose additional "proof" requirements on claimants seeking to share in the Settlement Fund that are not part of the Settlement Agreement that BTL agreed to; and (2) it is based on BTL's misunderstanding of class "ascertainability" in the Eleventh Circuit.

I.    **The Court should reject BTL's demand that Epiq be required to obtain additional "documentation" from every claimant.**

BTL's Motion to Compel seeks essentially the same relief that BTL sought in its August 10, 2022 Motion to Address for Purposes of the Notice Program the Limitations of Reverse Lookups Under the Circumstances of this Case, which asked the Court to impose a new requirement, not contained in the Settlement Agreement, that claimants must "provide proof either of receipt of a fax sent on behalf of BTL or proof of ownership in 2009 or 2010 of one of the telephone lines on the Biggerstaff list" in order to recover from the Settlement Fund. (Doc. 381 at 21). The Court rejected that request because the claim form the parties negotiated requires the claimant to both (1) provide a matching fax number; and (2) swear to receiving faxes at that number during the class period under penalty of perjury. (Doc. 451-6, Hr'g Tr., Aug. 31, 2022, at 138:14–16).[1] As the Court noted, when a claimant makes that statement in the claim form, "that in and of itself is putting forth evidence of a claim under the penalty of perjury." (*Id.*) In addition, the Court noted that if BTL has any evidence a particular claim is fraudulent, "you have the opportunity at that point . . . to challenge" the claim under Section VIII.E of the Settlement Agreement. (*Id.* at 138:17–20).

Contrary to BTL's assertion that Epiq has "abdicated" its role as Settlement Administrator, Epiq merely followed the terms of the Settlement Agreement in

---

[1] The claim form requires the claimant to swear under penalty of perjury that during the relevant time period "I or my company subscribed to the fax number(s) identified above . . . and faxes were received at such number or numbers, including faxes from the Tampa Bay Buccaneers." (Doc. 324-1, PageID 9432).

finding it appropriate, in the absence of actual evidence of fraud, to pay claims where the claimant "(i) completed a Claim Form, providing all of the information required by the Settlement Agreement and the Claim Form; (ii) signed the Claim Form under penalty of perjury; and (iii) returned the completed and signed Claim Form to the Settlement Administrator on or before the Claim Deadline.  (ECF No. 324-1 at Section VIII. ¶B)." (Doc. 451-8, email of S. Amin-Giwner, Director, Client Services of Epiq, May 15, 2023). Epiq has stated that "[i]t is not within Epiq's purview to determine additional factors for determining validity," as BTL has requested. (*Id.*) Epiq has additionally stated that "defecting records identified by LexisNexis or TransUnion" would not be appropriate, and that Epiq will "rely on a claimant's certification under penalty of perjury which is present on this Claim Form." (Doc. 451-3, email from O. Castellejos on behalf of Epiq, Apr. 21, 2023).

This is the streamlined claims process that BTL agreed to, and it is what this Court ordered in granting preliminary approval. *See* Doc. 343, Prelim. Approval Order at 39 ("Epiq will reject any claim that does not substantially comply with the instructions on the Claim Form or the terms of the Agreement or is postmarked later than the Claim Deadline."). If BTL has evidence any particular claim is in fact fraudulent, it should bring that evidence to the Administrator's attention, but BTL has no power to use Epiq as its own private investigator to scrutinize every claim that has been filed in this settlement.

## II.  BTL's Motion to Compel is largely based on BTL's continuing misunderstanding of class "ascertainability."

BTL's Motion is loaded with the baseless assertions regarding "the ascertainability of the Settlement Class itself" (Mot. at 11) and "the ascertainability issue" (*id.* at 30, n.31), with BTL arguing that "the Settlement Class is not ascertainable or capable of determination <u>without</u> obtaining independent verification and validation of class membership from claimants and others" (*id.* at 18). BTL raised all the same arguments in its prior Motion to Address for Purposes of the Notice Program the Limitations of Reverse Lookups Under the Circumstances of this Case (Doc. 381), and once again, BTL totally misunderstands what "ascertainability" means in the Eleventh Circuit.

In *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1303 (11th Cir. 2021), the Eleventh Circuit clarified that in this Circuit, the requirement that a Rule 23(b)(3) class be "ascertainable" simply means that the class must be defined by objective criteria. The Eleventh Circuit held the "[a]dministrative feasibility" of identifying class members is not an "aspect of ascertainability," and that "administrative feasibility *is not a requirement for certification under Rule 23*" at all. *Id.* at 1304 (emphasis added). The Eleventh Circuit rejected the Third Circuit's "heightened" ascertainability standard, which concerns "both the definition of the class and its administrative feasibility." *Id.* at 1303–04.[2] The Eleventh Circuit recognized that it applied the heightened standard

---

[2] BTL relies on out-of-circuit decisions to argue there is an "ascertainability" problem here. (*e.g.*, Mot. at 28 (citing *Carrera v. Bayer*, 727 F.3d 300, 310–11 (3d Cir. 2013) (applying the "administrative feasibility" requirement that the Eleventh Circuit rejected in *Cherry*).

in two earlier unpublished decisions, but held "those decisions do not bind us as precedent." *Id.* at 1302.

