## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| CIN-Q AUTOMOBILES, INC., <u>et</u> <u>al</u>., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 8:13-cv-01592-AEP |
| BUCCANEERS LIMITED PARTNERSHIP and JOHN DOES 1-10, | ) ) ) ) | Magistrate Judge Anthony E. Porcelli |
| Defendants, | ) ) | |
| TECHNOLOGY TRAINING ASSOCIATES, INC., <u>et</u> <u>al</u>., | ) ) ) | |
| Intervenors. | ) | |

## REPLY OF BTL TO THE JUNE 30, 2023
## <u>SUBMISSION (DKT. 460) OF INTERVENORS</u>

Date:  July 14, 2023

Mark S. Mester
   (admitted *pro hac vice*)
Robert C. Collins III
   (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  mark.mester@lw.com
      robert.collins@lw.com

Joseph H. Varner, III
   (Bar No. 394904)
HOLLAND & KNIGHT LLP
100 North Tampa Street, Suite 4100
Tampa, Florida 33602-3644
Telephone:  (813) 227-8500
Facsimile:  (813) 229-0134
Email:  joe.varner@hklaw.com

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.    INTRODUCTION ............................................................................1

    A.    Intervenors' Counsel Offer No Explanation For Why They Did Not Raise This Issue Earlier.................................................................2

    B.    The Settlement Administrator Apparently Erred In Conflating Fax Numbers With Contact Numbers ......................................................3

    C.    The Quantum Of Fraudulent And Invalid Claims Remains Substantial In Any Event.......................................................................5

II.    CONCLUSION..............................................................................7

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

<u>In re Amerifactors Fin. Grp. LLC Pet. for Expedited Declaratory</u>
<u>Ruling</u>, Nos. 02-278, 05-338, 2019 WL 6712128 (F.C.C. 2019).........................3

<u>Drazen v. Pinto</u>,
41 F.4th 1354 (11th Cir. 2022), <u>reh'g en banc granted</u>, <u>op. vacated</u>
<u>on other grounds</u>, 61 F.4th 1297 (11th Cir. 2023)...........................................3, 7

<u>Salcedo v. Hanna</u>,
936 F.3d 1162 (11th Cir. 2019) ...........................................................................3

<u>Scoma Chiropractic, P.A. v. Nat'l Spine & Pain Centers LLC</u>,
2022 WL 16695130 (M.D. Fla. 2022)...................................................................3

<u>TransUnion LLC v. Ramirez</u>,
141 S.Ct. 2190 (2021)...........................................................................................7

BTL provides the following reply to the memorandum filed by Intervenors Technology Training Associates, Inc., et al. ("Intervenors") (Dkt. 460) in opposition to BTL's June 16, 2023 motion (Dkts. 454, 458):[1]

## I.    **INTRODUCTION**

The Parties and the Court should certainly be able to rely upon what they are told by the Settlement Administrator, whether the issue involves the efficacy and reliability of reverse lookups or the content of Claim Forms submitted to the Settlement Administrator.  In their June 30, 2023 submission (Dkt. 460), however, Intervenors identified what they claimed to be an error by the Settlement Administrator in the processing of Claim Forms.  After some delay by the Settlement Administrator in providing an explanation, it would now appear the Settlement Administrator did in fact err in conflating (a) the fax numbers at which faxes were purportedly sent to claimants and (b) the telephone numbers provided on Claim Forms as contact numbers for use by the Settlement Administrator in contacting claimants.  Contrary to the impression Intervenors tried to create in their June 30, 2023 submission, however, BTL and the other Parties and their counsel had no prior indication whatsoever that the Settlement Administrator had treated contact numbers as fax numbers, and this error by the Settlement Administrator does not otherwise change the indisputable fact that the level of fraudulent and invalid Claim Forms submitted is inordinate, even before any effort has been made to audit or independently verify and validate the information supplied on those Claim Forms.

---

[1] Capitalized terms have the meaning ascribed to them in the Settlement Agreement filed with Plaintiffs' motion for preliminary approval.  See Settlement Agt. (Dkt. 324-1).  In addition, all emphasis is supplied, and all internal citations, quotations and footnotes are omitted.

See, e.g., BTL's June 16 Mot. to Compel (Dkts. 454, 458) at 16-28 (noting need for independent verification and validation).

### A.  Intervenors' Counsel Offer No Explanation For Why They Did Not Raise This Issue Earlier

As indicated in its motion for leave (Dkt. 462), BTL tried to address with Intervenors' counsel any issues regarding Intervenors' Claim Forms shortly after the May 22, 2023 hearing.  See Decl. of G. Slater, Ex. 1 hereto, at ¶¶ 3-7.  Intervenors' counsel, however, never provided a substantive response to BTL's inquiry and to date have provided no explanation for why they apparently sat on this information until their June 30, 2023 submission (Dkt. 460).[2]  Moreover, while BTL did not know until June 30, 2023 that the Settlement Administrator had conflated fax numbers and contact numbers, Intervenors' counsel pretty clearly obtained from their clients copies of Claim Forms they submitted to the Settlement Administrator (which copies the Parties did not have) and compared those to the spreadsheet the Settlement Administrator provided to the Parties and Intervenors.[3]  See id. at ¶ 19.

