UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CIN-Q AUTOMOBILES, INC., et al., | ) ) |
| Plaintiffs, | ) |
| v. | ) ) |
| BUCCANEERS LIMITED PARTNERSHIP and JOHN DOES 1-10, | ) ) ) ) |
| Defendants, | ) ) |
| ———————————————— | ) ) |
| TECHNOLOGY TRAINING ASSOCIATES, INC., et al., | ) ) ) |
| Intervenors. | ) |

Case No. 8:13-cv-01592-AEP

Magistrate Judge
Anthony E. Porcelli

### DECLARATION OF GABRIEL W. SLATER

I, Gabriel W. Slater, declare and state as follows:

1. I am an attorney admitted to practice law in the State of Illinois. I am an Associate with the law firm of Latham & Watkins LLP, counsel for Defendant Buccaneers Team LLC f/k/a Buccaneers Limited Partnership ("BTL"). I am supervised on this matter by Mark S. Mester and Robert C. Collins III, both of whom are Partners at Latham & Watkins LLP and counsel of record in this matter. This declaration is based upon my first-hand knowledge. If called upon to do so, I could and would testify competently thereto.

2. Capitalized terms in this declaration shall have the meaning ascribed to them in the Settlement Agreement (Dkt. 324-1).

### A. Mr. Piper's Comments At The May 22, 2023 Hearing

3. I was aware of comments made by Jonathan Piper, counsel for Intervenors Technology Training Associates, Inc. ("TTA"), Larry F. Schwanke, D.C. d/b/a Back to Basics Family Chiropractic ("Back to Basics"), Barewood Outlet, Inc. ("Barewood"), Meryman Environmental, Inc. ("Meryman") and Thomas Savino d/b/a WebRX Pharmacy Palace d/b/a RxPalace.com ("WebRX" and collectively, "Intervenors"), at the May 22, 2023 hearing.

4. Following the hearing, I reviewed the transcript from the May 22, 2023 hearing (Dkt. 444) to assist Mr. Collins in his preparation of an email that I understand was sent to Mr. Piper on May 26, 2023, a copy of which is attached hereto. See May 26, 2023 Email fr. R. Collins to J. Piper, Ex. 1 hereto.

5. During the May 22, 2023 hearing, I understood Mr. Piper to make comments regarding Claim Forms submitted by various of his clients. See Hr'g Tr. (Dkt. 444), Ex. 2 hereto, at 18-20. I did not understand Mr. Piper at the time, however, to be making any comment with regard to the matters he later raised in the submission he made to the Court on June 30, 2023 on behalf of Intervenors. See id.; Intervenors' Resp. (Dkt. 460) at passim.

6. My understanding was that because Mr. Piper was not clear about what his concern was with regard to his clients' Claim Forms, Mr. Collins wanted to reach out to Mr. Piper to see if any concerns Mr. Piper had could be addressed between counsel and, in particular, to facilitate what would be a belated submission of Claim Forms by one or more Intervenors. It was further my understanding that that was the purpose of the email that Mr. Collins sent to Mr.

Piper on May 26, 2023. See May 26, 2023 Email fr. R. Collins to J. Piper, Ex. 2 hereto.

7. To my knowledge, Mr. Piper never provided a substantive response to Mr. Collins' May 26, 2023 email nor did he ever express to us prior to June 30, 2023 the specific concerns expressed in his clients' June 30, 2023 submission regarding how the Settlement Administrator categorized fax numbers and contact numbers supplied on Claim Forms. See Intervenors' Resp. (Dkt. 460) at 2. Instead, Mr. Piper responded nine minutes after Mr. Collins sent him his email, promised a substantive response the following week (which was never provided) and cryptically stated "the short answer is that you completely in every way have misunderstood what I said at the hearing." See May 26, 2023 Email fr. J. Piper to R. Collins, Ex. 3 hereto. Had Mr. Piper, however, expressed earlier the concerns he raised in Intervenors' June 30, 2023 submission, I would have immediately contacted the Settlement Administrator for clarification and would have endeavored to have the Settlement Administrator correct any errors as soon as possible.

