# EXHIBIT 12

Cin-Q Automobiles, Inc., et al. v. BTL
Case No. 8:13-cv-01592-AEP (M.D. Fla.)

| | |
|---|---|
| **From:** | Collins, Robert (CH) |
| **Sent:** | Thursday, April 27, 2023 9:40 PM |
| **To:** | Glenn Hara; Castillejos, Orlando; Jon Piper; Mester, Mark (CH); m@mcalaw.net; Slater, Gabe (CH); Phil Bock; Robert Hatch; Ross Good |
| **Cc:** | Amin-Giwner, Stephanie; Bithell, Richard; Diego, Juana; Kovach, Loree; Palmer, Adam; Cansler, Erik |
| **Subject:** | RE: Cin-Q Auto. Inc. v. BTL Deficiencies |
| **Attachments:** | Cin-Q v. BTL - 2023-03-29 TransUnion Declaration.pdf |

Orlando –

We write in response to Epiq's email dated April 21, 2023 as well as Class Counsel's email dated yesterday, April 26, 2023.  See Apr. 21, 2023 Email fr. O. Castillejos; Apr. 26, 2023 Email fr. G. Hara.

### A. The Six Categories Identified By Epiq

First, BTL agrees that defect notices should be sent to each of the six categories identified by Epiq.  See Apr. 21, 2023 Email fr. O. Castillejos (listing out the categories of defective claims as (1) non-matching fax numbers, (2) multi-claimed faxes, (3) instances where a claimant was not identified in the original notice list, (4) instances where an entity was registered after the class period, (5) claim forms with missing signatures and (6) governmental entities).  BTL notes, however, that before any defect or other notices are sent, all parties should have an opportunity to review the proposed language in each version of such notices.  BTL thus requests that Epiq give the parties sufficient time to review the proposed language before any notices are sent.

Moreover, we wonder whether the notices that Epiq sends out to claimants should not take several different forms, depending on the purpose of the notice itself.  While a so-called "defect notice" may well be warranted in instances where a claim is pretty clearly false or fraudulent (e.g., Astro Companies, LLC), other notices are really more in the nature of a request for documentation or additional information, which is expressly contemplated by the Settlement Agreement and was also noted by Judge Porcelli in his comments at the August 31, 2022 hearing.  See Aug. 31, 2022 Hr'g Tr. (Dkt. 410) at 165:4-12 (noting that the Settlement Agreement contemplates a process whereby Epiq could "require more information" from claimants to "include proof of ownership" and that BTL could then "raise it for the Court as to whether the claim is a valid claim or not").

### B. Arguments Made By Class Counsel

Second, BTL writes to respond to the points recently raised by Class Counsel with respect to the six categories suggested by Epiq.  See Apr. 26, 2023 Email fr. G. Hara.  BTL understands that Class Counsel have objected to two of the six categories:  (1) instances where the original notice was not sent to the claimant; and (2) instances where an entity was not registered until after the class period.  See id.

With respect to the first category, the parties agreed to the reverse lookup process in the Settlement Agreement as a means of attempting to identify class members from Mr. Biggerstaff's list of fax numbers.  See Settlement Agt. (Dkt. 324-1) § VII.  BTL has repeatedly noted the serious limitations with reverse lookups, especially given the inordinate passage of time in this case and the fact that the only holders of any telephone number on the Biggerstaff list that would be eligible to make a valid claim would be the person or entity that held that number in the 11-month period between 2009 and 2010.  See, e.g., BTL's Submission regarding Ascertainability (Dkt. 365); BTL's Motion to Address Limitations of Reverse Lookups (Dkt. 388).  BTL recognizes that the notice program was approved by Judge Porcelli as the best available method to identify class members, given Plaintiffs' failure to address this issue years ago and Plaintiffs' obvious reliance on what ultimately proved to be the erroneous predictions of Mr. Biggerstaff.  See, e.g., BTL's Submission

regarding Ascertainability (Dkt. 365) at 6 (noting that Mr. Biggerstaff's prediction that a reverse lookup could be used to reliably ascertain the identity of class members in this case was largely based on conjecture, since he apparently failed to actually make any effort to perform a reverse lookup, even on a subset of the telephone numbers on the list he compiled).

