UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CIN-Q AUTOMOBILES, INC., *et al.*,

    Plaintiffs,

v.                                         Case No. 8:13-cv-1592-AEP

BUCCANEERS LIMITED
PARTNERSHIP,

    Defendant.
_____/

## ORDER

This cause comes before the Court upon the following filings: Motion Regarding the Claims Process by Plaintiffs Cin-Q Automobiles, Inc. ("Cin-Q") and Medical & Chiropractic Clinic, Inc. ("M&C") (collectively, "Plaintiffs") (Doc. 451), response in opposition thereto by Defendant Buccaneers Team LLC f/k/a Buccaneers Limited Partnership ("BTL" or "Defendant") (Doc. 461); and Defendant's Motion to Compel Compliance with Section VIII of the Settlement Agreement (Doc. 454),[1] Plaintiffs' response in opposition thereto (Doc. 459), and Defendant's reply (Doc. 467).[2] On July 17, 2023, the Court held a hearing on these matters. For the reasons stated at the hearing and articulated below, Plaintiffs' Motion is granted in part and denied in part and Defendant's motion is granted in

---

[1] Defendant also filed an unredacted version of the motion under seal (Doc. 458).
[2] The Intervenors, Technology Training Associates, Inc., filed a response to both Plaintiffs' and Defendant's motions (*see* Doc. 460).

part and denied in part.

I.  **Background**

The Court has fully outlined the extensive history of this case in its previous Order granting preliminary approval of the class action settlement and notice to the class (Doc. 343). Since then, the Court has held multiple hearings and the parties have briefed multiple issues relating to the notice program (*see e.g.*, Docs. 349, 350, 359, 377, 381,  384, 409, 413, 414, 418-20). Of note, in an Order on September 2, 2022, this Court addressed the notice program and the extensive effort to protect the rights of absent class members under the mandates of Rule 23 (*see* Doc. 409, at 3-10). In contemplating what Plaintiffs and Defendant agreed to in the Settlement Agreement and in consideration of the due process rights of the absentee Class Members and BTL, this Court found that direct mail notice remained appropriate in this case (Doc. 409, at 8). However, considering the reliability and verifiability of the reverse lookups conducted by third-party vendors TransUnion and LexisNexis, and the unique circumstances presented by this case where the facsimile advertisements were allegedly sent more than a decade ago, this Court found that the best notice that was *practicable under the circumstances* was to send direct mail notice to all individuals and entities identified as a single match or as one of multiple matches to a unique fax number in the TransUnion reverse lookup and direct mail notice to all individuals and entities identified as a single match to a unique fax number in the LexisNexis reverse lookup, in addition to publication notice (Doc. 409, at 8-9).

While the Court recognized that direct notice to multiple individuals associated with the same unique fax number during the relevant time period may be somewhat overinclusive, to not send notice to those multiple matches would deprive direct notice to Class Members (Doc. 409, at 9). Notably, this Court highlighted that multiple safeguards exist in the claims process, including that the claimant must provide the fax number associated with the claim (which was not included in the notice) and certify under penalty of perjury that the information they have provided in the Claim Form is true and correct (Doc 409, at 9-10; *see also* Doc. 324-1, at 47). Additionally, pursuant to the Settlement Agreement, the Settlement Administrator, Epiq, can reject any claim that does not substantially comply with the instructions on the Claim Form or the terms of the Agreement or was postmarked later than the Claim Deadline (Doc. 324-1, at 19). The decision of Epiq as to whether a claim is valid is final and binding upon the parties, subject to an appeal by a party or any absent Class Member, which the parties will endeavor to resolve without Court intervention (Doc. 324-1, at 19). Any disputes regarding such determination, including as to whether a claim is fraudulent or valid, is subject to review by the Court (Doc. 324-1, at 19). At the time, this Court found that these were sufficient safeguards against non-class member claims while reaching as many Class Members as reasonably possible (Doc. 409, at 10).

Fast-forward several months and we find ourselves in another dispute, this time over the claims process. Plaintiffs seek an order clarifying that the Settlement Agreement does not limit Settlement Class Member's recovery to five faxes and a

maximum award of $615, even if the claimant received faxes at more than one valid fax number. Moreover, Plaintiffs seek an order directing Epiq to send a defect notice or a request for additional information to five categories of claimants that the parties have already agreed to. On the other hand, BTL alleges that the claims process has been plagued with numerous issues and Epiq should further investigate almost every claim filed.

## II.     Discussion

As previously noted, Plaintiffs move for an order clarifying that the Settlement Agreement does not limit Settlement Class Members from recovering for more than five faxes and a maximum of $615 (Doc. 451). Essentially, Plaintiffs argue that there is no cap to the number of faxes a Settlement Class Member can recover an award for other than that they cannot recover for more than five faxes to one unique fax number. Plaintiffs also seek an order directing Epiq to send a defect notice or a request for additional information to claimants in five agreed-upon categories. Finally, Plaintiffs seek an order rejecting BTL's proposed additional "defect" categories, which would result in every person who filed a claim during the claims process to receive a defect notice or request for additional information (Doc. 451). In its motion, BTL seeks compliance with section VIII of the Settlement Agreement, in particular, alleging rampant fraud in the claims process and a need to seek more information from all claimants. The Court will address these issues in turn.

