**EXHIBIT A**

1          **UNITED STATES DISTRICT COURT**
             **MIDDLE DISTRICT OF FLORIDA**
2               **TAMPA DIVISION**

3  CIN-Q AUTOMOBILES, INC.,
    ET AL.,
4

              Plaintiffs,
5
                  CASE NO. 8:13-cv-01592-T-AEP
6                  July 17, 2023
        vs.          Tampa, Florida
7                  2:02 p.m. - 3:12 p.m.

8  BUCCANEERS LIMITED PARTNERSHIP,
    ET AL.,
9

              Defendant.
10 _____/

11

12

13

14          **TRANSCRIPT OF MOTION HEARING**
             (By Zoom Videoconference)
15    BEFORE THE HONORABLE ANTHONY E. PORCELLI
         UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24  Proceedings transcribed via courtroom digital audio
    recording by transcriptionist using computer-aided
25  transcription.

**APPEARANCES:**

| | |
|---|---|
| For the Plaintiff: | ROSS MICHAEL GOOD, ESQ.<br>Loftus & Eisenberg, Ltd.<br>161 N. Clark, Ste. 1600<br>Chicago, IL  60601<br>786/539-3952 |
| | MICHAEL C. ADDISON, ESQ.<br>Addison Law Office, P.A.<br>1304 Alicia Avenue<br>Tampa, Florida 33604<br>813/223-2000 |
| | GLENN L. HARA, ESQ.<br>Anderson & Wanca<br>3701 Algonquin Rd. Ste. 500<br>Rolling Meadows, IL 60008<br>847/368-1500 |
| For the Defendant: | MARK MESTER, ESQ.<br>ROBERT C. COLLINS III, ESQ.<br>Latham & Watkins, LLP<br>330 North Wabash Avenue, Suite 2800<br>Chicago, Illinois 60611<br>312/876-7700 |
| | JOSEPH H. VARNER, III, ESQ.<br>Holland & Knight, LLP<br>100 N. Tampa St. Ste. 4100<br>Tampa, FL  33602<br>813/227-8500 |
| For the Moving Intervenors: | JONATHAN B. PIPER, ESQ.<br>Bock, Hatch, Lewis & Oppenheim, LLC<br>134 North La Salle St., Suite 1000<br>Chicago, Illinois 60602<br>312/658-5500 |
| Court Reporter: | Howard W. Jones, RPR, FCRR<br>801 N. Florida Avenue, Suite 15A<br>Tampa, Florida 33602<br>813/301-5024 |
| Also present: | Mr. Slater |

* * * * * * * * * *

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

3

1                        **I N D E X**

2                                                    **PAGE**

3
   RULING OF THE COURT:                        16
4
   RULING OF THE COURT:                        37
5
   RULING OF THE COURT:                        52
6
   RULING OF THE COURT:                        53
7
   CERTIFICATE OF COURT REPORTER:              60
8

9                    * * * * * * * * *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                     UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                            TAMPA DIVISION

```
1   (COURT CALLED TO ORDER)

2                   P R O C E E D I N G S

3           THE COURT:  All right.  Good afternoon.  Let's

4   call the case.

5           THE DEPUTY CLERK:  Good afternoon again everybody.

6   This is Cin-Q Automobiles vs. Buccaneers Limited

7   Partnership.  Case 8:13-cv-1592-AEP.

8           THE COURT:  Okay.  Good afternoon.  Let me have

9   counsel starting with class counsel state your appearance

10  for the record.

11          MR. ADDISON:  Michael Addison, counsel for Cin-Q

12  Automobiles.

13          MR. GOOD:  Ross Good, counsel for Medical and

14  Chiropractic Clinic.

15          MR. HARA:  Glenn Hara --

16          THE COURT:  Oh, I'm sorry, Mr. Hara.  I didn't see

17  you.  Mr. Piper?

18          MR. PIPER:  Good afternoon.  Jonathan Piper for

19  the intervenors.

20          THE COURT:  All right.  And for the Buccaneers?

21          MR. MESTER:  Good afternoon, Your Honor.  Mark

22  Mester and Robbie Collins for the Buccaneers.  And I also,

23  with your -- with the Court's indulgence, asked Mr. Slater

24  to join.  He's been working on the case.  He hasn't

25  appeared, but he did submit a couple declarations, so to the
```

1  extent Your Honor had any questions for him, I wanted to

2  make sure he was available.

3          THE COURT:  All right.  Mr. Varner?

4          MR. VARNER:  Yes.  Good afternoon, Your Honor.  Joe

5  Varner, co-counsel for the Buccaneers.

6          THE COURT:  Okay.  Thank you all for your time

7  this afternoon.  As you know, I scheduled this based upon

8  the pending motions related to requests for certain

9  compliance of the settlement agreement.

10          For the record, the pending motions are filed at

11  document number 430 -- excuse me.  454 -- 451, 454.  The

12  Court has previously entered the request to seal.

13          Mr. Mester, I don't know if you have already

14  submitted the new Excel spreadsheet, but that request has

15  been granted.

16          MR. MESTER:  I don't believe we have yet, Your

17  Honor, but we certainly will.

18          THE COURT:  That's fine.  All right.  Let's start

19  off if we can first with the issue regarding the

20  contemplation as to what is meant by the notice in terms of

21  the claim and if the claim is capped at $615.

22          Who is going to be making argument for class

23  counsel?

24          MR. ADDISON:  Mr. Hara.

25          MR. HARA:  Yes, Your Honor, that's me.

1        THE COURT:  All right, Mr. Hara.  Go ahead.

2        MR. HARA:  So I think it's important to note

3  that -- that number five was not picked out of thin air.

4  It's not arbitrary.  That is the number -- that's the

5  maximum number of faxes received by any one fax number

6  outside of a couple of test numbers that were sent to the

7  Buccaneers.

8        THE COURT:  The Buccaneers seem to dispute that in

9  their response though, so what is it exactly?

10        MR. HARA:  That is the largest number of faxes

11  that any one fax number received.  And we did that -- we

12  negotiated for that so that everyone would get paid

13  something for every fax, even if it was $25 at the bottom

14  end of the fourth and fifth faxes.  It was never intended as

15  a cap on claims; it was a floor on claims.  It was a

16  guarantee that everyone would be paid something for every

17  fax.

18        And, for example, a small business owner, like, an

19  independent pharmacy or something who has two fax numbers in

20  2009, 2010, two separate fax machines, each fax number gets

21  three faxes.  Under the way BTL is reading our agreement,

22  that claimant would get nothing for the sixth fax.

23        THE COURT:  But isn't it just as arbitrary to say

24  you have two faxes and get faxes as to each of those, but I

25  have one fax, you have gotten four faxes, two to each

```
 1   separate fax machine, but I got four faxes to one fax
 2   machine, but somehow I am gonna be getting substantially
 3   less than you who have gotten the same amount of faxes but
 4   they just happen to be two different numbers.
 5           MR. HARA:  Well, that's a good point, but, Your
 6   Honor, it's more annoying to get faxes on two machines,
 7   first of all.  It's occupying more of your time that you
 8   could be -- could be devoted towards your business.
 9           THE COURT:  I would disagree with that.  If I only
10   have one fax machine and relying upon only one machine, it's
11   probably just as annoying, if not more.
12           MR. HARA:  Well, look, this is the deal we struck.
13   I just wanted the Court to understand that that number five
14   was never intended to act as a cap.  We briefed this issue
15   at the preliminary approval stage.  The intervenors raised
16   the question in their response to our motion for preliminary
17   approval say it's not clear to us if these claims are going
18   to be paid per fax number or just per claimant.
19           And we laid it out in our reply in support of
20   preliminary approval that, of course, they are going to get
21   paid per fax number.  We wouldn't have negotiated any other
22   way.  BTL said nothing.
23           THE COURT:  Why doesn't the claim form itself or
24   any of the documents talk in terms of claims per fax number
25   rather than identifying settlement class members per claim?
```

1          MR. HARA:  As to the settlement agreement, I'll

2    tell you why the language is what it is.  It's because I

3    took it from the TTA settlement.  And I did that for two

4    reasons.  First of all, the Buccaneers had already agreed to

5    all the terms in that agreement so they couldn't very well

6    object to something they just put before Your Honor for

7    preliminary approval.

8          And the same is true of the TTA intervenors.  I

9    knew they would be looking for any basis whatsoever to

10   nitpick our settlements, so I wanted to make sure that our

11   terms were the same as their terms as least as much as

12   possible.

13         So, that's why the agreement is what it is.  In

14   terms of like, you know, the sentences that BTL has taken

15   out of our motion for preliminary approval, for example, all

16   I can say is we were contemplating the usual scenario, which

17   is the overwhelming majority of the claims in this case by

18   the way, where a claimant is filing on just one fax number.

19   That's the usual scenario and that's what we were thinking

20   when we wrote.

21         We could have been more careful about that.  I

22   absolutely agree with that.  But this -- BTL never said

23   anything about this being a cap until April of this year.

24   We negotiated this for a very long time.  I don't think

25   anybody ever -- we never intended it to be this way and for

1    the Buccaneers to do it at the last minute, I just -- I

2    don't see how you read it that way.  Each fax number has to

3    constitute a separate claim in our view.

4             THE COURT:  All right.  What's the response?

5             MR. MESTER:  Your Honor, I'll be brief.  There is

6    a dispute about the maximum number of faxes.  I understand

7    it's class counsel's position that those are test fax

8    numbers.  Our position is they are not.  So, it is an

9    arbitrary number five, but more importantly --

10            THE COURT:  Where is that at, Mr. Mester?  Is it

11   in the Biggerstaff report?  Why is that disputed?

12            MR. MESTER:  Well, it -- I think -- it's not

13   disputed that faxes were sent, more than five were sent to

14   some numbers.  What's disputed is which were test fax

15   numbers and which weren't.  Our position is they were not

16   test fax numbers.  Those are class members.  Mr. Hara's

17   position, I believe, is that the numbers that got more than

18   five faxes were test fax numbers.

19            THE COURT:  But Mr. Hara then obviously has been

20   consistent in his position that it was capped off at five.

21            MR. MESTER:  Well, I'm not sure that's correct,

22   Your Honor.  I think his position is that it wasn't

23   arbitrary.  Our position is, understanding the Biggerstaff

24   report the way we did, there were numbers that received more

25   than five.  And, so, in that sense it is, five is arbitrary.

1   It's also clearly what we negotiated, but it is arbitrary.

2         THE COURT:  But from what you are saying, and

3   whether it's arbitrary or not, you are indicating that the

4   position Mr. Hara has taken all along has been no one

5   individual received actually more than five faxes.

6         MR. MESTER:  I don't --

7         THE COURT:  Could be a wrong position, but that

8   was the position that was taken.

9         MR. MESTER:  I don't know that we knew that.  I

10  knew there was -- I don't think that was the focus of the

11  dispute over which were the test fax numbers.  But, yes, I

12  think you could probably infer that although that wasn't --

13  that wasn't why I think it was being disputed when it was.

14         But, in any case, Your Honor, the settlement

15  agreement is perfectly clear that the limit is five per

16  settlement class member.  The statements by class counsel

17  are perfectly clear to Your Honor that the maximum recovery

18  is $615 and that the maximum number of faxes that can be

19  claimed are five in number.

20         We recounted in our submission that we made on

21  June 30th all the reasons why we insisted upon that limit.

22  It's because no one knows -- and I think Mr. Hara as much as

23  confirmed it this afternoon.  No one knew at the time we

24  were entering the settlement agreement how many settlement

25  class members there were and how much of problem this was,

1   but this was clearly understood to be a compromise like all

2   settlements.  So, that's how it was negotiated.  I don't

3   recall the province of the provision in the settlement

4   agreement being from TTA, but I know it's very clear and we

5   set it out in our papers.  I don't think it could be any

6   more clear that settlement class members are limited to five

7   faxes and that's that.  And it's -- obviously settlement

8   class members are not the same thing as telephone numbers or

9   fax numbers.  And that seems to be the persistent confusion

10  on this issue, but there is no ambiguity whatsoever in the

11  settlement agreement in our view.

12          THE COURT:  All right.  Mr. Hara, any response?

13          MR. HARA:  Just to clarify, Your Honor, my -- our

14  position all along has been that no fax number has received

15  more than five faxes, but there are obviously some limited

16  number of claimants who had more than one fax number.

17          So, just to clarify, it's not that every class

18  member received no more than five faxes.  The problem arises

19  from where separate fax numbers are claimed by the same

20  person and they received any number of faxes.  It doesn't

21  even have to be five.  Like, someone who got two faxes on

22  fax line A and two faxes on fax line B will be paid much

23  less under BTL's reading.  Because under our reading, it

24  would be 350 plus 125 on fax line A.  And 350 plus 125 on

25  fax line B.

1          The way BTL would read it, it would be 350, 125,

2    90, 25.  So, it's a difference -- it's a significant

3    difference that we are talking about.

4          THE COURT:  Well, I certainly understand --

5          MR. PIPER:  Your Honor --

6          THE COURT:  -- and appreciate -- I'm sorry.

7    Somebody wanted to add something?

8          MR. PIPER:  Well, Your Honor, I would like to make

9    two points.  One is that in our settlement, this was the

10   language in the settlement agreement; however, it was

11   understood that this meant per fax number.  And we recited

12   that numerous times including in the mediator's notes of the

13   mediation and it was never disputed at any time by BTL that

14   what we said in our briefs was accurate.

15         So, if they are changing it here, that's a

16   material detriment of this settlement compared to the one

17   that we had submitted.

18         Secondly, you have here a fundamental lack of a

19   meeting of the minds about what the claims relief is.  I

20   would just suggest that that is the one more reason they --

21   for vacating preliminary approval, because if they can't

22   even agree what the settlement is, how can you give it

23   preliminary approval?

24         THE COURT:  Mr. Piper, in your request for

25   preliminary approval, was that not delineated as to each

1    claim would be by fax number?

2         MR. PIPER:  I believe it may have been.  I know

3    that at some point we raised with BTL the issue that the

4    language in the settlement agreement was ambiguous on that.

5    And we went over the history and they agreed that they did

6    not dispute that what the mediator notes said was what they

7    had agreed to.

8         THE COURT:  All right.

9         MR. MESTER:  Your Honor, may --

10        THE COURT:  Yes, Mr. Mester?

11        MR. MESTER:  Your Honor, I didn't go back and look

12   at the TTA record preparing for that.  I don't have any

13   recollection of that.  If the language however is as Mr.

14   Hara represents it to be identical as between the TTA

15   agreement and this agreement, then clearly the meaning is

16   the same.  And I don't think, again, there is any ambiguity

17   in that language.  I don't have -- I certainly don't have

18   the mediator's notes handy from the mediation that took

19   place in a different case some time ago, but I don't have

20   any recollection of that at all.  It may have been a

21   conversation Ms. Lally had, but she's left the case some

22   time ago, but I don't recall that at all.

23        MR. PIPER:  That's correct.  It was Ms. Lally we

24   were discussing these things with.

25        THE COURT:  All right.  Anything else, Mr. Piper?

1           MR. PIPER:  That's it.

2           THE COURT:  All right.  Mr. Hara, anything else?

3           MR. HARA:  No, not on this issue, Your Honor.

4           THE COURT:  All right.  Mr. Mester, anything else?

5           MR. MESTER:  No, Your Honor.

6           THE COURT:  All right.  I have looked at this

7    issue prior to the hearing and I agree with Mr. Mester.  I

8    think the language of the claim form as well as the notice

9    as well as the settlement agreement makes it clear that a

10   claim is capped off as identified in the hierarchy of the

11   settlement agreement for each successive fax up to a total

12   of five faxes.  That being 350 for the first, 125 for the

13   second, 90 for the third, 25 for the fourth and fifth for a

14   total of a cap of no more than $615.

15           I find this to be unambiguous in the settlement

16   agreement and in the claim form based upon the language that

17   is used.  First, in looking at the claim form itself, it

18   specifically identifies proof of claim.  It doesn't talk

19   about in terms of the plural of multiple claims for one

20   form, rather than just a claim.  And it reads as headlined,

21   proof of claim, and it also reads, read the entire form

22   carefully.  You must submit your signed claim.  And again

23   throughout, the word claim is utilized.

24           It does note under step one where information is

25   provided as to each individual person that you are to list

1    all numbers at which you or your company received faxes

2    between the relevant dates and invites them to attach a

3    separate sheet if necessary.  At no point does it identify

4    that the multiple faxes will result in multiple claims.  The

5    settlement agreement contemplates the same.

6            And looking at the settlement agreement itself,

7    under Section Four, Benefits to the Class, paragraph B, it

8    reads:  Subject to the terms of this agreement, settlement

9    class members, and as defined under the settlement

10   agreement, class -- settlement class members are defined as

11   individual persons or entities who have not opted out.

12           So, that can be very much read as -- or

13   individuals or entities who received or successfully sent in

14   2009 or 2010, one or more unsolicited facsimile or

15   advertisement related to tickets for the Tampa Bay

16   Buccaneers games sent by or on behalf of BTL and who submit

17   a valid claim shall be eligible to receive up to.  And there

18   is the cap that identified the hierarchy.  Again, no

19   identification of distinguishing a claim by fax number.

20           And that is repetitive throughout in a number of

21   areas of the settlement agreement itself.  So, I find no

22   ambiguity regarding that and I find that is a clear reading

23   of both the settlement agreement as well as the fax form

24   itself.

25           As a result, I'm denying what I construe as an

1  oral request by Mr. Piper on behalf of intervenors to set

2  aside again the class based upon this disagreement as well

3  as denying class counsel's claim or request for, now, new

4  notice to go out to allow further opt out.

5         I find that to be unnecessary given that, again,

6  the claim notice which was negotiated by the parties and the

7  claim form as I see it is unambiguous that there would be a

8  cap based upon a total of five faxes.

9         I'll follow this up with a written order, but I

10  wanted to highlight for you today the reasons for this.  But

11  I find it an important enough area so that there is written

12  order for the parties to be aware of the reasons for my

13  findings.

14         All right.  That leaves then the remainder of both

15  what seems to be not in dispute as to certain areas under

16  document number 451 as to Epiq's role in going forward on

17  deficiency notices as to at least five areas.  And then

18  there are some disputed areas that the Buccaneers have also

19  requested.

20         So, let me just ask the parties in general:  Given

21  of these five areas that are identified in document number

22  451 on pages 10 and 11 -- and for the record those areas are

23  defect notices should be sent to claimants who filed claims

24  containing non-matching fax numbers.  That is any claim

25  containing a fax number not matching a number on the

1   Biggerstaff list.

2          Two, request for additional information to be sent

3   to claimants on a multi-claim fax number; that is any fax

4   claim -- excuse me, any claim featuring a fax number that is

5   also listed on another claim form.

6          Three, requiring additional information for claims

7   that have a missing signature.

8          Four, to identify and require additional

9   information based upon claims that are deemed to be

10  relevant -- associated with the potential government entity.

11         And five, seek further information with respect to

12  claims submitted by business entities that were not

13  registered until after the class period; that is, between

14  July of 2009 to June of 2010.

15         First, is there any disagreement that those are --

16  let me rephrase that.  Are those agreed to by all parties

17  that those matters should be attended to by Epiq?

18         So, Mr. Hara or Mr. Good or Mr. Addison on behalf

19  of class counsel?

20         MR. HARA:  Yes, Your Honor, that's my

21  understanding that that's -- those are the agreed-upon

22  categories.

23         THE COURT:  Mr. Mester?

24         MR. MESTER:  That's correct, Your Honor.

25         THE COURT:  All right.  What position has Epiq

 1    taken as to those matters?

 2            MR. MESTER:  Essentially none, Your Honor.  They

 3    are waiting for direction from the parties and/or the Court.

 4            THE COURT:  All right.

 5            MR. HARA:  That's not exactly true.  Your Honor,

 6    some of these Epiq proposed to us, because they are the

 7    sorts of things they would ordinarily take care of, like a

 8    missing signature.  They have a lot of experience taking

 9    that care of that.  Frankly, I assumed during the claims

10    processing period that they were already doing that.

11            THE COURT:  Sure.

12            MR. HARA:  That's why we were -- I think we were

13    all kind of taken a back with the deadline for the initial

14    report came and they said they needed clarification from us

15    and from the Court.

16            So, most of these I think are gonna be

17    uncontroversial for Epiq.  They are not going to complain

18    about these categories.

19            THE COURT:  All right.  Well, then, let's take up

20    the controversial ones as outlined in the Buccaneers' motion

21    at document 454.  And of those, the once that are identified

22    as most significant are relating to the TransUnion and

23    Lexis-Nexis reports.

24            So, Mr. Mester are you arguing this?

25            MR. MESTER:  I am, Your Honor.

1          THE COURT:  So, I know we have gone and had

2    similar discussions in the past regarding ascertainability,

3    but, nonetheless, let me highlight again as to how I see

4    that under the Eleventh Circuit case law.

5          I'm satisfied that the class is ascertainable and

6    that there is an objective criteria to be able to determine

7    whether an individual or entity meets the class as

8    ascertained.

