**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| CIN-Q AUTOMOBILES, INC., <u>et al.</u>,       Plaintiffs, <br><br> v. <br><br> BUCCANEERS LIMITED PARTNERSHIP and JOHN DOES 1-10,       Defendants, <br> ─────────────────── <br> TECHNOLOGY TRAINING ASSOCIATES, INC., <u>et al.</u>,       Intervenors. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> **Case No. 8:13-cv-01592-AEP** <br><br> **Magistrate Judge Anthony E. Porcelli** |

**MOTION AND INCORPORATED MEMORANDUM OF LAW
OF BTL TO DISMISS CLASS CLAIMS FOR LACK OF ARTICLE III
STANDING AND TO DECERTIFY THE SETTLEMENT CLASS**

Date:  December 14, 2023

Mark S. Mester
  (admitted *pro hac vice*)
Robert C. Collins III
  (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  mark.mester@lw.com
       robert.collins@lw.com

Joseph H. Varner, III
  (Bar No. 394904)
HOLLAND & KNIGHT LLP
100 North Tampa Street, Suite 4100
Tampa, Florida 33602-3644
Telephone:  (813) 227-8500
Facsimile:  (813) 229-0134
Email:  joe.varner@hklaw.com

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND.................................................................................4

    A.    The Settlement Agreement ........................................................................4

    B.    Notice And Administration ........................................................................6

    C.    Discussions With Class Counsel ...............................................................8

III.  ARGUMENT......................................................................................................11

    A.    <u>TransUnion v. Ramirez</u> ..........................................................................11

    B.    <u>Drazen v. Pinto</u> ......................................................................................12

        1.    The Panel Opinion ......................................................................14

        2.    The <u>En Banc</u> Opinion.................................................................14

    C.    <u>Amerifactors</u>...........................................................................................15

    D.    <u>Scoma Chiropractic v. National Spine</u> .................................................17

    E.    The <u>En Banc</u> Opinion In <u>Drazen</u> Does Not Solve The Article III
        Problem In This Litigation .......................................................................18

    F.    Article III Would Not Be Satisfied Even If Faxes Received
        Through Online Services Were Covered By The TCPA ...................20

    G.    Application Of The Foregoing Decisions To This Case.....................21

IV.  CONCLUSION..................................................................................................23

LOCAL RULE 3.01(g) CERTIFICATION...........................................................24

LOCAL RULE 3.01(h) REQUEST FOR EVIDENTIARY HEARING.................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

Advanced Rehab v. Amedisys Holding,
  2020 WL 4937790 (W.D. Tenn. 2020)...................................................16

Avritt v. Reliastar Life Ins.,
  615 F.3d 1023 (8th Cir. 2010).........................................................2

Bell Atl. v. AT&T,
  339 F.3d 294 (5th Cir. 2003)........................................................13

Career Counseling v. Amerifactors,
  2021 WL 3022677 (D.S.C. 2021) .......................................................18

Cherry v. Dometic,
  986 F.3d 1296 (11th Cir. 2021).................................................... 5, 18

Chevron v. Natural Res. Def. Council,
  467 U.S. 837 (1984) ............................................................ 16, 18

Citizens United v. FEC,
  558 U.S. 310 (2010)...................................................................21

Daisy v. Mobile Mini,
  489 F. Supp. 3d 1287 (M.D. Fla. 2020) ......................................... 16, 19

Denney v. Deutsche Bank,
  443 F.3d 253 (2d Cir. 2006)........................................................13

Doe v. Tangipahoa Parish Sch. Bd.,
  494 F.3d 494 (5th Cir. 2007)........................................................10

Douglas Phillip Brust, D.C., P.C. v. Opensided MRI,
  343 F.R.D. 581 (E.D. Mo. 2023) .....................................................16

Drazen v. Pinto,
  41 F.4th 1354 (11th Cir. 2022), <u>vacated</u> <u>on other</u> <u>grounds</u>,
  61 F.4th 1297 (11th Cir. 2023) ................................. 1, 2, 12, 13, 14, 21

Drazen v. Pinto,
  61 F.4th 1297 (11th Cir. 2023) ........................................................15

Drazen v. Pinto,
  74 F.4th 1336 (11th Cir. 2023) ................................. 2, 15, 18, 19, 20, 22

**Page(s)**

Gadelhak v. AT&T,
    950 F.3d 458 (7th Cir. 2020)...................................................................15

Griffin v. Dugger,
    823 F.2d 1476 (11th Cir. 1987)...............................................................4

Halvorson v. Auto-Owners Ins.,
    718 F.3d 773 (8th Cir. 2013)..................................................................13

Heimmermann v. First Union Mortg.,
    305 F.3d 1257 (11th Cir. 2002)..............................................................17

In re Amerifactors,
    34 F.C.C.R. 11950 (FCC 2019) ................................... 3, 13, 15, 16, 17, 18, 19, 20

In re Asacol Antitrust Litig.,
    907 F.3d 42 (1st Cir. 2018) ...................................................................13

In re Hydrogen Peroxide,
    552 F.3d 305 (3d Cir. 2008)..................................................................13

In the Matter of J. Ryerson & Son,
    35 F.C.C.R. 9474 (FCC 2020) ...........................................................5, 6

Janus v. AFSCME,
    138 S. Ct. 2448 (2018) ..........................................................................22

Licari Family Chiro. v. Eclinical Works,
    2021 WL 4506405 (M.D. Fla. 2021) ............................................ 16, 17

McCarrell v. Offers.com,
    2019 WL 3220009 (W.D. Tex. 2019), report and recommendation
    adopted, 2019 WL 6048012 (W.D. Tex. 2019) ....................................19

Messner v. Northshore Univ. HealthSystem,
    669 F.3d 802 (7th Cir. 2012)..................................................................13

Nat'l Parks Conserv. Ass'n v. Norton,
    324 F.3d 1229 (11th Cir. 2003)...............................................................4

Palm Beach Golf v. Sarris,
    781 F.3d 1245 (11th Cir. 2015).......................................................... 4, 16

Prado v. Bush,
    221 F.3d 1266 (11th Cir. 2000)..............................................................13

**Page(s)**

Pucillo v. Nat'l Credit Sys.,
   66 F.4th 634 (7th Cir. 2023) ...................................................................15

Salcedo v. Hanna,
   936 F.3d 1162 (11th Cir. 2019)........................................ 2, 14, 15, 18, 19, 21, 22

Scoma Chiro. v. Dental Equities,
   2021 WL 6105590 (M.D. Fla. 2021) ............................................. 16, 22

Scoma Chiro. v. Dental Equities,
   2023 WL 8437706 (M.D. Fla. 2023) ...................................................18

Scoma Chiro. v. Nat'l Spine,
   2022 WL 16695130 (M.D. Fla. 2022) ........................................ 5, 6, 9, 16, 17, 18

Scoma Chiro. v. Nat'l Spine,
   Appeal No. 23-13087 (11th Cir., filed Sept. 21, 2023) ........................................18

Sharfman v. Infucare,
   2022 WL 18926792 (M.D. Fla. 2022), report and recommendation
   adopted, 2023 WL 2624754 (M.D. Fla. 2023) ......................................................22

Siqueiros v. General Motors,
   2021 WL 4061708 (N.D. Cal. 2021) ...................................................22

Spokeo v. Robins,
   578 U.S. 330 (2016) .................................................................. 12, 20, 21

Stacy v. Dollar Tree,
   274 F. Supp. 3d 1355 (S.D. Fla. 2017) ...................................................20

Stearns v. Ticketmaster,
   655 F.3d 1013 (9th Cir. 2011)......................................................... 2, 12

