## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| CIN-Q AUTOMOBILES, INC. and<br>MEDICAL CHIROPRACTIC CLINIC,<br>INC., individually and on behalf of a class, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 8:13-cv-01592-AEP |
| v. | ) ) | Hon. Anthony E. Porcelli |
| BUCCANEERS TEAM LLC, | ) ) | |
| Defendant, | ) ) | |
| _____ | ) ) | |
| TECHNOLOGY TRAINING<br>ASSOCIATES, INC., *et al.*, | ) ) ) | |
| Intervenors. | ) | |

## INTERVENORS/OBJECTORS' OBJECTION TO
## BTL'S MOTION FOR LEAVE TO CONDUCT DISCOVERY

Intervenors Technology Training Associates, Inc., Larry F. Schwanke, D.C.,

d/b/a Back to Basics Family Chiropractic, Barewood Outlet, Inc., and Thomas

Savino d/b/a WebRX Pharmacy Palace, d/b/a RxPalace.com and Meryman

Environmental, Inc. (collectively "Intervenors"), submit this response in opposition

to Buccaneers Team LLC ("BTL")'s Motion for Leave to Conduct Limited

Confirmatory Discovery, *Cin-Q* Doc. 490 (filed under seal).

BTL seeks "confirmatory discovery for a sample of the accepted claims … to

provide some assurances regarding the validity of the Settlement Administrator's

Final Claims Report." *Cin-Q* Doc. 490 at 24. As the Court observed during the hearing on December 18, 2023, BTL does not specify what confirmatory discovery it seeks, but BTL raised the possibility of document requests, interrogatories, and even depositions of class members who submitted claims approved by BTL's settlement administrator. Confirmatory discovery is not part of the claims auditing process BTL agreed to, that the Court gave preliminary approval to, or that the settlement class was noticed about. BTL's request to add such a procedure to the settlement should be rejected. It would also violate the stay the Court entered on March 29, 2022. *Cin-Q* Doc. 343, ¶ 19 ("This action is STAYED pending final approval of the settlement, except … filings necessary to obtain and preserve final judicial approval of the settlement."). The Court should reject the proposed settlement, rather than requiring class members to do anything more for their settlement payment than the Settlement Agreement requires.

## I.      The Settlement Agreement does not permit the requested discovery.

Confirmatory discovery was not part of the settlement process BTL agreed to, that the Court gave preliminary approval to, or that the settlement class was noticed about.[1] Although confirmatory discovery is sometimes part of a settlement, it usually

---

[1]      In arguing that the confirmatory discovery BTL seeks is contrary to the claims administration process laid out in the Settlement Agreement, Intervenors are not in any way waiving their objections to the claims administration process or the settlement. Intervenors submit this memorandum in their capacity as claiming class

refers to discovery taken by plaintiff's counsel to test contentions of the defendant, particularly when a settlement was reached early in the discovery process. *E.g., Barkwell v. Sprint Communications Co., LP,* No. 4:09-CV-56 (CDL), 2014 WL 12704984 at *3 (M.D. Ga. April 18, 2014) (settlement-in-principle "was conditioned on Sprint providing confirmatory discovery showing that the total amount of Sprint Surcharges that were assessed during the relevant years were less than the costs it expended in conjunction with government programs"). Where confirmatory discovery is negotiated, its timing and scope are negotiated and laid out in the settlement agreement. *Id., Alves v. Main*, Nos. 01–789 (DMC) etc., 2012 WL 2339809at *3 (D.N.J. June 19, 2012) ("confirmatory discovery is often used to negate the impression that a class action was quickly settled with little discovery or litigation in order to generate … substantial legal fees").

Here, the Settlement Agreement contains no provision for confirmatory discovery, not surprising since fact discovery closed long ago. Instead, BTL agreed the case would be stayed and the Parties would use their best efforts to secure judicial approval of the Settlement Agreement. Thus:

> O.    **Stay.** The Parties stipulate to stay all proceedings in the Litigation until the approval of this Settlement Agreement has been finally determined, except the stay of proceedings shall not prevent the filing of any motions, affidavits or other matters **necessary to obtain**

_____

members who should have their claims paid in the event the settlement is finally approved over their objections.

