IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CIN-Q AUTOMOBILES, INC. and<br>MEDICAL CHIROPRACTIC CLINIC,<br>INC., individually and on behalf of a class, ) ) ) ) | |
| Plaintiffs, ) ) | No. 8:13-cv-01592-AEP |
| v. ) ) | Hon. Anthony E. Porcelli |
| BUCCANEERS LIMITED<br>PARTNERSHIP, ) ) ) ) | |
| Defendant, ) ) _____ ) ) | |
| TECHNOLOGY TRAINING<br>ASSOCIATES, INC., *et al.*, ) ) ) | |
| Intervenors. ) ) | |

**INTERVENORS-OBJECTORS' RESPONSE TO BTL'S MOTION TO DISMISS CLASS CLAIMS FOR LACK OF ARTICLE III STANDING AND TO DECERTIFY THE SETTLEMENT CLASS**

Intervenors Technology Training Associates, Inc., Larry F. Schwanke, D.C., d/b/a Back to Basics Family Chiropractic, Barewood Outlet, Inc., and Thomas Savino d/b/a WebRX Pharmacy Palace, d/b/a RxPalace.com (collectively "Intervenors"), submit the following response to Motion and Incorporated Memorandum of Law of Defendant Buccaneers Team LLC f/k/a Buccaneers

Limited Partnership's ("BTL") to Dismiss Class Claims for Lack of Article III Standing and to Decertify the Settlement Class ("Mot.") [ECF No. 492].[1]

## I. Introduction.

BTL argues the Court must decertify the Settlement Class because it includes members who lack Article III standing. Relying on a vacated and void Eleventh Circuit opinion, BTL argues that no class settlement can stand where the class definition includes any member who lacks standing. Mot., p. 1 (citing *Drazen v. Pinto*, 41 F.4th 1354 (11th Cir. 2022) (*Drazen I*), *reh'g en banc granted, opinion vacated*, 61 F.4th 1297 (11th Cir. 2023), and *on reh'g en banc*, 74 F.4th 1336 (11th Cir. 2023)). "[V]acated opinions 'are officially gone. They have no legal effect whatever. They are void. [They have no] remaining force and cannot be considered to express the view of this Court.'" *United States v. Ellis*, 419 F.3d 1189, 1192 (11th Cir. 2005) (quoting *United States v. Sigma Int'l, Inc.,* 300 F.3d 1278, 1280 (11th Cir. 2002)). As BTL acknowledges, before *Drazen I*, standing for class settlements was not so strict. Mot, pp. 12-13; *see*, *e.g.*, *Prado v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2020). Because the vacated *Drazen I* opinion must be disregarded, BTL's motion should be denied.

---

[1] BTL's motion violates the stay in the Court's Preliminary Approval Order. ECF No. 343, ¶ 19, PageID 10862.

Moreover, BTL's argument is wrong. BTL's motion is based on a 2019 decision by the Consumer and Governmental Affairs Bureau ("Bureau") of the Federal Communications Commission ("FCC") to argue class members who received BTL's faxes as email attachments from their online fax services lack standing. Mot., pp. 2-3 (citing *In the Matter of Amerifactors Fin. Grp., LLC Petition for Expedited Declaratory Ruling, Rules and Regs. Implementing the Tel. Consumer Protection Act of 1991, Junk Fax Protection Act of 2005*, 34 FCC Rcd 11950, 1193-95 n. 32, n. 34 (F.C.C. Dec. 9, 2019)). *Amerifactors* does not address standing, has been rejected by numerous courts, is currently on appeal to the FCC, contradicts prior FCC rulings, and should not be given retroactive effect to apply to BTL's faxes sent more than ten years before *Amerifactors* was issued. *Lyngaas v. Curaden* AG, 992 F.3d 412, 427 (6th Cir. 2021) ("the ruling in any event would have no bearing on the case before us because the operative facts here took place more than three years earlier….").

