**EXHIBIT A**

Before the
FEDERAL COMMUNICATIONS COMMISSION
Washington, D.C.

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Rules and Regulations Implementing the | ) | CG Docket No. 02-278 |
| Telephone Consumer Protection Act of 1991 | ) | |
| | ) | |
| Junk Fax Prevention Act of 2005 | ) | CG Docket No. 05-338 |
| | ) | |
| Petition of Akin Gump Strauss Hauer & Feld LLP | ) | |
| for Expedited Clarification or Declaratory Ruling | ) | |

**Cin-Q Automobiles, Inc.'s Comments on Akin Gump
Petition for Expedited Clarification or Declaratory Ruling**

Cin-Q Automobiles, Inc. ("Cin-Q"), respectfully submits these comments on the Petition for Expedited Clarification or Declaratory Ruling filed by Akin Gump Strauss Hauer & Feld LLP ("Akin Gump").[1] Cin-Q is the plaintiff in a private action discussed in the Akin Gump Petition against Buccaneers Limited Partnership ("BLP") brought under the Telephone Consumer Protection Act of 1991 ("TCPA"), and pending in the United States District Court for the Middle District of Florida.[2] The Consumer & Governmental Affairs Bureau sought comments on the Akin Gump Petition on March 7, 2019.[3] As argued below, the Commission should deny the Petition.

---

[1] *Petition of Akin Gump Strauss Hauer & Feld for Expedited Clarification or Declaratory Ruling*, CG Docket No. 02-278, 05-338 (February 26, 2019) ("Pet.").

[2] *Cin-Q Autos., Inc. v. Buccaneers Ltd. P'Ship*, No. 8:13-cv-1592 (M.D. Fla.).

[3] *Consumer & Governmental Affairs Bureau Seeks Comment on Akin Bump Strauss Hauer & Feld LLP Petition for Expedited Clarification or Declaratory Ruling*, CG Docket No. 02-278, 05-338 (Mar. 7, 2019).

1

**Factual Background to BLP Litigation**

The Akin Gump Petition grossly distorts the facts underlying Cin-Q's TCPA case against BLP in an effort to minimize BLP's involvement in the fax campaigns at issue and portray BLP a "victim" of an unscrupulous fax broadcaster.[4] To the contrary, BLP is a prolific junk-faxer that blanketed the Tampa area with fax advertisements in 2009–2010, and had actual notice that what it was doing was illegal—having been sued by Cin-Q in state court shortly after it started junk faxing in August 2009—and persisted in its unlawful activity, sending fax advertisements into June 2010.

In three waves of broadcasts from July 2009 through June 2010, BLP sent a total of 343,122 advertisements to 131,011 unique fax numbers in the Tampa Bay area, advertising individual and group tickets to Tampa Bay Buccaneers games.[5] BLP hired a fax broadcaster called "FaxQom" to conduct the fax campaigns, and FaxQom in turn obtained the lists of target fax numbers in the Tampa area and transmitted the faxes through other third parties. BLP made no effort to obtain "prior express invitation or permission" from any recipient; BLP "never even saw the fax numbers," nor asked to see the numbers.[6] BLP had fax numbers for its own "existing contacts," but it wanted to drum up "new business" by targeting people who were not "existing customers."[7]

BLP solely created the content of the faxes, specified the area codes it wanted to target, and dictated the specific time of day the faxes would be sent so its "sales department" would "be

---

[4] Pet. at 2; *id.* at 8, n.29.

[5] *See* Pls.' Mot. Class Certification (without exhibits) at 3–9, attached to Declaration of Glenn L. Hara ("Hara Decl.") as Ex. A.

[6] Deposition of BLP Corporate Representative Matthew Kaiser ("Kaiser Dep.") at 132, attached to Hara Decl. as Ex. B.

[7] *Id.* at 81.

2

available when people receive these."[8] BLP directed FaxQom to put BLP's fax number on the target list so it could monitor the broadcasts in real time, and when the faxes were late, BLP chided FaxQom, "[w]e must keep schedule."[9] BLP paid FaxQom $15,336.80 for the first broadcasts in July 2009,[10] and when it determined the faxes "generated $12,643 in Group Sales revenue," it decided to send more in August 2009 and May–June 2010.[11]

BLP "was aware of the TCPA" and the Commission's rules regarding fax advertising before it sent its faxes.[12] BLP's corporate representative testified he believed that it was "a necessity" to have "'opt-out' language" on all fax advertisements.[13] BLP used two forms of opt-out notice, neither of which complies with the Commission's rules. The notice in the faxes sent in July–August 2009 states: "To immediately and permanently remove your fax number from our opt-in compiled database, please call 877-272-7614. Removaltech@FaxQom.com."[14] The opt-out notice on the faxes sent in May–June 2010 states: "If your office has decide to opt- out of further faxes please call 866-247-0920. Thank you."[15] BLP told FaxQom to change the opt-out notice in the later faxes to "keep it simple and only related to opting out," removing the reference to an "opt-in compiled database" from the previous two notices.[16]

---

[8] BLP000093, attached with compendium of "BLP" documents to Hara Decl. as Ex. C.
[9] *Id.*
[10] BLP000038.
[11] BLP00676.
[12] Kaiser Dep. at 72.
[13] *Id.* at 271.
[14] BLP000040–42; BLP000029.
[15] RMI00221, attached to Hara Decl. as Ex. D.
[16] BLP00310.

