# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

CIN-Q AUTOMOBILES, INC., )
<u>et al.</u>, )
Plaintiffs, )
v. )
BUCCANEERS LIMITED )
PARTNERSHIP and JOHN DOES )
1-10, )
Defendants, )
─────────────────────── )
TECHNOLOGY TRAINING )
ASSOCIATES, INC., <u>et al.</u>, )
Intervenors. )

Case No. 8:13-cv-01592-AEP

Magistrate Judge
Anthony E. Porcelli

# BTL'S RESPONSE TO
# PLAINTIFFS' DECEMBER 8, 2023
# <u>STATEMENT OF DISPUTED CLAIMS (DKT. 487)</u>

Date:  December 29, 2023

Mark S. Mester
   (admitted *pro hac vice*)
Robert C. Collins III
   (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  mark.mester@lw.com
           robert.collins@lw.com

Joseph H. Varner, III
   (Bar No. 394904)
HOLLAND & KNIGHT LLP
100 North Tampa Street, Suite 4100
Tampa, Florida 33602-3644
Telephone:  (813) 227-8500
Facsimile:  (813) 229-0134
Email:  joe.varner@hklaw.com

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    <u>INTRODUCTION</u> ...................................................................................1

II.   <u>FACTUAL BACKGROUND</u>..............................................................4

      A.    Plaintiffs' Request ...................................................................4

      B.    The Settlement Administrator's Determinations On The 26
           Claims.....................................................................................5

III.  <u>DISCUSSION</u> ....................................................................................6

      A.    The Settlement Administrator Used A Coherent Process In
           Addressing These 26 Claims..................................................7

      B.    Class Counsel's "Additional Information" Clearly Raises More
           Questions Than It Answers .....................................................9

      C.    The 26 Claimants Featured By Class Counsel In Their
           December 8, 2023 Submission (Dkt. 487) Only Further
           Confirm The Ascertainability And Other Issues BTL Has Been
           Raising For Some Time..........................................................17

      D.    The Claims Of These 26 Claimants Also Highlight The Abject
           Failure Of The Settlement Administrator To Obtain The
           Independent Verification And Validation That TransUnion And
           LexisNexis <u>Expressly</u> Stated Was And Is Needed.............................19

IV.  <u>CONCLUSION</u>.........................................................................21

<u>LOCAL RULE 3.01(h) STATEMENT</u> ...................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

<u>Charvat v. Valente</u>,
  2019 WL 5576932 (N.D. Ill. 2019) ...................................................................15

<u>DeHoyos v. Allstate</u>,
  240 F.R.D. 269 (W.D. Tex. 2007) ....................................................................15

<u>In re Amerifactors</u>,
  34 F.C.C.R. 11950 (FCC 2019) .....................................................................4, 6

<u>In re Joseph T. Ryerson & Son</u>,
  35 F.C.C.R. 9474 (FCC 2020) ......................................................................4, 6

<u>Licari Family Chiro. v. Eclinical Works</u>,
  2021 WL 4506405 (M.D. Fla. 2021) ..............................................................3, 6

<u>Sanborn v. Viridian Energy</u>,
  2018 WL 940542 (D. Conn. 2018) ............................................................. 15, 21

<u>Scoma Chiro. v. Dental Equities</u>,
  2021 WL 6105590 (M.D. Fla. 2021) ...................................................................3

<u>Scoma Chiro. v. Nat'l Spine</u>,
  2022 WL 16695130 (M.D. Fla. 2022) ..............................................................3, 5

<u>Sharfman v. Infucare</u>,
  2022 WL 18926792 (M.D. Fla. 2022), <u>report</u> <u>and</u> <u>recommendation</u>
  <u>adopted</u>, 2023 WL 2624754 (M.D. Fla. 2023) ....................................................3

<u>True Health v. McKesson</u>,
  2021 WL 4818945 (N.D. Cal.), <u>aff'd</u>, 2023 WL 7015279 (9th Cir. 2023) ...........4

### OTHER AUTHORITIES

Xfinity, <u>Fax Machines Incompatible with Xfinity Voice</u>,
  https://www.xfinity.com/support/articles/faxing-with-xfinity...............................6

Defendant Buccaneers Team LLC ("BTL") responds as follows to the December 8, 2023 Statement of Disputed Claims (Dkt. 487) filed by Class Counsel on behalf of Plaintiffs Cin-Q Automobiles, Inc. ("Cin-Q") and Medical & Chiropractic Clinic, Inc. ("M&C" and, collectively with Cin-Q, "Plaintiffs"):[1]

## I.    INTRODUCTION

Plaintiffs seek an order from the Court that 26 claims denied by the Settlement Administrator be approved.  Plaintiffs argue (incorrectly) that these claims were denied <u>solely</u> on the basis that the Settlement Administrator identified these 26 claimants as "potentially being a fax service provider."  <u>See</u> Pls.' Stmt. of Disputed Claims (Dkt. 487) at 2.  Plaintiffs further argue that "[t]he names of the companies" and the other "associated information" they claim to have uncovered in the interim somehow suggest these claimants are not fax service providers.  <u>See id.</u>  Attached to Plaintiffs' submission are, in turn, a variety of web pages pulled by Class Counsel from various sources, including the Corporation Detail Reports published by the Florida Secretary of State as well as the results of various Internet searches undertaken by Class Counsel.  <u>See generally</u> Pls.' Appendix (Dkt. 487).

