# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

CIN-Q AUTOMOBILES, INC., )
<u>et al.</u>, )
                   Plaintiffs, )
    v. )
BUCCANEERS LIMITED )
PARTNERSHIP and JOHN DOES )
1-10, )
               Defendants, )
——————————————— )
TECHNOLOGY TRAINING )
ASSOCIATES, INC., <u>et al.</u>, )
              Intervenors. )

Case No. 8:13-cv-01592-AEP

**Magistrate Judge
Anthony E. Porcelli**

## BTL'S RESPONSE TO MOTION TO
## OPT OUT OF ASTRO COMPANIES, LLC

Date:  December 29, 2023

Mark S. Mester
  (admitted *pro hac vice*)
Robert C. Collins III
  (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  mark.mester@lw.com
       robert.collins@lw.com

Joseph H. Varner, III
  (Bar No. 394904)
HOLLAND & KNIGHT LLP
100 North Tampa Street, Suite 4100
Tampa, Florida 33602-3644
Telephone:  (813) 227-8500
Facsimile:  (813) 229-0134
Email:  joe.varner@hklaw.com

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION AND FACTUAL BACKGROUND ..............................1

II.   DISCUSSION.........................................................................................4

      A.    Astro's Motion Plainly Does Not Comply With The
Requirements Of The Settlement Agreement ......................................4

      B.    Astro Has Not Shown Or Attempted To Show "Good Cause"
Or "Excusable Neglect" For Its Delay In Opting Out .........................6

            1.    Astro Offers No Compelling Reason Or Explanation For
Its Otherwise Inexcusable Delay .................................................7

            2.    Astro's Additional Delay Is Equally Inexcusable ...................10

            3.    The Sheer Length Of Astro's Delay Further Precludes A
Finding Of "Excusable Neglect" ...............................................10

            4.    Westfax, Amerifactors And Ryerson.........................................12

                a.    Westfax ............................................................................13

                b.    Amerifactors And Ryerson.............................................14

                c.    BTL Is Entitled To A Declaration From The Court
That Astro Does Not Have A TCPA Claim For
Faxes Sent To Astro's Subscribers.................................15

            5.    BTL Would Be Prejudiced If Astro Were Allowed To
Opt Out At The Eleventh Hour..................................................16

III.   CONCLUSION.............................................................................19

LOCAL RULE 3.01(h) STATEMENT ...................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Advanced Rehab v. Amedisys,
  2020 WL 4937790 (W.D. Tenn. 2020)...................................................................15

Brannon v. Household Int'l,
  236 Fed. Appx. 285 (9th Cir. 2007).....................................................................11

Chevron, U.S.A., Inc. v. Nat. Res. Def. Council,
  467 U.S. 837 (1984)................................................................................................12

Commission To Save WEAM v. F.C.C.,
  808 F.2d 113 (D.C. Cir. 1986)...............................................................................15

Daisy v. Mobile Mini,
  489 F. Supp. 3d 1287 (M.D. Fla. 2020)..............................................................15

Demint v. NationsBank,
  208 F.R.D. 639 (M.D. Fla. 2002)..........................................................5, 6, 7, 10

Drazen v. Pinto,
  41 F.4th 1354 (11th Cir. 2022), vacated on other grounds,
  61 F.4th 1297 (11th Cir. 2023)............................................................................16

Gallagher v. Delaware & H.R.,
  15 F.R.D. 1 (M.D. Pa. 1953)...................................................................................5

Georgia Power v. Teleport Commc'ns Atlanta,
  346 F.3d 1047 (11th Cir. 2003)............................................................................15

Georgine v. Amchem,
  1995 WL 251402 (E.D. Pa. 1995)...........................................................................5

Grilli v. Met. Life,
  78 F.3d 1533 (11th Cir. 1996)..............................................................................6, 7

Hallie v. Wells Fargo,
  2015 WL 1914864 (N.D. Ind. 2015).......................................................................5

In re Am. Tower,
  2008 WL 11518467 (D. Mass. 2008).................................................................4, 11

In re Amerifactors,
  34 F.C.C.R. 11950 (FCC 2019)...........................................2, 12, 14, 16

<strong>Page(s)</strong>

In re Broiler Chicken,
  2019 WL 6699664 (N.D. Ill. 2019) ........................................................7

In re Cathode Ray Tube,
  2014 WL 4181732 (N.D. Cal. 2014) ....................................................11

In re Citigroup,
  2014 WL 3610988 (S.D.N.Y. 2014) ..................................................9, 18

In re Diet Drugs,
  92 Fed. Appx. 890 (3d Cir. 2004) .......................................................17

In re Imprelis,
  2014 WL 348593 (E.D. Pa. 2014) .......................................................17

In re Joseph T. Ryerson & Son,
  35 F.C.C.R. 9474 (FCC 2020) .......................................... 2, 12, 14, 16

In re Navistar,
  990 F.3d 1048 (7th Cir. 2021)......................................................4, 9, 18

In re Prudential Ins.,
  177 F.R.D. 216 (D.N.J. 1997) ......................................................7, 9, 18

In re Vitamins,
  327 F.3d 1207 (D.C. Cir. 2003) ..........................................................11

In re Westfax,
  30 F.C.C.R. 8620 (FCC 2015) ................................ 2, 8, 12, 13, 14, 16

Jackson v. SPS Techs.,
  2018 WL 4440804 (C.D. Cal. 2018)......................................................7

Johnson v. Hercules,
  1999 WL 35648160 (S.D. Ga. 1999) .....................................................5

Klein v. O'Neal,
  2009 WL 1174638 (N.D. Tex. 2009).....................................................6

Licari Family Chiro. v. Eclinical Works,
  2021 WL 4506405 (M.D. Fla. 2021) ...................................... 12, 13, 16

Mais v. Gulf Coast Collection Bureau,
  768 F.3d 1110 (11th Cir. 2014)............................................................15

Martin v. Social Sec. Admin.,
  903 F.3d 1154 (11th Cir. 2018)............................................................13

**Page(s)**

MRI Assocs. v. Dairyland Ins.,
   2014 WL 29103 (M.D. Fla. 2014) ........................................................11

Murphy v. DCI Biologicals,
   797 F.3d 1302 (11th Cir. 2015)...........................................................15

Olden v. LaFarge,
   472 F. Supp. 2d 922 (E.D. Mich. 2007)..............................................19

