# EXHIBIT 1

Cin-Q Automobiles, Inc., et al. v. BTL
Case No. 8:13-cv-01592-AEP (M.D. Fla.)

```
            IN THE UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                      TAMPA DIVISION


CIN-Q AUTOMOBILES, INC.,      )
et al.,                       )
                              )
          Plaintiffs,         )
                              )  Civil Docket
     vs.                      )
                              )  No. 8:13-cv-1592-AEP
BUCCANEERS LIMITED PARTNERSHIP)
and JOHN DOES 1-10,           )
                              )
          Defendants.         )
_____)
                              )
TECHNOLOGY TRAINING ASSOCIATES,)
INC., et al.,                 )
                              )
          Intervenors.        )
_____)
```

Transcript of Status Hearing

Heard via Zoom
Sam M. Gibbons United States Courthouse
801 North Florida Avenue
Tampa, Florida 33602
Thursday - January 4, 2024
11:30 a.m. - 1:43 p.m.

BEFORE THE HONORABLE ANTHONY E. PORCELLI

UNITED STATES MAGISTRATE JUDGE


REBECCA M. SABO, RMR, CRR
Federal Official Court Reporter
Sam M. Gibbons United States Courthouse
801 North Florida Avenue, Room 1221
Tampa, Florida 33602
Rebecca_Sabo@flmd.uscourts.gov
(406) 855-6410

Proceedings recorded by Zoom
Transcript produced by computer-assisted transcription

APPEARANCES

PRESENT ON BEHALF OF THE PLAINTIFFS,
CIN-Q AUTOMOBILES, INC., et al.:

    **Michael C. Addison**
    ADDISON LAW OFFICE, P.A.
    1304 Alicia Avenue
    Tampa, Florida 33604

    **Ross Michael Good**
    LOFTUS & EISENBERG, LTD.
    161 North Clark Street, Suite 1600
    Chicago, Illinois 60601

    **Glenn L. Hara**
    **Ryan Kelly**
    ANDERSON & WANCA
    3701 Algonquin Road, Suite 500
    Rolling Meadows, Illinois 60008

PRESENT ON BEHALF OF THE DEFENDANT,
BUCCANEERS LIMITED PARTNERSHIP:

    **Mark S. Mester**
    **Robert C. Collins, III**
    **Joseph B. Thomas**
    LATHAM & WATKINS, LLP
    330 North Wabash Avenue, Suite 2800
    Chicago, Illinois 60611

    **Joseph H. Varner, III**
    HOLLAND & KNIGHT, LLP
    100 North Tampa Street, Suite 4100
    Tampa, Florida 33602

PRESENT ON BEHALF OF THE INTERVENOR:

    **Jonathan B. Piper**
    BOCK HATCH & OPPENHEIM, LLC
    203 North LaSalle Street, Suite 2100
    Chicago, Illinois 60601

PRESENT ON BEHALF OF CLAIMANT, ASTRO COMPANIES, LLC:

    **Daniel P. VanEtten**
    BLALOCK WALTERS, PA
    802 11th Street West
    Bradenton, Florida 34205

1  of the claim generally.

2  And that goes to the broader issue with MCAG, which
3  is that MCAG has a long and documented history of trying to act
4  on behalf of class members but doing it without their approval
5  or doing it without their consent and also submitting claims
6  without a good faith basis to believe that they actually do
7  represent settlement class members.  So we cited cases in our
8  brief to that effect, where other courts --

9  THE COURT:  Well, let me shortcut it, Mr. Collins.
10  I'm intending to reject those claims.  The question is then,
11  given that they are asserting that they are claims on
12  individuals, would it not be appropriate to inform them of the
13  rejection, and that if any individual or entity themselves want
14  to assert a claim, they should be given the opportunity to do
15  so?

16  MR. COLLINS:  Certainly we would have no objection to
17  that type of notice, Your Honor, if the suggestion is those
18  people on whom's behalf they've made claims should be given an
19  opportunity.

20  THE COURT:  All right.  Mr. VanEtten, let me ask you,
21  so I can get a better understanding as to Astro, given the
22  declaration that was provided to the Court, as I've appreciated
23  that declaration, it reads that there is ownership of the lines
24  and they were not subscribed out.  Is that an accurate
25  statement?

1     MR. VANETTEN: Yes, Your Honor.

2     THE COURT: So that leaves open the possibility --
3 and this is what I need an explanation on -- and these are
4 assumptions I'm doing. So what I'm asking is -- you correct
5 me -- based on your information, whether I'm correct or not or
6 if there is some other interpretation.

