# EXHIBIT 3

Cin-Q Automobiles, Inc., et al. v. BTL
Case No. 8:13-cv-01592-AEP (M.D. Fla.)

| | |
|---|---|
| **From:** | Collins, Robert (CH) |
| **Sent:** | Thursday, December 28, 2023 6:36 PM |
| **To:** | Daniel VanEtten |
| **Cc:** | Mester, Mark (CH); Thomas, Joseph (CH) |
| **Subject:** | Cin-Q v. BTL – Follow-Up Questions |

Daniel -

Following up on our meet and confer last week, we have some additional questions regarding Astro's motion for leave to opt out. To ensure BTL has enough time to adequately address the points made in Astro's motion, we would appreciate a response from you as soon as possible. I tried to reach you by telephone but understand you are out of the office this week.

1. In the Affidavit of Mike Ray attached to Astro's Response to the Request for Additional Information, Mr. Ray stated that "the numbers stated in our claims were not part of any online fax service to which [Astro] subscribed. Rather, the calls at issue came in on [Astro's] own telecommunications services and were received on equipment owned by [Astro]." The affidavit, however, does not address whether the numbers listed on the claim were part of any online fax service that Astro offered to customers, regardless of whether Astro owned and maintained the physical equipment. Were any of the numbers listed on Astro's claim owned by Astro, but held and utilized by Astro's customers as part of their subscription to Astro's online fax service?

2. If the answer to the previous question is "yes," how many of the numbers were utilized by Astro's customers as part of their subscription to Astro's online fax service?

3. How many, if any, of the numbers listed on Astro's claim were numbers which it owned, but which it held and were used by its customers as part of their subscription to any non-online fax service Astro may have offered (*i.e.*, if Astro provided fax numbers to its customers to receive faxes over traditional telephone lines)?

4. How many (if any) of the numbers listed on Astro's claim were held by Astro for its own internal business use (*i.e.*, numbers at which Astro would have received faxes that were directed to Astro as the intended recipient)?

5. If Astro claims that a significant fraction of the numbers listed on its claim were held by Astro for its own internal business use, what was Astro's reason for subscribing to approximately 780 fax numbers to receive faxes on its own behalf?

6. Does Astro have records that would reflect the foregoing?

7. Does Astro have backup tapes or other media that confirm the receipt of faxes purportedly sent on behalf of BTL?

8. Astro's Motion states: "These spam facsimile transmission were not merely an annoyance for Astro but resulted in a substantial impact to its business operations which relied upon its facsimile lines." Mot. at 5. What was the "substantial impact" to Astro's business operations from the alleged receipt of facsimiles sent on behalf of the Tampa Bay Buccaneers?

Thank you in advance for your cooperation and consideration of these issues.

Best regards,
Robbie