# EXHIBIT 1-B

Cin-Q Automobiles, Inc., et al. v. BTL
Case No. 8:13-cv-01592-AEP (M.D. Fla.)

**Before the
Federal Communications Commission
Washington, D.C. 20554**

| | |
|---|---|
| In the Matter of ) | |
| ) | |
| Rules and Regulations Implementing the ) | CG Docket No. 02-278 |
| Telephone Consumer Protection Act of 1991 ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |

**REPORT AND ORDER**

**Adopted**: June 26, 2003                                                  **Released:** July 3, 2003

By the Commission: Chairman Powell, Commissioners Abernathy, Copps and Adelstein issuing separate statements.

**TABLE OF CONTENTS**

Paragraph Number

I.    INTRODUCTION ..................................................................................................................1

II.   BACKGROUND ...................................................................................................................4
      A. Telephone Consumer Protection Act of 1991.................................................................4
      B. TCPA Rules ....................................................................................................................6
      C. Marketplace Changes Since 1992...................................................................................8
      D. FTC National Do-Not-Call Registry and Telemarketing Rules .....................................9
      E. State Do-Not-Call Lists .................................................................................................12
      F. Notice of Proposed Rulemaking....................................................................................14
      G. Do-Not-Call Implementation Act .................................................................................15

III.  NATIONAL DO-NOT-CALL LIST ...................................................................................16
      A. Background...................................................................................................................16
      B. Discussion.....................................................................................................................25
          1. National Do-Not-Call Registry................................................................................28
          2. Exemptions ..............................................................................................................42
          3. Section 227(c)(3) Requirements..............................................................................55
          4. Constitutionality......................................................................................................63
          5. Consistency with State and FTC Do-Not-Call Rules ..............................................74

IV.   COMPANY SPECIFIC DO-NOT-CALL LISTS ...........................................................86
    A.  Background ............................................................................................................86
    B.  Discussion ..............................................................................................................90
        1.  Efficacy of the Company-Specific Rules......................................................90
        2.  Amendments to the Company-Specific Rules ..............................................92

V.    INTERPLAY OF SECTIONS 222 AND 227.................................................................97
    A.  Background ............................................................................................................97
    B.  Discussion ............................................................................................................100

VI.   ESTABLISHED BUSINESS RELATIONSHIP ...........................................................109
    A.  Background ..........................................................................................................109
    B.  Discussion ............................................................................................................112
        1.  Definition of Established Business Relationship.........................................113
        2.  Telecommunications Common Carriers ......................................................119
        3.  Interplay Between Established Business Relationship and Do-Not-Call
            Request........................................................................................................124

VII.  TAX-EXEMPT NONPROFIT ORGANIZATION EXEMPTION ................................125
    A.  Background ..........................................................................................................125
    B.  Discussion ............................................................................................................128

VIII. AUTOMATED TELEPHONE DIALING EQUIPMENT ..............................................129
    A.  Background ..........................................................................................................129
    B.  Discussion ............................................................................................................131
        1.  Predictive Dialers.........................................................................................131
        2.  "War Dialing" ..............................................................................................135

IX.   ARTIFICIAL OR PRERECORDED VOICE MESSAGES ..........................................136
    A.  Background ..........................................................................................................136
    B.  Discussion ............................................................................................................139
        1.  Offers for Free Goods or Services; Information-Only Messages ...............139
        2.  Identification Requirements........................................................................143
        3.  Radio Station and Television Broadcaster Calls.........................................145

X.    ABANDONED CALLS................................................................................................146
    A.  Background ..........................................................................................................146
    B.  Discussion ............................................................................................................150
        1.  Maximum Rate on Abandoned Calls...........................................................151
        2.  Two-Second-Transfer Rule..........................................................................153
        3.  Prerecorded Message for Identification......................................................155
        4.  Established Business Relationship..............................................................156
        5.  Ring Duration ..............................................................................................157

XI.   WIRELESS TELEPHONE NUMBERS.......................................................................160
    A.  Background ..........................................................................................................160

   B. Discussion ...........................................................................................................................165
      1. Telemarketing Calls to Wireless Numbers .............................................................165
      2. Wireless Number Portability and Pooling ..............................................................168

XII.  CALLER IDENTIFICATION ...................................................................................................173
   A. Background .........................................................................................................................173
   B. Discussion ...........................................................................................................................179

