# EXHIBIT 2-B

Cin-Q Automobiles, Inc., et al. v. BTL
Case No. 8:13-cv-01592-AEP (M.D. Fla.)

Federal Communications Commission                                                          DA 15-977

**Before the
Federal Communications Commission
Washington, D.C. 20554**

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| Westfax, Inc. Petition for Consideration and | ) |
| Clarification | ) |
| | ) |
| Rules and Regulations Implementing the | )    CG Docket No. 02-278 |
| Telephone Consumer Protection Act of 1991 | ) |
| | ) |
| Junk Fax Protection Act of 2005 | )    CG Docket No. 05-338 |

**DECLARATORY RULING**

Adopted: August 28, 2015                                                  Released: August 28, 2015

By the Acting Chief, Consumer and Governmental Affairs Bureau:

**I.      INTRODUCTION**

    1.      Unwanted fax advertisements can annoy consumers, costing them time and money by way of interfering transmissions, and unplanned uses of paper and toner, as well as wear and tear on equipment. In this Declaratory Ruling, we make clear that a type of fax advertisement – an efax, a document sent as a conventional fax then converted to and delivered to a consumer as an electronic mail attachment[1] – is covered by the consumer protections in the Telephone Consumer Protection Act (TCPA)[2] and the Junk Fax Protection Act (JFPA).[3] Based on our clarification, consumers will enjoy the same

---

[1] Westfax describes an efax "in general" as "a fax that is converted to email." *Westfax, Inc.*, Petition for Consideration and Clarification, CG Docket Nos. 02-278, 05-338 at 2 (filed Sep. 24, 2009) (Westfax Petition or Petition). *See infra* ¶ 4 for a fuller description. Efaxes differ from other faxes in that the intended recipient, instead of using a fax machine to receive incoming faxes, uses equipment or a service that converts the incoming fax into a format that can be and is emailed to the recipient.

[2] The TCPA is codified as 47 U.S.C. § 227.

[3] The Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, 119 Stat. 359 (2005) (JFPA) is codified as 47 U.S.C. § 227(b)(1)(C). Except where the context demonstrates otherwise, "TCPA" refers to the TCPA as amended, including by the JFPA. On September 25, 2013, Westfax confirmed via *ex parte* its continued interest in a ruling on this request, despite its reliance on a 2008 holding in *J2 Global Communications, Inc. v. Protus IP Solutions,* Case No. 0600566DDP (AJWx) which had held that efax providers are recipients and therefore have standing to sue efax senders in a TCPA private right of action which was subsequently overturned in *J2 Global Communications, Inc. v. Protus IP Solutions*, 2010 WL 9446806 (C.D. Cal.) (Oct. 1, 2010). The court in the subsequent case determined that the ultimate fax recipient (*i.e.*, the efax provider's end user customer) has standing to sue as the harmed party. The reversal, which occurred after Westfax filed the Petition, may have addressed Westfax's concerns in that particular litigation. We have, however, provided confirmation and clarification on particular issues to the extent contained herein.

protections from unwanted efaxes as they do from conventional faxes. As such, we grant as described below the Petition for Consideration and Clarification filed by Westfax, Inc. (Westfax) and otherwise deny the petition.

## II. BACKGROUND

2. In 1991, Congress enacted the TCPA in an effort to address certain calling and faxing practices thought to be an invasion of consumer privacy and a risk to public safety.[4] In relevant part, the TCPA prohibits the use of any telephone fax machine, computer, or other device to send an "unsolicited advertisement" to a telephone fax machine.[5] In 1992, the Commission adopted rules implementing the TCPA, including restrictions on the transmission of unsolicited fax advertisements by fax machines.[6]

3. In 2005, Congress enacted the JFPA, which amended the fax advertising provisions of the TCPA.[7] In general, the JFPA: (1) codified an established business relationship (EBR) exemption to the prohibition on sending unsolicited fax advertisements;[8] (2) provided a definition of an EBR to be used in the context of unsolicited fax advertisements;[9] (3) required the sender of a fax advertisement to provide specified notice and contact information on the fax that allows recipients to "opt-out" of any future fax transmissions from the sender;[10] and (4) specified the circumstances under which a request to "opt out" complies with the Act.[11] In 2006, the Commission amended the rules concerning fax transmissions as required by the JFPA and addressing certain issues raised in petitions for reconsideration of its 2003 Report and Order.[12]

