# EXHIBIT 4-A

**Excerpts from**
**In the Matter of Joseph T. Ryerson &**
**Son, Inc. Petition for Declaratory Ruling,**
**2020 WL 5362216 (F.C.C. Sept. 4, 2020)**

In relevant part, a ""telephone facsimile machine" is defined as "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." Construing these terms in 2003, the Commission made clear that the prohibition does not extend to facsimile messages "sent as email over the Internet."

Ryerson ¶ 1 (footnotes omitted).

In this declaratory ruling, we find that Ryerson's technology is similar to the technology the Bureau addressed in Amerifactors. We therefore grant the Petition because the petitioner did not send an unsolicited advertisement to a telephone facsimile machine under the TCPA.

Ryerson ¶ 3.

In 2003, the Commission made clear that the TCPA's prohibition does not extend to facsimile messages "sent as email over the Internet." The Bureau reiterated this finding in the *Westfax Declaratory Ruling*, finding that "a fax *sent as an email* over the Internet—*e.g.*, a fax attached to an email message or a fax whose content has been pasted into an email message—is not subject to the TCPA."

. . .

The Bureau held that "[t]he TCPA applies to a fax that is sent as a fax over a telephone line to a device that meets the statutory definition of 'telephone facsimile machine,'" and found also that the "efaxes" at issue in the *Westfax Declaratory Ruling* were received by equipment that had "the capacity to 'transcribe text or images (or both) from an electronic signal received over a telephone line onto paper'" and thus met that statutory definition.[11] The *Westfax Declaratory Ruling* held that the TCPA applies only when the document in question begins as a fax, not to one that is initially sent as an email.

¹¹ As noted in our subsequent *Amerifactors* decision, the *Westfax Declaratory Ruling* assumed, based on a limited record, that the equipment receiving the fax had the capacity to print the fax. *See Amerifactors*, 34 FCC Rcd 11950, 11954, para. 15. If such equipment lacks the capacity to print a fax, it does not meet the definition of a "telephone facsimile machine." *See id.*

Ryerson ¶ 6, n.11 (emphasis in original) (footnotes omitted).

Commenter Biggerstaff argues that all faxes are sent digitally, and can be received or sent using a computer, but the message in question should be considered a fax and not an email because "[w]hen someone uploads a list of 10-digit telephone numbers and a fax image to a fax broadcaster's web site, they are undoubtedly sending faxes as a result of their actions even though they used a web browser to start the process."

Ryerson ¶ 9 (footnote omitted).

In 2019, the Bureau determined in the *Amerifactors Declaratory Ruling* that to the extent an unsolicited facsimile advertisement is sent to a service that effectively receives faxes "sent as email over the Internet" and is not itself "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper," the language of the TCPA and our precedent make clear that the service is not a "telephone facsimile machine" and is thus outside the TCPA's reach.

Ryerson ¶ 10.

²⁶ While the record lacks sufficient detail for us to know whether the Ryerson transmittal was identical to that in *Amerifactors*, essential facts are the same in the two cases. We are basing our determination here solely on the facts in the record; there is no evidence to suggest that the facts are incorrect.

Ryerson ¶ 11 n.26.

As explained in *Amerifactors*, to the extent an unsolicited facsimile advertisement is sent to an online service that effectively receives faxes "sent as email over the Internet" and is not itself "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper," the service is not a "telephone facsimile machine" and is thus outside the scope of the statutory prohibition.

Ryerson ¶ 11 (footnote omitted).

The Bureau also explained that a fax received by an online fax service is "effectively an email," and that consumers can manage them the same way they manage email: by blocking senders or deleting incoming messages without printing them. We concluded that the TCPA's language demonstrates that Congress did not intend the statute's prohibition to apply to an online service that receives faxes "sent as email over the Internet."

Ryerson ¶ 12 (footnotes omitted).

The Commission made clear in the *2003 TCPA Order* that when the receiving equipment could transcribe a fax onto paper, it would remain within the scope of the TCPA. Conversely, as the Bureau explained in *Amerifactors*, an online service is not itself "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." This type of service, we stated, is not a "telephone facsimile machine."

. . .

In the instant case, consumers, such as Connector Casings, which used the Office@Hand cloud-based service, can manage incoming messages as they would manage email. According to the Petition, Connector used AT&T's Office@Hand tool, a cloud-based service, to facilitate email receipt.

Ryerson ¶ 13 (footnotes omitted).

We also stated in *Amerifactors* that an online service cannot itself print a fax and thus is "plainly not 'equipment which has the capacity . . . to transcribe text or images (or both) from electronic signal received over a regular telephone line onto paper" and thus does not meet the statutory definition of a ""telephone facsimile machine."

Ryerson ¶ 14 (footnotes omitted).

We recognize that the Commission stated in the *2003 TCPA Order* that when the receiving equipment can transcribe a fax onto paper, it would remain within the scope of the TCPA. That was not the case here, however, as the cloud-based service received the document and it is not equipment that can transcribe a fax onto paper. Connector had the option to manage its Office@Hand account and handle the incoming document in the same way as an email. Further, we reiterate that transmissions that are effectively email do not implicate the consumer harms Congress sought to address in the TCPA, such as tying up phone/fax lines and the unnecessary use of paper and toner/ink from automatic printing.

Ryerson ¶ 15 (footnotes omitted).

Similarly, we disagree with those commenters who argue that the transmissions are TCPA-covered faxes because they were eventually sent to a computer that could print the message. Virtually all email could be accessed by computers with printing capabilities; yet emails do not implicate the consumer harms that are the TCPA's target, such as automatic printing.

Ryerson ¶ 16 (footnotes omitted).