# EXHIBIT 4-B

Cin-Q Automobiles, Inc., et al. v. BTL
Case No. 8:13-cv-01592-AEP (M.D. Fla.)

**Before the
Federal Communications Commission
Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Joseph T. Ryerson & Son, Inc. Petition for | ) | CG Docket No. 02-278 |
| Declaratory Ruling | ) | |
| | ) | |
| Rules and Regulations Implementing the | ) | CG Docket No. 05-338 |
| Telephone Consumer Protection Act of 1991 | ) | |

**DECLARATORY RULING**

**Adopted:  September 3, 2020**                                **Released: September 4, 2020**

By the Chief, Consumer and Governmental Affairs Bureau:

## I.     INTRODUCTION

1.     The Telephone Consumer Protection Act (TCPA), as amended by the Junk Fax Protection Act (JFPA), prohibits any person from sending an unsolicited advertisement to a "telephone facsimile machine."[1]  In relevant part, a "telephone facsimile machine" is defined as "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper."[2]  Construing these terms in 2003, the Commission made clear that the prohibition does not extend to facsimile messages "sent as email over the Internet."[3]

2.     In 2015, Joseph T. Ryerson & Son, Inc. (Ryerson) filed a petition seeking clarification that, among other things, messages that are initiated and received in digital form are not governed by the TCPA.[4]  Ryerson contends that such transmissions are more closely analogous to an email than a traditional fax.[5]

3.     After Ryerson made its request, the Consumer and Governmental Affairs Bureau (Bureau) issued the *Amerifactors Declaratory Ruling*, stating that "an online fax service that effectively receives faxes 'sent as email over the Internet' and is not itself 'equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper' is not a 'telephone facsimile machine' and thus falls outside the scope of the statutory prohibition."[6]

---

[1] 47 U.S.C. § 227(b)(1)(C).

[2] *Id.* § 227(a)(3).

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14133, para. 200 (2003) (*2003 TCPA Order*).

[4] Petition of Joseph T. Ryerson & Son, Inc. for Declaratory Ruling, CG Docket Nos. 02-278, 05-338 (filed Nov. 3, 2015) (Petition or Ryerson Petition).

[5] Ryerson Petition at 3-4.

[6] *Amerifactors Financial Group, LLC Petition for Expedited Declaratory Ruling*, CG Docket Nos. 02-278, 05-338, Declaratory Ruling, 34 FCC Rcd 11950, 11950-51, para. 3 (CGB 2019) (*Amerifactors* or *Amerifactors Declaratory Ruling*), *application for review pending*.

4.	In this declaratory ruling, we find that Ryerson's technology is similar to the technology the Bureau addressed in *Amerifactors*. We therefore grant the Petition because the petitioner did not send an unsolicited advertisement to a telephone facsimile machine under the TCPA.

## II.	BACKGROUND

5.	In relevant part, the TCPA prohibits the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement."[7] The TCPA defines "telephone facsimile machine" as "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper."[8]

6.	In 2003, the Commission made clear that the TCPA's prohibition does not extend to facsimile messages "sent as email over the Internet."[9] The Bureau reiterated this finding in the *Westfax Declaratory Ruling*, finding that "a fax *sent as an email* over the Internet—*e.g.*, a fax attached to an email message or a fax whose content has been pasted into an email message—is not subject to the TCPA."[10] The Bureau held that "[t]he TCPA applies to a fax that is sent as a fax over a telephone line to a device that meets the statutory definition of 'telephone facsimile machine,'" and found also that the "efaxes" at issue in the *Westfax Declaratory Ruling* were received by equipment that had "the capacity to 'transcribe text or images (or both) from an electronic signal received over a telephone line onto paper'" and thus met that statutory definition.[11] The *Westfax Declaratory Ruling* held that the TCPA applies only when the document in question begins as a fax, not to one that is initially sent as an email.[12]

7.	In 2015, Ryerson sought a declaratory ruling that faxes that are initiated in digital form and sent via a web-based fax service are not governed by the TCPA.[13] Ryerson describes the relevant circumstances as the following process:

> A Ryerson employee uploaded a digital version of the file to a Web portal managed and owned by a third party provider of communication tools that is unaffiliated with Ryerson. The communication to Connector [i.e., Connector Castings, a Ryerson customer] therefore originated in digital form (not as a traditional facsimile).
>
> Ryerson also has learned that Connector received the alleged "fax" via email. Connector

---

[7] 47 U.S.C. § 227(b)(1)(C).

[8] *Id.* § 227(a)(3).

[9] *2003 TCPA Order*, 18 FCC Rcd at 14133, para. 200.

