# EXHIBIT 6

Cin-Q Automobiles, Inc., et al. v. BTL
Case No. 8:13-cv-01592-AEP (M.D. Fla.)

**BEFORE THE**
**FEDERAL COMMUNICATION COMMISSION**
**WASHINGTON, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Rules and Regulations Implementing the Telephone | ) | CG Docket No. 02-278 |
| Consumer Protection Act of 1991 | ) | |
| | ) | |
| Junk Fax Prevention Act of 2005 | ) | CG Docket No. 05-338 |

**<u>WESTFAX, INC. PETITION FOR CONSIDERATION AND CLARIFICATION</u>**

WILLIAM B. HAYES
257 Jackson Street
Denver, Colorado 80206
303 514 0658
303 291 3368 (fax)
sqhayes@aol.com

Its Counsel

September 24, 2009

**BEFORE THE**
**FEDERAL COMMUNICATION COMMISSION**
**WASHINGTON, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Rules and Regulations Implementing the Telephone | ) | CG Docket No. 02-278 |
| Consumer Protection Act of 1991 | ) | |
| | ) | |
| Junk Fax Prevention Act of 2005 | ) | CG Docket No. 05-338 |

**WESTFAX, INC. PETITION FOR CONSIDERATION AND CLARIFICATION**

Westfax, Inc. ("Westfax") hereby petitions the Federal Communications Commission ("FCC") pursuant to 47 C.F.R. Section 1. 429 to review, consider and clarify certain aspects of its facsimile advertising rules and other miscellaneous findings it made in its Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, FCC 03-153 Released July 3, 2003 (the "2003 Report and Order"), the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278 dated April 6, 2006 (the "2006 Report and Order") and in its other decisions and findings as set forth below.

The FCC has primary authority over the telecommunications industry including facsimiles, facsimile advertising and facsimile advertising rules. The FCC has been active and helpful in addressing issues related thereto. The entire industry benefits from the knowledge and direction imparted by the FCC. This Petition is not an attempt to gain any economic or competitive advantage for any party or any segment of the industry.

Senders, recipients and fax broadcasters, including Westfax, and the telecommunication industry in general have a genuine and substantial interest in the FCC promptly reviewing, considering and clarifying these matters presented pursuant to its exclusive authority to rule, interpret, regulate and enforce the Telephone Consumer Protection Act of 1991 ("TCPA") and the Junk Fax Prevention Act of 2005 ("JFPA").

**Introduction**

The FCC, in general, and in particular in the 2003 Report and Order and 2006 Report and Order implementing the TCPA and JFPA, provides guidance for senders, carriers, fax broadcasters, recipients and others on most, if not all, of the relevant issues. Relatively few new facsimile advertising issues have arisen. The FTC national do not call list, the facsimile advertising rules and the CAN-SPAM Act of 2003 laws regulate these mediums of communication.

However, it has been several years since the 2006 Report and Order was released. The very common questions and situations raised in this Petition, after careful study and review, cannot be answered and appear to fall into a TCPA "black hole". As a result,

Westfax seeks guidance and directions on these issues for the benefit of the industry as a whole. The Courts do not have adequate law, regulations, legislative history or other information to make uniform decisions.

### efaxes

The traditional facsimile is being replaced by email. Also, the numbers of messages that are sent by facsimile machines to a "fax server" are increasingly converted to emails and sent over the Internet to the intended recipients.

An "efax", in general, is a facsimile message converted to an email. A facsimile transmission is received on a fax server. Once a telephone call is placed, the sending and receiving machines communicate with one another or "handshake". If a connection is established, the document is transmitted between the two machines. After the transmission, the fax server converts the message into a digital image file that is then sent as an email attachment via the Internet to the recipient.

"efaxes" change the traditional sender (fax broadcaster) – sending telephone facsimile machine - telephone line –  recipient telephone facsimile machine – recipient model to a sender (fax broadcaster) – telephone facsimile machine – telephone line - efax carrier fax server (fax converted to pdf file) - Internet – email to efax carrier's customer (recipient) model.

