# EXHIBIT 11

Cin-Q Automobiles, Inc., et al. v. BTL
Case No. 8:13-cv-01592-AEP (M.D. Fla.)

## Equipment At Issue In <u>Westfax</u>, <u>Amerifactors</u> And <u>Ryerson</u>

### A.   <u>Westfax</u>

> Westfax provides a fax broadcasting service that transmits messages to fax machines or fax servers on another entity's behalf.  It also provides an efax service.
>
> . . .
>
> In its Petition, Westfax describes an efax as "a facsimile transmission . . . received on a fax server," and "in general" is "a fax that is converted to email." Westfax further explains that a document sent as a fax over a telephone line to the recipient's fax number becomes an efax when a fax server on the receiving end converts the fax transmission into a digital image file or PDF that is in turn sent to the recipient as an attachment to an email message.

<u>In re Westfax</u>, 2015 WL 5120880, ¶ 4 (F.C.C. Aug. 28, 2015) (footnotes omitted).

> Westfax's description makes clear that efaxes are sent as faxes over telephone lines, which satisfies the statutory requirement that the communication be a fax on the originating end. Efaxes also satisfy the statutory requirements to be a fax on the receiving end. The definition of ""telephone facsimile machine" sweeps in the fax server and modem, along with the computer that receives the efax because together they by necessity have the capacity to "transcribe text or images (or both) from an electronic signal received over a telephone line onto paper."

<u>Westfax</u> ¶ 9 (footnotes omitted).

> Westfax correctly notes, in this regard, that the Commission's finding in the *2003 TCPA Order* that faxes sent to computers with attached fax servers or modems is accompanied by the statement that faxes "sent as an email over the Internet" are not subject to TCPA and the rules. Westfax's concern appears to be that the conversion of the fax to email *after* it is sent removes it from the TCPA's reach. That is not the case. The TCPA applies to a fax that is sent as a fax over a telephone line to a device that meets the statutory definition of "telephone facsimile machine," which, as discussed above, is the case here.

<u>Westfax</u> ¶ 10 (footnotes omitted).

Page **1** of **6**

### B. <u>Amerifactors</u>

An online fax service is "a cloud-based service consisting of a fax server or similar device that is used to send or receive documents, images and/or electronic files in digital format over telecommunications facilities" that allows users to "access 'faxes' the same way that they do email: by logging into a server over the Internet or by receiving a pdf attachment [as] an email."

. . .

By this declaratory ruling, we make clear that an online fax service that effectively receives faxes "sent as email over the Internet" and is not itself "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper" is not a "telephone facsimile machine" and thus falls outside the scope of the statutory prohibition.

Amerifactors, 2019 WL 6712128, ¶¶ 2-3 (F.C.C. Dec. 9, 2019) (footnotes omitted).

In 2003, the Commission made clear that the TCPA's prohibition does not extend to facsimile messages "sent as email over the Internet." In doing so, the Commission made clear that where the equipment itself could transcribe a fax onto paper—such as a personal computer attached to printer and modem—it would remain within the scope of the statute. The Consumer and Governmental Affairs Bureau reiterated this finding in the *Westfax Declaratory Ruling*, finding that the "efaxes" at issue in that case were received by equipment that had "the capacity to 'transcribe text or images (or both) from an electronic signal received over a telephone line onto paper."

Amerifactors ¶ 5 (footnotes omitted).

To the extent an unsolicited facsimile advertisement is sent to a service that effectively receives faxes "sent as email over the Internet" and is not itself "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper," the language of the TCPA and our precedent make clear that service is not a "telephone facsimile machine" and is thus outside the scope of the statutory prohibition. Our clarification is limited to an analysis of online fax services, as informed by the current record, and does not prejudge whether we would arrive at the same conclusion for other types of equipment and services.

Amerifactors ¶ 8.

> Next, we turn to whether an online fax service is a "telephone facsimile machine." As described in the record, a fax received by an online fax service as an electronic message is effectively an email. Under our precedent, faxes "sent as email over the Internet" are not subject to the TCPA. Faxes sent to online fax services via an attachment that the consumer can delete without printing are effectively the same as "email sent over the Internet."" Consumers can manage those messages the same way they manage email by blocking senders or deleting incoming messages without printing them. We also understand that an online fax service cannot itself print a fax—the user of an online fax service must connect his or her own equipment in order to do so. As such, an online fax service is plainly not "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." Accordingly, under the plain terms of the Act, an online fax service is not a "telephone facsimile machine" and a fax sent to one is not "an unsolicited facsimile advertisement" prohibited by the TCPA.

Amerifactors ¶ 11 (footnotes omitted).

> By contrast, the record here confirms that online fax services hold inbound faxes in digital form on a cloud-based server, where the user accesses the document via the online portal or via an email attachment and has the option to view, delete, or print them as desired. Faxes sent to online fax services use paper and ink only when the recipient *chooses* to print it using their own separately provided equipment. Neither is Congress' concern about junk faxes occupying the recipient's fax machine so it is unavailable for other transmissions an issue with online fax services. These services can handle multiple simultaneous incoming transmissions and thus receipt of any one fax does not render the service unavailable for others. In short, online fax services differ in critical ways from the traditional faxes sent to telephone facsimile machines Congress addressed in the TCPA. These faxes are more accurately characterized as faxes sent to a "computer" or "other device," and not a "telephone facsimile machine."

