UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CIN-Q AUTOMOBILES, INC., et al., </br>Plaintiffs, </br>v. </br>BUCCANEERS LIMITED PARTNERSHIP and JOHN DOES 1-10, </br>Defendants, </br>_____ </br>TECHNOLOGY TRAINING ASSOCIATES, INC., et al., </br>Intervenors. | Case No. 8:13-cv-01592-AEP </br></br>Magistrate Judge </br>Anthony E. Porcelli |

**LOCAL RULE 3.01(h) REQUEST FOR AN EVIDENTIARY HEARING ON THE MOTION OF BTL TO DISMISS THE CLASS CLAIMS FOR LACK OF ARTICLE III STANDING AND TO DECERTIFY THE SETTLEMENT CLASS**

Pursuant to Local Rule 3.01(h), Defendant Buccaneers Team LLC ("BTL") respectfully requests an evidentiary hearing on its motion, filed pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 23(c)(1)(C), to dismiss the class claims for lack of Article III standing and to decertify the Settlement Class.[1]  See BTL's Mot. to Dismiss and Decertify (Dkt. 492).  The purpose of the requested evidentiary hearing would be to address any evidence presented by Class Counsel in opposition to BTL's motion.  In support of this request, BTL states as follows:

---

[1] Capitalized terms have the meaning ascribed to them in the Settlement Agreement filed with Plaintiffs' motion for preliminary approval.  See Settlement Agt. (Dkt. 324-1).  In addition, all emphasis is supplied, and all internal citations, quotations and footnotes are omitted.

**A.  Plaintiffs And Class Counsel Bear The Burden Of Proof**

1. As BTL has made clear in multiple submissions, Plaintiffs and Class Counsel bear the burden of pleading and proving that <u>all</u> members of the Settlement Class have Article III standing.  <u>See</u>, <u>e.g.</u>, <u>id.</u>; BTL's Mot. to Suppl. the Record (Dkt. 523).  The fact that they have that burden is, in turn, well-established.  <u>See</u>, <u>e.g.</u>, <u>TransUnion v. Ramirez</u>, 594 U.S. 413, 423 (2021); <u>Drazen v. Pinto</u>, 41 F.4th 1354, 1362 (11th Cir. 2022) ("<u>Drazen I</u>"); <u>Dep't of Educ. v. Brown</u>, 600 U.S. 551, 561 (2023); <u>Nat'l All. for Mentally Ill v. Bd. of Cnty. Comm'rs</u>, 376 F.3d 1292, 1294-95 (11th Cir. 2004) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)).

**B.  Plaintiffs And Their Counsel Have Not Met
Their Burden And Apparently Cannot Do So**

2. To date, Plaintiffs and Class Counsel have offered <u>no</u> evidence whatsoever to prove that <u>any</u> Settlement Class Member has Article III standing, let alone that <u>all</u> of them do (as is required).  <u>See</u> Collins Decl. (Dkt. 492-6) ¶ 8 (describing meet and confer in which Class Counsel openly acknowledged the Settlement Class includes persons and entities that received faxes as emails through online fax services).  To the contrary, Class Counsel have <u>repeatedly</u> taken the position that the definition of the Settlement Class is perfectly appropriate and sufficient unto itself, simply because under <u>Cherry</u>, the Settlement Class is defined in objective terms, with no apparent concern over whether the definition of the Settlement Class also satisfies <u>Drazen I</u> and <u>TransUnion</u> (it plainly does <u>not</u>).  <u>See</u>, <u>e.g.</u>, <u>Drazen I</u>, 41 F.4th at 1362 ("Any class definition that includes members who would never have standing under our precedent is a class definition that <u>cannot</u> <u>stand</u>."); <u>see also</u> <u>Cherry v. Dometic</u>, 986 F.3d 1296, 1304 (11th Cir. 2021)

2

(addressing the showing that must be made in order for a class to be certified in the first instance, subject to the ability of a court to later decertify the class if that "certified class [] turns out to be unmanageable").

3. Class Counsel have implied that the Claim Form the Parties agreed to as part of the Settlement somehow demonstrates that roughly 1% to 2% of the Settlement Class (i.e., those Settlement Class Members who submitted a claim) have somehow established standing, but that suggestion does not survive even passing scrutiny.  First, the Claim Form itself does not require claimants to indicate whether they received as emails faxes sent on behalf of BTL or not, a suggested addition to the Claim Form proposed as early as June of 2023 by BTL but that was customarily ignored and then later rebuffed by Class Counsel.  See BTL's Reply to Intervenors' June 30, 2023 Submission (Dkt. 467) at 7 & n.13.

4. Second, the Claim Form does not remotely address at all the three factual issues that must be addressed before it can be determined whether any Settlement Class Member has Article III standing: (1) did the Settlement Class Member receive as an email a fax sent on behalf of BTL between July 14, 2009 and June 9, 2010; (2) did the fax service provider utilized by the Settlement Class Member during that time period use equipment that had the capacity to print, and (3) was such equipment otherwise a "telephone facsimile machine" within the meaning of 47 U.S.C. § 227(a)(3).  See BTL's Feb. 20, 2024 Submission (filed concurrently herewith) at 19-20.  The Claim Form likewise does not resolve a fourth factual issue that must be addressed, namely which Settlement Class Members "received" faxes sent on behalf of BTL by simply logging into a cloud-based server maintained by their fax service provider.  See id.

