**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| CIN-Q AUTOMOBILES, INC. and<br>MEDICAL & CHIROPRACTIC CLINIC,<br>INC., individually and on behalf of a class,<br><br>    Plaintiffs,<br><br>        v.<br><br>BUCCANEERS LIMITED PARTNERSHIP,<br><br>    Defendant.<br>_____<br><br>TECHNOLOGY TRAINING ASSOCS., INC.<br>*et al.*,<br><br>    Intervenors. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No.: 8:13-CV-01592-AEP

**PLAINTIFFS' RESPONSE TO BTL'S SUBMISSION REGARDING**
**THE ISSUES RAISED AT THE JANUARY 19, 2024 HEARING**

Plaintiffs, Cin-Q Automobiles, Inc. and Medical & Chiropractic Clinic, Inc.,

on behalf of themselves and the Settlement Class, state as follows in Response to the

Submission Regarding the Issues Raised at the January 19, 2024 Hearing filed by

Defendant, Buccaneers Team LLC ("BTL") (Doc. 532 ("BTL Sub.")).

The Court directed the parties to address the following issues:

> Explanation how to reconcile . . . the four [FCC] opinions. Argument
> as to what the court should do and how the statute is applied if *Chevron*
> is not applied. If court finds standing issue, does that end the inquiry.

(Doc. 525, Clerk's Minutes). The Court also instructed the parties to address whether

the relevant FCC rulings apply retroactively to the faxes at issue in this case, sent in

2009–2010. (Ex. A, Hr'g Tr., Jan. 19, 2024, at 67:18–22). As argued in Section I, the inescapable conclusion from the governing FCC rulings is that the TCPA is not limited to "stand-alone" fax machines and covers users of "online fax services." The 2003 Commission Order and Westfax Bureau Ruling are binding "final orders" on the subject, and BTL's arguments to the contrary are meritless.

In Section II, Plaintiffs address BTL's misguided Article III-injury attack on the Settlement that it agreed to nearly three years ago. Every member of the settlement class in this case has Article III standing under *Drazen v. Pinto*, 74 F.4th 1336, 1345 (11th Cir. 2023) (en banc) (holding TCPA plaintiff had Article III standing because a single "unwanted text message shares a close relationship with the harm underlying the tort of intrusion upon seclusion"); and *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015) (holding TCPA fax plaintiff had Article III standing based solely on electronic evidence of successful transmission, with no evidence the fax was ever printed to paper or that anyone ever saw it).

## I.   The Amerifactors Bureau Ruling cannot be reconciled with the 2003 Commission Order and the Westfax Bureau Ruling, which are binding "final orders" of the FCC under the Hobbs Act.

### A.   The structure of the FCC and the Hobbs Act.

In order to address the issues raised by the Court regarding the relevant FCC rulings, it is essential to review the structure of the FCC and its bureaus. The FCC is an independent agency created by Congress as part of the Communications Act of 1934, 47 U.S.C. § 151. The Commission is composed of five commissioners

appointed by the President, with the advice and consent of the Senate, one of whom is designated by the President as chairman. *Id.* § 154(a).

One of the powers Congress granted the FCC is the power to delegate its functions to inferior bureaus. *Id.* § 155(c)(1). When a bureau issues a decision on delegated authority, "[a]ny person aggrieved by any such order, decision, report or action may file an application for review by the Commission," *id.* § 155(c)(4), and such application for review is "a condition precedent to judicial review of any order, decision, report, or action made or taken pursuant to a delegation," *id.* § 155(c)(7).

In the FCC regulations that delegate authority to the Consumer & Governmental Affairs Bureau, the FCC expressly *withheld* the authority to issue a "final order." The regulations state, "the following matters shall be referred to the Commission en banc for disposition: (a) Notices of proposed rulemaking and of inquiry *and final orders in such proceedings*. . . ." 47 C.F.R. § 0.361. Thus, the statute that gives the FCC the authority to delegate its functions and the regulations actually delegating those functions draw a distinction between the FCC's bureaus and the full Commission itself. The FCC has not delegated (and cannot delegate) to a bureau the authority to issue a "final order." *See NTCH, Inc. v. FCC*, 877 F.3d 408, 413 (D.C. Cir. 2017) ("The [Enforcement] Bureau's order was not a Commission order and, therefore, it was not an order subject to judicial review.").

This is important because the Administrative Orders Review Act, commonly known as the Hobbs Act, 28 U.S.C. § 2342(1), states "[t]he court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to

3

determine the validity of . . . all final orders of the Federal Communications Commission made reviewable by" 47 U.S.C. § 402(a). 28 U.S.C. § 2342(1). The Eleventh Circuit interprets the Hobbs Act to mean that, if the FCC issues a "final order" interpreting a provision of the TCPA, then a district court lacks jurisdiction to do anything but "enforce" the interpretation. *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1120–21 (11th Cir. 2014). By "refusing to enforce" the interpretation on the basis that it is incorrect or unreasonable, a district court "determine[s] the validity of" the interpretation, which violates the Hobbs Act. *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1307 (11th Cir. 2015) (quoting *Mais*, 768 F.3d at 1120); *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1109 (11th Cir. 2019) (Pryor, J., concurring) (arguing these precedents were wrongly decided, but acknowledging they are controlling in the Eleventh Circuit).[1]

A district court errs under these precedents by considering whether an FCC final order is a correct construction of an unambiguous statute, or even a reasonable interpretation of an ambiguous statute under *Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984), because "deeming agency action invalid or ineffective is precisely the sort of review that the Hobbs Act delegates to the courts of appeals in cases challenging final FCC orders." *Mais*, 768 F.3d at 1120 (quoting

---

[1] The three concurring judges in *Safemark* put it less kindly, arguing Eleventh Circuit precedent requires not mere "deference" to the FCC's interpretations, but "absolute 'abdication' of the judicial power to determine the law that governs a case." 931 F.3d at 1109 (Pryor, J., concurring) (quoting *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2006 (2019) (Kavanaugh, J., concurring)). The fact that undersigned counsel has argued in unrelated cases that the Hobbs Act should *not* be interpreted to require a district court to apply the FCC's interpretation of the TCPA, as BTL points out (BTL Sub. at 25, n.28), has no bearing on the controlling law in this Circuit.

*CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 448 (7th Cir. 2010)). Thus, if there is a "final order" of the FCC on point, this Court is required to follow it. Refusing to enforce a relevant FCC final order is not "an option for this Court," as BTL claims. (BTL Sub. at 14–15, n.16).[2]

### B.    The 2003 Commission Order.

The FCC issued a final order resolving the question of whether the TCPA is limited to "stand-alone" fax machines or whether it covers faxes received by the end-user by email in *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14133 ¶¶ 199–201 (July 3, 2003) ("2003 Commission Order"). BTL does not dispute that the 2003 Commission Order is a "final order" for Hobbs Act purposes. (BTL Sub. at 1–32); *see also Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1341 (S.D. Fla. 2022); *Correll v. Iconic Mortg. Corp.*, 2021 WL 5014122, at *5 (S.D. Fla. Feb. 8, 2021).

Thus, if the 2003 Commission Order considers whether the term "telephone facsimile machine" in 47 U.S.C. § 227(a)(3) is limited to the "stand-alone" fax machines that existed in 1991 (as BTL asserts), or whether it extends to faxes received by email (as Plaintiffs contend), then the question is conclusively determined as a jurisdictional matter. *See Bobo's Drugs, Inc. v. Fagron, Inc.*, 314 F. Supp. 3d 1240, 1246 (M.D. Fla. 2018) ("[T]his court, like all district courts, 'lacks

---

[2] Even if this were "an option" for the Court, the Sixth Circuit's analysis in *Lyngaas v. Curaden AG*, 992 F.3d 412, 425 (6th Cir. 2021), that the "plan language" of the TCPA is not limited to stand-alone fax machines and does not require excluding users of "online fax services" is correct (and consistent with decades of FCC authority), in contrast to the overly-narrow construction relied on by BTL in *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 209 (4th Cir. 2024).

jurisdiction under the Hobbs Act to consider the argument that the FCC incorrectly interpreted [the TCPA].") (quoting *Sliwa v. Bright House Networks, LLC*, No. 2:16-CV-235-FTM-29MRM, 2016 WL 3901378, at *4 (M.D. Fla. July 19, 2016)).

Plaintiffs' Opposition to BTL's Motion to Decertify explains in detail why the 2003 Commission Order requires the Court to rule in Plaintiffs' favor on this issue. (Doc. 505 at 5–8 (explaining the FCC ordered that faxes sent "to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes" regardless of whether they are ultimately viewed in the end-user's email "inbox") (citing 2003 Commission Order ¶ 200)). BTL claims there was "no consideration in the 2003 Order of how the TCPA should be applied if the person or entity receiving a fax on a telephone facsimile machine, computer or other device is not the intended recipient and the intended recipient instead only receives a fax 'sent as email over the Internet.'" (BTL Sub. at 5). That claim is false.

The FCC expressly discussed the argument of Nextel Communications, Inc. that faxes that are forwarded by email should not be covered by the TCPA "as they are not reduced to paper and can be deleted from one's inbox without being opened or examined." (2003 Commission Order ¶ 199). Nextel's opening comments (cited in the 2003 Commission Order, n.735) argued that the FCC should exclude faxes received by email from the TCPA's coverage because "fax modem technology now enables the delivery of faxes to email inboxes where consumers can electronically retrieve, view or discard a fax image without ever reducing it to paper," unlike the "stand-alone" fax machines in use in 1991. (Ex. B, *In re Rules & Regulations*

*Implementing the Tel. Consumer Protection Act of 1991*, CG Nos. 92-90, 02-278, Comments of Nextel Communications, Inc. (filed Dec. 9, 2002) at 30).[3] Nextel argued that "[i]n light of these changes, the Commission should make it clear that the TCPA does not prohibit the transmission of unsolicited facsimile ads to fax servers, personal computers, and other devices that will not print a fax without a user command and attachment to a peripheral printer." (*Id.* at 31).

Nextel argued that "[t]oday, fax servers and many personal computers are enabled by fax modem cards *or simply connection to the Internet* to receive fax transmissions." (*Id.* at 31 (emphasis added)). Nextel claimed "these devices do not have the capacity either to transcribe text or images from paper into an electronic signal, or to transcribe text or images received from an electronic signal onto paper," and that "[e]xternal devices – i.e., optical scanners and printers – must be attached and used by the recipient to perform these transcription functions." (*Id.*)

Nextel made the "expressio unius" argument that "[t]he TCPA expressly differentiates between the devices used to send a regulated advertising transmission – i.e., a 'telephone facsimile machine, computer, or other device' – and the technology used to receive a regulated fax communication – i.e., a 'telephone facsimile machine.'" (*Id.* at 32). Nextel argued that "Congress must be presumed to use each word in a statute for a reason, and the Commission must avoid any construction that

