# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

|  |  |  |
|---|---|---|
| CIN-Q AUTOMOBILES, INC., <u>et al.</u>, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 8:13-cv-01592-AEP |
| BUCCANEERS LIMITED PARTNERSHIP and JOHN DOES 1-10, | ) ) ) ) | **Magistrate Judge** |
| Defendants, | ) ) | **Anthony E. Porcelli** |
| TECHNOLOGY TRAINING ASSOCIATES, INC., <u>et al.</u>, | ) ) ) | |
| Intervenors. | ) ) | |

## BTL'S RESPONSE TO PLAINTIFFS' MARCH 21, 2024 SUBMISSION CONCERNING THE ISSUES RAISED AT JANUARY 19, 2024 HEARING

Date:  April 26, 2024

Mark S. Mester
   (admitted *pro hac vice*)
Robert C. Collins III
   (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  mark.mester@lw.com
            robert.collins@lw.com

Joseph H. Varner, III
   (Bar No. 394904)
HOLLAND & KNIGHT LLP
100 North Tampa Street, Suite 4100
Tampa, Florida 33602-3644
Telephone:  (813) 227-8500
Facsimile:  (813) 229-0134
Email:  joe.varner@hklaw.com

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................1

II.   DISCUSSION ................................................................2

   A.   Any Supposed Conflict Between The Four Orders Is Largely
        Attributable To Class Counsel ............................................4

   B.   None Of The Distinctions Class Counsel Try To Draw Between
        The Four FCC Orders Are Valid, As Numerous Courts Have
        Held ..................................................................5

   C.   The 2003 Order Decidedly Did Not Address Online Fax
        Services Operated By Third-Parties Or The Equipment Used
        By Such Services ........................................................7

   D.   Plaintiffs' Efforts To Explain Away The Comments In The
        2003 Order Regarding Faxes Sent As Emails Are Equally
        Misleading And Misguided ..............................................9

   E.   The Hobbs Act Is No Sense An Impediment To Granting
        BTL's Motion ..........................................................10

   F.   Westfax Would Not Solve The Article III Problem Here Even If
        It Were The Definitive Interpretation By The FCC Of The
        TCPA (Which It Plainly Is Not) .........................................11

   G.   Plaintiffs Have No Answer For How Settlement Class Members
        Who "Received" A Fax By Logging In To A Cloud-Based
        Server Could Possibly Create Article III Standing ........................12

   H.   Whatever Conclusion Is Reached With Respect To The 2003
        Order, Westfax, Amerifactors And Ryerson, Plaintiffs'
        Submission Only Reconfirms That They Cannot Satisfy Their
        Burden Under Article III ................................................13

III.  CONCLUSION ..............................................................14

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

**CASES**

2003 Order,
   2003 WL 21517853 (F.C.C. July 3, 2003) ...................................... 1, 2, 7, 8, 9, 11

Auer v. Robbins,
   519 U.S. 452 (1997) ....................................................................... 2, 4, 5, 6, 10, 14

Career Counseling v. Amerifactors,
   91 F.4th 202 (4th Cir. Jan. 22, 2024) .................................................................11

Chevron v. NRDC,
   467 U.S. 837 (1984) .............................................................................. 5, 6, 10, 14

Committee to Save WEAM v. FCC,
   808 F.2d 113 (D.C. Cir. 1986) .......................................................................6, 7

Contract Servs. v. U.S.,
   104 Fed. Cl. 261 (2012) .........................................................................................9

Daisy v. Mobile Mini,
   489 F. Supp. 3d 1287 (M.D. Fla. 2020) ................................................................13

Drazen v. Pinto,
   41 F.4th 1354 (11th Cir. 2022) ...........................................................................13

Facebook v. Duguid,
   592 U.S. 395 (2021) ..............................................................................................5

Friends of Everglades v. S. Fla. Water Mgmt.,
   570 F.3d 1210 (11th Cir. 2009)..............................................................................1

Georgia Power Co. v. Teleport Commc'ns Atlanta, Inc.,
   346 F.3d 1047 (11th Cir. 2003)...............................................................................7

Gorss Motels v. Safemark,
   931 F.3d 1094 (11th Cir. 2019)..............................................................................5

In re Amerifactors,
   2019 WL 6712128 (F.C.C. Dec. 9, 2019)...................... 1, 3, 5, 8, 9, 10, 12, 14, 15

**Page(s)**

In re Ryerson,
    2020 WL 5362216 (F.C.C. Sept. 4, 2020) .................................... 1, 3, 5, 10, 14, 15

In re Westfax,
    2015 WL 5120880 (F.C.C. Aug. 28, 2015) ............................ 1, 3, 5, 9, 10, 12, 15

Kisor v. Wilkie,
    139 S.Ct. 2400 (2019) ..................................................................................4

Levine Hat v. Innate Intel.,
    538 F. Supp. 3d 915 (E.D. Mo. 2021)....................................................10

Lyngaas v. Curaden Ag,
    992 F.3d 412 (6th Cir. 2021)....................................................................10

Miami-Dade Cnty. v. USEPA,
    529 F.3d 1049 (11th Cir. 2008)..................................................................1

National Cable v. Brand X,
    545 U.S. 967 (2005) ............................................................... 1, 4, 5, 10

Palm Beach Golf Center v. Sarris,
    781 F.3d 1245 (11th Cir. 2015)........................................................ 13, 14

PDR v. Carlton & Harris,
    139 S.Ct. 2051 (2019) ........................................................... 6, 8, 10

Rafferty v. Denny's,
    13 F.4th 1166 (11th Cir. 2021 ................................................................4

Salcedo v. Hanna,
    936 F.3d 1162 (11th Cir. 2019)...............................................................13

Scoma v. Nat'l Spine,
    2022 WL 16695130 (M.D. Fla. 2022) .....................................................9

Skidmore v. Swift,
    323 U.S. 134 (1944) ...................................................................... 5, 10, 14

Spokeo, Inc. v. Robins,
    578 U.S. 330 (2016) ...............................................................................13

