# EXHIBIT 1

Cin-Q Automobiles, Inc., et al. v. BTL
Case No. 8:13-cv-01592-AEP (M.D. Fla.)

**Relevant Passages From**
***Kisor v. Wilkie*, 139 S.Ct. 2400 (2019)**

>Begin with a familiar problem in administrative law: For various reasons, regulations may be genuinely ambiguous. They may not directly or clearly address every issue; when applied to some fact patterns, they may prove susceptible to more than one reasonable reading. Sometimes, this sort of ambiguity arises from careless drafting—the use of a dangling modifier, an awkward word, an opaque construction. But often, ambiguity reflects the well-known limits of expression or knowledge.

Kisor, 139 S.Ct. at 2410.

>The subject matter of a rule "may be so specialized and varying in nature as to be impossible"—or at any rate, impracticable—to capture in its every detail. Or a "problem[ ] may arise" that the agency, when drafting the rule, "could not [have] reasonably foresee[n]." Whichever the case, the result is to create real uncertainties about a regulation's meaning.

Id. (citations omitted).

>In each case, interpreting the regulation involves a choice between (or among) more than one reasonable reading. To apply the rule to some unanticipated or unresolved situation, the court must make a judgment call. How should it do so?

Id. at 2411.

>In answering that question, we have often thought that a court should defer to the agency's construction of its own regulation. For the last 20 or so years, we have referred to that doctrine as Auer deference, and applied it often.

Id.

>We have explained *Auer* deference (as we now call it) as rooted in a presumption about congressional intent—a presumption that Congress would generally want the agency to play the primary role in resolving regulatory ambiguities. *See Martin v. Occupational Safety and Health Review Comm'n, 499 U.S. 144, 151–153 (1991)*.

Id. at 2412.

> Congress, we have pointed out, routinely delegates to agencies the power to implement statutes by issuing rules. In doing so, Congress knows (how could it not?) that regulations will sometimes contain ambiguities. But Congress almost never explicitly assigns responsibility to deal with that problem, either to agencies or to courts. Hence the need to presume, one way or the other, what Congress would want. And as between those two choices, agencies have gotten the nod.

Id. (citations omitted).

> We have adopted the presumption—though it is always rebuttable—that "the power authoritatively to interpret its own regulations is a component of the agency's delegated lawmaking powers." Or otherwise said, we have thought that when granting rulemaking power to agencies, Congress usually intends to give them, too, considerable latitude to interpret the ambiguous rules they issue.

Id. (citation omitted).

> In part, that is because the agency that promulgated a rule is in the "better position [to] reconstruct" its original meaning. Consider that if you don't know what some text (say, a memo or an e-mail) means, you would probably want to ask the person who wrote it. And for the same reasons, we have thought, Congress would too (though the person is here a collective actor). The agency that "wrote the regulation" will often have direct insight into what that rule was intended to mean. The drafters will know what it was supposed to include or exclude or how it was supposed to apply to some problem.

Id. (citation omitted).

> In still greater measure, the presumption that Congress intended Auer deference stems from the awareness that resolving genuine regulatory ambiguities often "entail[s] the exercise of judgment grounded in policy concerns."

Id. at 2413.

> Agencies (unlike courts) have "unique expertise," often of a scientific or technical nature, relevant to applying a regulation "to complex or changing circumstances." Agencies (unlike courts) can conduct factual investigations, can consult with affected parties, can consider how their experts have handled similar issues over the long course of administering a regulatory program. And agencies (again unlike courts) have political accountability, because they are subject to the supervision of the President, who in turn answers to the public.

Id. at 2413 (citations omitted).

> And so too, when new issues demanding new policy calls come up within that scheme, Congress presumably wants the same agency, rather than any court, to take the laboring oar.

Id.

> Finally, the presumption we use reflects the well-known benefits of uniformity in interpreting genuinely ambiguous rules. We have noted Congress's frequent "preference for resolving interpretive issues by uniform administrative decision, rather than piecemeal by litigation." That preference may be strongest when the interpretive issue arises in the context of a "complex and highly technical regulatory program." After all, judges are most likely to come to divergent conclusions when they are least likely to know what they are doing. . . . But the uniformity justification retains some weight even for more accessible rules, because their language too may give rise to more than one eminently reasonable reading.

Id. at 2413-14 (citations omitted).

> When it applies, *Auer* deference gives an agency significant leeway to say what its own rules mean. In so doing, the doctrine enables the agency to fill out the regulatory scheme Congress has placed under its supervision.

Id. at 2418.