UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CIN-Q AUTOMOBILES, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> BUCCANEERS LIMITED PARTNERSHIP and JOHN DOES 1-10, <br><br> Defendants, <br><br> TECHNOLOGY TRAINING ASSOCIATES, INC., et al., <br><br> Intervenors. | Case No. 8:13-cv-01592-AEP <br><br> Magistrate Judge <br> Anthony E. Porcelli |

## BTL'S MOTION TO SUPPLEMENT THE RECORD

Defendant Buccaneers Team LLC ("BTL") respectfully moves to supplement the record in connection with BTL's pending motion to dismiss the class claim for lack of Article III standing and to decertify the Settlement Class.[1] See BTL's Mot. to Dismiss & Decertify (Dkt. 492). In support of this motion, BTL states as follows:

### I. INTRODUCTION

1. On May 17, 2024 and <u>after</u> the filing by BTL of the last two submissions on its pending motion to dismiss and decertify, the Wanca firm filed a petition for a writ of certiorari arising out of <u>True Health Chiropractic v. McKesson Corporation</u>, Case No. 4:13-cv-02219 (N.D. Cal.). That petition, in turn, addresses issues that are now being considered by this Court and sheds further light on a

---

[1] Capitalized terms have the meaning ascribed to them in the Settlement Agreement. See Settlement Agt. (Dkt. 324-1). In addition, all emphasis is supplied, and all internal citations, quotations and footnotes are omitted.

number of those issues. See disc. infra at ¶ 8. Moreover, recent actions by the Supreme Court suggest that it is likely the Wanca firm's petition will be granted, in which case further clarification on a number of issues should be forthcoming.

## II. THE EARLIER DECISIONS

2. The decisions of the district court and the Ninth Circuit in True Health were featured in the briefing on BTL's pending motion. See BTL's Mot. to Dismiss & Decertify (Dkt. 492) at 16 n.16, 18 n.19; BTL's Submission (Dkt. 532) at 12, 15, 17, 18, 20, 21, 23, 25; BTL's Response to Pls.' March 21, 2024 Submission (Dkt. 542) at 6-7; BTL's Response to Intervenors' March 21, 2024 Submission (Dkt. 543) at 6.

### A. The District Court's Decisions

3. After the issuance of the FCC's decision in Amerifactors, a motion was filed with the district court in True Health to decertify the class that had been certified earlier, the argument for decertification being that "a fact-intensive inquiry on an individual basis" would be required to "determine which members of the class received a fax on a telephone facsimile machine as opposed to via an online fax service." See True Health v. McKesson, 2021 WL 4461585, *2 (N.D. Cal. Sept. 29, 2021). At the urging, however, of the plaintiffs in True Health and their counsel (i.e., the Wanca firm), the district court agreed to allow the Wanca firm to undertake a "subpoena process" which they "represented would differentiate, on a class-wide basis, which class members received a fax on a stand-alone fax machine as opposed to via an online fax service." Id.[2]

---

[2] In response to the initial motion to decertify, the district court in True Health did modify the class definition of the previously-certified class, creating two subclasses: (a) a "Stand-Alone Fax Machine Class;" and (b) an "Online Fax Services Class." See True Health, 2021 WL 4461585, *2.

2

4. The efforts of the Wanca firm to differentiate between stand-alone fax machines and subscribers to online fax services ultimately proved to be unsuccessful, and as a result, the district court decertified "the Stand-Alone Fax Machine Class," concluding based on Amerifactors that "how the fax was received is a threshold requirement for TCPA liability" and that "[t]here can be no TCPA liability at all if the fax was received via an online fax service," with the result that "individual inquiries" would be required for each class member such that the predominance and superiority factors of Rule 23 were not satisfied. See True Health v. McKesson, 2021 WL 4818945, *3 (N.D. Cal. Oct. 15, 2021).

### B. The Ninth Circuit's Decision And The Request By The Wanca Firm For Rehearing En Banc

5. The Ninth Circuit affirmed the district court in True Health in all respects. See True Health v. McKesson, 2023 WL 7015279 (9th Cir. Oct. 25, 2023). In so doing, the Ninth Circuit rejected the same "finality" argument Class Counsel are making before this Court, concluding that the application for review filed by Mr. Hara did not in any way alter the fact that Amerifactors became effective upon issuance:

> That there is a pending application for review of *Amerifactors* by the full Commission does not change this analysis. Orders issued on delegated authority are "effective upon release." *47 C.F.R. § 1.102(b)(1).* Unless the full Commission issues a stay pending review, *Amerifactors* remains in effect. *See id. §§ 1.102(b)(2), 1.115(h)(2).*

Id. *2 n.1.[3]

---

[3] The district court in True Health had reached the same conclusion with respect to the application for review filed vis-à-vis Amerifactors. See True Health v. McKesson, 2020 WL 7664484, *7 (N.D. Cal. Dec. 24, 2020).

