# EXHIBIT 1

No. _____

# In the Supreme Court of the United States

McLaughlin Chiropractic Associates, Inc.,
individually and as representative of a class of similarly
situated persons,

*Petitioner,*

v.

McKesson Corporation and McKesson
Technologies, Inc.,

*Respondents.*

On Petition for a Writ of Certiorari to the United States
Court of Appeals for the Ninth Circuit

## PETITION FOR A WRIT OF CERTIORARI

| | |
|---|---|
| Glenn L. Hara | Matthew W.H. Wessler |
| Anderson + Wanca | *Counsel of Record* |
| 3701 Algonquin Road | Jonathan E. Taylor |
| Suite 500 | Gupta Wessler LLP |
| Rolling Meadows, IL | 2001 K Street, NW |
| 60008 | Suite 850 North |
| (847) 368-1500 | Washington, DC 20006 |
| | (202) 888-1741 |
| | *matt@guptawessler.com* |

May 17, 2024                    *Counsel for Petitioner*

- i -

## QUESTION PRESENTED

Whether the Hobbs Act required the district court in this case to accept the FCC's legal interpretation of the Telephone Consumer Protection Act.

- ii -

**LIST OF PARTIES TO THE PROCEEDINGS**

Petitioner McLaughlin Chiropractic Associates, Inc. was a plaintiff in the district court and an appellee/cross-appellant in the court of appeals.

Respondents McKesson Corporation and McKesson Technologies, Inc. were the defendants in the district court and the appellants/cross-appellees in the court of appeals.

True Health Chiropractic, Inc. was a plaintiff in the district court and an appellee in the court of appeals.

**RELATED PROCEEDINGS**

This case arises out of the following proceedings:

- *True Health Chiropractic, Inc. v. McKesson Corporation*, No. 4:13-cv-02219-HSG (N.D. Cal.)

- *True Health Chiropractic, Inc. v. McKesson Corporation*, No. 22-15732 (9th Cir.) (judgment entered October 25, 2023)

- *True Health Chiropractic, Inc. v. McKesson Corporation*, No. 22-15710 (9th Cir.) (judgment entered October 25, 2023)

There are no related proceedings within the meaning of this Court's Rule 14.1(b)(iii).

- iii -

## TABLE OF CONTENTS

Question presented ............................................................ i

List of parties to the proceedings...................................... ii

Related proceedings........................................................... ii

Table of authorities ..............................................................vi

Introduction ..........................................................................1

Opinions below .....................................................................4

Jurisdiction............................................................................4

Constitutional and statutory provisions involved..............4

Statement ..............................................................................5

      I.     Factual background ...........................................5

               A.  The Telephone Consumer
                     Protection Act prohibits the
                     sending of unsolicited
                     advertisements via fax. ................................5

               B.  McKesson sends unsolicited
                     advertisements via fax in violation
                     of the TCPA. .................................................7

      II.    Procedural background ......................................8

Reasons for granting the petition .....................................11

- iv -

I.    The question the Court granted certiorari to decide in *PDR Network* remains certworthy............................................12

II.   The Court has already recognized that this issue is worthy of review, and this case presents an ideal vehicle. ...............................................16

    A.  The question presented is important.....................................................16

    B.  Neither of the two "preliminary issues" identified in *PDR Network* pose a barrier to answering the question presented here. ...........................18

III.  The Ninth Circuit's rule that, under the Hobbs Act, a district court in a private enforcement proceeding is bound by an FCC interpretation of the TCPA is wrong............................................20

Conclusion ..........................................................24

Appendix A   Order of the United States Court of Appeals for the Ninth Circuit Denying Petition for Rehearing and Rehearing En Banc (December 20, 2023)..........................App. 1a

Appendix B   Memorandum of the United States Court of Appeals for the Ninth Circuit (October 25, 2023) ................App. 3a

- v -

Appendix C    Order of the United States District
Court for the Northern District of
California Decertifying Class
(October 15, 2021).............................App. 12a

Appendix D    Order of the United States District
Court for the Northern District of
California Entering Summary
Judgment Against the Online Fax
Services Class
(August 13, 2021).............................App. 21a

Appendix E    Order of the United States District
Court for the Northern District of
California Denying Motion to
Decertify Class
(December 24, 2020).........................App. 24a

Appendix F    Declaratory Ruling of the Federal
Communications Commission
(December 9, 2019)..........................App. 46a

- vi -

# TABLE OF AUTHORITIES

### Cases

*Ambassador Animal Hospital, Ltd. v. Elanco
    Animal Health Inc.,*
    74 F.4th 829 (7th Cir. 2023) ...........................................15

*Carlton & Harris Chiropractic, Inc. v. PDR
    Network, LLC,*
    883 F.3d 459 (4th Cir. 2018) .........................................12

*Carlton & Harris Chiropractic, Inc. v. PDR
    Network, LLC,*
    982 F.3d 258 (4th Cir. 2020) ..................................14, 24

*Comcast of Oregon II, Inc. v. City of Beaverton,*
    609 F. Supp. 3d 1136 (D. Or. 2022) ........................15, 17

*Committee To Save WEAM v. FCC,*
    808 F.2d 113 (D.C. Cir. 1986) ......................................10

*Golan v. FreeEats.com, Inc.,*
    930 F.3d 950 (8th Cir. 2019) .........................................14

*Gorss Motels, Inc. v. Lands' End, Inc.,*
    997 F.3d 470 (2d Cir. 2021)...........................................14