In this case, the Settlement Class consists of persons or entities "who received or were successfully sent" particular faxes in a particular time frame, which are "objective" criteria. *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, No. 2:16-CV-41-JLB-MRM, 2021 WL 719655, at *1 (M.D. Fla. Feb. 24, 2021) (finding in TCPA fax case that "Plaintiffs' proposed class definitions meet the traditional ascertainability rule" under *Cherry*); *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540, 545 (6th Cir. 2014). The class definition is not "vague," and it "identifies a particular group" that was "harmed in a particular way" in "a specific period." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660–61 (7th Cir. 2015). The definition is not based on subjective "state of mind," and it is not "fail-safe," since it entails no merits conclusions. *Id.* The class is therefore "ascertainable" under the traditional standard adopted by *Cherry* (and most other circuits). *See also A Aventura Chiropractic Ctr., Inc. v. Med Waste Mgmt. LLC*, 2013 WL 3463489, at *5 (S.D. Fla. July 3, 2013); *C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 689 (S.D. Fla. 2014).

BTL suggests the Settlement Class that it asked the Court to certify is not ascertainable under *Cherry* because "a class that is not capable of determination at all, whether by convenient means or not, is clearly not ascertainable," citing this Court's decision in *Haines v. Fid. Nat'l Title of Fla., Inc.*, No. 8:19-CV-2995-KKM-AEP, 2022 WL 1095961, at *8 (M.D. Fla. Feb. 17, 2022). (Mot. at 18, n.18). BTL's

5

reliance on *Haines* is misplaced because (1) the Court in that case found the proposed class was in fact "ascertainable" under *Cherry* because it was defined by objective criteria, *see Haines*, 2022 WL 1095961, at *8; and (2) the Court denied class certification of a *litigation* class seeking to advance transaction-specific claims for breach of contact and unjust enrichment, which would have required individual adjudication, *id.*, 2022 WL 1095961, at *14–23.

This case involves a settlement class, not a litigation class. Claimants do not have to "prove" their claims on the merits under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227(b)(1)(C), in order to share in the Settlement Fund. Claimants need only file a "Valid Claim," meaning "a timely and fully completed Claim Form submitted by a Settlement Class Member as more fully described in Section VIII." (Doc. 324-1, Settlement Agreement § II.SS). In contrast, in *Haines* the Court denied certification on predominance grounds because the Court could not decide the case on the merits using common evidence where "questions regarding whether Fidelity breached such duty as to each potential class member and whether such breach was the proximate cause of any damages to each class member will vary per transaction and thus require individualized inquiries on a claim-by-claim basis." *Haines*, 2022 WL 1095961, at *16.

Nevertheless, Plaintiffs and BTL have agreed that there are certain circumstances in which Epiq should follow up with a defect notice or request for more information (which Epiq has previously called a "Notice of Incomplete Claim"): (1) where claimants filed claims containing non-matching fax numbers; (2)

where a fax number was claimed in more than one claim form; (3) where the claim form is missing a signature; (4) where the claimant is a "Potential Government Entity"; and (5) where claims were submitted by business entities not registered until after the class period. These are reasonable categories where further inquiry is needed, and the parties and Epiq have been in agreement on them for some time.

However, BTL's additional categories of claimants are not reasonable, and are designed to do nothing but depress the claims rate. First, BTL insists that Epiq send "defect" notices seeking unspecified "additional information" both to (1) claimants who were identified by Epiq in the TransUnion or LexisNexis reverse lookups for purposes of sending Mailed Notice; and (2) claimants who were *not* identified in either reverse lookup. (Ex. E, email from R. Collins, May 30, 2023). In other words, BTL proposes that *every* claimant in this settlement be sent a notice that their claim is "defective" and/or requires submission of additional "proof" in order to recover. Here, BTL is merely trying for at a second bite at the apple on the same issues it raised in BTL's Motion to Address for Purposes of the Notice Program the Limitations of Reverse Lookups Under the Circumstances of this Case. (Doc. 381). That is not the deal reflected in the Settlement Agreement, and the Court should reject it.

Second, there is no indicia of fraud merely from the fact that a claimant listed an address outside the state of Florida on the claim form. There is no requirement in the Settlement Agreement that claimants must provide a Florida address to recover, and the Court should deny the Motion with respect to these claimants.

In sum, the Court should reject BTL's motion with respect to its misstatements regarding "ascertainability," and rule that the agreed-upon defect letters/requests for additional information are adequate.

### **Conclusion**

For the foregoing reasons, the Court should deny BTL's Motion to Compel and grant any other relief it deems appropriate.

Respectfully submitted,

/s/ Glenn L. Hara
Glenn L. Hara (admitted *pro hac vice*)
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Telephone: (847) 368-1500
Facsimile: (847) 368-1501
ghara@andersonwanca.com

Michael C. Addison (Fla. Bar. No. 0145579)
ADDISON LAW OFFICE, P.A.
1304 Alicia Avenue
Tampa, Florida 33604
Telephone: (813) 223-2000
Facsimile: (813) 228-6000
m@mcalaw.net

Ross M. Good (Fla. Bar. No. 116405)
LOFTUS & EISENBERG, LTD.
161 N. Clark, Suite 1600
Chicago, Illinois 60601
T: (786) 539-3952
ross@loftusandeisenberg.com

*Class Counsel*

## **CERTIFICATE OF SERVICE**

     I hereby certify that on June 30, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.


                        s/Glenn L. Hara