---

[2] Nor was there a lack of an opportunity for Intervenors' counsel to explain the delay.  Numerous emails have been exchanged between BTL's counsel and Intervenors' counsel since the filing of Intervenors' June 30, 2023 submission, including threats of sanctions by Intervenors' counsel for BTL having relied on the information supplied by the Settlement Administrator and other "errors" purportedly identified by Intervenors' counsel that ended up being largely a wild goose chase.  See Slater Decl. at ¶¶ 27-29, But no explanation has been provided as to why Intervenors and their counsel did not disclose earlier the mixing of fax numbers and contact numbers by the Settlement Administrator.  See id. at ¶ 7.

[3] Prior to the May 22, 2023 hearing, Intervenors themselves had relied on the spreadsheet provided by the Settlement Administrator without raising any possible defects.  See Intervenors' Objs. (Dkt. 434) at 10-13.  Indeed, the declaration prepared by Intervenors' counsel in support of their Objections explained that Intervenors reviewed the Settlement Administrator's spreadsheet, which "lists the fax numbers, names, and other identifying information for what appears to be the class members making claims in this action.  All four of the Intervenors who submitted claims are listed in the Excel file."  Bachmannhuff Decl. (Dkt. 434-4) at ¶ 3.  But despite their own reliance on the Settlement Administrator's spreadsheet, Intervenors never informed the Parties until June 30, 2023 that certain of the "fax numbers" listed on the spreadsheet as being associated with Intervenors were in fact contact phone numbers rather than fax numbers.  See Slater Decl. at ¶ 7.

But had Intervenors' counsel raised this issue with BTL when BTL's counsel first contacted Mr. Piper in May, then any error by the Settlement Administrator could have been corrected much earlier and any ensuing delay avoided.[4]

### B.   The Settlement Administrator Apparently Erred In Conflating Fax Numbers With Contact Numbers

As noted, the Settlement Administrator conflated fax numbers and contact numbers in the spreadsheet it provided by placing contact numbers in the column designated "Total Fax Numbers Provided" and then specifying in the spreadsheet whether each of those numbers for each Claim Form were valid or not (i.e., on the Biggerstaff list) and further specifying in separate columns on the spreadsheet how many faxes were sent to each number.  See, e.g., Slater Decl. at ¶¶ 20-26.  The stated reason from the Settlement Administrator why this was done was because "some" of the contact numbers on Claim Forms are apparently also numbers on the Biggerstaff list, though the actual number of telephone numbers from the Biggerstaff

---

[4] Intervenors' counsel have been equally unforthcoming in terms of the twin questions of whether each Intervenor (a) is actually a Settlement Class Member and (b) has standing under Article III. See, e.g., Slater Decl. at ¶¶ 37-42.  During the period merits discovery took place in this matter, Intervenors were all absent class members and not subjected to discovery.  See Mot. to Intervene (Dkt. 258) at 1-3. We naturally assumed, however, Intervenors' counsel confirmed as part of their pre-filing inquiry that each Intervenor actually held a telephone number on the Biggerstaff list between July 14, 2009 and June 9, 2010.  See, e.g., Slater Decl. at ¶¶ 37-38.  Moreover, the Eleventh Circuit has recently indicated that all members of a settlement class seeking monetary relief have an affirmative obligation to demonstrate Article III standing, and as applied to this case, that would mean (among other things) they would need to demonstrate that any faxes allegedly received from BTL were not received through an online service like Vonage or FastFax.  See Drazen v. Pinto, 41 F.4th 1354, 1361 (11th Cir. 2022), reh'g en banc granted, op. vacated on other grounds, 61 F.4th 1297 (11th Cir. 2023) (currently awaiting decision en banc as to whether the one text rule enunciated in Salcedo v. Hanna, 936 F.3d 1162 (11th Cir. 2019), should stand); see also, e.g., In re Amerifactors, 2019 WL 6712128, *4 (F.C.C. 2019); Scoma Chiro. v. Nat'l Spine, 2022 WL 16695130, *6 (M.D. Fla. 2022).  The issue of standing is one we have recently raised with both Class Counsel and Intervenors' counsel, but for present purposes, Intervenors' counsel have refused to provide any evidence "in this procedural posture" as to whether their clients held numbers on the Biggerstaff list from 2009 to 2010 and/or received faxes through an online service, with Intervenors' counsel suggesting instead that BTL (and by extension the Court) should just take their word for it.  See Slater Decl. at ¶ 39.