**B. My Role In The Preparation Of Submissions Made To The Court**

8. Since the claims period began on November 7, 2022, I have been the primary person on behalf of BTL reviewing the information supplied to the Parties by the Settlement Administrator and then incorporating that information into submissions made to the Court.

9. I am also the primary person working with BTL's expert, Ken Sponsler, in his analysis of data supplied by the Settlement Administrator to the Parties and Intervenors.

3

10. I carefully reviewed the spreadsheet the Settlement Administrator supplied to the Parties and Intervenors. I believe a copy of that spreadsheet has previously been provided to the Court. See Dkts. 448, 450, 455. I also caused a copy of the spreadsheet provided by the Settlement Administrator to be sent to our expert, Mr. Sponsler.

11. I reviewed the foregoing materials for purposes of, among other things, our preparation of two submissions that were recently made to the Court, namely (1) BTL's Motion And Incorporated Memorandum Of Law In Support Of BTL's Motion To Compel Compliance With Section VIII Of The Settlement Agreement (Dkts. 454, 458) and (2) BTL's Response To Plaintiffs' June 16, 2023 Motion Regarding The Claims Process (Dkt. 461). My responsibility was to review the materials provided by the Settlement Administrator and to make sure the representations we made to the Court in those submissions were consistent with the information that had been provided to the Parties and Intervenors by the Settlement Administrator.

12. To that end, I completed a declaration in support of BTL's June 16, 2023 motion, which further made clear that the information contained in BTL's motion was derived from the contents of the spreadsheet previously provided by the Settlement Administrator. See Slater Decl. (Dkt. 454-6) ¶ 3.

13. At no time to my knowledge did the Settlement Administrator provide BTL or our firm with copies of any Claim Forms that had been submitted to the Settlement Administrator. Moreover, I am not aware of the Settlement Administrator prior to last week providing Claim Forms to Plaintiffs, Class Counsel, Intervenors or Intervenors' counsel, and had Claim Forms been

4

previously provided by the Settlement Administrator to any of the foregoing, I would have expected to have been copied on any such communication, as I have been copied on communications between the Settlement Administrator and the Parties and their counsel regarding the claims process commencing on November 7, 2022. See, e.g., Apr. 4, 2023 Email fr. J. Diego, Ex. 4 hereto (providing the final weekly activity report of the claims process).

### C. Intervenors' June 30, 2023 Submission (Dkt. 460)

14. Although I left for vacation on the morning of June 30, 2023, I reviewed Intervenors' June 30, 2023 submission shortly after it was filed in the late afternoon of June 30, 2023.

15. At that time, I reviewed Intervenors' June 30, 2023 submission as well as the attachments thereto, which I understood to be copies of Claim Forms submitted by Thomas Savino on behalf of WebRX (Dkt. 461-1), Larry F. Schwanke on behalf of Back to Basics (Dkt. 461-2) and Dale Meryman on behalf of Meryman (Dkt. 461-3) as well as excerpts from the spreadsheet that the Settlement Administrator had provided to the Parties and Intervenors (Dkt. 460-4). See Intervenors' Resp. (Dkt. 460).

16. I had not previously seen the Claim Forms submitted by WebRX, Back to Basics and Meryman (or any other Claim Forms submitted to the Settlement Administrator) prior to the filing of Intervenors' June 30, 2023 submission.

17. My understanding is that the Settlement Administrator provided access to the spreadsheet on April 10, 2023 to Intervenors' counsel just as it

provided access to the Parties and their counsel.  <u>See</u> Apr. 10, 2023 Email fr. O. Castillejos, Ex. 5 hereto; Apr. 4, 2023 Email fr. J. Diego, Ex. 4 hereto.

18. In the Settlement Administrator's email communication to Class Counsel, BTL's counsel and Intervenors' counsel, the Settlement Administrator explained that the supplied spreadsheet contained "all claims filed, the faxes claimed, and whether the fax number claimed was matched to [the] Biggerstaff list." <u>See</u> Apr. 10, 2023 Email fr. O. Castillejos, Ex. 5 hereto.