But in approving the notice program, Judge Porcelli made clear that his approval was dependent upon the robust audit program called for by the Settlement Agreement that empowered Epiq and BTL to investigate and challenge potentially fraudulent claims.  See Aug. 31, 2022 Hr'g Tr. (Dkt. 410) at 165:19-166:12 (finding that notice was appropriate when balanced against the right of "due process of the defendant that is contemplated by Section VIII(E) of the Settlement Agreement," including Epiq's ability to seek documentation or additional information from claimants, Epiq's responsibility to send deficiency notices where appropriate and BTL's right to challenge the validity of claims).  Given this and the fact that Plaintiffs and their counsel freely agreed to all of the safeguards in the Settlement Agreement while simultaneously arguing for a broad use of the reverse lookup results of both TransUnion as well as Lexis/Nexis in spite of the obvious and numerous infirmities in the results obtained by Epiq using both of those sources, sending a defect notice or request for information to someone who did not receive notice or was not identified by either of the two reverse lookups is scarcely in our view an overreaction, especially since the only purpose of a defect or other notice is to allow the claimant to provide some form of documentation that demonstrates he, she or it is actually who they say they are, namely a person or entity who held a telephone number on the Biggerstaff list from July 2009 to June 2010.  See Settlement Agt. (Dkt. 324-1) § VIII (providing that Epiq may seek "additional information" from claimants after considering the positions of the parties).

Plaintiffs cannot now credibly discount issues presented by claimants who were not identified by either reverse lookup, while at the same time relying on the reverse lookup process to establish adequate notice in this case.  Indeed, claims submitted by persons or entities not identified in either reverse lookup creates an indicia of fraud sufficient to warrant a defect notice, in particular given the possibility that the Trans Union or Lexis/Nexis reverse lookups may have identified different matches for those exact fax numbers.

For claims submitted by entities not registered until after the class period, BTL likewise fails to see how an entity not registered until after the relevant class period is not "automatically defective" and that at a minimum such entity should receive a defect notice or request for information.  See Apr. 26, 2023 Email fr. G. Hara.  Certainly, if an entity did not even exist until after the relevant class period in 2009 and 2010, then that entity cannot be a class member and its claim is presumptively defective.

But even if this were not the case, as we have previously explained, Class Counsel's email confuses definitive proof of fraud with indicia of fraud.  See, e.g., Apr. 19, 2023 Email fr. R. Collins.  The parties can hopefully agree that, at minimum, a claim submitted by an entity that did not even exist during the relevant period at least warrants a defect notice or request for information.  If the entity or person receiving the notice from Epiq can demonstrate the claim is legitimate and not false or fraudulent, then the claim should be honored.  But it is nevertheless remarkable to us that Class Counsel would now argue that simply asking for documentation from such an entity is somehow improper or unnecessary.  Moreover, if it would assuage the concerns of Class Counsel, we are (as noted above) comfortable calling the notices sent by Epiq "Request for Documentation" or "Request for Information" (as appropriate) instead of "Defect Notice," in order to better highlight the purpose of the notice.  See disc. supra at § A.

### C.  Questions Left Open By Epiq

Third, BTL writes to address the open questions left by Epiq, concerning (1) claims submitted by claimants identified by Lexis/Nexis or TransUnion and (2) claims submitted by potential fax service providers.  See Apr. 26, 2023 Email fr. G. Hara.