### A. Recovery Limits

4

The Settlement Agreement explains the benefits to the class as it should be disbursed from the Settlement Fund (*see* Doc. 324-1, at 12). In terms of the disbursement amount, the Settlement Agreement states the following:

> Subject to the terms of this Agreement, *Settlement Class Members* who received or were successfully sent in 2009 or 2010 one or more unsolicited facsimile advertisements relating to tickets for Tampa Bay Buccaneers games sent by or on behalf of BTL and *who submit a Valid Claim shall be eligible to receive up to*:
>
> (i)  $350 for the first such facsimile;
> (ii) $125 for the second such facsimile;
> (iii) $90 for the third such facsimile;
> (iv) $25 for the fourth such facsimile; and
> (v) $25 for the fifth such facsimile.

Section IV(B), Settlement Agreement (Doc. 324-1, at 13) (emphasis added). The term "Valid Claim" is defined in the Settlement Agreement as "a timely and fully completed Claim Form submitted by a Settlement Class Member as more fully described in Section VIII" (Doc. 324-1, at 12). According to Section VIII of the Settlement Agreement, in order to file a Valid Claim, Settlement Class Members must take the following steps:

> (i)  Complete a Claim Form, providing all of the information required by the Settlement Agreement and the Claim Form;
> (ii) Sign the Claim Form under penalty of perjury; and
> (iii) Return the completed and signed Claim Form to the Settlement Administrator on or before the Claim Deadline.

Section VIII (B) (Doc. 324-1, at 19). The Settlement Agreement does not mention the possibility of a Settlement Class Member submitting a separate Claim Form for every fax number or even insinuate that a Settlement Class Member would be eligible to recover more than $615. In fact, the Settlement Agreement explicitly

5

states that Settlement Class Members may be eligible to receive *up to* $615 if they received five faxes from BTL. The Settlement Agreement does not appear to contemplate the amount of fax numbers the Settlement Class Member had at the time, just the number of faxes received. This can be seen by the limited nature in which "fax number(s)" is mentioned in the Settlement Agreement; references to fax number(s) primarily appear in the context of identifying Settlement Class Members (*see* Doc. 324-1, at 16, 18).

In addition to the terms of the Settlement Agreement, the Claim Form, which was incorporated into the Settlement Agreement, speaks of a Claim in the singular form and provides the following instructions to a putative Settlement Class Member:

> List all numbers at which you or your company received faxes between July 14, 2009, and June 9, 2010. Attach a separate sheet if necessary. The Settlement Administrator will verify that the fax number(s) you provide appear(s) in the existing records related to the case before approving your claim. The parties also have the right to audit this claim form, verify your statements, and dispute any claims.

(Doc. 324-1, at 47). Similarly, the Mailed Notice states that "[i]f the Court approves the settlement at the final approval hearing, *each valid claim* will be paid *up to*: (1) $350.00 for the first fax; $125.00 for the second fax; $90.00 for the third fax; $25.00 for the fourth fax; and $25.00 for the fifth fax" (Doc. 324-1, at 49) (emphasis added). The Publication Notice also states that "*[e]ach Settlement Class Member* who . . . submits a Valid Claim shall be eligible to receive *up to*: (i) $350 for the first such facsimile; (ii) $125 for the second such facsimile; (iii) $90 for the third such facsimile; (iv) $25 for the fourth such facsimile; and (v) $25 for the fifth such facsimile" (Doc.

6

324-1, at 53) (emphasis added). Like the Settlement Agreement, the notices clearly state that a Settlement Class Member can recover up to $615 for five faxes, without any mention of amount of fax numbers or that each fax number consists of a separate claim. Thus, regardless of whether the Settlement Class Member received six faxes to one fax number, six faxes to two fax numbers, or six faxes to six fax numbers, they would receive $615.

Although Plaintiffs appear to conflate the term "Settlement Class Members" with "fax numbers," the Settlement Agreement unambiguously contemplates limiting a Settlement Class Member's recovery to $615 for five faxes. Not only is this the only interpretation based on the plain language of the Settlement Agreement, but it is also the only logical interpretation. Plaintiffs' proposed interpretation of the Settlement Agreement would yield unsound results. For instance, Plaintiffs propose that the ascending scale for faxes one through five be reset for each fax number, again treating a fax number as if it were a Settlement Class Member and leading to unequal results for Settlement Class Members. For example, under Plaintiffs' interpretation, a Settlement Class Member who had two fax numbers and received one fax at each of those fax numbers would recover $350 for each fax for a total of $700, whereas a Settlement Class Member who had one fax number and received five faxes to that fax number would only recover $615. This would also cause a great disparity between Settlement Class Members who are similarly situated. For instance, a Settlement Class Member who had five fax numbers and received one fax at each of those fax numbers would recover $350 for

each fax for a total of $1,750, whereas a Settlement Class Member who had one fax number and received five faxes to that fax number would only recover $615. Given the resulting windfall for Settlement Class Members with multiple fax numbers, there would be an inequitable result.