9          The problems that we are encountering and that you

10   are identifying are the ability on an individualized basis

11   to determine whether an individual or identity are a proper

12   class member; that is, a criteria for identification

13   purposes of an individual or entity.

14         Now, having said that, as I have taken your

15   pleading as a whole, there are two things that I think are

16   missing.  The first is that, as you just argued a moment ago

17   for the definition as to the cap of $615, that the terms of

18   the settlement agreement are unambiguous and were agreed to

19   and negotiated at arms length by the parties given the

20   strengths and weaknesses of each of the parties positions.

21         Well, the same should, it seems to me, to apply

22   here that in contemplation of this process, the Buccaneers

23   have considered that.  Now, I know there's been often in the

24   pleadings the position taken by the Buccaneers that it

25   relied upon Biggerstaff's assertion that a reverse look-up

1    would be able to identify this.  That is to identify

2    individuals or entities associated with the fax numbers at

3    issue.

4              But that blanket reliance, one, seems to be

5    curious to me that that would simply be all that the

6    Buccaneers relied upon in entering a settlement agreement.

7              But, two, in and of itself is not enough to get

8    passed what has been negotiated and that the Buccaneers

9    under Section Eight negotiated a process by which matters,

10   that is, claims, could be questionable.

11             And the reason why I raise this is because your

12   argument seems to be entirely focused upon the ability to

13   identify someone who would have owned or been associated

14   with the relevant fax number during the relevant time

15   period.  But what is missing under that same theory that you

16   are arguing, which is, to me, the stronger argument is that

17   there is -- because you are seeking independent validation

18   or verification to make that connection.  Then I would pose

19   this question to you:  Putting that aside, what of anything

20   in this record would be able to gather to independently or

21   validate outside of what you negotiated and required,

22   contrary to the intervenors objection on this matter, to

23   have any individual member to swear under penalty of perjury

24   that a fax was received from the Buccaneers.

25             Outside of that attestation under oath, what other

1  independent verification would be even conceivable at this

2  date?  But yet you have not challenged that in any of your

3  pleadings.  You are focused solely on the connection of the

4  fax number.  So, under that theory, why aren't you

5  challenging the latter rather than focusing just on the fax

6  numbers?

7          MR. MESTER:  Your Honor, I apologize.  I'm not

8  sure I fully you understand the question.  I certain want to

9  answer correctly.

10         THE COURT:  So, you are challenging the

11 utilization of the reverse look-up by TransUnion and

12 Lexis-Nexis and you are challenging it because you are

13 stating we need independent verification and validation that

14 these fax numbers were owned by these individuals at the

15 relevant time period.  So, you want more.

16         MR. MESTER:  That's correct.

17         THE COURT:  So you want more.  What I'm asking you

18 is, how could you validate that someone now actually

19 received a fax from the Buccaneers?  How would you validate

20 that?  And if you can't validate that, why are you not

21 challenging that.

22         MR. MESTER:  I don't -- I don't know how we could

23 validate that they received a fax from the Buccaneers 13

24 years ago, but what I am focused on is not that, but instead

25 whether or not they owned the fax number during the 11-month

1   period in 2009 to 2010.  For purposes of the settlement, we

2   have as much as admitted --

3          THE COURT:  Mr. Mester, I'm sorry to interrupt

4   you.  That's my question.  It seems to me you are not

5   challenging it because that's what you negotiated and agreed

6   to, to require someone to attest under oath that would be

7   sufficient for a presumption of validity as to that claim.

8          So -- because if there is no way to validate it

9   other than an oath under -- declaration under penalties of

10  perjury, then how are we then under your argument then -- we

11  don't even have to focus on the connection to the fax

12  numbers.  It would seem to me that your argument would be

13  the same and that the class should be set aside for that

14  reason.

15         MR. MESTER:  Well, Your Honor, I don't know that

16  it is that difficult.  No one has tried to ask for this

17  information from class members.  I have -- I had

18  documentation and other forms of proof for a variety of

19  things that happened 13 years ago.  If someone asked me to

20  find them, I could, but no one has even bothered to ask.  I

21  don't know -- I can imagine a great number of things that

22  people could have.  They may have a letterhead that has the

23  fax number on it.  They may have an ad they placed in a

24  newspaper that has the number on it.  There is any number of

25  things they could come forward with and be proof of

1   ownership of these fax numbers.

2          They may have checks they wrote to AT&T.  They may

3   have -- they may have bills.  They may have a variety of

4   things.  But the point is that the burden of

5   ascertainability has always been and remains on (inaudible).

6   That's the first point.

7          The second point is we carefully negotiated in

8   paragraph 8E, Audit Rights.  And if audit rights end at the

9   four corners of the claim form, which I think Mr. Hara has

10  been suggesting, then those audit rights would be elusive.

11  I mean, we -- and illusory.  We -- we need to be able to

12  challenge the information that's --

13         THE COURT:  Well, why do you say illusory?

14  Because the very things we just highlighted as to what

15  should be done by agreement are all deemed based upon the

16  claims forms themselves.  Where some -- when you have a

17  claim submitted for a fax number by multiple persons that

18  clearly is an indicator of fraud or where you have a claim

19  form based upon a fax number that's not in the Biggerstaff

20  report, then there is matters that need to be attended to.

21  So, it's not illusory because the claim form itself would

22  highlight these very concerns that you are arguing.

23         MR. MESTER:  Right.  And in those instance, Your

24  Honor, there are extrinsic -- there is extrinsic evidence of

25  a fraudulent or an invalid claim, but there also can be

 1   intrinsic evidence; in other words, evidence that we don't

 2   have access to now, but we could get.  And if we had it,

 3   then we could demonstrate that these people aren't in fact

 4   members of the settlement class.

 5          I mean, as we set forth in our papers, I don't

 6   think it's a reach to believe that the vast majority of the

 7   matches on the reverse look-up are people who held these

 8   numbers at some point in time.  But that doesn't mean they

 9   held them in the relevant 11-month period.  And it's also

10   not a reason to suspect that if someone gets notice and

11   someone is telling them that they may be a member of the

12   class and they remember what the fax number is, they write

13   that number down on the claim form.

14          But that doesn't mean --

15          THE COURT:  But is that not accounted for in the

16   process that's outlined?  Because there is one of three

17   scenarios based upon those reverse look-ups.  The first

18   scenario is that the fax number, the -- let me clarify.

19   This is where fax numbers over a period of time have been

20   associated with multiple individuals or entities.  So, the

21   first scenario is likely the easiest one where no claim is

22   submitted at all to that fax number.

23          The second scenario is where one individual or

24   entity makes a claim as to that fax number under the penalty

25   of perjury.

25

1          The third scenario, which is then where the audit

2    has worked because it's on the face of the claim form that

3    requires more is where more than one individual has

4    submitted a claim based upon the same fax number.  And as a

5    result of that, the way the settlement agreement goes

6    forward is you are to work and negotiate with Plaintiff's

7    counsel based upon your concerns on the face of that

8    document of fraud to see -- and it seems like there's been

9    an agreement -- that there needs to be a deficiency notice

10   sent to everyone making that claim.

11          At that point, the individuals can come forward

12   and make any burden of production of proof that they deem to

13   be suitable.  Then, Epiq must decide whether any, let alone

14   if there is one valid, if any are all invalid.  If they are

15   all invalid, it's possible there is one legitimate

16   individual that is the rightful member of the class that is

17   gonna be deemed to be invalid.  But even under the

18   settlement agreement, not only that individual, but all the

19   remaining ones that are making such claim have the right to

20   appeal that to the Court to make any burden of production to

21   show me why they should be deemed to be a valid claim, while

22   at the same time, you will be in a position to challenge

23   those claims.

24          And at that point, it seems to me we could take

25   those up to determine whether it's even necessary to go

1    beyond what is being presented.  But as to your concerns as

2    to fraud, rather than opening up to look at every individual

3    that was submitted with the mail notice through the

4    TransUnion or Lexis-Nexis reverse look-ups, it has already

5    been identified based upon the way the claims have been

6    submitted.

7           And, so, it seems to me that we don't need to go

8    further than -- further inquiry as to those reverse

9    look-ups.

10          MR. MESTER:  Your Honor, we have suggested other

11   alternatives.  Perhaps we don't need to go through them all,

12   but just because someone submitted a claim form that was,

13   first of all, signed under penalty of perjury, which I think

14   we have learned through the process means less than I think

15   we all wish it did, but it didn't mean much.  People

16   submitted -- 199 people submitted claims forms on the

17   (inaudible) number under penalty of perjury.  I'm pretty

18   sure most of them actually didn't receive a fax on that

19   number.

20          So, the penalty of perjury, the attestation

21   requirement didn't get us very much.  But, likewise, putting

22   the number down doesn't get us much to know that you held

23   the number in that 11-month period.  So, perhaps we don't

24   need to send it to everybody as we suggested.  Sent it to a

25   representative sample, pick a hundred numbers at random and

```
 1    send a request -- it doesn't have to be a deficiency notice.

 2    It's a request for more information.  Please provide any

 3    information that you have that indicates you held this fax

 4    number during this 11-month period.  I mean --

 5               THE COURT:  Why would it be different for someone

 6    who did not get the written notice, but did it on the

 7    publication notice?

 8               MR. MESTER:  Well, I -- why would it be different?

 9               THE COURT:  Yes.  Why wouldn't we require that the

10    same of the members -- proposed class that are submitting

11    claims, but they didn't receive a written notice?

12               MR. MESTER:  Well, Your Honor, we mainly haven't

13    focused on publication notice, because not that many came

14    in.  Most came in through the reverse look-up as far as we

15    could tell.  I don't know that it is different.

16               THE COURT:  Am I wrong -- maybe I wrote this down

17    wrong.  Wasn't it approximately around 20 percent?  Wasn't

18    80 percent of the claims submitted based upon the written

19    notification?

20               MR. MESTER:  I don't know that for a fact, Your

21    Honor.  I don't want to represent that to you.  You may be

22    right.  I'm not saying you are wrong, but I don't know that

23    that's right.

24               MR. GOOD:  Would you like me to pull it up, Your

25    Honor?
```

1          THE COURT:  When you get it, you can highlight it

2     for the record, but it's of no consequence other than

3     drawing a distinction.  You have it?

4          MR. GOOD:  I just -- before the hearing I did look

5     up for the 199 that Mr. Mester referred to, other than

6     Medical and Chiropractic Clinic, none of them had received

7     it from the reverse look-up.  So, I did look that up before

8     the hearing.  And I'm pulling up now for the entire class --

9     for the entire list of claimants what the percentage is, but

10    I did look up for the 199 before the hearing, so it will

11    take me a few minutes.

12         THE COURT:  Thank you, Mr. Good.

13         Mr. Mester, let me come back to you while he's

14    looking that up.  Tell me what would be the purpose though

15    to go beyond that to require more as you are suggesting now?

16    I mean, there is still the process that you are entitled to

17    that if Epic finds any claim, whether it was based upon the

18    reverse look-up or otherwise, that you had the ability to

19    challenge that claim before the Court?

20         MR. MESTER:  Your Honor, that's absolutely right.

21    And the only reason we raised it now is to try to short

22    circuit the process so that when Epiq comes up with their

23    final list a few months from now and we challenge them all,

24    that we don't then say, you know, you -- as an alternative

25    to just rejecting them all, you should allow us, at least,

1    to have additional information -- get additional information

2    or discovery.  That's the only reason we raised it.  Now, we

3    could have waited, but I know everyone would like to avoid

4    delay as much as we can.  So, our suggestion was -- and,

5    again, if it's not all, it can be a subset, but we think it

6    would be appropriate at this juncture to test the

7    proposition because we have got enough evidence in the

8    record already of -- on the face of the claim forms what

9    appear to be fraudulent or invalid claims to suggest that

10   there is something -- something amiss here.  And then we

11   have, in addition to that, Your Honor, which we only had --

12   as we pointed out in our papers, we only had the Lexis-Nexis

13   declaration for less than 24 hours at the last hearing in

14   August on this and we didn't have the TransUnion.  But I'm

15   at a loss to understand why class counsel thinks we should

16   just disregard what the actual providers of the information

17   say should be done in order to validate the fact that these

18   people actually held these numbers during the 11-month

19   period.  I mean, I think Lexis-Nexis and TransUnion know a

20   lot more about this than any of us.  They clearly know a lot

21   more about it than Epiq does.  Epiq didn't want us to know

22   any of this.  They wouldn't, as you recall, even provide us

23   with their agreements between them and Lexis-Nexis and

24   TransUnion.  But we now have both TransUnion and Lexis-Nexis

25   on the record saying, yes, you need independent verification

1  and validation.  And that doesn't mean on the four corners

2  of the claim form.  It clearly means outside the claim form.

3          So that, to us, is really the thing we learned

4  more than anything between when we entered the settlement

5  agreement and now.  We didn't understand fully at all.  We

6  were being told something quite contrary by Epiq as to what

7  reverse look-up process was capable of doing.

8          We now know all it did was look at their data

9  bases and if someone held that number at any time, they were

10  a match.  But the fact they held it at any time doesn't mean

11  they held it at the relevant time.  So, we want to focus on

12  the relevant time because we obviously only want to pay

13  people who are members of the settlement class.  And if you

14  held the number until 2007, but then you relinquished it,

15  you are not a member of the settlement class.

16          THE COURT:  But doesn't -- isn't that remedied

17  with the multiple claims on one fax number; that the

18  deficiency notice will go out and you will be able to

19  identify at that point based upon what comes in.  And so

20  maybe a little bit premature as to what you are requesting

21  because we won't know until we see what is presented by

22  these claimants.

23          So, that leaves the other two scenarios that I was

24  discussing, which is there may have been situation where

25  there was fax number identified with multiple individuals or

1    entities that no claim was submitted or just one.  And as to

2    the just one, that would be no indication of fraud.  In

3    fact, the opposite can be inferred in that although it was

4    identified with multiple other persons or entities, only one

5    individual submitted it under the penalty of perjury, which

6    again gives it some presumption of validity at that point.

7         MR. MESTER:  I understand, Your Honor.  Now, I

8    think I understand the question better.  I apologize.  If a

9    notice went out to, say, three different persons and

10   entities all on the same number, the fact that one submitted

11   a claim form doesn't, in our view, remotely demonstrate that

12   that's the right one.  It could have been -- the right one

13   could have been either of the other two.  As we said in our

14   papers, it's perfectly understandable if someone gets a

15   notice and they held a fax number and they believe they

16   probably are a member of the settlement class and they

17   remember the number, but they didn't write it down, but that

18   doesn't mean that they actually held the number then.  I

19   think to not expect people to make that mistake would be in

20   itself unrealistic.

21        But just because one out of the three submitted a

22   claim form don't mean that it's the one that actually is, if

23   any of them, are members of the settlement class.  It simply

24   means they got mailed notice, which was purposely

25   over-inclusive and they are the ones that bothered to send

1   the claim form in and remembered the number.  But that's not

2   remotely proof and it certainly isn't independent

3   verification or validation, which is again what the two

4   sources of the information say you have to have to make the

5   determination that needs to be made to determine and to

6   prove that these people are members of the settlement class.

7           THE COURT:  All right.  Mr. Hara, you want to

8   respond?

9           MR. HARA:  Yes.  Thank you, Your Honor.  So,

10  let's -- I would like to address that scenario that you were

11  just discussing, Your Honor, where three different people

12  get mailed notice with respect to one fax number, one of

13  them submits a claim -- timely claim, you know, that fills

14  out all the information, signs under penalty of perjury.

15          BTL's counsel will tell you that doesn't remotely

16  prove that that person is the correct claimant.  But it

17  does.  All the evidence we have is their attestation under

18  penalty of perjury.  That is evidence.  That's not nothing.

19  It's evidence.  You can get summary judgment on a signed

20  declaration if there is no evidence to dispute what you say

21  in your declaration.  An (inaudible) statement is evidence.

22  And this is what the Buccaneers negotiated for.  If they

23  wanted to have this, you know, months long -- what BTL

24  provided -- is suggesting could take years.  But you want to

25  go claimant by claimant and scrutinize them, maybe use Epiq

1    as your own private investigator to really drill down deep

2    and achieve a metaphysical certainty that this person held

3    this fax line and was the subscriber on that fax line in

4    2009, 2010.  That's not what they negotiated for.  They

5    negotiated for a streamlined process.  And Your Honor used

6    the correct word, a presumption, is created when the

7    claimant submits that statement under penalty of perjury and

8    does it in a timely fashion and gives all the information

9    that is required by the claim form including a number that

10   matches the Biggerstaff list.

11          When those conditions are met, there is a

12   presumption that that person is going to be paid.  And

13   that's not just my understanding.  That's Epiq's

14   understanding as well.  The e-mail that we submitted through

15   Ms. H. Amin-Giwiner at 451-8 says that those conditions are

16   met.  You have got a timely claim form signed under penalty

17   of perjury and it provides the information required by the

18   claim form including a matching number, then it's gonna be

19   paid.

20          In the absence -- you know, whatever evidence BTL

21   has that the claim is fraudulent, no one is stopping the

22   Buccaneers from bringing forward whatever evidence they

23   have, but the settlement agreement doesn't contemplate in

24   any way that we are gonna have this long drawn out process

25   where we scrutinize each claim individually even though

1    those three conditions are met.  Those three conditions

2    being met creates a presumption that it's a valid claim and

3    Epiq's position is that the absence of any evidence of fraud

4    produced by BTL, it should be paid.  And we agree with Epiq.

5              THE COURT:  All right.  Mr. Piper, you want to add

6    anything?

7              MR. PIPER:  Thank you, Judge.  Well, I think you

8    are right that the agreement is unambiguous and Mr. Mester

9    is continually looking for additional bites at the apple to

10   reject valid claims.

11             My clients have submitted claims under penalty of

12   perjury.  They have submitted declarations under penalty of

13   perjury specifically addressing the issues Mr. Mester is

14   raising now and he doesn't think that's good enough either.

15   He's telling me you need to prove they have standing.  Well,

16   you know, they have produced fax -- one of them has produced

17   a copy of the fax that he received and Mr. Mester doesn't

18   think that's sufficient documentation.

19             So, I really don't think it's -- I'm not aware of

20   any settlement in all my years where a defendant settled on

21   a class basis and then wanted to take years fighting every

22   claim that was filed in the case.  I have just never seen

23   this before.

24             Having said that, I'm venting a little bit, but we

25   ultimately -- we object to the settlement however you rule

1    on these specific issues.  So, thanks for letting me say

2    that.

3              THE COURT:  And thanks for that, Mr. Piper.

4              All right.  Mr. Mester, any follow-up?

5              MR. MESTER:  I do, Your Honor.  We are not

6    suggesting anything remotely that will take years.  I don't

7    think it should take more than a month.  We simply suggest

8    and it was referred to Your Honor at the hearing last August

9    there's a process under the settlement agreement to request

10   more information.  We think more information should be

11   requested from the categories we identified.  But to bring

12   it back to the settlement agreement, here is what the

13   settlement agreement says in Section 8E.  BTL shall have the

14   right to audit claim forms for validity and fraud.

15             Now, Mr. Hara says if we have evidence of fraud we

16   should bring it forward.  And we brought forward all the

17   extrinsic evidence we have, but we haven't been allowed to

18   take discovery to obtain other evidence.  To use Mr. Hara's

19   summary judgment standard, it is true you can use

20   declarations to obtain summary judgment, but typically you

21   get to take some discovery of the declarants and you get to

22   challenge the evidence.

23             All we have is a claim form with an attestation

24   that, again, I don't think means as much as we all would

25   like to believe it means, and a number on the Biggerstaff

1    list without any indication whatsoever that the person who
2    put the number on the list actually held the number during
3    the 11-month period.  And that's not me saying it.  That's
4    the two sources of information that provided the match in
5    the first place.
6           And I -- it's surprising to me, again, that class
7    counsel would think we should just disregard what
8    Lexis-Nexis said and what TransUnion said about the need for
9    independent verification and validation and pretend like
10   everyone who put that number down that actually means as
11   much as they say it does.
12          Maybe it is the presumption of something, but it's
13   not a conclusive presumption.  Something should be done in
14   addition and if it's not for all of the categories or the
15   people that fit in the categories, it should be at least for
16   a sample to determine whether or not we have a bigger
17   problem here than apparently Mr. Hara thinks we do.
18          THE COURT:  All right.  Well, let me just add to
19   your comment regarding Section E, and that is 8E.  It's not
20   just so much that BTL shall have the right to audit the
21   claim forms for validity and fraud, it goes on to say that
22   if BTL determines that a claim form is invalid or fraudulent
23   and should be rejected, it shall bring that to the attention
24   of class counsel.  The parties shall meet and confer and
25   attempt to good faith to resolve any dispute regarding the

1    rejected claim.  Following the meet and confer, the parties

2    will provide to the settlement administrator their positions

3    regarding the disputed claim.  Epiq, after considering the

4    positions of the parties and, if appropriate, seek any

5    additional information from the settlement class member,

6    will make an initial determination subject to review by the

7    Court.

8              And as I have understood it, Epiq has already made

9    its determination.  It will not do anything going forward

10   absent agreement by the parties or order of the Court.  And,

11   so, what is contemplated is that's already been decided.