TransUnion v. Ramirez,
   141 S.Ct. 2190 (2021) .................................................2, 4, 11, 12, 13, 14, 15, 21

True Health Chiro. v. McKesson,
   2020 WL 7664484 (N.D. Cal. 2020) ...................................................16

True Health Chiro. v. McKesson,
   2021 WL 4818945 (N.D. Cal. 2021) ...................................................18

Villarino v. Pacesetter Personnel Serv.,
   2023 WL 3600216 (S.D. Fla. 2023) ...................................................14

**Page(s)**

## STATUTES

Deceptive Mail Prevention and Enforcement Act,
Pub. L. 106-168, 113 Stat. 1806, codified at 39 U.S.C. § 3001 ...........................21

## OTHER AUTHORITIES

Legal Info. Inst., <u>I am tired of receiving spam emails.  How do I file
a CAN-SPAM Suit?</u>................................................................................................21

Sabra-Anne Kelin, <u>State Regulation of Unsolicited Commercial Email</u>,
16 Berk. Tech. L.J. 435 (2001) ............................................................................21

## RULES

Fed. R. Civ. P. 12 ....................................................................................................1

Fed. R. Civ. P. 23 ....................................................................................................1

Pursuant to Fed. R. Civ. P. 12(b)(1) and 23(c)(1)(C), Defendant Buccaneers Team LLC ("BTL") hereby moves to dismiss the class claim for lack of Article III standing and to decertify the Settlement Class, because it is simply not possible to determine which Settlement Class Members lack Article III standing due to the fact that they received faxes as emails through online services.[1]  In support of this motion, BTL states as follows:

## I.    INTRODUCTION

Roughly one year _after_ the Parties executed the Settlement Agreement, a panel of the Eleventh Circuit ruled that _all_ absent members of a settlement class seeking monetary relief must have Article III standing.  See Drazen v. Pinto, 41 F.4th 1354, 1360 (11th Cir. 2022), vacated on other grounds, 61 F.4th 1297 (11th Cir. 2023) (granting en banc petition to address question whether recipient of only one text has standing).  In reaching that conclusion, the panel in Drazen further noted that any class definition (even in the settlement context) that includes members who lack Article III standing (as the one in this case plainly does) "cannot stand."  Drazen, 41 F.4th at 1362.

The definition of the settlement class in Drazen that led to the district court's final approval of the settlement included persons who had only received one unsolicited text message from the defendant.  See Drazen, 41 F.4th at 1362-63. Under then-existing Eleventh Circuit precedent, however, recipients of only one text lacked standing under Article III, meaning the definition of the settlement class was

---

[1] Capitalized terms have the meaning ascribed to them in the Settlement Agreement filed with Plaintiffs' motion for preliminary approval.  See Settlement Agt. (Dkt. 324-1).  In addition, all emphasis is supplied, and all internal citations, quotations and footnotes are omitted.

defective.  See id. at 1360 (citing Salcedo v. Hanna, 936 F.3d 1162, 1172 (11th Cir. 2019)).

The Eleventh Circuit eventually resolved the problem with the class definition in Drazen in an en banc opinion by overruling existing circuit precedent (i.e., Salcedo), such that recipients of one text now have standing in the Eleventh Circuit. See Drazen v. Pinto, 74 F.4th 1336, 1343-46 (11th Cir. 2023).  But the principles regarding standing, settlement classes and class definitions noted by the original panel in Drazen animated the en banc opinion and were themselves the result of an intervening decision of the United States Supreme Court.

Indeed, the panel opinion in Drazen was directly based on the Supreme Court's ruling from a year before in TransUnion that all absent members of a class seeking monetary relief must each have Article III standing.  See TransUnion v. Ramirez, 141 S.Ct. 2190, 2204-05, 2208 (2021); see also Drazen, 41 F.4th at 1360-1362 (citing and discussing TransUnion).  The ruling in TransUnion resolved a split in the circuits, with the majority view previously being that only named plaintiffs needed to have Article III standing in the class context and that absent class members did not.  See, e.g., Stearns v. Ticketmaster, 655 F.3d 1013, 1021 (9th Cir. 2011) ("At least one named plaintiff must satisfy the actual injury component of standing in order to seek relief on behalf of himself or the class.").  But see Avritt v. Reliastar Life Ins., 615 F.3d 1023, 1034 (8th Cir. 2010) (articulating the then-minority rule that "a named plaintiff cannot represent a class of persons who lack the ability to bring a suit themselves").

As applied to this litigation, these rulings, along with the prior declaratory ruling of the Federal Communications Commission ("FCC") in Amerifactors and

related decisions, directly call into question the Article III standing of many Settlement Class Members as well as the more basic question of whether it is possible at this juncture and over 13 years since the faxes in question were allegedly sent to determine which Settlement Class Members received faxes through online services and which did not.[2]  Amerifactors makes clear that faxes received as emails through an online service like eFax, WestFax or Nextiva are not within the scope of the TCPA, but even if they were, they would be of a different "kind" under existing Eleventh Circuit precedent from faxes received on a traditional fax machine, such that Article III standing would still be lacking for recipients of faxes as emails.

The Parties, in turn, agree that the definition of the Settlement Class includes persons and entities that received faxes through online services, and they also agree that the only way to determine at this point whether faxes were received through online services would be to inspect each individual fax machine of persons and entities to which faxes were allegedly sent, which no one believes is remotely possible at this juncture.  The Parties disagree, however, over what the legal and other implications are of what is not in dispute.

We have made a concerted effort since early July to address Article III with Class Counsel but have reached an impasse, principally due to the refusal on the part

---

[2] Amerifactors is a declaratory ruling issued by the Consumer and Governmental Affairs Bureau of the FCC interpreting the relevant provisions of the Telephone Consumer Protection Act ("TCPA").  Notably, comments were submitted to the FCC by Robert Biggerstaff and the Wanca firm (on behalf of Career Counseling) in advance of the decision in Amerifactors, but the positions urged by Mr. Biggerstaff and the Wanca firm were summarily rejected in the decision itself.  See In re Amerifactors, 34 F.C.C.R. 11950, 11953-54, n.32, n.34 (FCC 2019) (disagreeing with comments from Mr. Biggerstaff and the Wanca firm and finding that "online fax services differ in critical ways from the traditional faxes sent to telephone facsimile machines Congress addressed in the TCPA").

of Class Counsel to fully engage on the issue.[3]  Moreover, Plaintiffs and their counsel (somewhat surprisingly) mention Article III only in passing in their recently-filed motion for final approval of the Settlement, even though Plaintiffs plainly have the burden of establishing Article III standing for all class members.  <u>See</u> Pls.' Mot. for Final Approval (Dkt. 482); <u>TransUnion</u>, 141 S.Ct. at 2207-08 (addressing burden). With the Fairness Hearing approaching, however, we thought it best to raise the standing issue with the Court now, especially since it is a threshold issue that goes to the Court's subject-matter jurisdiction as well as the underlying feasibility of class treatment and the ongoing approval process itself.[4]

## II.   <u>FACTUAL BACKGROUND</u>

The factual background for this motion is set forth below.  <u>See</u> disc. <u>infra</u> at 4-11.  Where feasible, we refer to prior submissions in order to conserve space and minimize the burden on the Court.  <u>See</u> <u>id.</u>

### A.   The Settlement Agreement

After eight months of mediation overseen by Magistrate Judge Sansone, the Settlement Agreement was executed by the Parties on August 27, 2021.  <u>See</u> Settlement Agt. (Dkt. 324-1).  As the Settlement Agreement itself makes clear, however, the Parties were aware during negotiations of potential issues relating to the ascertainability of the Settlement Class, including the viability of a reverse

---

[3] We also mentioned the issue of standing in our June 16, 2023 submission, and we raised the issue of online fax services in our February 18, 2022 submission as well as earlier.  <u>See, e.g.</u>, BTL's Mot. to Compel Compliance (Dkt. 458) at 31-32; Submission of BTL re Biggerstaff List (Dkt. 341) at 15-17.