3

**and preserve judicial approval of this Settlement Agreement**. [*Cin-Q* Doc. 324-1, ¶ XV.O; emphasis added.]

      P.    **Best Efforts.** … The Parties shall … use their best efforts to perform all acts necessary and proper to promptly effectuate the terms of this Agreement and to take all necessary or appropriate actions **to obtain judicial approval of this Agreement** in order to give this Agreement full force and effect. … [*Cin-Q* Doc. 324-1, ¶ XV.P; emphasis added.]

BTL's discovery motion does not seek relief "necessary to obtain and preserve judicial approval" of the proposed Settlement. Far from it, BTL wants the discovery to bolster its arguments to decertify the Settlement Class. Accordingly, the motion violates the stay that BTL agreed to, and the Court may deny it on that basis alone.

The Settlement Agreement also does not contain any provision allowing BTL to take confirmatory discovery at the end of the claims administration process. Instead, BTL is permitted an opportunity to "audit Claim Forms for validity and fraud." *Cin-Q* Doc. 324-1, ¶ VIII.E. If BTL "determines that a Claim Form is invalid or fraudulent and should be rejected," it must meet-and-confer with Class Counsel about the "rejected claim," provide its positions to the Settlement Administrator. *Id*. "The Settlement Administrator, after considering the positions of the Parties and, **if appropriate**, seeking any additional information from the Settlement Class Member, will make an initial determination, subject to review by the Court." *Id.* (emphasis added). Thus, BTL agreed it would have no right to seek additional information from claimants.

4

The Settlement Agreement also provides that "if the Settlement Administrator has a reasonable suspicion of fraud," it shall immediately notify the Parties, who shall "endeavor to reach an agreed-upon solution." *Cin-Q* Doc. 324-1, ¶ VIII.F. If necessary, the Settlement Administrator may suspend the claims process while the Parties seek assistance from the Court. *Id*.

The Settlement Administrator, not BTL, determines whether there is a "reasonable suspicion of fraud" and whether "additional information" from claimants is "appropriate." BTL does not allege that the Settlement Administrator deems BTL's "confirmatory discovery" necessary or appropriate. BTL does not allege that the Settlement Administrator has a "reasonable suspicion of fraud" as to any of these claims. In fact, on the contrary, BTL seeks discovery only of claims the Settlement Administrator has **approved** for payment.

It makes sense that decisions about whether to seek additional information or raise a suspicion of fraud are entrusted first and last to the Settlement Administrator, subject to Court review. The Settlement Administrator is a neutral third party acting as an agent of the Court and a fiduciary to the Settlement Class. BTL, on the other hand, is an interested party with a financial stake in paying as few claims as possible.

The Settlement Agreement vests great discretion in the Settlement Administrator regarding requests for information and determination of fraud. The Court appointed Epiq as Settlement Administrator based on the settling parties'

5

representations that the company was well-known and respected. *Cin-Q* Doc. 337, *Cin-Q* Doc. 343, p.79 at ¶ 6. If BTL has issues with the way Epiq is doing its job, BTL could have sought to have Epiq replaced. Indeed, the Court previously made it clear that it would seriously consider such a request based on the parties' concerns about the administration process. Neither party took the Court up on that suggestion.

BTL asserts that it has a "due process" right to discovery, citing cases involving contested class actions. *Cin-Q* Doc. 490 p. 24, citing *Carrera v. Bayer Corp.,* 727 F.3d 300 (3d Cir. 2013) (contested class); *Hunter v. Time Warner,* No. 15-CV-6445 (JPO). 2019 WL 3813063 (S.D.N.Y. Aug. 14, 2019) (same).[2] The claims process here, however, is not taking place after a contested trial and judgment, but pursuant to settlement. In other words, the process is precisely the one that BTL *agreed* would be "due." BTL should not be allowed to change its agreement just because it does not like the outcome.

---

[2]    *Carrera* was a Third Circuit ascertainability case. The Eleventh Circuit rejected the Third Circuit's ascertainability requirement in *Cherry v. Domestic Corp.,* 986 F.3d 1296 (11th Cir. 2021). Moreover, the Third Circuit has held, in a TCPA fax case, that a class may be ascertained through a combination of a claims process and records relating to the fax broadcasts. *City Select Auto Sales, Inc. v. BMW Bank of North America, Inc.,* 867 F.3d 434 (3d Cir. 2017).