Even if the Court follows *Amerifactors*, it should deny BTL's motion. The Settlement Class does not lack Article III standing because some subset of claims might have failed on the merits in litigation. In fact, BTL's claims process eliminates any standing issue by requiring that all class members must swear under penalty of perjury that they, in fact, received BTL's faxes. 1 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 2:3 (6th ed.) (standing satisfied by "claim form … that requires

3

some attestation of injury as a prerequisite to receiving a portion of the settlement fund"). Thus, every class member who would receive anything in the settlement has already provided more than enough evidence required to show their concrete injury and, therefore, Article III standing. *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015) (entry on a fax log was sufficient to establish standing for a TCPA claim without proof the recipient ever saw, printed, or remembered the fax); *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019) (wasted time spent reading an unsolicited fax advertisement is a "concrete rather than abstract" loss satisfying Article III).

In addition, BTL's argument contradicts the Settlement Agreement it signed, and the class definition it pledged to support, with full knowledge of *Amerifactors*.[2] ECF No. 324-1, Page 12 of 54 (Settlement Agreement, § III. A.) BTL acknowledges it agreed to a Settlement Class that includes some "persons and entities that received faxes through online services," but argues that negotiated class definition is fatal to the settlement. BTL could have dealt with this issue forthrightly by bringing it to the Court's attention before supporting preliminary approval. One solution might have been to require class members to identify whether they were using an online fax service in 2009 or 2010 when BTL's faxes were sent. *See City Select Auto Sales Inc.*

---

[2]  BTL also cites *TransUnion v. Ramirez*, __ U.S. __, 141 S. Ct. 2190, 2204-2205, 2208 (2021), but that case was decided before BTL entered into the Settlement Agreement and agreed to support the Settlement Class defined therein.

4

*v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 441 (3d Cir. 2017) (class member affidavits submitted in response to notice can be used to determine class membership); *Krakauer v. Dish Network, LLC,* No. 1:14-CV-333, 2017 WL 3206324, at *5 (M.D.N.C. July 27, 2017) (same)*; David Randall Associates, Inc.*, No. 11-2658, 296 F.R.D. 299, 313-314 (D.N.J. Dec. 20, 2013) (same); *see also Allapattah Servs., Inc. v. Exxon Corp.*, 157 F. Supp. 2d 1291, 1325 (S.D. Fla. 2001), *aff'd*, 333 F.3d 1248 (11th Cir. 2003), *aff'd sub nom. Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005). Instead, BTL agreed to the definition it now argues should allow it to evade its contractual obligations. The Court should hold BTL to the agreement it made and deny its motion to decertify.[3]

**II. Argument.**

    **A.** ***TransUnion*** **does not apply because any standing issues have been resolved by the claims process BTL insisted on.**

In *TransUnion*, the Supreme Court explained that only class members who can show they have Article III standing can reap the rewards of a judgment after trial in the class's favor. 141 S. Ct. at 442. *TransUnion* held "in a case like this that

---

[3] BTL should be held to its bargain on the class definition, but, as Intervenors have argued in numerous prior pleadings, the Court should not finally approve the settlement because it does not satisfy the requirements of Rule 23(e). ECF Nos. 325, 332, 342, 395, 396, 412, 434, 460, 497, 504.

proceeds to trial, the specific facts set forth by the plaintiff to support standing must be supported adequately by the evidence adduced at trial." 141 S. Ct. at 2208.

As BTL acknowledges, *TransUnion* did not address standing for class settlements. Mot., p. 12 (citing 141 S. Ct. at 431 n.4). In a settlement there is no trial, so the relevant evidence is not what is "adduced at trial," but what is adduced in the settlement and claims process. Here, the Settlement Agreement required all claiming class members to swear under penalty of perjury that they received BTL's junk faxes. ECF No. 482-3 PageID 14209 (S. Amin-Giwner Dec., Attachment B). "In practice, a settlement class action should be able to [comply with *TransUnion*] by having a claim form, or a claiming program, that requires some attestation of injury as a prerequisite to receiving a portion of the settlement fund." 1 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 2:3 (6th ed.) That is precisely the type of settlement BTL negotiated in this case, so the Settlement Class complies with *TransUnion*'s standing requirements, and BTL's motion fails.