To offset the risk of TCPA liability, BLP negotiated an indemnification agreement with FaxQom, stating FaxQom indemnifies BLP "from any and all complaints or litigation that may arise as a result of this campaign" and "FaxQom will agree to and abide by all laws associated with facimile [sic] marketing."[17] BLP's General Counsel, Manuel Alvare, reviewed and approved the FaxQom indemnification agreement.[18]

Immediately after BLP began faxing, consumers across the Tampa area began complaining to BLP about the unwanted fax advertisements. For example, on August 20, 2009, a Tampa area attorney named Phyllis J. Towzey sent a letter to BLP complaining of fax advertisements she received at her office on July 14, 2009, and August 17, 2009.[19] Towzey had no business relationship with BLP and did not give BLP permission to send fax advertisements.[20] Towzey warned BLP that the TCPA prohibits fax advertisements without "prior express invitation or permission" and imposes $500 damages per violation, which can be increased to $1,500 for "willfully or knowingly" violating the statute, setting forth verbatim portions of the statute.[21] Towzey offered to settle for $1,000 rather than sue BLP.[22] Shortly thereafter, Alvare, BLP's General Counsel, called Towzey on the phone and told her that the faxes had been "sent" by FaxQom and that FaxQom, not BLP, was liable for any damages because it "sent" the fax.[23]

---

[17] BLP000069.

[18] BLP00136.

[19] Affidavit of Phyllis J. Towzey ¶¶ 1, 5, 6, attached to Hara Decl. as Ex. E.

[20] *Id.* ¶¶ 7, 8.

[21] *Id.* ¶ 11.

[22] *Id.*, Ex. A.

[23] *Id.* ¶ 15–17; Deposition of Manual Alvare at 44, 46, attached to Hara Decl. as Ex. F.

In addition, numerous consumers filed complaints with the Commission about BLP's junk faxes. In response to Plaintiffs' counsel's FOIA request, the Commission produced several such consumer complaints, although it stated that additional complaints may not have been retained, since they were filed prior to 2011.[24] There were also numerous complaints to the FTC, which also produced such complaints to Plaintiffs' counsel.[25] It does not appear the Commission took any action against BLP based on these complaints.

On August 28, 2009, Cin-Q filed a class-action lawsuit against BLP under the TCPA in Florida state court.[26] Cin-Q served the Complaint on BLP's registered agent September 7, 2009.[27] BLP hired outside counsel to defend the case, who appeared in the case October 5, 2009, and filed a Motion to Dismiss.[28]

In May–June 2010, BLP sent hundreds of thousands of additional fax advertisements for Tampa Bay Buccaneers tickets in the Tampa area. It did not stop sending fax advertisements until the Florida Attorney General sent BLP a cease-and-desist letter in June 2010.[29] On June 18, 2013, Cin-Q filed its federal TCPA action against BLP in the Middle District of Florida.

**Argument**

I.   **The Petition presents no "controversy" or "uncertainty" to be resolved, and it should be dismissed as an untimely petition for reconsideration of the 2006 Order.**

---

[24] Commission FOIA Response (Mar. 20, 2014), attached to Hara Decl. as Ex. G.

[25] FTC FOIA Response (Jan. 9, 2013), attached to Hara Decl. as Ex. H.

[26] Hara Decl., Ex. L.

[27] *Id.*

[28] Hara Decl., Ex. M.

[29] *See Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship*, No. 8:13-CV-01592-AEP, 2014 WL 7224943, at *2 (M.D. Fla. Dec. 17, 2014).