In challenging the Settlement Administrator's decisions with respect to these 26 entities, Plaintiffs ignore the process followed by the Settlement Administrator in identifying whether these claimants were fax service providers.  Plaintiffs also ignore the fact that there are <u>multiple</u> bases for disallowing numerous of these claims, separate and apart from the fact these claimants may be fax service providers. Plaintiffs likewise ignore completely the fortuity that these 26 claims were subjected

---

[1] Capitalized terms have the meaning ascribed to them in the Settlement Agreement filed with Plaintiffs' motion for preliminary approval. See Settlement Agt. (Dkt. 324-1). In addition, all emphasis is supplied, and all internal citations, quotations and footnotes are omitted.

to additional scrutiny that disclosed <u>multiple</u> bases for rejecting the claims themselves only because the Settlement Administrator concluded the claimants may be fax service providers.  Lastly and most fundamentally, Class Counsel seem oblivious to the broader implications of this exercise and the fact there is little doubt that if other claims were similarly scrutinized (as they should be), it is now painfully obvious a comparable percentage of them would be (and should be) deemed to be ineligible for compensation.  <u>See</u>, <u>e.g.</u>, BTL's Obj. to Final Claims Rpt. (Dkt. 490) at 18-25.

The process used by the Settlement Administrator for these 26 claims nonetheless precludes them from being accepted, because the claimants produced <u>no</u> evidence whatsoever to rebut the Settlement Administrator's determination that they may be fax service providers and likewise provided no information to demonstrate they actually are Settlement Class Members.  In fact, 25 of these 26 claimants received a Request for Additional Information from the Settlement Administrator and failed to provide <u>any</u> response, and four of these claimants also received a Deficiency Letter and failed to respond to that request as well.

Furthermore, Plaintiffs' "associated information" submitted with their December 8, 2023 submission clearly raises more questions than it answers and suffers from the very same flaws in terms of accurately identifying Settlement Class Members that were noted in previous submissions by BTL, including the fact that addresses and contact information identified in Plaintiffs' "associated information" largely do <u>not</u> match the addresses and contact information listed by the claimants on their Claim Forms.  Moreover, the corporate names in some instances that Plaintiffs "uncovered" likewise do not match those of the claimants, and in virtually

every instance, the additional information does not begin to address the crucial issue of whether the claimants actually held the claimed telephone number during the limited, 11-month period from July 14, 2009 to June 9, 2010 when faxes were purportedly sent on behalf of BTL.

BTL has already addressed the many problems with the Settlement Administrator's Final Claims Report (Dkt. 490) and the failure of the Settlement Administrator to properly review and scrutinize claims, the issues uncovered with these 26 claims only adding to the growing list of issues, not to mention the broader problem.  For these reasons, BTL respectfully requests that the Court deny Plaintiffs' request to approve these 26 claims in the absence of confirmatory discovery to confirm (a) that these entities are not fax service providers (as Class Counsel now suggest), (b) that the other infirmities addressed in this submission do not otherwise disqualify the claim, (c) that the claimants did in fact hold these numbers in 2009 to 2010 and (d) that any faxes these entities claim to have received that were purportedly sent on behalf of BTL were not received as attachments to emails, a situation not covered by the TCPA and for which recipients do not otherwise have standing under Article III.  See BTL's Obj. (Dkt. 490); BTL's Mot. to Dismiss (Dkt. 492) (addressing Article III standing of recipients of faxes received as emails from fax service providers); Licari Family Chiro. v. Eclinical Works, 2021 WL 4506405, *4-7 (M.D. Fla. 2021); Scoma Chiro. v. Nat'l Spine, 2022 WL 16695130, *6-9 (M.D. Fla. 2022); Sharfman v. Infucare, 2022 WL 18926792, *4-5 (M.D. Fla. 2022), report and recommendation adopted, 2023 WL 2624754 (M.D. Fla. 2023); Scoma Chiro. v. Dental Equities, 2021 WL 6105590, *3-5 (M.D. Fla. 2021); see also, e.g., True Health v. McKesson, 2021 WL 4818945, *3 (N.D. Cal.), aff'd, 2023 WL

7015279 (9th Cir. 2023); In re Amerifactors, 34 F.C.C.R. 11950, 11952 (FCC 2019); In re Joseph T. Ryerson & Son, 35 F.C.C.R. 9474, 9477 (FCC 2020).

## II.   FACTUAL BACKGROUND

### A.   Plaintiffs' Request

On December 7, 2023, the day before objections to the Settlement Administrator's claims determinations were due to be filed, Class Counsel emailed BTL's counsel to request that BTL agree 26 claimants the Settlement Administrator found ineligible for payment instead be deemed eligible.  See Dec. 7, 2023 Emails btwn G. Hara and R. Collins, Ex. 1 hereto.  Class Counsel indicated that the basis for their disagreement with the Settlement Administrator's determinations on these 26 claims was that the claims were denied because the claimants were suspected fax service providers but that Plaintiffs' online research had supposedly indicated these 26 claimants may not be fax service providers.  See id.  Given the proximity to the deadline, BTL was unable to evaluate before the due date Class Counsel's request and fairly voluminous supporting materials, but BTL has since reviewed those materials.[2]  See id.

---

[2] The documentation provided by Class Counsel is indeed fairly voluminous, consisting of 126 pages of results from Internet searches performed by Class Counsel on these 26 claimants, with the information obtained by Class Counsel indicating that more than 60% of the 26 claimants are not Settlement Class Members or are otherwise not eligible to make a claim for reasons other than potentially being a fax service provider.  See Pls.' Appendix (Dkt. 487); see disc. infra at 10-17. BTL performed a similar search on a sample of 20 claimants and uncovered similar information suggesting that at least 55% of those claimants are not Settlement Class Members or are otherwise ineligible to make a claim, and BTL also commissioned a CLEAR search by the Settlement Administrator on another sample of 20 claims, with the result that 18% of those claimants are likely not Settlement Class Members either.  See BTL's Obj. (Dkt. 490) at 14-17.  All told, however, every sample of claimants scrutinized thus far has uncovered clear evidence of a substantial number of invalid or fraudulent claims, only reinforcing the need for further sampling before the Settlement could be approved as well as the now apparent fact that it simply is not possible (let alone feasible) to identify at this late date the members of the Settlement Class due to the failure of Class Counsel to identify members of the class much, much earlier in the litigation. See, e.g., BTL's Resp. to Final Approval Mot. (Dkt. 496) at 14-21.