Palm Beach Golf Center v. John G. Sarris, D.D.S., P.A.,
   781 F.3d 1245 (11th Cir. 2015)...........................................................12

Pioneer Inv. Servs. v. Brunswick Assocs.,
   507 U.S. 380 (1993) ..............................................................................6

Scoma Chiro. v. Dental Equities,
   2021 WL 6105590 (M.D. Fla. 2021) ...................................................12

Scoma Chiro. v. Nat'l Spine,
   2022 WL 16695130 (M.D. Fla. 2022) ..................................................14

Sharfman v. Infucare,
   2022 WL 18926792 (M.D. Fla. 2022) ..................................................12

Skidmore v. Swift & Co.,
   323 U.S. 134 (1944) ............................................................................12

TransUnion v. Ramirez,
   594 U.S. 413 (2021) ............................................................................14

True Health Chiro. v. McKesson,
   2021 WL 4818945 (N.D. Cal. 2021), aff'd, 2023 WL 7015279
   (9th Cir. 2023)....................................................................................15

## STATUTES

47 U.S.C. § 155................................................................................................15

## RULES

Fed. R. Civ. P. 6 .................................................................................... 4, 6, 19

## REGULATIONS

47 C.F.R. § 1.102 ............................................................................................15

iv

Defendant Buccaneers Team LLC ("BTL") responds as follows to the December 22, 2023 motion of Astro Companies, LLC ("Astro") seeking leave to opt out of the Settlement Class:[1]

## I.   INTRODUCTION AND FACTUAL BACKGROUND

On October 11, 2022, the Court entered an order setting clear deadlines for the claims process, including a deadline of February 6, 2023 for Settlement Class Members to choose between submitting a claim or opting out of the Settlement ("Opt-Out / Claim Deadline").  See Order (Dkt. 418).  This deadline was set for Settlement Class Members to make a decision whether they wished to remain in the Settlement Class and submit a Claim Form or exclude themselves from the Settlement Class.  See id.

Rather than opting out of the Settlement by the deadline set by the Court, however, Astro elected to submit a timely Claim Form for 783 telephone numbers at which 2,124 faxes were purportedly received by Astro.  Astro is an online fax service provider.  It remains unclear, however, how many of these numbers claimed by Astro were used for Astro's own internal business purposes versus how many were numbers assigned to subscribers of Astro's online fax service who themselves were the intended recipients of faxes purportedly sent on BTL's behalf.  See BTL's Obj. (Dkt. 486) at 4, 16-18.  It was for this reason that BTL suggested in its December 8, 2023 submission (Dkt. 486) that the Settlement Administrator needed to obtain additional information from Astro in order to verify whether Astro was

---

[1] Capitalized terms have the meaning ascribed to them in the Settlement Agreement filed with Plaintiffs' motion for preliminary approval.  See Settlement Agt. (Dkt. 324-1).  In addition, all emphasis is supplied, and all internal citations, quotations and footnotes are omitted.

entitled to compensation for any of the numbers included on its Claim Form (and if so, how many).  See id.

On October 3, 2023, counsel for Astro filed a Notice of Appearance, and on November 3, 2023, the Settlement Administrator submitted its Final Claims Report. See VanEtten Appearance (Dkt. 477); Final Claims Rpt. (Dkt. 490-20).  As noted, BTL then filed on December 8, 2023 an objection to the claims made by Astro that were allowed by the Settlement Administrator, requesting that the Settlement Administrator be directed to obtain additional information from Astro or that BTL be allowed to take confirmatory discovery.  See BTL's Obj. (Dkt. 486) at 4, 16-18. On the very same day that BTL filed its objection to Astro's claims, however, Astro filed a notice indicating its intention to opt out of the Settlement Class, some 305 days after the deadline previously set by the Court.  See Notice (Dkt. 483).

After the status conference on December 18, 2023, Astro restyled its notice as a motion, which it filed on December 22, 2023.  See Mot. (Dkt. 503).  In that motion, Astro makes many of the same arguments it made in its notice.  See id.; Notice (Dkt. 483).[2]  Astro, however, now claims to have had 869 fax numbers on the Biggerstaff

---

[2] As discussed more fully below, Astro's motion flies in the face of three separate declaratory rulings by the Federal Communications Commission ("FCC") that are all entitled to deference from this Court.  See In re Westfax, 30 F.C.C.R. 8620 (FCC 2015); In re Amerifactors, 34 F.C.C.R. 11950 (FCC 2019); In re Joseph T. Ryerson & Son, 35 F.C.C.R. 9474 (FCC 2020).  Astro alleges in its motion that "faxes went to approximately 869 facsimile numbers" (notwithstanding the fact that its claim was only tentatively approved by the Settlement Administrator for 780 numbers), but Amerifactors makes clear that "an online fax service is not a 'telephone facsimile machine' and a fax sent to one is not 'an unsolicited facsimile advertisement' prohibited by the TCPA."  Mot. (Dkt. 503) at 2; Amerifactors, 34 F.C.C.R. at 11953.  As BTL has previously noted, Astro is exactly such a service, and Astro does not deny or contest that characterization.  See BTL's Obj. (Dkt. 486) at 16-18.  Furthermore, Westfax makes clear that "it is the consumer to whom the content of a fax or efax is directed that is the 'recipient' under the TCPA" and "[e]ntities that convert faxes to email are not 'recipients' of such faxes under the TCPA because they are not the intended audience for the fax."  Westfax, 30 F.C.C.R. at 8624.  There is, however, no indication that Astro was receiving on the claimed numbers the faxes for its own internal business use rather than as a fax service provider that is not covered by the prohibitions of the TCPA.  See BTL's Obj. (Dkt. 486) at 17-18.  While Westfax has relevance to other issues in the case, such as Intervenors'

list (not 783, as it indicated on its Claim Form), and Astro suggests in its motion that it should be entitled to recover under the TCPA for any faxes sent to those numbers, irrespective of whether Astro used those numbers for its own internal business purposes or those numbers were assigned to subscribers to Astro's online fax service and faxes received on those numbers were then forwarded to those subscribers by email or other means over the Internet.  See Mot. (Dkt. 503) at 2, 4-5.