7     At least as has been argued, what I understand is
8 Astro is in the communications business. And one aspect of
9 that is to have ownership of telephone lines that will be
10 devoted for facsimile purposes and can lease out those lines on
11 a subscriber basis to customers.

12     MR. VANETTEN: Yes, Your Honor.

13     THE COURT: Are we talking then in this context that
14 these numbers were numbers at the time that were not subscribed
15 out and that were just dormant numbers with Astro?

16     MR. VANETTEN: My understanding is that these were
17 numbers that were being utilized for their own personal
18 business purposes. I think that they were not subscribed out
19 of that; they were still being received -- or faxes were still
20 being received on those numbers at that time. They were simply
21 going to Astro, Your Honor.

22     THE COURT: For their business purposes?

23     MR. VANETTEN: Correct, Your Honor.

24     THE COURT: So give me an example why any one entity
25 would need that many numbers for their business purposes.

1         MR. VANETTEN: Your Honor, without my client being
2 here, I can't opine on that; I don't know. I was brought into
3 this case fairly late, and I don't know all the nuances of its
4 business purposes. I'm simply relying on information that was
5 relayed to me by my client.
6         THE COURT: So when you said their business purposes
7 then, these were lines that would have never been subscribed
8 out or intended to be subscribed out?
9         MR. VANETTEN: Your Honor, that is my understanding,
10 but I would need -- again, I can't verify on behalf of my
11 client at this time.
12         THE COURT: All right. Putting that aside, the
13 motion to opt out, why the delay in -- if there was already
14 notice of my order regarding the $615 cap per claim, why was
15 there such a significant delay in filing the request to opt
16 out?
17         MR. VANETTEN: Your Honor, we didn't receive notice
18 of your order. I think that's part of the timeline that we
19 have going on here. I believe, as Your Honor noted, that order
20 was never reflected on the website that was being relied upon
21 by Astro.
22         The timeline, as I understand, is that Astro in late
23 2022, early 2023, received notice of the class action
24 settlement and attached claim form. Under that notice, which
25 states that if the Court approves the settlement at the final

1  hearing, each valid claim will be paid up to that $615 cap as
2  explained in that notice. So Astro went ahead and timely filed
3  each of its claims for 800 -- or all those numbers for the
4  thousands of texts -- or faxes that are received, relying upon
5  its reasonable understanding of that notice that it received,
6  Your Honor.
7           So a substantial period of time went by after it
8  submitted that form. As the form indicated, Astro is supposed
9  to patiently sit by and wait. While Astro was waiting by,
10 that's when your order -- that's when Your Honor made that
11 July 26 ruling in which it determined that the clear language
12 of the settlement agreement was that there was a $615 cap per
13 claimant rather than per claim, which was Astro's
14 understanding. But, again, Astro didn't receive any notice of
15 that ruling; it didn't receive any understanding that this was
16 going to be a cap.
17          It wasn't until October when Astro received notice
18 from the defendants that some of their claims were being
19 questioned that it brought me in to actually try to shore up
20 what was going on in this matter. After reviewing the docket,
21 which took some substantial time, we did uncover Your Honor's
22 July 26th ruling, and that's when we became aware of the fact
23 that there was the $615 cap. So we didn't become aware of it
24 even in July; we became aware of it in late October, early
25 November. There was a delay as we tried to formulate a

1  think the case law is pretty clear that those end
2  user/consumers are the recipient under the TCPA.  But under
3  what Your Honor is discussing, those people aren't opting out.
4  Astro's opting out.  The end user/subscribers aren't opting
5  out.  So if Astro doesn't --
6      THE COURT:  I do -- that to me goes more to the
7  question of reach, whether the notice was communicated to all,
8  Astro -- like we've had with other matters of people claiming
9  twice for the same number.  So I think what Mr. Mester is
10 stating is maybe another chance to identify the class members,
11 Mr. Hara.
12      So go on.  I'm sorry I interrupted you.
13      MR. HARA:  No, no, that's fine.  I just don't think
14 that it presents the problem that BTL is talking about.  If
15 Astro files its own individual claims on numbers that it
16 doesn't have standing to sue on under the TCPA, then BTL will
17 win that case.  They'll win the merits.
18      MR. MESTER:  But, Your Honor, it goes to both the
19 release and ascertainability.  At the end of this process, if
20 Your Honor approves the settlement, there'll be a release and
21 that release will encompass any lines that were owned by Astro
22 but assigned to subscribers, and the claims on those should be
23 released, but meanwhile Astro may go and try to litigate those
24 same lines in a separate action.  That is highly prejudicial.
25      MR. HARA:  Right.