XIII.  UNSOLICITED FACSIMILE ADVERTISEMENTS .....................................................................185
   A. Background .........................................................................................................................185
   B. Discussion ...........................................................................................................................187
      1. Prior Express Invitation or Permission ...................................................................187
      2. Fax Broadcasters ....................................................................................................194
      3. Fax Servers .............................................................................................................198
      4. Identification Requirements ...................................................................................203

XIV.  PRIVATE RIGHT OF ACTION .................................................................................................204
   A. Background .........................................................................................................................204
   B. Discussion ...........................................................................................................................206

XV.  INFORMAL COMPLAINT RULES.............................................................................................207

XVI.  TIME OF DAY RESTRICTIONS................................................................................................208

XVII.  ENFORCEMENT PRIORITIES ..................................................................................................211

XVIII.  OTHER ISSUES ......................................................................................................................215
   A. Access to TCPA Inquiries and Complaints ........................................................................215
   B. Reports to Congress ............................................................................................................217

XIX.  PROCEDURAL ISSUES............................................................................................................218
   A. Regulatory Flexibility Act Analysis ...................................................................................218
   B. Paperwork Reduction Act Analysis ....................................................................................219
   C. Late-Filed Comments..........................................................................................................220
   D. Materials in Accessible Formats.........................................................................................221

XX.  ORDERING CLAUSES .............................................................................................................222

Appendix A: Final Rules
Appendix B: Final Regulatory Flexibility Act Analysis
Appendix C: Comments Filed

liability for the transmission of unsolicited faxes.[726] Cox specifically urges the Commission to distinguish the obligations of fax broadcasters from "traditional common carriers."[727] As noted above, the Commission has stated that "[i]n the absence of 'a high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions,' common carriers will not be held liable for the transmission of a prohibited facsimile message."[728] We reiterate here that if a common carrier is merely providing the network over which a subscriber (a fax broadcaster or other individual, business, or entity) sends an unsolicited facsimile message, that common carrier will not be liable for the facsimile.

197. Nextel urges the Commission to clarify that section 217 of the Communications Act does not impose a higher level of liability on common carriers than on other entities for violations of the TCPA.[729] Section 217 provides that " [i]n construing and enforcing the provisions of this Act, the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person."[730] The Commission declines to address the scope of section 217 in this rulemaking, which was not raised in the *2002 Notice* or in subsequent notices in this proceeding.

### 3. Fax Servers

198. The TCPA makes it unlawful for any person to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine.[731] The TCPA defines the term "telephone facsimile machine" to mean "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper."[732] The Commission sought comment on any developing technologies, such as computerized fax servers, that might warrant revisiting these rules.[733]

199. Commenters who addressed this issue were divided on whether fax servers should be subject to the unsolicited facsimile provisions. Some industry representatives urged the Commission to clarify that the TCPA does not prohibit the transmission of unsolicited fax

---

[726] Cox Comments at 12-19.

[727] Cox Comments at 13.

[728] *1992 TCPA Order*, 7 FCC Rcd at 8780, para. 54 (quoting *Use of Common Carriers*, 2 FCC Rcd 2819, 2820 (1987)).

[729] Nextel Comments at 40-41.

[730] 47 U.S.C. § 217.

[731] 47 U.S.C. § 227(b)(1)(C).

[732] 47 U.S.C. § 227(a)(2); this definition was incorporated in § 64.1200(f)(2) of the Commission's rules.

[733] *2002 Notice*, 17 FCC Rcd at 17482, para. 37.

advertisements to fax servers and personal computers because these transmissions are not sent to a "telephone facsimile machine," as defined in the statute.[734] Nextel maintains that such faxes do not implicate the harms Congress sought to redress in the TCPA, as they are not reduced to paper and can be deleted from one's inbox without being opened or examined.[735] Other commenters disagree, noting that there are other costs associated with faxes sent to computers and fax servers.[736] They note that the TPCA only requires that the equipment have the *capacity* to transcribe text or messages onto paper,[737] and that computer fax servers and personal computers have that capacity.

200. We conclude that faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes. However, we clarify that the prohibition does not extend to facsimile messages sent as email over the Internet. The record confirms that a conventional stand-alone telephone facsimile machine is just one device used for this purpose; that developing technologies permit one to send and receive facsimile messages in a myriad of ways. Today, a modem attached to a personal computer allows one to transmit and receive electronic documents as faxes. "Fax servers" enable multiple desktops to send and receive faxes from the same or shared telephony lines.[738]

201. The TCPA's definition of "telephone facsimile machine" broadly applies to any equipment that has the capacity to send or receive text or images. The purpose of the requirement that a "telephone facsimile machine" have the "capacity to transcribe text or images" is to ensure that the prohibition on unsolicited faxing not be circumvented. Congress could not have intended to allow easy circumvention of its prohibition when faxes are (intentionally or not) transmitted to personal computers and fax servers, rather than to traditional stand-alone facsimile machines. As the House Report accompanying the TCPA explained, "facsimile machines are designed to accept, process and print all messages which arrive over their dedicated lines. The fax advertiser takes advantage of this basic design by sending advertisements to available fax numbers, knowing that it will be received and printed by the recipient's machine."[739] However, Congress also took account of the "interference,

---

[734] *See* Nextel Comments at 31-32.