4. In 2009, Westfax filed its Petition seeking clarification of the TCPA and the JFPA and its related provisions as it applies to the transmission of efaxes.[13] Westfax provides a fax broadcasting service that transmits messages to fax machines or fax servers on another entity's behalf.[14] It also provides an efax service.[15] In its Petition, Westfax describes an efax as "a facsimile transmission . . . received on a fax server,"[16] and "in general" is "a fax that is converted to email."[17] Westfax further

---

[4] *See* 47 U.S.C. § 227.

[5] *Id.* § 227(b)(1)(C).

[6] *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Report and Order, 7 FCC Rcd 8752 (1992) (*1992 TCPA Order*); *see also* 47 C.F.R. § 64.1200(a)(3).

[7] *See* JFPA.

[8] *Id.* sec. 2(a).

[9] *Id.* sec. 2(b).

[10] *Id.* sec. 2(c).

[11] *Id.* sec. 2(d).

[12] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Junk Fax Prevention Act of 2005*, CG Docket Nos. 02-278, 05-338, Report and Order and Third Order on Reconsideration, 21 FCC Rcd 3787, 3788 at para. 1 (2006) (*Junk Fax Order*).

[13] *See* Petition at 2-6.

[14] *See Id.*

[15] *See* http://www.westfax.com/fax-forward.aspx (visited Aug. 25, 2015) (offering "FaxForward," a service that "automatically converts received faxes into electronic images that are delivered directly to your email inbox . . .").

[16] Petition at 2.

[17] *Id.*

explains that a document sent as a fax over a telephone line to the recipient's fax number becomes an efax when a fax server on the receiving end converts the fax transmission into a digital image file or PDF that is in turn sent to the recipient as an attachment to an email message.[18]

5.     Westfax seeks clarification of the following:  (1) whether an efax is a fax, an email, or both; (2) whether the restrictions on unsolicited fax advertisements apply to efaxes, and, if so, to what extent; (3) whether the definition of a fax recipient under the rules applies when the recipient receives an efax; (4) whether it is a TCPA violation to send an efax to someone who has consented to receive traditional faxes or has an EBR; (5) whether the FCC would issue a "safe harbor" standard opt-out notice for faxes; and (6) whether third parties, including fax broadcasters, who are retained to accept opt-out requests, are deemed to be giving any advice on how to comply with the fax advertising rules, and therefore whether such services are an example of "involvement" that creates any TCPA or JFPA liabilities for the third-party provider.[19]

6.     The Bureau sought comment on the issues raised in Westfax's petition.[20]  Seven individuals filed comments.[21]  All commenters support a finding that efaxes are fully subject to the TCPA.  While the commenters do not address all of the other issues Westfax raises, they uniformly agree that efaxes should be treated the same as traditional faxes and oppose interpreting or applying the TCPA or JFPA so as to absolve from liability the sender of an unsolicited advertisement via "efax."[22]

**III.   DISCUSSION**

7.     We grant to the extent described herein and otherwise deny Westfax's Petition. Based on the record and Commission precedent, including the *2003 TCPA Order* and the *Junk Fax Order*, we clarify that efaxes are subject to the TCPA and the Commission's related rules.  We also clarify who is the recipient of an efax, and decline, in the context of this declaratory ruling and without specific facts, to determine at what point a fax broadcaster is sufficiently involved in fax advertising as to be liable for TCPA violations, or to establish a "safe harbor" opt-out notice.

8.     First, we find that efaxes are subject to the TCPA's consumer protections.  The TCPA and the Commission's rules make it unlawful for any person to use any telephone fax machine, computer, or other device to send an unsolicited advertisement to a telephone fax machine unless there is an EBR between the sender and recipient, the sender has obtained the recipient's fax number through an acceptable method, and the sender provides certain notices on the fax transmission.[23]  The Commission's rules define "telephone facsimile machine" to mean "equipment which has the capacity to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper."[24]

---

[18] *See id.*

[19] *See id.* at 2-6.