[10] *Westfax, Inc. Petition for Consideration and Clarification*, CG Docket Nos. 02-278, 05-338, Declaratory Ruling, 30 FCC Rcd 8620, 8623-24, para. 10 (CGB 2015) (*Westfax Declaratory Ruling*) (emphasis in the original).

[11] *Id.* at 8623, paras. 9, 10. As noted in our subsequent *Amerifactors* decision, the *Westfax Declaratory Ruling* assumed, based on a limited record, that the equipment receiving the fax had the capacity to print the fax. *See Amerifactors*, 34 FCC Rcd 11950, 11954, para. 15. If such equipment lacks the capacity to print a fax, it does not meet the definition of a "telephone facsimile machine." *See id*.

[12] *Westfax Declaratory Ruling*, 30 FCC Rcd at 8624, para. 10. We are making our determination here solely on the basis of what we have in the record; we note that there is no evidence to suggest that these facts are incorrect or that the document in question began as a fax transmittal.

[13] Petition at 2.

used AT&T's RingCentral Office@Hand tool to facilitate email receipt.[14]

8. Ryerson argues that: (1) under the *Westfax Declaratory Ruling*, messages that are initiated and received in digital form are not governed by the TCPA because they are "more closely analogous to an email than a traditional fax";[15] (2) application of the TCPA to messages initiated and received in digital form would violate the First Amendment because it would not be "narrowly tailored to serve compelling state interests;"[16] and (3) application of the TCPA to messages initiated and received in digital form would fail to provide fair notice to reasonable persons of what is prohibited and thus would be void for vagueness under the First and Fifth Amendments.[17]

9. The Bureau sought comment on the Petition. Several parties filed comments.[18] Five supported Ryerson, arguing that the TCPA's fax regulation was created to protect consumers from transmissions over telephone lines, not the Internet,[19] and from damages due to fax machine wear, paper, toner/ink, and telephone line usage.[20] Three commenters opposing the Ryerson Petition argue that the TCPA should apply because it should protect consumers from faxes that are converted to email.[21] One opposing commenter contends that the fax in question was covered by the TCPA because it was sent from a computer to a computer that could print the message.[22] Commenter Connector, the plaintiff in the underlying TCPA action against Ryerson,[23] asserts that the communication is an "efax," whether it originates or is received in digital form, because it is sent over a telephone line, (unlike an email, which is sent over the Internet) and thus is governed by the TCPA based on the *Westfax Declaratory Ruling*.[24] Commenter Biggerstaff argues that all faxes are sent digitally, and can be received or sent using a computer, but the message in question should be considered a fax and not an email because "[w]hen someone uploads a list of 10-digit telephone numbers and a fax image to a fax broadcaster's web site,

---

[14] *Id.* at 3. This transmittal involved the following three steps: (1) Ryerson employee uploaded the digital file to the third-party portal; (2) the third party transmitted the Ryerson digital file to Connector's RingCentral Office@Hand account; and (3) the Ryerson file was received by Connector from its Office@Hand account as an email file. *Id.* at 2. There is no evidence in the record as to whether the Commission's rule regarding faxing of unsolicited advertisements between parties with an established business relationship would apply to this communication if we were to determine it was sent using a telephone facsimile machine. *See* 47 CFR § 64.1200(a)(4)(i).

[15] Petition at 4-5.

[16] *Id.* at 5-7.

[17] *Id.* at 7-8.

[18] These comments were all filed prior to the December 9, 2019, *Amerifactors Declaratory Ruling*. A list of commenters is in the Appendix.

[19] Gregg Comments at 1; Brinker Comments at 1-3 & Reply at 1-4; Friend Comments at 1-2; Daciolas Reply at 1-4.

[20] Friend Comments at 1-2; Stephens Comments at 1-2; Daciolas Comments at 1-2.

[21] Braver Comments at 5; Sutton Comments at 1; Bank Comments at 1.

[22] Anderson Comments at 3-4.

[23] *Connector Casings, Inc. v. Joseph T. Ryerson & Son, Inc. d/b/a Ryerson, and John Does 1-10*, Case No. 15-cv-00851-NAB. In 2015, Ryerson was granted a retroactive waiver of the opt-out rule by the Bureau. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Junk Fax Prevention Act of 2005, Petitions for Declaratory Ruling and Retroactive Waiver of 47 C.F.R. § 64.1200(a)(4)(iv) Regarding the Commission's Opt-Out Notice Requirement for Faxes Sent with the Recipient's Prior Express Permission*, CG Docket Nos. 02-278, 05-338, Order, 30 FCC Rcd 8598 (CGB 2015) (*2015 TCPA Waiver*).