### Requests for Consideration and Clarification

The TCPA prohibits the use of any telephone facsimile machine, computer or other device to send an "unsolicited advertisement" to a "telephone facsimile machine".

An "unsolicited advertisement" is defined as that "transmitted to any <u>person</u> without that <u>person's</u> prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5) (emphasis added). The 2006 Report and Order amended the FCC rules on unsolicited advertisements as required by the JFPA and codified an "established business relationship" (EBR) exemption to the prohibition on sending unsolicited advertisements.

Section 2(a) of the JFPA amends Section 227(b)(1)(C) by adding an EBR exemption to the prohibition on sending unsolicited advertisements. It is unlawful to use any telephone facsimile machine, computer or other device to send, to a "telephone facsimile machine" unless – (i) the unsolicited advertisement is from a sender with an established business relationship with the <u>recipient</u> …..

The term "established business relationship" means a prior or existing relationship formed by a voluntary two-way communication between a <u>person or entity and a business or residential subscriber</u> with or without the exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party. This EBR exemption extends to both

business and residential subscribers. Once established, the EBR will permit an entity to send facsimile advertisements to a business or residential subscriber until the subscriber "terminates" it by making a request not to receive future faxes. In addition, the FCC concluded that the EBR exemption applies only to the entity with which the business or residential subscriber has had a "voluntary two-way communication". While the fax broadcaster may transmit an advertisement on behalf of an entity that has an EBR with the recipient, it is not transferable.

The FCC stated that the "sender" is the person or entity on whose behalf the advertisement is sent. In most instances, this will be the entity whose product or service is advertised or promoted in the message. The sender is liable for violations of the facsimile advertising rules.

Section 4.1200(a)(3) was amended accordingly and the <u>EBR exemption allows companies to communicate effectively with their customers.</u> To ensure that the EBR exemption is not exploited, the entity that sends a facsimile advertisement on the basis of an EBR should be responsible for demonstrating the existence of the EBR. Should a question arise, the burden will be on the sender to show that it has a valid EBR with the <u>recipient</u>. The telephone number must also be provided voluntarily by the <u>recipient</u>.

The provision of a telephone facsimile number to a business or other entity reflects a willingness to receive faxes from that entity. Accordingly, it would be permissible for the sender to fax an advertisement to a <u>recipient</u> that had provided a facsimile number to the sender, for example, on an application or orally over the phone. In circumstances such as these we conclude that the <u>consumer</u> has provided the facsimile number in the context of an established business relationship with the fax sender.

In the 2003 Report & Order the FCC determined that "faxes sent to personal computers, equipped with or attached to, modems and to computerized fax servers are subject to the TCPA prohibition on unsolicited faxes …" 68 Fed. Reg. At 44,170, Par 143.

In spite of the facts that the TCPA and JFPA are remarkably clear as to liability for fax broadcasters ("high degree of involvement") and senders ("consent and/or an EBR") and the FCC's existing decisions and findings, including those made in the 2003 Report and Order and the 2006 Report and Order, they do not adequately address or answer the questions raised below. We request that the FCC consider and clarify:

1. What is an "efax". Is it a facsimile, an email or both.

2. Do the TCPA, JFPA and the facsimile advertising rules apply to "efaxes" and if so, how, when, where and to what extent.

The 2006 Report and Order does not address efaxes or fax servers. The 2003 Report and Order states the FCC's conclusion that "faxes sent to fax servers are subject to the TCPA's prohibition on unsolicited faxes. However, we clarify that the prohibition does not extend to facsimile messages sent as email over the Internet".

The FCC also notes that Congress could not have intended to allow easy circumvention of the prohibition when faxes are (intentionally or not) transmitted to fax servers.