Amerifactors ¶ 13 (emphasis in original) (footnotes omitted).

> We also disagree with those that suggest this case is governed by the *Westfax Declaratory Ruling*. That decision focused on whether the mere conversion of a conventional fax to email at some point in the transmission chain removed the fax from the TCPA's reach—and found that it did not. And based on a limited record, it assumed that the "efax" in question was sent to

> a computer with an attached fax modem that had the capacity to print the fax, as required by statute. That decision did not consider the online fax services that have no such capacity at issue here.

Amerifactors ¶ 15 (footnotes omitted).

### C.  Ryerson

> Construing these terms in 2003, the Commission made clear that the prohibition does not extend to facsimile messages "sent as email over the Internet."
>
> . . .
>
> In this declaratory ruling, we find that Ryerson's technology is similar to the technology the Bureau addressed in *Amerifactors*. We therefore grant the Petition because the petitioner did not send an unsolicited advertisement to a telephone facsimile machine under the TCPA.

In re Joseph T. Ryerson & Son, Inc., 2020 WL 5362216, ¶¶ 1, 4 (F.C.C. Sept. 4, 2020).

> The Bureau held that "[t]he TCPA applies to a fax that is sent as a fax over a telephone line to a device that meets the statutory definition of 'telephone facsimile machine,'" and found also that the "efaxes" at issue in the *Westfax Declaratory Ruling* were received by equipment that had "the capacity to 'transcribe text or images (or both) from an electronic signal received over a telephone line onto paper'" and thus met that statutory definition.

Ryerson ¶ 6 (footnote omitted).

> In 2019, the Bureau determined in the *Amerifactors Declaratory Ruling* that to the extent an unsolicited facsimile advertisement is sent to a service that effectively receives faxes "sent as email over the Internet" and is not itself "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper," the language of the TCPA and our precedent make clear that the service is not a "telephone facsimile machine" and is thus outside the TCPA's reach.

Ryerson ¶ 10.

> We find that the technology described by Ryerson in its Petition is sufficiently similar to that described in *Amerifactors*, and is thus governed by our analysis there. The transmission in this case is, therefore, not subject to the TCPA. As explained in *Amerifactors*, to the extent an unsolicited facsimile advertisement is sent to an online service that effectively receives faxes "sent as email over the Internet" and is not itself "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper," the service is not a "telephone facsimile machine" and is thus outside the scope of the statutory prohibition.

Ryerson ¶ 11 (footnotes omitted).

> The Commission made clear in the *2003 TCPA Order* that when the receiving equipment could transcribe a fax onto paper, it would remain within the scope of the TCPA. Conversely, as the Bureau explained in *Amerifactors*, an online service is not itself "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." This type of service, we stated, is not a "telephone facsimile machine." In the instant case, consumers, such as Connector Casings, which used the Office@Hand cloud-based service, can manage incoming messages as they would manage email. According to the Petition, Connector used AT&T's Office@Hand tool, a cloud-based service, to facilitate email receipt.

Ryerson ¶ 13 (footnotes omitted).

> We stated in *Amerifactors* that faxes "sent to online fax services via an attachment that the consumer can delete without printing are effectively the same as 'email sent over the Internet.'" As in *Amerifactors*, the document here, which was received by Connector's Office@Hand online service, was "effectively an email" sent over the Internet by the third-party service and not covered by the TCPA. We also stated in *Amerifactors* that an online service cannot itself print a fax and thus is "plainly not 'equipment which has the capacity . . . to transcribe text or images (or both) from electronic signal received over a regular telephone line onto paper" and thus does not meet the statutory definition of a ""telephone facsimile machine."

Ryerson ¶ 14 (footnotes omitted).

> ==We recognize that the Commission stated in the *2003 TCPA Order* that when the receiving equipment can transcribe a fax onto paper, it would remain within the scope of the TCPA. That was not the case here, however, as the cloud-based service received the document and it is not equipment that can transcribe a fax onto paper. Connector had the option to manage its Office@Hand account and handle the incoming document in the same way as an email. Further, we reiterate that transmissions that are effectively email do not implicate the consumer harms Congress sought to address in the TCPA==, such as tying up phone/fax lines and the unnecessary use of paper and toner/ink from automatic printing.

Ryerson ¶ 15 (footnotes omitted).

> As the Commission and Bureau have stated previously, the TCPA does not apply to documents that are sent as email over the Internet and received as email.
>
> . . .
>
> ==Similarly, we disagree with those commenters who argue that the transmissions are TCPA-covered faxes because they were eventually sent to a computer that could print the message. Virtually all email could be accessed by computers with printing capabilities; yet emails do not implicate the consumer harms that are the TCPA's target, such as automatic printing.==

Ryerson, ¶ 16 (footnotes omitted).