3

5.      *Third*, even if the Claim Form did ask claimants to indicate whether they received faxes as emails, BTL would clearly have a right to challenge self-attestations on that issue and to take discovery, among other things, on precisely what fax service provider each Settlement Class Member used and whether such provider was an online fax service within the meaning of Amerifactors or Ryerson. See BTL's Feb. 20, 2024 Submission at 29-30; In re Amerifactors, 2019 WL 6712128, ¶ 11 (F.C.C. Dec. 9, 2019); In re Ryerson, 2020 WL 5362216, ¶ 14 (F.C.C. Sept. 4, 2020); see also disc. infra at 4-7.  BTL would likewise have the right to address the issue of whether the fax service provider for each Settlement Class Member used equipment that had the capacity to print.  See BTL's Feb. 20, 2024 Submission at 29-30.

6.      *Finally*, and most importantly, the requirements of TransUnion and Drazen I apply to *all* Settlement Class Members, not just the 1% to 2% of Settlement Class Members who eventually submitted a claim to the Settlement Administrator. See Juris v. Inamed, 685 F.3d 1294, 1312 (11th Cir. 2012).  But since we do not even know who many or most Settlement Class Members are, it would defy common sense and logic to suggest that we could *possibly* determine whether each of them used between July 14, 2009 and June 9, 2010 a fax service provider that utilized equipment with the capacity to print or whether they otherwise lack Article III standing.  See BTL's Feb. 20, 2024 Submission at 27-29.

### C.  An Evidentiary Hearing Would Be Necessary To Resolve Any Factual Disputes

7.      All of this would be reason enough standing alone to grant BTL's motion to dismiss and decertify the Settlement Class (Dkt. 492) and to forego any

4

further proceedings on this issue. To the extent, however, Class Counsel now try to conjure up evidence to suggest that some subset of Settlement Class Members actually have Article III standing or try to create a factual dispute over the issue of whether <u>all</u> Settlement Class Members do, BTL respectfully requests an evidentiary hearing on those issues and an opportunity to take limited discovery in advance of such hearing, so that any evidence offered by Class Counsel can be subjected to the procedural safeguards that are the very hallmark of due process. <u>See</u>, e.g., <u>Carter v. Morehouse Parish Sch. Bd.</u>, 441 F.2d 380, 382 (5th Cir. 1971) ("A ruling based on evidence which a party has not been allowed to confront or rebut is one which denies due process."); <u>see</u> also, e.g., <u>Karhu v. Vital Pharms.</u>, 621 Fed. App'x 945, 948 (11th Cir. 2015) (not "affording defendants the opportunity to challenge" self-attestations provides "inadequate procedural protection" and "implicates their due process rights"); <u>Perez v. Metabolife Int'l</u>, 218 F.R.D. 262, 269 (S.D. Fla. 2003) ("[A]llowing such uncorroborated and self-serving evidence without giving Defendant an opportunity to challenge the class member's evidentiary submissions would likely implicate Defendant's due process rights."); <u>Marcus v. BMW</u>, 687 F.3d 583, 594 (3d Cir. 2012) (forcing defendants to "accept as true absent persons' declarations" without cross-checks "would have serious due process implications"); <u>Shepherd v. Vintage Pharms.</u>, 310 F.R.D. 691, 696-97 (N.D. Ga. 2015).

8.  BTL has made a factual challenge to the Article III standing of Settlement Class Members. <u>See</u> BTL's Mot. to Dismiss and Decertify (Dkt. 492); BTL's Mot. to Suppl. the Record (Dkt. 523). As noted, the three factual issues that must be addressed for <u>each</u> Settlement Class Member include (1) did they receive as an email a fax sent on behalf of BTL (2) from a fax service provider with equipment

5

that had the capacity to print and that (3) otherwise qualified as a "telephone facsimile machine." See BTL's Feb. 20, 2024 Submission at 19-20.  In addition, it may also be necessary to determine whether each Settlement Class Member who received faxes as emails utilized any kind of blocking technology or mechanism such as those referenced in Amerifactors and the record compiled by the FCC in reaching its ruling in Amerifactors, to the extent Class Counsel are claiming the loss of time as a harm elevated by Congress for faxes under the TCPA.  See Amerifactors ¶ 12 & n.28; see also BTL's Feb. 20, 2024 Submission at Exs. 19, 20.  And for Settlement Class Members who only logged into the servers maintained by their online fax service instead of receiving faxes as emails, it would also be necessary to determine whether they actually logged in or viewed any fax sent on behalf of BTL.  See id. ¶ 13; BTL's Feb. 20, 2024 Submission at 20.