---

[3] "Courts have found that the contents of an administrative agency's publicly available files traditionally qualify for judicial notice." *BPI Sports, LLC v. ThermoLife Int'l LLC*, No. 19-60505-CIV, 2020 WL 10180910, at *3 (S.D. Fla. Jan. 9, 2020).

would render some words in the statute mere surplusage." (*Id.* at 33). "Accordingly," Nextel argued, "the Commission must presume that Congress intended to exclude 'computers' from the definition of a 'telephone facsimile machine,' and that it ascribed separate and distinct meanings to these terms." (*Id.*)

Nextel asserted that "Congress was concerned primarily with the printing costs associated with the receipt of an unsolicited fax advertisement by a conventional stand-alone facsimile machine" when it passed the TCPA, so the definition of "telephone facsimile machine" must be limited to those devices. (*Id.* at 33–34). Nextel concluded its opening comments as follows:

> Unlike faxes sent to a "telephone facsimile machine," faxes sent to a fax server or personal computer can be deleted by the recipient without ever being printed to paper. Indeed, such electronic faxes can be deleted without ever being viewed by the intended recipient. Accordingly, the transmission of facsimiles to these devices simply does not implicate the policy concerns with cost shifting underlying Section 227(b)(1)(C) and in no event meet the definition of a telephone facsimile machine.

(*Id.* at 34).

Nextel also filed Reply Comments specifying that its arguments were aimed at "services offered by eFax.com and similar Web-based service bureaus," which "operate banks of fax servers that receive facsimile transmissions on behalf of their clients and convert these transmissions in real-time into electronic files that end-users receive as an e-mail message attachment." (Ex. C, *In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, CG Nos. 92-90, 02-278, Reply Comments of Nextel Communications, Inc. (filed Jan. 31, 2003) at 3–4). Nextel

8

argued "[f]axes are received, converted and retransmitted electronically by these services without ever being reduced to paper." (*Id.* at 4).

Nextel's Reply asserted, "the faxes delivered via these services are never converted to a paper image unless the end-user affirmatively chooses to print the attachment using a peripheral device." (*Id.*) Nextel asked the Commission to rule that "the transmission of faxes to computer fax servers like those operated by eFax.com" are not sent to a "telephone facsimile machine" because § 227(a)(3) requires such equipment to "have the capacity either to transcribe text or images from paper into an electronic signal, or to transcribe text or images from an electronic signal onto paper," and "[n]either fax servers nor PCs provide this functionality." (*Id.*)

Nextel urged the Commission to reject the argument of consumer advocates "that faxes sent to eFax service accounts should be subject to TCPA restrictions because they inflict the same harm to consumer interests that the TCPA was intended to prevent." (*Id.* at 4). Nextel argued that the Commission should reject this concern because "[t]he slight effort involved in discarding an e-mail fax attachment does not implicate the harms that Congress sought to redress through the TCPA," which it asserted were limited to the costs of paper and toner and the tying up of the stand-alone fax machine. (*Id.* at 4–5).

Nextel argued the TCPA "is not an unsolicited commercial e-mail statute," and "Congress designed the Act to redress a very specific cost-shifting problem posed by the transmission of advertising material to conventional stand-alone fax

machines," whereas a consumer can "delete an unwanted eFax message, as she can any other e-mail message, without incurring any costs whatsoever." (*Id.* at 5). Nextel argued that the "transient" burden of "discarding unwanted junk mail" would not warrant imposing the "onerous" requirements of the TCPA. (*Id.* at 6).

The Commission rejected each and every one of Nextel's arguments. (2003 Commission Order ¶¶ 199–201). First, the Commission ruled that "a conventional stand-alone telephone facsimile machine is just one device used for this purpose," and that "developing technologies permit one to send and receive facsimile messages in a myriad of ways," all of which are covered by the statute. (*Id.* ¶ 199). The Commission stated that it would interpret the definition of telephone facsimile machine "broadly," ruling that "Congress could not have intended to allow easy circumvention of its prohibition when faxes are (intentionally or not) transmitted to personal computers and fax servers, rather than to traditional stand-alone facsimile machines." (*Id.* ¶ 201).

Second, the Commission ruled that Nextel incorrectly assumed Congress was concerned solely with the "costs associated with the fax advertisements" received on stand-alone fax machines but that Congress also took account of the "interference, interruptions, and expense" resulting from junk faxes. (*Id.* ¶ 201). The Commission found that, even where junk faxes are received by email, those concerns are implicated because the faxes "may increase labor costs for businesses, whose employees must monitor faxes to determine which ones are junk faxes and which are related to their company's business," and were covered by the statute. (*Id.* ¶ 202).

Finally, the Commission rejected Nextel's narrow interpretation of the statute, holding that "because a sender of a facsimile message has no way to determine whether it is being sent to a number associated with a stand-alone fax machine or to one associated with a personal computer or fax server, it would make little sense to apply different rules based on the device that ultimately received it." (*Id.*)

As recognized in *Douglas Phillip Brust, D.C., P.C. v. Opensided MRI of St. Louis LLC*, 343 F.R.D. 581, 589 (E.D. Mo. 2023), the 2003 Commission Order clearly "determined that online fax services were covered by the TCPA." *See also Lyngaas v. Curaden AG*, 992 F.3d 412, 426 (6th Cir. 2021) (holding 2003 Commission Order "reinforced" the Sixth Circuit's own conclusion). BTL's brief does not cite or discuss the district court decisions that have properly applied the 2003 Commission Order, such as *Brust*, 343 F.R.D. at 589; *Urgent One Med. Care, P.C. v. Co-Options, Inc.*, 2022 WL 16755154 (E.D.N.Y. June 1, 2022), *adopted by* 2022 WL 4596754, at *7 (E.D.N.Y. Sept. 30, 2022); *Ambassador Animal Hosp., Ltd. v. Hill's Pet Nutrition, Inc.*, 2021 WL 3043422 (N.D. Ill. Feb. 17, 2021); *Levine Hat Co. v. Innate Intelligence, LLC*, 2022 WL 1044880, at *2 (E.D. Mo. Apr. 7, 2022); and *Mussat v. IQVIA Inc.*, 2020 WL 5994468, at *3 (N.D. Ill. Oct. 9, 2020). (BTL Sub. at 1–32).