**Page(s)**

True Health v. McKesson,
  2020 WL 7664484 (N.D. Cal. 2020) ........................................................6

True Health v. McKesson,
  2023 WL 7015279 (9th Cir. 2023) ........................................................6, 7

Warshauer v. Solis,
  577 F.3d 1330 (11th Cir. 2009) ...............................................................6

## STATUTES

47 U.S.C. § 155 ...........................................................................................5

5 U.S.C. § 554 .............................................................................................3

## RULES

Fed. R. Civ. P. 12 ......................................................................................15

Fed. R. Civ. P. 23 ......................................................................................15

## TREATISES

3 Admin. L. & Prac. § 10:26 (3d ed.) ........................................................9

## REGULATIONS

47 C.F.R. § 1.102 ........................................................................................6

47 C.F.R. § 1.2 ............................................................................................3

BTL replies as follows to Plaintiffs' March 21, 2024 submission (Dkt. 536):[1]

## I.  <u>INTRODUCTION</u>

At the last hearing, the Court asked the Parties to address how the 2003 Order, <u>Westfax</u>, <u>Amerifactors</u> and <u>Ryerson</u> could be properly reconciled.  BTL took that request to heart and identified <u>two</u> separate but <u>consistent</u> themes in the four orders, <u>either</u> one of which compels granting BTL's motion under Article III (Dkt. 492):

1. Faxes transmitted as emails over the Internet to the intended recipient (as upwards of 40% or  more of the faxes at issue in this case were) are <u>not</u> covered by the TCPA; and

2. The question of whether a particular device or equipment qualifies as a "telephone facsimile machine" triggering liability under the TCPA turns on the <u>factual</u> issue of whether that device or equipment had the capacity to print images onto paper, a requirement tied <u>directly</u> to the statutory <u>definition</u> of "telephone facsimile machine."

BTL Sub. at 3-15.  BTL, however, also noted (citing <u>National Cable</u>) that "[a]n initial agency interpretation is <u>not</u> instantly carved in stone," because an agency "must consider <u>varying</u> interpretations and the wisdom of its policy on a <u>continuing</u> basis," especially "in response to <u>changed</u> <u>factual</u> <u>circumstances</u>," meaning if irreconcilable conflicts exist between an agency's iterative interpretations, the more <u>recent</u> should take precedence.  <u>Nat'l Cable</u>, 545 U.S. at 981; <u>Miami-Dade Cnty.</u>, 529 F.3d at 1062-65; <u>Everglades</u>, 570 F.3d at 1219, 1223-28  In short, BTL made an effort to provide the Court with an accurate and holistic picture of the FCC's serial orders that span <u>nearly</u> two decades and address fax servers, third-party fax service providers and online fax services, mindful that interpretations by an agency of its own regulations

---

[1] Capitalized terms have the meaning ascribed to them in the Settlement Agreement.  <u>See</u> Settlement Agt. (Dkt. 324-1).  In addition, all emphasis is supplied and internal citations, quotations and footnotes are omitted.  To conserve space, cases and authorities cited in BTL's February 20, 2024 submission (Dkt. 532) ("BTL Sub.") and/or the March 21, 2024 submissions of Plaintiffs and Intervenors (Dkts. 536, 537) ("Pls. Sub." and "Int. Sub.") are cited herein using short-form citations.

are themselves subject to deference.  See, e.g., Auer v. Robbins, 519 U.S. 452, 461 (1997) (an agency's interpretation of its own rules and regulations is subject to deference).

In response, Plaintiffs pay lip service to the Court's request for an "explanation" of how "to reconcile" the four orders (Pls. Sub. at 1), but then provide what reads like a bad piece of historical fiction, all with the goal of convincing the Court it should selectively misread the 2003 Order and Westfax and just ignore Amerifactors and Ryerson.  Along the way, Plaintiffs ominously warn against transgressions of the Hobbs Act, relying on a discredited reading the Supreme Court has questioned, other courts have rejected and the Wanca firm itself has disavowed elsewhere.  Worse, Plaintiffs falsely accuse BTL of Hobbs Act violations, trying to disingenuously convert a disagreement over what the 2003 Order actually says into an effort to "enjoin, set aside" or "suspend" that order, when BTL in fact is the only party to have explained how the four orders can be read consistently with governing law vis-à-vis serial interpretations by the FCC.  In sum, Class Counsel plainly recognize that if Amerifactors and Ryerson were "effective upon release" and have "the same force and effect" as Westfax and the 2003 Order (as they indisputably were and do), then BTL's pending motion to dismiss and decertify must be granted, leaving Class Counsel with no remaining option but to obfuscate.

## II.  DISCUSSION

The four FCC orders are iterative interpretations of the TCPA over 20 years addressing what the FCC acknowledges is an area of rapid technological change. See 2003 Order ¶ 200.  Each of the three orders following the 2003 Order reiterated that faxes sent as emails are not covered by the TCPA, and employing a case-by-

case analysis in the context of adjudications under 47 C.F.R. § 1.2 and 5 U.S.C.
§ 554(e), Westfax, Amerifactors and Ryerson focused on capacity to print as what
triggers the TCPA when third-party fax service providers are involved, with
Westfax, Amerifactors and Ryerson all making a point to harmonize with the 2003
Order and with Amerifactors and Ryerson noting why a different result was reached
in Westfax.  See BTL Sub. at 6-11.  Amerifactors was clear on this point:

> We also disagree with those that suggest this case is governed by the *Westfax Declaratory Ruling*. That decision focused on whether the mere conversion of a conventional fax to email at some point in the transmission chain removed the fax from the TCPA's reach—and found that it did not. And based on a limited record, it assumed that the "efax" in question was sent to a computer with an attached fax modem that had the capacity to print the fax, as required by statute. That decision did not consider the online fax services that have no such capacity at issue here.

Amerifactors ¶ 15.