6. Following issuance of the panel opinion in True Health, the Wanca firm sought rehearing en banc, and that petition was noted in BTL's February 20, 2024 submission (Dkt. 532) as well as its April 26, 2024 submission (Dkt. 542). See BTL's Submission (Dkt. 532) at 25 n.28; BTL's Response to Plaintiffs (Dkt. 542) at 6 n.7 & Ex. 4. On December 20, 2023, however, the petition for rehearing en banc was denied by the Ninth Circuit. See True Health v. McKesson, 2023 U.S. App. LEXIS 33783 (9th Cir. Dec. 20, 2023).

### C. The Petition For Certiorari

7. On May 17, 2024, the Wanca firm filed a petition for certiorari with the Supreme Court. See Petition for a Writ of Certiorari, McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., No. 23-1226 (S.Ct.). Attached to this motion is a copy of that petition, with the pertinent passages highlighted for the Court's convenience. See Ex. 4 hereto at 1-14, 17-18, 20-24.

8. A number of the statements made in the petition directly bear upon issues the Court is now considering, including the following:[4]

> Five years ago, this Court granted certiorari to decide whether the Hobbs Act required a district court in a private enforcement lawsuit "to accept the FCC's legal interpretation of the Telephone Consumer Protection Act." *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.* 139 S. Ct. 2051, 2055 (2019).
>
> * * *
>
> A majority of the Court, however, "found it difficult to answer this question" because of "two preliminary issues" that had been raised by the petitioner but had not been addressed by the court of appeals: (1) whether the FCC order at issue was an "interpretive rule" such that it might not be subject to the Hobbs Act, and (2) whether the Hobbs Act failed to afford the petitioner "a 'prior' and 'adequate' opportunity for judicial review" of the order such that the order might be subject to review in an enforcement suit under section 703 of the Administrative Procedure Act. [*PDR Network*] at 2055-56.

---

[4] As Judge Gilliam recognized, the law in the Ninth Circuit parallels the law in the Eleventh Circuit vis-à-vis the Hobbs Act. See True Health v. McKesson, 2020 WL 7664484, *7 (N.D. Cal. 2020).

4

\* \* \*

The district court also held that it did not matter that an application for review of the *Amerifactors* order was pending before the FCC. According to both FCC regulations and case law, reconsideration petitions do "not affect the order's finality as it applies to [a defendant's] potential liability under the TCPA." [Pet. App. 37a-38a / True Health, 2020 WL 7664484, *7] (citing 47 C.F.R. § 1.102(b)(1); *Comm. To Save WEAM v. FCC*, 808 F.2d 113, 119 (D.C. Cir. 1986)).

\* \* \*

The Fourth Circuit was the first to weigh in. On remand in *PDR Network*, the court focused on the first "preliminary issue[]" flagged in this Court's opinion and held that the FCC rule at issue in the case was "interpretive," rather than "legislative." *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 982 F.3d 258, 262–63 (4th Cir. 2020). And because interpretive rules "do not have the force and effect of law and are not accorded that weight in the adjudicatory process," the Fourth Circuit held that they therefore fall outside the scope of the Hobbs Act and cannot bind district courts in private enforcement proceedings. *Id.* at 264 (holding that, because the "FCC Rule is interpretive," the "district court wasn't bound by it").

\* \* \*

Several other circuits have followed suit. For example, after recognizing that this Court in *PDR Network* "suggested that the FCC's interpretive rulings may not bind courts when they construe the TCPA," the Third Circuit refused to treat such rulings as binding authority. *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 873 n.7 (3d Cir. 2022).

\* \* \*

The Second and Eighth Circuits have done the same. *See Gorss Motels, Inc. v. Lands' End, Inc.*, 997 F.3d 470, 477 n.4 (2d Cir. 2021) (finding the FCC's interpretation "persuasive" only after independently interpreting the statutory text); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 960 n.8 (8th Cir. 2019) ("We agree with the FCC not because we believe we are bound to do so but because we find this portion of their interpretation of the statute to be persuasive.").

\* \* \*

The harmful consequences of a rule depriving district courts of the ability to even consider an argument that an agency's interpretation of a statute is wrong is reason enough to grant review.