*Gorss Motels, Inc. v. Safemark Systems, LP,*
    931 F.3d 1094 (11th Cir. 2019) .............12, 16, 17, 18, 23

*Imhoff Investment, LLC v. Alfoccino, Inc.,*
    792 F.3d 627 (6th Cir. 2015) .......................................5, 6

*Ira Holtzman, C.P.A. v. Turza,*
    728 F.3d 682 (7th Cir. 2013) .........................................13

- vii -

*Lyngaas v. Curaden AG,*
   992 F.3d 412 (6th Cir. 2021) ...........................................7

*Mais v. Gulf Coast Collection Bureau,*
   768 F.3d 1110 (11th Cir. 2014) ....................................13

*Mauthe v. National Imaging Associates, Inc.,*
   767 F. App'x 246 (3d Cir. 2019)...................................17

*Meyer v. Portfolio Recovery Associates, LLC,*
   707 F.3d 1036 (9th Cir. 2012) ........................................7

*Panzarella v. Navient Solutions, Inc.,*
   37 F.4th 867 (3d Cir. 2022) ..........................................14

*PDR Network, LLC v. Carlton & Harris
   Chiropractic, Inc.,*
   139 S. Ct. 2051 (2019) ..........................1, 2, 20, 21, 22, 23

*Perez v. Mortgage Bankers Association,*
   575 U.S. 92 (2015) ..........................................................24

*Physicians Healthsource, Inc. v. Boehringer
   Ingelheim Pharmaceuticals, Inc.,*
   847 F.3d 92 (2d Cir. 2017)..............................................13

*Robert W. Mauthe MD PC v. Millenium Health
   LLC,*
   58 F.4th 93 (3d Cir. 2023) ..............................................17

*Sandusky Wellness Center, LLC v. Medco
   Health Solutions, Inc.,*
   788 F.3d 218 (6th Cir. 2015) .........................................13

*Tessu v. AdaptHealth, LLC,*
   2023 WL 5337121 (D. Md. Aug, 17, 2023)...................16

- viii -

*True Health Chiropractic, Inc. v. McKesson Corp.*,
  2023 WL 7015279 (9th Cir. Oct 25, 2023)....................11

*True Health Chiropractic, Inc. v. McKesson Corp.*,
  896 F.3d 923 (9th Cir. 2018) ...........................................8

*U.S. West Communications, Inc. v. Hamilton*,
  224 F.3d 1049 (9th Cir. 2000) ...........................10, 15, 19

*Weister v. Vantage Point AI, LLC*,
  2022 WL 7026495 (M.D. Fla. Oct. 12, 2022) ..............17

*Wilson v. A.H. Belo Cop.*,
  87 F.3d 393 (9th Cir. 1996) ...........................................13

**Statutes**

28 U.S.C. § 2342. ..............................................................4, 21

33 U.S.C. § 1369 .....................................................................22

47 U.S.C. § 227 ....................................................................5, 6

**Rules**

47 C.F.R. § 1.102.....................................................................10

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,
  68 FR 44144-01 (FCC July 25, 2003) ........................6, 7

- 1 -

## INTRODUCTION

Five years ago, this Court granted certiorari to decide whether the Hobbs Act required a district court in a private enforcement lawsuit "to accept the FCC's legal interpretation of the Telephone Consumer Protection Act." *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.* 139 S. Ct. 2051, 2055 (2019). A majority of the Court, however, "found it difficult to answer this question" because of "two preliminary issues" that had been raised by the petitioner but had not been addressed by the court of appeals: (1) whether the FCC order at issue was an "interpretive rule" such that it might not be subject to the Hobbs Act, and (2) whether the Hobbs Act failed to afford the petitioner "a 'prior' and 'adequate' opportunity for judicial review" of the order such that the order might be subject to review in an enforcement suit under section 703 of the Administrative Procedure Act. *Id.* at 2055–56. Depending on how these questions might be answered, it was at least possible that the FCC's interpretation could be challenged in the district court without respect to the question presented. As a result, the Court remanded so the lower court could consider these two issues in the first instance and did not answer the question presented.

Four members of the Court, by contrast, would have reached "the question that we granted certiorari to decide." *Id.* at 2058 (Kavanaugh, J., concurring). Speaking on their behalf, Justice Kavanaugh wrote separately to explain that the Hobbs Act "does not bar" a party in an enforcement suit "from arguing that the agency's interpretation of the statute is wrong." *Id.* That conclusion flowed, he observed, from a "straightforward" analysis of the text of the Hobbs Act. Some statutes—like the Clean Water Act and Clean Air Act—"expressly preclude

- 2 -

judicial review in subsequent enforcement actions" and therefore bar parties in those actions from arguing that the agency misinterpreted the statute. *Id.* at 2059. But unlike those statutes, the Hobbs Act is "silent about review in subsequent enforcement actions." *Id.* at 2060. So the "general rule of administrative law" kicks in and allows a party to argue, and a district court to consider, that the FCC's interpretation of a statute is wrong. In other words, the court is "not bound by the agency's interpretation"—a reading of the statute that is reinforced by the "serious constitutional issue[s]" raised by a party and a district court in an "as-applied enforcement action" from entertaining arguments "about the reach and authority of agency rules." *Id.* at 2062. Justice Kavanaugh noted that his analysis of the Hobbs Act's proper interpretation "remains available to other courts in the future." *Id.* at 2058.