list that were provided as contact numbers is very small (i.e., 14 in total).  See id. at ¶ 30.[5]

The Settlement Administrator, however, never indicated that what was designated on the spreadsheet as "Total Fax Numbers Provided" actually included contact numbers as well as fax numbers nor did the Settlement Administrator give any indication that some contact numbers were on the Biggerstaff list, let alone make any effort to separate out the few contact numbers on the Biggerstaff list from the rest that were not.  See Slater Decl. at ¶ 22.  The Settlement Administrator likewise did not make available to the Parties the actual Claim Forms submitted to the Settlement Administrator nor did the Parties have any reason to believe it necessary to inspect all of the Claim Forms, assuming instead the Settlement Administrator could be relied upon for what is essentially simple data entry.  See id. at ¶ 13 (affirming the Settlement Administrator never provided the Parties the actual Claim Forms).  Instead, the first indication we had that the Settlement Administrator had conflated fax numbers with contact numbers was Intervenors' June 30, 2023 submission (Dkt. 460).[6]  See id. at ¶ 20.

---

[5] On July 11, 2023, the Settlement Administrator provided the Parties with what was supposed to be an updated version of the spreadsheet correcting the Settlement Administrator's prior error.  See Slater Decl. at ¶¶ 30-33.  Less than an hour later, however, the Settlement Administrator sent yet another email, indicating the updated version also contained errors and that another "updated report is being sent shortly."  See id.  Later that same evening, the Settlement Administrator then provided yet another version of the spreadsheet, claiming all of the prior errors had been rectified.  See id.  BTL's expert is currently reviewing that latest spreadsheet to determine if that is in fact the case.  See id. at ¶ 33.

[6] Based on the information provided by the Settlement Administrator, BTL indicated in its June 16, 2023 motion that four Intervenors had included on their Claim Forms invalid fax numbers (i.e., numbers not on the Biggerstaff list).  See BTL's June 16 Mot. to Compel (Dkts. 454, 458) at 10 n.12, 20-21, n.20; Slater Decl. (Dkt. 454-6) at ¶ 10.  It is now clear, however, based on the revised spreadsheets provided this week by the Settlement Administrator that this is not the case and that what the Settlement Administrator had identified as non-matching fax numbers on Intervenors' Claim Forms were actually contact numbers.  See Slater Decl. at ¶¶ 31-34.  In making our June 16, 2023 motion, we relied on the information supplied by the Settlement Administrator, but we

## C.   The Quantum Of Fraudulent And Invalid
## Claims Remains Substantial In Any Event

The suggestion of Intervenors notwithstanding, it remains clear the level of fraudulent and invalid claims is high and remains a matter of concern in spite of the recent correction of the earlier error by the Settlement Administrator.  See disc. infra at 5-6.  While Intervenors accuse BTL of throwing around "assertions" about "fraud" and "perjury," the reality is the claims process has resulted in an inordinate number of fraudulent and invalid claims, even after the errors by the Settlement Administrator are accounted for and (more importantly) before any extrinsic evidence has been obtained from claimants or any effort made to audit and independently verify and validate claims.   While we only received the updated spreadsheet from the Settlement Administrator three days ago, BTL's review of the new spreadsheet suggests that the same problems of fraud are still present, including the following:

1.  More than 23% of all Claim Forms (735 in total) are duplicates in that they claim a fax number that is also listed on another Claim Form;[7]

2.  The reverse lookups contained multiple matches for 1,100 of the claimed valid fax numbers, accounting for 37% of all claimed fax numbers that match a number on the Biggerstaff list;

3.  199 Claim Forms provided a fax number claimed by M&C, and 16 Claim Forms were submitted listing the fax number claimed by Cin-Q;[8]

---

nevertheless apologize to the Court for any inconvenience caused by what was an inadvertent and unintentional error on our part, resulting from our reliance on the Settlement Administrator.  See id. at ¶¶ 20-23.

[7] As the Court noted at the August 31, 2022 hearing, duplicative claims are almost certainly per se evidence of fraudulent or invalid claims, since the odds two different claimants held the same number on the Biggerstaff list for the 11-month period between July 14, 2009 and June 9, 2010 are exceedingly low.  See Aug. 31, 2022 Hr'g Tr. (Dkt. 410) at 162:25-163:3.

[8] Whether Cin-Q held the number 352-377-9774 between July 14, 2009 and June 9, 2010 or one of the other 199 claimants held it during that same period, the reality is the vast majority of persons and entities predicating their claim on that single fax number are not telling the truth.  See Aug. 31, 2022 Hr'g Tr. (Dkt. 410) at 162:25-163:3 (explaining that "if multiple individuals submit claims" for the same fax number, "that clearly then creates a scenario where it is highly likely one of the claims or more may be fraudulent").