19. Based on subsequent comments from the Settlement Administrator and a later request from Intervenors' counsel, it would appear that the copies of Claim Forms attached to Intervenors' June 30, 2023 submission were copies Mr. Piper directly obtained from his clients and <u>not</u> from the Settlement Administrator. <u>See</u> July 6, 2023 Email from J. Piper, Ex. 6 hereto ("Please also provide us, Intervenors's counsel, with the copies of the Intervenor claims forms when you circulate them.").

20. My review of Intervenors' June 30, 2023 submission was the very first indication I had that the Settlement Administrator may have conflated fax numbers with contact numbers on Claim Forms and listed both fax numbers and contact numbers together in the column on the Settlement Administrator's spreadsheet designated "Total Fax Numbers Provided."  <u>See</u> Intervenors' Resp. (Dkt. 460).  Prior to review of Intervenors' submission, I believed that that designation on the spreadsheet provided by the Settlement Administrator meant exactly what it said and that the total number of fax numbers listed was <u>limited</u> to fax numbers <u>only</u>.  <u>See</u> Exs. 7, 8 hereto (spreadsheet excerpts reflecting (a) the

6

columns in the spreadsheet and (b) a sample entry in the spreadsheet for a claimant who included as a contact number a number that was not on the Biggerstaff list).

21. In other words, I understood that the number indicated on the spreadsheet for each Claim Form under the column "Total Fax Numbers Provided" reflected the total number of fax numbers to which each claimant was claiming the claimant had received faxes that were purportedly sent on behalf of BTL. I further understood that each fax number listed on one of the "Fax Number" columns represented a fax number claimed by each claimant, not a contact phone number listed on the Claim Form.

22. It would have never occurred to me that fax numbers and contact numbers would be treated as one in the same by the Settlement Administrator, as they are obviously two very different things and serve very different purposes on the Claim Form, the purpose of the contact number (or supplied contact email) being a way for the Settlement Administrator to contact the claimant if questions arose about a Claim Form that had been submitted to the Settlement Administrator. The Settlement Administrator never indicated that what was designated on the spreadsheet provided to the Parties and Intervenors as "Total Fax Numbers Provided" actually included contact numbers as well as fax numbers. Nor did the Settlement Administrator ever indicate that some number of contact phone numbers matched the Biggerstaff list, or make an effort to differentiate between fax numbers and contact phone numbers.

### D. The Spreadsheet Provided To The Parties By The Settlement Administrator

23. In the course of my review of the spreadsheet provided to the Parties by the Settlement Administrator, we made several inquiries of the Settlement Administrator regarding various issues. See, e.g., Feb. 27, 2023 Email fr. R. Collins, Ex. 9 hereto; Mar. 8, 2023 Email fr. R. Collins, Ex. 10 hereto; Mar. 22, 2023 Email fr. R. Collins, Ex. 11 hereto; Apr. 27, 2023 Email fr. R. Collins, Ex. 12 hereto; May 19, 2023 Email fr. R. Collins, Ex. 13 hereto. At no time, however, was there ever any indication from the Settlement Administrator that fax numbers were being combined with contact numbers or that the column on the Settlement Administrator's spreadsheet titled "Total Fax Numbers Provided" contained anything other than fax numbers supplied on the Claim Forms.

### E. Excerpts From The Spreadsheet Provided To The Parties By The Settlement Administrator

24. For the Court's review, I have attached to this declaration excerpts from the spreadsheet provided to the Parties and Intervenors by the Settlement Administrator. See Exs. 7, 8 hereto.

25. Exhibit 7 simply reflects the titles of the 91 columns on the Settlement Administrator's spreadsheet. See Ex. 7 hereto.

26. Exhibit 8 is a sample entry on the Settlement Administrator's spreadsheet of one of the 14 claimants who listed as a contact number one of the numbers on the Biggerstaff list. See Ex. 8 hereto.