With respect to claimants identified by Lexis/Nexis and TransUnion, the Court was less inclined at the August 31, 2022 hearing to fully rely on the Lexis/Nexis database and the results obtained therefrom, due in part to the many inconsistencies in the Lexis/Nexis the reverse lookup but also the fact that Lexis/Nexis made very clear in the declaration

we submitted at the hearing that results from its database could not be and should not be used or relied upon without independent verification.  See Declaration of Shawn R. Parks (Dkt. 398-2) (disclaiming that Lexis/Nexis' databases were intended or designed to accurately identify the historic holder of a line for purposes of class notice, stating that the Lexis/Nexis data may contain errors and is not free from defects, noting that matches may include persons or entities that ceased being associated with the telephone number in question before the time period in question and finally concluding that the data should not be relied on unless it is "independently verified"); see also Aug. 31, 2022 Hr'g Tr. (Dkt. 410) at 163:19-22 (Judge Porcelli concluding that "the Lexis/Nexis reverse lookup is less reliable than the TransUnion reverse lookup," without otherwise fully endorsing TransUnion).

It was for this reason that Epiq confirmed to us in writing during the claims process that it would seek documentation from persons and entities who submitted a claim but matched only on the Lexis/Nexis database and not on the TransUnion database.  See Jan. 2023 Emails btwn. O Castillejos and R. Collins.  We would, in turn, appreciate a full explanation from Epiq before any notices are issued to claimants as to why it appears to have suddenly changed course and no longer believes that it needs the very thing that Lexis/Nexis made clear it should obtain before relying on results from its database, especially given that Epiq quite clearly believed at one point that such requests were necessary.  See id.

As Epiq is aware, we have since obtained a similar declaration from TransUnion in which TransUnion likewise confirms the need for independent verification:

> Without independent verification and validation, the results of the Batch Legal Reverse Phone Lookup product should not be relied upon to accurately identify the name and mailing address of the person or entity that held a phone line in 2009 and/or 2010, and TransUnion does not warrant or represent that the Batch Legal Reverse Phone Lookup product can be used for that purpose without independent verification and validation.

Declaration of Leslie Roach at ¶ 3.  A copy of the Roach declaration is attached.  Epiq has requested that we submit the Roach declaration to the Court under seal, and we are in the process of preparing a motion requesting leave to do so.  The fact, however, that TransUnion has also confirmed that results from its databases should not be relied upon without independent verification makes it clear to us that documentation should be requested from claimants with numbers that matched on the TransUnion reverse lookup as well as the Lexis/Nexis reverse lookup in order to ensure that the person making the claim actually held the number in question during the 11-month period during which faxes were allegedly sent on behalf of BTL and not during some time period before or after that 11-month period.

Fourth, BTL further agrees with Epiq that it is appropriate to send defect notices to each business seeking confirmation that they are not a fax service provider.  Given that, as one example, Astro Companies, LLC submitted a claim containing 781 fax numbers and appears to be a fax services provider, this is a real problem that the parties cannot simply ignore.  See Astro Companies, Smart Mail Faxing Services, https://astrocompanies.com/carrier-services (accessed Mar. 31, 2023) (explaining that Astro offers a service "which accepts faxes and then converts them into the convenient Adobe PDF format and delivers them to the subscriber by email"); Tracking Number 177503 (listing the 781 fax numbers provided by Astro Companies, LLC).

BTL remains open to suggestions from Class Counsel and Epiq regarding how to identify such claimants.  But as of now, the only equitable way we see to identify such claimants is to send defect notices or requests for documentation to every entity (i.e., non-individual) seeking their confirmation that they are not a fax services provider.

### D. Conclusion

Finally, BTL agrees that the current situation may warrant additional time.  See Apr. 21, 2023 Email fr. O. Castillejos (addressing the need for additional time).  BTL has long suspected that additional time might be required, given the potential for widespread fraud based on the heavy reliance on reverse lookups in this case.  See BTL's Proposed Timeline

of Deadlines (Dkt. 419).  BTL thus agrees that an extension of the current deadlines is necessary and has no objection to a reasonable extension.

Best regards,
Robbie