Based on the foregoing, Plaintiffs' interpretation is not in line with the plain language of the contract and would lead to inequitable results. Accordingly, the Court finds that the Settlement Agreement limits a Settlement Class Member to recover up to $615 for five faxes regardless of the number of fax numbers the Settlement Class Member claims. Moreover, the Court denies Plaintiffs' request for further notice to opt-out Settlement Class Members given that the Settlement Agreement, Claim Form, and notices are unambiguous about the potential recovery.

### B. Additional Inquiries Regarding Claims

The Settlement Agreement also addresses the claims process and payments to Settlement Class Members (*see* Doc. 324-1, at 19-21). Specifically, the Settlement Agreement provides that Epiq will reject any claim that does not substantially comply with the instructions on the Claim Form or the terms of the Settlement Agreement or is postmarked later than the Claim Deadline, and that the decision of Epiq as to whether a claim is valid is final and binding upon the parties, subject to an appeal by a party or any absent Class Member, which the parties will endeavor to resolve (Doc. 324-1, at 20). Thus, BTL has the right to audit the Claim Forms and shall bring to the attention of Plaintiffs any Claim Form it believes is invalid or

fraudulent, and the parties shall meet and confer and attempt to resolve any dispute regarding the claim (Doc. 324-1, at 20). If the parties are not able to resolve the dispute, they are to provide Epiq with their positions regarding the disputed claim and Epiq, if appropriate, shall seek additional information from the Settlement Class Member and make an initial determination, subject to review by the Court (Doc. 324-1, at 20-21). Epiq has apparently withdrawn itself from this process, refusing, at this time, to make these determinations regarding BTL's claims of fraud absent direction from the Court. Thus, here we are.

Plaintiffs and Defendant have agreed that Epiq shall request additional information from the following categories of claimants:

1. Claims containing non-matching fax numbers (*i.e.*, any claim containing a fax number not matching a number on the Biggerstaff list);
2. Multi-Claimed Fax Number (*i.e.*, any claim featuring a fax number also listed on another claim form);
3. Missing Signature;
4. Potential Government Entity; and
5. Claims submitted by entities not registered until after the class period (*i.e.*, July 2009 to June 2010).

(Doc. 451, at 2). The Court agrees that Epiq shall request additional information from these categories of claimants and has already directed Epiq to partake in this inquiry (*see* Doc. 470).

BTL raises five additional categories of claimants it believes should also receive requests for additional information from Epiq:

1. Claims submitted by claimants identified by TransUnion;
2. Claims submitted by claimants identified by LexisNexis;
3. Claims submitted by claimants not identified on either reverse lookup;
4. Claims submitted by claimants providing an address outside the State of

9

       Florida; and

5. Claims submitted by claimants for which the reverse lookup process identified multiple matches.

(Doc. 454, at 11). BTL concedes that the first two categories are the largest groups and, in some sense, the most important, as a decision to send requests for additional information to the first two categories would largely obviate the need to make a decision with respect to the other three categories (Doc. 454, at 11). In response, Plaintiffs seek an order rejecting BTL's proposed requests for additional information. For the reasons stated at the hearing, at this time the Court does not see a need to seek additional information from these group. This does not prohibit BTL from challenging any claims directly to Epiq or raise those issues with the Court at a later time. The Court agrees with BTL that additional information should be requested from fax service provides and notes that it has already directed Epiq to confer with the parties to determine an appropriate process to identify claimants reasonably believed to be fax service providers and request additional information from such suspected fax service providers.

### III. Conclusion

For the foregoing reasons, it is hereby

ORDERED:

1. Plaintiffs' Motion Regarding the Claims Process (Doc. 451) is GRANTED IN PART AND DENIED IN PART as follows:

    a. Epiq, as agreed upon by the parties, shall request additional information from the following categories of claimants: 1. Claimants that submitted

a Claim Form containing non-matching fax numbers (i.e., any claim containing a fax number not matching a number on the Biggerstaff list); 2. Claimants that submitted a Claim Form containing a fax number also listed on another Claim Form; 3. Claimants that submitted a Claim Form missing a signature; 4. Claimants that are potential government entities; and 5. Business Claimants that were registered after the class period (July 2009 to July 2010).

   b. Denied in all other respects.

  2. Defendant's Motion to Compel Compliance with Section VIII of the Settlement Agreement (Doc. 454, 458), is GRANTED IN PART AND DENIED IN PART as follows:

   a. Epiq shall confer with the parties to determine an appropriate process to identify claimants reasonably believed to be fax service providers and request additional information from such suspected fax service providers.

   b. Denied in all other respects.

DONE AND ORDERED in Tampa, Florida, on this 26th day of July, 2023.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record

11