12   Epiq is not going to take just a unilateral position

13   regarding a disputed claim to seek anything further that it

14   deems to be unnecessary, which then means it's subject for

15   my review.  And that is review of whether the claim itself,

16   once we get passed all these other matters, whether that

17   should be rejected as invalid or deemed to be accepted as a

18   valid claim.

19             So, as to that, at this time, I'm denying the

20   request to seek further information as to both the reverse

21   look-ups.  I think that is going to be contemplated by,

22   first, identifying the multiple claims on a single fax and

23   then at that point we will be able to make those

24   determinations.

25             The next one -- and, Mr. Good, I don't know if you

1    were able to find the number, because it kind of translates

2    into this argument as to seeking further information

3    regarding claims submitted by claimants not identified on

4    either the reverse look-up.

5             So, Mr. Mester, what is the purpose of that?

6    Because now it's not so much of your concern that the

7    reverse look-up identified multiple individuals with one fax

8    number.  Why then -- I mean, because in essence what you are

9    now arguing by seeking that information as well is to

10   question the validity of every claim that's being filed.

11            MR. MESTER:  Well, I don't think that's right,

12   Your Honor, with respect.  That particular category, that's

13   to give -- I mean, we are now suffering the consequences of

14   over-inclusive notice and the problems with the reverse

15   look-up process.  But if -- you know, if we at least have to

16   do that, we should at least -- then we're according some

17   legitimacy to the reverse look-up process.  If it means

18   something, then it must mean something and the fact that --

19            THE COURT:  I'm sorry.  I have to interrupt,

20   because I -- and I apologize if I'm confused.  I don't

21   understand why you take that position.  There is either two

22   ways a claimant comes forward.  Either they were identified

23   and mailed notice on the reverse look-up or they were not.

24            MR. MESTER:  That's true.

25            THE COURT:  So, that seems to be all of them, and

1    that means you are questioning all the claims that are being

2    filed.

3              MR. MESTER:  Well, we have identified this is a

4    separate category, Your Honor.  I mean, the case -- the case

5    for sending -- again, not a deficiency notice, a request for

6    information to persons who didn't show up on the reverse

7    look-up is to accord some legitimacy to the reverse look-up,

8    which is really a premise we have all operated under.  So,

9    if you didn't show up on the reverse look-up and you

10   nevertheless submitted a claim, in our view that's an

11   indication that it would be appropriate to get some more

12   information to confirm that you, in fact, are a member of

13   the settlement class.

14             THE COURT:  Despite that they identified a fax

15   number that we didn't identify with them on the reverse

16   look-up, that they identified -- self-identified the fax

17   number that is on the Biggerstaff report and then attested

18   to it under oath?

19             MR. MESTER:  From a list that's been public, Your

20   Honor, for years.  I mean, it's not hard to find these

21   things.

22             THE COURT:  Certainly there is in doubt that at

23   one point it was public, but the Court has remedied that

24   certainly before these protocols went out.

25             MR. MESTER:  You have, that's correct.

1        THE COURT:  In that regard, Mr. Good, do you have

2   the number?  Were you able to identify that?

3        MR. GOOD:  Yes, Your Honor.  It's 708 according to

4   Epiq's latest report out of 3021, so it is a little bit

5   above the 20 percent.

6        THE COURT:  All right.

7        MR. GOOD:  And, Your Honor, again, I just want to

8   highlight what you just said to make it clear for the

9   record.  The mail notice was not populated with the fax

10  number and obviously the publication notice was not

11  populated with any fax number.  I am not aware of anywhere

12  on the internet that has the Biggerstaff list.

13  Mr. Biggerstaff has the Biggerstaff list.  Class counsel has

14  the Biggerstaff list.  Your Honor has it under seal.

15  Defense counsel has it and objectors' counsel has it.  I

16  don't know of anybody else that has it, Your Honor.  To the

17  extent Mr. Mester does find a source that has it, I think he

18  should bring it forward.

19        MR. MESTER:  Well, no --

20        THE COURT:  No, and I don't think he was asserting

21  that, but I understand that.  Thank you, Mr. Good.

22        MR. GOOD:  Okay.

23        THE COURT:  All right.  Mr. Mester, the same would

24  apply then -- well, let me jump ahead for a moment as to the

25  argument regarding the out-of-state individuals.  Can you

1  explain that argument to me?

2          MR. MESTER:  Simply, Your Honor, if you are out of

3  state there is some indication you may not be a settlement

4  class member.  You may be, but you may not be.  And it would

5  be, again, we think an appropriate category of persons to

6  send a request for more information to confirm, if nothing

7  else, that you actually lived in Florida during that

8  11-month period, because all the faxes that were sent were

9  sent to Florida numbers.  I don't that's in dispute at all.

10         THE COURT:  All right.  What's the response to

11 that?

12         MR. HARA:  Ross, could you address that, please?

13         MR. GOOD:  Yes.  Your Honor, I have never lived in

14 Florida.  My number is ████████, a Florida number.  I

15 believe Walmart filed a claim.  Their headquarters is not

16 located in Florida.  I believe everybody will stipulate that

17 Walmart has plenty of locations in Florida, as do many other

18 corporations that have locations in Florida even though they

19 are headquartered not in Florida.  It's not indicia of

20 anything for somebody to have a phone number in Florida and

21 not be located in Florida.

22         There is -- these two things have no relationship

23 to each other.  They haven't had a relationship to each

24 other since the passage of the North American Number

25 Portability Act, which allows people to pick up phone

1   numbers wherever they want by area code of their choosing.

2   This is a red herring, Your Honor.  There is no simpler way

3   to say it.

4           THE COURT:  All right.  Any response, Mr. Mester.

5           MR. MESTER:  Your Honor, I'm quite confident we

6   can obtain expert testimony on this if necessary.  I'm quite

7   confident the vast majority of the numbers on the

8   Biggerstaff list are numbers that were held by people in

9   Florida, not outside of Florida.  There may be a small

10  sub-set, and I mean a very small sub-set that weren't, but

11  this is a lot of people who are claiming into the settlement

12  who aren't from Florida and don't show a Florida address,

13  which, again, is just a basis to send a request for more

14  information.  No one is denying their claim.  We are simply

15  asking for more information.  And that's all we are

16  proposing.

17          MR. GOOD:  And, again, one of the largest ones,

18  Your Honor, is Walmart, which is not based in Florida.  We

19  could go through some of the others that are not based in

20  Florida --

21          MR. MESTER:  Well, Walmart has stores in Florida.

22          MR. GOOD:  Yes.  And Walmart has counsel outside

23  of Florida that filed the claim.

24          THE COURT:  All right.  I'm gonna defer on that

25  for a moment.  Let's go down the --

43

```
 1               MR. PIPER:  If I may, one point --

 2               THE COURT:  I'm sorry?

 3               MR. PIPER:  Your Honor, if I can make just one

 4     point.

 5               THE COURT:  Yes, Mr. Piper.

 6               MR. PIPER:  None of our clients received the mail

 7     notice.  None of them showed up on the reverse look-up.

 8     They have all consistently used these fax numbers since

 9     2009.  So, I just want to note that for the record.

10               THE COURT:  Yes, thank you.  And I know that was

11     in your pleading and I meant to note that as well because

12     that is significant as to the one request.

13               All right.  This goes to -- Mr. Mester, the fax

14     service providers.  Are you seeking more information on that

15     or what's your concern there?

16               MR. MESTER:  We have asked Epiq, Your Honor, if

17     there is a way to figure out -- we have identified Astro.

18     We know Astro is one.  What we don't know is how else we can

19     identify others.  We are working with Epiq.  They have come

20     up with a couple ways that may be feasible.  What we would

21     just like from Your Honor is an indication that if they

22     determine there is a way to do that, then we can send out a

23     request for more information to those entities.  We

24     haven't -- thus far, we haven't identified any, but we would

25     hope it would be possible to do so.
```

44

```
 1              THE COURT:  Have they suggested any way to do
 2    that?
 3              MR. MESTER:  None that seem very -- none that seem
 4    very fruitful yet, but we need to have that discussion.
 5              THE COURT:  How has Astro identified or are you
 6    comfortable in stating that on the record?
 7              MR. MESTER:  I believe we just did that ourselves.
 8              THE COURT:  Do you know how?
 9              MR. MESTER:  Because the -- well, Mr. Slater
10    would.  He did it.
11              THE COURT:  All right.  Mr. Slater, welcome to the
12    party.
13              MR. SLATER:  Good afternoon, everyone.  Sure, Your
14    Honor.  I mean, that was done by independent research that
15    we did.  And I know we have spoken with class counsel about
16    Astro as well.  But, for instance, on their website, they
17    self-identify as a fax service provider that uses numbers
18    that other people actually hold and then process incoming
19    faxes and direct them, for instance, you know, via an e-mail
20    in PDF.  So, it's been our understanding that that at least
21    I think raises the indicia that they are a fax service
22    provider, which is why it's something that I believe class
23    counsel is in agreement on that they would at least get a
24    request for additional information to, you know, confirm
25    that they themselves held the lines or if they were just,
```

1   you know, claiming these lines that were held by other

2   persons.

3           THE COURT:  But is there a hierarchy that is being

4   discussed, first, to determine whether a particular number,

5   there is a concern as to whether they are a fax service

6   provider?

7           MR. MESTER:  We have had those discussions, as I

8   said, Your Honor, preliminary discussions with Epiq.  They

9   made a proposal.  We wanted, Your Honor, candidly wanted to

10  talk to you first because they are not doing anything until

11  there is an agreement.

12          THE COURT:  All right.  Well, as to class counsel

13  or intervenor, do you want to be heard on this?  Because

14  what I'm inclined to do is to direct that this be resolved,

15  because I do find that to be an issue that needs to be

16  further looked into based upon either an agreed upon process

17  to make those determinations.  To be very clear that, in my

18  view, should not be something where everyone who submitted a

19  claim is asked to self-identify or not.  There needs to be

20  indicia of whether they are a fax service provider first and

21  to make that determination somehow.  Then, we can narrow in

22  and seek further information from those individuals

23  submitting claims.

24          Mr. Good, you want to be heard?

25          MR. GOOD:  Your Honor, if I could clarify

1    regarding Astro.

2              THE COURT:  Yes.

3              MR. GOOD:  We have already agreed with BTL's

4    counsel.  Astro is going to be getting a notice anyways for

5    a different category, so Astro is getting a notice

6    independent of this.

7              THE COURT:  Okay.

8              MR. HARA:  Yeah, I also wanted to note, Your

9    Honor, I have a slightly different understanding than BTL's

10   counsel of this issue.  It's my understanding Epiq proposed

11   a method to try to identify possible fax service providers.

12   They even told us how much it was going to cost, you know,

13   that BTL would have to pay them.  And we said we didn't

14   object if you want to go ahead and do that, you know, at

15   least get that started.  I thought they were already doing

16   it.  Mr. Mester seems to be of the opinion that they are not

17   going to do anything until the Court does something, but it

18   was my understanding that process was under way.

19             MR. MESTER:  I don't believe that's correct, Your

20   Honor, but we can certainly check with Epiq.  That's not our

21   understanding.

22             THE COURT:  All right.  Mr. Piper?

23             MR. PIPER:  Well, I'm a little confused as to what

24   the issue is.  As written, the settlement does not exclude

25   online fax receivers who received the fax.  I don't know if

1   the issue is that BTL wants to exclude them from the class

2   or if the issue is just who should get the check for faxes

3   that were sent to a particular person who was using an

4   online fax provider.  And I guess I'm just asking if the

5   parties are in agreement on those issues or if the

6   settlement is here again a moving target?

7          MR. GOOD:  Can I clarify, Your Honor?

8          THE COURT:  Yes, Mr. Good.

9          MR. GOOD:  I think for Mr. Piper's benefit, the

10  reason they are getting a deficiency notice that the parties

11  have already agreed to is Astro company's LLC did not exist

12  during the 11-month period.

13         MR. PIPER:  I understand that, but as to other fax

14  service providers, is the idea that their claims -- the

15  claims submitted by them that they are not class members or

16  that they are class members who have submitted deficient

17  claims or something else.

18         MR. GOOD:  I don't want to put words in Judge

19  Porcelli's mouth, but my understanding from Judge Porcelli's

20  statements earlier in this hearing is Astro is entitled to

21  five faxes total, so -- and, again, Judge Porcelli, please

22  correct me if I have put words in your mouth.

23         THE COURT:  Well, hold on.  We are conflating the

24  issues here.  So, to be clear, what we are focusing on is

25  BTL's assertion that more information is needed as to fax

1    service providers who did not exist at the time of the

2    relevant time period.  And, so, given that, that raises the

3    issue as to whether there is any validity to their claims,

4    not determine whether they are valid or not.  So, to request

5    more information.  I find given that if the entity did not

6    exist at the time of the relevant time period, that

7    certainly is enough to raise a concern on the face of the

8    claim whether it's a valid claim or not to require more.

9            And, so, that was my preliminary finding as to

10   this issue.  How that would occur is what seems to be still

11   in dispute.  And what I am suggesting again as contemplated

12   by the settlement agreement is that the parties meet and

13   confer in consultation with Epiq as to how that is going to

14   happen.  And as I stated, I certainly would not find it

15   appropriate to send a notice to all that have made a claim

16   to self-identify as to whether they were a fax service

17   provider and whether they existed at the time of the claim.

18   As to the amount of faxes, yes, I have already indicated

19   that it's capped at the five.

20           MR. MESTER:  Your Honor, may I?

21           THE COURT:  Mr. Mester, does that help clarify for

22   you?

23           MR. MESTER:  To a degree, Your Honor, but I just

24   want to make our position clear.

25           THE COURT:  Yes.

 1            MR. MESTER:  We don't think that Astro is entitled

 2    to anything because --

 3            THE COURT:  No, I understand that.

 4            MR. MESTER:  If I may, Your Honor, I apologize.

 5            THE COURT:  Yes.

 6            MR. MESTER:  Because it wasn't incorporated

 7    prior -- or at the time the faxes were sent.  That's the

 8    first reason.  The second reason is under governing law,

 9    it's a fax provider and we don't think it has standing.  But

10    the third reason, which implicates an Article III standing

11    issue, which we alluded to in the submission we made on

12    Friday is on anybody who received a fax through an online

13    service, in our view, doesn't have standing under Article

14    III.  So, that would be a third reason that it wouldn't.

15            But for present purposes and the deficiency notice

16    that goes out, I believe that the fact that it wasn't

17    incorporated at the time the faxes were sent would be

18    sufficient onto itself.

19            THE COURT:  But as we indicated earlier in

20    response to Mr. Piper's inquiry, you are seeking

21    clarification whether any of the claims are by a fax service

22    provider regardless of the date when the entity existed?

23            MR. MESTER:  That's correct, Your Honor.

24            THE COURT:  Right.  So, you are in the process of

25    trying to figure out a methodology on which that could occur

1    on a narrowly tailored fashion given if there is any indicia

2    that a claim is being submitted by a fax service provider?

3              MR. MESTER:  That's correct, Your Honor.

4              THE COURT:  All right.

5              MR. HARA:  Just to be clear, Your Honor, we did

6    not object to getting the process started in doing that

7    without conceding anything about whether those are valid

8    claimants or what the particular circumstances were.  I

9    think I should also advise the Court that -- that Mr. Good

10   spoke to a representative from Astro -- this is a long time

11   ago -- but he advised them to get their own counsel and it's

12   my understanding that they have, so --

13             MR. GOOD:  Epiq knows who the counsel is.

14             MR. HARA:  I'm sorry?  What, Ross?

15             MR. GOOD:  Counsel for the Buccaneers has been

16   advised of who Astro's counsel is by Epiq.

17             MR. MESTER:  Not that I recall, but we can go back

18   and check.

19             THE COURT:  That's fine.  There is a process that

20   is identified in the settlement agreement for this very

21   purpose that if a claim is deemed to be invalid by Epiq,

22   there is a right also under the settlement agreement for the

23   claimant to bring that to the Court's attention either

24   through independent counsel or through a class counsel to

25   assert the validity of the claim.  We are just talking now

1    about, you know, Section 8, in particular Section 8E as to

2    what if necessary should be sought for deficiency purposes

3    so that Epiq can make it's final determination as to what

4    claims are valid or invalid.

5           So, as I have stated as a preliminary matter I do

6    find given that we have had one fax service provider file a

7    claim and given the Buccaneers' position, it is warranted to

8    seek further information on a limited basis; again, that

9    would be narrowly tailored to identify if there were any

10   other fax service providers.

11          I will not identify that process.  I leave it to

12   the parties to negotiate that.  And then if it cannot be

13   decided, we will obviously get on quickly for another

14   hearing to hear whatever arguments as to what the process

15   should be.

16          All right.  There is -- the last two that I

17   deferred on -- and, Mr. Mester, correct me if I'm wrong, I

18   don't think we are missing anything else as I have already

19   denied your request on the reverse look-ups.  What I have

20   left open is those individuals with addresses outside the

21   State of Florida and those individuals or entities that were

22   not identified on the reverse look-up.

23          Are there any other categories that I may be

24   missing?

25          MR. MESTER:  No, Your Honor, I believe those are

1    the remaining two.

2           THE COURT:  All right.  So, at this time, I'm

3    gonna similarly deny for similar reasons as to the reverse

4    look-ups the claim that more information be sought through

5    Epiq for those that are outside the State of Florida and

6    those that were not identified on the reverse look-up.

7           As Mr. Piper has already noted for the record in

8    the pleading, his clients were not identified in the reverse

9    look-up.  That in and of itself to me does not create or

10   change from the validity -- let me rephrase that -- the

11   presumption of a valid claim.  And the better way to word

12   that is to even create an inference of fraud just on the

13   face of it.  So, I'm satisfied that Epiq can make its

14   determination based upon those claims whether they are valid

15   or not.  And the same goes as to whether someone resided

16   outside the State of Florida, Epiq can make that claim.

17   This in no way prejudices the Buccaneers, again, once we get

18   our final list of valid or invalid claims to challenging any

19   of those claims if they want to present evidence for the

20   challenge.

21          I suggest -- I anticipate that there are going to

22   be some challenges, which is why setting the fairness

23   hearing off as I did, because we will need some time to

24   address some of these claims once we get the final form.

25          So, to be clear, I'm gonna direct that Epiq go

 1    forward with what's been agreed upon by the parties to seek

 2    more information from the claims as identified in document

 3    number 451.

 4              In addition to that, the additional category of

 5    claims related to the fax service providers, again, that ask

 6    to be agreed upon by the parties and, if not, we will have

 7    another hearing.

 8              Mr. Mester?

 9              MR. MESTER:  Your Honor, my question was only that

10    I just -- I'm at a loss as to know how we are supposed to

11    get that evidence, the evidence you mentioned of fraud.

12    Obviously, these are members of a certified class.  They are

13    represented parties within the meaning of 4.2.  We, the

14    Buccaneers counsel, are not allowed to contact any of them.

15              Mr. Slater is creative and he can find some things

16    on the internet, but there is a limit as to how much can be

17    found on the internet.  So, if we can't contact them and we

18    can't have Epiq get additional information from any of them,

19    I'm not sure what evidence we are gonna be able to come

20    forward with.  That's really my question.

21              THE COURT:  Well, that leaves the last part of

22    your request for confirmatory discovery and, at this stage,

23    I'm denying that without prejudice.  We are gonna get passed

24    this initial step and go one step at a time to determine

25    what Epiq finds to be valid and invalid claims.  Then, I

1   will look at the challenges both by class counsel or

2   intervenor or by BTL or those claims that were rejected.  I

3   want to first understand where we are at once we get passed

4   that stage and then I'll be in a better position to

5   determine whether, if any, is necessary.

6            There are other responses to your question, which

7   has already been revealed by your own independent research

8   as Mr. Slater just acknowledged in identifying Astro.  So,

9   for example, individuals that resided at the residence.

10  There is plenty of public databases that you may look to

11  inquire before even seeking discovery to demonstrate whether

12  somebody lived in Florida or not.

13           As I see it, again, the Court is looking at the

14  settlement agreement, in particular Section Five, that

15  outlines this process and how it's to occur.  And if there's

16  indicators of fraud based upon the face of the claim form,

17  then there could be a process that results from that.  And

18  I'm satisfied that has been highlighted by the agreement and

19  then as well the last section of the Buccaneers' claim as to

20  fax service providers, there is more to be required of Epiq

21  to gather from these claimants.

22           Outside of that, I think we can go forward once we

23  get Epiq's final list and determine what additional work is

24  necessary from there.