[4] Indeed, as the Eleventh Circuit has instructed, "any analysis of class certification must <u>begin</u> with the issue of standing."  <u>See</u> <u>Griffin v. Dugger</u>, 823 F.2d 1476, 1482 (11th Cir. 1987).  Or as the Eleventh Circuit noted in <u>Sarris</u>, Article III standing "'must be addressed as a threshold matter' <u>prior</u> to the merits of [the] underlying claims."  <u>Palm Beach Golf v. Sarris</u>, 781 F.3d 1245, 1250 (11th Cir. 2015) (quoting <u>Nat'l Parks Conserv. Ass'n v. Norton</u>, 324 F.3d 1229, 1242 (11th Cir. 2003)).

4

lookup under the circumstances presented here as well as the possible need for alternative forms of notice to Settlement Class Members.  See id. § VII.G (addressing the possibility that "the identity and mailing address of absent Class Members cannot be reasonably determined in a manner consistent with existing requirements for notice in the class context from the reverse-lookup process").

Most of these issues were a result of the fact that the faxes in question were allegedly sent over 13 years ago, together with the fact Class Counsel made no effort before the Settlement Agreement was executed to ascertain the identities of the members of the Settlement Class, instead relying on the untested speculation of Mr. Biggerstaff that "[t]he task of obtaining the name and address data of the holders of the fax numbers in this case is both quantitatively and qualitatively manageable." See Suppl. Biggerstaff Rpt. (Dkt. 207-9) ¶ 13.[5]  Nor did Class Counsel or Mr. Biggerstaff apparently make any effort to identify whether any Settlement Class Members may have received the faxes at issue through an online fax service.  See Second Biggerstaff Rpt. (Dkt. 210-2) at passim (failing to analyze at all the impact of online fax services).[6]

---

[5] If the identities of the members of the Settlement Class had been ascertained shortly after this litigation commenced (when it would have been possible to obtain from telephone carriers the identities of subscribers to each number on the Biggerstaff list), then at least the Parties would know who was in the Settlement Class, and the Settlement Class would have been ascertainable (putting aside other issues with the Biggerstaff list). See, e.g., Cherry v. Dometic, 986 F.3d 1296, 1303 (11th Cir. 2021) ("A class is 'clearly ascertainable'" only if "its membership is 'capable of being' determined.") (citing Webster's New Int'l Dict. (3d ed. 1993)).  As Judge Badalamenti's decision in Scoma makes clear, however, it is often not possible to determine whether faxes were received through an online service even in cases where the identities of class members are readily ascertainable.  See Scoma Chiro. v. Nat'l Spine, 2022 WL 16695130, *12 (M.D. Fla. 2022) (concluding that consistent with Cherry, plaintiff had "failed to establish that, through its own proposed subpoena process, it is administratively feasible to identify users of stand-alone fax machines").

[6] As noted, during the notice and comment period on this issue, Mr. Biggerstaff submitted comments to the FCC, arguing all faxes sent to online fax services should be covered by the TCPA. See In the Matter of J. Ryerson & Son, 35 F.C.C.R. 9474, 9476-77 (FCC 2020) ("Commenter

As has now been made clear, however, it is no longer feasible to have a reliable reverse lookup performed in this case, given the considerable passage of time.   See disc. infra at 6-8; see also generally, e.g., BTL's Mot. to Compel Compliance (Dkt. 458); BTL's Obj. to Final Claims Report (Dkt. 490).  Moreover, the ability in this case to identify what persons and entities are actually in the Settlement Class is dubious at best, let alone which persons and entities received faxes as emails through online services.[7]  See disc. infra at 17-18.

## B.   Notice And Administration

The concerns that animated inclusion of the foregoing provisions in the Settlement Agreement have been fully borne out (and then some) in the ongoing process of trying to ascertain the identities of Settlement Class Members, provide notice to them and then adjudicate claims.  See disc. supra at 4-6.  The issues that

---

Biggerstaff argues that all faxes are sent digitally, and can be received or sent using a computer, but the message in question should be considered a fax and not an email because '[w]hen someone uploads a list of 10-digit telephone numbers and a fax image to a fax broadcaster's website, they are undoubtedly sending faxes as a result of their actions even though they used a web browser to start the process.'").  That view, however, was conclusively rejected by the FCC, though it may explain to a degree why Mr. Biggerstaff was unconcerned in this case with the presence on his list of many numbers associated with online services.  See id. at 9478 ("We disagree with commenters who argue that the TCPA should apply because it should protect consumers from transmissions converted to email.").

[7] The ability to identify by name and address Settlement Class Members is only a precondition for the necessary determinations called for by Article III with respect to the use of online services, as addressed more fully below.  See disc. infra at 11-16.  If it is simply not feasible to identify who is in the Settlement Class (as we believe is the case here), however, then it is scarcely feasible to determine whether that person or entity used an online service for the receipt of faxes, and in this limited sense, the issues of Article III standing and ascertainability merge (i.e., if you cannot know the identity of each member of a settlement class, how can you possibly know if each member satisfies Article III?).  See Declaration of Ken Sponsler ("Sponsler Decl."), Ex. 1 hereto, ¶¶ 14, 18.  But the converse is by no means necessarily the case.  It is entirely possible that it would be infeasible or utterly unmanageable to determine whether members of a settlement class utilized online services if the identities of those members were known or readily ascertainable, even in cases where the events in question did not occur over a decade ago.  See, e.g., disc. infra at 17-18, 21-22; see also, e.g., Scoma, 2022 WL 16695130, *10-12 (addressing feasibility of identifying recipients of faxes sent to online services only a few months before suit was filed).

have arisen have been extensively addressed by BTL in prior submissions, which for reference are incorporated herein.  See, e.g., BTL's Submission re Ascertainability (Dkt. 365); BTL's Mot. to Address Reverse Lookups (Dkt. 381); BTL's Mot. to Compel Compliance (Dkt. 458); BTL's Obj. (Dkt. 486); BTL's Obj. to Cin-Q Claim (Dkt. 489); BTL's Obj. to Final Claims Report (Dkt. 490).

For purposes of this motion, however, the most salient points are as follows. First, at least 38% of the members of the Settlement Class could not be identified at all through either of two separate reverse lookups, meaning (a) there is no identifying information whatsoever for the holders of 38% of the telephone numbers on the Biggerstaff list and (b) there is no way to even contact any of those Settlement Class Members, let alone confirm whether they did or did not use an online service for the receipt of faxes in 2009 and 2010.  See Sponsler Decl. (Dkt. 381-4) ¶ 16.  Second, for another 31% of the matches on one or both reverse lookups, there is a conflict in terms of who held the number in question between July 2009 and June 2010, inasmuch as more than one person or entity matched on a single number.  See id. ¶ 20.  Third, with few (if any) exceptions, there is no direct evidence that any Settlement Class Member held a number on the Biggerstaff list between July 2009 and June 2010, which is the only way they would actually qualify as Settlement Class Members.  See Roach Decl. (Dkt. 442) ¶ 3; Parks Decl. (Dkt. 398-2) ¶ 6 (declarants from LexisNexis and TransUnion conceding that absent independent verification and validation, the companies' reverse lookup methods cannot be used to pinpoint who held a particular telephone number at any point in time).  Finally, and perhaps most fundamentally for purposes of this motion, there is nothing at all

in the record to indicate which Settlement Class Members would have received faxes through online services and thus lack standing under Article III.[8]

## C.   Discussions With Class Counsel

We first raised the Article III issue with Class Counsel in early July of this year in light of the panel opinion in <u>Drazen</u> and the anticipated issuance of the <u>en banc</u> opinion by the Eleventh Circuit.  <u>See</u> July 7, 2023 Email fr. M. Mester, Ex. 3 hereto.  We, in turn, initially posed to Class Counsel the following three questions:

1. Is it Class Counsel's position that the definition of the Settlement Class in the Settlement Agreement excludes faxes purportedly sent on behalf of BTL that were sent through an online service?