## II.    If the settlement is modified to allow confirmatory discovery about claims, the claimants should be notified and given another chance to opt out.

Permitting discovery will be a material modification of the settlement. Claiming class members, or at least a sampling of them, will now have to run a gauntlet of discovery requests, on top of filing a claim under penalty of perjury and in many cases responding to previous deficiency letters. The added burden of being subjected to discovery requests is a material change in the settlement which claiming class members should have had an opportunity to weigh against the maximum $615 per class member benefit on offer if they pass through the gauntlet to BTL's satisfaction.

## III.   If the Court permits confirmatory discovery, Intervenors should not be included in the Random Sample.

The Settlement Administrator concluded that each of the Intervenors' claims was valid and should be paid. No deficiency letters were sent to them. In addition to submitting timely, valid claim forms under penalty of perjury, the Objectors each submitted a declaration in which they laid out the basis for their claim, their fax number, and that they used and received faxes on a standalone fax machine. *Cin-Q* Doc. 434-6, -7, -8 and -9. Dr. Schwanke stated that he personally remembered receiving a Buccaneers fax, saved a copy, and forwarded it to his attorneys. *Cin-Q* Doc. 434-6. Mr. Higgins stated that he personally remembered receiving at least one of the Bucs faxes and that TTA's fax number was connected to his standalone fax

7

machine that automatically printed faxes to paper. *Cin-Q* Doc. 434-7. Mr. Grace stated that Barewood's fax number was connected to a standalone fax machine that automatically printed faxes on paper and that he was advised that Barewood's fax number was included in fax records. Mr. Savino stated that his fax number was connected to a standalone fax machine that automatically printed faxes onto paper and that he personally remembered receiving at least one of the Bucs faxes.

It is frivolous for BTL, considering these declarations, to dispute the claims of the Intervenors or to dispute that they have standing. Nonetheless, for months defense counsel has been pestering Intervenors with frivolous demands for "confirmation" that Intervenors "are actually members of the Settlement Class." *E.g.,* Exhibit 1 (July 7, 2023, email from Mark Mester). That was sufficiently proved already by their claim forms and declarations. Even now, BTL's position is that "it is obviously possible that Intervenors' claims would be subsumed in the sampling we have asked the Court to allow us to undertake" and that "we are endeavoring to determine whether any Intervenors used online fax service for the receipt of faxes in 2009 and 2010, though we aren't having much luck at all with that." Exhibit 2.

BTL simply has no good faith basis for pursuing discovery as to the "standing" of the Intervenors. BTL's request for confirmatory discovery is not made in good faith and is simply an attempt to whittle down the class claims through a

process of attrition. In any event, the Court should exclude Intervenors, whose standing is amply demonstrated, from any discovery sampling.

## CONCLUSION

BTL asks the Court to force class members to participate in "confirmatory discovery" about their junk fax claims, after the Settlement Administrator has already approved their settlement claim forms. In the Settlement Agreement, the parties expressly agreed the case would be stayed, pending the results of their efforts to convince the Court to grant final approval to their Settlement Agreement. The class members BTL wants to discover and investigate have already done everything required to earn their settlement payments. BTL did not bargain for the right to require these class members to spend any more time or effort on this junk fax lawsuit. Therefore, the Court should deny BTL's motion.

Respectfully submitted,

TECHNOLOGY TRAINING ASSOCIATES, INC., LARRY E. SCHWANKE, D.C. d/b/a BACK TO BASICS FAMILY CHIROPRACTIC, BAREWOOD OUTLET, INC., AND THOMAS SAVINO D/B/A WEBRX PHARMACY PALACE, D/B/A RXPALACE.COM AND MERYMAN ENVIRONMENTAL, INC.

By: /s/ Jonathan B. Piper

Phillip A. Bock
Robert M. Hatch
Jonathan B. Piper
Bock Hatch & Oppenheim, LLC
203 N. La Salle Street, Suite 2100
Chicago, IL 60601
(312) 658-5501 (phone)
service@classlawyers.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 22, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

By: <u>/s/ Jonathan B. Piper</u>