### B. BTL's reliance on *Drazen I* is misplaced because *Drazen I* was vacated and is a nullity.

BTL argues *Drazen I* explicitly extended *TransUnion's* holding to class settlements, but *Drazen I* was vacated "and cannot be considered to express the view of this Court.'" *Ellis*, 419 F.3d at 1192; *Drazen v. Pinto*, 61 F.4th 1297, 1298 (11th Cir. 2023) ("The panel's opinion is VACATED"). *Drazen I* considered a class settlement resolving TCPA claims about text messages. 41 F.4th at 1356.

The settlement class was defined to include all persons who received one or more of the defendant's text messages. *Id.* at 1362. In *Salcedo v. Hanna*, 936 F.3d 1162, 1172 (11th Cir. 2019), the Eleventh Circuit held that receipt of "a single text message" sent in violation of the TCPA was not a concrete injury and could not support Article III standing. Bound by *Salcedo*, the panel held in *Drazen I* that the settlement class definition was too broad because it included class members who received only one text message. *Id.* at 1362.

*Salcedo* was an outlier, contrary to the decisions on the same issue by other circuits. *Drazen v. Pinto*, 74 F.4th 1336, 1344-1345 (11th Cir. 2023) (en banc) (*Drazen II*) (collecting cases). The sister circuit decisions held that "concreteness" depends on the type of harm and not the degree of harm, so any intrusion in violation of the TCPA, no matter how slight, such as a single text message, caused the recipient concrete harm sufficient for standing. *Id.* Based on the circuit split, *Drazen I* was vacated and rehearing *en banc* was ordered. *Drazen*, 61 F.4th at 1298.

*Drazen II* abrogated *Salcedo*, holding, "We think that asking whether the harms are similar in kind but not degree makes sense. Indeed, 'Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto*, injuries that were previously inadequate in law.'" 74 F.4th at 1344 (citing *Huntstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1242 (11th Cir. 20220 (en banc) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). *Drazen II* abrogated

7

*Salcedo* and held that receipt of even a single text message supported standing, so the settlement class had Article III standing as defined. *Drazen I* was rendered a nullity by *Drazen II*, so BTL's arguments based on *Drazen I* should be rejected.

      **C.**      ***Amerifactors* should not be followed and is irrelevant to standing.**

BTL relies on *Amerifactors* to argue faxes received by email from online fax services are not covered by the TCPA. Mot., pp. 15-16. (citing *Amerifactors*, 34 FCC Rcd 11950). BTL's reliance is misplaced because *Amerifactors* is wrong and irrelevant to standing.

      **1.**      **Amerifactors is poorly reasoned, inconsistent with more persuasive authorities, and should not be followed.**

*Amerifactors* is contrary to numerous better-reasoned authorities. *Lyngaas v. Curaden AG*, 992 F.3d 412, 427 (6th Cir. 2021); *Douglas Phillip Brust, D.C., P.C. v. Openside of St. Louis, LLC*, 343 F.R.D. 581, 588-589 (E.D. Mo. 2023); *Urgent One Med. Care, PC v. Co-Options, Inc.*, 21-CV-4180 (JS)(SIL), 2022 WL 16755154, at *6-*7 (E.D.N.Y. June 1, 2022); *Ambassador Hosp., Ltd. v. Hill's Pet Nutrition, Inc.*, No. 20 C 3326, 2021 WL 3043422 (N.D. Ill. Feb. 17, 2021); *see also Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 632-633 (6th Cir. 2015) (holding recipient need not see or print fax to have a TCPA claim); *Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, 757 F.3d 540, 544-545 (6th Cir. 2014) (same); *Ira Holtzman, C.P.A., & Assocs. Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) (same). Moreover, *Amerifactors* is a bureau decision and currently on appeal to the full FCC.

8

*Lyngaas*, 992 F.3d at 427 (citing *Applicant Career Counseling Services, Inc.'s Application for Review*, CG Docket Nos. 02-278, 05-338 (Jan. 8, 2020)). *Amerifactors* is contrary to a prior decision by the same Bureau and contrary to a prior FCC ruling. *In the Matter of WestFax, Inc. Pet. For Consideration and Clarification*, 30 F.C.C. Rcd. 8620, 8622 ¶ 5 (2015); *In re Rules and Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 14133 ¶ 200 (2003).