In the 2006 Order issuing Rule 64.1200(f)(10), the Commission addressed the factual scenario in which a fax broadcaster "provides a source of fax numbers, makes representations about the legality of faxing to those numbers or advises a client about how to comply with the fax advertising rules," leading to TCPA violations.[30] The Commission ruled that, "[i]n such circumstances, the sender and fax broadcaster may be held jointly and severally liable for violations," unambiguously providing that the person or entity whose goods or services are advertised is the "sender," even if it is misled by the fax broadcaster's "representations about the legality" of the faxing, and that the sender is "liable for violations" (although the fax broadcaster may *also* be "jointly and severally liable").[31]

Akin Gump fails to demonstrate any ambiguity in this ruling for the Commission to "clarify," and the Petition is nothing more than an improper collateral challenge that should have been brought in a timely petition for reconsideration under 47 U.S.C. § 405(a) and Rule 1.429(d). The "sender" definition was issued in the 2006 Order, along with a suite of regulations implementing the Junk Fax Prevention Act of 2005 ("JFPA").[32] The rules were published in the Federal Register May 3, 2006,[33] and became effective August 1, 2006.[34] Akin Gump did not file its Petition until nearly 13 years after expiration of the 60-day deadline following publication in the Federal Register. The Commission has already ruled on the issue Akin Gump raises, and the

---

[30] *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report & Order & Third Order on Reconsideration, 21 FCC Rcd 3787, 3808 ¶ 40 (Apr. 6, 2006) ("2006 Order").

[31] *Id.*

[32] *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991; Junk Fax Prevention Act of 2005*, 21 FCC Rcd. 3787, 3822 (rel. Apr. 6, 2006) ("2006 Order").

[33] *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25967-01 (May 3, 2006).

[34] *See Consumer & Governmental Affairs Bureau Announces Aug. 1st Effective Date of Amended Facsimile Advert. Rules*, 21 FCC Rcd. 8627 (CGAB July 27, 2006)

Petition raises no "controversy" or "uncertainty" for the Commission to resolve, as required by Rule 1.2.[35] The Petition should therefore be dismissed.

**II.     In the alternative, if the Commission finds it appropriate to issue a rule preventing the "sabotage" hypothetical, it should impose a "but-for" causation requirement under traditional tort law.**

As the Petition notes, several courts have ruled that it would be improper to impose TCPA liability on a person or entity solely because its "goods or services" are advertised in a fax, reasoning that doing so could hypothetically allow a third party to "sabotage" a defendant. The district court in Cin-Q's case, for example, ruled that "an action or inaction that *sets the causal chain in motion* must, in some way, be attributable to" the defendant.[36] If the Commission reaches this issue, the risk of hypothetical "sabotage" can be solved with a simple causation requirement.

The Supreme Court has held the "default rule" for tort causation, including torts created by statute, is "but-for" causation, meaning "'that the harm would not have occurred' in the absence of—that is, but for—the defendant's conduct."[37] This default rule is "the background against which Congress legislated" in enacting the TCPA, and but-for causation is the rule Congress "is presumed to have incorporated, absent an indication to the contrary in the statute itself."[38] Courts often apply tort-law principles to TCPA claims.[39] The defendant's conduct is the

---

[35] 47 C.F.R. § 1.2.

[36] *Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship*, No. 8:13-CV-01592-AEP, 2014 WL 7224943, at *7 (M.D. Fla. Dec. 17, 2014) (emphasis added).

[37] *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2525 (2013) (applying default "but-for" causation to plaintiff's Title VII retaliation claims) (quoting Restatement of Torts § 431, cmt. a).

[38] *Id.*

[39] *See, e.g.*, *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1253 (11th Cir. 2014) (analyzing TCPA liability under the Restatement (Second) of Torts); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 270 (3d Cir. 2013) (same).

7

but-for cause if it has some "substantial effect" in leading to the injury, such that a reasonable person would "regard it as a cause."[40] But-for causation does not apply "in the so-called 'philosophic sense,'" to include "every one of the great number of events without which any happening would not have occurred," since "the effect of many of them is so insignificant that no ordinary mind would think of them as causes."[41] The test is merely whether the effect of the defendant's conduct is "substantial rather than negligible."[42]

To the extent the Commission deems it necessary to rule on this issue, requiring that the defendant whose goods or services are advertised in a fax be the but-for cause of the faxing would prevent the "sabotage" hypothetical from occurring, while at the same time allowing consumers to assert their rights against defendants who, like BLP, hire fax broadcasters to send fax advertisements. That rule would be consistent with the "remedial" nature of the TCPA in protecting consumers, rather than Akin Gump's proposal, which would effectively immunize junk faxers from liability merely by putting in their contracts with their fax broadcasters that the faxing will comply with the TCPA.[43]

## Conclusion

For the foregoing reasons, the Commission should deny the Akin Gump Petition for Expedited Clarification or Declaratory Ruling.

Dated:  April 8, 2019                                   Respectfully submitted,

                                              By:     s/Glenn L. Hara

---

[40] Restatement of Torts § 431, cmt. a.

[41] *Id.*

[42] *Id.*

[43] *See Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013).

Anderson + Wanca  
3701 Algonquin Road, Suite 500  
Rolling Meadows, IL 60008  
Telephone: (847) 368-1500