**B.   The Settlement Administrator's Determinations On The 26 Claims**

During the claims process, the Settlement Administrator attempted to identify potential claimants who were fax service providers, although there was no programmatic way of doing so.[3]  See Dec. 13, 2023 Email fr. O. Castillejos, Ex. 2 hereto.  Accordingly, the Settlement Administrator manually reviewed claims that self-identified as a business on their Claim Form and conducted an initial review to exclude from further review the many claimants the Settlement Administrator could confirm were "clearly not a fax service provider based on the name on the claim form[.]"   Id.   For the remaining claimants, the Settlement Administrator then conducted an additional round of manual review by using Internet search tools to obtain further information that could help identify any fax service provider.  See id.

The Settlement Administrator subsequently sent 63 Requests for Additional Information to claimants whose status as a fax service provider remained uncertain.  See Dec. 13, 2023 Email fr. O. Castillejos, Ex. 2.  Of the Requests for Additional Information sent to the 26 claimants at issue, two included categories of additional requested information beyond the issue of being a potential fax service provider, including listing a multi-claimed number and first being registered as a business outside of the time period that defines and delimits the Settlement Class, namely July 14, 2009 to June 9, 2010.  See Excerpts of Reqs. for Add'l Info. & Deficiency Letters, Ex. 3 hereto (Tracking Nos. 50201 and 115706).  Only one claimant, however, responded to the Request for Additional Information, and no claimants

---

[3] For similar reasons, there is likewise no way of determining at this point in time which members of the Settlement Class received faxes through online fax service providers that deliver faxes to recipients in the form of emails or otherwise through the Internet, a determination that is otherwise necessary in order to determine if those persons and entities have Article III standing.  See BTL's Mot. to Dismiss (Dkt. 492) at 17-18, 21-22 (citing Scoma, 2022 WL 16695130, *9-12).

responded to the Deficiency Letters.  Accordingly, the Settlement Administrator ultimately denied each of these claims.[4]

### III.  DISCUSSION

Plaintiffs' request to have the determinations by the Settlement Administrator reversed for the 26 claimants identified in Plaintiffs' December 8, 2023 submission (Dkt. 487) should be denied for the reasons detailed below.  See disc. infra at 6-18. Moreover, the Settlement Administrator should be directed to conduct a search of other accepted claims using the sources utilized by Class Counsel in making their December 8, 2023 submission (Dkt. 487) in order to determine what information is publicly available through sources apparently endorsed by Class Counsel that would suggest persons and entities with claims that were accepted by the Settlement

---

[4] As noted, only one claimant provided a response to these inquiries by the Settlement Administrator, namely the claimant identified in Tracking No. 115350.  See Tracking No. 115350 Resp. to Req. for Add'l Info., Ex. 4 hereto.  That claimant submitted a declaration confirming it was not a fax service provider and attaching a business card with a fax number on it (a number on the Biggerstaff list).  See id.  BTL, in turn, accepts this declaration as competent evidence this claimant is not a fax service provider.  What this claimant did not provide, however, (and what it should be required to provide in order to validate its claim) is any evidence that this auto repair business was actually in existence between July 14, 2009 to June 9, 2010 and had the fax number on the Biggerstaff list at that time.  See BTL's Obj. (Dkt. 490) at 22.  Nor did this claimant give any information one way or the other whether any fax it received purportedly sent on behalf of BTL was received as an email through an online fax service provider, though in fairness to this claimant, it was not asked that question, nor was any other claimant.  See, e.g., Excerpts of Reqs. For Add'l Info. & Deficiency Letters, Ex. 3.  To the contrary, this claimant identified Comcast as its telephone provider in 2009 and 2010, but it is not at all clear Comcast was providing telephone service in the Tampa area in 2009 and 2010.  See Biggerstaff Suppl. Rpt. (Dkt. 207-9) ¶ 11. Indeed, Mr. Biggerstaff identified carriers serving the Tampa area in 2009 and 2010, but there was no mention of Comcast.  See id. (relevant excerpt attached as Exhibit 5 hereto).  So Mr. Biggerstaff's list is substantially incomplete or this claimant's declaration is inaccurate or this claimant received a fax as an email through Comcast's online fax service.  Moreover, many stand-alone fax machines are not capable of sending or receiving faxes over the type of telephone service provided by Comcast in most areas (even assuming Comcast was providing telephone service in Tampa in 2009 or 2010).  See id.; see also Xfinity, Fax Machines Incompatible with Xfinity Voice, available here.  Finally, Comcast has from time to time offered an online fax service itself, and if this claimant actually was using Comcast in 2009 and 2010 for the receipt of faxes, it is possible he was receiving faxes as emails, which would mean there would be no standing under Article III or the TCPA for this claim.  See, e.g., Amerifactors, 34 F.C.C.R. at 11952; Ryerson, 35 F.C.C.R. at 9474; see also, e.g., Licari, 2021 WL 4506405, *7.

Administrator are actually <u>not</u> Settlement Class Members or are otherwise ineligible to receive payment.  <u>See</u> disc. <u>infra</u> at 19-21.

### A. The Settlement Administrator Used A Coherent Process In Addressing These 26 Claims

The Settlement Administrator performed a multi-step process to determine whether a claimant was a potential fax service provider.  <u>See</u> disc. <u>infra</u> at 7-8.  <u>First</u>, the Settlement Administrator manually reviewed claims by self-identified businesses.  <u>See</u> Dec. 13, 2023 Email fr. O. Castillejos, Ex. 2.  <u>Next</u>, the Settlement Administrator eliminated from further review many claims that appeared to not be potential fax service providers based on a facial review of the claim.  <u>See id.</u>  For any remaining claimants, the Settlement Administrator then conducted a further round of manual review using Internet research to identify potential fax service providers.  <u>See id.</u>  <u>Finally</u>, claimants for which there still was not enough information for the Settlement Administrator to make a determination received Requests for Additional Information, seeking documentation or an attestation that the claimant was not a fax service provider.[5]  <u>See id.</u>