Under the clear terms of the Settlement Agreement, a Settlement Class Member who wished to opt out "must complete and send to the Settlement Administrator a request for exclusion that is post-marked no later than the Opt-Out and Objection Date" (i.e., February 6, 2023).  See Settlement Agt. (Dkt. 324-1) § IX.B; Order (Dkt. 418).  The Settlement Agreement further requires that the "request for exclusion must be personally signed by the member of the Settlement Class requesting exclusion, contain a statement that indicates his or her desire to be excluded from the Settlement Class and contain a statement that he or she is otherwise a member of the Settlement Class."  Settlement Agt. (Dkt. 324-1) § IX.B.

As noted, Astro filed its motion ten months after the Opt-Out / Claim Deadline, nearly five months after the Court ruled that the Settlement Agreement unambiguously limited claimants' recovery to $615 for five faxes regardless of the number of claimed fax numbers and over two months after its counsel appeared in this case.  Throughout this time, however, Astro never once reached out to BTL's counsel regarding its claim, and we are unaware of any communications between Astro and the Settlement Administrator other than an affidavit submitted by the

_____

response to Plaintiffs' motion for final approval (Dkt. 497)—which BTL intends to address separately—for present purposes, it is also highly relevant to Astro's claim and the purported basis for its belated motion to opt out.  See disc. infra at 12-15.

Manager of Astro Companies, LLC, which is apparently the successor-in-interest of AstroTel Inc. f/k/a Eagle Telecommunications Inc.   See Astro Resp. to Req. for Add'l Info. (Dkt. 486-5).

Astro's motion to opt out of the Settlement should be denied.   Its motion plainly does not comply with the opt-out process required by the Settlement Agreement, it is untimely by almost a full year and its request offers no coherent reason for the delay, let alone the "excusable neglect" that would plainly be required by Rule 6.   See Fed. R. Civ. P. 6(b)(1)(B).[3]

## II.   DISCUSSION

The reasons why Astro's belated motion to opt out should be denied are addressed below.   See disc. infra at 4-19.

### A.   Astro's Motion Plainly Does Not Comply With The Requirements Of The Settlement Agreement

As a threshold issue, Astro's motion for leave to opt out does not comply with the requirements of the Settlement Agreement.   As noted, the Settlement Agreement requires a Settlement Class Member who wishes to opt out to "complete and send to the Settlement Administrator a request for exclusion that is post-marked no later than the Opt-Out and Objection Date."   Settlement Agt. (Dkt. 324-1) § IX.B.   Astro's

---

[3] While Astro should not be allowed to opt out of the Settlement for all of the reasons discussed below (see disc. infra at 6-19), its claim also should be denied in substantial part for the reasons set forth in BTL's December 8, 2023 submission (Dkt. 486), which BTL incorporates herein by reference.   The fact that Astro may have been tipped off, however, to the fact that BTL would object to its claim is scarcely reason to allow Astro to now belatedly obtain leave to opt out.   See, e.g., In re Navistar, 990 F.3d 1048, 1051 (7th Cir. 2021) ("Class members must make an irrevocable choice: take their share of whatever the class receives, or take the outcome of a separate suit.").   To the contrary, class action settlements are structured as they are to avoid the very situation Astro is trying to create here, namely where class members can sit on the sidelines to see how their claims will fare and then opt out if they conclude the winds are not favoring them.   See, e.g., In re Am. Tower, 2008 WL 11518467, *1-2 (D. Mass. 2008) (denying belated opt-out request where movant's "choice was a tactical one" and only sought to opt out when movant's objection to settlement was overruled).

motion, however, was indisputably submitted long <u>after</u> the Opt-Out / Claim Deadline of February 6, 2023.  <u>See</u> Mot. (Dkt. 503) (filed Dec. 22, 2023).

Astro also did not send the Settlement Administrator, Class Counsel or BTL any request for exclusion before it filed its motion with the Court.  Finally, Astro did not "personally sign" its December 8, 2023 notice, as required by the Settlement Agreement.  <u>See</u> Settlement Agt. (Dkt. 324-1) § IX.B.  Rather, its notice was filed by its counsel, who has since appeared in this case.  <u>See</u> Notice (Dkt. 483) at 4; Mot. (Dkt. 503) at 6.

Under the clear terms of the Settlement Agreement, Astro was required to send a request for exclusion to the Settlement Administrator no later than February 6, 2023 and to also personally sign that request.  <u>See</u> Settlement Agt. (Dkt. 324-1) § IX.B; Order (Dkt. 418).  Because Astro and its counsel failed to comply with the process specified in the Settlement Agreement for opting out, however, its motion to opt out should be denied.  <u>See, e.g.,</u> <u>Hallie v. Wells Fargo</u>, 2015 WL 1914864, *4-5 (N.D. Ind. 2015) (concluding plaintiff's attempt to opt out from previous settlement class was "deficient on its face" without following "enforceable" and "clear" personal signature requirement specified by settlement agreement); <u>see also</u>, <u>e.g.,</u> <u>Demint v. NationsBank</u>, 208 F.R.D. 639, 641-44 (M.D. Fla. 2002) (denying untimely request to opt out of settlement class); <u>Johnson v. Hercules</u>, 1999 WL 35648160, *4-6 (S.D. Ga. 1999) (same); <u>Georgine v. Amchem</u>, 1995 WL 251402, *13-14 (E.D. Pa. 1995) (same).

Moreover, Astro's December 8, 2023 "notice" of intent to opt out (Dkt. 483) was not appropriate at this juncture in any event.  <u>See, e.g.,</u> <u>Gallagher v. Delaware & H.R.</u>, 15 F.R.D. 1, 3 (M.D. Pa. 1953) (holding court could not construe plaintiff's

5

filing as motion under Rule 6(b) where "the motion alleges no facts or circumstances on the basis of which the Court could determine whether plaintiff's default is the result of excusable neglect"). Because the deadline for opting out has long since passed, Astro should have filed as soon as possible a motion seeking leave to opt out in spite of the passing of all operative deadlines, and that motion, like any motion addressing expired deadlines, should have addressed the relevant standards specified under Rule 6(b)(1)(B), namely "excusable neglect," which Astro's motion still does <u>not</u> mention, let alone address. <u>See</u>, <u>e.g.</u>, <u>Klein v. O'Neal</u>, 2009 WL 1174638, *4 (N.D. Tex. 2009) (outlining factors to address "[i]n determining whether a party should be granted additional time to opt out based on excusable neglect"); <u>see</u> <u>also</u> Mot. (Dkt. 503) at <u>passim</u> (no mention of Rule 6 or "excusable neglect" standard).