1        MR. MESTER:  And that's why, at a minimum, we think
2    it's appropriate for your order to make a determination --
3    Your Honor to make a determination that Astro doesn't have
4    standing to make a claim for lines that it assigned to class
5    members.
6        MR. HARA:  But, Your Honor, if Astro makes a claim on
7    a claim -- on a claim that has been released, then BTL will
8    plead res judicata as an affirmative defense.  That's what
9    they're buying in a class action.  They're getting res judicata
10   against the class of absent class members.  That's what they're
11   bargaining for.  And that's -- if Cin-Q files another claim --
12   individual claim against them, they would plead res judicata as
13   to that claim because that claim's been released.
14       MR. MESTER:  No.  Your Honor, that's --
15       THE COURT:  Hold on one second.
16       Mr. VanEtten, I'm going to require -- before I
17   finalize my order on allowing the opt-out, I want another
18   affidavit and submission that provides the detail and response
19   to my questions so I have a better understanding exactly what
20   these numbers were utilized for, and let me reiterate those
21   questions.
22       The first is, the numbers that have been claimed,
23   were these numbers ever intended or ever utilized to be
24   subscribed to customers for a customer's use as facsimile or
25   any other use?  And, two, during the relevant time period, if

1 these numbers were utilized for Astro's business purposes, what
2 purposes were they being utilized for?
3         All right. I think, Mr. Mester, that should address
4 my concerns. But if you want to suggest any other questions,
5 you may do so.
6         MR. MESTER: No. That's helpful, Your Honor. I
7 appreciate it.
8         THE COURT: One moment.
9         Mr. VanEtten, I'm going to direct that that be filed
10 as a notice in the record with the declaration and that it be
11 done no later than January 16th. And we're going to go forward
12 to tend to some other matters, and we're going to utilize the
13 date of January 19th, and that's going to be done in person on
14 the 19th. So there will be a separate notice for that. And so
15 I'll address finally Astro's position after I've had an
16 opportunity to review that declaration and address any other
17 matters as to the request to opt out.
18         MR. VANETTEN: Understood, Your Honor.
19         THE COURT: Any questions about that?
20         MR. VANETTEN: My only question, for clarification
21 purposes, is Your Honor's ruling going to be at that
22 January 19th hearing?
23         THE COURT: Yes.
24         MR. VANETTEN: Okay.
25         THE COURT: Yes.

1             All right.  Do we need to tend to any other matters
2    as to Document No. 503, which is Astro's request to opt out,
3    before I let Mr. VanEtten go?
4             MR. COLLINS:  I don't believe so, Your Honor.
5             THE COURT:  Okay.  Thank you, Mr. VanEtten.  We
6    appreciate your time.  We'll see you on the 19th.  We'll send
7    out the notice so you have the location of the hearing.
8             MR. VANETTEN:  Thank you, Your Honor.
9             THE COURT:  Thank you.
10            Okay.  Let's now shift gears.  This goes back to 490,
11   which is -- I think has grown larger than what has been
12   identified in the briefing of 490, which has been touched upon
13   by everybody in some capacity today, the larger issue of the
14   disputed claims and the process in place.
15            And so as I stated, at least, again, as I've
16   calculated -- and I will tell you, the map was all over the
17   place, and so I could be wrong on some of these numbers and
18   would ask for clarification if I'm wrong.  But what I initially
19   understood was 1,640 defect notices went out based upon the
20   initial claims that were filed, and that was roughly more than
21   50 percent of the claims.  There was a total of 3,213 claims
22   filed.  So I'm going to stop there.  Is that accurate?
23            MR. MESTER:  Roughly, Your Honor.  I don't have the
24   exact numbers right in front of me, but I believe --
25            THE COURT:  All right.

REPORTER'S CERTIFICATE

   I, REBECCA M. SABO, a Registered Merit Reporter and Certified Realtime Reporter, certify that the foregoing transcript is a true and correct record of the proceedings given at the time and place hereinbefore mentioned; that the proceedings were recorded using Zoom and thereafter reduced to typewriting using computer-assisted transcription; that after being reduced to typewriting, a certified copy of the transcript will be filed electronically with the Court.

   I further certify that I am not attorney for, nor employed by, nor related to any of the parties or attorneys to this action, nor financially interested in this action.

   IN WITNESS WHEREOF, I have set my hand at Tampa, Florida, this 16th day of January, 2024.


                            /s/ Rebecca M. Sabo

                            Rebecca M. Sabo, RMR, CRR
                            United States Court Reporter