[735] Nextel Reply Comments at 4-5.

[736] Michael C. Worsham Comments at 20; James Suggs Comments at 1. Commenters also note that some commercial facsimile services transmit faxes to the recipients as email attachments. We emphasize that any rules the Commission adopts with respect to unsolicited facsimile advertisements would not extend to facsimile messages transmitted as email over the Internet. *See* definition of telephone facsimile machine at 47 U.S.C. § 227(a)(2).

[737] Autoflex Comments at 2; J. Greg Coontz Reply Comments at 11-15, 16-17.

[738] *See* Kauffman Comments at 3. Although fax boards alone do not have the capability to transcribe text onto or from paper, the Commission nevertheless determined that fax modem boards, which enable personal computers to transmit messages to or receive messages from conventional facsimile machines or other computer fax boards, are the functional equivalent of telephone facsimile machines. *See 1995 Reconsideration Order*, 10 FCC Rcd at 12404-06, paras. 28-30.

[739] H.R. REP. NO. 102-317 at 10 (1991).

interruptions, and expense" resulting from junk faxes, emphasizing in the same Report that "[i]n addition to the costs associated with the fax advertisements, when a facsimile machine is receiving a fax, it may require several minutes or more to process and print the advertisement. During that time, the fax machine is unable to process actual business communications."[740]

202. Facsimile messages sent to a computer or fax server may shift the advertising costs of paper and toner to the recipient, if they are printed. They may also tie up lines and printers so that the recipients' requested faxes are not timely received.[741] Such faxes may increase labor costs for businesses, whose employees must monitor faxes to determine which ones are junk faxes and which are related to their company's business. Finally, because a sender of a facsimile message has no way to determine whether it is being sent to a number associated with a stand-alone fax machine or to one associated with a personal computer or fax server, it would make little sense to apply different rules based on the device that ultimately received it.

### 4. Identification Requirements

203. The TCPA and Commission rules require that any message sent via a telephone facsimile machine contain the date and time it is sent and an identification of the business, other entity, or individual sending the message and the telephone number of the sending machine or of such business, other entity, or individual.[742] In the *2002 Notice*, the Commission asked whether these rules have been effective at protecting consumers' rights to enforce the TCPA.[743] The Commission determined in its *1997 Reconsideration Order* that a facsimile broadcast service must ensure that the identifying information of the entity on whose behalf the provider sent messages appear on facsimile messages. In its discussion, the Commission clarified that the sender of a facsimile message is the creator of the content of the message, finding that Section 227(d)(1) of the TCPA mandates that a facsimile include the identification of the business, other entity, or individual creating or originating a facsimile message, and not the entity that transmits the message.[744] The Commission believes that if a fax broadcaster is responsible for the content of the message or for determining the destination of the message (*i.e.,* supplying the list of facsimile numbers to which the faxes are sent), it should be identified on the facsimile, along with the entity whose products are advertised.[745] Therefore, we amend the rules to require any

---

[740] H.R. REP. NO. 102-317 at 25 (1991).

[741] *See Covington & Burling v. International Marketing & Research, Inc. et al.,* No. 01-0004360 (D.C. Sup. Ct. (April 16, 2003) (finding a fax broadcaster liable under the TCPA for transmitting unsolicited fax advertisements to a law firm's fax server).

[742] 47 U.S.C. § 227(d)(1)(B); 47 C.F.R. § 68.318(d).

[743] *2002 Notice*, 17 FCC Rcd at 17483-84, paras. 37 and 40.

[744] *1997 Reconsideration Order*, 12 FCC Rcd at 4612-13, para. 6.

[745] *See* NAAG Comments at 32-33 (stating that only requiring the advertiser's identify has been a hindrance in enforcing the TCPA. It has been the states' experience that fax broadcasters, who maintain their own databases and send others' advertisements to these fax numbers, frequently omit their identifying information as the sender in order to avoid detection and enforcement action.).