[20] *See Consumer and Governmental Affairs Bureau Seeks Comment on Petition for Consideration and Clarification from Westfax, Inc.*, CG Docket Nos. 02-278, 05-338, Public Notice, 27 FCC Rcd 13291 (2012).

[21] *See* Appendix A.

[22] *See, e.g.*, Comments of Roylance at 1; Comments of Shields at 1; Comments of Nocerini at 1-2; Comments of Braver at 1-2; Comments of Worsham at 3.

[23] *See* 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(4).

[24] 47 C.F.R. § 64.1200(f)(13).

9. Westfax's description makes clear that efaxes are sent as faxes over telephone lines,[25] which satisfies the statutory requirement that the communication be a fax on the originating end. Efaxes also satisfy the statutory requirements to be a fax on the receiving end. The definition of "telephone facsimile machine" sweeps in the fax server and modem, along with the computer that receives the efax because together they by necessity have the capacity to "transcribe text or images (or both) from an electronic signal received over a telephone line onto paper."[26] The interpretation is consistent with the Commission's conclusion in the *2003 TCPA Order* addressing whether the TCPA covers faxes sent to computers attached to fax servers or modems.[27] Westfax's description of efaxes makes clear that the recipient computers are attached to fax servers or services that convert the fax into a format that is attached to an email received by the computer.

10. Westfax correctly notes, in this regard, that the Commission's finding in the *2003 TCPA Order* that faxes sent to computers with attached fax servers or modems is accompanied by the statement that faxes "sent as an email over the Internet" are not subject to TCPA and the rules.[28] Westfax's concern appears to be that the conversion of the fax to email *after* it is sent removes it from the TCPA's reach. That is not the case. The TCPA applies to a fax that is sent as a fax over a telephone line to a device that meets the statutory definition of "telephone facsimile machine," which, as discussed above, is the case here. There is an end-to-end communication that starts when the faxed document is sent over a telephone line and ends when the converted document is received on a computer.[29] Just so, citing the statute in the *2003 TCPA Order*, the Commission stated that, "the TCPA makes it unlawful for any person to use any telephone facsimile machine, computer or other device to *send* an unsolicited advertisement to a telephone facsimile machine,"[30] including sending an unsolicited advertisement to a computer attached to a fax server or modem. Efaxes are sent as a fax over a telephone line to a telephone facsimile machine and are thus subject to TCPA and the Commission's rules. By contrast, a fax *sent as an email* over the Internet – *e.g.*, a fax attached to an email message or a fax whose content has been pasted into an email

---

[25] Petition at 2.

[26] 47 C.F.R. § 64.1200(f)(13).

[27] *2003 TCPA Order*, 18 FCC Rcd at 14132-33.

[28] *See id.* at 14133.

[29] Both the *2003 TCPA Order* and our analysis here are consistent with the Commission's general approach of treating a call between two parties as a single end-to-end communication. *See*, *e.g.*, *Teleconnect Co. v. Bell Tel. Co. of Pa.*, 10 FCC Rcd 1626, 1632, para. 12 (1995) ("[B]oth court and Commission decisions have considered the end-to-end nature of the communications more significant than the facilities used to complete such communications. According to these precedents, we regulate an interstate wire communication under the Communications Act from its inception to its completion. Such an interstate communication does not end at an intermediate switch."); *see also* 47 CFR 64.605(a)(2)(v) (stating that the connection of emergency Telecommunications Relay Service calls from a caller to a Communications Assistant and from a Communications Assistant to a public safety answering point are each "legs" of a single call, rather than separate calls); *Structure and Practices of the Video Relay Service Program*, CG Docket No. 10-51, Notice of Inquiry, 25 FCC Rcd 8597-98, paras. 3-5 (2010) (explaining that Telecommunications Relay Service (TRS) and Video Relay Service (VRS) enable an end-to-end, two-way communication between hearing and non-hearing consumers: TRS uses a voice line to link a hearing person to a Communications Assistant (CA), who converts voice to and from text compatible with a text telephone machine (TTY), and uses a TTY line to link the CA to a hearing-impaired person; VRS uses a voice line to link a hearing person to a CA, who converts voice to and from American Sign Language, and uses an Internet-based video link between the CA and the hearing-impaired person).