[24] Connector Castings Comments at 2-3.

they are undoubtedly sending faxes as a result of their actions even though they used a web browser to start the process."[25]

10.     In 2019, the Bureau determined in the *Amerifactors Declaratory Ruling* that to the extent an unsolicited facsimile advertisement is sent to a service that effectively receives faxes "sent as email over the Internet" and is not itself "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper," the language of the TCPA and our precedent make clear that the service is not a "telephone facsimile machine" and is thus outside the TCPA's reach.

### III.    DISCUSSION

11.     We find that the technology described by Ryerson in its Petition is sufficiently similar to that described in *Amerifactors*, and is thus governed by our analysis there.[26]  The transmission in this case is, therefore, not subject to the TCPA.[27]  As explained in *Amerifactors*, to the extent an unsolicited facsimile advertisement is sent to an online service that effectively receives faxes "sent as email over the Internet" and is not itself "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper," the service is not a "telephone facsimile machine" and is thus outside the scope of the statutory prohibition.[28]

12.     The Bureau explained in *Amerifactors* that an online fax service that (1) effectively receives faxes sent as an email over the Internet and (2) is not itself equipment which has the capacity to transcribe text or images received over the telephone line onto paper is not a "telephone facsimile machine" and is not subject to the TCPA.[29]  The Bureau also explained that a fax received by an online fax service is "effectively an email," and that consumers can manage them the same way they manage email: by blocking senders or deleting incoming messages without printing them.[30]  We concluded that the TCPA's language demonstrates that Congress did not intend the statute's prohibition to apply to an online service that receives faxes "sent as email over the Internet."[31]

13.     The Commission made clear in the *2003 TCPA Order* that when the receiving equipment could transcribe a fax onto paper, it would remain within the scope of the TCPA.[32]  Conversely, as the Bureau explained in *Amerifactors*, an online service is not itself "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper."[33]  This type of service, we stated, is not a "telephone facsimile machine."[34]  In the instant case,

---

[25] Biggerstaff Comments at 3; *see also* Nocerini Comments at 1-2; Lucas Comments at 1.

[26] While the record lacks sufficient detail for us to know whether the Ryerson transmittal was identical to that in *Amerifactors*, essential facts are the same in the two cases.  We are basing our determination here solely on the facts in the record; there is no evidence to suggest that the facts are incorrect.

[27] We find that sufficient controversy or uncertainty existed at the time Ryerson submitted its petition to justify issuing a declaratory ruling as set out in section 1.2 of our rules.  *See* 47 CFR § 1.2.  At the time Ryerson filed its petition, the Bureau had not yet issued the *Amerifactors Declaratory Ruling*.  Ryerson was granted a retroactive waiver of the opt-out rule in the *2015 TCPA Waiver*; that waiver, however, would not affect any other possible TCPA violations.

[28] *See Amerifactors Declaratory Ruling*, 34 FCC Rcd at 11952, para. 8.

[29] *Id*.

[30] *Id.* at 11953, para. 11.

[31] *Id.* at 11951, para. 5.

[32] *Id.* (citing *2003 TCPA Order*, 18 FCC Rcd at 14133, para. 200).

[33] *Id.* at 11952, para. 10.

consumers, such as Connector Casings, which used the Office@Hand cloud-based service, can manage incoming messages as they would manage email. According to the Petition, Connector used AT&T's Office@Hand tool, a cloud-based service, to facilitate email receipt.[35]

14. The record here shows that Ryerson sent the file electronically to "a Web portal managed and owned by a third-party provider of communications tools."[36] The file was subsequently sent electronically by the third-party service to Connector's Office@Hand account; Connector then received the file as an email.[37] We stated in *Amerifactors* that faxes "sent to online fax services via an attachment that the consumer can delete without printing are effectively the same as 'email sent over the Internet.'"[38] As in *Amerifactors*, the document here, which was received by Connector's Office@Hand online service, was "effectively an email" sent over the Internet by the third-party service and not covered by the TCPA.[39] We also stated in *Amerifactors* that an online service cannot itself print a fax and thus is "plainly not 'equipment which has the capacity . . . to transcribe text or images (or both) from electronic signal received over a regular telephone line onto paper" and thus does not meet the statutory definition of a "telephone facsimile machine."[40]

15. We recognize that the Commission stated in the *2003 TCPA Order* that when the receiving equipment can transcribe a fax onto paper, it would remain within the scope of the TCPA.[41] That was not the case here, however, as the cloud-based service received the document and it is not equipment that can transcribe a fax onto paper. Connector had the option to manage its Office@Hand account and handle the incoming document in the same way as an email. Further, we reiterate that transmissions that are effectively email do not implicate the consumer harms Congress sought to address in the TCPA, such as tying up phone/fax lines and the unnecessary use of paper and toner/ink from automatic printing.[42]