As the House Report accompanying the TCPA explained, facsimile machines are designed to accept, process <u>and print all messages</u> which arrive over their dedicated lines. The fax advertiser takes advantage of this basic design by sending advertisements to available numbers <u>knowing that it will be received and printed by the recipient's machine</u>. However, Congress also took account of the "interference, disruptions and expense" resulting from junk faxes, emphasizing in the same Report that "in addition to the costs associated with the fax advertisements, <u>when a facsimile machine is receiving a fax, it may require several minutes or more to process and print the advertisement. During that time, the fax machine is unable to process actual business communications.</u>

Facsimile messages sent to a fax server may shift the advertising costs of <u>paper and toner to the recipient, if they are printed. They may also tie up lines and printers so the recipients' requested faxes are not timely received.</u> Such faxes may increase labor costs for businesses, whose employees must monitor faxes to determine which ones are junk faxes and which are related to their company's business.

Finally, because a sender of a facsimile message has <u>no way to determine</u> whether it is being sent to a number associated with a stand alone fax machine or one associated with a fax server, it would make little sense to apply different rules based upon the device that ultimately received it.

The point is none of this makes any sense in attempting to apply the existing law to efaxes. Obviously, the House Report findings above are terribly dated. These findings are not accurate with respect to faxes sent to fax servers. Fax servers are not designed to print and do not print the messages. Processing is immediate, there is delay, no monitoring, printing, paper or toner, inability to process actual business communications or lines or printers tied up. This is the 21st century.

3. What is the definition of a "recipient" and who is the recipient of an "efax".

Is the "recipient" the person, entity, consumer, customer, business, residential subscriber, etc. the message was intended for (e.g. the person designated in the Header).

Is the company with the fax server that converts the facsimile to email for its customer a "recipient" or a "passive conduit" for faxes converted to emails and sent over the Internet to its customer.

The FCC has not defined or explained the term "recipient".

The TCPA provides <u>consumers</u> (emphasis added) with a private right of action in state court for any violation of the TCPA's prohibitions …… Congress provided <u>consumers</u> (emphasis added) with a private right of action if otherwise permitted by the laws or rules of court of a State.

Companies with fax servers that convert facsimiles to emails and send them over the Internet to their customers do not appear to be "consumers" or "recipients" but there is no specific discussion, analysis or conclusion on the subject.

    4.        Is it a TCPA violation in the common situation where a sender sends a facsimile advertisement to a business or residential subscriber who has consented to receive the facsimile advertisement or who has an established business relationship with the sender if a company with a fax server receives the facsimile advertisement and converts it to an email and sends it over the Internet to the business or residential subscriber.

The question is asked in a manner that could be answered "yes" or "no"

    5.        Will the FCC issue a "safe harbor" standard opt-out notice that would be deemed to comply with the opt-out rules that every sender could routinely include on its facsimiles.

The "opt-out" provisions of the JFPA have had the intended beneficial effect they were designed to generate.

In the 2006 Report and Order, the FCC amended its rules on unsolicited facsimile advertisements as required by the JFPA. The rules required senders of facsimile advertisements to provide specified notice and contact information on the facsimiles that allows <u>recipients</u> to "opt out" of any future facsimile transmissions from the senders.

Section 2(c) of the JFPA adds language that requires senders to include the notice of "opt out" opportunity on the first page of the unsolicited advertisement that instructs the <u>recipient</u> how to request that they not receive future unsolicited advertisements from the sender.

Making the opt-out request "clear and conspicuous", including a cost-free opt-out mechanism, actually honoring the opt-out request and the interplay of the identification requirements and opt-out notice have not been issues in actual practice. The FCC made it very clear an opt-out notice is required but is very technical and confusing as to what disclosure complies with the opt-out notice requirements. The actual language senders use varies tremendously, creates confusion, very often fails to comply with the requirements below, generates litigation and raises technical issues of opt-out notice compliance. A "safe harbor" standard opt-out notice example or examples created by the FCC that is deemed to comply with the opt-out notice requirements that every sender could routinely include on its facsimiles would be very beneficial.

It would be easy for the FCC to offer one or more examples of language that does comply with the opt-out notice requirements. The FCC could make it clear these are only examples and not intended to be all-inclusive.