9. Since district courts examining factual challenges to subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) may "consider extrinsic evidence such as deposition testimony and affidavits," an evidentiary hearing would be appropriate to address any factual issues that cannot be resolved through written submissions.  See, e.g., Bischoff v. Osceola Cnty., 222 F.3d 874, 878-82, 885 (11th Cir. 2000) (reversing district court for failure in determining whether subject-matter jurisdiction exists to hold an evidentiary hearing in order to resolve disputed issues of fact reflected in competing affidavits); Carmichael v. Kellogg, Brown & Root, 572 F.3d 1271, 1279 (11th Cir. 2009) (affirming dismissal for lack of subject-matter jurisdiction on Rule 12(b)(1) factual challenge following depositions and other

discovery); Carter, 441 F.2d at 382.[2] While Class Counsel have offered no evidence at all to date, any factual issues they purport to raise now should be addressed through limited discovery, followed by an evidentiary hearing. See, e.g., Oppenheimer Fund v. Sanders, 437 U.S. 340, 351 n.13 (1978) (discovery "available to ascertain the facts bearing on" jurisdiction); Bischoff, 222 F.3d at 878-82, 885.

### D. Estimated Time Requirements

10. BTL estimates the time required for the hearing to be approximately thirty minutes to one hour per Settlement Class Member from or for which Class Counsel present evidence.[3] See M.D. Fla. L.R. 3.01(h). BTL would also need approximately two to three hours to present relevant expert testimony and would request a comparable amount of time to examine any expert or experts offered by Class Counsel.

11. If evidence were presented for all Settlement Class Members, that would equate to roughly 37,000 to 74,000 hours (i.e., a half-hour to one hour times an estimated 74,000 Settlement Class Members).[4] Since it would appear to be

---

[2] The conclusion reached by the Eleventh Circuit in Bischoff squarely addressed situations where there are disputed issues of fact that bear upon subject-matter jurisdiction and the issue of standing:

> Accordingly, we conclude that in this case, where the district court was faced with warring affidavits on issues essential to standing, the court erred in making findings of disputed facts and judgments regarding credibility, on which it then based its standing conclusion, without holding an evidentiary hearing.

Bischoff, 222 F.3d at 885; see also id. at 880 (citing Martin v. Morgan Drive Away, 665 F.2d 598, 602-03 (5th Cir. 1982)).

[3] This estimate includes cross-examination, direct examination and any necessary re-cross and re-direct.

[4] The exact size of the Settlement Class remains unknown, despite extensive efforts by the Parties and the Settlement Administrator. See BTL's Feb. 20, 2024 Submission at 12 n.15. The Biggerstaff list (which is by no means a reliable source itself) lists 131,011 lines that allegedly received facsimile advertisements sent on behalf of BTL in 2009 or 2010. There were 1,566 claimants tentatively approved by the Settlement Administrator claiming 2,769 lines, which amounts to roughly 1.77 lines per claimant. Applying that ratio to the 131,011 lines identified by

exceedingly unlikely that Class Counsel have or will obtain evidence for more than 2% of the Settlement Class, however, a more appropriate estimate might be 783 to 1,566 hours (i.e., a half-hour to one hour for each of the 1,566 persons and entities whose claims the Settlement Administrator tentatively approved). See Final Claims List (Dkt. 490-20). But again, that would only raise the futility of further proceedings (not to mention the manageability problems posed by the Settlement Class), since the obligation is to prove Article III standing for all Settlement Class Members, which the proffering of evidence for only 2% would reaffirm is simply not possible at this juncture. See TransUnion, 594 U.S. at 423.

### E. Conclusion

WHEREFORE, BTL respectfully requests limited discovery and an evidentiary hearing in the event that Class Counsel come forward with any evidence suggesting that some or all Settlement Class Members have Article III standing. BTL further requests such other relief as the Court deems appropriate.

Date:  February 20, 2024	Respectfully submitted,

	/s/ Mark S. Mester
	Mark S. Mester, One of the Attorneys
	for Defendant Buccaneers Team LLC

---

Mr. Biggerstaff yields a Settlement Class of approximately 74,017 persons and entities, though again no one knows for sure how large the Settlement Class actually is or who most of the Settlement Class Members are. See Final Claims List (Dkt. 490-20).

Mark S. Mester  
  (admitted *pro hac vice*)  
Robert C. Collins III  
  (admitted *pro hac vice*)  
LATHAM & WATKINS LLP  
330 North Wabash Avenue, Suite 2800  
Chicago, Illinois 60611  
Telephone:  (312) 876-7700  
Facsimile:  (312) 993-9767  
E-mail:  mark.mester@lw.com  
       robert.collins@lw.com  

Joseph H. Varner, III  
  (Bar No. 394904)  
HOLLAND & KNIGHT LLP  
100 North Tampa Street, Suite 4100  
Tampa, Florida 33602-3644  
Telephone:  (813) 227-8500  
Facsimile:  (813) 229-0134  
Email:  joe.varner@hklaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which served all relevant parties.

Date:  February 20, 2024

*/s/ Mark S. Mester*
Mark S. Mester
  (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  mark.mester@lw.com