Instead, BTL argues the 2003 Commission Order is consistent with the Amerifactors Bureau Ruling in excluding faxes received using online fax services from coverage under the TCPA because it contains one sentence stating that the TCPA does not apply "to facsimile messages sent as email over the Internet." (BTL Sub. at 3). BTL misreads the 2003 Commission Order.

11

The lone sentence upon which BTL relies merely makes clear that the 2003 Commission Order "exempted from the TCPA the act of forwarding a fax by email," while maintaining that "the first step—the transmission of the original fax—still falls within the confines of the TCPA." *Am. Copper & Brass, Inc. v. Lake City Indus. Prods, Inc.*, No. 09-CV-1162, 2013 WL 3654550, at *5 (W.D. Mich. July 12, 2013). The Commission applied this distinction in ruling that "commercial facsimile services" that "transmit faxes to the recipients as email attachments"—*i.e.*, "online fax services"—do not violate the TCPA by forwarding faxes to their customers by email. (2003 Commission Order ¶ 199, n.736). That a fax service provider is not liable under the statute for sending emails to its paying clients in no way translates into a rule that the fax advertiser is off the hook for sending unsolicited advertisements to a telephone facsimile machine in violation of 47 U.S.C. § 227(b)(1)(C).

In sum, the full FCC in the 2003 Commission Order rejected every argument raised by BTL in its current bid to derail the Settlement. Since it is undisputed that the 2003 Commission Order is a "final order" under the Hobbs Act, the Court is jurisdictionally bound to follow it and reject the argument that the TCPA is limited to "stand-alone" fax machines or that it requires excluding persons who were using an "online fax service" in 2009–2010.

### C.    The Westfax Bureau Ruling.

In 2009, an online fax service provider called Westfax, Inc. filed a petition with the FCC seeking a ruling that faxes are not "sent to" a telephone facsimile machine when they are viewed using an "efax" service, in particular, WestFax's

efax service called "FaxForward," described as "a service that 'automatically converts received faxes into electronic images that are delivered directly to your email inbox.'" *In re WestFax, Inc. Petition for Consideration & Clarification*, 30 FCC Rcd. 8620, 2015 WL 5120880, at *1 ¶ 4, n.15 (CGAB Aug. 28, 2015) ("Westfax Bureau Ruling"). Like Nextel seven years earlier, Westfax argued the concerns that motivated Congress to pass the TCPA "are not accurate with respect to faxes sent to fax servers" because they "are not designed to print and do not print the messages. Processing is immediate, there is delay, no monitoring, printing, paper or toner, inability to process actual business communications or lines or printers tied up. This is the 21st century." (Ex. D, Westfax Pet. for Consideration & Clarification, CG Docket Nos. 02-278, 05-538 (filed Sept. 24, 2009)).

 The Bureau applied the 2003 Commission Order and denied the petition, ruling that, just like the "faxes sent to computers attached to fax servers or modems" in the 2003 Commission Order, "WestFax's description of efaxes makes clear that the recipient computers are attached to fax servers or services that convert the fax into a format that is attached to an email received by the computer." *Id.* ¶ 9.

The Bureau concluded that the statutory definition of "telephone facsimile machine"—*i.e.*, "equipment" with the relevant "capacity," 47 U.S.C. § 227(a)(3)—"sweeps in the fax server and modem, along with the computer that receives the efax because together they by necessity have the capacity to 'transcribe text or images (or

13

both) from an electronic signal received over a telephone line onto paper.'"[4] *Id.* ¶ 9. Westfax did not file an application for review with the Commission, so the ruling is final. *See Georgia Power Co. v. Telport Comm'n Atlanta,* 346 F.3d 1047, 1050 (11th Cir. 2003) (order from a subordinate unit of the FCC (such as the Bureau) becomes final if no application for review before the Commission is filed).

BTL argues that the Westfax Bureau Ruling is "inconsistent with the clear pronouncement in the 2003 Order that the TCPA 'does <u>not</u> extend to facsimile messages sent as email over the Internet,' insofar as the only thing a subscriber to a fax service provider would receive is an email sent over the Internet, which the 2003 Order said was not sufficient under the TCPA." (BTL Sub. at 3, n.4). First, BTL cannot argue in this tribunal that the Westfax Bureau Ruling is wrong because this Court lacks jurisdiction to speak to the "validity" of a final order under the Hobbs Act. *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1120–21 (11th Cir. 2014); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1307 (11th Cir. 2015).

Second, the Westfax Bureau Ruling is perfectly consistent with the 2003 Commission Order. The conclusion in the Westfax Bureau Ruling that the end-user's computer—assuming it is "attached to fax servers or services," Westfax Bureau Ruling ¶ 9—can be one part of a chain of devices that together make up "equipment" with the relevant "capacity" under § 227(a)(3) is fully consistent with the 2003

---

[4] The Sixth Circuit later recognized the same principle: "a computer, as a stand-alone device, can be distinct from a telephone facsimile machine and yet part of one as an integrated piece of 'equipment.'" *Lyngaas v. Curaden, AG*, 992 F.3d 412, 427 (6th Cir. 2021).