Class Counsel try to ignore all of this and pretend as if the four orders
originated on different planets instead of from the same agency.[2]  The reality,
however, is that the FCC has spoken with one voice (if not with perfect clarity), and
in the years since Amerifactors, there has been no indication anyone at the FCC takes
issue with it.[3]  Meanwhile, as agency interpretations of the FCC's own rules and
regulations, Amerifactors and Ryerson are themselves plainly subject to deference
by this Court under Auer, and as much as Class Counsel may wish it so, these later
interpretations cannot be disregarded, especially since they represent the most

---

[2] In a touch of irony, Class Counsel are in effect asking this Court to "invalidate" or "suspend" within the meaning of the Hobbs Act Amerifactors and Ryerson, while falsely accusing BTL of doing the same with respect to the 2003 Order and Westfax.  See Pls. Sub. at 15-18.

[3] In a political aside, Plaintiffs note Amerifactors was issued "following the 2016 election," but ignore that into the fourth year of the Biden administration, the FCC has given no indication it is reevaluating Amerifactors, making Plaintiffs' belated suggestion the FCC now be encouraged to submit an amicus brief to the Court odd (to say the least).  See Pls. Sub. at 15, 24-25.  There is literally no indication from anyone at the FCC that Amerifactors is not the final word on online fax services.  The only issue is Class Counsel's unwillingness to recognize it as such.

current FCC interpretation of <u>both</u> the TCPA as well as relevant FCC rules and regulations.  <u>See Auer</u>, 519 U.S. at 461; <u>Nat'l Cable</u>, 545 U.S. at 980-82, 1000-02.[4]

### A.  Any Supposed Conflict Between The Four Orders Is Largely Attributable To Class Counsel

The conflict between the four FCC orders is <u>largely</u> of Class Counsel's own making and is designed to relegate <u>Amerifactors</u> and <u>Ryerson</u>, while obscuring what is a clear <u>factual</u> question that compels the granting of BTL's motion.  <u>See</u> BTL Sub. at 19-21 (noting reasons why the issue of capacity to print can <u>no</u> longer be resolved for most Settlement Class Members).  Class Counsel would like to pretend <u>any</u> device or equipment that can receive a fax is a "telephone facsimile machine" as a matter of law, so that there would be no open factual issues bearing on Article III and the Settlement Class could remain certified.  <u>See</u> Pls. Sub. at 5 n.2.  But the statute and <u>all</u> four orders make plain the relevant question is whether a receiving device <u>actually</u> has the capacity to print, and <u>Amerifactors</u> / <u>Ryerson</u> likewise make plain online fax services where subscribers can log in to cloud-based servers to check on faxes or elect to receive faxes by email do <u>not</u> have the capacity to print, a factual finding itself subject to deference.  <u>See</u> Ex. 2 (list of cases supporting BTL's position, including those involving the Wanca firm where claims deemed unsuitable for class

---

[4] <u>Auer</u> was recently reaffirmed in <u>Kisor</u>, with the Supreme Court noting "<u>Auer</u> deference gives an agency <u>significant</u> leeway to say what its own rules mean" and describing <u>Auer</u> deference thusly:

Consider that if you don't know what some text (say, a memo or an e-mail) means, you would probably want to ask the person who wrote it. . . . The agency that "wrote the regulation" will often have direct insight into what that rule was intended to mean.  The drafters will know what it was supposed to include or exclude or how it was supposed to apply to some problem.

<u>Kisor v. Wilkie</u>, 139 S.Ct. 2400, 2412, 2418 (2019).  As <u>Kisor</u> notes, ambiguity is required before <u>Auer</u> applies, but the briefing before this Court makes obvious the 2003 Order and <u>Westfax</u> are at minimum ambiguous, making the application of <u>Auer</u> more than appropriate.  <u>See id.</u> (passages from <u>Kisor</u> collected at Exhibit 1); <u>Rafferty v. Denny's</u>, 13 F.4th 1166, 1179 (11th Cir. 2021).

treatment due to inability to differentiate subscribers to online fax services).[5] Properly construed, <u>Westfax</u>, <u>Amerifactors</u> and <u>Ryerson</u> are simply interpretations by the FCC of the TCPA and the 2003 Order, and as such, they are entitled to deference under <u>Auer</u>, <u>Chevron</u> and/or <u>Skidmore</u>.  What is clearly not appropriate, however, would be to create a false hierarchy between the four orders and then based on that false hierarchy reach the utterly unsupportable conclusion urged by Plaintiffs that <u>Amerifactors</u> and <u>Ryerson</u> can just be disregarded by the Court.  <u>See</u> <u>Nat'l Cable</u>, 545 U.S. at 981.

### B.  <u>None</u> Of The Distinctions Class Counsel Try To Draw Between The Four FCC Orders Are Valid, As <u>Numerous</u> Courts Have Held

Plaintiffs try to draw distinctions between the four orders, all in an effort to relegate <u>Amerifactors</u> and <u>Ryerson</u>.  <u>See</u> Pls. Sub. at 5-18.  None of these distinctions are valid, however, as many courts have noted in cases involving the Wanca firm:

1. The fact <u>Westfax</u>, <u>Amerifactors</u> and <u>Ryerson</u> were issued by a bureau of the FCC and the 2003 Order by the Commission is of <u>no</u> <u>significance</u>, because any order or decision taken by a bureau on delegated authority has <u>exactly</u> "the same force and effect" as one issued by the Commission.  <u>See</u> 47 U.S.C. § 155(c)(3); <u>Gorss</u>, 931 F.3d at 1104 (CGAB rulings have "same force and effect as actions of the Commission").

2. <u>All</u> four orders are binding and in effect, since <u>Westfax</u>, <u>Amerifactors</u> and <u>Ryerson</u> became "effective upon release."  <u>See</u> 47 C.F.R. § 1.102(b)(1).