\* \* \*

As Justice Kavanaugh's concurrence in PDR Network makes clear, the Ninth Circuit's interpretation of the Hobbs Act is wrong. The Act's grant of exclusive jurisdiction means that a district court may not entertain a petition for review of an FCC order subject to the Act. But it does not mandate that a district court must follow the FCC's interpretation of the TCPA every time a

5

> case within its jurisdiction presents a question of federal law that the agency has addressed in an order. Such a rule ignores the plain meaning of the statutory text, leads to absurd results, and raises serious constitutional concerns.
>
> \* \* \*
>
> And even if the Hobbs Act mandated this result for those legislative rules that have the force and effect of law, the Ninth Circuit is wrong that the Act applies as well even to an agency's interpretive guidance documents.
>
> \* \* \*
>
> <u>Of course, in the appropriate circumstance, a court must sometimes defer to agency interpretations of statutes, but the Ninth Circuit's Hobbs-Act interpretation transforms deference into something else entirely—"abdication" of the judicial power to determine what law governs a case.</u> [*PDR Network*, 139 S.Ct.] at 2066 (Kavanaugh, J., concurring) (noting that, under such an interpretation, a district court "would have to afford the agency not mere *Skidmore* deference or *Chevron* deference, but absolute deference").
>
> \* \* \*
>
> <u>Finally, even if the Ninth Circuit is correct that the Hobbs Act's "exclusive jurisdiction" language precludes as-applied judicial review of an agency's legislative rules in an enforcement proceeding, it cannot be the case that the same is true for an agency's interpretive guidance.</u>
>
> \* \* \*
>
> But <u>interpretive rules are those that an agency issues without following the formal notice-and-comment process</u>—including those that are "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." [*Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96-97 (2015)].

Petition for a Writ of Certiorari, Ex. 1 hereto, at 1, 10, 14, 18, 20-21, 23, 24 (emphasis supplied).

9. Notably, Defendants-Respondents McKesson Corporation and McKesson Technologies, Inc. (collectively, "McKesson") waived their right to respond to the petition for certiorari. See Waiver, Ex. 2 hereto. The Supreme Court, however, nevertheless subsequently directed McKesson to file a response to the petition by July 5, 2024. See June 5, 2024 Docket Text Entry, Ex. 3 hereto.

6

10. Our understanding is that the fact the Supreme Court directed McKesson to file a response is an indication there is a good likelihood the petition of the Wanca firm will be granted, in which event these issues should be further clarified by the Supreme Court. See, e.g., K. Robinson and C. Brady, 'Call for Response' Signals SCOTUS Interest, Bloomberg Law (July 26, 2018, 6:06 AM), Ex. 4 hereto.

WHEREFORE, BTL respectfully requests leave to supplement the record on its pending motion to dismiss the class claim and decertify the Settlement Class (Dkt. 492). BTL further requests whatever other relief the Court deems appropriate.

Date: June 14, 2024

Respectfully submitted,

/s/ Mark S. Mester
Mark S. Mester, One of the Attorneys for Defendant Buccaneers Team LLC

Mark S. Mester
  (admitted *pro hac vice*)
Robert C. Collins III
  (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
E-mail: mark.mester@lw.com
       robert.collins@lw.com

Joseph H. Varner, III
  (Bar No. 394904)
HOLLAND & KNIGHT LLP
100 North Tampa Street, Suite 4100
Tampa, Florida 33602-3644
Telephone: (813) 227-8500
Facsimile: (813) 229-0134
Email: joe.varner@hklaw.com

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned hereby certifies that counsel for BTL conferred by email with Class Counsel and counsel for Intervenors with respect to the instant motion.  Counsel for Intervenors do not oppose the relief requested herein.  Class Counsel have, in turn, indicated that "Cin-Q Plaintiffs oppose this motion. Cin-Q Plaintiffs would not have opposed a two-page notice of supplemental authority complying with L.R. 3.01(i) advising the Court of the existence of the McKesson petition, to the extent it is of any limited relevance in this case."  See June 14, 2024 Email from G. Hara.

Date:  June 14, 2024

/s/ Mark S. Mester
Mark S. Mester, One of the Attorneys for Defendant Buccaneers Team LLC

Mark S. Mester
  (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  mark.mester@lw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which served all relevant parties.

Date:  June 14, 2024

/s/ Mark S. Mester
Mark S. Mester, One of the Attorneys for Defendant Buccaneers Team LLC

Mark S. Mester
   (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  mark.mester@lw.com