This case presents an ideal vehicle to resolve the question presented, but left undecided, in *PDR Network*. Like *PDR Network*, this case involves an enforcement action brought under the TCPA in a federal district court. And like *PDR Network*, a party to the action argued that an FCC order incorrectly interpreted the TCPA. Both courts below held that such an argument was foreclosed by the Hobbs Act. The district court openly "agree[d] with … Justice Kavanaugh's concurrence in *PDR Network*," Pet. App. 39a n.7, but "Ninth Circuit precedent" required it to "treat [the FCC order] as authoritative" because this Court "did not resolve the central issue presented," Pet. App. 36a. The Ninth Circuit then refused to revisit its position on appeal. Without even citing *PDR Network*, it held that the district court was "bound by" the FCC's order under the Hobbs Act. Pet. App. 7a. It then denied

en banc review. The case thus cleanly presents the same question as in *PDR Network*.

Unlike in *PDR Network*, however, neither of the two preliminary issues that thwarted resolution of the central question pose a barrier to this Court's review. *First*, as the district court recognized, it "does not matter" whether the FCC's order is properly characterized as an "interpretive rule" or a "legislative rule[]" given Ninth Circuit precedent on this question. Pet. App. 37a–38a & n.5. While other circuits have held that interpretive rules fall outside the Hobbs Act, the Ninth Circuit has held the opposite. Under its caselaw, both interpretive rules *and* legislative rules are subject to the Hobbs Act. So unlike in *PDR Network*, the court of appeals here has already spoken on this preliminary issue.

*Second*, the other preliminary issue poses no barrier either. In *PDR Network*, the petitioner argued that it did not have an "adequate" opportunity under the Hobbs Act to challenge the FCC's order because the order was issued many years before the enforcement action was filed. Were that correct, as this Court noted, section 703 of the APA might permit a later challenge in an enforcement action. But that question is not present here. The petitioner did not argue that it lacked a prior or adequate opportunity to seek review of the FCC's order under the Hobbs Act. Instead, the only question that was before the court of appeals—and the one that is squarely presented by this petition—is whether the Hobbs Act required the district court to accept the FCC's interpretation of the TCPA.

With no obstacle to review, this Court should take this case to decide the question that it intended to decide in *PDR Network*. Properly construed, the Hobbs Act does not require district courts to give FCC orders "absolute

- 4 -

deference" in garden-variety enforcement actions. *PDR Network*, 139 S. Ct. at 2066 (Kavanaugh, J., concurring). The Ninth Circuit's contrary view should be reversed.

## OPINIONS BELOW

The Ninth Circuit's unreported decision is available at 2023 WL 7015279 and reproduced at Pet. App. 1a. The district court's decision addressing the impact of the FCC's order is unreported, available at 2020 WL 7664484, and reproduced at Pet. App. 24a. Its decision granting summary judgment to the defendant is unreported, available at 2020 WL 8515133, and reproduced at Pet. App. 21a. Its decision decertifying the class on the basis of the FCC's order is unreported, available at 2021 WL 4818945, and reproduced at Pet. App. 12a.

## JURISDICTION

The court of appeals entered judgment on October 25, 2023 and denied rehearing on December 20, 2023. On March 13, 2024, this Court extended the time within which to file a petition for a writ of certiorari to May 17, 2024—149 days from the date rehearing was denied. This Court's jurisdiction is invoked under 28 U.S.C. § 1254(1).

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

The Hobbs Act, 28 U.S.C. § 2342(1), provides in relevant part:

> The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—

- 5 -

**(1)** all final orders of the Federal Communication Commission made reviewable by section 402(a) of title 47.

The Telephone Consumer Protection Act of 1991 (TCPA), Pub. L. No. 102-243, 105 Stat. 2394, as amended by the Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, 119 Stat. 359, is codified at 47 U.S.C. § 227(a)(3) and provides in relevant part:

The term "telephone facsimile machine" means equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper.

## STATEMENT

### I.  Factual background

#### A.  The Telephone Consumer Protection Act prohibits the sending of unsolicited advertisements via fax.

Congress passed the TCPA in response to the public's "outrage[] over the proliferation of intrusive, nuisance calls." 47 U.S.C. § 227 note.[1] As amended by the Junk Fax Prevention Act, Pub. L. No. 109-21, 119 Stat. 359, the law targets "a number of problems associated with junk faxes." *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015). Junk faxes often force the recipient, frequently small businesses, to incur significant costs in

---

[1] Unless otherwise specified, all internal quotation marks, emphases, alterations, and citations are omitted from quotations throughout.

- 6 -

the form of "paper and ink" and "tied up" fax lines, *id.*, while also "interrupt[ing] the recipient's privacy" and placing unnecessary stress on the "recipient's fax machines." ER415.

For these reasons, Congress made it unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). And it broadly defined the term "telephone facsimile machine" to include any "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." *Id.* § 227(a)(3).

In the years since the TCPA was amended to prohibit using fax machines to send unsolicited advertisements, intrepid marketers have shifted much of their advertising campaigns online. But as both the FCC and courts have long explained, the TCPA's bar on unsolicited faxes extends to cover faxes sent from and to "computerized" fax machines, which qualify as a "telephone facsimile machine" under the statute. *See In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 68 FR 44144-01, ¶ 143 (FCC July 25, 2003).