4. 800 Claim Forms (or 26% of the total) do <u>not</u> include <u>any</u> number on the Biggerstaff list;[9]

5. 713 Claim Forms (or 24% of the total) provided addresses from states other than the State of Florida;

6. 31 Claim Forms were submitted by corporations that did not come into existence until <u>after</u> faxes were purportedly sent on BTL's behalf;[10] and

7. 781 fax numbers (or 26% of all claimed valid fax numbers) were listed on the Claim Form of one fax provider that itself did not come into existence until <u>after</u> faxes were purportedly sent on behalf of BTL.[11]

Slater Decl. at ¶¶ 34-35.

While we understand why Class Counsel and Intervenors may want to whitewash the ongoing claims process and make it appear as if fraudulent and invalid claims are not at all a problem, the reality is the claims process has been beset with problems, and again, this is apparent even <u>before</u> there has been any auditing of the Claim Forms or <u>any</u> effort at all at <u>independent</u> verification and validation of the information supplied by claimants, making such verification and validation all the more imperative.  <u>See</u>, <u>e.g.</u>, BTL's June 16 Mot. to Compel (Dkts. 454, 458) at 16-28 (noting need for independent verification and validation). [12]

---

[9] If the Biggerstaff list is to be considered accurate, then these 800 Claim Forms are pretty clearly fraudulent or invalid, which Class Counsel have conceded.  <u>See</u> Categories of Defect Notices (Dkt. 454-9) (noting agreement of the Parties that defect notices be sent to claimants that submitted a non-matching fax number).

[10] A corporation that did not come into existence until <u>after</u> June 9, 2010 obviously cannot be a Settlement Class Member.  <u>See</u> Settlement Agt. (Dkt. 324-1) § II.A.

[11] Astro Companies, LLC placed 781 numbers on its Claim Form, each of which were on the Biggerstaff list.  <u>See</u> Slater Decl. at ¶ 34.  Astro Companies, LLC, however, is a fax service provider, and as such, it would <u>not</u> have standing to make a claim under the TCPA even if it had received on any of those numbers faxes sent on behalf of BTL, which it almost certainly did not.  <u>See</u> BTL's June 16 Mot. to Compel (Dkts. 454, 458) at 31.

[12] Unfortunately, the Settlement Administrator's <u>repeated</u> errors have forced BTL to undertake additional efforts to audit other findings made by the Settlement Administrator, which BTL previously accepted.  Those efforts are ongoing.  <u>See</u> Slater Decl. at ¶ 34.

## II.   CONCLUSION

Intervenors and their counsel identified an error by the Settlement Administrator that could have been and should have been rectified by the Settlement Administrator some time ago.  But for whatever reason, it was not addressed until recently, and it remains to be seen exactly why the Settlement Administrator did not identify this issue itself at the outset, only leading to further questions about the overall competency and reliability of the Settlement Administrator.  What is very clear, however, is that the level of fraudulent and invalid claims remains very high, even after the error by the Settlement Administrator has been corrected, and the need for independent verification and validation is all the more pressing, not only to implement Section VIII of the Settlement Agreement but also to satisfy Article III of the Constitution (a separate issue BTL has recently raised with Class Counsel and Intervenors' counsel in light of recent decisions in the Eleventh Circuit and by the Eleventh Circuit).[13]

Date:  July 14, 2023

Respectfully submitted,

/s/ Mark S. Mester
Mark S. Mester, One of the Attorneys
for Defendant Buccaneers Team LLC

---

[13] BTL anticipates filing a motion on the standing issue under Article III in due course after the meet and confer process is completed, unless agreement can be reached between the parties. Article III, however, presents an independent basis for requiring claimants to provide additional information to the Settlement Administrator, given the burden on each Settlement Class Member to demonstrate Article III standing.  See TransUnion v. Ramirez, 141 S.Ct. 2190, 2208 (2021) ("Every class member must have Article III standing in order to recover individual damages."); Drazen, 41 F.4th at 1360 (quoting TransUnion and making clear TransUnion applies to each member of a settlement class).

Mark S. Mester
    (admitted *pro hac vice*)
Robert C. Collins III
    (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  mark.mester@lw.com
              robert.collins@lw.com

Joseph H. Varner, III
    (Bar No. 394904)
HOLLAND & KNIGHT LLP
100 North Tampa Street, Suite 4100
Tampa, Florida 33602-3644
Telephone:  (813) 227-8500
Facsimile:  (813) 229-0134
Email:  joe.varner@hklaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which served all relevant parties.

Date:  July 14, 2023

*/s/ Mark S. Mester*
Mark S. Mester
  (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  mark.mester@lw.com