### F. Threats By Intervenors' Counsel To Seek Sanctions

27. I am aware of threats made by Intervenors' counsel to seek sanctions against BTL and/or its counsel with respect to statements made in the submissions

made by BTL on June 16, 2023 and June 30, 2023 and, in particular, BTL's use in those submissions of the information supplied by the Settlement Administrator in the spreadsheet it supplied to the Parties in April of this year.  See July 5, 2023 Email fr. J. Piper, Ex. 14 hereto.  I was primarily responsible for the information provided in those submissions that were obtained from the Settlement Administrator.  I firmly believed at the time each of those submissions were made to the Court that the information supplied by the Settlement Administrator was accurate, and I believe it was reasonable for me to assume that the information being supplied by the Settlement Administrator was accurate.  As such, I believe Mr. Piper's threats of sanctions are unwarranted and inappropriate.

### G.   Other Issues Raised This Week By Mr. Piper

28. In the course of addressing the conflation of fax numbers and contact numbers by the Settlement Administrator, Mr. Piper has also purported to identify other "errors" by the Settlement Administrator, suggesting cryptically that these "errors" would somehow require the Settlement Administrator to "re-notic[e] the class." See July 10, 2023 Email from J. Piper, Ex. 15 hereto.

29. On behalf of BTL, we responded to Mr. Piper's July 10, 2023 email, and it is my belief that the "error" Mr. Piper identified in his July 10, 2023 email is the result of him overlooking other columns on the spreadsheet provided by the Settlement Administrator.  See July 13, 2023 Email fr. R. Collins to J. Piper, Ex. 16 hereto.  Specifically, Mr. Piper suggested that spreadsheet provided by Epiq failed to adequately distinguish between claims submitted by business and claims submitted by individuals.  Mr. Piper, however, appeared to ignore another column in the spreadsheet indicating whether each claimant was an individual or a

9

business. My understanding was subsequently confirmed by the Settlement Administrator. See July 14, 2023 Email from O. Castillejos, Ex. 17 hereto. Mr. Piper's email, however, did raise other issues regarding the identity and standing of claimants as individuals versus corporations that will need to be addressed. See July 13, 2023 Email fr. R. Collins to J. Piper, Ex. 16 hereto.

### H. The Revised Spreadsheet Provided By The Settlement Administrator

30. The Settlement Administrator had explained via email to the Parties that the reason it had listed contact phone numbers as fax numbers was because "some" of the contact numbers on Claim Forms are apparently also numbers on the Biggerstaff list. The actual number of telephone numbers, however, from the Biggerstaff list that were provided as contact numbers was later disclosed by the Settlement Administrator to be only 14 numbers. See July 13, 2023 Email fr. O. Castillejos, Ex. 18 hereto.

31. We received at 3:14 p.m. Central time on July 11, 2023 a revised spreadsheet from the Settlement Administrator and were advised in a cover email that this revised spreadsheet resolved the prior issue, causing 2,450 phone numbers to be removed that were wrongly listed as fax numbers. See July 11, 2023 Email fr. O. Castillejos (3:14 p.m. Central), Ex. 19 hereto; see also July 11, 2023 Email Transmitting First Revised Spreadsheet, Ex. 20 hereto (received at 3:17 p.m. Central).

32. At 3:58 p.m. Central time on July 11, 2023, however, we received another email from Epiq informing us that "[t]he previous file sent included phone numbers that matched to the Biggerstaff list" and that "[a]n updated report is being sent shortly." See July 11, 2023 Email fr. O. Castillejos (3:58 p.m.), Ex. 21 hereto.

10

33. Finally, at 10:56 p.m. Central time on July 11, 2023, we received a third email from Epiq informing us that an updated report correcting the most recent error had now been sent via secure file transfer. See July 11, 2023 Email fr. O. Castillejos (10:56 p.m. Central), Ex. 22 hereto; see also July 11, 2023 Email Transmitting Second Revised Spreadsheet, Ex. 23 hereto (received at 10:58 p.m. Central).