25           All right.  I think I have covered it all.

```
 1              So, Mr. Hara, I'll start with you and Mr. Good and
 2   Mr. Addison.  Am I missing anything from your perspective?
 3              MR. HARA:  No, Your Honor.
 4              MR. GOOD:  No, Your Honor.
 5              THE COURT:  All right.  By Mr. Addison's
 6   silence --
 7              MR. ADDISON:  No, Your Honor.
 8              THE COURT:  -- I'll accept that.  All right.
 9   Thank you.  Mr. Piper?
10              MR. PIPER:  Well, the only thing we didn't
11   address, I accept Mr. Mester's apology and note of the
12   incorrect statements made about the claims of some of the
13   intervenors, so I accept that.
14              THE COURT:  Well, it's clear on the pleadings they
15   were unaware of it, so they certainly made that clear, so I
16   appreciate that.
17              Mr. Mester?
18              MR. MESTER:  Nothing further, Your Honor.  The
19   only other issue, which I think the fact it didn't come up
20   probably means we are all in agreement, but I -- we have
21   substantially lost faith in Epiq and -- I think we all have,
22   but I don't want to speak for everyone else.  And we have
23   been giving that a lot of thought -- and you haven't even
24   asked the question --
25              THE COURT:  Well, that's my last point.  All
```

1  right.  So --

2           MR. MESTER:  Okay.  I'm sorry.

3           THE COURT:  You have got to confer with them going

4  forward as to these matters.  I deliberately did not include

5  them in today's hearing, because I wanted to get passed this

6  first step.  If there is a concern once going forward after

7  what has now been decided today that you have concern after

8  consulting with Epiq on how things are going to go forward,

9  then you need only talk to one another and if there is

10 agreement I will immediately get you on another Zoom with

11 Epiq so we can figure out how we are going to go forward

12 with these matters.  But I am hopeful -- and hope is just

13 that, hope, that Epiq will now take these directives, finish

14 its responsibilities so we can get passed their involvement

15 and move forward.

16          MR. MESTER:  Understood, Your Honor.

17          THE COURT:  All right.  I'm looking at our

18 schedule.  We are cutting it close to the next upcoming

19 deadline depending how quickly Epiq gets these matters

20 resolved, which is September 5th.  And this is where any

21 settlement class member may submit any further information

22 to the settlement administrator with respect to their claims

23 of class membership.  So, it's all gonna depend upon how

24 quickly Epiq gets out these deficiency requests and whether

25 that could be done.

1          What I will do as to that date, because that right

2    now is the only date that's of significance given what we

3    are discussing, if the parties have a different date that

4    they think after discussing it with Epiq is more reasonable,

5    then I am going to allow you to go ahead and dictate that

6    date upon agreement by the parties to Epiq for them to meet

7    and satisfy that request and then provide a motion for the

8    amendment for the Court.

9          So, I am giving you that authority to go ahead and

10   do so if it's in agreement by the parties to change that

11   date in compliance with the other deadlines.  Because it

12   seems to me it may be a little bit close depending upon --

13   it also may be very feasible, I just don't know after you

14   consult with Epiq and how this all can be done, because we

15   are not immediately up against it right now, but I want to

16   make sure there is enough time for Epiq to get out whatever

17   notices they are doing and then get the response from the

18   affected potential class members.

19         Okay.  I think now that I have covered everything.

20         Anybody else have anything that they think we

21   should take up today?

22         MR. PIPER:  Your Honor, I -- your indulgence.  I

23   did raise that one of our clients submitted the wrong fax

24   number.  I have a question whether anybody objects if we

25   just get that cured with Epiq by submitting an amended proof

```
 1    of claim without having to go through a deficiency process.
 2    And I would also ask if there are going to be deficiencies
 3    sent to any of my clients -- I don't think there are -- that
 4    we would like to ask Epiq to send us copies so that we can
 5    know that it's been done and deal with it.  And I wonder if
 6    there is any objection to that.  If not, I can deal with
 7    Epiq on those issues.
 8              MR. ADDISON:  No objection.
 9              MR. MESTER:  Your Honor, that's why Mr. Collins
10    sent the e-mail to Mr. Piper after the last hearing, but
11    certainly no objection here.
12              THE COURT:  All right.  And to make it clear, the
13    Court finds that Epiq should accept it and additionally
14    would direct Epiq if they are going to be sending any
15    deficiency notices to any known claimants who are
16    represented by counsel, those notices should also be sent to
17    counsel.
18              MR. PIPER:  Thank you, Judge.
19              THE COURT:  I'll memorialize what I just stated so
20    it can be provided to Epiq as well, but that will be in the
21    order.  My order is gonna focus specifically on the $615
22    cap.  As I stated, I wanted to get something out in writing,
23    was not gonna be able to prior to today's hearing, but I
24    wanted to give you at least the oral ruling on it today.
25              Okay.  I will wait to hear from you all.  If you
```

1  will let me know by notice within the record as to if there

2  is going to be a change in the date of September 5th.  And

3  then if there is no notice, I'm assuming we are going

4  forward with that date.

5          Thank you all for your time.  We will be

6  adjourned.

7          (Proceedings concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   UNITED STATES DISTRICT COURT      )
                                       )
 2   MIDDLE DISTRICT OF FLORIDA        )

 3
                     REPORTER TRANSCRIPT CERTIFICATE
 4

 5          I, Howard W. Jones, Official Court Reporter for
     the United States District Court, Middle District of
 6   Florida, certify, pursuant to Section 753, Title 28, United
     States Code, that the foregoing is a true and correct
 7   transcription of the stenographic notes taken by the
     undersigned in the above-entitled matter (Pages 1 through 59
 8   inclusive) and that the transcript page format is in
     conformance with the regulations of the Judicial Conference
 9   of the United States of America.

10
                              /s      Howard W. Jones
11
                              _____
12                            Howard W. Jones, RDR, RMR, FCRR
                              Official Court Reporter
13                            United States District Court
                              Middle District of Florida
14                            Tampa Division
                              Date:  08-07-23
15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MR. ADDISON: [4]  4/11 5/24 55/7 58/8
MR. GOOD: [17]  4/13 27/24 28/4 40/3 40/7 40/22 41/13 42/17 42/22 45/25 46/3 47/7 47/9 47/18 50/13 50/15 55/4
MR. HARA: [18]  4/15 5/25 6/2 6/10 7/5 7/12 8/1 11/13 14/3 17/20 18/5 18/12 32/9 41/12 46/8 50/5 50/14 55/3
MR. MESTER: [54]  4/21 5/16 9/5 9/12 9/21 10/6 10/9 13/9 13/11 14/5 17/24 18/2 18/25 21/7 21/16 21/22 22/15 23/23 26/10 27/8 27/12 27/20 28/20 31/7 35/5 38/11 38/24 39/3 39/19 39/25 40/19 41/2 42/5 42/21 43/16 44/3 44/7 44/9 45/7 46/19 48/20 48/23 49/1 49/4 49/6 49/23 50/3 50/17 51/25 53/9 55/18 56/2 56/16 58/9
MR. PIPER: [15]  4/18 12/5 12/8 13/2 13/23 14/1 34/7 43/1 43/3 43/6 46/23 47/13 55/10 57/22 58/18
MR. SLATER: [1]  44/13
MR. VARNER: [1]  5/4
THE COURT: [91]
THE DEPUTY CLERK: [1]  4/5

**$**

**$25 [1]**  6/13
**$615 [5]**  5/21 10/18 14/14 19/17 58/21

**/**

**/s [1]**  60/10

**0**

**08-07-23 [1]**  60/14

**1**

**10 [1]**  16/22
**100 [1]**  2/16
**1000 [1]**  2/19
**11 [1]**  16/22
**11-month [8]**  21/25 24/9 26/23 27/4 29/19 36/3 41/8 47/12
**125 [4]**  11/24 11/24 12/1 14/12
**13 [2]**  21/23 22/19
**1304 [1]**  2/6
**134 [1]**  2/19
**1500 [1]**  2/10
**15A [1]**  2/22
**16 [1]**  3/3
**1600 [1]**  2/3
**161 [1]**  2/3
**17 [1]**  1/6
**199 [3]**  26/16 28/5 28/10

**20 percent [2]**  27/17 40/5
**2000 [1]**  2/7
**2007 [1]**  30/14
**2009 [6]**  6/20 15/14 17/14 22/1 33/4 43/9
**2010 [5]**  6/20 15/14 17/14 22/1 33/4
**2023 [1]**  1/6
**23 [1]**  60/14
**24 [1]**  29/13
**25 [2]**  12/2 14/13
**28 [1]**  60/6
**2800 [1]**  2/13
**2:02 [1]**  1/7

**3**

**3021 [1]**  40/4
**30th [1]**  10/21
**312/658-5500 [1]**  2/20
**312/876-7700 [1]**  2/14
**330 [1]**  2/13
**33602 [2]**  2/16 2/22
**33604 [1]**  2/7
**350 [4]**  11/24 11/24 12/1 14/12
**37 [1]**  3/4
**3701 [1]**  2/9
**3952 [1]**  2/4
**3:12 [1]**  1/7

**4**

**4.2 [1]**  53/13
**4100 [1]**  2/16
**430 [1]**  5/11
**451 [4]**  5/11 16/16 16/22 53/3
**451-8 [1]**  33/15
**454 [3]**  5/11 5/11 18/21

**5**

**500 [1]**  2/9
**5024 [1]**  2/23
**52 [1]**  3/5
**53 [1]**  3/6
**5500 [1]**  2/20
**59 [1]**  60/7
**5th [2]**  56/20 59/2

**6**

**60 [1]**  3/7
**60008 [1]**  2/10
**60601 [1]**  2/4
**60602 [1]**  2/19
**60611 [1]**  2/13

**7**

**708 [1]**  40/3
**753 [1]**  60/6
**7700 [1]**  2/14
**786/539-3952 [1]**  2/4

**80 percent [1]**  27/18
**801 [1]**  2/22
**813/223-2000 [1]**  2/7
**813/227-8500 [1]**  2/17
**813/301-5024 [1]**  2/23
**847/368-1500 [1]**  2/10
**8500 [1]**  2/17
**8:13-cv-01592-T-AEP [1]**  1/5
**8:13-cv-1592-AEP [1]**  4/7
**8E [4]**  23/8 35/13 36/19 51/1

**9**

**90 [2]**  12/2 14/13

**A**

**ability [3]**  19/10 20/12 28/18
**able [10]**  19/6 20/1 20/20 23/11 30/18 37/23 38/1 40/2 53/19 58/23
**about [14]**  8/21 8/23 9/6 12/3 12/19 14/19 18/18 29/20 29/21 36/8 44/15 50/7 51/1 55/12
**above [2]**  40/5 60/7
**above-entitled [1]**  60/7
**absence [2]**  33/20 34/3
**absent [1]**  37/10
**absolutely [2]**  8/22 28/20
**accept [4]**  55/8 55/11 55/13 58/13
**accepted [1]**  37/17
**access [1]**  24/2
**accord [1]**  39/7
**according [2]**  38/16 40/3
**accounted [1]**  24/15
**accurate [1]**  12/14
**achieve [1]**  33/2
**acknowledged [1]**  54/8
**act [2]**  7/14 41/25
**actual [1]**  29/16
**actually [10]**  10/5 21/18 26/18 29/18 31/18 31/22 36/2 36/10 41/7 44/18
**ad [1]**  22/23
**add [3]**  12/7 34/5 36/18
**ADDISON [5]**  2/5 2/6 4/11 17/18 55/2
**Addison's [1]**  55/5
**addition [3]**  29/11 36/14 53/4
**additional [11]**  17/2 17/6 17/8 29/1 29/1 34/9 37/5 44/24 53/4 53/18 54/23
**additionally [1]**  58/13
**address [5]**  32/10 41/12 42/12 52/24 55/11
**addresses [1]**  51/20
**addressing [1]**  34/13
**adjourned [1]**  59/6
**administrator [2]**  37/2 56/22
**admitted [1]**  22/2
**advertisement [1]**  15/15
**advise [1]**  50/9

## A

**advised [2]**  50/11 50/16
**AEP [2]**  1/5 4/7
**affected [1]**  57/18
**after [7]**  17/13 37/3 56/6 56/7 57/4
57/13 58/10
**afternoon [9]**  4/3 4/5 4/8 4/18 4/21
5/4 5/7 10/23 44/13
**again [24]**  4/5 13/16 14/22 15/18
16/2 16/5 19/3 29/5 31/6 32/3 35/24
36/6 39/5 40/7 41/5 42/13 42/17 47/6
47/21 48/11 51/8 52/17 53/5 54/13
**against [1]**  57/15
**ago [6]**  13/19 13/22 19/16 21/24
22/19 50/11
**agree [4]**  8/22 12/22 14/7 34/4
**agreed [12]**  8/4 13/5 13/7 17/16
17/21 19/18 22/5 45/16 46/3 47/11
53/1 53/6
**agreed-upon [1]**  17/21
**agreement [47]**  5/9 6/21 8/1 8/5
8/13 10/15 10/24 11/4 11/11 12/10
13/4 13/15 13/15 14/9 14/11 14/16
15/5 15/6 15/8 15/10 15/21 15/23
19/18 20/6 23/15 25/5 25/9 25/18
30/5 33/23 34/8 35/9 35/12 35/13
37/10 44/23 45/11 47/5 48/12 50/20
50/22 54/14 54/18 55/20 56/10 57/6
57/10
**agreements [1]**  29/23
**ahead [5]**  6/1 40/24 46/14 57/5 57/9
**aided [1]**  1/24
**air [1]**  6/3
**AL [2]**  1/3 1/8
**Algonquin [1]**  2/9
**Alicia [1]**  2/6
**all [91]**
**allow [3]**  16/4 28/25 57/5
**allowed [2]**  35/17 53/14
**allows [1]**  41/25
**alluded [1]**  49/11
**alone [1]**  25/13
**along [2]**  10/4 11/14
**already [14]**  5/13 8/4 18/10 26/4
29/8 37/8 37/11 46/3 46/15 47/11
48/18 51/18 52/7 54/7
**also [14]**  2/24 4/22 10/1 14/21 16/18
17/5 23/25 24/9 46/8 50/9 50/22
57/13 58/2 58/16
**alternative [1]**  28/24
**alternatives [1]**  26/11
**although [2]**  10/12 31/3
**always [1]**  23/5
**am [10]**  7/2 18/25 21/24 27/16 40/11
48/11 55/2 56/12 57/5 57/9
**ambiguity [3]**  11/10 13/16 15/22
**ambiguous [1]**  13/4
**amended [1]**  57/25
**amendment [1]**  57/8

**America [1]**  60/9
**American [1]**  41/24
**Amin [1]**  33/15
**Amin-Giwiner [1]**  33/15
**amiss [1]**  29/10
**amount [2]**  7/3 48/18
**Anderson [1]**  2/9
**annoying [2]**  7/6 7/11
**another [5]**  17/5 51/13 53/7 56/9
56/10
**answer [1]**  21/9
**ANTHONY [1]**  1/14
**anticipate [1]**  52/21
**any [58]**  5/1 6/5 6/11 7/21 7/24 8/9
10/14 11/5 11/12 11/20 12/13 13/12
13/16 13/20 16/24 17/3 17/4 17/15
20/23 21/2 22/24 25/12 25/13 25/14
25/20 27/2 28/17 29/20 29/22 30/9
30/10 31/23 33/24 34/3 34/20 35/4
36/1 36/25 37/4 40/11 42/4 43/24
44/1 48/3 49/21 50/1 51/9 51/23
52/18 53/14 53/18 54/5 56/20 56/21
58/3 58/6 58/14 58/15
**anybody [5]**  8/25 40/16 49/12 57/20
57/24
**anything [18]**  8/23 13/25 14/2 14/4
20/19 30/4 34/6 35/6 37/9 37/13
41/20 45/10 46/17 49/2 50/7 51/18
55/2 57/20
**anyways [1]**  46/4
**anywhere [1]**  40/11
**apologize [4]**  21/7 31/8 38/20 49/4
**apology [1]**  55/11
**apparently [1]**  36/17
**appeal [1]**  25/20
**appear [1]**  29/9
**appearance [1]**  4/9
**APPEARANCES [1]**  1/25
**appeared [1]**  4/25
**apple [1]**  34/9
**apply [2]**  19/21 40/24
**appreciate [2]**  12/6 55/16
**appropriate [5]**  29/6 37/4 39/11
41/5 48/15
**approval [8]**  7/15 7/17 7/20 8/7 8/15
12/21 12/23 12/25
**approximately [1]**  27/17
**April [1]**  8/23
**arbitrary [7]**  6/4 6/23 9/9 9/23 9/25
10/1 10/3
**are [132]**
**area [2]**  16/11 42/1
**areas [6]**  15/21 16/15 16/17 16/18
16/21 16/22
**aren't [3]**  21/4 24/3 42/12
**argued [1]**  19/16
**arguing [4]**  18/24 20/16 23/22 38/9
**argument [8]**  5/22 20/12 20/16
22/10 22/12 38/2 40/25 41/1

**arguments [1]**  51/14
**arises [1]**  11/18
**arms [1]**  19/19
**around [1]**  27/17
**Article [2]**  49/10 49/13
**as [126]**
**ascertainability [2]**  19/2 23/5
**ascertainable [1]**  19/5
**ascertained [1]**  19/8
**aside [3]**  16/2 20/19 22/13
**ask [6]**  16/20 22/16 22/20 53/5 58/2
58/4
**asked [5]**  4/23 22/19 43/16 45/19
55/24
**asking [3]**  21/17 42/15 47/4
**assert [1]**  50/25
**asserting [1]**  40/20
**assertion [2]**  19/25 47/25
**associated [4]**  17/10 20/2 20/13
24/20
**assumed [1]**  18/9
**assuming [1]**  59/3
**Astro [12]**  43/17 43/18 44/5 44/16
46/1 46/4 46/5 47/11 47/20 49/1
50/10 54/8
**Astro's [1]**  50/16
**attach [1]**  15/2
**attempt [1]**  36/25
**attended [2]**  17/17 23/20
**attention [2]**  36/23 50/23
**attest [1]**  22/6
**attestation [4]**  20/25 26/20 32/17
35/23
**attested [1]**  39/17
**audio [1]**  1/23
**audit [6]**  23/8 23/8 23/10 25/1 35/14
36/20
**August [2]**  29/14 35/8
**authority [1]**  57/9
**AUTOMOBILES [3]**  1/3 4/6 4/12
**available [1]**  5/2
**Avenue [3]**  2/6 2/13 2/22
**avoid [1]**  29/3
**aware [3]**  16/12 34/19 40/11

## B

**back [5]**  13/11 18/13 28/13 35/12
50/17
**based [19]**  5/7 14/16 16/2 16/8 17/9
23/15 23/19 24/17 25/4 25/7 26/5
27/18 28/17 30/19 42/18 42/19 45/16
52/14 54/16
**bases [1]**  30/9
**basis [5]**  8/9 19/10 34/21 42/13 51/8
**Bay [1]**  15/15
**be [137]**
**because [37]**  8/2 10/22 11/23 12/21
18/6 20/11 20/17 21/12 22/5 22/8
23/14 23/21 24/16 25/2 26/12 27/13
29/7 30/12 30/21 31/21 38/1 38/6

**B**

**because...** [15]  38/8 38/20 41/8
43/11 44/9 45/10 45/13 45/15 49/2
49/6 52/23 56/5 57/1 57/11 57/14
**been** [31]  4/24 5/15 8/21 9/19 10/4
11/14 13/2 13/20 19/23 20/8 20/13
23/5 23/10 24/19 25/8 26/5 26/5
30/24 31/12 31/13 35/17 37/11 39/19
44/20 50/15 53/1 54/7 54/18 55/23
56/7 58/5
**before** [9]  1/14 8/6 28/4 28/7 28/10
28/19 34/23 39/24 54/11
**behalf** [3]  15/16 16/1 17/18
**being** [11]  8/23 10/13 11/4 14/12
26/1 30/6 34/2 38/10 39/1 45/3 50/2
**believe** [5]  5/16 9/17 13/2 24/6
31/15 35/25 41/15 41/16 44/7 44/22
46/19 49/16 51/25
**benefit** [1]  47/9
**Benefits** [1]  15/7
**better** [3]  31/8 52/11 54/4
**between** [5]  13/14 15/2 17/13 29/23
30/4
**beyond** [2]  26/1 28/15
**bigger** [1]  36/16
**Biggerstaff** [12]  9/11 9/23 17/1
23/19 33/10 35/25 39/17 40/12 40/13
40/13 40/14 42/8
**Biggerstaff's** [1]  19/25
**bills** [1]  23/3
**bit** [4]  30/20 34/24 40/4 57/12
**bites** [1]  34/9
**blanket** [1]  20/4
**Bock** [1]  2/18
**both** [5]  15/23 16/14 29/24 37/20
54/1
**bothered** [2]  22/20 31/25
**bottom** [1]  6/13
**brief** [1]  9/5
**briefed** [1]  7/14
**briefs** [1]  12/14
**bring** [5]  35/11 35/16 36/23 40/18
50/23
**bringing** [1]  33/22
**brought** [1]  35/16
**BTL** [17]  6/21 7/22 8/14 8/22 12/1
12/13 13/3 15/16 32/23 33/20 34/4
35/13 36/20 36/22 46/13 47/1 54/2
**BTL's** [5]  11/23 32/15 46/3 46/9
47/25
**BUCCANEERS** [23]  1/8 4/6 4/20
4/22 5/5 6/7 6/8 8/4 9/1 15/16 16/18
19/22 19/24 20/6 20/8 20/24 21/19
21/23 32/22 33/22 50/15 52/17 53/14
**Buccaneers'** [3]  18/20 51/7 54/19
**burden** [3]  23/4 25/12 25/20
**business** [3]  6/18 7/8 17/12