2. Is it Class Counsel's position that it is possible at this point in time, based on information available to the Parties, to ascertain which Settlement Class Members received faxes purportedly sent on behalf of BTL on stand-alone fax machines versus through online services?

3. If Class Counsel answers Question No. 2 in the affirmative, please identify the telephone numbers on the Biggerstaff list that you contend received faxes through online services.

---

[8] One exception would be the 781 fax numbers claimed by Astro Companies, LLC ("Astro"), as well as the 63 fax numbers that the Settlement Administrator identified were the subject of claims asserted by other potential online services.  <u>See</u> Aug. 21, 2023 Email fr. O. Castillejos, Ex. 2 hereto (listing Epiq's count of 63 potential fax service providers); Slater Decl. (Dkt. 467-1) ¶¶ 34-35 (noting the 781 faxes numbers claimed by Astro, an online service provider).  Taken together, however, these claims represent a sizable percentage of the total number of faxes for which claims were made once the false claims by certain related claimant entities (identified in BTL's Objection (Dkt. 486)) are taken out of the equation.  <u>See also</u> Sponsler Decl., Ex. 1, ¶ 19 (estimating that upwards of 40% of Settlement Class Members could have received faxes as emails through online services); <u>see also</u> BTL's Obj. (Dkt. 486) at 5-6 (noting that 99.9% of the 13,155 numbers claimed by certain related claimant entities did <u>not</u> match the Biggerstaff list).  As addressed in similar submissions, however, entities like Astro do <u>not</u> have standing to recover money damages under the TCPA not only because of Article III and the issues addressed in this motion, but also because Astro's customers and <u>not</u> Astro itself would have standing if faxes received as emails through online services otherwise qualified under the TCPA (which they do <u>not</u>).  <u>See</u> BTL's Mot. to Compel Compliance (Dkt 458) at 31-32; BTL's Obj. (Dkt. 486) at 16-17.  Moreover, there is a big leap between identifying online services that may have held numbers for account holders to which faxes were purportedly sent <u>and</u> identifying the holders of those accounts at any time, let alone the <u>holders</u> of accounts more than 13 years ago for only <u>11</u> months between July of <u>2009</u> and June of <u>2010</u>.

Id.  We received no response for weeks from Class Counsel, however, so we raised these issues again roughly a month later.  See Aug. 2, 2023 Email fr. G. Slater, Ex. 4 hereto.

A meet and confer was finally held on August 15, 2023 addressing these and a number of unrelated issues.  See Declaration of Robert C. Collins III ("Collins Decl."), Ex. 5 hereto, ¶ 6.  In terms of Article III, however, and the three questions posed by BTL in early July, Class Counsel openly acknowledged the following. First, the Settlement Class as defined in the Settlement Agreement plainly includes persons and entities that received faxes through an online service.[9]  See id. ¶ 8; see also Aug. 15, 2023 Email fr. G. Slater, Ex. 7 hereto.

Second, Class Counsel's position is that the Parties agreed to the Settlement Agreement in order to somehow avoid the Article III issue and the question of who received faxes through online services.  See Collins Decl., Ex. 5, ¶ 9; see also Aug. 15, 2023 Email fr. G. Slater, Ex. 7.  When we asked for any evidence that would

---

[9] This is really indisputable, as Ken Sponsler made clear in February of 2022.  See Sponsler Decl. (Dkt. 341-2) ¶ 40.  For all the reasons noted herein, it is not possible to specify the exact number of Settlement Class Members who received faxes from online services.  See Sponsler Decl., Ex. 1, ¶¶ 14, 18.  A conservative estimate, however, would be that at least 40% of the Settlement Class did, though the actual number could be much higher.  See id. ¶ 19.  Nor is this simply a theoretical concern.  Holland & Knight, BTL's own counsel in this case, held in 2009-2010 at least 181 fax numbers that appeared on the Biggerstaff list.  See Declaration of Matt McKinley ("McKinley Decl."), Ex. 6 hereto, ¶ 4.  During this timeframe, however, Holland & Knight utilized an online fax service provider called RightFax.  See id. ¶ 2; see also Sponsler Decl., Ex. 1, ¶ 11.  Use of RightFax ensured that any incoming faxes sent to the 181 fax numbers held by Holland & Knight were delivered to an email inbox, rather than a fax machine that would print incoming faxes.  See McKinley Decl., Ex. 6, ¶ 3.  Thus, any faxes received during the 2009-2010 time period would have been received by email, rather than on a traditional fax machine.  See id. ¶ 5.  Receipt of any of these faxes (if they were indeed actually delivered), however, would not give rise to an injury sufficient to support Article III standing.  See disc. infra at 18-21.  But as discussed below, neither the reverse lookups nor any other sources available to the Parties or the Settlement Administrator are capable of differentiating at this late date between persons and entities like Holland & Knight that received faxes as emails through online services and persons and entities that received faxes on traditional fax machines.  See Scoma, 2022 WL 16695130, *12 (subpoenaing telephone carriers was unsuccessful in identifying users of standalone fax machines).

reflect such an agreement, however, <u>no</u> response was provided by Class Counsel nor have Class Counsel attempted to reconcile that position with the <u>explicit</u> raising of the issue of online faxes by BTL in 2022 and before. <u>See</u> Collins Decl., Ex. 5, ¶ 10. Likewise, Class Counsel have provided no response to the point made during and after the meet and confer that standing is simply not something that the Parties could in any event agree upon or stipulate to, since it obviously goes to subject-matter jurisdiction. <u>See</u> <u>id.</u> ¶ 12; <u>see also</u>, <u>e.g.</u>, <u>Doe v. Tangipahoa Parish Sch. Bd.</u>, 494 F.3d 494, 496 n.1 (5th Cir. 2007) (noting the indisputable principle that parties to litigation cannot simply stipulate to waive Article III standing in order to create subject-matter jurisdiction).

 <u>Third</u>, Class Counsel were wholly unable to identify the Settlement Class Members who received faxes through online services and agreed and acknowledged that at this juncture, the only possible way to determine who those Settlement Class Members are would be to inspect the stand-alone machines or other devices on which the faxes were allegedly received in 2009 and 2010. <u>See</u> Collins Decl., Ex. 5, ¶ 13; <u>see also</u> Aug. 15, 2023 Email fr. G. Slater, Ex. 7. Given that the faxes in question were allegedly sent over 13 years ago, however, it was agreed that this would not be feasible, and most importantly, it was further agreed that physical inspection of <u>each</u> machine or device on which a fax to a Settlement Class Member was allegedly received would be the <u>only</u> way to make this determination. <u>See</u> Collins Decl., Ex. 5, ¶ 13; <u>see also</u> Aug. 15, 2023 Email fr. G. Slater to G. Hara, Ex. 7.