In 2003, after notice and comments, the FCC issued a formal interpretation of the TCPA stating that a fax received as an electronic document on a desktop computer is covered by the TCPA's junk fax ban:

> The record confirms that a conventional stand-alone telephone facsimile machine is just one device used for this purpose; that developing technologies permit one to send and receive facsimile messages in a myriad of ways. Today, a modem attached to a personal computer allows one to transmit and receive electronic documents as faxes. "Fax servers" enable multiple desktops to send and receive faxes from the same or shared telephony lines.
>
> The TCPA's definition of "telephone facsimile machine" broadly applies to any equipment that has the capacity to send or receive text or images. The purpose of the requirement that a "telephone facsimile machine" have the "capacity to transcribe text or images" is to ensure that the prohibition on unsolicited faxing not be circumvented. *Congress could not have intended to allow easy circumvention of its prohibition when faxes are (intentionally or not) transmitted to personal computers and fax servers, rather than to traditional stand-alone facsimile machines*.
>
> …

> Such faxes may increase labor costs for businesses, whose employees must monitor faxes to determine which ones are junk faxes and which are related to their company's business. Finally, because a sender of a facsimile message has no way to determine whether it is being sent to a number associated with a stand-alone fax machine or to one associated with a personal computer or fax server, *it would make little sense to apply different rules based on the device that ultimately received it.*

18 FCC Rcd 14014, 14133-14134, ¶¶ 200-201 (emphasis added).

In 2015, the Consumer and Governmental Affairs Bureau issued a decision making clear that the TCPA applies to faxes received on computers:

> In this Declaratory Ruling, we make clear that a type of fax advertisement — an efax, a document sent as a conventional fax then converted to and delivered to a consumer as an electronic mail attachment — is covered by the consumer protections in the Telephone Consumer Protection Act (TCPA) and the Junk Fax Protection Act (JFPA).

*Westfax*, 30 FCC Rcd 8620. *WestFax* shows a document that is sent from one ten-digit telephone number to another, at any point in its journey, is a fax regardless of whether it eventually reaches the consumer as an email attachment. *Id.* at 8624.[4]

BTL reads *Amerifactors* to contradict both the FCC's 2003 regulation and the Bureau's 2015 *Westfax* decision. Mot., pp. 15-16. BTL asserts *Amerifactors* should be followed because FCC decisions have generally been accorded deference, but

---

[4] All ten-digit telephone numbers are assigned in accordance with the North American Numbering Plan Administrator (NANPA) and must use the Public Switched Telephone Network (PSTN) to connect to one other. *See* https://nationalnanpa.com/ (last accessed 12/27/2023).

where, as here, *Amerifactors* is inconsistent with prior FCC decisions, deference is not warranted. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 224 (2016) ("This lack of reasoned explication for a regulation that is inconsistent with the Department's longstanding earlier position results in a rule that cannot carry the force of law.")[5] *Amerifactors* is poorly reasoned and inconsistent with longstanding FCC positions on the same issue and should not be followed.

### 2. *Amerifactors* did not address standing and is irrelevant to standing.

*Amerifactors* construed the TCPA's definition of a "telephone facsimile machine." *Amerifactors*, 34 FCC Rcd at 11950; 47 U.S.C. § 227(a)(3). *Amerifactors* did not mention Article III or standing. As an agency decision, it had no authority or reason to do so.

As BTL acknowledges, standing is an inquiry separate from construction of the TCPA to determine the merits of a claim. Mot., pp. 20-21. An Article III court has the power to construe a federal statute even if it ultimately construes the statute against the claim of the plaintiff who brought the suit. Standing cannot depend on the merits of the plaintiff's claim because the court cannot reach the merits if it lacks jurisdiction. *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th

---

[5] *Amerifactors* purported to be consistent with *Westfax*, but if that is true, either BTL's application of *Amerifactors* is wrong or *Amerifactors* is inconsistent with prior FCC regulations and is not entitled to deference. *Encino*, 579 U.S. at 224; 34 FCC Rcd at 11954.

Cir. 2019) ("A court cannot resolve part of a plaintiff's claim on the merits and then say that the residue is outside federal jurisdiction.")