This comparatively robust process for these 26 claimants (unfortunately not replicated by the Settlement Administrator for virtually <u>any</u> of the other 1,566 approved claimants) resulted in <u>every</u> claimant being unable to rebut the Settlement Administrator's determination that the claimant may be a fax service provider or have a claim that is deficient in some other respect.  <u>See</u> Dec. 13, 2023 Email fr. O. Castillejos, Ex. 2; Final Claims Rpt. (Dkt. 490-20).   Lacking any additional

---

[5] As noted above (<u>see</u> disc. <u>supra</u> at 5-6), certain of the claimants also received a Request for Additional Information and/or a Deficiency Letter for <u>additional</u> issues beyond the question of whether they were fax service providers.  <u>See</u> Excerpts of Reqs. for Add'l Info. & Deficiency Letters, Ex. 3.

information after undertaking this process, however, the Settlement Administrator then properly denied all 26 claims.  See Final Claims Rpt. (Dkt. 490-20).

This is, in turn, consistent with the Settlement Administrator's process across all claimants who received a Request for Additional Information and/or a Deficiency Letter (i.e., denial of at least the portion of the claim for which no additional information was provided), and it is unquestionably appropriate and the very least that could be expected of the Settlement Administrator.  See, e.g., BTL's Obj. (Dkt. 490) at 9-11 (describing Settlement Administrator's approval of portions of 99 claims listing numbers on the Biggerstaff list when the same Claim Form also contained at least one number not on the Biggerstaff list).[6]  But it is ironic indeed that Class Counsel would resist sending Requests for Additional Information or Deficiency Letters to virtually all categories of claimants but then try to overturn the determinations made by the Settlement Administrator with respect to a handful of claimants that the Settlement Administrator concluded were deficient based on a coherent and reasonable process that the Settlement Administrator utilized for these 26 claims only.  See Pls.' Opp. to Mot. to Compel (Dkt. 459) at passim (arguing against requesting additional documentation from claimants).

If a process like the one followed for these 26 claimants discloses that most (if not all) of their claims are likely invalid (if not fraudulent), then what possible

---

[6] To be sure, BTL believes that Requests for Additional Information and/or Deficiency Letters should have been sent out to many more claimants, and BTL likewise believes that the Settlement Administrator should have undertaken independent verification of numerous other claims for the reasons addressed in BTL's recent submissions, as TransUnion and LexisNexis both made clear is required.  See, e.g., BTL's Mot. to Compel (Dkt. 458) at 5 (identifying additional categories of claimants BTL believes should be sent Requests for Additional Information and/or Deficiency Letters); BTL's Obj. (Dkt. 490) at 22-25 (requesting confirmatory discovery for sample of accepted claims).

reason could Class Counsel have for legitimately opposing requests for a similar process for other claimants or at least a random sample of all claimants?[7]  No such reason is at all apparent, and to the contrary, it is increasingly apparent that Class Counsel are intent on doing everything possible to use the accelerated schedule they have been insisting on from the beginning of the claims process (over BTL's objections) in the hope all of these issues and problems will be swept under the rug and not interfere with approval of the Settlement and what Class Counsel apparently hope will be a big payday for them.  See BTL's Resp. to Final Approval Mot. (Dkt. 496) at 13-21.

### B.   Class Counsel's "Additional Information" Clearly Raises More Questions Than It Answers

Despite the fact that 25 of the 26 claimants provided no response to Requests for Additional Information or Deficiency Letters and thus did not cure or even address the problems that led to the Settlement Administrator's denial of their claims, Class Counsel sua sponte undertook additional research in an attempt to resuscitate these claims.  See Pls.' Stmt. of Disputed Claims (Dkt. 487) at 2.  But for many of these claimants, Class Counsel's "additional information" only confirms previously known problems and often raises additional issues.  See disc. infra at 10-17.  Various instances of these deficiencies are discussed below.  See id.

---

[7] BTL has previously suggested that claimants who did not respond to Requests for Additional Information or Deficiency Letters for any reason should not have their claims approved, even for numbers that were not directly the subject of such a request or letter.  See BTL's Obj. (Dkt. 490) at 20.  The credibility of claimants who attested under penalty of perjury that they were Settlement Class Members while making claims (under penalty of perjury) for numbers that were not on the Biggerstaff list is very much open to question, even where those claimants also made a claim for a number that was on the Biggerstaff list.  See id. at 18-22.  If these claimants ignored Requests for Additional Information or Deficiency Letters in their entirety, however, then their claims should be denied in their entirety, and the same is true for the 26 claimants that are the subject of Plaintiffs' December 8, 2023 submission (Dkt. 487).

1.     **Tracking No. 2236** – The only number provided by this claimant on its Claim Form was a number <u>not</u> found on the Biggerstaff list, but the claimant did not respond to a Deficiency Letter on that issue (in addition to not responding to the Request for Additional Information regarding the fax service provider issue).  <u>See</u> Excerpts of Reqs. for Add'l Info. & Deficiency Letters, Ex. 3; Final Claims Rpt. (Dkt. 490-20).  Furthermore, Class Counsel's "additional information" includes a Corporation Detail Report from the Florida Secretary of State indicating that the corporation itself first came into existence in 2018, roughly eight years <u>after</u> the last fax was purportedly sent on behalf of BTL.  <u>See</u> Pls.' Appendix (Dkt. 487) at Ex. 1. Each of these are, of course, additional and independent reasons to deny this claim, but they only reinforce the issues that caused the Settlement Administrator to issue a Deficiency Letter in the first place.