### B. Astro Has Not Shown Or Attempted To Show "Good Cause" Or "Excusable Neglect" For Its Delay In Opting Out

Under Rule 6, if a party fails to act within a specified time, an extension may only be granted for "good cause . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B); <u>Grilli v. Met. Life</u>, 78 F.3d 1533, 1538 (11th Cir. 1996) (making clear that Rule 6(b)(1)(B) (previously Rule 6(b)(2)) is the operative standard for belated requests to opt out). In analyzing whether a party's conduct constitutes "excusable neglect," however, courts consider "(1) the danger of prejudice to [the non-moving party]; (2) the length of delay and its potential impact on the judicial proceedings; (3) the reason for the delay, including whether the reason was within the [movant's] reasonable control; and (4) the presence or absence of good faith[.]" <u>Demint</u>, 208 F.R.D. at 642 (citing <u>Pioneer Inv. Servs. v. Brunswick Assocs.</u>, 507 U.S. 380, 395 (1993)). "[T]he starting

6

point and common denominator (indeed, the <u>sine</u> <u>qua</u> <u>non</u>) in every case employing an analysis of excusable neglect is an explanation for the reason for the delay." <u>Id.</u>

Moreover, courts have consistently evaluated belated requests to opt out of a settlement class under the standards established under Rule 6, and there is no legitimate dispute that Rule 6 sets the operative standard.  <u>See</u>, <u>e.g.</u>, <u>Grilli</u>, 78 F.3d at 1538 ("Because the Coulters made a tactical decision not to opt out in time, and the other movants failed to meet the 'excusable neglect' standard of [Rule 6(b)(1)(B)], we see no reason for permitting an opt-out after the expiration of the deadline."); <u>Jackson v. SPS Techs.</u>, 2018 WL 4440804, *2 (C.D. Cal. 2018) ("A court may, in cases of 'excusable neglect' extend the time in which a class member may opt out of a settlement."); <u>In re Broiler Chicken</u>, 2019 WL 6699664, *2 (N.D. Ill. 2019) (noting "[c]ourts have applied this [Rule 6(b)(1)(B)] standard to class settlement opt out deadlines").  Astro, however, fails to satisfy at least three of these criteria under Rule 6 and does not even attempt in its motion to establish excusable neglect, nor could it do so even if it tried.[4]  <u>See</u> disc. <u>infra</u> at 7-12, 16-19.

### 1.   Astro Offers No Compelling Reason Or Explanation For Its Otherwise Inexcusable Delay

As noted, the "<u>sine</u> <u>qua</u> <u>non</u>" of any analysis of excusable neglect is "the reason for the delay, including whether the reason was within the [movant's] reasonable control."  <u>Demint</u>, 208 F.R.D. at 642.  Astro filed its non-compliant

---

[4] As Judge Merryday noted in <u>Demint</u>, "the conspicuous omission of an explanation for the failure to file a timely 'opt out' notice defeats any persuasive value of [an assertion of good faith]," especially where "the record otherwise fails to confirm that [Astro] acted either in good faith or in bad faith."  <u>Demint</u>, 208 F.R.D. at 642 n.5.  Moreover, ignorance of the law or ignorance in the terms of the Settlement Agreement is definitely <u>not</u> excusable neglect or a good faith basis for not meeting the deadlines set by the Court.  <u>See</u>, <u>e.g.</u>, <u>In re Prudential Ins.</u>, 177 F.R.D. 216, 241-43 (D.N.J. 1997) (holding late opt-out was not due to "excusable neglect" where class member had mistaken understanding of whether settlement covered their claims).

"notice" (and later motion) over ten months <u>after</u> the Opt-Out / Claim Deadline and long <u>after</u> originally choosing to instead submit as a Settlement Class Member a Claim Form to the Settlement Administrator and thereby seek compensation from the Settlement Fund.  <u>See</u> Order (Dkt. 418); Final Claims Rpt. (Dkt. 490-20).  The only purported reason for the delay that Astro outlines in its motion is that it "was not until seven months after submitting its Proof of Claim, that Astro learned that the Proposed Class Settlement would be interpreted as capping Astro's total settlement . . . at $615.00."  Mot. (Dkt. 503) at 3 (citing the Court's July 26, 2023 Order).[5]

The Court's July 26, 2023 Order, however, makes clear that "[t]he Settlement Agreement does not mention the possibility of a Settlement Class Member submitting a separate Claim Form for every fax number or even <u>insinuate</u> that a Settlement Class Member would be eligible to recover more than $615."  Order (Dkt. 475) at 5.  To the contrary, the Settlement Agreement makes it <u>perfectly</u> clear that Settlement Class Members will be limited to a maximum of five faxes and the maximum total compensation that any Settlement Class Member can receive is $615.

---

[5] Even assuming that Astro's motion otherwise satisfied the requirements of Rule 6(b)(1)(B), which it certainly does not (<u>see</u> disc. <u>infra</u> at 8-12), neither Astro nor Class Counsel have made any showing that <u>any</u> of the numbers identified in Astro's claim were held by Astro for its own internal business use as opposed to being numbers that were assigned to subscribers of Astro's fax provider service who themselves were the intended recipients of any faxes sent.  <u>See</u> Mot. (Dkt. 503) at <u>passim</u>; <u>see also</u> <u>Westfax</u>, 30 F.C.C.R. at 8624.  To the extent that Astro used any of these numbers for its own use, it is simply another set of factual questions that Astro or Class Counsel must address in order to determine how many numbers Astro actually has standing for such that it can make a Valid Claim.  <u>See</u> BTL's Obj. (Dkt. 486) at 17-18.  If Astro used some small percentage of the 780 numbers for which its claim was tentatively approved for its own business use, then Astro would have Article III standing and is clearly a Settlement Class Member, such that it would be entitled to compensation under the Settlement Agreement.  Inquiry by the Settlement Administrator or confirmatory discovery by BTL is necessary, however, to determine how many of those fax numbers actually were used for Astro's own business.  Conversely, if Astro did not use any of the 780 (or 869) numbers for its own internal business use, then it does <u>not</u> have a claim under the TCPA and also lacks Article III standing.  <u>See, e.g., Westfax</u>, 30 F.C.C.R. at 8624.