[30] *See 2003 TCPA Order,* 18 FCC Rcd at 14132 (emphasis added).

message – is not subject to the TCPA.[31]  While we understand that the harm to recipients may be the same whether the efax begins as a fax or email, the Commission has previously interpreted the TCPA to apply only to those that begin as faxes.  The Commission's statements address separate factual situations – one involving a communication originating as a fax over a telephone line and another communication originating as an email over the Internet.  Westfax raises no questions regarding a document sent as an email over the Internet.

　　　　11.　　We disagree with the contention that efaxes do not implicate the TCPA's consumer protection concerns.[32]  Faxes "sent to a computer or fax server may shift the advertising costs of paper and toner to the recipient if they are printed"[33] and can cause "interference, interruptions, and expense" that can result from junk faxes, whether physical or electronic.[34]  Efaxes, just like paper faxes, can increase labor costs for businesses, whose employees must monitor faxes to separate unwanted from desired faxes.[35]  Moreover, as the Commission stated in 2003, it would make little sense to apply a different set of rules (or, in this case, no rule at all) to faxes sent to one type of device (a standalone fax machine) versus another (a computer and its attachments) when the sender generally does not know what device will receive the fax.[36]  We share commenters' concerns that efaxes could be used to avoid the TCPA's protections resulting in increased unwanted fax ads on their computers.[37]

　　　　12.　　We next clarify that it is the consumer to whom the content of a fax or efax is directed that is the "recipient" under the TCPA.  Westfax asks whether the recipient is the company with the fax server that converts the fax into an email.[38]  The Commission's rules and orders make clear that the "recipient" of a fax is the consumer for whom the fax's content is intended and to whom the fax's content is sent by dialing that consumer's fax number.[39]  The TCPA and the Commission's rules are designed to protect consumers for whom unwanted faxes represent annoyance and wasted resources.  Entities that convert faxes to email are not "recipients" of such faxes under the TCPA because they are not the intended audience for the fax.  Instead, based upon the description of Westfax's own FaxForward service, such entities provide a service to the recipient that requires them to become part of the communications pathway between the sender and the recipient.[40]  Thus, while they expect to be part of the fax communication, they are neither the intended recipient nor the ultimate recipient of the document sent as a fax any more than would be the telephone company providing a telephone line to a consumer's traditional fax machine.

---

[31] We note that commercial email is subject to the CAN-SPAM Act, although we make no finding on how that might apply to "efaxes" here.  Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003, Pub. L. No. 108-187, 117 Stat. 2699, *codified at* 15 U.S.C. § 7701-7713, 18 U.S.C. § 1037 and 28 U.S.C. § 994.

[32] Petition at 4.

[33] *2003 TCPA Order,* 18 FCC Rcd at 14134.

[34] *See* H.R. Rep. No. 102-317 at 25 (1991); *2003 TCPA Order* at ¶ 201.

[35] *See generally 2003 TCPA Order* at ¶ 202.

[36] *Id.*

[37] *See, e.g.*, Comments of Roylance at 4-5; Comments of Nocerini at 1; Comments of Shields at 1.

[38] *See* Petition at 4.

[39] *See, e.g., Junk Fax Order*, 21 FCC Rcd at 3794-96; *2003 TCPA Order*, 18 FCC Rcd at 14133-35.

[40] *See* http://www.westfax.com/fax-forward.aspx (visited Aug. 25, 2015) (offering a service to fax recipients that "automatically converts received faxes into electronic images that are delivered directly to your email inbox . . .").

13. Westfax also asks whether the Commission would provide "safe harbor" language for fax opt-out notices.[41] We decline to do so here. The Commission's rules and orders already identify the content fax senders must include to allow consumers to opt-out of future unwanted faxes, but do not prescribe specific language.[42] This approach allows fax senders flexibility in how to comply with the Commission's rules. We further decline to prejudge whether we would adopt such a safe harbor were we to consider the issue in an appropriate rulemaking proceeding. We note that the fax opt-out notice requirements have been in place for more than seven years and we have no evidence that other fax senders have struggled with finding language that would satisfy those requirements.