16. We disagree with commenters who argue that the TCPA should apply because it should protect consumers from transmissions converted to email.[43] As the Commission and Bureau have stated previously, the TCPA does not apply to documents that are sent as email over the Internet and received as email.[44] Here, it is undisputed that the document in question was not initially sent as a fax, but was always a digital electronic file. Similarly, we disagree with those commenters who argue that the transmissions are TCPA-covered faxes because they were eventually sent to a computer that could print

---

(Continued from previous page)

[34] *Id*.

[35] Petition at 2. According to AT&T, Office@Hand is a "flexible cloud-based solution that provides voice, fax, text messaging, and audio and video conferencing so workers can be more productive in the office or on the go." AT&T Business, *AT&T Office@Hand*, https://www.business.att.com/products/office-at-hand.html (last visited July 24, 2020).

[36] Petition at 2.

[37] Petition at 2-3.

[38] *See Amerifactors Declaratory Ruling*, 34 FCC Rcd at 11953, para. 11.

[39] *Id*.

[40] *Id*.

[41] *Id*. (citing *2003 TCPA Order*, 18 FCC Rcd at 14133, para. 200).

[42] *See id.* at 11953-54, paras. 12-13.

[43] *See* Braver Comments at 5; Sutton Comments at 1; Bank Comments at 1.

[44] The Bureau explained in the *Westfax Declaratory Ruling* that "a fax sent as an email over the Internet—*e.g*., a fax attached to an email message or a fax whose contents has been pasted into an email message—is not subject to the TCPA." *Westfax Declaratory Ruling*, 30 FCC Rd at 8623-24, para 10. The TCPA applies "only to those that begin as faxes." *Id*. at 8624, para. 10.

the message.[45]  Virtually all email could be accessed by computers with printing capabilities; yet emails do not implicate the consumer harms that are the TCPA's target, such as automatic printing.  We also disagree with Connector's argument that the document in question is covered by the TCPA because it is an efax and "[e]faxes are different from emails, and [] are to be governed by the TCPA."[46]  The *Westfax Declaratory Ruling* clearly distinguishes faxes that begin as faxes from those that do not; the TCPA applies only to documents that begin as faxes.[47]  Thus, we find nothing in opposing commenters' arguments that disturbs our precedent.

17. We grant the Ryerson Petition for the reasons discussed above.  Because we do so on other grounds, we need not address its First and Fifth Amendment arguments.

**IV. ORDERING CLAUSES**

18. IT IS ORDERED that, pursuant to sections 1-4 and 227 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151-154, 227, sections 1.2 and 64.1200 of the Commission's rules, 47 CFR §§ 1.2, 64.1200, and the authority delegated in sections 0.141 and 0.361 of the Commission's rules, 47 CFR §§ 0.141, 0.361, the Petition for Declaratory Ruling filed by Joseph T. Ryerson & Son, Inc., on November 4, 2015, IS GRANTED TO THE EXTENT DESCRIBED HEREIN and is otherwise DISMISSED AS MOOT.

19. IT IS FURTHER ORDERED that this Declaratory Ruling shall be effective upon release.

FEDERAL COMMUNICATIONS COMMISSION


Patrick Webre
Chief
Consumer and Governmental Affairs Bureau

---

[45] *See* Anderson Comments at 8.

[46] Connector Casings Comments at 2.

[47] *Westfax Declaratory Ruling*, 30 FCC Rcd at 8623-24, para 10.

# APPENDIX

Parties filing initial comments

| Commenter | Abbreviated name |
|---|---|
| Anderson + Wanca | Anderson |
| Todd Bank | Bank |
| Robert Biggerstaff | Biggerstaff |
| Robert H. Braver | Braver |
| Cynthia Brinker | Brinker |
| Connector Castings, Inc. | Connector Castings |
| Johnny Daciolas | Daciolas |
| Michael Friend | Friend |
| Mark Gregg | Gregg |
| Vincent Lucas | Lucas |
| Steve Nocerini | Nocerini |
| Jason Stephens | Stephens |
| Jimmy A. Sutton | Sutton |

Parties filing reply comments

| Commenter | Abbreviated name |
|---|---|
| Robert Biggerstaff | Biggerstaff |
| Cynthia Brinker | Brinker |
| Johnny Daciolas | Daciolas |
| Joseph T. Ryerson & Son, Inc. | Ryerson |