    1.  Notice clear and conspicuous

2.  Notice on first page of the advertisement (if cover sheet suggested there too)
3.  Notice at either the top or bottom of the fax.
4.  Notice separate and distinguishable from the advertising copy or other disclosures
5.  Notice include domestic contact telephone number AND a facsimile machine number for the recipient to transmit such a request to the sender
6.  Notice include at least one (1) "cost-free mechanism" for transmitting an opt-out request. If the cost-free mechanism offered by the sender is either a domestic toll-free telephone number or toll-free facsimile machine number, the sender will be in compliance with both sets of requirements.
7.  A website address, email address, toll-free telephone number, or toll-free facsimile machine number are each cost-free mechanisms. A local telephone
8.  A number may be considered a cost-free mechanism so long as the advertisements are sent to local consumers for whom a call to that number would not result in long distance or other separate charges. If a sender uses a website for receiving opt-out requests, it must describe the opt-out mechanism and procedures clearly and conspicuously on the first page of the website.
9.  Advertisers responsibility to ensure that the cost free mechanism selected be available to accept opt-out requests from the recipients 24 hours a day, 7 days a week at the number(s), website or email address identified in the opt-out notice.
10. Per the FCC, the opt-out cannot be in the form of a "negative option" (for example a fax that has a telephone number and an instruction to call if the recipient no longer wishes to receive such faxes.

7. Is a third party, including a fax broadcaster, retained to accept opt-out requests for the sender who has its contact information and/or cost-free numbers to accept opt-out requests on a customer's facsimile advising the customer on how to comply with the facsimile advertising rules and/or is the fax broadcaster "highly involved" solely as a result of providing such services.

The FCC stated in the 2006 Report and Order "Regardless of whether the sender includes its own contact information in the opt-out notice or the contact information of a third party retained to accept opt-out requests, (emphasis added) the sender is liable for any violations of the rules. Third parties, including fax broadcasters (emphasis added), need only accept and forward do-not-fax requests to the extent the underlying business contracts out such responsibilities to them.

As a result, many fax broadcasters and other third parties offer their contact information and/or cost-free numbers to accept opt-out requests. In most cases, this is merely an ancillary service of the fax broadcaster and there is no charge for the service.

The FCC's Regulations state very clearly the sender is liable when an advertiser arranges for a fax broadcaster to send faxes on its behalf. A sender is defined and a fax broadcaster is defined. The standards for liability under the TCPA and JFPA and Report and Order for senders and fax broadcasters are clear for both and materially different.

The current FCC regulation on intermediary liability provides that "[a] facsimile broadcaster will be liable [for unsolicited fax advertisements] . . . if it demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such facsimile transmissions." 47 C.F.R. § 64.1200(a)(3)(vii). This regulation has been in effect since August 25, 2003. In its 2003 Report and Order amending the regulations, the FCC articulated the kind of actions by a fax broadcaster that indicate a "high degree of involvement," and that a fax broadcaster will not be liable in the absence of such involvement. FCC Final Rule, 68 Fed. Reg. 44,144, 44,170. The current regulation was an extension of the longstanding application of this rule to common carriers. *See* In the Matter of Rules and Regulations Implementing the [TCPA], 7 F.C.C.R. 8752, 8780 (1992) (citing *Use of Common Carriers*, 2 F.C.C.R. 2819, 2820 (1987))."

We request clarification that third parties, including fax broadcasters, who are retained to accept opt-out requests, are not deemed to be giving any advise on how to comply with the facsimile advertising rules, such services are not an example of any "involvement" and such services do not create any TCPA and JFPA liability for such third party service provider.

### Conclusion

For the foregoing reasons, Westfax respectfully asks the FCC to review, consider and clarify these issues, its findings and reconfirm the applicable provisions of the TCPA and JFPA and the fax advertising rules and regulations to ensure that lawful facsimile transmissions may continue to be sent.

                                                **Respectfully submitted,**

                                                **William B. Hayes**
                                                **257 Jackson Street**
                                                **Denver, Colorado 80206**
                                                **303 514 0658**

                                                **Counsel for Westfax, Inc.**