Commission Order's conclusion that the statute "broadly applies to any equipment that has the capacity to send or receive text or images," including "personal computers and fax servers," if that is where the advertisement is ultimately "transmitted." (2003 Commission Order ¶ 201). BTL would like the Court to read the definition of "telephone facsimile machine" as "~~equipment~~ a device which has the capacity . . . ." That is not what the statute says, and it is not how the FCC has interpreted the statute in its binding rulings.

In sum, faxes sent to an online fax service are covered by the TCPA under the Westfax Bureau Ruling, and that conclusion is binding under the Hobbs Act.

### D.    The Amerifactors Bureau Ruling.

In 2017, a financing company named as a defendant in a TCPA junk-fax case filed a petition with the FCC seeking a ruling that a fax is not "sent to" a telephone facsimile machine if the end-user views the fax through an "online fax service." (Ex. E, *Pet. for Expedited Declaratory Ruling of Amerifactors Fin. Group, LLC*, CG Docket Nos. 02-278, 05-338 (filed July 13, 2017)). The "principal" purpose of the Amerifactors Petition (according to the petitioner) was to "confirm that the statute requires an individualized determination as to how recipients actually received unsolicited fax advertisements" to help fax advertisers like itself attempt to defeat class certification in private TCPA actions. (*Id.* at 27). The Amerifactors Petition made all the same argument made by Nextel in 2002 and by Westfax in 2009. (*Id.*)

The Consumer & Governmental Affairs Bureau, under the new FCC following the 2016 election, granted the petition. *See* Amerifactors Bureau Ruling,

2019 WL 6712128 (CGAB Dec. 9, 2019). The plaintiff in the private TCPA action against the petitioner, Career Counseling, Inc., filed an Application for Review with the full Commission explaining that the Bureau's decision blatantly conflicts with the 2003 Commission Order and the Westfax Bureau Ruling. (Ex. F, *In re Amerifactors Financial Grp.*, CG Nos. 02-278, 05-338, Application for Review (filed Jan. 8, 2020)). The Application for Review remains pending.

BTL argues that the Amerifactors Bureau Ruling has "the same force and effect" as any Commission order under 47 U.S.C. § 155(c)(3), and so it should be treated as a binding "final order" under the Hobbs Act equivalent to the 2003 Commission Order and the Westfax Bureau Ruling. (BTL Sub. at 15). That is a non-sequitur. A "final order" of the FCC is not binding on district courts in this Circuit due its being "in effect"; a final order of the FCC is binding on district courts because "exclusive jurisdiction" to "determine the validity of" such an order lies in the court of appeals, and the Eleventh Circuit holds that if a district court interprets the statute differently than the FCC, then it has "determine[d] the validity of" the order in violation of 28 U.S.C. § 2342(1). *Mais*, 768 F.3d at 1120–21); *Murphy*, 797 F.3d at 1307. Whether the Amerifactors Bureau Ruling is "in effect," or "effective upon release," or anything of that nature has nothing to do with the Hobbs Act question, which is jurisdictional in nature. *Id.*

The Amerifactors Bureau Ruling is based on the fallacy that the only harms the TCPA sought to remedy are wasted "paper and ink" and interruption of use of a stand-alone fax machine, the exact same fallacy Nextel Communications raised in

the 2002 rulemaking proceeding leading to the 2003 Commission Order. (BTL Sub. at 8). The 2003 Commission Order made clear that the TCPA is not limited to those concerns and also contemplates the "interference, interruptions, and expense" to businesses and interstate commerce caused by faxes sent to fax servers and forwarded to the user's email "inbox." (2003 Commission Order ¶¶ 199–202). The FCC specifically ruled in paragraph 202 that faxes sent to a fax server and received by the end-user via email are covered by the statute because they "increase labor costs for businesses, whose employees must monitor faxes to determine which ones are junk faxes and which are related to their company's business." (*Id.* ¶ 202).

This is why the Amerifactors Bureau Ruling so flagrantly "flies in the face" of the 2003 Commission Order. *Ambassador Animal Hosp., Ltd. v. Hill's Pet Nutrition, Inc.*, 2021 WL 3043422, at *1 (N.D. Ill. Feb. 17, 2021). When the Amerifactors Bureau Ruling states that Congress was *not* concerned with "more generalized harms," such as "time spent monitoring unwanted faxes stored by online fax services," it cites *paragraph 202 of the 2003 Commission Order* (Amerifactors Bureau Ruling ¶ 14), the very passage where the full FCC rejected Nextel's argument on that point and ruled that the statute is also aimed at preventing wasted employee time monitoring faxes received by email "to determine which ones are junk faxes and which are related to their company's business." In other words, the Amerifactors Bureau Ruling cites the section of the 2003 Commission Order stating that these "more generalized harms" *are* covered by the statute to support the claim that such harms are *not* covered.

17

### E.      The Ryerson Bureau Ruling.

In *In re Petition of Joseph T. Ryerson & Son, Inc. for Declaratory Ruling*, CG Docket Nos. 02-278, 05-338, 2020 WL 5362216 (CGAB Sept. 4, 2020), the Bureau issued an order in which it essentially repeated the conclusions of the Amerifactors Bureau Ruling with respect to "online fax services." Like the Amerifactors Bureau Ruling, the Ryerson Bureau Ruling is currently on appeal to the full Commission, which is a "condition precedent to judicial review." 47 U.S.C. § 155(c)(7). Neither ruling is a "final order" of the FCC under the Hobbs Act, 28 U.S.C. § 2342(1).