---

[5] Class Counsel's effort to argue <u>any</u> device or equipment capable of receiving a fax somehow must have the capacity to print is the <u>very</u> sort of overly broad reading <u>rejected</u> time and again, with the FCC making clear a case-by-case analysis of the equipment in question is required:

> We disagree with those commenters who suggest that other consumer inconveniences necessitate that <u>all</u> computers and devices capable of being sent faxes be <u>deemed</u> telephone facsimile machines. . . . [W]e see <u>no</u> discretion contained in the statute to expand the meaning of a telephone facsimile machine <u>beyond</u> its defined scope.
>
> * * *
>
> [I]nterpreting the TCPA to mean that <u>every</u> "computer" or "other device" is a telephone facsimile machine, merely because it could be connected to a printer, directly or indirectly, would be <u>overly</u> broad and result in the kind of <u>impermissibly</u> expansive application of the TCPA that the D.C. Circuit recently rejected.

<u>Amerifactors</u> ¶¶ 14, 13 n.33; <u>see also</u> <u>Facebook v. Duguid</u>, 592 U.S. 395, 409 (2021) (rejecting broad reading of "capacity" and "automatic telephone dialing system").

3. While it is true <u>Amerifactors</u> and <u>Ryerson</u> are interpretive rules, so too are <u>Westfax</u> and the relevant portions of the 2003 Order addressing fax servers, meaning whatever is good for the goose is certainly good for the gander.[6]  <u>See</u>, <u>e.g.</u>, <u>Warshauer v. Solis</u>, 577 F.3d 1330, 1337 (11th Cir. 2009).

4. The applications for review of <u>Amerifactors</u> and <u>Ryerson</u> Mr. Hara filed more than three and a half years ago have no bearing on anything, as the Ninth Circuit (among others) recently recognized:

> That there is a pending application for review of *Amerifactors* by the full Commission does <u>not</u> change this analysis. Orders issued on delegated authority are "<u>effective</u> <u>upon</u> <u>release</u>." *47 C.F.R. § 1.102(b)(1)*. <u>Unless the full Commission issues a stay pending review</u>, *Amerifactors* remains in effect.

> <u>True Health</u>, 2023 WL 7015279, *2 n.1; <u>see</u> <u>also</u>, <u>e.g.</u>, <u>WEAM v. FCC</u>, 808 F.2d 113, 119 (D.C. Cir. 1986) ("orders are to be effective upon release" and an application for review "will not preclude their taking effect," <u>absent</u> a stay by the Commission).[7]

Likewise, the hyper-focus of Class Counsel on "final" is a smokescreen to obscure the fact <u>Amerifactors</u> and <u>Ryerson</u> remain in full force and effect.  <u>See</u> Pls. Sub. at 2-5.  Orders issued on delegated authority like <u>Amerifactors</u> are effective upon <u>issuance</u> and remain so <u>unless</u> stayed or overturned by the Commission.  <u>See</u> BTL Sub. at 15-17.  Accordingly, the Ninth Circuit rejected this argument by the Wanca firm, holding <u>Amerifactors</u> is "final" <u>vis-à-vis</u> the Hobbs Act:

> *Amerifactors* is a "final order" under the Hobbs Act. Orders of the Commission are final for the purposes of the Hobbs Act "if they impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process." *US W. Commc'ns Inc. v. Hamilton*, 224 F.3d

---

[6] Plaintiffs argue (incorrectly) that interpretive rules are not entitled to <u>Chevron</u> deference, and the Supreme Court strongly suggested they are not governed by the Hobbs Act, meaning <u>Skidmore</u> and/or <u>Auer</u> may apply to all four.  <u>See</u> <u>PDR</u>, 139 S.Ct. at 2055.  But whatever the right approach, it should be the <u>same</u> for all four orders, as they are <u>all</u> interpretive rules or adjudicatory orders that are the functional equivalent thereof.  <u>See</u> Ex. 3 (cases applying <u>Chevron</u> and/or <u>Auer</u> to interpretive rules and adjudications).

[7] Ironically, the Wanca firm urged the Ninth Circuit in <u>True Health</u> to do the very thing Class Counsel falsely accuse BTL of trying to do here <u>vis-à-vis</u> the Hobbs Act, all to no avail.  Indeed, one would be hard pressed to read the petition for rehearing the Wanca firm filed in <u>True Health</u> (attached as Exhibit 4) and believe the same lawyer wrote <u>both</u> that brief <u>and</u> Plaintiffs' most recent submission here.  Nor do supposed differences between Ninth Circuit and Eleventh Circuit law explain <u>any</u> of this away.  <u>See</u> <u>True Health v. McKesson</u>, 2020 WL 7664484, *7 (N.D. Cal. 2020) (recognizing the law of <u>both</u> circuits <u>vis-à-vis</u> the Hobbs Act are virtually identical).

1049, 1054 (9th Cir. 2000) (quoting *Sierra Club v. U.S. Nuclear Regul. Comm'n*, 862 F.2d 222, 225 (9th Cir. 1988)). *Amerifactors* is a product of the Commission's administrative process. The Commission, through the Bureau, received a petition for a declaratory ruling, sought public comment, and issued Amerifactors through its general rulemaking authority to carry out the TCPA. *See* 34 FCC Rcd. at 11950–51, 11954. And the ruling fixes a legal relationship by clarifying that an online fax service is not a "telephone facsimile machine" and "thus falls outside the scope of the [TCPA's] statutory prohibition." *Id.* at 11951. Thus, Amerifactors is final for purposes of the Hobbs Act.

True Health, 2023 WL 7015279, *2.[8]

### C.   The 2003 Order Decidedly Did Not Address Online Fax Services Operated By Third-Parties Or The Equipment Used By Such Services

Contrary to Plaintiffs' suggestions, the 2003 Order addressed fax servers in one location that allowed multiple terminals or computers at the same location to send and receive faxes over the same or shared regular telephone lines:

> "Fax servers" enable multiple desktops to send and receive faxes from the same or shared telephony lines.