That is because the TCPA "broadly applies to any equipment that has the *capacity* to send or receive text or images," which "ensure[s] that the prohibition on unsolicited faxing" cannot be easily circumvented as technology changes. *Id.* at ¶ 144 (emphasis added) (noting that "Congress could not have intended to allow easy circumvention of its prohibition when faxes are . . . transmitted to personal computers and fax servers, rather

- 7 -

than traditional stand-alone facsimile machines"); *see also id.* ¶ 145 (noting that unsolicited faxes sent to a recipient's "inbox" still risk "shift[ing] the advertising cost of paper and toner to the recipient" and "may also tie up lines and printers so that the recipients' requested faxes are not timely received"); *see also Lyngaas v. Curaden AG*, 992 F.3d 412, 426 (6th Cir. 2021) (holding that the TCPA's definition of "telephone facsimile machine" "encompasses more than traditional fax machines" and includes any "equipment that has the *capacity* to transcribe text or images from or onto paper—as long as the electronic signal is transmitted or received over a telephone line"); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (similar for "automatic telephone dialing system").

### B. McKesson sends unsolicited advertisements via fax in violation of the TCPA.

McKesson Corporation is a publicly traded company with hundreds of subsidiaries or affiliated companies and businesses that range from the sale of pharmaceuticals to behavioral coaching and information technology. ER4. One of its business units, Physician Practice Solutions, regularly engages in promotional fax campaigns designed to "market its products and services" to physician practices throughout the country. ER8. To carry out this marketing, McKesson "employed a fax broadcasting company" to transmit faxes. ER6.

McLaughlin Chiropractic Associates is one of the physician practices targeted by McKesson. ER4. In 2009 and 2010, it, along with many other small medical practices, received multiple unsolicited advertisements via fax from McKesson. ER417. These advertisements—some of which were received on stand-alone fax machines

- 8 -

and some of which were received through online fax services—marketed certain software products that McKesson sold. ER5.

McKesson was not unaware that engaging in this type of advertising campaign risked violating the TCPA. A year earlier, in 2008, it was warned by the FCC that it had "sent one or more unsolicited advertisements" via fax "in violation of the TCPA." ER4–5. The FCC issued McKesson an "official **CITATION**" and notified the company that, in the future, it would bear the burden to show that it had complied with the TCPA in the event of any "complaint or dispute." ER5.

## II. Procedural background

**A.** Having received the unlawful faxes, McLaughlin Chiropractic and another practice, True Health Chiropractic, Inc., sued McKesson on behalf of themselves and a proposed class for sending unsolicited fax advertisements in violation of the TCPA, 47 U.S.C. § 227(b)(1)(C). ER450.

After several years of litigation and an appeal to the Ninth Circuit from the denial of class certification, *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923 (9th Cir. 2018), the district court eventually certified a single class of all persons or entities whose fax numbers had been previously identified and "who received faxes from McKesson from September 2, 2009, to May 11, 2010" offering various promotional products and services without being notified of their right to opt out of future faxes. ER71. It appointed McLaughlin Chiropractic—the petitioner here—to represent the class. *Id.*

**B.** Shortly after the class was certified—six years into the litigation—the FCC issued an order interpreting the

- 9 -

text of the TCPA provision at issue here. *See* Pet. App. 46a. In this so-called *Amerifactors* order, the FCC construed the TCPA to exclude an "online fax service" from the definition of "telephone facsimile machine." Pet. App. 48a. In the FCC's view, an "online fax service that effectively receives faxes sent as email over the Internet" is "not itself equipment which has the capacity to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper" and so "falls outside the scope of the statutory prohibition." *Id.* The FCC further reasoned that, because an online fax service "cannot itself print a fax," it did not implicate the specific harms Congress addressed in the TCPA, namely "advertiser cost-shifting." Pet. App. 52a–53a. An application for review of the order was filed before the FCC in early 2020 by other entities. SER121. Four years later, the FCC has yet to act on it.

**C.** The FCC's intervening order forced the district court to address what impact, if any, it had on this case. Although the court "agree[d] with the reasoning of Justice Kavanaugh's concurrence in *PDR*," it recognized that "these questions are obviously for another day, and for a higher court than this one." Pet. App. 39a n.7. That was because, "under Ninth Circuit precedent," the court was required to "treat *Amerifactors* as authoritative." Pet. App. 36a.

In reaching that conclusion, the district court rejected the argument that the *Amerifactors* order was an "interpretive rule" that falls outside the scope of the Hobbs Act. Pet. App. 37a–38a. "Even assuming (without deciding)" that this "characterization of *Amerifactors*" was correct, the court wrote, it "does not matter." *Id.* Under controlling Ninth Circuit caselaw, so long as the

- 10 -

relevant FCC order is "final," the Hobbs Act applies regardless of whether the order is characterized as "legislative" or "interpretive." *Id.* (noting that the Ninth Circuit held, in *U.S. W. Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1055 (9th Cir. 2000), that the Hobbs Act "contains no exception for 'interpretive' rules, and case law does not create one"). As a result, according to the district court, the *Amerifactors* order was "a final, binding order for purposes of the Hobbs Act." *Id.*

The district court also held that it did not matter that an application for review of the *Amerifactors* order was pending before the FCC. According to both FCC regulations and case law, reconsideration petitions do "not affect the order's finality as it applies to [a defendant's] potential liability under the TCPA." *Id.* (citing 47 C.F.R. § 1.102(b)(1); *Comm. To Save WEAM v. FCC*, 808 F.2d 113, 119 (D.C. Cir. 1986)).

Ultimately, although the district court recognized the need for "critical guidance" on whether, in light of *PDR Network*, an FCC order like *Amerifactors* could bind federal district courts in enforcement proceedings, it observed that "*Amerifactors* changed the landscape for TCPA litigation," and "Ninth Circuit precedent" required courts to "follow the FCC's interpretation." Pet. App. 20a. That meant two things for this case: *First*, because the FCC's *Amerifactors* order was "determinative of the viability of this case," the court held that it was required to apply the order retroactively and to decertify the class on that basis. *Id. Second*, it also required the entry of summary judgment in favor of McKesson for those claims involving the receipt of faxes via an "online fax service." ER20–21.