34. Upon receipt of the revised spreadsheets from the Settlement Administrator, we promptly began reviewing the new information to identify each difference between the new and old spreadsheets prepared by Epiq. As of the date of this declaration, that work is ongoing. To date, I have identified that:

- 199 Claim Forms provided a fax number claimed by M&C;
- 16 Claim Forms were submitted listing the fax number claimed by Cin-Q;
- 800 Claim Forms (or approximately 26% of the total number of Claim Forms) do not include any number on the Biggerstaff list; and
- 781 fax numbers (or approximately 26% of all claimed matching fax numbers) were provided by Astro Companies, LLC.

35. In addition, I understand from the Settlement Administrator that the revised spreadsheet did not remove any claimants, only telephone contact numbers that had been wrongly listed as fax numbers. Accordingly, the Settlement Administrator's prior indication that 31 Claim Forms were submitted by entities that did not come into existence until after the class period (i.e., July 2009 – June 2010) remains applicable. See Mar. 28, 2023 Email fr. O. Castillejos (Dkt. 454-13).

36.  I promptly forwarded the revised spreadsheets to our expert, Mr. Sponsler, and Mr. Sponsler and his colleagues are currently reviewing them. My understanding is, however, that their review is not complete as of the date of my execution of this declaration. Nonetheless, to date, BTL's expert has also concluded that:

- 735 claim forms are duplicate claims (accounting for approximately 24% of all claims), in that they provide a fax number that is also provided on another claim form; and
- The reverse lookups contained multiple matches for 1,100 of the claimed valid fax numbers, accounting for 37% of all claimed fax numbers that match a number on the Biggerstaff list.

### I.   Article III Issues

37.  We have also exchanged emails with Class Counsel and Intervenors' counsel over the past week regarding the issue of Article III standing. See July 10, 2023 Email fr. R. Collins to J. Piper, Ex. 24 hereto; July 13, 2023 Email fr. R. Collins to J. Piper, Ex. 16 hereto; July 14, 2023 Email fr. M. Mester to J. Piper, Ex. 25 hereto; July 11, 2023 Email fr. J. Piper to R. Collins, Ex. 26 hereto; July 14, 2023 Email fr. J. Piper to R. Collins, Ex. 27 hereto.

38.  On July 10, 2023, Mr. Collins wrote to Intervenors' counsel to confirm that each Intervenor (a) is in fact members of the Settlement Class (i.e., they held one or more numbers on the Biggerstaff list from July 14, 2009, and June 9, 2010) and (b) has Article III standing insofar as the faxes they claim to have received that were sent on behalf of BTL were not received through an online service. See July 10, 2023 Email fr. R. Collins to J. Piper, Ex. 24.

39. On July 11, 2023, Mr. Piper responded by email. See July 11, 2023 Email fr. J. Piper to R. Collins, Ex. 26 hereto. While Mr. Piper asserted that "the Intervenors are members of the settlement class," he further stated that Intervenors "do not intend to provide additional information to you relating to that fact at this time and in this procedural posture." See id.

40. On July 13, 2023, Mr. Collins sent an email to Mr. Piper, raising the issue of whether an entity or an individual held each of the respective fax numbers claimed by each Intervenors. See July 13, 2023 Email fr. R. Collins to J. Piper, Ex. 16 hereto. On July 14, 2023, Mr. Mester sent an email to Mr. Piper raising additional issues regarding the Article III standing of Intervenors, namely whether any Intervenors received faxes through online fax service providers. See July 14, 2023 Email fr. M. Mester to J. Piper, Ex. 25 hereto.

41. On July 14, 2023 we received a response to the email sent by Mr. Collins on July 13, 2023 to Mr. Piper. See July 14, 2023 Email fr. J. Piper to R. Collins, Ex. 27 hereto. Mr. Piper's email cryptically stated that "standing under the TCPA is not limited to actual owners as your email implies," but did not otherwise fully address the issues raised in Mr. Collins' July 13, 2023 email.

42. As of the date of this declaration, I am not aware that Intervenors have responded to Mr. Mester's July 14, 2023 Email.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July 14, 2023 in Chicago, Illinois.

                                         /s/ Gabriel W. Slater
                                         Gabriel W. Slater