**C**

**call** [1]  4/4
**CALLED** [1]  4/1
**came** [3]  18/14 27/13 27/14
**can** [35]  5/19 8/16 10/18 12/22
15/12 22/21 23/25 25/11 28/1 29/4
29/5 31/3 32/19 35/19 40/25 42/6
43/3 43/18 43/22 45/21 46/20 47/7
50/17 51/3 52/13 52/16 53/15 53/16
54/22 56/11 56/14 57/14 58/4 58/6
58/20
**can't** [4]  12/21 21/20 53/17 53/18
**candidly** [1]  45/9
**cannot** [1]  51/12
**cap** [8]  6/15 7/14 8/23 14/14 15/18
16/8 19/17 58/22
**capable** [1]  30/7
**capped** [4]  5/21 9/20 14/10 48/19
**care** [2]  18/7 18/9
**careful** [1]  8/21
**carefully** [2]  14/22 23/7
**case** [12]  1/5 4/4 4/7 4/24 8/17 10/14
13/19 13/21 19/4 34/22 39/4 39/4
**categories** [6]  17/22 18/18 35/11
36/14 36/15 51/23
**category** [5]  38/12 39/4 41/5 46/5
53/4
**certain** [3]  5/8 16/15 21/8
**certainly** [11]  5/17 12/4 13/17 32/2
39/22 39/24 46/20 48/7 48/14 55/15
58/11
**certainty** [1]  33/2
**CERTIFICATE** [2]  3/7 60/3
**certified** [1]  53/12
**certify** [1]  60/6
**challenge** [6]  23/12 25/22 28/19
28/23 35/22 52/20
**challenged** [1]  21/2
**challenges** [2]  52/22 54/1
**challenging** [6]  21/5 21/10 21/12
21/21 22/5 52/18
**change** [2]  52/10 57/10 59/2
**changing** [1]  12/15
**check** [3]  46/20 47/2 50/18
**checks** [1]  23/2
**Chicago** [3]  2/4 2/13 2/19
**Chiropractic** [2]  4/14 28/6
**choosing** [1]  42/1
**CIN** [3]  1/3 4/6 4/11
**CIN-Q** [3]  1/3 4/6 4/11
**circuit** [2]  19/4 28/22
**circumstances** [1]  50/8
**claim** [87]
**claimant** [9]  6/22 7/18 8/18 32/16
32/25 32/25 33/7 38/22 50/23
**claimants** [9]  11/16 16/23 17/3 28/9
30/22 38/3 50/8 54/21 58/15
**claimed** [2]  10/19 11/19
**claiming** [2]  42/11 45/1

**claims** [44]  6/15 6/15 7/12 7/24 8/17
12/19 14/19 15/4 16/23 17/6 17/9
17/12 18/9 20/10 23/16 25/23 26/5
26/16 27/11 27/18 29/9 30/17 34/10
34/11 37/22 38/3 39/1 45/23 47/14
47/15 47/17 48/3 49/21 51/4 52/14
52/18 52/19 52/24 53/2 53/5 53/5
54/2 55/12 56/22
**clarification** [2]  18/14 49/21
**clarify** [6]  11/13 11/17 24/18 45/25
47/7 48/21
**Clark** [1]  2/3
**class** [54]  4/9 5/22 7/25 9/7 9/16
10/16 10/16 10/25 11/6 11/8 11/17
15/7 15/9 15/10 15/10 16/2 16/3
17/13 17/19 19/5 19/7 19/12 22/13
22/17 24/4 24/12 25/16 27/10 28/8
29/15 30/13 30/15 31/16 31/23 32/6
34/21 36/6 36/24 37/5 39/13 40/13
41/4 44/15 44/22 45/12 47/1 47/15
47/16 50/24 53/12 54/1 56/21 56/23
57/18
**clear** [16]  7/17 10/15 10/17 11/4
11/6 14/9 15/22 40/8 45/17 47/24
48/24 50/5 52/25 55/14 55/15 58/12
**clearly** [6]  10/1 11/1 13/15 23/18
29/20 30/2
**clients** [3]  34/11 43/6 52/8 57/23
58/3
**Clinic** [2]  4/14 28/6
**close** [2]  56/18 57/12
**co** [1]  5/5
**co-counsel** [1]  5/5
**code** [2]  42/1 60/6
**COLLINS** [3]  2/12 4/22 58/9
**come** [6]  22/25 25/11 28/13 43/19
53/19 55/19
**comes** [3]  28/22 30/19 38/22
**comfortable** [1]  44/6
**comment** [1]  36/19
**company** [1]  15/1
**company's** [1]  47/11
**compared** [2]  12/16
**complain** [1]  18/17
**compliance** [2]  5/9 57/11
**compromise** [1]  11/1
**computer** [1]  1/24
**computer-aided** [1]  1/24
**conceding** [1]  50/7
**conceivable** [1]  21/1
**concern** [6]  38/6 43/15 45/5 48/7
56/6 56/7
**concerns** [3]  23/22 25/7 26/1
**concluded** [1]  59/7
**conclusive** [1]  36/13
**conditions** [4]  33/11 33/15 34/1 34/1
**confer** [4]  36/24 37/1 48/13 56/3
**Conference** [1]  60/8
**confident** [2]  42/5 42/7

**C**

**confirm [3]** 39/12 41/6 44/24
**confirmatory [1]** 53/22
**confirmed [1]** 10/23
**conflating [1]** 47/23
**conformance [1]** 60/8
**confused [2]** 38/20 46/23
**confusion [1]** 11/9
**connection [3]** 20/18 21/3 22/11
**consequence [1]** 28/2
**consequences [1]** 38/13
**considered [1]** 19/23
**considering [1]** 37/3
**consistent [1]** 9/20
**consistently [1]** 43/8
**constitute [1]** 9/3
**construe [1]** 15/25
**consult [1]** 57/14
**consultation [1]** 48/13
**consulting [1]** 56/8
**contact [2]** 53/14 53/17
**containing [2]** 16/24 16/25
**contemplate [1]** 33/23
**contemplated [3]** 37/11 37/21 48/11
**contemplates [1]** 15/5
**contemplating [1]** 8/16
**contemplation [2]** 5/20 19/22
**continually [1]** 34/9
**contrary [2]** 20/22 30/6
**controversial [1]** 18/20
**conversation [1]** 13/21
**copies [1]** 58/4
**copy [1]** 34/17
**corners [2]** 23/9 30/1
**corporations [1]** 41/18
**correct [13]** 9/21 13/23 17/24 21/16
32/16 33/6 39/25 46/19 47/22 49/23
50/3 51/17 60/6
**correctly [1]** 21/9
**cost [1]** 46/12
**could [26]** 7/8 7/8 8/21 10/7 10/12
11/5 20/10 21/18 21/22 22/20 22/22
22/25 24/2 24/3 25/24 27/15 29/3
31/12 31/13 32/24 41/12 42/19 45/25
49/25 54/17 56/25
**couldn't [1]** 8/5
**counsel [32]** 4/9 4/9 4/11 4/13 5/5
5/23 10/16 17/19 25/7 29/15 32/15
36/7 36/24 40/13 40/15 40/15 42/22
44/15 44/23 45/12 46/4 46/10 50/11
50/13 50/15 50/16 50/24 50/24 53/14
54/1 58/16 58/17
**counsel's [2]** 9/7 16/3
**couple [3]** 4/25 6/6 43/20
**course [1]** 7/20
**COURT [27]** 1/1 2/21 3/3 3/4 3/5
3/6 3/7 4/1 5/12 7/13 18/3 18/15
25/20 28/19 37/7 37/10 39/23 46/17
50/9 54/13 57/8 58/13 60/1 60/5 60/5

**Court's [2]** 4/23 50/23
**courtroom [1]** 1/23
**covered [2]** 54/25 57/19
**create [2]** 52/9 52/12
**created [1]** 33/6
**creates [1]** 34/2
**creative [1]** 53/15
**criteria [1]** 19/6 19/12
**cured [1]** 57/25
**curious [1]** 20/5
**cutting [1]** 56/18
**cv [2]** 1/5 4/7

**D**

**data [1]** 30/8
**databases [1]** 54/10
**date [10]** 21/2 49/22 57/1 57/2 57/3
57/6 57/11 59/2 59/4 60/14
**dates [1]** 15/2
**deadline [2]** 18/13 56/19
**deadlines [1]** 57/11
**deal [3]** 7/12 58/5 58/6
**decide [1]** 25/13
**decided [3]** 37/11 51/13 56/7
**declarants [1]** 35/21
**declaration [4]** 22/9 29/13 32/20
32/21
**declarations [3]** 4/25 34/12 35/20
**deem [1]** 25/12
**deemed [6]** 17/9 23/15 25/17 25/21
37/17 50/21
**deems [1]** 37/14
**deep [1]** 33/1
**defect [1]** 16/23
**defendant [3]** 1/9 2/11 34/20
**Defense [1]** 40/15
**defer [1]** 42/24
**deferred [1]** 51/17
**deficiencies [1]** 58/2
**deficiency [11]** 16/17 25/9 27/1
30/18 39/5 47/10 49/15 51/2 56/24
58/1 58/15
**deficient [1]** 47/16
**defined [2]** 15/9 15/10
**definition [1]** 19/17
**degree [1]** 48/23
**delay [1]** 29/4
**deliberately [1]** 56/4
**delineated [1]** 12/25
**demonstrate [3]** 24/3 31/11 54/11
**denied [1]** 51/19
**deny [1]** 52/3
**denying [5]** 15/25 16/3 37/19 42/14
53/23
**depend [1]** 56/23
**depending [2]** 56/19 57/12
**Despite [1]** 39/14
**determination [6]** 32/5 37/6 37/9
45/21 51/3 52/14

**determinations [2]** 37/24 45/7
**determine [11]** 19/6 19/11 25/25
32/5 36/16 43/22 45/4 48/4 53/24
54/5 54/23
**determines [1]** 36/22
**detriment [1]** 12/16
**devoted [1]** 7/8
**dictate [1]** 57/5
**did [22]** 4/25 6/11 8/3 9/24 13/5
26/15 27/6 27/6 28/4 28/7 28/10 30/8
44/7 44/10 44/15 47/11 48/1 48/5
50/5 52/23 56/4 57/23
**didn't [16]** 4/16 13/11 26/15 26/18
26/21 27/11 29/14 29/21 30/5 31/17
39/6 39/9 39/15 46/13 55/10 55/19
**difference [2]** 12/2 12/3
**different [10]** 7/4 13/19 27/5 27/8
27/15 31/9 32/11 46/5 46/9 57/3
**difficult [1]** 22/16
**digital [1]** 1/23
**direct [4]** 44/19 45/14 52/25 58/14
**direction [1]** 18/3
**directives [1]** 56/13
**disagree [1]** 7/9
**disagreement [2]** 16/2 17/15
**discovery [5]** 29/2 35/18 35/21
53/22 54/11
**discussed [1]** 45/4
**discussing [5]** 13/24 30/24 32/11
57/3 57/4
**discussion [1]** 44/4
**discussions [3]** 19/2 45/7 45/8
**dispute [9]** 6/8 9/6 10/11 13/6 16/15
32/20 36/25 41/9 48/11
**disputed [8]** 9/11 9/13 9/14 10/13
12/13 16/18 37/3 37/13
**disregard [2]** 29/16 36/7
**distinction [1]** 28/3
**distinguishing [1]** 15/19
**DISTRICT [8]** 1/1 1/1 60/1 60/2
60/5 60/5 60/13 60/13
**DIVISION [2]** 1/2 60/14
**do [20]** 9/1 23/13 35/5 36/17 37/9
38/16 40/1 41/17 43/22 43/25 44/1
44/8 45/13 45/14 45/15 46/14 46/17
51/5 57/1 57/10
**document [6]** 5/11 16/16 16/21
18/21 25/8 53/2
**documentation [2]** 22/18 34/18
**documents [1]** 7/24
**does [11]** 14/24 15/3 29/21 32/17
33/8 36/11 40/17 46/17 46/24 48/21
52/9
**doesn't [17]** 7/23 11/20 14/18 24/8
24/14 26/22 27/1 30/1 30/10 30/16
31/11 31/18 32/15 33/23 34/14 34/17
49/13
**doing [6]** 18/10 30/7 45/10 46/15
50/6 57/17

# D

don't [51]  5/13 5/16 8/24 9/2 10/6
10/9 10/10 11/2 11/5 13/12 13/16
13/17 13/17 13/19 13/22 21/22 21/22
22/11 22/15 22/21 24/1 24/5 26/7
26/11 26/23 27/15 27/20 27/21 27/22
28/24 31/22 34/19 35/6 35/24 37/25
38/11 38/20 40/16 40/20 41/9 42/12
43/18 46/19 46/25 47/18 49/1 49/9
51/18 55/22 57/13 58/3
done [7]  23/15 29/17 36/13 44/14
56/25 57/14 58/5
doubt [1]  39/22
down [7]  24/13 26/22 27/16 31/17
33/1 36/10 42/25
drawing [1]  28/3
drawn [1]  33/24
drill [1]  33/1
during [8]  18/9 20/14 21/25 27/4
29/18 36/2 41/7 47/12

# E

e-mail [3]  33/14 44/19 58/10
each [11]  6/20 6/24 6/25 9/2 12/25
14/11 14/25 19/20 39/25 41/23 41/23
earlier [2]  47/20 49/19
easiest [1]  24/21
Eight [1]  20/9
Eisenberg [1]  2/3
either [7]  31/13 34/14 38/4 38/21
38/22 45/16 50/23
Eleventh [1]  19/4
eligible [1]  15/17
else [10]  13/25 14/2 14/4 40/16 41/7
43/18 47/17 51/18 55/22 57/20
elusive [1]  23/10
encountering [1]  19/9
end [2]  6/14 23/8
enough [6]  16/11 20/7 29/7 34/14
48/7 57/16
entered [2]  5/12 30/4
entering [2]  10/24 20/6
entire [3]  14/21 28/8 28/9
entirely [1]  20/12
entities [10]  15/11 15/13 17/12 20/2
24/20 31/1 31/4 31/10 43/23 51/21
entitled [4]  28/16 47/20 49/1 60/7
entity [6]  17/10 19/7 19/13 24/24
48/5 49/22
Epic [1]  28/17
Epiq [47]  17/17 17/25 18/6 18/17
25/13 28/22 29/21 29/21 30/6 32/25
34/4 37/3 37/8 37/12 43/16 43/19
45/8 46/10 46/20 48/13 50/13 50/16
50/21 51/3 52/5 52/13 52/16 52/25
53/18 53/25 54/20 55/21 56/8 56/11
56/13 56/19 56/24 57/4 57/6 57/14
57/16 57/25 58/4 58/7 58/13 58/14
58/20

# F

face [6]  25/2 25/7 29/8 48/7 52/13
54/16
facsimile [1]  15/14
fact [10]  24/3 27/20 29/17 30/10
31/3 31/10 38/18 39/12 49/16 55/19
fairness [1]  52/22
faith [2]  36/25 55/21
far [2]  27/14 43/24
fashion [2]  33/8 50/1
fax [98]
faxes [32]  6/5 6/10 6/14 6/21 6/24
6/24 6/25 7/1 7/3 7/6 9/6 9/13 9/18
10/5 10/18 11/7 11/15 11/18 11/20
11/21 11/22 14/12 15/1 15/4 16/8
41/8 44/19 47/2 47/21 48/18 49/7
49/17
FCRR [2]  2/21 60/12
feasible [2]  43/20 57/13
featuring [1]  17/4
few [2]  28/11 28/23
fifth [2]  6/14 14/13
fighting [1]  34/21
figure [3]  43/17 49/25 56/11
file [1]  51/6

# Epic's [5]  16/16 33/13 34/2 40/4
54/23
ESQ [7]  2/2 2/5 2/8 2/11 2/12 2/15
2/18
essence [1]  38/8
Essentially [1]  18/2
ET [2]  1/3 1/8
even [15]  6/13 11/21 12/22 21/1
22/11 22/20 25/17 25/25 29/22 33/25
41/18 46/12 52/12 54/11 55/23
ever [1]  8/25
every [6]  6/13 6/16 11/17 26/2 34/21
38/10
everybody [3]  4/5 26/24 41/16
everyone [8]  6/12 6/16 25/10 29/3
36/10 44/13 45/18 55/22
everything [1]  57/19
evidence [20]  23/24 24/1 24/1 29/7
32/17 32/18 32/19 32/20 32/21 33/20
33/22 34/3 35/15 35/17 35/18 35/22
52/19 53/11 53/11 53/19
exactly [2]  6/9 18/5
example [3]  6/18 8/15 54/9
Excel [1]  5/14
exclude [2]  46/24 47/1
excuse [2]  5/11 17/4
exist [3]  47/11 48/1 48/6
existed [2]  48/17 49/22
expect [1]  31/19
experience [1]  18/8
expert [1]  42/6
explain [1]  41/1
extent [2]  5/1 40/17
extrinsic [3]  23/24 23/24 35/17

# F

face [6]  25/2 25/7 29/8 48/7 52/13
54/16
facsimile [1]  15/14
fact [10]  24/3 27/20 29/17 30/10
31/3 31/10 38/18 39/12 49/16 55/19
fairness [1]  52/22
faith [2]  36/25 55/21
far [2]  27/14 43/24
fashion [2]  33/8 50/1
fax [98]
faxes [32]  6/5 6/10 6/14 6/21 6/24
6/24 6/25 7/1 7/3 7/6 9/6 9/13 9/18
10/5 10/18 11/7 11/15 11/18 11/20
11/21 11/22 14/12 15/1 15/4 16/8
41/8 44/19 47/2 47/21 48/18 49/7
49/17
FCRR [2]  2/21 60/12
feasible [2]  43/20 57/13
featuring [1]  17/4
few [2]  28/11 28/23
fifth [2]  6/14 14/13
fighting [1]  34/21
figure [3]  43/17 49/25 56/11
file [1]  51/6

# filed [7]  5/10 16/23 34/22 38/10 39/2
41/15 42/23
filing [1]  8/18
fills [1]  32/13
final [5]  28/23 51/3 52/18 52/24
54/23
find [14]  14/15 15/21 15/22 16/5
16/11 22/20 38/1 39/20 40/17 45/15
48/5 48/14 51/6 53/15
finding [1]  48/9
findings [1]  16/13
finds [3]  28/17 53/25 58/13
fine [2]  5/18 50/19
finish [1]  56/13
first [19]  5/19 7/7 8/4 14/12 14/17
17/15 19/16 23/6 24/17 24/21 26/13
36/5 37/22 45/4 45/10 45/20 49/8
54/3 56/6
fit [1]  36/15
five [23]  6/3 7/13 9/9 9/13 9/18 9/20
9/25 9/25 10/5 10/15 10/19 11/6
11/15 11/18 11/21 14/12 16/8 16/17
16/21 17/11 47/21 48/19 54/14
FL [2]  2/16
floor [1]  6/15
FLORIDA [30]  1/1 1/6 2/7 2/22
2/22 41/7 41/9 41/14 41/14 41/16
41/17 41/18 41/19 41/20 41/21 42/9
42/9 42/12 42/12 42/18 42/20 42/21
42/23 51/21 52/5 52/16 54/12 60/2
60/6 60/13
focus [4]  10/10 22/11 30/11 58/21
focused [4]  20/12 21/3 21/24 27/13
focusing [2]  21/5 47/24
follow [2]  16/9 35/4
follow-up [1]  35/4
Following [1]  37/1
foregoing [1]  60/6
form [27]  7/23 14/8 14/16 14/17
14/20 14/23 15/23 16/7 17/5 23/9
23/19 23/21 24/13 25/2 26/12 30/2
30/2 31/11 31/22 32/1 33/9 33/16
33/18 35/23 36/22 52/24 54/16
format [1]  60/8
forms [6]  22/18 23/16 26/16 29/8
35/14 36/21
forth [1]  24/5
forward [19]  16/16 22/25 25/6 25/11
33/22 35/16 35/16 37/9 38/22 40/18
53/1 53/20 54/22 56/4 56/6 56/8
56/11 56/15 59/4
found [1]  53/17
four [6]  6/25 7/1 15/7 17/8 23/9 30/1
fourth [2]  6/14 14/13
Frankly [1]  18/9
fraud [7]  23/18 25/8 26/2 31/2 34/3
35/14 35/15 36/21 52/12 53/11 54/16
fraudulent [4]  23/25 29/9 33/21
36/22

**F**

**Friday** [1]  49/12
**fruitful** [1]  44/4
**fully** [2]  21/8 30/5
**fundamental** [1]  12/18
**further** [12]  16/4 17/11 26/8 26/8
37/13 37/20 38/2 45/16 45/22 51/8
55/18 56/21