We have repeatedly attempted to follow up with Class Counsel on these issues to no avail.[10]  <u>See</u> Collins Decl., Ex. 5, ¶ 14.  And recently, we were compelled to remind Class Counsel that we had begun the meet and confer process on Article III in early July but that they had not responded to long-standing requests from us on open issues regarding Article III.  <u>See</u> Oct. 16, 2023 Emails btwn. M. Mester and G. Hara, Ex. 9.  In spite of that reminder, however, they still have not done so.  <u>See</u> Collins Decl., Ex. 5, ¶ 14.

### III.  <u>ARGUMENT</u>

The Settlement Class as defined in the Settlement Agreement indisputably includes persons and entities that received faxes as emails through online services and thus lack Article III standing.  <u>See</u> Aug. 15, 2023 Email fr. G. Slater, Ex. 7; Sponsler Decl., Ex. 1, ¶ 15.  There is, however, no way to determine which Settlement Class Members do and do not have Article III standing, and therefore, the Settlement Class should be decertified and the class claim should be dismissed. <u>See</u> disc. <u>infra</u> at 20-22.

### A.  <u>TransUnion v. Ramirez</u>

On June 25, 2021, the Supreme Court issued its opinion in <u>TransUnion</u>.  <u>See</u> <u>TransUnion</u>, 141 S.Ct. at 2190.  As is relevant to this motion, the Supreme Court held in <u>TransUnion</u> that the rules of standing under Article III apply <u>per force</u> in the class context and that <u>each</u> member of a class seeking monetary damages must have Article III standing.  <u>See</u> <u>id.</u> at 2208.

---

[10] As a follow-up to the initial meet and confer, we confirmed in writing our understanding of Plaintiffs' position as articulated during the August 15, 2023 meet and confer.  <u>See</u> Aug. 15, 2023 Email fr. G. Slater, Ex. 7.  Class Counsel, however, <u>never</u> provided a response to our email either and have otherwise ignored requests to complete the meet and confer process.  <u>See</u>, <u>e.g.</u>, Aug. 9, 2023 Email fr. G. Hara, Ex. 8 hereto; Oct. 16, 2023 Emails btwn. M. Mester and G. Hara, Ex. 9 hereto.

In <u>TransUnion</u>, the Supreme Court reiterated its earlier holding in <u>Spokeo</u> that "an injury in law is not an injury in fact," such that the fact there has been a violation of some or another statute does <u>not</u> necessarily mean there is Article III standing. <u>See</u> <u>TransUnion</u>, 141 S.Ct. at 2205 (explaining that "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court"). Lastly, the Supreme Court reaffirmed in <u>TransUnion</u> that the burden of demonstrating standing remains at <u>all</u> times with plaintiffs and that the required degree of proof necessarily escalates as the litigation advances. <u>See</u> <u>id.</u> at 2207-08 (affirming that "[a]s the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing" and that the "plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation'").[11]

## B.   **Drazen v. Pinto**

<u>Transunion</u> did not directly address, however, the question of how Article III standing is to be addressed in the context of certification of a settlement class. <u>See</u> <u>TransUnion</u>, 141 S.Ct. at 2208 n.4 ("We do not here address the distinct question whether every class member must demonstrate standing <u>before</u> a court certifies a class."). Prior to <u>TransUnion</u>, many courts had held that <u>only</u> named plaintiffs were required to have standing and that standing did <u>not</u> need to be established for absent class members. <u>See</u>, <u>e.g.</u>, <u>Stearns</u>, 655 F.3d at 1021 ("At least one named plaintiff must satisfy the actual injury component of standing in order to seek relief on behalf

---

[11] The Supreme Court left open the question in <u>TransUnion</u> of whether establishing that all class members have Article III standing is a prerequisite to even certifying a class in the first place, but there is no question it must be established at the later stages of litigation. <u>See</u> <u>TransUnion</u>, 141 S.Ct. at 2208 n.4; <u>Drazen</u>, 41 F.4th at 1362 (noting that a definition of a settlement class that includes persons or entities without Article III standing is defective).

of himself or the class.").  And the rationale of these and many other decisions was extended to settlement classes, such that absent members of a settlement class did not need to demonstrate standing.  See, e.g., In re Asacol Antitrust Litig., 907 F.3d 42, 58 (1st Cir. 2018) (holding that not every class member is required to demonstrate standing when a settlement class is certified); Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 825 (7th Cir. 2012) (finding that a damages class may be certified for settlement where not "a great many" members of the class are uninjured).[12]  But the ruling in TransUnion highlighted the fact that all members of a class seeking monetary relief must satisfy Article III, not just the named plaintiffs, leaving the question of settlement classes to be addressed by lower courts based on the ruling in TransUnion.  See disc. infra at 14-15.[13]

---

[12] This Court's comments in its March 29, 2022 Order granting preliminary approval of the Settlement amply reflect the evolving nature of the issue of Article III standing in the class context. See Order (Dkt. 343) at 48-49.  Although Plaintiffs and their counsel made no mention of Article III in their preliminary approval motion apart from acknowledging the FCC's decision in Amerifactors, the Court plainly recognized the need to address Article III and made the following finding:

> "[T]he district court must determine that at least one named class representative has Article III standing to raise each class subclaim."

Id. at 48 (citing and quoting Prado v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000)).  Prado, however, was decided before TransUnion as well as the panel opinion in Drazen and before it was clear that all members of a settlement class seeking monetary relief must satisfy Article III.  See disc. infra at 14-15.

[13] Prior to TransUnion, however, a few circuits had in fact already adopted the position that every member of a class seeking monetary relief must satisfy Article III.  See, e.g., Denney v. Deutsche Bank, 443 F.3d 253, 264 (2d Cir. 2006) ("[N]o class may be certified that contains members lacking Article III standing."); In re Hydrogen Peroxide, 552 F.3d 305, 311 (3d Cir. 2008) (where "every class member" cannot prove at least individual injury through common proof, Rule 23(b)(3)'s predominance requirement is not met); Bell Atl. v. AT&T, 339 F.3d 294, 302 (5th Cir. 2003) ("[W]here fact of damage cannot be established for every class member through proof common to the class, the need to establish antitrust liability for individual class members defeats Rule 23(b)(3) predominance."); Halvorson v. Auto-Owners Ins., 718 F.3d 773, 779 (8th Cir. 2013) ("[A] named plaintiff cannot represent a class of persons who lack the ability to bring a suit themselves.").

13

### 1.    The Panel Opinion

Following issuance of the decision in <u>TransUnion</u>, the Eleventh Circuit took up the issue of settlement classes in <u>Drazen</u>.  <u>See</u> <u>Drazen</u>, 41 F.4th at 1359-63.  In <u>Drazen</u>, the district court had (as noted) certified a settlement class that included persons who had received only <u>one</u> text, and as discussed above, the Eleventh Circuit had previously ruled in <u>Salcedo</u> that recipients of only one text did <u>not</u> satisfy Article III.  <u>See</u> <u>id.</u> at 1360 (citing <u>Salcedo</u>, 936 F.3d at 1172).  The district court in <u>Drazen</u> nevertheless granted final approval of the settlement, and one of the objectors appealed.  <u>See</u> <u>id.</u> at 1357-58.

On appeal, however, a panel of the Eleventh Circuit reversed <u>sua</u> <u>sponte</u> on jurisdictional grounds, holding that per <u>TransUnion</u>, any settlement class must be limited to members with Article III standing:

> [W]hen a class seeks certification for the sole purpose of a damages settlement under Rule 23(e), the class definition <u>must</u> be limited to those individuals who have Article III standing.