The question of how the Court should construe the TCPA goes to the merits, not standing. *Id.* ("We have resolved dozens of fax-ad suits on the merits without suspecting that we were violating Article III of the Constitution.") In fact, the Eleventh Circuit has held that receipt of a single fax as evidenced only by a fax transmission log, as in the present case, is sufficient to establish Article III standing, even if the recipient never printed the fax and does not remember it. *Palm Beach*, 781 F.3d at 1252; *see also Imhoff*, 792 F.3d at 632 (holding recipient need not see or print fax to have a TCPA claim); *Am. Copper*, 757 F.3d at 545 (same); *Holtzman*, 728 F.3d at 687. Contrary to BTL's reasoning and the language in *Amerifactors*, standing to maintain a TCPA junk fax claim has never turned on whether the fax was more burdensome to the recipient than "any email." Mot., p. 16. Even a fax less burdensome than an email, like the unremembered fax in *Palm Beach*, establishes standing. This does not mean the claim will prevail when the TCPA is applied to the facts of the case, but it is enough to establish a court's jurisdiction to construe the TCPA and apply it to the relevant facts. *Craftwood II,* 920 F.3d at 481.

BTL relies on two district court decisions to argue that *Amerifactors* goes to standing. Mot., pp. 16-18 (citing *Scoma Chiropractic, P.A. v. Nat'l Spine and Pain Ctrs., LLC*, No. 2:20-cv-430-JLB-NPM, 2022 WL 16695130 (M.D. Fla. Nov. 3,

12

2022); *Daisy, Inc. v. Mobile Mini, Inc.*, 489 F. Supp. 3d 1287 (M.D. Fla. Sept. 24, 2020)). Bound by *Salcedo*, both *Scoma* and *Daisy* held that a consumer's receipt of a fax in the form of an email could not establish standing because it was no more burdensome than the single text message in *Salcedo*. *Scoma*, 2022 WL 16695130 at *7; 95130, *Daisy*, 489 F. Supp. 3d at 1292. With *Salcedo* abrogated by *Drazen II*, neither opinion remains sound.

Closely following *Salcedo*'s reasoning, *Daisy* and *Scoma* reasoned "there is no *qualitative* difference in harm between reading then answering an unwanted text and reviewing then deleting a junk fax sent by e-mail." *Daisy* 489 F. Supp. 3d at 1292; *Scoma*, 2022 WL 16695130, at *7. *Drazen II* abrogated *Salcedo* and held that that a single unwanted text message is "qualitatively" sufficient to establish standing. 74 F.4th at 1345. Just as *Salcedo* was wrong about whether the difference between one text message and multiple texts was qualitative rather than quantitative, *Daisy* and *Scoma* were wrong about whether a fax received in an email in-box from an online fax service provider is qualitatively different than one received in an email in-box from some other external modem.[6] In both cases, the transmission is the same from the perspectives of sender and recipient. Most importantly, the injury to the

---

[6] In *Westfax*, the FCC stated that the TCPA claim of a consumer subscribing to an online fax service should belong to the consumer, not the fax service. 30 F.C.C. Rcd. at 8624.

recipient is equally concrete in both cases, regardless of whether both or only the latter is subject to the TCPA.

Regardless of whether BTL's view of *Amerifactors* is correct, the Court has jurisdiction either to accept or reject the argument if and when the Court decides the merits of the class's claims. Meanwhile, BTL has agreed to resolve the issue by settlement, removing the issue from resolution by the Court in exchange for payments to the class. *Amerifactors* is not relevant to standing, and the Court should deny BTL's motion to decertify.

### III. Conclusion.

For the foregoing reasons, the Court should deny BTL's motion.

Respectfully submitted,

TECHNOLOGY TRAINING ASSOCIATES, INC. LARRY E. SCHWANKE, D.C. d/b/a BACK TO BASICS FAMILY CHIROPRACTIC, BAREWOOD OUTLET, INC., and THOMAS SAVINO D/B/A WEBRX PHARMACY PALACE, D/B/A RXPALACE.COM

By: /s/ Phillip A. Bock

Phillip A. Bock
Robert M. Hatch
Jonathan B. Piper
Bock Hatch & Oppenheim, LLC
203 N. La Salle Street, Suite 2100
Chicago, IL 60601
(312) 658-5501
phil@classlawyers.com

## CERTIFICATE OF SERVICE

I hereby certify that, on December 28, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

By: /s/ Phillip A. Bock