2.     **Tracking No. 9911** – This claimant also provided a number that was <u>not</u> on the Biggerstaff list as well as a number that was on the list, but this claimant did not respond to a Deficiency Letter on that issue (in addition to not responding to the Request for Additional Information regarding the fax service provider issue), which BTL believes should result in denial for all claimed numbers given the credibility issues raised.  <u>See</u> Excerpts of Reqs. for Add'l Info. & Deficiency Letters, Ex. 3; Final Claims Rpt. (Dkt. 490-20); BTL's Obj. (Dkt. 490) at 20.  Furthermore, neither Class Counsel's Corporation Detail Report nor their Google search result indicate the nature of this claimant's business, and the Google search did not even include the name of the contact included with the Final Claims Report.  <u>See</u> Pls.' Appendix (Dkt. 487) at Ex. 2.  In the absence of any information describing what sort of business the claimant identified in Tracking No. 9911 is or was engaged in,

however, and given the fact that this claimant did not respond to the Request For Additional Information or the Deficiency Letter, the claim should be denied in its entirety.[8]

3.     **Tracking No. 11069** – Neither Class Counsel's Corporation Detail Report nor their Internet search indicates the nature of this claimant's business, and the Internet search merely indicates that the claimant's "Industry" is "Business Services at Non-Commercial Site."   See Pls.' Appendix (Dkt. 487) at Ex. 3. Furthermore, none of the addresses identified on either the Corporation Detail Report or the Internet search result match the address associated with the claimant on the Final Claims Report.  See id.; Final Claims Rpt. (Dkt. 490-20).  In the absence of any information describing what sort of business the claimant identified in Tracking No. 11069 is or was engaged in, however, and given that this claimant also did not respond to the Request for Additional Information sent to it by the Settlement Administrator, the claim should be denied.

4.     **Tracking No. 21838** – Neither Class Counsel's Corporation Detail Report nor their OpenCorporates Internet search indicate the nature of this claimant's business.  See Pls.' Appendix (Dkt. 487) at Ex. 4.  In the absence of any information describing what sort of business the claimant identified in Tracking No.

---

[8] While the Settlement Administrator denied this claim in its entirety (presumably because the claimant did not address the fax service provider issue), the fact that the claimant included a number that was not on the Biggerstaff list indicates that the attestation by the claimant was plainly false or fraudulent.  See Final Claims Rpt. (Dkt. 490-20).  For all other claimants providing numbers that both were and were not on the Biggerstaff list, however, BTL renews its request that these claims be denied in their entirety or, in the alternative, that BTL or the Settlement Administrator at least be allowed to seek from these claimants independent verification and validation that they actually held the number on the Biggerstaff list from July 14, 2009 to June 9, 2010 and did not receive the fax as email through an online service provider.  See BTL's Obj. (Dkt. 490) at 20.

21838 is or was engaged in, however, and given the lack of any response to the Settlement Administrator's Request for Additional Information, the claim should be denied.

5.     **Tracking No. 25084** – Neither Class Counsel's Corporation Detail Report nor their attached Facebook search match the address, state or representative name associated with the claimant on the Final Claims Report.  See Pls.' Appendix (Dkt. 487) at Ex. 5; Final Claims Rpt. (Dkt. 490-20).  The Corporation Detail Report and attached Facebook search also do not match each other, indicating neither of Class Counsel's searches identified the correct entity.  See id.[9]  In the absence of any information describing what sort of business the claimant identified in Tracking No. 25084 is or was engaged in, however, the claim should be denied.

6.     **Tracking No. 31448** – Class Counsel's only piece of additional information for this claimant is a Google search of an entity name.  See Pls.' Appendix (Dkt. 487) at Ex. 6.  The cities in the addresses of every result visible on the search page, however, do not match the city associated with the claimant on the Settlement Administrator's Final Claims Report.  See id.; Final Claims Rpt. (Dkt. 490-20).  Furthermore, the contact information on the Final Claims Report is an individual's name, but Class Counsel's Google search is for an entity name. Compare Pls.' Appendix (Dkt. 487) at Ex. 6, with Final Claims Rpt. (Dkt. 490-20). Accordingly, this claim was properly rejected.

---

[9] Indeed, even Class Counsel do not know which (if either) of the entities identified in their "additional information" is actually the claimant entity.  The "additional information" transmitted to BTL by Class Counsel on December 7, 2023 before Plaintiffs filed their December 8, 2023 submission shows the file name for the Facebook page begins with the entity name and ends with "possibly them_not sure.pdf."   This, however, only further underscores the need for actual confirmatory discovery from claimants or outright denial of all such claims.

7.      **Tracking No. 43109** – The only number provided by this claimant was <u>not</u> found on the Biggerstaff list, but the claimant did <u>not</u> respond to a Deficiency Letter for that issue (in addition to not responding to the Request for Additional Information regarding the fax service provider issue).  <u>See</u> Excerpts of Reqs. for Add'l Info. & Deficiency Letters, Ex. 3; Final Claims Rpt. (Dkt. 490-20).  Furthermore, Class Counsel's only additional information for this claimant indicates that it is an administrative body of the Florida state government.  <u>See</u> Pls.' Appendix (Dkt. 487) at Ex. 7.  Each of these are, however, additional, independent reasons to deny this claim.

8.      **Tracking No. 45004** – Class Counsel's only piece of additional information for this claimant is a Yelp search with an address that does <u>not</u> match the address (or even the state) associated with the claimant on the Final Claims Report.  <u>See</u> Pls.' Appendix (Dkt. 487) at Ex. 8; Final Claims Rpt. (Dkt. 490-20).  The Yelp page contact telephone number, however, also does not match the area code of the claimed fax number and is in fact associated with a location in Miami.  <u>See</u> <u>id.</u>[10]

9.      **Tracking No. 50134** – The only number provided by this claimant was <u>not</u> found on the Biggerstaff list, but the claimant did not respond to a Deficiency Letter for that issue (in addition to not responding to the Request for Additional Information regarding the fax service provider issue).  <u>See</u> Excerpts of Reqs. for

---

[10] Again, this claim would pretty clearly appear to be the result of the over-inclusive notice that Class Counsel insisted on, together with Class Counsel's continuing resistance to <u>any</u> form of independent verification and validation.  <u>See</u> disc. <u>infra</u> at 14 n.11.  <u>But</u> <u>see</u> Parks Decl. (Dkt. 398-2) ¶¶ 5-6; Roach Decl. (Dkt. 442) ¶ 3.  There is no suggestion, however, that faxes were ever sent on behalf of the Buccaneers to Miami, and there is every reason to believe this claimant is not a Settlement Class Member.