<u>See</u> Settlement Agt. (Dkt. 324-1) § IV.B ("<u>Settlement Class Members</u> . . . shall be eligible to receive up to [\$615]").  The July 26, 2023 Order further explains that the Settlement Agreement and the Claim Form <u>unambiguously</u> contemplate that claimants will be paid based on the number of faxes received (up to a cap of five faxes), and <u>not</u> based on the number of claimed fax numbers.  <u>See</u> Order (Dkt. 475) at 5-6.  Astro's only stated reason to explain its delay is thus based on an inaccurate understanding of the <u>unambiguous</u> terms of the Settlement Agreement and Claim Form, all of which were freely available to Astro and its counsel well <u>before</u> the Opt Out / Claims Deadline.[6]  But the failure of a class member or its counsel to review a settlement and decide whether to opt out before the opt out deadline does not serve as a basis for establishing "excusable neglect."  <u>See</u>, <u>e.g.</u>, <u>Prudential</u>, 177 F.R.D. at 241 (holding late opt-out was not due to "excusable neglect" where class member had mistaken understanding of whether settlement covered their claims); <u>Navistar</u>, 990 F.3d at 1051-54 (affirming denial of belated opt-out request where claimant had actual knowledge of settlement and was likely "trying to achieve the benefits of one-way intervention").[7]

---

[6] Nor are the settlement documents at all ambiguous.  <u>See</u> Settlement Agt. (Dkt. 324-1) § IV.B; Order (Dkt. 475) at 5-6.  As BTL painstakingly pointed out in its June 30, 2023 submission (Dkt. 461), <u>multiple</u> provisions in the Settlement Agreement, the Mailed Notice, communications from Class Counsel as well as this Court's own Preliminary Approval Order (Dkt. 343) all make it <u>absolutely</u> clear that Settlement Class Members are limited to five faxes and a maximum recovery of \$615.  <u>See</u> BTL's Resp. to Pls.' Mot. re Claims Process (Dkt. 461) at 6-12.

[7] Clearly, Astro and its counsel had <u>actual</u> knowledge of the Settlement no later than the date on which Astro filed its Claim Form (<u>i.e.</u>, January 25, 2023), and having actual knowledge of the Settlement, it was incumbent on Astro and its counsel to determine the <u>terms</u> of the Settlement before deciding to submit a Claim Form rather than opt out.  <u>See</u>, <u>e.g.</u>, <u>Navistar</u>, 990 F.3d at 1051; <u>see also</u> <u>In re Citigroup</u>, 2014 WL 3610988, *6-7 (S.D.N.Y. 2014) (denying belated request to opt out to pursue separate arbitration, because class notice adequately apprised movant that settlement applied to his claims and "[b]ecause [movant's] misunderstanding ignored explicit language in the notice, his mistake was not objectively reasonable").

## 2.   Astro's Additional Delay Is Equally Inexcusable

Even assuming that Astro's untimely opt-out was somehow excusable until the Court's July 26, 2023 Order that the Settlement Agreement "unambiguously" capped claimants to recovering $615 for five faxes (which it plainly was not), Astro makes no attempt whatsoever in either its December 8, 2023 notice or its December 22, 2023 motion to explain its nearly five-month delay in actually requesting leave to opt out earlier in the approval process.  See Mot. (Dkt. 503) at passim (no reason for delay from July to December); Notice (Dkt. 483) at passim (same).  Nor does Astro attempt to explain why it waited to file its notice or motion until two months after its counsel made an appearance in this case and only after the Settlement Administrator had made its final determinations on all claims, including Astro's. See id.

This lack of  any explanation, however, is also fatal to Astro's belated request to opt out of the Settlement, even assuming it was excusable to wait until after the Court's July 26, 2023 Order.  See Demint, 208 F.R.D. at 642 ("In this respect, the Kerleys' assertion of excusable neglect is fatally incomplete and flawed because the Kerleys utterly fail to provide any explanation for their otherwise unaccountable delinquency in delivering an 'opt out' notice.")  For these reasons, Astro has not met its burden to establish that it had any valid or persuasive reason for not timely opting out of the Settlement Class.

## 3.   The Sheer Length Of Astro's Delay Further Precludes A Finding Of "Excusable Neglect"

Even if Astro had offered a valid justification for its delay in opting out, it still waited far too long to do so.  Its ten-month delay in seeking leave to opt out after the Opt-Out / Claim Deadline in no way can be attributed to "excusable neglect," and

courts have found that far shorter delays were not the result of "excusable neglect." See In re Cathode Ray Tube, 2014 WL 4181732, *3 (N.D. Cal. 2014) (two-week delay in requesting opt-out was "simply insufficient to justify a finding of excusable neglect"); Brannon v. Household Int'l, 236 Fed. Appx. 285, 288 (9th Cir. 2007) (affirming denial of motion to belatedly opt out after 11-month delay).

And again, even if Astro had been put on notice of the five-fax limit only after the Court's July 26, 2023 Order, its delay of nearly five months until finally filing the motion is still far too long to qualify as "excusable neglect." See, e.g., Brannon, 236 Fed. Appx. at 288 (noting that "one of the factors in determining whether there was excusable neglect such to allow a late opt out motion is 'how quickly the belated opt out request was made once notice was received'"). Instead of promptly seeking leave to opt out after the Court's July 26, 2023 ruling, Astro instead waited until December 8, 2023 so that it could see how its Claim Form would fare and whether BTL would object to the Settlement Administrator's decisions with respect to Astro's claims. See Am. Tower, 2008 WL 11518467, *1-2 (denying belated opt-out request where movant's "choice was a tactical one" and movant only sought to opt out when movant's objection to settlement was overruled). The length of Astro's inexcusable delay in moving to opt out, however, should independently preclude it from now being allowed to do so now. Compare MRI Assocs. v. Dairyland Ins., 2014 WL 29103, *4 (M.D. Fla. 2014) (finding undue delay where movants had "several months to request an extension, and failed to do so"), with In re Vitamins, 327 F.3d 1207, 1209-10 (D.C. Cir. 2003) (finding no abuse of discretion by lower court permitting opt-out after deadline where movant's counsel discovered that

11

movant had not opted out less than two-and-a-half months after the opt-out deadline and moved for relief <u>two</u> <u>days</u> after that discovery).