14. Finally, Westfax asks us to clarify whether third parties, including fax broadcasters,[43] who are retained to accept opt-out requests, are deemed to be giving any advice on how to comply with the fax advertising rules, and therefore whether such services are an example of the "involvement" that creates TCPA liability for the third-party provider.[44] Neither Westfax's petition nor the comments provide a record sufficient to support the kind of fact-specific inquiry required to determine when a fax broadcaster's involvement in sending faxes is so substantial that the fax broadcaster is liable. We note, however, that the Commission has identified factors, as applicable to the specific facts of each case, to be used in determining whether a fax broadcaster is liable under the TCPA.[45] In doing so, the Commission declined to make a generalized conclusion that all fax broadcasters are exempt from liability regardless of the facts.[46] Based upon the record before us, we find no controversy or uncertainty requiring clarification about the degree of "involvement" that may make fax broadcasters liable for TCPA violations.

## IV. CONCLUSION AND ORDERING CLAUSES

15. For the reasons stated above, IT IS ORDERED, pursuant to sections 1-4 and 227 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151-154, 227, and sections 1.2 and 64.1200 of the Commission's Rules, 47 C.F.R. §§ 1.2, 64.1200, and pursuant to the authority delegated in sections 0.141 and 0.361 of the Commission's rules, 47 C.F.R. §§ 0.141, 0.361, that the Petition for Consideration

---

[41] Petition at 5.

[42] *See Junk Fax Order*, 21 FCC Rcd at 3800-06; *see also* 47 CFR § 64.1200(a)(4)(iii) (requiring opt-out notices).

[43] A fax broadcaster is "a person or entity that transmits messages to telephone facsimile machines on behalf of another person or entity for a fee." 47 C.F.R. § 64.1200(f)(7). The Commission has granted temporary waivers of the opt-out notice requirement to specific parties. *See Petition for Declaratory Ruling, Waiver, and/or Rulemaking Regarding the Commission's Opt-Out Requirement for Faxes Sent with the Recipient's Prior Express Permission*, CG Docket Nos. 02-278, 05-338, Order, 29 FCC Rcd 13998 (2014). The Bureau will separately address later-filed petitions seeking similar waivers.

[44] *See 2003 TCPA Order*, 18 FCC Rcd at 14131-32; 47 C.F.R. §64.1200(a)(4)(vii) ("A facsimile broadcaster will be liable for violations of paragraph (a)(4) of this section, including the inclusion of opt-out notices on unsolicited advertisements, if it demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such facsimile transmissions.").

[45] *See 2003 TCPA Order*, 18 FCC Rcd at 14131-32 ("The Commission believes that, based on the record and our own enforcement experience, addressing the activities of fax broadcasters will better inform both consumers and businesses about the prohibition on unsolicited fax advertising. The Commission has determined to amend the rules to explicitly state that a fax broadcaster will be liable for an unsolicited fax if there is a high degree of involvement or actual notice on the part of the broadcaster . . . . [I]f the fax broadcaster supplies the fax numbers used to transmit the advertisement, the fax broadcaster will be liable for any unsolicited advertisement faxed to consumers and businesses without their prior express invitation or permission.").

[46] *See 2003 TCPA Order,* 18 FCC Rcd at 14135-36.

and Clarification filed by Westfax on September 25, 2009 IS GRANTED TO THE EXTENT DESCRIBED HEREIN AND IS OTHERWISE DENIED.

    16.    IT IS FURTHER ORDERED that this Declaratory Ruling shall be effective upon release.

        FEDERAL COMMUNICATIONS COMMISSION


        Alison Kutler
        Acting Chief
        Consumer and Governmental Affairs Bureau

## Appendix A

## List of Commenters

| **Commenters** | **Abbreviation** |
|---|---|
| Gerald Roylance | Roylance |
| Joe Shields | Shields |
| Steve Nocerini | Nocerini |
| Robert Braver | Braver |
| Michael C. Worsham | Worsham |
| Jimmy Sutton | Sutton |
| Richard S. Alembik | Alembik |