The reasoning regarding "online fax services" in the Ryerson Bureau Ruling is wrong for the same reasons the Amerifactors Bureau Ruling is wrong. That the Bureau made the same mistakes two times in a row does not somehow transform these rulings into "final orders" for Hobbs Act purposes. Both rulings are irreconcilable with the 2003 Commission Order and the Westfax Bureau Ruling, which are binding here.

### F.      Even if the Hobbs Act did not exist, the Amerifactors Bureau Ruling would not be entitled to deference and would not apply retroactively.

Because the 2003 Commission Order and the Westfax Bureau Ruling are binding under the Hobbs Act, the question of whether the Amerifactors Bureau Ruling is due any "deference" is the wrong question. The Court lacks jurisdiction to "defer" to that ruling, even if it believes it is correct, because to do so the Court would have to conclude that the 2003 Commission Order and the Westfax Bureau

Ruling misinterpreted the statute, which would be to "determine the validity of" those orders in violation of the 28 U.S.C. § 2342(1). *Mais*, 768 F.3d at 1120.

However, even if the Hobbs Act did not exist, the Amerifactors Bureau Ruling (and the Ryerson Bureau Ruling) would not be entitled to any deference. First, where a statute's meaning is clear on its face, the (*Chevron*) inquiry ends and the unambiguous meaning controls. *Chevron USA, Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984); *see also Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 223 (6th Cir. 2015) (holding in a jurisdiction without the Eleventh Circuit's Hobbs-Act rule that if the TCPA "unambiguously defines" a term, the courts do not consider the FCC's interpretations at all). That is the case here.

In *Lyngaas v. Curaden AG*, 992 F.3d 412, 425 (6th Cir. 2021), the Sixth Circuit affirmed an "all fax recipients" class in a TCPA case and rejected the defendants' argument that a TCPA claim "is not actionable if the unsolicited advertisement is received by any device (such as a computer through an 'efax') other than a traditional fax machine," and that the plaintiff "failed to establish which proposed class members received faxes on a traditional fax machine versus another device, such as a computer." The *Lyngaas* court held the defendants' arguments were an attempt to limit the definition of telephone facsimile machine to only "traditional fax machines," and that "such a narrow definition does not comport with the plain language of the TCPA." *Id.* at 425–26. The Court held the definition "makes clear that a 'telephone facsimile machine' encompasses more than traditional fax machines that automatically print a fax received over a telephone line," that it also

19

includes "equipment that has the *capacity*. . . to transcribe text or images from or onto paper as long as the electronic signal is transmitted or received over a telephone line," and that the "statutory text alone" rebutted the defendants' argument. *Id.*

In *Douglas Phillip Brust, D.C., P.C. v. Opensided MRI of St. Louis LLC*, 343 F.R.D. 581, 589 (E.D. Mo. 2023), the court also certified an "all recipients class," finding *Lyngaas* persuasive, and concluding that "the plain language of the statute rebuts Defendants' argument that the TCPA applies only to traditional fax machines." The argument that a TCPA fax claim requires receipt of a fax only on a stand-alone fax machine fails as a matter of law. *Lyngaas*, 992 F.3d at 426; *Brust*, 343 F.R.D. at 589.

Second, and again assuming for the sake of argument that the Hobbs Act did not compel the Court to follow the 2003 Commission Order and the Westfax Bureau Ruling, the Amerifactors and Ryerson Bureau Rulings are interpretive rules and as such are not reviewed under the *Chevron* standard. There is a "central distinction" in administrative law between legislative rules and interpretive rules. *Aposhian v. Barr*, 958 F.3d 969, 979 (10th Cir. 2020) (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 301 (1979)). A legislative rule is one "promulgated pursuant to a direct delegation of legislative power by Congress and . . . changes existing law, policy, or practice." *Id.* at 979–80. Interpretive rules are those "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96–97 (2015); *Aposhian*, 958 F.3d at 979 (same) (citing *Shalala v. Guernsey Mem. Hosp.*, 514 U.S. 87, 99 (1995)).

*Chevron* deference applies only when a court interprets a rule issued pursuant to an agency's authority to "make rules carrying the force of law." *Carlton & Harris Chiropractic, Inc. v. PDR Network*, 982 F.3d 258, 264 (4th Cir. 2020) (citing *Gonzales v. Oregon*, 546 U.S. 243, 255 (2006)). Interpretive rules, on the other hand, "do not have the force and effect of law and are not accorded that weight in the adjudicatory process." *PDR Network*, 982 F.3d at 264 (citing *Perez*, 575 U.S. at 97); *Aposhian*, 958 F.3d at 979 (interpretive rules "enjoy no *Chevron* status as a class") (citing *United States v. Mead Corp.*, 533 U.S. 218, 232 (2001)).

The Amerifactors and Ryerson rulings are interpretive rules. *Licari Family Chiropractic, Inc. v. eClinical Works, LLC*, 2021 WL 4506405, at *7 (M.D. Fla. Jan. 11, 2021) (rulings are "clarifications of existing law and not new rules or regulations"); *Scoma Chiropractic, Inc. v. Dental Equities, LLC,* 2021 WL 6105590, at *8–9 (M.D. Fla. Dec. 23, 2023) (same). Simply stated, applying *Chevron* deference to these interpretive rulings would be contrary to controlling Supreme Court authority and is error.