2003 Order ¶ 200.[9]  The equipment described in the 2003 Order, however, is worlds apart from the "online fax services" addressed in Amerifactors, which are operated by third-party providers and utilize cloud-based servers located at remote locations, accessible over the Internet by subscribers for review of faxes sent to those subscribers.[10]  See Amerifactors ¶ 13.  Accordingly, Plaintiffs' suggestion that the

---

[8] The issue of whether any agency order is "final" in the sense described by Plaintiffs and Georgia Power addresses exclusively whether the order is ripe for judicial review; it has nothing to do with whether the order is subject to the other strictures of the Hobbs Act or should be given full force and effect by the Court.  See Georgia Power, 346 F.3d at 1050; WEAM, 808 F.2d at 119 (bureau order effective upon release).

[9] This is the type of configuration (common at law firms and other small business) that the Court appeared to be referencing at the January 19, 2024 hearing in addressing faxes sent to Holland & Knight.  See Jan. 19, 2024 Hr'g Tr., Ex. 5, at 52:19-56:6.  Like many law firms, Holland & Knight had an internal network for the use of its own employees to access faxes sent to the firm.  See id. No one, however, would confuse that internal system (addressed in the 2003 Order) with an online fax service operated by a third-party to provide subscribers access over the Internet to cloud-based servers (addressed in Amerifactors and Ryerson).  See Int. Sub. at 11.

[10] Used with HylaFAX, cloud-based platforms allowed for the digitalization of the entire process from sender to initial recipient (i.e., a third-party fax service provider) to subscriber, with digitalization eliminating all of the harms Congress intended to address by including unsolicited

2003 Order was intended to address what <u>Amerifactors</u> described as online fax services is unhinged from reality.[11]  <u>See</u>, <u>e.g.</u>, Pls. Sub. at 12 (claiming the 2003 Order "rejected every argument" made by BTL regarding online fax services).

By Plaintiffs' telling, the 2003 Order instantly carved in stone over 20 years ago <u>all</u> of the issues in this case, with the FCC being precluded from <u>ever</u> clarifying the 2003 Order or refining its interpretation of the TCPA as applied to evolving technologies like cloud-based online fax services.[12]  <u>See</u> Pls. Sub. at 5.  The 2003 Order made explicit, however, that fax servers were "developing technologies" which might warrant future rules, and <u>Westfax</u>, <u>Amerifactors</u> and <u>Ryerson</u> are simply the later orders anticipated by the 2003 Order.  <u>See</u> 2003 Order ¶ 198 n.736 (noting future rules "would <u>not</u> extend to facsimile messages transmitted as emails over the Internet").  Therefore, Plaintiffs' suggestion the 2003 Order should be read

---

fax advertisements in the TCPA (<u>i.e.</u>, paper, toner and tying up regular telephone lines).  <u>See</u> <u>Amerifactors</u> ¶ 12.

[11] To their credit, Intervenors acknowledge the 2003 Order was <u>not</u> addressing third-party fax service providers or online fax services but, instead, "described a fax server housed <u>inside</u> the fax recipient's business that received and routed incoming faxes to computers as attachments to emails."  Int. Sub. at 12; <u>id.</u> at 11 ("When a business sets up an <u>internal</u> network with a fax server that routes incoming faxes to employee desktop computers as emails, the <u>entire</u> network constitutes a telephone facsimile machine.").  In so doing, Intervenors avoid the dissembling that is the hallmark of Plaintiffs' recent submissions and render utterly irrelevant the musings of Class Counsel as to how scattered comments of Nextel made in 2002 about many things factored into the <u>actual</u> ruling in the 2003 Order.  <u>See</u>, <u>e.g.</u>, Pls. Sub. at 5-12.

[12] Many portions of the 2003 Order are properly characterized as a legislative rule (<u>e.g.</u>, ¶¶ 28-41—addressing the national Do-Not-Call list), but the five paragraphs (less than one page out of 129) dedicated to fax servers are plainly an interpretive rule, focusing <u>exclusively</u> on the proper interpretation of "telephone facsimile machine."  <u>See</u> 2003 Order ¶¶ 198-202; <u>PDR</u>, 139 S.Ct. at 2055 (noting <u>different</u> portions of a single order or rule may properly be characterized <u>differently</u>); <u>id.</u> (suggesting interpretive rules are <u>not</u> subject to the Hobbs Act).  While quick to dismissively label <u>Amerifactors</u> and <u>Ryerson</u> as interpretive rules (Dkt. 536 at 20), Plaintiffs ignore the fact the relevant portions of the 2003 Order are the <u>very</u> same thing and also ignore the fact <u>Westfax</u> is also an interpretive rule, meaning all four orders are interpretive aids for use by the Court under <u>Chevron</u>, <u>Skidmore</u> and/or <u>Auer</u> and are otherwise appropriate for retroactive application.  <u>See</u> <u>generally</u> Pls. Sub.  <u>But</u> <u>see</u> <u>id.</u> at 23-24 (suggesting the Court can just disregard the statement in <u>Amerifactors</u> that it is a "clarification").

in isolation not only contravenes <u>Auer</u>, but it also defies the 2003 Order, common sense and the interpretive guidelines for agency rules and orders.  <u>See</u>, <u>e.g.</u>, <u>Contract Servs. v. U.S.</u>, 104 Fed. Cl. 261, 275 (2012) (agency rules and regulations should be read to harmonize); <u>see</u> <u>also</u> 3 Admin. L. & Prac. § 10:26[3] (3d ed.).