- 11 -

**D.** The Ninth Circuit affirmed. Without citing or discussing *PDR Network*, it held that the district court "correctly found that that it was bound by the [FCC's] *Amerifactors* declaratory ruling, which determined that the TCPA does not apply to faxes received through an online fax service." Pet. App. 7a. That was so, in the Ninth Circuit's view, because the Hobbs Act's exclusive-jurisdiction provision—which "encompasses 'any proceeding to enjoin, set aside, annul, or suspend any order'" of the FCC—forecloses a district court in any enforcement action from even considering whether the agency's interpretation of the TCPA is wrong. Pet. App. 7a. The Ninth Circuit also confirmed that the FCC's *Amerifactors* decision was both an "order" of the FCC and "final." Pet. App. 7a–9a. And the Ninth Circuit refused to revisit its prior caselaw; despite the availability of Justice Kavanaugh's analysis in *PDR Network*, it denied without comment a petition for rehearing en banc. Pet. App. 2a.

## REASONS FOR GRANTING THE PETITION

As the district court in this case correctly recognized, whether the Hobbs Act requires federal courts to treat an agency's legal interpretation of a federal statute as "invariably binding" is a question that is in dire need of "critical guidance" from a "higher court." Pet. App. 20a, 39a n.7. Five years ago, this Court planned to do just that when it granted review in *PDR Network*. But two "preliminary issues" frustrated that plan, and the full Court never reached the question. Since then, the disagreement among the circuits over whether the Hobbs Act binds districts courts to FCC interpretations of the TCPA shows no sign of letting up, leading some judges to call for a definitive resolution in "the earliest appropriate

- 12 -

case." *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1106 (11th Cir. 2019) (Pryor, J., concurring).

This is that case. The question presented here is identical to the one this Court granted certiorari to decide in *PDR Network* but did not ultimately resolve. It was squarely raised and passed on below, with the district court even acknowledging that its resolution was "determinative of the viability of this case." Pet. App. 20. And, perhaps most importantly, neither of the two threshold issues this Court identified in *PDR Network* poses an obstacle to review. In the Ninth Circuit, even interpretive rules fall within the scope of the Hobbs Act, thus binding a district court, and the prior adequacy of Hobbs Act review is not at issue in this appeal. This Court should grant review to decide the question it did not reach in *PDR Network*.

## I.   The question the Court granted certiorari to decide in *PDR Network* remains certworthy.

The five years since this Court granted certiorari in *PDR Network* have done nothing but increase the need for review of the question presented.

**A.** At the time this Court granted review in *PDR Network*, the circuits were already split over whether the Hobbs Act requires district courts adjudicating cases within their ordinary jurisdiction to treat FCC orders that interpret the TCPA as binding precedent.

On one side, the Fourth Circuit, Ninth Circuit, and Eleventh Circuit all interpreted the Hobbs Act as "unambiguously depriv[ing]" the federal district courts of the authority to question FCC orders even in private enforce proceedings. *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 883 F.3d 459, 469 (4th Cir. 2018)

- 13 -

(stating that "the Hobbs Act requires a district court to follow FCC interpretations of the TCPA"); *see also Wilson v. A.H. Belo Cop.*, 87 F.3d 393, 400 (9th Cir. 1996) (holding that the Hobbs Act forecloses a district court from "disagree[ing]" with any FCC order in a private TCPA enforcement action); *Mais v. Gulf Coast Collection Bureau*, 768 F.3d 1110, 1120 (11th Cir. 2014) (ruling that a district court "exceed[s] its jurisdiction" if it decides that an FCC order is "inconsistent with the TCPA" "[r]egardless of which party invoke[s]" the order or if the challenge "arises in a dispute between private parties").

On the other side, the Second Circuit, Sixth Circuit, and Seventh Circuits all recognize that parties in a private enforcement action may challenge FCC interpretations of the TCPA. In these circuits, federal courts remain free to consider such challenges under the usual principles of statutory interpretation, affording appropriate respect to the agency's interpretation. *See Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharms., Inc.*, 847 F.3d 92, 95 (2d Cir. 2017) (determining whether an FCC rule "comports with the [TCPA]" before concluding what effect it should have in a private enforcement action); *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 223 (6th Cir. 2015) (recognizing a "circuit split" on "whether to defer" to the FCC's interpretation of the TCPA in a private enforcement action and choosing to "not defer to the agency's interpretation"); *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 688 (7th Cir. 2013) (rejecting an FCC interpretation of the TCPA in a private enforcement action).

That even split justified the Court's grant of certiorari of the question five years ago in *PDR Network*.

- 14 -

**B.** Since then, the disagreement among the circuits has only grown. Not only does the original split remain, but the circuits have now taken different views on whether the Hobbs Act extends even to FCC interpretative rules.

The Fourth Circuit was the first to weigh in. On remand in *PDR Network*, the court focused on the first "preliminary issue[]" flagged in this Court's opinion and held that the FCC rule at issue in the case was "interpretive," rather than "legislative." *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 982 F.3d 258, 262–63 (4th Cir. 2020). And because interpretive rules "do not have the force and effect of law and are not accorded that weight in the adjudicatory process," the Fourth Circuit held that they therefore fall outside the scope of the Hobbs Act and cannot bind district courts in private enforcement proceedings. *Id.* at 264 (holding that, because the "FCC Rule is interpretive," the "district court wasn't bound by it").