**G**

**games** [1]  15/16
**gather** [2]  20/20 54/21
**general** [1]  16/20
**get** [37]  6/12 6/22 6/24 7/6 7/20 20/7
24/2 26/21 26/22 27/6 28/1 29/1
32/12 32/19 35/21 35/21 37/16 39/11
44/23 46/15 47/2 50/11 51/13 52/17
52/24 53/11 53/18 53/23 54/3 54/23
56/5 56/10 56/14 57/16 57/17 57/25
58/22
**gets** [5]  6/20 24/10 31/14 56/19
56/24
**getting** [5]  7/2 46/4 46/5 47/10 50/6
**give** [3]  12/22 38/13 58/24
**given** [9]  16/5 16/20 19/19 48/2 48/5
50/1 51/6 51/7 57/2
**gives** [2]  31/6 33/8
**giving** [2]  55/23 57/9
**Giwiner** [1]  33/15
**GLENN** [2]  2/8 4/15
**go** [21]  6/1 13/11 16/4 25/25 26/7
26/11 28/15 30/18 32/25 42/19 42/25
46/14 50/17 52/25 53/24 54/22 56/8
56/11 57/5 57/9 58/1
**goes** [5]  25/5 36/21 43/13 49/16
52/15
**going** [23]  5/22 7/17 7/20 16/16
18/17 33/12 37/9 37/12 37/21 46/4
46/12 46/17 48/13 52/21 56/3 56/6
56/8 56/11 57/5 58/2 58/14 59/2 59/3
**gone** [1]  19/1
**gonna** [13]  7/2 18/16 25/17 33/18
33/24 42/24 52/3 52/25 53/19 53/23
56/23 58/21 58/23
**good** [21]  2/2 4/3 4/5 4/8 4/13 4/18
4/21 5/4 7/5 17/18 28/12 34/14 36/25
37/25 40/1 40/21 44/13 45/24 47/8
50/9 55/1
**got** [7]  7/1 9/17 11/21 29/7 31/24
33/16 56/3
**gotten** [2]  6/25 7/3
**governing** [1]  49/8
**government** [1]  17/10
**granted** [1]  5/15
**great** [1]  22/21
**guarantee** [1]  6/16
**guess** [1]  47/4

**H**

**had** [16]  5/1 8/4 11/16 12/17 13/7
13/21 19/1 22/17 24/2 28/6 28/18
29/11 29/12 41/23 45/7 51/6
**handy** [1]  13/18
**happen** [2]  7/4 48/14
**happened** [1]  22/19
**HARA** [17]  2/8 4/15 4/16 5/24 6/1
9/19 10/4 10/22 11/12 13/14 14/2
17/18 23/9 32/7 35/15 36/17 55/1
**Hara's** [2]  9/16 35/18
**hard** [1]  39/20
**has** [43]  5/12 5/14 6/19 8/14 9/2 9/19
10/4 10/4 11/14 11/14 17/25 20/8
22/16 22/20 22/22 22/24 23/5 23/9
25/2 25/3 26/4 33/21 34/16 37/8
39/23 40/12 40/13 40/13 40/14 40/15
40/15 40/16 40/17 41/17 42/21 42/22
44/5 49/9 50/15 52/7 54/7 54/18 56/7
**hasn't** [1]  4/24
**Hatch** [1]  2/18
**have** [122]
**haven't** [6]  27/12 35/17 41/23 43/24
43/24 55/23
**having** [3]  19/14 34/24 58/1
**he** [10]  4/24 4/25 5/2 34/14 34/17
40/17 40/20 44/10 50/11 53/15
**he's** [3]  4/24 28/13 34/15
**headlined** [1]  14/20
**headquartered** [1]  41/19
**headquarters** [1]  41/15
**hear** [2]  51/14 58/25
**heard** [2]  45/13 45/24
**hearing** [14]  1/13 14/7 28/4 28/8
28/10 29/13 35/8 47/20 51/14 52/23
53/7 56/5 58/10 58/23
**held** [16]  24/7 24/9 26/22 27/3 29/18
30/9 30/10 30/11 30/14 31/15 31/18
33/2 36/2 42/8 44/25 45/1
**help** [1]  48/21
**here** [9]  12/15 12/18 19/22 29/10
35/12 36/17 47/6 47/24 58/11
**herring** [1]  42/2
**hierarchy** [3]  14/10 15/18 45/3
**highlight** [5]  16/10 19/3 23/22 28/1
40/8
**highlighted** [2]  23/14 54/18
**him** [1]  5/1
**his** [3]  9/20 9/22 52/8
**history** [1]  13/5
**hold** [2]  44/18 47/23
**Holland** [1]  2/15
**Honor** [75]
**HONORABLE** [1]  1/14
**hope** [3]  43/25 56/12 56/13
**hopeful** [1]  56/12
**hours** [1]  29/13
**how** [24]  9/2 10/24 10/25 11/2 12/22
19/3 21/18 21/19 21/22 22/10 43/18

**I'll** [7]  8/1 9/5 16/9 54/4 55/1 55/8
58/19
**I'm** [36]  4/16 9/21 12/6 15/25 19/5
21/7 21/17 22/3 26/17 27/22 28/8
29/14 34/19 34/24 37/19 38/19 38/20
42/5 42/6 42/24 43/2 45/14 46/23
47/4 50/14 51/17 52/2 52/13 52/25
53/10 53/19 53/23 54/18 56/2 56/17
59/3
**idea** [3]  47/14
**identical** [1]  13/14
**identification** [2]  15/19 19/12
**identified** [23]  14/10 15/18 16/21
18/21 26/5 30/25 31/4 35/11 38/3
38/7 38/22 39/3 39/14 39/16 39/16
43/17 43/24 44/5 50/20 51/22 52/6
52/8 53/2
**identifies** [1]  14/18
**identify** [15]  15/3 17/8 20/1 20/1
20/13 30/19 39/15 40/2 43/19 44/17
45/19 46/11 48/16 51/9 51/11
**identifying** [4]  7/25 19/10 37/22
54/8
**identity** [1]  19/11
**III** [4]  2/12 2/15 49/10 49/14
**IL** [2]  2/4 2/10
**Illinois** [2]  2/13 2/19
**illusory** [3]  23/11 23/13 23/21
**imagine** [1]  22/21
**immediately** [2]  56/10 57/15
**implicates** [1]  49/10
**important** [2]  6/2 16/11
**importantly** [1]  9/9
**inaudible** [3]  23/5 26/17 32/21
**INC** [1]  1/3
**inclined** [1]  45/14
**include** [1]  56/4
**including** [3]  12/12 33/9 33/18
**inclusive** [3]  31/25 38/14 60/8
**incoming** [1]  44/18
**incorporated** [2]  49/6 49/17
**incorrect** [1]  55/12
**independent** [11]  6/19 20/17 21/1
21/13 29/25 32/2 36/9 44/14 46/6
50/24 54/7
**independently** [1]  20/20
**indicated** [2]  48/18 49/19
**indicates** [1]  27/3
**indicating** [1]  10/3
**indication** [5]  31/2 36/1 39/11 41/3
43/21
**indicator** [1]  23/18

**44/5 44/8 46/12 48/10 48/13 53/10
53/16 54/15 56/8 56/11 56/19 56/23
57/14**

**Howard** [4]  2/21 60/5 60/10 60/12
**however** [3]  12/10 13/13 34/25
**hundred** [1]  26/25

**I**

**I**

**indicators** [1]  54/16
**indicia** [4]  41/19 44/21 45/20 50/1
**individual** [13]  10/5 14/25 15/11 19/7 19/11 19/13 20/23 24/23 25/3 25/16 25/18 26/2 31/5
**individualized** [1]  19/10
**individually** [1]  33/25
**individuals** [12]  15/13 20/2 21/14 24/20 25/11 30/25 38/7 40/25 45/22 51/20 51/21 54/9
**indulgence** [2]  4/23 57/22
**infer** [1]  10/12
**inference** [1]  52/12
**inferred** [1]  31/3
**information** [39]  14/24 17/2 17/6 17/9 17/11 22/17 23/12 27/2 27/3 29/1 29/1 29/16 32/4 32/14 33/8 33/17 35/10 35/10 36/4 37/5 37/20 38/2 38/9 39/6 39/12 41/6 42/14 42/15 43/14 43/23 44/24 45/22 47/25 48/5 51/8 52/4 53/2 53/18 56/21
**information that's** [1]  23/12
**initial** [3]  18/13 37/6 53/24
**inquire** [1]  54/11
**inquiry** [2]  26/8 49/20
**insisted** [1]  10/21
**instance** [3]  23/23 44/16 44/19
**instead** [1]  21/24
**intended** [3]  6/14 7/14 8/25
**internet** [3]  40/12 53/16 53/17
**interrupt** [2]  22/3 38/19
**intervenor** [2]  45/13 54/2
**intervenors** [7]  2/18 4/19 7/15 8/8 16/1 20/22 55/13
**intrinsic** [1]  24/1
**invalid** [11]  23/25 25/14 25/15 25/17 29/9 36/22 37/17 50/21 51/4 52/18 53/25
**investigator** [1]  33/1
**invites** [1]  15/2
**involvement** [1]  56/14
**is** [222]
**isn't** [3]  6/23 30/16 32/2
**issue** [16]  5/19 7/14 11/10 13/3 14/3 14/7 20/3 45/15 46/10 46/24 47/1 47/2 48/3 48/10 49/11 55/19
**issues** [5]  34/13 35/1 47/5 47/24 58/7
**it** [162]
**it's** [54]  6/2 6/4 7/6 7/7 7/10 7/17 8/2 9/7 9/12 10/1 10/3 10/22 11/4 11/7 11/17 12/2 12/2 23/21 24/6 24/9 25/2 25/15 25/25 27/2 28/2 29/5 31/14 31/22 32/19 33/18 34/2 34/19 36/6 36/12 36/14 36/19 37/14 38/6 39/20 40/3 41/19 44/20 44/22 46/10 48/8 48/19 49/9 50/11 51/3 54/15 55/14 56/23 57/10 58/5
**its** [3]  37/9 52/13 56/14

**itself** [11]  1/23 11/17 15/9 15/21 15/24 20/7 23/21 31/20 37/15 49/18 52/9

**J**

**Joe** [1]  5/4
**join** [1]  4/24
**JONATHAN** [2]  2/18 4/18
**Jones** [4]  2/21 60/5 60/10 60/12
**JOSEPH** [1]  2/15
**JUDGE** [6]  1/15 34/7 47/18 47/19 47/21 58/18
**judgment** [3]  32/19 35/19 35/20
**Judicial** [1]  60/8
**July** [2]  1/6 17/14
**jump** [1]  40/24
**juncture** [1]  29/6
**June** [2]  10/21 17/14
**June 30th** [1]  10/21
**just** [50]  6/23 7/4 7/11 7/13 7/18 8/6 8/18 9/1 11/13 11/17 12/20 14/20 16/20 19/16 21/5 23/14 26/12 28/4 28/25 29/16 31/1 31/2 31/21 32/11 33/13 34/22 36/7 36/18 36/20 37/12 40/7 40/8 42/13 43/3 43/9 43/21 44/7 44/25 47/2 47/4 48/23 50/5 50/25 52/12 53/10 54/8 56/12 57/13 57/25 58/19

**K**

**kind** [2]  18/13 38/1
**knew** [4]  8/9 10/9 10/10 10/23
**Knight** [1]  2/15
**know** [45]  5/7 5/13 8/14 10/9 11/4 13/2 19/1 19/23 21/22 22/15 22/21 26/22 27/15 27/20 27/22 28/24 29/3 29/19 29/20 29/21 30/8 30/21 32/13 32/23 33/20 34/16 37/25 38/15 40/16 43/10 43/18 43/18 44/8 44/15 44/19 44/24 45/1 46/12 46/14 46/25 51/1 53/10 57/13 58/5 59/1
**known** [1]  58/15
**knows** [2]  10/22 50/13

**L**

**La** [1]  2/19
**lack** [1]  12/18
**laid** [1]  7/19
**Lally** [2]  13/21 13/23
**language** [7]  8/2 12/10 13/4 13/13 13/17 14/8 14/16
**largest** [2]  6/10 42/17
**last** [8]  9/1 29/13 35/8 51/16 53/21 54/19 55/25 58/10
**latest** [1]  40/4
**Latham** [1]  2/12
**latter** [1]  21/5
**law** [3]  2/6 19/4 49/8
**learned** [2]  26/14 30/3
**least** [10]  8/11 16/17 28/25 36/15

**38/13 38/16 41/20 44/23 46/13 58/24**
**leave** [1]  51/11
**leaves** [3]  16/14 30/23 53/21
**left** [2]  13/21 51/20
**legitimacy** [2]  38/17 39/7
**legitimate** [1]  25/15
**length** [1]  19/19
**less** [4]  7/3 11/23 26/14 29/13
**let** [11]  4/8 16/20 17/16 19/3 24/18 25/13 28/13 36/18 40/24 52/10 59/1
**let's** [5]  4/3 5/18 18/19 32/10 42/25
**letterhead** [1]  22/22
**letting** [1]  35/1
**Lewis** [1]  2/18
**Lexis** [8]  18/23 21/12 26/4 29/12 29/19 29/23 29/24 36/8
**Lexis-Nexis** [8]  18/23 21/12 26/4 29/12 29/19 29/23 29/24 36/8
**like** [14]  6/18 8/14 11/1 11/21 12/8 18/7 25/8 27/24 29/3 32/10 35/25 36/9 43/21 58/4
**likely** [1]  24/21
**likewise** [1]  26/21
**limit** [3]  10/15 10/21 53/16
**limited** [5]  1/8 4/6 11/6 11/15 51/8
**line** [6]  11/22 11/22 11/24 11/25 33/3 33/3
**lines** [2]  44/25 45/1
**list** [14]  14/25 17/1 28/9 28/23 33/10 36/1 36/2 39/19 40/12 40/13 40/14 42/8 52/18 54/23
**listed** [1]  17/5
**little** [5]  30/20 34/24 40/4 46/23 57/12
**lived** [3]  41/7 41/13 54/12
**LLC** [2]  2/18 47/11
**LLP** [2]  2/12 2/15
**located** [2]  41/16 41/21
**locations** [2]  41/17 41/18
**Loftus** [1]  2/3
**long** [4]  8/24 32/23 33/24 50/10
**look** [35]  7/12 13/11 19/25 21/11 24/7 24/17 26/2 26/4 26/9 27/14 28/4 28/7 28/7 28/10 28/18 30/7 30/8 37/21 38/4 38/7 38/15 38/17 38/23 39/7 39/7 39/9 39/16 43/7 51/19 51/22 52/4 52/6 52/9 54/1 54/10
**look-up** [20]  19/25 21/11 24/7 27/14 28/7 28/18 30/7 38/4 38/7 38/15 38/17 38/23 39/7 39/7 39/9 39/16 43/7 51/22 52/6 52/9
**look-ups** [6]  24/17 26/4 26/9 37/21 51/19 52/4
**looked** [2]  14/6 45/16
**looking** [7]  8/9 14/17 15/6 28/14 34/9 54/13 56/17
**loss** [2]  29/15 53/10
**lost** [1]  55/21
**lot** [5]  18/8 29/20 29/20 42/11 55/23

Ltd [1] 2/3

# M

**machine [4]** 7/1 7/2 7/10 7/10
**machines [2]** 6/20 7/6
**made [8]** 10/20 32/5 37/8 45/9 48/15
49/11 55/12 55/15
**MAGISTRATE [1]** 1/15
**mail [6]** 26/3 33/14 40/9 43/6 44/19
58/10
**mailed [3]** 31/24 32/12 38/23
**mainly [1]** 27/12
**majority [3]** 8/17 24/6 42/7
**make [20]** 5/2 8/10 12/8 20/18 25/12
25/20 31/19 32/4 37/6 37/23 40/8
43/3 45/17 45/21 48/24 51/3 52/13
52/16 57/16 58/12
**makes [2]** 14/9 24/24
**making [3]** 5/22 25/10 25/19
**many [3]** 10/24 27/13 41/17
**MARK [2]** 2/11 4/21
**match [2]** 30/10 36/4
**matches [2]** 24/7 33/10
**matching [4]** 16/24 16/25 33/18
**material [1]** 12/16
**matter [3]** 20/22 51/5 60/7
**matters [8]** 17/17 18/1 20/9 23/20
37/16 56/4 56/12 56/19
**maximum [4]** 6/5 9/6 10/17 10/18
**may [25]** 13/2 13/9 13/20 22/22
22/23 23/2 23/2 23/3 23/3 24/11
27/21 30/24 41/3 41/4 41/4 42/9 43/1
43/20 48/20 49/4 51/23 54/10 56/21
57/12 57/13
**maybe [4]** 27/16 30/20 32/25 36/12
**me [34]** 4/8 5/11 5/25 16/20 17/4
17/16 19/3 19/21 20/5 20/16 22/4
22/12 22/19 24/18 25/21 25/24 26/7
27/24 28/11 28/13 28/14 34/15 35/1
36/3 36/6 36/18 40/24 41/1 47/22
51/17 52/9 52/10 57/12 59/1
**Meadows [1]** 2/10
**mean [19]** 23/11 24/5 24/8 24/14
26/15 27/4 28/16 29/19 30/1 30/10
31/18 31/22 38/8 38/13 38/18 39/4
39/20 42/10 44/14
**meaning [2]** 13/15 53/13
**means [10]** 26/14 30/2 31/24 35/24
35/25 36/10 37/14 38/17 39/1 55/20
**meant [3]** 5/20 12/11 43/11
**mediation [2]** 12/13 13/18
**mediator [1]** 13/6
**mediator's [2]** 12/12 13/18
**Medical [2]** 4/13 28/6
**meet [4]** 36/24 37/1 48/12 57/6
**meeting [1]** 12/19
**meets [1]** 19/7
**member [12]** 10/16 11/18 19/12

20/23 24/11 25/6 30/16 31/16 37/5
39/12 41/4 56/21
**members [17]** 7/25 9/16 10/25 11/6
11/8 15/9 15/10 22/17 24/4 27/10
30/13 31/23 32/6 47/15 47/16 53/12
57/18
**membership [1]** 56/23
**memorialize [1]** 58/19
**mentioned [1]** 53/11
**MESTER [26]** 2/11 4/22 5/13 9/10
13/10 14/4 14/7 17/23 18/24 22/3
28/5 28/13 34/8 34/13 34/17 35/4
38/5 40/17 40/23 42/4 43/13 46/16
48/21 51/17 53/8 55/17
**Mester's [1]** 55/11
**met [4]** 33/11 33/16 34/1 34/2
**metaphysical [1]** 33/2
**method [1]** 46/11
**methodology [1]** 49/25
**MICHAEL [3]** 2/2 2/5 4/11
**MIDDLE [4]** 1/1 60/2 60/5 60/13
**minds [1]** 12/19
**minute [1]** 9/1
**minutes [1]** 28/11
**missing [7]** 17/7 18/8 19/16 20/15
51/18 51/24 55/2
**mistake [1]** 31/19
**moment [3]** 19/16 40/24 42/25
**month [9]** 21/25 24/9 26/23 27/4
29/18 35/7 36/3 41/8 47/12
**months [2]** 28/23 32/23
**more [41]** 7/6 7/7 7/11 8/21 9/9 9/13
9/17 9/24 10/5 11/6 11/15 11/16
11/18 12/20 14/14 15/14 21/15 21/17
25/3 25/3 27/2 28/15 29/20 29/21
30/4 35/7 35/10 35/10 39/11 41/6
42/13 42/15 43/14 43/23 47/25 48/5
48/8 52/4 53/2 54/20 57/4
**most [4]** 18/16 18/22 26/18 27/14
**motion [5]** 1/13 7/16 8/15 18/20
57/7
**motions [2]** 5/8 5/10
**mouth [2]** 47/19 47/22
**move [1]** 56/15
**moving [2]** 2/18 47/6
**Mr [59]** 2/24 4/16 4/17 5/3 5/13 5/24
6/1 9/10 9/16 9/19 10/4 10/22 11/12
12/24 13/10 13/13 13/25 14/2 14/4
14/7 16/1 17/18 17/23 18/24 22/3
23/9 28/5 28/13 32/7 34/5 34/8 34/13
34/17 35/3 35/4 35/15 35/18 36/17
38/5 40/17 40/23 42/4 43/5 43/13
44/9 45/24 46/16 46/22 47/9 48/21
49/20 51/17 52/7 53/8 55/1 55/9
55/11 55/17 58/10
**Mr. [17]** 4/23 17/18 17/18 28/12
37/25 40/1 40/13 40/21 44/11 47/8
50/9 53/15 54/8 55/1 55/2 55/5 58/9
**Mr. Addison [2]** 17/18 55/2