<u>Drazen</u>, 41 F.4th at 1361.  The panel went on to hold that any class definition (even in the settlement context) that includes members who lack standing under Article III cannot stand:

> Any class definition that includes members who would never have standing under our precedent is a class definition that <u>cannot</u> <u>stand</u>.

<u>Id.</u> at 1362; <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Villarino v. Pacesetter Personnel Serv.</u>, 2023 WL 3600216, *1-2 (S.D. Fla. 2023) (granting motion to decertify where "it is simply impossible for the Article III standing requirement to be established on a class-wide basis").

### 2.    The <u>En</u> <u>Banc</u> Opinion

A motion for rehearing <u>en</u> <u>banc</u> was granted in <u>Drazen</u> on March 13, 2023 to address the question of whether the defect in the class definition could and should be addressed by overruling <u>Salcedo</u> and making one text alone sufficient for

purposes of Article III.  See Drazen v. Pinto, 61 F.4th 1297, 1298 (11th Cir. 2023). After further consideration of TransUnion and other intervening decisions in other circuits that had rejected the one-text rule, the Eleventh Circuit overruled its prior decision in Salcedo and concluded that one text alone was sufficient for purposes of Article III, thereby resolving the prior issue noted by the original panel with respect to the definition of the settlement class in Drazen.[14]  See Drazen, 74 F.4th at 1343-44.  In reaching its ruling, however, the Eleventh Circuit distinguished between "kind" and "degree," holding that differences in degree do not determine whether standing exists under Article III, whereas differences in kind do.[15]  See id. (citing Gadelhak v. AT&T, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.)); see also disc. infra at 18-21.

### C.  Amerifactors

On December 19, 2019, the FCC issued a declaratory ruling, holding that faxes received through online services such as WestFax, Nextiva or RingCentral are not subject to the TCPA.  See In re Amerifactors, 34 F.C.C.R. 11950, 11952 (FCC

---

[14] In other words, the overruling of Salcedo meant that all persons and entities encompassed by the class definition in Drazen now have Article III standing in the Eleventh Circuit.  See Drazen, 74 F.4th at 1346 ("[W]e hold that the receipt of an unwanted text message causes a concrete injury[.]").

[15] In its en banc opinion, the Eleventh Circuit utilized the approach of other circuits in distinguishing between "kind" and "degree" in assessing whether a single text message is a harm of a sufficiently close relationship to harms generally recognized in English and American courts to confer standing, ultimately concluding it was.  See Drazen, 74 F.4th at 1343-45.  A text and an email, however, are plainly of a different kind, and if there is any relevant comparison to the receipt of an email, it would be receiving a letter or postcard in the mail, though conventional mail is still much more intrusive than email.  Cf. Pucillo v. Nat'l Credit Sys., 66 F.4th 634, 638-42 (7th Cir. 2023) (receipt of two debt collection letters does not confer standing and is different in kind than receipt of text messages, because "postal mail is delivered to a mailbox without interrupting the recipient's seclusion").  No one, however, would credibly suggest that receiving a piece of mail is the sort of intrusion that would confer Article III standing or have been recognized as the basis for a claim under English or American law.  See id. at 641 ("Mail can be picked up when, if, and how often the recipient chooses, unlike a phone which is usually on one's person or close by throughout the day.").

2019) (holding that a fax sent as an email over the internet "is not a 'telephone facsimile machine' and is thus outside the scope of the [TCPA's] statutory prohibition").[16]

In contrast to a stand-alone fax machine, facsimiles sent through online services are received in the form of emails and can be handled by consumers like any email, whether by blocking the sender, ignoring the email entirely or simply deleting without printing.  See Amerifactors, 34 F.C.C.R. at 11953 ("Consumers can manage [messages sent through an online fax service] the same way they manage email by blocking senders or deleting incoming messages without printing them."). Moreover, faxes sent through online services do not burden the telephone lines of recipients or waste paper or ink.  See, e.g., Daisy v. Mobile Mini, 489 F. Supp. 3d 1287, 1297 (M.D. Fla. 2020).  Accordingly, faxes sent through online services do not implicate "the specific harms to consumers Congress sought to address in the TCPA."[17]  See id.

---

[16] In their motion for final approval, Class Counsel imply that the ruling in Amerifactors should largely be disregarded, because the decision itself is on appeal and the question of the TCPA and online faxes received as emails "has divided federal district courts."  See Pls.' Mot. for Final Approval (Dkt. 482) at 6 (quoting Douglas Phillip Brust, D.C., P.C. v. Opensided MRI, 343 F.R.D. 581, 589 n.5 (E.D. Mo. 2023)).  What Class Counsel do not mention, however, is that courts in the Eleventh Circuit have consistently held that the decision in Amerifactors is entitled to Chevron deference or is at a minimum persuasive, relying on the instruction of the Eleventh Circuit in Sarris that the FCC's construction of the TCPA in various forms of reports and orders "issued without the formalities of regulations" are nonetheless entitled to deference.  See Sarris, 781 F.3d at 1257 n.12; see also, e.g., Scoma Chiro. v. Dental Equities, 2021 WL 6105590, *7-9 (M.D. Fla. 2021) (noting Amerifactors is entitled to Chevron deference and collecting cases).

[17] As discussed below, Judge Badalamenti in Scoma Chiropractic v. National Spine concluded (like numerous other courts) that Amerifactors is entitled to Chevron deference and is otherwise persuasive authority, citing, inter alia, the Eleventh Circuit's decision in Sarris.  See Scoma, 2022 WL 16695130, *8 (holding that "the Bureau's decision in AmeriFactors is entitled to deference under the Chevron doctrine"); see also, e.g., Licari Family Chiro. v. Eclinical Works, 2021 WL 4506405, *5 (M.D. Fla. 2021) ("The Court concludes that AmeriFactors . . . [is] entitled to Chevron deference[.]"); Advanced Rehab v. Amedisys Holding, 2020 WL 4937790, *3-8 (W.D. Tenn. 2020) (same); True Health Chiro. v. McKesson, 2020 WL 7664484, *7 (N.D. Cal. 2020) (same); see generally Sarris, 781 F.3d at 1256-57 (deferring to FCC's interpretation of the TCPA,

### D. <u>Scoma Chiropractic v. National Spine</u>

Judge Badalamenti recently addressed this very set of issues in <u>Scoma</u>.  <u>See</u> <u>Scoma</u>, 2022 WL 16695130, *9-12.  In <u>Scoma</u> (a case brought by the Wanca firm), faxes were transmitted to medical providers in Florida during the pandemic, and suit was filed against the sender, claiming a violation of the TCPA.  <u>See</u> <u>id.</u> *1.

The plaintiff in <u>Scoma</u> received its fax on a traditional, stand-alone fax machine, but an undetermined number of the members of the proposed class in <u>Scoma</u> received faxes as emails through online services.  <u>See</u> <u>Scoma</u>, 2022 WL 16695130, *1-2.  Recognizing the issues posed by online services, the Wanca firm successfully obtained leave from Judge Badalamenti to subpoena records from telephone carriers under the Cable Communications Policy Act of 1984 in an effort to isolate which class members received faxes through online services versus stand-alone machines.  <u>See</u> <u>id.</u> *2.  The Wanca firm then moved for certification of two classes:  (1) Class A, consisting of <u>all</u> recipients of faxes sent by the defendant; and (2) Class B, consisting of <u>only</u> those recipients of faxes sent by the defendant that were received on stand-alone machines.  <u>See</u> <u>id.</u>[18]

In concluding that <u>neither</u> of the two proposed classes were appropriate for class treatment, Judge Badalamenti focused in <u>Scoma</u> on Article III and the fact the

---

"[b]ecause the FCC's construction of the statute is a reasonable interpretation of Congressional intent under the TCPA and does not conflict with the statute's underlying legislative history").