Add'l Info. & Deficiency Letters, Ex. 3; Final Claims Rpt. (Dkt. 490-20).  This is, of course, an independent reason to deny this claim.  Furthermore, neither Class Counsel's Corporation Detail Report nor their LinkedIn search indicate the nature of this claimant's business.  See Pls.' Appendix (Dkt. 487) at Ex. 9.  In the absence of any information describing what sort of business the claimant identified in Tracking No. 50134 is or was engaged in, however, and given that this claimant did not respond to either the Request for Additional Information or Deficiency Letter, the claim should be denied.

10.    **Tracking No. 50201** – The only number provided by this claimant was also claimed by someone else, and this claimant did not respond to the Request for Additional Information sent to it by the Settlement Administrator.  See Excerpts of Reqs. for Add'l Info. & Deficiency Letters, Ex. 3; Final Claims Rpt. (Dkt. 490-20).  This is, however, an independent reason to deny this claim.  Moreover, Class Counsel's only piece of additional information on this claimant is a Yellow Pages search describing a company that does not have the same name as the company name associated with the claimant on the Final Claims Report.  See Pls.' Appendix (Dkt. 487) at Ex. 10; Final Claims Rpt. (Dkt. 490-20).  Furthermore, the address associated with the Yellow Pages company is in Delray Beach, which is nowhere near the address associated with the claimant on the Final Claims Report.  See id.  Finally, the Yellow Pages contact telephone number does not match the area code of the claimed fax number and is also associated with Delray Beach.[11]  See id.  The claim was properly denied.

---

[11] Again, discrepancies of this nature should call into question the breadth of the Mailed Notice Class Counsel insisted on as well as the need for independent verification and validation, which itself was made all the more compelling given the breadth of the Mailed Notice.  See disc. supra

11.   **Tracking No. 99934** – Class Counsel's only pieces of additional information for this claimant are a Corporation Detail Report and an Internet search for a business that does <u>not</u> match the business name listed by the claimant on the Final Claims Report.  <u>See</u> Pls.' Appendix (Dkt. 487) at Ex. 14; Final Claims Rpt. (Dkt. 490-20).  Furthermore, neither of the business names nor the addresses listed in the Corporation Detail Report and the Internet search performed by Class Counsel match each other.  <u>See id.</u>  In the absence of any indication that the entities identified in Class Counsel's additional information are the same entity that submitted a claim, however, and given that this claimant did not respond to a Request for Additional Information, the claim should be denied.

12.   **Tracking No. 108927** – Class Counsel's Corporation Detail Report for this claimant contains a name that does <u>not</u> match the contact information provided

---

at 13 n.10.  They should also further call into question the efficacy of the attestation requirement of the Claim Form, on which Class Counsel have otherwise placed such heavy reliance.  If Mailed Notice is sent to many persons and entities that are not Settlement Class Members, the likelihood of false and fraudulent claims is much greater, and the responsibility of the Settlement Administrator was to validate claims.  <u>See</u> Settlement Agt. (Dkt. 324-1) § VIII.C ("The Settlement Administrator shall be responsible for reviewing all claims to determine their validity."); <u>see also</u>, <u>e.g.</u>, <u>DeHoyos v. Allstate</u>, 240 F.R.D. 269, 296-97 (W.D. Tex. 2007) (addressing the risks of over-inclusive notice).  If the Settlement Administrator was unwilling or unable to do that job, however, it is scarcely realistic to expect BTL to have uncovered all instances of false and fraudulent claims within five weeks between the issuance of the Settlement Administrator's Final Claims Report and the due date for filing disputed claims, especially since (a) BTL did not receive documentation on accepted claims from the Settlement Administrator until well <u>after</u> November 3, 2023, (b) there was an intervening major holiday (Thanksgiving) and (c) BTL's counsel also needed to prepare objections to accepted claims, a response to Plaintiffs' motion for final approval and BTL's Article III motion (since the final approval motion Plaintiffs filed on November 17, 2023 in effect did not address Article III).  If BTL had had more time, however, we are certain we could have uncovered many more instances of fraud or fraudulent claims, but we respectfully submit that what was uncovered in the short amount of time available should at least be sufficient to warrant further inquiry.  <u>See</u>, <u>e.g.</u>, <u>Sanborn v. Viridian Energy</u>, 2018 WL 940542, *6 (D. Conn. 2018) (noting a settlement administrator's responsibility to "use adequate and customary procedures and standards to prevent the payment of fraudulent claims"); <u>Charvat v. Valente</u>, 2019 WL 5576932, *9-10 (N.D. Ill. 2019) (settlement administrator in TCPA case carried out "multiple rounds of notice to potential claimants" in order to "weed[] out potentially fraudulent claims").

by the claimant on the Final Claims Report.  See Pls.' Appendix (Dkt. 487) at Ex. 20; Final Claims Rpt. (Dkt. 490-20).  Furthermore, Class Counsel's pieces of additional information do not indicate the nature of this claimant's business.  See id. In the absence of any information describing what sort of business the claimant identified in Tracking No. 108927 is or was engaged in, however, and given the fact that this claimant did not respond to the Request for Additional Information sent to it, the claim should be denied.

13.   **Tracking No. 109364** – Neither Class Counsel's Corporation Detail Report nor their Business License Search for this claimant indicates the nature of this claimant's business.  See Pls.' Appendix (Dkt. 487) at Ex. 21.  In the absence of any information describing what sort of business the claimant identified in Tracking No. 109364 is or was engaged in and the failure of this claimant to respond to the Request for Additional Information sent to it, this claim should be denied.

14.   **Tracking No. 112660** – Class Counsel's Corporation Detail Report for this claimant contains company name information and contact information that does not match either the Final Claims Report or Class Counsel's Internet search results. See Pls.' Appendix (Dkt. 487) at Ex. 22.  In the absence of any information describing what sort of business the claimant identified in Tracking No. 112660 is or was engaged in and given the failure of this claimant to respond to the Request for Additional Information issued to it, this claim should be denied.