### 4. <u>Westfax</u>, <u>Amerifactors</u> And <u>Ryerson</u>

<u>Westfax</u>, <u>Amerifactors</u> and <u>Ryerson</u> are each declaratory rulings by the FCC that bear upon not only Astro's claims for compensation from the Settlement Fund (as reflected in the Claim Form submitted by Astro) but that also bear upon the reason articulated by Astro for why it incorrectly believes it should now be entitled to opt out. <u>See</u> Mot. (Dkt. 503) at 2 (setting forth Astro's argument that it should be entitled to recover under the TCPA for faxes presumably sent to subscribers of its online fax service). The declaratory rulings in <u>Westfax</u>, <u>Amerifactors</u> and <u>Ryerson</u> are <u>each</u> entitled to <u>Chevron</u> deference, as numerous courts in this district and this circuit have recognized, and even if they were not entitled to <u>Chevron</u> deference (which they are), they would otherwise be entitled to <u>Skidmore</u> deference due to their persuasive value, as numerous courts in this district and this circuit have also recognized. <u>See</u>, <u>e.g.</u>, <u>Licari Family Chiro. v. Eclinical Works</u>, 2021 WL 4506405, *5 (M.D. Fla. 2021) ("The Court concludes that <u>Amerifactors</u> and <u>Ryerson</u> are entitled to <u>Chevron</u> deference, and that, therefore, Licari's TCPA claim fails as a matter of law."); <u>Sharfman v. Infucare</u>, 2022 WL 18926792, *7 (M.D. Fla. 2022) (recommending that "the Court give <u>Chevron</u> deference to" <u>Amerifactors</u> and that <u>Skidmore</u> deference would be appropriate in any event); <u>Scoma Chiro. v. Dental Equities</u>, 2021 WL 6105590, *7 (M.D. Fla. 2021) (citing the Eleventh Circuit's decision in <u>Sarris</u> and concluding that "<u>AmeriFactors</u> is entitled to deference under the <u>Chevron</u> doctrine"); <u>id.</u> *8 (noting <u>Amerifactors</u> would be entitled to <u>Skidmore</u> deference in any event, because the decision "would still be persuasive"); <u>see</u> <u>also</u>

Martin v. Social Sec. Admin., 903 F.3d 1154, 1159-61 (11th Cir. 2018) (discussing Chevron and Skidmore deference).

### a.   **Westfax**

Westfax makes clear that Astro does <u>not</u> have standing under the TCPA to make a claim for any numbers that Astro assigned to subscribers of its service, because faxes sent to those numbers were intended for the subscribers and <u>not</u> for Astro:

> We <u>next clarify that it is the consumer to whom the content of a fax or efax is directed that is the "recipient" under the TCPA</u>. Westfax asks whether the <u>recipient is the company with the fax server that converts the fax into an email</u>. The Commission's rules and orders make clear that the "recipient" of a fax is the consumer for whom the fax's content is intended and to whom the fax's content is sent by dialing that consumer's fax number.  The TCPA and the Commission's rules are designed to protect consumers for whom unwanted faxes represent annoyance and wasted resources.  <u>Entities that convert faxes to email are not "recipients" of such faxes under the TCPA because they are not the intended audience for the fax</u>.  Instead, based upon the description of Westfax's own FaxForward service, such entities provide a service to the recipient that requires them to become part of the communications pathway between the sender and the recipient.  <u>Thus, while they expect to be part of the fax communication, they are neither the intended recipient nor the ultimate recipient of the document sent as a fax any more than would be the telephone company providing a telephone line to a consumer's traditional fax machine</u>.

Westfax, 30 F.C.C.R. at 8624;[8] see also, e.g., Licari, 2021 WL 4506405, *7 n.2 (citing Westfax with approval and rejecting argument that "Smartfax, the online fax service [plaintiff] employed, maintained equipment with the capacity to print the contents of fax transmissions").

---

[8] We understand Astro to be a fax service provider like Westfax, but as noted and as Intervenors pointed out in their December 15, 2023 submission (Dkt. 497), it is also possible that Astro had a few fax lines that were used for its own internal business use and that were <u>not</u> assigned to subscribers.  See Intervenors' Opp. to Final Approval Mot. (Dkt. 497) at 3 n.2.  The need to address that issue is why BTL asked in its December 8, 2023 submission (Dkt. 486) for the Settlement Administrator to be directed to obtain more information from Astro or, in the alternative, for BTL to be allowed to take confirmatory discovery.  See BTL's Obj. (Dkt. 486) at 17-18.

While the FCC later clarified in Amerifactors and then again in Ryerson that subscribers who receive faxes as emails through online services like Astro do not have standing under the TCPA either and while Westfax and the role of online fax service providers certainly have broader implications for the claims process as well as Article III standing, any alleged prejudice to Astro as an online fax service provider would be substantially less than what Astro otherwise suggests and implies in its motion, since the vast majority of the telephone lines claimed by Astro almost certainly would not and could not serve as a basis for a claim by Astro under the TCPA.  See Westfax, 30 F.C.C.R. at 8624.

### b.   **Amerifactors And Ryerson**

The FCC later clarified Westfax in Amerifactors and again in Ryerson.  See Amerifactors, 34 F.C.C.R. at 11954 (noting that Westfax "assumed that the 'efax' in question was sent to a computer with an attached fax modem that had the capacity to print the fax, as required by statute"); Ryerson, 35 F.C.C.R. at 9475.   In Amerifactors and Ryerson, however, the FCC made clear that subscribers of an online fax service provider that receive faxes from the fax service provider as emails do not have standing under the TCPA, and based in part on Amerifactors and Ryerson but also based on the Supreme Court's intervening decision in TransUnion, numerous courts in this district and this circuit have concluded that recipients of faxes as emails likewise do not have standing under Article III.  See, e.g., Scoma Chiro. v. Nat'l Spine, 2022 WL 16695130, *6 (M.D. Fla. 2022) ("[T]he Court finds persuasive the reasoning of other courts in this Circuit which have found that the mere receipt of a fax through an online fax service, even if in violation of the TCPA, does not cause an injury in fact."); Daisy v. Mobile Mini, 489 F. Supp. 3d 1287,

14

1297 (M.D. Fla. 2020); <u>True Health Chiro. v. McKesson</u>, 2021 WL 4818945, *3

(N.D. Cal. 2021) (giving deference to <u>Amerifactors</u>), <u>aff'd</u>, 2023 WL 7015279 (9th

Cir. 2023); <u>Advanced Rehab v. Amedisys</u>, 2020 WL 4937790, *8 (W.D. Tenn.