The appropriate standard for interpretive rules is *Skidmore* deference. *PDR Network*, 982 F.3d at 264 (citing *Gonzales*, 546 U.S. at 256 (citing *Skidmore v. Swift Co.*, 323 U.S. 134, 140 (1944)). "The weight" given an agency ruling under *Skidmore* "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140. An interpretation is due no deference under *Skidmore* where it represents

an "inconsistent" and "stark departure" from "long-used practice." *PDR Network*, 982 F.3d at 265 (citation omitted). Even if the Hobbs Act did not exist, neither the Amerifactors nor Ryerson Bureau Rulings would be entitled to *Skidmore* deference.

These rulings meet none of the *Skidmore* factors. Two of the lynchpins of the Amerifactors Ruling—that "[u]nder our precedent, faxes 'sent as email over the Internet' are not subject to the TCPA," and that "a fax received by an online fax service as an electronic message is effectively an email" (Amerifactors Bureau Ruling ¶ 11)—are obvious misconstructions of both the 2003 Commission Order and Westfax Bureau Ruling. First, the "under our precedent" gambit takes the nonliability of online fax service providers for forwarding a fax attached to an email, and inexplicably applies that nonliability to fax advertisers. The Westfax Bureau Ruling dealt with this issue in no uncertain terms. (*See* Westfax Bureau Ruling ¶ 10).

Second, a fax received by an online fax service is not "effectively an email"—it is instead an image sent over a ten-digit telephone number that arrives at the fax server of the online fax service, which is the equipment that can perform the T.30 protocol to convert that image to a PDF. An online fax "service" is just that, a service, which allows the subscriber to view a fax by either logging onto a portal or by receiving the fax as an attachment to an email, whereupon the subscriber can "view, delete, or print" the fax "as desired." (Amerifactors Bureau Ruling ¶¶ 2, 13). That is exactly the scenario covered by the Westfax Bureau Ruling ¶ 11.

Third, and again contrary to the Amerifactors Bureau Ruling, an online fax service has the "capacity" to print, as BTL's expert in this case has admitted in other

22

cases. (*See, e.g.*, Ex. G, *Scoma Chiropractic, Inc. v. Mastercard Int'l*, No. 2:16-cv-00041-JLB-NPM, Deposition of Kenneth Sponsler at 30:11–12; 30:21; 31:3; 31:9; 58:11; 59:10 (admitting the equipment used by online fax services has the "capacity" to print)). To provide its services, an online fax service accesses the Internet to send emails to its subscribers with the PDF of the fax image attached. (*Id.* at 31:1–3). Even the Ryerson Bureau Ruling recognizes the "high probability" that a recipient's computer is connected to a printer. (Ryerson Bureau Ruling ¶ 16 ("virtually all email could be accessed by computers with printing capabilities")).

Even if the Court could "defer" to the Amerifactors Bureau Ruling as BTL requests, it would not have retroactive effect because it represents a drastic change in policy from the 2003 Commission Order—which ruled a fax sent to a "fax server" maintained by a "commercial facsimile service" and then forwarded to the end-user's email "inbox" is sent to a "telephone facsimile machine" (2003 Commission Order ¶¶ 200–01)—and the Westfax Bureau Ruling—which ruled a fax is sent to a "telephone facsimile machine," even if received by a fax server that "converts received faxes into electronic images that are delivered directly to your email inbox" (Westfax Bureau Ruling ¶ 4). *Lyngaas*, 992 F.3d at 427 (holding Amerifactors Bureau Ruling "in any event would have no bearing on the case before us because the operative facts here took place more than three years earlier") (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208–09 (1988)).

Plaintiffs recognize that ordinarily a "clarification" of existing law can apply retroactively, as in the cases BTL cites. (BTL Sub. at 18). The Amerifactors Bureau

Ruling claims to be a "clarification" (Amerifactors Bureau Ruling ¶¶ 8–9), but in fact it is a 180-degree change from the FCC's rulings on the same arguments for the prior 16 years. Allowing "unfettered deference to an agency's classification of its revision as a clarification would allow an agency to make substantive changes, with retroactive effect, merely by referring to the new interpretation as a clarification." *Clement v. Amscot Corp.*, 176 F. Supp. 2d 1292, 1296 (M.D. Fla. 2001) (rejecting agency's "attempts to classify the revision as a clarification rather than a change in the law" and holding change in policy did not apply retroactively). That is exactly what the Consumer & Governmental Affairs Bureau did with the Amerifactors Bureau Ruling, and it cannot be applied post hoc.

In sum, even if the Hobbs Act did not bind the Court to follow the 2003 Commission Order and the Westfax Bureau Ruling, the Amerifactors and Ryerson Rulings would be entitled to no deference and would not apply retroactively because they represent an "inconsistent" and "stark departure" from "long-used practice." *PDR Network*, 982 F.3d at 265.

### G.   To the extent the Court is uncertain regarding the status of the relevant FCC rulings, it could invite the FCC to participate as amicus curiae.

Finally, if the Court has doubts about how to apply the relevant FCC rulings, it could invite the FCC to participate as amicus curiae on this pure legal issue. "Although there is no formal rule governing the filing of amicus curiae briefs, district courts possess the inherent authority to grant or refuse leave to amicus parties," and they "typically grant amicus status where the parties 'contribute to the court's

24

understanding of the matter in question' by proffering timely and useful information." *Georgia Aquarium, Inc. v. Pritzker*, 135 F. Supp. 3d 1280, 1288 (N.D. Ga. 2015) (quoting *Conservancy of S.W. Fla. v. U.S. Fish & Wildlife Serv.,* No. 2:10–cv– 106, 2010 WL 3603276 at *1 (M.D. Fla. Sept. 9, 2010)). One of the factors the courts will consider in whether to allow a government agency to participate as an amicus is "whether the court has invited the participation of the amicus." *Wyatt By & Through Rawlins v. Hanan*, 868 F. Supp. 1356, 1359 (M.D. Ala. 1994).