### D.  Plaintiffs' Efforts To Explain Away The Comments In The 2003 Order Regarding Faxes Sent As Emails Are Equally Misleading And Misguided

As noted, another consistent theme in the four orders is that faxes sent as emails over the Internet are <u>not</u> covered by the TCPA.  <u>See</u> BTL Sub. at 5-8.  Class Counsel try to obscure this aspect of the 2003 Order, but the crucial issue is that the <u>only</u> thing a subscriber "receives" from an online fax service as a "fax" is an email <u>or</u> access to a cloud-based server, <u>neither</u> of which qualify under the TCPA <u>or</u> satisfy Article III.  <u>See</u>, <u>e.g.</u>, <u>Nat'l Spine</u>, 2022 WL 16695130, *6-7, 9-10.[13]

The 2003 Order did <u>not</u> address faxes sent as emails by a third-party fax service provider over the Internet to a subscriber / intended recipient, and while <u>Westfax</u> did address that situation, it limited TCPA liability to instances where (in contrast to online fax services—<u>see</u> <u>Amerifactors</u>) the fax service provider <u>received</u> the fax on equipment <u>with</u> the capacity to print as opposed to cloud-based servers.  <u>See</u> <u>Westfax</u> ¶ 9.  Accordingly, Plaintiffs are simply wrong in suggesting the 2003 Order was addressing emails sent by a third-party provider to its subscribers as

---

[13] Again, this is in contrast to where a business sets up an <u>internal</u> network and uses servers to route faxes as emails to desktops on the <u>internal</u> network.  <u>See</u> disc. <u>infra</u> at 9-10.  In that case, the <u>entire</u> local network is akin to a telephone facsimile machine.  <u>See</u> <u>id.</u>  But that argument becomes tenuous when the fax service provider or online fax service is a <u>third</u> <u>party</u> and effectively sits <u>between</u> the sender and intended recipient.  In that instance, the balance struck by the FCC in <u>Westfax</u> and <u>Amerifactors</u> is the "chain" remains unbroken between the sender and intended recipient <u>if</u> (and only if) the receiving device has the capacity to print but is broken if it does not.  <u>See</u> <u>Westfax</u> ¶ 9; <u>Amerifactors</u> ¶ 11.  One can certainly take issue with how <u>Westfax</u> resolves this question (or its fidelity to the 2003 Order), but that is not an issue the Court needs to decide, because online fax services as described in <u>Amerifactors</u> were the predominant technology used in 2009-2010 and as recognized in <u>Amerifactors</u>, they clearly <u>lack</u> the capacity to print.  <u>See</u> <u>Amerifactors</u> ¶ 11.

opposed to over an <u>internal</u> network where the <u>same</u> entity owns and controls the device on which the fax is <u>received</u> and then <u>distributes</u> it internally to other desktops on the same <u>internal</u> network.[14]  <u>See</u> Pls. Sub. at 5-12.

**E.   The Hobbs Act Is No Sense An Impediment To Granting BTL's Motion**

Relying on a reading of the Hobbs Act the Wanca firm has vigorously opposed before other courts and that has been questioned by every court to recently consider it (including the Supreme Court and the Eleventh Circuit), Plaintiffs try to suggest the Hobbs Act somehow compels denial of BTL's motion.[15]  <u>See</u> Pls. Sub. at 2-5. That is simply not true.  Indeed, there is no need for the Court to wade into waters purposely made murky by Class Counsel, as the Court can give <u>full</u> effect to the Hobbs Act, the 2003 Order and <u>Westfax</u> and properly conclude the question to be answered here is whether the equipment employed by online fax services utilized by Settlement Class Members did <u>or</u> did not have the capacity to print.[16]  <u>See</u> BTL Sub.

---

[14] We already identified the cases in which the Wanca firm made the same arguments regarding <u>Amerifactors</u> / <u>Ryerson</u>, the Hobbs Act and <u>Chevron</u> and <u>Skidmore</u>, only to have those arguments <u>repeatedly</u> rejected.  <u>See</u> Dkt. 532 at 15-17, 24-25 & Dkts. 532-19, 532-26.  <u>None</u> of those decisions, however, are mentioned in Plaintiffs' submission, and while they again falsely accuse BTL of not addressing contrary authority, it is very clear the considerable weight of authority (including six decisions in this circuit and district) favors BTL.  <u>See</u> BTL Sub. at 18 n.20 (addressing <u>Lyngaas</u> and <u>Levine Hat</u>).  The list of contrary decisions and multiple grounds for distinguishing <u>Lyngaas</u> and its limited progeny are provided in Exhibit 2, and Exhibit 6 identifies <u>all</u> issues and arguments Plaintiffs and Intervenors ignored in their recent submissions.

[15] To put to rest Class Counsel's phobia over the Hobbs Act, BTL is <u>not</u> seeking to "enjoin, set aside" or "suspend" <u>any</u> of the four FCC orders, as <u>all</u> four are of the same force and effect and deserving of the same treatment.  <u>See</u> disc. <u>supra</u> at 5-7.  BTL only asks all four orders be interpreted by their terms and consistent with the governing principles of deference under <u>Chevron</u>, <u>Skidmore</u> and <u>Auer</u> that apply to serial agency interpretations.  <u>See</u> Nat'l Cable, 545 U.S. at 980-82, 1000-02; <u>Auer</u>, 519 U.S. at 461.  That is readily accomplished by focusing on the capacity to print and the admonition first mentioned in the 2003 Order that faxes sent as email over the Internet are <u>not</u> covered by the TCPA.  Nonetheless, applying the Hobbs Act in this private enforcement action in the hyper-technical manner so adamantly urged by Class Counsel and now discredited by <u>every</u> court to have considered the issue would have <u>precisely</u> the same unacceptable and unconstitutional consequences the Supreme Court warned of in <u>PDR</u>.  <u>See</u> PDR, 139 S. Ct. at 2056-67 (concurring opinions of Justice Thomas and Justice Kavanaugh).

[16] Though Plaintiffs try to obscure the issue, the definition of a "telephone facsimile machine" requires the capacity to print, not the capacity to have a printer connected to one or another device.