Several other circuits have followed suit. For example, after recognizing that this Court in *PDR Network* "suggested that the FCC's interpretive rulings may not bind courts when they construe the TCPA," the Third Circuit refused to treat such rulings as binding authority. *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 873 n.7 (3d Cir. 2022). The Second and Eighth Circuits have done the same. *See Gorss Motels, Inc. v. Lands' End, Inc.*, 997 F.3d 470, 477 n.4 (2d Cir. 2021) (finding the FCC's interpretation "persuasive" only after independently interpreting the statutory text); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 960 n.8 (8th Cir. 2019) ("We agree with the FCC not because we believe we are bound to do so but because we find this portion of their interpretation of the statute to be persuasive."). And the Seventh Circuit, for

- 15 -

its part, has held that it does not matter whether an FCC order "is interpretive guidance or a legislative rule" because, regardless, a court remains free to reject it when "it conflicts with the statutory text" of the TCPA. *Ambassador Animal Hosp., Ltd. v. Elanco Animal Health Inc.*, 74 F.4th 829, 832 (7th Cir. 2023).

But the Ninth Circuit has taken the opposite view. It has squarely rejected the argument that the Hobbs Act "does not apply" to FCC action that is "interpretive rather than [] legislative," *Hamilton*, 224 F.3d at 1055. "Even assuming that [an FCC order] is an interpretive rule," the court held, there is "no support for the proposition that it therefore falls outside the ambit of the Hobbs Act." *Id.* Instead, according to the Ninth Circuit, because the Hobbs Act "itself contains no exception for interpretive rules," it covers "both interpretive and legislative orders." *Id.*

The Ninth Circuit has adhered to that view ever since—even after *PDR Network*. In this very case, the Ninth Circuit applied its binding circuit precedent and determined that the district court "correctly found" that it was bound by an FCC interpretation even assuming it was interpretive. It then denied an en banc call to boot. Pet. App. 7a; *see also Comcast of Or. II, Inc. v. City of Beaverton*, 609 F. Supp. 3d 1136, 1150 (D. Or. 2022) (recognizing that, even after *PDR Network*, in the Ninth Circuit the Hobbs Act "applies to final agency orders regardless of whether they are interpretive or legislative").

- 16 -

## II. The Court has already recognized that this issue is worthy of review, and this case presents an ideal vehicle.

The Court's grant of certiorari in *PDR Network* demonstrates the importance of definitively resolving whether the Hobbs Act requires federal district courts in private enforcement actions to categorically accept the FCC's legal interpretations of the TCPA. But although two preliminary issues interfered with that effort in *PDR Network*, the question's importance has not subsided. The district court in this case recognized the need for "critical guidance" on this issue, Pet. App. 20a, and judges—even within circuits that have already weighed in—have called for a course correction in "the earliest appropriate case." *Gorss Motels*, 931 F.3d at 1106 (Pryor, J., concurring).

This case presents the Court with just such an opportunity. The question is squarely teed up. And neither of the two preliminary issues that derailed resolution of the question in *PDR Network* stands as an obstacle to review in this case. This Court should take the opportunity and resolve this question once and for all.

### A. The question presented is important.

As the growing circuit conflicts demonstrate, the need for this Court's review has only intensified in the five years since it granted certiorari in *PDR Network*. During that short time, the Hobbs Act's applicability to FCC interpretations of the TCPA has determined the outcome in numerous private enforcement actions. *See, e.g.*, *Tessu v. AdaptHealth, LLC*, 2023 WL 5337121, at *5 (D. Md. Aug, 17, 2023) (holding that the Hobbs Act bars any consideration of a challenge to an FCC order in a private enforcement proceeding and noting that such an approach is consistent with "the majority of courts"); *Weister v.*

- 17 -

*Vantage Point AI, LLC*, 2022 WL 7026495, at *2 (M.D. Fla. Oct. 12, 2022) (adhering to "binding circuit precedent" that "the Hobbs Act precludes a district court from considering a challenge to an FCC rule"); *Comcast of Or. II*, 609 F. Supp. 3d at 1150 (refusing to "speculate as to how the Supreme Court ultimately will resolve" the question and holding that an FCC order is "binding on this Court" under the Hobbs Act).

Recognizing the importance of this issue, several circuit judges have independently called for a definitive resolution of this issue. Last year, for instance, Judge Phipps lamented that the Third Circuit has repeatedly "declined to resolve" whether the Hobbs Act's "exclusive jurisdiction" provision bars a district court from "any consideration" of the merits an FCC legal interpretation. *Robert W. Mauthe MD PC v. Millenium Health LLC*, 58 F.4th 93, 97–99 (3d Cir. 2023) (Phipps, J., concurring); *see also, e.g.*, *Mauthe v. Nat'l Imaging Assocs., Inc.*, 767 F. App'x 246, 250 n.5 (3d Cir. 2019) ("It is unclear if we must follow the FCC's interpretation of the statute").

Judge William Pryor has likewise written separately "to explain that [the Eleventh Circuit's] precedents"— which align with the Ninth Circuit precedent applied in this case—have "misconstrued" the Hobbs Act's grant of "exclusive jurisdiction." *Gorss Motels*, 931 F.3d at 1106 (Pryor, J., concurring). As Judge Pryor recognized, an interpretation of the Hobbs Act that bars district courts from "so much as considering any argument—by any party, in any case—that an agency order misinterpreted the law, no matter how wrong the agency's interpretation might be," "ignores the statutory context, generates absurd results, and raises serious constitutional doubts."