**Mr. Addison's [1]** 55/5
**Mr. Biggerstaff [1]** 40/13
**Mr. Collins [1]** 58/9
**Mr. Good [8]** 17/18 28/12 37/25
40/1 40/21 47/8 50/9 55/1
**Mr. Slater [4]** 4/23 44/11 53/15 54/8
**Ms [1]** 13/21
**Ms. [2]** 13/23 33/15
**Ms. H [1]** 33/15
**Ms. Lally [1]** 13/23
**much [16]** 8/11 10/22 10/25 11/22
15/12 22/2 26/15 26/21 26/22 29/4
35/24 36/11 36/20 38/6 46/12 53/16
**multi [1]** 17/3
**multi-claim [1]** 17/3
**multiple [10]** 14/19 15/4 15/4 23/17
24/20 30/17 30/25 31/4 37/22 38/7
**must [3]** 14/22 25/13 38/18
**my [20]** 11/13 16/12 17/20 22/4
33/13 34/11 34/20 37/15 41/14 45/17
46/10 46/18 47/19 48/9 50/12 53/9
53/20 55/25 58/3 58/21

# N

**narrow [1]** 45/21
**narrowly [2]** 50/1 51/9
**necessary [6]** 15/3 25/25 42/6 51/2
54/5 54/24
**need [12]** 21/13 23/11 23/20 26/7
26/11 26/24 29/25 34/15 36/8 44/4
52/23 56/9
**needed [2]** 18/14 47/25
**needs [4]** 25/9 32/5 45/15 45/19
**negotiate [2]** 25/6 51/12
**negotiated [15]** 6/12 7/21 8/24 10/1
11/2 16/6 19/19 20/8 20/9 20/21 22/5
23/7 32/22 33/4 33/5
**never [7]** 6/14 7/14 8/22 8/25 12/13
34/22 41/13
**nevertheless [1]** 39/10
**new [2]** 5/14 16/3
**newspaper [1]** 22/24
**Nexis [8]** 18/23 21/12 26/4 29/12
29/19 29/23 29/24 36/8
**next [2]** 37/25 56/18
**nitpick [1]** 8/10
**no [36]** 1/5 10/4 10/22 10/23 11/10
11/14 11/18 14/3 14/5 14/14 15/3
15/18 15/21 22/8 22/16 22/20 24/21
28/2 31/1 31/2 32/20 33/21 40/19
40/20 41/22 42/2 42/14 49/3 51/25
52/17 55/3 55/4 55/7 58/8 58/11 59/3
**non [1]** 16/24
**non-matching [1]** 16/24
**none [6]** 18/2 28/6 43/6 43/7 44/3
44/3
**nonetheless [1]** 19/3
**North [3]** 2/13 2/19 41/24
**not [98]**
**note [6]** 6/2 14/24 43/9 43/11 46/8

**N**

note... [1]  55/11
noted [1]  52/7
notes [4]  12/12 13/6 13/18 60/7
nothing [5]  6/22 7/22 32/18 41/6
55/18
notice [30]  5/20 14/8 16/4 16/6
24/10 25/9 26/3 27/1 27/6 27/7 27/11
27/13 30/18 31/9 31/15 31/24 32/12
38/14 38/23 39/5 40/9 40/10 43/7
46/4 46/5 47/10 48/15 49/15 59/1
59/3
notices [5]  16/17 16/23 57/17 58/15
58/16
notification [1]  27/19
now [25]  16/3 19/14 19/23 21/18
24/2 28/8 28/15 28/21 28/23 29/2
29/24 30/5 30/8 31/7 34/14 35/15
38/6 38/9 38/13 50/25 56/7 56/13
57/2 57/15 57/19
number [82]
numbers [31]  6/6 6/19 7/4 9/8 9/14
9/15 9/16 9/17 9/18 9/24 10/11 11/8
11/9 11/19 15/1 16/24 20/2 21/6
21/14 22/12 23/1 24/8 24/19 26/25
29/18 41/9 42/1 42/7 42/8 43/8 44/17
numerous [1]  12/12

**O**

oath [4]  20/25 22/6 22/9 39/18
oath under [1]  22/9
object [4]  8/6 34/25 46/14 50/6
objection [4]  20/22 58/6 58/8 58/11
objective [1]  19/6
objectors' [1]  40/15
objects [1]  57/24
obtain [3]  35/18 35/20 42/6
obviously [7]  9/19 11/7 11/15 30/12
40/10 51/13 53/12
occupying [1]  7/7
occur [3]  48/10 49/25 54/15
off [4]  5/19 9/20 14/10 52/23
Office [1]  2/6
Official [2]  60/5 60/12
often [1]  19/23
Oh [1]  4/16
Okay [7]  4/8 5/6 40/22 46/7 56/2
57/19 58/25
once [7]  18/21 37/16 52/17 52/24
54/3 54/22 56/6
one [52]  6/5 6/11 6/25 7/1 7/10 7/10
8/18 10/4 10/22 10/23 11/16 12/9
12/16 12/20 14/19 14/24 15/14 20/4
22/16 22/20 24/16 24/21 24/23 25/3
25/14 25/15 30/17 31/1 31/2 31/4
31/10 31/12 31/12 31/21 31/22 32/12
32/12 33/21 34/16 37/25 38/7 39/23
42/14 42/17 43/1 43/3 43/12 43/18
51/6 53/24 56/9 57/23

ones [47]  8/20 25/19 31/25 43/17
online [3]  46/25 47/4 49/12
only [14]  7/9 7/10 25/18 28/21 29/2
29/11 29/12 30/12 31/4 53/9 55/10
55/19 56/9 57/2
open [1]  51/20
opening [1]  26/2
operated [1]  39/8
opinion [1]  46/16
Oppenheim [1]  2/18
opposite [1]  31/3
opt [1]  16/4
opted [1]  15/11
oral [2]  16/1 58/24
order [7]  4/1 16/9 16/12 29/17 37/10
58/21 58/21
ordinarily [1]  18/7
other [24]  7/21 20/25 22/9 22/18
24/1 26/10 28/2 28/5 30/23 31/4
31/13 35/18 37/16 41/17 41/23 41/24
44/18 45/1 47/13 51/10 51/23 54/6
55/19 57/11
others [2]  42/19 43/19
otherwise [1]  28/18
our [31]  6/21 7/16 7/19 8/10 8/10
8/15 9/3 9/8 9/15 9/23 10/20 11/5
11/11 11/13 11/23 12/9 12/14 24/5
29/4 29/12 31/11 31/13 39/10 43/6
44/20 46/20 48/24 49/13 52/18 56/17
57/23
ourselves [1]  44/7
out [25]  6/3 7/19 8/15 11/5 15/11
16/4 16/4 29/12 30/18 31/9 31/21
32/14 33/24 39/24 40/4 40/25 41/2
43/17 43/22 49/16 49/25 56/11 56/24
57/16 58/22
out -- we [1]  43/17
outlined [2]  18/20 24/16
outlines [1]  54/15
outside [10]  6/6 20/21 20/25 30/2
42/9 42/22 51/20 52/5 52/16 54/22
over [5]  10/11 13/5 24/19 31/25
38/14
over-inclusive [2]  31/25 38/14
overwhelming [1]  8/17
own [3]  33/1 50/11 54/7
owned [2]  20/13 21/14 21/25
owner [1]  6/18
ownership [1]  23/1

**P**

P.A [1]  2/6
p.m [2]  1/7 1/7
page [2]  3/2 60/8
pages [2]  16/22 60/7
paid [8]  6/12 6/16 7/18 7/21 11/22
33/12 33/19 34/4
papers [4]  11/5 24/5 29/12 31/14
paragraph [2]  15/7 23/8
part [1]  53/21

particular [6]  38/12 45/4 47/2 50/8
51/1 54/14
parties [21]  16/6 16/12 16/20 17/16
18/3 19/19 19/20 36/24 37/1 37/4
37/10 47/5 47/10 48/12 51/12 53/1
53/6 53/13 57/3 57/6 57/10
PARTNERSHIP [2]  1/8 4/7
party [1]  44/12
passage [1]  41/24
passed [6]  20/8 37/16 53/23 54/3
56/5 56/14
past [1]  19/2
pay [2]  30/12 46/13
PDF [1]  44/20
penalties [1]  22/9
penalty [12]  20/23 24/24 26/13
26/17 26/20 31/5 32/14 32/18 33/7
33/16 34/11 34/12
pending [2]  5/8 5/10
people [15]  22/22 24/3 24/7 26/15
26/16 29/18 30/13 31/19 32/6 32/11
36/15 41/25 42/8 42/11 44/18
per [7]  7/18 7/18 7/21 7/24 7/25
10/15 12/11
percent [3]  27/17 27/18 40/5
percentage [1]  28/9
perfectly [3]  10/15 10/17 31/14
perhaps [2]  26/11 26/23
period [15]  17/13 18/10 20/15 21/15
22/1 24/9 24/19 26/23 27/4 29/19
36/3 41/8 47/12 48/2 48/6
perjury [13]  20/23 22/10 24/25
26/13 26/17 26/20 31/5 32/14 32/18
33/7 33/17 34/12 34/13
persistent [1]  11/9
person [7]  11/20 14/25 32/16 33/2
33/12 36/1 47/3
persons [7]  15/11 23/17 31/4 31/9
39/6 41/5 45/2
perspective [1]  55/2
pharmacy [1]  6/19
phone [2]  41/20 41/25
pick [2]  26/25 41/25
picked [1]  6/3
PIPER [13]  2/18 4/17 4/18 12/24
13/25 16/1 34/5 35/3 43/5 46/22 52/7
55/9 58/10
Piper's [2]  47/9 49/20
place [2]  13/19 36/5
placed [1]  22/23
Plaintiff [1]  2/2
Plaintiff's [1]  25/6
Plaintiffs [1]  1/4
pleading [3]  19/15 43/11 52/8
pleadings [3]  19/24 21/3 55/14
please [3]  27/2 41/12 47/21
plenty [1]  41/17 54/10
plural [1]  14/19
plus [2]  11/24 11/24

## P

**point [16]**  7/5 13/3 15/3 23/4 23/6 23/7 24/8 25/11 25/24 30/19 31/6 37/23 39/23 43/1 43/4 55/25
**pointed [1]**  29/12
**points [1]**  12/9
**populated [2]**  40/9 40/11
**PORCELLI [2]**  1/14 47/21
**Porcelli's [2]**  47/19 47/19
**Portability [1]**  41/25
**pose [1]**  20/18
**position [20]**  9/7 9/8 9/15 9/17 9/20 9/22 9/23 10/4 10/7 10/8 11/14 17/25 19/24 25/22 34/3 37/12 38/21 48/24 51/7 54/4
**positions [3]**  19/20 37/2 37/4
**possible [4]**  8/12 25/15 43/25 46/11
**potential [2]**  17/10 57/18
**prejudice [1]**  53/23
**prejudices [1]**  52/17
**preliminary [11]**  7/15 7/16 7/20 8/7 8/15 12/21 12/23 12/25 45/8 48/9 51/5
**premature [1]**  30/20
**premise [1]**  39/8
**preparing [1]**  13/12
**present [3]**  2/24 49/15 52/19
**presented [2]**  26/1 30/21
**presumption [8]**  22/7 31/6 33/6 33/12 34/2 36/12 36/13 52/11
**pretend [1]**  36/9
**pretty [1]**  26/17
**previously [1]**  5/12
**prior [3]**  14/7 49/7 58/23
**private [1]**  33/1
**probably [4]**  7/11 10/12 31/16 55/20
**problem [3]**  10/25 11/18 36/17
**problems [2]**  19/9 38/14
**Proceedings [2]**  1/23 59/7
**process [23]**  19/22 20/9 24/16 26/14 28/16 28/22 30/7 33/5 33/24 35/9 38/15 38/17 44/18 45/16 46/18 49/24 50/6 50/19 51/11 51/14 54/15 54/17 58/1
**processing [1]**  18/10
**produced [3]**  34/4 34/16 34/16
**production [2]**  25/12 25/20
**proof [7]**  14/18 14/21 22/18 22/25 25/12 32/2 57/25
**proper [1]**  19/11
**proposal [1]**  45/9
**proposed [3]**  18/6 27/10 46/10
**proposing [1]**  42/16
**proposition [1]**  29/7
**protocols [1]**  39/24
**prove [3]**  32/6 32/16 34/15
**provide [4]**  27/2 29/22 37/2 57/7
**provided [4]**  14/25 32/24 36/4 58/20
**provider [10]**  44/17 44/22 45/6

15/20 47/4 48/17 49/9 49/22 50/2 51/6
**providers [8]**  29/16 43/14 46/11 47/14 48/1 51/10 53/5 54/20
**provides [1]**  33/17
**province [1]**  11/3
**provision [1]**  11/3
**public [3]**  39/19 39/23 54/10
**publication [3]**  27/7 27/13 40/10
**pull [1]**  27/24
**pulling [1]**  28/8
**purpose [3]**  28/14 38/5 50/21
**purposely [1]**  31/24
**purposes [4]**  19/13 22/1 49/15 51/2
**pursuant [1]**  60/6
**put [5]**  8/6 36/2 36/10 47/18 47/22
**putting [2]**  20/19 26/21

## Q

**question [11]**  7/16 20/19 21/8 22/4 31/8 38/10 53/9 53/20 54/6 55/24 57/24
**questionable [1]**  20/10
**questioning [1]**  39/1
**questions [1]**  5/1
**quickly [3]**  51/13 56/19 56/24
**quite [3]**  30/6 42/5 42/6

## R

**raise [3]**  20/11 48/7 57/23
**raised [4]**  7/15 13/3 28/21 29/2
**raises [2]**  44/21 48/2
**raising [1]**  34/14
**random [1]**  26/25
**rather [4]**  7/25 14/20 21/5 26/2
**Rd [1]**  2/9
**RDR [1]**  60/12
**reach [1]**  24/6
**read [4]**  9/2 12/1 14/21 15/12
**reading [4]**  6/21 11/23 11/23 15/22
**reads [3]**  14/20 14/21 15/8
**really [5]**  30/3 33/1 34/19 39/8 53/20
**reason [11]**  12/20 20/11 22/14 24/10 28/21 29/2 47/10 49/8 49/8 49/10 49/14
**reasonable [1]**  57/4
**reasons [5]**  8/4 10/21 16/10 16/12 52/3
**recall [4]**  11/3 13/22 29/22 50/17
**receive [3]**  15/17 26/18 27/11
**received [17]**  6/5 6/11 9/24 10/5 11/14 11/18 11/20 15/1 15/13 20/24 21/19 21/23 28/6 34/17 43/6 46/25 49/12
**receivers [1]**  46/25
**recited [1]**  12/11
**recollection [2]**  13/13 13/20
**record [13]**  4/10 5/10 13/12 16/22 20/20 28/2 29/8 29/25 40/9 43/9 44/6 52/7 59/1

**recording [1]**  1/24
**recounted [1]**  10/20
**recovery [1]**  10/17
**red [1]**  42/2
**referred [2]**  28/5 35/8
**regard [1]**  40/1
**regarding [10]**  5/19 15/22 19/2 36/19 36/25 37/3 37/13 38/3 40/25 46/1
**regardless [1]**  49/22
**registered [1]**  17/13
**regulations [1]**  60/8
**reject [1]**  34/10
**rejected [4]**  36/23 37/1 37/17 54/2
**rejecting [1]**  28/25
**related [3]**  5/8 15/15 53/5
**relating [1]**  18/22
**relationship [2]**  41/22 41/23
**relevant [10]**  15/2 17/10 20/14 20/14 21/15 24/9 30/11 30/12 48/2 48/6
**reliance [1]**  20/4
**relied [2]**  19/25 20/6
**relief [1]**  12/19
**relinquished [1]**  30/14
**relying [1]**  7/10
**remainder [1]**  16/14
**remaining [2]**  25/19 52/1
**remains [1]**  23/5
**remedied [2]**  30/16 39/23
**remember [2]**  24/12 31/17
**remembered [1]**  32/1
**remotely [4]**  31/11 32/2 32/15 35/6
**repetitive [1]**  15/20
**rephrase [2]**  17/16 52/10
**reply [1]**  7/19
**report [6]**  9/11 9/24 18/14 23/20 39/17 40/4
**Reporter [5]**  2/21 3/7 60/3 60/5 60/12
**reports [1]**  18/23
**represent [1]**  27/21
**representative [2]**  26/25 50/10
**represented [2]**  53/13 58/16
**represents [1]**  13/14
**request [20]**  5/12 5/14 12/24 16/1 16/3 17/2 27/1 27/2 35/9 37/20 39/5 41/6 42/13 43/12 43/23 44/24 48/4 51/19 53/22 57/7
**requested [2]**  16/19 35/11
**requesting [1]**  30/20
**requests [2]**  5/8 56/24
**require [5]**  17/8 22/6 27/9 28/15 48/8
**required [4]**  20/21 33/9 33/17 54/20
**requirement [1]**  26/21
**requires [1]**  25/3
**requiring [1]**  17/6
**research [2]**  44/14 54/7
**resided [2]**  52/15 54/9

**R**

residence [1] 54/9
resolve [1] 36/25
resolved [2] 45/14 56/20
respect [4] 17/11 32/12 38/12 56/22
respond [1] 32/8
response [8] 6/9 7/16 9/4 11/12
41/10 42/4 49/20 57/17
responses [1] 54/6
responsibilities [1] 56/14
result [3] 15/4 15/25 25/5
results [1] 54/17
revealed [1] 54/7
reverse [26] 19/25 21/11 24/7 24/17
26/4 26/8 27/14 28/7 28/18 30/7
37/20 38/4 38/7 38/14 38/17 38/23
39/6 39/7 39/9 39/15 43/7 51/19
51/22 52/3 52/6 52/8
review [3] 37/6 37/15 37/15
right [53] 4/3 4/20 5/3 5/18 6/1 9/4
11/12 13/8 13/25 14/2 14/4 14/6
16/14 17/25 18/4 18/19 23/23 25/19
27/22 27/23 28/20 31/12 31/12 32/7
34/5 34/8 35/4 35/14 36/18 36/20
38/11 40/6 40/23 41/10 42/4 42/24
43/13 44/11 45/12 46/22 49/24 50/4
50/22 51/16 52/2 54/25 55/5 55/8
56/1 56/17 57/1 57/15 58/12
rightful [1] 25/16
rights [3] 23/8 23/8 23/10
RMR [1] 60/12
Robbie [1] 4/22
ROBERT [1] 2/12
role [1] 16/16
Rolling [1] 2/10
ROSS [4] 2/2 4/13 41/12 50/14
RPR [1] 2/21
rule [1] 34/25
ruling [5] 3/3 3/4 3/5 3/6 58/24

**S**

said [13] 7/22 8/22 12/14 13/6 18/14
19/14 31/13 34/24 36/8 36/8 40/8
45/8 46/13
Salle [1] 2/19
same [16] 7/3 8/8 8/11 11/8 11/19
13/16 15/5 19/21 20/15 22/13 25/4
25/22 27/10 31/10 40/23 52/15
sample [2] 26/25 36/16
satisfied [3] 19/5 52/13 54/18
satisfy [1] 57/7
say [13] 6/23 7/17 8/16 23/13 28/24
29/17 31/9 32/4 32/20 35/1 36/11
36/21 42/3
saying [4] 10/2 27/22 29/25 36/3
says [3] 33/15 35/13 35/15
scenario [7] 8/16 8/19 24/18 24/21
24/23 25/1 32/10
scenarios [2] 24/17 30/23

schedule [1] 5e/18
scheduled [1] 5/7
scrutinize [2] 32/25 33/25
seal [2] 5/12 40/14
second [4] 14/13 23/7 24/23 49/8
Secondly [1] 12/18
section [9] 15/7 20/9 35/13 36/19
51/1 51/1 54/14 54/19 60/6
see [7] 4/16 9/2 16/7 19/3 25/8 30/21
54/13
seek [7] 17/11 37/4 37/13 37/20
45/22 51/8 53/1
seeking [6] 20/17 38/2 38/9 43/14
49/20 54/11
seem [4] 6/8 22/12 44/3 44/3
seems [13] 11/9 16/15 19/21 20/4
20/12 22/4 25/8 25/24 26/7 38/25
46/16 48/10 57/12
seen [1] 34/22
self [4] 39/16 44/17 45/19 48/16
self-identified [1] 39/16
self-identify [3] 44/17 45/19 48/16
send [8] 26/24 27/1 31/25 41/6 42/13
43/22 48/15 58/4
sending [2] 39/5 58/14
sense [1] 9/25
sent [17] 6/6 9/13 9/13 15/13 15/16
16/23 17/2 25/10 26/24 41/8 41/9
47/3 49/7 49/17 58/3 58/10 58/16
sentences [1] 8/14
separate [6] 6/20 7/1 9/3 11/19 15/3
39/4
September [2] 56/20 59/2
September 5th [2] 56/20 59/2
service [16] 43/14 44/17 44/21 45/5
45/20 46/11 47/14 48/1 48/16 49/13
49/21 50/2 51/6 51/10 53/5 54/20
set [6] 11/5 16/1 22/13 24/5 42/10
42/10
setting [1] 52/22
settled [1] 34/20
settlement [58] 5/9 7/25 8/1 8/3
10/14 10/16 10/24 10/24 11/3 11/6
11/7 11/11 12/9 12/10 12/16 12/22
13/4 14/9 14/11 14/15 15/5 15/6 15/8
15/9 15/10 15/21 15/23 19/18 20/6
22/1 24/4 25/5 25/18 30/4 30/13
30/15 31/16 31/23 32/6 33/23 34/20
34/25 35/9 35/12 35/13 37/2 37/5
39/13 41/3 42/11 46/24 47/6 48/12
50/20 50/22 54/14 56/21 56/22
settlements [2] 8/10 11/2
shall [5] 15/17 35/13 36/20 36/23
36/24
she's [1] 13/21
sheet [1] 15/3
short [1] 28/21
should [28] 16/23 17/17 19/21 22/13
23/15 25/21 28/25 29/15 29/17 34/4