[18] Because the faxes at issue in <u>Scoma</u> were transmitted <u>after</u> the issuance of <u>Amerifactors</u>, Judge Badalamenti had no occasion to consider whether <u>Amerifactors</u> itself should have retroactive effect.  <u>See</u> <u>Scoma</u>, 2022 WL 16695130, *9 n.8.  Since <u>Amerifactors</u> was a "clarification" aimed at resolving "controversy or uncertainty," however, other courts to consider the issue have consistently held that it should and does.  <u>See</u>, <u>e.g.</u>, <u>Licari Family Chiro.</u>, 2021 WL 4506405, *7 (holding <u>Amerifactors</u> applied retroactively to faxes transmitted in 2014, because the decision was merely a "clarification" that "did not create an 'entirely new rule'" but was, instead, "consistent with the prior rulings in <u>Westfax</u> and the 2003 order"); <u>see also</u> <u>Heimmermann v. First Union Mortg.</u>, 305 F.3d 1257, 1260 (11th Cir. 2002) (finding "no problem with the retroactive application of [rulings]" that are "clarifications of existing law and not new rules or regulations").

TCPA does not cover the sending of faxes through online services.  See Scoma, 2022 WL 16695130, *6-7.  He concluded that Amerifactors is entitled to Chevron deference (following the lead of a number of other courts) and that even if it were not, Amerifactors would still be persuasive.  See id. *8.  Judge Badalamenti found, however, that it simply was not feasible within the meaning of Cherry to determine which class members received faxes through online services and denied the class motion on those grounds.  See id. *10-12.[19]

### E.   The En Banc Opinion In Drazen Does Not Solve The Article III Problem In This Litigation

During the meet and confer process, Class Counsel purported to place reliance on the en banc opinion in Drazen, arguing that opinion somehow addresses the Article III problem in this litigation.  See Collins Decl., Ex. 5, ¶ 11.  As noted, the Eleventh Circuit reversed in its en banc opinion in Drazen its prior holding in Salcedo that the receiver of a single text was not sufficient to confer Article III standing.  See disc. supra at 14-15.

---

[19] As Judge Badalamenti explained in Scoma:

Here, the putative members of Class B (and for that matter, Class A) are ascertainable in the sense that the class is defined by objective criteria.  However, as it relates to Rule 23(b)(3)(D)'s manageability factor, administrative feasibility—or the lack thereof—gives the Court pause.  Indeed, a "difficulty in identifying class members is a difficulty in managing a class action."  Cherry, 986 F.3d at 1303-04.  Here, Scoma has failed to show that its subpoena process resolves this difficulty.

Scoma, 2022 WL 16695130, *11; see also True Health Chiro. v. McKesson, 2021 WL 4818945, *2 (N.D. Cal. 2021) ("Simply asking whether various phone carriers themselves provided online fax services does not provide uniform class-wide proof that each class member received the faxes at issue in the manner necessary to give rise to TCPA liability[.]"); Career Counseling v. Amerifactors, 2021 WL 3022677, *8-12 (D.S.C. 2021) ("The court finds that it would need to make an individualized inquiry of each class member to determine if the fax number identified in the fax log actually was linked to a stand-alone fax machine . . . .").  Judge Badalamenti's decision in Scoma is currently on appeal to the Eleventh Circuit.  See Scoma Chiro. v. Nat'l Spine, Appeal No. 23-13087 (11th Cir., filed Sept. 21, 2023).  Other cases raising similar issues have been stayed pending a decision by the Eleventh Circuit in the Scoma appeal.  See, e.g., Scoma Chiro. v. Dental Equities, 2023 WL 8437706, *1 (M.D. Fla. 2023).

The situation in this case, however, is at least two steps removed from the situation addressed in the <u>en banc</u> opinion in <u>Drazen</u>.  <u>First</u>, an email is by no means the same as a text.  <u>Compare</u> <u>Daisy</u>, 489 F. Supp. 3d at 1295 (receipt of fax via email is "'more akin to walking down a busy sidewalk and having a flyer briefly waived in one's face' than a harm conferring Article III standing"), <u>with</u> <u>Drazen</u>, 74 F.4th at 1345 ("[A]s with 'the unwanted ringing of a phone from a phone call,' the 'undesired buzzing of a cell phone from a text message . . . is an intrusion into peace and quiet in a realm that is private and personal.'").  Texts and emails are different in kind, and accordingly, they are treated differently under the law.[20]  <u>See</u>, <u>e.g.</u>, <u>Daisy</u>, 489 F. Supp. 3d at 1293-97 (concluding that the time spent reviewing a fax via e-mail has no analogue in common law and "it is clear Congress did not view one wasted minute spent reviewing a junk fax received through e-mail as a concrete injury").[21]

<u>Second</u>, whereas there is no question a text message is covered by the terms of the TCPA, <u>Amerifactors</u> makes clear a fax sent by a means of an online service and received as an email is plainly <u>not</u>.  <u>See</u> disc. <u>supra</u> at 15-16.  Moreover, the sending of an email is in no sense a violation of the TCPA.  <u>See</u> <u>Daisy</u>, 489 F. Supp. 3d at 1296-97 ("Congress never amended the TCPA to account for those intangible

---

[20] Among other things, texts are addressed in the TCPA, emails are <u>not</u>.  <u>See</u> <u>McCarrell v. Offers.com</u>, 2019 WL 3220009, *3 (W.D. Tex. 2019) ("The TCPA does not regulate email messages, but rather regulates telephone calls and facsimile messages."), <u>report and recommendation</u> <u>adopted</u>, 2019 WL 6048012 (W.D. Tex. 2019).

[21] In their motion for final approval, Class Counsel carefully avoid making any mention of Article III, but they do mention Judge Chappell's decision in <u>Daisy</u> and grossly mischaracterize that decision.  <u>See</u> Pls.' Mot. for Final Approval (Dkt. 482) at 7 n.1 (suggesting that <u>Daisy</u> was based on <u>Salcedo</u>, which was subsequently overruled).  <u>Daisy</u> was a fax case, not a text case like <u>Salcedo</u>.  <u>See</u> <u>Daisy</u>, 489 F. Supp. 3d at 1293-97.  For present purposes, however, the relevant point is that Judge Chappell cited <u>Amerifactors</u> approvingly in <u>Daisy</u> (a fax case like this one) and recognized (as have other courts) that recipients of faxes as emails through online services do <u>not</u> have Article III standing.  <u>See</u> <u>id.</u> at 1297.

harms suffered from faxes received over e-mail."). <u>Spokeo</u> makes clear that just because something is prohibited by a statute does not create standing under Article III, but if a statute does not even extend to the practice at issue, then the lack of standing is all the more clear.  <u>See</u>, <u>e.g.</u>, <u>Stacy v. Dollar Tree</u>, 274 F. Supp. 3d 1355, 1361-63 (S.D. Fla. 2017) (holding that "'bare procedural violation' of [FCRA] requirement" did not give rise to requisite injury required for Article III standing).