15.   **Tracking No. 114421** – Neither Class Counsel's Corporation Detail Report nor their Internet search result for this claimant indicates the nature of this claimant's business.  See Pls.' Appendix (Dkt. 487) at Ex. 23.  In the absence of any information describing what sort of business the claimant identified in Tracking No.

16

114421 is or was engaged in and given the failure of this claimant to respond to the Request for Additional Information issued to it, this claim should be denied.

16.    **Tracking No. 115706** – The only number provided by this claimant was identified by the Settlement Administrator as being associated with an entity that did <u>not</u> come into existence until after June 9, 2010, and this claimant did not respond to the Request for Additional Information issued by the Settlement Administrator.  <u>See</u> Excerpts of Reqs. for Add'l Info. & Deficiency Letters, Ex. 3; Final Claims Rpt. (Dkt. 490-20).  This is obviously an additional, independent reason to deny this claim, and it also (again) points to the risks of over-inclusive notice.  <u>See</u> disc. <u>supra</u> at 14 n.11.  Furthermore, Class Counsel's Business License Search does not indicate the nature of this claimant's business.  <u>See</u> Pls.' Appendix (Dkt. 487) at Ex. 25.  In the absence of any information describing what sort of business the claimant identified in Tracking No. 115706 is or was engaged in and the fact this claimant did not respond to the Request for Additional Information issued to it, this claim should be denied.

**C.  The 26 Claimants Featured By Class Counsel In Their December 8, 2023 Submission (Dkt. 487) Only Further Confirm The Ascertainability And Other Issues BTL Has Been Raising For Some Time**

Ironically, the claims of the 26 claimants addressed in Plaintiffs' December 8, 2023 submission (Dkt. 487) only point to much broader problems.  <u>See</u> BTL's Obj. (Dkt. 490); BTL's Obj. (Dkt. 486). Indeed, the numerous problems with both the claims themselves as well as Class Counsel's "additional information" offered in their December 8, 2023 submission (<u>see</u> Pls.' Stmt. of Disputed Claims (Dkt. 487) at <u>passim</u>) underscore what BTL has been saying for some time: it is simply not feasible at this point in time, 13 years after the faxes were allegedly sent on BTL's

behalf, to ascertain the identity of Settlement Class Members and to determine whether they have Article III standing to pursue TCPA claims against BTL, due in no small part to the failure of Class Counsel to ascertain the identities of Settlement Class Members much earlier in the litigation when that information would have been available.  See, e.g., BTL's Mot. to Dismiss (Dkt. 492) at 17-18, 21-22; BTL's Resp. to Final Approval Mot. (Dkt. 496) at 13-21.

At an absolute <u>minimum</u>, however, additional confirmatory discovery beyond the rudimentary searches performed by Class Counsel is needed from these 26 claimants in order to determine whether they are fax service providers, let alone whether their claims have the additional defects identified by the Settlement Administrator that were unaddressed by the claimants (and Class Counsel).  In the absence of confirmatory discovery, BTL has no way of knowing whether these claimants are fax service providers, whether the entities identified in Plaintiffs' "additional information" are actually the entities that submitted claims or whether their claims are deficient for additional reasons (e.g., they are not Settlement Class Members), such that their claims should be denied unless further information is supplied or obtained.  See also BTL's Obj. (Dkt. 490) at 22-25.[12]

---

[12] The lack of ascertainability of the Settlement Class and the need for further sampling and/or confirmatory discovery are clearly linked.  Sampling and confirmatory discovery are required precisely because the Settlement Class increasingly appears to not be ascertainable, and the difficulties in verifying class membership are directly attributable to the lack of ascertainability as is the likely utility of conventional methods for doing so.  Further sampling or confirmatory discovery are, however, only necessary if the Court determines that Class Counsel have satisfied their burden of successfully demonstrating that the process for identifying Settlement Class Members is both "manageable" and "successful," but if that burden has not been met (as we believe is plainly the case), then there will obviously be no need for additional sampling or confirmatory discovery.  See BTL's Resp. to Final Approval Mot. (Dkt. 496) at 14-21.

**D.   The Claims Of These 26 Claimants Also Highlight The Abject Failure Of The Settlement Administrator To Obtain The Independent Verification And Validation That TransUnion And LexisNexis <u>Expressly</u> Stated Was And Is Needed**

The conflicting information that Class Counsel was able to obtain about these 26 claimants also reinforces the questions raised earlier by BTL as to why the Settlement Administrator refused or simply failed to undertake independent verification of <u>any</u> claims other than, of course, the one claim of Cin-Q, for which "verification" efforts consisted of the Settlement Administrator performing a search on the CLEAR database, obtaining an initial result that the number claimed by Cin-Q was actually held by Sunshine State Insurance (and <u>not</u> Cin-Q) and then re-running the search on CLEAR using Cin-Q's address in order to "verify" that the number in question was purportedly held by Cin-Q from July 14, 2009 to June 9, 2010, all the while essentially ignoring the documentation directly suggesting that <u>another</u> entity (<u>i.e.</u>, Facility Site Services) held that number at that time.  <u>See</u> BTL's Obj. to Cin-Q Claim (Dkt. 489) at 5-12.

There is, however, <u>no</u> indication that the Settlement Administrator of its own volition performed a CLEAR search (or <u>any</u> other type of search on the Internet or elsewhere) for <u>any</u> other claimant in order to verify and validate whether that claimant was actually a Settlement Class Member, and our understanding is that the Settlement Administrator did no such thing, instead hiding behind the excuse that it could only use "Court-endorsed defects" to investigate or invalidate claims, a limitation that was never suggested by the Court and is nowhere to be found in the Settlement Agreement.  <u>See</u> Nov. 16, 2023 Email fr. J. Diego (Dkt. 489-11) (Settlement Administrator admitting it did not utilize CLEAR in connection with any other class member responses or disputes); BTL's Obj. (Dkt. 490) at 5; <u>id.</u> at Ex.