2020) (in case brought by the Wanca firm, district court giving <u>Chevron</u> deference

to <u>Amerifactors</u> and concluding that "any fax(es) sent to an online fax service is not

'an unsolicited facsimile advertisement' prohibited by the TCPA").[9]

### c. BTL Is Entitled To A Declaration From The Court That Astro Does Not Have A TCPA Claim For Faxes Sent To Astro's Subscribers

Astro elected to submit a Claim Form and thereby submitted to the jurisdiction

of this Court for purposes of the claims process.  <u>See</u> Order (Dkt. 343) at 81.  In that

Claim Form, Astro made a claim for faxes sent to 783 telephone numbers.  <u>See</u> Final

---

[9] In their December 28, 2023 submission, Class Counsel suggest that in contrast to <u>Westfax</u>, <u>Amerifactors</u> is not a "final order," "controlling" or subject to the restrictions imposed by the Hobbs Act due to the application for review that Mr. Hara filed from the decision in <u>Amerifactors</u> on January 8, 2020, nearly four years ago.  <u>See</u> Pls.' Opp. to Mot. to Dismiss (Dkt. 505) at 12.  The FCC has apparently <u>never</u> acted upon Mr. Hara's application and a stay of <u>Amerifactors</u> was <u>never</u> requested or granted.  <u>See</u> Application for Review (Jan. 8, 2020) (not requesting a stay), available <u>here</u>.  Contrary to the impression left by Class Counsel, however, <u>Amerifactors</u> has the full force and effect of a ruling by the Commission and became effective <u>upon</u> issuance:

> Under 47 U.S.C. § 155(c)(3), Bureau orders "shall have the same force and effect" as those of the Commission "unless reviewed as provided in paragraph (4) of this subsection."  Appellant argues that if Commission review of a Bureau decision has been sought, the decision cannot be effective until the review has been completed.  The Commission rule applicable to the "nonhearing" Bureau decision here at issue provides, however, that <u>a</u> Bureau <u>order</u> <u>becomes</u> "<u>effective</u> <u>upon</u> <u>release</u>" <u>unless</u> the Commission, in its discretion, "<u>stay[s]</u> <u>the</u> <u>effect</u> <u>of</u> . . . <u>such</u> <u>action</u> <u>until</u> <u>its</u> <u>review</u> <u>of</u> <u>the</u> <u>matters</u> <u>at</u> <u>issue</u> <u>has</u> <u>been</u> <u>completed</u>." 47 C.F.R. § 1.102(b) (1985).

<u>Comm. To Save WEAM v. F.C.C.</u>, 808 F.2d 113, 115 (D.C. Cir. 1986); <u>see</u> <u>also</u> 47 C.F.R. § 1.102(b)(2) (noting the Commission "may in its discretion" stay the effect of any action taken pursuant to delegated authority); 47 U.S.C. § 155(c)(3) (providing that any action taken pursuant to delegated authority "shall have the same force and effect" as any "actions of the Commission").  BTL will request leave to address this and other inaccuracies in Plaintiffs' submission (Dkt. 505) in due course, but for purposes of this submission, we wanted to bring it to the Court's attention now.  In short, a stale appeal filed nearly four years ago and <u>never</u> acted upon let alone granted by the Commission does <u>not</u> permanently render <u>Amerifactors</u> of no force and effect, the claims of Class Counsel notwithstanding.  As such, <u>Amerifactors</u> has the very same force and effect as the other FCC rulings featured in Plaintiffs' submission.  <u>See</u> <u>WEAM</u>, 808 F.2d at 115.  <u>Georgia Power</u>, <u>Mais</u> and <u>Murphy</u> are in no sense to the contrary; instead, <u>Amerifactors</u> is entitled to the same deference and treatment under the Hobbs Act as <u>Westfax</u> as well as the FCC's 2003 Order Plaintiffs otherwise try to rely upon.  <u>But see</u> Pls.' Opp. to Mot. to Dismiss (Dkt. 505).

Claims Rpt. (Dkt. 490-20). Astro should not be allowed to opt out for the reasons noted above and below, but if it were allowed to do so, BTL would still be entitled to an adjudication of Astro's claim by the Court and to a declaration that Astro does not have a claim under the TCPA for faxes sent to Astro's subscribers, who themselves are Settlement Class Members, as <u>Westfax</u>, <u>Amerifactors</u> and <u>Ryerson</u> make clear.[10] <u>See</u>, <u>e.g.</u>, <u>Licari</u>, 2021 WL 4506405, *7 n.2.

### 5. BTL Would Be Prejudiced If Astro Were Allowed To Opt Out At The Eleventh Hour

Finally, BTL would be prejudiced if the Court were to now permit Astro to opt out of the Settlement at this late hour. Astro filed its motion less than a month before the currently-scheduled date for the Final Approval Hearing and <u>after</u> the Settlement Administrator had already issued its Final Claims Report. <u>See</u> Notice (Dkt. 447) (resetting Fairness Hearing to January 19, 2024). If the Court were to grant final approval of the Settlement, it would bring an end to this decade-long litigation, and BTL would have finality. But if Astro were allowed to opt out of the Settlement after the Opt-Out / Claim Deadline, it may attempt to file an individual case and thereby pursue its claim alleging receipt of 2,124 faxes to 783 numbers, the

---

[10] Subscribers of Astro are plainly included in the current definition of the Settlement Class, as Class Counsel have already conceded, although those subscribers also lack Article III standing, which is why the definition of the Settlement Class is defective, as the panel opinion in <u>Drazen</u> makes clear. <u>See</u> Settlement Agt. (Dkt. 324-1) § III.A (defining class as "[a]ll persons who received or were successfully sent in 2009 or 2010 one or more facsimile advertisements relating to tickets for Tampa Bay Buccaneers games"); <u>see also</u> Collins Decl. (Dkt. 492-6) ¶¶ 6-8 (describing meet and confer during which Class Counsel admitted that the definition of the Settlement Class <u>includes</u> persons and entities who received faxes through fax service providers as emails). Indeed, the inclusion of those subscribers in the definition of the Settlement Class is one of several reasons why the class definition itself is defective and "cannot stand," as was made clear in the panel opinion in <u>Drazen</u>. <u>See</u> <u>Drazen v. Pinto</u>, 41 F.4th 1354, 1362 (11th Cir. 2022), <u>vacated</u> <u>on</u> <u>other</u> <u>grounds</u>, 61 F.4th 1297 (11th Cir. 2023).

vast majority of which were undoubtedly assigned to Settlement Class Members who were also subscribers to Astro's fax service.