The FCC regularly files amicus briefs in the courts of appeal on various TCPA-related issues. In *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1254 (11th Cir. 2015), for example, the Eleventh Circuit invited the FCC to opine on the correct interpretation of "sender" liability in the TCPA fax context, and the agency promptly did so. *See also Nack v. Walburg*, 715 F.3d 680, 682 (8th Cir. 2013) (FCC filed amicus brief in response to court's request regarding interpretation of TCPA and implementing FCC regulation).

Examples of the FCC participating as amicus in district court proceedings are harder to come by, but there are some. *See, e.g.*, *US W. Commc'ns, Inc. v. AT&T Commc'ns of Pac. Nw., Inc.*, 31 F. Supp. 2d 839, 843 (D. Or. 1998); *AT&T Commc'ns of Cal., Inc. v. Pac. Bell*, No. C 97-0080 SI, 1998 WL 246652, at *3 (N.D. Cal. May 11, 1998); *United States v. W. Elec. Co.*, 531 F. Supp. 894, 905 (D.N.J. 1981). Plaintiffs submit the Court has inherent authority to request the FCC's position, to the extent it deems it helpful.

## II.      BTL's Article III standing attack fails under *Drazen* and *Sarris*.

BTL argues that, even if the TCPA is not limited to stand-alone fax machines, users of online fax services lack article III standing, relying heavily on *Daisy, Inc. v. Mobile Mini, Inc.*, 489 F. Supp. 3d 1287 (M.D. Fla. 2020). (BTL Sub. at 31–32). But the conclusion in *Daisy* that users of online fax services lack Article III standing is built entirely upon the holding in *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), that a single unwanted text message did not constitute an Article III injury because there was no common-law analogue. *Id.* The *Daisy* court reasoned that "there is no *qualitative* difference in harm between reading then answering an unwanted text and reviewing then deleting a junk fax sent by e-mail," and so users of online fax services, like recipients of a single text message, lacked Article III standing under *Salcedo*. *Id.*

*Salcedo* was overruled in *Drazen v. Pinto*, 74 F.4th 1336, 1345 (11th Cir. 2023) (en banc), as BTL has previously conceded. (Doc. 492 at 2); *see also Rowan v. Pierce*, 2023 WL 5672575, at *6, n.6 (D.P.R. Sept. 1, 2023) (recognizing that *Drazen* overruled *Salcedo*). But no court to Plaintiffs' knowledge has ever questioned the *Daisy* court's conclusion that there is no "qualitative difference" for Article III purposes between receiving a text message and receiving a fax via "online fax service." BTL certainly does not explain what such a qualitative difference would be. (BTL Sub. at 1–32).[5]

---

[5] BTL fails to understand that in enacting the TCPA, Congress elevated the invasion of privacy, invasion of interest in seclusion, and nuisance that results from being sent an unsolicited fax advertisement "to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law," and that the TCPA has the requisite "close relationship" to the

BTL argues that in order to establish Article III standing for online fax service users, Plaintiffs must show for each and every user such specific information as whether the class member "<u>actually</u> received, opened and reviewed the email and attachment, and if so, how much time that took." (BTL Sub. at 20). The Eleventh Circuit rejected the need for anything like this in *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015).

In *Sarris*, the plaintiff "had no knowledge of receiving the fax in question, never saw it," and could not "identify any records or employees that could establish receipt of the fax." *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 981 F. Supp. 2d 1239, 1256–57 (S.D. Fla. 2013). There was also "no evidence that the fax ever printed, tied up Plaintiff's dedicated fax line, or caused any other possible injury." *Id.* The district court held there was no Article III concrete injury under those circumstances. *Id.* The Eleventh Circuit reversed, holding the electronic records showing the successful transmission to the plaintiff's fax number was sufficient to satisfy Article III standing. *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015). The Eleventh Circuit rejected any requirement the plaintiff show it "<u>actually</u> received, opened and reviewed" the fax that BTL demands in order to establish Article III standing to pursue its claim.

---

common law claim for invasion of interest in seclusion. *See* Doc. 505 at 17–24. Plaintiffs and the settlement class have thus suffered harm and have standing as a matter of law.

**Conclusion**

For the foregoing reasons, the Court should (1) deny BTL's Motion to

Decertify, (2) grant final approval of the Settlement Agreement, and (3) grant any

other relief the Court deems appropriate.

Respectfully submitted,

/s/ Glenn L. Hara
Glenn L. Hara (admitted *pro hac vice*)
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
Facsimile: (847) 368-1501
ghara@andersonwanca.com

Michael C. Addison (Fla. Bar. No. 0145579)
ADDISON LAW OFFICE, P.A.
1304 Alicia Avenue
Tampa, Florida 33604
Telephone: (813) 223-2000
Facsimile: (813) 228-6000
m@mcalaw.net

Ross M. Good (Fla. Bar. No. 116405)
LOFTUS & EISENBERG, LTD.
161 N. Clark, Suite 1600
Chicago, Illinois 60601
T: (786) 539-3952
ross@loftusandeisenberg.com

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on March 21, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.


                        s/Glenn L. Hara