10

at 8-15.  And since that factual issue and the inability to resolve it for the bulk of the Settlement Class are <u>both</u> dispositive of BTL's pending motion (Dkt. 492), that can and should be the end of the matter.  <u>See</u> <u>id.</u>[17]

### F.   <u>Westfax</u> Would Not Solve The Article III Problem Here Even If It Were The Definitive Interpretation By The FCC Of The TCPA (Which It Plainly Is <u>Not</u>)

Plaintiffs place heavy reliance on <u>Westfax</u> but ignore a crucial issue addressed in our opening submission.   Even if <u>Westfax</u> were the FCC's most recent interpretation of the TCPA and addressed the same equipment as in <u>Amerifactors</u> and <u>Ryerson</u>, <u>Westfax</u> would still <u>not</u> solve the Article III problem.[18]  <u>See</u> BTL Sub. at 30-32.  Under <u>Westfax</u>, a fax received by a fax service provider and sent to a subscriber as an email over the Internet creates statutory standing for the intended

---

And those are <u>very</u> different things.  If there is an available port on a device, you can connect a printer with a cable, but you obviously cannot print <u>unless</u> the software being used has functional print drivers.  <u>See</u> Sponsler Decl., Ex. 7, at ¶ 17.  And the dominant software used by online fax services <u>circa</u> 2009-2010 (<u>i.e.</u>, HylaFAX) indisputably <u>lacked</u> print drivers or printing functionality, precisely because the servers employed by online fax services were <u>not</u> intended or equipped to print, with any printing (if any) occurring on equipment <u>offsite</u> owned and controlled by <u>subscribers</u>.  <u>See</u> <u>id.</u> at ¶ 18.  But the whole point of online fax services was to <u>avoid</u> the need to print faxes.  <u>See</u> *Online Faxing 101*, Ex. 4 to BTL's Reply to Int. Sub.

[17] Class Counsels' frantic claim that the Court supposedly dare not follow the Fourth Circuit's decision in <u>Career Counseling</u> without encroaching on the Hobbs Act is doubly wrong.  <u>See</u> Pls. Sub. at 5 n.2.  <u>First</u>, that decision is <u>not</u> at odds with the 2003 Order.  The 2003 Order specified faxes sent as emails over the Internet are <u>not</u> covered by the TCPA and equipment lacking the capacity to print is likewise <u>not</u> a "telephone facsimile machine," and <u>Career Counseling</u> found emails sent by online fax services satisfy <u>both</u> exceptions to liability.  <u>See</u> 2003 Order ¶ 200.  <u>Second</u>, the 2003 Order did not purport to decide how online fax services operated by third parties should be treated under the TCPA.  <u>See</u> <u>id.</u> ¶¶ 198-202.  In any case, however, the decision in <u>Career Counseling</u> "remains an option for this Court" (BTL Sub. at 14 n.16) as (at minimum) an alternative grounds for granting BTL's pending motion (Dkt. 492).  Moreover, it is plainly <u>not</u> a violation of the Hobbs Act simply to disagree with an erroneous interpretation of an FCC order proffered by the Wanca firm, the claims of Class Counsel notwithstanding.  <u>See</u> Pls. Sub. at 16.

[18] Contrary to Plaintiffs' suggestion, the impact of <u>Westfax</u> on Article III has <u>nothing</u> to do with the Hobbs Act or any effort to set aside <u>Westfax</u>.  <u>But see</u> Pls. Sub. at 12-15.  The FCC was not addressing Article III in <u>Westfax</u>.  Instead, we simply pointed out that even if <u>Westfax</u> were the final word on fax service providers, it would <u>not</u> solve the Article III problem, because to pass muster under Article III, the person suffering the harm must be the <u>same</u> person who claims to have standing, whereas in the case of fax service providers, the <u>only</u> thing the intended recipient receives is an email or worse logs in to a cloud-based server, <u>neither</u> of which obviously satisfies Article III.  <u>See</u> BTL Sub. at 30-32.

recipient (i.e., the subscriber) but not the actual recipient (i.e., the fax service provider).[19]  See Westfax ¶¶ 1 n.3, 12.  As we noted previously, however, Article III is only satisfied if the person making the claim is also the person who suffered the harm.  See BTL Sub. at 6 n.8.  But a person who only receives a fax as an email or logs in to a cloud-based server would suffer none of the harms Congress intended to address in the TCPA and thus would not have Article III standing.  See id. at 30-32.

### G.  Plaintiffs Have No Answer For How Settlement Class Members Who "Received" A Fax By Logging In To A Cloud-Based Server Could Possibly Create Article III Standing

Emails are only one way subscribers to online fax services "receive" faxes.  See Amerifactors ¶ 13.  As noted, online fax services offered subscribers the option of "receiving" faxes by logging in to cloud-based servers maintained by those services.  See BTL Sub. at 6-8.  This option was very popular, because it could easily be done remotely and on variety of devices.  See, e.g., *Online Faxing 101*, Ex. 4 to BTL's Reply to Int. Sub.  Plaintiffs, however, do not mention this option, and it is clear they have no answer (and there is none) for how logging in to a cloud-based server maintained by a third party could possibly create Article III standing for the

---

[19] Westfax resolves this tension by focusing on what Plaintiffs characterize as a "chain of devices" from the sender through the fax service provider and then to the subscriber.  See Westfax ¶ 9.  But this chain only remains intact if the fax service provider uses equipment with the capacity to print.  See Pls. Sub. at 14-15.  When it does not—as was the case in Amerifactors and Ryerson—the chain is broken, and there is no basis for imposing TCPA liability on the sender, let alone anything resembling an injury sufficient for Article III.  See, e.g., Amerifactors ¶ 11.  Moreover, Plaintiffs' argument that Westfax creates a "chain" from sender through fax service provider and to subscriber also fails, because the link between the fax service provider and the subscriber is not "over a regular telephone line" but, instead, is over the Internet for the sending of the fax as an email to the subscriber, meaning whatever capacity to print the equipment used by the subscriber may have, the statutory link between the fax service provider and the subscriber is broken since a "regular telephone line" is not used.  See Sponsler Decl., Ex. 7, at ¶ 30.  The Court, however, need not address or resolve the tension between the 2003 Order and Westfax either, since the very same result is reached focusing on what Westfax, Amerifactors, and Ryerson treated as the distinguishing feature (after a case-by-case analysis) for purposes of the TCPA, namely whether the equipment used by the third-party provider did or did not have the capacity to print.  See BTL Sub. at 8-15.

intended recipient of a fax.  See BTL Sub. at 30-32.  Moreover, the lack of an answer on this issue is also sufficient standing alone to grant BTL's motion.  See Drazen I, 41 F.4th at 1361 (any definition of a settlement class that includes members who do not have Article III standing cannot stand).