*Id.* As a result, he urged that such a mistaken view should be corrected "[i]n the earliest appropriate case." *Id.*

The harmful consequences of a rule depriving district courts of the ability to even consider an argument that an agency's interpretation of a statute is wrong is reason enough to grant review. But the lingering uncertainty for parties in other circuits that have not yet decided whether, and to what extent, the Hobbs Act applies is just as untenable. In those jurisdictions, litigants are forced to guess whether their challenge to an FCC interpretation will be categorically denied—making their claims or defenses unilaterally subject to whatever position the FCC has taken, no matter how wrong.

The passage of time has also reinforced that further percolation would serve no purpose and only exacerbate the harms caused by the present circuit conflict. Judge Pryor's call for his own court to correct the mistake five years ago has gone nowhere. And the Ninth Circuit's denial of en banc review in this case shows that it, too, has little interest in reconsidering its position.

## B. Neither of the two "preliminary issues" identified in *PDR Network* pose a barrier to answering the question presented here.

This case is also a good vehicle. For starters, the facts of the case squarely present the core question. As the district court explained, treating the FCC's *Amerifactors* order as authoritative—which it was required to do under controlling Ninth Circuit caselaw—was "determinative of the viability of this case." Pet. App. 20a. After holding that it was bound by the FCC's *Amerifactors* order, the district court decertified the class and sua sponte granted summary judgment to McKesson. Pet. App. 20a, 22a. And when the Ninth Circuit affirmed, it explicitly held that the

- 19 -

district court had "correctly found that it was bound by the [FCC's] *Amerifactors* declaratory ruling." Pet. App. 7a.

Beyond that, neither of the two "preliminary issues" that this Court identified in *PDR Network* stands as an obstacle to reaching the question presented here.

Start with the possibility that the FCC order is "the equivalent of an interpretive rule" and so "may not be binding on a district court." *PDR Network*, 139 S. Ct. at 2055. In the Ninth Circuit, that distinction is irrelevant: Both legislative and interpretive rules are binding on a district court. *Hamilton*, 224 F.3d at 1055. That is why, when the district court here explicitly considered this question, it recognized that any "potential distinction between legislative and interpretive rules does not matter." Pet. App. 37a. It therefore held that, "[e]ven assuming" that the FCC's *Amerifactors* order was merely interpretive, a district court was still bound to follow it. *Id.* So, in stark contrast to *PDR Network*, where the lower court had not addressed the issue, there would be no basis to vacate and remand for consideration of this issue here.

Nor is the prior adequacy of Hobbs Act review under section 703 of the APA an impediment to review here. In *PDR Network*, the petitioner argued in its merits brief to this Court that it did not have a prior or adequate opportunity under the Hobbs Act to challenge the FCC's order. Brief for Petitioners at 15–16, *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.* (No. 17-705) (Jan. 8, 2019). That argument had potential merit because the relevant FCC order was issued years before the petitioner was sued for violating the TCPA. And if the argument were correct, as this Court noted in its opinion, "it may be" that section 703 would "permit[]" a "challenge [to] the

- 20 -

validity of the Order in th[e] enforcement proceeding." 139 S. Ct at 2056. But that question is not present in this case. The petitioner here never argued that it lacked a "prior" or "adequate" opportunity for review under the Hobbs Act. So the only relevant question that was before the court of appeals is the question that is squarely presented by the petition: whether the Hobbs Act required the district court to accept the FCC's interpretation of the TCPA, regardless of whether the FCC's interpretation is correct. And, in any event, unlike the order at issue in *PDR Network*, which raised adequate-notice concerns, the relevant order in this case was issued six years *after* this case was filed, and while it was still pending.

*    *    *

The lower courts are no less divided over the question presented now than they were when this Court granted review in *PDR Network*. If anything, the more recent cases just reinforce the need for this Court's guidance. By granting review here, this Court can provide much-needed clarity on whether the Hobbs Act requires district court to accept an FCC's legal interpretation of the TCPA even in run-of-the-mill private enforcement actions.

## III. The Ninth Circuit's rule that, under the Hobbs Act, a district court in a private enforcement proceeding is bound by an FCC interpretation of the TCPA is wrong.

The Court should grant certiorari for an additional reason: As Justice Kavanaugh's concurrence in *PDR Network* makes clear, the Ninth Circuit's interpretation of the Hobbs Act is wrong. The Act's grant of exclusive jurisdiction means that a district court may not entertain a petition for review of an FCC order subject to the Act. But it does not mandate that a district court must follow

- 21 -

the FCC's interpretation of the TCPA every time a case within its jurisdiction presents a question of federal law that the agency has addressed in an order. Such a rule ignores the plain meaning of the statutory text, leads to absurd results, and raises serious constitutional concerns. And even if the Hobbs Act mandated this result for those legislative rules that have the force and effect of law, the Ninth Circuit is wrong that the Act applies as well even to an agency's interpretive guidance documents.

**A.** The analysis begins with the text of the Hobbs Act. It says that the circuit courts have "exclusive jurisdiction" "to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" certain agency orders. 28 U.S.C. § 2342. This grant of exclusive jurisdiction "force[s] parties who want to challenge agency orders via facial, pre-enforcement challenges to do so promptly and to do so in a court of appeals." *PDR Network*, 139 S. Ct. at 2059 (Kavanaugh, J., concurring). And the statute's reference to the authority to "enjoin, set aside, suspend," or "determine the validity of" an order "affords the court of appeals exclusive jurisdiction to issue an injunction or declaratory judgment regarding the agency's order." *Id.* at 2063 (noting that the relevant question "is 'exclusive jurisdiction' to do what?" and that "if a district court in an enforcement action disagrees with the agency interpretation, the district court does not issue a declaratory judgment or an injunction against the agency").