35/7 35/10 35/16 36/7 36/13 36/15
56/23 57/17 38/16 40/18 45/18 47/2
50/9 51/2 51/15 57/21 58/13 58/16
show [4] 25/21 39/6 39/9 42/12
showed [1] 43/7
signature [2] 17/7 18/8
signed [4] 14/22 26/13 32/19 33/16
significance [1] 57/2
significant [3] 12/2 18/22 43/12
signs [1] 32/14
silence [1] 55/6
similar [2] 19/2 52/3
similarly [1] 52/3
simpler [1] 42/2
simply [5] 20/5 31/23 35/7 41/2
42/14
since [2] 41/24 43/8
single [1] 37/22
situation [1] 30/24
sixth [1] 6/22
Slater [5] 2/24 4/23 44/9 44/11
53/15 54/8
slightly [1] 46/9
small [3] 6/18 42/9 42/10
so [81]
solely [1] 21/3
some [21] 9/14 11/15 13/3 13/19
13/21 16/18 18/6 23/16 24/8 31/6
35/21 38/16 39/7 39/11 41/3 42/19
52/22 52/23 52/24 53/15 55/12
somebody [3] 12/7 41/20 54/12
somehow [2] 7/2 45/21
someone [12] 11/21 20/13 21/18
22/6 22/19 24/10 24/11 26/12 27/5
30/9 31/14 52/15
something [17] 6/13 6/16 6/19 8/6
12/7 29/10 29/10 30/6 36/12 36/13
38/18 38/18 44/22 45/18 46/17 47/17
58/22
sorry [7] 4/16 12/6 22/3 38/19 43/2
50/14 56/2
sorts [1] 18/7
sought [2] 51/2 52/4
source [1] 40/17
sources [2] 32/4 36/4
speak [1] 55/22
specific [1] 35/1
specifically [3] 14/18 34/13 58/21
spoke [1] 50/10
spoken [1] 44/15
spreadsheet [1] 5/14
St [2] 2/16 2/19
stage [1] 7/15 53/22 54/4
standard [1] 35/19
standing [4] 34/15 49/9 49/10 49/13
start [2] 5/18 55/1
started [2] 46/15 50/6
starting [1] 4/9
state [6] 4/9 40/25 41/3 51/21 52/5

**S**

state... [1] 52/16
stated [4] 48/14 51/5 58/19 58/22
statement [2] 32/21 33/7
statements [3] 10/16 47/20 55/12
STATES [7] 1/1 1/15 60/1 60/5 60/6 60/9 60/13
stating [2] 21/13 44/6
Ste [3] 2/3 2/9 2/16
stenographic [1] 60/7
step [4] 14/24 53/24 53/24 56/6
still [2] 28/16 48/10
stipulate [1] 41/16
stopping [1] 33/21
stores [1] 42/21
streamlined [1] 33/5
strengths [1] 19/20
stronger [1] 20/16
struck [1] 7/12
sub [2] 42/10 42/10
sub-set [2] 42/10 42/10
subject [3] 15/8 37/6 37/14
submission [2] 10/20 49/11
submit [4] 4/25 14/22 15/16 56/21
submits [2] 32/13 33/7
submitted [26] 5/14 12/17 17/12 23/17 24/22 25/4 26/3 26/6 26/12 26/16 26/16 27/18 31/1 31/5 31/10 31/21 33/14 34/11 34/12 38/3 39/10 45/18 47/15 47/16 50/2 57/23
submitting [3] 27/10 45/23 57/25
subscriber [1] 33/3
subset [1] 29/5
substantially [2] 7/2 55/21
successfully [1] 15/13
successive [1] 14/11
such [1] 25/19
suffering [1] 38/13
sufficient [3] 22/7 34/18 49/18
suggest [4] 12/20 29/9 35/7 52/21
suggested [3] 26/10 26/24 44/1
suggesting [5] 23/10 28/15 32/24 35/6 48/11
suggestion [1] 29/4
suitable [1] 25/13
Suite [3] 2/13 2/19 2/22
summary [3] 32/19 35/19 35/20
support [1] 7/19
supposed [1] 53/10
sure [9] 5/2 8/10 9/21 18/11 21/8 26/18 44/13 53/19 57/16
surprising [1] 36/6
suspect [1] 24/10
swear [1] 20/23

**T**

tailored [2] 50/1 51/9
take [14] 18/7 18/19 25/24 28/11 32/24 34/21 35/6 35/7 35/18 35/21

37/12 38/21 56/13 57/21
taken [8] 8/14 10/4 10/8 18/1 18/13 19/14 19/24 60/7
taking [1] 18/8
talk [4] 7/24 14/18 45/10 56/9
talking [2] 12/3 50/25
TAMPA [8] 1/2 1/6 2/7 2/16 2/16 2/22 15/15 60/14
target [1] 47/6
telephone [1] 11/8
tell [4] 8/2 27/15 28/14 32/15
telling [2] 24/11 34/15
terms [9] 5/20 7/24 8/5 8/11 8/11 8/14 14/19 15/8 19/17
test [7] 6/6 9/7 9/14 9/16 9/18 10/11 29/6
testimony [1] 42/6
than [26] 7/3 7/25 9/13 9/17 9/25 10/5 11/15 11/16 11/18 14/14 14/20 21/5 22/9 25/3 26/2 26/8 26/14 28/2 28/5 29/13 29/20 29/21 30/4 35/7 36/17 46/9
thank [9] 5/6 28/12 32/9 34/7 40/21 43/10 55/9 58/18 59/5
thanks [2] 35/1 35/3
that [452]
that's [58] 5/18 5/25 6/4 7/5 8/13 8/19 8/19 9/21 11/2 11/7 12/15 13/23 14/1 17/20 17/21 17/24 18/5 18/12 21/16 22/4 22/5 23/6 23/12 23/19 24/16 27/23 28/20 29/2 31/12 32/1 32/18 33/4 33/13 33/13 34/14 34/18 36/3 36/3 37/11 38/10 38/11 38/12 38/24 39/10 39/19 39/25 41/9 42/15 46/19 46/20 49/7 49/23 50/3 50/19 53/20 55/25 57/2 58/9
their [17] 6/9 7/16 8/11 28/22 29/23 30/8 32/17 37/2 41/15 42/1 42/14 44/16 47/14 48/3 50/11 56/14 56/22
them [28] 15/2 22/20 24/9 24/11 26/11 26/18 28/6 28/23 28/25 29/23 31/23 32/13 32/25 34/14 38/25 39/15 43/7 44/19 46/13 47/1 47/15 50/11 53/14 53/17 53/18 56/3 56/5 57/6
themselves [2] 23/16 44/25
then [40] 9/19 13/15 16/14 16/17 18/19 20/18 22/10 22/10 22/10 23/10 23/20 24/3 25/1 25/13 28/24 29/10 30/14 31/18 33/18 34/21 37/14 37/23 38/8 38/16 38/18 39/17 40/24 43/22 44/18 45/21 51/12 53/25 54/4 54/17 54/19 56/9 57/5 57/7 57/17 59/3
theory [2] 20/15 21/4
there [66]
there's [4] 19/23 25/8 35/9 54/15
these [31] 7/17 13/24 16/21 18/6 18/16 18/18 21/14 21/14 23/1 23/22 24/3 24/7 29/17 29/18 30/22 32/6 35/1 37/16 39/20 39/24 41/22 43/8

45/1 52/21 53/12 54/21 56/4 56/12 56/13 56/19 56/24
these Epiq [1] 18/6
they [101]
thin [1] 6/3
thing [3] 11/8 30/3 55/10
things [12] 13/24 18/7 19/15 22/19 22/21 22/25 23/4 23/14 39/21 41/22 53/15 56/8
think [49] 6/2 8/24 9/12 9/22 10/10 10/12 10/13 10/22 11/5 13/16 14/8 18/12 18/16 19/15 23/9 24/6 26/13 26/14 29/5 29/19 31/8 31/19 34/7 34/14 34/18 34/19 35/7 35/10 35/24 36/7 37/21 38/11 40/17 40/20 41/5 44/21 47/9 49/1 49/9 50/9 51/18 54/22 54/25 55/19 55/21 57/4 57/19 57/20 58/3
thinking [1] 8/19
thinks [2] 29/15 36/17
third [4] 14/13 25/1 49/10 49/14
this [72]
those [37] 6/24 9/7 9/16 16/22 17/15 17/16 17/17 17/21 18/1 18/21 23/10 23/23 24/17 25/23 25/25 26/8 33/11 33/15 34/1 34/1 37/23 43/23 45/7 45/17 45/22 47/5 50/7 51/20 51/21 51/25 52/5 52/6 52/14 52/19 54/2 58/7 58/16
though [4] 6/9 28/14 33/25 41/18
thought [2] 46/15 55/23
three [8] 6/21 17/6 24/16 31/9 31/21 32/11 34/1 34/1
through [12] 26/3 26/11 26/14 27/14 33/14 42/19 49/12 50/24 50/24 52/4 58/1 60/7
throughout [2] 14/23 15/20
thus [1] 43/24
tickets [1] 15/15
time [30] 5/6 7/7 8/24 10/23 12/13 13/19 13/22 20/14 21/15 24/8 24/19 25/22 30/9 30/10 30/11 30/12 37/19 48/1 48/2 48/6 48/6 48/17 49/7 49/17 50/10 52/2 52/23 53/24 57/16 59/5
timely [3] 32/13 33/8 33/16
times [1] 12/12
Title [1] 60/6
today [4] 16/10 56/7 57/21 58/24
today's [2] 56/5 58/23
told [2] 30/6 46/12
took [2] 8/3 13/18
total [4] 14/11 14/14 16/8 47/21
towards [1] 7/8
transcribed [1] 1/23
transcript [3] 1/13 60/3 60/8
transcription [2] 1/24 60/7
transcriptionist [1] 1/24
translates [1] 38/1
TransUnion [8] 18/22 21/11 26/4

**T**

**TransUnion... [5]** 29/14 29/19 29/24
29/24 36/8
**tried [1]** 22/16
**true [5]** 8/8 18/5 35/19 38/24 60/6
**try [2]** 28/21 46/11
**trying [1]** 49/25
**TTA [5]** 8/3 8/8 11/4 13/12 13/14
**two [21]** 6/19 6/20 6/24 6/25 7/4 7/6
8/3 11/21 11/22 12/9 17/2 19/15 20/7
30/23 31/13 32/3 36/4 38/21 41/22
51/16 52/1
**typically [1]** 35/20

**U**

**ultimately [1]** 60/7
**unambiguous [4]** 14/15 16/7 19/18
34/8
**unaware [1]** 55/15
**uncontroversial [1]** 18/17
**under [36]** 6/21 11/23 11/23 14/24
15/7 15/9 16/15 19/4 20/9 20/15
20/23 20/25 21/4 22/6 22/9 22/9
22/10 24/24 25/17 26/13 26/17 31/5
32/14 32/17 33/7 33/16 34/11 34/12
35/9 39/8 39/18 40/14 46/18 49/8
49/13 50/22
**undersigned [1]** 60/7
**understand [13]** 7/13 9/6 12/4 21/8
29/15 30/5 31/7 31/8 38/21 40/21
47/13 49/3 54/3
**understandable [1]** 31/14
**understanding [11]** 9/23 17/21
33/13 33/14 44/20 46/9 46/10 46/18
46/21 47/19 50/12
**understood [4]** 11/1 12/11 37/8
56/16
**unilateral [1]** 37/12
**UNITED [7]** 1/1 1/15 59/8 60/5 60/6
60/9 60/13
**unnecessary [2]** 16/5 37/14
**unrealistic [1]** 31/20
**unsolicited [1]** 15/14
**until [6]** 8/23 17/13 30/14 30/21
45/10 46/17
**up [42]** 14/11 15/17 16/9 18/19
19/25 21/11 24/7 25/25 26/2 27/14
27/24 28/5 28/7 28/7 28/8 28/10
28/14 28/18 28/22 30/7 35/4 38/4
38/7 38/15 38/17 38/23 39/6 39/7
39/7 39/9 39/9 39/16 41/25 43/7 43/7
43/20 51/22 52/6 52/9 55/19 57/15
57/21
**upcoming [1]** 56/18
**upon [29]** 5/7 7/10 10/21 14/16 16/2
16/8 17/9 17/21 19/25 20/6 20/12
23/15 23/19 24/17 25/4 25/7 26/5
27/18 28/17 30/19 45/16 45/16 52/14
53/1 53/6 54/16 56/23 57/6 57/12

**ups [6]** 24/17 26/4 26/9 27/2 31/10
52/4
**us [12]** 7/17 18/6 18/14 26/21 26/22
28/25 29/20 29/21 29/22 30/3 46/12
58/4
**use [3]** 32/25 35/18 35/19
**used [3]** 14/17 33/5 43/8
**uses [1]** 44/17
**using [2]** 1/24 47/3
**usual [2]** 8/16 8/19
**utilization [1]** 21/11
**utilized [1]** 14/23

**V**

**vacating [1]** 12/21
**valid [14]** 15/17 25/14 25/21 34/2
34/10 37/18 48/4 48/8 50/7 51/4
52/11 52/14 52/18 53/25
**validate [7]** 20/21 21/18 21/19 21/20
21/23 22/8 29/17
**validation [5]** 20/17 21/13 30/1 32/3
36/9
**validity [8]** 22/7 31/6 35/14 36/21
38/10 48/3 50/25 52/10
**variety [2]** 22/18 23/3
**VARNER [3]** 2/15 5/3 5/5
**vast [2]** 24/6 42/7
**venting [1]** 34/24
**verification [6]** 20/18 21/1 21/13
29/25 32/3 36/9
**very [13]** 8/5 8/24 11/4 15/12 23/14
23/22 26/21 42/10 44/3 44/4 45/17
50/20 57/13
**via [2]** 1/23 44/19
**Videoconference [1]** 1/14
**view [6]** 9/3 11/11 31/11 39/10 45/18
49/13
**vs [2]** 1/6 4/6

**W**

**Wabash [1]** 2/13
**wait [1]** 58/25
**waited [1]** 29/3
**waiting [1]** 18/3
**Walmart [5]** 41/15 41/17 42/18
42/21 42/22
**Wanca [1]** 2/9
**want [22]** 21/8 21/15 21/17 27/21
29/21 30/11 30/12 32/7 32/24 34/5
40/7 42/1 43/9 45/13 45/24 46/14
47/18 48/24 52/19 54/3 55/22 57/15
**wanted [13]** 5/1 7/13 8/10 12/7
16/10 32/23 34/21 45/9 45/9 46/8
56/5 58/22 58/24
**wants [1]** 47/1
**warranted [1]** 51/7
**was [54]** 5/2 6/3 6/13 6/14 6/15 6/15
7/14 9/20 10/8 10/8 10/10 10/10
10/13 10/13 10/25 11/1 11/2 12/9
12/10 12/13 12/14 12/25 13/4 13/6

13/21 15/6 20/24 26/2 26/3 26/3 28/17
29/4 30/7 30/8 30/23 30/25 31/1 31/3
31/24 33/3 34/22 35/8 39/23 40/9
40/10 40/20 43/10 44/14 46/12 46/18
46/18 47/3 48/9 53/9 58/23
**wasn't [7]** 9/22 10/12 10/13 27/17
27/17 49/6 49/16
**Watkins [1]** 2/12
**way [18]** 6/21 7/22 8/18 8/25 9/2
9/24 12/1 22/8 25/5 26/5 33/24 42/2
43/17 43/22 44/1 46/18 52/11 52/17
**ways [2]** 38/22 43/20
**we [185]**
**we're [1]** 38/16
**weaknesses [1]** 19/20
**website [1]** 44/16
**welcome [1]** 44/11
**well [39]** 7/5 7/12 8/5 9/12 9/21 12/4
12/8 14/8 14/9 15/23 16/2 18/19
19/21 22/15 23/13 27/8 27/12 33/14
34/7 34/15 36/18 38/9 38/11 39/3
40/19 40/24 42/21 43/11 44/9 44/16
45/12 46/23 47/23 53/21 54/19 55/10
55/14 55/25 58/20
**went [3]** 13/5 31/9 39/24
**were [44]** 6/6 8/11 8/16 8/19 9/13
9/13 9/14 9/15 9/18 9/24 10/11 10/24
10/25 13/24 17/12 18/10 18/12 18/12
19/18 21/14 30/6 30/9 32/10 38/1
38/22 38/23 40/2 41/8 41/8 42/8
44/25 45/1 46/15 47/3 48/16 49/7
49/17 50/8 51/9 51/21 52/6 52/8 54/2
55/15
**weren't [2]** 9/15 42/10
**what [66]**
**what's [5]** 9/4 9/14 41/10 43/15 53/1
**whatever [4]** 33/20 33/22 51/14
57/16
**whatsoever [3]** 8/9 11/10 36/1
**when [9]** 8/20 10/13 23/16 28/1
28/22 30/4 33/6 33/11 49/22
**where [18]** 8/18 9/10 11/19 14/24
23/16 23/18 24/19 24/21 24/23 25/1
25/3 30/24 32/11 33/25 34/20 45/18
54/3 56/20
**wherever [1]** 42/1
**whether [26]** 10/3 19/7 19/11 21/25
25/13 25/25 28/17 36/16 37/15 37/16
45/4 45/5 45/20 48/3 48/4 48/8 48/16
48/17 49/21 50/7 52/14 52/15 54/5
54/11 56/24 57/24
**which [29]** 8/16 9/14 9/15 10/11
15/1 16/6 20/9 20/16 23/9 25/1 26/13
29/11 30/24 31/5 31/24 32/3 37/14
39/8 41/25 42/13 42/18 44/22 49/10
49/11 49/25 52/22 54/6 55/19 56/20
**while [2]** 25/21 28/13
**who [28]** 5/22 6/19 7/3 11/16 11/21
15/11 15/13 15/16 16/23 20/13 24/7

## W

**who... [17]**  27/6 30/13 36/1 36/10
39/6 42/11 42/12 45/18 46/25 47/2
47/3 47/16 48/1 49/12 50/13 50/16
58/15
**whole [1]**  19/15
**why [21]**  7/23 8/2 8/13 9/11 10/13
10/21 18/12 20/11 21/4 21/20 23/13
25/21 27/5 27/8 27/9 29/15 38/8
38/21 44/22 52/22 58/9
**will [26]**  5/17 11/22 15/4 25/22
28/10 30/18 30/18 32/15 35/6 37/2
37/6 37/9 37/23 41/16 51/11 51/13
52/23 53/6 54/1 56/10 56/13 57/1
58/20 58/25 59/1 59/5
**wish [1]**  26/15
**within [2]**  53/13 59/1
**without [4]**  36/1 50/7 53/23 58/1
**won't [1]**  30/21
**wonder [1]**  58/5
**word [3]**  14/23 33/6 52/11
**words [3]**  24/1 47/18 47/22
**work [2]**  25/6 54/23
**worked [1]**  25/2
**working [2]**  4/24 43/19
**would [53]**  6/12 6/16 6/22 7/9 8/9
11/24 12/1 12/1 12/8 12/20 13/1 16/7
18/7 20/1 20/5 20/13 20/18 20/20
21/1 21/19 22/6 22/12 22/12 23/10
23/21 27/5 27/8 27/24 28/14 29/3
29/6 31/2 31/19 32/10 35/24 36/7
39/11 40/23 41/4 43/20 43/24 43/25
44/10 44/23 46/13 48/10 48/14 49/14
49/17 51/9 58/2 58/4 58/14
**wouldn't [4]**  7/21 27/9 29/22 49/14
**write [2]**  24/12 31/17
**writing [1]**  58/22
**written [6]**  16/9 16/11 27/6 27/11
27/18 46/24
**wrong [6]**  10/7 27/16 27/17 27/22
51/17 57/23
**wrote [3]**  8/20 23/2 27/16

## Y

**Yeah [1]**  46/8
**year [1]**  8/23
**years [7]**  21/24 22/19 32/24 34/20
34/21 35/6 39/20
**yes [18]**  5/4 5/25 10/11 13/10 17/20
27/9 29/25 32/9 40/3 41/13 42/22
43/5 43/10 46/2 47/8 48/18 48/25
49/5
**yet [3]**  5/16 21/2 44/4
**you [150]**
**your [104]**

## Z

**Zoom [2]**  1/14 56/10