Indeed, the receipt of an email is fundamentally different than the receipt of a text on a cellphone or a fax on a stand-alone fax machine, making this very much a question of kind and not degree.  <u>See</u> <u>Drazen</u>, 74 F. 4th at 1344 (noting the inquiry turns on "whether the harms are similar in <u>kind</u> but not <u>degree</u>").  As the FCC noted in <u>Amerifactors</u>, emails do not implicate <u>any</u> of the concerns Congress sought to address in the TCPA regarding faxes sent to traditional fax machines.  <u>See</u> <u>Amerifactors</u>, 34 F.C.C.R. at 11953-54.  Faxes sent through online services as emails do not shift the cost of advertising by forcing consumers to bear the cost of paper and ink used by a fax machine to print an unsolicited fax, and they likewise do not tie up the telephone lines of a business or residential customer.  <u>See</u> <u>id.</u>

## F. Article III Would Not Be Satisfied Even If Faxes Received Through Online Services Were Covered By The TCPA

Faxes received as emails through online services are not covered for all the reasons noted above as well as in <u>Amerifactors</u>.  <u>See</u> disc. <u>supra</u> at 15-20; <u>Amerifactors</u>, 34 F.C.C.R. at 11953-54.  But even if they were, Article III would still not be satisfied.  As noted, the receipt of an email is not the sort of concrete injury that would have been recognized as being actionable under English or American law.  <u>See</u> disc. <u>supra</u> at 18-20.  Just like there is no private right of action against the United States Postal Service ("USPS") and advertisers that utilize USPS for filling

our mailboxes with junk mail, so too is there no private right of action for receiving an unsolicited email.[22]  <u>See generally</u> Deceptive Mail Prevention and Enforcement Act, Pub. L. 106-168, 113 Stat. 1806, codified at 39 U.S.C. § 3001 (prohibiting only certain deceptive commercial mailings and giving enforcement power to the USPS rather than providing a private right of action).

### G.   Application Of The Foregoing Decisions To This Case

The panel opinion in <u>Drazen</u> very clearly follows the lead of the Supreme Court in <u>TransUnion</u> and the requirement that <u>each</u> member of a class seeking monetary relief be able to establish Article III standing.  <u>See Drazen</u>, 41 F.4th at 1362 (holding that "[a]ny class definition that includes members who would never have standing under our precedent is a class definition that <u>cannot</u> stand").  In fact, the concerns raised by the panel opinion in <u>Drazen</u> regarding Article III and the definition of the settlement class were sufficiently serious that the Eleventh Circuit found it necessary to overrule <u>en banc</u> existing circuit precedent in <u>Salcedo</u>, which is always the last resort in fidelity to the doctrine of <u>stare decisis</u>.[23]  <u>See Janus v.</u>

---

[22] To be sure, various legislative bodies have considered the possibility of statutes that would purport to create a private right of action for the receipt of unsolicited emails, but those efforts have been preempted at the federal level, which gives primary enforcement power of the CAN-SPAM Act to the Federal Trade Commission in lieu of a private right of action.  <u>See generally</u> Legal Info. Inst., <u>I am tired of receiving spam emails.  How do I file a CAN-SPAM Suit?</u>, available <u>here</u>; <u>see also</u> Sabra-Anne Kelin, <u>State Regulation of Unsolicited Commercial Email</u>, 16 Berk. Tech. L.J. 435 (2001).  And even if such a statute were passed by Congress, <u>Spokeo</u> and <u>TransUnion</u> teach that would by no means suggest that persons or entities making a claim under such a statute would have Article III standing.  <u>See Spokeo v. Robins</u>, 578 U.S. 330, 341 (2016) ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.").

[23] If there were any sense in which the comments of the panel opinion regarding Article III or the class definition were deemed incorrect, the <u>en banc</u> opinion could have and should have (consistent with <u>stare decisis</u>) focused on those aspects of the panel opinion and left <u>Salcedo</u> and existing circuit precedent undisturbed.  <u>See Citizens United v. FEC</u>, 558 U.S. 310, 362 (2010) (noting "precedent is to be respected unless the most convincing of reasons demonstrates that adherence to it puts us on a course that is sure error").  The concerns articulated by the panel opinion, however, and <u>TransUnion</u> clearly animated the <u>en banc</u> opinion and made the overruling of

AFSCME, 138 S. Ct. 2448, 2478 (2018) (noting that overruling past decisions is disfavored "unless there are strong grounds for doing so").

The definition of the Settlement Class here is plainly defective, because it includes a substantial number of persons and entities who received faxes as emails through online services. See Sponsler Decl., Ex. 1, ¶¶ 15, 19. There is, however, simply no way to determine which Settlement Class Members received faxes through online services and which did not, which Class Counsel have conceded, just as was the case in Scoma. See id. ¶¶ 14, 18; Collins Decl., Ex. 5, ¶¶ 8, 13. Persons and entities that did receive as emails faxes purportedly sent on behalf of BTL clearly lack Article III standing, and because there is no way to redefine the Settlement Class so as to include only persons and entities with standing, the Settlement Class should be decertified, again consistent with the approach taken in Scoma. See, e.g., Sharfman v. Infucare, 2022 WL 18926792, *4-5 (M.D. Fla. 2022) (denying class certification and finding that online fax recipients lacked standing), report and recommendation adopted, 2023 WL 2624754 (M.D. Fla. 2023); Scoma Chiro. v. Dental Equities, 2021 WL 6105590, *3-5 (M.D. Fla. 2021) (denying class certification to classes containing recipients of faxes via online fax services); see also, e.g., Siqueiros v. General Motors, 2021 WL 4061708, *3 (N.D. Cal. 2021) (noting that the standards for decertifying a class are the same as for certifying a class).

---

Salcedo necessary. See Drazen, 74 F.4th at 1342 (noting the court was asked en banc to "reevaluate the Salcedo holding and to clarify the law regarding the elements necessary to pursue a TCPA claim").

## IV.  <u>CONCLUSION</u>

BTL respectfully requests that the Court dismiss the class claim and decertify the Settlement Class for the reasons noted above.  BTL further requests whatever other relief the Court deems appropriate.

Date:  December 14, 2023                    Respectfully submitted,

                                            */s/ Mark S. Mester*
                                            Mark S. Mester, One of the Attorneys
                                            for Defendant Buccaneers Team LLC

Mark S. Mester                              Joseph H. Varner, III
  (admitted *pro hac vice*)                   (Bar No. 394904)
Robert C. Collins III                       HOLLAND & KNIGHT LLP
  (admitted *pro hac vice*)                 100 North Tampa Street, Suite 4100
LATHAM & WATKINS LLP                        Tampa, Florida 33602-3644
330 North Wabash Avenue, Suite 2800         Telephone:  (813) 227-8500
Chicago, Illinois 60611                     Facsimile:  (813) 229-0134
Telephone:  (312) 876-7700                  Email:  joe.varner@hklaw.com
Facsimile:  (312) 993-9767
E-mail:  mark.mester@lw.com
           robert.collins@lw.com

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned hereby certifies that counsel for BTL conferred by email with Class Counsel with respect to the instant motion and have been informed that the relief requested herein is opposed.

## LOCAL RULE 3.01(h) REQUEST FOR EVIDENTIARY HEARING

Pursuant to Local Rule 3.01(h), BTL respectfully requests an evidentiary hearing on any factual issues raised by Plaintiffs and their counsel or anyone else with respect to the issues raised in this motion.

Date:  December 14, 2023

*/s/ Mark S. Mester*

Mark S. Mester, One of the Attorneys for Defendant Buccaneers Team LLC

Mark S. Mester
  (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  mark.mester@lw.com

24

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 14, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which served all relevant parties.

Date:  December 14, 2023

*/s/ Mark S. Mester*
Mark S. Mester
   (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  mark.mester@lw.com