19

3; see also Settlement Agt. (Dkt. 324-1) § VIII.C (specifying the "Settlement Administrator shall be responsible for reviewing all claims to determine their validity").[13] Nor is there any indication that the Settlement Administrator performed the sort of rudimentary searches undertaken by Class Counsel for these 26 claimants using readily-available sources (i.e., Google, Facebook, Yelp, the Yellow Pages, OpenCorporates or other unspecified Internet searches) to actually verify claims other than the claim of Cin-Q. See id.

As we have pointed out previously, the Settlement Administrator quite clearly attempted to conceal (at least from BTL) the serious limitations of the reverse lookup process, but TransUnion and LexisNexis both independently confirmed that their databases can only be used to identify Settlement Class Members if the information from those databases is subject to "independent verification and validation." See, e.g., Roach Decl. (Dkt. 442) ¶ 3. The Settlement Administrator, however, has simply failed to do what TransUnion and LexisNexis have made clear is required, instead vainly trying to take refuge in prior directives of the Court and refusing to do any form of independent verification or validation whatsoever into anything other than narrow categories of what the Settlement Administrator self-servingly terms as "Court-endorsed defects." See Nov. 30, 2023 Email fr. O. Castillejos (Dkt. 489-3).

---

[13] The definition of the term "Valid Claim" in the Settlement Agreement further undercuts the notion advanced by Class Counsel that a Claim Form cannot be challenged so long as it contains (a) a number on the Biggerstaff list and (b) is signed under penalty of perjury. See, e.g., BTL's Resp. to Mot. re Claims Process (Dkt. 461) at 7-8. A Valid Claim is defined as a timely claim "submitted by a Settlement Class Member," and it is the obligation of the Settlement Administrator to ensure that "all" claims that are honored are "Valid Claims." See Settlement Agt. (Dkt. 324-1) §§ II.SS, VIII.B, VIII.C. But if someone (a) held a number on the Biggerstaff list but did not hold that number from July 14, 2009 to June 9, 2010 or (b) received a fax sent on behalf of BTL via an email, then their claim is not a "Valid Claim" and the Settlement Administrator was obligated to verify the validity of all claims. See Settlement Agt. (Dkt. 324-1) § III.A (limiting "Settlement Class" to those who received faxes relating to Buccaneers games in 2009 or 2010); disc. supra at 3-4 (claimants receiving faxes sent via email do not have standing under Article III or the TCPA).

But if Class Counsel could obtain conflicting information over a short period of time through rudimentary searches on the Internet (just as BTL did—see disc. supra at 4 n.2), then it is difficult to believe that the Settlement Administrator, with its expertise in administering class action settlements, could not do much, much more to independently verify and validate claims if it simply chose to do so (or was directed by the Court to do so, if such direction is necessary).  See Settlement Agt. (Dkt. 324-1) § VIII.E (empowering the Settlement Administrator to "seek[] any additional information from" Settlement Class Members to determine claim validity).

In sum, Class Counsel consistently insisted (over BTL's objection) on an accelerated and truncated period for the review and challenging of claims, and in retrospect, it is fairly clear Class Counsel wanted to impair as much as possible the ability of BTL or the Settlement Administrator to thoroughly review claims.  But like the peeling of an onion, virtually each claim that gets scrutiny reveals more and more problems, including (ironically enough) the 26 claims that were the focus of Plaintiffs' December 8, 2023 submission (Dkt. 487).  There is, however, no reason at all to believe these problems would be limited to these 26 claims, and consistent with the Settlement Agreement and BTL's right to due process, there is every reason to believe that scrutiny of other claims is required.  See, e.g., Sanborn, 2018 WL 940542, *6 (vesting settlement administrator (subject to ultimate oversight by the court) with authority to request further information or deny claims when "any fraud is detected or reasonably suspected").

## IV.  CONCLUSION

WHEREFORE, BTL respectfully requests that the Court deny Plaintiffs' request to approve the disputed claims identified in Plaintiffs' Statement Of

Disputed Claims (Dkt. 487) absent further discovery to confirm that they are not fax service providers, are actually Settlement Class Members and do not suffer from any additional defects.   BTL further requests such other relief as the Court deems appropriate, including a directive to the Settlement Administrator to perform at a minimum searches on at least a representative sample of accepted claims using the sources utilized by Class Counsel for these 26 claims.

Date:  December 29, 2023                    Respectfully submitted,

                                           */s/ Robert C. Collins III*
                                           Robert C. Collins III, One of the Attorneys
                                           for Defendant Buccaneers Team LLC

Mark S. Mester                             Joseph H. Varner, III
    (admitted *pro hac vice*)                 (Bar No. 394904)
Robert C. Collins III                      HOLLAND & KNIGHT LLP
    (admitted *pro hac vice*)              100 North Tampa Street, Suite 4100
LATHAM & WATKINS LLP                       Tampa, Florida 33602-3644
330 North Wabash Avenue                    Telephone:  (813) 227-8500
Suite 2800                                 Facsimile:  (813) 229-0134
Chicago, Illinois 60611                    Email:  joe.varner@hklaw.com
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  mark.mester@lw.com
         robert.collins@lw.com

## LOCAL RULE 3.01(h) STATEMENT

Pursuant to Local Rule 3.01(h), BTL respectfully requests an evidentiary hearing on any factual issues raised by this submission <u>or</u> Plaintiffs' Statement Of Disputed Claims.

Date: December 29, 2023

*/s/ Robert C. Collins III*

Robert C. Collins III
  (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
E-mail: robert.collins@lw.com

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 29, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which served all relevant parties.

Date:  December 29, 2023

*/s/ Robert C. Collins III*
Robert C. Collins III, One of the Attorneys for Defendant Buccaneers Team LLC

Robert C. Collins III
  (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  robert.collins@lw.com