Moreover, Astro is the approved claimant with the largest number of allegedly received faxes and the largest number of claimed lines (representing roughly 29% of approved claimed faxes and 28% of approved claimed lines). Allowing Astro to opt out months after the Opt-Out / Claim Deadline and after the absolute <u>latest</u> it could possibly have been on actual notice that its recovery was capped at $615 would seriously undermine BTL's bargained-for expectations in agreeing to the Settlement. <u>See</u> <u>In re Diet Drugs</u>, 92 Fed. Appx. 890, 894 (3d Cir. 2004) (noting that "determin[ing] ahead of time whether the settlement would resolve most of the potential claims" was an important part of the defendant's bargain in accepting the settlement and that this bargained-for benefit would be upset by later allowing late opt-outs).

The fact that Astro is the only late opt-out request does not mean that BTL is any less prejudiced, however, because courts have recognized that a single late opt-out can serve to prejudice a defendant. <u>See</u> <u>In re Imprelis</u>, 2014 WL 348593, *3-4 (E.D. Pa. 2014) (noting defendant "will suffer prejudice insofar as it will have to defend against one more plaintiff than would be in litigation if the Court enforces the opt-out deadline"). But the prejudice of a single late opt-out is even greater here, where Astro represents such a substantial fraction of approved claimed faxes and telephone numbers and where many Settlement Class Members were quite clearly subscribers to Astro's fax service to whom the numbers now being claimed by Astro were assigned and as such were the intended recipients of any faxes purportedly sent on behalf of BTL. <u>See</u> disc. <u>supra</u> at 12-15.

Moreover, the prejudice to BTL is even greater in this instance, because not only was Astro woefully late in moving for leave to opt out, but it did so only _after_ submitting a Claim Form that the Settlement Administrator ultimately approved in part, effectively attempting to secure "more than the [claim's] actuarial value," by "preserv[ing] the option of one-way intervention." Navistar, 990 F.3d at 1051-52, 1053.[11]   Astro essentially gambled on the amount it would receive under the Settlement but misinterpreted the unambiguous language of the Settlement Agreement and Claim Form.   This is, however, exactly the type of actuarial gameplay that courts across the country have decried in class action settlements, and Astro should be estopped from seeking to opt out now.   See, e.g., Navistar, 990 F.3d at 1053 (denying belated request to opt out and noting that "[t]he possibility of having things both ways is foreclosed when courts stick to the rules they have established"); Citigroup, 2014 WL 3610988, *6-7 (denying belated request to opt out to pursue separate arbitration, because class notice adequately apprised movant that settlement applied to his claims and "[b]ecause [movant's] misunderstanding

---

[11] As the Seventh Circuit made clear in Navistar, the fact a class member (like Astro) had "actual knowledge of the settlement is conclusive."   See Navistar, 990 F.3d at 1051.   Astro made a conscious decision to stay in the Settlement Class and submit a Claim Form and as such had every reason and ability to confirm the terms of the Settlement before making that choice.   See, e.g., Prudential, 177 F.R.D. at 241 (mistaken understanding of settlement terms was not excusable neglect where "the Class Notice 'provided class members the information necessary to make an informed and intelligent decision whether to participate in the class'").   Rigorously following the rules and the deadlines set, however, is the only way to prevent parties like Astro from trying to have it both ways:

> One reason is that any approach that avoids the need for a clear choice preserves the option of one-way intervention . . . .   The possibility of having things both ways is foreclosed when courts stick to the rules they have established.
>
> . . .
>
> Following mechanical rules is the only sure way to handle suits with thousands of class members.   This also helps the judge to know whether to approve the settlement as a substantive matter.

Navistar, 990 F.3d at 1052-53.

ignored explicit language in the notice, his mistake was not objectively reasonable"); Olden v. LaFarge, 472 F. Supp. 2d 922, 929-31 (E.D. Mich. 2007) (granting motion to strike "contingent opt-outs" that conditioned claimants' opt-out on denial of their objections, because "[t]o allow the class member to have it both ways . . . would countenance the practice of influencing litigation—or attempting to do so—in which the class member really has no stake").

In sum, BTL would be substantially prejudiced if Astro were permitted to opt out now, and combined with Astro's lack of _any_ valid justification for its delay and the extremely long period of time it delayed in the filing of its motion, Astro has not begun to show the "excusable neglect" required by Rule 6(b)(1)(B).

## III.  CONCLUSION

WHEREFORE, BTL respectfully requests that the Court deny Astro's untimely motion to opt out of the Settlement.  BTL further requests such other relief as the Court deems appropriate, including a declaration that Astro is not entitled to seek or obtain compensation for telephone numbers on the Biggerstaff list that Astro held for subscribers to its online fax service who were themselves the intended recipients of faxes purportedly sent on BTL's behalf.

Date:  December 29, 2023              Respectfully submitted,

                                     _/s/ Robert C. Collins III_
                                     Robert C. Collins III, One of the Attorneys
                                     for Defendant Buccaneers Team LLC

Mark S. Mester
    (admitted *pro hac vice*)
Robert C. Collins III
    (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  mark.mester@lw.com
            robert.collins@lw.com

Joseph H. Varner, III
    (Bar No. 394904)
HOLLAND & KNIGHT LLP
100 North Tampa Street, Suite 4100
Tampa, Florida 33602-3644
Telephone:  (813) 227-8500
Facsimile:  (813) 229-0134
Email:  joe.varner@hklaw.com

## LOCAL RULE 3.01(h) STATEMENT

Pursuant to Local Rule 3.01(h), BTL respectfully requests an evidentiary hearing on any factual issues raised by Astro's Claim Form or motion to opt out, including but not limited to the question of how many of the fax numbers claimed by Astro were actually used for Astro's own internal business purposes <u>versus</u> being assigned to subscribers to Astro's fax service.

Date:  December 29, 2023

*/s/ Robert C. Collins III*
Robert C. Collins III
  (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  robert.collins@lw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 29, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which served all relevant parties.

Date:  December 29, 2023

<u>/s/ Robert C. Collins III</u>
Robert C. Collins III, One of the Attorneys for Defendant Buccaneers Team LLC

Robert C. Collins III
   (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  robert.collins@lw.com