### H.  Whatever Conclusion Is Reached With Respect To The 2003 Order, Westfax, Amerifactors And Ryerson, Plaintiffs' Submission Only Reconfirms That They Cannot Satisfy Their Burden Under Article III

Finally, Spokeo plainly means that even if Congress intended the TCPA to cover emails and logging in to a server (which it plainly did not), it is still incumbent on the Court to determine whether each Settlement Class Member "suffered a concrete harm under Article III."  See Spokeo, 578 U.S. at 339-40.  We addressed previously the reasons why Plaintiffs cannot meet this burden, citing no less than four decisions in analogous cases (several litigated by the Wanca firm) where numerous courts (including three in this district) have decided receiving a fax by email or by logging in to a cloud-based server is not sufficient for Article III.  See BTL Sub. at 21-24.  In response, Plaintiffs again make no effort to address how receiving an email or logging in to a server satisfies Article III but, instead, mischaracterize the holdings in Daisy and Sarris.  See Pls. Sub. at 26-27.

As for Daisy, Plaintiffs suggest Judge Chappell's decision relied on Salcedo, but Salcedo was scarcely the only basis for the conclusion receiving a fax by email is insufficient under Article III.  See Daisy, 489 F. Supp. 3d at 1291-97.  To the contrary, Judge Chappell engaged in the very analysis required by Spokeo and concluded those harms have no "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."  See

id. at 1293.  This is, of course, the same analysis required of Plaintiffs, and the fact they still have not attempted it speaks volumes.

Plaintiffs' discussion of Sarris, however, is equally misleading.  See Pls. Sub. at 27.  In Sarris, the Eleventh Circuit found Article III standing for a fax sent to a conventional fax machine even if the fax was not printed, because the receipt of the fax occupied (for a minute or more) the fax machine and the telephone line.  See Sarris, 781 F.3d at 1251.  But nothing gets occupied with an email received over the Internet through an online fax service, let alone by logging in to a cloud-based server.

### III.  CONCLUSION

The Court should grant BTL's pending motion to dismiss and/or decertify (Dkt. 492) if the Court reaches one or more of the following conclusions:[20]

1. Not all computers, devices or equipment necessarily have the capacity to print, and determining which ones do would require factual determinations that are no longer possible at this point in time under the circumstances of this case.  BTL Sub. at 11-13.

2. A computer, device or other equipment that never had a printer attached to it and/or did not ever have software or print drivers that would allow it to print did not have the capacity to print.  See Sponsler Decl., Ex. 7, at ¶¶ 18-19.

3. Amerifactors and/or Ryerson are entitled to Chevron deference.  BTL Sub. at 24-25.

4. Amerifactors and/or Ryerson are entitled to Skidmore deference.  Id.

5. Amerifactors and/or Ryerson are entitled to Auer deference.  See disc. supra at 2-4 & n.4.

6. The 2003 Order was addressing internal networks and not online fax services operated by third parties.  See disc. supra at 9-10.

7. The intended recipients of faxes sent to online fax services who received those faxes as emails and/or by logging in to a cloud-based server maintained by the online fax service did not suffer any of the harms

---

[20] Most of these conclusions would be sufficient grounds standing alone to grant BTL's motion. See, e.g., Item Nos. 1, 3-5, 7-14.  A few others would require an additional finding or conclusion, but in no circumstance would the Court need to reach all or even most of these conclusions in order to grant BTL's motion.

Congress intended to elevate in the TCPA in addressing the sending of unsolicited advertisements over a regular telephone line to a telephone facsimile machine.  See BTL Sub. at 3-5.

8.   Settlement Class Members who received as an email a fax sent on behalf of BTL do not have Article III standing.  Id. at 11-13.

9.   Settlement Class Members who "received" a fax sent on behalf of BTL by logging in to a cloud-based server maintained by an online fax service do not have Article III standing.  Id. at 21-24, 30-32.

10.  It is not possible at this point in time to determine which Settlement Class Members received faxes sent on behalf of BTL either as emails sent over the Internet or by logging in to a cloud-based server maintained by an online fax service.  Id. at 19-21.

11.  It is not possible at this point in time to determine which Settlement Class Members who "received" faxes as emails from an online fax service opened those emails and their attachments and/or had them blocked by blocking technology.  Id.

12.  It is not possible at this point in time to undertake the sort of case-by-case analysis undertaken in Westfax, Amerifactors and Ryerson to determine which Settlement Class Members received faxes from fax service providers and/or online fax services utilizing devices or equipment that had or did not have the capacity to print.  Id.

13.  It is not possible at this point in time to identify which Settlement Class Members received faxes through online fax services and which received faxes instead on conventional fax machines.  Id.

14.  Online fax services as described in Amerifactors / Ryerson do not have the capacity to print.  Id. at 6-8.

For the foregoing reasons and pursuant to Fed. R. Civ. P. 12(b)(1) and Fed.

R. Civ. P. 23(c)(1)(C), BTL respectfully requests that the Court dismiss the class

claim and decertify the Settlement Class.  BTL further requests whatever other relief

the Court deems appropriate.

Date:  April 26, 2024                          Respectfully submitted,

_/s/ Mark S. Mester_____
Mark S. Mester, One of the Attorneys for
Defendant Buccaneers Team LLC

15

Mark S. Mester
  (admitted *pro hac vice*)
Robert C. Collins III
  (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  mark.mester@lw.com
       robert.collins@lw.com

Joseph H. Varner, III
  (Bar No. 394904)
HOLLAND & KNIGHT LLP
100 North Tampa Street, Suite 4100
Tampa, Florida 33602-3644
Telephone:  (813) 227-8500
Facsimile:  (813) 229-0134
Email:  joe.varner@hklaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 26, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which served all relevant parties.

Date:  April 26, 2024

<u>*/s/ Mark S. Mester*</u>

Mark S. Mester, One of the Attorneys for
Defendant Buccaneers Team LLC

Mark S. Mester
  (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  mark.mester@lw.com