But just as significant is what the Hobbs Act doesn't say. As Justice Kavanaugh explained, Congress has enacted several statutes designed to channel both facial, direct-review challenges of agency orders, along with as-applied enforcement actions, exclusively to the courts of

- 22 -

appeals. *See id.* at 2062 (Kavanaugh, J., concurring) (noting prominent examples that include the Clean Water Act, CERCLA, and the Clean Air Act). In addition to using similar language providing for facial, pre-enforcement review of certain agency orders in a court of appeals, these statutes all say something like agency orders "shall not be subject to judicial review in any civil or criminal proceeding for enforcement.'" *Id.* (quoting the Clean Water Act, 33 U.S.C. § 1369(b)). The Hobbs Act, by contrast, contains no similar prescription. "The fact that Congress has expressly precluded judicial review" in similar statutes "suggests that Congress' silence in the Hobbs Act should not be read to preclude judicial review." *Id.* at 2061.

**B.** The Ninth Circuit's view also leads to absurd results. If correct, it would mean that a plaintiff with a viable claim under the TCPA—a federal law enacted by Congress—would be unable to pursue it based solely on the fact that the FCC has misinterpreted the statute in an order to which the plaintiff was not a party. And a defendant haled into court to defend against a claim that it violated the TCPA would likewise be disabled from even arguing that an FCC order being enforced against it was wrong. Under such an interpretation, "the Hobbs Act estops vast numbers" of parties who "might wish to advance a view of the law different from that of the agency." *Gorss Motels*, 931 F.3d at 1110 (Pryor, J., concurring). But "[r]equiring all those potentially affected parties to bring a facial, pre-enforcement challenge within 60 days or otherwise forfeit their right to challenge an agency's interpretation of a statute borders on the absurd." *PDR Network*, 139 S. Ct. at 2061–62 (Kavanaugh, J., concurring) (noting that such a

- 23 -

requirement would be "wholly impractical" and "a huge waste of resources").

**C.** The Ninth Circuit's understanding also raises serious constitutional concerns. If a district court "could never second-guess agency interpretations in orders subject to the Hobbs Act," *Gorss*, 931 F.3d at 1110–11, then the Hobbs Act likely intrudes "upon Article III's vesting of the 'judicial Power' in the courts." *PDR Network*, 139 S. Ct. at 2057 (Thomas, J., concurring). As Justice Thomas explained in his concurrence in *PDR Network*, the judicial power "as originally understood" requires a court to "exercise its independent judgment in interpreting and expounding upon the laws," and that duty "necessarily entails identifying and applying [] governing law." *Id.* Of course, in the appropriate circumstance, a court must sometimes defer to agency interpretations of statutes, but the Ninth Circuit's Hobbs-Act interpretation transforms deference into something else entirely—"abdication" of the judicial power to determine what law governs a case. *Id.* at 2066 (Kavanaugh, J., concurring) (noting that, under such an interpretation, a district court "would have to afford the agency not mere *Skidmore* deference or *Chevron* deference, but absolute deference").

At a minimum, even if the Ninth Circuit's interpretation of the Hobbs Act is plausible, the constitutional-doubt canon should compel an alternative reading of the Act that avoids these constitutional concerns. *See Gorss*, 931 F.3d at 1106 (Pryor, J., concurring). And as Justice Kavanaugh's concurrence has recognized, that alternative reading—which recognizes that district courts adjudicating garden-variety

- 24 -

enforcement actions are not required to treat FCC orders as binding—is not just plausible, but compelling.

**D.** Finally, even if the Ninth Circuit is correct that the Hobbs Act's "exclusive jurisdiction" language precludes as-applied judicial review of an agency's *legislative* rules in an enforcement proceeding, it cannot be the case that the same is true for an agency's interpretive guidance. As this Court has explained, legislative rules are typically issued through the APA's notice-and-comment process and, as a result, have the "force and effect of law." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96–97 (2015). But interpretive rules are those that an agency issues without following the formal notice-and-comment process—including those that are "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Id.* That convenience, however, "comes at a price: Interpretive rules do not have the force and effect of law and are not accorded that weight in the adjudicatory process." *PDR Network*, 982 F.3d at 263–64. So, as even the United States has acknowledged, because courts are not required to give effect to interpretive rules, they are not binding on a district court under the Hobbs Act. *See id.* (noting the government's agreement on remand in *PDR Network* that, because "the relevant portions of the 2006 FCC Rule are interpretive, rather than legislative," "the district court was not bound to follow it"). Against this "consensus" view, only the Ninth Circuit disagrees. *Id.*

## CONCLUSION

The petition for certiorari should be granted.

- 25 -

Respectfully submitted,

MATTHEW W.H. WESSLER
    *Counsel of Record*
JONATHAN E. TAYLOR
GUPTA WESSLER LLP
2001 K Street, NW
Suite 850 North
Washington, DC 20006
(202) 888-1741
*matt@guptawessler.com*

GLENN L. HARA
ANDERSON + WANCA
3701 Algonquin Road
Suite 500
Rolling Meadows, IL 60008
(847) 368-1500
*ghara@andersonwanca.com*

May 17, 2024                  *Counsel for Petitioner*